UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-01916-MD-MARRA/JOHNSON

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:

ATS ACTIONS
_____/

**Case No. 08-cv-80421**

JOHN DOE 1 *et al.*

v.

CHIQUITA BRANDS INTERNATIONAL, INC., *et al.*,
_____/

**NEW JERSEY PLAINTIFFS' SEPARATE SUPPLEMENTAL MEMORANDUM
IN OPPOSITION TO DEFENDANT'S CONSOLIDATED MOTION
TO DISMISS THE COMPLAINTS**

I.  INTRODUCTION

This memorandum responds to issues specific to the New Jersey case. First, although Chiquita argues that this entire litigation is unmanageable, manageability is not a basis for dismissal under Rule 12(b)(6). Regardless, the New Jersey case involves only nine individual plaintiffs and is not unmanageable. Second, the New Jersey plaintiffs make no allegations regarding FARC killings or killings after 2004, and therefore Chiquita's implausibility arguments—based on allegations from other complaints—are irrelevant to this case. Third, the statutes of limitations for Plaintiffs' state law claims are equitably tolled due to the extraordinary circumstances of civil war and Chiquita's own fraudulent concealment, which frustrated any diligence plaintiffs could have executed to bring their claims before 2007. Regardless, New Jersey would adopt Colombia's longer statutes of limitations because New Jersey typically applies substantive foreign statutes of limitations, particularly where a governmental interest test would squarely dictate such application. Finally, Chiquita is liable for torts the AUC committed as its contractor because New Jersey law creates non-delegable duties on employers who contract for activities involving a grave risk of harm, and attributes liability to employers who select incompetent contractors or contract for inherently dangerous activities.

II. ARGUMENT

1.  **This case cannot be dismissed as unmanageable.**

Chiquita's manageability arguments cannot apply to this Complaint, which involves only nine individual plaintiffs with well-defined claims,[1] falling within a limited geographical and temporal scope; indeed Chiquita fails even to suggest that the New Jersey case is unmanageable, or that there is any reason to lump it together with the others in assessing "manageability."

Indeed, there is no "manageability" doctrine at all. Chiquita misconstrues *Sosa*'s cautions on recognizing *new* norms under the ATS by claiming that it allows dismissal of claims

---

[1] The New Jersey Plaintiffs have pled the facts of their injuries, and the reasons that they were targeted by the AUC as part of the AUC's war crimes and crimes against humanity, with a great deal of specificity. *See* NJFAC ¶¶134-63.

1

grounded in *well-established* norms, based solely on the number of plaintiffs or the breadth of their potential claims. Supp. Br. at 20–22. But the manageability of a lawsuit is not a basis for granting a motion to dismiss. Pls.' Consol. Supp. Opp'n at 4; PO at 36-38. Even if, however, Chiquita had accurately characterized *Sosa*, that case only addressed the ATS; nothing in *Sosa* is remotely relevant to Plaintiffs' state law and TVPA claims. While it might be appropriate to consider manageability in the context of deciding whether to certify the New Jersey Plaintiffs' class, it is premature to consider it here. *E.g.*, *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, No. 09 C 2046, 2009 U.S. Dist. LEXIS 77648, *8 (N.D. Ill. Aug. 31, 2009).

       **2.**       **The allegations in the New Jersey Complaint are plausible on their face.**

Chiquita's principal objections to the plausibility of the complaints is that a) they allege Chiquita employed both the FARC and the AUC; and b) they link Chiquita to murders occurring after it left Colombia. The New Jersey Complaint contains no such allegations. This court may not dismiss one complaint based on allegations contained in another. *E.g.*, *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 263 (S.D.N.Y. 2009) (analyzing MDL complaints separately on motion to dismiss because allegations were different in each one).

       **3.**       **The Amended Complaint sufficiently alleges equitable tolling.**

       **a.**    **Plaintiffs have adequately alleged "extraordinary circumstances."**

Contrary to Chiquita's arguments, Supp. Br. at 33 n.33, Plaintiffs are entitled to equitable tolling due to extraordinary circumstances. New Jersey courts have held, based on federal common law sources, that equitable tolling is available where a plaintiff "has 'in some extraordinary way' been prevented from asserting his rights." *Binder v. Price Waterhouse & Co., L.L.P.*, 393 N.J. Super. 304 (App. Div. 2007) (ultimately relying on *Kocian v. Getty Refining & Marketing Co.*, 707 F.2d 748 (3d Cir. 1983)). Here, paramilitaries, including the Elmer Cardenás Bloc (a beneficiary of Chiquita's arms smuggling), continued to kill and intimidate civilians in the area, including human rights workers and lawyers, until at least 2006. NJFAC ¶¶ 89, 175, 176. Chiquita does not dispute the peril Plaintiffs faced in pursuing their claims prior to 2007, but suggests that anonymous filing negates such extraordinary circumstances, ignoring the

danger in seeking an attorney or investigating decedents' murders. Courts have rejected this argument. *See Arce v. Garcia*, 434 F.3d 1254, 1257 nn.3 & 5, 1264 (11th Cir. 2006) (statute tolled due to civil war and repression, even though plaintiffs originally filed anonymously).

### b. Plaintiffs have adequately alleged fraudulent concealment.

As Plaintiffs previously established, New Jersey law, like the federal and Nebraska law applied by this Court in *Julin v. Chiquita Brands Int'l, Inc.*, No. 08-MD-01917, slip op. at 14-15, 32 (S.D. Fla. Feb. 4, 2010), allows tolling for Chiquita's concealment of its actions. *See* NJ Sep. Memo., Dkt. 109, at 5-7. Plaintiffs have pled facts equivalent to those found adequate in *Julin*.[2] Whether the limitations period should be tolled is a factual question that cannot be resolved on a motion to dismiss. *Julin*, slip op. at 15.[3]

### c. Plaintiffs satisfy the requirements of diligence.

As noted above, New Jersey's equitable tolling rules are drawn in part from federal common law; federal courts have recognized that no further diligence inquiry is required where, as here, it would have been futile and dangerous to investigate the deaths or the possibility of filing claims implicating active paramilitaries before 2007. *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1155 (11th Cir. 2004); *Arce*, 434 F.3d at 1261, 1264-65.[4]

---

[2] Such facts include: senior Chiquita employees were involved in secret payments on a regular basis, NJFAC ¶ 77; Chiquita paid the AUC through the *convivir*, NJFAC ¶ 78; Chiquita created false and misleading book entries, *id.*; and Chiquita assisted in shipping arms, NJFAC ¶¶ 85–94. Plaintiffs also allege that Chiquita masked AUC payments as payments to Banadex employees, who paid income tax as if the payments were actually to them. NJFAC ¶79.

[3] Chiquita's attempt to show that its payments were common knowledge by 2003, Reply at 43 n.29, cannot be credited. The court must resolve this motion by accepting plaintiffs' allegations as true; it may not consider the extrinsic material Chiquita attached to its motion to dismiss and asserted in its Reply. *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1266 n.11 (11th Cir. 1997). Regardless, Chiquita's assertions do not support their argument. Chiquita does not show that its May 2004 announcement reached Colombia, let alone Urabá. *See McCarrell v. Hoffman La Roche, Inc.*, 2009 N.J. Super. Unpub. LEXIS 558 at *119 (App. Div. Mar. 12, 2009) (statute tolled where information about drug side effects was not publicly available). And the 2003 UN report cited by Chiquita refers only to extortion by militants, providing *no basis* for Plaintiffs to suspect that Chiquita paid the AUC to terrorize civilians.

[4] If the Court finds that equitable tolling is not adequately pled, it should grant leave to amend, as amendment could cure any deficiency, and there is no "substantial reason . . . to deny" such leave. *Fla. Power & Light Co. v. Allis Chambers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996).

3

### 4.     New Jersey courts would apply Colombia's longer statutes of limitations.

All parties agree that New Jersey choice-of-law rules apply here and that although a full choice-of-law analysis is premature, Colombian substantive law may govern some claims. Plaintiffs' claims are timely under Colombian law, which prescribes a 20-year limitations period for claims arising out of killings and 30 years for disappearance or torture. NJ Sep. Memo. at 8.[5] New Jersey adopts Colombia's limitations period for Plaintiffs' Colombian law claims.

New Jersey no longer hews to the traditional "substantive/procedural" dichotomy to assess conflicts of laws, including statutes of limitations; it instead follows the "governmental interest" test. *See* NJ Sep. Memo. at 8; *Heavner v. Uniroyal, Inc.*, 63 N.J. 130, 140–41 (1973). Contrary to Chiquita's contention, Reply at 44, New Jersey courts apply longer foreign statutes of limitations if the foreign state's interests outweigh those of New Jersey. *E.g., Elmoghazi v. Aviles*, 2008 N.J. Super. Unpub. LEXIS 2786 (App. Div. Sept. 2, 2008).

Even under the traditional test, New Jersey applies Colombian law. For torts arising in foreign fora, New Jersey always applied its own statutes of limitations unless the *foreign forum's* statute was substantive. *See Marshall v. Geo. M. Brewster & Son, Inc.*, 37 N.J. 176, 180, 187 (1962). *LaFage v. Fani*, 766 A.2d 1066 (N.J. 2001), cited by Chiquita, does not address foreign laws; it merely finds New Jersey's statute of limitations procedural. Chiquita does not dispute that Colombia's statute of limitations is substantive,[6] and thus New Jersey would apply it here.

### 5.     Chiquita is liable for torts committed by the AUC as its independent contractor.

Chiquita insists that it cannot be held responsible for the AUC's actions as Chiquita's independent contractor. Chiquita *is* liable, however, because employers are liable for the torts of their independent contractors when 1) they knowingly engaged an incompetent contractor, or 2) the activity contracted was inherently dangerous. Alternatively, Chiquita had a non-delegable duty arising from the potential for grave harm inherent in the activity contracted for.

---

[5] Plaintiffs do not—and need not—make an election of law at this time. NJ Sep. Memo. at 7.
[6] *See, Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004) (civil law countries have substantive statutes of limitations).

4

Chiquita knew the AUC was incompetent for the provision of security services, violating its responsibility to hire a "competent and careful contractor." *Puckrein v. ATI Transport, Inc.*, 186 N.J. 563, 575 (2006) (quoting Restatement (Second) of Torts §411 cmt. b). Moreover, Chiquita hired the AUC to perform "inherently dangerous activities." *Majestic Realty Associates, Inc. v. Toti Contracting Co.*, 30 N.J. 425, 435 (1959) (quoting Restatement § 416). While New Jersey courts have not decided if security is an inherently dangerous activity, many jurisdictions hold employers liable for the negligence of security personnel, *e.g., Doe v. Exxon Mobil Corp.*, 573 F. Supp. 2d 16, 30 (D.D.C. 2008) (holding that "providing armed security in a warlike environment" may be inherently dangerous); *Pusey v. Bator,* 94 Ohio St. 3d 275, 281 (2002); the vast majority of jurisdictions do so for their intentional torts. Robert A Brazener, Annotation, *Liability for One Contracting for Private Police or Security Service for Acts of Personnel Supplied,* 38 A.L.R.3d 1332 §9[b] (collecting cases).[7] Under both tests, Chiquita is liable for the torts of the AUC as Chiquita's independent contractor.

Alternatively, Chiquita's choice of the AUC for security entailed the "potential for grave harm," *Baboghlian v. Swift Elec. Supply Co.*, 197 N.J. 509, 519 (2009), creating a non-delegable duty to ensure that the AUC did not injure Plaintiffs. *Cf. DeMary v. Rieker*, 302 N.J. Super. 208 (App. Div. 1997), *Araujo v. N.J. Natural Gas Co.*, 62 N.J. Super. 88 (App. Div. 1960). Chiquita is therefore liable because the AUC did injure Plaintiffs in the course of its work for Chiquita.

Respectfully submitted,

/s/ John DeLeon
John DeLeon (Fl. Bar No. 650390)

---

[7] In *Schreiber v. Camm*, 848 F. Supp. 1170, 1177 (D.N.J. 1994), a federal court predicted that New Jersey courts would not find the mere use of security guards to fall within the "inherently dangerous" exception for contractors' negligence. But *Schreiber* does not address an employer's liability for security guards' *intentional* torts; moreover, it suggests that an employer *is* liable for the torts of security contractors if it had "knowledge . . . of the dangerous propensities of the security guard." *Id.* at 1178. Regardless, the *Schreiber* scenario of security guards at a beach resort is hardly applicable to the horrors of the Colombian civil war. New Jersey courts would therefore recognize an inherently dangerous activity exception here, where Chiquita knowingly hired notoriously violent security contractors in a civil war.

5

Benjamin D. Brown
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C.  20005-3964
Tel: 202/408-4600
Fax: 202/408-4634

Marco Simons
Richard Herz
Jonathan Kaufman
**Earthrights International**
1612 K Street N.W., Suite 401
Washington, D.C.  20006
Tel: 202/466-5188
Fax: 202/466-5189

Arturo Carrillo
**Colombian Institute of International Law**
5425 Connecticut Ave., N.W., #219
Washington, D.C.  20015
Tel: 202/ 365-7260

John DeLeon
Fl. Bar No. 650390
jdeleon@chavez-deleon.com
**Law Offices of Chavez-DeLeon**
5975 Sunset Drive, Suite 605
South Miami, FL   33143
Tel: 305/ 740-5347
Fax: 305/ 740-5348

Paul L. Hoffman
**Schonburn, Desimone, Seplow, Harris & Hoffman LLP**
723 Ocean Front Walk
Venice, CA  90210
Tel: 310/ 396-0731
Fax: 310/ 399-7040

Judith Brown Chomsky
**Law Offices of Judith Brown Chomsky**
Post Office Box 29726
Elkins Park, PA  19027
Tel: 215/ 782-8367
Fax: 202/ 782-8368

*Counsel for John Doe Plaintiffs*

6

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that I caused the foregoing document, New Jersey Plaintiffs' Motion Regarding Application of Rule 15(a), to be electronically filed with the Clerk of the Court using CM/ECF on this 21st day of May, 2010. I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF, and in accordance with the Court's First Case Management Order ("CMO") and the June 10, 2008 Joint Counsel List filed in accordance with the CMO.

                                                          /s/ John DeLeon
                                                          John DeLeon, Fl. Bar No. 650390
                                                          jdeleon@chavez-deleon.com