**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 08-MD-01916 (Marra/Johnson)**

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC. ALIEN TORT STATUTE AND SHAREHOLDER DERIVATIVE LITIGATION
_______________________________________/

This Document Relates to:

ATS ACTIONS
_______________________________________/

DOES 1 THROUGH 677 v.
CHIQUITA BRANDS INTERNATIONAL, INC.

Case No. 9:11-cv-80404-KAM
_______________________________________/

DOES 1 THROUGH 254 v.
CHIQUITA BRANDS INTERNATIONAL, INC.

Case No. 9:11-cv-80405-KAM
_______________________________________/

**DEFENDANT'S MOTION TO DISMISS NEW ACTIONS AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................................ 1

ARGUMENT ............................................................................................................. 3

I. LIKE THE OTHER PENDING CASES, THE NEW ACTIONS ARE BASED FUNDAMENTALLY UPON A CLAIM OF "TERRORISM SUPPORT," WHICH IS NOT COGNIZABLE UNDER THE ATS........................................................ 3

II. EVEN IF THE COURT WERE TO ANALYZE THE COMPLAINTS AS PRESENTING 931 CLAIMS OF ACCESSORIAL LIABILITY BASED ON 931 SEPARATE VIOLATIONS OF INTERNATIONAL LAW, THE COMPLAINTS DO NOT PLEAD THE ELEMENTS OF SUCH CLAIMS. ............................................... 6

III. THE COMPLAINTS FAIL TO ALLEGE STATE-LAW CAUSES OF ACTION AND, IN ANY EVENT, PLAINTIFFS LACK STANDING AS NON-RESIDENT ALIENS TO PURSUE SUCH CLAIMS........................................................ 9

CONCLUSION.......................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ashcroft v. Iqbal*,
556 U.S. __, 129 S.Ct. 1937 (2009)....2, 8

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....2

*Doe VIII v. Exxon Mobil*,
658 F. Supp. 2d 131 (D.D.C. 2009)....10

*Estate of Amergi v. Palestinian Auth.*,
611 F.3d 1350 (11th Cir. 2010)....1, 5, 6

*Kiobel v. Royal Dutch Petroleum Co.*,
621 F.3d 111 (2d Cir. 2010)....10

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
582 F.3d 244 (2d Cir. 2009)....8

*Sinaltrainal v. Coca-Cola Co.*,
578 F.3d 1252 (11th Cir. 2009)....1, 5, 6, 7, 8

*Sosa v. Alvarez-Machain*,
542 U.S. 692 (2004)....1, 3, 5, 6

*Tel-Oren v. Libyan Arab Republic*,
726 F.2d 774 (D.C. Cir. 1984) (per curiam)....6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....9

**DOCKETED CASES**

*Does 1-976 v. Chiquita Brands Int'l, Inc.*,
No. 10-cv-00404-RJL (D.D.C.)....4

*Does (1-144) v. Chiquita Brands Int'l, Inc.*,
No. 9:08-cv-80465-KAM (S.D. Fla.)....4

**STATUTES**

18 U.S.C. § 2333....4

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 12 ....................................................................................2, 9

Julian G. Ku, *The Curious Case of Corporate Liability Under the Alien Tort Statute: A Flawed System of Judicial Lawmaking*, 51 Va. J. Int'l L. 353, 361-62 (2010) .........................3

## INTRODUCTION

The two new ATS lawsuits against Chiquita—*Does 1-677* and *Does 1-254* (together, the "New Actions")—add claims by 931 anonymous Colombians whose relatives were purportedly killed in that country during the past 25 years.[1] This brings the total number of ATS claims pending against Chiquita to more than 4,000. While the plaintiffs may be new, however, the nature of their allegations is the same as the previous actions, and should be dismissed for the same reasons. Like the other ATS Actions, the New Actions offer no details about any of the 931 alleged murders or their unidentified victims, and no well-pled facts to establish a nexus between any of those acts of violence and Chiquita apart from the one fact that Chiquita has admitted—that it authorized its Colombian subsidiary to accede to the extortion demands of right-wing and left-wing armed groups in Colombia in order to prevent retaliation against its employees.

That the claims against Chiquita have ballooned from a few dozen at the start of this litigation to more than 4,000 today reinforces the fact that these cases—regardless of how the plaintiffs may choose to label their causes of action—indisputably constitute an attempt to impose liability on Chiquita for alleged "terrorism support." But there is no such claim under international law that meets the demanding requirements of *Sosa v. Alvarez-Machain*, 542 U.S. 692 (2004)—a point underscored by the Eleventh Circuit's recent decision affirming the dismissal of ATS claims in *Estate of Amergi v. Palestinian Authority*, 611 F.3d 1350 (11th Cir. 2010). Like *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252 (11th Cir. 2009), *Amergi* emphasized the extremely narrow scope of this Court's authority to entertain claims under the ATS.

---

[1] The New Actions were filed in the U.S. District Court for the District of Columbia (D.E. #390) and transferred to this Court by the MDL Panel (D.E. #398).

Even if the Court were to analyze these complaints as presenting 931 discrete claims of secondary liability for an "extrajudicial killing" or other international-law violation, the New Actions are deficient. There are no allegations of state involvement in any of the killings, and no other basis for transforming any of these private murders into international-law violations actionable under the ATS or the TVPA. And even if some of these alleged murders could be pled as violations of international law by their perpetrators, there are no facts to support that Chiquita acted with the necessary *mens rea* to impose secondary liability on Chiquita for any of these acts of violence. Apart from the utter failure to link any of the incidents to Chiquita, plaintiffs' sensationalistic and wholly unsubstantiated assertion that Chiquita willingly supported armed groups in Colombia is inherently contradictory: while the *Does 1-677* action asserts that Chiquita willingly supported the right-wing AUC, the *Does 1-254* action, filed by the same attorney, asserts that Chiquita willingly supported the AUC's enemies, the left-wing FARC. If the plausibility requirement of *Iqbal* is to have any meaning at all, it surely prevents the Court from simultaneously crediting two contradictory and equally unsupported assertions—especially in the face of the "obvious alternative explanation," *Ashcroft v. Iqbal*, 556 U.S. __, 129 S.Ct. 1937, 1951 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 567 (2007)), that Chiquita was a victim of extortion by all sides.

For all of the reasons stated in Chiquita's prior briefs, and for the additional reasons stated here, the New Actions should be dismissed pursuant to Rules 12(b)(1) and 12(b)(6).[2]

---

[2] Chiquita incorporates by reference its Consolidated Motion to Dismiss Montes & Does 1-976 Complaints (D.E. #313) and its Memorandum in Support of Consolidated Motion to Dismiss Montes & Does 1-976 Complaints (D.E. #314) ("Montes Mot. to Dismiss"), both filed on May 4, 2010. These briefs incorporated all of Chiquita's prior submissions relevant to the pending motions to dismiss the ATS complaints. (D.E. # 314, at 1-2 n.1.). Chiquita further incorporates by reference its submissions filed after May 4, 2010, docketed as follows: Chiquita's Reply in (continued…)

## ARGUMENT

### I. LIKE THE OTHER PENDING CASES, THE NEW ACTIONS ARE BASED FUNDAMENTALLY UPON A CLAIM OF "TERRORISM SUPPORT," WHICH IS NOT COGNIZABLE UNDER THE ATS.

Irrespective of how the causes of action are denominated, *Sosa* makes clear that jurisdiction lies for a claim under the ATS *only* where the specific nature of the conduct alleged violates a "clearly defined" and "universally accepted" rule of customary international law. 542 U.S. at 735-38 (examining plaintiff's "complaint in greater detail" to determine the "principle" advanced in assessing whether it is covered by an actionable norm of customary international law). This threshold examination of the *nature* rather than the *label* of the claim is necessary to ensure that the plaintiff's asserted norm encompasses the actual conduct alleged.[3]

Here, as with the other pending cases, the alleged offending conduct is not that Chiquita played a role in *any* of the alleged acts of violence, but that Chiquita provided "money and services" to the FARC and the AUC.[4] Mirroring the earlier ATS Actions, the gravamen of the

---

Support of Consolidated Motion to Dismiss (D.E. #333) ("Chiquita's Reply re: Am. Compls."); Chiquita's Motion to Dismiss the Stansell Complaint (D.E. #351-1) ("Stansell Mot. to Dismiss"), Chiquita's Stansell Reply (D.E #351-2) ("Stansell Reply"); Chiquita's Response to Plaintiffs' Notice of Supplemental Authority (D.E. #340); Chiquita's Notice of Supplemental Authority (D.E. #366); and Chiquita's Reply to Plaintiffs' Response to Defendants' Notice of Supplemental Authority (D.E. #370).

[3] *See* Julian G. Ku, *The Curious Case of Corporate Liability Under the Alien Tort Statute: A Flawed System of Judicial Lawmaking*, 51 Va. J. Int'l L. 353, 361-62 (2010) (noting that pursuant to *Sosa*, "even where international law rules obtain undisputed acceptance as a general matter, they must be defined to a level of specificity that plainly encompasses the particular defendant's alleged conduct. It is not sufficient to show agreement upon an abstract rule; there must also be uncontroversial agreement that the defendant's specific alleged conduct violated that rule. This insistence on specificity reflects the Court's concern with the dangers of federal-court lawmaking.") (internal citation omitted)).

[4] *See Does 1-677* Compl. ¶ 758; *Does 1-254* Compl. ¶ 288. Indeed, plaintiffs in the New Actions allege that Chiquita's payments to the AUC began as early as 1995 and continued through 2007. (*Does 1-677* Compl. ¶¶ 2, 833.) The allegation that payments continued after Chiquita sold its subsidiary in Colombia and even after Chiquita's plea is entitled no weight; it is based entirely (continued…)

New Actions is that Chiquita's alleged "support" of the FARC and the AUC renders it liable for every murder these terrorist groups committed during the several decades in which they held sway in the lawless, remote regions of Colombia where Chiquita's subsidiary operated.[5] Counsel in the New Actions, who already represents over 1,000 plaintiffs in other ATS Actions,[6] simply replaced pseudonyms from his earlier complaint to repeat another 931 times the formulaic allegation that an unidentified Colombian decedent "was killed by the FARC" or "was killed by the AUC," and that the FARC and the AUC "received support from Chiquita and/or Banadex."[7]

Under the ATS, however, such a theory is not cognizable, for at least three reasons:

- *First*, federal courts have no jurisdiction over terrorism-related claims based on international law. Congress expressly addressed the claim of terrorism support in the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, and declined to extend a cause of action under the ATA to foreign victims. (*See* Chiquita's Opening Br. 15-17 (D.E. # 93); Reply Br. 4-5 (D.E. # 148); Chiquita's Mot. to Dismiss Am. Compls. 19 (D.E. # 314); Chiquita's Reply re: Am. Compls. 23-24.) For the Court to exercise its extremely limited common-law making authority in the face of this contrary legislative guidance would be a direct affront to the primacy of Congress.

- *Second*, neither the Financing Convention nor any other source of international law comes close to satisfying *Sosa*'s demanding requirements of definiteness and widespread acceptance so as to support a claim for terrorism support—not now, and certainly not as far back as 1987, when the first of the victims in the New Actions is alleged to have been

---

upon the conclusory assertion that two Colombian companies were or are "alter egos" of Chiquita, without pleading any facts necessary to establish alter-ego liability. Nevertheless, plaintiffs' continued focus on payments as the means of establishing liability confirms that terrorism support remains their essential theory.

[5] *See Does 1-677* Compl. ¶¶ 939-944 (claim for relief for "terrorism"), 945-952 (claim for relief for "material support to terrorist organizations"); *Does 1-254* Compl. ¶¶ 381-384 (claim for relief for "terrorism"), 385-392 (claim for relief for "material support to terrorist organizations").

[6] *Does 1-976 v. Chiquita Brands Int'l, Inc.*, 9:10-cv-80652-KAM (S.D. Fla.); *Does (1-144) v. Chiquita Brands Int'l, Inc.*, 9:08-cv-80465-KAM (S.D. Fla.).

[7] *See Does 1-677* Compl. ¶¶ 25-701; *Does 1-254* Compl. ¶¶ 14-267.

killed. (*See* Chiquita's Opening Br. 18-33; Reply Br. 7-24; Chiquita's Mot. to Dismiss Am. Compls. 18-22; Chiquita's Reply re: Am. Compls. 20-22.)

- *Third*, plaintiffs' attempt to seek redress in this Court for essentially every killing perpetrated during decades of civil strife in Colombia runs squarely afoul of this Court's obligation to consider the "practical consequences" and to exercise "vigilant doorkeeping" when assessing purported international-law norms. *See Sosa*, 542 U.S. at 729, 732-33; *Sinaltrainal*, 578 F.3d at 1267 (federal courts cannot "be open to lawsuits occurring during any period of civil unrest in a foreign country"). (*See also* Chiquita's Opening Br. 33-37; Reply Br. 32-34; Chiquita's Mot. to Dismiss Am. Compls. 20-22; Montes Mot. to Dismiss 8; Chiquita's Reply re: Am. Compls. 22-23.)

The Eleventh Circuit's decision last year in *Estate of Amergi*, 611 F.3d 1350, directly supports these arguments. (*See* Chiquita's Resp. to Pls.' Notice of Supplemental Authority (D.E. #340-1).) In *Estate of Amergi*, the court of appeals affirmed the dismissal of ATS claims against the Palestinian Authority ("PA") for supporting, arming, and encouraging a terrorist attack against an Israeli citizen. Hewing closely to its earlier decision in *Sinaltrainal*, the Eleventh Circuit emphasized the "sharply circumscribed" and "strictly limited" authority of federal courts to recognize new ATS claims under *Sosa*, adding that "only a limited band of cases fall within the statute" and that a court may recognize "torts beyond the paradigmatic three contemplated by the first Congress . . . only with great parsimony." *Estate of Amergi*, 611 F.3d at 1353, 1356-57.

While acknowledging the reprehensible nature of the terrorist murder at issue, the court in *Amergi* refused to find the PA's alleged conduct an actionable violation of international law meeting *Sosa*'s strict standards. In so holding, the court not only determined that the Geneva Conventions and other sources of international law lacked the definiteness and clarity to invoke ATS jurisdiction; the court also focused on the "real-world consequences" of invoking ATS jurisdiction. The court specifically noted that adjudicating terrorist murder claims would have the practical effect of opening our courts "to effectively every incident of violence in every unstable region of the world," and could conflict with U.S. foreign policy interests since

"terrorism 'concerns an area of international law in which . . . disagreements concern politically sensitive issues.'" *Id.* at 1363-65 (quoting *Tel-Oren v. Libyan Arab Republic*, 726 F.2d 774 (D.C. Cir. 1984) (per curiam)).

The *Amergi* court's analysis could not be more applicable to the ATS Actions asserted against Chiquita, including these New Actions. Recognition of plaintiffs' claims here would open the courthouse doors to thousands of personal injury tort claims, not only from Colombia, but from other areas of the globe wracked by violence. Plaintiffs' claims would also force this Court to address sensitive matters of foreign policy, including plaintiffs' accusations that the current and former Presidents of Colombia took sides with these armed groups to murder their own people.[8] *See Sosa*, 542 U.S. at 727 (warning courts to be "particularly wary of impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs"). (*See also* Chiquita's Opening Br. 36-37; Chiquita's Mot. to Dismiss Am. Compls. 25; Montes Mot. to Dismiss 9.) This Court should follow *Amergi*, and dismiss these actions in their entirety.

## II. EVEN IF THE COURT WERE TO ANALYZE THE COMPLAINTS AS PRESENTING 931 CLAIMS OF ACCESSORIAL LIABILITY BASED ON 931 SEPARATE VIOLATIONS OF INTERNATIONAL LAW, THE COMPLAINTS DO NOT PLEAD THE ELEMENTS OF SUCH CLAIMS.

***State action.*** To the extent the Court construes plaintiffs' allegations as raising claims of indirect liability for violent acts allegedly committed by the FARC or the AUC, none is properly pled. Both *Sinaltrainal*, 578 F.3d at 1266, and *Amergi*, 611 F.3d at 1357, make clear that a violation of international law ordinarily requires state action, *i.e.*, allegations establishing the

---

[8] *See, e.g.*, *Does 1-677* Compl. ¶¶ 728 (claiming that the Colombian government assigned paramilitary groups to use criminal violence against civilians), 729 (claiming that the Colombian military orchestrated attacks on civilians), 730 (claiming that "[p]aramilitarism was State policy in the Republic of Colombia"); *id.* at ¶¶ 723, 732 (alleging that former President Uribe and current President Santos supported and collaborated with the paramilitaries); *Does 1-254* Compl. ¶ 426 (describing "Colombian government's violent paramilitary campaign against civilians").

direct participation of a government or public official *in each of the particular killings or injuries alleged*. (*See also* Chiquita's Mot. to Dismiss Am. Compls. 23-24; Montes Mot. to Dismiss 8-9; Chiquita's Reply re: Am. Compls. 4, 8-9.) Like the other ATS complaints, the New Actions offer only generalized allegations of state action, disconnected from the specific and particular acts of wrongdoing alleged by *these* plaintiffs in *this* complaint.[9] The absence of particularized allegations of state action disposes of plaintiffs' ATS claims, as well as the *Does 1-677* plaintiffs' TVPA claims. *Sinaltrainal*, 578 F.3d at 1270.

***War Crimes and Crimes Against Humanity.*** Plaintiffs' attempt to avoid a state-action requirement by characterizing murders as "war crimes" is likewise foreclosed by *Sinaltrainal*, which held that accusing a corporation "of capitalizing on the hostile environment [in Colombia] and conspiring with [the] paramilitaries" does not state a claim for war crimes. 578 F.3d at 1265. (*See* Chiquita's Mot. to Dismiss Am. Compls. 25-27; Montes Mot. to Dismiss 9; Chiquita's Reply re: Am. Compls. 4, 9-12.) Plaintiffs' effort to cast their allegations as a claim of "crimes against humanity" likewise fails because such a cause of action is not actionable under *Sosa*, and, in any event, plaintiffs here do not offer any allegations tying purported acts of wrongdoing to an "attack" on a civilian population. (Chiquita's Opening Br. 65 n.60; Chiquita's Mot. to Dismiss Am. Compls. 27-28 n.28; Montes Mot. to Dismiss 9; Chiquita's Reply re: Am. Compls. 12 n.9.)

***Secondary Liability.*** Critically, even if plaintiffs *had* properly alleged that the AUC's or the FARC's commission of each of the asserted murders constituted an international-law violation, plaintiffs must plead that Chiquita shared these groups' wrongful purpose to commit

[9] *See, e.g.*, *Does 1-677* Compl. ¶¶ 744 (suggesting that because the Colombian Army allegedly assisted the AUC in incidents completely unrelated to plaintiffs' claims here, this Court should presume that the Colombian military provided assistance to the AUC in every other incident).

the hundreds of primary violations alleged. *See Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 259 (2d Cir. 2009) (confirming that accessory claims under the ATS require that the alleged accessory share the wrongful "purpose" of the primary violator). (*See also, e.g.*, Chiquita's Reply to Pls.' Resp. to Ds' Notice of Supplemental Authority (D.E. #266-1).) Beyond general and conclusory allegations, plaintiffs offer no facts that give rise to a reasonable inference that Chiquita shared the murderous intent of the AUC or the FARC. *See Sinaltrainal*, 578 F.3d at 1260 (applying pleading standard articulated in *Iqbal*); (*see also* Chiquita's Mot. to Dismiss Am. Compls. 7-8). This deficiency is fatal to both complaints.

Careful consideration of plaintiffs' allegations reveals their inherent inconsistencies, illogic, and *ipse dixit* nature. Plaintiffs allege that Chiquita "paid both the FARC and AUC" before deciding to use "the AUC to eliminate the FARC."[10] Plaintiffs also allege, however, that Chiquita "sought a competitive advantage" by "collaborating with the FARC" in wresting control over labor unions from the EPL and ELN – groups which according to plaintiffs were subsequently absorbed into the AUC.[11] Beyond being conclusory and entitled to no weight under *Iqbal*—none of these assertions are supported by any allegations of fact—these statements are also contradictory: Chiquita purportedly supported warring groups with the purpose of furthering their violent acts against each other and beyond. But the allegations that Chiquita paid both sides readily provide an "obvious alternative explanation" for the payments, *Iqbal*, 129 S.Ct. at 1951—that Chiquita was extorted by these notoriously violent armed groups when they controlled the areas where Chiquita's subsidiary operated. (*See* Chiquita's Opening Br. 34-35 &

---

[10] *Does 1-254* Compl. ¶ 286.

[11] *Does 1-254* Compl. ¶¶ 286, 313.

n.30; Chiquita's Mot. to Dismiss Am. Compls. 30-31.)[12]

## III. THE COMPLAINTS FAIL TO ALLEGE STATE-LAW CAUSES OF ACTION AND, IN ANY EVENT, PLAINTIFFS LACK STANDING AS NON-RESIDENT ALIENS TO PURSUE SUCH CLAIMS.

Plaintiffs' state-law claims should be dismissed for the reasons Chiquita has set forth with respect to the other plaintiffs' state-law claims. *First*, the claims suffer from the same substantive deficiencies under the laws of the relevant jurisdictions. (*See* Chiquita's Opening Br. 68-71; Reply Br. 45-46; DC Mot. to Dismiss 41-44 (D.E. #163); DC Reply Br. 23-24 (D.E. #164); Montes Mot. to Dismiss 11-12; Chiquita's Reply re: Am. Compls. 30-32.) *Second*, substantially all of plaintiffs' state-law claims are time-barred by the District of Columbia's applicable limitations periods. (*See* Reply Br. 40-44; DC Mot. to Dismiss 45; DC Reply Br. 20-23; Montes Mot. to Dismiss 12; Chiquita's Reply re: Am. Compls. 25-30.) *Finally*, all of the

[12] Plaintiffs in *Does 1-254* rely heavily on the Report of the Special Litigation Committee of Chiquita's Board of Directors (the "SLC Report"). (*E.g.*, *Does 1-254* Compl. ¶¶ 293-311.) To be clear, Chiquita does not affirmatively rely on the SLC Report in any way in connection with this motion. But because plaintiffs incorporate the SLC Report into, and make it a part of, their complaint, the Report must be considered in determining the adequacy of plaintiffs' allegations. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference . . . ."). Thus, while plaintiffs allege that Chiquita: (i) put "its own business interests above the safety of others in Colombia," (¶ 294); (ii) provided the FARC with weapons, ammunition, and other supplies (¶ 314.); and (iii) fraudulently concealed its payments to the FARC (¶ 317), those allegations are directly refuted by the SLC Report on which plaintiffs choose to rely. (SLC Report (D.E. #202-4).) The SLC Report specifically concludes that (i) "the FARC routinely extorted local and multinational businesses operating in Colombia," not just Chiquita (*id.* at 28), and Chiquita's payments were motivated by nothing more "than the sincere and abiding belief that these actions were necessary to protect the lives of its employees" (*id.* at 260-61); (ii) there is "no factual support for the allegation that Banadex provided the FARC with 'weapons, ammunition, and other supplies through its transportation contractors'" (*id.* at 216; *see also id.* at 72-74); and (iii) Chiquita's payments to the FARC were openly disclosed "during meetings with the SEC, DOJ and the USAO SDNY and in testimony before the SEC" between 1999 and 2001 (*id.* at 58-59), Chiquita's Internal Audit and Accounting Departments were able to track the payments on its books and records (*id.* at 35-37), and Chiquita's internal coding that was used to prevent retaliation by competing guerilla groups had no effect on Chiquita's public disclosure (*id.* at 36-37, 240-41).

ATS plaintiffs lack standing to sue for state-law torts under the prudential limitations imposed by Article III on suits brought by non-resident aliens. (*See* Chiquita's Mot. to Dismiss. Am. Compls. 33-34 (citing *Doe VIII v. Exxon Mobil*, 658 F. Supp. 2d 131 (D.D.C. 2009); Chiquita's Reply re: Am. Compls. 24-25.)

**CONCLUSION**

For the foregoing reasons and those stated in Chiquita's prior motions to dismiss the ATS Actions, Chiquita respectfully requests that the complaints be dismissed with prejudice.[13]

Dated: May 3, 2011

Respectfully submitted,

/s/ Robert W. Wilkins

Sidney A. Stubbs (Fla. Bar No. 095596)
Robert W. Wilkins (Fla. Bar No. 578721)
Cristopher S. Rapp (Fla. Bar No. 0863211)
rwilkins@jones-foster.com
JONES, FOSTER, JOHNSTON & STUBBS, P.A.
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33401
Telephone: (561) 659-3000
Fax: (561) 650-0412

Gregg H. Levy
John E. Hall
José E. Arvelo
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 662-6000
Fax: (202) 662-6291

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000
Fax: (212) 841-1010

*Counsel for Chiquita Brands International, Inc.*

---

[13] Chiquita preserves the arguments noted in its prior motions to dismiss, including, *inter alia*, that the law of nations does not extend liability to corporations, *see Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111 (2d Cir. 2010), and that the ATS claims here are subject to a 4-year statute of limitations as the ATA is the most analogous federal statute. (Chiquita's Mot. to Dismiss Am. Compls. 35 n.34.)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document with the clerk of the Court using CM/ECF on this 3rd day of May 2011. I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF, and in accordance with the Court's First Case Management Order ("CMO") and the June 10, 2008 Joint Counsel List filed in accordance with the CMO.

By: ___/s/ Robert W. Wilkins____
Fla. Bar No. 578721
rwilkins@jones-foster.com