## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 0:08-MD-01916 (Marra/Johnson)

IN RE: CHIQUITA BRANDS INTERNATIONAL,
INC. ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION

_____

This Document Relates To:

ATA ACTIONS

_____/

      Case No. 9:09-cv-80683-KAM

OLIVIA PESCATORE, *et al.*,

           Plaintiffs,

v.

CHIQUITA BRANDS INTERNATIONAL, INC., *et al.*,

           Defendants.

_____/

      Case No. 9:11-cv-80402-KAM

ESTATE OF JANE PESCATORE SPARROW,

           Plaintiff,

v.

CHIQUITA BRANDS INTERNATIONAL, INC., *et al.*,

           Defendants.

_____/

## DEFENDANT'S MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT

## TABLE OF CONTENTS

BACKGROUND ............................................................................................................ 2

    A.    The FARC and the Underlying Injuries. ............................................................ 2

    B.    Chiquita's Extortion Payments to the FARC. .................................................... 3

    C.    Chiquita's Public Report Concerning the Payments. ......................................... 5

ARGUMENT ............................................................................................................... 6

I.    PLAINTIFFS' CLAIMS ARE TIME BARRED EVEN UNDER THE
EQUITABLE TOLLING PRINCIPLES APPLIED IN JULIN. ........................................ 6

    A.    Plaintiffs Filed Their Claims More Than Four Years After Chiquita's
Payments Were Publicly Disclosed and Reported In Newspapers
Nationwide. ..................................................................................................... 7

    B.    In All Events, Plaintiffs' Incorporation of the SLC Report Precludes Any
Assertion of Fraudulent Concealment. ............................................................. 8

II.    PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE ITS
RELIANCE ON THE SLC REPORT PREVENTS PLAINTIFFS FROM
STATING A CLAIM. ..................................................................................... 10

    A.    Plaintiffs Cannot Avoid the Import of Their Incorporation of the SLC
Report. .......................................................................................................... 11

    B.    Plaintiffs' Allegations Fail to Establish Chiquita's Direct Liability Under
the ATA. ........................................................................................................ 13

    C.    Plaintiffs' Allegations Fail to Establish Chiquita's Secondary Liability
Under the ATA Standards Set Forth in Julin. ................................................. 17

CONCLUSION ........................................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

### FEDERAL CASES

*Abecassis v. Wyatt*,
   704 F. Supp. 2d 623 (S.D. Tex. 2010) ...................................................................16

*Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines
   v. CSX Transp., Inc.*,
   522 F.3d 1190 (11th Cir. 2008) ...........................................................................6

*Boim v. Holy Land Found. for Relief & Dev.*,
   549 F.3d 685 (7th Cir. 2008) ...............................................................14, 15, 16

*Boim v. Quranic Literacy Inst.*,
   340 F. Supp. 2d 885 (N.D. Ill. 2004) ....................................................................16

*Bryant v. Avado Brands Inc.*,
   187 F.3d 1271 (11th Cir. 1999) ............................................................................5

*Condit v. Dunne*,
   317 F. Supp. 2d 344 (S.D.N.Y. 2004) ....................................................................5

*Court-Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*,
   No. 05-60055, 2011 WL 1232986 (S.D. Fla. Mar. 30, 2011) .......................9, 10, 11

*Covey v. Arkansas River Co.*,
   865 F.2d 660 (5th Cir. 1989) ................................................................................7

*Day v. Taylor*,
   400 F.3d 1272 (11th Cir. 2005) .......................................................................3, 11

*Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*,
   336 F. Supp. 2d 1239 (S.D. Fla. 2004) ..................................................................5

*Garfield v. NDC Health Corp.*,
   466 F.3d 1255 (11th Cir. 2006) ............................................................................5

*Goldberg v. UBS A.G.*,
   660 F. Supp. 2d 410 (E.D.N.Y. 2009) ..................................................................16

*Great Fla. Bank v. Countrywide Home Loans, Inc.*,
   No. 10-22124, 2011 WL 382588 (S.D. Fla. Feb. 3, 2011) .......................................9

*Greenberg v. Miami Children's Hosp. Research Inst., Inc.*,
   264 F. Supp. 2d 1064 (S.D. Fla. 2003) ...............................................................8

*Griffin Indus., Inc. v. Irvin*,
   496 F.3d 1189 (11th Cir. 2007) ................................................................9, 11

*Halberstam v. Welch*,
   705 F.2d 472 (D.C. Cir. 1983) ..............................................................17

*Hill v. Texaco, Inc.*,
   825 F.2d 333 (11th Cir. 1987) ..............................................................7

*Julin v. Chiquita Brands Int'l, Inc.*,
   690 F. Supp. 2d 1296 (S.D. Fla. 2010) ....................................................... *passim*

*Khulumani v. Barclay Nat'l Bank Ltd.*,
   504 F.3d 254 (2d Cir. 2007) ..............................................................14

*Linde v. Arab Bank, PLC*,
   384 F. Supp. 2d 571 (E.D.N.Y. 2005) ..............................................................16

*Litle v. Arab Bank*,
   507 F. Supp. 2d 267 (E.D.N.Y. 2007) ..............................................................6

*Mitchell v. Homes*,
   377 F. Supp. 2d 361 (S.D.N.Y. 2005) ..............................................................5

*Rotella v. Wood*,
   528 U.S. 549 (2000) ..............................................................6

*Schneberger v. Wheeler*,
   859 F.2d 1477 (11th Cir. 1988) ..............................................................17

*Stansell v. BGP, Inc.*,
   No. 8:09-cv-2501, 2011 WL 1296881 (M.D. Fla. Mar. 31, 2011) ...................................15, 16

*Strauss v. Credit Lyonnais*,
   No. 06-0702, 2007 WL 2296832 (E.D.N.Y. Aug. 6, 2007) ..............................................................6

*Tellabs, Inc. v. Makor Issues & Rights, LTD.*,
   551 U.S. 308 (2007) ..............................................................3

*United States v. Clausen*,
   290 F.3d 1301 (11th Cir. 2002) ..............................................................9

*Wydler v. Bank of Am., N.A.*,
   360 F. Supp. 2d (S.D. Fla. 2005) ..............................................................10, 11

STATUTES

18 U.S.C. § 844 .................................................................................................................14

18 U.S.C. § 2331 .....................................................................................................13, 14, 15

18 U.S.C. § 2333 .......................................................................................................... *passim*

18 U.S.C. § 2335 ...................................................................................................................6

18 U.S.C. § 2339A ......................................................................................................14, 15

OTHER AUTHORITIES

Federal Rule of Civil Procedure 9 ......................................................................................8, 9

Federal Rule of Civil Procedure 12 ....................................................................................6, 18

U.S. Dep't of State, *Country Reports on Terrorism: 2008* (Apr. 30, 2009) ...................................7

U.S. Dep't of State, *Patterns of Global Terrorism: 1997* (Apr. 1998)............................................3

Chiquita's response to the Court's show-cause order of June 6, 2011 demonstrated that plaintiffs' claims (i) were time-barred, and (ii) necessarily failed to state a claim under the Antiterrorism Act, 18 U.S.C. § 2333 ("ATA"), given their concession that Chiquita was extorted by the FARC.[1]  In response, plaintiffs' consolidated amended complaint attempts to avoid making that concession.  This attempt at artful pleading, however, cannot salvage plaintiffs' claim.

There were two principal bases for this Court's ruling in *Julin v. Chiquita Brands Int'l, Inc.*, No. 1:08-cv-20641-KAM (D.E. #68) ("*Julin* Order"), *reported at* 690 F. Supp. 2d 1296 (S.D. Fla. 2010) that claims asserted against Chiquita under the ATA, arising from alleged kidnappings and murders of Americans by the FARC in the 1990s, could proceed.  *First*, the Court held that the *Julin* complaint adequately pled "fraudulent concealment" as a basis for equitably tolling the ATA's statute of limitations.  690 F. Supp. 2d at 1307.  *Second*, the Court held that the *Julin* complaint pled an actionable theory of Chiquita's liability based upon allegations that Chiquita made "furtive, secret payments" to the FARC, "funnel[ed] weapons to the FARC," and made "false and misleading entries on its books and records" in order to conceal an illicit, cooperative relationship with the FARC.  *Id.* at 1310-13.  Neither of these rulings applies here.

*First*, plaintiffs' ATA claim is time-barred under that law's four-year statute of limitations—even under *Julin*'s equitable tolling ruling.  In 2004, Chiquita made a well-publicized disclosure, reported in newspapers nationwide, that it had paid terrorist groups in Colombia.  This disclosure necessarily brought an end to any equitable tolling of the statute of

---

[1]      D's Resp. to Ct.'s June 6, 2011 Order to Show Cause Regarding Applicability of Julin Ruling to Other ATA Actions, No. 0:08-md-01916, at 13-18 (June 17, 2011) (D.E. # 422).

limitations period.  The *Julin* plaintiffs filed their case within four years of that disclosure.

Plaintiffs here did not.  Their ATA claim therefore is untimely and must be dismissed.

*Second*, plaintiffs fail to state a claim.  Unlike *Julin*, they rely on and incorporate

by reference the Report of the Special Litigation Committee of Chiquita's Board of Directors

("SLC Report").  That pleads them out of court.  The SLC Report recites that Chiquita's

payments to the FARC were made only to prevent retaliation against employees, that the

payments were not fraudulently concealed, and that Chiquita never provided weapons or

ammunition to the FARC.  Other than attempting to mischaracterize these findings, which

Eleventh Circuit law squarely forbids, plaintiffs offer no contrary allegations of fact.  These

fundamentally different allegations from those in *Julin* necessarily fail to support a claim for

either primary or secondary liability under the ATA, and therefore warrant dismissal of

plaintiffs' consolidated amended complaint ("Complaint") with prejudice.

## BACKGROUND

### A.    The FARC and the Underlying Injuries.

Plaintiffs' Complaint re-asserts an ATA claim arising out of the FARC's alleged

kidnapping and murder of an American citizen.  (*See* Consolidated Am. Compl. ¶ 1, No. 0:08-

md-01916-KAM (D.E. #447) ("Compl."); *id.* at 16-17 (asserting one ATA "Claim for Relief").)

The FARC is alleged to be an "anti-US," Marxist terrorist group that engages in, *inter alia*,

"[a]rmed attacks against Colombian targets, bombings of US businesses, kidnappings of

Colombians and foreigners for ransom, and assassinations."  (Compl. ¶¶ 37, 39.)

Plaintiffs allege that the FARC kidnapped Frank Thomas Pescatore, Jr. on

December 10, 1996, at a coal complex in La Guajira Department, Colombia.  (*Id.* ¶¶ 46-49.)

Shortly thereafter, Mr. Pescatore "attempted to escape from his captors, but he was shot to death

when members of FARC discovered his plan."  (*Id.* ¶ 52.)  The Complaint further alleges that the

FARC hid the fact of Mr. Pescatore's death in order to prolong ransom negotiations, but when his family "failed to pay any ransom[, the] FARC dumped the body in an isolated rural area of San Juan del Cesar where it was not found until several days later on or about February 23, 1997." (*Id.* ¶¶ 50, 52-55.)

　　　　　While the Complaint does not specifically identify when plaintiffs learned of Mr. Pescatore's murder by the FARC, a fair reading of the Complaint is that they knew no later than 1998. The Complaint notes plaintiffs' contacts with the U.S. State Department and the FBI (*id.* ¶¶ 60-61), as well as the State Department's disclosure of Mr. Pescatore's murder by the FARC in a public report, *Patterns of Global Terrorism: 1997* (*id.* ¶ 56). The State Department's official web site reflects that the report was published in April 1998. *See* U.S. Dep't of State, *Patterns of Global Terrorism: 1997* (Apr. 1998), *available at* http://www.state.gov/www/global/ terrorism/1997Report/1997index.html.

### B.　　Chiquita's Extortion Payments to the FARC.

　　　　　In the Complaint, plaintiffs again rely heavily on, and thus incorporate by reference, the SLC Report filed in connection with shareholder-derivative suits in this multi-district litigation. (Compl. ¶¶ 71-72, 74-75, 78-79.)[2] This Report confirms that Chiquita's

---

[2]　　　*See* SLC Report, *In re: Chiquita Brands Int'l, Inc.*, 8:08-md-01916-KAM (S.D. Fla. Feb. 25, 2009) (D.E. # 202-4) (attached to this brief as Exhibit A). Chiquita does not affirmatively rely on the SLC Report in any way in connection with this motion. As discussed below, however, because Plaintiffs incorporated the Report by reference in their Complaint it must be considered in determining the adequacy of their allegations. *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, LTD.*, 551 U.S. 308, 310 (2007) ("[C]ourts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference . . . ."); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (holding that a document may be considered on a motion to dismiss where it is incorporated by reference to the pleading, it is central to a plaintiff's claims, and its authenticity is not questioned).

(continued…)

payments to the FARC were extorted and refutes the specious allegations in *Julin* that plaintiffs

here could not, in good faith, copy in full in their Complaint:

- *Origin of Banadex's Extortion Payments to the FARC*: "At some point between 1987 and 1989, Banadex received a demand for payment from the FARC in the amount of $10,000, delivered by a FARC representative to [a Banadex farm manager]." (SLC Report at 30.) After learning of this demand, a Banadex employee informed a Chiquita employee that "the FARC had demanded" an "extortion payment." (SLC Report at 31.) Chiquita executives in Cincinnati were thereafter consulted about the FARC's extortion demand, and Banadex was authorized to make the payment. (SLC Report at 31; *see* Compl. ¶ 79 ("According to the SLC report, payments to FARC were authorized by Chiquita's senior officers . . . ."); *id.* ¶ 72 (alleging that the SLC Report "document[s] Chiquita's decision to . . . use[ ] its wholly-owned subsidiary, Banadex, to make illicit payments to FARC with the direct knowledge and authorization of Chiquita's officers . . . .").)

- *Additional Extortion Payments to Colombian Guerrillas*: "Following the initial payment, Banadex continued to make payments *in response to extortion demands* on a more or less regular basis, mostly to the FARC but also to other guerrilla groups." (SLC Report at 32 (emphasis added).) Banadex considered that the "initial authorization" was "sufficient to cover subsequent payments of the same type and for approximately the same amounts *if necessary to ensure the safety of Company employees and property*." (SLC Report at 32 (emphasis added).) These extortion payments to various guerrilla groups, which "ranged from $100,000 to $200,000 per year," "ended sometime between 1997 and 1999." (SLC Report at 32; *see* Compl. ¶ 74 (quoting from SLC Report at 32, but inaccurately stating that the "$100,000 to $200,000" figure corresponds solely to FARC payments).)

In short, Chiquita's payments to the FARC were not "influenced by any motivation other than

the sincere and abiding belief that the[y] were necessary to protect the lives of [the Company's]

employees and the integrity of its infrastructure." (SLC Report at 261-62.)

---

Plaintiffs erroneously characterize the Report as being on behalf of "Chiquita." (Compl. ¶ 71.) That is not true. The Report was prepared by a committee of independent directors, all of whom joined Chiquita's board after the cessation of the payments at issue in this MDL proceeding, and who were given sole authority to investigate Chiquita's payments and determine whether the Company should assert claims against any current or former officers or directors. *See* SLC Report at 1-15.

C.      **Chiquita's Public Report Concerning the Payments.**

In May 2004, Chiquita filed its public quarterly report on SEC Form 10-Q for the

quarter ended March 31, 2004.  The 10-Q stated that Chiquita had paid "certain groups in

[Colombia] which have been designated under United States law as foreign terrorist

organizations."[3]  Chiquita reported this same fact in a press release issued the same day.[4]  The

disclosure was promptly and widely reported in the U.S. and Colombian media, including

leading national publications such as the New York Times.[5]

---

[3]      Chiquita Brands Int'l, Inc., Quarterly Report (Form 10-Q), at 12 (May 10, 2004),
*available at* http://www.sec.gov/Archives/edgar/data/101063/000119312504083681/d10q.htm
(attached as Exhibit B).  The Court may take judicial notice of this public disclosure on a motion
to dismiss.  *See, e.g.*, *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1260 n.2 (11th Cir. 2006)
("By taking judicial notice of SEC documents, the District Court did not transform Defendants'
motions to dismiss into a motion for summary judgment."); *Bryant v. Avado Brands Inc.*, 187
F.3d 1271, 1278 (11th Cir. 1999) ("When SEC documents are relevant only to determine what
statements or disclosures are actually contained therein, there can be little question as to
authenticity, nor can the fact that such statements or disclosures were thus publicly filed be
reasonably questioned.").

[4]      Chiquita Brands Int'l, Inc., Financial Release (May 10, 2004), *available at*
http://phx.corporate-ir.net/phoenix.zhtml?c=119836&p=irol-newsArticle&ID=525155&
highlight= (attached as Exhibit C) ("In April 2003, the company's management and audit
committee, in consultation with the board of directors, voluntarily disclosed to the U.S.
Department of Justice that the company's banana producing subsidiary in Colombia has been
forced to make 'protection' payments to certain groups in that country which have been
designated under United States law as foreign terrorist organizations. The company's sole reason
for submitting to these payment demands has been to protect its employees from the risks to their
safety if the payments were not made.").  *See e.g.*, *Fla. Evergreen Foliage v. E.I. DuPont De
Nemours & Co.*, 336 F. Supp. 2d 1239, 1262 n.21 (S.D. Fla. 2004) (concluding that Fed. R. Evid.
201 permits a court to take judicial notice of a press release "at any stage of the proceeding");
*Mitchell v. Homes*, 377 F. Supp. 2d 361, 367 n.1 (S.D.N.Y. 2005) ("The press release may be
considered on this motion to dismiss because . . .  this Court may take judicial notice of it as a
matter of public record.") (citations omitted).

[5]      *See, e.g., Lower Banana Prices Cut Chiquita's Earnings*, N.Y. Times, May 11, 2004
(attached, along with similar articles, as Exhibit D).  These articles are submitted, not for the
truth of their contents, but to demonstrate the fact that Chiquita's 2004 disclosure was reported in
newspapers.  The Court may take judicial notice of this fact at this stage.  *E.g.*, *Condit v. Dunne*,
317 F. Supp. 2d 344, 358 (S.D.N.Y. 2004).

**ARGUMENT**

**I.    PLAINTIFFS' CLAIMS ARE TIME BARRED EVEN UNDER THE EQUITABLE TOLLING PRINCIPLES APPLIED IN *JULIN*.**

      Plaintiffs claims are time-barred.  Under the ATA, a cause of action accrues on the date of the injury perpetrated by the purported terrorist or terrorist group, and must be brought within four years of that date unless the limitations period is tolled.[6]  Here, the limitations period started to run no later than 1998, the year by which plaintiffs had learned about Mr. Pescatore's murder.  *See supra* p. 3.  The *Pescatore* and *Sparrow* actions were not commenced until 2009 and 2011, respectively, well beyond the limitations period.  Because "it is apparent from the face of the [C]omplaint that the claim is time-barred," dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6).  *Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008) (citations and quotation marks omitted).

      In *Julin*, this Court found that the plaintiffs there had "pled sufficient facts" to toll the limitations period on their ATA claims and on some of their state-law claims under a theory of fraudulent concealment.  690 F. Supp. 2d at 1307, 1316.  But the applicability of this equitable-tolling theory "must be determined 'on a case-by-case basis.'" *Id.* at 1306.  Here, equitable tolling cannot resurrect plaintiffs' stale claims.  Even assuming that plaintiffs could adequately plead equitable tolling for some period of time, that tolling came to an end when Chiquita's payments to Colombian terrorist groups were reported nationwide.  Unlike the *Julin*

---

[6]    *See* 18 U.S.C. § 2335(a); *Litle v. Arab Bank*, 507 F. Supp. 2d 267, 273-74 (E.D.N.Y. 2007) ("[P]laintiffs' [ATA] claims accrued at the time they were injured, *i.e.*, on the date of the terrorist attacks giving rise to their respective claims."); *Strauss v. Credit Lyonnais*, No. 06-0702, 2007 WL 2296832, at *7 (E.D.N.Y. Aug. 6, 2007) (same); *see also Rotella v. Wood*, 528 U.S. 549, 555 (2000) ("But in applying a discovery accrual rule, we have been at pains to explain that discovery of the injury, not discovery of the other elements of a claim, is what starts the clock.").

plaintiffs, plaintiffs here filed their complaints more than four years after that disclosure. Moreover, plaintiffs' consolidated amended complaint—unlike *Julin*—incorporates the SLC Report, which prevents any application of equitable tolling to plaintiffs' claims.

### A. Plaintiffs Filed Their Claims More Than Four Years After Chiquita's Payments Were Publicly Disclosed and Reported In Newspapers Nationwide.

As this Court recognized in *Julin*, to "invoke the doctrine of equitable tolling based on . . . fraudulent concealment . . ., plaintiffs must establish that . . . [they] exercised due diligence in pursuing the discovery of the claim during the period they seek to have tolled." 690 F. Supp. 2d at 1306 (internal quotation marks omitted); *see also id.* ("[E]quity is not intended for those who sleep on their rights.") (quoting *Covey v. Arkansas River Co.*, 865 F.2d 660, 662 (5th Cir. 1989)). The standard for a discovered wrong "is a minimal one: *Any fact that should excite [plaintiffs'] suspicion is the same as actual knowledge of [their] entire claim.*" *Hill v. Texaco, Inc.*, 825 F.2d 333, 335 (11th Cir. 1987)) (emphasis added).

Under this due-diligence threshold, Chiquita's May 2004 disclosure that it had made payments to Colombian terrorist groups was clearly sufficient to terminate any equitable tolling. The disclosure stated that Chiquita had paid "certain groups in [Colombia] which have been designated under United States law as foreign terrorist organizations"—and the FARC is one of only three Colombian armed groups that have been designated as FTOs. *See* U.S. Dep't of State, *Country Reports on Terrorism: 2008*, at 283-84 (Apr. 30, 2009), *available at* http://www.state.gov/s/ct/rls/crt/2008/ (relevant excerpt attached as Exhibit E); (*see also* Compl. ¶¶ 40, 85). This news was promptly and widely reported in the U.S. media. *Supra* n.5.

This disclosure was not at issue in *Julin*, because the plaintiffs there filed their lawsuit on March 11, 2008—*i.e.*, within four years of the disclosure. Plaintiffs here, however, filed their lawsuit well over four years after the disclosure: on March 13, 2009 (*Pescatore*) and

March 9, 2011 (*Sparrow*).  Thus, even if Chiquita's purported "fraudulent concealment" tolled the limitations period, Chiquita's 2004 disclosure clearly brought this "concealment" and any concomitant tolling to an end.

B.    **In All Events, Plaintiffs' Incorporation of the SLC Report Precludes Any Assertion of Fraudulent Concealment.**

Even without regard to the May 2004 disclosure, plaintiffs cannot adequately plead *any* equitable tolling.  Unlike *Julin*, plaintiffs' consolidated amended complaint chooses to incorporate the SLC Report, which refutes plaintiffs' assertion of "fraudulent concealment."  To meet their "'burden . . . [of] show[ing] that equitable tolling is warranted,'" plaintiffs must allege facts showing, *inter alia*, that Chiquita "wrongfully concealed" its payments.  *Julin*, 690 F. Supp. 2d at 1306.  As with any allegation of fraud, plaintiffs must plead these facts with the particularity required under Federal Rule of Civil Procedure 9(b).  *See Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064, 1073 (S.D. Fla. 2003) (explaining that "[a] fraudulent concealment claim is subject to Fed.R.Civ.P. 9(b)'s requirement that the circumstances constituting fraud shall be stated with particularity").

Plaintiffs allege no such facts.  Their principal allegation is that "the SLC report confirms that Chiquita personnel used special accounting procedures to fraudulently conceal Chiquita's illicit payments" (Compl. ¶ 78).  But that is simply untrue; the SLC Report makes clear that, far from concealing its payments wrongfully, *i.e.*, to defraud or to curb lawsuits, Chiquita openly disclosed its payments to U.S. authorities in the late 1990s and coded these

payments *internally* in a manner designed to prevent "retaliation by competing guerrilla groups" but that had no effect on Chiquita's public disclosures.[7]

        Plaintiffs' remaining allegations are expressly pled "on information and belief" (Compl. ¶¶ 80-81), and therefore cannot support a claim of fraudulent concealment.  For one thing, "[w]hen Rule 9(b) applies," as it does here, "'pleadings generally cannot be based on information and belief[.]'"  *Great Fla. Bank v. Countrywide Home Loans, Inc.*, No. 10-22124, 2011 WL 382588, at *5 (S.D. Fla. Feb. 3, 2011) (quoting *United States v. Clausen,* 290 F.3d 1301, 1310 (11th Cir. 2002)). Even where the details of the purported fraud are peculiarly within the defendants' knowledge or control, "pleading based on 'information and belief' is appropriate only when the complaint adduces specific facts supporting a strong inference of fraud[.]"  *Id.* (internal quotation and citation omitted).  "Therefore, [b]ald or otherwise conclusory allegations will not suffice.  The complaint must set forth supporting facts on which the belief is founded[.]"  *Id.* (internal quotation and citation omitted).  Plaintiffs allege no facts on which these information-and-belief allegations purport to be founded.

        In addition, where allegations made on information and belief are contradicted by the contents of documents incorporated by reference, the detailed assertions prevail.  *See Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations.  Indeed, when the exhibits contradict the general and

---

[7]    SLC Report at 30 n.27 (noting the "fact that [the FARC payments] were fully disclosed to the SEC and DOJ during the 1998-2001 investigation of the Company"); *id.* at 57-59 (discussing the fact that FARC payments "were discussed during meetings with the SEC, DOJ and the USAO SDNY and in testimony before the SEC"); *id.* at 35-37 (discussing internal procedures and accounting relating to guerrilla payments).

conclusory allegations of the pleading, the exhibits govern."); *Court-Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.*, No. 05-60055, 2011 WL 1232986, at *7 (S.D. Fla. Mar. 30, 2011) (same) (Marra, J.).[8] Here, the SLC Report flatly contradicts plaintiffs' generalized, information-and-belief allegations. Plaintiffs' Complaint contends that they mean to incorporate the SLC Report in their pleading only to the extent that it supports rather than undermines their claim (Compl. ¶ 71 n.1), but that is precisely the result that *Griffin* rejects. Having chosen to predicate their assertions of fraudulent inducement on the SLC Report, plaintiffs cannot evade the Report's actual findings on that subject through information-and-belief allegations unsupported by any concrete facts.

In short, the Complaint does not allege a single fact sufficient to establish fraudulent concealment. Thus, even under *Julin*, the requisite "fraudulent deception[]" is inadequately pled here. 690 F. Supp. 2d at 1306.

## II. PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE ITS RELIANCE ON THE SLC REPORT PREVENTS PLAINTIFFS FROM STATING A CLAIM.

Unlike the plaintiffs in *Julin*, plaintiffs here—like the plaintiffs in *Stansell*, No. 9:10-cv-80954-KAM—premise their ATA claim on the unprecedented theory that those who capitulate to the extortion demands of a violent terrorist organization are liable under the ATA. No court has extended the ATA's reach to such absurd extremes, including this Court in *Julin*.

---

[8]     There is no difference for this purpose between a document physically appended to the complaint and one incorporated by reference but not attached. *See Wydler v. Bank of Am., N.A.*, 360 F. Supp. 2d at 1306 n.1 (S.D. Fla. 2005) ("It is well-settled that when considering a motion to dismiss, a court may consider not only the pleadings, but also the exhibits attached thereto. A court may consider documents attached to the complaint or directly referred to in the complaint . . .") (internal citation omitted).

The Court's refusal to dismiss the ATA claims in *Julin* does not compel the same result here given the substantially-different factual allegations at issue.

> **A.    Plaintiffs Cannot Avoid the Import of Their Incorporation of the SLC Report.**

Because the SLC Report is central to plaintiffs' allegations about Chiquita's conduct (Compl. ¶¶ 71-72, 74, 76, 78-79), the complaint necessarily incorporates the SLC's finding that Chiquita was extorted by the FARC and paid the FARC solely for that reason (SLC Report at 166-169, 261-62). *See Day v. Taylor*, 400 F.3d at 1276 (holding that a document may be considered on a motion to dismiss where it is incorporated by reference to the pleading, it is central to a plaintiff's claims, and its authenticity is not questioned).

As noted above, while the consolidated amended complaint seeks to avoid this result by purporting to disclaim reliance on the Report "to the extent any such findings directly or indirectly contradict the allegations" in the Complaint (Compl. ¶ 71 n.1), a court faced with a conflict in the pleadings may *not* credit the allegations that support the plaintiffs' claim and disregard those that undermine the pleading.  Rather, the court is required to credit specific allegations over the general, including crediting details from incorporated documents over contrary allegations in the complaint.  *See Griffin*, 496 F.3d at 1205-06; *Court-Appointed Receiver of Lancer Offshore,* 2011 WL 1232986, at *7 (Marra, J.).

Plaintiffs' consolidated amended complaint alleges no factual allegations which would defeat the extortion findings of the SLC Report on which the pleading relies.  To be sure, the Complaint alleges that the SLC Report "documented instances" in which "Chiquita or its Banadex subsidiary permitted Chiquita's transportation network to be used to ship arms and ammunition to Colombian guerrilla groups."  (Compl. ¶ 76.)  But the SLC Report does no such thing; to the contrary, it says that there is "no factual support for the allegation that Banadex

provided the FARC with 'weapons, ammunition, and other supplies through its transportation contractors.'" (SLC Report at 217; *see id.* at 72-74.) To skirt this inconvenient fact, the Complaint alleges that there are "other credible reports (not including the SLC report)" that the FARC was "able to obtain weapons as a result of Defendants' actions and failures to reasonably protect others from harm . . . ." (Compl. ¶ 76.) But this paragraph does not allege that Chiquita provided weapons to the FARC. All it alleges is that other people have claimed that the FARC was able to obtain weapons as a result of Chiquita's "actions"—and the only such actions alleged in the complaint are Chiquita's extortion payments.

In the face of Chiquita's demonstration in its response to the Court's show-cause order that extortion payments cannot give rise to liability under the ATA, the consolidated amended complaint also adds a new paragraph intended to conform to the allegations that this Court found sufficient to state a claim in *Julin*. (Compl. ¶ 73.) But consistent with the fact that plaintiffs have never alleged anything other than extortion until now, this paragraph—vague and artfully-drafted, with disclaimers of personal knowledge, ambiguously-defined pronouns, and extensive use of the passive voice to cloud the identity of the actor (*e.g.*, "Chiquita apparently used its relationship," "this was done", "packing supplies were burned,")—never alleges that Chiquita paid the FARC for any reason other than that it was extorted, and asserts no facts that contradict anything contained in the SLC Report.

Thus, the sole factual allegation about Chiquita's behavior that emerges from the Complaint and the document it heavily relies on and incorporates by reference is that Chiquita made payments to the FARC in response to extortive demands prior to Mr. Pescatore's murder in 1997. *Supra* p. 3.

**B.    Plaintiffs' Allegations Fail to Establish Chiquita's Direct Liability Under the ATA.**

To state a claim for relief under the civil remedies provision of the ATA, 18

U.S.C. § 2333, plaintiffs must show that they were injured "by reason of an act of international

terrorism."  To qualify as an act of "international terrorism" for purposes of section 2333, an act

must meet three criteria:  it must (i) involve "violent acts or acts dangerous to human life" in

violation of U.S. criminal laws, 18 U.S.C. § 2331(1)(A); (ii) "appear to be intended" to

intimidate or coerce a civilian population, or to affect or influence the conduct or policy of a

government. *id.* § 2331(1)(B); and (iii) "occur primarily outside the territorial jurisdiction of the

United States," *id.* § 2331(C).  An act that does not satisfy all three prongs of this definition is

not an act of "international terrorism" under the ATA and therefore does not give rise to liability

under section 2333.

In response to the Court's show-cause order, Chiquita demonstrated that

payments made as a result of extortion do not qualify as acts of "international terrorism"—and

therefore cannot form the basis for primary liability under the ATA—because they lack an

objective appearance of intent to intimidate or coerce a civilian population.  D's Resp. to Ct.'s

June 6, 2011 Order to Show Cause Regarding Applicability of Julin Ruling to Other ATA

Actions, No. 0:08-md-01916, at 15-17 (June 17, 2011) (D.E. # 422).

Plaintiffs now effectively concede the point.  Unlike their prior pleadings, their

consolidated amended complaint no longer alleges that Chiquita itself committed an act of

international terrorism. [9]  That concession is fatal to plaintiffs' claim that Chiquita is primarily

---

[9]    *Compare* Original Pescatore Compl. ¶ 74, No. 9:09-cv-80683-KAM (D.E. #1)
("Plaintiffs have been injured . . . by reason of *acts of international terrorism committed by the
defendants* . . . .") (emphasis added) & Original Sparrow Compl. ¶ 76, No. 9:11-cv-80402-KAM
(continued…)

liable under the ATA; primary liability under section 2333 consists precisely of committing an act of international terrorism.

In *Julin*, this Court held that such a claim could also be stated without regard to the definition of international terrorism under § 2331, on the grounds that "Section 2339A of Title 18 of the United States Code created a civil cause of action for those injured by terrorist acts against individuals who provided support to terrorist groups."  690 F. Supp. 2d at 1312. Respectfully, this holding was clear error and cannot be followed here.

Section 2339A is a criminal provision.  It provides exclusively for a criminal penalty.  It sets forth no civil remedy and creates no civil cause of action.  The only provision of the ATA creating a civil cause of action is section 2333, which is entitled "Civil Remedies." It provides civil remedies only for acts of "international terrorism," as defined in section 2331(1). Even if plaintiffs had sufficiently alleged facts showing that Chiquita's extortion payments to the FARC violated 18 U.S.C. § 2339A or other criminal laws, such a violation—standing alone— satisfies only the first of the three prongs of the definition of "international terrorism." *See Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 691-92 (7th Cir. 2008) (en banc) ("*Boim III*").  It does not necessarily meet the other prongs, all three of which must be satisfied for there to be primary civil liability under the ATA.  *See, e.g.*, 18 U.S.C. 2339A(a) (prohibiting material support to violate, *inter alia*, 18 U.S.C. § 844(i) (arson), which requires neither the objective terrorist intent nor the international dimension of "international terrorism" under 18 U.S.C. §§ 2331(1)(B)-(C)).

_____

(D.E. #1) (same), *with* Compl. ¶ 82 ("Plaintiffs were injured . . . by reason of acts of international terrorism *committed by FARC with the support of the Defendants* . . . .") (emphasis added).

In support of its assertion that "Section 2339A . . . created a civil cause of action," the Court cited to *Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254, 318 (2d Cir. 2007) (Katzmann, J., concurring).  *See Julin*, 690 F. Supp. 2d at 1312.  But *Khulumani* did not involve any claims under the ATA, and did not purport to hold that Section 2339A creates a cause of action.  Rather, it attributed that conclusion to the *Boim* case—in which the en banc Seventh Circuit has stated that a violation of Section 2339A does *not* give rise to civil liability unless it meets all three prongs of section 2331(1)'s definition of international terrorism.  Specifically, *Boim III* states that through "a chain of explicit statutory incorporations by reference," a violation of section 2339A "*may* violate section 2333."  *Boim III*, 549 F.3d at 690 (emphasis added).  It then goes on to state that a violation of section 2339A nonetheless will *not* violate section 2333—and thus will not give rise to civil liability—in circumstances where it does not appear to be intended to intimidate or coerce a civilian population, or to affect or influence the conduct or policy of a government (as required by the second prong of section 2331(1)'s definition of international terrorism), such as when the Red Cross knowingly provides battlefield assistance to an injured terrorist.  *Boim III*, 549 F.3d at 699.

Thus, as *Boim III* makes clear, to state a claim for primary liability under the ATA, plaintiffs must allege facts showing that Chiquita's conduct appeared to be intended to intimidate or coerce a civilian population, or to affect or influence the conduct or policy of a government.  18 U.S.C. § 2331(1)(B).  Allegations of extortion payments, however, fail to satisfy this statutory requirement.

The Middle District of Florida recently reached precisely this result in a case brought by the *Stansell* plaintiffs against a different defendant:

> Plaintiffs simply state, in conclusory fashion, that Defendants['] actions appear to be intended to achieve any of the enumerated

results [in § 2331(1)(B)].  Plaintiffs' factual allegations, however,
contradict that assertion.  Specifically, Plaintiffs allege Defendants
made payments to the FARC 'in exchange for the FARC's
agreement to allow [Defendants] to conduct [their] oil exploration
activities without fear of terrorist acts.'  This allegation would not
lead an objective observer to conclude Defendants intended to
achieve any one of the results listed in § 2331(1)(B).

*Stansell v. BGP, Inc.*, No. 8:09-cv-2501, 2011 WL 1296881, at *9 (M.D. Fla. Mar. 31, 2011)

(citations omitted).

      Here, like in *Stansell v. BGP*, the extortion payments alleged do not appear to

have the requisite terrorist intent that the statute requires, and therefore cannot support a claim

for primary liability under the ATA.  This Court cannot reach a different result based on a single

sentence of dicta, from a concurring opinion, in a case not involving ATA claims—especially

when that dicta is refuted by the court to which it is attributed and is flatly contrary to the plain

language of the statute.   No court has held that the punitive liability of the ATA (which imposes

treble damages, 18 U.S.C. § 2333(a)) extends to extortion payments made under threat of force.[10]

---

[10]  *Julin* and other ATA cases are readily distinguishable on their facts.  The allegations in
*Julin* portrayed Chiquita as a willing FARC collaborator that made voluntary payments and
supplied weapons and other services to this group (*e.g.*, assistance creating dummy entities).  690
F. Supp. 2d at 1302-03.  The defendants in *Boim* were Islamic charities dedicated to raising and
donating funds to HAMAS and its "cause."  *Boim v. Quranic Literacy Inst.*, 340 F. Supp. 2d 885,
908-13 (N.D. Ill. 2004).  The defendant in *Linde* allegedly acted on behalf of HAMAS as the
administrator of a fund that rewarded the families of "martyrs" (*i.e.*, suicide bombers).  *Linde v.
Arab Bank, PLC*, 384 F. Supp. 2d 571, 576-78 (E.D.N.Y. 2005); *see also Abecassis v. Wyatt*, 704
F. Supp. 2d 623, 655-56 (distinguishing *Linde*).  And the defendant in *Goldberg* allegedly
provided financial services to HAMAS in "conscious and deliberate disregard of the interest of
others."  *Goldberg v. UBS A.G.*, 660 F. Supp. 2d 410, 428 (E.D.N.Y. 2009).  Voluntary
donations and services to terrorists of the type alleged in these cases have been found to violate
the civil provisions of the ATA because they are made in reckless disregard of others' safety and
without justification.  *See Boim III*, 549 F.3d at 693; *Julin*, 690 F.Supp. 2d at 1313 (endorsing the
criminal recklessness standard applied in *Boim III*).  The same cannot be said of extortion
payments made precisely out of regard for others' safety.

**C.      Plaintiffs' Allegations Fail to Establish Chiquita's Secondary Liability Under the ATA Standards Set Forth in *Julin*.**

Plaintiffs also appear to make claims for aiding and abetting and conspiracy under the ATA (*see* Compl. ¶¶ 92-95), but their factual allegations likewise fail to support these claims.  Lacking the allegations that this Court found sufficient in *Julin*, these plaintiffs' only well-pled factual allegation is that Chiquita made payments to the FARC; payments that, according to the document plaintiffs chose to incorporate by reference, were extorted.  *See supra* pp. 3-4.  To equate an extortion victim with the extortionist for liability purposes defies common sense and has no precedent in the case law

An extortion victim is simply not the extortionist's "aider and abettor" in criminal activity.  By definition, an aider and abettor must play a conscious "role in the violation" at issue.  *Julin*, 690 F. Supp. 2d at 1310 (citing *Schneberger v. Wheeler,* 859 F.2d 1477 (11th Cir. 1988)); *see also Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) (requiring "aware[ness] of [one's] role as part of an overall illegal or tortious activity").  In *Julin*, this Court credited allegations indicating that Chiquita played such a role in the FARC's illegal activities. 690 F. Supp. 2d at 1310-11.  But those allegations are absent here, which instead incorporate facts establishing that Chiquita's payments to the FARC were extorted.  *See supra* pp. 3-4.  The pleadings thus fall well short of establishing that Chiquita played any "role" akin to the paradigmatic get-away-car driver in any of the FARC's crimes, let alone in the kidnapping and murder of an American.

An extortion victim is likewise not the extortionist's co-conspirator in criminal activity.  Unlike the allegations found sufficient in *Julin*, 690 F. Supp. 2d at 1311, the factual allegations here establish no intentional agreement between Chiquita and the FARC to further any common criminal scheme, let alone that Mr. Pescatore's kidnapping and murder were acts

17

done in furtherance of any such purported scheme.  Rather, the allegations here, which are

largely based upon and incorporate the SLC Report, indicate that Chiquita authorized its

subsidiary to comply with the FARC's extortive demands to prevent violence against employees.

*See supra* pp. 3-4.  Plaintiffs' secondary liability claims should therefore be dismissed.

## CONCLUSION

For the foregoing reasons and the reasons set forth in its previous motions to

dismiss, Chiquita respectfully requests that the Court dismiss the Complaint with prejudice under

Federal Rule of Civil Procedure 12(b)(6).[11]


Dated:          July 29, 2011                          Respectfully submitted,


John E. Hall                                    _____/s/ Christopher S. Rapp_____
José E. Arvelo                                  Sidney A. Stubbs (Fla. Bar No. 095596)
COVINGTON & BURLING LLP                         Robert W. Wilkins (Fla. Bar No. 578721)
1201 Pennsylvania Avenue, N.W.                  Christopher S. Rapp (Fla. Bar No. 0863211)
Washington, D.C.  20004                         csrapp@jones-foster.com
Telephone: (202) 662-6000                       JONES, FOSTER, JOHNSTON & STUBBS, P.A.
Fax: (202) 662-6291                             505 South Flagler Drive, Suite 1100
                                                West Palm Beach, Florida 33401
Jonathan M. Sperling                            Telephone: (561) 659-3000
COVINGTON & BURLING LLP                         Fax: (561) 650-0412
The New York Times Building
620 Eighth Avenue
New York, NY  10018
Telephone:  (212) 841-1000
Fax:  (212) 841-1010

                                                *Counsel for Chiquita Brands International, Inc.*

---

[11]     Chiquita also preserves for appeal the arguments that this Court rejected in *Julin*,
including that there is no secondary liability under the ATA and that plaintiffs must establish
causation in fact, in addition to proximate cause, to prevail on an ATA cause of action.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed the foregoing document with the

Clerk of the Court using CM/ECF on this 29th day of July, 2011.  I also certify that the foregoing

document is being served this day on all counsel of record via transmission of Notices of

Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel

who are not authorized to receive electronically Notices of Electronic Filing.


By:     /s/ Christopher S. Rapp
Fla. Bar No. 0863211
csrapp@jones-foster.com