### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

## CASE NO.:  08-MD-01916 (MARRA/JOHNSON)

IN RE: CHIQUITA BRANDS

INTERNATIONAL, INC. ALIEN

TORT STATUTE AND SHAREHOLDER

DERIVATIVE LITIGATION

_____/

This Document Relates To:

ATS ACTIONS

_____/


NO. 08-80421-cv-MARRA/JOHNSON


JOHN DOE 1 et al.,

v.

CHIQUITA BRANDS INTERNATIONAL, INC., et al.

_____/


NO. 08-80480-cv-MARRA/JOHNSON


DOES 1-888,

v.

CHIQUITA BRANDS INTERNATIONAL, INC., et al.

_____/


NO. 08-80508-cv-MARRA/JOHNSON


JOSE LEONARDO LOPEZ VALENCIA et al.

v.

CHIQUITA BRANDS INTERNATIONAL, INC., et al.

_____/

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  08-MD-01916 (MARRA/JOHNSON)


NO. 9:08-cv-80465-KAM


DOES (1-144) and PEREZES (1-95)

v.

CHIQUITA BRANDS INTERNATIONAL, INC., et al.

_____/


NO: 07-cv-60821-KAM


ANTONIO GONZALEZ CARRIZOSA, et. al.

v.

CHIQUITA BRANDS INTERNATIONAL, INC., et. al.

_____/

NO. 10-cv-60573-MARRA/JOHNSON


Angela Maria Henao Montes, et al.

v.

CHIQUITA BRANDS INTERNATIONAL, INC., et al.,

_____/


**PLAINTIFFS' MOTION TO PARTIALLY LIFT THE STAY OF DISCOVERY FOR THE
LIMITED PURPOSE OF PERMITTING DISCOVERY ON ISSUES RELATED TO
DEFENDANTS' MOTION TO DISMISS FOR FORUM NON CONVENIENS
AND SUPPORTING MEMORANDUM OF LAW**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 4

    A.    The Court Has Broad Discretion to Permit Limited  Discovery for
        Purposes of the *FNC* Motion ...................................................................... 4

    B.    A Brief 120-Day Lift of the Stay of Discovery is Appropriate Here  to
        Allow Plaintiffs a Meaningful Opportunity to Conduct the  Discovery
        Necessary to Oppose Defendants' *FNC* Motion...................................... 7

            1.    Plaintiffs Need to Depose Defendants' Purported Foreign Law
                  Experts ........................................................................................ 8

            2.    Plaintiffs Need Discovery Relating to the Pending Colombian
                  Actions and the Availability and Adequacy of the Colombian
                  Courts.......................................................................................... 9

            3.    Plaintiffs Need Discovery Pertaining to the Nature, Quality,
                  Quantity and Accessibility of Evidence in the United States and
                  Colombia.................................................................................... 10

            4.    Plaintiffs Need Discovery Regarding the Third Parties
                  Defendants Will Seek to  Implead if this Litigation were to be
                  Filed in Colombia ..................................................................... 12

    C.    Defendants Will Not Be Unduly Burdened by Providing the Limited,
        Particularized Discovery Sought by Plaintiffs...................................... 13

CONCLUSION................................................................................................... 14

## TABLE OF AUTHORITIES

**Cases**

*Air Crash Disaster of Aviateca Flight 901 Near San Salvador, El Salvador,*
29 F. Supp. 2d 1333 (S.D. Fla. 1997) ...................................................................... 6

*Bridgestone/Firestone Litigation,*
131 F. Supp.2d 1027 (S.D. Ind. 2001) ...................................................................... 7

*C.A. La Seguridad v. Transytur Line,*
707 F. 2d 1304 (11th Cir. 1983) .............................................................................. 8

*Commercial Marine, Inc. v. New Hampshire Ins. Co.,*
2010 WL 5067608 (S.D. Fla. Dec. 7, 2010) ............................................................ 5

*Doe v. Sun Int'l Hotels, Ltd.,*
20 F. Supp. 2d 1328 (S.D. Fla. 1998) ...................................................................... 5

*Eastman Kodak Co. v. Kavlin,*
978 F. Supp. 1078 (S.D. Fla. 1997) ......................................................................... 6

*Gulf Oil Corp. v. Gilbert,*
330 U.S. 501 (1947) ................................................................................................. 7

*Kamel v. Hill–Rom Company, Inc.,*
108 F.3d 799 (7th Cir. 1997) ................................................................................... 7

*Lacey v. Cessna Aircraft Co.,*
862 F.2d 38 (3d Cir. 1988) ...................................................................................... 8

*Membreno v. Costa Crociere, S.p.A.,*
347 F. Supp. 2d 1289 (S.D. Fla. 2004) .................................................................... 6

*Moore v. Armour Pharmaceutical Co.,*
927 F.2d 1194 (11th Cir. 1991) ............................................................................... 5

*Piper Aircraft Co. v. Reyno,*
454 U.S. 235 (1981) ................................................................................................. 7

*Silberman v. Innovation Luggage, Inc.,*
2002 WL 31175226 (S.D.N.Y. Sept. 30, 2002) ....................................................... 9

*Theunissen v. Matthews,*
935 F.2d 1454 (6th Cir. 1991) ................................................................................. 5

*Trading v. Russian Aluminum,*
2002 WL 987257 (S.D.N.Y. May 14, 2002) ............................................................ 8

*Van Cauwenberghe v. Biard,*
486 U.S. 517 (1988) .............................................................................................. 6, 7

**Rules**

Fed. R. Civ. P. Rule 26(f)(3)(B) .............................................................................. 5

## INTRODUCTION

As this Court is aware, this litigation involves claims under the Alien Tort Statute ("ATS"), Torture Victims Protection Act ("TVPA"), various state laws and Colombian law. These claims arise out of the conduct by Chiquita Brands International, Inc. and its former Colombian subsidiary Banadex ("Defendants") in making regular payments nearly every month from sometime in 1997 through February 4, 2004, totaling over $1 million, to a violent, right-wing Specially-Designated Global Terrorist organization in Colombia known as the Autodefensas Unidas de Colombia ("the AUC"). There are 7 pending ATS complaints and the first of the ATS complaints was filed in June 2007.

In its September 14, 2008 Amended First Case Management Order, this Court ordered a stay of discovery, suspending all Rule 26(f) obligations until convening "a further conference with the parties, if appropriate, after deciding the motions to dismiss" (Amended First Case Management Order at 7) (D.E. 141). On June 3, 2011, this Court issued its Opinion and Order on Defendants' Motions to Dismiss Plaintiffs' Amended Complaints, denying Defendants' Motions in large part and allowing Plaintiffs to move forward with claims brought under the Alien Tort Statute and Torture Victims Protection Act for torture, extrajudicial killing, war crimes and crimes against humanity (D.E. 412). In the time since its Order on the Motions to Dismiss, the Court has not lifted the stay of discovery and several other motions have been filed in this case. On July 20, 2011, Defendants filed a Motion for Certification of Controlling Questions of Law for Interlocutory Appeal Pursuant to U.S.C. § 1292(b) ("Motion for Interlocutory Appeal") (D.E. 454). Two days later, on July 22, 2011, Plaintiffs filed a Motion for Reconsideration of Parts III and IV of the Court's June 3, 2011 Opinion and Order ("Motion for Reconsideration") (D.E. 457). Both of these motions are currently pending before this Court.

Now – more than four years after the claims giving rise to this case were initially filed in June of 2007 and after Defendants' previous Motions to Dismiss have been largely denied – Defendants have filed a Motion to Dismiss for *Forum Non Conveniens* ("*FNC* Motion").[1] Defendants' *FNC* Motion seeks the dismissal of all of Plaintiffs' claims, asserting that Colombia is the appropriate forum for the litigation of those claims.  Shortly after Defendants filed their *FNC* Motion, counsel for Plaintiffs sent counsel for Defendants a detailed letter requesting discovery and a limited exchange of information in connection with responding to the *FNC* Motion.  That same day, counsel for Defendants rejected Plaintiffs' request, stating that discovery was not necessary.  Accordingly, Plaintiffs filed a Motion for Interim Extension on Submission of Plaintiffs' Response to Defendants' Motion to Dismiss for *Forum Non Conveniens* ("Motion for Extension") (D.E. 503), requesting a 45-day extension to permit Plaintiffs sufficient time and opportunity to accurately identify the discovery that must be undertaken and tasks that must be completed in order for Plaintiffs to respond appropriately to Defendants' *FNC* Motion.  This Court granted Plaintiffs' Motion for Extension on November 21, 2011 (D.E. 504), and later amended that Order, granting Plaintiffs until January 3, 2011 to determine what discovery tasks needed to be completed and the time necessary for completion in order to properly respond to Defendants' *FNC* Motion (D.E. 505).

---

[1] While Defendants attempt to justify the delay in filing their FNC Motion by referring to "recent developments in this litigation," Defendants fail to adequately explain why the facts upon which they base their *FNC* Motion were not readily apparent either immediately upon the commencement of this litigation or, at the very least, at some point well before the Motion was actually filed (*FNC* Motion at 1, 5-6).  For example, Defendants' fail to elaborate on how Plaintiffs' "legal theories have evolved into claims now highly likely to turn on Colombian law," particularly as Colombian law was a part of this case at its inception and, indeed, was only *out* of this case during the brief period from the Court's June Order on the Motions to Dismiss until the September Hearing on the Motions for Reconsideration and for Interlocutory Appeal (*FNC* Motion at 5).  Furthermore, by Defendants' own admission, "[t]he AUC disbanded five years ago"; thus, while a "recent development" with regard to the overall Colombian conflict, the disbanding of the AUC is certainly not a "recent development" with regard to this litigation, which the disbanding actually predates (*FNC* Motion at 36).

The September 2008 discovery stay remains in effect.  Given the intensely fact-based nature of Defendants' voluminous *FNC* Motion, Plaintiffs will be unable to adequately respond without limited discovery.  Defendants filed a 38-page memorandum of law accompanied by supporting Declarations of two purported experts and exhibits totaling over 350 additional pages. Among other things,  Defendants argue that Colombian courts are an adequate alternative for Plaintiffs (*FNC* Motion at 8-10), that public interest factors weigh in favor of litigating these claims in Colombia instead of the United States, from where Defendants and its officers and directors orchestrated the illegal funneling of money to the AUC (*FNC* Motion at 28), that the litigation will burden Colombian courts less than it will burden this Court (*FNC* Motion at 29-30), that Plaintiffs – whose loved ones were killed, kidnapped, raped and tortured by the AUC – should not harbor any safety concerns about litigating their claims in Colombia (*FNC* Motion at 32-37), and that litigating these claims in Colombia will allow Defendants to implead potentially-liable third party defendants (*FNC* Motion at 23-24).  Defendants' *FNC* Motion is based on documents and other discoverable material that Plaintiffs have no knowledge of or access to, and Plaintiffs will not be able to adequately respond to Defendants' Motion unless this Court grants the partial lift of the stay of discovery requested herein.

Thus, Plaintiffs respectfully request a 120-day lift of the current stay of discovery in order to conduct limited and expedited discovery, as well as an additional 30 days thereafter to respond to Defendants' *FNC* Motion.[2]  Without the limited and particularized discovery requested herein, Plaintiffs will be severely and unduly prejudiced in attempting to put forth any meaningful opposition to Defendants' *FNC* Motion.

---

[2] In the event that the Court has not issued a ruling on the pending Motion for Reconsideration during the requested 120-day discovery period, Plaintiffs respectfully request an additional 30 days after the Court's decision on the Motion for Reconsideration to respond to the *FNC* Motion, as the nature of the claims that will proceed in the case may have an impact on the *FNC* Motion.

## ARGUMENT

**A.     The Court Has Broad Discretion to Permit Limited
         Discovery for Purposes of the *FNC* Motion**

Courts have broad discretion in managing discovery, including the power to phase discovery in appropriate circumstances. *E.g., Moore v. Armour Pharmaceutical Co.*, 927 F.2d 1194, 1197 (11th Cir. 1991); *Theunissen v. Matthews*, 935 F.2d 1454, 1465 (6th Cir. 1991); Fed. R. Civ. P. Rule 26(f)(3)(B) (the discovery plan must include the parties' views and proposals on "whether discovery should be conducted in phases or be limited to or focused on particular issues").

Courts in the Southern District of Florida frequently permit limited discovery pertaining to *forum non conveniens* motions. *See Doe v. Sun Int'l Hotels, Ltd.*, 20 F. Supp. 2d 1328, 1329 (S.D. Fla. 1998) ("Sun International Hotels filed a motion to dismiss based on *forum non conveniens* seeking to dismiss the lawsuit [and] the Court stayed all discovery in this matter not related to the issue of *forum non conveniens*"); *Rolls-Royce Commercial Marine, Inc. v. New Hampshire Ins. Co.*, 2010 WL 5067608 (S.D. Fla. Dec. 7, 2010) (where parties filed opposing *forum non conveniens* motions in the Southern District of Florida and England, the Florida court "took judicial notice of [the English opinion concluding that England provided the most convenient forum] and ordered the parties to further limit discovery to only *forum non conveniens* and international abstention"); *In re Air Crash Disaster of Aviateca Flight 901 Near San Salvador, El Salvador*, 29 F. Supp. 2d 1333, 1337-38, 1354 (S.D. Fla. 1997) (noting that "the Court ordered the parties to proceed with discovery directed to the issues of *forum non conveniens* and the 'principal place of business' of the carrier [and, after noting that t]he parties ha[d] completed discovery as to th[ose] issues," dismissing the *forum non conveniens* motion without prejudice); *Eastman Kodak Co. v. Kavlin*, 978 F. Supp. 1078, 1082 (S.D. Fla. 1997)

("Defendants' motions to dismiss have been pending since October of 1996 to allow the parties discovery on the personal jurisdiction and *forum non conveniens* issues.   The Court has previously issued a protective order limiting the scope of discovery to those two issues pending resolution of the motions to dismiss"); *Membreno v. Costa Crociere, S.p.A.*, 347 F. Supp. 2d 1289, 1290 (S.D. Fla. 2004) ("[t]he Court also set a briefing and discovery schedule as to Defendants' Motion to Dismiss Based Upon *Forum Non Conveniens*").   Moreover, a court may appropriately limit discovery to issues relevant to the *FNC* Motion without getting into the broader facts and legal issues that need to ultimately be determined in the case.   *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988) (noting that it is "undoubtedly true that in certain cases, the *forum non conveniens* determination will not require significant inquiry into the facts and legal issues presented by a case").   That is particularly true here, where the line between *forum non conveniens* issues and merits issues can be easily drawn.

On a motion to dismiss based on *forum non conveniens*, it is particularly important to present the court with a thorough factual foundation.   "When ruling on a motion to dismiss for *forum non conveniens*, [a c]ourt conducts a fact-based inquiry."   *In re Bridgestone/Firestone Litigation*, 131 F. Supp.2d 1027, 1029 (S.D. Ind. 2001) (court permitted discovery prior to deciding whether dismissal was warranted for *forum non conveniens*).   In deciding a *forum non conveniens* motion, "[a] court must determine whether there is an adequate alternative forum available to adjudicate the case and consider no less than a total of ten private and public interest factors."   *Id.* (citing *Kamel v. Hill–Rom Company, Inc.*, 108 F.3d 799, 802-03 (7th Cir. 1997)). The private interest factors "include the relative ease of access to sources of proof; availability of compulsory process for the attendance of unwilling witnesses; the cost of obtaining the attendance of willing witnesses; the possibility of viewing the premises, if necessary; and all

other practical problems that make trial of a case easy, efficient and economical." *Kamel*, 108 F.3d at 803 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The public interest factors "include the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)).

"Considering and weighing these factors requires the court to 'scrutinize the substance of the dispute between the parties to evaluate what proof is required and [to] determine whether the pieces of evidence cited by the parties are critical, or even relevant to the plaintiff's cause of action and to any potential defenses to the action,' [a] rather daunting task [and] hardly one to be undertaken without adequate information." *Bridgestone/Firestone*, 131 F. Supp.2d at 1029 (quoting *Van Cauwenberghe*, 486 U.S. at 528 (itself quoting *Gilbert*, 330 U.S. at 509)). "Therefore, it behooves courts to permit discovery on facts relevant to *forum non conveniens* motions," as "development of the relevant facts is vital to a decision strong enough to withstand appeal." *Id.* at 1029-30 (citing, *inter alia*, *C.A. La Seguridad v. Transytur Line*, 707 F. 2d 1304, 1308-10 (11th Cir. 1983) (vacating and remanding so that the district court could specify facts sufficient to support its *forum non conveniens* dismissal); *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 44-45 (3d Cir. 1988) (reversing and remanding district court's grant of *forum non conveniens* dismissal because defendants did not submit sufficient information to allow district court to properly examine motion: "[w]hile we are aware that a motion to dismiss for *forum non conveniens* does not call for a detailed development of the entire case, we conclude that the

defendants' failure to provide any record support for their contentions precluded the district court from scrutinizing the substance of the dispute between the parties and from determining whether evidence and arguments relied upon by the parties are critical or even relevant to the plaintiff's cause of action or the defendants' potential defenses") (citation omitted)).

Notably, where, as here, a defendant includes affidavits from foreign law experts in connection with a motion to dismiss for *forum non conveniens*, courts have found that limited discovery on the basis of those experts' conclusions and qualifications is appropriate. *See Bridgestone/Firestone*, 131 F. Supp.2d at 1031 (permitting deposition of foreign law experts where experts "make sweeping conclusions based on the statements of law they set forth" in support of defendants' *forum non conveniens* motion, with discovery to focus on both the bases for those conclusions and the experts' qualifications to reach such conclusions); *Base Metal Trading v. Russian Aluminum*, 2002 WL 987257, at *4 (S.D.N.Y. May 14, 2002) (holding, in *forum non conveniens* case, that where defendants submitted declarations from several foreign law experts in support of various motions, plaintiffs would be entitled to "investigate the bases for the opinions of the Defendants' foreign law experts through depositions"); *Silberman v. Innovation Luggage, Inc.*, 2002 WL 31175226, at *2 (S.D.N.Y. Sept. 30, 2002) (in case involving order directing plaintiffs to serve expert report, district court held that "a party is entitled to discovery regarding its adversary's foreign law expert, just as it is entitled to discovery regarding any other kind of expert").

**B.     A Brief 120-Day Lift of the Stay of Discovery is Appropriate Here
to Allow Plaintiffs a Meaningful Opportunity to Conduct the
<u>Discovery Necessary to Oppose Defendants' *FNC* Motion</u>**

Based on the allegations and assertions made in Defendants' *FNC* Motion, it is appropriate to grant Plaintiffs a partial lift of the stay of discovery in order to obtain limited discovery on certain specific issues that Defendants have raised.  Without the narrow discovery requested here, Plaintiffs will be unable to adequately respond to many of the contentions in Defendants' *FNC* Motion and will be unduly prejudiced in opposing the potentially dispositive arguments contained therein.

The limited areas of discovery sought by Plaintiffs are described more thoroughly below.

1.      *Plaintiffs Need to Depose Defendants' Purported Foreign Law Experts*

A significant portion of Defendants' *FNC* Motion cites to the Declarations of Defendants' Colombian counsel and purported experts (*FNC* Motion at 5-6).  These Declarations run the gamut from statements on the particulars of the Colombian civil law system to factual assertions related to specific actions already filed against Defendants in Colombia (*FNC* Motion at 8-9, 18-19, 22-25), from purported facts about the history of the Colombian conflict to updates on the recent developments in that conflict (*FNC* Motion at 6, 28), and from purportedly expert assessments of the current security and safety conditions in Colombia to purportedly expert conclusions about the root causes of any remaining violent conflict there (*FNC* Motion at 34, 36-37).

Plaintiffs must, at a minimum, depose Defendants' purported experts about their contentions in the *FNC* Motion upon which Defendants' base potentially dispositive arguments. If this Court grants Plaintiffs' Motion to Partially Lift the Stay of Discovery, Plaintiffs would seek to depose Defendants' purported experts on the bases of their wide-spanning contentions and conclusions, as well as on each purported experts' qualifications to reach such conclusions. For example, Plaintiffs need to examine Defendants' purported experts on a number of aspects of

Colombian law crucial to the *forum non conveniens* analysis, such as Colombia's alleged mediation requirement, the tort liability of and availability of punitive damages against corporations under Colombian law, whether Colombian courts require a criminal conviction as a predicate to recovering civil damages against a corporation and on the subject matter and *in personam* jurisdiction of Colombian courts arising out of the facts alleged in this litigation. Plaintiffs may also seek their own rebuttal foreign law expert declarations.

> 2. *Plaintiffs Need Discovery Relating to the Pending Colombian Actions and the Availability and Adequacy of the Colombian Courts*

Much of Defendants' *FNC* Motion focuses on litigation in which Defendants are currently involved in Colombia. Defendants claim that, as they are already prepared to defend those cases, it would be inefficient for them to have to litigate similar claims in the United States (*FNC* Motion at 23).[3] In order to assess this purported inefficiency, Plaintiffs would serve interrogatories and seek documents pertaining to the procedural status of the pending Colombian claims as well as the specific nature of, identity of all parties to and defenses Defendants have asserted in those claims. For example, Plaintiffs need to examine Defendants' pleadings in the pending Colombian actions in order to determine if Defendants are taking positions in those proceedings that contradict the positions they have taken before this Court with regard to the pending *FNC* Motion. Particularly, Plaintiffs must ensure that Defendants are not seeking *forum non conveniens* dismissal *here* while simultaneously arguing that the claims brought in Colombia

---

[3] In a related argument, Defendants contend that Plaintiffs cannot make any particularized showings of specific risks to Plaintiffs' safety from litigating these claims in Colombia (*FNC* Motion at 32). Defendants argue that, given that the AUC has recently ceased to exist as an organized terrorist group, Plaintiffs cannot show that they will be in any danger if they pursue their claims in Colombia (*FNC* Motion at 36-37). As support for this argument, Defendants also cite the fact that many Colombians are currently seeking redress in Colombia both from Defendants, through pre-litigation mediation, and from others, through the Justice and Peace process (*FNC* Motion at 34-35). In order to adequately respond to Defendants' contentions that Plaintiffs' safety would not be threatened by pursuing these claims in Colombia, Plaintiffs will serve interrogatories on Defendants relating to the safety and security of claimants, witnesses and other persons involved in past and current legal proceedings initiated against Defendants in Colombia arising out of the facts alleged in the presently pending United States claims, and in prior or current litigation arising out of any other claims against Defendants that have been litigated in Colombia.

may not proceed *there*.  If Defendants are taking such a position in the Colombian actions, they would be precluded from advocating for *forum non conveniens* dismissal here, as staking such a position in Colombia would be tantamount to an admission that there is no adequate foreign forum.

Additionally, in order to assess the availability and adequacy of Colombian courts, Plaintiffs would also seek discoverable information pertaining to all litigation in Colombia in which Defendants have faced claims for tortious conduct brought by individual plaintiffs, and the outcomes of those lawsuits.

3.      *Plaintiffs Need Discovery Pertaining to the Nature, Quality, Quantity and Accessibility of Evidence in the United States and Colombia*

Defendants make a number of assertions pertaining to the nature, quality, quantity and accessibility of evidence in both the United States and Colombia (*FNC* Motion at 13-16). Defendants argue that key witnesses and documents are physically located in Colombia and claim that it would be substantially more difficult, and perhaps impossible, to access such key evidence if the claims pending in this case were litigated in the United States rather than Colombia (*FNC* Motion at 17).  Defendants also offer a number of stipulations, including that they will voluntarily make available all United States-based witnesses "under [their] control" to provide testimony for use in the Colombian civil courts (*FNC* Motion at 9, 22).

Plaintiffs need to propound interrogatories on Defendants in order to obtain the names of Defendants' present and former officers, directors and employees involved in approving Defendants' financial support of the AUC, as well as the location or locations where the decisions to illegally funnel money to the AUC were made.  Such interrogatories will seek the identities, present location and employment status of all of the unnamed agents and employees of Defendants discussed in the "Relevant Persons" section of the Factual Proffer relating to the

federal criminal charges to which Defendants pled guilty. Through interrogatories and requests to admit, Plaintiffs will be able to assess whether these individuals are involuntarily subject to the personal jurisdiction of Colombia, whether they are willing to voluntarily submit to personal jurisdiction or appear as live witnesses in Colombia and, most vitally, whether, how and for how long they are subject to the Defendants' "control," as that term is used throughout the *FNC* Motion (*FNC* Motion at 9, 22). Significantly, a number of individuals associated with Defendants – including Cyrus Freidheim, Charles Keiser, Roderick M. Hills, Robert Olson, Robert Kistinger, Carl H. Lindner, Keith Linder, Cyrus Freidheim Jr., Robert Fisher, Jeff Zalla, Steve Warshaw and Dorn Wenninger – are currently the subjects of criminal investigations in Colombia stemming from the facts at the core of this litigation. The specter of Colombian criminal charges makes it extremely unlikely that Defendants would realistically be able to ensure that these individuals would travel to Colombia for *any* purpose, regardless of whether they are currently under Defendants' "control" (*FNC* Motion at 9, 22).

Furthermore, in order to adequately respond to Defendants' *FNC* Motion, Plaintiffs will require discovery material allowing them to fully assess Defendants' contentions related to the availability and actual number of documents in the United States and Colombia (*FNC* Motion at 14-16), as well as the concomitant burdens associated with authenticating and translating such documents (*FNC* Motion at 20). Notably, Defendants ceased operations in Colombia in 2004 and thus presumably do not still have any documents or evidence relevant to Plaintiffs' claims in that country. Nevertheless, Plaintiffs would serve interrogatories related to Defendants' document retention, storage and access policies, practices and procedures as well as the nature, language, extent, location, accessibility and organization of paper documents and electronic data relevant to the pending issues, both in the United States and in Colombia.

4.    *Plaintiffs Need Discovery Regarding the Third Parties Defendants Will Seek to Implead if this Litigation were to be Filed in Colombia*

Defendants contend that it would be unfair to deny them the right to defend themselves by bringing before this Court other parties who bear substantial responsibility for Plaintiffs' alleged injuries but who are not subject to this Court's jurisdiction (*FNC* Motion at 23-25). Defendants cite the Second Amended Complaint for the proposition that others who funded the AUC included wealthy and large landowners, businessmen, multinational corporations, drug barons, industrialists and bankers (*FNC* Motion at 24 n.12 (citing Second Amended Complaint)). Presumably, these are the categories of individuals and entities that Defendants claim they would seek to implead if this litigation were transferred to Colombia.

Defendants fail to identify any of the specific individuals or entities that it would seek to implead in any Colombian action or to assert specific reasons why these unidentified individuals or entities would not be subject to impleading in the United States.[4]  Unless Defendants identify such persons, they should not be permitted to rely on this argument at all.  Defendants do not provide any indication that they possess the evidence or other means necessary to implead any hypothetical third parties.  Instead, as support for the notion that other parties should be held responsible alongside themselves, Defendants simply rely on Plaintiffs' contentions that, generally speaking, other unidentified third parties also funded the AUC.  Plaintiffs will need Defendants to identify those parties they wish to implead, the locations of those parties, the grounds on which they would be able to implead those parties if this litigation were to go forward in Colombia, why seeking contribution from other culpable third parties in Colombia

---

[4] Indeed, the purported multinational corporations, industrialists, bankers and businessmen that Defendants allegedly wish to implead all may very well engage in commerce on a scale and in a manner that could bring them within the personal jurisdiction of the United States courts.  The same may very well be said for drug barons, as Colombia is well known as a major exporter of illegal drugs.  Attempting to identify third parties that Defendant may wish to implead is made all the more difficult by the fact that, in the four years since this litigation has been ongoing, Defendants have never sought to implead a third party defendant, nor have Defendants ever indicated any potential interest in doing so prior to filing their *FNC* Motion.

would not be sufficient and the prejudice that they would suffer if they were not able to implead third parties in litigation before this Court.

**C.    Defendants Will Not Be Unduly Burdened by Providing the Limited, Particularized Discovery Sought by Plaintiffs**

The discovery Plaintiffs will seek if and when this Court partially lifts the stay of discovery to allow Plaintiffs to make an informed response to Defendants' *FNC* Motion will not place an undue burden on Defendants for several reasons.  As an initial matter, Plaintiffs seek only documents and information presumably already within Defendants' possession, as evidenced by the fact that such documents and information necessarily must have formed the bases for the contentions put forth in the *FNC* Motion, as well as depositions of Defendants' own experts.  As such, Defendants should be able to easily provide the discovery materials requested above.

Furthermore, a great deal, if not most, of the documents that will be responsive to Plaintiffs' particularized discovery requests have already been gathered, prepared and produced by Defendants.  Indeed, many of the documents that Plaintiffs will seek in order to adequately respond to the *FNC* Motion were already produced to the United States government during the course of the Department of Justice investigation into the same payments that are at the center of this civil litigation.  These documents are currently available online only in redacted form. Plaintiffs require access to them in their original, unredacted form.  Additionally, as Defendants are currently engaged in a number of mediations and civil cases in Colombia, as per Defendants' contentions in their *FNC* Motion, much of the material requested here has presumably already been or is in the process of being gathered, prepared and produced pursuant to those pending Colombian matters.

As to any expenses Defendants might complain will be incurred as a result of Plaintiffs' narrowly limited discovery requests, any such expenses are far outweighed by the risk to Plaintiffs that they will be left incapable of presenting an informed opposition to the *FNC* Motion and the risk to these proceedings if the Court is not presented with such an opposition.

Accordingly, Plaintiffs' requests do not place an undue burden on Defendants that would preclude a lifting or modification of the existing discovery stay.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' Motion to Partially Lift the Stay of Discovery for the Limited Purpose of Permitting Discovery on Issues Related to Defendants' Motion to Dismiss for *Forum Non Conveniens*.


Date:   December 19, 2011                  Respectfully Submitted,
                                           /s/ James K. Green
                                           James K. Green, FL Bar No. 229466

                                           **James K. Green, P.A.**
                                           Esperanté, Suite 1650
                                           222 Lakeview Ave.
                                           West Palm Beach, FL 33401
                                           Tel: 561-659-2029
                                           Fax: 561-655-1357

                                           Jack Scarola, FL Bar No. 169440

                                           Wiliam B. King, FL Bar No. 181773

                                           **Searcy Denney Scarola Barnhart & Shipley, P.A.**
                                           2139 Palm Beach Lakes Blvd.
                                           P.O. Drawer 3626
                                           West Palm Beach, FL 33402
                                           Tel: 561-686-6300
                                           Fax: 561-478-0754

                                           *Counsel for Plaintiffs Jose and Josefa Lopez Nos.*
                                           *1 through 116*

14

John DeLeon, FL Bar No. 650390

**Law Offices of Chavez-DeLeon**
5975 Sunset Drive, Suite 605
South Miami, FL 33143
Tel: 305-740-5347
Fax: 305-740-5348

Agnieszka M. Fryszman
Benjamin D. Brown
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C. 20005-3964
Tel: 202-408-4600
Fax: 202-408-4634

Paul L. Hoffman
**Schonbrun, Desimone, Seplow,**
 **Harris & Hoffman LLP**
723 Ocean Front Walk
Venice, CA 90291
Tel: 310-396-0731
Fax: 310-399-7040

Judith Brown Chomsky
**Law Offices of Judith Brown Chomsky**
Post Office Box 29726
Elkins Park, PA 19027
Tel: 215-782-8367
Fax: 202-782-8368

Arturo Carrillo
**Colombian Institute of International Law**
5425 Connecticut Ave., N.W., #219
Washington, D.C. 20015
Tel: 202-365-7260

Richard Herz
Marco Simons
**EarthRights International**
1612 K Street N.W., Suite 401
Washington, D.C. 20006
Tel: 202-466-5188
Fax: 202-466-5189

*Counsel for John Doe I Plaintiffs*

Jonathan C. Reiter

**Law Firm of Jonathan C. Reiter**
350 Fifth Avenue, Suite 2811
New York, NY 10118
Tel: 212-736-0979
Fax: 212-268-5297

Ronald S. Guralnick, FL Bar No. 111476

**Ronald Guralnick, P.A.**
Bank of America Tower at International Place
100 S.E. 2d Street, Suite 3300
Miami, FL 33131
Tel: 305-373-0066
Fax: 305-373-1387

*Counsel for Plaintiffs Juan/Juana*
  *Does 1-888*

Terrence P. Collingsworth
**Conrad & Scherer, LLP**
1156 15th St. NW, Suite 502
Washington, D.C. 20005
Tel: 202-543-4001
Fax: 866-803-1125

*Counsel for Plaintiffs DOES 1-144*
  *and PEREZES 1-95*

William J. Wichmann
Attorney at Law

888 S.E. 3rd Avenue, Suite 400
Fort Lauderdale FL 33316
Tel: 954-522-8999
Fax : 954-449-6332

*Counsel for Plaintiffs Antonio Gonzalez*
*Carrizosa, et. al.*

Sigrid S. McCawley
**Boies, Schiller & Flexner LLP**
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301

16

Tel: 954-356-0011
Fax: 954-356-0022

Stephen N. Zack
**Boies, Schiller & Flexner LLP**
100 S.E. Second St., Suite 2800
Miami, FL 33131
Tel: (305) 539-8400
Fax: (305) 539-1307

Karen C. Dyer
**Boies, Schiller & Flexner LLP**
121 South Orange Ave., Suite 840
Orlando, FL 32801
Tel: (407) 425-7118
Fax: (407) 425-7047

Nicholas A. Gravante Jr.
Lee S. Wolosky
Magda M. Jimenez Train
**Boies, Schiller & Flexner LLP**
575 Lexington Ave., 7th Floor
New York, NY 10022
Tel: 212-446-2300
Fax: 212-446-2350

Counsel for Plaintiffs Angela Maria
Henao Montes, et al.

Paul Wolf
P.O. Box 11244
Washington, D.C. 20008-1244
Tel. (202) 674-9653

Counsel for Plaintiffs Does 1-976

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on this 19th day of December, 2011.  I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF, and in accordance with the Court's First Case Management Order and the June 10, 2008 Joint Counsel List filed in accordance with that Case Management Order.

Jack Scarola
Florida Bar No.: 169440
Searcy Denney Scarola Barnhart & Shipley
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Fax: (561) 383-9451
Attorney for Plaintiffs

18