UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-01916-MD-MARRA

IN RE: CHIQUITA BRANDS INTERNATIONAL,
INC. ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION
_____/

This Document Relates To:

ATS ACTIONS

    07-60821-CIV-MARRA
    08-80421-CIV-MARRA
    08-80465-CIV-MARRA
    08-80480-CIV-MARRA
    08-80508-CIV-MARRA
    10-60573-CIV-MARRA
    10-80652-CIV-MARRA
_____/

**ORDER GRANTING DEFENDANTS' MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL**

THIS CAUSE comes before the Court upon Defendants' Motion for Certification of Controlling Questions of Law For Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) (DE 454), filed on July 20, 2011.  The matter is now fully briefed and ready for review.  For the reasons discussed below, Defendants' Motion is **GRANTED**.

**I.  Introduction**

This matter arises out of the alleged torture and killing of thousands of Colombian citizens and residents by the Autodefensas Unidas de Colombia ("AUC"), a paramilitary organization operating in Colombia, and left-wing guerrilla insurgents such as the Revolutionary

Armed Forces of Colombia ("FARC") and the National Liberation Army ("ELN").[1] Plaintiffs, who are representatives of the victims, brought these actions against Defendants Chiquita Brands International, Inc. and Chiquita Fresh North America LLC. There are currently thirteen separate complaints that have been filed in various district courts, all of which have been transferred to this Court by the Judicial Panel on Multidistrict Litigation (MDL #1916). Through nine of these complaints,[2] Plaintiffs allege claims under 28 U.S.C. § 1350— commonly known as the Alien Tort Statute ("ATS") or Alien Tort Claims Act ("ATCA")—for terrorism; material support to terrorist organizations; torture; extrajudicial killing; war crimes; crimes against humanity; cruel, inhuman, or degrading treatment; violation of the rights to life, liberty and security of person and peaceful assembly and association; and consistent pattern of gross violations of human rights. Plaintiffs also allege claims under the Torture Victim Protection Act ("TVPA"), 28 U.S.C. § 1350, for torture and extrajudicial killing. Last, Plaintiffs allege claims under the laws of Florida, New Jersey, Ohio, the District of Columbia, and the foreign law of Colombia for assault and battery, wrongful death, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, negligent hiring, negligent per se, and loss of consortium. These nine complaints will hereinafter collectively be referred to as the "ATS Complaints."

---

[1] The Court uses the terms "FARC-based," "guerilla-based," and "left-wing guerilla based" claims interchangeably.

[2] The other four complaints bring causes of action under the Anti-Terrorism Act ("ATA") and are not addressed in this Order.

On April 9, 2010, Defendants filed a Motion to Dismiss (DE 295) ("2010 Motion to Dismiss") seven of the nine ATS Complaints.[3]  On June 3, 2011, this Court issued an order ("June 3 Order") granting in part and denying in part the 2010 Motion.  In that Order, the Court granted Defendants' Motion with respect to: (1) Plaintiffs' ATS claims for terrorism and material support to terrorist organizations; (2) Plaintiffs' ATS claims for cruel, inhuman, or degrading treatment; violation of the rights to life, liberty and security of person and peaceful assembly and association; and consistent pattern of gross violations of human rights; (3) Plaintiffs' state-law claims; (4) Plaintiffs' Colombia-law claims; and (5) certain Plaintiffs' FARC-based claims.  The Court, however, denied Defendants' motion with respect to: (1) Plaintiffs' ATS claims for torture, extrajudicial killing, war crimes, and crimes against humanity; and (2) Plaintiffs' TVPA claims for torture and extrajudicial killing.

Pursuant to 28 U.S.C. § 1292(b), Defendants now move for certification for interlocutory appeal of those portions of the Order that deny dismissal.  Specifically, Defendants seek certification for the following questions of law:

> 1.  Whether the "state action" element of claims for extrajudicial killing and torture brought under the ATS and TVPA requires plaintiffs to plead facts establishing government involvement in the <u>specific</u> torture and killings alleged in Plaintiff's complaints.
>
> 2.  Whether Plaintiffs, in alleging secondary liability for claims for war crimes, must plead facts showing a nexus between the Colombian civil war and the <u>specific</u> torture and killings for which Plaintiffs seek redress.

---

[3] Two of the ATS Complaints (Case Nos. 11-80404 and 11-80405) were not addressed in the June 3 Order because they were transferred to this Court only after briefing on the 2010 Motion to Dismiss was complete.

    3.  Whether Plaintiffs have adequately pled a claim for crimes against humanity, the elements of which have not been defined by any federal court of appeals.

## II.  Legal Standard

Section 1292(b) of Title 28 of the United States Code provides a mechanism for district courts to certify otherwise non-appealable orders to a court of appeals when "such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  A controlling question of law is a question of the meaning of a statute that is a question of "pure law" that a court of appeals "can decide quickly and cleanly without having to study the record."  McFarlin v. Conseco Services, LLC, 381 F.3d 1251, 1258 (11th Cir. 2004) (quoting Ahrenholz v. Bd. of Trustees of the Univ. Of Ill., 219 F.3d 674 (7th Cir. 2000)). Materially advancing the ultimate termination of the litigation means "that resolution of a controlling legal question would serve to avoid a trial or otherwise substantially shorten the litigation."  Id. at 1258.  However,  "[t]he proper division of labor between the district courts and the court of appeals and the efficiency of judicial resolution of cases are protected by the final judgment rule, and are threatened by too expansive use of the § 1292(b) exception to it.  Because permitting piecemeal appeals is bad policy, permitting liberal use of § 1292(b) interlocutory appeals is bad policy."  Id. at 1259.

## III.  Discussion

Ordinarily, this matter would proceed to discovery, summary judgment, and trial before the various federal courts of appeals are given an opportunity to review the pure legal questions of law addressed in the Order.  This case, however, is far from ordinary.  Plaintiffs represent the

families of over 4,000 individuals seeking billions of dollars in damages for killings and acts of torture that occurred on foreign soil. The cost of discovery associated with investigating these claims will be nothing less than extraordinary. Although the Court believes that the Order represents an accurate application of established legal principles, some of the legal questions tackled in the Order are novel applications of those principles in which substantial ground for difference of opinion exists. It would be irresponsible for the Court to ignore the possibility of reversal on appeal, especially given the incredible cost of permitting this matter to move forward. With these thoughts in mind, the Court proceeds to evaluate each of the legal issues in which Defendants seek interlocutory review.

A. *Extrajudicial Killing and Torture*

Defendants first seek interlocutory review of the adequacy of Plaintiffs' claims for extrajudicial killing and torture brought under the ATS and TVPA. Specifically, Defendants challenge the Court's ruling that Plaintiffs do not need to plead specific government involvement with each individual act of torture and killing of Plaintiffs' relatives.

This argument was explicitly addressed and rejected in the Court's June 3 Order:

> As an initial matter, the Court disagrees with Chiquita's argument that to plead state action Plaintiffs must allege government involvement in the specific torture and killings of Plaintiffs' specific relatives. While the symbiotic relationship must involve "the torture or killing alleged in the complaint," [Romero v. Drummon Co., 552 F.3d 1303, 1317 (11th Cir. 2008)], the "Eleventh Circuit has approved a district court exercising this standard by inquiring whether 'the symbiotic relationship between the paramilitaries and the Colombian military had anything to do with the conduct at issue.' " [Doe v. Drummond Co., No. 09-1041, DE 43, Slip op. at 11 (N.D. Ala. Apr. 30, 2010)] (quoting Romero, 552 F.3d at 1317). Here, the conduct at issue is the AUC's torture and killing of thousands of civilians in Colombia's banana-growing regions, torture and killing which allegedly harmed or killed Plaintiffs' relatives. **This Court finds that to plead**

5

> **state action at the motion-to-dismiss stage, Plaintiffs must allege a symbiotic relationship between the Colombian government and the AUC with respect to the AUC's campaign of torture and killing of civilians in the banana-growing regions, not specific government involvement with each individual act of torture and killing of Plaintiffs' relatives**. Such allegations suffice to show a "relationship [that] involve[s] the subject of the complaint." Romero, 552 F.3d at 1317; see also Drummond, No. 09-1041, DE 43, Slip op. at 12-13 (finding that the plaintiffs sufficiently alleged a symbiotic relationship with respect to the killings alleged in the complaint based on allegations that the defendant paid the AUC with the intent to assist the AUC's war crimes and with the knowledge that the AUC would direct its war efforts in the areas in which the plaintiffs' decedents lived.).

Order at 38 (emphasis supplied).

The Court acknowledges that the narrow question at issue here, whether specific government involvement with each individual act must be pled in a claim of extrajudicial killing and torture brought under the ATS, is one that has not expressly been addressed by the Eleventh, or any other, Circuit Court of Appeals. Although the Court believes that question should be answered in the negative, the Court finds that substantial ground for difference of opinion exists with regard to the question of specificity raised here.

In its June 3 Order, the Court noted that "the Eleventh Circuit has approved a district court exercising this standard by inquiring whether 'the symbiotic relationship between the paramilitaries and the Colombian military had anything to do with the conduct at issue.' " Order at 38 (citing Drummond, No. 09-1041, DE 43, Slip op. at 11 (citing Romero, 552 F.3d at 1317)). That standard, which only requires the Plaintiff to plead a broad relationship between the paramilitaries and the Colombian military, is less stringent than the more burdensome standard proposed by the Defendants which demands specificity. The district court decision discussed in Romero, however, ultimately dismissed a claim for extrajudicial killing for failing to meet the

6

less stringent standard utilized . See Romero, 552 F.3d at 1317-18.  Although both the Northern District of Alabama in Drummer and this Court in the June 3 Order utilized the less stringent standard to deny a motion to dismiss a claim for extrajudicial killing and torture brought pursuant to the ATS, the Court believes that a substantial ground for difference of opinion exists with regard to the application of the less stringent standard.

Further, such a question is certainly a "controlling question of law."  If the Eleventh Circuit Court of Appeals determines that Plaintiffs have not adequately pled a claim of extrajudicial killing and torture under the ATS, such claims would be dismissed.  Resolving this matter at this stage of the proceedings will "substantially reduce the amount of litigation necessary on remand," McFarlin, 381 F.3d at 1264, avoiding potentially unnecessary discovery and further litigation with regard to these claims.

Accordingly, the Court finds that interlocutory review of this issue is appropriate.

B.  War Crimes

Defendants next seek interlocutory review of the adequacy of Plaintiffs' claims for war crimes.  In the June 3 Order, the Court held that a claim for war crimes is "cognizable under the ATS if Plaintiffs can establish (1) there was an armed conflict, (2) the AUC was a party to the conflict, (3) Plaintiffs' relatives were not active participants in the conflict, and (4) Plaintiffs' relatives were tortured or killed in the course of hostilities."  Order at 45 (internal citations omitted).  Through their present motion, Defendants challenge the Court's interpretation of the scope of the requirement that the victims were tortured or killed "in the course of hostilities." Specifically, similar to its challenge to Plaintiffs' claims for extrajudicial killing and torture,

Defendants challenge the Court's ruling that Plaintiffs need not plead facts alleging a nexus between each specific murder in which Plaintiffs seek relief.

Through its June 3 Order, the Court reasoned that Plaintiffs satisfied the "in the course of hostilities" requirement because the "AUC committed the alleged violence because of, and not merely during, the civil war in Colombia." Order at 47. Defendants' assertion that Plaintiffs must plead a nexus between the Colombian civil war and the specific torture and killings alleged in the Complaint is both inconsistent and incompatible with that finding. The Order, however. explicitly recognizes that "case law does not provide a clear definition of [the] requirement" that the conduct in question occurred "in the course of hostilities." Order at 47. The Court finds that the lack of any decisional authority on this point justifies a finding that substantial ground for difference of opinion exists on this question. Also, similar to the first issue, if the Eleventh Circuit Court of Appeals determines that Plaintiffs have not adequately plead a valid cause of action of war crimes, that claim will also be dismissed. Accordingly, this matter is also well-suited for interlocutory review.

C.  Crimes Against Humanity

Finally, Defendants challenge the adequacy of Plaintiffs' claims for crimes against humanity. The crux of Defendants' argument here is, similar to the previous two claims, the Court erred by failing to require Plaintiffs to plead any facts that would establish that each of the over four thousand incidents were part of a systematic program implemented by the AUC. Unlike a claim for war crimes, the requirements for claims of crimes against humanity are well defined in the Eleventh Circuit. See Order at 50-51. The Court does not agree with the level of

8

specificity urged by the Defendants, but notes that such a requirement has not explicitly been addressed or rejected by any decision. The Court is less inclined to find that a substantial ground for difference of opinion exists on this issue, but in abundance of caution, the Court does recommend the Court of Appeals review the adequacy of Plaintiffs' claims for crimes against humanity.

D.  *Complete Termination of Litigation*

Plaintiffs also raise a number of general objections to the Court granting interlocutory review, each of which is based on the concern that interlocutory review is unlikely to <u>completely</u> terminate this matter.[4] The prospect of complete termination, however, is not a prerequisite to interlocutory review. Plaintiffs assert that "where litigation will continue regardless of the outcome, 'interlocutory appeal would not advance, but would rather delay the litigation.' " Response at 4 (quoting <u>Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC</u>, 687 F.Supp.2d 1322, 1324-25 (S.D. Fla. 2009)). Plaintiffs, however, ignore another key factor considered in the <u>Sierra Equity</u> decision when a motion for interlocutory review was denied:

> As an initial matter, the Court does not believe that there is substantial ground for difference of opinion on any controlling issues of law with respect to the rulings in the March 30, 2009 Order. Moreover, the court concludes that interlocutory appeal of the specified issues would not "materially advance the ultimate termination of the litigation" as required under § 1292. This is true particularly insofar as the litigation will continue against each of four Defendants in this action on the unjust enrichment claim, regardless of the outcome of the proposed interlocutory appeal. Thus, it is apparent that an interlocutory appeal

---

[4] Plaintiffs assert that: (1) the Eleventh Circuit Court of Appeals is unlikely to grant review of all three issues in which Defendants seek interlocutory review; (2) there are other state-law and Columbia-law claims that will remain even if the Eleventh Circuit reverses on all three of those issues; and (3) an appeal is unwarranted because Defendants intend to raise another threshold issue, *forum non conveniens*.

9

>would not advance, but would rather delay the litigation.  As a result, the Court
>**DENIES** the . . . § 1292(b) certification motion for an interlocutory appeal.

Sierra Equity is therefore distinguishable for two reasons.  First, unlike the matter presently before the Court, in Sierra Equity "the Court did not believe that there is substantial ground for difference of opinion on any controlling issues of law." Id. at 1324.

Second, the complex, multifaceted, and expensive nature of this case places it in a special category.  Although the Court acknowledges that certification of interlocutory review of the Order will not completely terminate this multi-district litigation, such review can prevent the unnecessary expenditure of thousands of hours of attorneys' time if this Court's rulings are ultimately reversed on appeal.  In this unusual circumstance, therefore, piecemeal review of these independent legal questions will certainly "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

E.  *The United States Supreme Court's Recent Grant of Certiorari*

Through supplemental briefing, Plaintiffs' argue that the Supreme Court's recent grant of *certiorari* in Kiobel v. Royal Dutch Shell, 132 S.Ct. 472 (2011), and Mohamad v. Rajoub, 132 S.Ct. 154 (2011), favor denial of Defendants' motion.  Those cases address whether corporations can be held liable under the ATS and TVPA.  Although it is true that if the Supreme Court holds that corporations cannot be held liable under the ATS or TVPA the present motion will be moot, any other holding will leave the unsettled questions of law at issue unresolved.  Thus, immediate appellate review is warranted.

*F. Interlocutory Review of the Dismissal of State-Law Claims*

Finally, although not raised by the parties, the Court believes that interlocutory review of the question of whether the civil tort laws of Florida, New Jersey, Ohio, and the District of Columbia apply to the extraterritorial conduct of foreign tortfeasors on to foreign victims is appropriate.  The Court dismissed each of the state-law claims in its June 3 Order on the basis that "There are no allegations that this conduct had or was intended to have a substantial effect within the states of Florida, New Jersey, Ohio, or the District of Columbia."  June 3 Order at 87.  Although the Court believes the dismissal was warranted, in an abundance of caution, the Court recommends the Eleventh Circuit Court of Appeals review the dismissal of the state-law claims if it chooses to review any of the other previously mentioned legal questions.

### IV.  Conclusion

For the foregoing reasons, Defendants' Motion for Certification of Controlling Questions of Law Pursuant to 28 U.S.C. § 1292(b) is **GRANTED**.  The Court certifies the following questions to the Eleventh Circuit Court of Appeals:

> 1.  Whether the "state action" element of claims for extrajudicial killing and torture brought under the ATS and TVPA requires plaintiffs to plead facts establishing government involvement in the <u>specific</u> torture and killings alleged in Plaintiff's complaints.

> 2.  Whether Plaintiffs, in alleging secondary liability for claims for war crimes, must plead facts showing a nexus between the Colombian civil war and the <u>specific</u> torture and killings for which Plaintiffs seek redress.

> 3.  Whether Plaintiffs have adequately pled a claim for crimes against humanity, the elements of which have not been defined by any federal court of appeals.

4. Whether the civil tort laws of Florida, New Jersey, Ohio, and the District of Columbia apply to the extraterritorial conduct of Colombian paramilitaries against Colombian civilians that occurred inside Colombia as part of Colombia's civil war.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 27th day of March, 2012.

_____
KENNETH A. MARRA
United States District Judge