**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 08-01916-MD-MARRA/JOHNSON**

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:

ATS ACTIONS
_____/

NO. 08-80421-cv-MARRA/JOHNSON

JOHN DOE 1 *et al.*,
            v.
CHIQUITA BRANDS INTERNATIONAL, INC., *et al.*
_____/

NO. 08-80508-cv-MARRA/JOHNSON

JOSE LEONARDO LOPEZ VALENCIA *et al.*
            v.
CHIQUITA BRANDS INTERNATIONAL, INC., *et al.*
_____/

NO: 07-cv-60821-KAM

ANTONIO GONZALEZ CARRIZOSA, *et. al.*
            v.
CHIQUITA BRANDS INTERNATIONAL, INC., *et. al.*
_____/

**DEFENDANT CHIQUITA'S MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO ISSUE**
**REQUESTS FOR JUDICIAL ASSISTANCE TO PERPETUATE TESTIMONY AND**
**MOTION FOR LEAVE TO TAKE DEPOSITIONS TO PERPETUATE TESTIMONY**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................ 2

BACKGROUND .......................................................................................................................... 3

ARGUMENT ............................................................................................................................... 5

I.      Legal Standard ................................................................................................................ 5

II.     Plaintiffs Have Not Met the Demanding Standard Required to Justify Expedited
        Depositions of the Paramilitary Witnesses. .................................................................... 6

        A.      Expedited Paramilitary Depositions Would Substantially and Unfairly
                Prejudice Chiquita's Ability to Defend Itself at Trial............................................. 7

        B.      Expedited Paramilitary Depositions Would Impose Other Substantial and
                Potentially Needless Burdens. ............................................................................ 10

        C.      In All Events, There is no Factual Basis to Conclude that The Paramilitary
                Witnesses Will be Unavailable "Imminently.".................................................... 13

III.    Plaintiffs Have Not Established Good Cause to Take an Expedited Deposition of
        Cyrus Freidheim.............................................................................................................. 15

        A.      An Expedited Deposition of Cyrus Freidheim Imposes Unreasonable
                Burdens on the Defendants. ................................................................................ 16

        B.      There is No Need to Expedite the Deposition of Mr. Freidheim.......................... 16

CONCLUSION........................................................................................................................... 20

# TABLE OF AUTHORITIES

Page

CASES

*Barbieri v. Wells Fargo & Co.*, No. CIV.A. 09-3196,
   2012 WL 3089373 (E.D. Pa. July 27, 2012)..............................................................5

*Better Packages, Inc. v. Zheng*,
   No. CIV.A. 05-4477 (SRC), 2006 WL 1373055 (D.N.J. May 17, 2006)..............................12

*Calderon v. United States Dist. Ct*,
   144 F.3d 618 (9th Cir. 1998) ......................................................................14, 19

*Ford v. Brown*,
   319 F.3d 1302 (11th Cir. 2003) ........................................................................11

*Guttenberg v. Emery*,
   26 F. Supp. 3d 88 (D.D.C. 2014) ..............................................................10, 15, 18

*Hospitalists Mgmt. Grp., LLC v. Fla. Med. Affiliates, Inc.*,
   No. 2:14-CV-242-FTM-38, 2014 WL 2565675 (M.D. Fla. June 6, 2014)..............................5

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*,
   194 F.R.D. 618 (N.D. Ill. 2000).......................................................................5

*In re Petition of Rosario*,
   109 F.R.D. 368 (D. Mass. 1986)........................................................................15

*Sawhorse Enterprises, Inc. v. Church & Dwight Co., Inc.*,
   No. CIV.A. 12-6811 FLW, 2013 WL 1343608 (D.N.J. Apr. 3, 2013)...................................16

*Semitool, Inc. v. Tokyo Electron America, Inc.*,
   208 F.R.D. 273 (N.D. Cal. 2002)...................................................................12, 19

*St. Jude Med. S.C., Inc. v. Biosense Webster Inc.*,
   No. 6:13-CV-333-ORL-28, 2013 WL 1502184 (M.D. Fla. Apr. 12, 2013)............................6

*TracFone Wireless, Inc. v. Holden Property Services, LLC*,
   299 F.R.D. 692 (S.D. Fla. 2004).......................................................................5

*United States v. Gachette*,
   No. 6:14-CV-1539-ORL-37, 2014 WL 5518669 (M.D. Fla. Sept. 26, 2014) .........................5

*United States v. O'Sullivan*,
   553 F. Supp. 2d 1349 (M.D. Fl7a. 2008)...............................................................15

*Wilcox Indust. Corp. v. Hansen*,
   279 F.R.D. 64 (D.N.H. 2012) .....................................................................10, 16

**OTHER AUTHORITIES**

Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23.3 U.S.T. 2555, 847 U.N.T.S. 231......................................................................................11

Rule 26(d)(1)................................................................................................5, 6, 15, 17

Rule 27 ..............................................................................................................6

Elizabeth Arias, *United States Life Tables, 2010*, NAT'L VITAL STAT. REP., Nov. 6, 2014 ..........18

Defendants Chiquita Brands International, Inc. and Chiquita Fresh North America, LLC (collectively, "Chiquita") respectfully submit this memorandum in support of their opposition to the motions for expedited discovery filed by the above-captioned plaintiffs ("Plaintiffs") on December 26, 2014.  (D.E. 687 & 688).

Discovery in these actions is stayed pending disposition of all defendants' motions to dismiss.  The motions to dismiss by the individual defendants—who were not named until after the Court had already certified for interlocutory appeal its ruling on Chiquita's initial motion to dismiss—are not due until March 9, 60 days following the Eleventh Circuit's issuance of its mandate dismissing the ATS claims and directing this Court to enter judgment.  Order at 1 (Nov. 13, 2012) (D.E. 587); Mandate (Jan. 6, 2015) (D.E. 693).  As plaintiffs acknowledge, Chiquita also intends at that time to renew its motion to dismiss for *forum non conveniens.*  The only remaining claims against Chiquita are tort claims asserted under Colombian law that, in the words of this Court, "are premised on acts by Colombian paramilitaries against Colombian civilians that occurred inside Colombia as part of Colombia's civil war."  Op. & Order at 87 (June 3, 2011) (D.E. 412).

Against this backdrop, some of the ATS plaintiffs now seek expedited depositions of (i) three former members of the AUC, and (ii) Cyrus Freidheim, a former CEO of Chiquita.  The motion should be denied because Plaintiffs do not even come close to meeting the standard for such a request, which requires a factual showing of good cause.  Simply put, Plaintiffs fail to demonstrate any urgency whatsoever to their request.  They contend that the former paramilitaries may be released "imminently," but Plaintiffs' own submission shows that they sat for months on the news reports that they cite as support for this assertion.  Moreover, as detailed within, there is ample evidence that ATS plaintiffs' counsel have been in regular contact with at

1

least some of these paramilitaries and have even collaborated with them on the preparation of written declarations.  These facts entirely undercut the suggestion that Plaintiffs' counsel will not know how to find these paramilitaries in the event that they are released from prison and urgently need depositions to discover what they will say.

Most critically, however, the proposed depositions of former AUC members are premature in light of the substantial evidence that counsel for ATS plaintiffs in this case have made payments to former AUC members that they may call as witnesses.  In a pending action in the Northern District of Alabama, discovery has unearthed a redacted memo circulated among ATS plaintiffs' counsel in this action entitled  "CHIQUITA: Ethics of Paying Witness's Legal Fees."  The memo was attached to an email authored by Terry Collingsworth, counsel for some of the ATS plaintiffs, in which he acknowledged that such payments have an "impact on credibility," but asserted that such payments were necessary to "get truthful evidence on AUC-Chiquita discussion."  Paul Wolf, another of the ATS plaintiffs' counsel in this action, has filed a declaration stating that he personally participated in meetings among the ATS plaintiffs' counsel in which payments to paramilitary "witnesses" were discussed.  On his Facebook page, Mr. Wolf has stated that Collingsworth "proposed to pay witnesses for false testimony."  For these depositions to go forward before Chiquita has had the opportunity to take any discovery that would equip it to conduct a fair cross-examination—including discovery concerning the extent of ATS plaintiffs' counsel's prior dealings with, and payments to, these "witnesses"—would fundamentally prejudice Chiquita's right to a fair trial.

As for Mr. Freidheim, the sole basis for Plaintiffs' request is that he is in his seventies. But Plaintiffs offer no evidence that he is in poor health; to the contrary, as we demonstrate below, Mr. Freidheim exercises regularly, maintains professional responsibilities that attest to his

keenness of mind, and has been issued a clean bill of health by his physician within the last two

months.  That a named defendant is in his seventies is not, without more, occasion for an

expedited deposition before that defendant has even had an opportunity to respond to the

allegations against him.

Consistent with this Court's prior case management orders, and in light of Plaintiffs'

failure to make any factual showing of good cause, their motion should be denied.  There will be

ample opportunity for the depositions that Plaintiffs seek after the Court has adjudicated the

forthcoming motions to dismiss for failure to state a claim and for *forum non conveniens*, and

determined whether any of Plaintiffs' claims will proceed here.

## BACKGROUND

At the outset of this litigation and by agreement of the parties, this Court suspended all

discovery until the resolution of motions to dismiss.  *See* Mot. for Entry of Case Management

Order ("CMO") 1, at 2 (May 28, 2008) (D.E. 66)[1]; CMO at 6 (June 2, 2008) (D.E. 67); *see also*

Am. CMO at 6 (Sept. 15, 2008) (D.E. 141).  After the Court ruled on Chiquita's initial motions

to dismiss in June 2011 and March 2012, it certified its rulings for interlocutory review.  The

Eleventh Circuit then granted Chiquita's petition for an interlocutory appeal, and on November

13, 2012, the Court entered an agreed order (the "Stay Order") staying *all* proceedings in the

ATS Actions until the conclusion of the appeal.  Order at 1 (D.E. 587).  By that point, five

plaintiff groups had filed or were about to file amended complaints adding several individual

defendants, including Mr. Freidheim.  *See, e.g.*, Third Am. Compl. ¶ 1 (Sept. 24, 2012) (D.E.

575); Third Am. Compl. at 1 (Sept. 26, 2012) (D.E. 576); Second Am. Compl. at 1 (Nov. 16,

---

[1] Unless otherwise indicated, references to Docket Entries ("D.E.") herein are to entries in the
MDL docket (No. 08-md-01916).

2012) (D.E. 143); *Carrizosa* Third Am. Compl., No. 07-60821, at 1 (Dec. 10, 2012) (D.E. 186).

The Stay Order tolled "[a]ny defendant's obligation under Rule 12 to respond" to those

complaints "until 60 days after the Eleventh Circuit complete[d] its interlocutory review."  Order

at 1-2 (D.E. 587).  Under the Stay Order, Plaintiffs "reserve[d] the right to move the Court to lift

the stay for the limited purpose of preserving testimony where there is a reasonable basis that

relevant and material testimony may be lost if not taken during the period this stay is in effect."

*Id.* at 1.

The stay of proceedings remained in effect until January 6, 2015, when the Eleventh

Circuit issued its mandate dismissing all of the ATS and TVPA claims against Chiquita.  *See*

Mandate (Jan. 6, 2015) (D.E. 693).  The mandate affirmed the Eleventh Circuit's ruling of July

24, 2014, *id.*, and followed that court's rejection of Plaintiffs' requests for rehearing, stay of the

mandate, and reconsideration, *see* Docket, No. 12-14898 (11th Cir.).  Two days after the

Eleventh Circuit denied the last of these requests, three of the nine ATS plaintiff groups filed the

instant discovery motions.  Pls.' Emergency Mot. to Issue Requests for Judicial Assistance to

Colombia to Perpetuate Testimony (Dec. 26, 2014) (D.E. 688) ("Pls.' Mot. Letters Rog."); Pls.'

Mot. for Leave to Take Deps. to Perpetuate Testimony (Dec. 26, 2014) (D.E. 687) ("Pls.' Mot.

Perpet. Test.").

Pursuant to the terms of the Stay Order, the defendants are required to file by March 9,

2015, any responsive pleadings to Plaintiffs' most recent amended complaints, including any

Rule 12 motions to dismiss.  Chiquita also intends to renew its motion to dismiss for *forum non

conveniens*, which the Court previously denied "as moot without prejudice" in light of the

intervening amended complaints.  Order (Aug. 29, 2013) (D.E. 635).  Until the defendants'

4

motions to dismiss are resolved, discovery remains suspended pursuant to the Court's CMO. Am. CMO at 6 (D.E. 141).

## ARGUMENT

### I.   Legal Standard

Pursuant to the CMO, there has been no Rule 26(f) conference in these cases because of the pendency of dispositive motions to dismiss.  Plaintiffs' deposition requests must therefore be considered under Rule 26(d)(1), which generally prohibits parties from seeking discovery after an action has been filed, but before a Rule 26(f) conference has occurred.  Fed. R. Civ. P. 26(d)(1).  A party may take expedited discovery under these circumstances only upon a showing of "good cause."  *TracFone Wireless, Inc. v. Holden Property Services, LLC*, 299 F.R.D. 692, 694 (S.D. Fla. 2004); *United States v. Gachette*, No. 6:14-CV-1539-ORL-37, 2014 WL 5518669, at *1 (M.D. Fla. Sept. 26, 2014).  "[T]he burden is on the moving party to show good cause for departing from the usual discovery procedures," *Hospitalists Mgmt. Grp., LLC v. Fla. Med. Affiliates, Inc.*, No. 2:14-CV-242-FTM-38, 2014 WL 2565675, at *1 (M.D. Fla. June 6, 2014) (citations omitted), and courts must "protect defendants from unfair expedited discovery," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623 (N.D. Ill. 2000).

To meet that burden, plaintiffs must make an affirmative factual showing—vague and conclusory assertions will not do.  *See Barbieri v. Wells Fargo & Co., No. CIV.A. 09-3196, 2012 WL 3089373*, at *4 (E.D. Pa. July 27, 2012) (denying Plaintiffs' request for expedited discovery when it was "vague, ambiguous and unlimited in scope" and supported by "nothing but broad generalities . . . and bald legal conclusions"); *TracFone Wireless, Inc. v. Holden Property Services, LLC*, 299 F.R.D. 692, 694 (S.D. Fla. 2014) ("Federal courts allow parties to conduct expedited discovery in advance of a Rule 26(f) conference where *the party establishes* 'good cause' for such discovery." (emphasis added)).

5

Plaintiffs' motions do not cite a single case considering a request for expedited discovery under Rule 26(d)(1).  Instead, Plaintiffs largely—and erroneously—rely on cases applying Rule 27, which allows a party to "depose witnesses to perpetuate their testimony" either prior to the filing of an action, or  following the entry of judgment on plaintiffs' claims, neither of which reflects the procedural posture of these cases.  Fed. R. Civ. P. 27; *see* Pls.' Mot. Letters Rog. at 2, 6-7 (citing Rule 27 case law); Pls.' Mot. Perpet. Test. at 4-5 (same).  As detailed below, the case law under Rule 26(d)(1) demonstrates why Plaintiffs' motions lack merit.

In determining whether there is good cause to allow expedited discovery under Rule 26(d)(1), courts generally consider the following factors:  "(1) whether a preliminary injunction is pending; (2) the breadth of the requested discovery; (3) the reason(s) for requesting expedited discovery; (4) the burden on the opponent to comply with the requests for discovery; and (5) how far in advance of the typical discovery process the request is made."  *St. Jude Med. S.C., Inc. v. Biosense Webster Inc.*, No. 6:13-CV-333-ORL-28, 2013 WL 1502184, at *1 (M.D. Fla. Apr. 12, 2013).

Here, two of these factors militate on their face against granting either of Plaintiffs' motions:  there is no preliminary injunction pending, and these cases are not on the verge of discovery, because they remain subject to dispositive motions that could moot the need for *any* discovery.  As detailed below, however, what makes Plaintiffs' requests especially meritless under Rule 26(d)(1) is the burden and prejudice to the defendants, and the lack of any demonstrable need for expediting the depositions they seek.

## II.    Plaintiffs Have Not Met the Demanding Standard Required to Justify Expedited Depositions of the Paramilitary Witnesses.

Plaintiffs' first motion for expedited discovery seeks leave to take the depositions of three former AUC paramilitaries who are currently imprisoned in Colombia:  Jesús Ignacio Roldán

Pérez (a.k.a. Monoleche), José Gregorio Mangones Lugo (a.k.a. Carlos Tijeras), and Fredy

Rendón Herrera (a.k.a. El Alemán).  Pls.' Mot. Letters Rog. at 1.  This motion should be denied

because (1) allowing these depositions before *any* discovery has occurred would be unfair and

prejudicial to the defendants, (2) the expedited depositions would cause other substantial and

needless burdens, and (3) Plaintiffs offer no evidence showing that these depositions must be

expedited.

> **A.      Expedited Paramilitary Depositions Would Substantially and Unfairly**
> **Prejudice Chiquita's Ability to Defend Itself at Trial.**

Allowing expedited depositions of the Paramilitary Witnesses will severely prejudice

Chiquita's right to a fair trial.  Plaintiffs seek early depositions of these witnesses—who,

Plaintiffs suggest, have uniquely probative and damning testimony to offer regarding Chiquita's

interactions with the AUC—in order to perpetuate their testimony *for use at trial*.  Pls.' Mot.

Letters Rog. at 1-3.  Thus, if the depositions are permitted, Chiquita will be forced to conduct its

trial examination of potentially critical witnesses without having had the opportunity to take *any*

discovery relevant to Plaintiffs' claims or the witnesses themselves.  The parties have not even

made initial disclosures under Rule 26(a), much less propounded a single document request or

interrogatory.  Under such circumstances, Chiquita will be unable to prepare and conduct a

meaningful cross-examination of the Paramilitary Witnesses.

This is an especially serious concern in this case because of disturbing evidence, detailed

below, suggesting that at least some of the ATS plaintiffs' counsel have paid paramilitary

witnesses in Colombia.  This evidence—only a fraction of which has been made publicly

available—casts serious doubt on the credibility of paramilitary testimony procured by Plaintiffs'

counsel and underscores the need for Chiquita to take discovery into these facts before any such

depositions occur:

- In a pending action in the Northern District of Alabama, discovery unearthed a redacted memo circulated among ATS Plaintiffs' counsel in this case entitled "CHIQUITA: Ethics of Paying Witness's Legal Fees." Email from T. Collingsworth to Chiquita ATS Pls.' Counsel, *Drummond Co. v. Collingsworth*, No. 14-mc-81189 (S.D. Fla. Oct. 24, 2014) (D.E. 17-33) (attached as Ex. A to the Declaration of John E. Hall, attached hereto as Exhibit 1 ("Hall Decl.")). The memo was attached to an email from Terry Collingsworth, counsel for nearly 2,000 plaintiffs in this case, in which he acknowledged that such payments have an "impact on credibility," but asserted that they were necessary to "get truthful evidence of an AUC-Chiquita discussion." *Id.*

- One of the plaintiffs' lawyers included in this exchange, Paul Wolf—who has not joined in the instant motions—has filed a sworn declaration stating that he personally participated in meetings among the ATS plaintiffs' counsel in which payments to paramilitary "witnesses" were discussed. *E.g.*, Decl. of Paul Wolf at ¶¶ 19-21, 23-24 (Apr. 6, 2014) (D.E. 662-4); Wolf's Resp. to Mot. to Allow Participation in Apr. 28, 2014 ATA Sched. Conf. at 6-7 (Apr. 6, 2014) (D.E. 662) ("Wolf's Resp. re ATA Sched. Conf."). He has even opposed Plaintiffs' attempt to expedite the deposition of paramilitaries because it "is made for improper purposes" as a result of these payments. Wolf's Resp. re ATA Sched. Conf., at 4. According to Mr. Wolf, Mr. Collingsworth has proposed "to pay witnesses for false testimony" in connection with the Chiquita case and "has convinced several law firms to accept this scheme." Facebook Post from Asesorías Paul (Dec. 9, 2013) (attached as Ex. B to Hall Decl.).

- Two months ago, Judge Middlebrooks of this Court refused to quash a subpoena to Jack Scarola's firm—among the lawyers who filed the instant motions—seeking evidence of payments to former paramilitaries in connection with this case. *See* Subpoena, *Drummond Co. v. Collingsworth*, No. 14-mc-81189 (S.D. Fla. Sept. 19, 2014) (D.E. 1-3) (attached as Ex. C to Hall Decl.); Order on Mot. to Quash, *Drummond v. Collingsworth*, No. 14-mc-81189 (S.D. Fla. Nov. 21, 2014) (D.E. 24) (attached as Ex. D to Hall Decl.). Some of the other ATS plaintiffs' counsel suing Chiquita tried to intervene last month, but Judge Middlebrooks rebuffed them a few weeks ago. Order Denying All Pending Mots. as Moot, *Drummond v. Collingsworth*, No. 14-mc-81189 (S.D. Fla. Jan. 7, 2015) (D.E. 37) (attached as Ex. E to Hall Decl.). Similarly, earlier this month, Mr. Collingsworth's firm moved to quash a subpoena served by Dole in a separate California case (*Juana Perez 1A v. Dole Food Co.*) seeking evidence of payments to paramilitaries from William Wichmann, another ATS plaintiffs' attorney in the Chiquita litigation. Mot. to Quash Subpoena to William J. Wichmann & Mot. to Intervention [sic], *Conrad & Scherer, LLP v. Wichmann*, No. 09-011600 (05) (Fla. Circ. Ct. Jan. 8, 2015) (attached as Ex. F to Hall Decl.).

- Mr. Collingsworth and his associates have wired or pledged thousands of dollars to imprisoned paramilitaries, their relatives, or their Colombian criminal counsel. Filings in the Drummond cases reveal, for instance, that the relatives of a paramilitary witness received monthly payments totaling almost US$40,000 from July 2009 to September

2013.[2] They also reveal that Conrad & Scherer, Mr. Collingsworth's firm, funneled more than US$50,000 to another paramilitary member from January 2009 to October 2012.[3] According to a sworn declaration filed in the Drummond case, by April 2014, these payments had reached at least US$300,000 and had been made to over 20 individuals in Colombia and Panama.  Decl. of H. Thomas Wells, III at ¶ 3, *Drummond Co. v. Collingsworth*, No. 11-cv-3695 (N.D. Ala. Apr. 2, 2014) (D.E. 101-1) (attached as Ex. M to Hall Decl.).  "Although Mr. Collingsworth claims the[] payments were for 'security,' he has not produced any documents to that effect," according to Drummond. Drummond's Resp. to Mot. to Quash at 4 (attached as Ex. G to Hall Decl.).

- Internal discussions relating to these payments suggest that they were meant to influence witness testimony.  In one email, Mr. Collingsworth pushed a litigation funder to approve a payment of about US$100,000 to pay the criminal defense fees of a paramilitary witness, adding that not doing so would result in the witness "saying Drummond had nothing at all to do with it."  Email from T. Collingsworth to G. Falkowitz, *Drummond Co. v. Collingsworth*, No. 11-cv-3695 (N.D. Ala. Apr. 2, 2014) (D.E. 101-15) (attached as Ex. N to Hall Decl.).  Another email discusses payments to a witness in Colombia for "the initial draft of the information" and adds that ***"[i]f we don't like what we see, we don't pay***."  E-mail from T. Collingsworth to A. Alonso, *Drummond Co. v. Collingsworth*, No. 11-cv-3695 (N.D. Ala. Apr. 3, 2014) (D.E. 109-1) (attached as Ex. O to Hall Decl.) (emphasis added).

- In addition to making payments to imprisoned paramilitaries or their relatives, Mr. Collingsworth pledged thousands of dollars in arrangements with at least two Colombian criminal lawyers who represent imprisoned paramilitaries.  In one such arrangement, Mr. Collingsworth agreed to deliver $80,000 to the paramilitaries' counsel and pledged 25% of any attorneys' fees recovered for any cases filed as a result of that attorney's work for Mr. Collingsworth.  Atty. Cooperation Agreement, *Drummond Co. v. Collingsworth*, No. 11-cv-3695 (N.D. Ala. Apr. 2, 2014) (D.E. 101-18) (attached as Ex. P to Hall Decl.). Under another arrangement, Mr. Collingsworth agreed to share up to 17% of any attorneys' fees recovered in ATS litigation against Drummond with two Colombian

---

[2] Drummond Co., Inc.'s Resp. in Opp'n to Non-Party Jack Scarola & Searcy Denney Scarola Barnhart & Shipley, P.A.'s Mot. to Quash Subpoenas Duces Tecum, For Prot. Order & For Sanctions at 5, *Drummond Co. v. Collingsworth*, No. 14-mc-81189 (S.D. Fla. Oct. 24, 2014) (D.E. 17) ("Drummond's Resp. to Mot. to Quash") (attached as Ex. G to Hall Decl.); Decl. of H. Thomas Wells, III at ¶¶ 6-11, *Drummond Co. v. Collingsworth*, No. 14-mc-81189 (S.D. Fla. Oct. 24, 2014) (D.E. 17-1) ("Wells Decl.") (attached as Ex. H to Hall Decl.); Pymt. Receipts, *Drummond v. Collingsworth*, No. 14-mc-81189 (S.D. Fla. Oct. 24, 2014) (D.E. 17-5) (attached as Ex. I to Hall Decl.); Pymts. Chart, *Drummond Co. v. Collingsworth*, No. 14-mc-81189 (S.D. Fla. Oct. 24, 2014) (D.E. 17-6) (attached as Ex. J to Hall Decl.).

[3] Drummond's Resp. to Mot. to Quash at 7; Wells Decl. at ¶¶ 20-21; Pymt. Receipts, *Drummond Co. v. Collingsworth*, No. 14-mc-81189 (S.D. Fla. Oct. 24, 2014) (D.E. 17-19) (attached as Ex. K to Hall Decl.); Pymt. Receipts, *Drummond Co. v. Collingsworth*, No. 14-mc-81189 (S.D. Fla. Oct. 24, 2014) (D.E. 17-20) (attached as Ex. L to Hall Decl.).

lawyers who represent paramilitaries.  Atty. Cooperation Agreement, *Drummond Co. v. Collingsworth*, No. 11-cv-3695 (N.D. Ala. Oct. 8, 2013) (D.E. 62-14) (attached as Ex. Q to Hall Decl.).

- A former Alabama Supreme Court Justice, serving as an ethics expert in the Drummond case, opined that the circumstances surrounding these transactions "pose[] serious concerns about the potential for influencing witness testimony" and that "it is neither proper nor ethical to make substantial payments to several fact witnesses under th[ose] circumstances."  Rep. of R. Bernard Harwood, Jr. at 23, 27, *Drummond Co. v. Collingsworth*, No. 11-cv-3695 (N.D. Ala. Dec. 20, 2013) (D.E. 88-6) (attached as Ex. R to Hall Decl.).

Chiquita does not yet know whether anything of value has been given or offered to the Paramilitary Witnesses that Plaintiffs want to depose, but known contacts between Plaintiffs' counsel and those witnesses are cause for concern in light of these revelations.  Counsel for the three plaintiff groups who filed this motion readily acknowledge that they have been in contact with these witnesses, and Mr. Collingsworth has met with at least one of them, José Gregorio Mangones Lugo, since as far back as 2009.  *See* Bill Meyer, *Suit Claims Dole Foods Bankrolled Colombian Death Squads to Kill Labor Organizers, Farmers*, Cleveland.com, Apr. 28, 2009 (attached as Ex. S to Hall Decl.).  At Mr. Collingsworth's urging, Mangones signed a declaration over five years ago alleging that Dole and Chiquita voluntarily supported paramilitaries.  *See* Decl. of Mangones (D.E. 662-2).  This suggests that ATS plaintiffs' counsel have been setting the stage for the depositions they now seek for years.

### B. Expedited Paramilitary Depositions Would Impose Other Substantial and Potentially Needless Burdens.

Plaintiffs' request should also be rejected because the case-dispositive motions that Defendants will soon file may moot the need for any discovery.  Courts have held that, when a party moves for expedited discovery before the court rules on a motion to dismiss, it would be "unjust" to require the defendants to "expend significant resources" to undergo discovery for a case that may ultimately be dismissed.  *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 99 (D.D.C.

2014); *see also Wilcox Indust. Corp. v. Hansen,* 279 F.R.D. 64 (D.N.H. 2012).  In addition, the potential for dismissal makes it impossible for this Court to faithfully represent to a foreign government, as required by the Hague Evidence Convention and requested in Plaintiffs' motion, that the testimony of the Paramilitary Witnesses is *required* for purposes of this proceeding.  *See* Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, art. 3(c), Mar. 18, 1970, 23.3 U.S.T. 2555, 847 U.N.T.S. 231 (judicial Letter of Request must specify "the nature of the proceedings for which the evidence is *required*, giving all the necessary information" (emphasis added)).

As Plaintiffs acknowledge in their motion, following the Eleventh Circuit's recent mandate, Chiquita intends to file a renewed *forum non conveniens* ("FNC") motion, and the individual defendants will file their own Rule 12 motions.  *See* Pls.' Mot. Perpet. Test. at 4. Courts have dismissed cases on FNC grounds where, as here, there is an adequate and available forum abroad and it would be more convenient to litigate in that forum.  *See Ford v. Brown*, 319 F.3d 1302, 1307-08 (11th Cir. 2003) (holding that dismissal on FNC grounds is proper where "the convenience of the parties and the court, and the interests of justice indicate that the action should be tried in another forum").  The only claims remaining against Chiquita are Colombian law claims, and the Court noted over three years ago that "[i]f the ATS claims are gone . . . [Chiquita would] have a lot stronger argument that, we're going to litigate Colombian claims, maybe you should do it in Colombia."  Hr'g Tr. at 65:14-23 (Sept. 23, 2011) (attached as Ex. T to Hall Decl.).  Defendants should not be forced to incur significant discovery burdens—and the Court cannot affirm to a foreign government that such discovery is required—when motions to dismiss that will be filed in just over a month have a reasonable prospect of success and may eliminate the need for any discovery.  This is precisely why the Court has consistently

maintained that the parties should not be forced to undertake costly discovery before case-dispositive issues are resolved.  *See* Am. CMO at 6 (Sept. 15, 2008) (D.E. 141) (suspending Rule 26(f) obligations until the Court rules on motions to dismiss); Order Granting Defs.' Mot. for Certif. of Interloc. Appeal at 5, 7 (Mar. 27, 2012) (D.E. 518) (stating that "[t]he cost of discovery associated with investigating [plaintiffs'] claims will be nothing less than extraordinary" and could be significantly reduced if the Eleventh Circuit "determines that Plaintiffs have <u>not</u> adequately pled" their claims).

Here, there is no doubt that the requested depositions of the Paramilitary Witnesses will impose an especially substantial burden on the defendants.  Plaintiffs evidently intend to take the depositions in a Colombian prison, an unusual venue that will undoubtedly demand extensive coordination with Colombian government and security authorities, well beyond the single letter of request that Plaintiffs ask the Court to issue.  Each deposition will be attended by dozens of U.S. lawyers, representing nine different plaintiff groups and ten different defendants, all of whom will presumably have a right to examine the witness.  In addition, the depositions will take place in Spanish, thus requiring the aid of multiple certified translators and further adding to the length, complexity, and cost.  Meanwhile, the open-ended examination that Plaintiffs propose provides no comfort that the depositions will be limited in scope.  *See* Kaufman Decl., Ex. B, Ex. C, Ex. D. (D.E. 688-1) (proposing, *inter alia*, to ask the witness to tell the questioner "everything [he] know[s]" about the issues related to the case).[4]

---

[4] Indeed, courts have held that such requests for a "free ranging" examination weigh against granting expedited depositions.  *Semitool, Inc. v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 277 (N.D. Cal. 2002); *see also Better Packages, Inc. v. Zheng*, No. CIV.A. 05-4477 (SRC), 2006 WL 1373055, at *3 (D.N.J. May 17, 2006).

**C.      In All Events, There is no Factual Basis to Conclude that The Paramilitary Witnesses Will be Unavailable "Imminently."**

Notwithstanding the severe prejudice and substantial burdens that it would impose on the defendants, Plaintiffs attempt to justify their request for expedited depositions of their own friendly witnesses by arguing that they may not otherwise be able to procure the paramilitaries' testimony.  Given the extensive contacts between ATS Plaintiffs' counsel and former paramilitaries, and Plaintiffs' express admission that they expect to secure the voluntary cooperation of the Paramilitary Witnesses at issue, this suggestion is implausible on its face.  *See* Pls.' Mot. Letters Rog. at 8 n.2.[5]  But even were Plaintiffs not working cooperatively with the Paramilitary Witnesses, Plaintiffs' claims as to why the witnesses will be "imminently" unavailable are not credible for two reasons.

*First*, the facts do not support Plaintiffs' "emergency" request for a deposition based on the vague assertion that the Paramilitary Witnesses will be released from prison "imminently" or "very soon."  Pls.' Mot. Letters Rog. at 5, 9.  The sole piece of evidence cited by Plaintiffs is a June 2014 article suggesting that the Paramilitary Witnesses *may be eligible* for release by the end of 2014, but as detailed in the attached declaration from Emilio Restrepo Villegas, a Colombian criminal lawyer, and as Plaintiffs' counsel are undoubtedly aware, all of the Paramilitary Witnesses remain imprisoned and it is unknown when they will be released.  Decl. of Emilio Restrepo Villegas ¶¶ 4-13 (attached hereto as Exhibit 2) (hereinafter "Restrepo Decl.").  Plaintiffs nonetheless ask this Court to make a formal representation to the Republic of

_____

[5] Plaintiffs' concession that they expect to secure the voluntarily also precludes this Court from representing to the Colombian government, as Plaintiffs request, that the Paramilitary Witnesses' testimony "cannot be secured except by the intervention of the Colombian Ministry of Foreign Affairs."  Kaufman Decl., Ex. B at 2, Ex. C at 2, Ex. D at 2.

13

Colombia that expedited depositions are needed because the witnesses "will be released from prison imminently."  Kaufman Decl., Ex. B. at 3, Ex. C. at 3, Ex. D at 3.

*Second*, while Chiquita suspects that the Paramilitary Witnesses may well disappear *after* Plaintiffs perpetuate their trial testimony through expedited depositions, Plaintiffs' unsupported conjecture as to why the witnesses will likely disappear *prior* to sitting for such testimony is entirely unconvincing.  Plaintiffs contend that Mangones will likely disappear because he was a fugitive when he was first captured (Pls.' Mot. Letters Rog. at 5), but this argument is illogical on its face; having duly served his prison sentence, Mangones would have no reason to become a fugitive again.  Plaintiffs also speculate that, because Rendón was once subject to a denied extradition request by the United States, he "clearly has a strong incentive to abscond as soon as he is released from prison in order to avoid the possibility of extradition to the U.S" (Pls.' Mot. Letters Rog. at 5).  As explained in the attached declaration, however, in denying Rendón's extradition, the Colombian Supreme Court created an incentive for him *not* to abscond.  *See* Restrepo Decl., ¶ 16.  And although Plaintiffs claim that Roldán has a "strong incentive to keep a low profile upon release" to avoid retaliation for his role in the murder of Carlos Castaño, "the chief of the AUC" (Pls.' Mot. Letters Rog. at 5–6), there is no reason to believe that retaliation for this 10-year-old murder is likely, especially given that the murder was broadly supported within the AUC (including by Castaño's own brother, who ordered him killed).  Kaufman Decl., Ex. L; Restrepo Decl. ¶ 8.[6]  Finally, Plaintiffs ignore the facts, as detailed in the Restrepo

---

[6] Furthermore, in contrast to one of the principal cases on which Plaintiffs rely, there is no evidence that Roldán himself has any fear of retaliation for Carlos Castaño's murder.  *Cf. Calderon v. United States Dist. Ct*, 144 F.3d 618, 622 (9th Cir. 1998) (concluding that there was "a significant risk" that the witness "would be unavailable to testify before the court" due to intimidation, based on the witness' refusal to sign a written declaration implicating a former associate in a crime, his insistence on limiting access to any deposition, and the panic he displayed around the former associate).

declaration, demonstrating that the conditions of the paramilitaries' release from prison would make them more likely to voluntarily cooperate with the Plaintiffs, not less. *See* Restrepo Decl. ¶¶ 14-15.

Plaintiffs attempt to paper over this weak factual record by pointing to cases that have "granted requests for perpetuation of testimony when the intended deponent is likely to be outside the U.S. and difficult to locate or unlikely to cooperate at the time of trial." Pls.' Mot. Letters Rog. at 6 (citing *United States v. O'Sullivan*, 553 F. Supp. 2d 1349, 1351 (M.D. Fl7a. 2008) and *In re Petition of Rosario*, 109 F.R.D. 368, 371 (D. Mass. 1986)). In addition to being inapposite because they do not arise under Rule 26(d)(1), in each of these cases, the court found that discovery may be appropriate when the witness is in the United States at the time of the motion, will be leaving the country shortly thereafter, and would be unlikely to cooperate. *Id.* Here, not only do Plaintiffs suggest that the witnesses are *likely* to cooperate, the witnesses are *already* outside of the United States and thus, they are just as geographically accessible now as they will be at the time of discovery.

## III. Plaintiffs Have Not Established Good Cause to Take an Expedited Deposition of Cyrus Freidheim.

Plaintiffs' second motion for expedited discovery seeks the deposition of Cyrus Freidheim, who became CEO of Chiquita in 2002, five years after Chiquita's extortion payments to paramilitaries began, and left Chiquita in 2004. *See* Declaration of Cyrus F. Freidheim, Jr. ¶ 1 (attached hereto as Exhibit 3) ("Freidheim Decl."). In 2012, five of the plaintiff groups—including the three who filed this motion—amended their complaints to add several individual defendants, including Mr. Freidheim. Op. & Order Granting Pls.' Leave to Amend (Sept. 18, 2012) (D.E. 556); Third Am. Compl. at 27 (Sept. 20, 2012) (D.E. 558); Third Am. Compl. ¶ 1 (Sept. 24, 2012) (D.E. 575); Third Am. Compl. at 1 (Sept. 26, 2012) (D.E. 576); Second Am.

Compl. at 1 (Nov. 16, 2012) (D.E. 143); *Carrizosa* Third Am. Compl., No. 07-60821, at 1 (Dec. 10, 2012) (D.E. 186).  As explained below, Plaintiffs offer no evidence establishing good cause to take an expedited deposition of Mr. Freidheim.

> ### A.   An Expedited Deposition of Cyrus Freidheim Imposes Unreasonable Burdens on the Defendants.

Like their request to take depositions of the Paramilitary Witnesses, Plaintiffs' request to take an expedited deposition of Mr. Freidheim would force the parties to incur potentially needless discovery burdens given the reasonable prospect of dismissal for *forum non conveniens*. *See supra*, at 11.  Beyond this, Plaintiffs' request to take Mr. Freidheim's deposition is especially unreasonable because Mr. Freidheim is a named defendant who has not even had the opportunity to respond to the complaints.  Requiring him to sit for a deposition at this juncture would subject him to the kind of unfair burden that courts have cited in rejecting motions for expedited discovery.  *See Guttenberg*, 26 F. Supp. 3d at 99; *Wilcox*, 279 F.R.D. at 72 (finding that because defendant would "have been put to some amount of unnecessary effort" if the court granted the motion for expedited discovery and then dismissed the case, the "mere pendency of Hansen's motion to dismiss weighs in favor of denying [plaintiff's] request for expedited discovery").

> ### B.   There is No Need to Expedite the Deposition of Mr. Freidheim.

Plaintiffs justify their request to depose Mr. Freidheim before he has had a chance to file a Rule 12 motion on the ground that he may die or suffer cognitive impairment before the parties can participate in a Rule 26(f) conference.  This argument is unsupported by either the facts or the law.  Under Rule 26, expedited discovery should not be granted in the absence of any credible evidence that a witness will be unavailable to testify due to declining health or cognitive ability.  *See Sawhorse Enterprises, Inc. v. Church & Dwight Co., Inc.*, No. CIV.A. 12-6811 FLW, 2013 WL 1343608, at *1 (D.N.J. Apr. 3, 2013) (denying request for expedited deposition

16

based on "absence of any medical corroboration" that witness would likely be unavailable due to poor health or future cognitive impairment).  Here, Plaintiffs point to no evidence that Mr. Freidheim is in bad health or has diminished cognitive capacities.  To the contrary, as the attached declaration confirms, Mr. Freidheim is in perfectly good health and has not suffered any diminution of his faculties.  Freidheim Decl. ¶¶ 5-6.

Plaintiffs rely solely on the assertion that Mr. Freidheim is 78 years old in arguing that he will likely be unavailable soon.[7]  But Mr. Freidheim has led an active, healthy lifestyle throughout his seventies.  He currently serves as a director of Virgin America, Inc., where he chairs the audit committee, and as the President and CEO of Lost Tree Club, Inc. in North Palm Beach, Florida.  *Id.* at ¶¶ 3-4.  He remains physically and mentally fit, exercising several times a week with a personal trainer and regularly playing bridge and golf.  *Id.*  There is not a shred of evidence suggesting that he is in any imminent danger of passing.

Plaintiffs point to inapposite case law—that does not arise under Rule 26(d)(1)—to argue that Mr. Freidheim's age alone justifies an immediate deposition.  The only case cited by Plaintiffs in which a court actually allowed a preservation deposition based on a witness's age is *Texaco v. Borda*, 383 F.2d 607 (3rd Cir. 1967), a decades-old decision from the Third Circuit. The case is readily distinguishable because the parties were subject to a stay of "undeterminable" length while a separate but related criminal proceeding unfolded.  *See id.* at 609.  Here, the cases are not subject to an indefinite stay pending the outcome of a different action; they have been

---

[7] At the time of the filing of this opposition, Mr. Freidheim is 79 years old.  Freidheim Decl., ¶ 2.

returned to the district court to proceed with motions to dismiss and, if there are any claims remaining, discovery.[8]

The timing of Plaintiff's motion also undercuts their claim that Mr. Freidheim must be deposed immediately.  A movant's "demonstrated lack of urgency" weighs against granting its request for expedited discovery when they could have sought, but failed to seek, expedited discovery on earlier occasions.  *Guttenberg*, 26 F. Supp. 3d at 99.  Here, Plaintiffs first filed their complaints in 2007, when Mr. Freidheim was 71 years old, and later added him as an individual defendant in 2012, when he was approximately 76 years old.  Although Plaintiffs now suggest that any witness in his seventies should be subject to an expedited deposition to perpetuate testimony, they took no action to seek Mr. Freidheim's deposition at either of these junctures, or anytime in between.  Since 2012, Plaintiffs have stated, in general terms and without reference to any specific witness, that discovery may be necessary to preserve witnesses' lost testimony. They did not, however, request an expedited deposition of Mr. Freidheim until after the Eleventh Circuit dismissed all of their U.S. law claims against Chiquita.  Chiquita is left to infer that Plaintiffs are using his age as a pretext to wedge open the door to discovery prematurely and before threshold issues—such as FNC and the individuals' motions to dismiss—are decided.  *See Gutenberg*, *Guttenberg*, 26 F. Supp. 3d at 99 (rejecting request where "plaintiffs seek expedited discovery not to bolster the viability of their preliminary injunction but instead to fend off a . . . motion to dismiss").

---

[8] It is also worth noting that in the 1960s, the average life expectancy was ten years less than it is today.  Elizabeth Arias, *United States Life Tables, 2010*, NAT'L VITAL STAT. REP., Nov. 6, 2014, at 1, 45.  In light of major advances in modern medicine, it would be incredibly disruptive if the mere fact that a witness is in his seventies justified an expedited deposition.

Finally, there is no evidence that Mr. Freidheim's testimony is so critical as to justify forcing him to sit for a deposition before the Court resolves the forthcoming motions to dismiss. Courts have held that good cause does not exist for expedited discovery when the proposed discovery is likely to be "largely duplicative" (even if not "entirely duplicative") because "the lack of any substantial incremental benefit" weighed against the burden on the defendant constitutes "insufficient cause to permit expedited [] discovery." *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 277-78 (N.D. Cal. 2002). The two cases on which Plaintiffs principally rely underscore the importance of this consideration; both involved criminal proceedings where the witness whose expedited deposition was sought possessed unique first-hand information that could exonerate the criminal defendant. *United States v. Sullivan*, 553 F. Supp. 2d 1349 (M.D. Fla. 2008); *Calderon v. United States Dist. Ct*, 144 F.3d 618, 622 (9th Cir. 1998). This case is not remotely analogous.

There is no indication that Mr. Freidheim has unique, non-duplicative testimony to offer in this case. Plaintiffs argue that he is "uniquely able to provide firsthand information" about the decision for Chiquita's former subsidiary to make payments to the AUC, Pls.' Mot. Perpet. Test. at 3, but Mr. Freidheim did not join the company until five years after those payments began. Plaintiffs also assert that Mr. Freidheim was "present for key meetings and discussions and made or participated in making decisions for Defendant" regarding payments to Colombian paramilitaries. *Id.* But they offer no specifics in support of those conclusory assertions, and Mr. Freidheim's knowledge of meetings and discussions with *other persons* is, by definition, not "unique." Likewise, the conclusory allegation that Mr. Freidheim "reviewed and approved" payments to the AUC, even if accepted as true, also illustrates that his role was entirely non-

19

unique, as Plaintiffs' complaints make the same boilerplate allegation against several other

individuals at Chiquita. *See, e.g.*, Second Am. Compl. ¶¶ 18–20 (D.E. 589).

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' emergency motion to issue

requests for judicial assistance to perpetuate testimony and motion for leave to take depositions

to perpetuate testimony.

Dated: January 23, 2015                Respectfully submitted,

                                                  _____/s/ Robert W. Wilkins_____

| | |
|---|---|
| John E. Hall | Sidney A. Stubbs (Fla. Bar No. 095596) |
| James M. Garland | Robert W. Wilkins (Fla. Bar No. 578721) |
| José E. Arvelo | Cristopher S. Rapp (Fla. Bar No. 0863211) |
| COVINGTON & BURLING LLP | rwilkins@jones-foster.com |
| 1201 Pennsylvania Avenue, N.W. | JONES, FOSTER, JOHNSTON & STUBBS, |
| Washington, D.C.  20004 | P.A. |
| Telephone: (202) 662-6000 | 505 South Flagler Drive, Suite 1100 |
| Fax: (202) 662-6291 | West Palm Beach, Florida 33401 |
| | Telephone: (561) 659-3000 |
| Jonathan M. Sperling | Fax: (561) 650-0412 |
| COVINGTON & BURLING LLP | |
| The New York Times Building | |
| 620 Eighth Avenue | |
| New York, NY  10018 | |
| Telephone:  (212) 841-1000 | |
| Fax:  (212) 841-1010 | *Counsel for Chiquita Brands International, Inc.* |
| | *and Chiquita Fresh North America LLC* |

## <u>CERTIFICATE OF SERVICE</u>

       I HEREBY CERTIFY that I electronically filed the foregoing document with the

Clerk of the Court using CM/ECF on this 23rd day of January, 2015.  I also certify that the

foregoing document is being served this day on all counsel of record registered to receive

electronic Notices of Electronic Filing generated by CM/ECF, and in accordance with the Court's

First Case Management Order ("CMO") and the June 10, 2008 Joint Counsel List filed in

accordance with the CMO.


                         By:       /s/ Robert W. Wilkins
                                     Fla. Bar No. 578721
                                     rwilkins@jones-foster.com