UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-01916-MD-MARRA/JOHNSON

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:
ATS ACTIONS
_____/

NO. 08-80421-cv-MARRA/JOHNSON

JOHN DOE 1 *et al.*,
v.
CHIQUITA BRANDS INTERNATIONAL, INC., *et al.*
_____/

NO. 08-80508-cv-MARRA/JOHNSON

JOSE LEONARDO LOPEZ VALENCIA *et al.*
v.
CHIQUITA BRANDS INTERNATIONAL, INC., *et al.*
_____/

**PLAINTIFFS' REPLY TO DEFENDANTS' MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO ISSUE REQUESTS FOR
JUDICIAL ASSISTANCE TO PERPETUATE TESTIMONY AND MOTION FOR
LEAVE TO TAKE DEPOSITIONS TO PERPETUATE TESTIMONY**

# TABLE OF CONTENTS

LEGAL STANDARD .................................................................................................................. 1

ARGUMENT ................................................................................................................................ 2

1. Movants' Need for the Proposed Testimony is Uncontroverted. ....................................... 2

2. The Witnesses Will Likely Be Unavailable for Regular Rule 26 Discovery. ................... 3
   a. The Paramilitary Witnesses ..................................................................................... 3
      i. The Paramilitary Witnesses may be released soon, without notice to Plaintiffs. ................................................................................................ 4
      ii. The conditions of the Justice and Peace program are not effectively enforced and do not create sufficient incentives not to abscond. ................................................................................................... 4
      iii. Chiquita's speculation as to the possible motivations of each of the Paramilitary Witnesses not to abscond is incorrect. ............................ 5
      iv. Movants cannot find the Paramilitary Witnesses after their release. .......... 6
      v. Movants moved expeditiously to perpetuate the Paramilitary Witnesses' testimony. ................................................................................ 6
   b. Witness Freidheim ................................................................................................... 6

3. The Prejudice to Defendants Would Be Minimal. ............................................................. 7
   a. The Paramilitary Witnesses ..................................................................................... 7
      i. The cost to Defendants of participating in depositions will be low. ........... 8
      ii. Chiquita is not prejudiced by the absence of Rule 26(a) disclosures. .................................................................................................. 8
   b. Witness Freidheim ................................................................................................... 9

4. The Impending Motions to Dismiss are Not a Basis for Denial. ..................................... 10

CONCLUSION ........................................................................................................................... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*19th St. Baptist Church v. St. Peters Episcopal Church*,
   190 F.R.D. 345 (E.D. Pa. 2000)..........................................................................................2

*Application of Winning (HK) Shipping Co. Ltd.*,
   2010 WL 1796579 (S.D. Fla. Apr. 30, 2010) .....................................................................2

*Bank of New York Mellon v. Jefferson County*,
   2009 WL 412476 (N.D. Ala. Feb. 16, 2009) .....................................................................8

*In re: Bay Cnty. Middlegrounds Landfill Site*,
   171 F.3d 1044 (6th Cir. 1999) ............................................................................................2

*DRFP, LLC v. Republica Bolivariana de Venezuela*,
   2009 WL 4281261 (S.D. Ohio Nov. 24, 2009)...................................................................7

*Guttenberg v. Emery*,
   26 F. Supp. 3d 88, 99 (D.D.C. 2014) ............................................................................8, 9

*Olsen v. Delcore*,
   2009 WL 3055408 (D. Utah Sept. 24, 2009).....................................................................3

*Penn Mutual Life Ins. Co. v. United States*,
   68 F.3d 1371 (D.C. Cir.1995).............................................................................................7

*Pod-Ners, LLC v. Northern Feed & Bean*,
   204 F.R.D. 675 (D. Colo. 2002) ........................................................................................3

*Semitool, Inc. v. Tokyo Electron Am.*,
   208 F.R.D. 273 (N.D. Cal. 2002)...................................................................................3, 2

*St. Jude Med. S. C., Inc. v. Biosense Webster Inc.*,
   2013 WL 1502184 (M.D. Fla. April 12, 2013)..................................................................2

*State of Nev. v. O'Leary*,
   63 F.3d 932 (9th Cir. 1995) ...............................................................................................2

*Tennison v. Henry*,
   203 F.R.D. 435 (N.D. Cal. 2001).......................................................................................7

*Texaco, Inc. v. Borda*,
   383 F.2d 607 (3d Cir. 1967)...............................................................................................7

*United States v. Int'l Longshoremen's Ass'n*,
   2007 WL 2782761 (E.D.N.Y. Sept. 24, 2007) ...........................................................................7

*Wilcox Indus. Corp. v. Hansen*,
   279 F.R.D. 64 (D.N.H. 2012) ................................................................................................8, 9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26.................................................................................................. 2, 3, 7 & n.4, 8

Fed. R. Civ. P. 27..............................................................................................................................2

Movants seek to perpetuate the testimony of four eyewitnesses who were participants in key aspects of the complaints – testimony that is in imminent danger of being lost due to witness disappearance and advanced age.[1] The risk is not hypothetical: last year, one witness that Movants hoped to depose died of old age, and paramilitaries with sentences similar to the Paramilitary Witnesses were released from prison. Since 2007, thousands of Colombian paramilitaries have disappeared and over 1,600 have been murdered. Chiquita admits that the Paramilitary Witnesses are subject to imminent release, and that Cyrus Freidheim is well past the current average life expectancy. Against these facts, Chiquita gives no evidence that the depositions would prejudice Defendants but argues that any discovery should wait until it files its third motion to dismiss – an argument that stands the whole basis for the rule authorizing preservation discovery on its head. Because there is no genuine basis to delay preservation discovery, Chiquita's principal response is to throw mud, insinuating that payments that people other than Movants may have made to people other than the witnesses identified in the Motion somehow taint this motion. Movants have not made payments to these or any other witnesses, and allegations involving other lawyers and other witnesses cannot stand in the way of the right of these Plaintiffs to take discovery and obtain justice in this case.

Good cause therefore exists to grant the Motion because the need for expedited testimony to prevent a failure of justice outweighs any possible prejudice to Defendants.

## LEGAL STANDARD

The Court has ruled that Plaintiffs may seek discovery "where there is a reasonable basis that relevant and material testimony may be lost if not taken during the period . . . [the stay on

---

[1] For the purposes of this Memorandum, the term "Movants" refers only to counsel for the *John Doe I* and *Valencia* plaintiffs. Counsel for the *Carrizosa* plaintiffs was unavailable for consultation during the preparation of this Memorandum and was unable to consent to sign it.

discovery] is in effect." Dkt. 48 at 1-2. Chiquita disputes the standard of review, arguing for the adoption of a five-factor test for Rule 26(d) discovery from an unpublished case in a different judicial district, Opp., Dkt. 696 at 6, but the cases that use this test do not involve testimony that will be lost if not preserved. *See, e.g.*, *St. Jude Med. S. C., Inc. v. Biosense Webster Inc.*, No. 6:13-CV-333-ORL-28, 2013 WL 1502184 (M.D. Fla. April 12, 2013). Rule 27, which permits perpetuation of "known testimony," supplies the standards that apply here. *See State of Nev. v. O'Leary*, 63 F.3d 932, 936 (9th Cir. 1995); *Ex rel Application of Winning (HK) Shipping Co. Ltd.*, No. 09-22659-MC, 2010 WL 1796579, at *12 (S.D. Fla. Apr. 30, 2010). Regardless, "[w]hether Rule 26 or Rule 27 applies, . . . the common purpose informing *both rules* militates in favor of allowing perpetuation of testimony of a person when it is uncertain that that person will be available at trial." *19th St. Baptist Church v. St. Peters Episcopal Church*, 190 F.R.D. 345, 349 (E.D. Pa. 2000) (emphasis added).

## ARGUMENT

### 1. Movants' Need for the Proposed Testimony is Uncontroverted.

Cyrus Freidheim, Jr., was Chairman of Chiquita's Board of Directors from 2002 to 2004. He participated in discussions relating to AUC payments and was inclined to risk prosecution rather than stopping the payments. NJ SAC ¶ 118. As such, he can provide critical and relevant testimony that is important for Movants' case. Chiquita's suggestion that his testimony is not eligible for perpetuation because it is not "unique," Opp. at 19, is both irrelevant and untrue.[2]

Movants need not show that the witnesses' testimony is unique. *See In re: Bay Cnty. Middlegrounds Landfill Site*, 171 F.3d 1044, 1046-48 (6th Cir. 1999) ("We do not read this as

---

[2] As for the Paramilitary Witnesses, they have unique knowledge as to the circumstances and details of Chiquita's payments to the AUC. Chiquita does not contest the fact that this information is central to Plaintiffs' claims, or that the Paramilitary Witnesses are uniquely situated to provide it.

2

requiring that the information is completely different from what would be available elsewhere."). The single out-of-Circuit district court case that Chiquita cites is inapposite, as the testimony that the court denied in *Semitool* uncontestedly would have been available during normal discovery. *Semitool, Inc. v. Tokyo Electron Am.*, 208 F.R.D. 273, 277 (N.D. Cal. 2002). Movants need show only that the testimony is needed to prevent injustice – a standard that is met when, as in this case, the evidence is likely to be unavailable in the near future. *See, e.g.*, *Pod-Ners, LLC v. Northern Feed & Bean*, 204 F.R.D. 675, 676 (D. Colo. 2002) (granting expedited discovery because "with the passage of time," discovery would be "unusually difficult or impossible.").

Regardless, Freidheim's testimony *is* unique. Despite only joining Chiquita in 2002, he participated in many key decisions, such as to consult outside counsel, report to the Department of Justice, and continue paying the AUC despite the fact that the Department of Justice told them to stop. NJ SAC ¶¶ 86, 117-136, 161, 162. Even if his actions were taken in concert with others, his testimony is not duplicative; Chiquita's theory would imply that only people who act alone have testimony that qualifies. Freidheim was in a unique position of authority; only he can testify to his own motivations, knowledge, and logic. He may have a "different perspective to share" from other Chiquita representatives, *see, e.g.*, *Olsen v. Delcore*, No. 07-CV-334 TS, 2009 WL 3055408, at *1 (D. Utah Sept. 24, 2009), and could controvert their testimony.

    **2.**    **The Witnesses Will Likely Be Unavailable for Regular Rule 26 Discovery.**

        *a.*    *The Paramilitary Witnesses*

The Paramilitary Witnesses are likely to be released from prison imminently; Movants will have no way to locate them if they abscond. Attorney Restrepo admits that Roldán, Rendón, and Mangones were or will be eligible for release starting August 15, 2014, August 31, 2014, and March 30, 2015, respectively. Restrepo Decl., Dkt. 696-4 ¶¶ 9, 11, 13. Colombia, however,

3

is unable to track or protect these witnesses, who each have reasons of their own to disappear.

>    i.    *The Paramilitary Witnesses may be released soon, without notice to Plaintiffs.*

Rendón and Mangones could be certified for release at any time after their alternative sentences are completed. Rendón, whose release has been pending for over five months now, could be released *at any time*, and Mangones could be released in less than two months. Restrepo focuses on the fact that they have not yet been cleared for release, *id.*, but admits, "The timing of the determination of the Prosecutor's Office on this issue and whether it will decide that Rendón complied with the legal requirements is unknown." *Id.* ¶ 11. Other Justice and Peace participants have already been declared compliant and released; delays are the result of government inefficiency rather than any intent to hold them beyond their alternative sentences. Simons Decl. Ex. E ¶ 15. Thus, when the decisions to certify and release them are made, Plaintiffs will not have enough notice to renew their request to perpetuate testimony.

As for Roldán, a court has denied Colombian prosecutors' request to hold him beyond his alternative sentence, and the prosecutors have appealed to the Supreme Court. However, the standard of review is exacting, so the probability of a successful appeal is low. Simons Decl. Ex. E ¶ 14. In fact, despite Restrepo's speculation that Supreme Court review could take "months," Restrepo Decl. ¶ 9, the Supreme Court could order Roldán's release directly after his February 17 hearing, just as it did in a similar recent case. Simons Decl. Ex. E ¶ 13, 14; *id.* Ex. M.

Because the Paramilitary Witnesses could be set free in less than two months without notice to Plaintiffs, this Court should authorize the Plaintiffs to perpetuate their testimony now.

>    ii.    *The conditions of the Justice and Peace program are not effectively enforced and do not create sufficient incentives not to abscond.*

The conditions of the Justice and Peace program – which expects participants to keep a

court notified of their whereabouts, submit to monitoring, and participate in reintegration exercises – are demonstrably ineffective in preventing participants from absconding and will be inadequate to ensure the Paramilitary Witnesses' availability. There is no monitoring program to ensure that participants appear in court or notify authorities of his location. Simons Decl. Ex. E ¶ 8. Ex-paramilitaries often rejoin armed groups after release. *Id.* ¶ 9. Colombia's High Council for Reintegration has kept track of only 16,000 out of 26,000 demobilized paramilitaries; the other 10,000 are either "more or less lost" or never entered the reintegration process. *Id.* ¶ 10. No system exists to notify authorities that a participant is gone until long after he has disappeared.

> iii. *Chiquita's speculation as to the possible motivations of each of the Paramilitary Witnesses not to abscond is incorrect.*

Each of the Paramilitary Witness has strong personalized incentives to abscond. Roldán may face retribution because he assassinated AUC commander Carlos Castaño. Chiquita speculates that he need not fear for his safety because the murder happened ten years ago and was supported by the AUC. Opp. at 14. But over 1,600 ex-paramilitaries have been assassinated since demobilization, and countless others have disappeared from public view. Simons Decl. Ex. H. Castaño had his own supporters who could seek revenge and may have been waiting over eight years for Roldán to be released from custody. Roldán is also exposed because he implicated allies of ex-President Álvaro Uribe in statements to the Justice and Peace tribunal. *Id*. Ex. A.

Rendón faces at least four years of additional jail time after his Justice and Peace release because despite declining to extradite him, Colombia must investigate and punish him based on the narcotrafficking charges that he would have faced in the U.S. *Id*. Ex. Q. Chiquita's argument that Rendón's reprieve from extradition would be revoked if he were to abscond, Opp. at 14, is therefore meritless. In addition, Rendón faces dangers due to the testimony he has given under the Justice and Peace process and has a strong motivation to disappear. *Id*. Ex. E ¶ 18.

5

Mangones faces the same dangers as other ex-paramilitaries upon release. Many believe the government betrayed them by extraditing their bosses and do not trust the state to guarantee their safety or honor its commitments. *Id.* ¶ 19. Mangones himself has expressed lack of confidence in the state; he has publicly said of the Justice and Peace process, "We made a bad deal; it was a trap." *Id.* ¶ 12. Thus Mangones, too, is likely to abscond as soon as he is released.

         iv. *Movants cannot find the Paramilitary Witnesses after their release.*

Movants have no personal contact with any of the Paramilitary Witnesses and have no way to find them once they are released, even if they do not abscond. Chiquita's suggestion that Movants have a longstanding coordination with these witnesses is simply incorrect. Movants explained in their Motion that they would make efforts to seek their testimony voluntarily but to date have not contacted any of them and have no relationship with them whatsoever.[3]

         v. *Movants moved expeditiously to perpetuate the Paramilitary Witnesses' testimony.*

Movants were unaware that the Paramilitary Witnesses were scheduled for release until late last year, Simons Decl. ¶ 9, and moved expeditiously to seek depositions once they learned the facts. Regardless, even if they had been aware earlier, that fact would have no bearing on whether the relevant information is in imminent danger of disappearing now.

   b. *Witness Freidheim*

Freidheim is 79 years old, and the incidents on which he would be asked to testify occurred over ten years ago. His testimony is therefore in imminent danger of being lost due to

---

[3] Non-Movant Attorney Terrence Collingsworth was in contact with Mangones but has not had any contact with him since 2011. Simons Decl. Ex. C ¶ 5.

6

advanced age.[4] Chiquita relies on Freidheim's own self-serving statement as to his health and an unpublished, out-of-Circuit case to argue that evidence of infirmity is needed. Regardless, many courts have recognized that advanced age alone – without evidence of infirmity – increases the chance that testimony will be lost and have granted depositions of people older and younger than Freidheim on that basis – especially when the amount of time that has elapsed since the incidents in question is long. *See, e.g.*, *Texaco, Inc. v. Borda*, 383 F.2d 607, 609 (3d Cir. 1967); *Tennison v. Henry*, 203 F.R.D. 435, 442-43 (N.D. Cal. 2001); *DRFP, LLC v. Republica Bolivariana de Venezuela*, No. 2:04-CV-793, 2009 WL 4281261, at *2 (S.D. Ohio Nov. 24, 2009). *See also Penn Mutual Life Ins. Co. v. United States,* 68 F.3d 1371, 1375 (D.C. Cir.1995) (remanding for consideration of whether 81-year-old witness's advanced age "presents a significant risk that he will be unavailable to testify by the time of trial"); *United States v. Int'l Longshoremen's Ass'n*, No. CV-053212ILGVVP, 2007 WL 2782761, at *1 (E.D.N.Y. Sept. 24, 2007). In fact, Freidheim has already surpassed the age of 77.1 – the current average life expectancy for U.S. males, *see* Simons Decl. Ex. B. His current advanced age, in combination with the additional time that will pass before a Rule 26(f) conference and the length of time that has already elapsed since his tenure as Chiquita's Chairman, create an urgent need to perpetuate his testimony now.

Moreover, the fact that Movants could have requested Freidheim's deposition earlier does not undermine the urgency now. Movants were spurred in part by the death of co-Defendant Roderick Hills a few months ago, underlining the need to preserve elderly witnesses' testimony.

    **3.**    **The Prejudice to Defendants Would Be Minimal.**

        *a.*    *The Paramilitary Witnesses*

---

[4] In fact, he will be a year or two older than 79 before a Rule 26(f) conference is held, given Chiquita's plans to file an additional motion to dismiss and its past practice of seeking interlocutory appeal if its motions are denied.

7

                          *i.*      *The cost to Defendants of participating in depositions will be low.*

The only costs to Chiquita arising from the requested discovery are to prepare to ask questions and to show up. Chiquita insists that the costs will be high, but none of the costs they identify would fall on Defendants' shoulders. By contrast, in the cases that Chiquita cites for the proposition that expedited discovery is inappropriate when a motion to dismiss is pending are inapposite to this Motion because the proponents of discovery in those cases were seeking costly production from the opposing party itself. *See Guttenberg v. Emery*, 26 F. Supp. 3d 88, 99 (D.D.C. 2014); *Wilcox Indus. Corp. v. Hansen*, 279 F.R.D. 64 (D.N.H. 2012).

                        *ii.*      *Chiquita is not prejudiced by the absence of Rule 26(a) disclosures.*

Chiquita has all the information it needs to "prepare and conduct a meaningful cross-examination of the Paramilitary Witnesses," Opp. at 7, and is not prejudiced by the fact that Rule 26(a) disclosures have not yet been made. Chiquita knows Plaintiffs' intended deposition topics because it has the proposed Letters Rogatory and has read the complaints; it also has its own, internal information about its officers' prior contacts with these individuals. In fact, it knows more than Plaintiffs do about these witnesses and will likely be *more* prepared for depositions than Plaintiffs. Prejudice from the absence of additional prior disclosures is minimal at most.

Moreover, if the company is right and the Paramilitary Witnesses will *not* abscond, it can seek more depositions if it discovers information in the course of normal discovery that requires further exploration. *See, e.g.*, *Bank of New York Mellon v. Jefferson County,* No. 2:08-CV-01703-RDP, 2009 WL 412476 (N.D. Ala. Feb. 16, 2009) (multiple depositions of non-party may be granted with justification). If, however, Chiquita is admitting that the Paramilitary Witnesses may disappear, it only underlines the need to grant this Motion. For example, Chiquita makes insinuations about alleged payments to paramilitaries. If Chiquita gets information undermining

8

the credibility of the Paramilitary Witnesses in the course of discovery, it will be able to question and impeach them if it is correct that they will be available at that time.[5]

In addition, there is no risk of prejudice to Chiquita because its allegations of witness payments are irrelevant and false. None of Movants' counsel made payments or gave anything of value, directly or indirectly, to *any* witness or potential witness in this case for any reason, nor did they authorize or agree that anyone else would do such a thing. Simons Decl. ¶¶ 2, 4-7; *Id*. Ex. D, ¶¶ 3, 5-8.[6] The same is true for Collingsworth. *Id.* Ex. C ¶¶ 3, 6-8. Collingsworth has met with Mangones, who executed a Declaration but did received nothing of value in exchange. *Id*. ¶ 5. There is no overlap between the people that Collingsworth is alleged to have paid and the Paramilitary Witnesses or anyone else connected to this case. *Id.* ¶ 4. And Chiquita knows this; it cites no evidence supporting the notion that any lawyer involved in this multi-district litigation paid or provided anything of value, directly or indirectly, or authorized or agreed with anyone else to pay or provide anything of value, to any witness or potential witness in the case. The only direct link Chiquita attempts to draw between alleged payments and this case is a message on Attorney Paul Wolf's Facebook page, which was undermined when the author's admitted under oath that he had no personal knowledge of witness payments. Simons Dec Ex. S.

      b.      *Witness Freidheim*

The risks of heavy burden or prejudice to Defendants of deposing Freidheim are likewise low. Chiquita does not explain how this deposition might burden or otherwise prejudice

---

[5] Chiquita suggests that Plaintiffs may induce Paramilitary Witnesses to disappear *after* the depositions, preventing Chiquita from questioning them later. The implication that Plaintiffs are collaborating with the very paramilitary commanders whose units murdered their family members is absurd and insulting. It is Chiquita that admitted to paying the AUC, and this case is about the influence over AUC commanders that these payments bought them.

[6] Attorney William J. Wichmann also affirms that he made no improper payments. Simons Decl. ¶ 29.

9

Defendants; it merely states vaguely that it would be unfair to ask Freidheim to sit for a deposition before he has responded to the complaint, especially given the prospect of *forum non conveniens*. However, the cases it cites are inapposite because in both cases, the motion to dismiss had already been filed, the evidence was not in danger of disappearance, and the proponents sought extensive document discovery that would be costly to prepare. *Guttenberg*, 26 F. Supp. 3d 88; *Wilcox*, 279 F.R.D. 64. In this case, by contrast, the evidence may be lost if not perpetuated, and Chiquita does not need to prepare to produce anything.

### 4. The Impending Motions to Dismiss are Not a Basis for Denial.

Defendants' intent to file additional motions to dismiss makes perpetuation discovery now even more urgent, as a delay of months or years to litigate further motions would only increase the likelihood that the witnesses will disappear before providing evidence.[7] After seven years of litigation and two motions to dismiss, Chiquita's now intends to renew its *forum non conveniens* motion, which it could have filed at the outset of this case, when it presumably made its best arguments for dismissal. The Court should grant the requests for perpetuation, especially given the low probability that any of the Defendants will prevail on their motions to dismiss.[8]

### CONCLUSION

For the foregoing reasons, the Motion for Leave to Take Depositions to Perpetuate Testimony and Emergency Motion to Issue Requests for Judicial Assistance should be granted.

---

[7] In fact, no potential motion to dismiss can completely eliminate the need to depose any of the four witnesses. Even if Chiquita prevails on its *forum non conveniens* motion, Plaintiffs will need to take evidence from then in the course of follow-on Colombian proceedings.

[8] For Chiquita to prevail on *forum non conveniens*, it would need to show that it and the individual defendants. some of whom are under criminal investigation in Colombia, are willing to submit to jurisdiction in Colombia, and that the TVPA claims against the individuals could be litigated in Colombia. Similarly, to prevail on a motion to dismiss, the individual Defendants would need to meet the same burdens as Chiquita, win dismissal of common law claims that have already survived a motion to dismiss, and win dismissal of TVPA claims that this court dismissed as against Chiquita only because they could not be pled against a legal entity.

Dated: February 6, 2015

Respectfully submitted,

/s/ MARCO SIMONS
Marco Simons
EarthRights International
Jonathan G. Kaufman
Richard Herz
Jonathan Kaufman
Marissa Vahlsing
Michelle Harrison
**EarthRights International**
1612 K Street NW #401
Washington, DC 20006
Tel: 202-466-5188

Paul L. Hoffman
**Schonbrun DeSimone Seplow Harris & Hoffman LLP**
723 Ocean Front Walk
Venice, CA 90291
Tel: 310-396-0731
Fax: 310-399-7040

Agnieszka M. Fryszman
Benjamin D. Brown
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave., N.W.,
West Tower, Suite 500
Washington, D.C. 20005-3964
Tel: 202-408-4600
Fax: 202-408-4634

Judith Brown Chomsky
**Law Offices of Judith Brown Chomsky**
Post Office Box 29726
Elkins Park, PA 19027
Tel: 215-782-8367
Fax: 202-782-8368

Arturo Carrillo
**Colombian Institute of International Law**
5425 Connecticut Ave., N.W., #219
Washington, D.C. 20015
Tel: 202-994-5794

John DeLeon, FL Bar No. 650390

11

**Law Offices of Chavez-DeLeon**
5975 Sunset Drive, Suite 605
South Miami, FL 33143
Tel: 305-740-5347
Fax: 305-740-5348

*Counsel for John Doe I Plaintiffs - original docket number: 9:08-cv-80421-KAM*

_____

James K. Green, FL Bar No. 229466
**James K. Green, P.A.**
Esperanté, Suite 1650
222 Lakeview Ave.
West Palm Beach, FL 33401
Tel: 561-659-2029
Fax: 561-655-1357

Jack Scarola, FL Bar No. 169440
Wiliam B. King, FL Bar No. 181773
**Searcy Denney Scarola Barnhart & Shipley, P.A.**
2139 Palm Beach Lakes Blvd.
P.O. Drawer 3626
West Palm Beach, FL 33402
Tel: 561-686-6300
Fax: 561-478-0754

*Counsel for Plaintiffs Jose and Josefa Lopez Nos. 1 through 116—Original docket number: 9:08-cv-80508-KAM*

12

**CERTIFICATE OF SERVICE**

I certify that, on February 6, 2015, a copy of Plaintiffs' Reply to Defendants' Memorandum of Law in Opposition to Plaintiffs' Emergency Motion to Issue Requests for Judicial Assistance to Perpetuate Testimony and Motion for Leave to Take Depositions to Perpetuate Testimony was electronically filed with the Court using CM/ECF.

Dated: February 6, 2015

By: s/JOHN DELEON
John DeLeon (Florida Bar No. 650390)
**Law Offices of Chavez-DeLeon**
5975 Sunset Drive, Suite 605
South Miami, FL 33143
Tel: 305-740-5347
Fax: 305-740-5348