UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-01916-MD-MARRA/JOHNSON

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:

ATS ACTIONS

    08-80421-CIV-MARRA
    08-80465-CIV-MARRA
_____/


**DEFENDANT CHARLES KEISER'S SUPPLEMENTAL MEMORANDUM IN
SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINTS**

      Defendant Charles Keiser submits this brief as a supplement to the Individual Defendants' Joint Consolidated Motion to Dismiss Plaintiffs' Amended Complaints (the "Joint Brief") to offer individualized details as to why the TVPA claims asserted in the two actions in which he is named must be dismissed for failure to plead facts sufficient to state a claim.[1] *See* Joint Br. at 25-35. Mr. Keiser otherwise relies on the arguments set forth in the Joint Brief, which he joins in full.

      Plaintiffs' TVPA claims against Mr. Keiser are predicated on the preposterous notion that an individual who was threatened by the AUC with physical violence if his employer did not meet the AUC's extortion demands should be held liable for the injuries suffered by other victims of the AUC. To support this claim, Plaintiffs offer a series of allegations which, even if true, do nothing more than confirm that Mr. Keiser was personally confronted by the AUC and

---

[1] This memorandum shall refer to Case No. 08-cv-80421 as "*Does 1-11*," and to Case No. 08-cv-80465 as "*Does 1-144*."

1

forced, at great personal risk, to make extortion payments to them.  Plaintiffs' complaints are devoid of any factual allegations suggesting that Mr. Keiser's conduct was motivated by some purpose other than protecting Chiquita's employees and property in Colombia—much less any factual allegations that Mr. Keiser acted with the specific intent of supporting the AUC in torturing and killing Colombian civilians.  Absent such allegations, Plaintiffs' TVPA claims against Mr. Keiser must be dismissed under Rule 12(b)(6) for failure to state a claim.

## ARGUMENT

Plaintiffs' factual allegations fall far short of meeting the required standards for secondary liability under the TVPA.  To sustain their claims of aiding and abetting and conspiracy, Plaintiffs must plead facts showing that Mr. Keiser assisted or conspired with the AUC with the "*purpose* or *intent* to facilitate the commission of the specific offenses alleged." Order (June 3, 2011) (D.E. 412) at 67 (hereinafter, "MTD Order") (emphasis added).[2]  This requires allegations that Mr. Keiser "intended for the AUC to torture and kill civilians in Colombia's banana-growing regions."  *Id*. at 69.  In addition, Plaintiffs' aiding and abetting claims require allegations that Mr. Keiser substantially assisted the AUC's commission of the alleged offenses, and their conspiracy claims require allegations that Mr. Keiser entered into an agreement with the AUC to commit the alleged offenses.  *See id.* at 68-69.[3]

---

[2] All docket entry citations herein are to the master docket for 08-mdl-01916 unless otherwise indicated.

[3] Plaintiffs also appear to assert an "agency" theory of secondary liability.  *See Does 1-11* Second Am. Compl. ("SAC") ¶¶ 27-28; *Does 1-144* Third Am. Compl. ("TAC") ¶¶ 2233-39. The Court dismissed such claims against Chiquita because Plaintiffs failed to allege that Chiquita exercised control over the AUC.  *See* MTD Order at 82.  Plaintiffs' agency claims against Mr. Keiser must be dismissed for the same reason, as they have not alleged any facts suggesting that Mr. Keiser exercised any greater degree of control over the AUC than Chiquita did.

As explained in detail in the Joint Brief, Plaintiffs' complaints must (1) contain sufficient *factual* content to establish a plausible claim, and not just legal conclusions or formulaic recitations of the elements of a cause of action, and (2) *individualized* factual allegations, rather than generalized allegations that "lump" multiple defendants together. *See* Joint Br. at 26-28. Thus, the many conclusory and collective allegations set forth in Plaintiffs' complaints are not entitled to any assumption of truth in determining whether Plaintiffs have adequately pled a claim against Mr. Keiser.[4]

### A. Plaintiffs' Secondary Liability Claims Must be Dismissed Because They Do Not Allege That Mr. Keiser Intended that the AUC Torture and Kill Colombian Civilians.

Plaintiffs do not make a single allegation sufficient to plead that Mr. Keiser intended for the AUC to torture and kill Colombian civilians. To the contrary, Plaintiffs' individualized allegations against Mr. Keiser are limited to assertions that he interacted with the AUC regarding payments. *See Does 1-11* SAC ¶ 21 (alleging that Mr. Keiser "personally met with leaders of the AUC to initiate payments" and later met with the AUC "to arrange a system to hide Chiquita's payments to the AUC"), ¶ 165 (alleging that Mr. Keiser was "most likely" present at a meeting with the AUC in 1996 or 1997), ¶ 166 (alleging Mr. Keiser "personally met with leaders of the AUC and planned a system of payment"); *Does 1-144* TAC ¶ 2050 (alleging that Mr. Keiser "planned with the AUC the system of using convivirs to hide Chiquita's payments to the AUC" and later "arranged for cash payments to be made to the AUC using his own accounts"), ¶ 2202 (alleging that Mr. Keiser was "most likely" present at a meeting with the AUC in 1996 or 1997),

---

[4] *See, e.g., Does 1-11* SAC ¶ 27 ("Whenever reference is made in this Complaint to any conduct by a Defendant, such allegations and references shall be construed to mean the conduct of each of the Defendants, acting individually, jointly, and severally.").

3

and ¶ 2208 (alleging that Mr. Keiser "worked with the AUC to set up the convivir system to get funds to the AUC").[5]

Even assuming these facts to be true, nowhere do Plaintiffs allege any facts suggesting *why* Mr. Keiser communicated with the AUC regarding payments. Plaintiffs' complaints do not even suggest that Mr. Keiser's alleged conduct was motivated by a nefarious purpose, much less by the specific intent of supporting the killing and torture of Colombian civilians. In contrast to those cases in which courts have found the *mens rea* standard to be satisfied (*see* Joint Br. at 31-32), Plaintiffs do not allege that Mr. Keiser requested or directed that the AUC kill and torture Colombian civilians—in fact, Plaintiffs do not allege that he requested or directed that the AUC do *anything*—or that he indicated his desire to benefit from such violent acts.

Rather, Plaintiffs' allegations are consistent with the conclusion that Mr. Keiser's interactions with the AUC were driven by a fear of violent retribution. Indeed, the Factual Proffer filed in connection with the Department of Justice proceeding against Chiquita—on which Plaintiffs' complaints expressly rely (*see Does 1-144* TAC, ¶¶ 2035-38, *Does 1-11* SAC ¶¶ 17-19)—makes clear that Mr. Keiser was summoned to a meeting where the AUC's then-leader "instructed" him that Chiquita's Colombian subsidiary "had to make payments" and sent Mr. Keiser a "clear message that failure to make the payments could result in physical harm to Banadex personnel and property." Factual Proffer ¶ 21.[6]

---

[5] Plaintiffs also include Mr. Keiser in their collective allegations that the payments were "reviewed and approved" by various "senior executives" at Chiquita, who knew that the AUC was a violent paramilitary organization. *See Does 1-11* SAC ¶ 86; *Does 1-144* TAC ¶ 2142. Even if such group allegations were entitled to a presumption of truth—and they are not (*see* Joint Br. at 26)—they allege no more than "knowing assistance," which is insufficient to show that Mr. Keiser specifically intended that the AUC kill or torture Colombian civilians (*see* Joint Br. at 30-33).

[6] The *Does 1-144* complaint also includes a conclusory assertion that Mr. Keiser was the "main collaborator" with an AUC official (*Does 1-144* TAC, ¶ 2075), but merely labeling his actions— (continued…)

As the Supreme Court has held, and as the Eleventh Circuit has affirmed in a TVPA case, where the merits of a plaintiff's claim turn on the defendant having acted with a particular purpose or intent, allegations that are consistent with an "alternative explanation" for the defendant's conduct are insufficient to state a claim. *See Aschroft v. Iqbal*, 556 U.S. 662, 680-82 (2009) (although allegations were "consistent with" plaintiffs' theory that defendants' conduct was motivated by a discriminatory purpose, they failed to state a claim because they were also consistent with an "obvious alternative explanation" for defendants' behavior); *Mamani v. Berzain*, 654 F.3d 1148, 1155 (11th Cir. 2011) (assuming plaintiffs' allegations that Bolivian defense minister directed military personnel to fire weapons at civilian protesters did not establish that resulting deaths were "undertaken with studied consideration and purpose," given the "alternative explanation" that the specific deaths at issue were accidental); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (in determining whether plaintiffs have stated a claim "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer"). Importantly, "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d

---

which were also consistent with being a main *target* of the AUC—provides no basis for inferring intent. *See Aschroft v. Iqbal*, 556 U.S. 662, 681 (2009) (rejecting as conclusory allegations that that one defendant was the "architect" of an intentionally discriminatory scheme and another "implemented" and "executed" the plan).

5

990, 996-97 (9th Cir. 2014) (internal citations, quotation marks, and alterations omitted). Plaintiffs here have pled no facts that exclude, or are even inconsistent with, the alternative explanation that Mr. Keiser's interactions with the AUC were driven by a fear of violent retribution.

Furthermore, even if Plaintiffs alleged that Mr. Keiser acted improperly, illegally, or deceitfully—and they have not—this would still be insufficient to show that he acted with the specific purpose or intent to support the international law violations at issue. Other courts applying the same *mens rea* standard that applies here have made that clear. In *Shan v. China Constr. Bank Corp.*, 421 F. App'x 89 (2d Cir. 2011), the plaintiff alleged that the defendant falsified evidence in order to induce the plaintiff's arrest, but the Second Circuit held that this conduct, while fraudulent and improper, was consistent with motives other than subjecting the plaintiff to human rights violations—such as preventing the plaintiff from exposing the defendant's illegal activities. *See id*. at 93-95. In *Abecassis v. Wyatt*, 704 F. Supp. 2d 623 (S.D. Tex. 2010), the defendants had transacted business with the Saddam Hussein regime in violation of the United Nations "Oil-for-Food" program, a crime to which some of the defendants had pled guilty. *See id*. at 627, 629-30. The unlawfulness of their actions, however, did not support the inference that they intended to assist the Hussein regime in sponsoring terrorist attacks, as plaintiffs claimed. *See id*. at 655 ("It is not sufficient to allege facts showing that the defendants intended to violate the OFP or to assist Hussein in violating the OFP. . . . The allegation would have to be that the defendants acted with the purpose of assisting terrorists to murder or maim innocent civilians. No such factual allegation appears in the complaint. Instead, the allegations are that the defendants were serving their own business interests."). As these decisions illustrate, the relevant question for determining the sufficiency of Plaintiffs' allegations regarding Mr.

Keiser's "purpose or intent" is not whether Plaintiffs allege that he did something improper, but his alleged *reasons* for doing it. Plaintiffs have pled no facts that even purport to explain Mr. Keiser's motivations for allegedly meeting with the AUC or arranging confidential payments to them, and include no allegations that even remotely suggest Mr. Keiser acted with the intent that Colombian civilians be tortured and killed. For this reason alone, Plaintiffs have failed to state a TVPA claim against Mr. Keiser.

> B.  **Plaintiffs' Aiding and Abetting Claims Must Also be Dismissed Because They Do Not Allege That Mr. Keiser Provided "Substantial Assistance" to the AUC.**

To state a claim for aiding and abetting under the TVPA, Plaintiffs also must allege that Mr. Keiser provided "practical assistance" that had a "substantial effect on the perpetration of the crime." *See* MTD Order at 65; *see also* Joint Br. at 34. As the Court already has held, to meet this standard, Plaintiffs must allege, at a minimum, that the Defendants provided "additional assistance beyond financing" or that the financing was "gratuitous or unrelated to any commercial purpose." MTD Order at 77. Here, the *only* fact Plaintiffs allege regarding Mr. Keiser is that he interacted with the AUC regarding financing. Plaintiffs have not alleged a single fact suggesting that he provided any "additional assistance" to the AUC or that his interactions regarding financing were "gratuitous or unrelated to any commercial purpose."

Although the Court found that Plaintiffs had alleged such facts as to Chiquita, it did so based on allegations that Chiquita (1) "facilitated arms shipments for the AUC, including AK-47 rifles and ammunition used by AUC units carrying out attacks in Uraba," a banana-growing region where many of the acts of violence were alleged to occur, and (2) made payments to the AUC that "were not for ordinary commercial purposes, but were specifically intended to assist the AUC's military campaign against the FARC." *Id*. at 77-78.

7

Plaintiffs have made no similar allegations against Mr. Keiser. Plaintiffs do not even suggest that Mr. Keiser knew about Chiquita's alleged arms shipments, much less that he was involved in them in any way. Similarly, Plaintiffs also do not plead that Mr. Keiser's alleged interactions with the AUC regarding financing "were specifically intended to assist the AUC's military campaign against the FARC." Indeed, as explained in Section A above, Plaintiffs fail to allege any facts regarding Mr. Keiser's intent whatsoever.

### C. Plaintiffs' Conspiracy Claims Must Also be Dismissed Because They Do Not Allege That Mr. Keiser Entered Into an Agreement With the AUC to Torture and Kill Colombian Civilians.

To state a claim for conspiracy under the TVPA, Plaintiffs also must allege that Mr. Keiser entered into an agreement with the AUC to torture and kill Colombian civilians. *See* Joint Br. at 34-35. All Plaintiffs have alleged is that Mr. Keiser interacted with the AUC; they have not alleged that such meetings generated an "agreement" to torture and kill Colombian civilians. As explained above, the Factual Proffer on which Plaintiffs' complaints rely instead indicates that at a meeting with the AUC's then-leader, Mr. Keiser was "instructed" that Chiquita must make payments or else Mr. Keiser and other employees in Colombia would face violent retaliation. Plaintiffs' own allegations are fully consistent with these facts, and contrary to pleading an agreement to torture and kill civilians, suggest only that Mr. Keiser was forced to interact with the AUC. Nothing in Plaintiffs' allegations remotely suggests that Mr. Keiser reached a meeting of the minds with the AUC that they should conspire to torture and kill Colombian civilians.

## CONCLUSION

For the aforementioned reasons, and those stated in the Joint Brief, the Court should dismiss the *Does 1-144* and *Does 1-11* plaintiffs' claims against Mr. Keiser.

Dated: March 9, 2015

Respectfully submitted,

David S. Krakoff (*pro hac vice pending*)
dkrakoff@buckleysandler.com
James T. Parkinson (*pro hac vice pending*)
jparkinson@buckleysandler.com
BUCKLEYSANDLER LLP
1250 24th Street, N.W., Suite 700
Washington, D.C. 20037
Telephone:  (202) 349-8000
Fax:  (202) 349-8080

L. Louis Mrachek (Fla. Bar No. 182880)
lmrachek@mrachek-law.com
MRACHEK, FITZGERALD, ROSE,
KONOPKA, THOMAS & WEISS, P.A.
505 South Flagler Drive, Suite 600
West Palm Beach, Florida 33401
Telephone: (561) 655-2250
Fax: (561) 655-5537

*Attorneys for Defendant Charles Keiser*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on this 9th day of March, 2015. I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF, and in accordance with the Court's First Case Management Order ("CMO") and the June 10, 2008 Joint Counsel List filed in accordance with the CMO.

By: /s/ L. Louis Mrachek
L. Louis Mrachek