**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-01916-MD-MARRA/JOHNSON**

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:

ATS ACTIONS

      07-60821-CIV-MARRA
      08-80421-CIV-MARRA
      08-80465-CIV-MARRA
      08-80508-CIV-MARRA
      10-60573-CIV-MARRA
_____/


**INDIVIDUAL DEFENDANTS' JOINT
CONSOLIDATED MOTION TO DISMISS PLAINTIFFS'
AMENDED COMPLAINTS AND INCORPORATED MEMORANDUM OF LAW**

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................. 1

BACKGROUND .................................................................................................. 3

    A.    Procedural History ................................................................ 3

    B.    The Claims and Allegations Against the Individual Defendants ........................... 7

ARGUMENT ....................................................................................................... 8

I.    THE *DOES 1-144* AND *DOES 1-11* CLAIMS MUST BE DISMISSED FOR
LACK OF PERSONAL JURISDICTION UNDER RULE 12(B)(2). ............................... 8

    A.    The *Does 1-144* Claims Must be Dismissed for Lack of Personal
Jurisdiction. ............................................................................... 9

    B.    The *Does 1-11* Claims Must be Dismissed for Lack of Personal
Jurisdiction. ............................................................................... 11

II.    PLAINTIFFS' CLAIMS MUST BE DISMISSED UNDER RULE 12(B)(1) AND
RULE 12(B)(6). ........................................................................................ 12

    A.    Plaintiffs' State Law and ATS Claims Must be Dismissed on
Extraterritoriality Grounds. ......................................................... 12

    B.    Plaintiffs' TVPA Claims Must be Dismissed as a Matter of Law. ...................... 13

        1.    Plaintiffs Have Failed to Exhaust Adequate and Available
Remedies in Colombia. ......................................................... 14

        2.    The TVPA Does Not Authorize Secondary Liability Claims. ................. 18

        3.    The TVPA Does Not Apply to Extraterritorial Conduct. ........................ 19

    C.    TVPA Claims Arising from Acts of Violence More Than Ten Years Prior
to the Date on Which An Individual Defendant Was Named Are Time-
Barred. ...................................................................................... 21

    D.    Plaintiffs' TVPA Claims Must be Dismissed for Failure to Adequately
Plead a Claim. ........................................................................... 24

        1.    Plaintiffs Must Plead Specific, Individualized Facts That Support a
Reasonable Inference, and Not Just a Mere Possibility, of Liability. ........ 26

i

2.     Plaintiffs Have Not Alleged That Any Individual Defendant Specifically Intended That the AUC Torture and Kill Civilians. ............. 29

3.     Plaintiffs Have Not Alleged that Any Individual Defendant Provided Substantial Assistance to the AUC. ............................................. 33

4.     Plaintiffs Have Not Alleged That Any Individual Defendant Entered Into an Agreement With the AUC. ............................................... 34

5.     Plaintiffs Have Not Alleged a Specific Nexus Between Their Injuries and the Elements of Their TVPA Claims. .................................. 35

E.     Plaintiffs' Colombian Law Claims Must be Dismissed. ....................................... 35

1.     The *Does 1-144* Plaintiffs' Colombian Law Claims Are Time-Barred. ..................................................................................................... 35

2.     All Other Colombian Law Claims Should be Dismissed for Failure to Adequately Plead a Claim. .................................................................. 37

III.    ANY CLAIMS NOT DISMISSED FOR LACK OF PERSONAL JURISDICTION, OR WITH PREJUDICE, SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS*. .......................................................................... 39

CONCLUSION ............................................................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

CASES

A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.,
   62 F.3d 1454 (D.C. Cir. 1995) ...................................................................36

Abiola v. Abubakar,
   435 F. Supp. 2d 830 (N.D. Ill. 2006) .........................................................16

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) ...........................................................................26, 28, 29

Aziz v. Alcolac, Inc.,
   658 F.3d 388 (4th Cir. 2011) .....................................................................30

Bentley v. Bank of Am., N.A.,
   773 F. Supp. 2d 1367 (S.D. Fla. 2011) ......................................................27

Boim v. Holy Land Found. for Relief & Dev.,
   549 F.3d 685 (7th Cir. 2008) (en banc) ......................................................19

Cabello v. Fernandez-Larios,
   402 F.3d 1148 (11th Cir. 2005) (per curiam) ............................................19

Carmichael v. Kellogg, Brown & Root Servs., Inc.,
   572 F.3d 1271 (11th Cir. 2009) .................................................................14

Chowdhury v. Worldtel Bangladesh Holding, Ltd.,
   746 F.3d 42 (2d Cir.), cert. denied, Khan v. Chowdhury, 135 S. Ct. 401
   (2014) ...........................................................................................................20

Chowdhury v. Worldtel Bangladesh Holding Ltd.,
   No. 08 Civ. 1659, 2009 WL 9053203 (E.D.N.Y. Sept. 16, 2009),
   aff'd in part and rev'd in part, 746 F.3d 42 (2d Cir. 2014) ......................32

Control Screening LLC v. Technological Application & Prod. Co. (Tecapro),
   HCMC–Vietnam,
   687 F.3d 163 (3d Cir. 2012) ..................................................................9, 11

Corrie v. Caterpillar, Inc.,
   403 F. Supp. 2d 1019 (W.D. Wash. 2005), aff'd, 503 F.3d 974 (9th Cir. 2007) ...............14, 15

Cuba R.R. Co. v. Crosby,
   222 U.S. 473 (1912) ....................................................................................37

*Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*,
   341 F. App'x 487 (11th Cir. 2009) ...................................................................27

*Doe I v. Cisco Sys., Inc.*,
   --- F. Supp. 2d ---, 2014 WL 4446381 (N.D. Cal. Sept. 5, 2014)............................29

*Doe I v. Nestle USA, Inc.*,
   766 F.3d 1013 (9th Cir. 2014) ....................................................................31

*Doe v. Drummond Co.*,
   No. 2:09-CV-01041-RDP, 2010 WL 9450019 (N.D. Ala. Apr. 30, 2010)......................31, 33

*Doe v. Exxon Mobil Corp.*,
   573 F. Supp. 2d 16 (D.D.C. 2008) ..............................................................27, 38

*Doe v. Nestle, S.A.*,
   748 F. Supp. 2d 1057 (C.D. Cal. 2010) ...........................................................34

*Escarria-Montano v. United States*,
   797 F. Supp. 2d 21 (D.D.C. 2011) ................................................................14

*Friedman v. Bayer Corp.*,
   No. 99–CV–3675, 1999 WL 33457825 (E.D.N.Y. Dec. 15, 1999)...........................14

*Friedman v. Mkt. St. Mortg. Corp.*,
   520 F.3d 1289 (11th Cir. 2008) ...................................................................12

*Fuston v. Florida*,
   No. 2:12–cv–279–FtM–99DNF, 2013 WL 937575 (M.D. Fla. Mar. 11, 2013).....................23

*García v. Chapman*,
   911 F. Supp. 2d 1222 (S.D. Fla. 2012) ........................................................30, 35

*Gaudreau v. Am. Promotional Events, Inc.*,
   511 F. Supp. 2d 152 (D.D.C. 2007) ...............................................................37

*Giraldo v. Drummond Co., Inc.*,
   No. 2:09-cv-1041-RDP, 2013 WL 3873965 (N.D. Ala. July 25, 2013) ...........................30, 33

*Giraldo v. Drummond Co.*,
   No. 2:09-cv-1041-RDP, 2013 WL 3873978 (N.D. Ala. July 25, 2013) ...........................30, 33

*Gonzalez-Vera v. Kissinger*,
   No. CIVA 02-02240 HHK, 2004 WL 5584378 (D.D.C. Sept. 17, 2004), *aff'd*, 449
   F.3d 1260 (D.C. Cir. 2006) ........................................................................29

*Harbury v. Hayden*,
   444 F. Supp. 2d 19 (D.D.C. 2006), *aff'd*, 522 F.3d 413 (D.C. Cir. 2008)...............................14

*Hassen v. Nahyan*,
  No. CV 09-01106 DMG, 2010 WL 9538408 (C.D. Cal. Sept. 17, 2010) .............................16

*Helmer v. Doletskaya*,
  393 F.3d 201 (D.C. Cir. 2004) ...................................................................................................9

*In re Asbestos Products Liab. Litig.*
  (No. VI) .......................................................................................................................................8

*In re Harte*,
  440 B.R. 133 (Bankr. W.D. Mich. 2010) ........................................................................38, 39

*In re PCH Assocs.*,
  949 F.2d 585 (2d Cir. 1991) ....................................................................................................12

*In Re Rexall Sundown, Inc. Sec. Litig.*
  No. 988798CIV, 2000 WL 33539428 (S.D. Fla. Mar. 29, 2000) ...........................................32

*In re S. African Apartheid Litig.*,
  617 F. Supp. 2d 228 (S.D.N.Y. 2009), *reversed on other grounds by Doe I v. Nestle
  USA, Inc.*, 766 F.3d 1013 (9th Cir. 2014) ..............................................................................34

*In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*,
  953 F.2d 162 (4th Cir. 1992) .....................................................................................................8

*In re: Chiquita Brands Int'l Alient Tort Statute Litig.*,
  No. 12-14898-B (11th Cir. May 28, 2013) (attached hereto as Exhibit B) ...........................35

*Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*,
  704 F.3d 927 (11th Cir. 2013) .................................................................................................36

*Jaramillo v. Naranjo*,
  No. 1:10-cv-21951, 2014 WL 4898210 (S.D. Fla. Sept. 30, 2014) ........................................18

*Jean v. Dorelien*,
  431 F.3d 776 (11th Cir. 2005) .................................................................................15, 16, 21

*Jean-Charles v. Perlitz*,
  937 F. Supp. 2d 276 (D. Conn. 2013) .....................................................................................31

*Kabbaj v. Obama*,
  568 F. App'x 875 (11th Cir. 2014) ..........................................................................................27

*Kiobel. Cardona v. Chiquita Brands Int'l*,
  760 F.3d 1185 (11th Cir. 2014) ......................................................................................6, 13, 32

*Kiobel v. Royal Dutch Petroleum Co.*,
  133 S. Ct. 1659 (2013) ....................................................................................6, 13, 20, 21

*Krupski v. Costa Crociere S. p. A.*,
    560 U.S. 538 (2010)............................................................................23

*Lelieve v. Orosa*,
    No. 10-23677-CIV, 2011 WL 5103949 (S.D. Fla. Oct. 27, 2011) ...........................................22

*Lindley v. City of Birmingham, Ala.*,
    515 F. App'x 813 (11th Cir. 2013) ..................................................22

*Litle v. Arab Bank, PLC*,
    507 F. Supp. 2d 267 (E.D.N.Y. 2007), *vacated on other grounds*, *Linde v. Arab Bank,*
    *PLC*, 950 F. Supp. 2d 459 (E.D.N.Y. 2013) ....................................................21, 24

*Liu Bo Shan v. China Constr. Bank Corp.*,
    421 F. App'x 89 (2d Cir. 2011) ...................................................31

*Mamani v. Berzain*,
    21 F.Supp.3d 1353 ...................................................14

*Mamani v. Berzain*,
    654 F.3d 1148 (11th Cir. 2011) ...................................................26, 29

*Mohamad v. Palestinian Auth.*,
    132 S. Ct. 1702 (2012)...................................................5, 6

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010)...................................................20

*Mukamal v. Bakes*,
    383 B.R. 798 (S.D. Fla. 2007) ...................................................27

*Murillo v. Bain*,
    No. H-11-2373, 2013 WL 1718915 (S.D. Tex. Apr. 19, 2013)...................................................19

*Mustafa v. Chevron Corp.*,
    759 F. Supp. 2d 297 (S.D.N.Y. 2010), *aff'd*, 770 F.3d 170 (2014) ...........................................19

*Pierson v. Orlando Reg'l Healthcare Sys., Inc.*,
    No. 6:08-cv-466-Orl-28GJK, 2010 WL 1408391 (M.D. Fla. Apr. 6, 2010),
    *aff'd*, 451 F. App'x 862 (11th Cir. 2012)...................................................27

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981)...................................................15

*Presbyterian Church of Sudan v. Talisman Energy, Inc.*,
    582 F.3d 244 (2d Cir. 2009)...................................................30, 34

*Rojas Mamani v. Sanchez Berzain*,
   636 F. Supp. 2d 1326 (S.D. Fla. 2009) ....................................................................14, 15, 16

*Ross v. Buckeye Cellulose Corp.*,
   980 F.2d 648 (11th Cir. 1993) ...................................................................................24

*Rotella v. Wood*,
   528 U.S. 549 (2000)...................................................................................................21

*S. Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ....................................................................................32

*Sandvik v. United States*,
   177 F.3d 1269 (11th Cir. 1999) ................................................................................24

*Sinaltrainal v.Coca–Cola Co.*,
   578 F.3d 1252 (11th Cir. 2009) ................................................................................29

*Sosa v. Alvarez-Machain*,
   542 U.S. 692 (2004)...................................................................................................21

*Speier-Roche v. Volkswagen Grp. of Am., Inc.*,
   No. 14-20107-CIV, 2014 WL 1745050 (S.D. Fla. Apr. 30, 2014)...........................24

*Stewart-Veal v. Dist. of Columbia*,
   896 A.2d 232 (D.C. 2006) ........................................................................................23

*Stoneridge Inv. Partners v. Scientific-Atlanta, Inc.*,
   552 U.S. 148 (2008)...................................................................................................19

*Thompson v. RelationServe Media, Inc.*,
   610 F.3d 628 (11th Cir. 2010) ..................................................................................32

*Tymoshenko v. Firtash*,
   No. 11-CV-2794 (KMW), 2013 WL 1234821 (S.D.N.Y. Mar. 26, 2013) ..............34

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964)...................................................................................................36

*W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*,
   287 F. App'x 81 (11th Cir. 2008) .............................................................................27

*Warfaa v. Ali*,
   33 F. Supp. 2d 653 (E.D. Va. 2014) .........................................................................21

*Wayne v. Jarvis*,
   197 F.3d 1098 (11th Cir. 1999) ................................................................................23

*Weisskopf v. United Jewish Appeal-Fed'n of Jewish Philanthropies of New York, Inc.*,
    889 F. Supp. 2d 912 (S.D. Tex. 2012) ....................................................................................19

*Yousuf v. Samantar*,
    No. 1:04cv1360, 2012 WL 3730617 (E.D. Va. Aug. 28, 2012) ........................................31

## STATUTES

28 U.S.C. § 1350 ............................................................................................................................39

D.C. Code § 12–301(4) ..................................................................................................................37

D.C. Code § 12–301(8) ..................................................................................................................37

D.C. Code § 13-423(a)(1)–(6) .......................................................................................................10

D.C. Code § 16–2702 .....................................................................................................................37

Pub. L. No. 102-256, § 2(a), 106 Stat. 73 (1992) ...............................................................4, 13, 20

## OTHER AUTHORITIES

3 Ved P. Nanda & David K. Pansius, *Litigation of International Disputes in U.S. Courts*
    § 18:13 (Westlaw 2014) ("Nanda & Pansius") .................................................................37

Federal Rules of Civil Procedure .......................................................................................... passim

N.J. Court Rule 4:4–4 ....................................................................................................................11

9A Wright ET AL., *Federal Practice And Procedure* § 2447 (3d ed. 1998) ..................................37

# INTRODUCTION

In late 2012 — anywhere from two to nearly five years after the above-captioned actions were commenced — plaintiffs in these five actions ("Plaintiffs")[1] amended their complaints to name as defendants nine current or former directors, officers, and employees of Chiquita Brands International, Inc. ("Chiquita").  These claims were stayed during the pendency of Chiquita's interlocutory appeal.  With the appeal concluded, eight of these individuals (Fernando Aguirre, Cyrus Freidheim, Charles Keiser, Robert Kistinger, Keith Lindner, Robert Olson, William Tsacalis, and Steven Warshaw (collectively, the "Individual Defendants")) now move the Court, pursuant to Rule 12 and Local Rule 7.1, to dismiss the claims against them in their entirety.[2]

Rather than plead individualized facts supporting their claims against the Individual Defendants, Plaintiffs have essentially grafted the Individual Defendants onto the dozens of claims Plaintiffs asserted against Chiquita under the Alien Tort Statute ("ATS"), Torture Victims Protection Act ("TVPA"), state tort law, and Colombian tort law.  Plaintiffs' "allegations" against each of the Individual Defendants often consist of little more than a statement of the individual's title and tenure at Chiquita, coupled with conclusory assertions that all of the complaints' prior allegations against Chiquita should apply to the Individual Defendants. These perfunctory attempts to hold the Individual Defendants liable for thousands of violent acts committed by others cannot withstand scrutiny.

As a threshold matter, all of the claims asserted against the Individual Defendants in the *Does 1-144* and *Does 1-11* actions must be dismissed under Rule 12(b)(2) because Plaintiffs

---

[1] This motion and incorporated memorandum refer to Case No. 07-cv-60821 as "*Carrizosa*," to Case No. 08-cv-80421 as "*Does 1-11*," to Case No. 08-cv-80465 as "*Does 1-144*," to Case No. 08-cv-80508 as "*Valencia*", and to Case No. 10-cv-60573 as "*Montes*."

[2] The ninth individual who was named as a defendant, Roderick Hills, passed away in 2014.

have not alleged a proper basis for asserting personal jurisdiction over the defendants. In

addition, all of the claims against the Individual Defendants must be dismissed with prejudice

under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to

state a claim, for the following reasons.

- *First*, the state law and ATS claims must be dismissed as extraterritorial, just as the identical claims against Chiquita were dismissed on this basis by this Court and the Eleventh Circuit, respectively.

- *Second*, the TVPA claims must be dismissed as a matter of law for three independent reasons: (i) Plaintiffs have failed to exhaust the remedies available to them in Colombia, where the underlying offenses occurred; (ii) the TVPA does not authorize secondary liability claims; and (iii) the TVPA does not apply to claims based on extraterritorial conduct.

- *Third*, even if not otherwise precluded as a matter of law, many of the TVPA claims must be dismissed as time-barred under the TVPA's 10-year statute of limitations.

- *Fourth*, to the extent any TVPA claim is not dismissed for the above reasons, it must be dismissed for failure to adequately plead a claim. As this Court has already held, Plaintiffs must plead facts showing that each defendant assisted or conspired with the AUC with the specific "purpose or intent" that the AUC would torture and kill Colombian civilians. Not a single complaint offers even a conclusory assertion that any Individual Defendant specifically intended the AUC to torture and kill Colombian civilians. Rather, Plaintiffs present a mix of boilerplate collective allegations that are not entitled to any assumption of truth and a handful of individualized factual assertions that, even if assumed to be true, do not remotely suggest that any Individual Defendant specifically wanted the AUC to torture and kill Colombian civilians. Nor have Plaintiffs adequately pled, as they must, that any of the Individual Defendants provided "substantial assistance" to the AUC or entered into an agreement with the AUC to torture and kill Colombian civilians.

- *Fifth*, many of Plaintiffs' Colombian law claims must be dismissed as untimely pursuant to the applicable statute of limitations of the forum in which those claims were brought. The remaining Colombian law claims must be dismissed for failure to adequately plead a claim under the heightened pleading standard applicable to foreign law claims.

Finally, to the extent that the Court does not dismiss all of Plaintiffs' claims for lack of personal

jurisdiction or with prejudice, any remaining claims should be dismissed for *forum non*

*conveniens* for the reasons set forth in Chiquita's contemporaneously filed Motion to Dismiss

Under Rule 12(b)(6) and for *Forum Non Conveniens* (the "FNC Motion").

2

The several grounds for dismissal set forth above are detailed below.  In addition, each of the Individual Defendants is filing a supplemental individual brief in further support of the argument that Plaintiffs' TVPA claims against him must be dismissed for failure to adequately plead a claim.

## BACKGROUND

### A.      Procedural History

These five actions were originally filed against Chiquita in 2007 (*Carrizosa*, *Does 1-11*, and *Does 1-144*), 2008 (*Valencia*), and 2010 (*Montes*).  Plaintiffs' claims against Chiquita arose out of the company's alleged support, through its Colombian subsidiary, of the FARC and other left-wing guerilla groups and of the AUC, a violent paramilitary group.  Plaintiffs alleged that they or their relatives were the victims of violence committed by the guerillas or the AUC, for which they sought damages from Chiquita under the ATS, TVPA, state tort law, and Colombian law.

Ultimately, the five cases were centralized in this multi-district litigation proceeding with four other lawsuits bringing materially similar claims against Chiquita on behalf of thousands of Colombian nationals (collectively, the "ATS Actions").  After multiple rounds of briefing, on June 3, 2011, the Court ruled on Chiquita's consolidated Rule 12 motions to dismiss the ATS Actions.  *See* Op. & Order (June 3, 2011) (D.E. 412) (hereinafter "MTD Order").[3]  The Court reached the following conclusions:

- ATS claims for terrorism, and for material support of terrorism, were dismissed on the ground that they were not cognizable claims under international law.  *Id.* at 22.

---

[3] All docket entry citations herein are to the master docket for 08-md-01916 unless otherwise indicated.

3

- Secondary liability claims under the ATS for war crimes, crimes against humanity, extrajudicial killing, and torture were allowed on the grounds that they constituted violations of international law, that the ATS permitted plaintiffs to assert secondary liability theories for such violations, and that Plaintiffs' complaints adequately pled the elements of both the underlying international law violation and Chiquita's secondary liability for it.  *Id*. at 70-79.

- Secondary liability claims under the TVPA for extrajudicial killing and torture were allowed to proceed, for the same reasons that Plaintiffs' identical claims under the ATS were sustained.  In reaching this conclusion, the Court explained that the elements of the TVPA claims were identical to the elements of the claims for torture and extrajudicial killing brought under the ATS.  *Id*. at 84-85.

- U.S. state law claims were dismissed on the ground that none of the state laws at issue could be applied to extraterritorial conduct.  *Id*. at 86-89.

- Colombian law claims were dismissed for lack of subject matter jurisdiction, but upon a subsequent motion for reconsideration, these claims were reinstated on the basis of diversity jurisdiction.  *Id*. at 90.[4]

        In July 2011, Chiquita moved to certify the MTD Order for interlocutory appeal.  *See*

Defs.' Mot. for Certification for Interlocutory Appeal (July 20, 2011) (D.E. 454).  Chiquita then

filed its original *forum non conveniens* motion and asked the Court to rule on that motion before

ruling on Chiquita's certification motion.  *See* Defs.' Mot. to Dismiss for *Forum Non Conveniens*

at 1 (Nov. 5, 2011) (D.E. 502).  After suggesting at oral argument that it might be more inclined

to grant a motion to dismiss for *forum non conveniens* if only Colombian law claims remained in

the case, the Court granted Chiquita's certification motion.  *See* Hr'g Tr. at 65:18-23 (Sept. 23,

2011) (D.E. 696-3, at 68); Order Granting Defs.' Mot. for Certification of Interlocutory Appeal

at 5 (Mar. 27, 2012) (D.E. 518) (hereinafter "Certification Order").)  On September 27, 2012, the

---

[4] The Court also dismissed without prejudice those claims asserted by the *Does 1-144* plaintiffs that were premised on violence by the FARC and other left-wing guerillas.  MTD Order at 94 n.103.  However, upon a subsequent amendment to the complaint, the Court permitted these claims to proceed.  (Order (Mar. 27, 2012) (D.E. 514).)  The guerilla-based claims were brought under the ATS, state law, and Colombian law, but *not* the TVPA (MTD Order at 91), which requires that the violence was committed "under actual or apparent authority, or under color of law" (TVPA, Pub. L. No. 102-256, § 2(a), 106 Stat. 73 (1992)).

Eleventh Circuit granted Chiquita's petition for interlocutory review.  *See* Order (Sept. 27, 2012) (D.E. 579).

Meanwhile, on April 18, 2012, the Supreme Court held that the TVPA only allows claims against natural persons and not corporations.  *See Mohamad v. Palestinian Auth.*, 132 S. Ct. 1702 (2012).  Within a few weeks, the plaintiffs in four ATS Actions moved for leave to amend their complaints to assert claims for the first time against various current or former Chiquita directors, officers, and employees.  Pls.' Mot. for Leave to Amend the Second Am. Compl., *Does 1-144* (May 30, 2012) (D.E. 536); Mot. for Leave to File Third Am. Compl., *Montes* (May 30, 2012) (D.E. 537); Mot. to Amend Compl., *Valencia* (May 30, 2012) (D.E. 538); Mot. to Amend Compl., *Carrizosa* (May 31, 2012) (D.E. 541).  Chiquita opposed these requests on the grounds that they were untimely, and that they were futile because the proposed claims against the individuals could not survive a motion to dismiss.  Defs.' Consolidated Mem. Partial Opp'n to Pls.' Mots. for Leave to File Am. Compls. at 2 (June 29, 2012) (D.E. 547).  The moving plaintiffs then filed a joint response in which they addressed, *inter alia*, the substance of Chiquita's futility argument and acknowledged that their attempt to add individual defendants was motivated by *Mohamad's* holding that corporations cannot be liable under the TVPA.  Pls.' Joint Resp. to Defs.' Consolidated Opp'n at 4 (July 18, 2012) (D.E. 552) (hereinafter "Pls.' Joint Resp.").

The Court granted the motions for leave to amend without addressing the merits of Chiquita's futility argument, finding that arguments concerning the viability of Plaintiffs' claims should be addressed on motions to dismiss rather than on a motion for leave to amend.  *See* Order at 2 (Sept. 18, 2012)  (D.E. 556).  Plaintiffs in the four actions then filed their amended complaints.  *Does 1-144* Third Am. Compl. (Sept. 24, 2012) (D.E. 575) (hereinafter "*Does 1-144*

TAC"); *Montes* Third Am. Compl. (Sept. 20, 2012) (D.E. 558) (hereinafter "*Montes* TAC");

*Valencia* Third Am. Compl. (Sept. 26, 2012) (D.E. 576) (hereinafter "*Valencia* TAC");

*Carrizosa* Third Am. Compl. (Dec. 10, 2012) (D.E. 186) (hereinafter "*Carrizosa* TAC").  On

November 13, 2012, the Court entered an agreed order staying all proceedings in the ATS

Actions, pending the completion of the Eleventh Circuit's interlocutory review, and tolling the

deadline for defendants to respond to the various amended complaints until 60 days after the

completion of the interlocutory appeal.  Order (Nov. 13, 2012) (D.E. 587).  The stay order was

subject to a limited exception allowing a fifth group of plaintiffs to file an amended complaint

naming certain individual defendants (*id*. at 1), which they did shortly thereafter.  *See Does 1-11*

Second. Am. Class Action Compl. (Nov. 16, 2012) (D.E. 589) (hereinafter "*Does 1-11* SAC").

On April 17, 2013, the Supreme Court held in *Kiobel v. Royal Dutch Petroleum Co.*, 133

S. Ct. 1659 (2013), that ATS claims "seeking relief for violations of the law of nations occurring

outside the United States [are] barred."  *Id*. at 1669.  On July 24, 2014, the Eleventh Circuit

issued its decision on Chiquita's appeal, ruling that the district court lacked jurisdiction over the

ATS claims against Chiquita under *Kiobel*.  *Cardona v. Chiquita Brands Int'l*, 760 F.3d 1185,

1189 (11th Cir. 2014).  The Eleventh Circuit also ruled that the TVPA claims against Chiquita

must be dismissed pursuant to *Mohamad*.  *Id.* at 1188–89.

Plaintiffs' subsequent petitions for a panel rehearing and for rehearing *en banc* were

denied, and the Eleventh Circuit issued its mandate on January 6, 2015 (D.E. 693), directing

dismissal of the ATS and TVPA claims against Chiquita and leaving plaintiffs' Colombian law

claims as the only remaining claims against Chiquita.  Because the claims against the Individual

Defendants were not part of the interlocutory appeal, they also remain pending.

**B.      The Claims and Allegations Against the Individual Defendants**

The *Does 1-144* complaint asserts claims under the ATS, TVPA, state tort law, and Colombian law against eight individual defendants:  Fernando Aguirre, Cyrus Freidheim, Roderick Hills, Charles Keiser, Robert Kistinger, Robert Olson, William Tsacalis, and Steven Warshaw.  The *Does 1-11* complaint asserts claims under the ATS, TVPA, state common law, and Colombian law against six of those eight individuals:  Messrs. Freidheim, Hills, Keiser, Kistinger, Olson, and Tsacalis.  The *Valencia*, *Montes*, and *Carrizosa* complaints name only two individual defendants:  Mr. Freidheim and Keith Lindner.  All three of those complaints assert claims against Messrs. Freidheim and Lindner under the ATS, state common law, and Colombian law, but only the *Valencia* and *Montes* complaints assert claims under the TVPA.[5]

Though Plaintiffs have asserted a wide range of claims against the Individual Defendants, their amended complaints add few allegations that could provide a factual basis for those claims. Instead, they overwhelmingly address the conduct of Chiquita rather than of any specific individuals.  In many cases, Plaintiffs simply incorporate the Individual Defendants into their existing allegations against Chiquita by replacing "Chiquita" with "defendants" or adding the phrase "and the individual defendants" after "Chiquita."  *See, e.g.*, *Does 1-144* TAC ¶ 2200 ("Chiquita and the individual defendants knew and intended that their actions would assist in the killings and other violent conduct alleged herein").  All but one of the complaints went so far as

---

[5] The *Montes* complaint asserts ATS, state law, and Colombian law claims against "Chiquita," while asserting only TVPA claims against "Freidheim" and "Lindner."  The complaint also includes a paragraph, however, asserting that "the term 'Chiquita' shall refer to Chiquita Brands International, Inc., Banadex, Freidheim, Lindner, and the Does and Doe Corporations *interchangeably, as well as collectively*." *Montes* TAC ¶ 1622 (emphasis added).  As a result, it is unclear whether the *Montes* plaintiffs assert ATS, state law, and Colombian law claims against Messrs. Freidheim and Lindner.  The arguments offered herein operate on the assumption that the Court will construe the complaint as asserting such claims.

to add paragraphs asserting that every allegation against Chiquita should be deemed to apply to

each Individual Defendant:

> Whenever and wherever reference is made in this Complaint to any conduct committed by Chiquita such allegations and references shall also be deemed to mean the conduct of Chiquita, Banadex, Freidheim, Lindner, the Does and Doe Corporations, and any individual or entity acting in the United States and Colombia for their benefit.  Therefore, for purposes of this Complaint, the term "Chiquita" shall refer to Chiquita Brands International, Inc., Banadex, Freidheim, Lindner, and the Does and Doe Corporations interchangeably, as well as collectively.  *Montes* TAC ¶ 1622.

> Whenever reference is made in this complaint to conduct by a Defendant, such allegations and references shall be construed to mean the conduct of each of the Defendants acting individually, jointly and severally.  *Carrizosa* TAC ¶ 31; *Valencia* TAC ¶ 14; *Does 1-11* SAC ¶ 27.

As a result of this formulaic collective pleading, the complaints assert in conclusory fashion that

each Individual Defendant personally took every action that is attributed to Chiquita as a

corporation, even during periods when the individual had no affiliation with Chiquita.  *Compare,*

*e.g.*, *Montes* TAC ¶ 1617 (noting that Freidheim was an officer and director of Chiquita from

2002 to 2004), *with id.* ¶ 1769 (alleging that "Chiquita" paid the AUC by check between 1996

and 2002).

Plaintiffs' amended complaints contain only a handful of factual allegations specific to

any Individual Defendant.  As explained in detail in Section II.D below, and in the Individual

Defendants' supplemental memoranda in support of this motion, the paucity of these

individualized allegations confirms that Plaintiffs lacked any factual basis for adding the

Individual Defendants to these cases.

## ARGUMENT

**I.    THE *DOES 1-144* AND *DOES 1-11* CLAIMS MUST BE DISMISSED FOR LACK OF PERSONAL JURISDICTION UNDER RULE 12(B)(2).**

In a multidistrict litigation proceeding, a defendant is subject to personal jurisdiction only

if the federal court from which the relevant action was transferred could exercise personal

jurisdiction over him.  *See In re Asbestos Products Liab. Litig.* (No. VI), 965 F. Supp. 2d 612, 620 (E.D. Pa. 2013) (MDL court dismissing claims for lack of personal jurisdiction under Ohio law, the law of the transferor court, "because Ohio's long-arm statute does not confer jurisdiction"); *see generally In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 165-66 (4th Cir. 1992) ("As in any other case, a transferee court's jurisdiction in multi-district litigation is limited to cases and controversies between persons who are properly parties to the cases transferred.").  Thus, the Court must determine whether the Individual Defendants are subject to personal jurisdiction in the courts in which the complaints naming them as defendants were originally filed.

Here, two of the cases were filed and transferred from jurisdictions other than the Southern District of Florida.  The *Does 1-144* action was filed in federal court in the District of Colombia, and the *Does 1-11* action was filed in the District of New Jersey.  Plaintiffs in these cases do not allege, however, that any of the Individual Defendants was domiciled in D.C. or New Jersey.  Thus, the Individual Defendants are subject to personal jurisdiction in those courts only if the exercise of such jurisdiction is authorized by the long-arm jurisdiction law of the forum state, and also comports with Constitutional due process guarantees.  *Control Screening LLC v. Technological Application & Prod. Co. (Tecapro), HCMC–Vietnam*, 687 F.3d 163, 167 (3d Cir. 2012); *Helmer v. Doletskaya*, 393 F.3d 201, 208 (D.C. Cir. 2004).  For the reasons explained below, this requires dismissal of the claims against all of the Individual Defendants in the *Does 1-144* and *Does 1-11* cases.

A.      **The *Does 1-144* Claims Must be Dismissed for Lack of Personal Jurisdiction.**

The D.C. long-arm statute authorizes the exercise of specific personal jurisdiction over a defendant where a claim for relief arises from the defendant's:

(1) transacting any business in [D.C.];

9

(2) contracting to supply services in [D.C.];

(3) causing tortious injury in [D.C.] by an act or omission in [D.C.];

(4) causing tortious injury in [D.C.] by an act or omission outside [D.C.] if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in [D.C.];

(5) having an interest in, using, or possessing real property in [D.C.];

(6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within [D.C.] at the time of contracting, unless the parties otherwise provide in writing.

D.C. Code § 13-423(a)(1)–(6).  Here, there are no allegations that remotely suggest that any of the seven Individual Defendants named in the *Does 1-144* action — Messrs. Aguirre, Freidheim, Keiser, Kistinger, Olson, Tsacalis, and Warshaw — are covered by any of the above provisions. No tortious injury was allegedly suffered in D.C.; the alleged acts of violence all took place in Colombia.  And no claim against an individual arises from his transacting business, contracting to supply services, involvement with real property, or agreement to insure a risk, in D.C.  Rather, Plaintiffs' claims are premised on the support allegedly provided by the Individual Defendants to Colombian guerrillas and paramilitaries, either in Colombia or from Chiquita's offices in Ohio.[6]

Furthermore, even if the D.C. long-arm statute authorized personal jurisdiction over any

---

[6] With respect to sub-section (1) of the D.C. long-arm statute, Plaintiffs may point to allegations that Mr. Olson purportedly made "false statements" about the payments to the Department of Justice in D.C. and spoke with Chiquita's lawyers in D.C. to somehow "pressure" them to change their advice to the Company about the payments.  *Does 1-144* TAC ¶¶ 2053, 2056 (D.E. 536).  However, even assuming that Mr. Olson actually engaged in such conduct — and he did not — and that such alleged conduct constitutes "transacting business," this was not the alleged conduct that gave rise to Plaintiffs' claims.  Rather, the gravamen of Plaintiffs' complaint against Mr. Olson is that he "approved" payments to the AUC — an act that Plaintiffs do not allege to have occurred in the District of Colombia.  *Id.* ¶ 2038.

Individual Defendant, the exercise of such jurisdiction would not comport with due process for the reasons stated in Section I.B below.  The Court must therefore dismiss the claims against the seven Individual Defendants named in the *Does 1-144* complaint for lack of personal jurisdiction.

**B.      The *Does 1-11* Claims Must be Dismissed for Lack of Personal Jurisdiction.**

New Jersey law permits the exercise of long-arm jurisdiction to the extent consistent with Constitutional due process.  *Control Screening LLC*, 687 F.3d at 167 ("Under New Jersey's analog to a long-arm statute, N.J. Court Rule 4:4–4, a district court may assert personal jurisdiction over nonresidents to the extent permitted by the Due Process Clause of the Fourteenth Amendment.").  For non-resident individuals, due process permits the exercise of specific personal jurisdiction where the plaintiff's alleged injury arises from, or is related to, the non-resident defendant's "purposeful[ ] direct[ion] [of] his activities at a resident of the forum." *Control Screening LLC*, 687 F.3d at 167 (internal citations and quotation marks omitted).

Here, the only connection between this litigation and New Jersey is Chiquita's legal incorporation there.  During the relevant period, Chiquita's headquarters and principal place of business were in Ohio.  Plaintiffs' complaints do not allege that any of the five Individual Defendants whom they name — Messrs. Freidheim, Keiser, Kistinger, Olson, and Tsacalis — engaged in any actionable conduct in New Jersey.  Nor do they allege that any of the Individual Defendants purposefully directed his action at any resident of New Jersey.  Again, Plaintiffs' claims are premised on the support allegedly provided by the Individual Defendants to Colombian guerrillas and paramilitaries, either in Colombia or from Chiquita's offices in Ohio.  Accordingly, there is no basis for asserting personal jurisdiction over any of them, and the Court must dismiss the claims against the five Individual Defendants named in the *Does 1-11* complaint.

## II.   PLAINTIFFS' CLAIMS MUST BE DISMISSED UNDER RULE 12(B)(1) AND RULE 12(B)(6).

Any claims not dismissed for lack of personal jurisdiction should be dismissed with prejudice for the reasons set forth in this section.

### A.   Plaintiffs' State Law and ATS Claims Must be Dismissed on Extraterritoriality Grounds.

All five complaints assert a variety of claims against the Individual Defendants under the ATS and state law.  These claims must be dismissed for the same reason that Plaintiffs' identical claims against Chiquita have been dismissed — the relevant laws do not apply to conduct outside the United States.

The Court previously dismissed Plaintiffs' state law claims against Chiquita on extraterritoriality grounds, ruling that state tort laws cannot apply to claims "premised on acts by Colombian paramilitaries against Colombian civilians that occurred inside Colombia as part of Colombia's civil war," where "[t]here are no allegations that this conduct had or was intended to have a substantial effect" within any of the states at issue, or pertained to matters of universal concern recognized by the community of nations.  MTD Order at 87.  The Court added that even if it could exercise supplemental jurisdiction over the claims, it would not do so, given the novelty of attempting to adjudicate state tort claims based on extraterritorial conduct.  *Id.* at 89.

Although Plaintiffs appealed this Court's dismissal of their state law claims as part of the Eleventh Circuit's interlocutory review, the Eleventh Circuit did not address this issue.  This Court's prior ruling is therefore controlling "law of the case" and requires dismissal of Plaintiffs' state law claims against the Individual Defendants because they are identical in all relevant respects to Plaintiffs' claims against Chiquita.  *See Friedman v. Mkt. St. Mortg. Corp.*, 520 F.3d 1289, 1294 (11th Cir. 2008); *In re PCH Assocs.*, 949 F.2d 585, 593 (2d Cir. 1991)  ("'[T]he issue was decided by the district court in an earlier case and was not disapproved by the appellate

court.  It is, therefore, the law of the case.'" (quoting 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.404[4.–3], at 131 (1991))).

Likewise, the Eleventh Circuit's ruling that the Court lacks jurisdiction over Plaintiffs' ATS claims against Chiquita on extraterritoriality grounds compels dismissal of the same ATS claims against the Individual Defendants.  The Eleventh Circuit's decision emphasized that the AUC's underlying tortious offenses were committed in Colombia and rejected Plaintiffs' argument that their ATS claims were not extraterritorial because some of Chiquita's alleged misconduct took place in the United States.  *Cardona*, 760 F.3d at 1189–90.  This reasoning applies with equal force to Plaintiffs' claims against the Individual Defendants, because the claims arise from the same underlying tortious conduct by the AUC.  As with Plaintiffs' claims against Chiquita, the only connection to the United States is the location of some of the Individual Defendants' alleged misconduct, which, the Eleventh Circuit held, is insufficient to avoid dismissal under *Kiobel*.  *Id*. at 1191.

### B.    Plaintiffs' TVPA Claims Must be Dismissed as a Matter of Law.

Of the five complaints at issue, all but one (*Carrizosa*) assert secondary liability claims under the TVPA against the Individual Defendants for violent acts committed by the AUC.[7]  All

---

[7] The *Does 1-144* Plaintiffs have asserted claims based on violent acts committed by guerrillas such as the FARC, but they do not bring these claims under the TVPA.  It is undisputed that the guerrillas did not act under "color of law," a requirement for liability under the TVPA.  TVPA § 2(a); *see* MTD Order at 91 ("[T]he [*Does 1-144*] Plaintiffs concede that they cannot state a claim for torture or extrajudicial killings under either the TVPA or ATS because they do not allege that the FARC, a guerrilla group that opposes the Colombian government, acted under color of law.").

Also, although the *Carrizosa* complaint includes the TVPA as one of twelve sources of law under which all of Plaintiffs' claims arise, none of the individual claims for relief actually invokes the TVPA.  *Compare Carrizosa* TAC ¶ 133, *with Carrizosa* TAC ¶¶ 134-175.  To be sure, to the extent the Court finds that the *Carrizosa* Plaintiffs have alleged claims under the TVPA, those claims should also be dismissed for the reasons set forth in Sections II.B, II.C, and II.D.

of these claims should be dismissed as a matter of law because (1) Plaintiffs have failed to

exhaust their remedies in Colombia, (2) the TVPA does not authorize secondary liability claims,

and (3) the TVPA does not have extraterritorial application.

### 1.    Plaintiffs Have Failed to Exhaust Adequate and Available Remedies in Colombia.

Under the TVPA, the Court must "decline to hear a claim . . . if the claimant has not

exhausted adequate and available remedies in the place in which the conduct giving rise to the

claim occurred."  TVPA § 2(b).  Courts routinely dismiss TVPA claims where plaintiffs have

failed to meet this exhaustion requirement.  *See Rojas Mamani v. Sanchez Berzain*, 636 F. Supp.

2d 1326, 1331-32 (S.D. Fla. 2009); *Escarria-Montano v. United States*, 797 F. Supp. 2d 21, 25

(D.D.C. 2011); *Harbury v. Hayden*, 444 F. Supp. 2d 19, 41 (D.D.C. 2006), *aff'd*, 522 F.3d 413

(D.C. Cir. 2008); *Corrie v. Caterpillar, Inc*., 403 F. Supp. 2d 1019, 1025 (W.D. Wash. 2005),

*aff'd*, 503 F.3d 974 (9th Cir. 2007); *Friedman v. Bayer Corp.*, No. 99–CV–3675, 1999 WL

33457825 (E.D.N.Y. Dec. 15, 1999).

Because the TVPA's exhaustion provision is jurisdictional in nature, it provides a basis

for a motion to dismiss under Rule 12(b)(1).  Courts need not resolve such challenges based

solely on the allegations in the complaint.  *See Mamani v. Berzain*, 21 F.Supp.3d 1353, 1364

(S.D. Fla. 2014).  Rather, they may "consider extrinsic evidence" and are "free to weigh the

facts" without being "constrained to view them in the light most favorable to [the plaintiff]."  *Id.*

(quoting *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir.

2009) (alterations in original)).

Here, Plaintiffs do not claim that they have pursued, much less exhausted, any remedies

in Colombia, "the place in which the conduct giving rise to the claim occurred."  *Id.* at 1369.

Whether the Colombian forum offers "adequate and available" remedies, as the statute requires,

is the exact same issue that the Court must decide in ruling on Chiquita's FNC Motion.  *See Rojas Mamani*, 636 F. Supp. 2d at 1331 (relying on *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n. 22 (1981), the Supreme Court case outlining framework for *forum non conveniens* analysis, in determining whether plaintiffs had exhausted all "adequate and available" remedies); *Corrie*, 403 F. Supp. 2d at 1025-26 (same).  Rather than burden the Court with duplicative briefing, the Individual Defendants incorporate by reference the detailed explanation set forth in the FNC Motion, along with the accompanying declarations, as to why Colombian remedies are both available and adequate.  *See* FNC Motion at 18-21.

Once a defendant has established that there are "remedies abroad which have not been exhausted, the burden shifts to the plaintiff to rebut by showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Jean v. Dorelien*, 431 F.3d 776, 782 (11th Cir. 2005) (quoting S. Rep. No. 102–249, at 9 (1991)).  Plaintiffs' complaints offer two arguments for why legal action in Colombia might be "futile," but neither has merit.

*First*, Plaintiffs contend that "the legal system in Colombia is characterized by virtual impunity for the crimes of paramilitaries and those who assist them." *Does 1-144* TAC ¶ 8; *Does 1-11* SAC ¶ 222; *Montes* TAC ¶ 1827; *Valencia* TAC ¶ 1251.  Plaintiffs assert that paramilitary leaders and military officers who collaborated with them are rarely subjected to arrest and when they are, they are "frequently released," "allowed to escape," "routinely exonerated," or "given token sentences." *Does 1-144* TAC ¶ 8; *Does 1-11* SAC ¶ 222; *Montes* TAC ¶ 1827; *Valencia* TAC ¶ 1251.

Even if these allegations were true, they are irrelevant because Plaintiffs are not suing the Colombian paramilitaries and Colombian military collaborators whose lenient treatment they cite

in their complaints.  They are suing American executives of an American company that no longer operates in Colombia.  Plaintiffs have not alleged any facts suggesting that Colombian courts have been, or would be, unwilling to hold such individuals accountable.  Indeed, "[i]n most TVPA cases where courts have found local remedies to be ineffective or futile," the plaintiffs have sued "foreign government actors [who] have remained in power or returned to power, thereby rendering any judgments against them worthless."  *Rojas Mamani*, 636 F. Supp. 2d at 1332.[8]  Here, the plaintiffs are not suing *any* Colombian government officials, much less the same officials who were in power at the time they suffered their alleged injuries.

Furthermore, even if Plaintiffs' assertions regarding the alleged "impunity" granted to paramilitaries and their military collaborators were relevant, they are not factually supportable.  As demonstrated by the FNC motion and supporting declarations, which are incorporated herein by reference, Plaintiffs' unsubstantiated assertions are outdated at best.  Since 2005, tens of thousands of Colombians have asserted claims arising from the AUC's past misconduct through the Justice and Peace Law (enacted in 2005) and Victim's Law (enacted in 2011), both of which are specifically designed to provide redress and justice for paramilitary abuses, including the acts of extrajudicial killing and torture that Plaintiffs allege here.  *See* FNC Motion, Shifter Decl. ¶¶ 23-24, 34-35, Tamayo Decl. ¶¶ 54-60.  In addition, the Colombian government has routinely prosecuted, convicted, and sentenced to prison both ex-AUC members and government officials

---

[8] *See, e.g.*, *Jean*, 431 F.3d at 782 (plaintiff could not enforce Haitian judgment against member of military regime because he had returned to power, after which rule of law was threatened and the judge and prosecutor from prior proceeding were subjected to violent attacks); *Abiola v. Abubakar*, 435 F. Supp. 2d 830, 836-37 (N.D. Ill. 2006) (Nigerian law required plaintiff to bring suit against member of military junta while it was in power and Nigerian courts were barred from questioning its actions); *Hassen v. Nahyan*, No. CV 09-01106 DMG (MANx), 2010 WL 9538408, at *1 (C.D. Cal. Sept. 17, 2010) (plaintiff sued current ruler of United Arab Emirates and other leading government officials, at whose leisure the judiciary served).

linked to human rights abuses committed by paramilitaries.  *See* Shifter Decl. ¶¶ 24, 30.  Given the Colombian legal system's demonstrated willingness and ability to bring both paramilitaries and their government collaborators to justice, there is no basis to conclude that the Colombian courts would be disinclined to hold accountable their alleged American sponsors.

*Second*, Plaintiffs argue that pursuing legal action in Colombia "would also result in serious reprisals," alleging that those who seek redress for paramilitary crimes are "regularly targeted for further retributive violence."  *Does 1-144* TAC ¶ 9; *Does 1-11* SAC ¶ 223; *Montes* TAC ¶ 1828; *Valenica* TAC ¶ 1252.  Plaintiffs fail to support this conclusory assertion with any factual allegations regarding the risk of such reprisals in 2012, when they elected to pursue claims against the Individual Defendants in the United States rather than in Colombia.  Instead, their complaints purport to describe only what they consider to have been the risk of violence as of 2006.  *Does 1-144* TAC ¶ 13; *Does 1-11* SAC ¶ 223; *Montes* TAC ¶ 1828; *Valenica* TAC ¶ 1252.[9]  However, that was the very same year in which the AUC demobilized, a development that triggered a dramatic improvement in the Colombian security situation.  *See* FNC Motion, Shifter Decl. ¶¶ 22-37.

Indeed, the security situation has improved to such an extent that tens of thousands of Colombian victims have freely proceeded with demands for redress against the paramilitaries themselves.  *See* FNC Motion, Shifter Decl. ¶¶ 23-24, 34-35; *id*., Tamayo Decl. ¶¶ 50, 58.  Moreover, roughly 1,700 paramilitary victims have asserted civil claims against Chiquita for its alleged sponsorship of the paramilitaries' actions, and others are pursuing similar claims in

---

[9] Though the *Does 1-144* complaint also includes an allegation that as of 2010, "remnants" of the AUC continued to operate in Colombia, TAC ¶ 14, it offers no facts suggesting that these "remnants" posed a threat, in 2012, to any of the tens of thousands of Colombians who have asserted claims arising from the AUC's past misconduct.

proceedings against former Banadex employees.  *See* FNC Motion, De la Calle Decl. ¶¶ 9-11; *id*., Tamayo Decl. ¶ 52.  This directly refutes Plaintiffs' outdated allegation that pursuing such claims against the Individual Defendants would be futile due to the likelihood of violent reprisals.

A recent case from the Southern District of Florida also underscores the viability of pursuing Colombian law claims arising from paramilitary violence in Colombia.  In *Jaramillo v. Naranjo*, No. 1:10-cv-21951, 2014 WL 4898210 (S.D. Fla. Sept. 30, 2014), a group of Colombian citizens brought claims under the ATS and TVPA against "a high commander" of the AUC "for [alleged] torts committed in Colombia that violate international law."  *Id.* at *1.  The plaintiffs did not even attempt to argue that it would have been "obviously futile" to pursue a remedy in Colombia because of the risk of reprisal.  In fact, the Court found that they had met the exhaustion requirement because they had "sought legal remedies through Colombia's Justice and Peace Process" before filing suit in the United States in June 2010.  *Id.* at *14.

Plaintiffs cannot credibly claim that it would have been "obviously futile" for them to pursue claims against the Individual Defendants in Colombia in 2012, when (1) the *Jaramillo* plaintiffs were able to bring claims directly against an AUC leader more than two years earlier, (2) thousands of Colombians have pursued similar claims directly against AUC paramilitaries over that same period of time, and (3) by 2012, approximately 1,700 Colombians had initiated civil proceedings against Chiquita, and others had made civil claims in proceedings implicating Chiquita's former Colombian employees, for alleged support of the AUC.

### 2. The TVPA Does Not Authorize Secondary Liability Claims.

Plaintiffs' TVPA claims should also be dismissed because, as other courts have held, the absence of any express provision for secondary liability in the text of the TVPA means that such claims are not available.  *See Weisskopf v. United Jewish Appeal-Fed'n of Jewish Philanthropies*

*of New York, Inc.*, 889 F. Supp. 2d 912, 924 (S.D. Tex. 2012); *Mustafa v. Chevron Corp.*, 759 F. Supp. 2d 297, 300 (S.D.N.Y. 2010), *aff'd*, 770 F.3d 170 (2014).

The Individual Defendants acknowledge that the Eleventh Circuit held in 2005 that plaintiffs may pursue aiding and abetting and conspiracy claims under the TVPA based on a single sentence of legislative history from a Senate Report.  *See Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1157 (11th Cir. 2005) (*per curiam*).  However, this Court is not bound by that ruling because subsequent Supreme Court authority has confirmed that secondary liability is available under a federal statute only where the statutory text expressly provides for it.  *See Stoneridge Inv. Partners v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157-58 (2008) (confirming that the scope of a statutory claim is "delimited by the text," and that in light of Congressional failure to create an "*express* cause of action for aiding and abetting," no such claim was permitted) (emphasis added).  Indeed, this Court recently reversed itself on whether plaintiffs may bring secondary liability claims under the Anti-Terrorism Act ("ATA"), finding, in light of recent authority, that no such claims are permitted because the ATA does not expressly authorize them. *See* Order Granting in Part and Denying in Part Chiquita's Mot. for Reconsideration at 9-10; (Jan. 6,2015) (D.E. 692); *see also Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) (*en banc*) ("[S]tatutory silence on the subject of secondary liability means there is none.").

Consistent with the Supreme Court's clear statement and the recent line of authority cited above, this Court should dismiss Plaintiffs' secondary liability claims under the TVPA.

### 3.    The TVPA Does Not Apply to Extraterritorial Conduct.

Plaintiffs' TVPA claims must also be dismissed as a matter of law because, like the ATS and state tort law, the TVPA does not apply to extraterritorial conduct.  *See Murillo v. Bain*, No. H-11-2373, 2013 WL 1718915, at *3 (S.D. Tex. Apr. 19, 2013) (noting, shortly after *Kiobel* was

issued, that the TVPA, like the ATS, is "presumed not to apply beyond the borders of the United States").  Because the TVPA, like the ATS, does not apply to extraterritorial conduct, Plaintiffs' TVPA claims must be dismissed for the same reasons that the Eleventh Circuit dismissed their ATS claims.

"When a statute gives no clear indication of an extraterritorial application, it has none." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 255 (2010).  Although the TVPA is directed at the conduct of individuals acting "under actual or apparent authority, or color of law, of any foreign nation," this does not suffice to give a "clear indication" of extraterritorial application for several reasons.  TVPA § 2(a).  *First*, mere reference to "foreign" conduct or issues in a statute is insufficient to rebut the presumption against extraterritoriality.  *See Morrison*, 561 U.S. at 262-63 ("[W]e have repeatedly held that even statutes that contain broad language in their definitions of 'commerce' that expressly refer to '*foreign* commerce' do not apply abroad.") (citation and internal quotation marks omitted) (emphasis in original).  *Second*, individuals acting under color of law of a foreign nation may commit actionable offenses under the TVPA "either within *or* outside the United States," suggesting no clear intent to apply the law extraterritorially.  *Kiobel*, 133 S. Ct. at 1665 (emphasis added).[10]  *Third*, the fact that the TVPA addresses itself to the conduct of foreign actors heightens, rather than diminishes, the concerns animating the presumption against extraterritoriality, because courts must be especially

---

[10] The Second Circuit has held that the TVPA rebuts the presumption against extraterritoriality, but its reasoning is unpersuasive in light of *Kiobel* and *Morrison*.  *See Chowdhury v. Worldtel Bangladesh Holding, Ltd.*, 746 F.3d 42, 50-51 (2d Cir.), *cert. denied*, *Khan v. Chowdhury*, 135 S. Ct. 401 (2014).  The court rested its conclusion entirely on the TVPA's reference to "any foreign nation," even though it conceded that this language "could conceivably refer to conduct occurring within the United States."  *Id.* at 51.

cautious about embracing extraterritorial application when dealing with laws that have

"significant foreign policy implications." *Kiobel*, 133 S. Ct. at 1664-65.[11]

### C.     TVPA Claims Arising from Acts of Violence More Than Ten Years Prior to the Date on Which An Individual Defendant Was Named Are Time-Barred.

Even if Plaintiffs' TVPA claims could surmount the legal hurdles outlined above, many

of these claims must be dismissed as time-barred.  The TVPA's statute of limitations bars claims

that are not brought within 10 years after the claim accrued.  *See* TVPA § 2(c) ("No action shall

be maintained under this section unless it is commenced within 10 years after the cause of action

arose.").  Under the TVPA, a claim accrues at the time the alleged extrajudicial killing or act of

torture occurs.  *Jean v. Dorelien*, 431 F.3d 776, 779 (11th Cir. 2005) ("The detention, beating

and torture giving rise to [plaintiff's] claims occurred between April and June 1993 [and

plaintiff] first filed his TVPA and ATCA claims on October 23, 2003, over ten years after the

cause of action arose."); *Warfaa v. Ali*, 33 F. Supp. 2d 653, 663 (E.D. Va. 2014) ("The alleged

attempted extrajudicial killing and torture giving rise to plaintiff's claims occurred between

December 1987 and March 1988 [but] Plaintiff did not file suit until November 10, 2004, well

more than ten years after his cause of action arose."); *see generally Rotella v. Wood*, 528 U.S.

549, 555 (2000) ("But in applying a discovery accrual rule, we have been at pains to explain that

discovery of the *injury*, not discovery of the other elements of a claim, is what starts the clock.")

(emphasis added).[12]  Thus, all TVPA claims against an Individual Defendant that arise from acts

---

[11] Nor does the TVPA's exhaustion requirement provide a clear indication of extraterritorial application.  The ATS *also* includes an exhaustion requirement, but as the *Kiobel* court held, the ATS does not apply to extraterritorial conduct.  *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 733 n.21 (2004) (citing TVPA's exhaustion requirement in holding that the ATS also requires that "the claimant must have exhausted any remedies available in the domestic legal system").

[12] A TVPA claim accrues at the time of the extrajudicial killing or act of torture even if the plaintiff was not, at that time, aware of the identity of the defendant.  *See Litle v. Arab Bank, PLC*, 507 F. Supp. 2d 267, 274 (E.D.N.Y. 2007) ("[T]he fact that [plaintiffs] were not aware of (continued…)

21

of violence occurring more than 10 years before the date of the amended complaint adding the Individual Defendant are time-barred.  The specific Plaintiffs whose claims must be dismissed on this basis are listed in Exhibit A, attached hereto.

Plaintiffs may argue that their amendments naming the Individual Defendants relate back to the filing of their initial complaints for statute of limitations purposes, but this position is unsupportable.  Under Rule 15(c)(1)(C) of the Federal Rules of Civil Procedure, an amended complaint that adds a defendant relates back only where four independent requirements are all met:  "(1) the claim 'arose out of the same conduct, transaction or occurrence set out — or attempted to be set out — in the original pleading;' (2) the new party 'received such notice of the action that it will not be prejudiced in defending on the merits;' (3) the party being added received such notice within the time period of Rule 4(m), 120 days; and (4) the party being added 'knew or should have known [within the Rule 4(m) time period] that the action would have been brought against it, but for a mistake concerning the proper party's identity."  *Lindley v. City of Birmingham, Ala.*, 515 F. App'x 813, 815 (11th Cir. 2013).

The Court need not analyze all of these requirements because as a threshold matter, Plaintiffs cannot show—as they must—that their failure to name the Individual Defendants until 2012 was a "mistake."  *See Lelieve v. Orosa*, No. 10-23677-CIV, 2011 WL 5103949, at *4 (S.D. Fla. Oct. 27, 2011) ("[O]nce a court determines that no 'mistake' was made, it is irrelevant whether the to-be-joined party received notice and would not be prejudiced; a finding of a mistake is necessary before moving on to the other requirements).  A "mistake" is made under

---

all possible defendants is not determinative of plaintiffs' awareness of their potential cause of action and does not delay the date of accrual, even if identification of other defendants was not immediately knowable.") (citation and quotation marks omitted), *vacated on other grounds*, *Linde v. Arab Bank, PLC*, 950 F. Supp. 2d 459 (E.D.N.Y. 2013).

Rule 15(c) only when the plaintiff previously misidentified the defendant who has been added in the amended complaint.  *See Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 548 (2010) ("A mistake is "[a]n error, misconception, or misunderstanding; an erroneous belief.") (citation and internal quotation marks omitted); *Wayne v. Jarvis*, 197 F.3d 1098, 1103 (11th Cir. 1999) ("mistake" provision is intended to "resolve 'the problem of a misnamed defendant' and allow a party 'to correct a formal defect such as a misnomer or misidentification'") (quoting Fed. R. Civ. P. 15(c)(3), Advisory Committee Notes to 1991 Amendment), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir 2003); *Fuston v. Florida*, No. 2:12–cv–279–FtM–99DNF, 2013 WL 937575, at *4 (M.D. Fla. Mar. 11, 2013) ("Essential to the [Rule 15's] application is the requirement that a 'mistake' was made by the plaintiff in identifying a defendant in the original pleading.").

Here, it is undisputed that Plaintiffs' failure to name the Individual Defendants until filing their amended complaints in late 2012 was *not* the result of a misapprehension regarding the correct name of a defendant.  Rather, as Plaintiffs have represented to the Court, their delay in naming the Individual Defendants was the result of a change in legal strategy caused by an April 2012 Supreme Court ruling that the TVPA applies only to natural persons and not corporations. *See* Pls.' Joint Resp. (July 18, 2012) (D.E. 552) at 4-5.  As the Supreme Court has explained, "making a deliberate choice to sue one party instead of another while fully understanding the factual and legal differences between the two parties is the antithesis of making a mistake concerning the proper party's identity."  *Krupski*, 560 U.S. at 549.[13]

---

[13] Although Rule 15 also allows for relation back based on the law of the jurisdiction that provides the applicable statute of limitations, this does not bolster the argument for relation back. For the *Does 1-144* case, D.C. law prescribes the statute of limitations (*see infra*, § II.E.1) and its relation back rule is identical to Rule 15(c)(1)(C).  *See Stewart-Veal v. Dist. of Columbia*, 896 A.2d 232, 237 (D.C. 2006).  Colombian law governs the statute of limitations in the remaining (continued…)

Plaintiffs also cannot rely on the doctrine of equitable tolling, which is available only where plaintiffs show that their untimeliness resulted from "extraordinary circumstances that are both beyond [their] control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999); *see also Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 661 (11th Cir. 1993) (noting that Plaintiffs bear the burden on tolling). To invoke equitable tolling based on fraudulent concealment, "plaintiffs must establish that: (1) the defendant wrongfully concealed material facts relating to its wrongdoing; (2) the concealment prevented plaintiffs' discovery of the nature of the claim within the limitations period; and (3) the plaintiffs exercised due diligence in pursuing the discovery of the claim during the period they seek to have tolled." *Litle*, 507 F. Supp. 2d at 276-77. Pursuant to Rule 9(b), Plaintiffs must plead the wrongful concealment element with particularity, specifying "the who, what, when, where, and how" of the alleged fraudulent concealment. *Speier-Roche v. Volkswagen Grp. of Am., Inc.*, No. 14-20107-CIV, 2014 WL 1745050, at *7 (S.D. Fla. Apr. 30, 2014) (citation and internal quotation marks omitted). Here, Plaintiffs have failed to plead with sufficient particularity — including "when, where, and how" — that any Individual Defendant concealed material facts related to his alleged wrongdoing.[14]

### D. Plaintiffs' TVPA Claims Must be Dismissed for Failure to Adequately Plead a Claim.

To the extent that any TVPA claims against the Individual Defendants are not dismissed as a matter of law or as time-barred, for the reasons set forth in Sections II.B and II.C, they must

---

cases and does not provide for the relation back of amendments to a complaint for statute of limitations purposes.

[14] Even if Plaintiffs could meet this requirement, equitable tolling would be unavailable for most of their claims because they cannot show that "the concealment prevented [their] discovery of the nature of the claim within the limitations period." *Litle*, 507 F. Supp. 2d at 276–77.

still be dismissed because Plaintiffs' allegations fail to plead the elements of secondary liability. Plaintiffs have asserted two theories of secondary liability:  aiding and abetting, and conspiracy.[15]  Both require a showing that the Individual Defendants assisted or conspired with the AUC with the "purpose or intent to facilitate the commission of the specific offenses alleged."  MTD Order at 68.  In addition, Plaintiffs' aiding and abetting claims require the Individual Defendants to have substantially assisted the AUC's commission of the alleged offenses, and their conspiracy claims require the Individual Defendants to have entered into an agreement with the AUC to commit the alleged offenses.  *See id.* at 68-69.[16]

For the reasons set forth in the Individual Defendants' supplemental briefs, Plaintiffs have failed to plead facts sufficient to meet these elements of a secondary liability claim under the TVPA.  While each defendant's arguments are based on the allegations asserted against him individually, the relevant legal standards for assessing the adequacy of Plaintiffs' allegations are common to all of the Individual Defendants.  To avoid inundating the Court with duplicative briefing, the Individual Defendants use this section of their joint brief to lay out the applicable standards.  As explained in each Individual Defendant's supplemental brief, Plaintiffs have failed to meet these standards.

---

[15] Plaintiffs also assert an "agency" theory of secondary liability.  *See Valencia* TAC ¶ 14; *Montes* TAC ¶ 1621; *Does 1-144* TAC ¶¶ 2233-39; *Does 1-11* SAC ¶¶ 27-28; *Carrizosa* TAC ¶ 31.  The Court dismissed these claims against Chiquita because Plaintiffs failed to allege that Chiquita exercised control over the AUC.  *See* MTD Order at 82.  Plaintiffs' agency claims against the Individual Defendants must be dismissed for the same reason, as they have not alleged any facts suggesting that the Individual Defendants exercised any greater degree of control over the AUC than Chiquita did.

[16] Although the Court articulated these standards in analyzing Plaintiffs' secondary liability claims against Chiquita under the ATS, it held that the same standards applied to Plaintiffs' secondary liability claims under the TVPA.  *See* MTD Order at 63-68, 86 n.95.

> **1.    Plaintiffs Must Plead Specific, Individualized Facts That Support a
> Reasonable Inference, and Not Just a Mere Possibility, of Liability.**

To survive a motion to dismiss, Plaintiffs' complaints must contain sufficient factual

content to establish a "plausible claim for relief" based on "judicial experience and common

sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *accord Mamani v. Berzain*, 654 F.3d

1148, 1153 (11th Cir. 2011). This requires Plaintiffs to set forth specific facts that compel a

"reasonable inference" that the defendant is liable. *Iqbal*, 556 U.S. at 678. As explained below,

to compel such an inference, Plaintiffs must rely on allegations that are *factual* and

*individualized*, and are more than "merely consistent" with the defendant's liability. *Id.*

Plaintiffs cannot rely on "legal conclusions," "formulaic recitation[s] of the elements of a

cause of action," or "naked assertion[s] devoid of [any] further factual enhancement." *Id.*

(disregarding unsupported allegations that one individual defendant was a "principal architect"

of a discriminatory policy and another was "instrumental" in its adoption and execution)

(citations and internal quotation marks omitted); *accord Mamani*, 654 F.3d at 1153 (rejecting

Plaintiffs' assertions that individual defendant "order[ed] Bolivian security forces . . . to attack

and kill scores of unarmed civilians" and "met with military leaders . . . to plan widespread

attacks involving the use of high-caliber weapons against protesters" as impermissibly

conclusory) (citations and internal quotation marks omitted). As this Court has noted,

"conclusory allegations, devoid of factual support, are not entitled to the presumption of truth on

a motion to dismiss." MTD Order at 93.

In addition, "[i]n a case with multiple defendants, the complaint should contain specific

allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants

together are insufficient." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287

F. App'x 81, 86 (11th Cir. 2008); *see also Kabbaj v. Obama*, 568 F. App'x 875, 880 (11th Cir.

2014) (affirming district court's dismissal with prejudice where "the complaint refers to the defendants collectively, making it impossible to identify which particular defendant engaged in what allegedly wrongful conduct"); *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1373 (S.D. Fla. 2011) (plaintiffs must "allege facts showing knowledge or intent as to each Defendant" rather than "improperly lumping them together"); *Mukamal v. Bakes*, 383 B.R. 798, 826-27 (S.D. Fla. 2007) (dismissing claims against individual corporate directors because the complaint "refers to them collectively in every instance" and "fails to allege individualized allegations as to each of the Defendants"); *Doe v. Exxon Mobil Corp.*, 573 F. Supp. 2d 16, 30-31 (D.D.C. 2008) (dismissing ATS claims against some defendants because "liability must be assessed with regard to each entity individually" and plaintiffs had improperly lumped the defendants together).

In particular, where plaintiffs must plead that a defendant acted with a particular *mens rea*, they may not rely on generalized, collective allegations that purport to identify the mental state of a group of defendants.  *See Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*, 341 F. App'x 487, 493-94 (11th Cir. 2009) ("[I]n a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud.") (citation and internal quotation marks omitted); *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, No. 6:08-cv-466-Orl-28GJK, 2010 WL 1408391, at *21 (M.D. Fla. Apr. 6, 2010) (dismissing intentional infliction of emotional distress claims against multiple individual defendants because allegations against defendants were lumped together and not individualized), *aff'd*, 451 F. App'x 862 (11th Cir. 2012).  Thus, collective allegations that group defendants together are not entitled to any assumption of truth and should be disregarded by the Court in evaluating the sufficiency of Plaintiffs' allegations.

27

Importantly, individualized factual allegations that are "merely consistent with a defendant's liability" or establish a "sheer possibility that a defendant has acted unlawfully" are insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted). In particular, recent decisions from the Supreme Court and the Eleventh Circuit have emphasized that where a claim requires a showing that the defendant's actions were motivated by a specific *purpose*, it must be dismissed if plaintiffs' factual allegations leave open an "obvious alternative explanation" for the defendant's actions. *Id*. at 682 (citation and internal quotation marks omitted). In *Iqbal*, the plaintiff sued the Attorney General and FBI director for civil rights violations based on allegations that that FBI had arrested thousands of Arab and Muslim men under a policy established by the defendants to detain "high interest" individuals. *Id*. at 668-69, 681. Though these allegations were "consistent with [defendants'] purposefully designating detainees . . . because of their race, religion, or national origin," *id*. at 681, the Supreme Court held that they did not "plausibly establish this purpose," because there was an "obvious alternative explanation:" that the defendants intended to detain individuals who had potential connections to the September 11 attacks, and that this had a disparate impact on Arab Muslims because of the ethnic and religious affiliation of the attackers. *Id*. at 861-62 (citation and internal quotation marks omitted). The Eleventh Circuit recently applied this same reasoning to a TVPA claim, holding that plaintiffs' allegations that a former Bolivian defense minister directed military personnel to fire weapons at civilian protesters did not establish that the resulting deaths were "undertaken with studied consideration and purpose," as the TVPA's definition of "extrajudicial killing" required, because the allegations left open the "alternative explanation" that the specific deaths at issue were accidental. *See Mamani*, 654 F.3d at 1155.

##### 2.      Plaintiffs Have Not Alleged That Any Individual Defendant Specifically Intended That the AUC Torture and Kill Civilians.

In ruling on Chiquita's motions to dismiss, the Court held that both aiding and abetting and conspiracy claims under the TVPA require proof that the defendants assisted or conspired with the AUC with the purpose or intent that the AUC "commit the international-law offenses alleged in the complaints" — *i.e.*, that the defendants "*intended for the AUC to torture and kill civilians in Colombia's banana-growing regions*."  MTD Order at 69 (emphasis added).  This requires more than just a conclusory allegation that the defendant provided some support to the AUC.  *See* MTD Order at 92 (dismissing *Does 1-144* claims arising from violence by the FARC because "Plaintiffs conclusorily allege that Chiquita supported the FARC, but fail to allege Chiquita's intent, if any, in doing so").[17]

Importantly, the Court expressly rejected Plaintiffs' alternative suggestion that they need only allege the defendant's "knowledge of the [AUC's] unlawful goals," rather than its "intention of accomplishing the offense."  MTD Order at 67.  Since the Court's ruling, the

---

[17] In support of their motion for leave to add the Individual Defendants, Plaintiffs argued that a defendant's *mens rea* is not subject to judicial scrutiny on the pleadings, purporting to rely on this Court's statements in its order denying Chiquita's motion to dismiss.  *See* Pls.' Joint Resp. (July 18, 2012) (D.E. 552) at 1.  To the contrary, the Court's ruling suggested exactly the opposite.  It fully examined Plaintiffs' complaints to determine whether the allegations therein sufficiently pled the requisite *mens rea* against Chiquita.  *See* MTD Order at  68-77, 80-81. Furthermore, the notion that such an inquiry is improper is wholly unsupported by the case law. *See Mamani*, 654 F.3d at 1153-54 ("Plaintiffs here base their claims on allegations that defendants knew or should have known of wrongful violence taking place and failed in their duty to prevent it," "but without adequate factual support of more specific acts by *these* defendants, these 'bare assertions' are 'not entitled to be assumed true.'") (quoting *Sinaltrainal v.Coca–Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009)); *Doe I v. Cisco Sys., Inc.*, --- F. Supp. 2d ---, 2014 WL 4446381, at *7 (N.D. Cal. Sept. 5, 2014) (granting motion to dismiss because plaintiffs had not sufficiently alleged aiding and abetting liability under the ATS); *Gonzalez-Vera v. Kissinger*, No. CIVA 02-02240 HHK, 2004 WL 5584378, at *10 (D.D.C. Sept. 17, 2004) (same), *aff'd*, 449 F.3d 1260 (D.C. Cir. 2006).  Indeed, *Iqbal*, which established the governing standards for assessing the sufficiency of a complaint's factual allegations, was specifically focused on those elements of the claim that concerned the defendants' "purpose" and "intent."

"purpose or intent" standard has been consistently applied by other courts in the Eleventh Circuit.  *See Giraldo v. Drummond Co.*, No. 2:09-cv-1041-RDP, 2013 WL 3873978, at *5 (N.D. Ala. July 25, 2013); *Giraldo v. Drummond Co., Inc.*, No. 2:09-cv-1041-RDP, 2013 WL 3873965, at *4 (N.D. Ala. July 25, 2013); *García v. Chapman*, 911 F. Supp. 2d 1222, 1236-37 (S.D. Fla. 2012).  It has also been adopted by the Fourth Circuit.  *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 401 (4th Cir. 2011).

In briefing their motion for leave to add the Individual Defendants, Plaintiffs argued that their complaints adequately plead "purpose or intent" because they allege that the Individual Defendants approved payments to the AUC and knew that the AUC was a violent paramilitary organization.  *See* Pls.' Joint Resp. at 8 (D.E. 552-1).  Such allegations of "knowing assistance," Plaintiffs contended, "raise[] an inference of purpose to assist the AUC."  *Id.*  This argument borders on the frivolous, as it runs directly contrary to the Court's prior ruling on the applicable *mens rea* standard, which expressly rejected Plaintiffs' suggestion that they need only prove "knowing substantial assistance" to establish secondary liability, and to the legal authority on which the Court relied.  MTD Order at 64, 69 ("the mere fact that [the defendant] had knowledge that the AUC would commit such offenses" does not suffice to establish the requisite *mens rea*); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 259 (2d Cir. 2009) ("Even if there is a sufficient international consensus for imposing liability on individuals who *purposefully* aid and abet a violation of international law, no such consensus exists for imposing liability on individuals who *knowingly* (but not purposefully) aid and abet a violation of international law." (Internal citations omitted)).

Recent decisions from other courts have rejected similar allegations of "assistance" and "knowledge" as insufficient to support an inference of the defendants' "purpose or intent" to

commit international law violations.  In *Liu Bo Shan v. China Constr. Bank Corp.*, 421 F. App'x
89, 93-95 (2d Cir. 2011), the complaint alleged that the defendant falsified evidence against the
plaintiff, thereby inducing the Chinese police to arrest him, while knowing that the police would
subject the plaintiff to mistreatment.  The Second Circuit held that this did not support a
reasonable inference that the defendant acted with the *purpose* of subjecting the plaintiff to the
mistreatment that he allegedly suffered.  Likewise, in *Jean-Charles v. Perlitz*, 937 F. Supp. 2d
276, 280-82 (D. Conn. 2013), the court held that allegations that individual defendants funded,
supported, and promoted a Haitian school "even after they knew" that the school's founder had
sexually abused students failed to show that the individual defendants acted "for the very
*purpose* of facilitating" the sexual abuse.  *Id*. at 282 (emphasis added).

By contrast, courts that have found "purpose or intent" to be adequately pled have relied
on allegations that the defendant requested, directed, or demonstrated a desire to benefit from the
underlying international law violations.  *See Doe v. Drummond Co.*, No. 2:09-CV-01041-RDP,
2010 WL 9450019, at *11-*12 (N.D. Ala. Apr. 30, 2010) (plaintiffs alleged that Drummond
furnished arms and funds to the AUC and specifically requested that it attack civilian
sympathizers of the FARC along a railroad line near Drummond's mining operations); *Doe I v.
Nestle USA, Inc.*, 766 F.3d 1013 (9th Cir. 2014) (defendant's stated goal of securing lowest-cost
labor and its opposition to anti-child slavery laws demonstrated its desire to directly benefit from
child slavery on African cocoa plantations); *see also Yousuf v. Samantar*, No. 1:04cv1360
(LMB/JFA), 2012 WL 3730617 (E.D. Va. Aug. 28, 2012) (evidence that defendant military
leader directed the actions of military personnel responsible for underlying violations was
sufficient to establish liability); *Chowdhury v. Worldtel Bangladesh Holding Ltd.*, No. 08 Civ.
1659, 2009 WL 9053203 (E.D.N.Y. Sept. 16, 2009) (upholding jury verdict where plaintiff's

"torturers made it clear they were acting at the behest of defendant"), *aff'd in part and rev'd in part*, 746 F.3d 42, 49 (2d Cir. 2014) (affirming the verdict with respect to the TVPA claims).

Importantly, Plaintiffs cannot simply rely on their allegations regarding *Chiquita's* "purpose or intent" to establish the required *mens rea* for any Individual Defendant.  Chiquita is a large, multinational corporation that employs thousands of individuals.  Although the *mens rea* of certain individuals acting on a corporation's behalf may be imputed to the corporation, it cannot then be imputed to each and every officer, director, or employee of the corporation.  *See Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 635 (11th Cir. 2010) (noting that complaint may adequately plead the "requisite state of mind" with respect to a corporate defendant without adequately pleading it as to individual corporate directors and employees); *In Re Rexall Sundown, Inc. Sec. Litig.* No. 988798CIV, 2000 WL 33539428, *4 (S.D. Fla. Mar. 29, 2000) ("allegations of corporate wrongdoing" are insufficient to establish requisite scienter for individual defendants); *see also S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784-85 (9th Cir. 2008) ("[C]orporate management's general awareness of the day-to-day workings of the company's business does not establish scienter — at least absent some additional allegation of specific information conveyed to management and related to the fraud or other allegations supporting scienter.") (citation and internal quotation marks omitted).  Here, the Court's prior ruling that Plaintiffs have adequately pled that Chiquita had the requisite *mens rea* to support their secondary liability claims does not mean that each Individual Defendant shared that intent.

Recent decisions from another district court in the Eleventh Circuit underscore the point that even if a defendant corporation may have intended to assist in violations of international law, that does not permit the inference that every high-ranking executive at the company acted with the same intent.  *Compare Doe v. Drummond Co.*, No. 2:09-CV-01041-RDP, 2010 WL

9450019, at *11 (N.D. Ala. Apr. 30, 2010) (noting that the complaint contains "allegations of Drummond's purposeful intent to assist in particular acts of murder along the rail lines"), *with Giraldo v. Drummond Co.*, No. 2:09-CV-1041-RDP, 2013 WL 3873965, at *5 (N.D. Ala. July 25, 2013) (finding no basis to conclude that Drummond's then-President and COO had the "intent to have noncombatants murdered along Drummond's rail lines" because there was no indication "that [he] directed his actions to assist in such a violation") (citation and internal quotation marks omitted); *Giraldo v. Drummond Co.*, No. 2:09-CV-1041-RDP, 2013 WL 3873978, at *6 (N.D. Ala. July 25, 2013) (concluding that plaintiffs' "claims against [the then-President of Drummond's Colombian branch] for aiding and abetting the murders along Drummond's rail lines necessarily fails" because they failed to offer evidence "link[ing] [his] knowledge of the AUC's violent killings to the murders of *noncombatants along Drummond's rail lines*") (emphasis in original).  Thus, to sustain their claims against the Individual Defendants, Plaintiffs' complaints must allege that each individual *personally* had the specific purpose or intent that the AUC would torture or kill Colombian civilians.

Based on the legal standards set forth above, and for the reasons detailed in the Individual Defendants' supplemental briefs, Plaintiffs' allegations do not support the inference that any of the defendants specifically intended for the AUC to kill or torture Colombian civilians.

### 3. Plaintiffs Have Not Alleged that Any Individual Defendant Provided Substantial Assistance to the AUC.

To state a claim for aiding and abetting under the TVPA, Plaintiffs must also allege that the defendant, by himself, provided "practical assistance" to the primary tortfeasor, and that such assistance had a "substantial effect on the perpetration of the crime."  *See* MTD Order at 65 (citing *Talisman,* 582 F.3d at 258).  As this Court has recognized, "merely supplying funds" to the primary tortfeasor cannot meet this standard.  MTD Order at 77 (quoting *Doe v. Nestle, S.A.,*

33

748 F. Supp. 2d 1057, 1099 (C.D. Cal. 2010) (quoting *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 269 (S.D.N.Y. 2009), *reversed on other grounds by Doe I v. Nestle USA, Inc.*, 766 F.3d 1013 (9th Cir. 2014) (declining to address *actus reus* standard under the ATS)); *see also Tymoshenko v. Firtash*, No. 11-CV-2794 (KMW), 2013 WL 1234821, at *10 (S.D.N.Y. Mar. 26, 2013) ("[A]t most the U.S. defendants assisted the perpetrators by laundering money and shielding it from the Ukrainian authorities.  These actions fall far short of the 'substantial assistance' that is required to support a claim of secondary liability under the ATS.").  Thus, Plaintiffs' boilerplate allegations that the Individual Defendants "approved" or "authorized" payments to extremist groups are insufficient to show that they provided substantial assistance to the tortfeasor.  Rather, Plaintiffs must allege that the Individual Defendants provided "additional assistance beyond financing" or that the financing was "gratuitous or unrelated to any commercial purpose."  MTD Order at 77.  As detailed in the Individual Defendants' supplemental briefs, Plaintiffs have failed to allege such facts.

### 4. Plaintiffs Have Not Alleged That Any Individual Defendant Entered Into an Agreement With the AUC.

To state a claim for conspiracy claim under the TVPA, Plaintiffs must allege that the defendants entered into an agreement with the AUC to torture and kill Colombian civilians.  *See* MTD Order at 68.  The Court previously found that Plaintiffs' allegations against Chiquita satisfied this element of the claim because they specified "facts regarding dates, attendees, and discussions of meetings between Chiquita and the AUC, as well as facts regarding the terms of the agreements reached."  MTD Order at 80.  Other courts have likewise relied on allegations of direct communications with the primary tortfeasor in finding that plaintiffs have sufficiently pled the "agreement" element of a conspiracy claim.  *See Garcia v. Chapman*, 911 F. Supp. 2d 1222,

1237-38 (S.D. Fla. 2012).  Here, as detailed in the Individual Defendants' supplemental briefs,

Plaintiffs have failed to allege facts establishing this element for any defendant.

> **5.      Plaintiffs Have Not Alleged a Specific Nexus Between Their Injuries and the Elements of Their TVPA Claims.**

Plaintiffs have also failed to adequately plead a claim because they have not pled a

specific nexus between their injuries and the elements of their TVPA claims.  Specifically,

Plaintiffs' allegations fail to show (1) that the AUC acted under "color of law" in the course of

committing the *specific acts of violence alleged in the complaints*, and (2) that the Individual

Defendants substantially assisted or agreed to facilitate the *specific acts of violence alleged in the*

*complaints.*  The Individual Defendants recognize that, in ruling on Chiquita's motions to

dismiss, the Court held that Plaintiffs need not plead such facts to state a claim for secondary

liability under the TVPA, though the Court later noted that there were "substantial ground[s] for

difference of opinion" on this issue.  Certification Order at 7.  The Eleventh Circuit did not reach

this issue in Chiquita's appeal.  The Individual Defendants therefore incorporate by reference the

arguments set forth in Chiquita's appellate brief (Brief of Appellants, *In re: Chiquita Brands*

*Int'l Alient Tort Statute Litig.*, No. 12-14898-B (11th Cir. May 28, 2013) (attached hereto as

Exhibit B), at 32-41, 50-52), and reserve the right to assert these arguments in any future appeal.

> **E.      Plaintiffs' Colombian Law Claims Must be Dismissed.**

All five of the amended complaints at issue assert Colombian law claims against the

Individual Defendants.  The claims in one of the cases should be dismissed as time-barred, while

the claims in the other four cases should be dismissed for failure to adequately plead a claim.

> **1.      The *Does 1-144* Plaintiffs' Colombian Law Claims Are Time-Barred.**

The Colombian law claims asserted against the Individual Defendants by the roughly

2,000 plaintiffs in the *Does 1-144* case must be dismissed as time-barred because they are subject

to the statute of limitations of the District of Colombia, the forum in which Plaintiffs elected to assert their Colombian law claims.

Where a federal court's jurisdiction over plaintiffs' claims sounds in diversity, "the choice-of-law rules of the forum State determine what law governs." *Interface Kanner, LLC v. JPMorgan Chase Bank, N.A.*, 704 F.3d 927, 932 (11th Cir. 2013). For purposes of an action centralized in a multi-district litigation proceeding, the forum state is the one from which the case was transferred. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964) (transferee court is "obligated to apply the state law that would have been applied if there had been no change of venue"). Thus, in determining the law that applies to Plaintiffs' Colombian law claims, this Court must look to the choice-of-law rules of the District of Colombia. Under D.C. law, statutes of limitations are considered procedural, and thus D.C. applies its own statute of limitations regardless of which jurisdiction's law governs the substantive cause of action. *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995) ("Looking to the D.C. choice-of-law rules, we see that they treat statutes of limitations as procedural, and therefore almost always mandate application of the District's own statute of limitations.").

There is no question that, under the statutes of limitations prescribed by D.C. law, the *Does 1-144* Plaintiffs' Colombian law claims are time-barred. Plaintiffs' claims for assault and battery are subject to a one-year statute of limitations (D.C. Code § 12–301(4)), and their claims for wrongful death are subject to a two-year statute of limitations (D.C. Code § 16–2702). The limitations period for their remaining claims of negligence, negligent hiring, negligent supervision, and intentional infliction of emotional distress are not specifically prescribed by statute and are therefore subject to D.C.'s general three-year statute of limitations. *See* D.C. Code § 12–301(8); *Gaudreau v. Am. Promotional Events, Inc.*, 511 F. Supp. 2d 152, 157 (D.D.C.

2007) ("[T]he D.C. Code provides for a three-year limitations period for all causes of action 'for which a limitation is not otherwise specially prescribed' by statute.'" (Citation omitted)). Because all of the *Does 1-144* plaintiffs' claims arise from injuries that occurred prior to September 24, 2009 — three years before they filed their amended complaint adding the Individual Defendants — all of their Colombian law claims must be dismissed as time-barred.

### 2. All Other Colombian Law Claims Should be Dismissed for Failure to Adequately Plead a Claim.

The Colombian law claims asserted by the Plaintiffs in the four other actions at issue — the *Does 1-11*, *Montes, Valencia*, and *Carrizosa* cases — should be dismissed for failure to adequately plead a claim under the pleading standard applicable to foreign law claims.

As a general rule, "the party who has the affirmative burden of proof on an issue of foreign law loses if he fails to prove that law." 9A Wright ET AL., *Federal Practice And Procedure* § 2447 (3d ed. 1998). A plaintiff asserting a foreign law claim, therefore, "must *allege* and prove" that he is asserting a cognizable cause of action under the law of the foreign jurisdiction. *Cuba R.R. Co. v. Crosby*, 222 U.S. 473, 479 (1912) (emphasis added); 3 Ved P. Nanda & David K. Pansius, *Litigation of International Disputes in U.S. Courts* § 18:13 (Westlaw 2014) ("Nanda & Pansius") ("A failure to prove foreign law is viewed as the failure to prove an essential element of the case, at least where the cause of action is dependent on foreign law.").

Thus, Plaintiffs cannot rest on conclusory assertions that their factual allegations state the elements of a claim under Colombian law. Rather, they must provide an authoritative account of the source and elements of their foreign law claims such that the Court can conclude that Plaintiffs have stated a viable claim under Colombian law. *See Doe v. Exxon Mobil Corp.*, —- F. Supp. 3d —-, 2014 WL 4746256, at *21 (D.D.C. Sept. 23, 2014) ("It is the plaintiff's responsibility to prove the existence of their causes of action under Indonesian law. [Citation

omitted.] While the Court is authorized to conduct independent research into foreign law, if the parties fail to provide an adequate statement of the law, the court is not obligated to independently remedy the deficiency.") (citation and internal quotation marks omitted); *In re Harte*, 440 B.R. 133, 144 (Bankr. W.D. Mich. 2010) ("The Plaintiff, however, offered no authority regarding what constitutes embezzlement in Honduras, or the legal recourse a party has when stock certificates fall into the wrong hands.  As part of his burden of proof, the Plaintiff was required to provide the court with authoritative Honduran law regarding whether the Defendant's actions constituted an illegal misappropriation of property.").

All of Plaintiffs' complaints fall far short of this standard.  Rather than specifying any substantive provisions or elements of Colombian law that give rise to a particular cause of action, Plaintiffs simply list Colombian law as one of numerous sources of law on which their claims may be based:

- The *Does 1-11* Plaintiffs assert 15 wide-ranging causes of action.  The statement of each claim includes one of two boilerplate assertions, stating that the defendants' conduct (1) is a violation of "customary international law, and the common law of the United States, the statutes and common law of New Jersey, and the laws of Colombia," (*Does 1-11* SAC ¶¶ 247, 262, 270, 277, 284, 292, 300, 305, 313), or (2) is "actionable under the laws of New Jersey, the United States, and Colombia," (*id*. ¶¶ 319, 326, 334, 345, 358, 371).

- The *Valencia* Plaintiffs take the same approach.  They assert 15 varied causes of action and state, for each, that the defendants' conduct (1) is a violation of "customary international law, the common law of the United States, the statutes and common law of New Jersey, Florida, Ohio, the laws of Colombia, and the international treaties, agreements, conventions and resolutions described in the paragraphs above," *Valencia* TAC ¶¶ 1261, 1279, 1320, 1327, 1335, 1344, (2) is a violation of "customary international law, and the common law of the United States, the statutes and common law of New Jersey, Ohio, and Florida, and the laws of Colombia," *id*. ¶¶ 1272, 1291, 1313, or (3) is "actionable under the laws of the United States, Colombia or the common law of Ohio, New Jersey, Florida or any other applicable jurisdiction," *id*. ¶¶ 1352, 1359, 1361, 1372, 1386, 1408.

- The *Montes* Plaintiffs bring six claims that they summarily assert to be "a violation of international law, the common law of the United States and the State of Ohio, the laws of Colombia, and the international treaties, agreements, conventions, and resolutions identified in this Complaint." *Montes* TAC ¶¶ 1836, 1848, 1859, 1870, 1881, 1893. They also bring claims for wrongful death and assault and battery, asserting simply that

38

"[t]he acts described herein constitute [wrongful death or assault and battery] under the laws of Colombia and the State of Ohio." *Id.* ¶¶ 1931, 1940.

- The *Carrizosa* plaintiffs assert seven causes of action. For three, they broadly assert that defendants' conduct was a violation of "established United States laws, including, the Alien Tort Statute (28 U.S.C. § 1350), the common law of Ohio, New Jersey, Florida or any other applicable jurisdiction including the laws of Colombia and the international treaties, agreements, conventions and resolutions set forth herein." *Carrizosa* TAC ¶¶ 136, 150, 154. For three common law torts, no reference to Colombian law is made at all. And for a fourth tort, for wrongful death, the Plaintiffs state only that defendants' actions "constitute wrongful death, actionable under the laws of the United States, Colombia or the common law of Ohio, New Jersey, Florida or any other applicable jurisdiction." *Id.* ¶ 171.

These rote, conclusory assertions in which Plaintiffs drop passing references to Colombian law into a series of catch-all provisions are grossly insufficient to meet the heightened pleading standard that applies to foreign law claims. The Colombian law claims brought by the *Does 1-11*, *Valencia*, *Montes*, and *Carrizosa* Plaintiffs must therefore be dismissed.[18]

## III.   ANY CLAIMS NOT DISMISSED FOR LACK OF PERSONAL JURISDICTION, OR WITH PREJUDICE, SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS*.

The Individual Defendants submit that all of Plaintiffs' claims against them should be dismissed for lack of personal jurisdiction, or with prejudice, for the reasons stated above and in their individual supplemental briefs. To the extent, however, that any claims are not dismissed by the Court for lack of personal jurisdiction, or with prejudice, the Individual Defendants move

---

[18] Even if the Court were not to dismiss the Colombian law claims brought by the *Does 1-144* Plaintiffs as time-barred, *see supra* Section II.E.1, these claims also should be dismissed for failure to adequately plead a claim. The *Does 1-144* Plaintiffs assert seven different tort claims "under the laws of Colombia . . . the District of Columbia or any other applicable jurisdiction," without differentiation and without any specification of the alleged elements of each claim under Colombian law. *Does 1-144* TAC ¶¶ 2276, 2291, 2299, 2309, 2313, 2317, 2321. Plaintiffs purport to identify in broad terms the elements of a tort under Colombian law (*id.* ¶ 2278), but provide no authority for these assertions and fail to articulate the specific elements of their tort claims, which range from wrongful death to negligent hiring to intentional infliction of emotional distress.

for dismissal of these claims for *forum non conveniens* and incorporate herein by reference the arguments for such dismissal set forth in Chiquita's FNC Motion.

## CONCLUSION

For the reasons set forth above and in the Individual Defendants' supplemental briefs, the Court should dismiss the claims against the Individual Defendants.

## REQUEST FOR ORAL ARGUMENT

Pursuant to S.D. Fla. Local Rule 7.1(b)(2), the Individual Defendants hereby request oral argument on this motion. As this Court has recognized, this case "is far from ordinary." Order at 4 (Mar. 27, 2012) (D.E. 518). Approximately 6,000 Plaintiffs have asserted dozens of claims against nine different defendants under a wide range of laws, including the ATS, TVPA, state tort law, and Colombian law. The Individual Defendants believe that oral argument would assist the Court in evaluating the several grounds for dismissal presented by the Individual Defendants in this motion, which, if granted, would terminate Plaintiffs' claims against all of the Individual Defendants. The Individual Defendants respectfully request 30 minutes per side for argument.

Dated: March 9, 2015

Respectfully submitted,

John E. Hall
Patrick S. Davies
Shankar Duraiswamy
José E. Arvelo
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, D.C. 20001
Telephone: (202) 662-6000
Fax: (202) 662-6291

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue

     /s/ Robert W. Wilkins
Sidney A. Stubbs (Fla. Bar No. 095596)
Robert W. Wilkins (Fla. Bar No. 578721)
rwilkins@jones-foster.com
JONES, FOSTER, JOHNSTON & STUBBS, P.A.
505 South Flagler Drive, Suite 1100
West Palm Beach, Florida 33401
Telephone: (561) 659-3000
Fax: (561) 650-0412

New York, NY  10018
Telephone:  (212) 841-1000
Fax:  (212) 841-1010

*Counsel for Fernando Aguirre*


Michael G. Austin (FBN 457205)
Michael.bronson@dlapiper.com
Ardith Bronson (FBN 423025)
ardith.bronson@dlapiper.com
DLA PIPER LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131-5341
Phone: (305) 423-8500
Fax: (305) 503-9583

*Counsel for Cyrus Freidheim and
Robert Kistinger*

David S. Krakoff (pro hac vice pending)
James T. Parkinson (pro hac vice
pending)
BUCKLEYSANDLER LLP
1250 24th Street, N.W., Suite 700
Washington, D.C. 20037
Telephone:  (202) 349-8000
Fax:  (202) 349-8080


L. Louis Mrachek (Fla. Bar No. 182880)
MRACHEK, FITZGERALD, ROSE,
KONOPKA, THOMAS & WEISS, P.A.
505 South Flagler Drive, Suite 600
West Palm Beach, Florida 33401
Telephone: (561) 655-2250
Fax: (561) 655-5537

*Attorneys for Defendant Charles Keiser*

J. Michael Burman, Esq. (FBN: 136214)
Bernard A. Lebedeker, Esq. (FBN:
42950)
REID BURMAN LEBEDEKER
222 Lakeview Ave., Suite 1160
West Palm Beach, FL 33401

41

561-659-7700 (telephone)
561-659-6377 (fax)
jmb@reidburmanlaw.com
bal@reidburmanlaw.com

*Counsel for Keith Lindner and Steven*
*Warshaw*

Jeffrey A. Neiman
(Florida Bar Number 544469)
MARCUS NEIMAN & RASHBAUM
100 Southeast Third Avenue
Suite 805
Fort Lauderdale, FL 33394
Tel: (954) 462-1200
Fax: (954) 688-2492
jneiman@mnrlawfirm.com

Elissa J. Preheim
(pro hac vice motion pending)
R. Stanton Jones
(pro hac vice motion pending)
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004
Tel: (202) 942-5000
Fax: (202) 952-5999
elissa.preheim@aporter.com
stanton.jones@aporter.com

*Counsel for Defendant Robert Olson*

John B. T. Murray, Jr. (Fla. Bar. No.
962759)
jb.murray@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401
Telephone: 561.650.7213
Facsimile: 561.655.1509

*Attorney for Defendant William Tsacalis*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I electronically filed the foregoing document with the

Clerk of the Court using CM/ECF on this 9th day of March, 2015.  I also certify that the

foregoing document is being served this day on all counsel of record registered to receive

electronic Notices of Electronic Filing generated by CM/ECF, and in accordance with the Court's

First Case Management Order ("CMO") and the June 10, 2008 Joint Counsel List filed in

accordance with the CMO.


By:     /s/ Robert W. Wilkins
Robert W. Wilkins (Fla. Bar No. 578721)