UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-01916-MD (MARRA/JOHNSON)

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:

ATS ACTIONS

    08-80421-CIV-MARRA
    08-80465-CIV-MARRA

_____/

# DEFENDANT ROBERT OLSON'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF INDIVIDUAL DEFENDANTS' JOINT CONSOLIDATED MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINTS

Elissa J. Preheim
  (*pro hac vice* motion pending)
R. Stanton Jones
  (*pro hac vice* motion pending)
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004
Tel: (202) 942-5000
Fax: (202) 952-5999
elissa.preheim@aporter.com
stanton.jones@aporter.com

Jeffrey A. Neiman
  (Florida Bar Number 544469)
Matthew R. Chaves
  (Florida Bar Number 104942)
MARCUS NEIMAN & RASHBAUM
100 Southeast Third Avenue
Suite 805
Fort Lauderdale, FL 33394
Tel: (954) 462-1200
Fax: (954) 688-2492
jneiman@mnrlawfirm.com
mchaves@mnrlawfirm.com

*Counsel for Defendant Robert Olson*

## INTRODUCTION

Defendant Robert Olson submits this brief as a supplement to the Joint Memorandum in Support of the Individual Defendants' Joint Consolidated Motion to Dismiss Plaintiffs' Amended Complaints (the "Joint Brief"), to address certain individualized issues concerning the TVPA claims asserted against him in the two actions in which he is named.[1] Mr. Olson otherwise relies on the arguments set forth in the Joint Brief, which he joins in full.

Plaintiffs' sparse and conclusory allegations against Mr. Olson are wholly insufficient to state a claim against him under the TVPA. As the complaints acknowledge, Mr. Olson did not join Chiquita until 1995, serving as the company's General Counsel. *Does 1-11* Second. Am. Class Action Compl. (D.E. # 589) ("*Does 1-11* SAC") ¶ 19; *Does 1-144* Third Am. Compl. (D.E. # 575) ("*Does 1-144* TAC") ¶ 2038. Other than biographical information about his tenure at Chiquita, the amended complaints contain scant allegations directed specifically at Mr. Olson. The *Does 1-144* complaint mentions him by name in only *eight* of 2,323 numbered paragraphs. TAC ¶¶ 2038, 2053, 2054, 2055, 2056, 2205, 2212, 2213. The *Does 1-11* complaint is even more spare, mentioning Mr. Olson by name in only *four* paragraphs. SAC ¶¶ 19, 88, 118, 161. Several of these allegations must be disregarded because they contain broad conclusory allegations that lump Mr. Olson with all of Chiquita's "management and other personnel," "senior executives," and "high-ranking officers, director[s] and employees." *E.g.*, *Does 1-11* SAC ¶ 29, 86. In other instances, the complaints refer generically to all "Individual Defendants" — again lumping together Mr. Olson and multiple other individuals who worked at Chiquita at various points over time. *E.g.*, *Does 1-144* TAC ¶ 2230 ("Chiquita (pursuant to review and approval by the Individual Defendants) began funding the AUC at its outset … .").

---

[1] This brief refers to Case No. 08-cv-80421 as *Does 1-11* and to No. 08-cv-80465 as *Does 1-144*.

1

Further reflecting Plaintiffs' indiscriminate and undifferentiated pleading as to Mr. Olson, the amended complaint in *Does 1-144* purports to assert various claims against him based on acts and injuries that occurred *before he even joined Chiquita* or is alleged to have learned of the company's payments on which those plaintiffs' claims are premised. At least 56 plaintiffs allege injuries before Mr. Olson joined Chiquita in 1995, including as far back as the mid-1970s.[2]

The few individualized allegations against Mr. Olson vaguely assert that he approved the company's payments to violent extremists in Colombia, approved unspecified procedures to "disguise" the payments, and discussed the company's payments with Chiquita's outside counsel and the U.S. Department of Justice ("DOJ"), including in connection with the company's disclosure of the payments to DOJ. Plaintiffs do not (and cannot) allege, as this Court held that they must, any facts whatsoever that could establish Mr. Olson's alleged conduct was motivated by a specific intent to facilitate the torture and killing of Colombian civilians. The idea that Mr. Olson had such an intent is absurd. Indeed, the allegations are fully consistent with an explanation that Mr. Olson's purported actions were motivated by concern about violence to Chiquita's Colombian employees if the company were not to make extortion payments to Colombian extremists. In addition, Plaintiffs do not (and cannot) allege any facts showing that Mr. Olson provided "substantial assistance" to the AUC or entered into any kind of agreement with the AUC. Accordingly, Plaintiffs' TVPA claims must be dismissed.

---

[2] *E.g.*, *Does 1-144* TAC ¶¶ 31, 39, 40, 41, 69, 79, 81, 92, 93, 97, 108, 109, 110, 111, 112, 116, 117, 118, 119, 121, 124, 126, 127, 128, 129, 130, 131, 136, 142, 146, 147, 151, 152, 153, 163, 167, 169, 172, 177, 178, 181, 184, 359, 360, 373-74, 383-84, 385-86, 391, 524, 556, 720, 1733, 1747, 1868, 1869, 1487. Another 23 plaintiffs allege injuries from the AUC before Mr. Olson allegedly learned in 1997 of the company's payments to convivirs or the connection between convivirs and the AUC (*id.* ¶ 2038). *Id.* ¶¶ 59, 63, 91, 125, 134, 159, 174, 192, 193, 363, 364, 541, 677, 965, 1334, 1335, 1443, 1730, 1421, 1512, 1567, 1580, 1583.

2

**ARGUMENT**

I. **PLAINTIFFS' CLAIMS AGAINST MR. OLSON FOR SECONDARY LIABILITY UNDER THE TVPA MUST BE DISMISSED FOR FAILURE ADEQUATELY TO PLEAD A CLAIM**

To support their claims for secondary liability under the TVPA, Plaintiffs must allege individualized facts showing that Mr. Olson assisted or conspired with the AUC with the "*purpose or intent* to facilitate the commission of the specific offenses alleged." Order (June 3, 2011) (D.E. # 412) at 68 (emphasis added) (hereinafter, "MTD Order"); *see also* Joint Br. at 29-33. This requires factual allegations that Mr. Olson "intended for the AUC to torture and kill civilians in Colombia's banana-growing regions." MTD Order at 69. In addition, Plaintiffs' aiding and abetting claims require factual allegations that Mr. Olson substantially assisted the AUC's commission of the alleged offenses, and their conspiracy claims require allegations that Mr. Olson entered into an "agreement" with the AUC to torture and kill civilians. Joint Br. at 34-35; *see also* MTD Order at 68-69.

The complaints fall patently short of satisfying these requirements. As set forth in the Joint Brief, their conclusory allegations, formulaic recitations of the elements of a cause of action, or generalized allegations that lump multiple defendants together are not entitled to any assumption of truth in determining whether Plaintiffs have adequately stated a claim.[3] *See* Joint Br. at 26-28; MTD Order at 70 n.66 (rejecting bare assertions that defendants had the requisite intent as "entirely conclusory"); *see also Kabbaj v. Obama*, 568 F. App'x 875, 880 (11th Cir. 2014) (complaint fails to satisfy Rule 8 where it "refers to the defendants collectively"); *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (similar); *Bank*

---

[3] *See, e.g.*, *Does 1-11* SAC ¶ 27 ("Whenever reference is made in this Complaint to any conduct by a Defendant, such allegations and references shall be construed to mean the conduct of each of the Defendants, acting individually, jointly, and severally.").

3

*of America, N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) (similar); *Bentley v. Bank of America, N.A.*, 773 F. Supp. 2d 1367, 1373 (S.D. Fla. 2011) (plaintiffs must "allege facts showing knowledge or intent as to each Defendant"). Because Plaintiffs fail to allege individualized facts establishing any plausible TVPA claim against Mr. Olson, those claims must be dismissed under Rule 12(b)(6).

> **A. Plaintiffs' Secondary Liability Claims Must Be Dismissed Because Plaintiffs Have Not Alleged Facts That Could Establish Mr. Olson Intended That the AUC Torture or Kill Colombian Civilians**

Neither complaint contains specific, individualized allegations that support an inference that Mr. Olson acted with the "purpose or intent" of facilitating the AUC's killing and torture of Colombian civilians. Plaintiffs' few specific references to Mr. Olson allege only in conclusory fashion that he "reviewed and approved" the company's payments to the AUC and "reviewed and implemented" unspecified procedures to "disguise" the payments. *Does 1-11* SAC ¶¶ 19, 86, 88; *Does 1-144* TAC ¶¶ 2038.

These allegations are wholly insufficient to infer any wrongful intent on the part of Mr. Olson. Mr. Olson's alleged review and approval of the payments to the AUC — presumably at some point in time after he learned of the company's payments (*see Does 1-144* TAC ¶ 2038 (alleging he "learned about payments to convivirs, at the latest, in 1997")) — says nothing about his "purpose or intent" in doing so, much less that it was to enable the killing and torture of Colombian civilians. Even if these allegations could suggest that Mr. Olson provided "knowing assistance" to the AUC, this Court has made clear that this would be insufficient to establish the *mens rea* required for a secondary liability claim under the TVPA. *See* Joint Br. at 30. In contrast to cases in which courts have found the *mens rea* standard to be satisfied (*see* Joint Br. at 31-32), Plaintiffs do not allege that Mr. Olson requested or directed the AUC to kill and torture Colombian

4

civilians — in fact, they do not allege that he requested or directed that the AUC do *anything* — or that he indicated any desire to benefit from such violent acts.

Nor do Plaintiffs' vague allegations that Mr. Olson "reviewed," "approved," or "implemented" procedures for "disguising" the company's payments to the AUC (*Does 1-11* SAC ¶ 88; *Does 1-144* TAC ¶ 2038) support an inference that he acted with the "purpose or intent" of enabling the killing and torture of Colombian civilians. As an initial matter, this allegation is not entitled to any assumption of truth because it is wholly conclusory. *See* Joint Br. at 26. Plaintiffs do not allege any facts regarding what procedures allegedly were designed, how they supposedly "disguised" the payments, or what actions Mr. Olson allegedly took to "approve" or "implement" them. Even if these allegations were true (which they are not), they would suggest only that Mr. Olson helped to ensure the confidentiality of the payments. Plaintiffs do not allege any facts that would explain his purpose or intent in doing so, much less some intent that Colombian civilians be tortured or killed.

The additional allegations that Mr. Olson discussed the legality of payments with Chiquita's outside counsel and the Justice Department do not even relate to the conduct giving rise to Plaintiffs' TVPA claims, let alone satisfy the applicable *mens rea* standard. *See Does 1-11* SAC ¶ 161 (alleging that "shortly" after discovering the U.S.'s designation of the AUC as a Foreign Terrorist Organization, Mr. Olson "spoke with outside counsel" about Chiquita's payments to the AUC); *Does 1-144* TAC ¶¶ 2053 (alleging that Mr. Olson purportedly made "false statements" to DOJ in 2003 about the legality of the company's payments), 2054 (alleging that Mr. Olson "took the position" that DOJ was "condoning the payments" pending its review of the matter), 2056 (alleging that Mr. Olson "authorized" outside counsel to make a disclosure to DOJ and "pressured" outside counsel to change their advice to the company about the payments). Even if it were true

5

(which it is not) that Mr. Olson somehow pressured Chiquita's outside counsel, or that he made false statements to the DOJ — allegedly in the presence of outside counsel (*Does 1-144* TAC ¶ 2053) — the allegations say nothing about why he did so, much less support that it was for the specific purpose of enabling the killing and torture of Colombian civilians. Further, courts have rejected allegations of unlawful or dishonest conduct as insufficient to show that it was motivated by the specific "purpose or intent" to facilitate the international law violations at issue. *See, e.g.*, *Abecassis v. Wyatt*, 704 F. Supp. 2d 623, 655 (S.D. Tex. 2010) (defendants' unlawful transaction of business with Saddam Hussein regime, for which they had pled guilty, did not support inference that they intended to assist Hussein regime in sponsoring terrorist attacks).

Even if Plaintiffs' allegations regarding Mr. Olson's conduct could be construed as "consistent" with the theory that he specifically intended the killing and torture of Colombian civilians, this would still fail to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (allegations that are "merely consistent with a defendant's liability" or establish a "mere possibility that a defendant has acted unlawfully" are insufficient). That is especially so because the allegations, even if true, are equally consistent with an "alternative explanation" — that Mr. Olson approved the payments to the AUC because of the clear threat of violence that the AUC posed to Chiquita's Colombian employees if the payments were not made. *See id*. at 680-81 (although allegations were "consistent with" plaintiffs' theory that defendants' conduct was motivated by a discriminatory purpose, they failed to state a claim because they were also consistent with an "obvious alternative explanation" for defendants' behavior); *Mamani v. Berzain*, 654 F.3d 1148 (11th Cir. 2011) (plaintiffs' allegations that Bolivian defense minister directed military personnel to fire weapons at civilian protesters did not establish that resulting deaths were "undertaken with

6

studied consideration and purpose," given the "alternative explanation" that the specific deaths at issue were accidental).

### B. Plaintiffs' Aiding and Abetting Claims Must Also Be Dismissed Because Plaintiffs Have Not Alleged That Mr. Olson Provided "Substantial Assistance" to the AUC

To state aiding and abetting claims against Mr. Olson, Plaintiffs must allege that he individually provided "practical assistance" that had a "substantial effect" on the perpetration of the AUC's violence. *See* MTD Order at 65; Joint Br. at 34. This Court has already held that funding alone does *not* qualify as such substantial assistance: "'[M]erely supplying a violator of the law of nations with funds as part of a commercial transaction, without more, cannot constitute aiding and abetting a violation of international law.'" MTD Order at 77 (quoting *Doe v. Nestle, S.A.*, 748 F. Supp. 2d 1057, 1099 (C.D. Cal. 2010)). While the Court found that allegations against Chiquita satisfied this element, it did so based on allegations that do not apply to Mr. Olson: allegations that Chiquita (1) "'engage[d] in additional assistance beyond financing,'" namely, facilitating arms sales; and (2) acted for reasons "gratuitous or unrelated to any commercial purpose," *i.e.*, that the company "specifically intended" that the payments "assist the AUC's military campaign against the FARC." MTD Order at 77-78.

Here, Plaintiffs allege *no* facts (nor could they allege facts) suggesting that Mr. Olson provided any assistance to the AUC "beyond financing." MTD Order at 77. Plaintiffs allege *no* facts showing that Mr. Olson had any involvement in alleged arms shipments, and *no* facts regarding his intent or purpose in purportedly approving the company's payments to the AUC, much less that he "specifically intended to assist the AUC's military campaign against the FARC." *See supra* Section I.A. Their boilerplate allegations that Mr. Olson "reviewed and approved" the company's payments are instead entirely and equally "consistent," *Iqbal*, 556 U.S. at 678, with the alternative explanation that Mr. Olson reviewed and purportedly approved the company's

7

payments to the AUC because of the threat of violence the AUC posed to Chiquita's Colombian employees if the payments were not made.

Finally, even if (contrary to this Court's prior holding) financing alone could support a finding of substantial assistance, Plaintiffs do not plausibly suggest that *Mr. Olson* personally supplied "practical assistance" that had a "*substantial* effect on the perpetration of the crime." MTD Order at 65 (emphasis added). Plaintiffs allege that a long list of Chiquita executives "reviewed and approved" Chiquita's payments. *Does 1-11* SAC ¶ 86. And Plaintiffs acknowledge that these payments were made for years without Mr. Olson's knowledge or alleged approval, even after Mr. Olson had joined the company as General Counsel in 1995. *Does 1-144* TAC ¶ 2038 (alleging that Mr. Olson learned of the payments to the convivirs in 1997). By acknowledging that the payments to the AUC began before Mr. Olson learned of them, Plaintiffs' own allegations refute the notion that Mr. Olson's actions were necessary or sufficient to effect payments to the AUC, and hence that Mr. Olson's actions alone had a "substantial effect" on the perpetration of the AUC's violence. Plaintiffs' aiding and abetting claims against Mr. Olson must therefore be dismissed.

### C. Plaintiffs' Conspiracy Claims Must Be Dismissed Because Plaintiffs Have Not Alleged That Mr. Olson Entered Into any "Agreement" With the AUC

To state a conspiracy claim against Mr. Olson, Plaintiffs must allege that he individually entered into an "agreement" with the AUC to torture and kill Colombian civilians. MTD Order at 79; *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1159 (11th Cir. 2005). While the Court found that allegations against Chiquita sufficed because they specified "facts regarding dates, attendees, and discussions of meetings between Chiquita and the AUC" and "facts regarding the terms of the agreements reached, " MTD Order at 80, Plaintiffs allege no such facts as to Mr. Olson. Neither the *Does 1-144* nor the *Does 1-11* complaint alleges that Mr. Olson entered into *any* agreement

8

with the AUC, much less any facts that could support such a conclusion. Plaintiffs do not (and cannot) allege that Mr. Olson ever went to Colombia, or that he ever met with any member of the AUC. They do not allege that Mr. Olson ever communicated with any member of the AUC — in any form, at any time, in any place.

In support of its conspiracy claims against Mr. Olson, the *Does 1-144* complaint relies on a few paragraphs alleging that the undifferentiated "Individual Defendants" "review[ed] and approv[ed]" Chiquita's activities. *Does 1-144* TAC ¶¶ 2227-32, 2270. These allegations do not remotely support a conspiracy claim against Mr. Olson. First, they are virtually identical to the conclusory allegations that the U.S. Supreme Court rejected in *Iqbal*, including allegations that the Attorney General was the "principal architect" of a challenged policy or that the FBI Director was "'instrumental' in adopting and executing" it. 556 U.S. at 680-81. Second, they are impermissibly vague, undifferentiated allegations against a group of defendants that do not even allege to what each individual defendant supposedly "agreed." *W. Coast Roofing*, 287 F. App'x at 86. Plaintiffs notably do not (and cannot) allege that Mr. Olson approved any meeting between Chiquita and the AUC discussing any AUC conduct, or that he approved any activity by the AUC anywhere in Colombia, much less any of the alleged torture and killing that forms the basis of Plaintiffs' TVPA claims.

In short, plaintiffs allege no facts establishing that Mr. Olson entered into any sort of "agreement" with the AUC to torture and kill civilians. Accordingly, the TVPA claim against Mr. Olson for conspiracy must be dismissed.

## CONCLUSION

For the reasons set forth above and in the Individual Defendants' Joint Brief, all claims in *Does 1-144* and *Does 1-11* should be dismissed as to Mr. Olson.

Dated:  March 9, 2015

Respectfully submitted,

  /s/ Jeffrey A. Neiman
Jeffrey A. Neiman
   (Florida Bar Number 544469)
MARCUS NEIMAN & RASHBAUM
100 Southeast Third Avenue
Suite 805
Fort Lauderdale, FL 33394
Tel: (954) 462-1200
Fax: (954) 688-2492
jneiman@mnrlawfirm.com

Elissa J. Preheim
   (*pro hac vice* motion pending)
R. Stanton Jones
   (*pro hac vice* motion pending)
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004
Tel: (202) 942-5000
Fax: (202) 942-5999
elissa.preheim@aporter.com
stanton.jones@aporter.com

*Counsel for Defendant Robert Olson*

10

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on this 9th day of March, 2015.  I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF, and in accordance with the Court's First Case Management Order ("CMO") and the June 10, 2008 Joint Counsel List filed in accordance with the CMO.

  /s/ Jeffrey A. Neiman
Jeffrey A. Neiman