UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-01916-MD-MARRA/JOHNSON

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:

ATS ACTIONS

    08-80421-CIV-MARRA
    08-80465-CIV-MARRA
_____/

**DEFENDANT WILLIAM TSACALIS' SUPPLEMENTAL MEMORANDUM IN
SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINTS**

    Defendant William Tsacalis submits this brief as a supplement to the Individual Defendants' Joint Consolidated Motion to Dismiss Plaintiffs' Amended Complaints (the "Joint Brief") to offer individualized details as to why the TVPA claims asserted in the two actions in which he is named must be dismissed for failure to plead facts sufficient to state a claim.[1]  *See* Joint Br. at 25-38.  Mr. Tsacalis otherwise relies on the arguments set forth in the Joint Brief, which he joins in full.

## Introduction

    Plaintiffs' amended complaints make only a handful of allegations against Mr. Tsacalis that come nowhere close to stating a TVPA claim against him.  To start, Plaintiffs' allegations regarding Mr. Tsacalis acknowledge that he served as Controller of Chiquita—a title universally associated with financial reporting and matters relating to proper documentation and accounting

---

[1] This memorandum shall refer to Case No. 08-cv-80465 as "*Does 1-144*," and to Case No. 08-cv-80421 as "New Jersey."

records.  Certainly, it is a title far removed from any ability to authorize payments of the kind at issue here.² Next, Plaintiffs vaguely claim that during some unspecified period of time, Mr. Tsacalis approved payments to the AUC and designed some unspecified procedures for "disguising" the payments.  Plaintiffs do not allege a single fact that would support these naked assertions and, indeed, fail to make any individualized allegation against Mr. Tsacalis suggesting that he played a deciding role in whether the payments were to be made, or that his role as Controller even provided him with the authority to make such decisions.  Moreover, Plaintiffs do not allege, as this Court has held they must, any facts suggesting that Mr. Tsacalis' alleged conduct was specifically intended to facilitate the killing and torture of Colombian civilians.  In addition, Plaintiffs' sparse allegations fail to show that Mr. Tsacalis provided "substantial assistance" to the AUC or entered into any kind of agreement with the AUC.  For these reasons, Plaintiffs' TVPA claims against Mr. Tsacalis must be dismissed under Rule 12(b)(6) for failure to state a claim.

## Argument

Plaintiffs' allegations fall far short of meeting the required standards for secondary liability under the TVPA.  To sustain their claims of aiding and abetting and conspiracy, Plaintiffs must plead facts showing that Mr. Tsacalis assisted or conspired with the AUC with the "*purpose* or *intent* to facilitate the commission of the specific offenses alleged." Order (June 3, 2011) (D.E. 412) at 67 (hereinafter "MTD Order") (emphasis added).³  This requires allegations

---

² The allegations against Mr. Tsacalis are patently false and will be addressed appropriately in the event they survive this motion to dismiss.  In his role as Controller, Mr. Tsacalis had no authority to approve payments to the AUC or any other group and did not do so.

³ All docket entry citations herein are to the master docket for 08-mdl-01916 unless otherwise indicated.

that Mr. Tsacalis "intended for the AUC to torture and kill civilians in Colombia's banana-growing regions." *Id*. at 69.  In addition, Plaintiffs' aiding and abetting claims require allegations that Mr. Tsacalis substantially assisted the AUC's commission of the alleged offenses, and their conspiracy claims require allegations that Mr. Tsacalis entered into an agreement with the AUC to commit the alleged offenses.  *See id.* at 68-69.[4]  Nowhere do Plaintiffs allege how a Controller responsible for accounting matters accomplished any of these requirements.

As explained in detail in the Joint Brief, Plaintiffs' complaint must contain (1) sufficient *factual* content to establish a plausible claim, and not just legal conclusions or formulaic recitations of the elements of a cause of action, and (2) *individualized* factual allegations, rather than generalized allegations that "lump" multiple defendants together.  *See* Joint Br. at 26-28.  Thus, the many conclusory and collective allegations set forth in Plaintiffs' complaints are not entitled to any assumption of truth in determining whether Plaintiffs have adequately pled a claim against Mr. Tsacalis.[5]

---

[4] The plaintiffs also appear to assert an "agency" theory of secondary liability.  *See Does 1-11* Second Am. Compl.("SAC") ¶¶ 27-28, *Does 1-144* Third Am. Compl. ("TAC") ¶¶ 2233-39.  The Court dismissed such claims against Chiquita because Plaintiffs failed to allege that Chiquita exercised control over the AUC.  *See* MTD Order at 82.  Plaintiffs' agency claims against Mr. Tsacalis must be dismissed for the same reason, as they have not alleged any facts suggesting that Mr. Tsacalis exercised any greater degree of control over the AUC than Chiquita did.

[5] *See e.g., Does 1-11* SAC ¶ 27 ("Whenever reference is made in this Complaint to any conduct by a Defendant, such allegations and references shall be construed to mean the conduct of each of the Defendants, acting individually, jointly, and severally.").

010-8026-5315/1/AMERICAS

    **A.**    **Plaintiffs' Secondary Liability Claims Must be Dismissed Because They do Not Allege that Mr. Tsacalis Intended that the AUC Torture and Kill Civilians.**

Of the hundreds of paragraphs in both the *Does-144* and *Does 1-11* complaints, only *five* paragraphs reference Mr. Tsacalis by name. *Does 1–144* TAC ¶ 2047; *Does 1-11* SAC ¶¶ 22, 29, 86, 88. Two of these must be disregarded by the Court because they contain broad conclusory allegations that "lump" Mr. Tsacalis with all of Chiquita's "management and personnel," "senior executives," and "high-ranking officers, director[s] and employees."[6] This leaves just *three* paragraphs that assert individualized allegations against Mr. Tsacalis:

> 2047. Defendant William Tsacalis held various finance and accounting positions at Chiquita. Defendant Tsacalis knew about Chiquita's payments to leftwing guerrilla groups. Defendant Tsacalis learned about payments to convivirs, at the latest, in 1997. At the same time or not long after, Defendant Tsacalis learned of the connection between the convivirs and the AUC. Defendant Tsacalis approved the payments. Defendant Tsacalis also designed procedures for disguising payments made to the AUC. *Does 1–144* TAC ¶ 2047.
>
> 22. Upon information and belief, one individual designated in the First Amended Complaint as a Moe Defendant is now known to be William Tsacalis, Controller and Chief Accounting Officer for Chiquita. Tsacalis knew about Chiquita's payments to convivirs and the AUC and designed the new procedures for payments to the AUC after it was designated as a Foreign Terrorist Organization. *Does 1-11* SAC ¶ 22.
>
> 88. By March 2002, Defendant Tsacalis had designed new procedures to disguise payments to the AUC. *Does 1-11* SAC ¶ 88.

---

[6] *See Does 1-11* SAC ¶ 29 ("CBI management and other personnel in the United States and in Colombia including Defendants Freidheim, Hills, Olson, Kistinger, Keiser and Tsacalis were informed of the ongoing events complained of herein and participated in the decision making, planning, preparation, ratification, and/or execution of the acts complained of."), ¶ 86 ("Chiquita's payments to the AUC were reviewed and approved by senior executives of the corporation, including Defendants Freidheim, Hills, Olson, Kistinger, Keiser and Tsacalis and high-ranking officers, director and employees.").

Apart from identifying the positions Mr. Tsacalis held at Chiquita and stating the benign fact that he learned about payments to the AUC by 1997, Plaintiffs allege only that Mr. Tsacalis "approved the payments" — presumably after learning about them, though Plaintiffs do not say — and designed some unspecified procedures for "disguising" the payments.

These allegations are grossly insufficient to state a claim against Mr. Tsacalis.  Even if true, the fact that Mr. Tsacalis "approved" the payments during some unspecified period of time says nothing about his "purpose or intent" in doing so, much less that it was to enable the killing and torture of Colombian civilians.  As this Court previously explained in dismissing claims against Chiquita arising from violence by the FARC, a conclusory allegation that a defendant made payments to a violent group does not establish that he did so for the specific purpose of enabling violence.  *See* MTD Order at 92 ("[T]he Perez Plaintiffs fail to allege that Chiquita paid the FARC with the purpose or intent to further the FARC's violence. Plaintiffs conclusorily allege that Chiquita supported the FARC, but fail to allege Chiquita's intent, if any, in doing so.").

At most, Plaintiffs' allegations suggest that Mr. Tsacalis provided "knowing assistance" to the AUC, but as this Court has made clear, this is insufficient to establish the *mens rea* required for a secondary liability claim under the TVPA.  *See* Joint Br. at 30.  In contrast to those cases in which courts have found the *mens rea* standard to be satisfied (*see* Joint Br. at 32-33), Plaintiffs do not allege that Mr. Tsacalis requested or directed that the AUC kill and torture civilians— in fact, they do not allege that he requested or directed that the AUC do *anything* — or that he indicated his desire to benefit from such violent acts.

5

Nor does the vague allegation that Mr. Tsacalis "designed procedures for disguising payments made to the AUC" support the inference that he acted with the "purpose or intent" of enabling the killing and torture of Colombian civilians. *First*, this allegation is not entitled to any assumption of truth because it is wholly conclusory. Plaintiffs do not allege any facts regarding what procedures Mr. Tsacalis allegedly designed or how they supposedly "disguised" the payments. *Second*, even if assumed to be true, the allegation suggests only that Mr. Tsacalis helped to ensure the confidentiality of the payments. Plaintiffs do not allege any facts that would explain his purpose or intent in doing so, much less that it was connected to some desire to have Colombian civilians killed and tortured. *Third*, as other courts have explained, even if the allegation suggested that Mr. Tsacalis' conduct were improper, dishonest, or unlawful, this is insufficient to show that the conduct was motivated by the specific "purpose or intent" of facilitating the international law violations at issue. *See Shan v. China Constr. Bank Corp.*, 421 F. App'x 89, 94 (2d Cir. 2011) (defendant's alleged falsification of evidence to induce plaintiff's arrest, while fraudulent and improper, was consistent with motives other than subjecting the plaintiff to human rights violations, such as preventing the plaintiff from exposing the defendant's illegal activities); *Abecassis v. Wyatt*, 704 F. Supp. 2d 623, 655 (S.D. Tex. 2010) (defendants' unlawful transaction of business with Saddam Hussein regime, for which they had pled guilty, did not support the inference that they intended to assist the Hussein regime in sponsoring terrorist attacks).

Even if the Court were to construe Plaintiffs' allegations regarding Mr. Tsacalis' conduct as "consistent" with the theory that he specifically wanted the AUC to kill and torture Colombian civilians, this would still be insufficient to state a plausible claim for relief because the allegations are equally consistent with an "alternative explanation" — that Mr. Tsacalis' conduct

6

was motivated by the clear threat of violence that the AUC posed to Chiquita's Colombian employees. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680-82 (2009) (although allegations were "consistent with" plaintiffs' theory that defendants' conduct was motivated by a discriminatory purpose, they failed to state a claim because they were also consistent with an "obvious alternative explanation" for defendants' behavior); *see also Mamani v. Berzain*, 654 F.3d 1148, 1155 (11th Cir. 2011) (assuming plaintiffs' allegations that Bolivian defense minister directed military personnel to fire weapons at civilian protesters did not establish that resulting deaths were "undertaken with studied consideration and purpose," given the "alternative explanation" that the specific deaths at issue were accidental); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (in determining whether plaintiffs have stated a claim "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer"). Indeed, "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014) (internal citations, quotation marks, and alterations omitted). Plaintiffs here have pled no facts that exclude the alternative explanation that Mr. Tsacalis' alleged involvement in payments to the AUC was driven by a fear of violent retribution.

**B.   Plaintiffs' Aiding and Abetting Claims Must Also be Dismissed Because They Do Not Allege That Mr. Tsacalis Provided "Substantial Assistance" to the AUC.**

To state a claim for aiding and abetting under the TVPA, Plaintiffs must show that Mr. Tsacalis provided "practical assistance" that had a "substantial effect on the perpetration of the crime." *See* MTD Order at 65. As the Court has already held, to meet this standard, Plaintiffs must allege at a minimum that the defendants provided "additional assistance beyond financing" or that the financing was "gratuitous or unrelated to any commercial purpose." MTD Order at 77. Although the Court found that Plaintiffs had alleged such facts as to Chiquita, it did so based on allegations that Chiquita (1) "facilitated arms shipments for the AUC, including AK-47 rifles and ammunition used by AUC units carrying out attacks in Uraba," a banana-growing region where many of the acts of violence were alleged to occur, and (2) made payments to the AUC that "were not for ordinary commercial purposes, but were specifically intended to assist the AUC's military campaign against the FARC." *Id*. at 77-78.

Here, Plaintiffs have not alleged a single fact suggesting that Mr. Tsacalis provided any assistance to the AUC "beyond financing." They do not suggest that he even knew about Chiquita's alleged arms shipments, much less that he was involved in them in any way. Plaintiffs also do not allege that Mr. Tsacalis' alleged assistance in approving or disguising payments to the AUC over some unspecified period of time was "specifically intended to assist the AUC's military campaign against the FARC." Indeed, as explained in Section I.A above, Plaintiffs fail to allege *any* facts regarding Mr. Tsacalis' supposed intent or purpose in approving payments to the AUC.

Furthermore, even if the provision of financing could, by itself, support a finding of substantial assistance, Plaintiffs' allegations do not suggest that Mr. Tsacalis' particular role in

8

that financing had a "*substantial* effect on the perpetration of the crime." Indeed, the individualized allegations in the *Does 1-11* complaint claim only that Mr. Tsacalis was involved in developing procedures to disguise payments, not that he approved them, and they do not explain how Mr. Tsacalis' alleged efforts to disguise payments had any effect on the AUC's ability to carry out the killing and torture of Colombian civilians. Although the *Does 1-144* complaint alleges that Mr. Tsacalis "approved the payments" (*Does 1-144* TAC ¶ 2047), it does not plausibly suggest that his particular approval was necessary or sufficient to effect any payments to the those groups. Indeed, the complaint identifies numerous other individuals who also allegedly approved the payments,[7] suggesting that Mr. Tsacalis' actions were superfluous and did not, in and of themselves, have a "substantial effect" on the perpetration of the crimes.

### C. Plaintiffs' Conspiracy Claims Must Also be Dismissed Because They Do Not Allege That Mr. Tsacalis Entered Into any Agreement with the AUC.

To state a claim for conspiracy under the TVPA, Plaintiffs must allege that Mr. Tsacalis entered into an agreement with the AUC to torture and kill Colombian civilians. *See* Joint Br. at 34-35. The Court found that the allegations against Chiquita satisfied this element of the claim because they specified "facts regarding dates, attendees, and discussions of meetings between Chiquita and the AUC, as well as facts regarding the terms of the agreements reached." MTD Order at 80. By contrast, Plaintiffs have not alleged that Mr. Tsacalis was involved in *any* meeting with the AUC, much less provided specifics regarding dates, attendees, and content of such meetings. Plaintiffs have not even alleged that Mr. Tsacalis had any direct or indirect

---

[7] *See Does 1-144* TAC ¶¶ 2036-38, 2047-49 (stating that Defendants Freidheim, Hills, Olson, Tsacalis, Warshaw, and Aguirre approved payments to the AUC).

communications with AUC members. Absent any such allegation, there is no basis to conclude that he individually joined in any "agreement" to torture and kill Colombian civilians.

### Conclusion

For the aforementioned reasons, and those stated in the Joint Brief, the Court should dismiss the *Does 1-144* and *Does 1-11* plaintiffs' claims against Mr. Tsacalis.

Dated: March 9, 2015

Respectfully submitted,

 s/ J.B. Murray
John B. T. Murray, Jr. (Fla. Bar. No. 962759)
jb.murray@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
1900 Phillips Point West
777 South Flagler Drive
West Palm Beach, FL 33401
Telephone: 561.650.7213
Facsimile: 561.655.1509
*Attorneys for Defendant William Tsacalis*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on this 9th day of March, 2015. I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF, and in accordance with the Court's First Case Management Order ("CMO") and the June 10, 2008 Joint Counsel List filed in accordance with the CMO.

By: */s J.B. Murray*
John B.T. Murray, Jr.