UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-01916-MD-MARRA/JOHNSON

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:

ATS ACTIONS

      08-80421-CIV-MARRA
      08-80465-CIV-MARRA
_____/

**DEFENDANT ROBERT KISTINGER'S SUPPLEMENTAL MEMORANDUM IN
SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINTS**

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

      A.    Plaintiffs' Secondary Liability Claims Must Be Dismissed Because They Do Not Allege That Mr. Kistinger Intended That the AUC Torture and Kill Civilians in Colombia's Banana-Growing Regions. ....................................... 3

      B.    Plaintiffs' Aiding and Abetting Claims Must Also Be Dismissed Because They Do Not Allege That Mr. Kistinger Provided "Substantial Assistance" to the AUC. ....................................................................................................... 6

      C.    Plaintiffs' Conspiracy Claims Must Also Be Dismissed Because They Do Not Allege That Mr. Kistinger Entered into Any Agreement with the AUC. ............................................................................................................... 7

CONCLUSION ....................................................................................................................... 8

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abecassis v. Wyatt*,
    704 F. Supp. 2d 623 (S.D. Tex. 2010) ................................................................................4, 5

*Am. Dental Ass'n v. Cigna Corp.*,
    605 F.3d 1283 (11th Cir. 2010) ...............................................................................................5

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................................5

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ....................................................................................................6

*Mamani v. Berzain*,
    654 F.3d 1148 (11th Cir. 2011) ................................................................................................5

*Shan v. China Constr. Bank Corp.*,
    421 Fed. App'x 89 (2d Cir. 2011)............................................................................................4

## INTRODUCTION

Defendant Robert Kistinger submits this brief as a supplement to the Individual Defendants' Joint Consolidated Motion to Dismiss Plaintiffs' Amended Complaints (the "Joint Brief"), to offer individualized details as to why the TVPA claims asserted in the two actions in which he is named must be dismissed for failure to plead facts sufficient to state a claim.[1]  Mr. Kistinger also relies on the arguments set forth in the Joint Brief, which he joins in full.

Plaintiffs' complaints completely fail to substantiate their claim that Mr. Kistinger should be held personally liable for thousands of acts of violence committed by the AUC over a nearly 15-year period.  The few individualized allegations against Mr. Kistinger suggest only that he had some unspecified involvement in approving payments to the AUC.  But they do not remotely suggest — as they must in order to state a claim under the TVPA — that Mr. Kistinger's involvement was intended to support the killing and torture of Colombian civilians. To the contrary, the allegations are fully consistent with the position that Mr. Kistinger's limited involvement in the payments to the AUC was motivated by a desire to ensure the safety of Chiquita's employees.  Plaintiffs also have failed to allege any facts suggesting that Mr. Kistinger provided assistance to the AUC beyond "mere financing," or entered into any agreement with the AUC, as needed to sustain their aiding and abetting and conspiracy claims. Plaintiffs' TVPA claims against Mr. Kistinger must therefore be dismissed under Rule 12(b)(6) for failure to state a claim.

---

[1] This memorandum shall refer to Case No. 08-cv-80421 as "*Does 1-11*" and to Case No. 08-cv-80465 as "*Does 1-144*."

## ARGUMENT

Plaintiffs' factual allegations against Mr. Kistinger fall far short of meeting the required standards for secondary liability under the TVPA.  To sustain their claims of aiding and abetting and conspiracy, Plaintiffs must plead facts showing that Mr. Kistinger assisted or conspired with the AUC with the "*purpose* or *intent* to facilitate the commission of the specific offenses alleged."  Order (June 3, 2011) (D.E. 412) at 67 (hereinafter "MTD Order") (emphasis added).[2]  This requires allegations that Mr. Kistinger "intended for the AUC to torture and kill civilians in Colombia's banana-growing regions."  *Id.* at 69.  In addition, Plaintiffs' aiding and abetting claims require allegations that Mr. Kistinger substantially assisted the AUC's commission of the alleged offenses, and their conspiracy claims require allegations that Mr. Kistinger entered into an agreement with the AUC to commit the alleged offenses.  *See id.* at 68-69.[3]

As explained in detail in the Joint Brief, Plaintiffs cannot meet their burden based on conclusory or collective allegations.  Rather, their complaints must (1) contain sufficient *factual* content to establish a plausible claim, and not just legal conclusions or formulaic recitations of the elements of a cause of action, and (2) *individualized* factual allegations, rather than generalized allegations that "lump" multiple defendants together.  *See* Joint Br. at 26.  Thus, the many conclusory and collective allegations set forth in Plaintiffs' complaints are not entitled to

---

[2] All docket entry citations herein are to the master docket for 08-mdl-01916 unless otherwise indicated.

[3] The Plaintiffs also appear to assert an "agency" theory of secondary liability.  *See Does 1-11* Second Am. Compl. ("SAC") ¶¶ 27-28; *Does 1-144* Third Am. Compl. ("TAC") ¶¶ 2233-39.  The Court dismissed such claims against Chiquita because Plaintiffs failed to allege that Chiquita exercised control over the AUC.  *See* MTD Order at 82.  Plaintiffs' agency claims against Mr. Kistinger must be dismissed for the same reason, as they have not alleged any facts suggesting that Mr. Kistinger exercised any greater degree of control over the AUC than Chiquita did.

any assumption of truth in determining whether Plaintiffs have adequately pled a claim against Mr. Kistinger.[4]

### A. Plaintiffs' Secondary Liability Claims Must Be Dismissed Because They Do Not Allege That Mr. Kistinger Intended That the AUC Torture and Kill Civilians in Colombia's Banana-Growing Regions.

Plaintiffs' individualized allegations against Mr. Kistinger are limited to assertions that he approved payments to the AUC, and continued approving payments to the AUC after he purportedly discovered they were unlawful. *See Does 1-144* Third Am. Compl. ("TAC") ¶ 2039 (alleging that Mr. Kistinger "approved" payments to the convivirs and that he "continued to approve the payments" after he "learned of the connection between the convivirs and the AUC"); *Does 1-11* Second Am. Compl. ("SAC") ¶ 20 (alleging that Mr. Kistinger "knew of," "reviewed," and "authorized" payments to the AUC and "instructed Chiquita employees to continue making payments after learning that the payments were illegal"), ¶ 118 (alleging that Mr. Kistinger "instructed" Chiquita employees "to continue making the payments to the AUC" after Chiquita had decided to disclose its payments to the U.S. Department of Justice).

The above allegations are insufficient to infer any nefarious intent on the part of Mr. Kistinger. Although Plaintiffs allege that Mr. Kistinger provided assistance to the AUC by approving payments to them, they do not plead any facts as to his "purpose or intent" in doing so, much less that it was to enable the killing and torture of Colombian civilians. As this Court previously explained in dismissing claims against Chiquita arising from violence by the FARC, a conclusory allegation that a defendant made payments to a violent group does not establish that he did so for the specific purpose of enabling violence. *See* MTD Order at 92 ("[T]he Perez

---

[4] *See e.g., Does 1-11* SAC ¶ 27 ("Whenever reference is made in this Complaint to any conduct by a Defendant, such allegations and references shall be construed to mean the conduct of each of the Defendants, acting individually, jointly, and severally.").

3

Plaintiffs fail to allege that Chiquita paid the FARC with the purpose or intent to further the FARC's violence. Plaintiffs conclusorily allege that Chiquita supported the FARC, but fail to allege Chiquita's intent, if any, in doing so.").

At most, Plaintiffs' allegations suggest that Mr. Kistinger provided "knowing assistance" to the AUC, but as the Court has made clear, this is insufficient to establish the *mens rea* required for a secondary liability claim under the TVPA. *See* Joint Br. at 29. In contrast to those cases in which courts have found the *mens rea* standard to be satisfied (*see* Joint Br. at 30), Plaintiffs do not allege that Mr. Kistinger requested or directed that the AUC kill and torture civilians in Colombia's banana-growing regions — in fact, they do not allege that he requested or directed that the AUC do *anything* — or that he indicated his desire to benefit from such violent acts.

The additional allegations that Mr. Kistinger continued to authorize payments to the AUC after he purportedly discovered that they were unlawful and after Chiquita disclosed the payments to the Department of Justice (*Does 1-11* SAC ¶¶ 20, 118) also fail to satisfy the applicable *mens rea* standard. Even if it were true that Mr. Kistinger was willing to approve unlawful payments, that says nothing about *why* he was willing to do so, much less that it was for the specific purpose of enabling the killing and torture of Colombian civilians. In analogous cases, courts have rejected allegations of unlawful or dishonest conduct as insufficient to show that the conduct was motivated by a specific intent to facilitate international law violations. *See Shan v. China Constr. Bank Corp.*, 421 F. App'x 89, 94 (2d Cir. 2011) (defendant's alleged falsification of evidence to induce plaintiff's arrest, while fraudulent and improper, was consistent with motives other than subjecting the plaintiff to human rights violations, such as preventing the plaintiff from exposing the defendant's illegal activities); *Abecassis v. Wyatt*, 704

4

F. Supp. 2d 623, 655 (S.D. Tex. 2010) (defendants' unlawful transaction of business with Saddam Hussein regime, for which they had pled guilty, did not support the inference that they intended to assist the Hussein regime in sponsoring terrorist attacks).

Even if the Court were to construe Plaintiffs' allegations regarding Mr. Kistinger's conduct as "consistent" with the theory that he specifically wanted the AUC to kill and torture Colombian civilians, this would still be insufficient to state a plausible claim for relief because the allegations are equally consistent with an "alternative explanation" — that Mr. Kistinger was willing to approve payments to the AUC because of the clear threat of violence that it posed to Chiquita's Colombian employees.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 680-82 (2009)  (although allegations were "consistent with" plaintiffs' theory that defendants' conduct was motivated by a discriminatory purpose, they failed to state a claim because they were also consistent with an "obvious alternative explanation" for defendants' behavior); *see also Mamani v. Berzain*, 654 F.3d 1148 (11th Cir. 2011) (assuming plaintiffs' allegations that Bolivian defense minister directed military personnel to fire weapons at civilian protesters did not establish that resulting deaths were "undertaken with studied consideration and purpose," given the potential "alternative explanation" that the specific deaths at issue were accidental); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (in determining whether plaintiffs have stated a claim "courts may infer from the factual allegations in the complaint 'obvious alternative explanations,' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer").  Indeed, "[w]hen faced with two possible explanations, only one of which can be true and only one of which results in liability, plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation.  Something more is needed, such as facts tending to exclude the

5

possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996-97 (9th Cir. 2014) (internal citations, quotation marks, and alterations omitted). Plaintiffs here have pled no facts that exclude the alternative explanation that Mr. Kistinger's alleged involvement in payments to the AUC was driven by a fear of violent retribution.[5]

### B. Plaintiffs' Aiding and Abetting Claims Must Also Be Dismissed Because They Do Not Allege That Mr. Kistinger Provided "Substantial Assistance" to the AUC.

To state a claim for aiding and abetting under the TVPA, Plaintiffs must allege that Mr. Kistinger provided "practical assistance" that had a "substantial effect on the perpetration of the crime." *See* MTD Order at 65. As the Court has already held, to meet this standard, Plaintiffs must allege, at a minimum, that Mr. Kistinger provided "additional assistance beyond financing" or that the financing was "gratuitous or unrelated to any commercial purpose." *Id.* at 77. Although the Court found that Plaintiffs had alleged such facts as to Chiquita, it did so based on allegations that Chiquita (1) "facilitated arms shipments for the AUC, including AK-47 rifles and ammunition used by AUC units carrying out attacks in Uraba," a banana-growing region where many of the acts of violence were alleged to occur, and (2) made payments to the AUC that "were not for ordinary commercial purposes, but were specifically intended to assist the AUC's military campaign against the FARC." *Id.* at 77-78.

Here, Plaintiffs have not alleged a single fact suggesting that Mr. Kistinger provided any assistance to the AUC "beyond financing." They do not suggest that he even knew about

---

[5] The *Does 1-144* Plaintiffs' vague allegation that Mr. Kistinger "initially viewed the AUC as the 'good guys'" (¶ 2039) does not clear this hurdle. Even if true, it does not suggest that Mr. Kistinger continued to believe that AUC paramilitaries were "good guys" *after* Chiquita was forced to make payments to them, and it does not suggest that Mr. Kistinger's alleged approval of payments was specifically motivated by the desire to have the AUC kill and torture Colombian civilians.

6

Chiquita's alleged arms shipments, much less that he was involved in them in any way. Plaintiffs also do not allege that Mr. Kistinger's alleged assistance in approving payments to the AUC was "specifically intended to assist the AUC's military campaign against the FARC." Indeed, as explained in Section I.A above, Plaintiffs fail to allege *any* facts regarding Mr. Kistinger's supposed intent or purpose in approving payments to the AUC.

Furthermore, even if the provision of financing could, by itself, support a finding of substantial assistance, Plaintiffs' allegations do not suggest that Mr. Kistinger's particular role in that financing had a "*substantial* effect on the perpetration of the crime." Although both complaints allege that Mr. Kistinger reviewed, authorized, or approved Chiquita's payments to the AUC (*Does 1-144* TAC ¶ 2039; *Does 1-11* SAC ¶¶ 20, 86, 118), they do not plausibly suggest that his particular review, authorization, or approval of payments was necessary or sufficient to effect any payments to the those groups. Indeed, both complaints identify numerous other individuals who also allegedly approved the payments,[6] suggesting that Mr. Kistinger's actions were superfluous and did not, in and of themselves, have a "substantial effect" on the perpetration of the crimes.

### C. Plaintiffs' Conspiracy Claims Must Also Be Dismissed Because They Do Not Allege That Mr. Kistinger Entered into Any Agreement with the AUC.

To state a claim for conspiracy under the TVPA, Plaintiffs must allege that Mr. Kistinger entered into an agreement with the AUC to torture and kill Colombian civilians. Joint Br. at 34. The Court found that Plaintiffs' allegations against Chiquita satisfied this element of the claim

---

[6] *See, e.g.*, *Does 1-11* SAC ¶ 86 (stating that Defendants Freidheim, Hills, Olson, Keiser, Tsacalis and "high-ranking officers, director and employees" "reviewed and approved" Chiquita's payments to the AUC); *Does 1-144* TAC ¶¶ 2036-38, 2047-49 (stating that Defendants Freidheim, Hills, Olson, Tsacalis, Warshaw, and Aguirre approved payments to the AUC).

7

because they specified "facts regarding dates, attendees, and discussions of meetings between Chiquita and the AUC, as well as facts regarding the terms of the agreements reached." MTD Order at 80. By contrast, Plaintiffs have not alleged that Mr. Kistinger was involved in *any* meeting with the AUC, much less provided specifics regarding dates, attendees, and the content of such meetings, nor have they alleged any other conduct that would permit an inference that Mr. Kistinger joined a conspiracy. Plaintiffs have not even alleged that Mr. Kistinger had any direct or indirect communications with AUC members. Absent any such allegation, there is no basis to conclude that he individually joined in any "agreement" to torture and kill Colombian civilians.

## **CONCLUSION**

For the aforementioned reasons, and those stated in the Joint Brief, the Court should dismiss the *Does 1-144* and *Does 1-11* plaintiffs' claims against Mr. Kistinger.

Dated: March 9, 2015

Respectfully submitted,

/s/ Michael G. Austin
Michael G. Austin (FBN 457205)
michael.austin@dlapiper.com
Ardith Bronson (FBN 423025)
ardith.bronson@dlapiper.com
DLA PIPER LLP (US)
200 South Biscayne Boulevard
Suite 2500
Miami, FL 33131-5341
Phone: (305) 423-8500
Fax:    (305) 503-9583

*Counsel for Defendants Friedheim and Kistinger*

8

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on this 9th day of March, 2015. I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF, and in accordance with the Court's First Case Management Order ("CMO") and the June 10, 2008 Joint Counsel List filed in accordance with the CMO.

By: /s/ Michael G. Austin
Michael G. Austin