UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-01916-MD-MARRA/JOHNSON

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:

ATS ACTIONS

    07-60821-CIV-MARRA
    08-80421-CIV-MARRA
    08-80465-CIV-MARRA
    08-80508-CIV-MARRA
    10-60573-CIV-MARRA
_____/


**DEFENDANT CYRUS FREIDHEIM'S SUPPLEMENTAL MEMORANDUM IN
SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINTS**

## TABLE OF CONTENTS

**Page(s)**

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

    A.    Plaintiffs Cannot Rely on Conclusory and Collective Allegations to State a Claim. ................................................................................................................ 3

    B.    Plaintiffs' Secondary Liability Claims Must Be Dismissed Because They Do Not Allege That Mr. Freidheim Intended That the AUC Torture and Kill Civilians in Colombia's Banana-Growing Regions. ........................................ 5

    C.    Plaintiffs' Aiding and Abetting Claims Must Also Be Dismissed Because They Do Not Allege That Mr. Freidheim Provided "Substantial Assistance" to the AUC. ......................................................................................... 7

    D.    Plaintiffs' Conspiracy Claims Must Also Be Dismissed Because They Do Not Allege That Mr. Freidheim Entered into an Agreement with the AUC. .......... 9

CONCLUSION ..................................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abecassis v. Wyatt*,
 704 F.Supp.2d 623 (S.D. Tex. 2010) ........................................................................................6

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ..................................................................................................................2

*Shan v. China Constr. Bank Corp.*,
 421 F. App'x 89 (2d Cir. 2011) ................................................................................................7

*W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*,
 287 F. App'x 81 (11th Cir. 2008) .............................................................................................3

## INTRODUCTION

Defendant Cyrus Freidheim submits this brief as a supplement to the Individual Defendants' Joint Consolidated Motion to Dismiss Plaintiffs' Amended Complaints (the "Joint Brief"), to offer individualized details as to why the TVPA claims asserted in four of the five actions in which he is named must be dismissed for failure to plead facts sufficient to state a claim.[1] *See* Joint Br. at 26-34.  Mr. Freidheim also relies on the arguments set forth in the Joint Brief, which he joins in full.

Plaintiffs' allegations against Mr. Freidheim are grossly insufficient to sustain their TVPA claims against him.  Although Mr. Freidheim was at Chiquita for just two years, from 2002 to 2004, the complaints assert claims against him for thousands of injuries that occurred over a 15-year time period based on payments by Chiquita that began at least five years before Mr. Freidheim joined the company.  To support these tenuous claims against Mr. Freidheim, Plaintiffs offer little more than conclusory statements that simply recite the legal elements of their claims, and collective allegations that impermissibly lump Mr. Freidheim into an undifferentiated group of "Defendants" or "High-Ranking Employees."  The few individualized allegations concerning Mr. Freidheim come nowhere close to meeting the elements of Plaintiffs' secondary liability claims under the TVPA, which require a showing that Mr. Freidheim provided "substantial assistance" to the AUC, or entered into an agreement with the AUC, for

---

[1] This memorandum shall refer to Case No. 07-cv-60821 as "*Carrizosa*," to Case No. 08-cv-80421 as "*Does 1-11*," to Case No. 08-cv-80465 as "*Does 1-144*," to Case No. 08-cv-80508 as "*Valencia*," and to Case No. 10-cv-60573 as "*Montes*."

The *Carrizosa* Plaintiffs do not appear to bring any claims under the TVPA.  Although the complaint includes the TVPA as one of twelve sources of law under which all of Plaintiffs' claims arise, none of the individual claims for relief actually invokes the TVPA. *Compare Carrizosa* Third Am. Compl. ("TAC") ¶ 133 *with Carrizosa* TAC ¶¶ 134-75.  To be sure, to the extent the Court finds that the *Carrizosa* Plaintiffs have alleged claims under the TVPA, those claims also should be dismissed for failure to state a claim.  *See infra* at 2, n.2.

1

the specific purpose of killing and torturing of Colombian civilians. Plaintiffs' TVPA claims against Mr. Freidheim must therefore be dismissed under Rule 12(b)(6) for failure to state a claim.

## ARGUMENT

The facts alleged against Mr. Freidheim by the *Does 1-144*, *Does 1-11*, *Montes*, and *Valencia* plaintiffs fall far short of meeting the required standards for secondary liability under the TVPA.[2] To sustain their claims of aiding and abetting and conspiracy, Plaintiffs must plead facts showing that Mr. Freidheim assisted or conspired with the AUC with the "*purpose* or *intent* to facilitate the commission of the specific offenses alleged." Order (June 3, 2011) (D.E. 412) at 67 (hereinafter "MTD Order") (emphasis added).[3] This requires allegations that Mr. Freidheim "intended for the AUC to torture and kill civilians in Colombia's banana-growing regions." *Id*. at 69. In addition, Plaintiffs' aiding and abetting claims require proof that Mr. Freidheim substantially assisted the AUC's commission of the alleged offenses, and their conspiracy claims require proof that Mr. Freidheim entered into an agreement with the AUC to commit the alleged offenses. *See id.* at 68-69.[4]

---

[2] As noted above (*see supra* at 1, n.1), the *Carrizosa* complaint does not cite the TVPA as a source for any of the individual claims for relief that it brings against Mr. Freidheim. To the extent, however, that the Court construes the complaint as stating claims under the TVPA, they also should be dismissed for failure to state a claim. The *Carrizosa* complaint contains a sum total of two paragraphs alleging any facts specific to Mr. Freidheim — one that simply specifies his tenure at Chiquita and one stating that all of Chiquita's actions should be imputed to Mr. Freidheim. *Carrizosa* TAC ¶¶ 28, 31. At no point do the *Carrizosa* Plaintiffs even vaguely allege any individualized facts suggesting that Mr. Freidheim violated the TVPA.

[3] All docket entry citations herein are to the master docket for 08-mdl-01916 unless otherwise indicated.

[4] Plaintiffs also appear to assert an "agency" theory of secondary liability. *See Valencia* Third Am. Compl. ("TAC") ¶ 14; *Montes* Third Am. Compl. ("TAC") ¶ 1621; *Does 1-144* Third Am. Compl. ("TAC") ¶ 2233-39; *Does 1-11* Second Am. Compl. ("SAC") ¶¶ 27-28. The Court dismissed such claims against Chiquita because Plaintiffs failed to allege that Chiquita exercised control over the AUC. *See* MTD Order at 82. Plaintiffs' agency claims against Mr. Freidheim (continued…)

2

### A. Plaintiffs Cannot Rely on Conclusory and Collective Allegations to State a Claim.

The relevant pleading standard for Plaintiffs' TVPA claims is detailed in the Joint Brief, but two points bear particular emphasis here. First, to state a plausible claim for relief, Plaintiffs cannot rely on "legal conclusions," "formulaic recitation of the elements of a cause of action," or "naked assertions devoid of any further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations, alterations omitted); *see generally* Joint Br. at 26-27. Second, "[i]n a case with multiple defendants, the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008); *see generally* Joint Br. at 27.

Several of the allegations in Plaintiffs' amended complaints that arguably refer to Mr. Freidheim are conclusory, collective, or both, and are not entitled to any assumption of truth in determining whether Plaintiffs have adequately pled a claim against Mr. Freidheim. Most egregiously, three of the complaints attempt to skirt their obligation to plead specific, individualized facts by simply declaring that a reference to any one defendant — including Chiquita, a multinational corporation that employs thousands of people — shall be construed as a reference to every other defendant, including Mr. Freidheim.[5] Of the few allegations that

---

must be dismissed for the same reason, as they have not alleged any facts suggesting that Mr. Freidheim exercised any greater degree of control over the AUC than Chiquita did.

[5] *See Valencia* TAC ¶ 14 ("Whenever reference is made in this complaint to conduct by a defendant, such allegations and references shall be construed to mean the conduct of each of the defendants acting individually, jointly and severally."); *Does 1-11* SAC ¶ 27 (same); *Montes* TAC ¶ 1622 ("Whenever and wherever reference is made in this Complaint to any conduct committed by Chiquita such allegations and references shall also be deemed to mean the conduct of Chiquita, Banadex, Freidheim, Lindner, the Does and Doe Corporations, and any individual or entity acting in the United States and Colombia for their benefit. Therefore, for purposes of this Complaint, the term "Chiquita" shall refer to Chiquita Brands International, Inc., Banadex. (continued…)

3

specifically reference Mr. Freidheim, the vast majority simply group his conduct with that of Chiquita and the other defendants, make broad conclusory assertions unsupported by specific facts, or both.[6]

These strained efforts to manufacture claims against Mr. Freidheim by imputing to him the conduct of every other defendant and "high-ranking employee" are absurd on their face. If taken seriously, Plaintiffs' allegations would suggest that Mr. Freidheim personally took every action that is attributed to Chiquita over a period of nearly two decades — even though Plaintiffs concede that Mr. Freidheim's tenure at Chiquita lasted for just two years. *Compare, e.g.*, *Montes* TAC ¶ 1617 (noting that Freidheim was an officer and director of Chiquita from 2002 to 2004), *with id.* ¶ 1769 (alleging that "Chiquita" paid the AUC by check between 1996 and 2002).

Shorn of these conclusory and collective allegations, which are not entitled to any assumption of truth on a motion to dismiss, Plaintiffs' complaints allege remarkably few facts to substantiate Mr. Freidheim's alleged liability for thousands of acts of violence by Colombian paramilitaries. The *Montes* complaint includes just a single paragraph alleging individualized facts as to Mr. Freidheim, and that paragraph simply states his title and tenure at Chiquita and the

---

Freidheim, Lindner, and the Does and Doe Corporations interchangeably, as well as collectively."); *see also Montes* TAC ¶¶ 1620, 1736, 1908-14 (including Mr. Freidheim in a vague group of nameless "High-Ranking Employees" against whom they make various undifferentiated allegations).

[6] *See, e.g.*, *Valencia* TAC ¶ 14 ("[a]t all times herein material, with respect to the events at issue, CBI, Banadex, Moe Corporations 1-5 and Moes 6-25, Cyrus Freidheim, and Keith Lindner conspired with each other and/or participated in a joint criminal enterprise with each other, and/or acted in concert . . . ."); *Montes* TAC ¶ 1621 ("At all times relevant to the allegations of this Complaint, Chiquita, Banadex, Freidheim, Lindner, Does 1-20, and Doe Corporations 21-25 conspired with each other, and/or participated in a joint criminal enterprise with each other, and/or acted in concert, and/or aided or abetted each other's actions, and/or were in an agency or alter ego or joint venture relationship, and were acting within the course and scope of such conspiracy, joint criminal enterprise, concerted activity, aiding and abetting, and/or agency or alter ego or joint venture relationship."), ¶¶ 1908-26 (series of conclusory, undifferentiated allegations against "Freidheim, Lindner, and the other High-Ranking Employees").

fact that he owns a residence in Florida. *Montes* TAC ¶ 1618. This is clearly insufficient to state a claim for relief under the TVPA, and the *Montes* claims must therefore be dismissed.

The other three complaints include only a handful of individualized factual allegations, which assert that Mr. Freidheim (1) "reviewed," "approved," and "authorize[d]" payments to the AUC, including "after the designation of the AUC as a [Foreign Terrorist Organization]," (*Valencia* TAC ¶¶ 73, 77; *Does 1-144* TAC ¶ 2036), (2) "knew . . . that the AUC was a violent, paramilitary organization led by Carlos Castaño" (*Valencia* TAC ¶ 73), (3) was reportedly of the opinion to "just let them sue us" when the topic of Chiquita's payments to the AUC was raised (*Does 1-11* SAC ¶ 118; *Does 1-144* TAC ¶ 2036), and (4) was present at a meeting where the results of an in-house investigation into the payments were presented (*Does 1-11* SAC ¶ 88). As discussed below, such allegations fall far short of meeting the applicable standards for secondary liability under the TVPA.

> **B.  Plaintiffs' Secondary Liability Claims Must Be Dismissed Because They Do Not Allege That Mr. Freidheim Intended That the AUC Torture and Kill Civilians in Colombia's Banana-Growing Regions.**

As noted above, the *Montes* complaint includes no individualized factual allegations beyond Mr. Freidheim's title and tenure at Chiquita. The only potentially wrongful conduct suggested by the other three plaintiff groups' complaints are that Mr. Freidheim approved payments to the AUC. Presumably, this alleged conduct was limited to the brief two-year period during which Mr. Freidheim was with Chiquita — a tenure that began several years after Chiquita's alleged payments to the AUC began.

In any event, even assuming these allegations to be true, nowhere do Plaintiffs allege any facts suggesting *why* Mr. Freidheim allegedly approved the payments, much less that he did so because he had the "purpose or intent" of supporting the AUC's violence against Colombian civilians. As this Court previously explained in dismissing claims against Chiquita arising from

5

violence by the FARC, a conclusory allegation that a defendant made payments to a violent group does not establish that he did so for the specific purpose of causing violence.  *See* MTD Order at 92 ("[T]he Perez Plaintiffs fail to allege that Chiquita paid the FARC with the purpose or intent to further the FARC's violence.  Plaintiffs conclusorily allege that Chiquita supported the FARC, but fail to allege Chiquita's intent, if any, in doing so.").  In contrast to those cases in which courts have found the *mens rea* standard to be satisfied (*see* Joint Br. at 32-33), Plaintiffs do not allege that Mr. Freidheim requested or directed that the AUC kill and torture civilians in Colombia's banana-growing regions — in fact, they do not allege that he requested or directed that the AUC do *anything* — or that he indicated his desire to benefit from such violent acts.

Plaintiffs' additional allegation that Mr. Freidheim knew that the AUC was a violent organization does not rescue Plaintiffs' claims because, even if true, it suggests only that Mr. Freidheim provided "knowing assistance" to the AUC — *i.e.*, that he provided assistance to the AUC with the knowledge that such assistance would facilitate the violent acts set forth in the complaints.  As this Court has made clear, allegations of "knowing assistance" are insufficient to establish the *mens rea* required for a secondary liability claim under the TVPA.  *See* Joint Br. at 29-33.  Plaintiffs must allege not only that the defendant knew that the AUC would commit the violent acts that give rise to their claims, but that the defendant's actions were *specifically intended* to bring about that result — namely, the killing and torturing of civilians in Colombia's banana-growing regions.  *See id*. at 30-31.

Mr. Freidheim's alleged statement that Chiquita should "just let them sue us" with respect to the payments also fails to establish the requisite intent.  *See Does 1-144* TAC ¶¶ 2036, 2205; *Does 1-11* SAC ¶ 118.  Even if Mr. Freidheim made this vague statement, his willingness to risk a legal action by some unspecified party against the company for its payments to the AUC

6

does not remotely suggest that he wanted the AUC to kill and torture civilians in Colombia's banana-growing regions. Indeed, courts have rejected the notion that allegations that a defendant engaged in knowingly unlawful or dishonest conduct are sufficient to show that the defendant's conduct was motivated by a specific intent to facilitate international law violations. *See Shan v. China Constr. Bank Corp.*, 421 F. App'x 89, 94 (2d Cir. 2011) (defendant's alleged falsification of evidence to induce plaintiff's arrest, while fraudulent and improper, was consistent with motives other than subjecting the plaintiff to human rights violations, such as preventing the plaintiff from exposing the defendant's illegal activities); *Abecassis v. Wyatt*, 704 F. Supp. 2d 623, 655 (S.D. Tex. 2010) (defendants' unlawful transaction of business with Saddam Hussein regime, for which they had pled guilty, did not support inference that they intended to assist the Hussein regime in sponsoring terrorist attacks).

Finally, the allegation that Mr. Freidheim attended a meeting where the results of an in-house investigation into the payments were presented (*Does 1-11* SAC ¶ 88) is clearly insufficient to support any inference of nefarious intent. Indeed, the fact that Mr. Freidheim had to learn about the payments to the AUC through an in-house investigation confirms his very limited involvement in those payments.

### C. Plaintiffs' Aiding and Abetting Claims Must Also Be Dismissed Because They Do Not Allege That Mr. Freidheim Provided "Substantial Assistance" to the AUC.

To state a claim for aiding and abetting under the TVPA, Plaintiffs must allege that Mr. Freidheim provided "practical assistance" that had a "substantial effect on the perpetration of the crime." *See* MTD Order at 65. As a threshold matter, given Plaintiffs' concession that Mr. Freidheim did not join Chiquita until March 2002, any assistance that he provided by approving payments to the AUC could not have possibly had a "practical" and "substantial" effect on the perpetration of any violent act that occurred prior to March 2002.

With respect to claims arising from injuries occurring in 2002 or thereafter, as the Court has already held, Plaintiffs must allege at a minimum that Mr. Freidheim provided "additional assistance beyond financing" or that any financing he provided was "gratuitous or unrelated to any commercial purpose." MTD Order at 77. Although the Court found that Plaintiffs had alleged such facts as to Chiquita, it did so based on allegations that Chiquita (1) "facilitated arms shipments for the AUC, including AK-47 rifles and ammunition used by AUC units carrying out attacks in Uraba," a banana-growing region where many of the acts of violence were alleged to occur, and (2) "paid the AUC nearly every month for approximately seven years," resulting in total payments of "over $1.7 million" that "were not for ordinary commercial purposes, but were specifically intended to assist the AUC's military campaign against the FARC." *Id.* at 77-78.

Here, Plaintiffs have not alleged a single fact suggesting that Mr. Freidheim provided any assistance to the AUC "beyond financing." They do not suggest that he even knew about Chiquita's alleged arms shipments, much less that he was involved in them in any way. Plaintiffs also do not allege that Mr. Freidheim's alleged assistance in approving payments to the AUC over a limited period of time was "specifically intended to assist the AUC's military campaign against the FARC." Indeed, as explained in Section I.B, Plaintiffs fail to allege *any* facts regarding Mr. Freidheim's supposed intent or purpose in approving payments to the AUC.

Furthermore, even if the provision of financing could, by itself, support a finding of substantial assistance, Plaintiffs' allegations do not suggest that Mr. Freidheim's particular role in that financing had a "*substantial* effect on the perpetration of the crime." Although the *Does 1-144*, *Valencia*, and *Does 1-11* complaints allege that Mr. Freidheim reviewed, authorized, or approved Chiquita's payments to the AUC (*Does 1-144* TAC ¶ 2036; *Valencia* TAC ¶¶ 73, 77; *Does 1-11* SAC ¶ 17), they do not plausibly suggest that Mr. Freidheim's particular review,

8

authorization, or approval of payments was necessary or sufficient to effect any payments to the AUC. Indeed, all of the complaints identify numerous other individuals who also allegedly "approved" and "authorized" the payments,[7] suggesting that Mr. Freidheim's alleged actions were superfluous and did not, in and of themselves, have a "substantial effect" on the perpetration of the crimes.

### D. Plaintiffs' Conspiracy Claims Must Also Be Dismissed Because They Do Not Allege That Mr. Freidheim Entered into an Agreement with the AUC.

To state a claim for conspiracy under the TVPA, Plaintiffs must allege that Mr. Freidheim entered into an agreement with the AUC to torture and kill Colombian civilians. Joint Br. at 34. The Court found that Plaintiffs' allegations against Chiquita satisfied this element of the claim because they specified "facts regarding dates, attendees, and discussions of meetings between Chiquita and the AUC, as well as facts regarding the terms of the agreements reached." MTD Order at 80. By contrast, Plaintiffs have not alleged that Mr. Freidheim was involved in *any* meeting with the AUC, much less provided specifics regarding dates, attendees, and content of such meetings. Plaintiffs have not even alleged that Mr. Freidheim had any direct or indirect communications with AUC members. Absent any such allegation, there is no basis to conclude that he individually joined in any "agreement" to torture and kill Colombian civilians, and Plaintiffs' conspiracy claim under the TVPA must be dismissed for failure to state a claim.

---

[7] *See, e.g., Does 1-11* SAC ¶ 86 (stating that Defendants Freidheim, Hills, Olson, Keiser, Tsacalis and "high-ranking officers, director and employees" "reviewed and approved" Chiquita's payments to the AUC); *Does 1-144* TAC ¶¶ 2036-38, 2047-49 (stating that Defendants Freidheim, Hills, Olson, Tsacalis, Warshaw, and Aguirre approved payments to the AUC); *Valencia* ¶ TAC 73 (stating that "senior executives" of Chiquita, "including high-ranking officers, directors, and employees" "reviewed and approved" Chiquita's payments to the AUC); *Montes* TAC ¶ 1768 (same).

## **CONCLUSION**

For the aforementioned reasons, and those stated in the Joint Brief, the Court should dismiss Plaintiffs' claims against Mr. Freidheim.

Dated: March 9, 2015　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　/s/ Michael G. Austin
　　　　　　　　　　　　　　　　　　　　　　Michael G. Austin (FBN 457205)
　　　　　　　　　　　　　　　　　　　　　　michael.austin@dlapiper.com
　　　　　　　　　　　　　　　　　　　　　　Ardith Bronson (FBN 423025)
　　　　　　　　　　　　　　　　　　　　　　ardith.bronson@dlapiper.com
　　　　　　　　　　　　　　　　　　　　　　DLA PIPER LLP (US)
　　　　　　　　　　　　　　　　　　　　　　200 South Biscayne Boulevard
　　　　　　　　　　　　　　　　　　　　　　Suite 2500
　　　　　　　　　　　　　　　　　　　　　　Miami, FL 33131-5341
　　　　　　　　　　　　　　　　　　　　　　Phone: (305) 423-8500
　　　　　　　　　　　　　　　　　　　　　　Fax: (305) 503-9583

　　　　　　　　　　　　　　　　　　　　　　*Counsel for Defendants Friedheim and Kistinger*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on this 9th day of March, 2015.  I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF, and in accordance with the Court's First Case Management Order ("CMO") and the June 10, 2008 Joint Counsel List filed in accordance with the CMO.

                              By:  /s/ Michael G. Austin
                                     Michael G. Austin