UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-01916-MD-MARRA

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

THIS DOCUMENT RELATES TO:

ATS ACTIONS
_____/

NO. 08-80421-CV-MARRA

JOHN DOE 1 *et al*.,
v.
CHIQUITA BRANDS INTERNATIONAL, INC., *et al*.,
_____/

No. 08-80508-CV-MARRA

JOSE LEONARDO LOPEZ VALENCIA, *et al.,*
v.
CHIQUITA BRANDS   INTERNATIONAL, INC., *et al.,*
_____/

07-60821-CV-MARRA

ANTONIO GONZALEZ CARRIZOSA, *et al.,*
v.
CHIQUITA BRANDS INTERNATIONAL, INC., *et al.,*
_____/

**ORDER GRANTING PLAINTIFFS' EMERGENCY MOTION FOR LEAVE TO TAKE
DEPOSITIONS TO PERPETUATE TESTIMONY OF ROLDAN PEREZ, MANGONES
LUGO AND RENDON HERRERA & GRANTING CORRESPONDING MOTION FOR
ISSUANCE OF REQUESTS FOR JUDICIAL ASSISTANCE TO THE REPUBLIC OF
COLUMBIA PURSUANT TO THE HAGUE EVIDENCE CONVENTION  [DE 688]
and
ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO TAKE DEPOSIITON
TO PERPETUATE TESTIMONY OF CYRUS FREIDHEIM JR. [DE 687]**

1

This matter is before the Court on the plaintiffs' motion to perpetuate the testimony of Cyrus Freidheim, Jr., former CEO and Chairman of the Board of Directors of Chiquita Brand International, Inc., based on the advanced age and importance of the witness [DE 687]. Also before the Court is plaintiffs' emergency motion to take preservation depositions of paramilitary witnesses identified as former commanders in the United Self-Defense Committees of Columbia (Autodefensas Unidas de Colombia) ("AUC"), the alliance of right-wing, government-aligned paramilitary units that allegedly killed the plaintiffs' family members, based on the importance of the witnesses and fear that they will abscond upon their imminent release from prison before they can be served with compulsory process to appear [DE 688].

The latter motion includes an application for issuance of Letters of Request to the Republic of Columbia to take the depositions of the three paramilitary witnesses --- Roldan Perez, Mangones Lugo and Rendon Herrera-- pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters, 23 U.S.T. 2555 ("Hague Evidence Convention") [DE 688]. Plaintiffs indicate they are seeking the voluntary cooperation of these witnesses to give testimony, and are advised by the U.S. State Department that, if the witnesses agree, plaintiffs will be able to conduct the depositions in Columbia without the assistance or participation of any Columbian state official [DE 688-1]. However, plaintiffs are concerned the witnesses may be released from prison in Columbia where they are currently confined and disappear before this is accomplished; therefore, in an "abundance of caution," plaintiffs move the Court to issue Requests for Judicial Assistance to the Republic of Columbia pursuant to the Hague Evidence Convention as "the proper means to request Columbia to exercise its compulsory jurisdiction in order to perpetuate their testimony in this case."

Given the current procedural posture of the case, the Court construes both submissions as motions for expedited discovery under Rule 26 (d) (1), Federal Rules of Civil Procedure.

**Background**

The plaintiffs, Columbian nationals and family members of banana-plantation workers, trade unionists, political organizers, social activists and other civilians killed by terrorists in Columbia during the 1990s through 2004– including members of the Autodefensas Unidas de Colombia ("AUC") paramilitary organization – brought this action against defendants Chiquita Brand International, Inc. and Chiquita Fresh North America, LLC (cumulatively "Chiquita") alleging that Chiquita funded, armed and otherwise supported the AUC in order to produce bananas in an environment free from labor opposition and social disturbances, knowing the AUC to be a violent terrorist organization, in violation of Colombian law, U.S. law and international law prohibiting crimes against humanity, extrajudicial killing, torture, war crimes and other abuses. [1]

Following the Court's resolution of Chiquita's earlier motion to dismiss, and the subsequent opinion and mandate of the Eleventh Circuit Court of Appeals in its interlocutory review of that order, the only claims remaining against Chiquita in the nine groups of Alien Tort Statute ("ATS") actions consolidated in this MDL proceeding are tort claims under Columbian law asserted under the Court's diversity jurisdiction. These claims are currently the subject of Chiquita's recently filed motion to dismiss based on *forum non conveniens* (all claims) and

---

[1] Specifically, Plaintiffs alleged claims under what is known as the Alien Tort Statute (ATS) or Alien Tort Claims Act (ATCA), 28 U.S.C. §1350 and the Torture Victim Protection Act (TVPA), 28 U.S.C. § 1350 note, 28 U.S.C. § 1350. They also alleged tort claims under the state laws of New Jersey, Ohio, Florida and the District of Columbia, as well as the foreign law of Colombia, for assault and battery, wrongful death, intentional infliction of emotional distress, negligent infliction of emotional distress, negligence, negligent hiring, negligence per se and loss of consortium.

statute of limitation grounds  (New York and District of Columbia cases only) [DE 741; Case No. 08-MD-01916].

In addition to the Columbian law claims remaining against Chiquita, the plaintiffs' most recently amended complaints in five of the nine ATS actions include claims under the ATS, Torture Victims Protection Act (TVPA), state common law, and Colombian law against nine current or former Chiquita directors, officers or employees allegedly involved in Chiquita's decision to fund the AUC  (Cyrus Freidheim,[2] Roderick Hills,[3] Steven Warshaw, Fernando Aguirre, Keith Lindner,  Charles Keiser,  Robert Olson,  William Tsacaslis and  Robert Kistinger).[4]  These claims are also the subject of a pending (consolidated) motion to dismiss under Rule 12(b) (6) [DE 735], supported by individual supplements to the motion [DE 731-733, 736-740].

At the outset of this litigation, and by agreement of the parties, the Court suspended all discovery  until resolution of the defendants' motions to dismiss the plaintiffs' initial complaints [DE 66]. The Court ruled on Chiquita's initial motions to dismiss in June 2011 and March 2012, and later certified its rulings to the Eleventh Circuit Court of Appeals for interlocutory review. After the Eleventh Circuit granted Chiquita's petition for review, this Court entered a general stay of all proceedings until conclusion of the interlocutory appeal.  The general stay order tolled the defendants' obligation to respond to plaintiffs' last-amended complaints until sixty days after the Eleventh Circuit completed its  review, and reserved the plaintiffs' right to seek a

---

[2] Cyrus Fredheim was chairman of the Board of Directors of Chiquita from March 2002 through May 2004 and the CEO of Chiquita from March 2002 until January 2004.
[3] Roderick Hills,  former Chiquita director, passed away at age 82 in October, 2014.
[4] The *Valencia*, *Montes*, and *Carrizosa* complaints [Case Nos. 08-80508; 10-60573; 07-60821 respectively] name only two individual defendants, Cyrus Fredheim and Keith Linder, asserting claims against these individuals under the ATS, TVPA state common law and Columbian law. The *Does 1-11* complaint [Case 08-80421] asserts claims under the ATS, TVPA, state common law and Columbian law against six of these individuals (Fredheim, Hills, Keiser, Kistinger, Olson and Tsacalis).  The *Does 1-144* complaint [Case No. 08-80465] asserts claims under the ATS, TVPA, state tort law and Colombian law against eight of these individuals (Aguirre, Fredheim, Hills, Keiser, Kistinger, Olson, Tsacalis and Warshaw).

lift of the stay for purpose of preserving testimony upon showing of a reasonable basis to believe that relevant and material testimony might be lost if not taken during the period of stay.

The general stay remained in effect until January 6, 2015, when the Eleventh Circuit issued its mandate dismissing all of the ATS and TVPA claims against Chiquita [DE 693]. Three of the nine ATS plaintiffs' groups have since filed the instant discovery motions seeking, first, to perpetuate the discovery of Cyrus Freidheim -- a former Chiquita executive who allegedly made or participated in the decision of Chiquita to make secret payments to the AUC – and second, to perpetuate the testimony of three high-level commanders in the AUC alleged to have direct knowledge of Chiquita's financial support of the AUC or the murder and torture allegations, or both.

Under the terms of the Court's original Case Management Order [DE 141], the stay on discovery remains in place until resolution of Chiquita's newly-filed motion to dismiss the Columbian tort claims on *forum non conveniens* grounds, and the individual defendants newly-filed motions to dismiss the plaintiffs' common law, Columbian law and statutory claims under the ATS and TVPA for failure to state a claim under Rule 12 (b) (6) [DE 735, 741]. Due to the pendency of these motions, there has been no Rule 26(f) conference. That is, because this case remains in the early pleading stages, with a discovery stay in effect pending disposition of the defendants' recently filed motions to dismiss, the parties have not met and conferred.

## II. Discussion

### A. Request to Perpetuate Testimony

Under Rule 26 (d) (1), a party may not seek discovery from any source before the parties have met and conferred as required by Rule 26 (f), Fed. R. Civ. P. The rule is subject to certain exceptions, including a court order permitting discovery. The Court accordingly treats the

plaintiff's motions to perpetuate the testimony of Cyrus Freidman and the three above-named AUC members as requests to proceed with expedited discovery under Rule 26 (d) (1).

Although the Federal Rules do not provide a standard for the court to use in exercising its authority to order expedited discovery under Rule 26 (d), courts have generally adopted one of two approaches in determining a party's entitlement to such discovery:  (1) the preliminary injunction-style analysis set out in *Notaro v. Koch*, 95 F.R.D. 403 (S.D.N.Y. 1982) or  (2) a general "good cause" or  "reasonableness" standard which allows expedited discovery when the need for it outweighs the prejudice to the responding party.  *See e.g. Edgenet, Inc. v. Home Depot USA, Inc*., 259 F.R.D. 385 (E.D. Wis. 2009).

The *Notaro* approach is the more rigid of the two, and requires consideration of a set of four factors similar to the analysis used to justify a decision to grant a preliminary injunction, i.e. the existence of: (1) irreparable injury; (2) some probability of success on the merits; (3) some connection between the expedited discovery and avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery is greater than the injury a  party will suffer if the expedited relief is granted.  *See Edgenet*, 259 F.R.D. at 386, citing *Notaro*, 95 F.R.D. at 405.

In contrast, under the more general "good cause" standard, which  has been adopted by an "increasing majority" of district courts confronted with the issue,  *St. Louis Group, Inc. v. Metals and Additives Corp*, 275 F.R.D. 236, 239  (S.D. Tex. 2011),  citing *Merrill Lynch, Pierce Fenner & Smith, Inc. v. O' Connor*, 194 F.R.D. 618 (N.D. Ill. 2000); *Semitool Inc. v. Tokyo Electron Am., Inc*., 208 F.R.D. 273 (N.D. Cal 2002): *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005); *Dimension Data  North America v. NetStar-1, Inc.,*  226 F.R.D. 528,  530 (E.D. N.C.  2005), a court must examine the expedited discovery request "on the entirety of the

record to date and the reasonableness of the request in light of all the surrounding circumstances." *Ayyash*, 233 F.R.D. at 327. Good cause may be found "where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *Energy Prod. Corp. v. Northfield Ins. Co.,* 2010 WL 3184232 at *3 (E.D. La. 2010). Good cause has been found, for example, where there is a showing of irreparable harm that can be addressed by limited, expedited discovery, *JP Morgan Chase Bank N.A. v. Reijtenbagh*, 615 F. Supp. 2d 278 (S.D.N.Y. 2009); *Ayyash,* 233 F.R.D. at 326-27; where failing to allow expedited discovery would substantially impact the progress of the case on the court's docket, *Sheridan v. Oak St. Mortgage, LLC*, 244 F.R.D. 520, 522 (E.D. Wis. 2007), or where there is a need to preserve evidence that may be destroyed before it can be obtained by ordinary discovery. *Monsanto Co. v. Woods*, 250 F.R.D. 411, 413 (E.D. Mo. 2008).

Under the general reasonableness approach, the party requesting expedited discovery has the burden of showing the existence of good cause, and that the need for the discovery outweighs any prejudice to the opposing party. *See e.g. Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005); *Semitool*, *Inc. v. Tokyo Electron America, Inc*., 208 F.R.D. 273, 275 (N.D. Cal. 2002). In assessing good cause, the court should also consider whether the subject matter of the request is narrowly tailored in scope.

The Eleventh Circuit Court of Appeals has not adopted a standard for allowing expedited discovery. Noting that several district courts within the Eleventh Circuit have expressly used a general "good cause" standard when confronted with requests for expedited discovery, *see e.g. Tracfone Wireless, Inc. v. Holden Property Services, LLC*, 299 F.R.D. 692 (S. D. Fla. 2014); *United States v. Gachette*, 2014 WL 5518669 (M.D. Fla. 2014); *Dell Inc. v. Belgiumdomains, LLC*, 2007 WL 6862341 (S.D. Fla. 2007), and that other courts have criticized the *Notaro*

7

preliminary injunction-style analysis as inconsistent with Rule 26(d), which requires the Court to consider, among other things, "the interests of justice," as well as the overarching mandate of Rule 1, which requires that the rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action," *Semitool,* 208 F.R.D. at 275 -276; *OMG Fidelity Inc. v. Sirious Technologies, Inc.*, 239 FRD 300 (N.D.N.Y 2006); *Merrill Lynch*, 194 F.R.D. at 624; *Ayyash*, 233 F.R.D. at 326, this court declines to follow *Notaro* and instead applies the conventional standard of "good cause" in evaluating plaintiffs' request for expedited discovery.

Having done so, the court finds, first, as to plaintiffs' request to perpetuate the deposition testimony of the three paramilitary witnesses, that good cause is shown. Plaintiffs have made a strong showing that the proposed deponents are individuals with both the incentive and capacity to disappear after their release from Columbian prison. As to Roldan Perez, identified as the chief of security for the Castano family that ran the AUC, and who previously testified to having direct knowledge of the financial arrangements between Chiquita and the AUC, plaintiffs show that he has confessed to the murder of Carlos Castano Gil, former chief of the AUC, and therefore has a strong incentive to go underground after he is released from prison to avoid retaliation from Castano supporters. To illustrate the reality of this prisoner's incentive to abscond, plaintiffs show that since demobilization of the AUC in 2007, approximately 1,600 Colombian paramilitary persons have been murdered, while countless others have simply disappeared from public view.

As to Rendon Herrera, identified as the commander of the Elmer Cardenas Bloc of the AUC, and who previously testified in Columbian judicial proceedings that Chiquita payments to the AUC directly benefited his unit, plaintiffs show that Herrera was the earlier subject of an

extradition request from the United States, which was denied based on a determination by Columbian authorities that his crimes against the Republic of Columbia were more serious than his crimes against the United States. Plaintiffs allege that Herrera has strong incentive to abscond upon his release from prison either to avoid the possibility of extradition to the United States, or re-arrest, investigation and punishment by Columbian authorities on the same drug trafficking charges he would have faced in the United States under its original extradition request.

Finally, as to Mangones Lugo, identified as the commander of the William Rivas Front of the AUC in Cienaga, a banana-growing region where a number of the alleged murders occurred, and who previously testified in Columbian judicial proceedings regarding his direct knowledge and participation in financial payments for security services provided to Chiquita, plaintiffs show he was a fugitive from justice when he was captured in 2004 on charges of murder, money laundering and document falsification.

With this background, plaintiff demonstrates a reasonable basis to infer that the paramilitary witnesses are likely to become process-averse upon their release from Columbian prison, and the court finds a legitimate urgency to the plaintiff's request to serve compulsory process and immediately depose the witnesses while they are still in the custody of Columbian government and prison authorities. Plaintiffs adequately demonstrate that all three of the proposed deponents have material knowledge regarding the core allegations of the plaintiffs' complaints, and that all three, simply by virtue of their roles as prior AUC commanders -- combined with the individual trigger factors identified above -- have a strong incentive to disappear after they are released from prison, an event which theoretically may occur at any

time after December 2014, although neither party is able to identify the respective release dates with any certitude.

The Court next weighs plaintiffs' demonstrated good cause for the taking of the paramilitary witness depositions against any prejudice to the defendants occasioned by the taking of the depositions at this juncture in the proceedings. On this issue, defendants assert that allowing the depositions to proceed during the pleading stage of the litigation places an undue financial burden on them, theorizing that the cost of preparing for and taking the depositions will be wasted if the court ultimately grants the defendants' newly-filed motions to dismiss. In a related vein, defendants question the legitimacy of representing to Columbian authorities that the testimony of these witnesses is "required" in a proceeding which has not progressed beyond the motion to dismiss phase.

Finally, defendants argue that it is unfair to allow the taking of potential trial testimony from the paramilitary witnesses at this juncture, before defendants have had an opportunity to conduct general discovery on plaintiffs' claims or to investigate the possibility that the witnesses may have been recipients of a witness-payment scheme, in light of allegations which recently surfaced in ATS litigation pending in Alabama against Attorney Terrence Collingsworth, lead counsel for one the plaintiff ATS groups in this proceeding. Specifically, in a defamation case pending in the Northern District of Alabama, *Drummond Co. v. Collingsworth,* No. 11-CV-3695-RDP-TMP (N.D. Ala. 2011), Attorney Collingsworth is charged with making unlawful payments to Colombian paramilitary witnesses who were allegedly involved in numerous murders in Columbia in complicity with Drummond Company, an Alabama-based coal company which retained the AUC to provide security in coal mines operated by a Colombian subsidiary.

Defendants do not present any competent evidence linking any of plaintiffs' counsel in this case to any (non-expert) witness payment activity. However, they do present a redacted memorandum from "T. Collingsworth" to "Chiquita ATS Plaintiffs' Counsel," produced in supplementary discovery proceedings before this division, *Drummond Co. v Collingsworth*, Case No. 14-MC-81189 (S.D. Fla. 2014), [DE 696 Ex. A], entitled "CHIQUITA: Ethics of Paying Witness's Legal Fees." Defendants also supply the affidavit of Attorney Paul Wolf, one of the plaintiffs' attorneys in this proceeding, who avers that he has personally participated in meetings with ATS plaintiffs' counsel in this case during which payments to paramilitary witnesses were discussed [DE 662-4; ¶¶ 19-21, 23-24]

Citing extensively to discovery regarding Mr. Collingsworth's financial entwinement with Columbian paramilitary members which has surfaced in the matter of *Drummond Co. v Collingsworth*, No. 11-CV-3695 (N.D. Ala. 2014), defendants express a concern that members of the prosecution teams for the plaintiffs' groups in the instant litigation may have participated in meetings at which Mr. Collingsworth was present and have been privy to discussions on the ethics of making payments to influence witness testimony in this case. In light of Attorney Collingsworth's embroilment in a witness-for-hire controversy in the Alabama ATS litigation, defendants contend there is a reasonable basis for investigating the possibility of a payment scheme in this case, before preservation deposition testimony is taken from Colombian witnesses who may have been the beneficiary of such a scheme.

In response, Plaintiffs' liaison counsel, John Scarola, has filed an affidavit stating that neither he nor any of his co-counsel in these consolidated ATS proceedings have ever paid money or given anything of value to any witness or potential witness in this case. While Mr. Scarola acknowledges that the subject of paying potential witnesses was discussed at a Chiquita

MDL meeting at which Attorney Paul Wolf was present, he avers that neither he nor any other counsel representing a plaintiff group in this MDL proceeding ever agreed that payments or anything else of value should be paid to any witnesses, or that payments to any fact witness (as opposed to expert witnesses) would ever be appropriate under any circumstances [DE 216].

Given Mr. Collingsworth's participation as ATS counsel in both cases, and in light of uncontested evidence that the issue was at least discussed at a meeting of ATS counsel in this MDL proceeding, along with circulation of the "Chiquita: Ethics of Paying Witness's Legal Fees" memorandum authored by Mr. Collingsworth, the Court agrees that the defendants should be allowed an opportunity to conduct discovery on the witness payment issue, under an accelerated schedule, before the paramilitary witnesses are deposed in this case.

Specifically, the Court shall allow the defendants an opportunity to issue limited written discovery requests (interrogatories and requests to produce) addressing the issue of (non-expert) witness payments, gifts or benefits of any kind or nature in this case, and shall impose an abbreviated briefing schedule for any legal objections that might be lodged to the discovery to permit expedited resolution of the matter well in advance of the scheduled deposition dates. This order shall further be without prejudice for either party to seek leave of court to take a supplemental (second) deposition of any of these witnesses, through voluntary or compulsory process, at a later stage of the litigation, upon motion filed and good cause shown. With this preliminary discovery schedule in place, the defendants will not be unfairly prejudiced by allowing the expedited preservation depositions of the paramilitary witnesses to proceed at this juncture.

In summary, given the limited number of proposed deponents, the potential importance of testimony likely offered by the proposed deponents, and the possibility that plaintiffs might

permanently lose the ability to take the testimony of these witnesses if their appearance is not compelled while they are still in custody of Colombian governmental and security authorities, the court finds "good cause" to support the plaintiffs' request for expedited discovery. At the same time, the court does not find any undue financial burden on the defendants posed by the proposed discovery, nor does it find undue prejudice to defendants' ability to prepare adequately for the depositions.

With regard to the plaintiffs' additional request for the preservation deposition of Cyrus Freidheim, based on his advanced age, the court agrees that the age of a proposed deponent is a highly relevant factor in determining whether there is a sufficient reason to perpetuate testimony, whether the preservation request is made pre-suit under Rule 27, or in conjunction with a post-filing request for expedited discovery under Rule 26 (d). Regardless of specific ailments or physical vulnerabilities, advanced age carries an increased risk that a witness will be unavailable at the time of trial; for this reason, a witness of advanced age may be an appropriate subject for preservation testimony. *See Penn Mutual Life Ins. Co v. United States*, 68 F.3d 1371 (D.C. Cir. 1995) (allowing Rule 27(a) deposition to perpetuate testimony of 80-year old witness whose age "present[ed] a significant risk that he will be unavailable to testify by the time of trial."); *Texaco Inc. v. Borda*, 383 F.2d 607 (3d Cir. 1967) (granting writ of mandamus directing district court to allow Rule 27(a) deposition where "[t] would be ignoring facts of life to say that a 71-year old witness will be available, to give his deposition or testimony, at an undeterminable future date").

In this case, the court views Mr. Freidheim's advanced age (79 years) against the backdrop of this MDL litigation which has been pending since 2008 and -- assuming it ultimately progresses beyond the motion to dismiss and summary judgment stages-- is not likely

13

to advance to trial until calendar year 2017 at the earliest. By that time, the witness will be 81 years old and it would be unduly risky to assume that no limitation of age or intervening infirmity might impede the ability of plaintiff's to take Mr. Freidheim's deposition testimony in the ordinary course before trial.

Thus, in the context of this specific case, the court agrees that the advanced age of Mr. Freidheim is a sufficient basis to support the taking of expedited deposition testimony from him, and shall accordingly grant the plaintiffs' request to take expedited preservation testimony from Mr. Freidheim. Again, the order allowing preservation testimony of Mr. Freidheim, now a party-witness, shall be without prejudice for either party to request a supplemental deposition of the witness in the ordinary course of Rule 26 discovery, upon motion filed and good cause shown.

### B.  Requests for Judicial Assistance

The plaintiffs have also applied for issuance of Letters of Request for the Examination of Witnesses in Columbia pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Evidence Convention"), pursuant to 28 U.S.C. § 1781 (b) (2) and Fed. R. Civ. P. 28 (b) (1) (A) and (B). Plaintiffs contend that resort to Hague Convention procedures is necessary to procure and preserve the testimony of these witnesses in light of the substantial risk that the witnesses will disappear and become permanently unavailable to testify after they are released from prison, an event which may occur at any time without notice to the plaintiffs.

Federal Rule of Civil Procedure 28 (b), governing the taking of depositions in a foreign country, provides that a foreign deposition may be taken "under a letter of request," which the court may issue "on appropriate terms after an application and notice of it." A letter of request is simply a "request by a domestic court to a foreign court to take evidence from a certain witness."

*Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 n. 1, 124 S. Ct. 2466, 159 L.Ed.2d 355 (2004).

The Hague Evidence Convention, of which both the United States and the Republic of Columbia are signatories, provides the mechanism for gathering evidence abroad through the issuance of a letter of request. The Hague Convention is not, however, the exclusive avenue for obtaining discovery in a foreign country. *Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 539-40, 107 S. Ct. 242, 96 L. Ed. 2d 461 (1987), nor is it necessarily even the means of first resort. *Id.*, 482 U.S. at 541-42. Rather, courts must consider the facts of each particular case in determining whether it is more appropriate to take discovery abroad under the Federal Rules of Civil Procedure or the Hague Evidence Convention. *Mandanes v. Mandanes*, 199 F.R.D. 135, 140 (S.D. N.Y. 2001).

A party seeking application of the Hague Evidence Convention procedures, rather than the Federal Rules, bears the burden of persuading the court of the necessity of proceeding pursuant to the Hague Evidence Convention based on the specific facts and sovereign interests involved. *In re: Automotive Refinishing Paint Antitrust Litigation*, 358 F.3d 288, 300 (3d Cir. 2004). In determining whether to employ Hague Evidence Convention means or to allow other procedures, a court must look to considerations of comity, the relative interests of the parties, including the interest in avoiding abusive discovery, and the ease and efficiency of alternative formats for discovery. *Mandanes*, citing *Aerospatiale,* 482 U.S. at 545-46.

Where discovery is sought from a foreign *party,* over whom a federal court has *in personam* jurisdiction, there is no rule of first resort requiring the discovery party to use the procedures of the Hague Convention before resorting to the Federal Rules of Civil Procedure. *Schindler Elevator Corp. v. Otis Elevator Co.*, 657 F. Supp. 2d 525 (D. N.J. 2009), citing *In re*

*Automotive Refinishing Paint Antitrust Litigation*, 358 F.3d 288, 299 (3d Cir. 2004).  In this instance, the Federal Rules remain the "normal method[] for federal litigation involving foreign national parties," unless the facts of a given case indicate "the 'optional' or 'supplemental' convention procedures prove to be conducive to discovery." *Id* at 300, quoting *Societe Nationale*, 482 U.S. at 36, 107 S. Ct. 2542.

On the other hand, resort to the Hague Evidence Convention is particularly appropriate where, as here, a litigant seeks to depose a foreign *non-party* who is not subject to the court's *in personam* jurisdiction.  *In re Urethane Antitrust Litigation*, 267 F.R.D. 361 (D. Kan. 2010), citing *Newmarkets Partners, LLC v. Oppenheim Jr. & Cie.  S.C.A.*, 2009 WL 1447504  at *1 (S.D.N.Y. 2009); *Abbott Labs v. Impax Labs, Inc.,* 2004 WL 1622223 at *2 (D. Del. 2004);

In this case, plaintiffs have made a sufficient showing that the three paramilitary witnesses possess knowledge relevant to the plaintiffs' claims in these cases, and that they reside in Columbia beyond the *in personam* jurisdiction of this court.   Defendants argue, however, that it is premature to issue a request for judicial assistance to the Republic of Columbia at this stage, during the pendency of a second round of motions to dismiss, because "the potential for dismissal makes it impossible for this Court to faithfully represent to a foreign government, as required by the Hague Evidence Convention and requested in plaintiff's motion, that the testimony of the paramilitary witnesses is required for purposes of this proceeding." [DE 696, p. 15].

Defendants cite no authority for the proposition that a party seeking foreign assistance under the Hague Convention is required to show its claims have survived legal challenge at the motion to dismiss (or summary judgment) stage of the proceedings.  The Court finds   imposition of such a stringent limitation on use of the Hague Convention procedures to be at odds with the

"liberal discovery permitted under the Federal Rules of Civil Procedure," and accordingly declines defendants' invitation to adopt it.

Plaintiffs have shown that Messrs. Perez, Lugo and Herrera likely have knowledge that goes to the heart of the claims in this litigation; that they may be subject to release from prison at any time without notice to the litigants in this case, and that they have strong motive to abscond once they are released. Thus, resort to compulsory process, available only under the Hague Convention, is appropriate to compel their attendance at depositions to preserve their testimony. At the same time, defendants fail to show good reason why the application for the issuance of letters of request should be denied. Accordingly, the Court shall issue the requested letters.

With regard to the content of the letters, the Court approves the proposed forms submitted by plaintiffs, with certain modifications on the procedural requests sections of the letters drafted by plaintiffs. First, with regard to the section outlining specific written questions on which each witnesses' response is requested, plaintiffs are directed to confer with defense counsel to incorporate any additional written questions which the defendants wish to propose to the witnesses (not to exceed twenty-five questions per witness). Second, the procedural request section shall include a request to allow oral interrogation of the witnesses on additional questions following the witnesses' responses to the written, pre-set questions. Third, to the extent an oral examination is allowed, the procedural requests shall include a request for a single direct examination by a designated liaison counsel for plaintiffs' groups, and a single cross-examination by a designated liaison counsel for all defendants. Fourth, to the extent an oral examination is allowed, the procedural request section shall include a request to allow the presentation of designated documents to the witness for identification and questioning. Any counsel wishing to present documents to the witness for identification or discussion shall identify

the documents in the procedural request section and attach a copy of the document to the request which is clearly labelled; in addition, any counsel wishing to present documents to the witness shall create a corresponding exhibit list and make arrangements for exchanging copies of the documents with opposing counsel at least twenty (20) days prior to the scheduled deposition date. Finally, in the event that the Columbian judicial authority decides to limit the oral examinations, either by the amount of time, or by specific number of questions permitted, the letters shall request that the examination be divided equally between plaintiffs' questions and defendants' questions.

### III. Decretal Provisions

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

1. Plaintiffs' motion for issuance of letters of request to the Central Authority for the Hague Convention of the Republic of Columbia [DE 688] in connection with the depositions of the paramilitary witnesses is **GRANTED.**

2. Plaintiff's motions for expedited discovery by way of preservation testimony from the paramilitary witnesses designated above [DE 688] and the testimony of Cyrus Freidheim [DE 687] are **GRANTED.**

3. Plaintiffs shall confer in good faith with defendants and prepare final versions of the letters of request that incorporate the rulings made in this order. Plaintiffs shall further submit revised letters of request to the court, within **TEN (10) DAYS** from the date of entry of this order, which will then be issued by the Court and returned to plaintiff's counsel for delivery to the proper authorities.

4. The depositions of the paramilitary witnesses shall be scheduled to commence on a date no earlier than sixty (60) days from the date of entry of this order. In the

interim, the defendants are granted leave to issue limited written discovery requests to plaintiffs on the witness-payment issue identified above, by way of interrogatories and requests to produce ( not to exceed twenty-five interrogatories and corresponding requests to produce)  by no later than **TEN (10) DAYS** from the date of entry of this order.    Plaintiffs shall have **FIVE (5) DAYS** to respond to the  requests, or to file objections; if objections are filed, they shall be accompanied by a supporting memorandum of law not to exceed three (3) pages; the defendants shall then  file its response, if any, to the objections within **TRHEE (3) DAYS** of service, not to exceed three pages in length.  No further submissions shall be entertained unless specifically invited by the Court, which shall  rule on any disputed discovery item on the basis of the written submissions.

5. The defendant's motion for leave to file surreply [to DE 708] is **DENIED** and the plaintiff's request for leave to file a "sur-sureply" [DE 711] is **DENIED as MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 7th day of April, 2015.

_____
KENNETH A. MARRA
United States District Judge

cc.  all counsel