UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-01916-MD-MARRA/JOHNSON

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:

ATS ACTIONS
_____/

**RESPONSE TO DEFENDANT'S INTERROGATORIES AND REQUESTS
FOR PRODUCTION BY DOES 1-144, 1-976, 1-677, 1-254, AND 1-97**

**GENERAL OBJECTION 1:** I received this discovery request on April 17, and only have five days to comply. I am working in Mexico City. I am obligated by my current employer (Paul, Weiss, Rifkind, Wharton & Garrison LLP, through a contract agency) to work 62.5 billable hours per week on another case. I do not have any assistant who can access my paper files in Denver, CO. I believe the production will be largely complete, since I have already produced most of the materials to Drummond and Collingsworth in their defamation case, and will supplement my responses at a later time if I find they are incomplete.

**GENERAL OBJECTION 2.** I don't use special software to review documents and produce them with Bates numbers. I understand it would be better to Bates number these documents but don't think it's required by the Federal Rules. It would be burdensome for me to Bates number all these individual files in the time I have to respond to your request. Most or all of this information has already been produced to Drummond for

1

their defamation case. Some is marked as confidential pursuant to the protective order in that case, and some has been filed under seal, such as the Piper Hendricks memo you requested. I am producing these materials to you without redaction, and would appreciate it if you used your discretion not to put them into the public record. Although the Drummond protective order does not apply to our case, and there is no protective order in our case, the judges and parties in Drummond have been taking great care to file these materials under seal.

**GENERAL OBJECTION 3**: My email provider for more than 10 years, icdc.com, suddenly stopped providing this service about two years ago. I sent the person I believe is the owner, Tom O'Connor, a litigation hold notice and tried calling him, but he denied being associated with the company, although the domain is registered in his name. As a result, I have lost all my old email correspondence. Luckily, I was very concerned about the witness payment issue and had been printing them and putting them into a binder, which I am producing in full, including the index. I have seven binders of printed material related to the Drummond case, but much of it doesn't pertain to witness payments in our case, and I only have printed copies, not with me in Mexico. I am producing everything in the Witness Payments Binder. If there is something else in the Drummond Binder Index that you believe is relevant please let me know.

In addition, some time in 2012 I was kicked off the "chiquita-ats-all" google groups listserve, and do not know what discussions about witness payments may have occured after then. Collingsworth wrote in one of his declarations, and I was asked in my deposition, that the witness payment issue had been "resolved" after I was kicked off the list. I do not know what this refers to but it suggests there were further discussions. In

addition, Jack Scarola claims that a second legal memo was written to justify witness payments, and in my deposition I was asked about a Parker Waichman memo on the subject. I have not seen either document.

**GENERAL OBJECTION 4**: I have received written threats from Conrad & Scherer, Schonbrun DeSimone Seplow Harris & Hoffman, Searcy Denney Scarola Barnhardt & Schipley, and Earthrights International (an agent of Cohen Millstein Sellers & Toll) in relation to my exposure of the RICO witness payment conspiracy. The first three demanded I withdraw court filings related to witness payments in the instant case. Earthrights International demanded that I "Cease and Desist" from producing materials pursuant to Drummond's subpoeona. Terry Collingsworth sent me a safe harbor Rule 11 Motion, which he has yet to file. Paul Hoffman and Searcy Denney threatened to sue me if I did not change my statements to the Court. I am producing all of these threatening letters. I believe this is witness tampering and in character with the other behavior alleged in the RICO case. These, and the other Plaintiffs' counsel (not including Mr. Wichman) have tried to intervene in the Drummond v. Collingsworth case, claiming that their own work product is involved in some of the documents I am producing, due to their common interests. Mr. Scarola filed an appeal in an effort to quash a subpoena for the same information Judge Marra just ordered should be produced. I understand that Special Master Michael Brown in the Drummond v. Collingsworth case has already ruled on whether this kind of material falls within the crime-fraud exception to the work product privilege.[1] However, his decision is sealed and I don't know how he ruled.

---

[1] I believe it does. My understanding is that if probable cause can be shown that a crime has been committed, or that the communications are in furtherance of another crime, there is no privilege. Some of the crimes committed are outlined in Drummond's RICO complaint. Also, Judge Middlebrooks held that I refused to sign a confidentiality agreement, based on Mr. Scarola's admission. Scarola's appeal is not about

3

Judge Proctor has not adopted the recommendations yet. Since Judge Marra has ordered this discovery, I am producing it, even though I don't know if Judge Proctor or the 11th Circuit will ultimately rule that the information is privileged, and that the firms threatening me are legitimate privilege-holders.

**INTERROGATORY NO. 1**

For each Payment made by, on behalf of, or at the request of any Plaintiffs' Counsel for the benefit of any Witness or any Agent, Relative, or Associate of a Witness, identify the date of the Payment, the nature of the Payment and its amount or value, the source of the Payment, the payor, the recipient, the method by which it was paid, its purpose, and, where applicable, the Witness of whom the beneficiary of the payment is or was an Agent, Relative, or Associate.

**RESPONSE**

I am unaware of any payment actually made to any Witness, as the term is defined by Chiquita. However, Mr. Collingsworth testified in the <u>Drummond v. Collingsworth</u> case that Ivan Otero, the lawyer for many of his paramilitary witnesses, has a relationship with Collingsworth similiar to that in the Drummond cases.² In the Drummond cases, Mr. Collingsworth has testified that Mr. Otero has a 17% contingency interest in the outcome of the case,³ and this is a Payment to a Witness, as these terms are defined by Chiquita, since Mr. Otero is also the agent of the Witnesses. I don't know the relationship between Otero and any Witness in this case; in particular, whether Otero has a

---

the crime-fraud exception, but the ruling that work product privilege does not apply to other litigation by different parties.

² Mr. Collingsworth has filed at least three lawsuits against Drummond. Collingsworth threatened me with a Rule 11 Motion in this case for mistating the number of lawsuits he filed against Drummond and then quizzed me about it in my deposition. I think there were three but would refer Chiquita to the Pacer system to research the details. My only knowledge comes from Pacer.

³ Mr. Collingsworth has testified inconsistently as to the exact percentage, and as to whether a written agreement existed. Chiquita filed what appears to be their contract and I don't know any more than that.

relationship with Carlos Tijeras. I don't know whether Carlos Tijeras was paid, but found his declaration in the Dole case hard to believe, and don't know why he would have said the things he did if he hadn't been compensated in some way.

Raul Hasbun, who managed the finances of the Banana Block of the AUC, turned over his financial records to the Colombian *fiscalia*, and they are available on the internet. Chiquita's payments are recorded, as are those of many other companies, not including Dole. On the three occasions I have met with Mr. Hasbun, he never said anything about Dole. I personally doubt that Dole identified particular individuals for the AUC to kill, as Mr. Tijeras claims, and also doubt there was a color-coding system, with different colors marking farms under the control of the AUC and FARC. That certainly isn't how it worked in Uraba, and sounds completely fanciful.

Drummond subpeona'ed a number of bank accounts, and wire transfers to hundreds of different people in Colombia. However, according to Drummond, they were only able to trace about one third of the wire transfers to Witnesses. The other wire transfers were for unknown purposes, which Collingsworth has never explained. Mike Hugo told me he believed that Collingsworth paid the witnesses in all of his cases. Hugo would know, since he approved and paid Collingsworth's expenses. In addition, Drummond obtained evidence from Parker Waichman that Witness Payments were brought into Colombia in cash, in $10,000 amounts. That said, I do not have any evidence that either Collingsworth, or the other lawyers in this case have actually paid money to Witnesses in this case.

**INTERROGATORY NO. 2**

For each Payment offered or requested to be made by or on behalf of any Plaintiffs' Counsel for the benefit of any Witness or any Agent, Relative, or Associate of a Witness, identify the Payment offered or requested, the person who made the offer or request, the person to whom the offer or request was made, the date of the offer or request, how the offer or request was communicated, the purpose of the offered or requested Payment, and, where applicable, the Witness of whom the person who made or received the offer or request is or was an Agent, Relative, or Associate.

**RESPONSE**

I do not have personal knowledge of any payments offered to or requested by any of the Witnesses. However, Mike Hugo told me on two occasions that Terry Collingsworth had asked Parker Waichman Alonso LLP for $150,000 to pay Raul Hasbun. I do not recall the first time this was mentioned, but believe it was on or about 2010. The second time was in a telephone call in December of 2013. Mr. Hasbun denied that he was paid when I met with him in early March, and said that he didn't need the money. Mr. Collingsworth also told William Moore of the Council on Hemispheric Affairs that Chiquita and Dole had been offering money to paramilitary witnesses to not name names.[4] I believe he did this in order to obscure his own efforts to pay Witnesses.

**INTERROGATORY NO. 3**

Describe any efforts Plaintiffs' Counsel have undertaken to reduce any risk to the security or safety of a Paramilitary or to the Agents, Relatives, or Associates of such Paramilitary.

**RESPONSE**

---

[4] See http://www.coha.org/para-business-gone-bananas-chiquita-brands-in-colombia/

I am unaware of any such efforts. As of this writing, all of the paramilitary Witnesses are in prison. In the Drummond cases, I doubt that Drummond was trying to kill Mr. Collingsworth's witnesses. Who else would want to kill them for blaming Drummond for the union murders? AUC members have an incentive to admit all of their crimes. They must tell the "whole truth" in order to receive the reduced 8-year sentence in the Justice and Peace program. It is against their interests to cover up their crimes, and makes no sense that other members of the AUC would want to kill them.

Mr. Otero describes receiving death threats, but it is more likely that the FARC, or victims of the AUC, threatened him because he represents so many AUC members. I suspect that the nature of the threats has been misrepresented to the court in the Drummond v. Collingsworth case. Collingsworth's lawyers continue promoting this false narrative, even though there is no logical reason why anyone would want to kill Collingsworth's witnesses in the Drummond cases. One reason Drummond wouldn't want to kill them is, they were so easy to discredit in cross examination.

Collingsworth originally justified his witness payments as compensation for the witnesses' legal fees, and had one of his associates, Piper Hendricks, write a legal memorandum on this. The memorandum is flawed because the cases cited refer to paying the legal fees of a witness in the same case. Not paying their legal fees in a separate, criminal case. Jack Scarola claims that Collingsworth wrote a second memorandum to justify paying the security costs of witnesses, but I have never seen it.

In my declaration in the Drummond v. Collingsworth case, I described conversations with Mike Hugo and others at Parker Waichman about security payments made to a company called Secure Pointe. These were allegedly for Collingsworth's

personal security, not for witness security.  Mr. Hugo told me that money earmarked for Collingsworth's own security was paid to witnesses through Secure Pointe.  I don't know which witnesses this refers to.  This is in addition to the wire transfers and cash payments described above.

**INTERROGATORY NO. 4**

Identify each Communication between Plaintiffs' Counsel and a Paramilitary or Agent, Relative, or Associate of a Paramilitary, including the participants, form, date, location (if the Communication was in person), and content of such Communication. For each Communication that took place in a Colombian prison, Identify the specific prison(s) in which the Communication took place and how Plaintiffs' Counsel described or represented their relationship with the Paramilitary, or the Agent, Relative, or Associate of the Paramilitary, to prison authorities (*e.g.*, as a friend, etc.).

**RESPONSE**

I have met with Raul Hasbun on three occasions: in about Nov. 2008, and twice in early March of this year.  (I believe on the 2nd and 9th of March)  These three meetings were in the prison in Itagui, Colombia.  I also met with his attorneys Liseth (last name unknown) and Alberto Cardona Jaramillo in 2008 prior to the first meeting, and with Mr. Cardona in March of this year.  The 2008 meetings with Liseth and Cardona were with Jack Scarola and other employees of Searcy Denny.  In addition, I have met with Daisy Yurani Manco Rios on numerous occasions from 2008-2010.  She had a desk in Mr. Cardona's office in the Apartacentro building in Apartado, Colombia, where I met her several times.  Ms. Yurani also has some contractual relationship with Scarola's firm.  I do not know her exact relationship with Cardona or if she has a relationship with Raul

8

Hasbun. She told me she attended the AUC's meeting in Ralito, Colombia, but I do not know in what capacity.

My communications with Mr. Hasbun were intended to convince him to write a declaration for this case. In 2008 Mr. Hasbun told me he was unwilling to do so, since he thought he would be out of jail in a few years, and Chiquita was his company's main business partner. This March, Mr. Hasbun agreed to write a declaration for this case, but I do not have it yet. I proposed to him that he repeat exactly what he said in an interview with *Revista Semana* (a news magazine).[5] I am producing a proposed declaration I wrote for him which repeats parts of this article, word for word. I asked him to simply repeat what he had already said to the press. Hasbun said he would have his lawyer, Liseth, work on it, but as of this writing, we have not received it.

I also asked two questions of Mr. Hasbun during one of his hearings in the Commission of Justice and Peace, in about 2008. He invoked his right to remain silent, and Judge Nubia Estella Chavez then advised him that he would not receive the benefits of a reduced sentence (reducing his sentence from over 400 years to 8) if he invoked this right. Mr. Hasbun still refused to answer my questions. One question pertained to when the AUC first received money from Chiquita. I do not remember the other question.

I met with Ever Veloza Garcia (HH) in the Alpujarra, the main office of the Colombian *fiscalia* in Medellin, in Nov. or Dec. of 2008. I also asked Mr. Veloza if he would write a declaration for our case. He asked me what I could do for him in exchange. I told him I could not do anything for him. He said he'd met with another lawyer in the Chiquita case, who told him he was a personal friend of the prosecutor in his criminal case, and that he was promised leniency in his sentencing if he gave a

---

[5] http://www.semana.com/nacion/articulo/el-hombre-cerebro-paraeconomia/255742-3

9

declaration. I presume he was referring to Mr. Collingsworth. I told him I could not help him in that way. Mr. Veloza shrugged his shoulders and our meeting ended after about 20 minutes. Although it was a private meeting, since it was in an office of the *fiscalia,* it might have been recorded, but I don't know. Then in June of 2009, Mr. Veloza's lawyer, Fernando Villota, contacted me to ask if I could write a letter thanking Mr. Veloza for his openness in admitting crimes in the Justice and Peace hearings. At the time I was working with Jack Scarola of Searcy Denney. Searcy Denney drafted a letter for me to send to Mr. Veloza, dated June 23, 2009, which I am producing. The only change I made to the letter was that Mr. Scarola had written that I was "involved" in the representation of victims, which I changed to "I represent" victims. Mr. Scarola has never had any power of representation over my clients' cases. I have not had any communications with Mr. Veloza or his attorney since.

I have never communicated directly with Fredy Rendon Herrera, but asked him two questions[6] during a Justice and Peace hearing in about 2009. As with Mr. Hasbun, this was accomplished by writing down the questions and submitting them to the judge, in this case Judge Gladys Martinez. I was watching the testimony on video from another room in the Alpujarra, which is the main office of the *fiscalia* in Medellin. The victims do not sit in the same room as the defendant. As with Mr. Hasbun, I do not have a transcript of the proceedings. My first question to Mr. Rendon was, from memory "After the AUC demobilized in 2005, did you give your brother, Daniel Rendon Herrera, permission to reconstitute the Elmer Cardenas Bloque of the AUC under a different name?" Fredy Rendon gave a lengthy and somewhat emotional response, promising that

---

[6] Each victim, or their counsel, is limited to two questions. The Colombian judges have allowed me to enter appearances on behalf of my clients, who also have claims in the Commision of Justice and Peace, but they limit me to two questions each time.

he had told everything he knew about his brother Daniel, and saying it was not fair to hold him responsible for what his brother did. I estimate he spent 5-7 minutes answering the question, and I got more out of him than I had expected. After Mr. Rendon answered, the video screen went blank for about ten minutes. When the connection resumed, Judge Martinez announced there had been a technical difficulty with the recording, and the question would have to be asked again. The second time, Mr. Rendon gave a one-word answer: "No." My second question to Mr Rendon went something like this: "Mr. Rendon, you've spent the last week testifying about your campaign in Choco, and never once mentioned Dabeiba. Do you take responsibility for the AUC murders there, and whatever became of the bodies of the victims?" Mr. Rendon answered that only a few people were killed in Dabeiba, and it was necessary for the AUC to control traffic on the road passing through that town.[7] I also believe that I may have written to Mr. Rendon's lawyer, Carlos Castañeda, after he was sentenced in 2011, asking if Mr. Rendon would sign a declaration authenticating several excerpts from his sentence, which pertain to payments from Chiquita. I have not located the email but am sure I never received a reply. In the meantime, I am waiving work product privilege on a document I found which contains exerpts from his sentence, which reminded me that I did this.[8]

I was contacted by Beatriz Quintero, the lawyer for Salvatore Mancuso, in late 2013. At first I did not know who she represented. She said she represented various members of the AUC. She asked me if Mr. Mancuso would be called as a witness, and I replied that he probably would. I will produce my email to Ms Quintero if I can find it. I

---

[7] It is possible that the technical difficulty occurred after both questions were answered, but this is how I remember it. I sat right next to one of Judge Martinez' clerks, who made summary notes of the testimony in real time on her computer. I do not know if she erased her notes on Mr. Rendon's original answer.

[8] I had forgotten about this until I started working on these reponses, and did not mention it in my email to Mr. Hall yesterday.

have not had any other communications with Mr. Mancuso or Ms. Quintero. Since Mr. Mancuso appeared on *60 Minutes* with Mr. Collingsworth, and accused Dole of paying the AUC, I presume that Mr. Collingsworth has been communicating with him.

To the best of my memory these are all of my contacts with members of the AUC. I will supplement my responses if I find that I have had any other communications.

**INTERROGATORY NO. 5**

Identify each Plaintiffs' Counsel who is or was a Paramilitary or an Agent, Relative, or Associate of a Paramilitary, the date on which such person became Plaintiffs' Counsel, the terms of their engagement as Plaintiffs' Counsel, and where applicable the Paramilitary of whom such person is or was an Agent, Relative, or Associate.

**RESPONSE**

I don't have personal knowledge about this but believe that Ivan Otero would qualify as both a Plaintiffs' Counsel and as a Paramilitary agent. It is not clear to me what Francisco Ramirez' relationship with these witnesses is.

**INTERROGATORY NO. 6**

For each Person who has a direct financial interest or stake in the outcome of the Chiquita Litigation other than Plaintiffs and the law firms that have entered appearances in the ATS Actions, describe the nature and amount of such financial interest or stake.

**RESPONSE**

Parker Waichman LLP, Girardi & Keese, and Lipscomb & Lack are silent partners in cases with Conrad & Scherer and William Wichman. Wiggins Childs Quinn & Pantazis financed my first trip to Colombia, via Terry Collingsworth, but wanted nothing more to do with Mr. Collingsworth or this case shortly thereafter (around 2008),

12

and I think they abandoned their interest in the case. According to Terry Collingsworth, he has also sold or traded interests in my first 173 cases to Ivan Otero, without my, or the plaintiffs' knowledge or consent. I have also come to know Professor Luis Fajardo, a Colombian lawyer working with William Wichman. Dr. Fajardo doesn't know if his cases were filed, or are only part of the other counsels' agreement to withhold new cases for a settlement agreement. Heli Abel Torrado y Asociados are the local counsel for Boies Schiller & Flexner LLP. Daisy Yurani may have an interest in Scarola's cases, along with other lawyers in Medellin whom I do not know. Jack Scarola and Jim Green's first clients signed agreements with Nelson Ospina and Cesar Munoz. I do not know who Earthrights/Cohen Millstein's local counsel are, or if Mr. Reiter has local counsel in Colombia.

**INTERROGATORY NO. 7**

Identify each Agent, Relative, or Associate of any Paramilitary with whom Plaintiffs' Counsel have had any agreement, the nature and terms of the Agreement, and the Paramilitary of whom such person is or was an Agent, Relative, or Associate.

**RESPONSE**

I do not have any such agreement. In the Drummond v Collingsworth case, Collingsworth has produced his agreement with Ivan Otero with respect to that case, but I have not seen their agreement for the Chiquita case.

**INTERROGATORY NO. 8**

Identify each Paramilitary to whom Plaintiffs' Counsel have made available or from whom Plaintiffs' Counsel have received any Document.

**RESPONSE**

13

I have not received any document from any Paramilitary. As described above in my response to Interrogatory #4, I gave Mr. Hasbun an example declaration, which I am producing, which he gave to his lawyer Liseth. It is a nearly word for word transcription of his interview with *Revista Semana*. In addition, at the request of the attorney of Ever Veloza Garcia, I sent him a letter thanking him for his candor in the Justice and Peace Proceedings, which Mr. Veloza intended to submit either to the court or the prosecutor in his case, in an attempt to elicit their sympathy during his sentencing. I am producing this letter, which was drafted by Mr. Scarola. I believe I may have contacted Mr. Rendon's lawyer (see #4), but have not found a record of this.

**INTERROGATORY NO. 9**

Describe how Plaintiffs' Counsel were or are "actively seeking the voluntary cooperation" or "pursuing the consent" of Jesús Ignacio Roldán Pérez, José Gregorio Mangones Lugo, or Freddy (SIC) Rendón Herrera "to be deposed." (*See* D.E. 688, at 7, 8 n.2; D.E. 688-1, at 3.)

**RESPONSE**

I am not doing this. In 2013 I wrote to Fredy Rendon's attorney to ask if he would give a declaration, simply affirming the parts of his sentence pertaining to Chiquita Brands. I never received a reply. My relationship with Mr. Rendon is hostile. I asked him difficult questions in a hearing, as described in #4 above, resulting in an irregular "take two" of his testimony in his criminal case. I then wrote a letter to the *fiscalia* on August 27, 2014, urging the *fiscalia* not to let Mr. Rendon out of prison, as was rumored to be imminent. I am producing this letter. Mr. Rendon was not released from prison, for reasons similar to those outlined in my letter. I have not had any communications, either

14

direct or indirect, with Mr. Mangones or Roldán. I don't know about the other counsels' contacts with these witnesses, but cannot believe that Mr. Mangones has not be compensated in some way. For whatever reason, taking his deposition has been the highest priority of the other plaintiffs' counsel, and two other motions have been filed for this.

**INTERROGATORY NO. 10**

Identify every legal proceeding or investigation in which the issue of Payments to Paramilitaries by Plaintiff's Counsel has been the subject of any inquiry, discovery request, order, or filing.

**RESPONSE**

I am aware of the <u>Drummond v. Collingsworth</u> cases (there is a defamation case and a new RICO case), and approximately three lawsuits Collingsworth has filed against Drummond (Balcero, Baloco and Melo). The issue has also apparently come up in Mr. Collingsworth's lawsuit against Dole, which was based entirely on the testimony of Mr. Mangones. I believe that Drummond has filed complaints in Colombia with a unit of the *fiscalia* that investigates false claims, but do not know the details. In addition, I wrote to bar counsel in DC, FL and NY to advise them of my concerns about Mr. Mangones, which I am producing. This correspondence to bar counsel pre-dates Mr. Scarola's second motion to reopen discovery to take his deposition in April of 2014.

**REQUEST FOR PRODUCTION NO. 1**

All Documents regarding any Payment by, on behalf of, or at the request of Plaintiffs' Counsel for the benefit of any Witness or any Agent, Relative, or Associate of

15

such a Witness. This Request includes without limitation Documents concerning Payments offered, considered, or requested, but not made.

**RESPONSE**

These documents are being produced without objection, other than General Objection #2.

**REQUEST FOR PRODUCTION NO. 2**

All Documents concerning the propriety of Payments by, on behalf of, or at the request of Plaintiffs' Counsel for the benefit of any Witness or any Agent, Relative, or Associate of such a Witness. This Request includes without limitation the document entitled "CHIQUITA: Ethics of Paying Witness's Legal Fees".

**RESPONSE**

These documents are being produced without objection, other than General Objection #2.

**REQUEST FOR PRODUCTION NO. 3**

All Documents relating to Payments by, on behalf of, or at the request of any Plaintiffs' Counsel to any Paramilitary, or to Agents, Relatives, and Associates of any Paramilitary, that Plaintiffs or Plaintiffs' Counsel have produced or received in connection with any legal proceeding or investigation. This Request includes without limitation (i) all Documents produced in response to document requests or subpoenas relating to Payments by, on behalf of, or at the request of Plaintiffs' Counsel to Paramilitaries in <u>Drummond Co., Inc. v. Collingsworth</u>, Case No. 2:11-cv-3695-RDP (N.D. Ala.) and in <u>Gómez v. Dole Food Co., Inc.,</u> Case No. BC412620 (Superior Court of the State of California, County of Los Angeles); and (ii) full transcripts of any deposition

16

taken in the *Drummond* and *Gómez* cases in which there is any reference to such Payments.

**RESPONSE**

These documents are being produced without objection, other than General Objection #2.

**REQUEST FOR PRODUCTION NO. 4**

All Documents regarding the security or safety risk to any Paramilitaries or to their Agents, Relatives, or Associates for participating or testifying in any legal proceeding, including any Documents regarding measures taken by Plaintiffs' Counsel to reduce such risk.

**RESPONSE**

These documents are being produced without objection, other than General Objection #2.

**REQUEST FOR PRODUCTION NO. 5**

All Communications or Agreements, including but not limited to any agreement concerning the sharing of legal fees or conferring any financial interest in any legal matter, between Plaintiffs' Counsel and a Paramilitary or any Agent, Relative, or Associate of a Paramilitary.

**RESPONSE**

These documents are being produced without objection, other than General Objection #2.

**REQUEST FOR PRODUCTION NO. 6**

17

The memorandum dated July 2, 2008, from Terrence Collingsworth regarding José Gregorio Mangones Lugo that was described by William J. Wichman as "a script of questions and answers" during a May 2, 2014, hearing in the action captioned *Conrad & Scherer, LLP v. Wichman*, Case No. 09-011600, in the Circuit Court of the 17th Judicial Circuit in Broward County, Florida.

**RESPONSE**

I have never seen this and don't know anything about it.

**REQUEST FOR PRODUCTION NO. 7**

All testimony or statements by José Gregorio Mangones Lugo, Freddy Rendón Herrera, and Jesús Ignacio Roldán Pérez. This Request includes without limitation transcripts or summaries of their testimony in "Justice and Peace" proceedings.

**RESPONSE**

These documents are being produced without objection, other than General Objection #2. I am producing Mr. Mangones' declaration in the Dole case as well as Mr. Rendon's sentence.

**REQUEST FOR PRODUCTION NO. 8**

All Documents reflecting testimony or statements by any other Paramilitary relating to Chiquita or its Colombian subsidiaries (current or former).

**RESPONSE**

<u>Objection</u>. This calls for work product and is not within the scope of what Judge Marra ordered. Any testimony and statements I have collected did not come from contact with the witnesses and are not related to witness payments.

**REQUEST FOR PRODUCTION NO. 9**

All Documents that Plaintiffs' Counsel, or anyone acting on behalf of or at the request of Plaintiffs' Counse, provided to, showed to, or received from any Paramilitary or any Paramilitary's Agent, Relative, or Associate.

**RESPONSE**

These documents are being produced without objection, other than General Objection #2.

**REQUEST FOR PRODUCTION NO. 10**

All Documents relied upon in responding to Chiquita's Interrogatories served concurrently with these Requests for Production.

**RESPONSE**

These documents are being produced without objection, other than General Objection #2.

Signed this 19th day of April 2015.

/s/ Paul Wolf
_____
Paul Wolf, DC Bar # 480285