UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-MD-01916 (Marra/Johnson)

IN RE: CHIQUITA BRANDS INTERNATIONAL,
INC. ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates to:

ATS ACTIONS
_____/

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFFS'
MOTION TO PARTIALLY LIFT THE STAY OF DISCOVERY**

# INTRODUCTION

Plaintiffs' motion for *forum non conveniens* ("FNC") discovery fails even to acknowledge the key Eleventh Circuit authority relevant to their motion, let alone explain how discovery could be proper under that case. In *Ford v. Brown*, 319 F.3d 1302, 1308-11 (11th Cir. 2003), the Eleventh Circuit held that it was an abuse of discretion to deny an FNC motion where the claims asserted only secondary liability for primary torts committed abroad. In so ruling, the court based its decision almost exclusively on the nature of the claims as pled in the complaint. *Id.*

Under *Ford*, the discovery plaintiffs now seek is irrelevant to disposition of Chiquita's FNC motion as a matter of law. Plaintiffs do not identify a single case from this Circuit since *Ford* in which a court permitted FNC discovery when the claims asserted only secondary liability for primary torts committed abroad.

Even outside the context of secondary-liability claims for foreign torts, moreover, FNC discovery is disfavored. Where courts have permitted discovery, they have done so where the party opposing the FNC motion makes an evidentiary showing that there are disputed, material issues of fact or law. Here, however, Plaintiffs have made no showing whatsoever. Their motion cites no authority showing that the evidence they seek is relevant to an FNC determination, and plaintiffs offer no evidentiary support of any kind—no affidavit, no documentary evidence, nothing—for the assertions of fact and Colombian law contained in counsel's brief. Because plaintiffs have not shown, and under *Ford* cannot show, that there are disputed issues of fact relevant to disposition of the FNC motion, their motion for discovery should be denied.

# ARGUMENT

## I. The Eleventh Circuit's Decision in *Ford* Establishes That Discovery Is Unnecessary to Resolve Chiquita's FNC Motion.

In resolving an FNC motion, a court needs only "enough information to enable [it] to balance the parties' interests." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981). "Requiring extensive investigation would defeat the purpose of the[ ] motion." *Id.* That is especially true where, as here, foreign citizens assert secondary liability claims under foreign law based on primary torts that were committed abroad by foreign actors. The Eleventh Circuit made clear in *Ford* that, in such cases, the nature of the claims is sufficient by itself to conclude that the majority of relevant evidence will be located abroad, and that dismissal for FNC is therefore appropriate. *See Ford*, 319 F.3d at 1308-09.

In *Ford*, the plaintiff alleged that the defendants, an American corporation and its U.S.-based in-house counsel, had conspired to injure the plaintiff through a series of defamatory statements made by the defendants' agents and co-conspirators in Hong Kong. *Id.* at 1304-05. The Eleventh Circuit accepted that the evidence regarding the nature of the U.S.-based defendants' involvement in the alleged conspiracy would be found in the United States. *Id.* at 1309. But the Court held, based on the allegations in the complaint, that the "vast majority" of evidence would necessarily be found in Hong Kong, because the defendants' alleged liability was derivative of the primary tortious conduct that occurred in Hong Kong:

> [A] conspiracy is simply a means of creating vicarious liability. That is, a tort must actually be committed by someone in the conspiracy. If Defendants are liable, it is because the principal defamers made the defamatory comments pursuant to an agreement with Defendants. Thus, Plaintiff must first prove that acts of defamation actually took place. And that is why the vast majority of evidence is in Hong Kong.

*Id*. at 1309 n.21. The Court therefore reversed the district court's denial of the FNC motion and remanded the case with the "instruction" to dismiss on FNC grounds. *Id*. at 1311

*Ford* is functionally indistinguishable from the instant case. In the words of *Ford*, "this litigation entails a Hong Kong-centered dispute, and most of the evidence therefore exists in Hong Kong." *Id*. at 1309. In the words of this Court, Plaintiffs' claims "are premised on acts by Colombian paramilitaries against Colombian civilians that occurred inside Colombia as part of Colombia's civil war." (Op. & Order at 87 (June 3, 2011) (D.E. 412).) By definition, most of the evidence concerning those acts—including the thousands of plaintiffs, alleged perpetrators, other witnesses to each tort, damages witnesses, and the like—are in Colombia.

Plaintiffs cite various decisions for the general proposition that "[c]ourts in this District frequently permit limited discovery pertaining to [FNC] motions." (Pls.' Mot. for FNC Discovery at 4 (Apr. 28, 2015) (D.E. 792) [hereinafter Pls.' Mot.]; *see also Doe* Pls.' Mot. for FNC Discovery (Apr. 28, 2015) (D.E. 793) (joining in the other plaintiffs' motion).) But most of Plaintiffs' cases predate *Ford*, and none involves secondary liability claims arising from tortious acts in a foreign country. In light of *Ford*, the discovery that Plaintiffs seek is irrelevant as a matter of law given the nature of Plaintiffs' claims.

II. **Even if *Ford* Were Not Dispositive, Plaintiffs Have Failed to Make the Necessary Evidentiary Showing That There are Disputed Issues of Fact That Are Material to Defendant's Motion.**

Even outside the context of secondary liability claims concerning primary torts committed abroad, "[g]enerally, a motion to dismiss premised upon a claim of forum non conveniens is decided based upon affidavits solely." *Norex Petroleum Ltd. v. Access Industries, Inc.*, 2003 WL 1484269, at *2 (S.D.N.Y. Mar. 21, 2003). Thus, where courts do permit FNC discovery, it is limited to issues that are "central to the [FNC] inquiry" and "required for its disposition." *Beaman v. Maco Caribe, Inc.*, 790 F. Supp. 2d 1371, 1376 (S.D. Fla. 2011); *see*

3

also *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 451, n.3 (2nd Cir. 1975) (rejecting plaintiffs' requested discovery as related to disputed facts having no bearing on the outcome of the FNC motion); *Norex*, 2003 WL 1484269, at *2 (finding plaintiffs' request for the identities of various individuals and financial records overbroad and superfluous for FNC purposes); *Beekmans v. J.P. Morgan & Co.*, 945 F. Supp. 90, 95 (S.D.N.Y. 1996) (noting that discovery on "peripheral facts" that would, at best, establish a "limited connection" to the domestic forum would not alter the court's analysis and is therefore unnecessary).

A party seeking FNC discovery therefore must show that (i) there are disputed issues, that (ii) are "central" and "required" for resolution of the FNC motion. Indeed, the cases on which Plaintiffs rely confirm this. In *In re Bridgestone/Firestone Litigation*, the court allowed discovery only because the defendant had "not submitted *any* evidence, even affidavits," to support the "sweeping assertions" made in its motion to dismiss, and the plaintiff countered the motion with specific evidence *contradicting* the movant's unsupported assertions. 131 F. Supp. 2d. 1027, 1031 (S.D. Ind. 2001) (emphasis added). Likewise, in *Base Metal Trading S.A. v. Russian Aluminum*, the court allowed expert depositions in order to reconcile conflicting testimony submitted by the parties' respective expert witnesses. 2002 WL 987257, *4 (S.D.N.Y. May 14, 2002) (review of expert declarations "establishe[d] that the two sides have sharply differing views on the fundamental fairness of the Russian courts").

As discussed below, however, while Chiquita submitted substantial evidence in support of its motion, Plaintiffs have not shown that there are any disputed, material issues. *See Argoquest Holdings, LLC v. Israel Disc. Bank Ltd.*, 2005 WL 6070168, at *6 n.11 (C.D. Cal. Apr. 8, 2005) ("[*Bridgestone/Firestone*] is a far cry from the case at hand where Defendant has produced significant evidence to support its assertions"). Their discovery motion does not

4

identify any authority showing that the issues on which they seek discovery are "required" for disposition of the FNC motion, nor is it accompanied by any evidence of any kind—and it is axiomatic that Plaintiffs cannot introduce any such evidence for the first time on reply.

### A. Chiquita's FNC Motion Already Provides the Information Plaintiffs Purport To Seek Concerning Colombian Proceedings Related to Chiquita.

Plaintiffs claim the need to know details regarding the identity of the parties to the pre-litigation conciliation demands asserted against Chiquita and "civil party actions against Chiquita executives" in Colombia, the claims and defenses asserted, and the disposition of those proceedings. (Pls.' Mot. at 6-7.) Plaintiffs do not offer any explanation of how this information is "central" or "required" for disposition of the FNC motion. In any event, however, the evidentiary material accompanying Chiquita's FNC motion—the existence of which Plaintiffs do not even acknowledge—answers all six of the questions as to which Plaintiffs claim discovery is required (*see id.*):

- In support of its FNC Motion, Chiquita submitted certified translations of each of the civil mediation demands that have been filed against it in Colombia. (D.E. 741-6, at 13; D.E. 741-7 to 741-10.) These documents identify (i) who the claimants are, and (ii) what the claims are.

- Chiquita also submitted certified translations of the official documents evidencing the disposition of the mediation proceedings. (D.E. 741-11.) These documents identify (iii) the defenses advanced by Chiquita, and (iv) the conclusion of each proceeding.

- Finally, Chiquita's witnesses explained that none of these terminated proceedings has ripened to litigation, such that (v) none of the matters has progressed in the last three years, and (vi) there has been no lawsuit and thus no occasion for Chiquita to implead any third parties. (Decl. of José Miguel de la Calle Restrepo ¶¶ 10-12 (D.E. 741-6) [hereinafter De la Calle Decl.]; *see* Decl. of Javier Tamayo Jaramillo ¶¶ 51-52 (D.E. 741-1) [hereinafter Tamayo Decl.]; Chiquita's FNC Mot. at 33 (Mar. 9, 2015) (D.E. 741) [hereinafter FNC Mot.]).

- So too with respect to the civil claims asserted as part of an ongoing criminal investigation in Colombia of certain former Banadex employees. (*See* FNC Mot. at 8.) In support of its FNC Motion, Chiquita submitted a certification from Colombia's Prosecutor General's Office identifying the parties to that proceeding. (D.E. 741-2.) As that document shows, Chiquita is not a party, so it has not advanced any defenses or

5

impleaded third parties. (*See id*.) Chiquita also submitted a declaration describing the civil claims. (*See* Tamayo Decl. ¶ 53.) Finally, Chiquita's publicly-available SEC filings describe how the matter has progressed over the past three years and its current status.[1]

Plaintiffs have failed to show, or even to assert, that the evidence submitted by Chiquita does not answer the questions concerning which Plaintiffs seek discovery.

> **B.      Plaintiffs Fail to Demonstrate the Need for or Relevance of Discovery Concerning the Identity of U.S. Witnesses or the "Quantity and Nature" of Chiquita's Documents.**

Claiming that they require discovery "pertaining to the nature, quality, quantity and accessibility of evidence in the United States and Colombia," Plaintiffs seek discovery relating to the "names, present location, employment status and roles of [all U.S.-based witnesses 'under Chiquita's control'], so as to assess whether [Chiquita's] stipulation [to make these witnesses available for discovery / testimony purposes] has any bearing on the feasibility of proceeding in Colombia." (Pls.' Mot. at 10.)

Plaintiffs cite no authority for the need to catalog witnesses, because there is none. To the contrary, as the Eleventh Circuit has explained, the Supreme Court has "[r]ejected the idea that defendants must submit affidavits identifying the witnesses they would call and the testimony the witnesses would give, saying that '[s]uch detail is not necessary'" so long as enough information is provided to "'enable the [d]istrict [c]ourt to balance the parties'

---

[1] *See, e.g.*, Chiquita's Annual Report on Form 10-K, at 65 (Mar. 18, 2015) (explaining that the criminal proceeding was closed in March 2012 after a prosecutor found that Banadex's payments to the AUC were extorted, was reopened in December 2012 for further investigation, and has been pending since, with no charges having been made against any current or former Chiquita or Banadex employee), *available at* https://www.sec.gov/Archives/edgar/data/101063/000010106315000026/cqb10k-exhibit13.htm; *see also* Chiquita's Response to Appellees' Mot. for Judicial Notice at 1, 4-5, Case No. 12-14898 (11th Cir. Oct. 21, 2013) (same).

6

interests.'"  *Grp. GC Builders v. Cahaba Disaster Recovery, LLC*, 534 F. App'x 826, 829 (11th Cir. 2013) (quoting *Piper Aircraft*, 454 U.S. at 258).[2]

Here, the Court clearly has sufficient information to determine whether more witnesses are located in the United States or Colombia; under *Ford*, the "vast majority" is necessarily located in Colombia.  And even absent *Ford*, the suggestion that discovery is required to answer that question here is implausible on its face.  In the words of this Court, "once the common issues are decided, the specific factual claims of these Plaintiffs will predominate, and individual issues of causation will pervade the litigation," and "[m]any witnesses and sources of proof relating to Plaintiffs' individual claims can and will only be found in Colombia."  (Op. & Order, *Carrizosa v. Chiquita Brands Int'l, Inc.*, No. 0:07-cv-60821, at 6-7 (S.D. Fla. Nov. 14, 2007).)  For each of the over 6,000 torts at issue, Colombia-based witnesses include the plaintiff(s), eyewitnesses, government and military officials, former paramilitaries, and former Banadex employees in Colombia.  (*See* FNC Mot. at 24-28.)  The total number of Colombian witnesses whose testimony will be required in these cases is, without question, in the thousands.  Under no conceivable circumstance could the total number of U.S.-based witnesses approach even a tiny fraction of this amount.

Plaintiffs also seek discovery "over the quantity and nature of documents that are in Chiquita's possession and relevant to the Plaintiffs' claims." (Pls.' Mot. at 11.)  Plaintiffs' brief contends that unless this evidence "was obtained through Colombian legal processes, it

---

[2] The single case on which Plaintiffs rely in support of their request for discovery regarding U.S.-based witnesses is clearly inapposite.  In *Beebe v. Housatonic R.R. Co.*, the court held that limited discovery was warranted only because the plaintiff had "fail[ed] to plead where the accident occurred" and there were "unresolved factual disputes related to personal jurisdiction." 2005 WL 1173974, at *3 (N.D.N.Y. May 12, 2005).  Here, there is no question that (1) all of the alleged injuries occurred in Colombia and (2) all Defendants have agreed to have these cases heard in Colombia.

7

could not be turned over wholesale to the Colombian courts," but instead would have to be certified "before it could be considered according to Colombian judicial procedure." (*Id*.) As with the rest of their motion, however, Plaintiffs do not support this assertion with any evidence or authority. *See Travaglio v. American Exp. Co.*, 735 F.3d 1266, 1270 (11th Cir. 2013) ("Statements by counsel in briefs are not evidence."). In all events, under *Ford*, the bulk of the relevant documentary evidence (including documents regarding the victims, the circumstances and proof of their deaths, the authority of each plaintiff purporting to proceed on behalf of a deceased victim, the organization and finances of the AUC, the role of the Colombian military, and prior testimony given by relevant witnesses) is necessarily located in Colombia. Discovery regarding the specific "quantity and nature" of Chiquita's relevant documents in the U.S.—all of which Chiquita has agreed to make available to plaintiffs in the event the Court grants the FNC motion (FNC Mot. at 19; Declaration of John E. Hall ¶ 2 (D.E. 741-14))—is thus irrelevant.

Finally, to the extent the Court *were* to permit discovery on these topics, the Court would be able to assess the relative weight of the evidence in each forum only if discovery were taken regarding the identities of *all* witnesses, and the quantity and nature of *all* documentary evidence, in both forums. That would entail precisely the type of "extensive investigation" that the Supreme Court has indicated would "defeat the purpose" of an FNC motion. *Piper*, 454 U.S. at 258.

    **C.    Plaintiffs Fail to Demonstrate The Relevance of Individual Defendants' Willingness to Give Testimony in Colombia.**

Plaintiffs insist that they need further discovery to determine whether the individual defendants "will subject themselves to providing testimony in Colombia." (Pls.' Mot. at 11-12.) Here, again, Plaintiffs have failed to make any evidentiary showing that this bears on the availability of the Colombian forum. Chiquita has submitted the expert testimony of Dr.

8

Francisco Javier Tamayo Jaramillo, whom plaintiffs concede is a "noted jurist" (*id*. at 9), that in-person testimony by foreigners is not required in order to participate in the Colombian judicial process. (*See* Tamayo Decl. ¶¶ 44-45.) As Dr. Tamayo explains, under Colombian law, defendants in Colombian legal proceedings who are domiciled in the U.S. may elect to offer their testimony in Colombian consulates in the United States rather than travel to Colombia. (*Id*.) *See also Mujica v. AirScan Inc*., 771 F.3d 580, 613 (9th Cir. 2014) ("Plaintiffs did not have to be physically present in Colombia to pursue litigation against Defendants. . . . We credit Judge Wu's finding of adequacy[.]"). Plaintiffs offer no contrary authority, and no explanation as to why the individual defendants' willingness to appear in person in Colombia is relevant.

      **D.    Plaintiffs Fail to Demonstrate the Need for or Relevance of Discovery Regarding the Third Parties that Defendants Will Seek to Implead if this Litigation were to be Filed in Colombia.**

Plaintiffs accuse Chiquita of being "cagey" about the identities of potential third-party defendants that Chiquita may wish to implead in Colombian court, and seek comprehensive discovery including the names of those persons, whether they would be subject to jurisdiction in Colombia, and the grounds on which Chiquita would implead them. (Pls.' Mot. at 12.) Yet, it is *Plaintiffs* rather than Chiquita who have identified such possible third parties without actually naming them. In its FNC Motion, Chiquita specifically states that it is entitled to implead "some or all of the many other actors identified in *plaintiffs' complaints*" who "funded and actively supported the paramilitaries who allegedly caused [plaintiffs'] injuries." (FNC Mot. at 33-34) (emphasis added.)[3] As set forth in Chiquita's FNC motion, Chiquita may very well need to

---

[3] *See, e.g*., Second Am. Compl. ¶ 2058 (D.E. 575) ("As the 1980s progressed, paramilitaries maintained links with drug barons, large landowners, industrialists, and bankers who funded them."); Second Am. Compl. ¶ 36 (D.E. 589) ("Over the course of the 1980s, the paramilitaries maintained strong ties to the Colombian government and increasingly worked for and with powerful private groups that were opposed by the leftist guerrillas, including businesses, (continued…)

9

implead some or all of these other parties—persons whom Plaintiffs themselves have alleged wrongfully supported the AUC and thus contributed to their injuries—once Chiquita discovers their identities. (*Id*.)

Plaintiffs cite no authority for the proposition that Chiquita should be expected to identify now the unnamed Colombians whom *Plaintiffs* allege in their Complaints wrongfully supported the AUC, let alone details regarding "the grounds on which Chiquita would implead them" and "the prejudice that it would suffer if unable to implead those third parties" in the United States. *Cf. Piper*, 454 U.S. at 258 ("[Defendants] have moved for [FNC] dismissal precisely because many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview.").[4] To the contrary, because Plaintiffs have asserted the existence of potential third parties *in their pleadings*—and it is clear from those pleadings that many of these potential third parties are likely beyond the jurisdiction of U.S. courts—*Ford* mandates dismissal on FNC grounds. *See Ford*, 319 F.3d at 1309-10. If Plaintiffs believe that the specific identities and locations of all third parties to whom *they* referred in *their* complaints cut against FNC dismissal, Plaintiffs should identify those entities and provide declarations from their own experts on how those entities could be impleaded in the United States, could not be impleaded in Colombia, or might impact the safety of Plaintiffs litigating in Colombia.

---

industrialists, large landowners, and bankers."); Third Am. Compl. ¶ 1659 (D.E. 558) (noting that the sponsors of the AUC included "wealthy landowners, businessmen, and multinational corporations").

[4] The sole case that Plaintiffs cite concerned only whether a single witness and potential defendant whose identity was known to plaintiffs could not be located at all, and therefore would not be available regardless of where the lawsuit proceeded. *Wilson v. Island Seas Investments, Ltd.*, 590 F.3d 1264, 1272 (11th Cir. 2009).

>  E. **Plaintiffs Fail to Demonstrate the Need for or Relevance of Deposing Chiquita's FNC Declarants.**

Plaintiffs demand to take the depositions of all three of Chiquita's declarants in support of its FNC Motion—Chiquita's foreign law expert, Chiquita's security expert, and Chiquita's outside litigation counsel in Colombia—on the assertion that depositions are appropriate whenever a defendant includes declarations in support of an FNC motion. (*See* Pls.' Mot. at 5-6.) The cases that they cite in support of this assertion, however, actually demonstrate why such discovery is *not* proper here.

The court in *Base Metal Trading S.A. v. Russian Aluminum* allowed expert depositions only where necessary to assist the Court in reconciling conflicting testimony submitted by the parties' respective expert witnesses. There, "even a cursory view" of *competing* declarations "establishe[d] that the two sides have sharply differing views on the fundamental fairness of the Russian courts." 2002 WL 987257, at *4. In *Bridgestone*, the court allowed depositions of the defendants' foreign law experts only to discover the basis for certain "sweeping conclusions based on the statements of law they set forth" and their qualifications to reach such conclusions. 131 F. Supp. 2d. at 1031 (noting that discovery was warranted based on expert's "sweeping" and wholly unsupported conclusion on the core issue of whether "Venezuelan law comports with recognized standards of due process").

Here, in contrast, Plaintiffs seek to depose all three of Chiquita's declarants without (i) first offering *any* evidence of their own calling Chiquita's evidence into question, or (ii) even explaining *why* the requested discovery is "central" to FNC issues or "required" by this Court to decide the FNC Motion. For example, Plaintiffs claim the need to depose Dr. Tamayo about "the bases for his conclusions" and "topics that he omitted." (Pls.' Mot. at 9.) But if Plaintiffs believe that Dr. Tamayo's conclusions are subject to dispute or omitted relevant

information, it is incumbent on Plaintiffs to put that information before the Court. Absent such an evidentiary dispute, there is no authority for deposing him.

Moreover, only one of the four specific topics on which Plaintiffs seek to depose Dr. Tamayo—the effect of the defendants' agreement to waive certain limitations defenses—bears on whether the Colombian forum might be "unavailable" (because a Colombia court could not hear Plaintiffs' claims), or "inadequate" (because Plaintiffs could not obtain at least *some* relief in Colombia) (*see* FNC Mot. at 18-21). And even there, Plaintiffs misrepresent Dr. Tamayo's testimony. Plaintiffs claim that Dr. Tamayo "omits to discuss the effect of provisions of Colombian civil procedure that bar statute of limitations waivers." (Pls.' Mot. at 9.) In fact, however, Dr. Tamayo's declaration specifically addresses this issue:

> The defendants may also choose not to assert a statute-of limitations defense. In that regard, it is important to note that, in Colombia, a civil court may not declare an obligation as time barred, unless [the statute of limitations [*prescripción*]] is expressly argued by the person that seeks to benefit from it.

(Tamayo Decl. ¶ 28.) Dr. Tamayo supports this opinion by referring to "Article 2513 of the Civil Code, according to which 'whoever wishes to benefit from the statute of limitations [*prescripción*] must argue it; the judge may not declare it *sua sponte*.'" (*Id*. at n.5.) Plaintiffs offer nothing to substantiate their assertion that Dr. Tamayo has failed to address some relevant provision of Colombian civil procedure.

Similarly, Plaintiffs' sole stated reason for needing to depose Mr. Shifter is to probe more deeply into the basis for his conclusion that Plaintiffs may sue Chiquita in Colombia without safety concerns. (Pls.' Mot. at 7-8.) But the burden is on each individual *Plaintiff*, not on Chiquita, to make a particularized showing that "suing Chiquita in Colombia would subject *that* plaintiff personally to a heightened and specific safety threat." (FNC Mot. at 41.) No Plaintiff has offered any individualized evidence whatsoever on this issue, and no Plaintiff can

possibly expect to meet their individualized burdens by deposing Mr. Shifter—whose opinions are limited to the general security climate in Colombia and who knows nothing about the particular circumstances of each Plaintiff.

Finally, with respect to Dr. De la Calle, Chiquita's Colombian litigation counsel, Plaintiffs seek to depose him on "the details of [the Colombian actions against Chiquita] and Chiquita's defenses, the outcome of the actions in which his firm has defended Chiquita, and the provisions for security in those actions." (Pls.' Mot. at 10.) Yet, as explained previously, Chiquita has already identified the "details," "defenses," and "outcome" of the Colombian civil proceedings for the Court to rule on the FNC Motion. *See supra*, p. 5; (De la Calle Decl. ¶¶ 9-13 (D.E. 741-6); Certificates Evidencing Results of Mediations (D.E. 741-11)). With respect to Plaintiffs' demand to discover from Dr. De la Calle Chiquita's "provisions for security in those actions," the demand assumes without any foundation that such provisions were required or made. (Pls.' Mot. at 10.) As noted in its FNC Motion, Chiquita is wholly unaware of any security issues arising out of any of the civil demands asserted against it in Colombia. (*See* FNC Mot. at 8.)

\* \* \*

Chiquita first moved for FNC dismissal in November 2011. (*See* Ds' Mot. to Dismiss for *Forum Non Conveniens* (Nov. 5, 2011) (D.E. 502).) The motion was pending for nearly 22 months before the Court dismissed it without prejudice for Chiquita to refile. (*See* Endorsed Order (Aug. 29, 2013) (D.E. 635).) Plaintiffs have known all along that Chiquita intended to renew the motion. (*See* Pls.' Mot. for Leave to Take Depositions to Perpetuate Testimony at 4 (Dec. 26, 2014) (D.E. 687).) After Chiquita did so, Plaintiffs waited 50 days before moving for discovery. (*See* Pls.' Mot. (filed April 28); FNC Mot. (filed March 9).)

Despite this ample time to muster evidence on the issues raised by Chiquita's motion, Plaintiffs' discovery motion is unaccompanied by any evidentiary support of any kind showing that there is a genuine factual dispute meriting FNC discovery—and Plaintiffs obviously cannot introduce such material for the first time on reply. Plaintiffs' motion for FNC discovery should be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motions for FNC discovery (D.E. 792 & D.E. 793).

Dated:  May 5, 2015                            Respectfully submitted,

| | |
|---|---|
| John E. Hall | ___/s/ James C. Gavigan_____ |
| Patrick S. Davies | Sidney A. Stubbs (Fla. Bar No. 095596) |
| James M. Garland | Robert W. Wilkins (Fla. Bar No. 578721) |
| Shankar Duraiswamy | James C. Gavigan (Fla. Bar No. 0085909) |
| José E. Arvelo | jgavigan@jonesfoster.com |
| COVINGTON & BURLING LLP | JONES, FOSTER, JOHNSTON & STUBBS, |
| One CityCenter | P.A. |
| 850 Tenth Street NW | 505 South Flagler Drive, Suite 1100 |
| Washington, D.C. 20001 | West Palm Beach, Florida 33401 |
| Telephone: (202) 662-6000 | Telephone: (561) 659-3000 |
| Fax: (202) 662-6291 | Fax: (561) 650-5300 |

Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue                              *Counsel for Chiquita Brands International, Inc.*
New York, NY  10018                        *and Chiquita Fresh North America LLC*
Telephone:  (212) 841-1000
Fax:  (212) 841-1010

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on this 5th day of May, 2015.  I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF, and in accordance with the Court's First Case Management Order ("CMO") and the June 10, 2008 Joint Counsel List filed in accordance with the CMO.

          By:    /s/ James C. Gavigan
               Fla. Bar No. 0085909
               jgavigan@jonesfoster.com