**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 08-01916-MD-MARRA/JOHNSON

IN RE: CHIQUITA BRANDS INTERNATIONAL,
INC., ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:

ATS ACTIONS
_____/

Case No. 08-80465-CIV-MARRA

DOES 1-144 et. al.
          v.
CHIQUITA BRANDS INTERNATIONAL, et. al.
_____/

Case No. 10-80652-CIV-MARRA

DOES 1-976
          v.
CHIQUITA BRANDS INTERNATIONAL, et. al.
_____/

Case No. 11-80404-CIV-MARRA

DOES 1-677
          v.
CHIQUITA BRANDS INTERNATIONAL, et. al.
_____/

Case No. 11-80405-CIV-MARRA

DOES 1-254
          v.
CHIQUITA BRANDS INTERNATIONAL, et. al.
_____/

Case No. 13-80146-CIV-MARRA

DOES 1-97 et. al.
                    v.
BOIES SCHILLER & FLEXNER et al.
_____/


**Doe Plaintiffs' Opposition to Defendant's Renewed
Motion to Dismiss for _Forum Non Conveniens_**


Paul David Wolf
Attorney for Does 1-144,
1-976, 1-677, 1-254, 1-97
P.O. Box 46213
Denver, CO 80201
(202) 431-6986
paulwolf@yahoo.com


June 22, 2015

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................... *i*

TABLE OF AUTHORITIES ................................................................ *ii*

FACTUAL SUMMARY ........................................................................ 1

SUMMARY OF ARGUMENT ............................................................. 1

ARGUMENT ...................................................................................... 4

I.  The Doe Plaintiffs' claims are not barred by the applicable
    statutes of limitations.. ............................................................ 4

II.  The Court should not dismiss this case for *forum non conveniens*. ............ 6

    A.  No adequate forum exists in Colombia which would have
    jurisdiction over the whole case and all parties. ........................... 7

        1.  Colombian courts do not have jurisdiction over the
        "whole case" or over "all parties" because they do not
        have jurisdiction over the individual Doe Defendants. ........ 7

        2.  Colombian courts do not have jurisdiction over
        Defendant Boies Schiller & Flexner LLP. ......................... 9

    B.  Private interest factors cannot overcome the presumption
    against disturbing Plaintiffs' initial forum choice, and do
    not all favor litigating this case in Colombia. ............................. 10

        1.  Defendants cannot overcome the strong presumption
        against disturbing Plaintiffs' initial choice of forum .......... 11

        2.  Relevant evidence will be more accessible if
        Plaintiffs' claims are litigated in the United States. ............ 12

            a.  The sources of key evidence are physically
            located in the United States. .................................. 12

            b.  It would be substantially more difficult
            to access key evidence if Plaintiffs' claims
            were litigated in Colombia rather than the
            United States. ........................................................ 14

3.  Coordinating discovery and litigating common
    issues in a single forum will promote efficiency
    and ensure consistency. ........................................................  15

4.  Chiquita's strategy to implead other companies
    for contribution is not procedurally possible
    under Colombian law. ...........................................................  16

5.  It will be easier to enforce a judgment of a U.S.
    District Court than a Colombian court, since
    the Defendants no longer have any presence in
    Colombia. ............................................................................  17

C.  Public interest factors favor litigating the case in the
    United States. ..............................................................................  18

1.  The U.S. and Colombia have equal interests in
    this litigation. ...................................................................  19

2.  This litigation would impose a greater burden
    on Colombian Courts than on U.S. Courts. ......................  19

3.  Principles of international comity do not weigh
    in favor of dismissal. .........................................................  20

4.  Claims based on Colombian law present no real
    conflict with forum law. ....................................................  22

D.  The Court cannot ensure that Plaintiffs can sue
    Defendants in Colombia without undue inconvenience
    or prejudice. ................................................................................  24

CONCLUSION ................................................................................  27

# TABLE OF AUTHORITIES

**Cases**

\* <u>Aldana v. Del Monte Fresh Produce, N.A. Inc.</u>,
578 F.3d 1283 (11th Cir. 2009) ............................................................   4, 7, 10, 24

<u>Bank of Credit & Commerce Int'l Ltd. v. State Bank
of Pakistan</u>, 273 F.3d 241 (2nd Cir. 2001) ........................................................   7

<u>Bishop v. Florida Specialty Paint Co.</u>,
389 So.2d 999 (Fla.1980). ........................................................................   23

<u>Cabello v. Fernandez-Lorios</u>,
157 F. Supp. 2d 1345 (SDFL 2000) ........................................................   6

<u>C.A. La Seguridad v. Transytur Line</u>,
707 F.2d 1304 (11th Cir. 1983) ..............................................................   6

<u>DiFederico v. Marriott Intern., Inc.</u>,
714 F.3d 796 (4th Cir. 2013) ..................................................................   22

<u>Dresdner Bank AG v. M/V Olympia Voyager</u>,
446 F.3d 1377 (11th Cir. 2006). ............................................................   23

<u>Estate of Miller ex rel. Miller v. Thrifty Rent–A–Car System,
Inc.</u>, 609 F.Supp.2d 1235 (M.D.Fla.2009) ............................................   23

<u>Farmanfarmaian v. Gulf Oil Corp.</u>,
588 F.2d 880 (2nd Cir. 1982) ................................................................   12

<u>Fioretti v. Massachusetts Gen. Life Ins. Co.</u>,
53 F.3d 1228 (11th Cir.1995). ................................................................   23

\* <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501 (1947) ...................................   4, 6, 10, 18

<u>Iragorri v. United Techs. Corp.</u>, 274 F.3d 63
(2nd Cir. 2001)(<u>en banc</u>) ......................................................................   11

<u>Irish Nat'l. Ins. Co., Ltd. v. Aer Lingus Teoranta</u>,
739 F.2d 90 (2nd Cir. 1984) ..................................................................   12

<u>Jameson Cooper v. Maridian Yachts Ltd.</u>,
575 F.3d 1151 (11th Cir. 2009) ..............................................................   22-23

<u>Kinney Sys., Inc. v. Cont'l Ins. Co.</u>, 674 So.2d 86 (Fla.1996) ........................   7

Kiobel v. Royal Dutch Petroleum Co.,
133 S.Ct. 1659 (2013) ................................................................... 1, 21

Klaxon Co. v. Stentor Elec. Mfg. Co.,
313 U.S. 487 (1941). ...................................................................... 23

* Liquidation Comm'n of Banco Intercontinental, S.A.
v. Renta, 530 F.3d 1339 (11th Cir. 2008) ............................... 11

Lony v. E.I. Du Pont de Nemours & Co.,
933 F.2d 604 (3rd Cir. 1991) ..................................................... 11

Murry v. British Broadcasing Corp.,
81 F.3d 287 (2nd Cir. 1996) ....................................................... 12

Mutual Export Corp. v. Westpac Banking Corp.,
742 F.Supp. 161 (S.D.N.Y. 1990) .............................................. 11

Piper Aircraft v. Reyno, 454 U.S. 235 (1981) ................................. 10-12

Rogers v. Petroleo Brasilero, S.A., 741 F.Supp.2d 492 (SDNY
2010) rev'd on other grounds, 673 F.3d 131 (2nd Cir. 2012). ........... 22

* SME Racks, Inc. v. Sistemas Mecanicos
Para Electronica, S.A., 382 F.3d 1097 (11th Cir. 2004) ................... 7, 22

Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise
Fund, 589 F.3d 417 (7th Cir. 2009) ............................................ 22

Technology Development Co. Ltd. v. Onischenko,
536 F.Supp.2d 511 (D.N.J. 2007) .............................................. 22

Van Dusen v. Barrack, 376 U.S. 612 (1964) ........................................ 5

Wade v. Hunter, 336 U.S. 684 (1949) ................................................ 24

**Statutes, Rules and Treaties**

28 U.S.C. §1350 note (Torture Victim Protection Act) ..................................... 1

28 U.S.C. §1404 (Transfer of Venue) ................................................................ 5

28 U.S.C. §1407 (JPML Transfer) ................................................................ 2, 5

18 U.S.C. § 2333 (Anti Terrorism Statute, or ATA) ...................................... 12, 16

F.R.C.P. 14 (Third Party Practice) ........................................................   17

2012 Florida Statute §95.11 ................................................................   5

Treaty of Peace, Amity, Navigation, and Commerce between
the United States and Colombia, 9 Stat. 881 (Entered into
force June 10, 1848) ...........................................................................   12, 21

Hague Convention on the Taking of Evidence Abroad
(March 18, 1970) .................................................................................   13-14, 16

**Other**

Restatement (Second) of Conflict of Laws. (1971)  ........................   23

Eldon E. Fallon, et. al., *Bellwether Trials in Multidistrict
Litigation*, 82 Tul. L. Rev., 2323 (2008). ..........................................   3

Colombian Ley 1426 of 2010 (December 29, 2010) .......................   5

Sentencia C-290/12, Constitutional Court of Colombia (2012) ....................   6

## FACTUAL SUMMARY

The Court is already familiar with the background facts of the case.  On July 24, 2014, the 11th Circuit Court of Appeals dismissed Plaintiffs' claims under the Alien Tort Statute, citing Kiobel v. Royal Dutch Petroleum Co., 133 S.Ct. 1659 (2013), and not reaching any of the questions certified for interlocutory review.  Petitions for panel rehearing and rehearing *en banc* were denied, as was a motion to stay the mandate, and a motion for reconsideration.  Two Petitions for Writ of Certiorari were filed with the Supreme Court, one by undersigned counsel and another by Paul Hoffman, representing other plaintiff groups.  On April 20, 2015, the Supreme Court denied certiorari for both petitions.

Two types of claims remain in the District Court, however, which were never dismissed.  First, the Plaintiffs still have extant claims based on Colombian law, which were brought in diversity.  See Order Granting in Part and Denying in Part Plaintiff's Motion for Reconsideration, March 27, 2012.  R. 516.  Second are the Plaintiffs' Torture Victim Protection Act claims for torture and extrajudicial killing against individual defendants.  See Opinion and Order, June 3, 2011, R. 412 at 95.  These are the two remaining claims that the Defendant seeks to dismiss.  The "individual defendants" have filed separate motions to dismiss, to which the plaintiffs are responding separately.

## SUMMARY OF ARGUMENT

The Court should deny the Defendant's renewed motion to dismiss for *forum non conveniens*.  The Defendant cannot overcome the strong presumption in favor of the

Plaintiffs' chosen forum,[1] because the whole case cannot be heard in a Colombian court, and because the most convenient forum is in the United States.  There is no adequate forum in Colombia that can hear the whole case.  Colombian courts don't have personal jurisdiction over the Individual Defendants,[2] over Defendant Boies Schiller & Flexner, LLP, or subject matter jurisdiction over all of the claims at issue.

The most convenient forum is also in the United States.  Our federal courts have procedures for resolving mass tort cases that don't exist in Colombia.  This case can be readily litigated in the United States using bellwether trials, bifurcated proceedings, and other case management tools common in mass tort litigation.  The Defendant's plan - to hold an individual trial for each of the thousands of claims - would be unworkable in either the U.S. or Colombia, and is not how mass tort cases are normally resolved.[3]  If the Defendant insists on thousands of individual trials, it should not be heard to complain that it would be overly burdensome to have them in the United States.  And even if this did occur, the burden would be on the plaintiffs to bring all these witness to the U.S.

On the other hand, if only a few dozen cases are brought to trial in this Court as bellwether cases, nearly all of the evidence will be in the United States.  The main contested issue in this case is the Defendant's intent.  Was Chiquita the victim of

---

[1] To be more accurate, the forum was chosen by the Joint Panel on Multi District Litigation, which transferred the case to the SDFL from the District of Columbia.  The Defendant is in effect requesting a second venue transfer, after its motions to transfer these cases pursuant to 28 U.S.C. § 1407 were granted.

[2] The plaintiffs represented herein sued the ten individuals referenced in the criminal case, referred to only as "Individual A .... Individual J," as well as Chiquita Brands International, Inc.  Other plaintiff groups, not represented herein, amended their complaints in 2012 to name up to eight of the individuals believed to be Individuals A-J in the criminal complaint.  The identities of the others are known to Defendant Chiquita Brands but are unknown to the Doe Plaintiffs.

[3] It is also not procedurally possible to implead third party defendants in Colombia, as the Defendant desires to do.  According to imprisoned AUC commander Raul Hasbun, his unit (the Frente Arlex Hurtado of the Bloque Bananero in Uraba) was paid by approximately 270 different "bananeros" - a term that includes both corporations and individual banana farmers, and by thousands of other companies and individuals.  Chiquita would have to open a new and separate case against each co-defendant in Colombian court.

extortion, or a willing participant in the AUC's campaign?  The resolution of this issue will depend largely on the testimony of Chiquita's employees,[4] whose knowledge, motives, intentions, and acts can be imputed to the corporation.[5]  The Court can then determine liability, which is a common issue to be decided only once for all claims.

Causation is more difficult, since the facts of each individual case are different. The Court could, however, define summary judgment standards for causation, and narrow down the cases considerably in summary judgment.  For example, if an AUC member responsible for a particular murder has been found guilty in a Colombian court, and the Defendant cannot reasonably put this verdict into dispute, causation has been established, and summary judgment in favor of the plaintiff should be in order.  Conversely, if a Colombian court had determined a murder to have been committed for personal reasons, and the plaintiff cannot reasonably put causation into dispute, the case could be dismissed.  The location of the murder could also be considered at this stage.  Only cases with material facts reasonably in dispute present problems of causation.

The third issue is damages.  In mass tort litigation, damages may be estimated based on the outcomes of bellwether trials, and applied to all claims.[6]  Thus, liability and damages may be determined by the MDL Transferee Court with relative ease, leaving only causation.  After summary judgment standards have been applied, the Court may

---

[4] Chiquita's Special Litigation Committee interviewed 51 individuals, almost all of whom worked in the United States, to prepare its defense.  See Wolf Declaration ¶ 4, attached hereto, which recites their names.

[5] The testimony of AUC members having dealings with the Defendant will also be relevant to determining Chiquita's intent.  Most of the top AUC commanders with personal knowledge are in prison in the United States.  See Exhibit 3, *Truth Behind Bars - Colombian Paramilitary Leaders in U.S. Custody*, International Human Rights Law Clinic, U.C. Berkley School of Law (2010), attached hereto. The Doe Plaintiffs also have witnesses who were banana farm workers, who can testify as to whether the relationship was cooperative or hostile, see e.g., Complaint, Does 1-254 v. Chiquita Brands, at ¶¶ 311-312, but will stipulate to making these witnesses available for trial in the United States.  See Wolf Decl., attached hereto at ¶ 3.

[6] See Eldon E. Fallon et al, *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev., 2323 (2008), for a comprehensive survey of the case management tools used in mass tort litigation.

revisit the issue of *forum non conveniens* for cases in which causation is genuinely in dispute.[7]   The Court may decide to conditionally dismiss these cases, subject to a Colombian court's taking jurisdiction over them.

The details of the convenience factors are argued herein in sections numbered to correspond to those in Chiquita's Motion.  The Court may simply place the briefs side by side, to compare the weight of the arguments made by each party on each point.  The analytical method for weighing them is set forth very precisely in <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501 (1947), and is followed in this Circuit.  <u>See Aldana v. Del Monte Fresh Produce, N.A. Inc.</u>, 578 F.3d 1283 (11th Cir. 2009).  The Defendant will face impossible problems at every stage.  The first section of this brief, which concerns statute of limitations, is made only for the purpose of preserving the arguments, since Chiquita's limitations arguments are only aimed at "new claims" filed by other counsel.

In summary, the Court should complete its task of coordinating discovery, and then decide the issues common to all claims.  It should hear several dozen bellwether cases, and then leave it up to the parties whether to settle the remaining ones, or engage in an lengthy series of proceedings to litigate causation.  Dismissing this case, with no real way to litigate it in Colombia, will deprive the Doe Plaintiffs of any remedy at all.

**ARGUMENT**

**I.    The Doe Plaintiffs' claims are not barred by the applicable statutes of limitations.**

None of the Doe Plaintiffs represented herein are "new plaintiffs" as defined by Chiquita, which does not seek to dismiss their claims.  <u>See</u> R. 714 at 8-11.  Does 1-144

---

[7] It is unknown to what extent a Colombian judge would consider himself bound by principles of <u>res judicata</u> to findings made by a foreign court.  Colombian judges are autonomous and are not bound by precedent the way U.S. judges are.

4

filed the first complaint in this MDL, about three months after the criminal case was unsealed on March 19, 2007. Does 1-976, 1-677, and Does 1-254 filed their complaints on March 9, 2010. Does 1-97, who are suing Boies Schiller & Flexner LLP, are also plaintiffs in one of the four other complaints. Since there is no motion to dismiss the "old plaintiffs" represented herein, the Court need not consider Defendant's arguments with respect to them.

Regardless, the Defendant's argument that D.C. law applies to statutes of limitations in incorrect. The Defendant relies on Van Dusen v. Barrack, 376 U.S. 612, 639 (1964) for the premise that "[i]n an MDL action, the forum state is the state from which the case was transferred." R. 741 at 19. There is nothing on page 639 of the Van Dusen opinion to support this argument. The forum in Van Dusen was the transferee court, and this is the plain meaning of the word "forum." Van Dusen wasn't even a Multi District Litigation case. It concerned a transfer of venue under 28 USC 1404(a). The instant cases were transferred pursuant to 28 USC 1407, which authorizes such transfers upon a determination that they will be "for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 USC 1407(a). The issue in Van Dusen was whether the plaintiffs qualified as personal representatives of the decedents. This was a substantive issue of state law. The Van Dusen case has nothing to say about which state's statute of limitations should apply in the instant case. The Southern District of Florida is the forum for this case, at least at this stage.

Chiquita further argues that in the District of Columbia, different statutes of limitations apply to claims for wrongful death, assault and battery, and negligence. R. 714 at 8-11. However, the claims at issue, brought under Colombian law, are in the

nature of war crimes and crimes against humanity, for which there is no statute of limitations in Colombia. Colombian Law 1426 (December 29, 2010) had provided for a 30 year statute of limitations for genocide, forced disappearance, torture, murder of unionists, journalists and human rights defenders, and forced displacement.[8] Two years later, in Sentencia C-290/12, the Constitutional Court of Colombia relied on the Rome Statute of the International Criminal Court and other authorities to hold that there can be no statutes of limitations for war crimes or crimes against humanity, in order for Colombia to comply with the Rome treaty. See Exhibit 4, attached hereto, at 2.[9]

In the U.S., claims for war crimes and crimes against humanity are brought under the Alien Tort Statute, for which the statute of limitations is ten years plus equitable tolling. See Cabello v. Fernandez-Lorios, 157 F. Supp. 2d 1345, 1363 (SDFL 2000). When this issue has been properly briefed for the Court, it should apply the statute of limitations for ATS claims, which is the applicable "forum law" for the Colombian law claims.

**II.     The Court should not dismiss this case for *forum non conveniens*.**

Under the doctrine of *forum non conveniens*, a district court has the inherent power to decline to exercise jurisdiction over a case when an adequate, alternative forum is available. C.A. La Seguridad v. Transytur Line, 707 F.2d 1304, 1307 (11th Cir. 1983), citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506–07 (1947). The court must "weigh relative advantages and obstacles to fair trial" in each forum, considering factors of

---

[8] Codified in Paragraph 2 of Article 83 in the Colombian Penal Code.
[9] Counsel hasn't translated this decision, since there is no motion pending to dismiss these "old claims," but is merely trying to avoid waiving the argument. The point is simply that the applicable "forum law" for Colombian law claims should be the ten year statute of limitations under the ATS.

private and public interest.  330 U.S. at 508.  In the 11th Circuit, dismissal for *forum non conveniens* is appropriate when the following four  tests are met:

(1) the trial court finds that an adequate alternate forum exists which possesses jurisdiction over **the whole case, including all of the parties**;

(2) the trial court finds that **all** relevant factors of private interest favor the alternate forum, weighing in the balance a **strong presumption** against disturbing plaintiffs' initial forum choice;

(3) if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; **and**

(4) the trial judge **ensures** that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice.

Aldana v. Del Monte Fresh Produce, N.A. Inc., 578 F.3d 1283, 1290 (11th Cir. 2009).[10] (emphasis added)  These factors will be argued in turn infra.

## A.  No adequate forum exists in Colombia which would have jurisdiction over the whole case and all parties.

A district court may not rely on a mere "justifiable belief" in the adequacy of a foreign forum.  Bank of Credit & Commerce Int'l Ltd. v. State Bank of Pakistan, 273 F.3d 241, 247-248 (2nd Cir. 2001)   Keeping in mind that the defendant bears the burden of proof of the adequacy of the foreign forum, the district court must engage in a full

---

[10] An earlier case had suggested that public interest factors should always be considered as part of the analysis, rather than only in select cases where the private interests are at or near equipoise.  SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1100 n.5 (11th Cir. 2004).  In Aldana, however, the court returned to the four factor test which is not only the standard in the Supreme Court and other circuits, but is also followed by Florida State Courts.  See Kinney Sys., Inc. v. Cont'l Ins. Co., 674 So.2d 86, 93 (Fla.1996) ("[W]e are persuaded that the time has come for Florida to adopt the federal doctrine of *forum non conveniens*.").  Therefore, the Court should only reach step three in the analysis, and consider the public interest factors, if tests #1 and #2 are met.  578 F.3d at 1290.

analysis of the question and examine all submissions to support a finding that the foreign forum is adequate.  Id.

> 1.  **Colombian courts do not have jurisdiction over the "whole case" or over "all parties" because they do not have jurisdiction over the Doe Defendants.**

As an exhibit to its Motion to Dismiss for *Forum Non Conveniens,* R. 741-14, the Defendant submitted the declaration of John Hall, who stipulated that Chiquita would waive service of process and statute of limitations defenses if the suits were dismissed and refiled in Colombia.  Id. at ¶ 2.  In 2004, Chiquita sold its Colombian subsidiary, Banadex, and no longer has any presence in Colombia.  But for the declaration of Mr. Hall, Colombian courts would not have jurisdiction over the Defendant.

Mr. Hall states that Chiquita will make "all knowledgable witnesses and all relevant, non-privileged documents located in the United States under Chiquita's control" available voluntarily to a Colombian civil court.  Id. at ¶ 2.  However, we are not talking about witnesses - we are talking about co-defendants and whether a Colombian court would have personal jurisdiction over them.  Colombian prosecutors have tried unsuccessfully to extradite a number of the Defendant's employees, who are at risk of criminal prosecution if they travel to Colombia, which has no statute of limitations for war crimes.  It's unlikely that individuals who were indicted in Colombia would go there voluntarily.[11]  Unless the Defendant can somehow prove it has the power to compel these individuals to travel to Colombia, a Colombian court could not hear the "whole case" and would not have jurisdiction over "all parties" to the case.  578 F.3d at 1290.  Moreover, the identities of the Individual Defendants are not even known with certainty.  See Doe

---

[11] One presumed Individual Defendant, Charles Kaiser, bravely states that he'll voluntarily go to Colombia to stand trial.  R. 226.  None of the other individuals filing motions to dismiss have made such a bold statement.

Plaintiffs' Response to Individual Defendants' Joint Consolidated Motion to Dismiss Plaintiffs' Amended Complaints, which is being filed contemporaneously with this brief.

Presuming that the Individual Defendants could be brought to the dock in Colombia, suing them for violations of the Torture Victim Protection Act would be an impossible task to assign to a Colombian court. It is doubtful a Colombian court would have subject matter jurisdiction to hear these claims. If it somehow had jurisdiction, it would still have great difficulty interpreting this law. Colombia has a civil, rather than a common-law legal system. The Colombian legal system, which doesn't assign any precedential authority to case law, is much simpler. Colombian tort law is based on only a few simple legal codes. See Exhibit 1, the Declaration of Dr. Alex Alberto Morales Cordoba, attached hereto.[12] The three elements of a tort in Colombia - liability, causation and damages - must also be proven in the U.S.

Once this Court is satisfied that the conduct would be actionable in Colombia, of the elements of the torts, the burden of proof, the measure of damages, and other aspects of Colombian law, it may determine that no "real conflict" of laws requires the application of Colombian law. See § (B)(5) infra. In comparison, the resolution of legal issues pertaining to the Torture Victim Protection Act could only be resolved by asking the Colombian court to interpret conflicting decisions of U.S. Courts of Appeals.[13] The TVPA is hardly settled law. Therefore, there is no adequate forum in Colombia that

---

[12] Colombian law also incorporates international norms established by the Geneva Conventions and the Rome Statute for war crimes and crimes against humanity. A Colombian judge would cite to these treaties the same way he would cite to the Colombian legal codes, since they are self-executing and have no enabling legislation. See Exhibit 4. Dr. Morales was not asked to opine on this topic. See Exhibit 1.
[13] We are unaware of any Colombian choice of laws rules comparable to Florida's rule that forum law may be applied unless a "real conflict" of laws exists. This would almost certainly present novel issues for a Colombian court.

could hear the whole case, even if the identities of the Doe Defendants were ascertained, and they could be compelled to stand trial in Colombia.

### 2. Colombian courts do not have jurisdiction over Defendants Boies Schiller & Flexner, LLP.

Ninety-seven of the Doe Plaintiffs are suing Boies Schiller & Flexner, LLP, for tortious interference, fraud, and other business torts. (Case No. 13-80146-CIV-MARRA). A Colombian court wouldn't have personal jurisdiction over Boies Schiller & Flexner, LLP, which has no presence in Colombia.[14] These claims are not trivial, and involve serious allegations of fraud and attorney misconduct. Since a Colombian court wouldn't have jurisdiction over them, those plaintiffs would be left without any remedy, based on a discretionary decision of the Court. A remedy is inadequate when it amounts to "no remedy at all." Piper Aircraft, 454 U.S. at 254.

It would be difficult to completely sever these claims from the others, since the measure of damages will depend on the value of the underlying cases. These 97 individuals are also plaintiffs in the various complaints against Chiquita Brands, with duplicate claims filed both by undersigned counsel, and by Boies Schiller & Flexner, LLP. Since these claims are not severable, cannot be heard in a Colombian court, and are not insignificant (they relate to 97 wrongful deaths), no forum in Colombia is available to hear the whole case, or has jurisdiction over all parties. Therefore, there is no adequate forum in Colombia.

### B. Private interest factors cannot overcome the presumption against disturbing Plaintiffs' initial forum choice, and do not all favor litigating this case in Colombia.

---

[14] Of course, Boies Schiller & Flexner LLP could waive jurisdictional and statute of limitations challenges in Colombia, but have not done so.

Under both <u>Aldana</u> and <u>Gilbert</u>, if the Court finds that Colombian courts can provide an adequate forum for the whole case and all parties, it may then consider whether **<u>all</u>** private factors overcome the strong presumption against disturbing Plaintiffs' initial forum choice.   578 F.3d at 1290.   These include the relative ease of access to sources of proof; the ability to obtain witnesses; and "all other practical problems that make trial of a case easy, expeditious and inexpensive." <u>Gilbert</u>, 330 U.S. at 508.  This is even more difficult than the first test, and cannot be met for numerous reasons.

     **1.**     **The Defendants cannot overcome the presumption against disturbing the Plaintiffs' initial choice of forum.**

A plaintiff's choice of forum is entitled to deference and should "rarely be disturbed" by dismissal on *forum non conveniens* grounds.  <u>Piper Aircraft v. Reyno</u>, 454 U.S. 235, 257 (1981).  Although a foreign plaintiff's choice of a U.S. forum may suggest forum shopping and therefore be entitled to less deference, dismissal of foreign plaintiff's action should still be the exception rather than the rule.  <u>Lony v. E.I. Du Pont de Nemours & Co.</u>, 933 F.2d 604, 608 (3rd Cir. 1991); <u>Liquidation Comm'n of Banco Intercontinental, S.A., v. Renta</u>, 530 F.3d 1339, 1356-1357 (11th Cir. 2008) (although foreign plaintiff's choice of forum enjoys weaker presumption than domestic plaintiff's choice, district court did not err by concluding that private and public interest factors were in equipose and thus that the presumption in favor of foreign plaintiff's chosen forum should govern).

The 2nd Circuit's jurisprudence in this area is more developed than ours.  Their view is that the degree of deference to the plaintiff's choice of forum should be dictated by legally valid motives of convenience, rather than by improper motives related to

forum shopping.[15]   Here, the Doe Plaintiffs sued in the United States because there was

clearly personal jurisdiction, while there was no personal jurisdiction in Colombia.  742

F.Supp. at 163; Declaration of John Hall, R. 150-1.

        The 2nd Circuit has held in numerous cases that provisions in Treaties of Peace,

Friendship, Navigation and Commerce between the U.S. and foreign countries affording

foreign nationals equal access to U.S. courts require that those plaintiffs' choice of forum

must be given the same deference to which an American plaintiff is entitled.[16]   The

United States and Colombia have this kind of agreement.  See Exhibit 2, Treaty of Peace,

Amity, Navigation, and Commerce between the United States and Colombia, 9 Stat. 881

(Entered into force June 10, 1848).  Article 13 of this treaty states that:

> Both contracting parties promise and engage formally to give their special
> protection to the persons and property of the citizens of each other ... **leaving
> open and free to them the tribunals of justice for their judicial recourse, on
> the same terms which are usual and customary with the natives or citizens of
> the country**...

9 Stat. 881.  See Farmanfarmaian v. Gulf Oil Corp., 588 F.2d 880, 882 (2nd Cir. 1982)

(deference where treaty allowed foreign nationals access to our courts "on terms no less

favorable" than those applicable to U.S. citizens).   Therefore, since the presumption

should "rarely be disturbed," Piper Aircraft v. Reyno, 454 U.S. at 257 (1981), the

Defendant's Motion to Dismiss should be denied.   530 F.3d at 1357.   This also

---

[15] See Iragorri v. United Techs. Corp., 274 F.3d 63, 70-73 (2nd Cir. 2001) (en banc).  Legitimate reasons
for selecting a forum include choosing a forum where the defendant is clearly subject to personal
jurisdiction, Mutual Export Corp. v. Westpac Banking Corp., 742 F.Supp. 161, 163 (S.D.N.Y. 1990), or
where conducting discovery against the defendant will be convenient.  Schertenleib v. Traum, 589 F.2d
1156, 1164 (2nd Cir. 1978) ("the deference accorded the plaintiff's choice of forum is enhanced when the
plaintiff has chosen a forum in which the defendant maintains a substantial presence").
[16] See, e.g. Blanco v. Banco Industrial de Venezuela, 997 F.2d 974, 981 (2nd Cir 1993); Irish Nat'l. Ins.
Co., Ltd. v. Aer Lingus Teoranta, 739 F.2d 90, 91-92 (2nd Cir. 1984); Murry v. British Broadcasing Corp.,
81 F.3d 287, 291 n.1 (2nd Cir. 1996) (listing in dicta more than a dozen similar treaties).

demonstrates the injustice of allowing American plaintiffs to sue under the ATA, while providing no remedy for Colombian plaintiffs making far stronger claims.

> **2.      Relevant Evidence will be more accessible if Plaintiffs' Claims are litigated in the United States.**

>> **a.      The Sources of Key Evidence are Physically Located in the United States.**

The main issue for trial is the Defendant's intent and affirmative defense of duress. The Defendant's intent is best proven through testimony of its employees and agents, most of whom are in the United States. For example, in the investigation made by Defendant's Special Litigation Committee ("SLC"), a total of 51 witnesses were interviewed.[17] Almost all of them are in the United States. Six are listed as Banadex employees and are presumably in Colombia. So according to Chiquita's own investigation, 88% of the witnesses with relevant information (for the common issue of liability, at least) are in the United States. Likewise, "document review" of Chiquita's business records would almost entirely be of English-language records located in the United States. "Document review" is the often most burdensome aspect of federal litigation. As argued <u>infra</u> at § B (2)(b), a Colombian judge would have difficulty resolving the complex discovery disputes that arise in our system, which are unknown in Colombia, and would have to be communicated by a Magistrate or Special Master through Hague Convention requests.

---

[17] The persons interviewed included Fernando Aguirre, Morten Arntzen, Jeffrey Benjamin, John Braukman III, Robert Fisher, Cyrus Freidheim, Clare Hasler, Roderick Hills, Durk Jager, Robert Kistinger, Warren Ligan, Carl Lindner, Keith Lindner, Rohit Manocha, Robert Olson, James Riley, Fred Runk, Jaime Serra Director, Steven Stanbrook, Gregory Thomas, William Tsacalis, William Verity, Steven Warshaw, Jeffrey Zalla, Jack Devine, Dennis Doyle, Ronald Goldstock, Jennifer Hammond, Audrey Harris, David Hills, Barbara Howland, Michael Kesner, Steven Kreps, Elliott Leary, Jeffrey Maletta, Edwin Pisani, Christopher Reid, Indra Rivera, Thomas Schoenbaechler, Jorge Solergibert, James Thompson, Robert Thomas, Dick Thornburgh, Laurence Urgenson, and 9 additional individuals whose names were not disclosed. <u>See</u> Report of the Special Litigation Committee, Chiquita Brands International, Inc., R. 202-4 at 18-23.

Colombian paramilitaries may also testify to facts which objectively show the Defendant's intent. Four of the seven important AUC witnesses are in the United States, not Colombia. See Declaration of Paul Wolf, at ¶¶ 5-7; Exhibit 3, *Truth Behind Bars - Colombian Paramilitary Leaders in U.S. Custody*, International Human Rights Law Clinic, U.C. Berkley School of Law (2010). One of the three in Colombia, Raul Hasbun, has told undersigned counsel on two occasions that he will voluntarily testify. Of the remaining two, even if Fredy Rendon Herrera is released, he will have to meet with a parole officer on a weekly basis for a period of several years.[18] The remaining witness, Luis Arnulfo Tuberquia, is in Bella Vista prison in Medellin and is not eligible to be released under the Justice and Peace law. Therefore, since most of the paramilitary witnesses are in the United States, and the ones in Colombia are readily available to testify, on balance these witnesses favor litigating the case in the United States.

The Defendant also argues that Plaintiffs will call Colombian General Rito del Rio Alejo, in order to disprove the symbiotic relationship between the Colombian government and the AUC in Urabá. However, the findings of the military court that sentenced General del Rio Alejo should establish this fact. In other cases, the Colombian Supreme Court has already determined that the *convivires* in Uraba, while civilian auxiliaries to the army, were front groups for the AUC. The Doe Plaintiffs do not attempt to prove a symbiotic relationship everywhere in Colombia, but only in Urabá. The possibility that the Defendant would call Colombian military officers as witnesses to disprove the symbiotic relationship is speculative, since the Defendant has never identified any, and does not favor dismissal for *forum non conveniens*.

---

[18] The other plaintiffs' counsel apparently intend to call other paramilitary witnesses based on their own criteria and relationships with them. The seven witness we name are simply the top AUC commanders in the Uraba region.

       **b.**     **It would be substantially more difficult to access key evidence if Plaintiffs' claims were litigated in Colombia rather than the United States.**

The Defendant's arguments about the difficulty of an American court to command the presence of Colombian witnesses are identical when the shoe is placed on the other foot.  Colombian courts can't issue subpeonas in the United States either.  Evidence must be obtained through Hague Convention requests or Letters Rogatory.  Either way, a miscellaneous case would have to be opened in a U.S. District Court pursuant to a request from the Colombian judiciary.

The complexity of discovery and privilege in the federal courts are completely unknown in Colombia.  A Colombian court would not have a good perspective on the scope of the discovery requests made, and the U.S. judge would not have the perspective as to what was relevant or admissible in the Colombian proceedings.[19]  It is unlikely the two judges could communicate with each other very well, due to the language barrier.  Disconnecting the discovery, and in particular the production of documents, from the rest of the case would not make it more convenient.

In the reverse situation, with the case before a federal judge, it's unlikely that complex discovery issues would arise with respect to evidence in Colombia.  We doubt the Defendant even keeps any documents in Colombia, since it sold its Colombian

---

[19] This case may also have technical privilege issues related to witness payment practices.  Mr. Collingsworth admits discussing with Raul Hasbun hiring him as an "expert witness," and claims this was Mr. Hasbun's idea.  See R. 807 at 8.  "Plaintiffs did explore, with Raúl Emilio Hasbún Mendoza and a confidential source who is a Colombian lawyer and who also served as the contact person for Plaintiffs' discussions with Hasbún, the possibility of retaining Hasbún as an expert witness or compensating him for his time spent researching facts relating to his relationship with Chiquita and Dole."  Id.  Numerous proceedings involving Drummond, in AL, FL and the 11th Circuit involve whether this kind of evidence is discoverable, and a RICO Complaint has been filed in case 15-cv-506 (NDAL) which addresses the reach of this conspiracy into the Chiquita case.  It is hard to imagine how a Colombian court system could resolve these kinds of issues, which are bound to plague this case in the future.  In addition, relevant evidence pertaining to witness payments, which has not been produced to date, is in the United States.  Primarily in the bank records of Conrad & Scherer and International Rights Advocates, but also in the files of law firms such as Parker Waichman LLP.

subsidiary more than ten years ago.  The Plaintiffs have scanned all of their case files, and will produce their documents as Rule 16(a) disclosures when discovery is allowed. The burden of taking a deposition is the same regardless of which court hears the case.

It is also relevant that the Colombian prosecutors' office has been unsuccessful in obtaining the extradition of Defendants' employees, some of whom are co-defendants in this action, since at least 2007.  See Wolf Declaration, attached hereto, at ¶¶ 8-10.  In the face of these unsuccessful extradition attempts, the Defendant cannot show that it may procure the presence of these individuals in Colombia, even as witnesses.

> **3.**      **Coordinating discovery and litigating common issues in a single forum will promote efficiency and ensure consistency.**

The discovery required to resolve the common issues in this case is in the United States.  In particular, the Plaintiffs will request the production of the Defendant's corporate records, which, on information and belief, are located at Chiquita's corporate headquarters in North Carolina.[20]  The Plaintiffs will produce all of the documentary evidence[21] in their case files without objection.  The trial judge should be able to communicate and coordinate with the Magistrate Judge or Special Master charged with resolving discovery disputes, reviewing the parties' privilege logs, and perhaps reviewing materials *in camera*.  Otherwise, the Colombian court would have to communicate with the judge overseeing discovery through Hague Convention or Letters Rogatory requests.

---

[20] When the first complaint, Does 1-144 v. Chiquita Brands was filed in 2007, Chiquita was headquartered in Ohio.  As of this writing, Chiquita's corporate headquarters is in North Carolina.  It was reported in the news that the Brazilian Cutrale and Safra Groups had successfully completed a tender offer to buy Chiquita Brands, International, Inc., but on information and belief, the Defendants' corporate records and witnesses are still located in the United States.

[21] The Plaintiffs will withhold the intake forms, interview notes, and checklists as work product, as well as the retainer agreements between attorney and clients.  The other documents in the case files: death certificates, birth certificates, police and autopsy reports, correspondence with Accion Social and the Justice and Peace unit of the Fiscalia, newspaper reports, photographs, and the like, will be produced as Rule 16(a) disclosures.

This Court should also coordinate discovery between the ATS and ATA (Anti Terrorism Statute) cases.  The ATA cases allege similar facts about Chiquita's relationship with the FARC as do the Does 1-254 Plaintiffs. The FARC victims and the ATA plaintiffs seek the same discovery to prove the Defendant's intent, and the Court has already permitted discovery for the ATA cases.  These cases, the TVPA claims against individual defendants, and business tort claims against Boies Schiller & Flexner LLP, are intertwined and involve common discovery, which the MDL Transferee Court is tasked with coordinating.

4.   **Chiquita's purported strategy to implead other companies for contribution is not possible under Colombian law.**

The Defendant argues that there are other parties in Colombia that it wants to implead in a Colombian court for contribution.  See R. 741 at 33-35.  The Defendant argues that the present action should be joined with these hypothetical cases the Defendant may file.  However, there is no procedure in Colombian law equivalent to F.R.C.P. 14 for impleading third parties.  Chiquita would have to sue each Colombian banana company separately for contribution in a separate civil action.[22]  Assuming it were even possible to implead potentially hundreds[23] of Colombian banana companies as co-defendants, this would not make the case more convenient.

That additional co-defendants could be sued in Colombia is not a factor favoring dismissal, and those hypothetical co-defendants are not a part of any existing case.  Since Defendant's argument is speculative, the Court should not place any weight on it.  If the

---

[22] Chiquita could sue several of those companies in U.S. proceedings now.  The largest Colombian banana exporters in Uraba have a presence in the U.S. and "do business" in some U.S. state on a continuous basis, providing general personal jurisdiction.  In the eight years since the first complaint was filed, the Defendant has made no effort to take any legal action against them in the United States or Colombia, at least to our knowledge.  The first time this came up was in the Defendant's prior *forum non conveniens* motion. R. 502.
[23] As explained in more detail in § C 2 infra, there are approximately 270 banana companies, and hundreds of other companies, which allegedly paid the AUC in Urabá.

Court does take it into account, it should find that the existence of F.R.C.P. 14 (Third Party Practice) favors litigating in the United States. Plaintiffs cannot prove a negative, that no such rule exists in Colombia, and have no burden to do so. The burden is on the movant to show that a proceeding in Colombia would be more convenient.

Finally, proceedings in Colombia would threaten a group of companies long associated with the AUC, including Raul Hasbun's own company, Unibán, which now dominates Urabá. Those companies wield enough political power to change the outcome of any Colombian legal proceeding.[24]

### 5. It will be easier to enforce a judgment of a U.S. District Court than a Colombian court, since the Defendants no longer have any presence in Colombia.

The Defendant argues that a Colombian judgment is more enforceable than the judgment of a U.S. court. In theory, they should be equally enforceable. However, Chiquita is still (we believe) headquartered in the United States, and still has significant assets here. In contrast, Chiquita sold its Colombian subsidiary, Banadex, in 2004, and no longer has any presence or assets there. A Colombian judgment would have to be enforced in another country, most likely the United States. Since a U.S. judgment is more easily enforced, this factor weighs against dismissal.

Chiquita's argument that class actions are not recognized in Colombia is irrelevant to the Doe Plaintiffs, who would opt out of any certified class in the unlikely event a class

---

[24] The Court may note that two of the persons submitting Declarations as Exhibits to this Memorandum, Dr. Alex Morales and Dr. Luis Fajardo, both testify that they have received death threats in relation to their human rights work. Dr. Fajardo states that he was provided with armed bodyguards by the Colombian government, due to threats made in relation to his work on the instant case. Exhibit 5 at ¶¶ 27-34. Dr. Morales lived in exile in Canada for ten years due to death threats unrelated to this case, recently returned, and was threatened again. The threats made against Dr. Morales do not relate to this case, but still show how lawless a place Colombia is. Exhibit 1 at ¶ 2.

were ever certified.[25]   The framework proposed herein, using bellwether trials and leaving it up to the parties whether to settle the remaining cases, doesn't deprive any party of their right to trial for a particular incident.  Chiquita's argument that class actions don't exist in Colombia is really another argument that a U.S. forum is more convenient.

**C.      Public interest factors favor litigating the case in the United States.**

Should the Court be convinced that a Colombian court would have jurisdiction over the **<u>whole case</u>** and **<u>all defendants</u>**, and that **<u>all</u>** private interest factors favor litigation in Colombia, it should **<u>then</u>** consider the public interest factors.  Public interest factors include: court congestion and jury duty generated by controversies having no relation to the forum; the desirability of having localized controversies decided at home; and the difficulties attendant resolving conflict-of-laws problems and applying foreign law.  <u>Gilbert</u>, 330 U.S. at 508–09.

The four complaints at issue were filed in the District of Columbia, where the criminal case was heard, and then transferred, on Defendant's motion and over Plaintiffs' objections, by the Joint Panel on Multi District Litigation.   The MDL transfer was intended to reduce court congestion and simplify the case.  The strategy announced by Chiquita will impose impossible burdens on Colombian courts and on the Plaintiffs.

**1.      The U.S. and Colombia have equal interests in this litigation.**

Both Colombia and the United States have policies and laws to prevent individuals and corporations from financing terrorist organizations.   It is a criminal

---

[25] It's widely recognized that mass torts are not certifiable as class actions, since causation is not a common issue.  In eight years of litigation, no motion for class certification has ever been made.  We view the class action allegations in the "New Jersey Complaint" as a sham, and would opt out of any class.  Additionally, attorneys involved in the purported class action worked with Mr. Collingsworth on fraudulent lawsuits against <u>Drummond</u> and <u>Chevron</u>, and are currrently trying to prevent the discovery of witness payment evidence in the instant case.  (the "putative intervenors" in Case No. 15-11956 in the 11th Circuit)

offense in both countries to do so. Chiquita was prosecuted criminally in the United States for the conduct alleged herein. Colombia tried unsuccessfully to extradite Chiquita's employees for criminal proceedings in Colombia. In addition, the United States not only has an interest in preventing the financial support of terrorist organizations, it also has a duty to ensure that victims of criminal acts by American nationals have their day in court. If the U.S. doesn't honor this responsibility, then the state itself may be responsible. Therefore, the United States has at least as great an interest in this litigation as does Colombia, and perhaps more.

**2.     This litigation will impose a greater burden on Colombian Courts than on U.S. Courts.**

Colombian courts do not have procedures for bellwether trials and other aspects of American "complex litigation" of mass torts. The Defendant admitted as much, in a prior motion to dismiss for *forum non conveniens*, characterizing this case as a class action based on a complaint filed by Earthrights International. R. 150 at 25 ("there is no question under Colombian law that the judgment in Chiquita's favor would *not* be recognized by a Colombian court against any Colombian citizen who did not actively participate in the proceedings")[26] Since these abbreviated legal procedures don't exist in Colombia, Colombian courts would have to grapple with thousands of individual trials, even if the Defendant didn't go through with its plan to sue (potentially hundreds of) other banana companies for contribution.

The Defendant argued, three years ago, that it was also facing thousands of mediation cases in Colombia. "It would be grossly inefficient to litigate thousands of

---

[26] We're not arguing that the bellwether trials proposed herein would be recognized as binding on any plaintiff not participating in them. That would be an open question even in a U.S. court. The purpose of these procedures is to facilitate a settlement, and filter the viable claims using summary judgment standards.

claims in Colombia and the United States simultaneously." See R. 150 at 23. Apparently, nothing has happened in these cases since. The last mediation hearing was held on March 20, 2012, on behalf of 700 plaintiffs. See Declaration of Humberto de la Calle, R. 741-6 at ¶10. Before that, on December 16, 2010, a mediation hearing for 1000 other Colombian plaintiffs was held. Id. Mr. de la Calle states that it's uncertain whether these cases will ever proceed to court. Id. at ¶12.[27]

It seems doubtful that these mediation cases in Colombia would have any viability. For one thing, the type of claims presented, which are mostly for forced displacement, are not recognized in international law and were deliberately excluded from the instant case. Also, the claims originate far from Chiquita's banana farms in Urabá. Proximate cause will be hard to show. The Doe Plaintiffs doubt that these cases, if they are ever filed in court, present any kind of threat to the Defendant. The Defendant submits voluminous materials about these claims as exhibits, see R. 741-6, 741-7., but they are fewer in number than the U.S. claims, and no hearing has been held in any of those cases for over three years.

### 3.    Principles of international comity do not weigh in favor of dismissal.

On its face, the Defendant's argument that this Court would be intruding into an affair properly decided by a Colombian court, appears to have merit. In principle, it could be offensive to the Colombian courts if this Court were to judge matters that were properly within the jurisdiction of Colombian courts.

---

[27] The gravamen of the argument in Mr. de la Calle's affidavit, and of Defendant's other expert, Michael Shifter, see R. 741-5, appears to be that the plaintiffs can safely proceed in this action without using pseudonyms. This has nothing to do with the merits of the case, or whether it should be heard in the U.S. or in Colombia. We would provide the names of the the plaintiffs to Chiquita in discovery, and would do so now if Chiquita would agree to a protective order.

This Court should first consider, though, why it is that American plaintiffs, suing Chiquita Brands under the Anti Terrorism Statute, can have their day in court, while Colombian plaintiffs cannot. This is a great injustice and a **great insult** to the Colombian people. If the FARC killed several American missionaries, in incidents only remotely related to Chiquita's business, the claims are worth millions of dollars and merit, at least, wide-ranging discovery. However, if Chiquita intentionally conspired with the AUC to kill thousands of Colombians in the vicinity of Chiquita's farms, the murders do not "touch and concern the territory of the United States" with sufficient force to confer jurisdiction under the ATS. This reinforces the idea that justice is available only to the privileged.

As argued <u>supra</u> in §(B)(1), the Treaty of Peace, Amity, Navigation, and Commerce between the United States and Colombia, <u>see</u> Exhibit 2, is an enforceable contract promising to "leav[e] open and free to [Colombians] the [American] tribunals of justice for their judicial recourse, on the same terms which are usual and customary with the natives or citizens of the [United States]..." Comity would suggest that we honor the spirit of the treaty and provide a forum for the Colombians' claims.

Comity would also suggest that we help the Colombians in their efforts to discourage the funding of illegal armed groups. It sends the wrong message to the Colombian government, and to Americans, if there is impunity for crimes committed by Americans in Colombia. Colombia could at any moment have objected to this litigation, as many other countries have done in ATS cases. <u>See</u>, <u>e.g.</u>, <u>Kiobel</u>, 133 S.Ct. at 1676 (describing objections by the United Kingdom and Netherlands to that case). Instead, the Colombians have tried unsuccessfully to extradite some of the Individual Defendants in

22

this case.  The Defendant's argument that this case is somehow offensive to Colombian sovereignty ignores the fact that Colombian efforts to prosecute the perpetrators of these crimes have not been met with success.

> **4.    Claims based on Colombian law should present no real conflict with forum law.**

"While the application of foreign law is an important factor to be considered in weighing the public interests, this factor cannot be accorded dispositive weight."  SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1104-1105 (11th Cir. 2004).  See  DiFederico v. Marriott Intern., Inc., 714 F.3d 796, 808 (4th Cir. 2013) ("While applying foreign law might pose a burden, it is not enough to push the balance strongly in favor of [defendant] in the overall inquiry."); Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enterprise Fund, 589 F.3d 417, 426 (7th Cir. 2009) (fact that Bulgarian law governed only "slightly" favored dismissal for *forum non conveniens*); Technology Development Co. Ltd. v. Onischenko, 536 F.Supp.2d 511, 522 (D.N.J. 2007) ("Even if foreign law applied, that factor is not compelling enough to nullify the plaintiff's choice of a legitimate forum.")  "[T]he need to apply foreign law is not in itself a reason to apply the doctrine of *forum non conveniens* and courts must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must perform often."  Rogers v. Petroleo Brasilero, S.A., 741 F.Supp.2d 492, 509 (SDNY 2010) rev'd on other grounds, 673 F.3d 131 (2nd Cir. 2012).

In this Circuit, the first issue to be addressed is whether a real conflict of laws actually exists.  Jameson Cooper v. Maridian Yachts Ltd., 575 F.3d 1151, 1171 (11th Cir. 2009)  In other words, whether there is a "true" conflict, or a "false" one.   A false conflict occurs "when the laws of the competing states are substantially similar ...."

Fioretti v. Massachusetts Gen. Life Ins. Co., 53 F.3d 1228, 1234 (11th Cir.1995).  If a false conflict exists, "the court should avoid the conflicts question and simply decide the issue under the law of each of the interested states." Id.; Dresdner Bank AG v. M/V Olympia Voyager, 446 F.3d 1377, 1381 (11th Cir. 2006).  "[A] true conflict exists when two or more states have a legitimate interest in a particular set of facts in the litigation and the laws of those states differ or would produce a different result." Estate of Miller ex rel. Miller v. Thrifty Rent–A–Car System, Inc., 609 F.Supp.2d 1235, 1244 (M.D.Fla.2009).

If a true conflict of laws exists, this Court must follow the choice of laws rules followed by the state courts of Florida.  A federal court sitting in diversity will apply the conflict-of-laws rules of the forum state.  Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941).  Florida resolves conflict-of-laws questions according to the "most significant relationship" test outlined in the Restatement (Second) of Conflict of Laws. Bishop v. Florida Specialty Paint Co., 389 So.2d 999, 1001 (Fla.1980).  This could vary depending on the issue at hand. For example, an issue involving a witness or other evidence in the United States might be more related to the United States, while an issue involving whether a plaintiff is truly a legal heir might require the application of Colombian law.

The Court should not be concerned over choice of laws at this stage, or whether Colombian law may apply to certain aspects of this case.  The Court may find the Declaration of Alex Alberto Morales Cordoba, attached hereto as Exhibit 1, helpful in this regard.  Colombian tort law allows actions for either intentional or negligent conduct, puts the burden of proof on the plaintiff, and requires proof of three elements: liability,

damages and causation.  While it can't be denied that conflict of laws questions may arise, the application of Colombian tort law should present no special problems.  On the other hand, a Colombian court would have great difficulty applying the Torture Victim Protection Act, due to the many contested issues surrounding that law, to say nothing of our case law on discovery and privilege.

**D.     The Court cannot ensure that Plaintiffs can sue Defendants in Colombia without undue inconvenience or prejudice.**

In the event the Court finds all of the foregoing favors dismissal, it should then consider whether it can **ensure** that Plaintiffs can reinstate their suit in the alternate forum without undue inconvenience or prejudice.  Aldana, 578 F.3d at 1290.  In the instant case, the inconvenience and prejudice are extreme.  Undersigned counsel is not licensed to practice law in Colombia.  Colombian courts do not allow *pro hac vice* appearances by foreign attorneys, so any U.S. attorney participating in these cases would not be recognized by the court.  If Colombian attorneys tried to sue Chiquita in Colombia, they would need to obtain new powers of representation for the thousands of plaintiffs who filed in the U.S.[28]  This could only be partially successful, resulting in a substantial number of plaintiffs dropping out of the case.  Many of the plaintiffs from this rural area do not have telephones or street addresses, and can be hard to keep in touch with.  In addition, after eight years, many will have lost confidence, and will be less enthusiastic about starting all over again, particularly because they do not have confidence in their

---

[28] In Colombia, the lawyer must always file a "Power of Representation" in court, signed by the client. This is normally a separate document from the retainer agreement, which defines the terms of representation.  According to Colombian attorneys I have consulted with, the contracts I have signed with the plaintiffs would be inadequate for use in a Colombian court, even if I were licensed to practice law there.

own courts.   In practical terms, many plaintiffs would be dropped from the case, regardless of what efforts were made.

The Plaintiffs' lack of confidence in their own legal system is justified.  Even if this Court were to find that Colombian courts are more convenient, a defendant's right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments.  Wade v. Hunter, 336 U.S. 684, 689 (1949).  Colombian courts are notoriously corrupt.  As Professor Luis Fajardo demostrates in his declaration, see Exhibit 5 attached hereto, approximately 98% of the cases filed in Colombia for war crimes and crimes against humanity have been unsuccessful, a problem Human Rights Watch has termed "chronic impunity."  See World Report 2013, Human Rights Watch, Exhibit 6 attached hereto at 214.  As of this writing, there is a scandal in which the President of the Colombian Constitutional Court, Jorge Ignacio Pretelt, has been accused by another judge of accepting a $200,000 bribe from a multinational corporation in exhange for suspending a fine against the company. See Exhibit 7, attached hereto.[29]   A recent study by the *Centro de Estudios sobre Impunidad y Justicia* (Center for the Studies of Impunity and Justice, or CESIJ) of the Universidad de las Américas, Puebla, México found that the Colombian legal system was one of the least effective in the world.[30]   See Exhibit 8, *Indice Global de Impunidad 2015*, at 9.  ("The five countries with the highest levels of impunity studied by the IGI are the Philippines, México, Turkey, Colombia and the Russian Federation.")

---

[29] In addition, the presence of powerful armed groups in Colombia, with interests in this case, makes it dangerous to litigate in Colombia as well.  See Exhibit 5, Declaration of Luis Fajardo, at ¶¶ 27-34.  The threats received by Dr. Morales, see Exhibit 1 at ¶ 2, did not come from paramilitaries, but INPEC (Colombia's bureau of prisons) officials who feel threatened by his prison reform work.

[30] The CESIJ considered 193 UN member states and 14 other territories, but was only able to obtain statistically significant data for 59 of them.  Exhibit 8 at 8.  Colombia ranked within the top five of these 59 countries.  Id.

26

The Court may take note of what transpired in <u>Chevron v. Donziger</u> in the Southern District of New York. <u>See</u> Judge Kaplan's 400-page Memorandum Opinion, dated March 4, 2014 in Case No. 11-cv-00691-LAK-JCF.[31]  The S.D.N.Y. had dismissed the <u>Chevron</u> case for *forum non conveniens*.  It was refiled in Ecuador, resulting in a nine billion dollar judgment against Chevron, which Judge Kaplan found was procured by fraud.  The Colombian legal system is no better.  The Court is already aware of the witness payments at issue in the defamation and RICO cases, <u>Drummond v. Collingsworth</u>, Cases No. 11-cv-3695 and 15-cv-506 (N.D.Ala).  This problem would be worsened if the case were litigated in Colombia.

Various attempts have been made by Colombian prosecutors to extradite Chiquita's employees, always without success.  According to Alicia Dominguez, a prosecutor from Medellin assigned to the Chiquita case, she was told by a superior (the Vice Fiscal, or Assistant Attorney General, of Medellin) to close the case because it could "put the economy of the country at risk." <u>See</u> Exhibit  9, "Amenazada y sin puesto, exfiscal de caso Chiquita Brands," *El Tiempo*, February 24, 2012, attached hereto.  Ms. Dominguez was put into retirement and took her allegations to the press. <u>Id</u>.  I have met with Ms. Dominguez, who told me that as a former government official, she is not allowed to participate in civil cases that relate to her prior employment.  Mario Iguarán, the former Attorney General of Colombia who attempted to extradite Chiquita's employees, told me the same thing.  However, I believe that both could still be served with subpeonas pursuant to a Hague Convention request, and could testify without violating their oaths of office.

---

[31] Online at http://online.wsj.com/public/resources/documents/chevronruling.pdf

In March of 2012, the imprisoned commander of the Bloque Bananero of the A.U.C. in Uraba, Raúl Hasbún, gave an interview to *Semana* magazine, in which he discussed efforts by the Colombian attorney general (Fiscal General de la Nación) to prosecute Chiquita Brands:

> **SEMANA:** So you believe that the prosecution closed the Chiquita case and refrained from bringing charges to others so as not to affect the banana industry?
>
> **RH:** The reason is that there are several very important people within the political and economic establishment. I gave some lists to the Prosecutor's Office of 270 banana companies, 400 cattle ranchers, and there could be a few thousand businessmen. The prosecutor does not have the capacity to investigate what happened in Urabá, but in addition there is no political will. It would ruin the fifth line of the national economy that feeds the GDP, which is the banana. Shutting it down and leaving 300,000 people without jobs, and that creates more dead than I and guerrillas did for a long time.

See Exhibit 10, "El hombre que fue el cerebro de la paraeconomía," *Revista Semana*, 3/31/2012, attached hereto. Mr. Hasbún is the witness at the very center of this case. This evidence suggests that even if this case could be brought in Colombia, it would be unlikely to succeed due to political influences. Mr. Hasbun, Dra. Dominguez, and Dr. Iguaran should all agree on this.

## Conclusion

For the forgoing reasons, the Defendant's Motion to Dismiss for *Forum Non Conveniens* should be denied.

Respectfully submitted,

/s/ Paul Wolf

_____

Paul Wolf  CO Bar #42107
*Attorney for Does 1-144, 1-976,*
*1-677, 1-254, and 1-97*
PO Box 46213
Denver CO 80201
(202) 431-6986

paulwolf@yahoo.com
Fax: n/a

June 22, 2015

## Certificate of Service

I hereby certify, that on this 22nd of June, 2015, I electronically filed the foregoing Doe Plaintiffs' Opposition to Defendant's Renewed Motion to Dismiss for *Forum Non Conveniens*, Declaration of Paul Wolf, Esq., and all exhibits thereto, with the Clerk of Court using the ECF system, which will send notification of such filing to all persons entitled to receive such notices.

/s/ Paul Wolf

_____

Paul Wolf CO Bar #42107