**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-01916-MD-MARRA/JOHNSON**

In re: CHIQUITA BRANDS INTERNATIONAL,
INC. ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:

ATS Actions

       07-60821-CIV-MARRA
       08-80421-CIV-MARRA
       08-80465-CIV-MARRA
       08-80508-CIV-MARRA
       10-60573-CIV-MARRA

_____/

**PLAINTIFFS' OPPOSITION TO INDIVIDUAL DEFENDANTS' JOINT
CONSOLIDATED MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINTS**

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................................ 1

STANDARD OF REVIEW ................................................................................................................ 2

BACKGROUND ................................................................................................................................... 3

ARGUMENT ......................................................................................................................................... 4

I.  The Individual Defendants' Motion to Dismiss the *Does 1-144*, *Does 1-11*, *Montes*, and *Valencia* TVPA Claims is Foreclosed by Eleventh Circuit Precedent ............................ 4

    A.  Secondary liability is available for TVPA claims. ................................................... 4

    B.  The TVPA applies extraterritorially. .......................................................................... 4

    C.  Defendants have not met their substantial burden on exhaustion of remedies. ........... 5

        1.  Plaintiffs are not required to exhaust remedies that were unavailable when their claims were filed. ......................................................................... 6

        2.  Defendants nave not demonstrated that redress in Colombia is available. .......................................................................................................... 7

        3.  Defendants' conditional submission to the Colombian courts is inadequate and contravenes the purposes of the TVPA ......................... 9

    D.  Plaintiffs' TVPA claims are timely. ........................................................................ 10

        1.  Plaintiffs' TVPA claims were equitably tolled due to the civil conflict in Colombia ........................................................................................ 11

        2.  Fraudulent concealment also tolls the statute of limitations. .................. 12

    E.  Plaintiffs state claims under the TVPA. ................................................................. 13

        1.  Plaintiffs pled specific and concrete facts that demonstrate that the Defendants aided and abetted the AUC. ................................................... 14

            a.  Aiding and abetting requires knowledge, not purpose. ................ 14

            b.  Defendants' approval and concealment of illegal money transfers substantially assisted the AUC's abuses. .................... 15

        2.  Plaintiffs pled specific and concrete facts demonstrating that Defendants conspired with the AUC ..................................................... 17

            a.  The Individual Defendants conspired to illegally exert control over the banana-growing regions. ................................................. 17

            b.  The Individual Defendants shared the AUC's and Chiquita's intent to harm civilians. ............................................................. 18

            c.  Each Individual Defendant conspired. ........................................ 21

            d.  Defendants' alternate explanations cannot serve as a basis for dismissal of Plaintiffs' well pled claims ................................ 22

        3.  Defendants are responsible for supporting the AUC based on agency liability, including ratification and command responsibility. ................. 24

            a.  Defendants ratified the payments to the AUC. ............................ 24

            b.  Defendants are liable under superior or command responsibility. .............................................................................. 25

        4.  Defendants' challenge to the pleadings is unavailing. ........................... 26

        a.      Plaintiffs' allegations are concrete and specific, not conclusory.............................................................................26

        b.      Plaintiffs provide sufficient allegations with respect to each Defendant.............................................................................28

    5.    Plaintiffs have alleged a specific nexus between their injuries and the elements of their TVPA claims.........................................................28

II.    Defendants' Motion to Dismiss the Non-Federal Claims in the *Does 1-11*, *Montes*, *Valencia*, and *Carrizosa* Cases Must Fail.......................................................29

    A.    Plaintiffs have given reasonable notice of their intent to rely on foreign law. ...........29

    B.    Dismissal of State law claims is premature before a choice-of-law analysis. ..............32

III.    Defendants' Motion to Dismiss the *Does 1-11* and *Does 1-144* Complaints on Personal Jurisdiction is Without Merit. .............................................................32

    A.    This Court need not determine whether the transferor courts had personal jurisdiction over the Individuals Defendants because this Court may transfer these claims to an appropriate court or allow the transferor courts to do so on remand. ......................................................................33

    B.    Personal jurisdiction exists in DC and NJ. ...........................................36

        1.    The Individual Defendants are subject to DC's personal jurisdiction pursuant to § 13-423(a)(1)...............................................36

        2.    NJ exercises specific jurisdiction over directors and officers.........................38

    C.    If any doubt remains about personal jurisdiction, discovery should be permitted.......................................................................40

IV.    Forum Non Conveniens ...............................................................40

CONCLUSION.................................................................................40

## TABLE OF AUTHORITIES

<b>Page(s)</b>

CASES

*Abiola v. Abubakar,*
  435 F. Supp. 2d 830 (N.D. Ill. 2006) ..........................................................................9, 10

*In re "Agent Orange" Prod. Liab. Litig. MDL No. 381,*
  818 F.2d 145 (2d Cir. 1987) ...................................................................................................33

*Aldana v. Del Monte Fresh Produce, N.A., Inc.,*
  416 F.3d 1242 (11th Cir. 2005) ............................................................................................4

*Am. Tobacco Co. v. United States,*
  328 U.S. 781 (1946) .............................................................................................................22

*Anderson News, L.L.C. v. Am. Media, Inc.,*
  680 F.3d 162 (2d Cir. 2012) .................................................................................................28

*Anderson v. Liberty Lobby, Inc.,*
  477 U.S. 242 (1986) .............................................................................................................23

*Arce v. Garcia,*
  434 F.3d 1254 (11th Cir. 2006) ..................................................................................... 11, 12

*In re Asbestos Prods. Liab. Litig. (No. VI),*
  965 F. Supp. 2d 612 (E.D. Pa. 2013) ....................................................................................34

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ........................................................................................................*passim*

*Avdel Corp. v. Mecure,*
  277 A.2d 207 (N.J. 1971) .....................................................................................................38

*Balcero v. Drummond Co.,*
  No. 2:09-cv-1041, DE 275 (Jan. 17, 2012) ..........................................................................12

*Bartholet v. Reishauer, A.G. (Zurich),*
  953 F.2d 1073 (7th Cir. 1992) ..............................................................................................29

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ..........................................................................................................2, 22

*Belleri v. U.S.,*
  712 F.3d 543 (11th Cir. 2013) ..............................................................................................30

*Bennett Marine, Inc. v. Lenco Marine, Inc.,*
    2008 WL 906766 (S.D. Fla. Apr. 3, 2008) ............................................................. 21

*Bentley v. Bank of Am., N.A.,*
    773 F. Supp. 2d 1367 (S.D. Fla. 2011) ............................................................. 28

*Bishop v. Fla. Specialty Paint Co.,*
    389 So. 2d 999 (Fla. 1980) ............................................................. 32

*Bowoto v. Chevron,*
    557 F. Supp. 2d 1080 (N.D. Cal. 2008) ............................................................. 6, 9

*Bryant v. Dupree,*
    252 F.3d 1161 (11th Cir. 2001) ............................................................. 27

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985) ............................................................. 38

*Burnett v. Al Baraka Inv. & Dev. Corp.,*
    274 F. Supp. 2d 86 (D.D.C. 2003) ............................................................. 15

*Cabello v. Fernandez-Larios,*
    402 F.3d 1148 (11th Cir. 2005) ............................................................. *passim*

*Cardona v. Chiquita Brands Int'l, Inc.,*
    760 F.3d 1185 (11th Cir. 2015) ............................................................. 5

*Charles Gendler Co. v. Telecom Equity Corp.,*
    508 A.2d 1127 (N.J. 1986) ............................................................. 38

*Chavez v. Carranza,*
    559 F.3d 486 (6th Cir. 2009) ............................................................. 11

*In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.,*
    690 F. Supp. 2d 1296 (S.D. Fla. 2010) ............................................................. *passim*

*In re Chiquita Brands Int'l, Inc. Alien Tort Statute and S'holder Derivative Litig.,*
    792 F. Supp. 2d 1301 (S.D. Fla. 2011) ............................................................. *passim*

*Chowdhury v. Worldtel Bangl. Holding, Ltd.,*
    746 F.3d 42 (2d Cir. 2014) ............................................................. 5

*Clay v. AIG Aerospace Ins. Servs., Inc.,*
    61 F. Supp. 3d 1255 (M.D. Fla. 2014) ............................................................. 35

*Cox v. Adm'r U.S. Steel & Carnegie,*
    17 F.3d 1386 (11th Cir. 1994) ............................................................. 16, 18, 20

*Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*,
    341 F. App'x 487 (11th Cir. 2009) ........................................................28

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*,
    566 F.3d 94 (3d Cir. 2009) ...................................................................33

*Del. Prof'l Ins. Co. v. Hajjar*,
    55 F. Supp. 3d 537 (D. Del. 2014) .................................................. 38, 39

*Diamond Chem. Co. v. Atofina Chems., Inc.*,
    268 F. Supp. 2d 1 (D.D.C. 2003) ........................................................40

*Dixon v. United States*,
    548 U.S. 1 (2006) ................................................................................24

*Doe v. Drummond Co.*,
    2009 WL 9056091 (N.D. Ala. Nov. 9, 2009) .........................................6

*Doe v. Drummond Co.*,
    782 F.3d 576 (11th Cir. 2015) .......................................................*passim*

*Doe v. Exxon*,
    573 Supp.2d 16 (D.D.C. 2008) ..................................................... 29, 30

*Doe v. Exxon Mobil Corp.*,
    2014 WL 4746256 (D.D.C. Sept. 23, 2014) .........................................31

*Doe v. Saravia*,
    348 F. Supp. 2d 1112 (E.D. Cal. 2004) ...............................................11

*Doe v. Unocal Corp.*,
    963 F. Supp. 880 (C.D. Cal. 1997) .....................................................13

*Drs. Groover, Christie & Merrit, P.C. v. Burke*,
    917 A.2d 1110 (D.C. 2007) ................................................................32

*Eastman Kodak Co. v. STWB, Inc.*,
    452 F.3d 215 (2d Cir. 2006) .................................................................6

*Eaton v. Dorchester Dev., Inc.*,
    692 F.2d 727 (11th Cir. 1982) ............................................................40

*Edmond v. U.S. Postal Serv. Gen. Counsel*,
    949 F.2d 415 (D.C. Cir. 1991) ...........................................................40

*Edwards v. Leach Int'l*,
    2015 WL 1781835 (M.D. Fla. Apr. 20, 2015) ......................................33

*Ellis v. Gen. Motors Acceptance Corp.,*
    160 F.3d 703 (11th Cir. 1998) .................................................................................. 12

*Enahoro v. Abubakar,*
    408 F.3d 877 (7th Cir. 2005) .................................................................................... 5

*Exhibit Icons, LLC v. XP Cos.,*
    2008 WL 616104 (S.D. Fla. Mar. 3, 2008) ............................................................. 40

*Farrell v. Lane,*
    939 F.2d 409 (7th Cir. 1991) .................................................................................... 6

*First Trenton Indem. Co. v. River Imaging, P.A.,*
    2004 WL 3316874 (N.J. Super. Ct. Mar. 22, 2004) ............................................... 39

*Ford ex rel. Estate of Ford v. Garcia,*
    289 F.3d 1283 (11th Cir. 2002) ......................................................................... 25, 26

*Forti v. Suarez-Mason,*
    672 F. Supp. 1531 (N.D. Cal. 1987) ...................................................................... 13

*Garcia v. Chapman,*
    911 F. Supp. 2d 1222 (S.D. Fla. 2012) .................................................................... 4

*Giraldo v. Drummond Co.,*
    2013 WL 3873978 (N.D. Ala. July 25, 2013) ....................................................... 21

*Giraldo v. Drummond Co.,*
    2013 WL 3873978 (N.D. Ala. July 25, 2013) ....................................................... 21

*Goldlawr, Inc. v. Heiman,*
    369 U.S. 463 (1962) ....................................................................................... 24, 33, 35

*Gomes Lund et al. v. Brazil,*
    Judgment, Inter-Am. Ct. H.R. (ser. C) No. 219 (Nov. 24, 2010) ......................... 8, 9

*Halberstam v. Welch,*
    705 F.2d 472 (D.C. Cir. 1983) ......................................................................... *passim*

*In re Harte,*
    440 B.R. 133 (Bankr. W.D. Mich. 2010) .............................................................. 31

*Hilao v. Estate of Marcos,*
    103 F.3d 767 (9th Cir. 1996) ................................................................................. 11

*Indian Lake Club v. Hainsworth,*
    212 So. 2d 915 (Fla. Dist. Ct. App. 1968) ............................................................. 39

*Int'l Bus. Machs. Corp. v. Martin Prop. & Cas. Ins. Agency, Inc.,*
  666 N.E.2d 866 (Ill. App. Ct. 1996) .................................................................39

*ITT Base Servs. v. Hickson,*
  155 F.3d 1272 (11th Cir. 1998) .......................................................................35

*Jaramillo v. Naranjo,*
  2014 WL 4898210 (S.D. Fla. Sept. 30, 2014) ...................................................8

*Jean v. Dorelien,*
  431 F.3d 776 (11th Cir. 2005) ...............................................................*passim*

*Jean-Charles v. Perlitz,,*
  937 F. Supp. 2d 276 (D. Conn. 2012) ..............................................................20

*Johnson v. City of Shelby, Miss.,*
  135 S. Ct. 346 (2014)...............................................................................29, 31

*Jung v. Assoc. of Am. Medical Colls.,*
  300 F. Supp. 2d 119 (D.C. Cir. 2004)........................................................36, 37

*Kabbaj v. Obama,*
  568 F. App'x 875 (11th Cir. 2014) ...................................................................28

*Kawamoto v. CB Richard Ellis, Inc.,*
  225 F. Supp. 2d 1209 (D. Haw. 2002)..............................................................35

*Khulumani v. Barclay Nat'l Bank Ltd.,*
  504 F.3d 254 (2d Cir. 2007) ............................................................................16

*Kiobel v. Royal Dutch Petroleum Co.,*
  133 S. Ct. 1659 (2013) .....................................................................................5

*Krempel v. Prairie Island Indian Cmty.,*
  125 F.3d 621 (8th Cir. 1997).......................................................................6, 10

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,*
  523 U.S. 26 (1998)....................................................................................34, 35

*Linde v. Arab Bank, PLC,*
  384 F. Supp. 2d 571 (E.D.N.Y. 2005).........................................................15, 20

*Liu Bo Shan v. China Const. Bank Corp.,*
  421 F. App'x 89 (2d Cir. 2011)...................................................................22, 25

*Lizarbe v. Rondon,*
  642 F. Supp. 2d 473 (D. Md. 2009) .................................................................11

*Mamani v. Berzain,*
    21 F. Supp. 3d 1353, 1373 (S.D. Fla. 2014) ................................................................*passim*

*Mamani v. Berzain,*
    654 F.3d 1148 (11th Cir. 2011) ................................................................ 23, 27

*Mandelkorn v. Patrick,*
    359 F. Supp. 692 (D.D.C. 1973) ................................................................ 36

*Mesalic v. Fiberfloat Corp.,*
    897 F.2d 696 (3d Cir. 1990) ................................................................ 38

*Milliken v. Meyer,*
    311 U.S. 457 (1940) ................................................................ 34

*Mohamad v. Palestinian Auth.,*
    132 S. Ct. 1702 (2012) ................................................................ 3

*In re Monetary Group,*
    95 B.R. 803 (Bankr. M.D. Fla. 1989) ................................................................ 25

*Morgan v. Biro Mfg. Co.,*
    474 N.E.2d 286 (Ohio 1984) ................................................................ 32

*Mukamal v. Bakes,*
    383 B.R. 798 (S.D. Fla. 2007) ................................................................ 28

*Nahimana v. Prosecutor,*
    Case No. ICTR-99-52-A, Appeal Judgment (Nov. 28, 2007) .................................... 26, 27

*Ocasio-Hernandez v. Fortuno-Burset,*
    640 F.3d 1 (1st Cir. 2011) ................................................................ 26

*Omar ex rel. Cannon v. Lindsey,*
    334 F.3d 1246 (11th Cir. 2003) ................................................................ 13

*P.V. ex rel. T.V. v. Camp Jaycee,*
    962 A.2d 452 (N.J. 2008) ................................................................ 32

*In re Papst Licensing GMBH & Co Litig.,*
    590 F. Supp. 2d 94 (D.D.C. 2008) ................................................................ 34, 35

*Pierson v. Orlando Reg'l Healthcare System, Inc.,*
    2010 WL 1408391 (M.D. Fla. Apr. 6, 2010) ................................................................ 28

*Pittsburgh Terminal Corp. v. Mid Allegheny Corp.,*
    831 F.2d 522 (4th Cir. 1987) ................................................................ 38, 39

*In re Plumbing Fixture Cases,*
    298 F. Supp. 484 (J.P.M.L. 1968) .................................................................................. 33

*Presbyterian Church of Sudan v. Talisman Energy,*
    582 F. 3d 244 (2d Cir. 2009) ..................................................................................... 20

*Prosecutor v. Oric,*
    Case No. IT-03-68-T, Judgment (Int'l Crim. Trib. For the Former Yugoslavia
    June 30, 2006) ........................................................................................................... 26

*Prosecutor v. Taylor,*
    Case No. SCSL-03-01-A, Appeal Judgment (Special Ct. for Sierra Leone Sept. 26,
    2013) ........................................................................................................................... 16

*Prosecutor v. Taylor,*
    Case No. SCSL-03-01-T-1281, Judgment (Special Ct. for Sierra Leone May 18,
    2012) ........................................................................................................................... 26

*Randall v. Scott,*
    610 F.3d 701 (11th Cir. 2010) .................................................................................. 21

*Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co.,*
    426 F.3d 580 (2d Cir. 2005) ..................................................................................... 30

*Ray v. Spirit Airlines, Inc.,*
    767 F.3d 1220 (11th Cir. 2014) .................................................................................. 2

*Resolution Trust Corp. v. Spagnoli,*
    811 F. Supp. 1005 (D.N.J. 1993) ............................................................................. 16

*In re Rexall Sundown, Inc. Sec. Litig.,*
    2000 WL 33539428 (S.D. Fla. Mar. 29, 2000) ........................................................ 19

*The Roechling Case,*
    14 *Trials of War Criminals Before the Nuernberg Military Tribunals Under Control Council
    Law No. 10* 1087 (1951) ........................................................................................... 26

*Rojas Mamani v. Sanchez Berzain,*
    636 F. Supp. 2d 1326 (S.D. Fla. 2009) ...................................................................... 9

*Roman v. Ashcroft,*
    340 F.3d 314 (6th Cir. 2003) .................................................................................... 33

*Romero v. Drummond Co.,*
    552 F.3d 1303 (11th Cir. 2008) ......................................................................... 4, 5, 6

*S. Ferry LP, No. 2 v. Killinger,*
    542 F.3d 776 (9th Cir. 2008) .............................................................................. 19, 20

*Sarei v. Rio Tinto, PLC,*
    550 F.3d 822 (9th Cir. 2008)..................................................................9

*Sears v. United States,*
    343 F.2d 139 (5th Cir. 1965)................................................................22

*Second Amendment Found. v. U.S. Conference of Mayors,*
    274 F.3d 521 (D.C. Cir. 2001) ....................................................... 36, 37

*Sejdovic v. Italy,*
    2006-II Eur. Ct. H.R. 241 ...............................................................7, 8

*Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico,*
    628 F.3d 25 (1st Cir. 2010) ..................................................................23

*Shaffer v. Heitner,*
    433 U.S. 186 (1977)..............................................................................38

*In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II,*
    953 F.2d 162 (4th Cir. 1992)................................................................34

*Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC,*
    2008 WL 1771857 (S.D. Fla. Apr. 15, 2008) ....................................40

*Sinaltrainal v. Coca-Cola Co.,*
    256 F. Supp. 2d 1345 (S.D. Fla. 2003) ................................................5

*In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000,*
    257 F. Supp. 2d 717 (S.D.N.Y. 2003)..........................................*passim*

*Smith v. Carnival Corp.,*
    584 F. Supp. 2d 1343 (S.D. Fla. 2008) ..............................................30

*Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention,*
    623 F.3d 1371 (11th Cir. 2010) ............................................................3

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.,*
    552 U.S. 148 (2008)................................................................................4

*Strauss v. Credit Lyonnais, S.A.,*
    925 F. Supp. 2d 414 (E.D.N.Y. 2013).................................................16

*Swanson v. Citibank, N.A.,*
    614 F.3d 400 (7th Cir. 2010)................................................................23

*Tellabs Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007)..............................................................................19

*Tello v. Dean Witter Reynolds, Inc.*,
410 F.3d 1275 (11th Cir. 2005) ...................................................................................13

*In re Terrorist Attacks on Sept. 11, 2001*,
349 F. Supp.2d 765 (S.D.N.Y. 2005)...........................................................................18

*Thompson v. RelationServe Media, Inc.*,
610 F.3d 628 (11th Cir. 2010) .....................................................................................19

*Tsang Mun Ting v. Silver Dragon Res., Inc.*,
2015 WL 3551871 (Del. Super. Ct. June 3, 2015) .......................................................39

*Turkmen v. Hasty*,
2015 U.S. App. LEXIS 10160 (2d Cir. June 17, 2015) ................................................27

*Turner v. Burnside*,
541 F.3d 1077 (11th Cir. 2008) .....................................................................................6

*In re U.S. Office Prods. Co. Sec. Litig.*,
251 F. Supp. 2d 58 (D.D.C. 2003).............................................................................34

*United States v. Durham*,
512 F.2d 1281 (5th Cir. 1975) .....................................................................................20

*United States v. Flick*
6 Trials of War Criminals Before the Nuernberg Military Tribunals Under
Control Council Law No. 10 1187 (1947)....................................................................16

*United States v. Marchante*,
514 F. App'x 878 (11th Cir. 2013) ..............................................................................22

*United States v. Mothersill*,
87 F.3d 1214 (11th Cir. 1996) .....................................................................................17

*In re Vitamins Antitrust Litig.*,
270 F. Supp. 2d 15 (D.D.C. 2003).................................................................34, 35, 36

*Warfaa v. Ali*,
33 F. Supp. 3d 653, 666 (E.D. Va. 2014).......................................................................4

*W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*,
287 F. App'x 81 (11th Cir. 2008) ................................................................................28

*In re Western States Wholesale Natural Gas Antitrust Litig.*,
2010 WL 2539728 (D. Nev. June 4, 2010) ..................................................................34

*Wiggins v. Equifax Inc.*,
853 F. Supp. 500 (D.D.C. 1994) .................................................................................36

*Wiwa v. Royal Dutch Petroleum Co.*,
  2002 WL 319887 (S.D.N.Y. Feb. 28, 2002) ................................................................8, 9

*Wultz v. Islamic Republic of Iran*,
  755 F. Supp. 2d 1 (D.D.C. 2010) ...............................................................................16

*Xuncax v. Gramajo*,
  886 F. Supp. 162 (D. Mass. 1995) ...............................................................................9

*Youming Jin v. Ministry of State Sec.*,
  335 F. Supp. 2d 72 (D.D.C. 2004) .............................................................................36

*Zivojinovich v. Ritz Carlton Hotel Co.*,
  445 F. Supp. 2d 1337 (M.D. Fla. 2006) ....................................................................18

**STATUTES**

28 U.S.C. § 1406 ...............................................................................................33, 35, 37

28 U.S.C. § 1407 ....................................................................................................34, 35

28 U.S.C. § 1631 ....................................................................................................33, 35

D.C. Code § 13-423 .......................................................................................................36

Antiterrorism and Effective Death Penalty Act of 1996,
  Pub. L. No. 104-132 § 301(a)(7), 110 Stat. 1247 (1996) ...........................................15

Torture Victim Protection Act,
  28 U.S.C. §1350 note .....................................................................................................4

**OTHER AUTHORITIES**

5B Wright & Miller, Fed. Prac. & Proc. Civ. § 1357 (3d ed.) ...............................23, 24

Fed. R. Civ. P. 8 ................................................................................................2, 21, 29

Fed. R. Civ. P. 9 ...........................................................................................................28

Fed. R. Civ. P. 12 ...................................................................................................*passim*

Fed. R. Civ. P. 15 ..........................................................................................................31

Fed. R. Civ. P. 44.1 .......................................................................................................30

H.R. Rep. No. 102–367(I) (1991) .................................................................................12

Restatement (Second) of Conflict of Laws § 145 ........................................................32

Restatement (Third) Agency § 4.01 ..............................................................................24

S. Rep. No. 102-249 (1991) ................................................................................................................6

# GLOSSARY OF TERMS[1]

Chiquita FNC ..........................Def. Chiquita's Mot. to Dismiss Under Fed. R. Civ. P. 12(B)(6)
and for *Forum Non Conveniens*, DE 741 (Mar. 9, 2015)

DE 558 .................................. Third Am. Compl., *Montes, et al. v. Chiquita Brands Int'l, Inc., et al.*,
No. 10-60573, DE 558 (Sept. 20, 2012)

DE 575 ...................................................................... Third Am. Compl., *Does 1-144 v.*
*Chiquita Brands Int'l, Inc.*,
No. 08-80465, DE 575 (Sept. 24, 2012)

DE 576 ................................................................Third Am. Compl., *Jose and Josefa Lopez Nos. 1*
*Through 339 v. Chiquita Brands Int'l, Inc.*,
No. 08-80508, DE 576 (Sept. 26, 2012)

DE 589 ...........................................................Second Am. Compl., *Does 1-11 v.*
*Chiquita Brands Int'l, Inc.*, No. 08-80421,
DE 589 (Nov. 16, 2012)

FNC ................................................Plaintiffs' Opp'n to Def. Chiquita's Mot. to Dismiss Under
Fed. R. Civ. P. 12(B)(6) and for *Forum Non Conveniens*
(June 22, 2015) (filed concurrently herewith)

*In re Chiquita* ....................................................... *In re Chiquita Brands Int'l, Inc. Alien Tort*
*Statute & S'holder Derivative Litig.*,
690 F. Supp. 2d 1296 (S.D. Fla. 2010)

MTD ...............................................................Individual Defs.' Joint Mot. to Dismiss
Pls.' Am. Compls., DE 735 (Mar. 9, 2015)

MTD Order .......................................... *In re Chiquita Brands Int'l, Inc. Alien Tort Statute*
*& S'holder Derivative Litig.*, 792 F. Supp. 2d 1301 (S.D. Fla. 2011)

---

[1] Unless indicated otherwise, all docket entry citations herein are to the master docket for 08-md-01916.

## INTRODUCTION AND SUMMARY OF ARGUMENT

This Court has previously held that Plaintiffs adequately alleged that Chiquita aided and abetted and conspired with the AUC to murder civilians in Colombia. Defendants are the *very same* officers and directors who personally approved and covered up the illegal payments at the heart of Plaintiffs' allegations against Chiquita. Plaintiffs' Amended Complaints contain concrete and specific factual allegations regarding the conduct and liability of each Individual Defendant. Faced with Complaints that have largely already been deemed adequate, and that name the responsible individuals, Defendants present a grab-bag of objections, all of them meritless.

Indeed, almost all of Defendants' arguments against Plaintiffs' Torture Victim Protection Act claims are foreclosed by the Eleventh Circuit's recent decision in *Doe v. Drummond Co.*, 782 F.3d 576, 608-09 (11th Cir. 2015), which held that the TVPA applies to extraterritorial conduct, recognizes secondary liability, and requires a *mens rea* of knowledge, not purpose, for aiding and abetting claims—squarely disposing of Defendants' arguments on these grounds. Eleventh Circuit precedent also undercuts Defendants' statute of limitations and exhaustion arguments. This Circuit has repeatedly tolled the statute of limitations where, as here, a civil war raged. In addition, this Court has already recognized that the Defendants concealed their material support payments, another basis for equitable tolling. Plaintiffs' claims are therefore timely. On exhaustion, the Eleventh Circuit requires Defendants to demonstrate an adequate and available forum in order to meet their burden. The Individual Defendants cannot do so, because they were not amenable to suit in Colombia when the Complaints were filed and Plaintiffs cannot be required to exhaust remedies that were unavailable at the time of filing. Moreover, as Plaintiffs explain in their opposition to Chiquita's *forum non conveniens* motion, Colombia even now is not an adequate and available forum.

Defendants' efforts to dismiss the District of Columbia and New Jersey cases on personal jurisdiction grounds are similarly without merit. Even if personal jurisdiction were lacking (which it

1

is not), federal law permits this Court to transfer the cases to districts in which personal jurisdiction is proper, which would then transfer the claims back to this Court pursuant to the MDL Order. Finally, Defendants ask the Court to dismiss Plaintiffs' Colombian law claims on grounds that Plaintiffs have not pled the legal elements of Colombian law, even though their own expert concedes that Colombian law recognizes claims for the kinds of harms alleged. Plaintiffs have informed Defendants that they intend to rely on Colombian law, and that is all the Rules require. Defendants' motion must be denied.

## STANDARD OF REVIEW

When evaluating a motion to dismiss under Rule 12(b)(6), the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff. *Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1223 (11th Cir. 2014). The complaint must contain factual matter, assumed to be true, sufficient "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-81 (2009) (citation omitted). A claim is facially plausible when facts "allow . . . the court to draw the reasonable inference that the defendant is liable," and that "suggest an entitlement to relief." *Id.* at 678-81. Plausibility "does not impose a *probability* requirement . . . it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [relevant evidence]," and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) (emphasis added); *Ashcroft*, 556 U.S. at 678. Under Rule 8(a)(2), while pleadings must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," they do not necessitate "detailed factual allegations." *Iqbal*, 556 U.S. at 678. A plaintiff "need not prove [the] case on the pleadings," they only must "provide enough factual material to raise a reasonable inference, and thus a plausible claim." *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1386 (11th Cir. 2010).

## BACKGROUND

The Complaints allege that Chiquita and its high-ranking executives supported, aided and abetted, and conspired with the AUC in conduct that resulted in the killing and torture of Plaintiffs' family members. A summary of Plaintiffs' allegations may be found in this Court's order of June 3, 2011. *In re Chiquita Brands Int'l, Inc. Alien Tort Statute and S'holder Derivative Litig.*, 792 F. Supp. 2d 1301, 1306-1311 (S.D. Fla. 2011) ("MTD Order").  In relevant part, Plaintiffs allege that Individual Defendants initiated, reviewed, approved and concealed over one hundred payments to the AUC between 1996 and 2004, totaling over $1.7 million. DE 589 ¶¶ 85-88; DE 575 ¶¶ 2192, 2204.

This Court denied Chiquita's first motion to dismiss Plaintiffs' claims under the Torture Victim Protection Act, 28 U.S.C. §1350 note, crediting detailed allegations that the killings and torture involved state action due to the AUC's symbiotic relationship with the Colombian military, MTD Order at 1330 & n.95; that the AUC committed torture and extrajudicial killings, *id.* at 1344; and that Chiquita intended to assist and conspire with the AUC, *id.* at 1347, 1349-1350. After *Mohamad v. Palestinian Authority*, 132 S. Ct. 1702 (2012), the Plaintiffs in the *Does 1-144*, *Does 1-11*, *Montes*, and *Valencia* cases amended their complaints to name as Individual Defendants the very same officers and directors who personally approved and covered up the illegal payments at the heart of Plaintiffs' allegations against Chiquita and who had previously been identified as Doe Defendants. In their separate briefing in opposition to the Individual Defendants' motions to dismiss, Plaintiffs address detailed and concrete facts—specific to each individual Defendant—regarding each Defendant's involvement in the scheme to channel funds to the AUC.

On reconsideration, this Court also upheld Plaintiffs' claims under Colombian law, granting those Plaintiffs that had not alleged such claims leave to do so, Recons. Order 4, DE 516 (Mar. 27, 2012), which those Plaintiffs subsequently did.

## ARGUMENT

**I.    The Individual Defendants' Motion to Dismiss the *Does 1-144*, *Does 1-11*, *Montes*, and *Valencia* TVPA Claims is Foreclosed by Eleventh Circuit Precedent.**

The Individual Defendants ask this Court to dismiss the *Does 1-144*, *Does 1-11*, *Montes*, and *Valencia* Plaintiffs' TVPA claims as a matter of law, but Defendants' arguments are largely foreclosed by Eleventh Circuit authority and must be denied.

### A.    Secondary liability is available for TVPA claims.

This Circuit has consistently held that aiding and abetting and conspiracy claims are available under the TVPA. *See, e.g, Drummond Co.*, 782 F.3d at 608-09; *Romero v. Drummond Co.*, 552 F.3d 1303, 1315 (11th Cir. 2008); *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005); *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1157 (11th Cir. 2005).

Defendants concede this. Individual Defs.' Joint Mot. to Dismiss Pls.' Am. Compls. 19, DE 735 (Mar. 9, 2015) ("MTD") (citing *Cabello*, 402 F.3d at 1157). Defendants argue however that this Court need not follow this authority in light of a seven-year-old Supreme Court case concerning securities violations. *Id.* at 19 (citing *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 158 (2008)). Defendants' argument plainly cannot survive the Eleventh Circuit's recent decision, in March 2015, reaffirming that secondary liability, including aiding and abetting liability, is available under the TVPA. *Drummond Co.*, 782 F.3d at 608-09. Post-*Stoneridge* cases consistently hold that aiding and abetting claims can be raised under the TVPA. *E.g., Romero*, 552 F.3d at 1315; *Garcia v. Chapman*, 911 F. Supp. 2d 1222, 1240 (S.D. Fla. 2012); *Warfaa v. Ali*, 33 F. Supp. 3d 653, 666 (E.D. Va. 2014). Aiding and abetting liability is available here, as this Court has already found. MTD Order at 1354-1355.

### B.    The TVPA applies extraterritorially.

Defendants' argument that the TVPA does not apply to extraterritorial conduct is squarely foreclosed by the Eleventh Circuit decision in *Drummond*: "Although we have not before had

occasion to do so, we hold now that the TVPA applies extraterritorially." 782 F.3d at 601. *See also, e.g.*, *Chowdhury v. Worldtel Bangl. Holding, Ltd.*, 746 F.3d 42, 51 (2d Cir. 2014) *cert. denied sub nom. Khan v. Chowdhury*, 135 S. Ct. 401 (2014).[1]

### C.   Defendants have not met their substantial burden on exhaustion of remedies.

The exhaustion requirement is an affirmative defense, and Defendants bear the "substantial" burden of demonstrating that "alternative and adequate" remedies are available in Colombia.[2] *Jean v. Dorelien*, 431 F.3d 776, 781 (11th Cir. 2005) (no dismissal where local remedies are ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile). Defendants must demonstrate that Colombia is both amenable and provides certain rights, such as the right to a speedy and fair trial. *Sinaltrainal v. Coca-Cola Co.*, 256 F. Supp. 2d 1345, 1358 (S.D. Fla. 2003). Doubts about the availability or adequacy of the alternative remedy must be resolved in favor of the plaintiffs. *Jean*, 431 F.3d at 782 (citing *Enahoro v. Abubakar*, 408 F.3d 877, 892 (7th Cir. 2005)); *Doe v. Drummond Co.*, 2009 WL 9056091, at *17 (N.D. Ala. Nov. 9, 2009); *Mamani v. Berzain*, 21 F. Supp. 3d 1353, 1373 (S.D. Fla. 2014).

In *Turner v. Burnside*, 541 F.3d 1077, 1080 (11th Cir. 2008), the Eleventh Circuit established a two-step procedure for analyzing a motion to dismiss based on a claim of failure to exhaust. "First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Id.* at 1802. "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are

---

[1] Defendants also moved to dismiss the ATS claims against the Individual Defendants. Plaintiffs agree that these claims are governed by *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013), as interpreted by the Eleventh Circuit in *Cardona v. Chiquita Brands Int'l, Inc.*, 760 F.3d 1185 (11th Cir. 2015), *cert. denied sub nom. Does 1-144 v. Chiquita Brands Int'l, Inc.*, 135 S. Ct. 1853 (2015). Rather than contest these claims here, Plaintiffs preserve all available arguments for future appeal.

[2] Defendants erroneously contend that the exhaustion requirement goes to the subject matter jurisdiction of the court. MTD at 14. This assertion is clearly contrary to the law of this Circuit. *See Romero*, 552 F.3d at 1315.

assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (citation omitted). Defendants bear the burden of proof and persuasion. They cannot meet that burden.

> 1. **Plaintiffs are not required to exhaust remedies that were unavailable when their claims were filed.**

The availability of remedies for exhaustion purposes must be determined at the time of filing, not years after the case has been brought. *See, e.g., Eastman Kodak Co. v. STWB, Inc.*, 452 F.3d 215, 221-22 (2d Cir. 2006) (plaintiff not required to exhaust remedies created after he filed suit: "would create perverse incentives" if defendants had the power to force plaintiffs "to abandon their suit at whatever point (prior to final judgment)" defendants decided to submit to administrative remedies); *Krempel v. Prairie Island Indian Cmty.*, 125 F.3d 621, 623 (8th Cir. 1997) ("[T]o require a plaintiff to turn back the clock and exhaust previously unavailable remedies is contrary to judicial efficiency and prejudicial to an individual who brings suit in a forum available for immediate resolution of his claim."); *Farrell v. Lane*, 939 F.2d 409, 410 (7th Cir. 1991) (exhaustion requirement refers only to remedies available at the time); *Bowoto v. Chevron*, 557 F. Supp. 2d 1080, 1097 (N.D. Cal. 2008) (evaluating whether local remedies were available at the time the complaint was filed in federal court, not whether they were available at the time exhaustion was argued nine years later). The TVPA borrowed the concept of exhaustion from international human rights tribunals, *see* S. Rep. No. 102-249 at 10 (1991), and those tribunals likewise hold that a remedy that "did not exist at the time the [case] was filed" is not "considered available" for exhaustion purposes. *Gomes Lund et al. v. Brazil*, Judgment, Inter-Am. Ct. H.R. (ser. C) No. 219, ¶ 46 (Nov. 24, 2010); *see also Sejdovic v. Italy*, 2006-II Eur. Ct. H.R. 241, ¶ 46 (ruling that the party claiming non-exhaustion must show that "the remedy was an effective one available in theory and in practice at the relevant time").

Plaintiffs named the Individual Defendants in 2012;[3] at that time, none were subject to jurisdiction in Colombia. In March 2015, the Individual Defendants first filed declarations indicating their willingness to be subject to the jurisdiction of the Colombian civil courts. They now argue that Plaintiffs' TVPA claims against them should be barred for failure to exhaust despite the fact that Individual Defendants, who live in the United States, were not subject to the jurisdiction of the Colombian courts when the TVPA claims were initiated.[4] Because the Individual Defendants had not agreed that they would be subject to the jurisdiction of the Colombian courts at the time Plaintiffs brought their claims, there was no effective jurisdiction. Plaintiffs could not have been required to exhaust a remedy that was not available.

> **2.    Defendants have not demonstrated that redress in Colombia is available.**

Defendants assert that Colombia is an adequate forum and incorporate by reference their FNC briefing, recognizing that the test is largely the same. MTD at 16. As set forth in more detail in Plaintiffs' Opposition to that Motion, which Plaintiffs also incorporate by reference, redress in Colombia is unavailable and inadequate.

For example, those seeking to challenge official or paramilitary violence, including prosecutors and prominent human rights activists, are at great risk of retaliation. DE 575 ¶ 6; DE 576 ¶¶ 20, 1251; *see also* FNC at 6-11, 16-22.  Over 300 human rights defenders were killed from 2009-2015 and 95% of these cases remain unpunished. At least 24 human rights defenders were killed between January and May of this year alone. FNC at 7. Lawyers and judges, including lawyers representing victims in the Justice and Peace process, are frequently in the cross-hairs and several

---

[3] Plaintiffs previously named identifiable Doe defendants. The Individual Defendants could have submitted to remedies in Colombia before 2012.

[4] Indeed, the Individual Defendants do not claim otherwise, and Exhibits 6 to 13 attached to Def. Chiquita's Mot. to Dismiss Under Fed. R. Civ. P. 12(B)(6) and for *Forum non Conveniens*, DE 741 (Mar. 9, 2015) ("Chiquita FNC") suggest that they were not.

have been murdered. *Id.* at 8-9. In 2014 and 2015, eight judicial actors were killed, thirteen were

threatened and one forcibly disappeared. *Id.* at 9. Defendants' only rejoinder is to argue that the

complaints only describe the risk of violence as of 2006. MTD at 17. This ineffective statement—

Plaintiffs need not plead exhaustion, an affirmative defense—does not meet their burden. Courts

routinely find that a remedy is ineffective and futile if the plaintiffs fear persecution or reprisal as a

result of pursuing that remedy. *See Jean*, 431 F.3d at 783; *Drummond Co.*, 2009 WL 9056091, at *17

(seeking redress in Colombia would be futile).[5]

     Defendants cite the Justice and Peace process but omit that the Individual Defendants are

not amendable to suit in that process. In addition, of the roughly 1,700 conciliation claimants to

whom Chiquita refers in its Motion, MTD at 18, not a single one proceeded from conciliation stage

to filing civil claims. FNC at 11, 20-21, 30.[6] Moreover, as Plaintiffs explain in their FNC response,

under the Justice and Peace Process, demobilized paramilitaries lay down their arms, tell a full and

truthful version of their crimes, and turn over ill-gotten assets to a victims' reparation fund, in return

for reduced prison sentences. FNC at 7-8, 20. This regime is not equivalent to a civil suit where a

victim claims compensation from an individual defendant in proportion to the victim's damages and

the defendant's share of culpability. *Wiwa v. Royal Dutch Petroleum Co.*, 2002 WL 319887, at *17

(S.D.N.Y. Feb. 28, 2002) (commission established to promote reconciliation not adequate alternative

remedy sufficient to meet burden for exhaustion).

---

[5] Defendants rely on *Jaramillo v. Naranjo*, 2014 WL 4898210, at *14 (S.D. Fla. Sept. 30, 2014) but that case supports Plaintiffs argument: the Court found that because the defendant was in the United States, he was "amenable to suit only in the United States."

[6] The Individual Defendants' description of the conciliation requests as "init[iating] civil proceedings" is misleading. MTD at 18. Chiquita admits that the conciliation went nowhere, and that none ripened into a civil demand that could have provided a remedy. FNC at 11, 20-21, 30. *See Mamani*, 21 F. Supp. 3d at 1373 (rejecting exhaustion defense where defendants failed to show that suits by other victims resulted in enforceable judgments).

In addition, delays and corruption pervade the Colombian justice system. FNC at 10-11, 22-25. Courts recognize these factors as a basis for finding that local remedies are unavailable, inadequate or futile. *Bowoto*, 557 F. Supp. 2d at 1097 (corruption and inefficiency); *Abiola v. Abubakar*, 435 F. Supp. 2d 830, 837 (N.D. Ill. 2006); *Wiwa*, 2002 WL 319887, at *17; *Xuncax v. Gramajo*, 886 F. Supp. 162, 178 (D. Mass. 1995).

Finally, for a remedy to be considered available, enforceable judgments must be available to the plaintiffs. *See, e.g.*, *Jean*, 431 F.3d at 782-83; *Sarei v. Rio Tinto, PLC*, 550 F.3d 822, 832 (9th Cir. 2008). Contrary to Defendants' assertion, *see* MTD at 16, Defendants bear the burden of proving that plaintiffs have been able to obtain and successfully enforce judgments. *Jean*, 431 F.3d at 783. For example, in *Abiola*, the court rejected the defendant's argument that the plaintiff should have exhausted local remedies in Nigeria because the defendant was unable to point to instances in which an individual successfully enforced a judgment in a similar case. 435 F. Supp. 2d at 837. Similarly, in *Jean*, the court rejected the defendant's argument that the plaintiff had failed to exhaust local remedies where the plaintiff had obtained a judgment against the defendant but the judgment was not enforced. 431 F.3d at 782-83; *see also Mamani*, 21 F. Supp. 3d at 1373 (defendants failed to meet burden where they failed to show that civil suits filed by other victims had resulted in enforceable judgments).[7] Here, Defendants have not pointed to a single judgment against the Individual Defendants in Colombia, much less one that was enforced. *See also* FNC at 20-21, 29.

### 3.   Defendants' conditional submission to the Colombian courts is inadequate and contravenes the purposes of the TVPA.

Congress enacted the exhaustion requirement in Section 2b of the TVPA under the theory

---

[7] Defendants cite an earlier decision in *Mamani*, but there the court required plaintiffs to exhaust Bolivian governmental remedies before they could sue Bolivian government officials. *See Rojas Mamani v. Sanchez Berzain*, 636 F. Supp. 2d 1326, 1331-32 (S.D. Fla. 2009). Here, Plaintiffs do not seek to bring claims against government officials, nor has Chiquita or any Individual Defendant set up a remedy to compensate individuals harmed by their conduct.

that this requirement "will also avoid exposing U.S. courts to unnecessary burdens," and "to

encourage the development of meaningful remedies in other countries." *See* H.R. Rep. No. 102–

367(I), at 5 (1991). Exhibits 6-13, submitted in support of Chiquita's Motion to Dismiss, are

declarations by each of the Individual Defendants that state in pertinent part:

> With respect to any civil law claims asserted against me in Colombia (i) by a
> plaintiff who has asserted claims against me in the ATS Actions and whose claims in the
> ATS Actions are not dismissed with prejudice in their entirety pursuant to the Individual
> Defendants' Joint Consolidated Motion to Dismiss, and (ii) that arise out of the factual
> allegations in the ATS Actions, I stipulate and agree that I will not contest or object to a
> Colombian court's exercise of jurisdiction over such claims.

Defendants clearly intend that their submission to the authority of the Colombian courts be

conditioned on the outcome of this Court's consideration of claims arising out of the same factual

allegations and further that the decisions of this Court will preclude consideration of claims in the

Colombian courts. Such a procedure would defeat the purposes of the exhaustion requirement.

Under Defendants' conditional submission, before the Colombian courts could effectively assert

jurisdiction over the claims against the Individual Defendants, this Court would have to determine if

it has personal jurisdiction over each of the Defendants, the extraterritorial reach of Plaintiffs' claims

under the ATS and state law, and even whether the Colombian law claims are time-barred. Such a

procedure would not effectuate the purposes of the TVPA exhaustion provision, as this Court

would still bear the burden of litigation and Colombian courts would not be encouraged to develop

meaningful remedies in Colombia as contemplated by Section 2b.[8] Like their attempt to use *forum*

*non conveniens* as a device to have two bites at the apple, Defendants attempt to do the same with

exhaustion, first trying all available means to dismiss the claims in their entirety before submitting to

remedies elsewhere.

      **D.**    **Plaintiffs' TVPA claims are timely.**

---

[8] The application of the exhaustion doctrine depends on the purposes of exhaustion being served.
*Krempel*, 125 F.3d at 623.

The earliest date Plaintiffs' claims could have accrued is 2007 because the statute of limitations was tolled during Colombia's civil conflict and under the fraudulent concealment doctrine. All of Plaintiffs' claims are thus timely under the TVPA's ten-year statute of limitations.

      1.      **Plaintiffs' TVPA claims were equitably tolled due to the civil conflict in Colombia.**

"The doctrine of equitable tolling allows a court to toll the statute of limitations until such a time that the court determines would have been fair for the statute of limitations *to begin running* on the plaintiff's claims." *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006) (emphasis added). Plaintiffs' claims were tolled due to the civil conflict in Colombia. Indeed, "every court that has considered the question of whether a civil war and a repressive authoritarian regime constitute 'extraordinary circumstances' which toll the statutes of limitations of the [ATS] and TVPA has answered in the affirmative." *Jean*, 431 F.3d at 780. In *Arce*, the Eleventh Circuit ruled that the statute of limitations for claims arising out of the civil conflict in El Salvador would not begin to run until the El Salvador Peace Agreement was reached, *id.* at 1258-59, 1264-65, because until then "the fear of reprisals against the plaintiffs' relatives orchestrated by people aligned with the defendants excused the plaintiffs' delay in prosecuting their claims against the defendants," *id.* at 1259. Numerous cases, from this and other Circuits, are in accord.[9]

      Here, there is no question that the civil conflict in Colombia was raging when all of the Plaintiffs' injuries occurred. Colombia did not even begin to emerge from the dangerous conflict

---

[9] *E.g.*, *Chavez v. Carranza*, 559 F.3d 486, 493-94 (6th Cir. 2009) (applying equitable tolling to claims arising from the civil war in El Salvador until two years after peace accord); *Hilao v. Estate of Marcos*, 103 F.3d 767, 773 (9th Cir. 1996) (equitably tolling the ATS and TVPA statutes of limitations for claims against former Philippine dictator Ferdinand Marcos until the Marcos regime was ousted); *Lizarbe v. Rondon*, 642 F. Supp. 2d 473, 482 (D. Md. 2009) (applying equitable tolling where the plaintiffs "pled that until at least the year 2000, the political climate in Peru was unremittingly hostile to any effort on their part to pursue remedies against Rivera Rondon in Peru"); *Doe v. Saravia*, 348 F. Supp. 2d 1112, 1147-48 (E.D. Cal. 2004) (applying equitable tolling where "[t]he evidence is that from 1980 to 1994, and even through to the present, any person who leveled allegations against active or former members of the [Salvadoran] military risked reprisal, including death").

until the Justice and Peace program was first implemented and the AUC Commanders began to

surrender in 2007. DE 589 ¶¶ 228-229; DE 575 ¶¶ 12-15. Addressing this identical question, the

court in *Balcero v. Drummond Co.* applied equitable tolling at the pleading stage and denied defendants'

motion to dismiss. The Court held:

> [A]t this stage of the case, the [Complaint] raises allegations that, taken in the light
> most favorable to Plaintiffs, could justify Plaintiffs' delay in filing suit. The situation
> in Colombia had been one of great unrest *until at least 2007*, when the AUC was
> demobilized. Plaintiffs have alleged that until the 2007 demobilization, the AUC
> "along with their collaborators in the Colombian government, and with the support
> of the Drummond Defendants, used violent reprisals against anyone who sought to
> hold them accountable for the terror imposed on the civilian population.

Mem. Op. & Order 6, *Balcero v. Drummond Co., Inc.*, No. 2:09-cv-1041, DE 275 (Jan. 17, 2012)

(emphasis added) (citations omitted). Just as the claims in *Arce* were tolled until the Peace Accord

was signed, and the claims in *Cabello* were tolled "[u]ntil the first post-*junta* civilian president was

elected" in Chile, 402 F.3d at 1155, 1156, Plaintiffs' claims were tolled at least until this point in the

Colombian peace process. Thus, they are all timely.

### 2.    Fraudulent concealment also tolls the statute of limitations.

Equitable tolling protects plaintiffs' rights if they have been prevented from timely filing due

to inequitable circumstances such as concealment of the wrong or the wrongdoer. *Ellis v. Gen. Motors*

*Acceptance Corp.*, 160 F.3d 703, 706-08 (11th Cir. 1998); *see also Arce*, 434 F.3d at 1262. Additionally, a

federal statute of limitations may be equitably tolled "where the defendant misleads the plaintiff,

allowing the statutory period to lapse; or when the plaintiff has no reasonable way of discovering the

wrong perpetrated against her." *Cabello*, 402 F.3d at 1155. As this Court has already held, Chiquita

fraudulently concealed its criminal conduct in funding the AUC, preventing the Plaintiffs from

discovering that Defendants were responsible for their injuries, until Chiquita pled guilty to the

felony of financing a designated terrorist organization on March 19, 2007. *In re Chiquita Brands Int'l,*

*Inc. Alien Tort Statute & S'holder Derivative Litig.*, 690 F. Supp. 2d 1296, 1306-07 (S.D. Fla. 2010); *see*

*also* Factual Proffer, *United States v. Chiquita Brands Int'l, Inc.*, Criminal No. 07-055, DE 12 (D.D.C.

Mar. 19, 2007) attached as Exhibit 1 to Pls. Resp. in Opp'n to Def.'s Consolidated Mot. to Dismiss

the Compls., DE 111 (Aug. 19, 2008). Although the Individual Defendants need not have personally

participated in the concealment,[10] each in fact did so – at a minimum, each knew about the illegal

payment scheme and did not disclose it publicly, and they also actively participated in the

concealment. *E.g.*, DE 589 ¶¶ 27, 29, 88.[11]

### E.     Plaintiffs state claims under the TVPA.

This Court previously held that Plaintiffs' Complaints contained "detailed and voluminous

factual allegations" showing that Chiquita aided and abetted and conspired with the AUC "for the

purpose of furthering the AUC's torture and extrajudicial killing in the banana-growing regions."

---

[10] Contrary to Defendants' argument, Plaintiffs are not required to plead that each (or any) Individual Defendant was responsible for the concealment. *See* MTD at 24. In reviewing the timeliness of human rights claims under the TVPA and ATS, the Eleventh Circuit has held that concealment by a co-conspirator, such as Chiquita, is sufficient to equitably toll the statute of limitations. *See Cabello*, 402 F.3d at 1155. Nonetheless, in addition to alleging that Chiquita concealed its conduct, *e.g.*, DE 589 ¶¶ 87, 89, 186, 224-26; DE 576 ¶¶ 10, 13-16, Plaintiffs have also alleged that the Individual Defendants participated in this concealment, *e.g.*, DE 589 ¶¶ 27, 29, 88; DE 576 ¶¶ 74-75, 1256.

[11] A final reason to deny Defendants' motion to dismiss as to the statute of limitations on the TVPA claims is that this case is still at the pleadings stage. The allegations of the various complaints clearly permit the Court to rule that Plaintiffs' claims are timely because they were tolled by events that are clearly established in the record—the Colombian civil conflict and Chiquita's fraudulent concealment. By contrast, before any dismissal could be entered, there should be discovery and a factual assessment. *Omar ex rel. Cannon v. Lindsey*, 334 F.3d 1246, 1251-52 (11th Cir. 2003); *In re Chiquita*, 690 F. Supp. 2d at 1307. Allowing discovery avoids both the inappropriate reliance on facts not yet in evidence and the impermissible construction of factual ambiguities in favor of the defendant. *See Omar ex rel. Cannon*, 334 F.3d at 1251-52 (affirming the denial of a Rule 12(b)(6) motion on statute of limitations grounds).

To survive a motion to dismiss on statute of limitations grounds, then, Plaintiffs' allegations need only raise an issue of fact as to timeliness. *Tello v. Dean Witter Reynolds, Inc.*, 410 F.3d 1275, 1294 (11th Cir. 2005); *Omar*, 334 F.3d at 1251-52; *Doe v. Unocal Corp.*, 963 F. Supp. 880, 897 (C.D. Cal. 1997) (denying motion to dismiss ATS and TVPA claims on statute of limitations grounds because "plaintiffs have raised an issue of fact regarding equitable tolling"), *aff'd in part and reversed in part sub nom. Doe I v. Unocal Corp.*, 395 F.3d 932 (9th Cir. 2002), *reh'g en banc sub nom. John Doe I v. Unocal Corp.*, 403 F.3d 708 (9th Cir. 2005); *Forti v. Suarez-Mason*, 672 F. Supp. 1531, 1549-51 (N.D. Cal. 1987) (same), *on reconsideration in part* 694 F. Supp. 707 (N.D. Cal. 1988).

MTD Order at 1344-52. The Individual Defendants are the specific Chiquita officials who carried

out Chiquita's "criminal relationship" to bring about the "'bloody pacification'" of the banana-

growing regions. *Id.* at 1347. The amended complaints contain concrete and specific factual

allegations describing how each Defendant *individually* abetted and conspired with the AUC, and also

support finding liability based on agency theories. The factual allegations are described in the

individual briefs filed concurrently and plainly state a claim under the TVPA.

> **1.      Plaintiffs pled specific and concrete facts that demonstrate that the Defendants aided and abetted the AUC.**

The standard for aiding and abetting under the TVPA is knowing substantial assistance.

*Drummond Co.*, 782 F.3d at 609. This Court has already held that Plaintiffs adequately alleged that

Chiquita aided and abetted the murders of Plaintiffs' family members. MTD Order at 1344-51.

While this Court also found that Chiquita did so with the purpose of facilitating abuses, *id.*, after

*Drummond* Plaintiffs need only show that the Individual Defendants—the very Chiquita directors

and officers who approved, implemented and concealed those payments—did so with knowledge

that abuses would occur.

> **a.      Aiding and abetting requires knowledge, not purpose.**

Defendants concede that the complaints allege that they had "knowledge" that the AUC

would torture and kill civilians, but argue that Plaintiffs failed to allege "purpose." MTD at 29-33.

*Drummond* eviscerates Defendants' argument. The *mens rea* under the TVPA is knowledge. *Drummond*

*Co.*, 782 F.3d at 609. The Eleventh Circuit rejected any "purpose or specific intent" requirement. *Id.*

at 604-5. As set forth in the Defendant-specific briefs, Plaintiffs allege individualized facts showing

that each Defendant knew he was approving, facilitating or concealing payments to the AUC,

knowing that it was a violent organization that used terror against civilians. Indeed, Chiquita

conceded that its senior executives approved payments to the AUC knowing that it was a violent

paramilitary organization. DE 575 ¶ 2035; DE 576 ¶¶ 73, 77-80; DE 558 ¶ 1768. Plaintiffs easily

satisfy the TVPA's aiding and abetting *mens rea* requirement.

> **b.**   **Defendants' approval and concealment of illegal money transfers substantially assisted the AUC's abuses.**

This Court has already found that Plaintiffs adequately alleged that Chiquita provided substantial assistance to the AUC. MTD Order at 1350-51. Defendants' contrary argument, MTD at 33-34, is based on cases applying international law. *Drummond*, however, holds that domestic law applies to TVPA liability. 782. F.3d. at 607-08. Under domestic law, funneling money over several years to a violent terrorist organization is substantial assistance.

As Congress has found, foreign terrorist organizations are "so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct." Pub. L. No. 104-132 § 301(a)(7), 110 Stat. 1247 (1996). Consistent with Congress' determination that there is no legitimate purpose for providing funds to terrorists, cases applying domestic law routinely find those who fund terrorists are liable as aiders and abettors. Indeed, in the ATA cases, this Court already held that allegations that Chiquita knowingly funded a terrorist organization were sufficient. *In re Chiquita*, 690 F. Supp. 2d 1296, 1309-10. Likewise, *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 104-07 (D.D.C. 2003), held that allegations that a private charitable organization provided funding to al Qaeda sufficiently stated a claim for aiding and abetting the September 11th attacks. Similarly, *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 584 (E.D.N.Y. 2005), held that a bank's provision of services to a terrorist organization was sufficient. As the Justice Department noted in prosecuting Chiquita, "Defendant Chiquita's financial support to the AUC was prolonged, steady, and substantial . . . . The money that defendant Chiquita paid to the AUC . . . helped to buy weapons and ammunition used to kill innocent victims," including decedents in this case. DE 575 ¶ 2189. This conduct fits "well within the mainstream" of aiding and abetting liability, as this Court already determined. *In re Chiquita*, 690 F. Supp. 2d at 1296, 1310; *see also Linde*, 384 F. Supp. 2d at

584.[12]

In *Doe v. Drummond*, the Eleventh Circuit "incorporat[ed] the legal standards from *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983)." 782 F.3d at 608. *Halberstam* held that knowingly supporting unlawful conduct with financial services—in that case, by permitting checks to be made out to the defendant and falsifying income tax returns, without any direct funding —was sufficient for aiding and abetting liability. *Halberstam*, 705 F.2d at 488. Actions to conceal illegal activity likewise constitute substantial assistance. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1410-11 (11th Cir. 1994); *Halberstam*, 705 F.2d at 488 (defendant liable as aider and abettor where she falsified tax returns that concealed the criminal conduct); *Resolution Trust Corp. v. Spagnoli*, 811 F. Supp. 1005, 1014 (D.N.J. 1993).

Defendants concede that this Court found a defendant can be liable if he *either* gives additional assistance beyond financing *or* provides financing unrelated to a commercial purpose. MTD at 34. Here, Plaintiffs have alleged both: in addition to gratuitous financing, Defendants actively concealed the payments. *See, e.g.*, DE 589 ¶¶ 88-89.  As set forth in the Defendant-specific briefs, Plaintiffs allege individualized facts showing that each Defendant individually provided substantial assistance by, *inter alia*, personally meeting with the AUC to initiate the scheme;

---

[12] Other cases applying domestic tort standards are in accord. In *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1 (D.D.C. 2010), the court—applying, in part, *In re Chiquita*—held that the plaintiffs sufficiently alleged aiding and abetting where the complaint stated that the defendant bank knowingly provided wire transfers to an agent of a terrorist organization. *Id.* at 50, 57. *See also Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414 (E.D.N.Y. 2013) (denying summary judgment for a bank charged with aiding and abetting deaths by funding a HAMAS charity); *see also Khulumani v. Barclay Nat'l Bank Ltd.*, 504 F.3d 254, 287-91 (2d Cir. 2007) (Hall, J., concurring) (noting that a defendant may be liable for aiding and abetting when he "purchase[s] security services with the knowledge that the security forces would, or were likely to, commit international law violations").

Moreover, international sources agree that "providing financial support to an organization committing crimes" constitutes substantial assistance. *Prosecutor v. Taylor*, Case No. SCSL-03-01-A, Appeal Judgment, ¶ 369 (Special Ct. for Sierra Leone Sept. 26, 2013); *accord United States v. Flick*, 6 Trials of War Criminals Before the Nuernberg Military Tribunals Under Control Council Law No. 10 at 1187 (1947) (defendant convicted of aiding and abetting for contributing money to the SS).

personally approving and authorizing the payments; personally designing, reviewing, or implementing procedures to conceal the payments; personally providing legal cover for the payments to continue; personally instructing employees to continue the payments; and/or facilitating the smuggling of drugs and arms. Plaintiffs' allegations are sufficient.

> **2.   Plaintiffs pled specific and concrete facts demonstrating that Defendants conspired with the AUC.**

This Court has already held that "Plaintiffs' detailed and voluminous factual allegations" adequately allege that Chiquita conspired with the AUC with the purpose that the AUC kill civilians. MTD Order at 1344-49, 1351-52. Defendants are the very individuals who approved and implemented that conspiracy for Chiquita. Their individual actions support the reasonable inference that they joined a conspiracy with the intent to further it and are liable for the foreseeable consequences.

> **a.   The Individual Defendants conspired to illegally exert control over the banana-growing regions.**

Conspiracy liability requires the agreement of two or more people to commit a wrongful act and that the defendant "joined the conspiracy knowing of *at least one of the goals* of the conspiracy and intending to help accomplish it." *Cabello*, 402 F.3d at 1159 (emphasis added). Defendants claim that Plaintiffs must show that Defendants intended the killings, but that is not so. Plaintiffs have adequately alleged that Defendants conspired to unlawfully obtain the services of violent thugs to control banana-growing regions, and the fact that they would commit killings was certainly foreseeable.

A conspirator is liable for all consequences that are "reasonably foreseen as a necessary or natural consequence of the unlawful agreement." *United States v. Mothersill*, 87 F.3d 1214, 1218 (11th Cir. 1996) (citation omitted). "Under a conspiracy theory, the Plaintiffs have to allege that the Defendants were involved in an agreement to accomplish an unlawful act" and that the murders and

torture "were a reasonably foreseeable consequence of that conspiracy." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp.2d 765, 829 (S.D.N.Y. 2005), *on reconsideration in part*, 392 F. Supp. 2d 539 (S.D.N.Y. 2005), *aff'd*, 538 F.3d 71 (2d Cir. 2008), and *aff'd*, 714 F.3d 118 (2d Cir. 2013); *see also Halberstam*, 705 F.2d at 487.

As set forth in the Defendant-specific briefs, Plaintiffs allege individualized facts showing that each Defendant joined a conspiracy. Each Defendant also intended at least one aim of the conspiracy. Even if they did not intend the AUC's killings—which they did—each Defendant also intended to unlawfully fund the AUC and obtain its services to control the banana growing region as one of the aims of the conspiracy. *E.g.*, DE 589 ¶ 90 (payments were made to the AUC in exchange for "pacifying the banana growing region and suppressing union activity") ¶ 165 ("as result of the negotiations" by Charles Keiser, the AUC "was ordered to patrol large swathes of the banana-growing region). Each Defendant agreed to and took affirmative steps towards achieving the unlawful goal of funding the AUC and the killings were a foreseeable outcome of that exchange. Plaintiffs' allegations are sufficient.

> **b.    The Individual Defendants shared the AUC's and Chiquita's intent to harm civilians.**

Even if Plaintiffs were required to allege that Defendants conspired with the AUC and Chiquita to murder Colombian civilians, they have done so here. Common purpose "can be inferred from the conduct of the alleged participants or from circumstantial evidence of the scheme." *In re Chiquita*, 690 F. Supp. 2d at 1311-12 (quoting *Cox*, 17 F.3d at 1410-11); *accord Halberstam*, 705 F.2d at 486-87 (inferring willing intent from indirect evidence, including the parties' relationship, symbiotic acts that benefitted them, and the relationship's duration). "Plaintiff need not produce a 'smoking gun.'" *Zivojinovich v. Ritz Carlton Hotel Co.*, 445 F. Supp. 2d 1337, 1344-45 (M.D. Fla. 2006) (citation omitted).

Plaintiffs' allegations of specific and individualized conduct by each Individual Defendant

clearly raise the inference that each Defendant shared Chiquita's purpose. First, this Court has already held that "Plaintiffs' detailed and voluminous factual allegations" adequately allege that Chiquita conspired with the AUC with the purpose that the AUC kill civilians. MTD Order at 1344-49, 1351-52. As a corporation, however, Chiquita's intent must be imputed from the intent of the executives and officers who act on its behalf. *See, e.g.*, *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 635 (11th Cir. 2010) ("Corporations have no state of mind of their own; rather, the scienter of their agents must be imputed to them."). Here, Chiquita's conspiracy with the AUC was agreed upon, approved, implemented, and concealed by the Individual Defendants. Because Chiquita's intent rests upon that of the Individual Defendants who controlled the conspiracy, Plaintiffs have adequately alleged *mens rea*.[13]

Even if this Court were to ignore Chiquita's intent, Plaintiffs' allegations with respect to the Individual Defendants are still sufficient to raise the inference that each Defendant intended to support the AUC's abuses. As described in more detail in the individual briefs, each Defendant personally initiated, approved, and/or implemented  the illegal payments to the AUC despite knowing that the AUC was a violent, paramilitary organization that terrorized civilians through unlawful force, including extrajudicial killings. DE 575 ¶¶ 2035-39, 2047-50, 2053-56, 2146-48; DE 589 ¶¶ 17-22, 29, 86-88, 91, 117-18, 156, 158.  Such knowing assistance "evidences a deliberate long-

---

[13] Defendants' argument that corporate intent cannot be imputed to "*every* officer, director, or employee," MTD at 32 (emphasis added), is a red herring. Plaintiffs do not seek to impute Chiquita's intent to *every* officer or director, but plead the requisite of the Individual Defendants, upon whose intent Chiquita's rests. Defendants cite inapposite *securities fraud* cases under the PSLRA, which has a heightened pleading standard. *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007). None of these cases hold that where allegations of corporate *scienter* succeed, allegations of individual *scienter* against the officials who actually acted can fail. Quite the opposite, these cases hold that an individual must have known that a statement was false for the company to be liable for securities fraud. *See Thompson*, 610 F.3d at 634-35; *In re Rexall Sundown, Inc. Sec. Litig.*, 2000 WL 33539428, at *3 (S.D. Fla. Mar. 29, 2000); *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784-85 (9th Cir. 2008). Nothing in these cases contradicts the conclusion that where, as here, corporate intent is adequately alleged, the complaints may also allege that the individual officers who implemented and concealed the acts in question shared the intent of corporation.

term *intention* to participate in an ongoing illicit enterprise. [Defendant's] continuous participation reflected her *intent* and *desire* to make the venture succeed." *Halberstam*, 705 F.2d at 488 (emphasis added); *see also United States v. Durham*, 512 F.2d 1281, 1289 (5th Cir. 1975) ("It is reasonable to infer that a person ordinarily intends the natural and probable consequences of his knowing acts.") (citation omitted). More specifically, "knowingly and intentionally agree[ing] to provide services to [terrorist] organizations" is enough to infer "not only the existence of an agreement but [Defendants'] knowing and intentional participation in the agreement's illegal goals." *Linde*, 384 F. Supp.2d at 584.[14]

In addition, as described in more detail in the individual briefs, the Defendants concealed the payments. Indeed, they went to extraordinary lengths to hide Chiquita's illegal payments to the AUC through the use of illegal cash transfers, *convivirs*, and other mechanisms—practices this Court has already concluded were "atypical." *In re Chiquita*, 690 F. Supp. 2d at 1310. Evidence that a defendant helped conceal a conspiracy, particularly where the means used are atypical, support liability as a conspirator. *Cox*, 17 F.3d at 1411; *Halberstam*, 705 F.2d at 487 (defendant liable where she provided "in an unusual way under unusual circumstances" to help conceal illegal activities). Finally, Defendants approved and hid the illegal payments for *years*. As *Halberstam* found, long-term assistance to an illegal scheme raises the inference that a defendant was a willingly participant. 705

---

[14] Defendants nonetheless erroneously claim that knowing assistance can never raise an inference of purpose. MTD at 30-31. Their cases say no such thing. *Liu Bo Shan v. China Constr. Bank Corp.*, specifically acknowledged that "intent must often be demonstrated by the circumstances." 421 F. App'x 89, 94 (2d Cir. 2011) (quoting *Presbyterian Church of Sudan v. Talisman Energy*, 582 F. 3d 244, 264 (2d Cir. 2009)). It simply held that, on the facts of that case, there were insufficient allegations of purpose. *Id.* Similarly, *Jean-Charles v. Perlitz* held that allegations that defendants funded a Haitian school "even after they knew or should have known" the school's founder sexually abused students was insufficient to allege that the defendants acted "for the very purpose of facilitating" sexual abuse. 937 F. Supp. 2d 276, 282 (D. Conn. 2012). Funding a school is nothing like funding a terrorist organization. The ordinary inference that a person funding an organization supports its goals leads to dismissal in *Perlitz* but liability here. And this Court has already found that Plaintiffs have alleged the payments were made with purpose.

F.2d at 487.

In sum, Plaintiffs have adequately alleged that Defendants joined the conspiracy between the AUC and Chiquita and shared its intent. At the very least, these allegations permit a plausible inference of intent "require[ing] credibility determinations best left for trial" and factual supplementation from discovery. *Bennett Marine, Inc. v. Lenco Marine, Inc.*, 2008 WL 906766, at *4 (S.D. Fla. Apr. 3, 2008). Thus, Plaintiffs' allegations must be considered "in light of the fact that questions of intent are factual inquiries not appropriate for resolution on a motion to dismiss." MTD Order at 1349-50.[15]

Defendants' reliance on *Giraldo v. Drummond Co.* is misplaced. *See* MTD at 33. In that case— which was decided on summary judgment after discovery—the district court concluded that the individual defendant **had no knowledge** of Drummond's payments to the AUC, and therefore could not have had the requisite intent. 2013 WL 3873965, at *5 (N.D. Ala. July 25, 2013); *see also Drummond Co.*, 782 F.3d at 604 (affirming on same grounds).[16] Here, by contrast, Plaintiffs have alleged that each Individual Defendant not only knew about the illegal payments to the AUC, each one also directly participated in the scheme as set forth in the accompanying Defendant-specific briefs. Just as in *Halberstam*, Defendants' long-running assistance to the AUC raises the reasonable inference that Defendants agreed to the conspiracy and its aims.

### c.    Each Individual Defendant conspired.

Contrary to Defendants' argument, there is no requirement that Plaintiffs allege that *each*

---

[15] There is no "heightened" pleading requirement for conspiracy. "After *Iqbal* it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2)." *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

[16] Nor does the companion *Giraldo* case help Defendants. There too the record contained no admissible evidence that the defendant approved or knew about the payments to the AUC. *Giraldo v. Drummond Co.*, 2013 WL 3873978, at *5, n.11 (N.D. Ala. July 25, 2013).

*Defendant* met with and formally reached an agreement with the AUC.[17] *See* MTD at 34-35.  As the Eleventh Circuit held in *Cabello*, a defendant may join an existing conspiracy; he need not create one himself. 402 F.3d at 1159.  Indeed, "[n]o formal agreement is necessary," *Am. Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946); a "tacit accord . . . is enough," *Halberstam*, 705 F.2d at 487.  Failure to allege direct participation in the creation of a formal agreement cannot bar Plaintiffs' claims, when there need not be any such agreement.  Plaintiffs have adequately alleged that each Individual Defendant joined the conspiracy between the AUC.

> **d.**     **Defendants' alternate explanations cannot serve as a basis for dismissal of Plaintiffs' well pled claims**

Most of the Individual Defendants claim that they funded the AUC due to threats of violence, not due to a desire to support the group. *See e.g.*, Def. Keiser's Suppl. Mem. in Supp. of his Mot. to Dismiss 4, DE 733 (Mar. 09, 2015). This Court already rejected that argument, finding that Plaintiffs alleged that "Chiquita's assistance was not given out of duress; rather it was part and parcel of the company's proactive strategy to increase profitability and suppress labor unrest by exterminating the FARC . . . . [I]t was the banana companies that approached the AUC to initiate their relationship." MTD Order at 1344-45; *accord id.* at 1348-49. Regardless, Defendants' purpose only matters for conspiracy liability; only knowledge is required for aiding and abetting.

Defendants claim that where a defendant must have a specific purpose, plaintiffs' allegations may not "leave open an 'obvious alternative explanation' for the defendant's actions." MTD at 28 (quoting *Iqbal*, 556 U.S. at 681). But Plaintiffs' allegations need not *refute* all other possibilities. A court may not choose between competing plausible explanations or decide which version of events is more likely. *Twombly*, 550 U.S. at 545 ("[P]lausib[ility]. . . [is] not . . . a probability requirement");

---

[17] Indeed, a defendant need not even "know the identity of his co-conspirators or the exact role which they play in the conspiracy." *Sears v. United States*, 343 F.2d 139, 142 (5th Cir. 1965); *accord United States v. Marchante*, 514 F. App'x 878, 883 (11th Cir. 2013).

*Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("'Plausibility' . . . does not imply that the district court should decide . . . which version is more likely . . . .").[18]

Defendants rip the "obvious alternative explanation" language from context, and distort its meaning. MTD at 28. Defendents cite *Iqbal* and *Mamani*, but both held that the plaintiffs had failed to present facts that would suggest intentional wrongdoing. *Iqbal*, 556 U.S. at 683 (the only factual allegation against petitioners accuses them of adopting a policy of holding detainees until they were cleared by the FBI); *Mamani*, 654 F.3d 1148, 1155 (11th Cir. 2011) ("plaintiffs allege no facts showing that the deaths in this case met the minimal requirements for extrajudicial killing"). These cases did not hold that the plaintiffs' allegations failed "*because* there was an 'obvious alternative explanation.'" MTD at 28 (emphasis added). They credited an alternative explanation only where plaintiffs pled no facts that would permit the explanations they advanced. By contrast, ignoring direct allegations that demonstrate purpose and the factual context from which purpose can reasonably be inferred based on a belief that another explanation is possible is precisely what *Twombly* forbids.

Here, by contrast, Plaintiffs present numerous specific facts that would lead to a reasonable inference that Defendants intended to support the AUC: (1) each individual's personal involvement in the decisions to fund the AUC over the years, DE 589 ¶¶ 21, 88, 116; DE 575 ¶¶ 2036, 2038,

---

[18] If Defendants could merely aver that unproved facts exist and that they render Plaintiffs' allegations implausible, that would reverse the "universal[ly] accept[ed]" motion to dismiss practice that "(1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleadings are drawn in the favor of the pleader." 5B Wright & Miller, Fed. Prac. & Proc. Civ. § 1357 (3d ed.). And it would, nonsensically, make dismissal easier under Rule 12(b)(6) than on summary judgment, which cannot be granted if there are fact disputes that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). As Justice Souter, *Twombly*'s author, later explained, "plausibility" does not mean that the Court second-guesses whether specifically-pled facts are true, but rather whether *inferences* drawn from those facts are plausible "taking the facts as true"; "the standard is plausibility assuming the pleaded facts to be true and read in a plaintiff's favor." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 29-30 (1st Cir. 2010).

2039, 2050; DE 579 ¶ 73; (2) each individual's role in the decision, design, and implementation of the scheme to conceal payments from the U.S. government, DE 575 ¶ 2039, 2047, 2050; DE 576 ¶ 73-74;  DE 589 ¶ 88; (3) Chiquita's shared interests with paramilitaries who boasted of quelling banana-worker strikes, DE 575 ¶ 2145; DE 576 ¶ 69, 76, 111; DE 589 ¶ 164; (4) the fact that Chiquita initiated contact with the AUC, DE 589 ¶¶ 165-167; 575 ¶ 2218; DE 576 ¶ 114; (5) and the fact that Chiquita employees and assets under the control of some of the individual Defendants were used to smuggle both arms and drugs, DE 575 ¶¶ 2150-63; DE 589 ¶¶ 138-51; DE 576 ¶¶ 81-94. While it might be *possible*, under these facts, that Defendants acted under duress, it is certainly not an "obvious alternative explanation."

In any event, duress is an affirmative defense. *Dixon v. United States*, 548 U.S. 1, 6-7 (2006). Dismissal based on an affirmative defense is proper *only* if its applicability appears on the face of the complaint. 5B Wright & Miller, Fed. Prac. & Proc. Civ. § 1357 n. 63 (3d ed.) (collecting cases). A duress defense is not apparent on the face of any complaint here. This Court correctly applied Rule 12 when it concluded that Plaintiffs adequately allege the payments were not made under duress.

> **3.    Defendants are responsible for supporting the AUC based on agency liability, including ratification and command responsibility.**

As set forth above, each Defendant is liable for the consequences of Chiquita's support for the AUC. The defendant-specific briefs detail how each Defendant was personally involved in this support. Many of the Individual Defendants, however, are *also* responsible for the acts of other Chiquita employees, including Charles Keiser, based on theories of agency liability. Agency theories of liability, "including ratification," are applicable to TVPA claims, *Drummond Co.*, 782 F.3d at 607 n.42; likewise, command responsibility, which is analogous to agency, is also applicable even to civilian corporate officials, *id.* at 609-11.

> **a.    Defendants ratified the payments to the AUC.**

Although the complaints adequately allege the personal involvement of each Individual

Defendant, several of them also are liable as principals because they ratified the payments made by other Chiquita employees. Ratification provides that a principal is liable if he knowingly accepting the benefits of the acts, such as "through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences." Restatement (Third) Agency § 4.01, cmt. d (2006). Three elements are necessary for ratification to occur: (1) acceptance by the principal of the benefits of the agent's acts (2) with full knowledge of the facts, and (3) circumstances or affirmative election indicating an intention to adopt the unauthorized arrangement. *In re Monetary Group*, 95 B.R. 803 (Bankr. M.D. Fla. 1989). Defendants certainly were aware of the payments to the AUC, accepted the benefits of the AUC's services and continued authorizing and concealing the payments even after learning that they violated U.S. law. While it was Keiser who made and implemented the original deal to pay the AUC, DE 589 ¶¶ 21, 165, Olson, for example, knew of the investigation into the payments and reported investigation results to the Audit Committee (which included Freidheim), and Kistinger ordered the continuation of the payments to the AUC. Each of them, by his conduct, ratified the payment scheme carried out by Keiser and others.

### b. Defendants are liable under superior or command responsibility.

*Doe v. Drummond* confirmed not only that superior, or command, responsibility is available for TVPA claims, but also that it may apply to "civilian corporate officer[s]." 782 F.3d at 610. The doctrine requires three elements:

> (1) the existence of a superior-subordinate relationship between the commander and the perpetrator of the crime; (2) that the commander knew or should have known, owing to the circumstances at the time, that his subordinates had committed, were committing, or planned to commit acts violative of the law of war; and (3) that the commander failed to prevent the commission of the crimes, or failed to punish the subordinates after the commission of the crimes.

*Id.* at 609 (quoting *Ford ex rel. Estate of Ford v. Garcia*, 289 F.3d 1283, 1288 (11th Cir. 2002)).

Here, several of the Individual Defendants, can be liable under the command responsibility doctrine

for Plaintiffs' TVPA claims, because – as Chiquita's highest management – they all exercised the requisite authority over the subordinates that carried out the payment scheme, knew of the payments, and failed to prevent or punish them.

Unlike other TVPA liability theories, command responsibility is controlled by international law standards. *Drummond Co.*, 782 F. 3d at 609. Thus, superiors are liable for crimes directly committed by a subordinate and those "'planned, instigated, ordered, . . . or otherwise aided and abetted'" by a subordinate. *Nahimana v. Prosecutor*, Case No. ICTR-99-52-A, Appeal Judgment ¶ 486 (Int'l Crim. Trib. For Rwanda Nov. 28, 2007) (citation omitted).[19] Even if Defendants' own conduct were not sufficient for liability, their subordinates plainly aided and abetted the AUC's crimes.

In *Nahimana*, for example, the defendant was convicted for failing to prevent his staff's radio broadcasts inciting murders. *Nahimana* ¶¶ 856-57. The staff did not commit the murders, but the defendant was still accountable as a superior for his staff's indirect role in them. *Id.*; *see also The Roechling Case*, 14 *Trials of War Criminals Before the Nuernberg Military Tribunals Under Control Council Law No. 10* 1087 (1951) (executive's conviction partly stemmed from his subordinates' collaboration with the Gestapo). Likewise, here, Individual Defendants who were in positions of authority at Chiquita knew that Keiser, and others, were providing substantial assistance to the AUC, and failed to use their authority to stop the illegal support for the AUC.

### 4. Defendants' challenge to the pleadings is unavailing.

#### a. Plaintiffs' allegations are concrete and specific, not conclusory.

---

[19] *See also Prosecutor v. Oric*, Case No. IT-03-68-T, Judgment, ¶ 301 (Int'l Crim. Trib. For the Former Yugoslavia June 30, 2006) ("responsibility of a superior . . . is not limited to crimes committed by subordinates in person but encompasses . . . instigating as well as otherwise aiding and abetting"); *Prosecutor v. Taylor*, Case No. SCSL-03-01-T-1281, Judgment, ¶ 492 (Special Ct. for Sierra Leone May 18, 2012) ("a superior can be held responsible for failure to prevent or punish a crime which was . . . aided and abetted by subordinates"). Although the Eleventh Circuit's decision in *Ford* focused on liability of a superior for a direct perpetrator – the relevant factual scenario in that case, 289 F.3d at 1288 – nothing in *Ford* rejected or foreclosed the possibility of superior responsibility for an abettor, and *Doe v. Drummond* confirms that international sources are instructive.

Defendants argue that Plaintiffs' concrete and specific allegations are conclusory. This Court previously rejected this argument as to Chiquita, noting that Plaintiffs' "detailed factual allegations are neither 'vague' nor 'conclusory.'" MTD Order at 1344-52. The same is true for the amended complaints. The *Twombly/Iqbal* concern about conclusory allegations "focused on allegations of ultimate legal conclusions and on unadorned recitations of a cause-of-action's elements." *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 14 (1st Cir. 2011). Plaintiffs have not recited the elements of their cause of action but have pled in detail specific facts tying each Defendant to the abuses at issue.

*Iqbal* held that allegations that the FBI acted "under the direction" of the defendant and that defendants "approved" a particular policy were not conclusory. 556 U.S. at 681. Those allegations are indistinguishable from Plaintiffs' allegations that each Defendant specifically approved funding the AUC and/or designed or approved policies to hide those illegal payments. Similarly, *Turkmen v. Hasty*, 2015 U.S. App. LEXIS 10160, at * 41 (2d Cir. June 17, 2015), found sufficient allegations that top managers at the Department of Justice were aware of punitive detainment conditions, knew that detainees were being held without specific ties to terrorism, and made decisions that resulted in continued detention. In *Mamani*, which Defendants cite, the court rejected as conclusory pleadings including formulaic recitations of elements of the claims at issue. 654 F.3d 1148, 1153 (11th Cir. 2011). On remand, the district court found the plaintiffs cured the deficiencies in an amended complaint, alleging when meetings took place, who was involved and what transpired. *Mamani*, 21 F.Supp3d at 1377 n. 24.

Here, Plaintiffs describe with specificity the roles each Defendant played in a detailed and concrete scheme of payments and concealment. As set forth in the Defendant-specific briefs, Plaintiffs detail when meetings took place, who was involved and what transpired.  E.g., DE 589 ¶¶ 86, 88, 161, 166. Plaintiffs' allegations are not conclusory.

> **b.** **Plaintiffs provide sufficient allegations with respect to each Defendant.**

Defendants suggest that the complaints merely and impermissibly "lump" together generalized allegations against multiple Individual Defendants. MTD at 26. They are wrong. As laid out fully in the Defendant-specific responses, the Complaints explain the specific manner in which *each* Defendant abetted and conspired with the AUC. Plaintiffs have placed each Defendant on notice as to how *he* violated the TVPA.

There are, of course, allegations that apply to Chiquita generally, which this Court found sufficiently allege that Chiquita abetted and conspired with the AUC. MTD Order at 1344-52. The individual allegations show that each Defendant provided the assistance and joined the conspiracy described in these general allegations. The facts of what Chiquita did, knew and intended *support* Defendants' *mens rea* and liability; courts determine the "existence of a conspiracy" by reading the complaint "as a whole." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 190 (2d Cir. 2012). Given the collective nature of conspiracies, it would make little sense if collective allegations, including about joint or co-conspirators' actions, were ignored.[20]

> **5.** **Plaintiffs have alleged a specific nexus between their injuries and the elements of their TVPA claims.**

As Defendants recognize, this Court already rejected Defendants' argument on "nexus", MTD at 35; MTD Order at 1331. Defendants do not ask the Court to revisit its decision; they

---

[20] Defendants' authorities hold only that a complaint must notify each defendant of the conduct for which he is being held liable. *E.g.*, *Kabbaj v. Obama*, 568 F. App'x 875, 880 (11th Cir. 2014); *W. Coast Roofing and Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 87 (11th Cir. 2008) (applying heightened Fed. R. Civ. P. 9 pleading requirements); *Curtis Inv. Co., LLC v. Bayerische Hypo-und Vereinsbank, AG*, 341 F. App'x 487, 493-94 (11th Cir. 2009)(same); *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1373 (S.D. Fla. 2011). *Mukamal v. Bakes*, 383 B.R. 798, 826, (S.D. Fla. 2007); *Doe v. Exxon Mobil Corp.*, 573 F. Supp. 2d 16, 30-31 (D.D.C. 2008) (finding allegations as to one defendant sufficient); *Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 2010 WL 1408391, at*21 (M.D. Fla. Apr. 6, 2010). None suggests that the allegations this Court found sufficient with respect to Chiquita must be ignored with respect to the Individual Defendants.

simply preserve their erroneous arguments for appeal. Plaintiffs will brief the issue further should the Court so request.

Finally, if this Court were to conclude that Plaintiffs' allegations are not sufficiently specific, Plaintiffs request leave to amend to provide additional facts. *See Bryant v. Dupree*, 252 F.3d 1161, 1164-65 (11th Cir. 2001) (leave to amend should be granted where plaintiffs had no prior notice of complaint defects, and amendment would not be futile).

## II.   Defendants' Motion to Dismiss the Non-Federal Claims in the *Does 1-11*, *Montes*, *Valencia*, and *Carrizosa* Cases Must Fail.

### A.   Plaintiffs have given reasonable notice of their intent to rely on foreign law.

Defendants have not moved to dismiss Plaintiffs' Colombian law claims on the grounds that the facts set out in Plaintiffs' complaints do not present claims for relief under Colombian law. To the contrary, Defendants have conceded the viability of Plaintiffs' claims under Colombian law and Defendants' own Colombian law expert attests to the availability of claims under Colombian law for the conduct described in the complaints. *See* Decl. of Francisco Javier Tamayo Jaramillo ¶ 9, attached as Ex. 1 to Chiquita FNC; *see also id.* at ¶¶ 25, 26, 28, 29, 31, 33.

Rather, Defendants seek to impose a formalistic pleading requirement that has been rejected by the Federal Rules and the Supreme Court. Defendants move to dismiss the Colombian law claims in the *Does 1-11*, *Montes*, *Valencia*, and *Carrizosa* complaints on the grounds that Plaintiffs were required to plead the legal elements of their Colombia law claims. MTD at 37.[21]  Defendants are mistaken. A party is never required to plead law in his complaint. A complaint need only inform the defendant of the *factual* basis for the claim. *E.g.*, *Johnson v. City of Shelby, Miss.*, 135 S. Ct. 346, 346-47

---

[21] The Individual Defendants have focused their motion to dismiss the *Does 1-144* Plaintiffs' Colombian law claims on statute of limitations grounds and make a *pro forma* pleading argument as to the DC case. MTD at 39, n.18. The DC Plaintiffs (Case No. 08-cv-80465) respond to the statute of limitations issue in a separate brief filed concurrently herewith, and join the arguments made by the other Plaintiffs as to the adequacy of the pleadings on Colombian law.

(2014); Fed. R. Civ. P 8(a). The Federal Rules do not permit dismissal of a complaint for failure to set out the legal theory or state the statutory basis for a claim. *Johnson*, 135 S. Ct. at 347 (reversing dismissal of complaint where plaintiff failed to identify the applicable law); *Bartholet v. Reishauer, A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992) (Easterbrook, C.J.) ("Although it is common to draft complaints with multiple counts, each of which specifies a single statute or legal rule, nothing in the Rules of Civil Procedure requires this. To the contrary, the rules discourage it."). Defendants assert without authority that there is a "heightened pleading standard that applies to foreign law claims." MTD at 39. There is no such standard and Defendants cite no case requiring that a plaintiff plead the content of foreign law.

The Federal Rules require only that a party give notice of its *intent* to rely on foreign law. And even that notice of intent need not be in the complaint. "A party who intends to raise an issue about a foreign country's law must give notice by a pleading *or other writing*." Fed. R. Civ. P. 44.1 (emphasis added); *Belleri v. U.S.*, 712 F.3d 543, 548 (11th Cir. 2013). Indeed, the Advisory Committee Notes specifically explain that foreign law "may, but need not be, incorporated in the pleadings." Fed. R. Civ. P. 44.1 advisory committee notes (1966 Adoption). The *Doe*, *Montes*, *Valencia* and *Carrizosa* Plaintiffs have given reasonable notice in their pleadings of their intent to rely on Colombian law, as Defendants implicitly concede. MTD at 38-39.[22]  No more is required.

The cases Defendants cite do not support their argument. For example, in *Doe v. Exxon*, the plaintiffs pled ten state law claims, in the same manner that Plaintiffs do here. *Compare* DE 589 ¶ 284 (pleading extrajudicial killing facts and concluding the acts constitute violations of "the common law

---

[22] Indeed, courts permit parties to allege the applicability of multiple bodies of law at the pleading stage. *E.g.*, *Rationis Enters. Inc. of Panama v. Hyundai Mipo Dockyard Co.*, 426 F.3d 580 (2d Cir. 2005) (approving pleading of English, Swedish or Korean law); *Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343, 1349-50 (S.D. Fla. 2008).

of the United States, the statutes and common law of New Jersey, and the laws of Colombia")[23] *with*

First Am. Compl. ¶ 89, *Doe v. Exxon Mobil Corp.*, No. 1:01-cv-01357, DE 129 (Feb. 16, 2006)

(pleading wrongful death facts and concluding: "The acts described herein constitute wrongful

death, actionable under the laws of the various states, including Delaware, New Jersey, and Texas;

and the laws of Indonesia").[24]   Exxon challenged not whether there was an adequate statement of

foreign law, as Defendants do here, but the existence of the claim of infliction of emotion distress

under Indonesian law. The Court dismissed the emotional distress claim on the grounds it was not

recognized under Indonesian law (just as it had when the claim was considered under the law of the

District of Colombia), but the other Indonesian law claims, including wrongful death, remain in the

case. *Doe v. Exxon Mobil Corp.*, 2014 WL 4746256, at *1, *20, *22 (D.D.C. Sept. 23, 2014); Proposed

Second Am. Compl. ¶¶ 193-240, *Doe v. Exxon Mobil Corp.*, No. 1:01-cv-01357, DE 464-3 (Nov. 25,

2014). Here, Defendants explicitly declined to challenge the availability of Plaintiffs' claims under

Colombian law and only seek to impose a formalistic pleading requirement. Defendants' only other

authority is a bankruptcy court decision, *In re Harte*, 440 B.R. 133 (Bankr. W.D. Mich. 2010), which

concerned proving the content of foreign law at trial, not the sufficiency of the pleadings.

Last, even if Plaintiffs were required to provide further citations of the applicable law in their

complaints, the proper course would be to allow Plaintiffs to amend their complaints to describe

what even Defendants concede are viable Colombian law claims. *See Johnson*, 135 S. Ct. at 347

(noting that while pleading law is unnecessary, Plaintiffs should be permitted to amend to identify

the statutory basis for their claim under Fed. R. Civ. P. 15(a)(2)).

---

[23] Other complaints by Plaintiffs are similar. *See, e.g.*, DE 576 ¶ 1261 (extrajudicial killings constitute violations of "the common law of the United States, the statutes and common law of New Jersey, Florida, Ohio, [and] the laws of Colombia.")

[24] Similarly, in *Mamani v. Berzain*, plaintiffs' claims for wrongful death are proceeding under Bolivian law, *see* 21 F. Supp. 3d at 1378-79; the relevant pleading asserted wrongful death claims "[i]n violation of the laws of the State of Florida and Bolivia," Second Am. Consolidated Compl. ¶ 216, *Mamani*, No. 8-cv-21063, DE 156 (June 24, 2013).

**B.      Dismissal of State law claims is premature before a choice-of-law analysis.**

Plaintiffs assert state law claims under the laws of the District of Columbia, Florida, New Jersey, or Ohio in addition to or as an alternative to the Colombian law claims. Defendants have moved to dismiss these state law claims. As an initial matter, whether state law or Colombian law ultimately controls the claims is determined by each state's choice of law rules, which should be decided upon only after a fact-dependent inquiry and further briefing by the parties. *See* Restatement (Second) of Conflict of Laws § 145 (1971); *see also Bishop v. Fla. Specialty Paint Co.*, 389 So. 2d 999 (Fla. 1980); *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 452, 459-60 (N.J. 2008); *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 288-89 (Ohio 1984); *Drs. Groover, Christie & Merrit, P.C. v. Burke*, 917 A.2d 1110, 1117 (D.C. 2007). Therefore, dismissal of Plaintiffs' state law claims is premature before determining whether state law or Colombian law applies under choice of law principles.[25]

**III.   Defendants' Motion to Dismiss the *Does 1-11* and *Does 1-144* Complaints on Personal Jurisdiction is Without Merit.**

Five of the Individual Defendants—Freidheim, Olson, Kistinger, Keiser, and Tsacalis— move this Court to dismiss the claims against them in the NJ action. Those five individuals, plus two more—Warshaw and Aguirre—move to dismiss the claims against them in the DC action.[26]  Even if personal jurisdiction were lacking (which it is not) the Individual Defendants' personal jurisdiction challenge fails because this Court has the power to transfer their cases to districts with personal jurisdiction, which would then transfer the claims back to this Court pursuant to the MDL Order, rather than dismissing. Alternatively, federal law provides that at the end of the pre-trial phase this Court may allow the original transferor courts (NJ and DC) to, after remand, transfer the claims against the Individual Defendants to the appropriate district courts. Thus, although jurisdiction

---

[25] *See also* FNC fn. 20.

[26] Both actions also include claims against Roderick Hills, who passed away in 2014. Plaintiffs have moved to substitute his estate. *See* Mot. for Substitution, DE 813 (June 1, 2015).

plainly exists over each individual defendant in the transferor state, this Court need not expend

resources to decide this issue because under any scenario, the cases will be sent back to this Court.

   A.    **This Court need not determine whether the transferor courts had personal jurisdiction over the Individuals Defendants because this Court may transfer these claims to an appropriate court or allow the transferor courts to do so on remand.**

   Defendants' motion to dismiss the District of Columbia and New Jersey cases on personal

jurisdiction grounds is a red herring as it ignores the available remedy provided under federal law.

   Pursuant to 28 U.S.C. §§ 1406 & 1631, the transferor courts (NJ and DC) have the authority

to transfer the claims to any district court with jurisdiction. *See, e.g.*, *Goldlawr, Inc. v. Heiman*, 369 U.S.

463, 466-67 (1962) (§ 1406(a)); *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94,

109-10 (3d Cir. 2009) (§ 1631); *Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003) (same); *Edwards v.

Leach Int'l*, 2015 WL 1781835, at *4 (M.D. Fla. Apr. 20, 2015) (same). This authority may be

exercised regardless of whether the transferor courts could have exercised personal jurisdiction over

the defendants. *Goldlawr*, 369 U.S. at 466-67; *D'Jamoos*, 566 F.3d at 109-10; *Edwards*, 2015 WL

1781835, at *4. In order to transfer a case under either statute, the transferor court must find that

the claims could originally have been brought in the transferee court and that a transfer would be "in

the interest of justice."  28 U.S.C. § 1406(a); *id.* § 1631; *Goldlawr*, 369 U.S. at 467; *D'Jamoos*, 566 F.3d

at 110; *Edwards*, 2015 WL 1781835, at *4.

   Because a court overseeing multi-district litigation has the same authority as the original

transferor courts, *see, e.g.*, *In re "Agent Orange" Prod. Liab. Litig. MDL No. 381*, 818 F.2d 145, 163 (2d

Cir. 1987); *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 495 (J.P.M.L. 1968), it likewise has the

authority to transfer claims to any district court that has jurisdiction over them. For example, in *In re

Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 257 F. Supp. 2d 717, 720 (S.D.N.Y. 2003), one of

the actions was filed in California federal court and then transferred pursuant to a MDL Panel Order

to the Southern District of New York. *Id.* at 722. The defendants in the California action moved to

dismiss for lack of personal jurisdiction. *Id.* at 728. Judge Scheindlin (the MDL Court), agreed that personal jurisdiction was lacking in California, but held that the proper remedy was transfer of the action to a jurisdiction with personal jurisdiction (there, Colorado). *Id.* at 733-34. Because there was a standing MDL Panel Order consolidating all cases before her, Judge Sheindlin further instructed that, after transfer to Colorado, the action should be transferred back to New York. *Id.* at 736 & n.33; *see also In re Vitamins Antitrust Litig.*, 270 F. Supp. 2d 15, 37 (D.D.C. 2003) (Hogan, C.J.) (where original transferor court lacked jurisdiction, multidistrict court transferred action to court with jurisdiction); *cf. In re U.S. Office Prods. Co. Sec. Litig.*, 251 F. Supp. 2d 58 (D.D.C. 2003) (same with respect to venue).[27] Alternatively, an MDL court may permit the litigation to proceed and, after the pre-trial proceedings are concluded, remand the action to the original transferor court, which may then transfer the litigation to the appropriate district. *See* 28 U.S.C. § 1407(a); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 39 (1998) (observing in MDL action that transfers "may be made after remand of the case to the originating district court")[28]; *In re Papst Licensing GMBH & Co Litig.*, 590 F. Supp. 2d 94, 101 (D.D.C. 2008) (transfer claims to court with jurisdiction at end of multidistrict proceedings).

---

[27] Defendants cite two inapposite cases. *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 164 (4th Cir. 1992), concerned an order in a multi-district litigation that attempted to reach plaintiffs in federal cases not transferred to the MDL, plaintiffs in state cases, and claimants who had yet to file suit. Defendants truncated the sentence on which they rely, which goes on to say "any attempt without service of process to reach others who are unrelated is beyond the court's power." *Id.* at 166. No similar order is at issue here. In *In re Asbestos Prods. Liab. Litig. (No. VI)*, 965 F. Supp. 2d 612, 622-23 (E.D. Pa. 2013), the court misapplied *Lexecon*. Moreover, the court found that a transfer would not be in the interests of justice because Plaintiffs, who had filed over 50,000 cases involving millions of claims since the 1980s, continued to file thousands of cases in the wrong district even after the court held it lacked personal jurisdiction over the defendants. *Id.* at 614, 623.

[28] In *Lexecon*, the Supreme Court held that a MDL court may not use the transfer statutes to "transfer" a case to itself for trial. But, as other courts have held, it did not prohibit district courts from entering a pre-trial order to transfer a case to cure jurisdictional or venue defects. *See, e.g., In re Western States Wholesale Natural Gas Antitrust Litig.*, 2010 WL 2539728, at *6 (D. Nev. June 4, 2010).

Here, at a minimum, Plaintiffs' claims could have been brought against the Individual Defendants in the forums where they were domiciled. *See, e.g.*, *Milliken v. Meyer*, 311 U.S. 457, 462-64 (1940). This Court may, therefore, transfer the claims against each Defendant to that forum, with instructions that the case be transferred back to this Court pursuant to the MDL Order.[29] *In re Ski Train Fire in Kaprun, Austria on Nov. 11, 2000*, 257 F. Supp. 2d at 736; *In re Vitamins Antitrust Litig.*, 270 F. Supp. 2d at 37; *see also Clay v. AIG Aerospace Ins. Servs., Inc.*, 61 F. Supp. 3d 1255, 1271-72 (M.D. Fla. 2014) (ordering severance and transfer of claims). Alternatively, the Court may deny the motion to dismiss and permit the original transferor courts (NJ & DC) to transfer these actions at the end of the pre-trial proceedings to the forums in which the Individual Defendants resided. *See* 28 U.S.C. § 1407(a); *Lexecon*, 523 U.S. at 39; *In re Papst Licensing GMBH & Co Litig.*, 590 F. Supp. 2d at 101.

Such a transfer—either now or at the end of the pre-trial proceedings—would be in the "interest of justice." 28 U.S.C. §§ 1406(a) & 1631. First, transfer would promote judicial economy and expedite the resolution of these claims. *See In re Ski Train Fire in Kaprun*, 257 F. Supp. 2d at 734 (transfer is in interest of justice because "dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating'") (internal citations and brackets omitted); *see also Goldlawr*, 369 U.S. at 467; *Kawamoto v. CB Richard Ellis, Inc.*, 225 F. Supp. 2d 1209, 1214-15 (D. Haw. 2002) (transfer "avoid[s] the unnecessary delay and expense of refiling"). If this Court were to dismiss these claims based on personal jurisdiction, Plaintiffs would be required to re-file them in the districts where jurisdiction *is* proper, and they would be re-transferred to this Court for a new round of motions to dismiss. Second, transfer would promote resolution of the claims on the merits where, as here, defendants would likely argue that the claims were time-barred if Plaintiffs were required to

---

[29] This case involves an unusual circumstance, because the cases were already before the MDL court when the Individual Defendants were named, and the MDL court, of course, has nationwide personal jurisdiction. Thus the issue only really arises as a question on remand.

re-file in other jurisdictions. *ITT Base Servs. v. Hickson*, 155 F.3d 1272, 1276 (11th Cir. 1998) (interest of justice satisfied where re-filing would be time-barred); *Clay*, 61 F. Supp. at 1271-72 (transfer encouraged where plaintiff's claim would be time-barred if refiled in another court); *In re Ski Train Fire in Kaprun*, 257 F. Supp. 2d at 735; *In re Vitamins Antitrust Litig.*, 270 F. Supp. 2d at 37.

### B.     Personal jurisdiction exists in DC and NJ.

#### 1.     The Individual Defendants are subject to DC's personal jurisdiction pursuant to § 13-423(a)(1).

D.C. Code § 13-423(a)(1) authorizes DC courts to exercise personal jurisdiction over defendants who conduct business in the District through a co-conspirator. *See, e.g.*, *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 523 (D.C. Cir. 2001) ("Persons who enter the forum and engage in conspiratorial acts are deemed to 'transact business' there 'directly'; coconspirators who never enter the forum are deemed to 'transact business' there 'by an agent.'") (quoting D.C. Code Ann. § 13–423(a)(1)); *Youming Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72, 78 (D.D.C. 2004) ("Courts consider conspiracy jurisdiction a form of long-arm jurisdiction in which the defendant's 'contact' with the forum consists of the acts of the defendant's co-conspirators within the forum.") (internal citation omitted). "Under this doctrine, acts undertaken within the forum by one co-conspirator in furtherance of an alleged conspiracy may subject a non-resident co-conspirator to personal jurisdiction under the long-arm statute." *Jung v. Assoc. of Am. Medical Colls.*, 300 F. Supp. 2d 119, 140 (D.C. Cir. 2004). "So long as any one co-conspirator commits at least one overt act in furtherance of the conspiracy in the forum jurisdiction, there is personal jurisdiction over all members of the conspiracy." *Id.* at 141.

To establish jurisdiction under a conspiracy theory, "[P]laintiffs must allege (1) the existence of a conspiracy; (2) the nonresident's participation in or agreement to join the conspiracy; and (3) an overt act taken in furtherance of the conspiracy within the forum's boundaries." *Id.* Prior to any jurisdictional discovery, Plaintiffs need not allege the details of the conspiracy with specificity. *See,*

*e.g.*, *Wiggins v. Equifax Inc.*, 853 F. Supp. 500, 504 n.6 (D.D.C. 1994) ("At this early stage of litigation, plaintiff cannot be expected to have complete knowledge of an alleged conspiracy."); *Mandelkorn v. Patrick*, 359 F. Supp. 692 (D.D.C. 1973) ("The pleading of a conspiracy by anything other than conclusory terms . . . would seem harsh, if not impossible to require a factual showing . . . at the pleading stage.").[30]

The Third Amended Complaint for the DC case adequately alleges conspiracy jurisdiction for the seven Defendants contesting jurisdiction. First, Plaintiffs allege the existence of a conspiracy. *See* DE 575 ¶¶ 2230-32 (alleging conspiracy between all of the Defendants and the AUC whereby Defendants funded the AUC and embraced the AUC's mission of defeating the FARC). Second, Plaintiffs allege each of the Individual Defendants participated in the conspiracy. *See id.* ¶¶ 2036-39, 2047-50 (alleging each of the seven Individual Defendants knew of the payments and reviewed, approved, and/or planned ways to disguise them). Third, Plaintiffs allege "[s]ome of the Individual Defendants took actions in furtherance of Defendants' arrangement with the AUC while in Washington, D.C." *Id.* ¶ 2052. One such overt act in D.C. was Defendants Hills' and Olson's April 24, 2003 meeting with U.S. Department of Justice (DOJ) officials, where Hills and Olson misrepresented that the law did not require Chiquita to stop making the payments, despite the DOJ officials telling them the "payments to the AUC were illegal and could not continue." *Id.* ¶¶ 2053-54.

Thus, Plaintiffs have alleged the three requisite elements for jurisdiction under a conspiracy theory: the existence of a conspiracy; the Individual Defendants' participation in the conspiracy; and an overt act taken in furtherance of the conspiracy within the District. *See, e.g., Jung*, 300 F. Supp. 2d

---

[30] Even "once jurisdictional discovery has taken place . . . plaintiffs must prove by a preponderance of the evidence only that acts in furtherance of the alleged conspiracy took place in the District," not the existence of the conspiracy. *Jung*, 300 F. Supp. 2d at 141-42 (citing *Second Amendment Found.*, 274 F.3d at 524). Plaintiffs have not had any jurisdictional discovery, however, and need not prove their allegations by a preponderance of the evidence.

at 141. At this initial stage, prior to Plaintiffs obtaining any jurisdictional discovery, these allegations are sufficient to support a prima facie case of conspiracy jurisdiction.

### 2. NJ exercises specific jurisdiction over directors and officers.

The Individual Defendants are subject to personal jurisdiction in New Jersey because well-established precedent holds that a state may extend personal jurisdiction over non-resident directors and officers of a New Jersey corporation–such as Chiquita– where, as here, the suit arises out of their corporate activities. New Jersey extends personal jurisdiction over non-resident defendants "to the uttermost limits permitted by the United States Constitution." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 698 (3d Cir. 1990) (quoting *Charles Gendler Co. v. Telecom Equity Corp.*, 508 A.2d 1127, 1131 (N.J. 1986)); *Avdel Corp. v. Mecure*, 277 A.2d 207, 209 (N.J. 1971). Thus, a New Jersey court may exercise personal jurisdiction over the Individual Defendants so long as such jurisdiction comports with due process. *Mesalic*, 897 F.2d at 698; *Avdel Corp.*, 277 A.2d at 209.

Although the New Jersey Supreme Court has yet to address the issue, other state and federal courts have held that it is consistent with due process to extend personal jurisdiction over corporate directors for suits related to the directors' corporate activities. For example, in *Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 527-28 (4th Cir. 1987), the Fourth Circuit held that non-residents who accepted directorships of a West Virginia corporation and took actions on behalf of that corporation which formed the basis of the lawsuit could be sued in West Virginia. The Fourth Circuit observed that acceptance of a corporate directorship "constitutes minimum contacts." *Id.* at 527 (citing *Shaffer v. Heitner*, 433 U.S. 186, 216 (1977)). This is so because, in accepting a corporate directorship, a defendant purposefully avails himself of the privilege of doing business in the state by "creating 'continuing obligations between himself and residents of the forum.'" *Id.* at 529 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)); *see also Del. Prof'l Ins. Co. v. Hajjar*, 55 F. Supp. 3d 537, 542 (D. Del. 2014).

The assertion of personal jurisdiction over corporate directors comports with fair play and substantial justice because of a state's strong interest in providing a forum for claims against directors of domestic corporations who commit wrongful acts in the execution of their duties as directors, because of the interest in trying the claims against non-resident directors together with those against the corporation, and because corporate directors should reasonably expect to be sued in the corporation's forum to defend their actions as corporate directors. *Pittsburgh Terminal Corp.*, 831 F.2d at 529-30; *see also Del. Prof'l Ins. Co.*, 55 F. Supp. 3d at 542; *Tsang Mun Ting v. Silver Dragon Res., Inc.*, 2015 WL 3551871, at *3 (Del. Super. Ct. June 3, 2015); *Int'l Bus. Machs. Corp. v. Martin Prop. & Cas. Ins. Agency, Inc.*, 666 N.E.2d 866, 870 (Ill. App. Ct. 1996); *Indian Lake Club v. Hainsworth*, 212 So. 2d 915, 916 (Fla. Dist. Ct. App. 1968) (extending personal jurisdiction to non-resident directors of a Florida association where the suit arose out of their conduct as directors).

Consistent with this practice in other states, New Jersey courts have held that because New Jersey extends personal jurisdiction to the limits of the Constitution, New Jersey likewise can extend personal jurisdiction over non-resident corporate directors where the suit arises out of the director's corporate activities. *See, e.g., First Trenton Indem. Co. v. River Imaging, P.A.*, 2004 WL 3316874, at *17 (N.J. Super. Ct. Mar. 22, 2004). Here, the Individual Defendants were corporate directors and officers of a New Jersey corporation who participated in, planned, directed, conspired in, and concealed the corporation's support of paramilitary terrorists. DE 589 ¶ 29. For example, Plaintiffs allege the Individual Defendants met with leaders of the AUC to initiate payments, reviewed and approved payments to the paramilitaries, designed and implemented procedures to hide these payments, and instructed Chiquita employees to keep making payments contrary to the advice of outside counsel. *Id.* ¶¶ 17-22, 27, 86, 88, 118, 161, 165, 166. Because Plaintiffs' claims directly arise out of the Individual Defendants' conduct as corporate directors, jurisdiction in New Jersey is proper.

**C.      If any doubt remains about personal jurisdiction, discovery should be permitted.**

Plaintiffs have made out a case for personal jurisdiction over the Individual Defendants, but if this Court concludes that it does not have enough information to determine that Plaintiffs have carried their burden and is not inclined to transfer, it should grant limited discovery to investigate fact-intensive aspects of the personal jurisdiction inquiry that are within Defendants' sole possession. *See Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 729 (11th Cir. 1982); *see also Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 (D.C. Cir. 1991). ). As this Court has held, personal jurisdiction discovery is "highly favored" before resolving motion to dismiss. *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 2008 WL 1771857, at *1 (S.D. Fla. Apr. 15, 2008) (Marra, J.). Discovery is needed to establish: whether Individual Defendants own property in New Jersey or DC, regularly visited either location, attended relevant meetings for or signed documents on behalf of Chiquita in New Jersey or DC, filed any relevant documents or undertakings in either place, or participated in covering up their roles in the criminal acts in either location, including during the criminal investigation and prosecution conducted by the U.S. Department of Justice in DC. *See Exhibit Icons, LLC v. XP Cos.*, 2008 WL 616104, at *2 (S.D. Fla. Mar. 3, 2008) (Marra, J.); *Diamond Chem. Co. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 15 (D.D.C. 2003). Plaintiffs therefore request personal jurisdiction discovery if the Court is unable to determine that personal jurisdiction exists over the Individual Defendants on the current record.

## IV.      Forum Non Conveniens

On the last page of their brief, Defendants incorporate by reference their *forum non conveniens* briefing. Plaintiffs do the same and incorporate by reference their opposition.

## CONCLUSION

For the above reasons, Defendants' motion to dismiss must be denied.

Dated: June 22, 2015

Respectfully submitted,


  /s/  John DeLeon
John DeLeon, FL Bar No. 650390
jdeleon@chavez-deleon.com
**Law Offices of Chavez & DeLéon, P.A.**
1399 S.W. 1st Ave., Suite 202
Miami, FL 33130
Tel: 305-740-5347
Fax: 305-740-5348

Agnieszka M. Fryszman
Benjamin D. Brown
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C. 20005-3964
Tel: 202-408-4600
Fax: 202-408-4699

Paul L. Hoffman
**Schonbrun, Desimone, Seplow,**
 **Harris, Hoffman & Harrison LLP**
723 Ocean Front Walk
Venice, CA 90291
Tel: 310-396-0731
Fax: 310-399-7040

Judith Brown Chomsky
**Law Offices of Judith Brown Chomsky**
Post Office Box 29726
Elkins Park, PA 19027
Tel: 215-782-8367
Fax: 202-782-8368

Arturo Carrillo
**Colombian Institute of International Law**
5425 Connecticut Ave., N.W., #219
Washington, D.C. 20015
Tel: 202-365-7260
Fax: 202-994-4946


Richard Herz
Marco Simons

Jonathan Kaufman
Michelle Harrison
Marissa Vahlsing
**EarthRights International**
1612 K Street N.W., Suite 401
Washington, D.C. 20006
Tel: 202-466-5188
Fax: 202-466-5189

*Counsel for John Doe I Plaintiffs, original docket number: 9:08-cv-80421-KAM*

James K. Green, FL Bar No. 229466
**James K. Green, P.A.**
Esperante, Suite 1650
222 Lakeview Ave.
West Palm Beach, FL 33401
Tel: 561-659-2029
Fax: 561-655-1357

Jack Scarola, FL Bar No. 169440
William B. King, FL Bar No. 181773
**Searcy Denney Scarola Barnhart &
Shipley, P.A.**
2139 Palm Beach Lakes Blvd.
P.O. Drawer 3626
West Palm Beach, FL 33402
Tel: 561-686-6300
Fax: 561-478-0754

*Counsel for Plaintiffs Jose and Josefa Lopez Nos.
1 through 116, original docket number: 9:08-cv-
80508-KAM*

Terrence P. Collingsworth
**Conrad & Scherer, LLP**
1156 15th St. N.W., Suite 502
Washington, D.C. 20005
Tel: 202-543-4001
Fax: 866-803-1125

Eric J. Hager
**Conrad & Scherer, LLP**
Avenida Republica de El Salvador
500 e Iralanda Edificio Siglo XXI, PH
Oficina W Quito, Ecuador
Tel: 954-462-5500 ext. 461

Fax:  866-803-1125

*Counsel for DOES (1-144), PEREZES (1-95), PEREZES (96-795) and Carmen Tulia Cordoba Cuesta et al., original docket number:  9:08-cv-80465-KAM 1:07-cv-01048 (RJL)*

William J. Wichmann
Attorney at Law
888 S.E. 3rd Avenue, Suite 400
Fort Lauderdale, FL 33316
Tel:  954-522-8999
Fax:  954-449-6332

*Counsel for Plaintiffs Antonio Gonzalez Carrizosa, et al., original docket number:  0:07-cv-60821*

Sigrid S. McCawley
**Boes, Schiller & Flexner LLP**
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL  33301
Tel:  954-356-0011
Fax:  954-356-0022

Stephen N. Zack
**Boies, Schiller & Flexner LLP**
100 S.E. Second St., Suite 2800
Miami FL  33131
Tel:  305 539-8400
Fax:  305-539-1307

Karen C. Dyer
**Boies, Schiller & Flexner LLP**
121 South Orange Ave., Suite 840
Orlando, FL  32801
Tel:  407-425-7118
Fax:  407-425-7047

Nicholas A. Gravante Jr.
Lee S. Wolosky
Magda M. Jimenez Train
**Boies, Schiller & Flexner LLP**
575 Lexington Ave., 7th Floor
New York, NY  10022
Tel:  212-446-2300
Fax:  212-446-2350

43

*Counsel for Plaintiffs Angela Maria Henao
Montes, et al., original docket number 1:10-cv-
60573-KAM*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing document with the Clerk of Court using CM/ECF on June 22, 2015. I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF, and in accordance with the Court's First Case Management Order ("CMO") and the June 10, 2008, Joint Counsel List filed in accordance with the CMO.

　　　/s/　John DeLeon
John DeLeon, FL Bar No. 650390
jdeleon@chavez-deleon.com
**Law Offices of Chavez & DeLéon, P.A.**
1399 SW 1st Ave., Suite 202
Miami, FL  33130
Tel: 305-740-5347
Fax:  305-740-5348