UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-01916-MD-MARRA/JOHNSON

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:
ATS ACTIONS

08-80421-CIV-MARRA
08-80465-CIV-MARRA
08-80508-CIV-MARRA
10-60573-CIV-MARRA
07-cv-60821-KAM
_____/

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT CYRUS FREIDHEIM'S SUPPLEMENTAL MEMORANDUM IN
SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINTS**

As Chiquita's Chairman of the Board, CEO and President, Cyrus Freidheim exercised his authority to support the AUC's campaign of terror. DE 575 ¶ 2036; DE 576 ¶¶ 11, 14; DE 589 ¶ 17.[1] Freidheim was personally involved in and professionally responsible for almost all the conduct that this Court has determined to constitute intentional substantial assistance to and conspiracy with the AUC. *See In re Chiquita Brands Int'l, Inc.*, 792 F. Supp. 2d 1301 (S.D. Fla. 2011) ("MTD Order").

During Freidheim's tenure, Chiquita made approximately 42 payments to the AUC totaling approximately $595,792 USD. DE 576 ¶¶ 72-73, 105, 108-09; DE 589 ¶¶ 97-100, 102-16, 119-36. Freidheim approved Chiquita's payments to the AUC as well as procedures designed to disguise the purpose and recipient of those payments, all the while knowing that the AUC was a violent paramilitary organization. DE 575 ¶ 2036; DE 576 ¶¶ 14-16, 73-75, 77, 101-02; DE 589 ¶¶ 17, 29, 86, 88, 91, 118. Indeed, he authorized Chiquita's support of the AUC despite knowing that the AUC was designated a Foreign Terrorist Organization and that the payments were illegal. DE 575 ¶ 2146; DE 576 ¶¶ 77-80, 103-05; DE 589 ¶¶ 91, 158-60. Freidheim continued to authorize and approve the payments against Chiquita's own lawyer's repeated advice that he "Must stop payments"; "Bottom line: CANNOT MAKE THE PAYMENT"; "Advised NOT TO MAKE ALTERNATIVE PAYMENT" and counsel's admonition that Chiquita "[c]annot do indirectly what [it] cannot do directly." DE 575 ¶¶ 2147-48; DE 576 ¶¶ 78-79; DE 589 ¶¶ 117-18. Freidheim continued the payments even after Justice Department officials advised Chiquita that the payments were illegal. DE 575 ¶ 2148; DE 576 ¶ 79; DE 589 ¶ 118.

Plaintiffs have stated a TVPA claim against Freidheim.[2] First, his specific involvement

---

[1] Unless otherwise indicated, all citations to "DE" refer to entries on the docket of the above-captioned Multi-District Litigation, No. 08-MD-01916 (S.D. Fla.).
[2] This brief responds only to arguments in Freidheim's supplemental brief, which does not challenge the sufficiency of Plaintiffs' non-federal claims. Plaintiffs' allegations are sufficient to support those claims. *See* Joint Opp. at 15-32; Arrubla Decl. ¶¶ 28-35.

1

constitutes knowing and substantial assistance to the AUC sufficient for aiding and abetting liability. Second, the allegations are sufficient to infer that he entered into an agreement with the AUC, Chiquita, and other officers and directors to pay the AUC to control the banana-growing regions, creating a foreseeable risk of extrajudicial killings, which is sufficient for conspiracy liability. Third, as the chief executive with oversight responsibility and the ability to restrain the actions of employees who carried out the payments, Freidheim is liable via agency theory and the doctrine of command responsibility. Freidheim's motion to dismiss should be denied.

1. **Plaintiffs have pled non-conclusory allegations that Freidheim individually engaged in conduct for which he can be held liable under the TVPA.**

Freidheim makes two general attacks on the *type* of pleadings in the Complaints. Neither has merit. First, Freidheim objects that many of the allegations in the Complaints are conclusory. DE 739 at 3. They are not. *See* Plaintiffs' Opp. to Defs.' Joint Br. at 26-27 ("Joint Opp."). Indeed, Freidheim admits, or at least does not contest, that Plaintiffs have pled the following non-conclusory individual facts: Freidheim, as Chairman of the Board, President, and CEO of Chiquita, personally approved payments to the AUC and procedures for disguising the nature and destination of those payments; and that he took those steps knowing that the AUC was a violent paramilitary organization and against the advice of counsel. DE 575 ¶¶ 2036, 2146-48, 2205; DE 576 ¶¶ 11, 73-79; DE 589 ¶¶ 17, 29, 86, 88, 91, 117-18. Those are well-pled factual allegations, entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *see* Joint Opp. at 14-24.

Second, Freidheim objects that some of Plaintiffs' allegations group him with the other Defendants. DE 739 at 3-4. But Plaintiffs allege precisely "the nature of his alleged participation in" the torts and conspiracies at issue. *Curtis Inv. Co. v. Bayerische Hypo-Und Vereinsbank, AG*, 341 F. App'x 487, 493-94 (11th Cir. 2009). To be sure, Plaintiffs have some collective allegations; these are, after all, torts committed by a group of people. Plaintiffs seek to hold Freidheim liable *because* he

acted jointly and as a co-conspirator. The fact that those torts were committed jointly – and that the Complaints allege that several Defendants engaged in the same conduct – does not mean that the allegations are not entitled to the presumption of truth. *See* Joint Opp. at 27-28. The only question then is whether the individual and collective allegations, taken together, state a claim under the TVPA. As Plaintiffs show *infra*, they surely do.

   a. **Plaintiffs allege specific and concrete facts that demonstrate Freidheim aided and abetted the AUC.**

   i. *Freidheim knowingly assisted the AUC.*

To be liable for aiding and abetting under the TVPA, Freidheim need only have knowingly provided substantial assistance to the AUC. *Doe v. Drummond Co.*, 782 F.3d 576, 609 (11th Cir. 2015). The Eleventh Circuit's recent decision in *Drummond* knocks the pins out from Defendant Freidheim's main argument that Plaintiffs must allege specific intent. DE 739 at 2, 6. Under *Drummond*, specific intent is not required. And Freidheim does not contest – indeed, essentially concedes – that Plaintiffs have alleged knowledge. *Id.* at 6. As the head of Chiquita, Freidheim approved sending hundreds of thousands of dollars to the AUC, along with the procedures to hide these illicit payments. Freidheim knew full well that the payments he approved would go to the AUC and that the AUC was a violent, designated terrorist organization. DE 575 ¶¶ 2036, 2205; DE 576 ¶¶ 73, 77; DE 589 ¶¶ 86, 91. Indeed, it is hard to imagine – given his position at Chiquita and his attendance at meetings where AUC funding was discussed – that he could disclaim knowledge. DE 576 ¶¶ 73, 75; DE 589 ¶¶ 86, 88.

   ii. *Freidheim's assistance was substantial.*

During his two years at Chiquita's helm, Freidheim approved and helped conceal more than 40 payments to the AUC, totaling more than $590,000. Freidheim's conduct helped to ensure that the AUC had access to considerable secret funding, which could be and was used to continue a reign

3

of terror. As this Court has already concluded, these were "atypical practices" that constitute substantial assistance. *Julin v. Chiquita Brands Int'l, Inc.*, 690 F. Supp. 2d 1296, 1310 (S.D. Fla. 2010). Freidheim's approval was a critical part of maintaining the illicit scheme and his arguments as to why his assistance was not substantial are mistaken. This assistance was undeniably substantial.

Freidheim asserts he did not "provide[ ] any assistance to the AUC 'beyond financing.'" DE 739 at 8. But financing *is* substantial assistance under U.S. law (which provides TVPA theories of liability), even where it only amounts to a fraction of the whole. Joint Opp. at 15-16; *Julin*, 690 F. Supp. 2d at 1310; *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 104-05 (D.D.C. 2003); *see also Halberstam v. Welch*, 705 F.2d 472, 488 (D.C. Cir. 1983). And Freidheim not only approved payments, he ensured that their purpose and recipients were not discovered. DE 576 ¶¶ 73-75; DE 589 ¶¶ 87-89. Such actions to conceal illegal activity likewise constitute substantial assistance. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1410-11 (11th Cir. 1994); *Halberstam*, 705 F.2d at 488 (defendant liable as aider and abettor where she had checks made out to her and falsified tax returns that concealed the criminal conduct); *Resolution Trust Corp. v. Spagnoli*, 811 F. Supp. 1005, 1014 (D.N.J. 1993).

Freidheim also argues that *his* approval was not substantial because others' approval was also required. DE 739 at 8-9. But Freidheim was the head of Chiquita. As a CEO and Chairman who was *personally* involved in the payments, he can hardly argue that *his* approval was "superfluous" or did not have a substantial effect on the continuation of Chiquita's payments. *Id.* at 9. Freidheim provides no support for his suggestion that when several persons contribute to an act that constitutes substantial assistance, none is liable; that would be a recipe for impunity wherever multiple approvals are required. Indeed, Plaintiffs need not show that his assistance was necessary or sufficient to effect payments to the AUC. *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 537 (6th Cir. 2000); *Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 584-85 (E.D.N.Y. 2005). As *Halbertsam* held, schemes

4

often have multiple and different components that are each essential to the success of the tortious enterprise. 705 F.2d at 488.

At the very most, the question of whether such assistance rises to the level of substantial assistance is one for the jury. *Cox*, 17 F.3d at 1410. Freidheim's motion to dismiss must be denied.

   b. **Plaintiffs allege specific and concrete facts that demonstrate Freidheim is liable for conspiracy under the TVPA.**

This Court held that Plaintiffs sufficiently alleged a conspiracy between Chiquita and the AUC in which Chiquita shared the AUC's intent to harm civilians. MTD Order, 792 F. Supp. 2d at 1344-49, 1351. Freidheim approved and implemented that purpose for Chiquita. Plaintiffs have pled facts that show Freidheim "joined the conspiracy knowing of *at least one of the goals* of the conspiracy and intending to help accomplish it[.]" *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1159 (11th Cir. 2005) (emphasis added).

Regardless, Freidheim is wrong when he claims Plaintiffs must show that he intended the killings. Plaintiffs have adequately alleged that Freidheim joined a conspiracy with the AUC to unlawfully control the banana-growing regions, and that the fact that they would commit killings was a foreseeable consequence. That is enough. Joint Opp. at 17-18.

   i. *Freidheim had the requisite intent.*

An individual's intent to pursue a conspiracy's objectives is often proved by circumstantial evidence and inferences drawn from that individual's conduct. Joint Opp. at 18; *United States v. Brenson*, 104 F.3d 1267, 1282 (11th Cir. 1997); *Julin*, 690 F. Supp. 2d at 1311-12. Freidheim complains that Plaintiffs have failed to plead his intent. DE 739 at 5-6. But the facts alleged regarding his conduct create the reasonable inference that he sought to effectuate illegal payments in furtherance of the AUC and Chiquita's scheme. *See Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v Twombly*, 550 U.S. 544, 556 (2002); *Julin*, 690 F. Supp. 2d at 1311.

Freidheim supported violent terrorists for years, overseeing the scheme at the heart of this

5

Court's ruling that Plaintiffs plausibly alleged Chiquita's conspiracy liability and intent. MTD Order, 792 F. Supp. 2d at 1344-52. The natural inference is that he joined Chiquita and the AUC's agreement and shared their intent. Joint Opp. at 19-21; *see also Halberstam*, 705 F.2d at 486-87; *Linde*, 384 F. Supp. 2d at 584 (inferring intent where defendant administered activities that provided substantial assistance). At a minimum, his actions raise the reasonable inference that he shared another wrongful goal with them – to exert control over the banana regions – which would also make him responsible for the abuses that were the consequence of the conspiracy.

Freidheim also concealed the payments, which itself is sufficient to support an inference that a defendant had the requisite intent, as this Court has concluded. *See Julin*, 690 F. Supp. 2d at 1311 ("allegations of . . . secret payments and fraudulent concealment, sufficiently support an inference of . . . knowing and intentional participation in the agreement's illegal goals"); *see also* Joint Opp. at 20; *Cox*, 17 F.3d at 1411.

Moreover, Freidheim oversaw the scheme for two years – the full length of his tenure at the helm of Chiquita – even after being advised that the payments were illegal and needed to stop. His "continuous participation reflected [his] *intent* and *desire* to make the venture succeed[.]" *Halberstam*, 705 F.2d at 488 (emphasis added).[3] *See* Joint Opp. at 20. It is hard to think of a more obvious explanation for why someone would *illegally* and *consistently* support a terrorist organization than that they shared goals and tactics; this underlies Chiquita's own lawyer's conclusion that the length of time cut against a duress defense. DE 575 ¶ 2147; DE 576 ¶ 78; DE 589 ¶ 117.

Freidheim argues that the possibility the payments were made under duress defeats these plausible allegations, but even if that defense were plausible – which even Chiquita's own lawyer

---

[3] Chiquita and Freidheim put cash *directly* in the hands of the AUC, unlike in *Abecassis v. Wyatt*, 704 F. Supp. 2d 623 (S.D. Tex. 2010), where defendants paid a *state* that, among other things, sponsored terrorism.

6

doubted, DE 575 ¶ 2147; DE 576 ¶ 78; DE 589 ¶ 117, – this Court may not choose between competing plausible explanations.[4] Joint Opp. at 22-23. Plaintiffs' allegations are plausible, and thus pass muster under *Iqbal* and *Twombly*. *Id.*[5] Moreover, this Court's finding that Plaintiffs adequately pled that *Chiquita* did not act under duress precludes Freidheim's argument. MTD Order, 792 F. Supp. 2d at 1348.

Freidheim also insists there are no allegations that he "requested or directed that the AUC kill and torture civilians". DE 739 at 6. But a participant in conspiracy is liable for all reasonably foreseeable consequences of the conspiracy, even if he did not plan or order a specific act. *See, e.g.*, *Halberstam*, 705 F.2d at 487; *Burnett*, 274 F. Supp. 2d at 105.

ii.  *Plaintiffs alleged the existence of an agreement.*

Freidheim mistakenly insists that the lack of specific allegations regarding whether he personally met with the AUC means that he never agreed to join the conspiracy. DE 739 at 9. Members of a conspiracy are not required to meet and agree with every other member; a conspirator need not know the identities of all his co-conspirators. Joint Opp. at 21-22; *United States v. Marchante*, 514 F. App'x 878, 883 (11th Cir. 2013). The agreement itself can be informal or implicit, Joint Opp. at 22; *see also Am. Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946); *Raspardo v. Carlone*, 770 F.3d 97, 115 n.21 (2d Cir. 2014), and can be proven by circumstantial evidence, including the conduct of the alleged conspirators, *Burrell v. Bd. of Trs. of Ga. Military College*, 970 F.2d 785, 789 (11th Cir. 1992); *Cox*, 17 F.3d at 1410-11; *Julin*, 690 F. Supp. 2d at 1311-12. Moreover, the "long-running nature of the scheme is also crucial to the inference of agreement" and "makes some kind of accord extremely

---

[4] Of course, extortion and willing assistance are not necessarily mutually exclusive. Even if Defendants were able to prove at trial that they funded the AUC *in part* because of a threat of violence, this does not mean Defendants were not *also* motivated by financial incentives. Only a jury can determine whether Defendants' motivations amount to the affirmative defense of duress.
[5] Moreover, duress is an affirmative defense that can only be considered in a 12(b)(6) motion if it appears on the face of the complaint, which it does not here. *See* Joint Opp. at 23-24.

likely". *Halberstam*, 705 F.2d at 487. For nearly two years after Freidheim took the helm of Chiquita, despite the AUC's murderous reputation, he maintained both the payments and the efforts to hide them. *E.g.*, DE 576 ¶ 73, 77; DE 589 ¶¶ 17, 86, 88, 118. This consistent and knowing support is sufficient to infer that he joined in the ongoing agreement between Chiquita and the AUC, and shared their conspiratorial intent.

    c.  **Freidheim was responsible for the acts of Chiquita employees who aided and abetted the AUC.**

Freidheim acted in a supervisory capacity to authorize, approve, and perpetuate payments by personnel who were under his effective control and thus working as his agents and the agents of other high-ranking Chiquita officials. As this Court found, Plaintiffs have sufficiently alleged that these payments were intended to help the AUC commit atrocities. MTD Order, 792 F. Supp. 2d at 1349. Among Freidheim's agents was Charles Keiser, who continued to implement the original deal to pay the AUC during the time Freidheim ran Chiquita. DE 575 ¶¶ 2050, 2075, 2208; DE 589 ¶¶ 21, 165-66. Freidheim was aware that these employees were aiding and abetting torture and extrajudicial killing and had the authority to stop them or punish them for doing so. Instead, Freidheim condoned, prolonged, and concealed the payment scheme, thereby ratifying his subordinates' acts. *See Cox*, 17 F.3d at 1409. Thus Plaintiffs have alleged his liability through command responsibility and the principle-agent relationship. *See* Joint Opp. at 24-26; Opp. by Plfs. in the DC Cases to Mot. to Dismiss by Def. Warshaw at 8-10.

## CONCLUSION

For the foregoing reasons, Freidheim's Motion to Dismiss should be denied.

Dated: June 22, 2015                                                  Respectfully submitted,

                                                                                  /s/ John DeLeon

**Law Offices of Chavez-DeLeon**
5975 Sunset Drive, Suite 605
South Miami, FL 33143
Tel: 305-740-5347
Fax: 305-740-5348

*Counsel for John Doe I Plaintiffs, original docket number: 9:08-cv-80421-KAM*

Richard L. Herz
Jonathan Kaufman
Marco Simons
Marissa Vahlsing
**EarthRights International**
1612 K Street N.W., Suite 401
Washington, D.C. 20006
Tel: 202-466-5188
Fax: 202-466-5189

Paul L. Hoffman
**Schonbrun, DeSimone, Seplow, Harris, Hoffman & Harrison LLP**
723 Ocean Front Walk
Venice, CA 90291
Tel: 310-396-0731
Fax: 310-399-7040

Agnieszka M. Fryszman
Benjamin D. Brown
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C. 20005-3964
Tel: 202-408-4600
Fax: 202-408-4634

Judith Brown Chomsky
**Law Offices of Judith Brown Chomsky**
Post Office Box 29726
Elkins Park, PA 19027
Tel: 215-782-8367
Fax: 202-782-8368

Arturo Carrillo

**Colombian Institute of International Law**
5425 Connecticut Ave., N.W., #219
Washington, D.C. 20015
Tel: 202-994-5794

John DeLeon, FL Bar No. 650390
**Law Offices of Chavez-DeLeon**
5975 Sunset Drive, Suite 605
South Miami, FL 33143
Tel: 305-740-5347
Fax: 305-740-5348

*Counsel for John Doe I Plaintiffs, original docket number: 9:08-cv-80421-KAM*

James K. Green, FL Bar No. 229466
**James K. Green, P.A.**
Esperanté, Suite 1650
222 Lakeview Ave.
West Palm Beach, FL 33401
Tel: 561-659-2029
Fax: 561-655-1357

Jack Scarola, FL Bar No. 169440
William B. King, FL Bar No. 181773
**Searcy Denney Scarola Barnhart & Shipley, P.A.**
2139 Palm Beach Lakes Blvd.
P.O. Drawer 3626
West Palm Beach, FL 33402
Tel: 561-686-6300
Fax: 561-478-0754

*Counsel for Plaintiffs Jose and Josefa Lopez Nos. 1 through 342, original docket number: 9:08-cv-80508-KAM*

Terrence P. Collingsworth
**Conrad & Scherer, LLP**
1156 15th St. NW, Suite 502
Washington, D.C. 20005
Tel: 202-543-4001
Fax: 866-803-1125

Eric J. Hager
**Conrad & Scherer, LLP**
Avenida República de El Salvador
500 e Irlanda Edificio Siglo XXI, PH
Oficina W Quito, Ecuador
Tel: 954-462-5500 ext. 461
Fax: 866-803-1125

*Counsel for DOES (1-144), PEREZES (1-95), PEREZES (96-795), and Carmen Tulia Cordoba Cuesta et al.,original docket number: 9:08-cv-80465-KAM 1:07-cv-01048 (RJL)*

Sigrid S. McCawley
**Boies, Schiller & Flexner LLP**
401 East Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Tel: 954-356-0011
Fax: 954-356-0022

Stephen N. Zack
**Boies, Schiller & Flexner LLP**
100 S.E. Second St., Suite 2800
Miami, FL 33131
Tel: (305) 539-8400
Fax: (305) 539-1307

Karen C. Dyer
**Boies, Schiller & Flexner LLP**
121 South Orange Ave., Suite 840
Orlando, FL 32801
Tel: (407) 425-7118
Fax: (407) 425-7047

Nicholas A. Gravante Jr.
Lee S. Wolosky
Magda M. Jimenez Train
**Boies, Schiller & Flexner LLP**
575 Lexington Ave., 7th Floor
New York, NY 10022
Tel: 212-446-2300
Fax: 212-446-2350

*Counsel for Plaintiffs Angela Maria Henao Montes, et al.,*

11

*original docket number 1:10-cv-60573-KAM*

William J. Wichmann
Attorney at Law
888 S.E. 3rd Avenue, Suite 400
Fort Lauderdale FL 33316
Tel: 954-522-8999
Fax: 954-449-6332

*Counsel for Plaintiffs Antonio Gonzalez Carrizosa, et. al., original docket number:*
07-cv-60821-KAM

12

**CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on June 22, 2015. I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF, and in accordance with the Court's First Case Management Order ("CMO") and the June 10, 2008, Joint Counsel List filed in accordance with the CMO.

            By: /s/ John DeLeon

            JOHN DELEON