UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-01916-MD-MARRA/JOHNSON

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:
ATS ACTIONS

08-80421-CIV-MARRA
08-80465-CIV-MARRA
_____/


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT ROBERT OLSON'S SUPPLEMENTAL MEMORANDUM IN
SUPPORT OF HIS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINTS**

For years, Robert Olson – Chiquita's Vice President and General Counsel – approved and implemented Chiquita's illegal scheme to pay the AUC. DE 575 ¶ 2038; DE 589 ¶¶ 19, 86.[1] At all relevant times, Defendant Olson provided the legal stamp of approval for Chiquita's criminal course of action, securing the AUC's help in suppressing labor organizers and other opponents of Chiquita in the banana-growing regions. DE 575 ¶ 2138; DE 589 ¶¶ 166-68.

Olson's knowing involvement in AUC payments dates back to 1997. By that year or not long thereafter, Olson knew Chiquita was paying the AUC, DE 575 ¶ 2038; DE 589 ¶¶ 86, 88, "that the AUC was a violent, paramilitary organization," DE 589 ¶ 86, and, after a time, that it was a designated terrorist organizations. DE 589 ¶ 161. He knew that Chiquita concealed the payments by making them to "front organizations," or *convivirs*, and recording them as "security payments." *Id.* ¶¶ 87-89; DE 575 ¶ 2038. Despite knowing all this, he continued to approve those payments. DE 575 ¶ 2038; DE 589 ¶¶ 86-88, 118. In 2000, Olson received a report of an internal investigation into the payments, DE 589 ¶ 88, but he took no steps to rectify the situation. In 2002, he specifically approved new concealment procedures whereby Chiquita cut checks to Banadex employees, who cashed them and paid the AUC directly. DE 575 ¶¶ 2038, 2144; DE 589 ¶¶ 88-89.

In 2003, Chiquita sought the advice of outside counsel. DE 575 ¶ 2147; DE 589 ¶ 117. As Chiquita's General Counsel, Olson was clearly aware of their advice, which included:

- "Must stop payments."

- "General Rule: Cannot do indirectly what you cannot do directly"

- "You voluntarily put yourself in this position. Duress defense can wear out through repetition. [Business] decision to stay in harm's way. CHIQUITA should leave Colombia."

---

[1] Unless otherwise indicated, all citations to "DE" refer to entries on the docket of the above-captioned Multi-District Litigation, No. 08-MD-01916 (S.D. Fla.).

1

- "[T]he company should not continue to make the Santa Marta payments, given the AUC's designation as a foreign terrorist organization[.]"

DE 575 ¶ 2147; DE 589 ¶ 117. But rather than following that advice, he pressured outside counsel to *change* its advice in an attempt to maintain the legal cover to continue making the payments. DE 575 ¶ 2056. Even after a meeting with the Department of Justice in April 2003 in which officials told him that the payments were illegal and could not continue, DE 589 ¶ 118, Olson continued to urge the Audit Committee to make the payments, misrepresenting the government's position. DE 575 ¶ 2054-55. Rather than cooperating with the government and ending the payments, Olson told the Board to let the Department of Justice "sue us." DE 575 ¶ 2205; DE 589 ¶ 118.

During the full period relevant to this case, Chiquita made and Olson approved of dozens of payments to the AUC totaling over $1.7 million. DE 575 ¶ 2141; DE 589 ¶ 85. As a result of Olson's insistence, Chiquita made at least nineteen payments to the AUC totaling more than $280,000, *after* the Department of Justice told him the payments were illegal and to stop making them. DE 589 ¶¶ 119-36.

These allegations are not conclusory, are entitled to the assumption of truth, and plausibly establish Olson's liability under the TVPA as an aider and abettor and co-conspirator of the AUC. Olson supported the AUC for nearly a decade. In fact, this Court has already found Plaintiffs' allegations that Chiquita aided and abetted and conspired with the AUC to be sufficient for liability based largely on the same conduct at issue here. *In re Chiquita Brands Int'l, Inc.*, 792 F. Supp. 2d 1301, 1350-51 (S.D. Fla. 2011) ("MTD Order"). The most natural explanation for *why* Olson facilitated that continuous support is that he, like Chiquita, wanted the payments to continue so that the AUC would continue to keep up its end of the bargain and help Chiquita control swathes of the banana-growing regions of Colombia. DE 589 ¶ 2.

Moreover, Plaintiffs need not allege specific intent for aiding and abetting liability;

2

knowledge and substantial assistance is enough. *Doe v. Drummond Co.*, 782 F.3d 576, 608-09 (11th Cir. 2015).

Olson's grab-bag of defenses misstate the substantive law for aiding and abetting liability under the TVPA; misconstrue the standards for assessing pleadings under Rule 12(b)(6); and flatly mischaracterize the pleadings. The motion to dismiss should be denied.[2]

**1. Olson is liable as an aider and abettor of the AUC.**

Plaintiffs have alleged that Olson provided *knowing* and *substantial* assistance to the AUC. That is all that is required under the TVPA. *Drummond*, 782 F.3d at 608-09. *See* Plaintiffs' Opp. to Def. Joint Br. ("Joint Opp.") 25, 37. From the moment he began approving payments to terrorists and methods for concealing them, Olson provided knowing substantial assistance that only he could give: a veneer of legal approval. Olson's intent is irrelevant to aiding and abetting liability under the TVPA. His remaining arguments – that merely financing the AUC is insufficient to support aiding and abetting liability and that his role in that financing was insubstantial, DE 736 at 7-8 – also fail.

    a. *Allegations that Olson financed and hid payments to the AUC establish substantial assistance.*

Knowingly providing financial support to a terrorist organization is enough for a finding of substantial assistance under the domestic law of aiding and abetting liability, which under *Drummond* applies to the TVPA. Joint Opp. 1, 14-16; *Aetna Cas. & Sur. Co. v. Leahey Constr. Co.*, 219 F.3d 519, 535 (6th Cir. 2000); *see also Halberstam v. Welch*, 705 F.2d 472, 488 (D.C. Cir. 1983); *Julin v. Chiquita Brands Int'l, Inc.*, 690 F. Supp. 2d 1296, 1310-11 (S.D. Fla. 2010). But even under the inapposite international law standard, Olson would be liable because financing that is "gratuitous or unrelated to any commercial purpose" is sufficient for a finding of substantial assistance. MTD Order, 792 F. Supp.2d at 1350-51. This Court already held that Plaintiffs adequately alleges that Chiquita's

---

[2] This brief responds only to arguments in Olson's supplemental brief, which does not challenge the sufficiency of Plaintiffs' non-federal claims. Plaintiffs' allegations are sufficient to support those claims. *See* Joint Opp. 29-32; Arrubla Decl. ¶¶ 28-35.

payments were not made for any legitimate commercial purpose. *Id.* at 1348. Olson does not explain how the same payments could serve an illegitimate purpose for Chiquita, but a legitimate purpose for him.

Moreover, Olson approved and implemented the cover-up procedures and misrepresented the position of the Department of Justice, thus allowing the payments to continue. DE 575 ¶ 2038, 2054-55; DE 589 ¶ 88. In addition to indicating that the payments were non-commercial, the cover-up *itself* can constitute substantial assistance. *See* Joint Opp14-17; *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1410 (11th Cir. 1994).

      b. *The substantiality of his role cannot be determined on a motion to dismiss.*

Olson argues that *his* contributions were, in effect, insubstantial. DE 736 at 8. Plaintiffs need not show that Olson's participation was necessary in order for his assistance to be substantial; substantial assistance need only make it easier for the primary violator to commit the misdeed. Joint Opp. At 15-16, 26; *Leahey Constr.*, 219 F.3d at 537.

Having its General Counsel sign off on these illegal acts surely made it easier for Chiquita to keep the scheme going. Olson gave the scheme a legal stamp of approval at least three times – once when he first learned of it, again when his co-Defendant, William Tsacalis, designed new concealment procedures because Chiquita could no longer pay the *convivir*, and once more after the Department of Justice told Olson and Hills to stop making the payments. DE 575 ¶ 2038, 2054-55; 589 ¶¶ 19, 88-89, 118. The significance of his contribution is clearly enough to make the question of substantiality one for the jury. *Cox*, 17 F.3d at 1410.

    **2. Plaintiffs adequately allege Olson's TVPA liability as a co-conspirator of the AUC.**

Plaintiffs have pled that Olson joined an agreement between the AUC and Chiquita with the intent of furthering *at least one* the goals of that agreement. That is all that conspiracy liability requires. *See Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1159 (11th Cir. 2005) (citing *Halberstam*, 402

4

F.3d at 1159).

    a. *Plaintiffs have pled Olson's intent.*

Plaintiffs need not plead that Olson entered into an agreement *intending* to kill Colombian civilians. DE 736 at 4, 8. It is enough that Olson intended to and entered into an agreement to procure the services of the AUC, so that Chiquita could control large swathes of the banana-growing regions of Colombia where they operated. DE 589 ¶¶ 2, 90. Olson is liable for the deaths and torture that were a foreseeable consequence of that agreement (with a terrorist organization). *See* Joint Opp. 17-18; *Halberstam*, 705 F.2d at 487.

Regardless, Plaintiffs have met Olson's test and pled that he intended the killings. This Court already held Plaintiffs adequately pled that Chiquita intended for the AUC to harm civilians. MTD Order, 792 F. Supp. 2d at 1344-49, 1351. And Olson's *own* conduct, supporting the AUC for nearly a decade, is evidence that he shared that intent. *See* Joint Opp. at 20-24; *Julin*, 690 F. Supp. 2d at 1311-12 (intent is typically proved by circumstantial evidence and inferences drawn from a defendant's conduct). Knowingly providing financial support to a terrorist organization is sufficient to infer that Olson intended to support the AUC's illegal goals. *See Linde v. Arab Bank, PLC*, 384 F. Supp. 2d 571, 584 (E.D.N.Y. 2005); *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 50 (D.D.C. 2010).[3] His intent is further demonstrated by the fact that he helped conceal the existence of the conspiracy, *Cox*, 17 F.3d at 1411, and that his support was continuous, spanning at least seven years. *Halberstam*, 705 F.2d at 487-88. Plaintiffs have adequately pled Olson intended for the AUC to commit the killings.

    b. *Plaintiffs have pled an agreement between the AUC and Olson.*

This Court has found that Plaintiffs' allegations raise a plausible inference that an agreement

---

[3] The fact that Olson facilitated direct support for almost a decade to a terrorist organization with no legitimate purpose that would *only* use the support for human rights abuses, rather than a state with legitimate law and order functions, distinguishes Olson's role from that of the defendants in *Abecassis v. Wyatt*, 704 F. Supp. 2d 623 (S.D. Tex. 2010).

5

existed between Chiquita and the AUC. MTD Order, 792 F. Supp. 2d at 1351. Like intent, whether a defendant entered into an agreement is, typically, proved on circumstantial evidence and inferences drawn from his conduct. *Halberstam*, 705 F.2d at 486. Olson knew about Chiquita's agreement with the AUC and he actively furthered it by providing legal cover for the arrangement, and by approving the payments and the procedures to conceal them. *See supra* Section 1.a. Olson's "knowledge and aid over [nearly a decade] makes some kind of accord extremely likely[.]" *Halberstam*, 705 F.2d at 487.

Olson responds that Plaintiffs have not alleged he met with the AUC or ordered the AUC to do anything. DE 736 at 8-9. But such allegations are not necessary to *prove*, let alone plead, that he joined in the agreement. Joint Opp. at 22, n.17. Proof of a conspiracy (and the existence of an agreement) does not demand that "each defendant had direct contact with each of the other alleged co-conspirators," *United States v. Marchante*, 514 F. App'x 878, 883 (11th Cir. 2013), and the agreement need not be formal or express. *See Am. Tobacco Co. v. United States*, 328 U.S. 781, 809 (1946); *Raspardo v. Carlone*, 770 F.3d 97, 115 n.21 (2d Cir. 2014).

**3. Courts may not weigh competing plausible alternative inferences.**

Olson also argues that Plaintiffs must exclude an alternative explanation: he supported the AUC because of extortion. DE 737 at 6-7. This Court already rejected the same argument when Chiquita raised it, finding Plaintiffs adequately alleged Chiquita was not under duress. MTD Order, 792 F. Supp. 2d at 1348. It is *implausible* that Olson was operating under duress but Chiquita was not. Olson's extortion story, which he claims refutes his *mens rea*, is not an "obvious alternative explanation." *Cf. Ashcroft v. Iqbal,* 556 U.S. 662, 682 (2009).

Second, and more fundamentally, Rule 12(b)(6) does not impose a "probability requirement" or allow a court to weigh otherwise plausible inferences. *See* Joint Opp. 2, 22-24; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *accord Iqbal*, 556 U.S. at 678. Even if duress were *a* plausible explanation for Olson's actions, that would not negate the plausibility of Plaintiffs' allegations. *See*

6

*Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("'Plausibility' . . . does not imply that the district court should decide whose version to believe, or which version is more likely. . ."). And when *both* sides' explanations are plausible, the complaint *survives* a motion to dismiss. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996. (9th Cir. 2014).

In *Iqbal* and *Mamani*, the plaintiffs pled that harms occurred and that the defendants were in a position to and *could* have caused them intentionally, but provided no facts that were anything more than *consistent* with a wrongful purpose. *See Iqbal,* 556 U.S at 681-83 (no evidence of discriminatory policy apart from disparate impact, and actions were consistent with legal measures to fight terrorist threat); *Mamani v. Berzain*, 654 F.3d 1148, 1155 (11th Cir. 2011) (no facts suggesting decedents' deaths were deliberate, and actions were consistent with civilian protection). The court could therefore credit alternative, plausible explanations that were perfectly innocent. *See* Joint Opp.22-23. But such is not the case for a lawyer who chooses to unlawfully assist terrorists for years and continues that support after being instructed to cease by the Department of Justice, and where there is no indication that he ever sought or advised Chiquita to find alternatives to paying the AUC.[4]

Moreover, duress is an alternative defense; it does not appear on the face of the Complaints, and Olson cannot raise it here. *See* Joint Op. 23-24.

4. **The allegations are not conclusory.**

Plaintiffs have alleged concrete, non-conclusory *facts*, including that: (1) Olson was Chiquita's chief legal officer; (2) in that role, he approved payments to the AUC and procedures to disguise those payments; (3) he did that knowing that the AUC was a violent paramilitary organization and

---

[4] Furthermore, Olson's explanation and that of the Plaintiffs are not mutually exclusive. Even if Defendants were able to prove at trial that they funded the AUC *in part* because of the threat of violence, this does not mean Defendants were not *also* motivated by the financial incentives. The task of weighing these motivations should fall to a jury.

7

eventually a designated terrorist organization; and (4) that the Department of Justice deemed the payments illegal and instructed him to stop them. *Supra* at 1.[5] These allegations are neither legal conclusions nor formulaic recitations of the elements of a claim. In fact, they are indistinguishable from allegations that the Supreme Court designated as well-pled in *Iqbal*, 556 U.S. at 681 (allegation that Director of FBI and Attorney General "approved" the "police" policy of holding Arab Muslim men in detention was non-conclusory). *See also* Joint Opp. 23.

The allegations are not vague. Plaintiffs allege that Olson was aware of the procedure of paying the AUC through *convivirs* in or around 1997, DE 575 ¶ 2038; that he approved the procedure of paying the AUC directly by sending checks to Banadex employees who would cash and distribute the proceeds to the AUC in 2002, DE 589 ¶¶ 19, 88-89; DE 575 ¶ 2038; and that he fought and ignored the advice of outside counsel to stop making the payments, DE 589 ¶¶ 117-18, 161-62; DE 575 ¶¶ 2056, 2147. These are detailed facts (even though Plaintiffs need not plead specifics). Finally, Plaintiffs have pled that Olson, individually, engaged in conduct that makes him liable. Of course, there are allegations that address the Defendants and Chiquita jointly, because Plaintiffs allege that they were part of the *same* conspiracy. Joint Opp. at 18-19. But the individual allegations clearly put Olson on notice of the specific conduct for which he is liable. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

Plaintiffs' allegations are therefore entitled to the assumption of truth.

## CONCLUSION

For the foregoing reasons, Olson's Motion to Dismiss should be denied.

---

[5] Although not required to do so, Plaintiffs do provide significant details about the arrangements that Olson made. *See, e.g.,* DE 589 at ¶¶ 88-89 (explaining, in detail, the procedures designed to disguise the payments). More specific information cannot be required at this stage; the secret nature of companies "often makes it impossible to provide details at the pleading stage and [ ] the pleader should be allowed to resort to the discovery process . . ." *Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 110-11 (D.D.C. 2003) (internal citation and quotations omitted).

8

Dated: June 22, 2015

Respectfully submitted,

/s/ John DeLeon

**Law Offices of Chavez-DeLeon**
5975 Sunset Drive, Suite 605
South Miami, FL 33143
Tel: 305-740-5347
Fax: 305-740-5348

*Counsel for John Doe I Plaintiffs, original docket number: 9:08-cv-80421-KAM*

Rick Herz
Jonathan Kaufman
Marco Simons
Marissa Vahlsing
**EarthRights International**
1612 K Street N.W., Suite 401
Washington, D.C. 20006
Tel: 202-466-5188
Fax: 202-466-5189

Paul L. Hoffman
**Schonbrun, DeSimone, Seplow, Harris, Hoffman & Harrison LLP**
723 Ocean Front Walk
Venice, CA 90291
Tel: 310-396-0731
Fax: 310-399-7040

Agnieszka M. Fryszman
Benjamin D. Brown
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C. 20005-3964
Tel: 202-408-4600
Fax: 202-408-4634

Judith Brown Chomsky
**Law Offices of Judith Brown Chomsky**
Post Office Box 29726
Elkins Park, PA 19027

9

Tel: 215-782-8367
Fax: 202-782-8368

Arturo Carrillo
**Colombian Institute of International Law**
5425 Connecticut Ave., N.W., #219
Washington, D.C. 20015
Tel: 202-994-5794

John DeLeon, FL Bar No. 650390
**Law Offices of Chavez-DeLeon**
5975 Sunset Drive, Suite 605
South Miami, FL 33143
Tel: 305-740-5347
Fax: 305-740-5348

*Counsel for John Doe I Plaintiffs, original docket number: 9:08-cv-80421-KAM*

Terrence P. Collingsworth
**Conrad & Scherer, LLP**
1156 15th St. NW, Suite 502
Washington, D.C. 20005
Tel: 202-543-4001
Fax: 866-803-1125

Eric J. Hager
**Conrad & Scherer, LLP**
Avenida República de El Salvador
500 e Irlanda Edificio Siglo XXI, PH
Oficina W Quito, Ecuador
Tel: 954-462-5500 ext. 461
Fax: 866-803-1125

*Counsel for DOES (1-144), PEREZES (1-95), PEREZES (96-795), and Carmen Tulia Cordoba Cuesta et al.,original docket number: 9:08-cv-80465-KAM 1:07-cv-01048 (RJL)*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on June 22, 2015. I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF, and in accordance with the Court's First Case Management Order ("CMO") and the June 10, 2008, Joint Counsel List filed in accordance with the CMO.

By: /s/ John DeLeon

JOHN DELEON