**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 08-01916-MD-MARRA/JOHNSON**

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:

      ATS ACTIONS

      08-80421-CIV-MARRA
      08-80465-CIV-MARRA
      08-80508-CIV-MARRA

_____/

**DEFENDANT CHIQUITA'S TIME-SENSITIVE MOTION TO COMPEL**
**COMPLIANCE WITH THE COURT'S MAY 5 DISCOVERY ORDER,**
**AND REQUEST FOR EXPEDITED BRIEFING SCHEDULE**

## INTRODUCTION

Pursuant to Rule 37(b), Defendants Chiquita Brands International, Inc. and Chiquita Fresh North America LLC (collectively "Chiquita") respectfully move the Court for an order directing Terrence Collingsworth and other plaintiffs' counsel in the above-captioned actions to (1) produce, within 72 hours, documents and information regarding paramilitary witness payments that they have withheld in violation of this Court's May 5, 2015 Order, (2) answer, within 72 hours, certain questions regarding the sufficiency of their discovery responses that they have thus far failed to answer, and (3) reimburse Chiquita for the fees and costs incurred in preparing this motion.  Chiquita also requests that the Court order Mr. Collingsworth to produce information regarding the loss of certain email records.

Chiquita requests an expedited briefing schedule on this motion because Chiquita was informed just yesterday that two of the paramilitary witness preservation depositions sought by the ATS plaintiffs have apparently been scheduled for August 12, 2015.  (*See* Ex. 42.)  In order to ensure that Chiquita receives a complete set of discovery responses in advance of the scheduled depositions, and consistent with the "accelerated schedule" that this Court established for that purpose (D.E. 759 at 12), Chiquita asks that the Court set a schedule requiring the above-captioned plaintiffs ("Plaintiffs") to file any opposition to this motion by July 8 and Chiquita to file any reply by July 13.

On May 5, the Court entered a discovery order that overruled several of Plaintiffs' objections to Chiquita's discovery requests regarding witness payments (the "May 5 Order"). The May 5 Order  directed Plaintiffs to produce several categories of responsive information by May 8—*i.e.*, within three days.  While Plaintiffs provided some responsive material by that

deadline, their responses and document productions plainly failed to include all the information required by the May 5 Order.

Despite diligent and sustained efforts by Chiquita to confer with Plaintiffs and secure their compliance without judicial intervention, Plaintiffs continue to withhold responsive material *nearly two months later* — including, most significantly, internal documents and communications among Plaintiffs' counsel regarding paramilitary witness payments. In refusing to produce this material, Plaintiffs have cited work product, privilege, and other objections that they previously asserted and that *the Court considered and overruled* in its May 5 Order. Plaintiffs have simply disregarded the Court's order.

Chiquita's need for the discovery that Plaintiffs are improperly withholding has been heightened by two recent developments. First, the partial discovery responses produced by Plaintiffs since the May 5 Order have revealed extensive dealings between Mr. Collingsworth and key paramilitary witnesses in this case and substantiated Chiquita's concerns that payments by Mr. Collingsworth have influenced the testimony of these witnesses. However, these incomplete responses leave unanswered several important factual questions regarding Mr. Collingsworth's interactions with paramilitary witnesses. Second, now that trial depositions for two paramilitary witnesses have apparently been scheduled for August 12, 2015, Plaintiffs' continued refusal to comply with the Court's discovery order threatens to prevent Chiquita from taking critical discovery that goes directly to the credibility of the witnesses whose testimony Plaintiffs seek to preserve. As the Court previously recognized, "the defendants should be allowed an opportunity to conduct discovery on the witness payment issue, under an accelerated schedule, *before the paramilitary witnesses are deposed in this case*." (D.E. 759 at 12 (emphasis added).)

## BACKGROUND

### A.    The Court's May 5 Order Overruling Plaintiffs' Objections to Chiquita's Discovery Requests and Requiring the Production of Responsive Material

On April 7, the Court granted Plaintiffs' request for depositions to preserve the testimony of three imprisoned paramilitary witnesses:  Fredy Rendón Herrera, Jesús Roldán Pérez, and José Gregorio Mangones Lugo.  (*See* D.E. 759.)  In doing so, the Court recognized that Chiquita should be permitted to first take discovery regarding involvement by Plaintiffs' counsel in "a witness-payment scheme, in light of allegations . . . against Attorney Terrence Collingsworth . . . [that he was] making unlawful payments to Colombian paramilitary witnesses."  (*Id.* at 10.)

To ensure that Chiquita could secure discovery regarding the witness-payment issue before the paramilitary depositions were taken, the Court ordered that the depositions could begin no earlier than June 6 and set an expedited schedule for resolving any disputes about witness payment discovery, pursuant to which:  (1) Chiquita served document requests and interrogatories (the "Discovery Requests") on Plaintiffs' counsel, including Mr. Collingsworth, on April 17; (2) Plaintiffs served responses and filed objections to Chiquita's requests, along with a brief in support of their objections, on April 22; and (3) Chiquita filed a brief addressing Plaintiffs' objections on April 27.  (*See id.* at 18-19.)

On May 5, the Court issued a detailed Order that overruled several of Plaintiffs' objections to the Discovery Requests and directed Plaintiffs' counsel to produce documents and information responsive to Request for Production ("RFP") Nos. 1, 5, and 9, and Interrogatory Nos. 1, 2, 5, 6, 7, and 8, as amended, *within three days*, by May 8, 2015.[1]  (*See* D.E. 797.)

---

[1]    The Court also ordered Plaintiffs' counsel to produce documents and information responsive to Chiquita's RFP Nos. 3 and 10 and Interrogatory Nos. 4 and 10 but did not impose a May 8, 2015 deadline.  *See* D.E. 797, at 4, 7, 9, 11.

Among other things, the Court's order overruled Plaintiffs' work product and privilege objections to RFP Nos. 1, 3, 5, and 9. (*See id.* at 2, 4-5, 7.)

On May 8, Plaintiffs' counsel in the above-captioned matters served amended or supplemental responses to Chiquita's Discovery Requests, pursuant to the Court's order. (*See* D.E. 801, 806, 807, 808.) After careful review of Plaintiffs' discovery responses, Chiquita sent letters to each set of Plaintiffs' counsel requesting that they remedy certain deficiencies and clarify certain issues regarding the sufficiency of their responses. (*See* Exs. 1-3.)[2] For the past month and a half, Chiquita has made a concerted effort to confer with each plaintiff group to resolve concerns regarding the inadequacy of their discovery responses without judicial intervention. As explained below, despite Chiquita's diligent efforts, Plaintiffs' counsel in each of the above-captioned matters has failed to remedy important deficiencies in their responses, and in some instances, have refused even to engage in substantive discussions with Chiquita about the deficiencies.[3]

### B. Mr. Collingsworth's Belated Discovery Responses and Non-Compliance With the May 5 Order

Although the Court's May 5 Order directed Mr. Collingsworth to produce responsive material within three days, it has required several weeks of sustained effort by Chiquita just to get Mr. Collingsworth to *partially* comply with the Court's Order.

---

[2]    All exhibits cited herein are attached to the Declaration of Shankar Duraiswamy ("Duraiswamy Decl."), which is attached hereto in support of Chiquita's motion.

[3]    The *Montes* plaintiffs (10-cv-60573) have fully cooperated with Chiquita and are not subject to this motion. The *Does 1-888* plaintiffs (08-cv-80480) have informed Chiquita that they do not have responsive documents or information related to Chiquita's Discovery Requests, so they are not subject to this motion. Chiquita is continuing to confer with the *Carrizosa* plaintiffs (07-cv-60821) regarding the sufficiency of their responses. Finally, the Doe plaintiffs represented by Mr. Wolf (10-cv-80652, 11-cv-80404, 11-cv-80405) have provided documents to Chiquita, some of which are currently being reviewed by the Court in camera, so these plaintiffs are also not subject to this motion.

On May 8, Mr. Collingsworth served his first amended objections and responses to Chiquita's Discovery Requests.  (*See* D.E. 806, 807.)  The amended interrogatory answers informed Chiquita for the first time that Mr. Collingsworth had sought to retain Raúl Hasbún, a paramilitary fact witness in this case, as a purported "expert" or to otherwise "compensat[e] him for his time spent researching facts relating to his relationship with Chiquita."  (D.E. 807, at 8-10.)  The amended responses also revealed that three paramilitary witnesses requested payments from Mr. Collingsworth and that he provided $10,000 to a "confidential source" — who was an associate of Mr. Hasbún — to "investigate the facts" in Colombia related to Mr. Collingsworth's case against Chiquita.  (*Id.*)  Mr. Collingsworth refused, however, to produce any documents that the May 5 Order directed him to produce unless Chiquita agreed to enter into a 15-page protective order that would govern the entirety of the ATS litigation.  (*See* Ex. 4.)  Mr. Collingsworth's amended responses were also deficient in numerous other respects that Chiquita outlined in a May 15 letter.  (*See* Ex. 1.)

Subsequently, the parties negotiated an agreement whereby Mr. Collingsworth would produce responsive documents with redactions of the identities of certain non-parties.  (*See* Ex. 5.)  On May 19, Mr. Collingsworth produced these documents, along with a second set of amended responses addressing some of the deficiencies in his first set of responses.  (*See* Exs. 6-7.)  The second amended responses included details about witness payments that Mr. Collingsworth had not previously disclosed, including the identities of two paramilitaries represented by Iván Otero, Mr. Collingsworth's Colombian co-counsel.  (*See* Ex. 6, at 8, 10-11, 13.)  However, the additional document production and amended responses raised further questions regarding the adequacy of Mr. Collingsworth's discovery responses.  In particular, although the Court had expressly overruled Plaintiffs' work product objections to RFP Nos. 1

and 3 (*see* D.E. 797), the documents produced in response to those requests included redactions for material that Mr. Collingsworth claimed to be work product.  (*See, e.g.*, Ex. 8.)

On May 27, Chiquita sent another deficiency letter and specifically inquired as to whether Mr. Collingsworth was withholding other material responsive to RFP Nos. 1 and 3 on the basis of work product.  (*See* Ex. 9.)  As an initial response to that letter, Mr. Collingsworth belatedly produced additional responsive documents.  (*See* Ex. 43.)  On June 1, Mr. Collingsworth's co-counsel confirmed that Plaintiffs' counsel was withholding "internal emails or similar internal documents between or among Plaintiffs' legal team" on work product grounds, notwithstanding the Court's May 5 Order.  (*See* Ex. 10, at 2.)  On the same day, Plaintiffs served a third set of amended answers to Chiquita's interrogatories.  (*See* Ex. 11.) Again, however, these amended responses failed to resolve several questions, and raised some new ones, regarding the completeness of plaintiffs' discovery responses.  Chiquita identified these issues in a subsequent letter to Plaintiffs' counsel on June 6.  (*See* Ex. 12.)  Nine days later, on June 15, Mr. Collingsworth provided a partial response and produced still more responsive documents.  (*See* Exs. 13 & 44.)  After a follow-up email from counsel for Chiquita, on June 24, Mr. Collingsworth addressed the remaining issues raised in Chiquita's June 6 letter.  (*See* Ex. 14.)  In doing so, he confirmed that he was withholding responsive communications with "member[s] of my legal team" on work product grounds.  (*Id*.)

### C.   The *Does 1-11* and *Valencia* Plaintiffs' Resistance to Conferring Regarding Their Deficient Discovery Responses

On May 22, Chiquita sent detailed letters to counsel for the *Does 1-11* and *Valencia* Plaintiffs identifying certain deficiencies in Plaintiffs' discovery responses and seeking clarification on key issues to determine the extent to which the responses were incomplete.  (*See* Exs. 2-3.)  After multiple follow-up communications from Chiquita, the *Valencia* Plaintiffs

finally responded two weeks later,. (Ex. 16.)  The response, however, consisted of two cursory emails that failed to address several of the issues raised by Chiquita.  (*Id.*)  Chiquita's subsequent efforts to confer regarding the deficiencies in the discovery responses have been ignored entirely. (*See id.*; Duraiswamy Decl. ¶ 49.)

The *Does 1-11* Plaintiffs responded to Chiquita's letter with a brief e-mail addressing some of the issues raised by Chiquita, but refused to engage in a telephonic conference to address Chiquita's remaining questions and concerns unless counsel for Chiquita (1) answered interrogatory-style questions regarding Chiquita's interactions with paramilitary witnesses and the evidence in its possession, and (2) detailed Chiquita's position on certain case-wide discovery procedures that had no relevance to the issues that Chiquita had raised regarding Plaintiffs' discovery responses.  (*See* Ex. 15.)  When counsel for Chiquita explained that it was not required to address these issues, given the Court's general stay of discovery and suspension of Rule 26(f) obligations, Plaintiffs' counsel indicated that they would not confer further regarding the adequacy of their discovery responses.  (*See id.*)

## ARGUMENT

**I.     The Court Should Order Mr. Collingsworth to Produce Documents Responsive to RFP Nos. 1 and 3  That He Has Withheld on "Work Product" Grounds.**

As detailed in Section I.B below, the documents that Mr. Collingsworth has produced to date confirm that he has influenced the testimony of paramilitary witnesses in this case by offering or suggesting the possibility of monetary compensation and other benefits to the witnesses and their associates.  Chiquita has been prevented from learning more about these facts because Mr. Collingsworth has refused to produce a complete set of responsive documents, in violation of this Court's May 5 Order.  Mr. Collingsworth has asserted work product claims over an unspecified number of documents responsive to RFP Nos. 1 and 3, which seek documents

regarding payments to paramilitary witnesses made by, offered by, or requested of plaintiffs' counsel.  (*See* Ex. 9, at 2-3; Ex. 10, at 2; Ex. 12, at 1; Ex. 13, at 1; Ex. 14, at 1-2.)  Mr. Collingsworth has also asserted work product as a basis for redacting portions of documents that he has produced in response to RFP Nos. 1 and 3.  (*See, e.g.*, Exs. 8, 17.)  The Court should order him to produce the material he has withheld, in compliance with the May 5 Order.  At a minimum, Mr. Collingsworth should be ordered to at least *identify* the documents he is withholding on work product grounds.

### A.    The Court Already Overruled Mr. Collingsworth's Work Product Objections to RFP Nos. 1 and 3.

Mr. Collingsworth's refusal to produce documents responsive to RFP Nos. 1 and 3 based on the work product doctrine is a clear violation of the Court's May 5 Order.  Mr. Collingsworth spent most of his three-page brief objecting to Chiquita's discovery requests by arguing that the requests "impermissibly seek privileged work product."  (D.E. 767.)  The Court explicitly overruled Mr. Collingsworth's work product objections to RFP No 1: "In particular, *and without limitation*, the Court specifically **OVERRULES** the objections of vagueness, overbreadth and *work product privilege* asserted . . . by Attorney Terry Collingsworth."  (D.E. 797, at 2 (emphasis added).)  The Court also overruled Plaintiffs' work product objections to RFP Nos. 3, 5, and 9.  (*See id.* at 4-5, 7.)[4]  At no point did Mr. Collingsworth seek reconsideration of, or relief from, the Court's Order.  He simply chose to ignore it.

---

[4]    The Court sustained Plaintiffs' work product objection to RFP No. 2, which sought documents concerning the "propriety" of , including internal memoranda addressing the ethics of such payments.  *See* D.E. 797, at 3.  Counsel for Chiquita has explained to Mr. Collingsworth that to the extent such documents might technically fall within the scope of RFP Nos. 1 and 3, Chiquita is not insisting on their production.  *See* Ex. 12, at 1.  Mr. Collingsworth has not suggested all — or any — of the documents he is withholding fall within this narrow exception.

Even if it were proper to allow Mr. Collingsworth to re-litigate the Court's earlier ruling

after he failed to comply with it, the Court's Order remains well-supported.  The work-product

doctrine does not shield *facts* from disclosure,[5] including facts about witness payments.[6]  Indeed,

several other courts have allowed discovery concerning Mr. Collingsworth's payments to

paramilitary witnesses over objections that this would divulge protected work product.[7]  In

addition, Mr. Collingsworth's work product objections continue to lack merit for the other

reasons set forth in Chiquita's initial briefing on this issue:  (1) Chiquita has "substantial need"

for the documents because they are necessary to impeach the credibility of Plaintiffs'

paramilitary witnesses at their forthcoming preservation depositions (*see* Ex. 42);[8] (2) under the

---

[5]    *See, e.g.*, *Slep-Tone Enter. Corp. v. Johnson*, 518 F. App'x 815, 821 (11th Cir. 2013) (""[U]nderlying facts . . . are not protected by the attorney-client privilege . . . ."); *Doe v. Autauga Cnty. Bd. of Educ.*, 2006 WL 1223831, at *2 (M.D. ala. May 5, 2006) ("Of course, the underlying facts learned by the party or its representative are not protected by the work product privilege just because they are reflected in a document subject to Rule 26(b)(3), and these facts remain discoverable.").

[6]    *See* Ex. 29 (*Drummond Co., Inc. v. Collingsworth*, No. 2:11-cv-3695-RDP (N.D. Ala. Oct. 15, 2013) ("The fact of payments to witnesses are not subject to work product objections.")).

[7]    *See* Ex. 27 (*Drummond Co., Inc. v. Collingsworth*, No. 14-mc-81189-MIDDLEBROOKS (S.D. Fla. Nov. 21, 2014) (denying motion to quash Drummond's subpoena to Jack Scarola and his law firm on witness payment issues)); Ex. 28 (*Drummond Co., Inc. v. Collingsworth*, Nos. 13-mc-80169-JST (JCS), 13-mc-80171-JST (JCS) (N.D. Cal. Nov. 18, 2013) (rejecting work product arguments with respect to e-mail identity and usage information for paramilitaries and/or their agents, and Mr. Collingsworth's associate, Lorraine Leete, who has been connected to witness payments in public filings)); Ex. 30 (*Balcero Giraldo v. Drummond Co., Inc.*, No. 2:09-cv-1041-RDP (N.D. Ala. Mar. 8, 2012) (allowing discovery of the fact of witness payments over Collingsworth's work-product objections)); Ex. 31 (*Mendoza v. Dole Food Co.*, No. CV-2015-007 (Ala. Circuit Court Apr. 2, 2015) (denying Mr. Collingsworth's motion to quash Dole's subpoena to Drummond seeking evidence of witness payments)); Exs. 32-33 (Reply in Supp. of Dole's Mot. to Compel (Mar. 26, 2015) & Order Adopting Dole's Notice of Rulings from Apr. 10, 2015 Hr'g, at 5 (May 27, 2015), *Mendoza v. Dole Food Co.*, No. BC412620 (Cal. Super. Ct.) (granting Dole's motion to compel discovery responses concerning witness payments)).

[8]    *See* Fed. R. Civ. P. 26(b)(3)(A)(ii); *Hickman v. Taylor*, 329 U.S. 495, 511 (1947) ("Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had."); *In re Petition of MDM Marina Corp.*, 2013 WL 6711584, at *3 (E.D.N.Y. Dec. 18, 2013) (continued…)

crime-fraud exception, otherwise protected communications and documents must be disclosed

when they were "made or performed in furtherance of a crime, fraud, or other misconduct

fundamentally inconsistent with the basic premises of the adversary system;"[9] and (3) to the

extent Mr. Collingsworth is withholding documents prepared for litigation against other parties,

such as Dole and Drummond, they are not entitled to work product protection in this case.[10]

> **B.    Chiquita's Has an Especially "Substantial Need" for the Withheld Documents Based on the Facts That Have Been Revealed to Date.**

Chiquita's "substantial need" for the documents is even clearer now than when the Court

first overruled Mr. Collingsworth's work product objections on May 5.  As explained below, the

---

("[E]ven when a witness is available for deposition, a litigant may be able to establish a substantial need . . . when there are serious and substantiated concerns with the witness's credibility." (internal citations omitted)).

[9]     *Gutter v. E.I. Dupont De Nemours*, 124 F. Supp. 2d 1291, 1298 (S.D. Fla. 2000).  The crime-fraud exception applies even in those instances where no actual law has been violated because "the purpose of the work product privilege is to protect the integrity of the adversary process; therefore, it would be improper to allow an attorney to exploit the privilege for ends that are antithetical to that process."  *See, e.g.*, *Parrott v. Wilson*, 707 F.2d 1262, 1271 (11th Cir. 1983).  Here, Mr. Collingsworth's witness payment scheme — which, at a minimum, involves paying the associates of paramilitary witnesses and seeking to secure testimony from a fact witness through financial compensation — is unquestionably unethical and may even be illegal. *See, e.g.*, 18 U.S.C. § 201(c)(2) (establishing federal offense for "[w]hoever . . . directly or indirectly, gives, offers, or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness . . . before any court"); 18 U.S.C. § 1512(b)(1) (establishing federal offense for "[w]hoever knowingly . . . corruptly persuades another person, or attempts to do so, . . . with intent to . . . influence . . . or prevent the testimony of any person in an official proceeding"); *Golden Door Jewelry Creations, Inc. v. Lloyd's Underwriters Non-Marine Assoc.*, 865 F. Supp. 1516, 1525-26 (S.D. Fla. 1994), *aff'd in relevant part*, 117 F.3d 1328 (11th Cir. 1997) (holding that even "[t]he payment of a sum of money to a witness to 'tell the truth' is as clearly subversive of the proper administration of justice as to pay him to testify to what is not true" (internal quotation marks and citation omitted)); D.E. 696-3 (Drummond's ethics expert report).

[10]    *See Tambourine Comercio Internacional SA v. Solowsky*, 312 F. App'x 263, 284 (11th Cir. 2009) (any "[d]ocuments prepared for one who is not a party to the present suit are wholly unprotected by Rule 26(b)(3) even though the person may be a party to a closely related lawsuit in which he will be disadvantaged if he must disclose in the present suit" (internal quotation marks and citation omitted)); Ex. 27, at 5-6.

partial discovery responses served by Plaintiffs since then have confirmed that Mr.

Collingsworth influenced paramilitary witnesses in this case by offering things of value to them,

or their agents, relatives, and associates, in exchange for providing testimony—but leave open

key questions regarding Mr. Collingsworth's extensive dealings with paramilitary witnesses and

their agents and associates.

Mr. Collingsworth's discovery responses show that after he made payments to a

Colombian lawyer "who served as the contact person for Plaintiffs' discussions with" Raúl

Hasbún (Ex. 11, at 8, 10)—a former paramilitary commander whom Mr. Collingsworth alleges

was the "intermediary between companies and the AUC" (D.E. 575, at ¶ 2074)—Hasbún

changed his testimony regarding whether Chiquita was extorted by the AUC.  Although Hasbún

testified in 2008 that Chiquita had been extorted by the AUC, he later took the position that

Chiquita had voluntarily paid the AUC.[11]  The discovery produced by Mr. Collingsworth shows

that, before Hasbún changed his tune, Mr. Collingsworth had the following extensive dealings

with him and his "contact person":[12]

- In 2009, Mr. Collingsworth established a co-counsel arrangement with CCA1 and another Colombian attorney involving payments for, among other things, obtaining facts and evidence that would assist the prosecution of Mr. Collingsworth's lawsuits in the United States, including the Chiquita case.[13]  Mr. Collingsworth started meeting with Hasbún during that time to seek his cooperation in those lawsuits, and at several

---

[11]     *See, e.g.*, Ex. 47 (testifying, *inter alia*, that banana producers such as Chiquita were "extorted by Mr. Castaño" (the AUC's leader), that "extortion of the banana-producers through the Medellín office was easy," and that "[e]veryone who had a presence or locale in Urabá had to pay us the extortion [*vacuna*]"); Ex. 18 (stating, 4 years later, that banana companies were not extorted).

[12]     In Mr. Collingsworth's emails Hasbún is referred to as "RH," "friend," "Pedro," or "the man."  Hasbún's "friend" and contact person is identified as "CCA1."

[13]     *See, e.g.*, Ex. 19 (e-mail chain with CCA1 and CCA2 about establishing co-counsel arrangement and Collingsworth's interest in meeting CCA1's "friend Ra[ú]l"); Ex. 20 (copy of co-counsel agreement with Colombian attorneys specifying $150,000 payment by Collingsworth's firm and previous $10,000 payment made "to start the agreement").

meetings, beginning in August 2009, Hasbún "inquired as to whether Plaintiffs could pay for his lawyers and other costs associated with providing testimony regarding various multinational companies' collaboration with the AUC, including Chiquita and Dole."  Ex. 11, at 10.

- Subsequently, Mr. Collingsworth suggested that he could help provide "security" for Hasbún and his family, "but [Hasbún] has to be clear in general terms about what he can actually say.  I want this to work."  Ex. 21.  According to Paul Wolf, counsel to certain ATS plaintiffs, Mr. Collingsworth "pa[ys] [a] security company first and then the security company [] send[s] the money to the lawyers for the witnesses who were Colombian paramilitaries."  Ex. 34, at ¶ 14.[14]

- According to Mr. Collingsworth's interrogatory answers, through 2010, he discussed with Hasbún "the possibility of retaining [him] as an expert witness or compensating him for his time spent researching the facts relating to his relationship with Chiquita and Dole."  Ex. 11, at 10.  While Mr. Collingsworth asserts in his interrogatory answers that "no agreement was reached" with Hasbún, the documents produced to date suggest otherwise.  They show that in May 2010, Hasbún and CCA1 demanded as much as $200,000 for investigation "service[s]."  *See* Ex. 22.  In response, Mr. Collingsworth said that "the amount of 200,000 that you suggested is fine" and proposed an arrangement whereby CCA1 would serve as an "investigator."  Exs. 23-24.

- As late as 2012, Collingsworth was paying thousands of dollars to CCA1, Hasbún's associate and intermediary, purportedly to arrange meetings with Hasbún and other paramilitaries — including Salvatore Mancuso, another individual whom Mr. Collingsworth concedes to be a relevant witness in this case.  *See* Ex. 25.

Notably, throughout this time period, Hasbún was in the same prison as the two paramilitaries whose expedited depositions have been scheduled for August 12:  Fredy Rendón Herrera and Jesús Roldán Pérez.[15]  Indeed, following the events described above, Hasbún  gave a joint interview with Rendón Herrera from their prison in which they discussed allegations of AUC financing.  (Ex. 46.)  Hasbún has obviously talked to his prison-mates.

---

[14]    *See also* Ex. 35 (showing November 17, 2010 wire from Mr. Collingsworth's co-counsel, Parker Waichman Alonso LLP, to Secure Pointe Partners International for "Case Management & Investigative" services for the Chiquita action).

[15]    *See* D.E. 688-1, at 21, 51 (draft letters of request proposed by Plaintiffs stating that Rendón Herrera and Roldán Pérez are imprisoned in Itagüí, Antioquia); Ex. 26 (stating that Hasbún is imprisoned in Itagüí, Antioquia).

Mr. Collingsworth's interrogatory answers also concede that he has had dealings with José Gregorio Mangones Lugo, the third paramilitary witness whose deposition Plaintiffs have sought.  Mr. Collingsworth concedes that he has met with Mangones Lugo several times since 2008, and discussed the provision of "assistance with legal fees or relocation costs for his associates who were not in prison."  Ex. 11, at 8, 11.  Additionally, Mr. Collingsworth's Colombian co-counsel has discussed with Mangones financial assistance for Mangones' daughter's education.  *See id.* at 11.  While Mr. Collingsworth claims that no payments were actually made (*see id.*), he has not produced a single document concerning these interactions.

Although Mr. Collingsworth's partial discovery responses confirm that he has had extensive dealings with paramilitary witnesses and their associates, they leave unanswered several key factual questions that go to the credibility of the paramilitary witnesses in this case, including:  the purpose and motivation for the payments that Mr. Collingsworth considered and made; the substance of the testimony that was to be secured in exchange for payments to witnesses and/or their agents; whether the agents to whom Mr. Collingsworth made payments had relationships with other paramilitary witnesses in this case, including the two witnesses whose depositions are scheduled for August 12; the reasons for which Mangones Lugo requested payment; whether other paramilitary witnesses in this case, including the two individuals whose depositions are scheduled for August 12, were aware that Mr. Collingsworth was prepared to pay for testimony; whether and to what extent Mr. Collingsworth, in fact, made payments to security companies or as "security" for the benefit of witnesses; and details as to how payments to the agent of a witness may have benefitted the witness himself.

Communications among Plaintiffs' counsel and other "internal" documents regarding paramilitary witness payment issues would likely answer at least some of these important factual

questions.  Indeed, an e-mail among ATS Plaintiffs' counsel produced in this action strongly indicates that facts related to the witness payments are contained within the documents that Mr. Collingsworth has withheld.  On July 5, 2011, counsel for the *Valencia* Plaintiffs sent an email to Mr. Collingsworth reminding him of his agreement to provide the other ATS plaintiffs' counsel with "details of the **expenses incurred to date that have directly or indirectly benefited potential witnesses**."  Ex. 34, at DOEPEREZ_000150 (emphasis added).  As long as Mr. Collingsworth refuses to produce responsive communications with Plaintiffs' counsel and other internal documents, Chiquita will not be able to get to the bottom of his dealings with paramilitary witnesses.

In addition, Chiquita cannot be expected to rely on Mr. Collingsworth's interrogatory answers to fully address the open factual questions regarding his interactions with paramilitaries and their associates.  Each set of written responses that Mr. Collingsworth has served has contained deficiencies, and when confronted with those deficiencies, Mr. Collingsworth has served amended responses confirming that his prior responses were incomplete or erroneous. For example, Mr. Collingsworth initially failed to acknowledge that he had paid an associate of Raúl Hasbún to help secure the testimony of Salvatore Mancuso, another paramilitary witness in this case.  Only after Chiquita pointed out that an entry on a privilege log from a separate action against Dole indicated that such a payment had been made (*see* Ex. 9, at 2) did Mr. Collingsworth acknowledge the payment and produce the related document.  *See* Ex. 25.  In other instances, Mr. Collingsworth's interrogatory answers appear to be contradicted by the very documents that he produced.  For example, in response to Interrogatory Nos. 1 and 2, Mr. Collingsworth maintained that "the time frame of the discussions [regarding compensating Hasbún as an 'expert' or for his time 'researching' facts] was March to November 2010."  (Ex.

10, at 3.)  Yet, as early as October 2009, Mr. Collingsworth discussed Hasbún's development of questions for the Chiquita case and the funds necessary to complete the work, including in the possible form of "security."  (*See* Ex. 21.)

## II. The Court Should Order Mr. Collingsworth to Produce Information and Reports Regarding His Missing E-mails.

In addition to the foregoing, Chiquita has recently discovered that, on May 28, 2015, Mr. Collingsworth disclosed to Dole that he was no longer in the "possession, custody, or control" of certain e-mails between June 21, 2007 and March 22, 2013, including from his Conrad & Scherer and IRAdvocates e-mail addresses.  (*See* Ex. 45, at 11.)  To address this e-mail gap, Mr. Collingsworth has retained a forensic expert who has apparently prepared "two detailed reports" for the *Drummond* matter.  (*See id.* at 14.)  Although the fact of these gaps is clearly relevant to the adequacy of Mr. Collingsworth's responses to Chiquita's discovery requests, Mr. Collingsworth had not informed Chiquita of them.  The Court should order Mr. Collingsworth to provide Chiquita, within 72 hours, details regarding the scope of the lost data, including the two referenced forensic reports, so that Chiquita can determine how the disappearance of Mr. Collingsworth's emails has impacted the completeness of his discovery responses and seek appropriate and timely relief from the Court.

## III. The Court Should Order the *Does 1-11* and *Valencia* Plaintiffs to Produce Documents and Information Withheld in Violation of the Court's May 5 Order.

### A. Failure to Produce "Internal" Documents Responsive to RFP No. 1

In the supplemental discovery responses that the *Does 1-11* Plaintiffs served on May 8, they appeared to concede that they have documents responsive to RFP No. 1 that concern Mr. Collingsworth's payments to paramilitary witnesses.  However, Plaintiff stated that "[i]n light of the Court's May 5, 2015 Order, we do not interpret [Chiquita's] request[s] to seek documents concerning internal counsel discussions" because certain documents that the plaintiffs had

produced along with their initial responses to Chiquita's discovery requests constituted "the best documentation" regarding Mr. Collingsworth's payments.  (D.E. 808, at 2.)

Chiquita did not limit its request to "the best documentation" of witness payments.  Nor did the Court's ruling on Plaintiffs' objections impose any such limitation on RFP No. 1.  Rather, the Court overruled *all* objections to RFP No. 1 and held that "[a]ny [] attorney who has lodged objections to [RFP No. 1] and/or produced documents subject to any asserted objections to the request is directed to produce to [Chiquita] any documents not previously supplied."  (D.E. 797, at 3.)[16]  While the *Does 1-11* Plaintiffs have suggested that the withheld documents "do not reflect any information about payments beyond that in the documents already produced" (D.E. 808, at 3), Chiquita is not required to take Plaintiffs' word for it.  Indeed, for the reasons stated above, there is substantial reason to believe that communications among ATS plaintiffs' counsel could reveal important facts regarding Mr. Collingsworth's witness-payment scheme.  Chiquita is entitled to these documents under the May 5 Order.

## B.    Failure to Produce Allegedly "Privileged" Documents

Like Mr. Collingsworth, the *Valencia* Plaintiffs have taken the position that certain of their responsive documents are protected from disclosure on privilege grounds.  Although the supplemental responses served by the *Valencia* Plaintiffs on May 8 gave no indication that they were withholding responsive documents based on work product or privilege, counsel for the *Valencia* Plaintiffs subsequently made the following vague statement in a June 4 email responding to Chiquita's deficiency letter: "Documents have been withheld on the basis of

---

[16]    In a follow-up communication, Plaintiffs' counsel stated that the Court "was clearly concerned with documentation of witness payments, not what counsel may have thought of Mr. Collingsworth's alleged witness payments." Ex. 15, at 4.  To the extent that this is a reference to the Court's sustaining objections to RFP No. 2, which sought documents regarding the "propriety" of witness payments, Chiquita reiterates that it does not seek the production of any such material.  But any other documents concerning witness payments must be produced.

privilege in accordance with Judge Middlebrooks recent clarification of his order." Ex. 16, at 2. Chiquita promptly inquired as to what order counsel was referring to, and why it had any relevance to the instant action. *Id.* at 1.

Nearly four weeks have passed since then and, despite follow up efforts by Chiquita (*see* Duraiswamy Decl. ¶ 49), for the *Valencia* Plaintiffs has yet to respond. Based on its own research, Chiquita believes counsel was referring to a document submitted by Judge Middlebrooks to the 11th Circuit Court of Appeals in a separate action concerning a subpoena for documents regarding witness payments that Drummond issued to counsel for the *Valencia* Plaintiffs last fall. *See* Ex. 36. Plaintiffs cannot rely on proceedings in *other cases* to disregard the discovery order issued by the Court *in this case*. This Court has already considered and rejected Plaintiffs' work product and privilege arguments with respect to several of Chiquita's discovery requests. To the extent that the *Valencia* Plaintiffs are withholding, on the basis of privilege or work product, documents responsive to requests to which the Court overruled any privilege objection — including RFP Nos. 1, 3, 5, and 9 — those documents must be produced. At a minimum, Plaintiff should be ordered to *identify* the documents that they are withholding on privilege grounds.

### C. Failure to Identify Individuals With Financial Interests in This Action

The *Does 1-11* Plaintiffs have refused to provide a complete answer to Interrogatory No. 6, which requests the identity of each person with a direct financial interest or stake in the outcome of the litigation other than the law firms that have entered appearances in these actions. (*See* D.E. 785-1, at 28.) This request is meant to discover whether any individual who might have influence over a paramilitary witness stands to benefit from that witness' offering adverse testimony against Chiquita. In its May 5 Order, the Court overruled all objections to Interrogatory No. 6 and ordered counsel "to file a complete answer." (D.E. 797, at 10.)

The *Does 1-11* Plaintiffs have refused to comply with this order "due to . . . concerns for the[] safety and security" of their Colombian counsel and invited Chiquita to "[t]ake it to the Court."  (D.E. 808, at 9; Ex. 15, at 4.)  However, it was Plaintiffs who were obliged to "[t]ake it to the Court," and they never did.  They did not object to Interrogatory No. 6 based on their alleged security concerns, nor did they raise this issue in their brief with the Court.  Neither did they seek reconsideration of, or relief from, the ruling on this issue.  Instead, they have chosen simply to violate it.[17]

## IV. The Court Should Order the *Does 1-11* and *Valencia* Plaintiffs to Answer Key Questions Regarding the Sufficiency of Their Discovery Responses.

The *Does 1-11* and *Valencia* Plaintiffs' written discovery responses have raised several questions regarding the accuracy of their interpretation of Chiquita's discovery requests and the Court's May 5 Order.  Although Chiquita has sought to clarify these issues in follow-up communications, Plaintiffs' refusal to answer straightforward questions regarding the meaning of their written responses and their interpretation of Chiquita's requests has made it impossible to determine whether their responses are complete.  The Court should order the Plaintiffs to serve amended responses within 72 hours to clarify these issues, identified below, so that Chiquita and the Court can determine whether Plaintiffs' responses are complete:

- *Definition of "Plaintiffs' Counsel"*:  It is not clear whether, in responding to Chiquita's discovery requests, the *Valencia* Plaintiffs have construed the term "Plaintiffs' Counsel" consistent with the definition set forth in Chiquita's discovery requests.  Under Chiquita's definition, counsel for any plaintiff who is aware of witness payments involving other ATS plaintiffs' counsel must produce documents or information concerning such payments.  (*See* D.E. 785-1, at 10-11, 24-25.)  Although several plaintiffs initially objected to Chiquita's definition and refused to provide responsive information pertaining

---

[17]     Chiquita is willing to discuss a confidentiality protocol that would allay Plaintiffs' stated concerns regarding the safety and security of the individuals in question.

to the activities of other ATS plaintiffs' counsel,[18] the Court's May 5 Order did not sustain these objections.  *See* D.E. 797.[19]  The *Valencia* Plaintiffs' discovery responses, however, repeatedly refer only to the activities of the plaintiffs' counsel *in their specific action*.  (*See* D.E. 769, at 4-7; D.E. 770, at 4-7.)   The *Valencia* Plaintiffs have failed to answer whether they have any responsive documents or information concerning counsel in other cases brought against Chiquita.  (*See* Exs. 2 & 16).

- *Definition of "Witness"*:  RFP No. 1 and Interrogatory Nos. 1 and 2 seek information concerning interactions between Plaintiffs' Counsel and "Witnesses," a term that is defined to include paramilitaries who are potentially knowledgeable about facts relevant to the Chiquita litigation.  (*See* D.E. 785-1, at 11-12, 26.)  The discovery responses served by the *Valencia* Plaintiffs are unclear as to whether they have provided responsive material regarding all such Witnesses, or whether they have relied on a narrower definition than the one set forth in Chiquita's requests.  (*See* D.E. 769, at 4-5; D.E. 770, at 4.)  Despite multiple inquiries from counsel for Chiquita, counsel for the *Valencia* Plaintiffs have failed to clearly answer this question.  (*See* Exs. 2 & 16).

- *Discovery requests limited to witnesses in this case*:  The Court overruled Plaintiffs' objections to requests that specifically sought information concerning Plaintiffs' counsel's interactions with "Witnesses," but narrowed those requests seeking information regarding interactions with paramilitaries generally to apply only to individuals who are a "prospective witness," "potential witness," "witness . . . in this case," or "potential deponent."  (D.E. 797, at 4-5, 7, 9-11.)  Chiquita has asked Plaintiffs to confirm that they are interpreting the Court's ruling as limiting these discovery requests to documents and information concerning "Witnesses," as that term is defined in Chiquita's discovery requests.  However, the *Valencia* and *Does 1-11* Plaintiffs have refused to answer this straightforward question about how they are interpreting the Court's limitation, preventing Chiquita from determining whether their discovery responses are complete.  *See* Exs. 2-3, 15-16.

Finally, the Court should order the *Valencia* Plaintiffs to serve amended responses to

Chiquita's discovery requests that clarify:

- *Whether they have produced all documents responsive to RFP No. 1*:  The *Valencia* Plaintiffs' supplemental discovery responses stated that responsive documents were "available for inspection and copying" (*see* D.E. 801), but they later took the position that all responsive documents had been attached to their court filing.  (*See* Ex. 16.)  The *Valencia* Plaintiffs, however, did not attach agreements with Blanca Hartsuiker or Lainez

---

[18]      *See, e.g.*, D.E. 765, at 5 (*Does 1-144* Plaintiffs); D.E. 769, at 3-4 (*Valencia* Plaintiffs); D.E. 772-1, at 8-9 (*Does 1-11* Plaintiffs); D.E. 774, at 16 (*Does 1-888* Plaintiffs); D.E. 777-1, at 7 (*Montes* Plaintiffs).

[19]      Not sustaining objections to the term "Plaintiffs' Counsel" for RFP Nos. 1, 3, 5, and 9 and Interrogatory Nos. 1, 2, 4-9.

& Asociados, to whom they apparently paid over $108,000 and $30,000, respectively. (*See* D.E. 801-1.)

- *Whether their original identification of legal proceedings and investigations in response to Interrogatory No. 10 was correct*:  The accuracy of this response was called into question by Plaintiffs' subsequent position that they had no information responsive to the Request.  (*Compare* D.E. 769, at 7 *with* D.E. 801, at 2.)

## CONCLUSION

For the foregoing reasons, the Court should order the above-captioned Plaintiffs to (1) produce, within 72 hours, documents and information regarding paramilitary witness payments that they have withheld in violation of this Court's May 5, 2015 Order, (2) answer, within 72 hours, certain questions regarding the sufficiency of their discovery responses that they have thus far failed to answer, and (3) reimburse Chiquita for the fees and costs incurred in preparing this motion.  The Court should also order Mr. Collingsworth to produce information regarding the loss of certain email records.

## Certificate of Good Faith Conference

Undersigned counsel certify that counsel for Chiquita have conferred with counsel for Plaintiffs in the above-captioned actions concerning the deficiencies in their discovery responses that are detailed in Section I and III above, but has been unable to resolve these issues. Undersigned counsel additionally certify that counsel for Chiquita have attempted to confer with Mr. Collingsworth regarding the missing e-mails issue referenced in Section II above — which came to counsel's attention today — by sending him an e-mail with Chiquita's position earlier today.  Mr. Collingsworth has not yet responded.  Given the approaching Colombian depositions and the time that has elapsed from the date the Court had previously ordered Plaintiffs to produce responsive information and documents, Chiquita has addressed the issue in the instant motion.

Dated: July 1, 2015                    Respectfully submitted,

John E. Hall                           ___/s/ Robert W. Wilkins_____
Shankar Duraiswamy                     Sidney A. Stubbs (Fla. Bar No. 095596)
José E. Arvelo                         Robert W. Wilkins (Fla. Bar No. 578721)
COVINGTON & BURLING LLP                rwilkins@jones-foster.com
One CityCenter                         JONES, FOSTER, JOHNSTON & STUBBS,
850 Tenth St. NW                       P.A.
Washington, D.C. 20001                 505 South Flagler Drive, Suite 1100
Telephone: (202) 662-6000              West Palm Beach, Florida 33401
Fax: (202) 662-6291                    Telephone: (561) 659-3000
                                       Fax: (561) 650-0412
Jonathan M. Sperling
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Telephone: (212) 841-1000              *Counsel for Chiquita Brands International, Inc.*
Fax: (212) 841-1010                    *and Chiquita Fresh North America, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on this 1st day of July, 2015.  I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF, and in accordance with the Court's First Case Management Order ("CMO") and the June 10, 2008 Joint Counsel List filed in accordance with the CMO.

By:     /s/ Robert W. Wilkins
        Fla. Bar No. 578721