UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-01916-MD-MARRA/JOHNSON

IN RE: CHIQUITA BRANDS
INTERNATIONAL, INC. ALIEN
TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION
_____/

This Document Relates to:

ATS ACTIONS

08-80421-CIV-MARRA
08-80465-CIV-MARRA
_____/

## NOTICE OF FILING CORRECTED VERSION OF ECF NO. 911

The undersigned counsel for defendant Carla A. Hills, in her capacity as the personal representative of Mr. Hills' estate ("Estate"), hereby files the attached corrected version of ECF No. 911, which is the Estate's motion to dismiss the claims alleged against the Estate. The attached version is identical to ECF No. 911, other than the final adjustment to line spacing that the undersigned inadvertently omitted and revisions to related internal page number references.

Respectfully submitted,

Dated: October 12, 2015          /s/ Robert D. W. Landon, III
Miami, Florida                   Robert D. W. Landon, III
                                 Fla. Bar No. 961272
                                 rlandon@knpa.com
                                 Giselle S. Guerra
                                 Fla. Bar No. 0100600
                                 gguerra@knpa.com
                                 KENNY NACHWALTER, P.A.
                                 201 South Biscayne Boulevard
                                 Suite 1100, Miami Center
                                 Miami, FL 33131-4327
                                 Telephone: (305) 373-1000
                                 Facsimile: (305) 372-1861

                                 AND

K. Lee Blalack, II*
Tenn. Bar No. 017261
lblalack@omm.com
Anton Metlitsky*
N.Y. Bar No. 4383527
ametlitsky@omm.com
Dimitri D. Portnoi*
Cal. Bar No. 282871
dportnoi@omm.com
O'Melveny &Myers LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 (fax)

*Admitted Pro Hac Vice

Attorneys for Carla M. Hills, as the Personal
Representative of the Estate of Roderick M. Hills, Sr.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY the foregoing document was filed with the Clerk of the Court using CM/ECF on this 12th day of October, 2015.  I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF, and in accordance with the Court's First Case Management Order ("CMO") and the June 10, 2008 Joint Counsel List filed in accordance with the CMO.

/s/ Robert D.W. Landon, III
Robert D.W. Landon, III

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  08-01916-MD-MARRA/JOHNSON

IN RE:  CHIQUITA BRANDS
INTERNATIONAL, INC. ALIEN
TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION
_____/

This Document Relates to:

ATS ACTIONS

08-80421-CIV-MARRA
08-80465-CIV-MARRA
_____/

**MOTION TO DISMISS OF DEFENDANT CARLA A. HILLS, AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF RODERICK M. HILLS, SR., UNDER
FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2), AND 12(b)(6) AND FOR
*FORUM NON CONVENIENS* AND INCORPORATED MEMORANDUM OF LAW**

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................... 1

BACKGROUND ...................................................................................................... 2

ARGUMENT ........................................................................................................... 5

I.     THIS COURT LACKS JURISDICTION OVER ANY ACTION
AGAINST THE ESTATE ............................................................................ 5

II.    THE ACTIONS AGAINST THE ESTATE SHOULD ALSO BE
DISMISSED ON PRUDENTIAL GROUNDS ........................................... 7

      A.      The Suits Against the Estate Are Prudentially Moot ................................ 7

      B.      The Court Should Exercise Its Discretion to Dismiss Plaintiffs'
Actions As Improperly Substituted Under Rule 25 .................................. 9

III.   THE TVPA CLAIMS AGAINST THE ESTATE MUST BE DISMISSED ........ 10

      A.      The TVPA Does Not Permit Actions Against Estates or Legal
Representatives ........................................................................................ 10

      B.      The Sparse Allegations Against Mr. Hills Cannot Support a TVPA
Claim ....................................................................................................... 11

           1.      The Complaints Fail to Allege the Requisite *Mens Rea* of
Mr. Hills ...................................................................................... 12

           2.      The Complaints Fail to Allege That Mr. Hills Provided
"Substantial Assistance" .............................................................. 14

           3.      The Complaints Fail to Allege That Mr. Hills Conspired
with the AUC ................................................................................ 15

IV.   THE COLOMBIAN LAW CLAIMS CANNOT PROCEED AGAINST
AN ESTATE ................................................................................................ 16

CONCLUSION ...................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

**CASES**

Aim Bus. Capital, L.L.C. v. Reach Out Disposal L.L.C.,
No. 6:13-cv-00241, 2015 WL 1208587 (W.D. La. Mar. 16, 2015) ........................................ 9

Ali v. Cangemi,
419 F.3d 722 (8th Cir. 2005) ...................................................................................... 7

Ashcroft v. Iqbal,
556 U.S. 662 (2009) .......................................................................................... 14, 15

Ashley v. Ill. Cent. Gulf R.R. Co.,
98 F.R.D. 722 (S.D. Miss. 1983) ................................................................................. 9

Bentley v. Bank of Am., N.A.,
773 F. Supp. 2d 1367 (S.D. Fla. 2011) ....................................................................... 12

Bonner v. City of Pritchard,
661 F.2d 1206 (11th Cir. 1981) ................................................................................... 5

Cabello v. Fernandez-Larios,
402 F.3d 1148 (11th Cir. 2005) ................................................................................. 15

Chamber of Commerce v. U.S. Dep't of Energy,
627 F.2d 289 (D.C. Cir. 1980) .................................................................................... 7

Cox v. Roth,
348 U.S. 207 (1955) ............................................................................................ 10, 11

Cuba R.R. Co. v. Crosby,
222 U.S. 473 (1912) .............................................................................................. 16

Damiano v. FDIC,
104 F.3d 328 (11th Cir. 1997) .................................................................................... 9

Doe v. Drummond,
782 F.3d 576 (11th Cir. 2015) .............................................................................. 11, 14

Doe v. Exxon Mobil Corp.,
69 F. Supp. 3d 75 (D.D.C. 2014) ............................................................................... 16

Doe v. Nestle, S.A.,
748 F. Supp. 2d 1057 (C.D. Cal. 2010) ....................................................................... 14

Halberstam v. Welch,
705 F.2d 472 (D.C. Cir. 1983) .................................................................................. 14

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*In re AOV Indus., Inc.,*
792 F.2d 1140 (D.C. Cir. 1986) ................................................................. 8

*Ingaseosas Int'l Co. v. Aconcagua Investing, Ltd.,*
479 F. App'x 955 (11th Cir. July 5, 2012) ................................................ 7

*Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers &*
*Helpers v. Kelly,*
815 F.2d 912 (3d Cir. 1987) ...................................................................... 7

*Kabbaj v. Obama,*
568 F. App'x 875 (11th Cir. 2014) .......................................................... 12

*Nat'l Adver. Co. v. City of Miami,*
402 F.3d 1335 (11th Cir. 2005) ................................................................. 7

*Ransom v. Brennan,*
437 F.2d 513 (5th Cir. 1971) ................................................................. 5, 6

*Robertson v. Wegmann,*
436 U.S. 584 (1978) ................................................................................ 10

*S. Miami Holdings LLC v. FDIC,*
No. 10-22032-cv, 2012 WL 4644716 (S.D. Fla. July 26, 2012) ............... 7

*W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.,*
287 F. App'x 81 (11th Cir. 2008) ........................................................... 12

**STATUTES**

28 U.S.C. § 1350 note, § 2(a)(2) ................................................................ 11

42 U.S.C. § 1983 ....................................................................................... 10

42 U.S.C. § 1988(a) .................................................................................. 10

D.C. Code § 11-2101 ................................................................................... 4

D.C. Code § 20-101(a) ................................................................................. 4

D.C. Code § 20-735(a) ................................................................................. 8

D.C. Code § 20-903(a) .............................................................................. 2, 8

D.C. Code § 20-908(a) ......................................................................... 4, 8, 10

iii

## TABLE OF AUTHORITIES
### (continued)

Page

**OTHER AUTHORITIES**

3 Ved P. Nanda & David K. Pansius, *Litigation of International Disputes in U.S. Courts* § 18:13 (Westlaw 2014) .......................................................................................... 16

9A Wright et al., *Federal Practice and Procedure* § 2447 (3d ed. 1998) ..................................... 16

**RULES**

D.C. Super. Ct. R. Civ. P. 25(a)(1) ................................................................ 6

D.C. Super. Ct. R. Civ. P. 4(m) ................................................................... 6

D.C. Super. Ct. R. Probate Div. 407(a) ......................................................... 4

Fed. R. Civ. P. 12(b)(6) ............................................................................ 2

Fed. R. Civ. P. 25 ........................................................................... passim

Fed. R. Civ. P. 25 advisory committee's notes ................................................. 9

Fed. R. Civ. P. 25(a)(1) ..................................................................... 3, 5, 9

Fed. R. Civ. P. 25(a)(3) ..................................................................... 3, 5, 9

Fed. R. Civ. P. 4 ......................................................................... 1, 3, 5, 7

Fed. R. Civ. P. 4(d) ................................................................................ 5

Fed. R. Civ. P. 4(d)(1) ............................................................................. 5

Fed. R. Civ. P. 4(d)(4) ............................................................................. 5

Fed. R. Civ. P. 5 ................................................................................... 5

Fed. R. Civ. P. 8 .................................................................................. 12

N.J. R. 4:34-1(b) ................................................................................... 6

N.J. R. 4:4-1 ....................................................................................... 6

## INTRODUCTION

Roderick M. Hills, Sr., who was named as a defendant in two of the actions in this multi-district litigation, passed away on October 29, 2014. Mr. Hills was domiciled in the District of Columbia at the time of his death. On March 3, 2015, Carla A. Hills, in her capacity as the personal representative of Mr. Hills' estate (the "Estate"), filed in this Court a suggestion of death under Federal Rule of Civil Procedure 25. That Rule requires a plaintiff to file a motion to substitute the estate as a party within 90 days of the suggestion of death (*i.e.*, June 1), and to serve the motion, together with a notice of hearing, on non-parties as provided in Rule 4. Also on March 3, the Estate sent to plaintiffs' counsel in the two actions in which Mr. Hills had been a party a notice to known creditors pursuant to the Probate Code of the District of Columbia. That notice instructed counsel to serve a verified claim on the Estate and on the Register of Wills of the District of Columbia no later than June 1, 2015, the deadline for presenting a claim under the D.C. Probate Code.

Plaintiffs did not comply with the deadlines set forth in the Federal Rules of Civil Procedure or in the D.C. Probate Code. On June 1, 2015, plaintiffs filed a motion in this Court to substitute the Estate for Mr. Hills. That motion, however, did not include a notice of hearing as required by Rule 25, and it was not timely served on the Estate's personal representative, Ms. Hills. Further, plaintiffs did not timely file a verified claim with the Estate, as required by the D.C. Probate Code. On July 21, 2015, nearly two months after the June 1 deadline, plaintiffs' counsel in one of the actions (the "New Jersey action") presented a verified claim to the Estate. That claim was denied on July 31, 2015 as untimely (among other reasons). Plaintiffs in the other action (the "D.C. action") have never presented a verified claim to the Estate.

The plaintiffs' actions against the Estate must be dismissed for several reasons. As an initial matter, plaintiffs' failure to timely serve the Estate with its substitution motion as required by Rule 25 deprives this Court of personal jurisdiction over the Estate. And even if the Court possessed jurisdiction, it should dismiss the complaints as to the Estate for prudential reasons.

The complaint must also be dismissed on the merits. The Estate joins in full the Individual Defendants' Joint Consolidated Motion to Dismiss. ECF No. 732. As explained in that motion, a New Jersey court cannot exercise personal jurisdiction over an estate constituted

in the District of Columbia. *Id.* at 11-12. All state law and Alien Tort Statute claims must be dismissed on extraterritoriality grounds. *Id.* at 12-13. The Torture Victim Protection Act ("TVPA") claim must be dismissed for numerous reasons, including that: (i) plaintiffs failed to exhaust administrative remedies; (ii) the TVPA does not authorize secondary liability; (iii) many of the claims are time-barred; and (iv) plaintiffs have not come close to pleading a TVPA claim. *Id.* at 13-35. As for their Colombian law claims, those filed in the District of Columbia are time-barred, *id.* at 35-37, and the Colombian law claims in all events fail to state a claim under Rule 12(b)(6). *Id.* at 37-39. The Estate also joins in full the motion to dismiss for *forum non conveniens* filed by Chiquita. ECF No. 741.[1]

In addition to these grounds for dismissal on the merits that are shared by all defendants, there are three further grounds for dismissal on the merits unique to the Estate. First, the TVPA claims do not survive a defendant's death, and thus cannot be brought against the Estate. Second, the complaints fail to plausibly state a TVPA claim against Mr. Hills. And third, the complaints do not allege that Colombian law authorizes the survival of any Colombian law claims after Mr. Hills' death.

## **BACKGROUND**[2]

Mr. Hills passed away on October 29, 2014. ECF No. 725. On November 20, 2014, Carla A. Hills, Mr. Hills' widow, was appointed the personal representative of Mr. Hills' Estate by the Probate Division of the Superior Court of the District of Columbia. Pursuant to D.C. law, a notice of appointment of personal representative was first published in two newspapers, the National Law Journal and the Washington Law Reporter, on December 1, 2014. *See* Declaration of Dimitri D. Portnoi ("Portnoi Decl."), Ex. A (Notice of Appointment). Under D.C. law, that publication of notice commenced a six-month clock for creditors to file with the Estate and the Register of Wills any verified claims. D.C. Code § 20-903(a). On March 3, 2015, after Ms. Hills was fully apprised of the nature and posture of this litigation, the Estate filed in this Court a suggestion of death pursuant to Rule 25 of the Federal Rules of Civil Procedure. ECF

---

[1] In joining the motion to dismiss for *forum non conveniens*, the Estate also notes that it has executed a declaration consenting to jurisdiction in Colombia in the same manner as the other individual defendants. *See* Portnoi Decl., Ex. J (Declaration of Carla A. Hills).

[2] The Estate will not repeat the extensive background provided in the motions filed by the Individual Defendants and Chiquita. *See* ECF No. 741, at 2-8; ECF No. 735, at 3-8. This section sets forth the background relevant only to the Estate.

No. 725.   Also on that date, probate counsel representing the Estate served Notices of Appointment on plaintiffs' counsel in both the New Jersey and D.C. actions.   Portnoi Decl., Exs. B-C (Notices to Creditors).   Those Notices set forth in detail the precise actions that were necessary to preserve a claim against the Estate, including that any claims against Mr. Hills must be presented to the Estate, through its personal representative, and to the Register of Wills, by June 1, 2015, "or be forever barred." *Id.*

On June 1, 2015, plaintiffs in the two actions filed a motion for substitution in this Court under Rule 25(a)(1).   ECF No. 813.   That motion was filed on the last possible day allowed by Rule 25(a)(1).   Although Rule 25(a)(3) requires that such a motion must be *served* pursuant to Rule 4 *together with* a notice of hearing, plaintiffs did not serve the Estate in accordance with that Rule.   *See id.* (certificate of service indicates that service was by ECF only).   On June 17, 2015, litigation counsel for the Estate notified plaintiffs' counsel of this defect.   *See* Portnoi Decl., Ex. D (6/17/2015 Email from Mr. Blalack to Mr. Herz).   On June 23, 2015, counsel for plaintiffs requested that the Estate waive service.   *See* Portnoi Decl., Ex. E (6/23/2015 Email from Mr. Herz to Mr. Blalack).   The next day, counsel for the Estate informed plaintiffs' counsel that the Estate's counsel would accept service of both the motion and the notice of hearing required by Rule 25.   *See* Portnoi Decl., Ex. F (6/24/2015 Email from Mr. Blalack to Mr. Herz).   Nevertheless, plaintiffs did not provide the Estate with the papers necessary to effectuate waiver of service under Rule 4, nor have they effectuated service of process on the Estate in any other permissible way.   *See infra* Part I.   On June 26, 2015, plaintiffs filed a notice of hearing.   *See* Dkt. No. 9:08-cv-80421, ECF No. 230.   The notice of hearing was docketed only in the New Jersey action, and it consequently does not appear on the docket of the multi-district litigation. The notice of hearing correctly stated that under the Local Rules of this Court, the due date for a response to the motion to substitute would be two weeks after the notice of hearing was filed, *i.e.*, July 10.   *Id.*   On July 1, however, this Court granted the motion for substitution, *see* ECF No. 834, before the Estate's response was due.

Plaintiffs also failed to take appropriate action in response to the appointment of Ms. Hills as personal representative of the Estate.   Although plaintiffs' motion for substitution acknowledged that plaintiffs' counsel had received the Notice of Appointment that set forth the June 1 deadline for filing a verified claim in the Probate Division of D.C. Superior Court, ECF No. 813, at 3, neither group of plaintiffs filed such a claim by that date.   It was not until July 21

that plaintiffs' counsel in the New Jersey action presented to the Estate and the Register of Wills a verified claim, which asked that the Estate provide to unnamed persons the amount of $18.5 billion. *See* Portnoi Decl., Ex. G (Verified Claim). On July 31, probate counsel notified plaintiffs' counsel that the verified claim was disallowed on, *inter alia*, timeliness grounds. *See id.* Ex. H (Disallowance of Claim). That disallowance also informed plaintiffs' counsel of the additional steps that must be taken in the Probate Division of D.C. Superior Court should they wish to pursue this claim further. *Id.* ("If your claim has been disallowed in whole or in part, it will be barred to the extent of its disallowance unless you file a verified complaint with the Probate Division of this Court within sixty days after the date of mailing of the notice disallowing the claim pursuant to D.C. Code, sec. 20-908(a).").

Nevertheless, plaintiffs in the New Jersey action have not pursued the verified claim in D.C. Superior Court. Instead, on September 29, 2015, those plaintiffs filed a new action in *federal* district court in the District of Columbia, Portnoi Decl., Ex. I (Federal Probate Complaint). They did so even though D.C.'s Probate Code, Rules, and the notice of disallowance of claim all require that any action challenging the notice of disallowance of claim be filed in the Probate Division of D.C. Superior Court. *See* D.C. Code § 20-908(a) ("If the claim is disallowed in whole or in part, the claim is forever barred to the extent of the disallowance unless the claimant files a verified complaint in the Court, not later than 60 days after the mailing of the notice disallowing the claim."); *id.* § 20-101(a) (defining "Court" as "the Probate Division of the Superior Court of the District of Columbia"); D.C. Super. Ct. R. Probate Div. 407(a) ("An … action for payment of a claim in accordance with D.C. Code § 20-908 … may be commenced by any party in interest only by filing a verified complaint with the Register of Wills"); D.C. Code § 11-2101 ("Register of Wills" is "an office in the Probate Division of the Superior Court"). That complaint does not allege that the disallowance of claim was improper in any respect.

Plaintiffs in the D.C. action have *never* filed a verified claim with the Estate.

## ARGUMENT

## I.   THIS COURT LACKS PERSONAL JURISDICTION OVER ANY ACTION AGAINST THE ESTATE

Rule 25(a)(3) governs service of a motion for substitution, providing that "[a] motion to substitute, together with a notice of hearing, must be served on … nonparties as provided in Rule 4." Service under Rule 4 "is jurisdictionally rooted." *Ransom v. Brennan*, 437 F.2d 513, 517 (5th Cir. 1971).[3] And service of process under that Rule "is not effectual on an attorney solely by reason of his capacity as attorney." *Id.* at 516. Thus, if the personal representative of an estate is not timely served with a motion to substitute and a notice of hearing, the courts lack personal jurisdiction over that estate. *See id.* at 519 (holding district court had no jurisdiction over executrix who had not been served properly pursuant to Rule 4).

Here, plaintiffs have failed to serve the Estate under Rule 25. When plaintiffs first filed their motion to substitute, they served existing parties under Rule 5 but did not serve the Estate *at all*, let alone under Rule 4, as Rule 25 requires. After the Estate's counsel informed plaintiffs' counsel that the Estate had not been properly served, plaintiffs' counsel sought a waiver of service. But plaintiffs never sought or filed a proper waiver of service under Rule 4(d). To effectively obtain a waiver of service under that Rule, plaintiffs must make a request that includes two copies of a specific waiver form, appended to Rule 4, which informs the defendant of the consequences of waiving and not waiving service. Fed. R. Civ. P. 4(d)(1). Plaintiffs failed to present those forms to the Estate. Moreover, Rule 4 requires that the "plaintiff *file[]* the waiver" with the Court, and only considers the waiver to constitute service "as if a summons and complaint had been served *at the time of filing the waiver*." Fed. R. Civ. P. 4(d)(4) (emphasis added). Neither set of plaintiffs has filed any waiver at all as required by Rule 4(d)(4). Because plaintiffs have failed to comply with the service and waiver requirements of Rule 4, which are made mandatory by Rule 25(a)(3), this Court may not exercise personal jurisdiction over the Estate. *See Ransom*, 437 F.2d at 518 (holding that personal jurisdiction could not be exercised over an executrix unless plaintiff complies with service requirements incorporated into Rule 25).

Nor can plaintiffs attempt to remedy this defective service now. As explained earlier, Rule 25(a)(1) provides that a motion to substitute must be made within 90 days of service of the

---

[3] The decisions of the Fifth Circuit, as that court existed on September 30, 1981, are binding as precedent on all federal courts within the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206 (11th Cir. 1981).

suggestion of death.  For the federal claims raised in the complaints—*i.e.*, claims under the TVPA[4]—the motion must also be served as required by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 25(a)(3) (incorporating Rule 4).  It is less than clear under Rule 25(a)(3), which requires service on non-parties under Rule 4, what the time limit for service is.  But the Court need not decide that question here, because the maximum possible time limit would be 120 days starting from the date the motion to substitute was filed. *See* Fed. R. Civ. P. 25(a)(3); 4(m). More than 120 days have passed since the motion to substitute was filed on June 1, and plaintiffs still have not effected proper service under Rule 4, as required by Rule 25.  *See supra* at 3-4. Plaintiffs' failure to effectuate service of process on the Estate means that the Estate cannot be compelled to defend this action in which it has not been lawfully joined.

The court in *Ransom*, moreover, held that in a diversity case, courts must look to the law of the forum to determine when a motion to substitute must be served (though the procedures for service are still governed by Rule 4 of the Federal Rules of Civil Procedure).  437 F.2d at 520. Thus, unlike the TVPA claims under federal law, *Ransom* requires the Court to look to the law of the forum state to determine whether the claims based on diversity jurisdiction (*i.e.*, the Colombian law claims) should be dismissed.  Here, the Estate is entitled to dismissal for lack of personal jurisdiction of the Colombian law claims, just as it is for the federal claims.

Mr. Hills was sued in an action filed in the District of Columbia and another in New Jersey.  The rules governing motions to substitute in the District of Columbia largely track the Federal Rules, except that in the District of Columbia, the time to serve a complaint under the equivalent to Federal Rule 4 is 60 days rather than 120 days.  D.C. Super. Ct. R. Civ. P. 4(m); 25(a)(1).  Because service has never been properly effectuated and the time limits to do so under D.C. law have long since passed, the Colombian law claims in the D.C. action must be dismissed for lack of personal jurisdiction.

Service was also untimely in the New Jersey action.  The rule governing substitution in New Jersey indicates that service shall be made pursuant to its general service rule. *See* N.J. R. 4:34-1(b).  That rule mandates that an action may be dismissed if "a summons is not issued within 15 days." N.J. R. 4:4-1.  In this case, ninety days passed before the plaintiffs even filed a

---

[4] As explained below, the TVPA does not supply a cause of action against an estate under any circumstances. *See infra* Part III.A.

motion for substitution, and they still have not effectuated service on the Estate as required by Rule 4. There is no lawful basis to conclude that such tardy service would be considered timely in New Jersey. The New Jersey action must accordingly be dismissed for lack of jurisdiction as well.

## II.   THE ACTIONS AGAINST THE ESTATE SHOULD ALSO BE DISMISSED ON PRUDENTIAL GROUNDS

Even if this Court has jurisdiction over the complaints against the Estate, it should dismiss those complaints for the prudential reasons explained below.

### A.   The Suits Against the Estate Are Prudentially Moot

"[P]rudential mootness, '[t]he cousin of the mootness doctrine, in its strict Article III sense, is a melange of doctrines relating to the court's discretion in matters of remedy and judicial administration.'" *Ali v. Cangemi*, 419 F.3d 722, 724 (8th Cir. 2005) (en banc) (quoting *Chamber of Commerce v. U.S. Dep't of Energy*, 627 F.2d 289, 291 (D.C. Cir. 1980)). "Even if a court has jurisdiction under Article III to decide a case, prudential concerns may militate against the use of judicial power, *i.e.*, the court 'should treat [the case] as moot for prudential reasons.'" *Id.* at 724; *see Ingaseosas Int'l Co. v. Aconcagua Investing, Ltd.*, 479 F. App'x 955, 962 (11th Cir. July 5, 2012) (dismissing appeal on prudential mootness grounds); *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1335, 1349 (11th Cir. 2005) ("In some circumstances, although a claim may satisfy constitutional requirements, prudential concerns 'counsel judicial restraint.'"); *S. Miami Holdings LLC v. FDIC*, No. 10-22032-cv, 2012 WL 4644716, at *2 (S.D. Fla. July 26, 2012) ("The Eleventh Circuit also recognizes the doctrine of prudential mootness, which allows courts to apply discretionary factors to determine whether it is appropriate to decline the exercise of judicial power.") (citing *Nat'l Adver.*, 402 F.3d at 1349).

A central question in a prudential mootness analysis is "whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers v. Kelly*, 815 F.2d 912, 915 (3d Cir. 1987). Here, the verified claim filed by the plaintiffs in the New Jersey action was untimely and, for that and other reasons, the verified claim was disallowed. *See supra* at 4. Any verified claim filed today by the plaintiffs in the D.C. action would similarly be untimely and "barred" by the D.C. Probate Code. D.C. Code

§ 20-903(a).   Moreover, the New Jersey plaintiffs have not filed any complaint alleging the disallowance of claim was in any way improper. *See* Portnoi Decl., Ex. I. And the complaint the New Jersey plaintiffs *did* file was filed in the wrong court—the federal court in the District of Columbia, rather than the Probate Division of D.C. Superior Court, *see supra* at 4—so their claim is "forever barred." D.C. Code § 20-908(a).   Plaintiffs are thus unlikely to obtain any meaningful relief, counseling in favor of dismissal under the prudential mootness doctrine.

The case is also prudentially moot because of "common sense or equitable considerations [that] justify a decision not to decide a case on the merits," *In re AOV Indus., Inc.*, 792 F.2d 1140, 1147 (D.C. Cir. 1986)—*viz.*, that plaintiffs have repeatedly failed to follow the procedural requirements set forth in the Federal Rules of Civil Procedure and the D.C. Probate Code.  For one thing, plaintiffs failed to timely serve the Estate or file a notice of hearing with their motion for substitution under Rule 25.  Even if that failure was not jurisdictional, it was still inexcusable. Moreover, plaintiffs failed to timely present verified claims to the Estate or to the Register of Wills in the District of Columbia—indeed, one set of plaintiffs has *still* not done so.  Plaintiffs were given ample notice of this requirement of D.C. probate law, which did not impose any significant burden.  All plaintiffs had to do was file a one-page document in accordance with the specific instructions provided in the notice. Portnoi Decl., Ex. B.

This default is not a mere formality.  As a result of plaintiffs' lack of diligence, the period for filing a claim in the District of Columbia has closed and the assets of the Estate have been distributed to the beneficiaries of the Estate.  D.C. law permits an estate to close six months after the Notice of Appointment was first published and after giving plaintiffs an opportunity to file a claim. D.C. Code § 20-735(a).  Thus, even if plaintiffs could obtain a judgment in this litigation many years from now, allowing this action to go forward would require the Estate to engage in costly, meritless, and needless litigation when the whole point of the deadlines under the D.C. Probate Code is to grant an estate repose—a result directly at odds with allowing the actions against the Estate to continue here.  This case is in the heartland of prudential mootness cases and this action should be dismissed.

**B.    The Court Should Exercise Its Discretion to Dismiss Plaintiffs' Actions As Improperly Substituted Under Rule 25**

For many of the same reasons, the Court should also dismiss these actions for the prudential considerations that underlie Rule 25.[5]   Rule 25 provides that the Court "*may* order substitution." Fed. R. Civ. P. 25(a)(1) (emphasis added).  Such a motion "may be denied by the court in the exercise of a sound discretion" even when (unlike here) it is properly filed and served in compliance with Rule 25. Fed. R. Civ. P. 25 advisory committee's notes.  In *Ashley v. Ill. Cent. Gulf R.R. Co.*, 98 F.R.D. 722 (S.D. Miss. 1983), a motion was made on the 89th day after the suggestion of death. *See id.* at 723.  The court denied the motion, finding that plaintiff's counsel had demonstrated a lack of diligence through the pleadings because he delayed moving in the state court to have an administratrix appointed, waited until the 89th day to file the motion under Rule 25, and failed to file a timely brief in regard to a motion to dismiss. *See id.* at 724.

Here, plaintiffs have demonstrated a similar lack of diligence for the reasons just explained.  On March 3, the Estate filed a suggestion of death in this Court pursuant to Rule 25. Rule 25(a)(3) gave plaintiffs clear instructions on the manner of service of the Estate and also of the requirement to file a notice of hearing.  Notwithstanding, plaintiffs waited until after counsel for the Estate notified them of the defective service to attempt to properly serve the motion to substitute and file the notice of hearing.  And to date plaintiffs have still not effected proper service on the Estate pursuant to Rule 25.  Further, that notice of hearing, which set forth the correct deadline for the Estate to respond, was filed on the docket of only one of the underlying actions, and not the multi-district docket, which resulted in this Court granting the motion before the Estate had filed its response and before service had been properly effected on the Estate under Rule 25, which to date has still not occurred.

Also on March 3, the Estate served on plaintiffs' counsel in both actions the Notice of Appointment.  That Notice gave clear instructions about how and where to present a verified claim and the deadline for doing so.  Portnoi Decl., Ex. B.  Notwithstanding this clear

---

[5] Although the Court granted the Rule 25 motion before the Estate had an opportunity to respond, *see supra* at 3, that decision merely placed the issues related to that motion before the Court on this motion. *Aim Bus. Capital, L.L.C. v. Reach Out Disposal L.L.C.*, No. 6:13-cv-00241, 2015 WL 1208587, at *3 (W.D. La. Mar. 16, 2015) (holding that granting motion to substitute would present issues raised by non-movant for subsequent motion to dismiss).  Given that the Estate did not have a full opportunity to respond to the motion to substitute, the Court may, in the alternative, treat this motion as one for reconsideration. *See Damiano v. FDIC*, 104 F.3d 328, 332 n.4 (11th Cir. 1997) (district court has discretion to retitle motions as motions for reconsideration or motions for relief from judgment).

requirement, plaintiffs' counsel waited until seven weeks after the period designated by D.C. law and the Notice to submit a verified claim for just *one* of the plaintiffs' actions, which was disallowed on, *inter alia*, timeliness grounds.  When that document was disallowed, the Estate again gave clear instructions regarding how to comply with the District of Columbia's clear statutory requirements for filing a complaint to challenge the disallowance. Portnoi Decl., Ex. H. Again, plaintiffs' counsel failed to follow these instructions and filed the challenge in the wrong court—the federal district court, Portnoi Decl., Ex. I—even though the notice, D.C.'s probate statute, and D.C.'s probate rules all require filing in D.C.'s Probate Division.  Their claim is thus "forever barred" under the applicable statute of repose.  D.C. Code § 20-908(a).

Plaintiffs failed to proceed in a diligent fashion when they did not timely or properly serve the motion for substitution, did not file and serve the notice of hearing required by Rule 25, did not timely file a verified claim with the Estate, and did not timely file a complaint to challenge the earlier disallowance in the correct court.  There is simply no basis to allow plaintiffs to substitute the Estate in those circumstances.

## III.    THE TVPA CLAIMS AGAINST THE ESTATE MUST BE DISMISSED

Plaintiffs' TVPA claims must be dismissed against the Estate for the reasons presented in the Individual Defendants' motion to dismiss.  *See supra* at 1-2.  Those claims must also be dismissed for separate reasons unique to the Estate.

### A.    The TVPA Does Not Permit Actions Against Estates or Legal Representatives

The general federal common law rule will "abat[e] actions on the death of the tortfeasor." *Cox v. Roth*, 348 U.S. 207, 210 (1955).  When Congress has intended that an action survive the death of a defendant, it has said so explicitly.  For example, Congress provided that railroad employees' claims under the Federal Employers' Liability Act survive the defendants' demise. *See id.* at 208-09.  So, too, with claims under the Jones Act.  *Id.* at 209-10.  And in civil-rights actions brought under 42 U.S.C. § 1983, Congress explicitly provided that state rules of survivorship would apply.  *See* 42 U.S.C. § 1988(a); *see also Robertson v. Wegmann*, 436 U.S. 584, 590-91 (1978).

The TVPA, in contrast, is silent on the survivorship of a claim upon the death of a defendant.  Thus, the common law rule precludes any TVPA action upon the defendant's death.

*See Cox*, 348 U.S. at 210.   That conclusion is reinforced by the fact that Congress *did* specifically provide that TVPA actions would survive a *plaintiff's* death—the Act states that a defendant may be liable "for damages to the [victim's] legal representative, or to any person who may be a claimant in an action for wrongful death." 28 U.S.C. § 1350 note, § 2(a)(2).   Thus, the TVPA's specific provision for survival of a claim after a *plaintiff's* death combined with silence as to survival after a *defendant's* death confirms what the federal common law rule already made clear—TVPA claims do not survive a defendant's death. The TVPA claims against the Estate in this case must therefore be dismissed.

### B.    The Sparse Allegations Against Mr. Hills Cannot Support a TVPA Claim

Plaintiffs' allegations in any event fail to state a claim against Mr. Hills.  To support their claims for aiding-and-abetting liability under the TVPA, plaintiffs must allege individualized facts showing that Mr. Hills knowingly *and* substantially assisted principal violations by the Autodefensas Unidas de Colombia ("AUC").  *Doe v. Drummond*, 782 F.3d 576, 608 (11th Cir. 2015); *see also* ECF No. 903 at Joint Reply at 17-18 (hereinafter "Joint Reply").  Plaintiffs must allege more than Mr. Hills' knowledge of the "general presence of the AUC and the AUC's violent methods." *Drummond*, 782 F.3d at 604-05.  They must allege that Mr. Hills had actual knowledge that he was assisting the torture and killing of Colombian civilians in Colombia's banana-growing regions.  *See* ECF No. 412 at 69 (hereinafter "MTD Order").  In addition, plaintiffs' aiding and abetting claims require factual allegations that Mr. Hills substantially assisted the AUC's commission of the alleged offenses, and their conspiracy claims require allegations that Mr. Hills entered into an "agreement" with the AUC to torture and kill civilians. Joint Br. at 34-35; *see also* MTD Order at 68-69.

Plaintiffs' sparse and conclusory allegations against Mr. Hills are wholly insufficient to state a claim against him under the TVPA.  The complaints do not allege that Mr. Hills learned of any of the underlying conduct before April 23, 2002.  D.C. TAC ¶ 2037; N.J. SAC ¶ 88. Other than biographical information regarding his tenure on the Chiquita Board of Directors, the complaints contain scant allegations directed specifically at Mr. Hills.  Each complaint mentions him by name in only six paragraphs. D.C. TAC ¶¶ 1, 2037, 2053-55, 2205; N.J. SAC ¶¶ 18, 27, 29, 86, 88, 118.  Several of these allegations must be disregarded because they contain nothing but broad, conclusory assertions regarding all of Chiquita's "management and other personnel,"

"senior executives," and "high-ranking officers, director[s] and employees." *E.g.*, N.J. SAC ¶¶ 29, 86. In other instances, the complaints refer generically to all "Individual Defendants"— again grouping Mr. Hills and multiple other individuals who worked at Chiquita at various points over time. *E.g.*, D.C. TAC ¶ 2230 ("Chiquita (pursuant to review and approval by the Individual Defendants) began funding the AUC at its outset ….").  Such allegations cannot survive a motion to dismiss. *See Kabbaj v. Obama*, 568 F. App'x 875, 880 (11th Cir. 2014) (complaint fails to satisfy Rule 8 where it "refers to the defendants collectively"); *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 F. App'x 81, 86 (11th Cir. 2008) (similar).

The few individualized allegations against Mr. Hills vaguely assert that he approved the company's payments to violent extremists in Colombia, approved unspecified procedures to "disguise" the payments, and discussed the company's payments with Chiquita's outside counsel and the U.S. Department of Justice ("DOJ"), including in connection with the company's disclosure of the payments to DOJ.  N.J. SAC ¶¶ 19, 88; D.C. TAC ¶¶ 2053-55.  Plaintiffs do not (and cannot) allege, as this Court held they must, any facts whatsoever that could establish Mr. Hills at that time *knew* that the AUC was torturing and killing civilians.  *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1373 (S.D. Fla. 2011) (plaintiffs must "allege facts showing knowledge or intent as to each Defendant").  Indeed, the complaints allege that the AUC was formed to engage in violence against armed guerrilla groups as part of a civil war, N.J. SAC ¶¶ 37-43, D.C. TAC ¶¶ 2059-61, not against civilians.  The idea that Mr. Hills knew that the AUC had tortured and killed civilians and nonetheless rendered substantial assistance is absurd. Indeed, plaintiffs' allegations are fully consistent with an innocent and completely lawful explanation—*i.e.*, that Mr. Hills' alleged actions were motivated by the concern that a failure to make payments to Colombian extremists would result in violence against Chiquita's Colombian employees.  In addition, plaintiffs do not (and cannot) allege any facts showing that Mr. Hills offered "substantial assistance" to the AUC or entered into any kind of agreement with the AUC. Accordingly, the TVPA claims must be dismissed under Rule 8.

### 1.  The Complaints Fail to Allege the Requisite *Mens Rea* of Mr. Hills

The complaints do not, other than in the most generic and conclusory terms, allege knowledge on the part of Mr. Hills.  Mr. Hills' alleged review and approval of the payments to the AUC—presumably at some point in time after he learned about the company's payments in

12

2002 or later, D.C. TAC ¶ 2037 (alleging Mr. Hills "learned of Chiquita's payments to the AUC, at the latest, [on] April 23, 2002")—does not even allege a general awareness of the nature of the AUC's activities in Colombia, let alone actual knowledge that the AUC was engaged in the torture and killing of civilians.

Plaintiffs' vague allegations that Mr. Hills "reviewed," "authorized," or "approved" payments or "implemented" procedures for "disguising" payments do nothing to support an inference of Mr. Hills' actual knowledge. N.J. SAC ¶¶ 18, 86; D.C. TAC ¶¶ 2037. Plaintiffs do not allege any facts regarding what procedures allegedly were designed or how they disguised payments. More important, the most that can be inferred from these allegations is that Mr. Hills helped to ensure the confidentiality of payments; there is no plausible inference that Mr. Hills knew that such payments would assist the AUC in torturing or killing Colombian civilians.

While the complaints make vague allegations that Mr. Hills knew of payments to the AUC, and that "Chiquita's senior executives knew that ... it was a violent, paramilitary organization led by Carlos Castaño," N.J. SAC ¶¶ 18, 86, they do not even make a conclusory allegation that Mr. Hills knew of the AUC's activities. Such a conclusory, collective allegation is not entitled to an assumption of truth, and even if it were, Mr. Hills' general awareness that the AUC was a quasi-military militia fighting armed rebels does not equate to actual knowledge that the AUC was killing and torturing Colombian *civilians*. *See* Joint Reply 17. Similarly, the allegation that Mr. Hills, upon learning about payments in 2002, acknowledged that the company "appear[ed] to [be] committing a felony," D.C. TAC ¶ 2037, does not suggest that Mr. Hills had even a general awareness of the nature of the AUC's activities in Colombia, let alone actual knowledge that the AUC was engaged in the torture and killing of Colombian civilians. That Mr. Hills stated, allegedly, that a felony may have occurred says nothing of what sort of felony, much less a specific felony concerning the killing and torturing of civilians. Indeed, it is far more plausible that Mr. Hills, if he made the statement at all, was referring to a U.S. law governing corporate governance or activities, and not a Colombian or international law governing the AUC's activities in Colombia.

Finally, the allegations that Mr. Hills discussed the legality of payments with the Justice Department and internally within the company do not even relate to the conduct giving rise to the TVPA claim, let alone satisfy a *mens rea* standard. *See, e.g.*, D.C. TAC ¶¶ 2053 (alleging that

Mr. Hills "misrepresented the law and facts to the DOJ officials"), 2054 (alleging that Mr. Hills "took the position that DOJ understood that the payments would have to continue"); N.J. SAC ¶ 118 (alleging that Mr. Hills "met with Justice Department officials, who told [Chiquita] the payments were illegal"). Even if it were true, and it is not, that Mr. Hills misrepresented the law to Justice Department officials or misrepresented the content of meetings to other Chiquita employees, such allegations do not even assert that he did so with knowledge that the AUC was killing and torturing Colombian civilians.

Even if plaintiffs' allegations could be construed as consistent with the theory of actual knowledge, those allegations would still fail to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (allegations that are "merely consistent with a defendant's liability" or establish a "mere possibility that a defendant has acted unlawfully" are insufficient). Rather, the allegations are at least as consistent with an "alternative explanation"—that Mr. Hills acted based on a clear threat of violence that the AUC posed to Chiquita's Colombian employees if the payments were not made and that he knew, at most, that the payments violated U.S. law but not that the payments would assist the AUC in torturing or killing civilians. *See id.* at 680-81 (although allegations were "consistent with" plaintiffs' theory that defendants' conduct was motivated by a discriminatory purpose, they failed to state a claim because they were also consistent with an "obvious alternative explanation" for defendants' behavior).

### 2.   The Complaints Fail to Allege That Mr. Hills Provided "Substantial Assistance"

To state aiding and abetting claims against Mr. Hills, plaintiffs must allege that Mr. Hills, by himself, provided substantial assistance to the AUC. *See* Joint Reply 17. To qualify as "substantial," a defendant's assistance must be "integral to the wrongful [conduct]." *Halberstam v. Welch*, 705 F.2d 472, 484 (D.C. Cir. 1983); *see also Drummond*, 782 F.3d at 608 & n.44 (holding that Eleventh Circuit has adopted *Halberstam* standard for aiding-and-abetting liability). This Court has already held that funding alone does not qualify as such substantial assistance: "'[M]erely supplying a violator of the law of nations with funds as part of a commercial transaction, without more, cannot constitute aiding and abetting a violation of international law.'" MTD Order at 77 (quoting *Doe v. Nestle, S.A.*, 748 F. Supp. 1057, 1099 (C.D. Cal. 2010)). While the Court found that allegations against Chiquita satisfied this element, it did so based on allegations that do not apply to Mr. Hills: namely, allegations that Chiquita

(1) "'engage[d] in additional assistance beyond financing,'" such as facilitating arms sales; and (2) acted for reasons "gratuitous or unrelated to any commercial purpose," , that the company "specifically intended" that the payments "assist the AUC's military campaign against the FARC." MTD Order at 77-78.

Here, there are no alleged facts suggesting that Mr. Hills provided any assistance "beyond financing." MTD Order at 77. Here, plaintiffs allege *no* facts showing that Mr. Hills authorized or was even aware of alleged arms shipments and *no* facts regarding his actual knowledge of the AUC's conduct in torturing or killing civilians, much less that he intended or hoped to assist the AUC's military campaign against the FARC. Furthermore, there is not even the vaguest explanation of how Mr. Hills' supposed assistance was integral to the torture or killing of any individual plaintiff or decedent.

### 3. The Complaints Fail to Allege That Mr. Hills Conspired with the AUC

To state a conspiracy claim against Mr. Hills, plaintiffs must allege that he individually entered into an "agreement" with the AUC to torture and kill Colombian civilians. MTD Order at 79; *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1159 (11th Cir. 2005). While the Court found that allegations against Chiquita sufficed because they specified "facts regarding dates, attendees, and discussions of meetings between Chiquita and the AUC" and "facts regarding the terms of the agreements reached," MTD Order at 80, plaintiffs allege no such facts as to Mr. Hills. Neither complaint alleges any agreement between Mr. Hills and the AUC. Neither alleges that Mr. Hills ever went to Colombia, telephoned Colombia, or communicated with any member of the AUC at any time or place.

There are certain allegations that the undifferentiated "Individual Defendants" "review[ed] and approv[ed]" Chiquita's activities, D.C. TAC ¶¶ 2227-32, 2270, and certain other allegations that all defendants conspired with one another and with unnamed Doe defendants, N.J. SAC ¶ 27. These allegations are virtually identical to the conclusory allegations that the Supreme Court rejected in *Iqbal*—reciting legal standards or applying labels to wide swathes of individuals. *See* 556 U.S. at 680-81 (rejecting allegations that the Attorney General was the "principal architect" of a challenged policy and that the FBI director was "'instrumental' in adopting and executing" it). There are also impermissibly vague and undifferentiated allegations as to a group of defendants. *See supra* at 11-12. But plaintiffs do not allege that Mr. Hills

approved any meeting between Chiquita and the AUC discussing any AUC conduct, or that he approved any activity by the AUC anywhere in Colombia, much less any of the alleged torture and killing that forms the basis of plaintiffs' TVPA claims. Plaintiffs allege, in sum, no facts establishing any agreement between Mr. Hills and the AUC, so any TVPA claim premised on conspiracy must be dismissed.

## IV.   THE COLOMBIAN LAW CLAIMS CANNOT PROCEED AGAINST AN ESTATE

As a general rule, "the party who has the affirmative burden of proof on an issue of foreign law loses if he fails to prove that law." 9A Wright et al., *Federal Practice and Procedure* § 2447 (3d ed. 1998). A plaintiff asserting a foreign law claim, therefore, "must *allege* and prove" that he is asserting a cognizable cause of action under the law of the foreign jurisdiction. *Cuba R.R. Co. v. Crosby*, 222 U.S. 473, 479 (1912) (emphasis added); 3 Ved P. Nanda & David K. Pansius, *Litigation of International Disputes in U.S. Courts* § 18:13 (Westlaw 2014) ("A failure to prove foreign law is viewed as the failure to prove an essential element of the case, at least where the cause of action is dependent on foreign law.").

Plaintiffs may not rest on a conclusory assertion in a brief that they have a cause of action against an estate that survives the death of the alleged tortfeasor. Rather, they must allege and prove the source and elements of their foreign law claims such that the Court can conclude that plaintiffs have stated a viable claim under Colombian law. *See Doe v. Exxon Mobil Corp.*, 69 F. Supp. 3d 75, 104 (D.D.C. 2014) ("It is the plaintiff's responsibility to prove the existence of their causes of action under Indonesian law. [Citation omitted.] While the Court is authorized to conduct independent research into foreign law, if the parties fail to provide an adequate statement of the law, the court is not obligated to independently remedy the deficiency." (citation and internal quotation marks omitted)). The two complaints lack any allegation that the specific Colombian law claims asserted originally against Mr. Hills survive after his death under established Colombian law. The complaints cite no authority or legal basis under Colombian law to support their contention that these Colombian law claims can now be pursued against the Estate. Without such an allegation, plaintiffs have failed to carry their burden to plead and prove the existence of any cause of action against the Estate under Colombian law. The Colombian law claims thus must be dismissed.

16

## CONCLUSION

For the reasons set forth above, as well as in the Individual Defendants' Joint Brief and Joint Reply and in Chiquita's motion to dismiss and reply brief for *forum non conveniens*, all claims in which Mr. Hills was named as a defendant should be dismissed as to Mr. Hills and the Estate.

Respectfully submitted,

Dated: October 7, 2015
Miami, Florida

/s/ K. Lee Blalack, II
K. LEE BLALACK, II*
Tenn. Bar No. 017261
lblalack@omm.com
ANTON METLITSKY*
N.Y. Bar No. 4383527
ametlitsky@omm.com
DIMITRI D. PORTNOI*
CAL. BAR NO. 282871
dportnoi@omm.com
O'MELVENY &MYERS LLP
1625 Eye Street NW
Washington, DC 20006
(202) 383-5300
(202) 383-5414 (fax)

Robert D. W. Landon, III
Fla. Bar No. 961272
rlandon@knpa.com
Giselle S. Guerra
Fla. Bar No. 0100600
gguerra@knpa.com
KENNY NACHWALTER, P.A.
201 South Biscayne Boulevard
Suite 1100, Miami Center
Miami, FL 33131-4327
Telephone: (305) 373-1000
Facsimile: (305) 372-1861

*Admitted Pro Hac Vice*

*Attorneys for Carla M. Hills, as the Personal Representative of the Estate of Roderick M. Hills, Sr.*