**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 08-MD-01916 (Marra)**

IN RE: CHIQUITA BRANDS INTERNATIONAL,
INC. ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates to:

ATA ACTIONS

     1:08-cv-20641
     9:09-cv-80683
     9:11-cv-80402


_____/


**PLAINTIFFS' PROPOSED JURY INSTRUCTIONS**

**PART I: GENERAL RULES** ...................................................................... 4
    A.      PARTIES TO THE JUDICIAL PROCESS .................................... 4
        i)       Juror Attentiveness.............................................................. 4
        ii)      Duty to Follow Instructions (11th CTA: Basic 2.2) ................... 4
        iii)     Duty of the Jury (11th CTA: Basic 2.2)................................. 5
        iv)     Direct and Circumstantial Evidence (11th CTA: Basic 2.2)...................... 6
        v)       Jury to Disregard Court's View (11th CTA: Basic 2.2) ............................ 7
        vi)     Credibility of Witnesses (11th CTA: Basic 3) ............................ 7
        vii)    Impeachment of Witnesses (11th CTA: Basic 4.1) ........................ 8
        viii)   Expert Witnesses (Basic 5.1) ............................................ 8
        ix)     Burden of Proof (Basic 6.1) ................................................ 9
        x)       Conduct of Counsel (11th CTA: Basic 2.2)............................. 10
    B.      IMPROPER CONSIDERATIONS EVIDENCE ............................ 10
        i)       Consider Only Testimony, Exhibits and Stipulations.............................. 10
        ii)      Evidence Admitted For a Limited Purpose............................... 11
        iii)     Foreign Language Testimony & Evidence ............................... 11
        iv)     Use of Pre-Trial Depositions at Trial .................................... 12
    C.      INFERENCES .................................................................. 12
**PART II: THE LEGAL ELEMENTS** ...................................................... 13
    A.      ACTING "KNOWINGLY" ................................................ 13
    B.      THE ELEMENTS OF A CLAIM UNDER 18 U.S.C. § 2333(a) AND 18 U.S.C. §2339A.................................................................. 14
        i)       18 U.S.C. § 2333(a) ......................................................... 14
        ii)      18 U.S.C. § 2339A ......................................................... 15
        iii)     Proximate Cause ............................................................ 17
    C.      FOREIGN LAW .............................................................. 19
    D.      EXTORTION................................................................... 20
    E.      ASSUMPTION OF RISK/CONTRIBUTORY NEGLIGENCE (11th CTA: State Claim Instruction: No. 1.1 [Comparative Negligence] [p. 364])......................... 21
    F.      AFFIRMATIVE DEFENSE – STATUTE OF LIMITATIONS ...................... 21
**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO ____** ............. **Error! Bookmark not defined.**
**DAMAGES** ........................................................................................ 28
    I.       PLACEHOLDER............................................................... 28
    II.      DAMAGES OF THE ESTATES OF THE DECEDENTS ...................... 29
        1.      Death ........................................................................... 29
        2.      False Imprisonment......................................................... 30
        3.      Loss of Comfort, Companionship and Society of Family Members ........ 30
        4.      Mental Distress .............................................................. 30

5.  Assault and Battery ................................................................. 30

III.  DAMAGE CLAIMS OF SURVIVING SPOUSES OF THE DECEDENTS ...... 31

1.  Loss of Consortium ................................................................. 31

2.  Mental Distress and Psychological Harm ................................. 31

3.  Bereavement and Sadness. ....................................................... 31

4.  Rescue of Decedents ................................................................ 32

5.  Assault. .................................................................................... 32

6.  Battery ..................................................................................... 32

7.  False Imprisonment ................................................................. 32

IV.  CHILDREN OF THE DECEDENTS ................................................ 32

1.  Loss of Society, Comfort and Companionship ......................... 32

2.  Bereavement and Sadness. ....................................................... 33

3.  Mental Distress and Psychological Harm. ................................ 33

V.  SIBLINGS OF THE DECEDENTS .................................................. 33

1.  Comfort, Companionship and Society of Decedent. ................. 33

2.  Mental Distress and Psychological Harm ................................. 33

VI.  PARENTS OF DECEDENTS .......................................................... 33

1.  Comfort, Companionship and Society of Decedent. ................. 34

2.  Mental Distress and Psychological Harm ................................. 34

VII.  EVIDENCE ................................................................................. 34

**PART III: GENERAL REMARKS REGARDING DELIBERATION** ................................ 34

A.  DUTY TO CONSULT & NEED FOR UNANIMITY (11th CTA Basic Pattern 7.1) ......................................................................................... 34

B.  ELECTION OF FOREPERSON (11th CTA Basic Pattern 8) .............................. 35

C.  COMMUNICATIONS WITH THE COURT (11th CTA Basic Pattern 8).......... 35

D.  RIGHT TO SEE EXHIBITS & HEAR TESTIMONY ....................................... 36

E.  VERDICT ............................................................................................. 36

Now that the evidence in this case has been presented and the attorneys have concluded their closing arguments, it is my responsibility to instruct you on the rules of law that you must use in deciding this case. When I have finished, you will go to the jury room and begin your discussions, what we call your deliberations.  My instructions will be in three parts:

FIRST: I will instruct you on the general rules that govern your duty as jurors;

SECOND: I will instruct you on the legal elements of the Plaintiffs' claims and the Defendant's affirmative defense; and

THIRD: I will give you some important principles that you will use in your deliberations.

## PART I: GENERAL RULES

A.     <u>PARTIES TO THE JUDICIAL PROCESS</u>

*i)        Juror Attentiveness*

You are about to enter your final duty, which is to decide the fact issues in this case.

It has been obvious to me and to counsel that you have faithfully discharged your duty to listen carefully and observe each witness who testified. Your interest never lagged and you followed the testimony with close attention. I also would like to express my gratitude to each of the attorneys for their conscientious efforts on behalf of their clients.

I ask that you now give me that same careful attention that you gave at trial.

*ii)       Duty to Follow Instructions* (11th CTA: Basic 2.2)

In carrying out your duty, you are reminded that you took an oath to render judgment impartially and fairly, without prejudice or sympathy, and without fear, solely upon the evidence in the case and the applicable law. I know that you will do this and reach a just and true verdict.

Your decision must be based only on the evidence presented here.  You must not be influenced in any way by either sympathy for or prejudice against anyone.

4

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any instruction that I give you. If any attorney has stated a legal principle different from any I state to you in these instructions, you must disregard that attorney's statement and follow my instructions exclusively. You should not consider the wisdom or fairness of any legal principle on which I instruct you. Regardless of any opinion you may have as to what the law may be or should be, it would violate your sworn duty to base your decision upon any view or interpretation of the law other than what I give you.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts, omissions, and statements of its employees or agents that are made within the scope of their duties as employees or agents of the company. Sometimes a corporation owns another company, often referred to as the corporation's subsidiary. In this trial you have heard testimony and viewed evidence referring to Banadex, which was a Colombian subsidiary of Defendant. For purposes of your deliberations, you must disregard any consideration regarding whether Banadex was a company separate from Defendant, or whether any such separateness (an issue I have just instructed you not to consider) in any way impacts or alleviates Defendant of any liability. For purposes of this trial, the acts of Banadex and its employees and agents, were acts of the Defendant.

    *iii)*       *Duty of the Jury* (11th CTA: Basic 2.2)

As members of the jury, you and you alone decide the facts. You pass upon the evidence. You determine the credibility of the witnesses. You resolve such conflicts as there may be in the testimony. You draw whatever reasonable inferences you decide to draw from the facts as you have determined them, and you determine the weight of the evidence. In determining these issues, no one may invade your province or functions as jurors.

You must consider only the evidence that I have admitted in this case.  Evidence includes the testimony of witnesses and the exhibits admitted.  But, anything the lawyers say is not evidence and is not binding on you.  As you consider the evidence, direct and circumstantial, you may make deductions, draw inferences, and reach conclusions which reason and common sense lead you to make.

Direct evidence is the testimony of one who asserts actual knowledge of a fact, such as an eye witness.  Circumstantial evidence is evidence of circumstances tending to prove or disprove any fact in dispute.  The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

iv)        *Direct and Circumstantial Evidence* (11th CTA: Basic 2.2)

There are two types of evidence that you may properly use.

One type of evidence is called direct evidence.  Direct evidence is a witness's testimony, or the contents of a document, about what the witness saw, heard, or observed.  In other words, when a witness testifies about what is known to that witness by virtue of the witness's own senses – what the witness sees, feels, touches or hears – that is called direct evidence.

Circumstantial evidence is evidence that tends to prove a fact by proof of other facts. There is a simple example of circumstantial evidence that is often used: Assume that when you came into the courthouse this morning, the sun was shining and it was a nice day.  As you were

6

sitting here, someone walked in with an umbrella that was dripping wet.  Someone else then walked in with a raincoat that was dripping wet.  The courtroom is without windows, so you cannot look outside to see whether or not it is raining – therefore, you have no direct evidence of that fact.  But, based on the combination of other facts, it would be reasonable and logical for you to conclude that it had been raining outside.

That is all there is to circumstantial evidence.  You infer on the basis of reason and experience and common sense from an established fact the existence or the nonexistence of some other fact.  Circumstantial evidence is of no lesser value than direct evidence – you alone decide what weight to give to all of the evidence.

 *v)*  *Jury to Disregard Court's View* (11th CTA: Basic 2.2)

In the course of the trial, it has been necessary for me to rule on the admission of evidence.  You may not consider such evidence in your deliberations.  However, you must not conclude from any such ruling I have made, or from any questions I may have asked, or from anything that I have said during the course of the trial, that I favor any party to this lawsuit.  I hold no such view.  It is your recollection of the admitted evidence and your decisions on the issues of fact that will decide this case.  You also are to draw no inference from the fact that I occasionally asked questions of certain witnesses.  These questions were only intended for clarification or to expedite matters and certainly were not intended to suggest any opinion on my part as to the verdict you should render, or whether any of the witnesses may have been more credible than any other witness.  You must understand that I have no opinion as to the verdict you should render in this case.

 *vi)*  *Credibility of Witnesses* (11th CTA: Basic 3)

When I say you must consider all the evidence, I don't mean that you must accept all of the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision, you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness, I suggest that you ask yourselves a few questions: Did the witness impress you as one who was telling the truth? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome of the case? Did the witness seem to have a good memory? Did the witness have the opportunity and ability to accurately observe the things he or she testified about? Did the witness appear to understand the questions clearly and answer them directly? Did the witness's testimony differ from other testimony or other evidence?

*vii)*      *Impeachment of Witnesses* (11th CTA: Basic 4.1)

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave at trial.

But keep in mind that a simple mistake doesn't mean that a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an important detail.

*viii)*      *Expert Witnesses* (Basic 5.1)

When scientific, technical or other specialized knowledge might be helpful, a person who has specialized training or experience in the field is allowed to state an opinion on the matter.

But that doesn't mean you must accept the expert witness's opinion.  As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion of that expert witness.  Where an expert offers opinions on more than one issue, you may also choose to accept some of an expert's opinions while rejecting others.

ix)     *Burden of Proof* (Basic 6.1)

In this case, each party asserting a claim or contention has the responsibility to prove every essential part of such claim or contention, which are known as the elements of the claim or contention, by a "preponderance of the evidence."  This is sometimes called the "burden of proof" or "burden of persuasion."

A "preponderance of the evidence" simply means that the evidence is enough to persuade you that the party's claim or contention is more likely true than not true.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have introduced them.

If the proof fails to establish any element of a claim or contention by a preponderance of the evidence, you should find against the party making that claim or contention.  If the proof fails to establish any element of a Plaintiff's claim or contention by a preponderance of the evidence, you should find for the Defendant as to that claim or contention.

In this case, the Defendant asserts the affirmative defense of statute of limitations.  This means that even if the Plaintiffs prove their claims by a preponderance of the evidence, the Defendant can still prevail if it establishes its affirmative defense.  I will instruct you on this

specific affirmative defense shortly.  For now, you should understand that the Plaintiffs contend that this affirmative defense is not applicable to their claims, and it will be the Plaintiffs' who bear the burden of persuasion on this contention.  Which means that, just as for the Plaintiffs' claims, the Plaintiffs must persuade you by a preponderance of evidence that their contention is more likely true than not true.  If you find that the Plaintiffs have met their burden of persuasion on this contention, then you must find for the Plaintiffs; if, on the other hand, you find that the Plaintiffs have failed to meet their burden of persuasion, then you must find for the Defendant.

   *x)*  *Conduct of Counsel* (11th CTA: Basic 2.2)

   It is the duty of the attorneys on each side of a case to object when the other side offers testimony or other evidence that an attorney believes is not properly admissible.  Counsel also have the right and duty to ask me to make rulings of law and to request conferences at the side bar out of your hearing.  All those questions of law must be decided by me.  You should not concern yourselves with, or speculate about, the contents of any discussion between me and counsel at side bar.  You also must not bear any prejudice against any attorney or his client because that attorney objected to the admissibility of evidence, asked for a conference out of your hearing, or asked me for a ruling on the law.

B.  <u>IMPROPER CONSIDERATIONS EVIDENCE</u>

   *i)*  *Consider Only Testimony, Exhibits and Stipulations*

   In deciding this case, you may consider only the exhibits which have been admitted in evidence, the testimony of the witnesses as you have heard it in this courtroom and has been read from their sworn testimony before trial, and the stipulations entered by the parties.  A stipulation is an agreement between the plaintiffs and the defendant as to a particular fact or set of facts, and where the parties stipulate to a fact, neither party needs to submit evidence to prove that fact, and

you must assume that fact in your deliberations.  Arguments, remarks, and summations of the attorneys are not evidence, nor is anything that I may have said with regard to the facts of this case.

Anything you may have seen or heard about this case outside the courtroom is not evidence and must be disregarded.  Just as I instructed you at the beginning of the case, I ask that you refrain from reading, watching or listening to any news or opinion coverage of this trial, of the events at issue in this trial, and of the parties to this trial.  You may not discuss your deliberations with any person outside of the jury except me.  You may not deliberate or discuss this trial with your fellow jurors outside of the jury room.  You are not to conduct any of your own research, through internet searches or by any other means.  Nothing whatsoever is relevant to your fact determinations except for the evidence admitted in the trial and my instructions to you, and nothing whatsoever is to be considered in deciding questions of fact except for that evidence, my instructions, your own personal experience and common sense.

### ii)     *Evidence Admitted For a Limited Purpose*

Some evidence was admitted or shown to you for a limited purpose only. When I instructed you that an item of evidence was admitted for a limited purpose, you must consider it only for that limited purpose and for no other.

If you have a question concerning whether a particular item of evidence was admitted or shown to you for a limited purpose, send out a note and we will clarify it for you.

### iii)    *Foreign Language Testimony & Evidence*

Certain witnesses in this case did not speak English as their first language and had limited abilities speaking and understanding English.  An interpreter was used during their testimony. You must not make any assumptions about a witness based solely upon the use of an interpreter

to assist that witness.  The fact that a witness's testimony was translated from a foreign language must not be considered in deciding the credibility of the witness.  Testimony must not be discounted or disregarded solely because it is translated.

The evidence to be considered by you is only that provided through the official court interpreters for testimony.  The same applies with respect to documents in this case where there the parties have agreed to translations.  Even if you understand the foreign language, you must accept the official English interpretation or translation accepted by the Court in the trial.

iv)      *Use of Pre-Trial Depositions at Trial*

You have seen video of and heard the lawyers read portions of documents referred to as examinations before trial, or depositions.

At some point before this trial began, the witness, under oath, answered certain questions put to him or her by the lawyers for the parties.  A stenographer recorded the questions and answers and transcribed them into a document which the witness later signed before a notary public.  The portions of the transcript of the examination before trial that you heard, or the video you saw replayed, are to be considered as if the witness were testifying from the witness stand.

C.    INFERENCES

During these instructions, you have heard me use the term "inference," and in the lawyers' arguments, they may have asked you to infer, on the basis of your reason, experience and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess.  It is a reasoned, logical decision to conclude that a fact exists on the basis of another fact that you know exists.  There are times when different inferences may be drawn from facts, whether proved by direct or circumstantial

evidence.  The Plaintiffs ask you to draw one set of inferences, while Defendant asks you to draw another.  It is for you, and you alone, to decide what inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a deduction or conclusion that you, the jury, are permitted, but not required to draw, from the facts that have been established by direct or circumstantial evidence.

## PART II: THE LEGAL ELEMENTS

I will now turn to the second part of my instructions.  In this part, I will instruct you as to the legal elements of the Plaintiffs' claims.

A.    ACTING "KNOWINGLY"

Because plaintiffs' claims implicate the concept of knowledge, I will discuss these concepts before addressing the elements of those claims. You should consider the term "knowing" or "knowingly" to have the definition I am about to give wherever it is mentioned in these instructions.  Intent is not an issue in this trial, and therefore I am not going to instruct you on the distinction between knowledge and intent, except to inform you that if a person acts intentionally, by definition he acts knowingly.

A person acts knowingly if he acts with an awareness of the relevant facts, and not because of ignorance, mistake or by accident.  Knowledge of facts is different from willfulness or intent, and thus where you are asked to decide whether defendant acted with knowledge, you are not to consider what the defendant may have intended or what its purpose was in engaging in such conduct.[1]  Whether the defendant acted knowingly may be inferred from its conduct and

---

[1]       *Bryan v. United States*, 524 U.S. 184, 193, 118 S.Ct. 1939, 1946 (1998) ("[U]nless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense.").   Here, section 2339A's use of the disjunctive in the phrase "knowing or intending" compels an instruction of "knowing" exclusive of any consideration of purpose, to avoid conflating these two different states of mind.  The Eleventh Circuit does not have a pattern instruction on knowledge, and the definition it uses for "knowingly" in Criminal Instructions B9.1A and B9.1B (an intentional and voluntary act) would render moot Congress's express decision that culpability under section 2339A results from either knowledge of facts (that

from all of the facts and circumstances surrounding the case.  Knowledge of the defendant's managers, officers or directors is attributed to the defendant, meaning that if you find that a manager, officer or director has knowledge of the relevant facts, then you must find that the defendant had that same knowledge.

Plaintiffs can meet their burden of proving that the defendant acted with knowledge if you find that the defendant was aware of a high probability that the fact existed – unless the defendant actually believed that the fact did not exist.[2]  That is to say, defendant had every reason to know that fact, but was deliberately indifferent to that fact or consciously avoided learning that fact.  It is entirely up to you to determine whether defendant was deliberately indifferent to the fact and, if so, what inference, if any, should be drawn.  In deciding whether to infer knowledge, you may draw from your own experience and common sense and ask whether a reasonable person, possessed of all of the experience, expertise, resources and information as defendant, would have been aware of a high probability that the fact existed.  However, it is important to bear in mind that mere negligence or mistake is not sufficient to prove that defendant knew of the fact.

B.      THE ELEMENTS OF A CLAIM UNDER 18 U.S.C. § 2333(a) AND 18 U.S.C. §2339A

   i)      *18 U.S.C. § 2333(a)*

The Plaintiffs' claims are based on the federal Anti-Terrorism Act, 18 U.S.C. § 2333(a), which provides a remedy for individuals who have suffered injury to their person, property, or business by reason of an act of international terrorism.  Therefore, as part of their claims, Plaintiffs must prove that the incidents or events that injured them were acts of international terrorism, and that those acts of international terrorism caused their injuries.  (MSJ Order at 24).

---

material support would be used to plan or carry out enumerated crimes) or intent to accomplish some purpose (support the planning or carrying out of enumerated crimes).

[2]      Eleventh Circuit Pattern Jury Instructions (Criminal) S8.

For each element I explain, if you find that the Plaintiffs have proved the facts that they are required to prove, then you must find the Plaintiffs have satisfied their burden of proof on that element.  If you find that the Plaintiffs have proved each element they are required to prove in order to establish the Defendant's liability on a claim, then you must enter a verdict for the plaintiff or Plaintiffs on that claim.

ii)        *18 U.S.C. § 2339A*

The Plaintiffs allege that the Defendant's payments to FARC violate a criminal statute, 18 U.S.C. §2339A, which I will refer to as Section 2339A.  To prove their claims, Plaintiffs must establish the following elements by a preponderance of the evidence:

<u>First</u>, you must decide whether the Defendant provided material support or resources to FARC.  For the purposes of this trial, the term "material support or resources" means currency, in any country's denomination, and other monetary and financial instruments.  Thus U.S. dollars and Colombian pesos qualify as material support.  Concealing the provision of "material support or resources" also violates this statute.  If you should find by a preponderance of the evidence that Defendant provided or concealed material support to FARC, Plaintiffs' burden with respect to the first element of Section 2339A is met.

<u>Second</u>, you must decide whether the Defendant provided this support or these resources knowing or being deliberately indifferent to a high probability that the material support or resources were to be used to prepare  carry out one of the following crimes: a violation of 18 U.S.C. §1203, which prohibits hostage taking if the victim is a national of the United States; 18 U.S.C. §2332(a), which prohibits the homicide of a national of the United States; 2332(b), which prohibits any attempt or conspiracy to commit homicide against a national of the United States; or §2332(c), which prohibits engaging in physical violence with intent to cause serious bodily

injury, or that causes serious bodily injury, to a national of the United States.  The hostage taking statute makes it a crime both to take a person hostage for ransom and to hold that person in captivity after the original event.  Therefore, holding a person in captivity is a violation of the hostage taking statute even if the hostage was originally taken captive by another person.  Murder of an American is self-explanatory, as is attempting to murder, and attempting to cause or intentionally causing serious bodily injury to an American.  Conspiracy to commit homicide means that two or more persons enter into an agreement to murder someone, in this case, an American.   The plaintiffs are not required to prove that all of the material support the defendant provided to FARC was used for these purposes.

The Defendant has not contested that FARC engaged in these and other crimes, so I am not going to instruct you on the specific elements of these crimes.  It is sufficient that you are aware of them, and their place in the laws governing your deliberations.  The only issue for your consideration on this element of Section 2339A is whether the Defendant, during the time period in question, knew, or was aware of or deliberately indifferent to the high probability, that FARC would use the funds provided to it by the Defendant to prepare or carry out hostage taking, murder or causing violent bodily harm to Americans.  In deciding this issue, whether Defendant had any knowledge or awareness of these specific statutes is not relevant; it is sufficient if you decide knowledge or awareness of a high probability of the acts these statutes prohibit.

Consequently, if you find by a preponderance of the evidence that the Defendant provided material support to FARC, either knowing, or being deliberately indifferent to the high probability, that FARC would use that material support to commit any of the foregoing kinds of crimes, then you will have found that Defendant violated Section 2339A.  Plaintiffs are not required to prove that Defendant knew or consciously disregarded that FARC would use

Defendant's material support to commit the specific acts at issue in this lawsuit, namely the hostage taking and killings of the decedent victims in these actions. (MSJ Order at 33). I will instruct you on the link between the Defendant's actions and the Plaintiffs momentarily.

Because Section 2339A was enacted on September 13, 1994, I instruct you that to find the defendant liable, you must find that the defendant knowingly provided material support to FARC after September 13, 1994. You may, however, consider the Defendant's earlier payments for the purpose of deciding whether the Defendant knew or was deliberately indifferent to the high probability that material support it provided to FARC would be used to prepare for or carry out hostage taking, murder or conspiracy to murder Americans.

   iii)      *Proximate Cause*

If you find that defendant violated 18 U.S.C. § 2339A by knowingly providing material support, or concealing or disguising material support, to FARC, knowing that they were to be used in preparation for, or in carrying out acts of terrorism, you must then consider whether the provision of that material support or concealment or disguising the nature, location, source, or ownership of material support to FARC, caused the plaintiffs' injuries.

To show this, the Plaintiffs must show that Defendant's unlawful acts were a substantial factor in the sequence of events that led to the hostage takings and murders of the plaintiffs' decedents, and that such conduct by FARC was a reasonably foreseeable consequence of the defendant's provision of material support to FARC.

The Plaintiffs are not required to prove that the Defendant's unlawful acts were the sole cause of their injuries; nor do the Plaintiffs need to eliminate all other possible causes of injury. Further, the Plaintiffs are not required to directly trace the Defendant's particular payments to FARC to the particular hostage takings and murders at issue in this case. The issue you must

decide is whether the Defendant's payments to FARC created or increased the risk of the Plaintiffs' injuries occurring.  This involves your determination of whether the timing and magnitude of the Defendant's financial contributions to FARC were a substantial factor in enhancing FARC's terror capabilities, enabling it to commit more violent acts, such as the hostage takings and murders of the Plaintiffs' decedents.

The other aspect of proximate cause that you must decide is whether the Plaintiffs' injuries were a reasonably foreseeable consequence of the Defendant's actions.  This is an objective question: whether a reasonable person, knowing all of the facts the Defendant knew, would have understood that there was a risk that such payments would result in injuries such as those suffered by the Plaintiffs.  As with the first part of your proximate cause deliberations, this does not require you to find that the Defendant foresaw, or that any reasonable person would have foreseen, these particular injuries to these particular Plaintiffs.  It is sufficient to find that a reasonable person would have understood the risk that such payments would lead to hostage takings or murders of Americans by FARC.  As with your deliberations on whether the Defendant violated Section 2339A, you are permitted but not required to consider as relevant to your deliberations whether the payments before September 13, 1994 would factor into a reasonable person's understanding of the increased risk, if any, that subsequent payments would result in hostage takings and murders.

If you conclude that Defendant knowingly violated 18 U.S.C. § 2339A and its conduct was a proximate cause (as I have explained the term) of the kidnappings and murders that are the subject of this case, then Defendant's conduct would itself constitute acts of international terrorism. Therefore, I instruct you that, as a matter of law, if you find that plaintiffs have proved by a preponderance of the evidence that defendant violated 18 U.S.C. § 2339A <u>and</u> that defendant's conduct proximately caused plaintiffs'

injuries, you must find that plaintiffs have proved that Defendant committed acts of international terrorism.[3]

If you find that the Plaintiffs have not proven that FARC committed a particular act, you must also find that Defendant's acts did not proximately cause any plaintiff's injuries arising from that act.

Finally, each plaintiff must prove that he, she or it was injured in his or her person, property, or business.  In this case, injury includes any invasion of a personal right, including emotional or mental suffering, in addition to physical or financial harm.  As such, family members of decedents can suffer mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital or filial care, attention, advice, guidance or counsel. Injury differs from damages, which is the amount of money you decide to award to compensate the plaintiff for the injury.  The Plaintiffs meet their burdens of showing injury if they show some harm from the unlawful activities they complain of.  Injury beyond this minimum showing of harm goes only to the amount of damages you award for that harm and not to the question of the existence of an injury.

C.     FOREIGN LAW

---

[3]     In its Order on the parties' respective motions for summary judgment, the Court correctly held that Plaintiffs may satisfy the objective "appear to be intended" prong of Section 2331(1)'s definition of international terrorism by persuading the jury that it "would have been reasonably foreseeable to Chiquita, as a knowing financier of FARC, that its financial support would enhance FARC's terror capabilities and enable it to kill, try to kill or conspire to kill more Americans abroad in Colombia." (Order at 48-49).  Because, in deciding whether Defendant violated Section 2339A, the jury must decide whether Defendant knew or was deliberately indifferent to a high probability that FARC would use Defendant's funds to prepare or carry out, among other things, the aforementioned crimes, it will necessarily have decided the objective "appear to be intended" issue, because, irrespective of its subjective motivations, Defendant made the payments even though it knew its funds would be used to prepare or carry out violent acts or acts that are dangerous to human life.  This is all the more so once the jury has decided proximate cause, which has as its components findings that there was a sufficient nexus between Defendant's payments to FARC and Plaintiffs' injuries, which of course reinforces the fact that Defendant's payments "involved" violence or acts dangerous to human life, and foreseeability.  This instruction thus reduces the potential for confusion that would exist were the jury to decide these issues several different times in the course of its deliberations.

At times during this trial, you have heard references to the laws of Colombia.  Those references are background information only. You are not to consider whether any conduct was illegal or legal under the law of any other nation. You are to concern yourself solely with the laws of the United States that I have explained in these instructions.

D.    <u>EXTORTION</u>

At times during the trial, you heard references to extortion or protection payments or demands for payments made by a violent terrorist organization, FARC.  These and similar notions fall under the rubric of the legal defense of duress, which is not available to the defendant in this case.  In deliberating, you may not consider whether the Defendant was in any way pressured, forced, compelled, or coerced into providing funds to FARC.  As I instructed you earlier, what the Defendant intended in making the payments is not relevant to any of the facts you are to decide.  This is not to say you should ignore facts necessary to understand the arc of events presented to you in the course of this trial, and I am not instructing you to dismiss as false proclamations by the Defendant's witnesses that they were motivated by a desire to protect the Defendant's employees.  In a large, complex trial such as this, many facts are presented in the course of the proceedings, including background facts and other matters helpful to understand the events at issue.  However, not every fact is pertinent to the specific issues on which the jury must deliberate, and a jury's deliberations must be confined to those matters the Court charges the jury to decide.  In this case, under this law, the Defendant's motivation or purpose in making such payments has no bearing on any of the elements at issue in this trial, and therefore any supposedly good reasons for the payments that may have been presented by the Defendant's witnesses or counsel must not be considered by you in deciding whether the Plaintiffs have proved those facts necessary to establish each element of their claims.

E.    ASSUMPTION OF RISK/CONTRIBUTORY NEGLIGENCE (11th CTA: State Claim
      Instruction: No. 1.1 [Comparative Negligence] [p. 364])

I instructed you earlier that the state of mind required of the Defendant in order for it to be liable to the Plaintiffs under the Anti-Terrorism Act is knowing conduct, which includes deliberate disregard of facts and consequences, sometimes referred to as "recklessness" to distinguish it from "intentional" or "willful" wrongs.  Some kinds of legal claims require lesser state of mind.  One common lesser state of mind is negligence.  Without going into unnecessary definitions, there are certain defenses to negligence claims that can reduce a defendant's liability or the damages to which it might otherwise be exposed.  These include contributory negligence, or assumption of risk, which essentially argue that a defendant should not be liable, or its liability should be limited, because the plaintiff engaged in conduct, for which he or she should be blamed, that either contributed to his or her injuries or increased the risk of suffering his or her injuries to some degree.  These are not defenses to claims under the Anti-Terrorism Act, and therefore they are improper considerations in your deliberations.  In deciding liability and damages you may not in any way consider the Plaintiffs' knowledge of conditions or circumstances in or around Colombia, including but not limited to terrorist activities or other violence.  You may not consider for any reason whether the Plaintiffs voluntarily chose to live or work in or near dangerous places, whether they took any risks in living or working where they did, whether they were aware of any other terrorist incidents, or whether they were aware of any risk of kidnapping for ransom or of any policy to pay or not pay any such ransom in the event of a kidnapping.

F.    AFFIRMATIVE DEFENSE – STATUTE OF LIMITATIONS

The defendant has raised as an affirmative defense the Anti-Terrorism Act's ten-year statute of limitations.  An affirmative defense is a matter that can alleviate a defendant of liability

even if the jury finds that the plaintiff established all elements of his or her claim.  A statute of limitations is the time a person has to bring a lawsuit.  You are not permitted to consider this affirmative defense until after you have completed your deliberations on the defendant's liability, and you are only to deliberate on this issue if you find the defendant liable to one or more plaintiffs.  If you decide that the defendant is not liable to any plaintiff, then your deliberations are over and you must return a verdict for the defendant.  If you decide that the defendant is liable to one or more of the plaintiffs, then and only then are you to consider whether this affirmative defense relieves the defendant of liability to one or more plaintiffs.  The plaintiffs contend that this affirmative defense does not apply to their claims, and it is the plaintiffs' who carry the burden of persuasion on that contention.

In this case, the Anti-Terrorism Act has a ten-year statute of limitations, meaning that ordinarily a plaintiff must commence his lawsuit within ten years of when his claim against the defendant accrued, or became ripe.  You need not consider when the plaintiffs' claims accrued.  You have a different question to decide.  I am about to instruct you on certain principles that can enable the plaintiffs to overcome the defendant's affirmative defense of statute of limitations.  These principles of equity, or fairness, can allow a statute of limitations to be tolled, meaning that the limitations period does not apply, in circumstances in which it would be unfair to hold a person to standards that otherwise might require them to more quickly file their claims.

There are two principles of equity at issue in this case.  If you find either one applies, then you must find for the plaintiffs on their contention and reject the defendant's affirmative defense.  If, on the other hand, you cannot find that either principle applies to the circumstances at issue in this case, then you must find for the defendant, in which event the plaintiffs' claims will be extinguished.  Because the plaintiffs bear the burden of persuasion on their contention

that one or both of these principles overcomes the defendant's affirmative defense, you must find

that a preponderance of the testimony and evidence makes it more likely than not that one of

these principles overcomes the defendant's affirmative defense.

In general, a party has a duty file claims within a set period after learning of the essential

facts of his or her claim, typically the facts that he or she has been injured and who caused that

injury.  In this case, although the plaintiffs' injuries stem most directly from the acts of other

persons, whom the plaintiffs say were FARC, they allege that the defendant's payments to the

FARC also caused their injuries, and it is only this latter cause that we are concerned with.  In

other words, the defendant's alleged payments to FARC were essential facts for the plaintiffs'

claims against the defendant.  Because the defendant's payments to the FARC started before the

murders of the decedents, we consider the dates of the murders to have been the dates of the

plaintiffs' injuries.  The dates the plaintiffs learned of the murders were the earliest possible time

that the plaintiffs could have known they had a claim.   The defendant argues that the ten-year

statute of limitations required the plaintiffs to have investigated and learned of the defendant's

alleged payments to the FARC and filed their complaints against the defendant no later than ten

years from the dates on which the plaintiffs learned of their decedents' murders.  The Julin

Plaintiffs filed their complaint on March 11, 2008; the Pescatore Plaintiffs filed their complaint

on March 13, 2009, and the Sparrow Plaintiff filed his complaint on March 9, 2011.  The

defendant argues that because these complaints were filed more than ten years after the plaintiffs

learned of the murders, you should find for the defendant on its affirmative defense of statute of

limitations and enter verdicts in its favor as to each plaintiff.  The plaintiffs contend this is

unreasonable.  Plaintiffs say their complaints were filed in time for the reasons I am going to tell

you. For the plaintiffs to prevail on this contention, they must persuade you to find that one of

these reasons gave the plaintiffs more time to file their complaints.  If you agree, then the plaintiffs will have defeated the defendants' statute of limitations defense, and because you would have already found that the defendant is liable, you will go on to decide the amount of damages to award each plaintiff.

A person who is injured, but who does not immediately know who caused his or her injury, has a duty to investigate whether he or she has legal claims upon learning of facts that give notice to the party that they may have such legal claims.  At that point, the person is obligated to conduct reasonable diligence, meaning the efforts a reasonable person would be expected to take to discover whatever facts in addition to his or her injury are necessary to assert his or her legal claims against the defendant.  The operative word is "reasonable" – a person is not expected to undertake exhaustive, expensive probing investigations of all conceivable facts and legal claims.  Rather, the question is what additional efforts a person who suffers an injury should reasonably be expected to take to discover the nature of his or her claim against the defendant.  In other words, what efforts can reasonably be expected for an injured person to discover the connection between his or her injuries and the defendant.  In this case, the parties agree that the connection is the defendant's payments to FARC, and the issue of diligence is what efforts the plaintiffs could or should have taken to discover those payments, in light of the facts that were known or knowable to the plaintiffs during the period between their decedent's deaths and the filing of their lawsuits.  In other words, what efforts or investigation would a reasonable person have undertaken to discover legal claims in light of the information they possessed and information they reasonably could have discovered?  This question of reasonable diligence is not necessarily a yes or no question.   Although you may find that a reasonable person would have done more than the plaintiffs to discover the defendant's payments to FARC

at the moment they learned of the murders, you also may find that it would be unreasonable to expect anyone to undertake such efforts at that time.  You may also find that the plaintiffs acted reasonably at the time they learned of the murders, but then, perhaps because of the availability of additional information,, a reasonable person would have done more to discover the defendant's payments to FARC at some later point in time, and that the plaintiffs were unreasonable in failing to do so.  If so, that later point in time is said to be the time at which the plaintiffs were on notice of their claims, and they must have filed their complaints no later than ten years from those dates in order to have been timely.  For each plaintiff, you must decide the date after which you consider the plaintiff to have been on notice and thus required to diligently and reasonably investigate in order to file his or her claims within ten years.  You must decide this date in light of the two following equitable principles.

The first equitable principle you are to consider is whether, considering the totality of the circumstances, the plaintiffs have met their burden of persuading you by a preponderance of the evidence that it would be unreasonable to expect the plaintiffs to have done more than they did to discover that the defendant was providing funds to FARC.  Under this principle, you must decide whether the plaintiffs were blamelessly ignorant of the payments, because extraordinary circumstances were such that the plaintiffs had no reasonable way of discovering earlier the defendant's payments to FARC.  Because my charge to you is to consider the totality of the circumstances, it is entirely up to you to decide what facts or factors to consider, provided only that you must confine your deliberations to the testimony and evidence presented to you in the course of the trial.  You have heard arguments from counsel for both the plaintiffs and the defendant, and it is up to you to decide how to weigh the evidence and evaluate those arguments in deciding whether this principle applies.  Because this is a question of equity, or fairness, there

is no right or wrong answer.  You, and you alone, must decide whether it would be manifestly unjust to bar the plaintiffs' claims as having been filed too late under all of the circumstances you have learned about in the course of the trial.  If you find that the plaintiffs have met their burden of persuasion on this equitable principle, you need not consider the second principle, and you can reject the defendant's affirmative defense of statute of limitations and move on to decide damages.  If, on the other hand, you find that the plaintiffs have not met their burden of persuasion on this principle, then you must go on to consider the second equitable principle that I am now going to explain.

The second principle is known as fraudulent concealment.  Unlike the general equitable principle I set forth above, where in considering the totality of the circumstances you can decide for yourselves whether and to what extent to consider the defendant's conduct, under this principle you must examine the defendant's conduct and ask yourself the following questions: did the defendant engage in affirmative acts of concealment of its payments to FARC and, if so, did that concealment hide the facts such that a reasonably diligent plaintiff could not have discovered them and filed his or her complaint any sooner?  In deciding whether this principle applies, you need to consider whether the defendant affirmatively concealed information, what information the defendant concealed, what information was available to the plaintiffs or would have been available had they undertaken reasonable diligence, when the plaintiffs became aware of the essential facts of their claims, whether a reasonably diligent plaintiff would have learned of those facts sooner, and whether the defendant's affirmative acts of concealment helped deprive the plaintiffs of essential facts concerning the nature of their claims.  That last question governs your decision on this principle, but it can only be made in light of how you answer the other considerations I just explained to you.  If you find that the defendant engaged in

affirmative acts of concealment, and those affirmative acts of concealment helped deprive the plaintiffs of a meaningful opportunity to discover the defendant's payments to FARC, then you must find for the plaintiffs on their contention and reject the defendant's affirmative defense of statute of limitations, and go on to deliberate on the plaintiffs' damages. If, on the other hand, you find either that the defendant did not engage in any affirmative acts of concealment, or that those affirmative acts of concealment did not help to deprive the plaintiffs of any meaningful opportunity to discover the defendant's payments to FARC, then you must find for the defendant on this theory.

The verdict forms have spaces for you to indicate your findings on two dates. First, you must indicate the date on which a plaintiff knew of the murder of his or her decedent. If you find that neither equitable principle applies, you need go no further. If the plaintiff filed his claims not more than ten years from that date, you should indicate that you have found for that plaintiff, and once your deliberations on this affirmative defense are complete, you will proceed to deliberate on that plaintiff's damages. If, however, you find that a plaintiff's claim was filed more than ten years from that date, then you should indicate that you have found for the defendant on its affirmative defense of statute of limitations, and then you should enter a verdict in the defendant's favor as to that plaintiff. If you found one of the equitable principles to apply, you should indicate the date on which you have found such extraordinary circumstances to have ceased to exist; in other words, the date on which the plaintiff was on notice of his or her possible claims. If the plaintiff filed his claims no more than ten years from that date, you should indicate that you have found for that plaintiff on the defendant's statute of limitations defense, and you will proceed to deliberate on that plaintiff's damages. If the plaintiff filed his or her claims more than ten years from that date, you should indicate that you have found for the

defendant with respect to that plaintiff and enter a verdict in favor of the defendant on that plaintiff's claims.

These two dates do not necessarily have to be different. That is up to you, and the outcome of your deliberations on these issues. The dates can also be different for different sets of plaintiffs, if circumstances as you find them warrant. However, there are three groups of plaintiffs in this case, the Julin plaintiffs, the Pescatore plaintiffs and the Sparrow plaintiff (the latter two groups being the family of Frank Pescatore, Jr., who was kidnapped while working in La Guajira Department, Colombia). You must be consistent in rendering your decision on this affirmative defense as to all plaintiffs in a group, and you will do so by assuming that all of the plaintiffs in a group were faced with all of the same circumstances and knew or did not know all of the same facts. If one plaintiff in a group knows a fact, then all of the plaintiffs in that group must be considered to have known that fact. Thus, your findings with respect to one plaintiff in the Julin case must be your finding for all of the Julin plaintiffs. Likewise for the Pescatore plaintiffs and the Sparrow plaintiff. In other words, you do not have to deliberate separately for every plaintiff in this case, but only for each group of Plaintiffs.

## DAMAGES

I.     PRELIMINARY

I am now going to instruct you on the damages issue in this case. If you find Defendant liable to one or more Plaintiffs, then under the Anti-Terrorism Act each of those Plaintiffs is entitled to an award of damages.

My instructions as to the proper measure of damages do not suggest any view on my part as to whether the Plaintiffs or the Defendant is entitled to your verdict in this case. Damages

instructions are given for your guidance, in the event that you find in favor of the Plaintiffs in accordance with the liability instructions.

You must not make a compromise between the liability and damage issues. You must determine the liability issue first.  You should proceed to the damages issues only if you have determined that the Defendant is liable to the Plaintiffs.

Any damages that you award to the Plaintiffs must be based on the evidence and on a finding by you that the Plaintiffs have persuaded you that they have been injured as claimed. Damages may not be awarded on the basis of guess work or speculation, nor on the basis of passion, prejudice, or sympathy.

If you find Plaintiffs are entitled to recover damages, you must award an amount of damages that will justly, fully and fairly compensate the Plaintiffs for the losses and harms that they have sustained.

II.     DAMAGES OF THE ESTATES OF THE DECEDENTS

1.     <u>Death</u>

The estate of each decedent is entitled to full and fair compensation for the death of the decedent, including damages for the bodily injury suffered by each decedent at the time of death, damages of shock and terror experienced by the decedent at the moment of death and damages suffered by each decedent as a result of the loss of enjoyment of life for the full life expectancy of the decedent.  In this regard, according to the Life Expectancy Tables, Timothy Van Dyke had a life expectancy at the time of his death of 33.5, David Mankins had a life expectancy at the time of his death of 30.1, Rick Tenenoff had a life expectancy of 36.4 at the time his death, Mark Rich had a life expectancy of 48.4 at the time of his death, Steven Welsh had a life expectancy of 33.5 at the time of his death and Frank Pescatore, Jr. had a life expectancy of 36.4 years at the

time of his death.  You may take into consideration the life expectancy of each of the decedents in determining the amount of damages to be awarded for the loss of enjoyment of a full life, as a result of the death of each of the decedents.

2.      False Imprisonment

You may also award damages to the estate of each of the decedents for the false imprisonment that each decedent suffered, as a result of being initially kidnapped by the FARC and then being subjected to confinement in hostile, substandard conditions in the jungles of Colombia.  Damages for false imprisonment may include shock, emotional distress to the decedent resulting from the loss of personal freedom and confinement for an extended period of time, discomfort while in captivity, injury to health and well-being while in captivity and the value of the loss of time while in captivity.

3.      Loss of Comfort, Companionship and Society of Family Members

You may also award the estate of each decedent a sum of money in compensation for the damages suffered by the decedent for the period of time that they were in captivity, during which period the decedent was deprived of the comfort, companionship and society of family members, including wife, children and siblings during the period of confinement.

4.      Mental Distress

You may also award the Estate of each decedent a sum of money to compensate the decedent for the mental distress and psychological harm suffered by each decedent during the kidnapping event and during the period of time each decedent was in captivity with the FARC under a constant threat of impending death, including the sense of fright and terror experienced by the decedent just prior to the moment of death.

5.      Assault and Battery

You may also award the estate of each decedent a sum of money to compensate each decedent for any physical harm inflicted on the decedent as a result of intentional, offensive physical contact which the decedent experienced during the kidnapping and after the kidnapping, including damages for physical mistreatment by the FARC during their captivity.  With respect to damages for assault, you may award the estate of each decedent a sum of money to compensate the decedent for the mental distress and psychological harm resulting from the threats of death and offensive physical contact during the kidnapping and during the period of captivity.

III.    DAMAGE CLAIMS OF SURVIVING SPOUSES OF THE DECEDENTS

    1.    <u>Loss of Consortium</u>

You may award the surviving spouse of each decedent a sum of money to compensate each surviving spouse for the loss of consortium resulting from the kidnapping, captivity and eventual murder of each decedent.  Loss of Consortium refers to the loss of the love, comfort, companionship, caring, and physical relationship that is a normal attribute of a husband-wife relationship.  You may award the spouse of each decedent a sum to reasonably compensate the spouse for the spouse's loss of the decedent's consortium that would have been enjoyed as part of their marital relationship that has been adversely impacted and terminated as a result of the kidnapping, captivity and murder of the decedent.

    2.    <u>Mental Distress and Psychological Harm</u>

You may award each spouse a sum of money as damages to compensate each spouse for the mental distress and psychological harm caused by the kidnapping, captivity and murdering of the husband of the spouse.

    3.    <u>Bereavement and Sadness</u>

You may also award a sum of money to each spouse for the bereavement and sadness experienced by each spouse as a result of the kidnapping, captivity and murder of the decedent.

4.      Rescue of Decedents

You may also award each surviving spouse a sum of money to fully and fairly compensate her for the value of her time and for the expenses she incurred in efforts undertaken to secure the rescue of the decedent spouse during the period of captivity.

5.      Assault

To the extent that a spouse was threatened by the FARC during the kidnapping events, the spouse is also entitled to damages for the mental anguish and psychological harm resulting from the fear arising out of the threats of bodily injury directed at each spouse by the FARC.

6.      Battery

To the extent that a spouse was subjected to offensive physical contact during the kidnapping events, each spouse is also entitled to compensation for the physical harm arising out of the offensive physical contact that occurred.

7.      False Imprisonment

To the extent that any spouse was subjected to confinement or control by the FARC during the kidnapping event, the spouse would also be entitled to damages for false imprisonment, including damages for the mental and emotional distress experienced as a result of the loss of freedom and the imposition of control over the spouse by the FARC.

IV.     CHILDREN OF THE DECEDENTS

1.      Loss of Society, Comfort and Companionship

You may award the surviving children of each decedent a sum of money that will fully and fairly compensate each child for the loss of the society, comfort and companionship of the child's

father, resulting from the captivity of the father and the death of the father.  The loss of the comfort, society and companionship of each child's father may also include damages for the loss of parental guidance from the decedent.

2.    Bereavement and Sadness

Each surviving child of the decedent may also recover damages for the bereavement and sadness experienced by each surviving child, as a result of the kidnapping and murdering of the child's father by the FARC.

3.    Mental Distress and Psychological Harm

Each child of the decedent is entitled to damages for mental distress and psychological harm resulting from the kidnapping, captivity and murder of the surviving child's father, including damages for the loss of the capacity of enjoyment of life due to the loss of the surviving child's father.

V.    SIBLINGS OF THE DECEDENTS

1.    Comfort, Companionship and Society of Decedent

Each of the siblings of the decedents who are Plaintiffs in this case are entitled to an award of damages that will fully and fairly compensate that person for the loss of the comfort, companionship and society of the decedent, as a result of the kidnapping, captivity and death of the decedent.

2.    Mental Distress and Psychological Harm

Each of the siblings of each decedent are also entitled to compensation for any damages for mental distress and psychological harm caused by the kidnapping, captivity and murder of the decedent.

VI.    PARENTS OF DECEDENTS

1.      Comfort, Companionship and Society of Decedent

Each of the parents of the decedents who are Plaintiffs in this case are entitled to an award of damages that will fully and fairly compensate that person for the loss of the comfort, companionship and society of the decedent, as a result of the kidnapping, captivity and death of the decedent.

2.      Mental Distress and Psychological Harm

Each of the parents of each decedent are also entitled to compensation for any damages for mental distress and psychological harm caused by the kidnapping, captivity and murder of the decedent.

VII.    EVIDENCE

With respect to damages for loss of consortium, loss of society, comfort and companionship, bereavement and sadness, mental anguish and psychological harm, the Plaintiffs do not have to introduce evidence of the monetary value for these intangible items of damages. You will determine what amount of money fully and fairly compensates each of the Plaintiffs for their so-called intangible losses resulting from the kidnapping, captivity and death of the decedents.  There is no exact standard for measuring such damages.  The amount that you award should be fair and just in light of the evidence presented at trial.

**PART III: GENERAL REMARKS REGARDING DELIBERATION**

A.      DUTY TO CONSULT & NEED FOR UNANIMITY (11th CTA Basic Pattern 7.1)

Now that I have outlined for you the rules of law applicable to the allegations in this case and the processes by which you should weigh the evidence and determine the facts, I will give you some guidance for use in your deliberations.

Of course, the fact that I have given you instructions concerning the issue of the Plaintiffs' damages should not be interpreted in any way as an indication that I believe that any Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree.  Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors.  So you must discuss the case with one another and try to reach an agreement.  While you're discussing the case, don't hesitate to reexamine your own opinions and change your mind if you become convinced that you were wrong.  But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts.  Your only interest is to seek the truth from the evidence in the case.

B.      ELECTION OF FOREPERSON (11th CTA Basic Pattern 8)

When you get to the jury room, choose one of your members to act as a foreperson.  The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.  It will guide your deliberations. Where the verdict form has multiple parts, it has been prepared in such a way that you must render a unanimous decision on each part in sequence, deciding each part before moving on to the next part, following the instructions in the verdict form regarding whether you can move on to the next part or whether your deliberations have concluded.  You will take the verdict form to the jury room and when you have reached unanimous agreement on the verdict you will have your foreperson fill in the verdict form, date and sign it, and then return it to the courtroom.

C.      COMMUNICATIONS WITH THE COURT (11th CTA Basic Pattern 8)

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer.  The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response.  But I caution you not to tell me how many jurors have voted one way or the other at that time.  That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.

D.      RIGHT TO SEE EXHIBITS & HEAR TESTIMONY

All exhibits admitted in evidence will be made available to you in the jury room.  If you find you need to have a portion of the testimony read back to you, that can be done.  However, please remember that it is not always easy to locate what you might want, so please be as specific as you possibly can in requesting portions of testimony that you may want to review.

E.      VERDICT

When you have reached a verdict, please send a note signed by your foreperson that you have reached a verdict.  Do not send your verdict out with the note saying you have reached a verdict.  The verdict form contains questions, and the answers to those questions will constitute your verdict.  After the questions are completed, the foreperson should sign and date the verdict form and bring it into the courtroom with you when I call you back to deliver your verdict.  In the courtroom, when delivering your verdict, your foreperson and only your foreperson will speak for you, unless I direct otherwise.

***

36

Your oath sums up your duty – and that is – you will, without fear or favor to any persons, conscientiously and truly try the issues before you according to the evidence given to you in court under the law.

DATED: January 17, 2018                    Respectfully submitted,

                                           /s/ Ramon A. Rasco
                                           Robert C. Josefsberg (Fla. Bar No. 040856)
                                           rjosefsberg@podhurst.com
                                           Ramon A. Rasco (Fla. Bar No. 0617334)
                                           rrasco@podhurst.com
                                           PODHURST ORSECK, P.A.
                                           SunTrust International Center
                                           One SE Third Avenue, Suite 2700
                                           Miami, FL 33131
                                           (305) 358-2800

                                           *Counsel for all Plaintiffs*

                                           Steven M. Steingard
                                           ssteingard@kohnswift.com
                                           Stephen H. Schwartz
                                           sschwartz@kohnswift.com
                                           Neil L. Glazer
                                           nglazer@kohnswift.com
                                           KOHN, SWIFT & GRAF, P.C.
                                           One South Broad Street, Suite 2100
                                           Philadelphia, PA 19107
                                           (215) 238-1700

                                           Gregory P. Hansel (Fla. Bar No. 607101)
                                           ghansel@preti.com
                                           Jeffrey D. Talbert
                                           jtalbert@preti.com
                                           PRETI, FLAHERTY BELIVEAU
                                           & PACHIOS LLP
                                           One City Center
                                           P.O. Box 9546
                                           Portland, ME 04112-9546
                                           (207) 791-3000

Gary M. Osen
gosen@osenlaw.com
Ari Ungar
aungar@osenlaw.com
Aaron Schlanger
aschlanger@osenlaw.com
Peter Raven-Hansen
pravenhansen@gmail.com
OSEN LLC
2 University Plaza, Suite 402
Hackensack, New Jersey 07601
(201) 265-6400

Beth J. Kushner
VON BRIESEN &ROPER, S.C.
411 East Wisconsin Avenue, Suite 700
Milwaukee, WI 53202
(414) 287-1373

*Counsel for Plaintiffs Tania Julin, et al.*

Steve W. Berman
Hagens Berman Sobol Shapiro LLP
1918 Eighth Ave, Suite 3300
Seattle, WA 98101
Telephone: 206-623-7292
Facsimile: 206-623-0549
steve@hbsslaw.com

Nathaniel A. Tarnor, Esq.
Hagens Berman Sobol Shapiro LLP
555 Fifth Avenue, Suite 1700
New York, NY 10017
Telephone: 212-752-5455
Facsimile: 212-210-3980
nathant@hbsslaw.com

*Counsel for Plaintiffs Olivia Pescatore et al.*
*and Gregory Sparrow on behalf of the*
*Estate of Jane Pescatore Sparrow*

## CERTIFICATE OF SERVICE

I, Ramon A. Rasco, hereby certify that on January 23, 2018, I caused the above document to be served by Electronic Mail in accordance with the Federal Rules of Civil Procedure upon the following counsel for Defendant:

**Michael L. Cioffi, Esq.**
Blank Rome, LLP
1700 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
Email: cioffi@blankrome.com

**Thomas H. Stewart, Esq.**
Blank Rome, LLP
1700 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
Email: stewart@blankrom.com

**Frank A. Dante, Esq.**
Blank Rome, LLP
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Email: dante@blankrome.com

/s/ Ramon A. Rasco_____
Ramon A. Rasco