**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No. 08-md-01916-KAM

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION

This Document Relates to
ALL ATS ACTIONS
_____/

**PLAINTIFFS' MOTION TO MODIFY OR AMEND THE COURT'S ORDER [DE 1902]**
**REGARDING PROCEDURES FOR WITNESS DEPOSITIONS IN COLOMBIA**

**I.    Introduction**

Plaintiffs respectfully request modification or amendment of the Court's April 16 Order, DE 1902, regarding depositions in Colombia, to allow use of additional methods under the Hague Evidence Convention, and/or other methods permitted by federal law and Colombian law, for voluntary depositions of non-paramilitary witnesses. The Court's Order left open the possibility that the parties could "demonstrate[] to the Court another mechanism to swear witnesses under penalty of perjury enforceable in Colombia, in conjunction with an *advance* request for leave of Court to take the deposition of a witness in Colombia willing to appear without a summons from a Colombian court." DE 1902 at 2.

While resort to the Convention's letter of request procedure is necessary with respect to witnesses that must be compelled to appear, both Federal Rule of Civil Procedure 28(b)(1) and the Convention itself provide alternative methods for taking foreign depositions of willing witnesses under oath. Plaintiffs demonstrate herein that taking depositions by commission pursuant to the Hague Convention, or alternatively before a Colombian notary or consular official, meet the Court's requirements.

1

These alternatives are expressly authorized by Colombia, are more frequently used and more efficient than letters of request, will be substantially less burdensome for the Colombian government, and avoid potential safety and security concerns presented by letters of request proceedings. And while Rule 28(b)(1) does not require that testimony given under a lawfully authorized oath would *also* be subject to penalty of perjury in the place of examination, testimony provided under each proposed alternative would in fact be subject to penalty of perjury in Colombia. Indeed, it is the letters of request procedure that does *not* guarantee such an oath.

In addition, Plaintiffs also request certain modifications of the Court's Order with respect to the timing and notice requirements for depositions pursuant to a letter of request. For those proceedings, the scheduling is controlled by the Colombian government and not by Plaintiffs. Plaintiffs thus request that, while they will continue to keep all parties informed of information from the Colombian authorities as they receive it, depositions may proceed so long as the Colombian authorities provide complete information at least fourteen days prior to the deposition.

## II.    Background

### A.  The Court's order

On April 16, this Court issued an order requiring that, for the time being, all deposition testimony in Colombia must be taken pursuant to the letters of request procedure of the Hague Evidence Convention. DE 1902 at 1-2. Additionally, the Court's order prescribed strict notice procedures for proceedings in Colombia, ruling that the party seeking the letters of request must both obtain notice of scheduling from the Colombian government at least 30 days in advance, and make all arrangements for court reporters and interpreters within one day of receipt of such notice.[1]

---

[1] On April 11, 2018, Chiquita filed its Time-Sensitive Motion for a Protective Order Concerning Colombian Depositions. DE 1889. On April 12, 2018, at 10:57 a.m., the Court entered an order directing expedited briefing, with Plaintiffs' response due that day at 5:00 p.m.

**B.  Upcoming depositions**

Since the Court's Order, Plaintiffs' counsel have continued to keep Chiquita fully informed of notices from the Colombian authorities concerning additional witnesses pursuant to the letters of request procedure. Plaintiffs took one such deposition on June 29. Plaintiffs have also attempted with the same court to schedule several other witnesses noticed by Colombian authorities, but court

---

When the Court directing expedited briefing, Plaintiffs' counsel James K. Green, who was handling the depositions in question, was out of town in Miami at an oral argument before the Eleventh Circuit. (Plaintiffs' counsel Marco Simons, who generally led the briefing of legal issues before the Court, was driving to New Haven for a human rights conference at Yale Law School.) Mr. Green rushed back and prepared a rushed response, with limited contributions from other counsel, that contained mistakes and did not adequately address alternatives to the letters of request procedure, including mechanism to swear witnesses under penalty of perjury enforceable in Colombia. Because Mr. Green's assistant was at home on medical leave, he did not want to burden her unless necessary, and asked Mr. Scarola's office to file the motion, which it did at approximately 5 p.m. DE 1895. Given the rushed response and unavailability of counsel during the briefing period, Mr. Green and other Plaintiffs' counsel prepared a corrected response to correct mistakes and address alternatives to the letters of request procedure. They then tried repeatedly to file the corrected response that evening beginning at approximately 6:15 p.m. but were unable to do so because it had been filed by Mr. Scarola's office. When they realized they could not file the corrected response that evening, they emailed the unfiled corrected response to Chiquita counsel at approximately 9 p.m. Plaintiffs' counsel were unable to file until Mr. Scarola's office opened the next morning and filed the corrected response. DE 1897. *See* Green Decl. ¶¶ 21-25.

Chiquita objected to the late filing, stating "[t]he second brief is disturbing because it is a blatant attempt to subvert the briefing time limits ordered by the Court's Order . . . . The suspicious background to the drafting, service, and filing of plaintiffs' second brief proves this point. At exactly the same time as Mr. Scarola filed the plaintiff's first brief, New Jersey Plaintiffs' counsel was leaving multiple voicemail messages for Chiquita's counsel that they needed a 1-2 hour extension to file their response to Chiquita's Motion." DE 1900. The New Jersey Plaintiffs' counsel who left those messages was working with Mr. Green on the filing; cooperating plaintiffs' counsel regularly attempt to collaborate on briefing where the issues affect all of their teams, as they consider such collaboration to be in the spirit of the MDL and to be more efficient than presenting the Court with separate filings.

The Court rejected the corrected response as untimely. Because the Court did not accept Plaintiffs' corrected opposition, it is unclear whether the Court was in possession of all of the facts when it issued its order. The Court may have been under a misimpression that the Plaintiffs had withheld information from Defendants regarding proceedings in Colombia, or not promptly informed them of notifications from the Colombian government. As shown in the attached Declaration, Plaintiffs kept Chiquita fully informed about the Arboleda deposition at all times, and Chiquita's allegations to the contrary are apparently founded only on their disbelief in the information actually provided by the Colombian authorities. *See* Green Decl. ¶¶ 2-11 & Exs. 1-3.

personnel have indicated that because of their busy docket they have very little flexibility – they can only do these proceedings on one afternoon every other week. Green Decl. ¶ 15.[2]

On May 16, Plaintiffs also received notice from another Colombian court regarding the deposition of another witness, Irving Bernal, in late July. *Id.* ¶ 18. Plaintiffs issued a notice for this deposition on the same day – over two months' before the deposition – but had to rush to issue the deposition notice in order to comply with the Court's Order that notice be given within one day of receiving confirmation from the Colombian court. *Id.* ¶¶ 19-20. This caused the misunderstanding that resulted in a motion from Paul Wolf, *see* DE 1917.

There still remain multiple other witnesses, for whom letters of request were issued, about which Plaintiffs' counsel have received no notice from the Colombian courts. Green Decl. ¶ 14.

### C.  Additional witnesses

To date, Plaintiffs' counsel have only sought letters of request for witnesses that they did not believe would appear unless compelled to do so – chiefly, former paramilitaries and their associates. There are numerous other potential witnesses in Colombia, however, including witnesses relevant to bellwether plaintiffs' individual cases – family members and witnesses to killings – as well as people with relevant knowledge of the situation in Colombia. Unless Plaintiffs can presently secure visas for these witnesses to attend trial, Plaintiffs will need to depose them now.[3] Ordinarily, parties would not use the cumbersome letters of request process for such

---

[2] Chiquita's counsel has suggested that it would be better to schedule these proceedings consecutively, in blocks of multiple witnesses, and Plaintiffs have attempted to work cooperatively with Chiquita to accomplish that. However, on a call between Plaintiffs' counsel, Chiquita's counsel, and Colombian court personnel on May 23, the Colombian authorities specifically rejected the request to schedule proceedings in blocks of consecutive days, because the judge's schedule was extremely busy. Green Decl. ¶ 17.

[3] The "New Jersey" Plaintiffs had asked the Court for permission to depose such witnesses once the trial selection had been made, but the Court denied this request. DE 1875.

witnesses willing to appear without compulsion.

### III.   The letters of request process is neither the exclusive method, nor the preferred method, for taking depositions of foreign witnesses willing to appear voluntarily.

As this Court has previously recognized, the letters of request procedure under the Hague Evidence Convention is neither the "exclusive avenue for obtaining discovery in a foreign country," "nor is it necessarily even the means of first resort." DE 759 at 15 (citing *Societe Nationale Industrielle Aerospatiale v. U.S. District Court*, 482 U.S. 522 (1987)). Under Rule 28(b)(1), there are four ways to obtain a deposition in a foreign country: (A) under a treaty or convention; (B) under a letter of request; (C) "on notice, before a person authorized to administer oaths either by federal law or by the law in the place of examination," or (D) "before a person commissioned by the court to administer any necessary oath and take testimony." Fed. R. Civ. P. 28(b)(1). *See also e.g. Mujica v. Occidental Petroleum Corp.*, 381 F. Supp. 2d 1134, 1151 (C.D. Cal. 2005) (recognizing in case arising out of Colombia that Hague Convention was not exclusive; Rule 28 provided four ways to seek foreign depositions). While "the letter of request technique is used when there is a need to employ a foreign court's compulsory powers," depositions on notice and by commission are utilized where a witness is willing to be deposed. *Pain v. United Techs. Corp.*, 637 F.2d 775, 788 n.67 (D.C. Cir. 1980).[4]

When a letter of request is issued, the burdens of scheduling the proceeding and procuring the witness's presence fall on the foreign government. *See, e.g.*, DE 1546 at 8 (recognizing Convention requests "impose some burden on a foreign country"); *Calixto v. Watson Bowman Acme Corp.*, No. 07-60077-CIV-ZLOCH, 2009 U.S. Dist. LEXIS 111659, at *60-61 (S.D. Fla.

---

[4] "Letters of request," which is the procedure provided for in Chapter I of the Hague Evidence Convention, is sometimes used interchangeably with "letters rogatory," which are used to request assistance from a country that is not a signatory to the convention. *See* Fed. R. Civ. P. 28 advisory committee's notes (1993); 6-28 Moore's Fed. Prac. § 28.12[1].

Nov. 16, 2009) (court must consider "other methods of obtaining the information sought before resorting to the Hague Convention procedures" since such requests "impose some burden on a foreign country"). First, it falls on its "Central Authority," the government office designated to receive such letters, and then on the individual Colombian officials involved in the proceeding. *See* Hague Convention, Art. 2. In executing the request, the foreign government applies its own laws and typically its own procedures. *Id.* Art. 9.[5] Once transmitted, neither the parties nor the issuing court retain control over the execution of the letter; the process is "wholly within the control of the foreign authority." R. Doak Bishop, *Service of Process and Discovery in International Tort Litigation,* 23 Tort & Ins. L.J. 70, 89 (1987); *see also e.g. Am. Gen. Life Ins. Co. v. Lantigua,* No. 3:13-cv-1363, 2015 U.S. Dist. LEXIS 27870, at *6 (M.D. Fla. Mar. 3, 2015) (noting, in issuing letters of request, that "[t]he Court . . . does not control the discovery process in Venezuela and cannot guarantee any particular method of examination"). Indeed, Chiquita's counsel has agreed "that generally we are bound by the decisions of the Colombian authorities regarding the dates and venues for witnesses who are being compelled to testify via Letters Rogatory." DE 1889-3 at 6.

Plaintiffs agree that the letters procedure is necessary where witnesses will only appear under compulsion, *see e.g.* DE 759 (granting letters of request to compel testimony of witness unlikely to cooperate), and for incarcerated witnesses where the Colombian authorities' cooperation is necessary for access to them. But with respect to willing witnesses, Chiquita has not shown that letters of request are necessary when more efficient methods for obtaining testimony under oath are available that would minimize the burden on the Colombian government.

---

[5] Articles 3(h) and (i) allow the requesting State to request use of particular procedures, for example, to allow the parties' attorneys to question the witness orally or that the witness be placed under oath. The executing authority is generally expected to follow such requests unless it would be "incompatible" with their laws, or if it is not possible either "by reason of its internal practice and procedure or by reason of practical difficulties." Art 9.

**A. Use of non-compulsory procedures for taking depositions, instead of letters of request, is extremely common and expressly allowed in Colombia.**

The notice and commission methods of taking foreign depositions under oath are often referred to as "voluntary" procedures because they do not require resort to a court's compulsory power to ensure attendance. *See e.g. Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.,* 482 U.S. 522, 559-60 (1987) (Blackmun, J. concurring in part). Unless the country has placed restrictions on either process, which Colombia has not, these procedures take place without the need to involve foreign judicial authorities. *See e.g. Reiss v. Societe Centrale Du Groupe Des Assurances Nationales*, 246 F. Supp. 2d 285, 290 (S.D.N.Y. 2003).

Depositions on notice, the most common method, may be taken before anyone authorized to administer an oath "either" by the law of "the place of the examination," *or by the law of the United States*. Fed. R. Civ. P. 28(b)(1)(C). Usually, the parties meet the oath requirement by a simple stipulation: "[T]he time-honored solution is for both sides to stipulate on the record that the [U.S.-licensed] court reporter can swear in the witness" under Rule 29. Catherine Beeny, Optima Juris, *18 Things You Should Know about International Depositions in 2018* (Jan. 11, 2018), at http://www.optimajuris.com/international-deposition-blog/18-things-know-international-depositions-2018-3162/; *see* Fed. R. Civ. P. 29(a) ("parties may stipulate that . . . a deposition may be taken before any person, at any time or place"). Chiquita has, however, refused to do so.

Chiquita's refusal to stipulate does not mean that depositions upon notice are impossible, because there are other options for administering a legally effective oath. First, a U.S. court may issue a commission under Rule 28(b)(1)(D), designating a person by name or by "descriptive title" to administer the oath in foreign depositions. Fed. R. Civ. P. 28(b)(3). Any disinterested person may be appointed as commissioner, including private parties, but it is frequently a U.S. court reporter. *See e.g.* Hague Conference on Private International Law Permanent Bureau, Practical

Handbook on the Operation of the Evidence Convention, at 133-34 n. 569 (2016). "[T]he appointment of a person by commission in itself confers power upon" the person or category of persons to "administer *any necessary oath*." Fed. R. Civ. P. 28 adv. comm. note (emphasis added). Unlike with letters of request, a commission is under the control of the court issuing it and evidence is taken pursuant to that court's procedure. *See, e.g., Volkswagenwerk Aktiengesellschaft v. Superior Court*, 33 Cal. App. 3d 503, 507 (1973) ("An important distinction is that the commission is entirely under control of the court issuing it"); Bishop, *supra*, 23 Tort & Ins. L.J. at 87.

Notably, taking a deposition before a commissioner is also approved under the Hague Evidence Convention. Like Rule 28, the Hague Convention "contemplates means of assisting parties to obtain evidence abroad from witnesses who will testify voluntarily.*" Reiss,* 246 F. Supp. 2d at 290. Where a witness can be deposed "without compulsion," Article 17 of the Convention provides for depositions by "a person duly appointed as a commissioner" by the court of origin, instead of by letters of requests.[6] *See e.g. In re Vitamin Antitrust Litig*., No. 99-197, 2000 U.S. Dist. LEXIS 20976, *83 (D.D.C. Aug. 15, 2000) ("Taking of evidence on a purely voluntary basis is available under Chapter II of the Hague Convention"). A commissioner "may take all kinds of evidence which are not incompatible with the law of the State where the evidence is taken," "shall have power . . . to administer an oath," and may take evidence pursuant to the procedures of the court where the suit is pending. Art 21(a) & (d). States may also permit additional methods of taking evidence and permit the taking of evidence upon less restrictive conditions. Art. 27(b)-(c).

"These voluntary discovery procedures . . . are used far more frequently in practice than

---

[6] Article 16 of the Convention also permits voluntary proceedings before a diplomatic officer or consular agent. Both Colombia and the United States are parties to the Convention, and both Article 16 and Article 17 are applicable in Colombia. *See* "Colombia - Central Authority (Art. 2) and practical information," Hague Conference on Private International Law, https://www.hcch.net/en/states/authorities/details3/?aid=944.

is compulsory discovery pursuant to letters of request." *Aerospatiale,* 482 U.S. at 559-60

(Blackmun, J. concurring in part). Letters of request require intervention by the foreign

government, are executed pursuant to its laws, and are "wholly" under its control.  Bishop, *supra,*

23 Tort & Ins. L.J. at 87. *See also, e.g.*, *United States v. Salim,* 855 F.2d 944, 953 (2d Cir. 1988)

(an American court, by using letters process, "actively s[eeks] the aid of the [foreign] government

and invoke[s] the mechanisms provided by the [foreign] judiciary for the taking of testimony" and

"therefore must be willing to acquiesce" to its application of foreign law). Recognizing they are a

more cumbersome method, in *Aerospatiale,* the Supreme Court explained that it would not be wise

or efficient to require use of the letters of request process before using other methods:

> In many situations the Letter of Request procedure authorized by the Convention
> would be unduly time consuming and expensive, as well as less certain to produce
> needed evidence than direct use of the Federal Rules. A rule of first resort in all
> cases would therefore be inconsistent with the overriding interest in the "just,
> speedy, and inexpensive determination" of litigation in our courts.

*Id.* at 542-43 (citing Fed. Rule Civ. Proc. 1).[7]

Colombia fully embraces the alternatives to letters of request for non-compulsory

depositions. As the U.S. State Department recognizes, Colombia allows "voluntary depositions of

willing witnesses in civil and commercial matters." U.S. State Department, Judicial Assistance

Country    Information:    Colombia,    https://travel.state.gov/content/travel/en/legal/Judicial-

Assistance-Country-Information/ Colombia.html. Depositions "may be taken by U.S. consular

---

[7] *See also, e.g., Mujica*, 381 F. Supp. 2d at 1151 (letters process "is expensive and time-consuming"); *In re Air Crash at Taipei, Taiwan*, No. MDL 1394, 2001 U.S. Dist. LEXIS 19981, *21 (C.D. Cal. Nov. 20, 2001) (concluding depositions could "be taken inexpensively" by notice "rather than the more cumbersome and expensive" Convention procedures); Timothy P. Harkness *et al.*, Federal Judicial Center International Litigation Guide, *Discovery in International Civil Litigation: A Guide for Judges,* at 7 (2015) ("When voluntary cooperation is not an option" litigants may use letters of request, "although [they] . . . may involve complicated considerations of foreign law, sovereignty, and international comity"); *cf. Reiss,* 246 F. Supp. 2d at 290 (notice and commission procedures may be "feasible in a much more timely manner").

officers *or by private attorneys* at the U.S. Embassy or at another location such as a hotel or office, *either on notice or pursuant to a commission*." *Id.* (emphasis added). Where, as here, other deposition procedures are available that "would not require the participation of the [foreign] authorities in anyway," "[c]onsiderations of comity do not favor" resort to letters of request. *Madanes v. Madanes*, 199 F.R.D. 135, 141 (S.D.N.Y. 2001). There is no reason to seek the government's intervention to depose willing witnesses where Colombia has expressly authorized more efficient, less burdensome means. *Accord Promotional Containers, Inc. v. Aztec Concrete Accessories, Inc.,* No. 04-336-JBC, 2006 U.S. Dist. LEXIS 16322, at *5-6 (E.D. Ky. Apr. 4, 2006) (deposition of "willing non-party witness" in Germany who "agree[d] to be deposed" need not utilize Convention procedures where there was "no indication that German law prohibits a witness from voluntarily submitting to a deposition in connection with [U.S.] litigation").

Arrangement of depositions of willing witnesses without compulsion under both Rule 28 and the Convention is extremely common practice in countries that allow it. The Center for Justice and Accountability, a respected international justice organization which has litigated numerous transnational human rights cases in U.S. courts, has never used the compulsory procedures under the Hague Convention – *all* of their foreign depositions have been done on a "voluntary" basis. Decl. of Kathleen Roberts, DE 1895. According to Optima Juris, a leading agency for international depositions, "nine out of ten depositions abroad involve willing witnesses, or witnesses who have voluntarily agreed to appear." Optima Juris, *Planning an International Deposition – Guidelines for Attorneys – Part I* (Sept. 25, 2014), http://www.optimajuris.com/international-deposition-blog/planning-an-international-deposition-guidelines-for-attorneys-part-i-1067/; *see also* Olender Legal Services, *Swearing in Witnesses on International Depositions,* http://www.olenderlegal.com/swearing-witnesses-international-depositions (voluntary

appearances are the norm "in over 90% of U.S. depositions conducted abroad").

Requiring letters of request procedures with respect to every witness, even if they are willing to be deposed, will only make this litigation more expensive and less efficient. This is especially inadvisable where many of the burdens would fall on the Colombian government.

### B. The letters of request process does not guarantee an oath under penalty of perjury, and presents safety and security risks to both witnesses and counsel.

Not only is the letters of request process cumbersome and typically not used for willing witnesses, it has specific disadvantages that are highly relevant to this case. First, while the Court sought a process that "guarantees the testimony will be given under oath, subject to the penalty of perjury under Colombian law," DE 1902 at 2, this is not true for the letters process. Second, that process presents serious potential safety and security risks for witnesses and counsel.

In a letters of request proceeding, the parties are not in control of the oath. Although the parties can make suggestions, they have to follow whatever the Colombian judge directs. In the proceedings that have taken place thus far, the judge did take an oath, but there is no guarantee that this will continue to occur. For this reason – that foreign authorities are in control of such proceeding – federal law specifically does *not* require that they be conducted under oath. *See* Fed. R. Civ. P. 28(b)(4) ("Evidence obtained in response to a letter of request need not be excluded merely . . . because the testimony was not taken under oath . . . ."); *United States v. Salim,* 855 F.2d 944, 952 (2d Cir. 1988) (deposition testimony taken pursuant to letter of request was properly admitted in evidence and used against defendant in criminal prosecution, even though witness "was not under oath to tell the truth"). It is the *other* procedures that require an oath.

Additionally, the letters of request procedure presents security and safety risks (as well as inconvenience), to both counsel and witnesses. These proceedings generally take place in the

courthouse where the witness lives[8] – which, for many witnesses, will be the town of Apartadó, in the Uraba region of Colombia. Counsel for Chiquita have already argued that "Apartado is a rural city about 300 kilometers from Medellin, more than 6 hours by car, through a very dangerous part of the country, notable for recent unrest," and that it is "unprofessional and unsafe" to proceed with depositions there without "security arrangements." DE 1889 at 3. The proceedings must also take place at a known location (the courthouse), where the parties do not control the environment. While the U.S. State Department generally classifies Colombia as "Level 2" for travel risk ("Exercise Increased Caution"), Apartadó is within an area ("Antioquia department north of Medellin") that falls under "Level 3: Reconsider travel."[9]

By contrast, the other procedures described herein would not only provide the parties with greater flexibility for scheduling depositions of these witnesses, they would also allow depositions to be conducted under conditions that are safer and more convenient for witnesses and counsel. Witnesses could be brought to Bogotá, Medellín, or other "Level 2" locations for depositions, and blocks of depositions could be scheduled rather than being subject to the limited availability of the Colombian courts. Depositions could take place in law offices or hotel conference rooms where the parties would be in control of the environment – just as is normally done in U.S. civil litigation.

### C. At least two alternatives under Rule 28 allow binding oaths to witnesses in non-compulsory depositions that will be subject to penalty of perjury in Colombia.

As noted above, the most common solution to these issues – giving the parties control over the timing, the location, and the oath – is to stipulate to allow a U.S. court reporter to administer the oath under Rule 29. Chiquita's refusal to do so does not leave the Court without options,

---

[8] Depositions for some parolees appear to have been assigned to the court supervising their release.
[9]   U.S.   State   Dep't,   Colombia   Travel   Advisory,   at https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/colombia-travel-advisory.html.

however. Issuance of a commission to a U.S. court reporter under Rule 28(b)(1)(D) is the simplest and most efficient way to ensure the parties may take depositions of willing witnesses under oath without unnecessarily burdening the Colombian Government. The commission itself confers the power to administer "*any necessary oath*," Rule 28(b)(1)(D) (emphasis added), and this authority is also recognized under the Convention. Hague Evidence Convention, Art. 21(a) (commissioner "shall have power… to administer an oath").

Plaintiffs thus seek the issuance of a general commission to the court reporter that has participated in the Colombian depositions to date, as reflected in the Proposed Order. Additionally, Plaintiffs seek permission to return to the Court for additional commissions as necessary.

While Plaintiffs believe a commission is the best choice, Rule 28 provides at least two additional alternatives to the letters process for properly administering an oath in Colombia.

First, an oath may be administered by a Colombian notary, in the same manner that U.S. court reporters do; a court reporter's authority to administer an oath, of course, derives from the fact that he or she is also a notary. (A U.S. court reporter would still transcribe the deposition, just as the court reporter does when the Colombian court administers the oath.) This constitutes proper authority under Rule 28(b)(1)(C) ("a person authorized . . . in the place of examination") and, as with a commissioner, the parties could control the form of the oath administered. The Court could authorize this procedure.

Second, an oath may be administered to a willing foreign witness in Colombia by a U.S. consular officer, who is authorized by federal law to administer oaths abroad in foreign depositions, *see* 22 U.S. § 4215; 22 C.F.R. § 92.4(a)-(b). Again, this authority is likewise recognized by the Convention. Art. 16; Art. 21(a) (consular officials "have power . . . to administer an oath." A deposition before a consular officer can be done either on notice or pursuant to a

13

commission, 22 C.F.R. § 92.55(a). But while relying on consular officials would be superior to letters of request for voluntarily depositions, it is still more cumbersome and expensive than issuing a commission to a U.S. court reporter or utilizing a Colombian notary. *See* 22 C.F.R. § 22.1(52) (schedule of fees for arranging, attending, and certifying depositions). And, like letters of request, this process requires burdening government officials and working on their schedules, which is unnecessary when other options with the same legal effect are available.

### D.  Plaintiffs' proposals would carry the penalty of perjury in Colombia.

This Court has ordered that alternatives to letters of request should proceed "under penalty of perjury enforceable in Colombia." DE 1902 at 2. [10] The alternatives proposed *would* be subject to Colombian perjury law to at least the same extent as testimony given under the letters procedures, and thus provide the heightened guarantees Chiquita seeks.

Article 442 of the Colombian Penal Code provides criminal penalties for "false testimony,"

---

[10] Contrary to Chiquita's suggestions, DE 1889 at 5, federal law does not require that, where a deposition proceeds abroad with a properly authorized and administered oath, local perjury law must attach to that testimony. Plaintiffs are aware of no case so holding, Indeed, with respect to foreign testimony in criminal trials, courts have rejected as "false" the suggestion "that an oath is meaningless without a perjury sanction." *United States v. Hafiz Muhammad Sher Ali Khan,* No. 11-20331-CR, 2012 U.S. Dist. LEXIS 188320, at *11 (S.D. Fla. Nov. 2, 2012). "Although perjury sanctions do encourage being truthful, oaths encourage being truthful in other ways and thus do not become meaningless absent a perjury sanction." *Id.*

Chiquita's cases, DE 1889 at 6-7, do not suggest otherwise. Both concerned failure to obtain Rule 28 authorization for the correct location in a telephone deposition, not the local enforceability of a properly authorized oath. *See Loucas G. Matsas Salvage & Towage Mar. Co. v. M/T Cold Spring I,* 1997 U.S. Dist. LEXIS 2415 at *5-7 (E.D. La. Mar. 5, 1997) (deposition "fail[ed] to comply with the rules" where witness in Poland, was administered oath remotely by court reporter in New Orleans who had not been authorized to administer oath in Poland). And in *Viveros v. Donahoe,* the court acknowledged that the problem – court reporter lacked Rule 28 authorization to administer oath in Mexico – could have been avoided if the parties had either stipulated to authorize the court reporter, or if they had used a consular officer, 2012 U.S. Dist. LEXIS 198427 at *22, 23 (C.D. Cal. May 22, 2012), without ever inquiring as to whether the oath would thereby be "*binding in that foreign country*." DE 1889 at 6 (emphasis original). Chiquita's cases simply confirm administration of an oath by someone authorized under U.S. law, Colombian law, or even by stipulation, is sufficient.

which attaches upon two conditions: the testimony must be under oath before a competent authority, and it must be in the context of a judicial (or administrative) action. *See* Green Decl. Ex. 5. As noted, plaintiffs' alternatives are valid methods of administering an oath, satisfying this element. The "judicial action" at issue here is the U.S. litigation – and that is true regardless of whether the venue for the testimony is a Colombian courtroom or a private conference room. In the Arboleda deposition, the Colombian judge made clear that "the case" at issue was the instant litigation. *See* Green Decl. Ex. 4 (Arboleda Tr.) at 6:6-12; *see also id.* at 5:1-13. All of the options presented would involve testimony in the same judicial proceeding – this one – and thus the "false testimony" law would apply equally to all of them. The "competent authority" in this case would be either the commissioner or consular official – both of whom are recognized as authorities authorized to administer an oath under the Hague Convention, which has been incorporated into Colombian domestic law, *see* Law 1282 of 2009 – or a Colombian notary, whose authority derives directly from Colombian domestic law.

Although not addressed in the Court's order, Chiquita has also raised the matter of the *content* of a legally-binding oath. Federal law is clear that there is no required form for such an oath: Rule 603 of the Federal Rules of Evidence only requires that witnesses be given "an oath or affirmation to testify truthfully," in "a form designed to impress that duty on the witness's conscience." *See, e.g. Salim,* 855 F.2d at 952 (Rule 603 satisfied in deposition pursuant to letter of request where foreign judge "took pains to impress upon [the witness] the need to answer truthfully, and the witness promised that she would do so").[11] To the extent that penalties of perjury

---

[11] Indeed, the classic form of a witness's oath – swearing "to tell the truth, the whole truth, and nothing but the truth," *e.g. Silva v. United States AG*, 448 F.3d 1229, 1252 (11th Cir. 2006) – does not reference perjury at all. *See also* 7 F.A.M. § 921(q)(1) (directing U.S. consular officers to issue oath in foreign witness depositions stating: "Do you solemnly swear (or affirm) that you will tell

are expressly referenced, federal law strongly suggests that, when testimony is taken for use in a U.S. proceeding, the best practice is to refer to penalties of perjury under U.S. law: this is the requirement for declarations taken outside the United States. *See* 28 U.S.C. § 1746. Nonetheless, Plaintiffs have no objection to the Court ordering that any oath given by a commissioner should refer both to U.S. perjury law and to the Colombian law of "false testimony." As noted above, this is in keeping with Rule 28, which provides that a commissioner may be authorized to administer "any necessary oath" Rule 28(b)(1)(D). Additionally, with a Colombian notary, the parties should be able to control the form of the oath and include similar language.

### E.  Plaintiffs propose to use these procedures only for non-paramilitary witnesses.

As noted above, Plaintiffs have, to date, principally used the letters of request procedure to seek testimony from former paramilitaries and their associates. Plaintiffs propose that the procedures described above be used for other categories of witnesses, such as: eyewitnesses to the deaths of decedents and/or harms to plaintiffs (including family members of decedents and/or plaintiffs); community leaders; former members of government; union leaders; human rights defenders; priests; and others from the relevant zones with essential knowledge of the context and facts alleged. Plaintiffs have named such witnesses in their initial disclosures, and have already indicated they intend to call such witnesses.

Plaintiffs wish to emphasize that no "allegations of witness payments, bribery, and witness tampering" such as those Chiquita raised in its Motion, DE 1889 at 6, have been made in this case with regards to any of these witnesses. No such allegations have been leveled at the undersigned counsel, of course – and we have disassociated from coordinating with the counsel that have been

---

the truth, the whole truth, and nothing but the truth, in answer to the several questions now to be put to you?").

accused of such behavior – but for those counsel against whom such allegations have been made, they have been limited to former paramilitaries.

**IV.     Modification of the Court's Order is also warranted with respect to depositions pursuant to letters of request.**

With respect to any depositions conducted pursuant to the letter of request procedure, Plaintiffs respectfully request modification of the timing for the notice requirements in the Court's order, as well as the durational limitations.

**A.  Certain notice and timing requirements should be modified, as these matters are outside Plaintiffs' control.**

As explained above, the letters process, unlike the notice and commission procedures, is entirely under the control of the Colombian Government. Plaintiffs' role is limited to transmitting the Court's letters of Request to the Colombian government, and then receiving their response, which leaves Plaintiffs little ability to enforce the Court's requirements.

The Court's order requires the party seeking testimony to provide "full notice… **THIRTY (30) DAYS** prior to the proposed deposition date, or within one day of receipt of scheduling information from the Colombian authorities, whichever is earlier," DE 1902 at 2, and that such notice must include "the name and contact information of the court reporter, interpreter and videographer." *Id.* at 3. Plaintiffs can commit to promptly provide the information sent to them by the Colombian government, as they have been doing. But Plaintiffs lack control over the timing and thus the ability to plan the details. Plaintiffs cannot start making these arrangements until given notice by the Colombian government. Under the Court's current order, Plaintiffs have only one day upon receipt of a date from the government to determine all logistics for the deposition, including working out the availability for travel of a court reporter, interpreter and videographer.

It is this procedure that led to the recent conflict with Paul Wolf regarding the Irving Bernal

deposition. Plaintiffs received notice from the Colombian court on May 16. Although the Court had ordered Mr. Wolf to take the lead on this deposition, Plaintiffs' counsel was concerned that Mr. Wolf had not issued a notice and that he had not shown diligence in pursuing other Colombian proceedings. *See* DE 1917 (Mr. Wolf acknowledging that he "dropp[ed] the ball" on scheduling another proceeding, in violation of the Court's order). Worried that the failure to abide by the Court's one-day notice requirement would result in an inability to take this deposition, Plaintiffs' counsel rushed to issue the notice. This should not be necessary; as long as Plaintiffs' counsel keep Chiquita's counsel informed of notices from the Colombian court, there is no need to scramble to make all the necessary arrangements with one day.

Plaintiffs therefore respectfully request the Court modify the order to require that Plaintiffs continue to notify counsel of all communications from the Colombian government within one business day – ensuring that all counsel have the same degree of notice – but that "full" notice, with the information for interpreters, court reporters, and videographers, need be provided at least 14 days in advance of these proceedings, consistent with the requirement in our local rules for witnesses located out of the district. However, if this Court also allows the use of depositions on notice, or by commission for depositions of certain willing witnesses, it is much easier to provide 30 days' notice, including notice of the court reporter and interpreter for such depositions, as these procedures enable the parties to agree to dates in advance.

**B.  The duration should be extended due to translation and multiple parties.**

This Court also limited all depositions in Colombia to seven hours, despite the fact that 1) these depositions will proceed in translation and 2) not just multiple parties, but multiple sides, are entitled to question each witness. Indeed, the Court specifically provided that Plaintiffs and Defendants shall both have equal time. Both considerations merit extending the time, either

voluntarily where possible or if the Colombian court allows it.

Courts have recognized that extensions are generally warranted where depositions proceed in translation, "based on the rule that the use of an interpreter doubles the deposition time." *Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2015 U.S. Dist. LEXIS 59267, at *19 (S.D. Fla. May 5, 2015). Indeed, when the seven-hour rule was instituted in the 2000 Amendments to the Federal Rules, the Advisory Committee specifically noted that "if the witness needs an interpreter, that may prolong the examination." Fed. R. Civ. P. 30 adv. comm. note. Practice materials also recognize this fact. *See, e.g.,* Craig Allely, "Key Steps to Successful Foreign Depositions," American Bar Association Litigation News, March 27, 2012 (stating that a "good rule of thumb" for depositions requiring translation, "is that it will take at least two to three times longer to conduct."); Lisa Wood, "Translation Protocols: The Time has Come," Antitrust, Spring 2015, 29-SPG Antitrust 67 ("To the extent the interpreter is used for all or nearly all of the deposition, the time limit . . . shall be doubled.").

Additionally, the participation of multiple parties warrants an extension. Although Plaintiffs have requested all letters of request to date – Defendants have not indicated any desire to depose any witnesses in Colombia – the Court granted Defendants *equal* time to Plaintiffs.[12] Aside from the unresolved coordination problems among multiple groups of Plaintiffs and Defendants, this unfairly limits Plaintiffs' ability to examine witnesses in proceedings that they initiated. The Advisory Committee notes: "In multi-party cases, the need for each party to examine the witness may warrant additional time, although duplicative questioning should be avoided and parties with similar interests should strive to designate one lawyer to question about areas of

---

[12] Plaintiffs also believe it is inequitable to require Plaintiffs to pay for all arrangements for each deposition while Defendants are given equal time.

common interest." Fed. R. Civ. P. 30 adv. comm. note. Even if all Plaintiffs were coordinating, this would not change the fact that they are given half the usual time for each examination.

The effect of the Court's order is that Plaintiffs have the equivalent of less than two hours, at most, of time to examine each witness. For some witnesses, this may be sufficient. But if it is not, the burden of seeking additional time is prohibitive – not only would it require a motion to the Court, but it would likely require the issuance of new letters of request.

## V.    Conclusion

Plaintiffs have met this Court's invitation to provide alternatives to the letters of request procedure, alternatives that comply with the law and are far less burdensome, and more convenient, for the parties and the Colombian courts. This Court should allow such procedures so that the parties may proceed with the orderly completion of discovery.

## CERTIFICATE OF CONFERENCE

Counsel for the movant has conferred in writing with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and has been unable to do so. Mr. Wolf responded that he opposed the motion as written, preferring the approach in his recently-filed motion (DE 1994); no other counsel responded.


DATED: July 9, 2018                    Respectfully submitted,

                                       /s/ James K. Green
                                       James K. Green, Esq.
                                       Florida Bar No:  229466
                                       JAMES K. GREEN, P.A.
                                       Suite 1650, Esperantè
                                       222 Lakeview Ave.
                                       West Palm Beach, FL  33401
                                       (561) 659-2029
                                       (561) 655-1357 (facsimile)
                                       One of Counsel for Plaintiffs

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that the foregoing document was filed with the Clerk of the Court using CM/ECF on this 9th day of July 2018. I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF.

/s/ James K. Green _____
James K. Green, Esq.