UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-MD-01916-KAM

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION

This Document Relates to ATS ACTION:

20-60831-CIV-MARRA (2020 N.J. Action)
(*Jane Doe 8 et al. v. Chiquita Brands Int'l, Inc.*)

_____/

ORDER GRANTING DEFENDANT CHIQUITA BRANDS
INTERNATIONAL, INC.'S MOTION TO DISMISS
2020 NEW JERSEY ACTION (Case No. 20-CIV-60831-MARRA) [DE 2664]

THIS CAUSE is before the Court on Defendant Chiquita Brands International, Inc.

("Chiquita")'s Motion to Dismiss the Newly-Filed (2020) New Jersey Complaint [DE 2664].  The

2020 New Jersey Plaintiffs have filed their Opposition to the Motion [DE 2682] and Defendant

Chiquita has filed its Reply [DE 2683].  For reasons which follow, the Court grants the motion and

dismisses this action as time barred under Rule12(b)(6).

I.      Background

Familiarity with the procedural history of the original New Jersey putative class action,

*Does 1-11 v. Chiquita Brands International*, *et al.* (Case No. 08-80421-CIV-MARRA) within the

context of this MDL proceeding is presumed.  Key elements from the procedural history of that

case, as relevant to the instant motion, are set forth as follows:

The original New Jersey putative class action complaint, filed July 19, 2007, named only

Chiquita as defendant, along with various fictitious "Moe" corporations and individuals. A Second

Amended Complaint, filed November 16, 2012, named Chiquita and several of its former

executives and employees as Individual Defendants (Freidheim, Hills, Kistinger, Olson, Keiser, Tsacalis). Five years later, on March 10, 2017, the putative named class representatives moved to file a third amended complaint against the two putative class defendants, seeking to add persons previously included as unnamed members of the putative class as additional named class representatives [DE 1289]. On March 27, 2017, the Court denied this motion, citing the "advanced stage of the litigation and imminent scheduling of [the] matter for trial." [DE 1315].

In between these two events, on March 11, 2017, the same subset of persons proposed as additional named class representatives in the original New Jersey action filed two new putative class actions against various former Chiquita executives in the Southern District of Florida, *Does 1-205 et al. v. Cyrus Freidheim and Charles Keiser (*Case No. 17-cv-80323) and the Southern District of Ohio, *Does 1-205 et al. v. Robert Olson, Robert Kistinger, William Tsaclais and John Ordman* (Case No. 17-cv-80547), cases now consolidated in this MDL. Chiquita was not named as a defendant in either case.

Two years later, in February 2019, the named class representatives in the original New Jersey Action moved for class certification under Fed. R. Civ. P. 23(b)(3) [DE 2290]. On May 31, 2019, the Court denied that motion [DE 2471]. No appeal was taken from this order.

Approximately one year later, on March 25, 2020, the named class representatives in the 2017 Ohio/Florida putative class actions filed the above-styled 2020 New Jersey Action, this time naming Chiquita Brands International Inc. as sole Defendant.[1] The 2020 New Jersey Complaint

---

[1] This is the same group of Plaintiffs offered as additional named class representatives in the original New Jersey Plaintiffs' unsuccessful bid to file a third amended complaint: The 2020 New Jersey Plaintiffs specifically identify themselves as persons drawn from the pool of unnamed members of the (failed) putative class described in that original New Jersey Action [2020 New Jersey Complaint, ¶ 1031].

asserts wrongful death claims against Chiquita, in addition to other torts, under New Jersey and Colombian law.[2]

The 2020 New Jersey Complaint alleges, under a section captioned "Jurisdiction," that "[t]he Court has jurisdiction over this case with respect to claims based on the laws of New Jersey, any other applicable state, and/or the laws of Colombia." [Case 20-CV-60831, 2020 NJ Complaint, DE 1, ¶ 3]. Since all Plaintiffs are alleged to be residents and citizens of Colombia, while Defendant Chiquita is alleged to be a corporation organized under the laws of New Jersey, headquartered in Fort Lauderdale, Florida, presumably the 2020 New Jersey Plaintiffs intend to invoke this Court's diversity of citizenship jurisdiction, pursuant to 28 U.S.C. § 1332(a)(2), over the asserted New Jersey and Colombian tort claims.

By its current motion, Chiquita seeks dismissal of the 2020 New Jersey Plaintiffs' Colombian law claims under Rule 12(b)(6) as time-barred under the ordinary ten-year Colombian statute of limitations. It also moves to dismiss the state law claims pursuant to this Court's prior rulings rejecting the extraterritorial reach of various state common laws.[3]

---

[2] The 2020 New Jersey Complaint asserts the following causes of action under New Jersey law: War Crimes; Crimes Against Humanity; Terrorism; Material Support to Terrorist Organizations; Extrajudicial Killing; Torture; Cruel, Inhuman or Degrading Treatment; Violation of the Right to Life, Liberty and Security of the Person; Gross Violations of Internationally Recognized Human Rights; Wrongful Death; Assault and Battery; Intentional Infliction of Emotional Distress; Negligent Infliction of Emotional Distress; Negligence and Negligent Hiring; Loss of Consortium. [Case No. 20-60831-CIV-MARRA] [Complaint, DE 1, ¶¶ 1032-1162]. The 2020 New Jersey Plaintiffs allege, in a footnote, the assertion of "analogous" claims against Chiquita under Colombian law under various sections of the Colombian Civil Code and the Colombian Criminal Code [Complaint, DE 1, ¶1022 (p. 139 n. 1)].

[3] As to the non-Colombian law claims asserted under New Jersey and "other applicable state" law, the 2020 New Jersey Plaintiffs recognize that this Court previously rejected application of state tort laws to claims arising from the extraterritorial deaths of their family members, and advise that they reassert these claims here solely for purposes of preserving them. Plaintiffs also contend, incorrectly, that they have "brought" Alien Tort Statute ("ATS") claims in this action, also for the stated purpose of preserving the claims. They acknowledge that the latter are foreclosed by *Cardona v. Chiquita Brands International*, 760 F.3d 1185 (11th Cir. 2014) (rejecting ATS claims based on extraterritorial conduct of Colombian paramilitaries against Colombian citizens) [DE 2682 pp. 4-5], but ask this Court to defer ruling on the viability of their purported ATS claims pending resolution of related issues of ATS statutory interpretation now before the U.S. Supreme Court in *Cargill Inc. v. Doe* and *Nestle USA Inc. v. Doe* [DE 2682 p. 4]. However, since the 2020 New Jersey Complaint does not allege any claims under the ATS or any other federal statutory authority, this Court finds no occasion to address or defer ruling on the viability of any hypothetical claims falling into this category.

## II.      Summary of Arguments

### A.  Chiquita's Limitations Defense

Chiquita contends that New Jersey choice-of-law rules govern in this diversity action, resulting in application of the Colombian ten-year ordinary statute of limitations, and any accompanying tolling rules.  Contending that this statute knows of no exception for civil actions based on crimes against humanity, class action tolling, or other equitable tolling precepts, Chiquita argues that Plaintiffs' Colombian law tort claims are time-barred on the face of the 2020 New Jersey Complaint.

To establish the relevant Colombia law, Chiquita offers the affidavit of a Colombian law expert, Professor Alberto Acevedo Rehbein [DE 2664-2].  Professor Acevedeo identifies Article 2536 of the Colombian Civil Code as the source of Colombia's ten-year "ordinary" statute of limitations, applicable to individual tort actions, a prescription which begins to run as of the occurrence of the damaging event. *Id*. at ¶¶ 8, 10.  He discusses certain circumstances under which the statute may be "suspended," such as the minority of a party, or a disruption caused by acts of "force majeure" rendering it impossible to file suit.  He contrasts these circumstances to an "interruption" of the statute, triggered by filing of a complaint against a defendant, or the (first) issuance of a written demand letter. *Id.*  at ¶¶13-14.  Professor Acevedo states that Colombian law otherwise "does not have a specific or equitable rule regarding the common law notion of equitable tolling" applicable in civil actions. *Id.* at ¶ 15.

---

Given the Plaintiffs' exposition on these items, the Court dismisses with prejudice all state law claims, declines to issue an advisory opinion on unpled ATS claims, and now turns its analysis to Chiquita's time-bar challenge to the Colombian law tort claims.

Further, while "group" actions brought on behalf of multiple claimants are authorized under Colombian law, Professor Acevedo states that the filing of such an action will not "interrupt" the running of the statute for any person beyond those named as members of the group, i.e. the "interruption" triggered by filing of a group action  will *not* extend to other individual actions not yet filed.  *Id.* at ¶¶ 16-17, 19.   Finally, Professor Acevedo identifies the underpinning policy rationale for the limitations, explaining that Colombia's prescriptions are intended to "ensure [] peaceful coexistence, grant certainty and ultimately, the right to peace, by limiting the uncertainty and unrest generated by never-ending disputes." *Id.* at ¶18, n. 12 (citing Ruling C-597/98 of Colombia's Constitutional Court).

### B.  Plaintiffs' Avoidance of Time-Bar

#### 1.  *American Pipe* Class Action Tolling

As a threshold proposition, Plaintiffs contend that their claims are preserved under application of the *American Pipe* class action tolling rule, as a matter of federal law, obviating the need to engage in a choice of law analysis.   Thus, regardless of whether the Colombian or New Jersey statute of limitation is in play, Plaintiffs argue that their claims were tolled during the pendency of the original New Jersey putative class action, and that their current Complaint is not barred, on its face, by statute of limitation applications.

*American Pipe* is a rule that tolls the time for absent class members to bring a claim while a class action is pending of which they are members.  *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).  The *American Pipe* case concerned the tolling of claims under a federal statute, the Sherman Act.  Invoking the rule here, as unnamed members of the putative class identified in the original New Jersey Action, the 2020 New Jersey Plaintiffs contend that their individual claims were tolled from the date that action was filed (July 19, 2007) up through the date on which class

certification was denied (May 31, 2019) [DE 2682, pp. 9-10, citing *In re Gen. American Life Ins. Co. Sales Practices Litig*, 391 F.3d 907, 915 (8th Cir. 2004)].

Alternatively, if *American Pipe* is not held applicable here, they contend that New Jersey choice-of-law precepts control, resulting in application of New Jersey limitations law and related tolling rules. They contend that a New Jersey analogue to *American Pipe* tolling is available, citing a New Jersey intermediate appellate court opinion holding that an unnamed class member's participation in a putative class action lawsuit tolls the running of the limitations period for his or her individual state law claims. *Staub v. Eastman Kodak Co*., 320 N.J. Super. 34, 726 A.2d 955, 966-67 (N.J. Sup. Ct. App. Div. 1999) (recognizing cross-jurisdictional class action tolling for state law claims).

### 2.   Colombian Law: Imprescriptibility of Crimes Against Humanity

As a third alternative, if *American Pipe* tolling is unavailable as a matter of federal law, or a New Jersey analogue, and Colombian law is found to control the limitations issue, Plaintiffs argue that their claims are not time-barred under Colombia's general ten-year statute of limitations because: (1) crimes against humanity are "imprescriptible" under Colombian law, as that law has predicted by their Colombian law expert  and  (2) Colombian law, again as predicted by their legal expert, would likely recognize a concept comparable  to "class action tolling," thereby tolling the statute for the term of the pendency of the original New Jersey putative class action.

As to their first argument, Plaintiffs' legal expert, Professor Jaime Alberto Arrubla-Paucar ("Arrubla"), proposes that Colombia's "ordinary" ten-year statute of limitations could "reasonably" be read to permit an exception for civil actions arising from "crimes against humanity," rendering such actions "imprescriptible." Professor Arrubla recognizes – concurring with  Chiquita's legal expert -- that "ordinary" tort claims under the Colombian Civil Code are

subject to a general ten-year statute of limitations, codified at Article 2536 of the Colombian Civil Code [DE 2682-1, ¶ 15], and that this limitations provision does not expressly recognize any equitable "tolling" exceptions.

Professor Arrubla also recognizes there "is no legal standard in Colombian legislation that expressly governs the imprescriptibility of civil suits arising from commission of crimes against humanity," and further notes that the Supreme Court of Justice, Colombia, the nation's "highest body of ordinary jurisprudence … has not expressly manifested on the applicability or imprescriptibility" of such torts.   *Id* at ¶ 25.  However, because the Colombian Criminal Code considers "crimes of genocide, crimes against humanity and war crimes" to be "imprescriptible," *id*. at ¶¶ 22-23, and because the Attorney General of the Nation's office has specifically recognized "payments or financing made by banana companies to paramilitary groups" as crimes against humanity," *id*. at ¶ 24, Professor Arrubla concludes that it is "reasonable" to interpret Colombia's Civil Code in the same manner, advancing such an interpretation as one "in agreement with international conventions or treaties on human rights ratified by Colombia." *Id* at ¶ 25.

Professor Arrubla theorizes that this interpretation best aligns with Colombia's ratification of international treaties generally promoting the protection of human rights, as well as a recent opinion issued by the Inter-American Court of Human Rights interpreting Chilean legislation. *Id*. at ¶¶ 26, 27, 31, 33.[4]  Against this backdrop, Professor Arrubla concludes it is "possible" to infer "that civil suits involving civil liability arising from the commission of crimes

---

[4] Professor Arrubla acknowledges that this aspect of his opinion directly conflicts with a January 29, 2020 pronouncement from the Colombian Council of State criticizing the Inter-American Court of Human Rights' ruling on Chilean legislation as inconsistent with established rules of interpretation governing the Colombian Civil Code. *Id.* at ¶¶ 28-29.

against humanity are imprescriptible, as this is the only manner of ensuring victims their basic rights to the truth, justice and reparation." *Id.* at ¶ 33.

### 3. Colombian Law: Limitation Suspension and Equitable Tolling

Alternatively, Professor Arrubla opines that: (1) the Colombian ten-year ordinary statute of limitations might be subject to suspension "for as long as [any individual plaintiffs] were unable to carry out the respective actions, either due to violence, displacement, threats, kidnapping or any other circumstance that hindered them from exercising their rights," *id.* at ¶57,[5] or, (2) the running of the Colombian statute of limitations might be deemed interrupted by the filing of the original New Jersey putative class action, as to unnamed members of that class who now bring individual claims against Chiquita. Such an interpretation of the Colombian statute, he contends, is "most in agreement with the principle of access to administration of justice" as embodied in Article 229 of Colombia's Political Constitution, and resonates with "*pro homine*" principles of statutory construction, which "establish[] the most favorable interpretation of judicial standards for individuals and their rights," i.e., an "interpretation that fosters respect for human dignity, and consequently for the protection assurance and promotion of human rights." *Id*. at ¶¶ 65-66

---

[5] In support of this theory, Professor Arrubla draws from provisions of the Colombian Administrative and Contentious-Administrative Procedural Code, Article 164, stating that a victim of the crime of "forced disappearance" seeking to bring a claim for direct reparation has two years to pursue such a claim, running from the date on which the victim appears, or failing a reappearance, from the date on which a definitive ruling issues in the parallel criminal proceeding. *Id.* at ¶50. As to victims of "forced displacement," he cites to a ruling by Colombia's Council of State holding that the time to file a corresponding reparation suit begins to run at the moment that the event giving rise to the crime has ceased, i.e. at the moment when the victim of forced displacement is returned. *Id*. at ¶ 51.

From these provisions governing criminal proceedings and correlating *reparation* suits, Arrubla extrapolates that a similar suspension should be inferred for *civil* causes of action arising out of the crimes of forced disappearances and forced displacements, apparently on the theory that these events should be treated as circumstances of "impossibility" which would trigger a "suspension" of Colombia's ten-year limitation period under Article 2430 and Article 2541 of Colombia's Civil Code. *Id.* at ¶ 53. Thus, in the event his proffered theory of "imprescriptibility is not accepted," he alternatively opines that the statute of limitations for many victims would nonetheless be suspended "for as long as they were unable to carry out the respective actions, whether due to violence, displacement, threats, kidnapping or any other circumstance that hindered them from exercising their rights." *Id.* at ¶57.

### III.     Choice-of-Law Analysis

### A. Federal Equitable Tolling Rule

Plaintiffs contend, first, that the *American Pipe* tolling rule operates, as a matter of federal law, to toll their claims for the twelve-year pendency of the original New Jersey putative class (from time of filing to date class certification was denied).

The federal-court rule holding statutes of limitations subject to equitable tolling, from the time a class action is filed until certification is denied, has its origins in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974).[6]   *American Pipe* concerned the tolling of claims under a federal statute, the Sherman Act, and did  not purport to announce a rule that would apply to state law (or foreign law) claims.   *Vincent v. The Money Store*, 915 F. Supp. 2d 553, 560-61 (S.D.N.Y. 2013); *Weatherly v. Pershing, LLC*, 322 F.3d 746 (N.D. Tex. 2018)(tolling for individual claims during class action was inapplicable to Florida law claims brought by former investors in a Ponzi scheme); *Brandt v. Ocwen Loan Servicing, LLC*, 2017 WL 5878581 (E.D. Cal. 2017) (filing of a class action in federal court only tolls the statute of limitations with respect to federal claims and not state law claims).

 Many courts have thus found *American Pipe* inapplicable to a mass tort personal injury case where the court is sitting in diversity jurisdiction, as it is here.   *See in Re Vioxx Prods. Liab. Litig*, 478 F. Supp. 2d 897, 906-08 (E.D La. 2007) (*America Pipe* and its progeny do not apply by their own force in diversity cases); *Wade v. Danek Medical., Inc*. 182 F.3d 281, 286 (4th Cir. 1999) (federal court sitting in diversity was required to apply state rather than federal law on equitable tolling); *Barela v. Denko K.K.*, 1996 WL 316544, at *4 (D.N.M. 1996) (federal interests

---

[6] In *American Pipe*, the United States Supreme Court held that an applicable statute of limitations is tolled during the pendency of a class action for putative class members who intervene after the denial of class certification.  In *Crown Cork & Seal Co v. Parker*, 462 U.S. 345, 350 (1983), the Court extended the rule to purported members of the class who later file individual suits, rather than intervene.

enunciated in *American Pipe* are not as strong when a federal court sits in diversity)(collecting cases). *But see Adams Public School Dist. v. Asbestos Corp.,* 7 F.3d 717, 719 (8th Cir. 1993) (recognizing independent federal tolling beyond that provided by relevant state law and applying *America Pipe* in diversity case involving public building asbestos claims).

Under this approach, when a federal court sits in diversity jurisdiction, the tolling rules come from the state (or foreign jurisdiction) whose law is being applied. *Casey v. Merck & Co.,* 653 F.3d 95 (2d Cir. 2011) (federal court evaluating timeliness of state law claims must look to law of relevant state to determine whether statute of limitations should be tolled by filing of a putative class action); *Lombardo v. CitiMortgage, Inc*., 2019 WL 35446630 (D. Mass. 2019); *In re Vioxx Products Liability Litigation*, 522 F. Supp. 2d 799 (E. D. La. 2007); *Wilchfort v. Knight*, 307 F. Supp. 3d 64 (E.D.N.Y. 2018); *Vincent v. The Money Store*, 915 F. Supp. 2d 553 (S.D.N.Y. 2013).

This Court concurs, and with these observations in mind, now turns its examination to a choice-of-law analysis to determine which jurisdiction's limitations law controls here – Colombia or New Jersey - and in turn, to resolve whether an analogous "class action" tolling rule or other equitable tolling doctrine is recognized under the laws of that jurisdiction.

### B.  Choice of Law – Statute of Limitations

A federal court sitting in diversity ordinarily applies the choice-of-law rules of the state in which the court sits to determine which state's law applies.  *Klaxon Co. v. Stentor Elec. Mfg. Co*, 313 U.S. 487, 496 (1941).  In the context of an MDL, courts routinely apply the choice-of-law rules of the court from which the case was transferred. S*ee e.g. In re Volkswagen Audi Warranty Extension Lit*., 692 F.3d 4, 17 (1st Cir. 2012); *Chang v. Baxter Healthcare Corp*., 599 F.3d 728, 732 (7th Cir. 2010); *In re Air Disaster of Ramstein Air Base, Ger*., 81 F.3d 570, 576 (5th Cir. 1996);

*Phelps v. Cont'l Ill. Nat'l Bank & Trust Co. of Chicago (In re Nucorp Energy Sec. Litig*.), 772 F.2d 1486, 1492 (9th Cir. 1985); *In re Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practice Litig*., 955 F. Supp. 2d 1311, 1322  (S.D. Fla. 2013);  *In re New England Mut. Life Ins. Co. Sales Practice Litig.,* 236 F. Supp. 2d 69 (D. Mass 2002).

Thus, as the MDL transferee court in this proceeding, this Court must apply the choice-of-law rules of New Jersey, the state where the transferor court sits, in determining whether New Jersey would apply its own statute of limitations, and related tolling rules, or the statute and related tolling rules of some other state or forum.

New Jersey's choice-of-law analysis involves a two-step process.  The first inquiry is "whether the laws of the state with an interest in the litigation are in conflict."  If no conflict exists, there is no choice of law issue for determination and the forum state will apply its own law. *McCarrell v. Hoffmann-LaRoche, Inc.,* 227 N.J. 569*,* 153 A.3d 207, 216 (N.J. 2017).   As to state limitations law, a "true conflict" presents when a complaint is timely filed within one state's statute of limitations but is filed outside of another's statute. *McCarrell,* 153 A.3d at 216*.* In other words, a "a true conflict" exists when the choice of limitations period is outcome determinative. *Id*. (citing *Schmelze v. ALZA Corp*, 561 F Supp. 2d 1046, 1048 (D. Minn. 2008)).  In the latter instance, the court must decide, under the appropriate choice of law rule, which jurisdiction's statute governs.

Following Section 142 of the Restatement (Second) of Conflict of Laws, in the event of a "true conflict"  a New Jersey Court will generally apply the statute of limitations of the forum state "whenever that state has a substantial interest in the maintenance of the claim … unless exceptional circumstances would render that result  unreasonable."  *Id.* at 221-222.  Conversely, where New Jersey does not have a "substantial interest" in the claims, a New Jersey Court will apply the statute of limitations of the state with "a more significant relationship to the parties and the occurrence."

*Id.* at 222 *("*[W]hen New Jersey has no substantial interest in the litigation, under section 142, our courts will not apply our State's statute of limitation to save a claim when another state has a more significant relationship to the case.").

Here, Colombia and New Jersey have different rules governing equitable tolling of statutes of limitations applicable to individual tort actions. New Jersey recognizes equitable tolling in a narrow category of cases, and while the New Jersey Supreme Court has not addressed the issue, one intermediate appellate New Jersey court has embraced *American Pipe* class action tolling.[7] The Colombian Civil Code, in contrast, does not incorporate or recognize equitable tolling principles. Thus, a true conflict of law exists, and it is one which is "outcome determinative," since the tort claims alleged in the 2020 New Jersey Complaint are timely only if New Jersey law applies here. Therefore, the Court must apply New Jersey choice of law rules, to determine whether New Jersey would apply its own limitations law to the tort claims asserted in 2020 New Jersey Complaint, or the laws of Colombia.

As noted, New Jersey follows Section 142 of the Restatement (Second) of Conflicts of Law, under which its own limitations law is applied when it has a "substantial interest" in the litigation, unless "exceptional circumstances" would render that result "unreasonable." Where it does not have a substantial interest in the claims a New Jersey court will apply the statute of limitations of the state with "a more significant relationship to the parties and the occurrence. *McCarrell v. Hoffman-La Roche, Inc.,* 227 N.J. 569, 153 A.3d 207, 221-222 (N.J. 2017).

---

[7] Equitable tolling is recognized in limited situations under New Jersey law, namely, where the defendants have actively misled the plaintiff; the plaintiff has in "some extraordinary way" been prevented from asserting his or her rights, or the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. *See Montero v. Board of Trustees, Public Employees' Retirement System,*2020 WL 4045270 (N.J. App. July 20, 2020) (*citing F.H.U. v. A.C.U.*, 427 N.J. Super 354, 379, 48 A.3d 1130 (N.J. App. 2012)). *See also Staub v. Eastman Kodak,* 320 N.J. Super 34, 726 A.2d 955 (App. Div.), *cert. den.,* 161 N.J. 334 (1999) (state statute of limitation held tolled from date that putative class action was filed in federal court until class certification motion denied).

In this case, the only pertinent connection to New Jersey advanced as a premise for New Jersey's interest in the suit is the fact that Chiquita is organized under the laws of New Jersey. This falls far short of establishing a "substantial interest," held by New Jersey, in the application of its own limitations law to Plaintiffs' claims. *See MTK Food Services, Inc. v. Sirius America Ins. Co.*, 455 N.J. Super. 307, 189 A.3d 914 (N.J. App. Div. 2018) (discussing *McCarrell's* reaffirmation of result in *Heavner v. Uniroyal*, 63 N.J. 130,141, 305 A.2d 412 (1973)). All of the Plaintiffs in this case are Colombian citizens, and all claims arise out of tortious conduct which occurred on Colombian soil. Plaintiffs allege that Chiquita extended financial support to the AUC, a Colombian paramilitary group, between 1995 and 2004, with payments delivered to AUC operatives on Colombian soil, and they allege that their family members suffered grievous personal injury as a result of war crimes and other atrocities perpetrated against them by the AUC on Colombian soil. Moreover, all of the claims that would go forward if not barred by the statute of limitations are brought under Columbian law.[8]

New Jersey has no "substantial interest" in claims that arise under Columbian law based on tortious conduct allegedly committed on foreign soil against foreign citizens. Therefore, contrary to Plaintiffs' contention, New Jersey choice of law precepts do not presumptively require application of New Jersey law to the limitations issue. Since New Jersey has no "substantial interest" in these claims, the Court must instead decide which forum has "a more significant relationship to the parties and the occurrence," and must then apply the limitations law of that forum, along with any accompanying equitable estoppel rules. *Compare Avraham v. Golden*, 2020 WL 2214535 (D.N.J. May 7, 2020) (New Jersey held to have "significant interest" in claims arising from tortious conduct primarily committed in New Jersey, triggering New Jersey limitations law

---

[8] *See* n.3, *supra.*

as to those claims, while tortious conduct committed while all parties lived in Florida held subject to Florida limitations statutes).

Since Colombia is the situs of the alleged tortious conduct charged to both Chiquita and the AUC, and since all Plaintiffs are Colombian citizens asserting Colombian law claims, the Court easily finds that Colombia is the forum with "a more significant relationship to the parties and the occurrence." Therefore, under controlling New Jersey choice-of-law precepts, Colombia limitations law applies here, triggering Colombia's ordinary ten-year statute of limitations, applicable to individual tort actions, and related tolling precepts. See *McCarrell*, 153 A.3d at 221-22.

### IV.    Standard of Review

A complaint is properly dismissed under Fed. R. Civ P. 12(b)(6) if a plaintiff fails to provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 54, 57, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).  In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the nonmoving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002).   But the court need not accept as true unreasonable inferences or legal conclusions cast in the form of factual allegations.  *Twombly*, 127 S. Ct. at 1965; *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003); *Kane Enter v. MacGregor,* 322 F.3d 371 (5th Cir. 2003).

A complaint is properly dismissed under Rule 12(b)(6) where it is apparent on the face of the pleading that the plaintiffs' claims are barred by the statute of limitations**.**  *Jablon v. Dean Witter & Co,* 614 F.2d 677, 682 (9th Cir. 1980).   While the applicability of equitable tolling generally depends on matters outside the pleadings, a motion to dismiss based on a limitations

14

defense is properly granted where the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statue was tolled. *Henderson v. Reid*, 271 Fed. Appx. 51, 54 (11th Cir. 2010) (affirming dismissal of plaintiffs' claims where complaint included no allegations establishing entitlement to tolling of the statute of limitations); *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999).

In this case, as discussed below, the Court concludes that Chiquita's asserted limitation defense is properly resolved under application of Colombia's 10-year statute of limitations and that forum's accompanying rules regarding equitable estoppel. The Court further finds the current motion is appropriately resolved under Rule 12(b)(6) based on the allegations of the Complaint, and certain indisputable facts within the Court's judicial notice power, namely, the content of Colombian limitations law. *See generally Ennenga v. Starns*, 677 F.3d 766 (7th Cir. 2012).

In reaching this conclusion, the Court observes that the experts on both sides concur on the general applicability of Colombia's "ordinary" ten-year statute of limitations to individual tort actions such as those asserted in this case. Both experts also recognize that the Colombian Civil Code does not expressly recognize equitable tolling concepts. The Court declines to follow the aspirational statements of law advanced by Professor Arrubla, and shall apply the Colombian prescription statute as it is currently written and interpreted under Colombian law. *See Penaloza v. Drummond Co.*, 384 F. Supp. 3d 1328, 1352 (N.D. Ala. 2017) (holding wrongful death claims barred under Colombian ten-year statute of limitations, notwithstanding Professor Arrubla's declaration that Colombian law deems crimes against humanity as "imprescriptible," noting this imprescriptibility precept has not been not held applicable to *civil* claims against private parties for alleged crimes against humanity).

## V.    Discussion

Because Colombian law governs the limitations issue here presented, Chiquita's challenge to the timeliness of the 2020 New Jersey complaint turns on whether the tolling justifications claimed by Plaintiffs are recognized under Colombian law.   If civil causes of action arising from crimes against humanity are imprescriptible, as claimed by the Plaintiffs' expert, or if Colombian law recognizes some equivalent of class action tolling, then the Complaint withstands the limitations challenge and Chiquita's motion would appropriately be denied.  On the other hand, if the Colombian Civil Code does not permit of such exceptions to the running of the ten-year statute, then Plaintiffs' claims are time-barred on the face of the Complaint.

As discussed above, Plaintiffs' "imprescriptibility" argument draws from Professor Arrubla's expansive reading of the Colombian statute, based on his aspirational beliefs on what the law should be, as opposed to what the law is and how it is currently interpreted.   While Professor Arrubla identifies competent policy arguments which might favor a change or expansion of the Colombian Civil Code, to mirror the treatment of criminal lawsuits arising from crimes against humanity, he does not show – and to the contrary he candidly recognizes-- that this is not the law in Colombia today.  Professor Arrubla's predictive analysis regarding the importation of equivalent "class action tolling" precepts into the Colombian Civil Code suffers the same frailty; it is an aspirational statement of the law, as opposed to a description of the law as it is.

With all due respect to Professor Arrubla, this Court is not at liberty to apply his aspirational vision of Colombian law as he predicts it may someday be interpreted through the creation or expansion of public policy.  The Court must ascertain and apply Colombia law as it exists now, and specifically must decide whether a tolling of the ordinary ten-year Colombian statute of limitations is permitted under existing Colombian law.

Under Rule 44.1, this is a question of law which the Court may determine based on foreign law materials outside the pleadings in ruling on a motion to dismiss. *de Fontbrune v. Wofsy*, 838 F.3d 992 (9th Cir. 2016). Further, under Rule 44.1, the Court may use an expert report to determine the content of substantive foreign law. It is, however, within the Court's discretion to reject even the uncontradicted conclusions of an expert witness and reach its own decision based on its independent examination of foreign legal authorities. *HFGL Ltd. v. Alex Lyon & Son Sales Managers and Auctioneers, Inc*., 264 F.R.D. 146 (D. N.J. 2009). *See also Sunstar, Inc. v. Alberto-Culver Co*., 586 F.3d 487, 495 (7th Cir. 2009); *Bigio v. Coca-Cola Co*., 2010 WL 3377503 at *4 (S.D.N.Y. 2010), *aff'd,* 675 F.3d 163 (2d Cir. 2012); *Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 330 (S.D.N.Y. 2015). The Court may also consult other sources of foreign law, such as articles, treatises, and judicial opinions, whether submitted by a party or admissible under the federal rules of evidence. Rule 44.1, Federal Rules of Civil Procedure.[9]

In short, federal courts have discretion to judicially notice the laws of foreign countries pursuant to the fact-finding procedures contained in Rule 44.1. *Ferrostaal, Inc. v. M/V Sea Phoenix*, 2004 WL 3304655 (D. N.J. 2004) (citing *Sidali v. INS*, 107 F.3d 191, 197 n. 9 (3d Cir. 1997)). Thus, pursuant to Rule 44.1, this Court shall take judicial notice of the relevant contents of the Colombian Civil Code, as summarized below and applied to the facts of this case.

Article 2536 of the Colombian Civil Code prescribes a ten-year "ordinary" statute of limitations, applicable to individual tort claim, which begins to run as of the date of occurrence of the damaging event. [Acevedo DE 2664-2, ¶ 8, 10] [Arrubla, DE 2682-1, at ¶15]. This limitations

---

[9] Fed. R. Civ. P. 44.1 provides:

A party who intends to raise an issue concerning the law of a foreign country shall give notice by pleadings or other reasonable written notice. The court, in determining foreign law, may consider any relevant material or source, including testimony, whether submitted by a party of admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.

period may be suspended under certain specified circumstances (minority or force majeure), but the Colombian civil code otherwise does not expressly recognize precepts of equitable tolling and specifically does not recognize class action tolling concepts [Acevedeo, at ¶¶16-19].

Plaintiffs' legal expert predicts that civil causes of action arising out of crimes against humanity might be deemed imprescriptible under Colombian law, while there is no precedent currently endorsing this proposition.  Further, he opines that filing of the 2007 New Jersey putative class action suit could be viewed as a statutorily-recognized "interruption" of the Plaintiffs' claims, under an expansive reading of Article 94 of Colombia's General Procedure Code (Arrubla at ¶¶ 62-65), a result he considers most consistent with general principles of statutory interpretation favoring the vindication of individual rights and "protection assurance and promotion of human rights… consecrated on the constitutional level."  *Id* at ¶65.

However, Professor Acevedo, the defense expert,  shows that Colombian law does not have a specific or equitable rule regarding the common law notion of equitable tolling, and that suspension or interruption of ten-year ordinary statute of limitations, by its terms, is limited to the specific action and claims brought in that action.  [Declaration of Acevedo, 2664-2, at ¶¶15-16 ("Therefore, by filing a complaint under a group action, the interruption of the statute of limitation will apply only in relation to that group action, and not to any individual actions that were not filed.")].  He also states that "law is the primary source of rights" under Colombia's Constitution, and that the word "law" in this context means statutory law or legislative statutes – not case law. [Second Declaration of Acevedo, DE 2683-1, ¶9].

Based on its review of the conflicting expert opinions on the availability of a class action or "group" tolling equivalent under Colombian law, this Court concludes, as a matter of law, that the ten-year statute of limitations would apply to the torts pled in the 2020 New Jersey Complaint,

and that neither equitable tolling nor class action tolling is available to toll this limitations period. *See generally Seguros Del Estado, S.A. v. Scientific Games, Inc.*, 262 F.3d 1164 (11th Cir. 2001) (observing conflict in expert testimony on operation of Colombian general ten-year statute of limitations as it applied to insurance company's suit against insured for reimbursement under indemnification agreement and upholding district court rejection of expert opinion).

Further, based on its review of Professor Arrubla's expert affidavit, this Court is not persuaded that it should infer the imprescriptibility of civil causes of action arising from crimes against humanity using the expansive public policy rationale advanced by him.

Based on these conclusions, the Court holds that Colombia's 10-year ordinary statute of limitations began to run, at the latest, on March 17, 2007, the date Chiquita's D.C. plea to crimes relating to its financial support of foreign terrorist organizations became public (Complaint, ¶1026), and it expired ten years later, on March 17, 2017. The 2020 New Jersey Complaint, filed well after that time (March 25, 2020), comes too late, and the 2020 New Jersey Plaintiffs' Complaint does not identify any premise for a suspension or interruption of the statute which would bring any of the asserted claims within it.[10]

---

[10] Plaintiffs offer a further saving theory, for a subset of "some" plaintiffs who were the alleged victims of forced displacement or forced disappearances at the hands of AUC forces. *See e.g.* Complaint, ¶ 424 (Jane Doe 216); ¶¶ 463-464 (Jane Doe 26); ¶¶ 469-470 (Jane Doe 27, 121, 122 and Jane Doe 23),¶ 471 (John Doe 32), ¶472 (John Doe 33), ¶482 (John Doe 37), ¶485 (John Doe 39)]  On this point, Plaintiffs draw from the affidavit of Professor Arrubla, who opines that Colombia's ten-year general limitations statute might reasonably be interpreted as "interrupted" by such occurrences, which he views as circumstances of "impossibility" that might trigger a suspension of the limitations statute – for a maximum term of ten years --  under Article 2430 of Colombia's Civil Code.  Arrubla Dec. at ¶¶ 50-54. [On this point, he cites Article 2430 of the Civil Code, stating "[t]he statute of limitations will not be counted against those who are faced with absolute impossibility of exercising their right, for the duration of said impossibility." Id. at ¶53.]

As discussed above, however, Professor Arrubla's opinions in this regard -- like his opinions regarding the imprescriptibility of civil actions based on crimes against humanity – are extrapolated from Colombian law rules governing *reparation* claims brought by the victims of crimes as part of the *criminal* proceedings.  He explains, for example, that the time for filing reparation claims arising out of forced disappearance does not begin to run until the victim appears (or a definitive criminal ruling is made), and that the time for filing reparation claims for forced displacement similarly begin to run when the victim returns.

### VI.      Conclusion

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

1.   Defendant Chiquita's Motion to Dismiss the Colombian law claims of the 2020 New Jersey Action (Case 20-CV-60831) as time-barred under Colombia's ordinary ten-year statute of limitations [DE 2664] is **GRANTED**.

2.   Defendant's Motion to Dismiss the New Jersey ("or other applicable") state law claims of the 2020 New Jersey Action is **GRANTED**.

3.   The 2020 New Jersey Complaint is **DISMISSED WITH PREJUDICE** under Rule 12(b)(6) for failure to state a claim on which relief may be granted.

4.   A final judgment of dismissal pursuant to Rule 58 will follow by separate Order of the Court.

5.   The Plaintiffs' request for oral argument on this matter [DE 2682] is **DENIED**.

   **DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 29th day of September, 2020.

KENNETH A. MARRA
United States District Judge

---

Since this case involves *civil* causes of action arising out of forced disappearances and forced displacements - not reparation claims arising in criminal proceedings - the Court does not find Professor Arrubla's extrapolations and predictions of Colombian law on "impossibility" doctrine controlling in this case.  Notably, Professor Arrubla does not identify any provision of the Colombian Civil Code which would specifically recognize a suspension, or other interruption to the ten -year ordinary statute of limitations applicable *to civil* claims against *private parties* arising out of the crimes of forced disappearance or forced displacements. Without citation to a statute governing this specific issue, or a judicial ruling addressing it, the Court is not persuaded by Professor Arrubla's prediction of Colombian law.  Without Professor Arrubla's legal theory, the facts, as pled, do not support an "interruption" of the limitation statute and no amendment to the complaint could cure this defect.  Accordingly, the Court finds the individual claims of this discrete group of Plaintiffs to be time-barred on the face of the Complaint.

cc. all counsel