UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 08-MD-01916-MARRA**

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION
_____/

This Document Relates to:

ATS ACTIONS
_____/

**NEW JERSEY PLAINTIFFS' SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTION FOR COURT TO ORDER ONE-TIME AND THEN ANNUAL STATUS REPORTS BY PLAINTIFFS**

In response to Defendants' motion for status reports (DE 3235), the "New Jersey" Plaintiffs join in the arguments made by other Plaintiffs' counsel (DE 3244), but file this separate response to highlight their own experience with such reports.

**1. "New Jersey" Plaintiffs' report to the Court demonstrates there is no significant issue.**

Last year, the Court required the New Jersey Plaintiffs to exhaustively document their recent contact with hundreds of clients. *See* DE 2818. The impetus for this was the concern that, while following up on their clients, "New Jersey" counsel had discovered, and notified the Court, that seven individuals identified as Plaintiffs in their March 2017 complaints had predeceased the filing of the complaints.

Concerned that this might indicate a larger problem, the Court required counsel to submit a affidavits 30 days later detailing:

> (a) Whether counsel has been in direct contact with the named Plaintiffs whose claims are pending in the above-styled actions since the date suit was initiated in March 2017 and up through the time that the stay of proceedings was lifted in November 2020.
>
> (b) Whether counsel has been in contact with any of the named P[l]aintiffs whose

1

      claims remain pending in these actions since the lifting of the stay in November 2020, and whether in this time any of the named Plaintiffs have expressed their willingness and ability to proceed in these cases as named putative class representatives.

      (c) As to "no contact "clients in either category, counsel shall identify the client and date of last contact.

DE 2818 at 11-12.

      While "New Jersey" Plaintiffs' counsel had, in fact, been in contact with their clients, compiling and error-checking this information took substantial time from multiple attorneys in both the United States and Colombia, consuming most of the following month. Ultimately, counsel submitted a report to the Court that indicated that they had been in contact with with 269 of the 271 Plaintiffs at issue during the relevant periods. *See* DE 2873. No additional predeceased Plaintiffs were discovered. With respect to the two clients that counsel had not been in contact with recently, the report demonstrated that counsel had made multiple contact attempts over the years. *See* DE 2873-2.

      The experience of the "New Jersey" Plaintiffs shows that what Defendants seek is a substantial burden and is unnecessary. There is no significant problem with unviable cases, nor of counsel not being in contact with their clients.

      **2.** ***Engle*** **is inapposite.**

      The facts here are in sharp contrast with Defendants' leading case, *In re Engle cases*, 767 F.3d 1082 (11th Cir. 2014).

      First, Defendants misstate *Engle*'s actual holding. Defendants claim that their request for regular status reports on contact with all plaintiffs is "similar to what the Eleventh Circuit previously approved" in *Engle*, DE 3235 at 3, but that is false. *Engle* made no holdings about counsel's contact with their clients, nor did the Eleventh Circuit – or the district court – require the kind of regular status report that Defendants seek. The holdings in *Engle* were that 1) claims filed on behalf of

2

predeceased plaintiffs cannot be maintained, 2) loss of consortium claims that were derivative of these invalid claims also could not be maintained, and 3) there was no alleged basis to toll the statute of limitations for wrongful death claims filed more than two years after the decedent's death. *See id.* at 1087, 1114-1123. The background of the extended loss of contact with clients was relevant only to assess whether the plaintiffs' counsel should have been afforded further opportunities to amend their complaints and fix earlier errors.

The district court in *Engle* did require the plaintiffs there to submit questionnaires to determine the viability of their claims. Notably, however, this was a one-time exercise, and it only occurred after extremely significant concerns were raised about the viability of many claims:

- Plaintiffs' counsel in *Engle* had originally contracted with their clients in "the mid-1990s," and then suit was ultimately filed on their behalf a decade later – in 2008. *Id.* at 1089.
- Of the 4,432 original plaintiffs in *Engle*, counsel initially voluntarily dismissed 449 of them, and indicated that some cases were not viable because the plaintiff had died, and others had already been tried in another proceeding – but had no idea how many. *Id.* at 1091.
- After an initial review by plaintiffs' and defendants' counsel, around 1200 additional cases were dismissed or consolidated. *Id.* at 1092-93. This included "332 plaintiffs with whom the firm had lost contact." *Id.* at 1092.
- Only after this "clear indication from both sides that the docket was bloated with hundreds of non-viable cases," did the district court take the step of ordering questionnaires from all plaintiffs – and it did so **"at the defendants' expense."** *Id.* at 1092 (emphasis added).
- Plaintiffs' counsel told the court that "three months would be plenty of time" to gather the questionnaires from their clients; despite being given over five months, and additional allowances to submit late questionnaires, they ultimately were able to submit questionnaires from only about 1700 of the more than 2700 cases remaining on the court's docket. *Id.* at

1095-97.

- It was only through this questionnaire process that plaintiffs' counsel discovered that "521 personal injury plaintiffs had been dead at the time of filing." *Id.* at 1096.

Contrasted with the facts of "New Jersey" Plaintiffs here, *Engle* is not in the same universe. As noted above, counsel verified contact with 269 of the 271 Plaintiffs at issue, and seven Plaintiffs had died. While more than half the claims in *Engle* were ultimately determined to be non-viable, for a multitude of reasons, there is no evidence of any significant issues here. Even in the face of such issues, the court in *Engle* did not require repeated, regular status reports. And while the defendants in *Engle* funded the cost of the questionnaire effort, Defendants here seek to impose the burden on Plaintiffs' counsel, which can only distract from trial preparation.

"New Jersey" Plaintiffs' counsel submit that the best available evidence here – the report that they already submitted regarding contact with their clients – conclusively disproves Defendants' claims about the need for ongoing status reports, and effectively distinguishes this case from the situation in *Engle*. If nothing else, it disproves the need for such a burdensome exercise from the "New Jersey" Plaintiffs.

Dated: December 21, 2022

Respectfully submitted,

*/s/ Marco Simons*
Marco Simons
Gabriela Valentin Diaz
Richard L. Herz*
Marissa Vahlsing
Maya Sikand
EarthRights International
1612 K Street NW, Suite 800
Washington, DC 20006
Tel: 202-466-5188

---

* Based in CT; admitted in NY; does not practice in DC's courts.

4

Agnieszka M. Fryszman
Cohen Milstein Sellers & Toll, PLLC
1100 New York Ave., N.W.,
West Tower, Suite 500
Washington, D.C. 20005-3964
Tel: 202-408-4600
Fax: 202-408-4634

Judith Brown Chomsky
Law Offices of Judith Brown Chomsky
Post Office Box 29726
Elkins Park, PA 19027
Tel: 215-782-8367
Fax: 202-782-8368

Arturo Carrillo
Colombian Institute of International Law
5425 Connecticut Ave., N.W., #219
Washington, D.C. 20015
Tel: 202-994-5794

*Counsel for Plaintiffs*