**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**NO. 08-1916-MD-MARRA/JOHNSON**

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:

**ATS ACTIONS:**

_____/

07-60821-CIV-MARRA (Carrizosa Action)
08-80421-CIV-MARRA (NJ Action)
08-80465-CIV-MARRA (Does 1-144/Perez 1-795 Action)
08-80480-CIV-MARRA (Manjarres Action)
08-80508-CIV-MARRA (Valencia Action)
10-60573-CIV-MARRA (Florida Montes Action)
11-80404-CIV-MARRA (Does 1-677 Action)
17-80535-CIV-MARRA (Ohio Montes Action)
17-80475-CIV-MARRA (Does 1-2146 Action)
18-80800-CIV-MARRA (Does 1-144/Perez 1-795 Action)
18-80248-CIV-MARRA (NJ Action)
_____/

## DEFENDANTS' OMNIBUS MOTION IN LIMINE

## <u>TABLE OF CONTENTS</u>

I.      Introduction ................................................................................................................ 1

II.     Legal Standard ........................................................................................................... 1

III.    Argument Regarding Defendants' Joint Motions in Limine ................................. 1

        A.      The Court Should Exclude Chiquita's Sentencing Memorandum and Preclude
                Plaintiffs' from Mischaracterizing the Guilty Plea ................................................. 1

                1.      The Department of Justice's sentencing memorandum is inadmissible ...... 2

                2.      The Court should preclude Plaintiffs from describing Chiquita's plea
                        agreement as an admission of guilt to "providing material support" to the
                        AUC or to "financing" or "supporting terrorism" ....................................... 2

                3.      The Court should preclude Plaintiffs from arguing that Chiquita engaged
                        in transactions with a terrorist organization prior to September 10, 2001 ... 3

        B.      Charging documents and references to any Colombian criminal investigation and
                indictment should be excluded .................................................................................. 4

        C.      The Court should preclude reference to the SEC investigation ............................... 5

        D.      The Court should preclude Plaintiffs from insinuating that Chiquita violated the
                FCPA or generally accepted accounting principles .................................................. 7

        E.      The Court should exclude Plaintiffs' "*modus operandi*" evidence ........................ 8

        F.      The Court should exclude all hearsay in Plaintiffs' Expert Reports ........................ 9

        G.      The Court should exclude Justice & Peace testimony of former AUC commanders
                ................................................................................................................................ 10

                1.      Rule 804(b)(1) "Former Testimony" exception is not met ........................ 11

                2.      Rule 804(b)(3) "Statement Against Interest" exception is not met .......... 12

                3.      Rule 801(d)(2)(E) "Coconspirator" exception does not apply ................. 14

                4.      Rule 807 does not apply ............................................................................ 15

        H.      The Court should preclude plaintiffs' experts from testifying as to motive or intent
                of any Defendant or third-party ............................................................................. 15

        I.      The Court should preclude Plaintiffs' hearsay statements ..................................... 15

        J.      The Court should preclude Plaintiffs from introducing inflammatory and
                prejudicial evidence under Rules 401, 402, and 403 ............................................. 16

        K.      The Court should preclude description of Plaintiffs as "human rights defenders" 17

        L.      The Court should exclude reference to Defendants' size or financial condition ... 17

        M.      Plaintiffs should be precluded from recovering non-economic damages beyond
                the maximum limit allowed for such damages under Colombian law .................... 17

        N.      The Court should exclude improper jury arguments related to damages ............. 18

IV.    Individual Defendants' Motion In Limine To Exclude Any And All Evidence Regarding Chiquita's Guilty Plea ........................................................................................................18

V.    Conclusion ........................................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*,
No. 17-24223-CIV-WILLIAMS/TORRES, 2018 U.S. Dist. LEXIS 192103
(S.D. Fla. Nov. 9, 2018) ................................................................................................1, 6

*ADT LLC v. Vivint Smart Home, Inc.*,
2023 WL 3568117 (S.D. Fla. May 19, 2023) ......................................................................4, 7

*Aycock v. R.J. Reynolds Tobacco Co.*,
769 F.3d 1063 (11th Cir. 2014) ..........................................................................................20

*Barnes v. Danner*,
104 F.3d 358 (4th Cir. 1996) ..............................................................................................17

*Begualg Inv. Mgmt. v. Four Seasons Hotel Ltd.*,
No. 10-22153-CIV, 2013 U.S. Dist. LEXIS 26890 (S.D. Fla. Feb. 27, 2013) .............3, 16, 20

*Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*,
116 F.3d 1406 (11th Cir. 1997) ..........................................................................................18

*Boneta v. Am. Med. Sys., Inc.*,
No. 20-CIV-60409, 2021 WL 6776245 (S.D. Fla. Oct. 6, 2021) ...........................................6

*Bonner v. City of Prichard*,
661 F.2d 1206 (11th Cir.1981) (en banc) ..............................................................................6

*Burrows v. Waffle House, Inc.*,
2000 WL 35593211 (S.D. Fla. Aug. 28, 2000) .....................................................................19

*Carpenters Health & Welfare Fund v. Coca Cola Co.*,
No. 1:100-CV-2838-WBH, 2008 WL 9358563 (N.D. Ga. Apr. 23, 2008) .....................5, 6, 7

*Carrizosa v. Chiquita Brands Int'l, Inc.*,
47 F.4th 1278 (11th Cir. 2022) ...............................................................................4, 8, 9, 10

*City of Tuscaloosa v. Harcros Chems.*,
158 F.3d 548 (11th Cir. 1998) ........................................................................................14, 20

*Coleman v. Home Depot, Inc.*,
306 F.3d 1333 (3d Cir. 2002) ................................................................................................9

*CSX Transp., Inc. v. General Mills, Inc.*,
___ F.4th ___, 2023 U.S. App. LEXIS 26504 (11th Cir. 2023) ...........................................18

*De Varona v. Disc. Auto Parts, Ltd. Liab. Co.*,
No. 12-20714-Civ, 2012 U.S. Dist. LEXIS 191048 (S.D. Fla. June 19, 2012) ...................... 18

*DeCurtis LLC v. Carnival Corp.*,
2023 WL 2401733 (S.D. Fla. Feb. 13, 2023) ............................................................................. 7

*Ermini v. Scott*,
937 F.3d 1329 (11th Cir. 2019) ................................................................................................ 8

*Geddes v. United Fin. Grp.*,
559 F.2d 557 (9th Cir. 1977) ................................................................................................... 17

*Gill v. Arab Bank, PLC*,
893 F. Supp. 2d 542 (E.D.N.Y. 2012) ..................................................................................... 14

*Gilmore v. Palestinian Interim Self-Gov't Auth.*,
53 F. Supp. 3d 191 (D.D.C. 2014) *aff'd on other grounds*, 843 F.3d 958 (D.C.
Cir. 2016) .................................................................................................................................. 14

*Gray v. Florida Dept. of Juvenile Justice*,
No. 3:06-cv-990-J020MCR, 2007 WL 295514 (M.D. Fla. Jan. 30, 2007) ............................. 18

*Hickson Corp. v. Norfolk S. Ry. Co.*,
227 F. Supp. 2d 903 (E.D. Tenn. 2002), *aff'd*, 124 F. App'x 336 (6th Cir.
2005) ......................................................................................................................................... 19

*Highland Capital Mgmt. L.P. v. Schneider*,
379 F. Supp. 2d 461 (S.D.N.Y. 2005) ..................................................................................... 15

*Hines v. Brandon Steel Decks, Inc.*,
886 F.2d 299 (11th Cir.1989) ................................................................................................... 6

*Horrillo v. Cook, Inc.*,
No. 09-60931-CIV-MATTHEWMAN, 2014 U.S. Dist. LEXIS 86571 (S.D.
Fla. June 6, 2014) ..................................................................................................................... 16

*In re September 11 Litig.*,
621 F. Supp. 2d 131 (S.D.N.Y. 2009) ..................................................................................... 14

*In re Trasylol Prods. Liab. Litig.*,
709 F. Supp. 2d 1323 (S.D. Fla. 2010) ................................................................................... 15

*In re Wiand*,
No. 8:10-cv-75-T-MAP, 2012 U.S. Dist. LEXIS 13406 (M.D. Fla. Feb. 3,
2012) .......................................................................................................................................... 2

*Lane v. Capital Acquisitions*,
242 F.R.D. 667 (S.D. Fla. 2005) .............................................................................................. 17

*Lanham v. Whitfield*,
  805 F.2d 970 (11th Cir. 1986) ......................................................................6

*Lewis on behalf of Nat'l Semiconductor Corp. v. Sporck*,
  646 F. Supp. 574, 576 (N.D. Calif. 1986) ....................................................7

*Mamani v. Berzaín*,
  No. 07-22459-CIV-COHN/SELTZER, 2018 U.S. Dist. LEXIS 24130 (S.D.
  Fla. Feb. 14, 2018) .................................................................................11, 12

*McGhee v. Joutras*,
  No. 94 C 7052, 1996 U.S. Dist. LEXIS 18019 (N.D. Ill. Dec. 4, 1996) ...................5

*Nationwide Mut. Fire Ins. Co. v. Kaloust Fin., LLC*,
  2013 U.S. Dist. LEXIS 50933 (M.D. Fla. Apr. 9, 2013) ......................................11

*Northrop Corp. v. Jones*,
  1989 U.S. Dist. LEXIS 18305 (C.D. Calif. Nov. 13, 1989) ...................................7

*Peace United, Ltd. v. 1906 Collins, LLC*,
  2022 WL 2802796 (S.D. Fla. July 18, 2022) ..................................................7

*Ramada Dev. Co. v. Rauch*,
  644 F.2d 1097 (5th Cir. Unit B 1981) ..........................................................6

*Regions Bank v. Kaplan*,
  2016 WL 2587927 (M.D. Fla. Apr. 29, 2016) ................................................8

*Rivers v. United States*,
  777 F.3d 1306 (11th Cir. 2015) ..................................................................15

*Robinson & Co. v. Belt*,
  187 U.S. 41 (1902) .................................................................................18

*Shields on behalf of Sundstrand Corp. v. Erickson*,
  710 F. Supp. 686, 688 (N.D. Ill. 1989) .......................................................7

*Strauss v. Credit Lyonnais, S.A.*,
  925 F. Supp. 2d 414 (E.D.N.Y. 2013) .........................................................14

*United States v. Atkins*,
  618 F.2d 366 (5th Cir. 1980) ....................................................................13

*United States v. Bailey*,
  840 F.3d 99 (3d Cir. 2016) ........................................................................8

*United States v. Burgess*,
  576 F.3d 1078 (10th Cir. 2009) .................................................................17

*United States v. Chiquita Brands Int'l, Inc.*,
    No. 1:07-cr-00055-RCL (D.D.C.) ................................................................1, 2, 3, 18

*United States v. Cox*,
    536 F.2d 65 (5th Cir. 1976) ...........................................................................5

*United States v. Frazier*,
    387 F.3d 1244 (11th Cir. 2004) ....................................................................9

*United States v. Glaziou*,
    402 F.2d 8 (2d Cir. 1968) ..............................................................................5

*United States v. Goliday*,
    145 Fed. App'x 502 (6th Cir. 2005) ............................................................16

*United States v. Gonzalez*,
    559 F.2d 1271 (5th Cir. 1977) ....................................................................13

*United States v. Gonzalez-Flores*,
    418 F.3d 1093 (9th Cir. 2005) ......................................................................8

*United States v. Hands*,
    184 F.3d 1322 (11th Cir. 1999) ....................................................................9

*United States v. Jernigan*,
    341 F.3d 1273 (11th Cir. 2003) ..................................................................12

*United States v. Kaley*,
    760 F. App'x 667 (11th Cir. 2019) ...............................................................9

*United States v. Katsougrakis*,
    715 F.2d 769 (2d Cir. 1983) .........................................................................13

*United States v. Lang*,
    904 F.2d 618 (11th Cir. 1990) ....................................................................15

*United States v. Loughry*,
    660 F.3d 965 (7th Cir. 2011) ........................................................................8

*United States v. Magna-Olvera*,
    917 F.2d 401 (9th Cir. 1990) ......................................................................13

*United States v. Matsunaga*,
    158 Fed. App'x 783 (9th Cir. 2005) ...........................................................16

*United States v. Ramos*,
    725 F.2d 1322 (11th Cir. 1984) ..................................................................10

*United States v. Scott*,
  677 F.3d 72 (2d Cir. 2012)........................................................................9

*United States v. Warledo*,
  557 F.2d 721 (10th Cir. 1977) .................................................................16

*United Techs. Corp. v. Mazer*,
  556 F.3d 1260 (11th Cir. 2009) ...............................................................15

*Valdes v. Miami-Dade Cty.*,
  No. 12-22426-CIV, 2015 U.S. Dist. LEXIS 155196 (S.D. Fla. Nov. 17, 2015) ......................1

*Wainwright* v. *Goode*,
  464 U. S. 78 (1983)..................................................................................18

*Williamson v. United States*,
  512 U.S. 594 (1994).................................................................................13

*Woods v. Burlington N. R.R. Co.*,
  768 F.2d 1287 (11th Cir. 1985), *overruled on other grounds by Burlington N.*
  *R.R. Co. v. Woods*, 480 U.S. 1 (1987) .....................................................18

**Statutes**

Securities Exchange Act of 1934, 15 U.S.C. § 78a, et seq ...............................................5

U.S. Foreign Corrupt Practices Act of 1977, 15 U.S.C. §§ 78dd-1, et seq.....................................7

18 U.S.C. § 2339(B) ...........................................................................................1

International Emergency Economic Powers Act, 50 U.S.C. § 1705(b)..........................................1

**Rules**

31 C.F.R. § 594.204 ...........................................................................................1

Exec. Order No. 13224, 31 C.F.R. § 594...............................................................2, 3

Fed. R. Civ. P. 26 .............................................................................................18

Fed. R. Evid. 401 .................................................................................. *passim*

Fed.R.Evid. 402 .............................................................................1, 2, 16, 17, 18

Fed. R. Evid. 403 .................................................................................. *passim*

Fed. R. Evid. 404 ...........................................................................................5, 7

Fed. R. Evid. 408 ...........................................................................................5, 6

Fed. R. Evid. 602 ...................................................................................................................15

Fed. R. Evid. 609 ..........................................................................................................18, 19

Fed. R. Evid. 703 ...................................................................................................................10

Fed. R. Evid. 801 ..........................................................................................7, 11, 14, 18, 20

Fed. R. Evid. 802 ........................................................................................2, 5, 7, 11, 15

Fed. R. Evid. 803 ..........................................................................................................4, 6

Fed. R. Evid. 804 ..................................................................................11, 12, 13, 14

Fed. R. Evid. 805 ...................................................................................................................20

Fed. R. Evid. 807 ...................................................................................................................15

**Other Authorities**

Rafael Bernal, *Fight Over US Extradition Leads to Resignations of Top
    Colombian Officials*, THE HILL, May 17, 2019, available at
    https://thehill.com/latino/444333-fight-over-us-extradition-leads-to-
    resignations-of-top-colombian-officials (last accessed Oct. 16, 2023) ...................................4

Securities Exchange Act of 1934, Release No. 44902 / October 2, 2001 available
    at https://www.sec.gov/litigation/admin/34-44902 (accessed Oct. 16, 2023) ..........................5

## I.      Introduction

The undersigned Defendants move herein to preclude Plaintiffs' untimely and inadmissible evidence and the anticipated introduction of irrelevant and prejudicial issues at trial. Pursuant to the Federal Rules of Evidence, the undersigned Defendants move the Court for an Order *in limine* to exclude and preclude such evidence, discussed in greater detail below.

## II.      Legal Standard

"The real purpose of a motion in limine is to give the trial judge notice of the movant's position as to avoid introduction of damaging evidence which may irrevocably affect fairness of the trial." *Valdes v. Miami-Dade Cty.*, No. 12-22426-CIV, 2015 U.S. Dist. LEXIS 155196, *2 (S.D. Fla. Nov. 17, 2015) (citation omitted). A motion in limine "aid[s] the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to the issues that are definitely set for trial, without lengthy argument at, or interruptions of, the trial." *A.T.O. Golden Constr. Corp. v. Allied World Ins. Co.*, No. 17-24223-CIV-WILLIAMS/TORRES, 2018 U.S. Dist. LEXIS 192103, *4 (S.D. Fla. Nov. 9, 2018).

Pursuant to the Federal Rules of Evidence, only "relevant evidence is admissible." *See* FED. R. EVID. 401, 402. However, a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

## III.      Argument Regarding Defendants' Joint Motions in Limine[1]

### A.      The Court Should Exclude Chiquita's Sentencing Memorandum and Preclude Plaintiffs' from Mischaracterizing the Guilty Plea

In March 2007, Chiquita pled guilty to a single count violation of the International Emergency Economic Powers Act, 50 U.S.C. § 1705(b) and 31 C.F.R. § 594.204, for engaging in transactions with the AUC without having first obtained a license to engage in such transactions.[2] Chiquita was not charged with—and did not plead guilty to—a violation of 18 U.S.C. § 2339(B)

---

[1] The Individual Defendants are separately moving herein (see section IV infra.) to preclude the admission as to them of all evidence regarding Chiquita's guilty plea.  To the extent this Court denies the motion on those grounds, the Individual Defendants make the arguments contained in sections III(A)(1) and (2) in the alternative.

[2] *United States v. Chiquita Brands Int'l, Inc.*, No. 1:07-cr-00055-RCL (D.D.C.), DE 1 (information), p. 1 & ¶ 88; DE 19 (judgment).

("knowingly provid[ing] material support or resources to a foreign terrorist organization"). *See id.*; *see also* Factual Proffer, DE ⬜, ¶¶ 7-8; Exec. Order No. 13224, 31 C.F.R. § 594. However, Plaintiffs have repeatedly characterized Chiquita's guilty plea as an admission of "providing material support" to the AUC. Defendants move the Court pursuant to Fed.R.Evid. 401, 402, 403, and 802 to: (1) exclude the DOJ's sentencing memorandum; (2) preclude any mention or description of Chiquita's plea agreement as an admission of guilt to "knowingly provid[ing] material support" to the AUC or to "financing" or "supporting" "terrorists" or a "terrorist organization," generally; and (3) preclude any argument that Chiquita made payments to "terrorists" or a "terrorist organization" before October 31, 2001.

### 1.   The Department of Justice's sentencing memorandum is inadmissible

As Plaintiffs previously conceded, the Department of Justice's Sentencing Memorandum in the criminal case of *United States v. Chiquita Brands Int'l, Inc.*, No. 1:07-cr-00055-RCL (D.D.C.) is inadmissible hearsay not subject to any exception. *See* DE 2401, p. 1 ("Plaintiffs do not dispute this Objection" referring to DE 2343, p. 1 Recurring Objection A that the Sentencing Memorandum is inadmissible hearsay); *In re Wiand*, No. 8:10-cv-75-T-MAP, 2012 U.S. Dist. LEXIS 13406, **8-9 (M.D. Fla. Feb. 3, 2012). Accordingly, Plaintiffs should be precluded from mentioning, soliciting testimony from witnesses about, or introducing into evidence the Sentencing Memorandum.

### 2.   The Court should preclude Plaintiffs from describing Chiquita's plea agreement as an admission of guilt to "providing material support" to the AUC or to "financing" or "supporting terrorism"

Plaintiffs have repeatedly described Chiquita's guilty plea as an admission of providing material support to the AUC or have accused Defendants of "supporting" or "financing" "terrorism" or "terrorists."[3] But Chiquita was not charged with, did not plead guilty to, and was not convicted of the crime of "providing material support" to the AUC, which involves a different statutory scheme, mens rea requirements, and unique criminal elements. Rather, Chiquita pled guilty to a single count of engaging in a financial transaction with the AUC without first having

---

[3] *See, e.g.*, DE 2363, pp. 6 (Chiquita's payments and other support were material to the AUC."), 20 ("Simply put, [] Chiquita funded terrorism."), 41 ("Defendants' alleged motive for funding terrorists . . . ."), 47 n. 35 (". . . Chiquita pled guilty to financing terrorists . . . ."; DE 2829, pp. 6 (Chiquita's payments and other support were material to the AUC."), 35 ("Simply put, [] Chiquita funded terrorism.").

received the appropriate license. See DE 1, *United States v. Chiquita Brands Int'l, Inc.*, No. 1:07-cr-00055-RCL (D.D.C.); DE 19 in same case.

Defendants anticipate that Plaintiffs will continue to distort the nature of Chiquita's plea or improperly impute Chiquita's plea to other Defendants. Pursuant to Rules 401 and 403 of the Federal Rules of Evidence, Defendants request that the Court preclude Plaintiffs from describing Chiquita's guilty plea as an admission of guilt to "providing material support" to the AUC or by arguing that Defendants "supported" or "financed" "terrorists" or a "terrorist organization." Such descriptions are not only inaccurate, but their probative value (of which there is none, given the inaccuracy of the statements) is substantially outweighed by the risk of undue prejudice to Defendants and the risk of confusing the jury. Furthermore, Plaintiffs' attempts to improperly characterize Chiquita's guilty plea as material support for terrorism will unfairly evoke an emotional response by the jury to the severe undue prejudice of the Defendants.

Should Plaintiffs be permitted to describe Chiquita's extortion payments as "material support" to the AUC or as general support of terrorism by all Defendants, a jury may infer that the payments were voluntary or that the payments were more than a small fraction of one percent of the AUC's annual income. Moreover, a jury may erroneously infer that Chiquita's criminal offense was far different from the offense that Chiquita pled guilty to or improperly associate Chiquita's guilty plea with more generalized, unofficial, and inflammatory allegations that all Defendants supported terrorism, invoking an emotional response and irreversibly affecting the fairness of the trial. *Begualg Inv. Mgmt. v. Four Seasons Hotel Ltd.*, No. 10-22153-CIV, 2013 U.S. Dist. LEXIS 26890, at *3 (S.D. Fla. Feb. 27, 2013).

### 3. The Court should preclude Plaintiffs from arguing that Chiquita engaged in transactions with a terrorist organization prior to September 10, 2001

The AUC was first designated a Foreign Terrorist Organization on September 10, 2001 and a Specially Designated Global Terrorist Organization on October 31, 2001. *See* Exec. Order No. 13224, 31 C.F.R. § 594.  As such, it cannot be disputed that Chiquita's payments did not violate Section 594 of the U.S. regulations prior to September 10, 2001. *See id*. Plaintiffs should be precluded from arguing that Chiquita financed "terrorism" or otherwise engaged in transactions with a "terrorist organization" or "terrorists" before September 10, 2001 and should be precluded from referencing Chiquita's guilty plea with regard to any death that occurred before September 10, 2001. *See* FED. R. EVID. 403.

**B.**     **Charging documents and references to any Colombian criminal investigation and indictment should be excluded**

The Colombian Attorney General's office has investigated several former Banadex employees in connection with the AUC extortion payments. Twice, the Colombian Attorney General's office found that there was no basis for criminal charges. In 2018, under a different Attorney General and for political reasons, a prosecutor issued a new charging document against 13 former Banadex employees, including Individual Defendant Charles Keiser.[4] Plaintiffs have made repeated references to the Colombian investigations and related documents, evidencing a clear intent to refer to unproven Colombian criminal charges at trial. (*See, e.g.*, DE 2081; DE 2363, pp. 13, 16, 19, 27.) Accordingly, Defendants move the Court to preclude all references to dismissed or pending Colombian criminal cases against former Banadex employees.

Similarly, Defendants move to preclude Plaintiffs from introducing Colombian charging documents as evidence at trial and to preclude all references to Colombian criminal charges against former AUC combatants including, but not limited to, the Hasbún indictment (DE 2346-78). While the Eleventh Circuit found the Hasbún Indictment record itself admissible under Fed. R. Evid. 803(6) and 803(8) as a business record and public record, it did not address whether the contents of the indictment could be offered for the truth of the matter asserted. The hearsay within hearsay in the indictment does not meet any exceptions and cannot be offered for the truth of the matter asserted, *ie-* that Hasbún committed the murders. It is a mere charging document, not a conviction. *See Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1308 (11th Cir. 2022) (affirming exclusion of charging document that showed only that the defendant "was charged with the homicide," not that he confessed or was convicted). As the Eleventh Circuit acknowledged, "placing otherwise inadmissible hearsay statements by third-parties into a government report does not make the statements admissible." *See Carrizosa*, 47 F.4th at 1302 n. 11 (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1278 (11th Cir. 2009)); *see also ADT LLC v. Vivint Smart Home, Inc.*, 2023 WL 3568117, *11 (S.D. Fla. May 19, 2023) (granting exclusion, concluding "that the

---

[4] *See* DE 2081-1, Spanish news article describing Colombian Attorney General Néstor Humberto Martínez's announcement of charges against former Banadex employees. Attorney General Néstor Humberto Martínez, as well as several subordinates, have since resigned from their posts. *See* Rafael Bernal, *Fight Over US Extradition Leads to Resignations of Top Colombian Officials*, THE HILL, May 17, 2019, available at https://thehill.com/latino/444333-fight-over-us-extradition-leads-to-resignations-of-top-colombian-officials (last accessed October 16, 2023).

external proceedings such as other lawsuits and investigations are inadmissible hearsay for purposes of [the proponent] urging the truth of the allegations in them").

"[I]t is hornbook law that indictments cannot be considered as evidence." *United States v. Cox*, 536 F.2d 65, 72 (5th Cir. 1976). "An indictment is only an accusation . . . . It is not evidence that the offense charged was committed and may not be considered as evidence by the jury during their deliberations." *United States v. Glaziou*, 402 F.2d 8, 15 (2d Cir. 1968) (citing *Blauner v. United States*, 293 F.2d 723, 736-37 (8th Cir. 1961)). Attempts to introduce pending or dismissed criminal charges at a civil trial "is scarcely the kind of argument to be expected from lawyers-- members of a profession that must (at least presumably) have some degree of familiarity with the presumption of innocence." *McGhee v. Joutras*, No. 94 C 7052, 1996 U.S. Dist. LEXIS 18019, at *19 (N.D. Ill. Dec. 4, 1996). Moreover, an indictment from a foreign jurisdiction with a vastly different legal system has no probative value, is unfairly prejudicial, and would mislead the jury. Fed. R. Evid. 403. Defendants expect Plaintiffs' counsel will make references to unadjudicated criminal investigations and indictments at trial. The Court should preclude them from doing so.

### C.    The Court should preclude reference to the SEC investigation

Applying Federal Rules of Evidence Rules 401, 403, 404(b), 408, and/or 802, the Court should preclude Plaintiffs from mentioning at trial, or offering any exhibit, testimony, or other evidence from or regarding, the U.S. Securities and Exchange Commission ("SEC")'s investigation of Chiquita's accounting practices in connection with a payment that a Banadex official caused to be paid in two installments totaling about $30,000 in 1995 to Colombian Customs officials to obtain a license renewal. Chiquita consented to the SEC Order "prior to a hearing and without admitting or denying the findings contained herein" and "[s]olely for the purpose of this proceeding and any other proceeding brought by or on behalf of the Commission[.][5] It is therefore not an admission by any Defendant.

An SEC cease-and-desist order made upon an offer of settlement by the respondent in proceedings instituted under Section 21C of the Exchange Act is inadmissible in later, unrelated proceedings as a document memorializing a settlement agreement under Fed. R. Evid. 408. *See Carpenters Health & Welfare Fund v. Coca Cola Co.*, No. 1:100-CV-2838-WBH, 2008 WL 9358563, *3 (N.D. Ga. Apr. 23, 2008). "Admitting the SEC Order into evidence in this matter

---

[5] *See* Securities Exchange Act of 1934, Release No. 44902 / October 2, 2001 available at https://www.sec.gov/litigation/admin/34-44902 (accessed Oct. 16, 2023).

would likely have a chilling effect on future attempts by the SEC to settle similar cases as companies that are the subject of an SEC investigation would necessarily weigh the benefits of a settlement against the possible damage that the settlement would do to their prospects in pending or future litigation." *Id*. at \*3. *See Ramada Dev. Co. v. Rauch*, 644 F.2d 1097, 1106-07 (5th Cir. Unit B 1981) (Rule 408 "is designed to encourage settlements by fostering free and full discussion of the issues" and affirming exclusion of document and statement "that would not have existed but for the [settlement] negotiations");[6] *Hines v. Brandon Steel Decks, Inc.*, 886 F.2d 299, 302–03 (11th Cir.1989) (legal conclusions in public reports are inadmissible as "factual findings from a legally authorized investigation" under Fed. R. Evid. 803(8)(A)(iii)).

The SEC Order is also inadmissible under Fed. R. Evid. 403 because its probative value, if any, is minimal compared to the unfair prejudice to Chiquita (and the Individual Defendants, Chiquita's former officers who were not parties to the SEC proceeding). *See Carpenters Health*, 2008 WL 9358563, \*\*4-6 ("This Court further finds that the introduction of the SEC Order into evidence would be unduly prejudicial to Defendants given the order's limited probative value."). Evidence relating to the SEC investigation culminating in the SEC Order is unfairly prejudicial, confuses the issues that the jury is to decide, and wastes time. Such evidence would be especially unfairly prejudicial to the Individual Defendants "who were not parties to the SEC proceedings." *Carpenters Health*, 2008 WL 9358563, \*6. *See also Boneta v. Am. Med. Sys., Inc.*, No. 20-CIV-60409, 2021 WL 6776245, \*3 (S.D. Fla. Oct. 6, 2021) ("[E]vidence of other lawsuits and the factual allegations therein is inadmissible under Rule 403.") (citation and internal quotation marks omitted); *A.T.O. Golden Constr. Corp.*, 2018 WL 5886663, at \*8-9 (excluding prior lawsuits because "even if [the] [p]laintiff could demonstrate some probative value from allegations in other lawsuits, presenting evidence of these other cases would lead to a series of mini-trials that would likely confuse and mislead the jury from the task at hand of evaluating plaintiff's claims in this case and result in a waste of time and judicial resources"); *Lanham v. Whitfield*, 805 F.2d 970, 972 (11th Cir. 1986) (affirming exclusion of evidence relating to other litigation under Rule

---

[6] *Ramada* was decided on May 14, 1981 and, therefore, is binding precedent within the Eleventh Circuit. *Bonner v. City of Prichard,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

404(b) because the danger of confusing the issues, misleading the jury, and substantial prejudice outweighed probative value).  All such evidence should therefore be excluded. Fed. R. Evid. 403.[7]

Also, any reference to the SEC investigation is precluded under Rule 404(b)(1) ("Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). *See Carpenters Health*, 2008 WL 9358563, *6 ("The SEC Order is not evidence of other crimes, wrongs, or acts; it is the legal conclusion of an outside party regarding precisely one of the matters at issue before this Court.")

Finally, evidence of and from the SEC investigation and the SEC Order are inadmissible hearsay because they are not made by the declarant in this action and Plaintiffs seek to use them for the truth of the matters asserted therein. Fed. R. Evid. 801(c), 802.  *See ADT LLC*, 2023 WL 3568117, *11 ("The Court concludes that the external proceedings such as other lawsuits and investigations are inadmissible hearsay for purposes of [the proponent] urging the truth of the allegations in them, and I therefore exclude evidence of them for that purpose.").

### D.    The Court should preclude Plaintiffs from insinuating that Chiquita violated the FCPA or generally accepted accounting principles

It is apparent through Plaintiffs' deposition designations and exhibits that Plaintiffs intend to argue or insinuate that Chiquita violated the U.S. Foreign Corrupt Practices Act ("FCPA") or other generally accepted accounting principles in the way it documented extortion payments to the AUC, even though there were no such violations. Plaintiffs should be precluded from making such insinuations and attempting to raise baseless side issues unrelated to their legal theories that will only serve to prejudice Defendants and confuse the jury. *See DeCurtis LLC v. Carnival Corp.*, 2023 WL 2401733, at *6 (S.D. Fla. Feb. 13, 2023) (excluding "evidence or argument relating to unpled theories" because they would "be irrelevant and will run the risk of inviting unfair prejudice and confusion"); *Peace United, Ltd. v. 1906 Collins, LLC*, 2022 WL 2802796, at *2 (S.D. Fla. July 18, 2022) (excluding evidence, testimony and argument regarding "unpled affirmative defenses

---

[7] Underscoring the unfair prejudice, issue confusion, and time wasting is that there is no private right of action under Section 13(b)(2). *Lewis on behalf of Nat'l Semiconductor Corp. v. Sporck*, 646 F. Supp. 574, 576 (N.D. Calif. 1986); *Northrop Corp. v. Jones*, 1989 U.S. Dist. LEXIS 18305, *5 (C.D. Calif. Nov. 13, 1989); *Shields on behalf of Sundstrand Corp. v. Erickson*, 710 F. Supp. 686, 688 (N.D. Ill. 1989).

[and] counterclaims"); *Regions Bank v. Kaplan*, 2016 WL 2587927, at *3 (M.D. Fla. Apr. 29, 2016) (excluding evidence and argument "related to unpled legal theories").

E.     **The Court should exclude Plaintiffs' "*modus operandi*" evidence**

The Eleventh Circuit explicitly left open the question of the admissibility of Plaintiffs' *modus operandi* evidence, i.e., the 'killing methodologies' associated with AUC operations, such as "stopping buses and killing; taking people from their homes and killing elsewhere; killing by brutal and gruesome methods; killing while hooded or masked; execution-style killing by bullets to the head." *Carrizosa*, 47 F.4th at 1325. Specifically, the Eleventh Circuit instructed this Court to reconsider the admissibility of this *modus operandi* evidence by applying the Rule 403 balancing test. *Id.* Importantly, the Eleventh Circuit "express[ed] no view on how that Rule 403 balancing should play out on remand." *Id.* at 1326 n.24. In applying the Rule 403 balancing test, this Court is afforded "the broadest discretion in determining whether evidence should be excluded." *Ermini v. Scott*, 937 F.3d 1329, 1343 (11th Cir. 2019) (citing *United States v. Costa*, 947 F.2d 919, 924 (11th Cir. 1991)).

Plaintiffs' purported *modus operandi* evidence has very low probative value of identifying the AUC as the perpetrator of the decedents' deaths. In fact, Plaintiffs' evidence is not even true *modus operandi* evidence because as this Court stated, "*modus operandi* requires [the] showing of 'such peculiar, unique or bizarre similarities as to mark them as handiwork' of [a] particular individual." DE 2551, at 66 (quoting *United States v. Myers*, 550 F.2d 1036, 1045–46 (5th Cir. 1977)). Because the purported AUC killing methodologies do not differ from those of other terror organizations, narcotraffickers, or other criminals operating in Colombia during the relevant time frame, Plaintiffs' evidence has very little tendency to make it more or less probable that the AUC committed the attacks as opposed to some other actor.

Even assuming some negligible level of relevance exists, Plaintiffs' *modus operandi* evidence must still be excluded under the Rule 403 balancing test. Where the probative value is so minimal, the risk of unfair prejudice, jury confusion and undue delay more easily tips the Rule 403 balancing scale in favor of exclusion. *See, e.g.*, *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) ("Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." (quoting *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir. 1992)); *United States v. Loughry*, 660 F.3d 965, 971 (7th Cir. 2011) (same); *United States v. Bailey*, 840 F.3d 99,

122 (3d Cir. 2016) (same); *see also United States v. Kaley*, 760 F. App'x 667, 675 (11th Cir. 2019) ("even if these statements were otherwise admissible, the district could did not abuse its discretion in excluding them under Rule 403, given their low probative value versus the potential creation of confusion"); *United States v. Scott*, 677 F.3d 72, 84 (2d Cir. 2012) (finding testimony had "no probative value" and any little probative value it may have had did not "remotely approach outweighing the possible prejudicial effect."); *Coleman v. Home Depot, Inc*., 306 F.3d 1333, 1347 (3d Cir. 2002) (affirming district court's decision that probative value of evidence was so low that the undue delay that would have resulted from the opposing party having to rebut the evidence was enough to substantially outweigh that low probative value).

Here, there is enough risk of unfair prejudice to easily outweigh the minimal probative value of Plaintiffs' *modus operandi* evidence. The gruesomeness of these killing methodologies is sure to create an unfairly prejudicial effect on the jury, as the jury will be left disturbed, impassioned, and sympathetic to the victims, with only the Defendants available to punish. *See United States v. Hands*, 184 F.3d 1322, 1328 (11th Cir. 1999) (affirming exclusion under Rule 403 because of "minimal probative value" and "great potential to incite unfair prejudice"); Advisory Committee's Notes on Fed. R. Evid. 403 (unfair prejudice means "an undue tendency to suggest decision on an improper basis, commonly . . . an emotional one.").

Plaintiffs' *modus operandi* evidence also will risk confusing the jury because these killing methodologies will be framed as something unique to the AUC when in fact they are not and reflect the methodologies employed by FARC and any other narco-terrorist or criminal group in Colombia during the relevant time period. This risk of confusion is maximized where Plaintiffs' *modus operandi* evidence will be introduced through expert witness testimony and therefore cloaked with the impression of enhanced credibility. *See United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) (stating that "[b]ecause of the powerful and potentially misleading effect of expert evidence," otherwise admissible expert opinions may still be excluded under Rule 403).

### F.     The Court should exclude all hearsay in Plaintiffs' Expert Reports

As the Eleventh Circuit noted, this Court reserved ruling on Defendants' hearsay objections to evidence contained within Plaintiffs' expert reports. *See Carrizosa*, 47 F. 4th at 1317. Plaintiffs' experts, including Kaplan, Karl and Kirk, simply assemble hearsay from reports, newspapers, books and other sources, then improperly regurgitate them as facts without applying experience or any expertise. In addition to the experts' opinions being improper, the hearsay itself cannot be

admitted for the truth of the matter asserted. *See United States v. Ramos*, 725 F.2d 1322, 1324 (11th Cir. 1984); *See also* Committee Notes on Rules—2000 Amendment to Fed. R. Evid. 703 ("Rule 703 has been amended to emphasize that when an expert reasonably relies on inadmissible information to form an opinion or inference, the underlying information is not admissible simply because the opinion or inference is admitted . . .The amendment provides a presumption against disclosure to the jury of information used as the basis of an expert's opinion and not admissible for any substantive purpose, when that information is offered by the proponent of the expert."). Accordingly, all of the hearsay relied upon by the experts should be excluded.

   In particular, the Eleventh Circuit noted that the Court reserved ruling upon the admissibility of Kaplan's statistical evidence underlying his Opinion 6, including the contention that "almost all (90 percent) of the killings of civilians in the bellwether victims' municipalities during the timeframe of this case were committed by paramilitaries." *See* Kaplan Report at 41. The statistics should be excluded as inadmissible hearsay. Indeed, contrary to the Eleventh Circuit's assumption (47 F. 4th at 1317, 1319), the statistic does not come from an external, reliable source but rather is attributed to "calculations by Oliver Kaplan." *See* Kaplan Report at 41 (citing Figure 7.4). Kaplan conceded at deposition that he did not have sufficient data at the municipality level to run a proper statistical analysis.[8] By Kaplan's own admission, the 90% statistic is not based on reliable information, is unreliable and should be excluded.

### G.     The Court should exclude Justice & Peace testimony of former AUC commanders

In the early 2000s, "the AUC negotiated an agreement with the Colombian government to demobilize in exchange for legal benefits (reduced prison sentences) conferred under the Justice and Peace Law." DE 2471 at 9, Order Denying New Jersey Plaintiffs' Motion for Class Certification. As part of that negotiation, AUC combatants participated in *versiones libres* (voluntary testimony) where they were required to speak about their role in paramilitary activities.

The Justice & Peace process is a reconciliation program intended to "facilitate the processes of peace and individual or collective reincorporation into civilian life of the members of illegal armed groups, guaranteeing the victims' rights to truth, justice, and reparation." *See* Law

---

[8] *See* Kaplan Dep. 207:18-208:1 ("you would have to aggregate [bellwether cases] in some kind of unit of analysis like a municipality or something like that that would let you run some kind of statistical test to actually get a correlation. And this data doesn't really permit that.").

No. 975, Chapter 1, Article 1, at DE 2510-1 at 47. As discussed further below, it is not a trial nor a reliable truth-finding mechanism.

Plaintiffs have indicated that they intend to introduce Justice & Peace testimony of numerous AUC commanders at trial. Plaintiffs seek to introduce this evidence for two reasons: (1) to establish that an AUC commander was "responsible" for a decedent's death and (2) to support the allegations that Chiquita was not extorted, but voluntarily paid the AUC.

Testimony before foreign tribunals is inadmissible hearsay. *See* Fed. R. Evid. 801, 802. Defendants anticipate that Plaintiffs will contend that Justice & Peace testimony falls within three hearsay exceptions: (1) Rule 804(b)(1)'s "Former Testimony" exception; (2) Rule 804(b)(3)'s "Statement Against Interest" Exception; or (3) Rule 801(d)(2)(E)'s coconspirator hearsay exemption. As established below, none of these hearsay exceptions apply, and Plaintiffs should be precluded from introducing Justice & Peace testimony of AUC combatants at trial.

### 1. Rule 804(b)(1) "Former Testimony" exception is not met

Rule 804(b)(1)(B) makes clear that if the witness is unavailable, testimony taken in another proceeding is admissible only if the testimony: "is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1)(B). To meet this requirement, the "party" against whom the hearsay testimony is offered must have been present at the earlier proceeding where the former testimony was developed, or the party's predecessor in interest was present and had an opportunity and similar motive to develop the testimony. Defendants were not parties to the Colombian Justice & Peace proceedings nor did they have a predecessor in interest at these proceedings, let alone one with an opportunity or motive to develop the testimony.[9] No party to the Justice & Peace process can be considered on the "same side of the same [or any] issue" as Defendants. *Mamani v. Berzaín*, No. 07-22459-CIV-COHN/SELTZER, 2018 U.S. Dist. LEXIS 24130, at *18 (S.D. Fla. Feb. 14, 2018). Indeed, Defendants in these cases are not on the same side as either the Colombian state, AUC victims, or former AUC commanders and there is

---

[9] While a "predecessor in interest" need not be in privity with the party seeking to exclude evidence, the prior questioner must be on the "same side" and have a substantially similar interest in asserting that side of the issues. *See, e.g.*, *Mamani*, 2018 U.S. Dist. LEXIS 24130, at *18; *Nationwide Mut. Fire Ins. Co. v. Kaloust Fin., LLC*, 2013 U.S. Dist. LEXIS 50933, at *8 (M.D. Fla. Apr. 9, 2013) (stating that only a "previous party having like motive to develop the testimony about the same material facts is a predecessor in interest to the present party.").

no "alignment of interests between the parties in the prior [Justice & Peace] and present proceedings." *Id*. at *20.

As to the nature of the alleged relationship between Chiquita and the AUC, Defendants were "not on the same side," nor did they have "substantially similar interest" in asserting their side of the issue as the testifying AUC commanders or the Colombian state. *Mamani*, 2018 U.S. Dist. LEXIS 24130, at *18-19. Defendants have always maintained, as the evidence of record here supports, that the AUC extorted payments from Chiquita through violence and threats of violence. To the extent any former AUC commander testified differently before the Justice & Peace tribunal, those commanders and the Colombian state plainly had substantially different interests in asserting their side of the issue, in furtherance of reconciliation, reincorporation into civilian life, or promoting peace. Neither the AUC commanders, nor the Colombian state had any interests whatsoever in asserting or developing Defendants' side of the AUC's extortion of Chiquita.

The same holds true for AUC commander testimony regarding the death of civilians in Colombia's civil war. The AUC commanders testifying before the Justice & Peace tribunal were motivated to accept command responsibility for multiple killings because of the threat of increased punishment, including longer prison sentences. The Justice & Peace program incentivized AUC commanders to "accept responsibility" for deaths for which there is no underlying evidence that an AUC operative killed the decedent. Likewise, civilians questioning AUC commanders were motivated by the ability to obtain monetary benefits under the Justice & Peace law's reparations process. The Colombian state's interest was in reconciling the country's decade long violent civil war, with no regard for evidentiary rules and standards that govern these individual cases. In other words, no party to the Justice & Peace process had any interest whatsoever—as Defendants do here—in determining whether it can be established under the Federal Rules of Evidence that any individual, including Plaintiffs' decedents, was killed by an AUC operative.

## 2.   Rule 804(b)(3) "Statement Against Interest" exception is not met

To be admissible under 804(b)(3)'s hearsay exception, Plaintiffs must show that the Justice & Peace testimony of former AUC commanders satisfies the Rule's three-prong test: "(1) the declarant must be unavailable; (2) the statement must be against the declarant's penal interest; and (3) corroborating circumstances must clearly indicate the trustworthiness of the statement." *United States v. Jernigan*, 341 F.3d 1273, 1288 (11th Cir. 2003). The Justice & Peace testimony of former AUC commanders fails to meet at least the second and third prongs.

"Ordinarily, a statement against penal interest has clear guarantees of trustworthiness because, human nature being what it is, a person is unlikely to implicate himself criminally unless he was in fact involved in the criminal undertaking." *United States v. Katsougrakis*, 715 F.2d 769, 774 (2d Cir. 1983). The testimony of former AUC commanders before the Justice & Peace tribunal was not against a penal interest.  Rather, the reconciliation purpose of the Justice & Peace process permitted *reduced* prison terms regardless of the number of deaths for which a commander accepted command responsibility—the antithesis of a statement against penal interest.  Indeed, testimony before the Justice & Peace tribunal was given precisely to obtain the *benefit* of a no-longer-than-eight-year prison sentence for any and all deaths for which the commander accepted responsibility.  Thus, for example, Raul Hasbún accepted command responsibility for 11,000 deaths while maintaining that he himself had never killed anyone. DE 2346-100, 175:4-13; DE 2346-9, 40:23-41:1.

Testimony of former AUC commanders before the Justice & Peace tribunal was motivated by a profound ulterior motive—the guarantee of an extraordinarily lenient prison sentence for reprehensible crimes. That motive alone precludes admission of any Justice & Peace testimony. As the Advisory Committee Notes to Rule 804(b)(3) provide, "a statement admitting guilt and implicating another person, made in the presence of law enforcement agents, may well be motivated by a desire to curry favor with the authorities and hence fails to qualify as against interest." Fed. R. Evid. 804(b)(3), Advisory Committee Notes. The mere fact that a statement is incriminating on its face is not enough to make it against penal interest. The Supreme Court has rejected that overly simplistic view: "whether a statement is self-inculpatory or not can only be determined by viewing it in context." *Williamson v. United States*, 512 U.S. 594, 603 (1994).

Applying that principle, federal courts have routinely held that even a powerfully self-incriminating statement is not against the declarant's penal interest if the declarant has previously been given immunity from prosecution or the benefit of a reduced sentence. *See United States v. Atkins*, 618 F.2d 366, 372-73 (5th Cir. 1980) (statements were not against penal interest where declarant was already convicted and was seeking reduction of his sentence); *United States v. Gonzalez*, 559 F.2d 1271, 1273 (5th Cir. 1977) (declarant had been convicted and given immunity when he made statements at issue); *United States v. Magna-Olvera*, 917 F.2d 401, 407-09 (9th Cir. 1990) (statements were not sufficiently against declarant's penal interest where they were made in custody after the government suggested that he could halve his prison time for cooperation.).

Former AUC commander testimony before the Justice & Peace tribunal was made in their own interests, not against their penal interests.

Additionally, courts regularly exclude the testimony of alleged terrorists on the theory that such testimony is not trustworthy as required by Rule 804(b)(3) because it is perceived by the declarant as self-aggrandizement, not as an admission of criminal liability. *See Gilmore v. Palestinian Interim Self-Gov't Auth.*, 53 F. Supp. 3d 191, 205 (D.D.C. 2014) *aff'd on other grounds*, 843 F.3d 958 (D.C. Cir. 2016) ("[T]he Court concludes that Abu Halawa's announcement to Aweis that he would assume responsibility for the NII attack was a publicity-seeking effort that was not contrary to his perceived interests."); *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 569 (E.D.N.Y. 2012) (excluding Hamas' claim of responsibility for an alleged terrorist shooting); *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 449 (E.D.N.Y. 2013) ("While admitting to a violent attack on innocents typically is detrimental to a declarant's interests, the interests and motives of terrorists are far from typical."); *In re September 11 Litig.*, 621 F. Supp. 2d 131, 160 (S.D.N.Y. 2009) (refusing to admit terrorist's trial statements under Rule 804(b)(3) because the declarant was a "a terrorist, willing to give his life, and assist others in giving theirs, so as to murder innocents. I will not base my ruling here on the presumption that he is a reasonable man[.]"). The credibility of former AUC commanders should be met with similar skepticism and the Court should not permit their testimony to be introduced under Rule 804(b)(3).

### 3.   Rule 801(d)(2)(E) "Coconspirator" exception does not apply

As an initial matter, Defendants dispute the existence of any conspiracy between Chiquita, its former employees, and the AUC or between the AUC and the Colombian state. But even assuming the existence of a conspiracy (which there was not), Justice & Peace testimony cannot be admitted under Rule 801(d)(2)(E)'s conspiracy hearsay exception because such testimony was not made "during the course and in furtherance of the conspiracy." Testimony given by former AUC combatants before the Justice & Peace tribunal could not have furthered the interests of the alleged conspiracy in any way. A statement that merely "discloses the existence of a[n] [alleged] conspiracy to a non-conspirator, that merely 'spills the beans,' with no intention of recruiting the auditor into the conspiracy does not further the conspiracy." *City of Tuscaloosa v. Harcros Chems.*, 158 F.3d 548, 559 (11th Cir. 1998). Moreover, when former AUC commanders testified before the Justice & Peace tribunal any alleged conspiracy—which Defendants dispute—would have been over, as Chiquita had long since left Colombia and ceased operations there.

14

### 4.   Rule 807 does not apply

The Justice & Peace testimony does not meet the high burden for admissibility under Rule 807's narrow residual hearsay exception. *See Mazer*, 556 F.3d at 1279. AUC commanders testifying before the Justice & Peace tribunal had a profound motivation to accept responsibility for killings within their territory, even for acts they did not commit or have personal knowledge of—the Justice & Peace law's guarantee of reduced sentences. AUC commanders were incentivized to be over-inclusive, rather than under-inclusive, which would risk the loss of the maximum 8-year sentences. As the Court previously recognized, "as described at the deposition of AUC leader Salvatore Mancuso, at the commander level, this [the Justice & Peace] process involved a general acceptance of responsibility for acts of subordinate combatants and was not necessarily based on direct participation or even knowledge of the specific underlying crimes." DE 2471 at 5 n. 7. Lack of personal knowledge or other corroborating evidence undermines the trustworthiness of the Justice & Peace testimony Plaintiffs seek to introduce. *See United States v. Lang*, 904 F.2d 618, 624 (11th Cir. 1990) ("[C]orroborating evidence must be extraordinarily strong before it will render the hearsay evidence sufficiently trustworthy to justify its admission."). In *Rivers v. United States*, 777 F.3d 1306, 1316 (11th Cir. 2015), the Eleventh Circuit held that the district court erred in admitting statements where the "near absence of corroborating evidence" demonstrated a "lack equivalent circumstantial guarantees of trustworthiness."

### H.   The Court should preclude plaintiffs' experts from testifying as to motive or intent of any Defendant or third-party

Plaintiffs intend to elicit expert "opinions" from Karl, Kaplan and Kirk regarding the state of mind and motivations of Defendants, the AUC and its former members, and the Colombian government. State of mind, including motivation and intent, is not an issue for experts, but for the jury. *See In re Trasylol Prods. Liab. Litig.*, 709 F. Supp. 2d 1323, 1338 (S.D. Fla. 2010). "[I]nferences about the intent or motive of parties or others lie outside the bounds of expert testimony." *Highland Capital Mgmt. L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005) Regardless of how the Court rules on Defendants' pending *Daubert* motions, the Court should preclude all expert testimony as to the state of mind of any Defendant or third party.

### I.   The Court should preclude Plaintiffs' hearsay statements

Pursuant to Fed. R. Evid. 602 and 802, Plaintiffs should not be allowed to testify about anything other than matters on which they have personal knowledge obtained through their

personal perception of events. Plaintiffs should not be allowed to testify about anything they learned from the hearsay statements of others, or otherwise relay such hearsay statements to the jury. The Federal Rules of Evidence preclude Plaintiffs from testifying about the following (non-exclusive, but most egregious) examples, unless such testimony is based on personal knowledge: a) the identity of any group affiliations of the person or persons allegedly responsible for attacking Plaintiffs' decedents; and b) any other details Plaintiffs learned about the death of their decedents from their lawyers, other persons, from investigations conducted by government officials, newspaper articles, databases, or from any materials obtained through discovery or outside discovery in this case.

**J.      The Court should preclude Plaintiffs from introducing inflammatory and prejudicial evidence under Rules 401, 402, and 403**

Plaintiffs should be precluded from introducing photographs of killings and victims of the AUC that do not involve the decedents at issue and photographs of machine guns and weapons unless they were used to kill a decedent at issue (hereinafter, "Irrelevant and Inflammatory Exhibits"). The Irrelevant and Inflammatory Exhibits include, but are not limited to, Plaintiffs' Exhibit P2074, Plaintiffs' Exhibit P2091, and Plaintiffs' Exhibit P2092.

Photographs of random weapons, killings and victims unrelated to the decedents do not make it more or less probable that a member of the AUC was a perpetrator of a decedent's murder or that any Defendant aided and abetted the murder of any decedent. These types of Exhibits are only relevant if they are connected to a specific decedent. *See, e.g., United States v. Goliday*, 145 Fed. App'x 502, 506 (6th Cir. 2005); *United States v. Matsunaga*, 158 Fed. App'x 783, 785 (9th Cir. 2005) (quoting *United States v. Tarazon*, 989 F.2d 1045, 1053 (9th Cir. 1993)); *United States v. Warledo*, 557 F.2d 721, 725 (10th Cir. 1977) ("The courts have quite uniformly condemned the introduction in evidence of testimony concerning dangerous weapons, even though found in the possession of a defendant, which have nothing to do with the crime charged").

Furthermore, even if the exhibits were remotely relevant and carried some probative value, it is heavily outweighed by the risk of unfair prejudice, confusion of the issues, and misleading the jury. *See* Fed. R. Evid. 403. The only purpose for offering such evidence would be to inflame the passions of the jury and, in doing so, to elicit an emotional reaction rather than a decision on the merits. *See Horrillo v. Cook, Inc.*, No. 09-60931-CIV-MATTHEWMAN, 2014 U.S. Dist. LEXIS 86571, at *10-11 (S.D. Fla. June 6, 2014); *Begualg*, 2013 U.S. Dist. LEXIS 26890, at *3.

### K.   The Court should preclude description of Plaintiffs as "human rights defenders"

Since these cases began, Plaintiffs' counsel have consistently described their clients as "human rights defenders" and "human rights victims." The characterization is irrelevant, unfairly prejudicial to Defendants, and should be precluded. Reference to Plaintiffs as "human rights defenders" or "human rights victims" is not probative of any issue and no legal argument depends on it. Rule 403 requires exclusion of statements like this, that "provoke[] an emotional response in the jury or otherwise tends to affect adversely the juror's attitude toward the defendant wholly apart from its judgment" as to the elements of the claim. *United States v. Burgess*, 576 F.3d 1078, 1099 (10th Cir. 2009).

### L.   The Court should exclude reference to Defendants' size or financial condition

Plaintiffs should not be permitted to present any evidence, statement, or argument about the relative wealth, financial condition, power, or size of any Defendant. Any such reference is not relevant and would be improper, and unduly prejudicial. *See* Fed. R. Evid. 401, 402, 403; *see also Lane v. Capital Acquisitions*, 242 F.R.D. 667, 669 (S.D. Fla. 2005); *Barnes v. Danner*, 104 F.3d 358 (4th Cir. 1996); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

### M.   Plaintiffs should be precluded from recovering non-economic damages beyond the maximum limit allowed for such damages under Colombian law

Under Colombian law, a plaintiff may recover material (economic) and non-material (non-economic) damages for a non-contractual (tort) claim under Article 2341 of the Colombian Civil Code. *See* Expert Report of Jorge Santos Ballesteros, DE 2283-1 ("Justice Santos First Report"), at 6. The burden to prove damages is on the plaintiff. *See id.*, at 8. But regardless of what may be proven, there is a limit under Colombian law on the amount of non-material damages that may be recovered at trial. There are two types of non-material damages under Colombian law at issue in this case: (i) moral damages and (ii) loss of relation damages. *See id.* at 7. Currently, the limitation on moral damages, which include pain and suffering and emotional distress that the victim suffered, is COP$72,000,000 and the limitation on loss of relation damages, which include relatives' loss of consortium with the victim, is COP $140,000,000. *See* Supplemental Expert Report on Non-Material Damages Under Colombian Law of Jorge Santos Ballesteros ("Justice Santos Damages Report"), attached as Exhibit 1. The limits on the amount of such damages are part of the Colombian substantive law of non-contractual damages, *id.*, ¶ 20, and the Colombian

Supreme Court has determined the parameters of non-material damages under Article 2341 which is binding upon this Court. *Wainwright* v. *Goode*, 464 U. S. 78, 84 (1983); *CSX Transp., Inc. v. General Mills, Inc.*, ___ F.4th ___, 2023 U.S. App. LEXIS 26504, *23 n.6 (11th Cir. 2023); *Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir. 1997); *Cf. Robinson & Co. v. Belt*, 187 U.S. 41, 47 (1902). Plaintiffs are therefore not entitled to recover more in damages on their Colombian law claims than they would be permitted to recover in Colombia.

### N.     The Court should exclude improper jury arguments related to damages

The Court should preclude Plaintiffs from arguing or recommending to the jury that jurors should award: (1) certain specific dollar amounts in damages for non-economic injuries; and (2) an amount based on what they would like to receive if they were a plaintiff. As explained below, courts bar these arguments because they invite jurors to base a damages award not on what they determine is fair and reasonable considering the evidence, but on counsel's opinion rather than their own, or on their own personal interest, or on sympathy, passion, or prejudice.

As an initial matter, Plaintiffs should be precluded from suggesting or requesting a specific dollar amount in non-economic damages because they failed to provide such a computation in their Rule 26 disclosures or during deposition testimony. Fed. R. Civ. P. 26(a)(1)(A)(iii) (providing that a defendant is entitled to a "computation of each category of damages claimed by the disclosing party . . . ."); *De Varona v. Disc. Auto Parts, Ltd. Liab. Co.*, No. 12-20714-Civ, 2012 U.S. Dist. LEXIS 191048, at *5 (S.D. Fla. June 19, 2012); *Gray v. Florida Dept. of Juvenile Justice*, No. 3:06-cv-990-J020MCR, 2007 WL 295514, at *2 (M.D. Fla. Jan. 30, 2007).

The Court should also prohibit plaintiffs from making "Golden Rule" arguments that ask jurors how much they would want in damages if they were in the shoes of the victims. "The straight golden rule argument—'put yourself in the shoes of my client,'—clearly [is] banned by binding precedent." *Woods v. Burlington N. R.R. Co.*, 768 F.2d 1287, 1292 (11th Cir. 1985), *overruled on other grounds by Burlington N. R.R. Co. v. Woods*, 480 U.S. 1 (1987).

### IV.     Individual Defendants' Motion In Limine To Exclude Any And All Evidence Regarding Chiquita's Guilty Plea

Pursuant to Rules 401, 402, 403, 609, and 801 of the Federal Rules of Evidence, the undersigned Individual Defendants hereby move the Court to exclude any and all statements, references, arguments or evidence regarding Chiquita's guilty plea in *United States v. Chiquita Brands International, Inc.*, U.S. District Court for the District of Columbia, Case No. 1:07-CR-

055-RCL, including the Plea Agreement (DE 11), Factual Proffer (DE 12), Sentencing Memorandum (DE 17), and the sentencing hearing transcript.  Plaintiffs identified these plea-related documents as trial exhibits and signaled their intention to make the March 2007 criminal conviction central to their case in chief.  *See* DE 3408 at 8, 15-16 (identifying Chiquita's criminal prosecution and guilty plea as a common legal and evidentiary issue across all bellwether cases). Yet none of the Individual Defendants were parties to the criminal case that resulted in Chiquita's guilty plea for engaging in transactions with the AUC without first obtaining a license. The U.S. government did not charge any individuals for the same underlying conduct and none of the individuals made payments to the AUC – rather it was Chiquita. Only Chiquita and its outside counsel signed or participated in drafting the Plea Agreement and Factual Proffer, which formed the basis for the guilty plea. Chiquita's guilty plea and related documents cannot bind the Individual Defendants. *See Burrows v. Waffle House, Inc.*, 2000 WL 35593211, at *7 (S.D. Fla. Aug. 28, 2000) (party admission by one defendant cannot be used against a co-defendant) (citing *Riberglass, Inc. v. Techni-Glass Indus., Inc.*, 811 F.2d 565, 566 (11th Cir. 1987)). Plaintiffs should not be permitted to mislead the jury that the Individual Defendants admitted to or committed a federal crime, or that admissions made by the company should be applied to them.[10]

The risk of jury confusion is increased by the purported references in the Factual Proffer and Plea Agreement to various individuals, some of whom are defendants in the bellwether trials, while others are not. Plaintiffs repeatedly have attempted to exploit these references and use

---

[10] Plaintiffs also should be barred from using Chiquita's conviction to impeach any Individual Defendant.  *See* DE 3471; FRE 609(b)(2).  Rule 609 refers only to "the witness's conviction" and makes no provision for impeaching a witness via another party's conviction. Though Rule 609 may allow for impeaching the convicted corporation through its representative (*see Hickson Corp. v. Norfolk S. Ry. Co.*, 227 F. Supp. 2d 903 (E.D. Tenn. 2002), *aff'd*, 124 F. App'x 336 (6th Cir. 2005)), the text of Rule 609 refers specifically to "the witness's conviction" and does not allow for impeaching a defendant witness with the conviction of another.  Thus, Plaintiffs are not permitted under Rule 609(b) to use Chiquita's conviction to impeach the "character for truthfulness" of any Individual Defendant who testifies at trial.  In addition, Rule 609(b) requires the court to admit a conviction that is more than 10 years "only if (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."  Here, even if Plaintiffs would normally be permitted to admit evidence of Chiquita's conviction to impeach Chiquita (or that of Chiquita's designee), doing so in this case, where Individual Defendants did not plead guilty or were not charged or convicted of a crime, would cause substantial prejudice that outweighs any probative value of Chiquita's conviction.

Chiquita's guilty plea against Individual Defendants in their pleadings.[11] If the jury is exposed to these strategically false references and misstatements, it could conclude that the prior criminal conviction of Chiquita must carry weight in an action for damages against Chiquita's *former officers and directors*, none of whom were charged or convicted. Introduction of evidence against the Individual Defendants regarding the prosecution of Chiquita is thus highly inflammatory and unfairly prejudicial. *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1068-9 (11th Cir. 2014) (courts "commonly" exclude evidence with an "undue tendency to suggest [a] decision" on an "emotional" basis).

Moreover, Chiquita's conviction is not probative of any individual's conduct because the TVPA and Colombian law claims at issue do not overlap with the discrete set of facts or elements of the crime to which Chiquita pled guilty: *i.e.*, (1) the AUC was designated a global terrorist on Sept. 10, 2001, and (2) thereafter Chiquita made at least one payment to the AUC without the required license.  Furthermore, because Chiquita pled guilty only to payments made after the FTO designation, the guilty plea has no relevance to any of the six Bellwether 1A cases that involve events that predated the designation.  Therefore, the admission in this case of evidence of Chiquita's guilty plea would be unfairly prejudicial to the Individual Defendants.[12]

Exclusion of this evidence against the Individual Defendants is also required because of the multiple levels of inadmissible hearsay in these documents. *See, e.g.*, Factual Proffer at ¶ 21; Fed. R. Evid. 801, 805. To the extent the hearsay statements purport to convey conduct by, or statements to/by an Individual Defendant as the Plaintiffs have argued, these hearsay statements are inherently unreliable and inadmissible. *Harcros Chem.*, 158 F.3d at 561.

**V.   Conclusion**

For the foregoing reasons, Defendants' Omnibus Motion and the Individual Defendants' Motion should be granted.

---

[11] *See, e.g.,* DE 2288 at 1 (arguing the Plea Agreement and Factual Proffer foreclose Chiquita's *and the Individual Defendants'* affirmative defense of duress); DE 2363 at 40 ("a jury could conclude, as the Justice Department did, that Chiquita (and its officers) made a business decision to continue operating in Colombia and thus to support the AUC").

[12] *See, e.g.*, *Begualg*, 2013 U.S. Dist. LEXIS 26890, at * 3 ("The real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence, which may irretrievably affect the fairness of the trial.").

Dated: October 16, 2023

Respectfully submitted,

/s/ Michael L. Cioffi
Michael L. Cioffi (*pro hac vice*)
Thomas H. Stewart (*pro hac vice*)
BLANK ROME LLP
1700 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
Direct Dial:     (513) 362-8701/04
Facsimile:      (513) 362-8702/93
Email:          michael.cioffi@blankrome.com
                tom.stewart@blankrome.com

Frank A. Dante (*pro hac vice*)
Melissa F. Murphy (*pro hac vice*)
BLANK ROME LLP
One Logan Square
130 N. 18th Street
Philadelphia, PA 9103
Direct Dial:     (215) 569-5645
Email:          frank.dante@blankrome.com
                melissa.murphy@blankrome.com
*Counsel for Defendant Chiquita Brands*
*International and Liaison Counsel for all*
*Defendants*

/s/ Ardith Bronson
Ardith Bronson (Fla. Bar No. 423025)
DLA PIPER LLP (US)
200 South Biscayne Blvd., Suite 2500
Miami, FL 33131-5341
Tel: (305) 423-8500
Fax: (305) 503-9583
Email: ardith.bronson@dlapiper.com

Charles B. Wayne (pro hac vice)
DLA PIPER LLP (US)
500 Eighth Street, N.W.
Washington, D.C. 20004
Tel: (202) 799-4000
Fax: (202) 799-5517
Email: charles.wayne@dlapiper.com
*Counsel for Defendants, Cyrus Freidheim, Jr.*
*and Robert Kistinger*

/s/ Jeffrey A. Neiman
Jeffrey A. Neiman (Fla. Bar No. 544469)
MARCUS NEIMAN & RASHBAUM
100 Southeast Third Avenue, Suite 805
Fort Lauderdale, FL 33394
Tel: (954) 462-1200
Fax: (954) 688-2492
Email: jneiman@mnrlawfirm.com

Elissa J. Preheim (*pro hac vice*)
ARNOLD PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue NW
Washington, DC 20001
Tel: (202) 942-5000
Fax: (202) 952-5999
Email: elissa.preheim@arnoldporter.com
*Counsel for Defendant Robert Olson*

/s/ Ian K. Hochman
Ian K. Hochman (Fla. Bar No. 121258)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, NY 10019
Tel: (212) 728-8641
Fax: (212) 728-9641
Email: ihochman@willkie.com

Robert J. Meyer (pro hac vice)
Elizabeth J. Bower (pro hac vice)
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, DC 20006-1238
Tel: (202) 303-1123
Fax: (202) 303-2123
rmeyer@willkie.com
ebower@willkie.com
*Counsel for Defendant, John Ordman*

/s/ Dimitri D. Portnoi
Dimitri D. Portnoi (pro hac vice)
O'MELVENY & MYERS LLP
400 S. Hope Street, 18th Floor
Los Angeles, CA 90071
Tel.:    (213) 430-7699
Email: dportnoi@omm.com

K. Lee Blalack, II (pro hac vice)
Anton Metlitsky (pro hac vice)
O'Melveny & Myers LLP
1625 Eye Street N.W.
Washington, D.C. 20006
Tel.:   (202) 383-5300
Email: lblalack@omm.com
ametlitsky@omm.com
*Counsel for Carla M. Hills, as the*
*Personal Representative of the*
*Estate of Roderick M. Hills, Sr.*

/s/ Alan B. Rose
Alan B. Rose (Fla. Bar No. 961825)
MRACHEK, FITZGERALD, ROSE,
KONOPKA, THOMAS & WEISS, P.A.
505 South Flagler Drive, Suite 600
West Palm Beach, Florida 33401
Tel: (561) 655-2250
Fax: (561) 655-5537
Email: arose@mrachek-law.com

David S. Krakoff (pro hac vice)
Preston Burton (pro hac vice)
Bradley A. Marcus (pro hac vice)
ORRICK, HERRINGTON & SUTCLIFFE
LLP
2001 M St. NW, Suite 500
Washington, DC 20036
Tel: 202-349-8000
Email: dkrakoff@orrick.com
pburton@orrick.com
bmarcus@orrick.com
*Counsel for Defendant Charles Keiser*

/s/ John B.T. Murray, Jr.
John B.T. Murray, Jr. (Fla. Bar 962759)
Gunster Yoakley & Stewart, P.A.
777 South Flagler Drive, Ste. 500 East
West Palm Beach, Florida 33401
Tel: (561) 650-0600
Email: jbmurray@gunster.com
*Counsel for Defendant William Tsacalis*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was filed by ECF on October 16, 2023, which will automatically generate and serve Notices of Electronic Filing on all counsel of record.

*/s/ Michael L. Cioffi*
Michael L. Cioffi
