**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 08-MD-01916-MARRA**

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION
_____/

This Document Relates to:

**ATS ACTIONS:**

07-60821-CIV-MARRA (Carrizosa Action)
08-80421-CIV-MARRA (NJ Action)
08-80465-CIV-MARRA (Does 1-144/Perez 1-795 Action)
08-80480-CIV-MARRA (Manjarres Action)
08-80508-CIV-MARRA (Valencia Action)
10-60573-CIV-MARRA (Florida Montes Action)
17-80535-CIV-MARRA (Ohio Montes Action)
18-80800-CIV-MARRA (Does 1-144/Perez 1-795 Action)
18-80248-CIV-MARRA (NJ Action)
_____/

**NON-WOLF PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' WITNESSES,**
**DEPOSITIONS AND EXHIBITS**

## INTRODUCTION

Defendants' witness list includes many witnesses who should not be permitted to testify. Their deposition list is likewise replete with depositions that should not be admitted.

Eight of Defendants' witnesses are former Chiquita employees that Chiquita refused to produce during the discovery period, relying on the fact that, because they were outside the United States, Plaintiffs could not subpoena them directly. Defendants should not benefit from their own gamesmanship by now bringing these witnesses to the U.S. for trial, at least not without making them available for pre-trial depositions.

Thirteen of Defendants' witnesses were never disclosed, and one was disclosed only on the last day of discovery. Plaintiffs were prejudiced by the inability to take discovery of these witnesses, and Defendants should not benefit from their bad-faith conduct.

Three of Defendants' "expert" witnesses – Osvaldo Cuadrado Simanca, Gen. Gustavo Rincon Rivera, and Gen. Yesid Sanchez Ruiz – testify principally from their own knowledge rather than any recognized expertise. Because they have been paid to testify, they cannot be heard if the Court sustains Plaintiffs' *Daubert* objections.

As for the depositions that Defendants have designated, six of them are strictly inadmissible hearsay because they were not taken in this proceeding – instead, they come from prior litigation where these Plaintiffs were not parties, and had no notice or opportunity to participate in the depositions.

Six of the depositions that are from this case are from deponents who are not actually unavailable. One of them lives within 100 miles of this Court. For the other five, Defendants have indicated that they have the ability to produce these witnesses for trial, placing them on their trial witness list. If Defendants can produce them for trial, they cannot introduce their depositions.

And one deponent – Hermes Segundo Hernandez Aguirre – should be excluded on the basis

1

of Defendants' false statements and lack of disclosure during discovery. On multiple occasions, Defendants stated that they did not know where he was or how he could be contacted. Then, at the very end of discovery, they ambushed Plaintiffs with a deposition of Hernandez, after Plaintiffs had no ability to interview the witness or propound written discovery related to him. His deposition should likewise be excluded.

Overall, Defendants' approach has been to bring witnesses to the United States for deposition or trial when they think it benefits them – witnesses they clearly control – but to keep other witnesses within their control beyond the Court's subpoena power when it suits them.

Last, Defendants have also recently challenged some exhibits on Plaintiffs' exhibit list as either untranslated Spanish documents, or allegedly untimely produced. If the Court excludes any of Plaintiffs' exhibits, it should apply the same standards to exclude the many Defendants' exhibits that fall into the same categories.

## **<u>BACKGROUND</u>**

**I.    Initial disclosures and discovery requests in this case.**

Discovery opened in this case in 2017 with Initial Disclosures. Rather than the standard Rule 26(a)(1) disclosures, the Court exercised the option under that rule to mandate different disclosures. For Chiquita, its Initial Disclosure obligation for April 24, 2017, was to produce "[a]ll relevant, non-privileged documents located within Chiquita's custody and control that can reasonably be produced," expressly to include "all documents previously produced by the Defendant to the Department of Justice ("DOJ"), the Securities Exchange Commission ("SEC") and the plaintiffs in the ATA Actions." DE 1361 at 2. For Plaintiffs, their Initial Disclosure obligation for May 29, 2017, was to produce, for each bellwether Plaintiff, the following information:

      i. Name of each Plaintiff and current address.
      ii. Description of the alleged injury.
      iii. Date of the alleged injury.
      iv. A copy of police or other investigative reports and other documentation of the

injury including death certificate if deceased.
v. Medical records related to the injury.
vi. Plaintiff's relationship to alleged victim if a person other than Plaintiff.
vii. Occupation and employment history of the injured Plaintiff and of the alleged victim, if victim not the Plaintiff.
viii. Membership (of Plaintiff and also the victim if victim not the Plaintiff) or other affiliation with a political party; paramilitary or guerilla organization (including but not limited to FARC, AUC or ELN), labor union or gang.
ix. Service (by Plaintiff and also by victim if victim not the Plaintiff) in the military.
x. Employment history, if any, with Banadex or any other Chiquita entity.
xi. Witness(es) to the alleged injury.

DE 1361 at 3. All parties understood that the Court had replaced the standard Rule 26(a)(1) disclosures with these requirements; neither Plaintiffs nor Defendants produced the standard disclosures, such as witnesses with knowledge or documents that may support their claims or defenses. Declaration of Marco Simons ("Simons Decl.") ¶ 3.

As discovery proceeded, Plaintiffs did request the information covered by the standard set of initial disclosures. Plaintiffs served Requests for Production that asked for "[a]ll documents, electronically stored information, and tangible things that you believe you may use to support your defenses, unless the use would be solely for impeachment," Simons Decl. ¶ 4; Ex. 1 at 7, and an Interrogatory that asked for "the name and, if known, the address and telephone number of each individual likely to have discoverable information – along with the subjects of that information – that you may use to support your defenses, unless the use would be solely for impeachment," Simons Decl. ¶ 5; Ex. 2 at 4. Defendants did not serve equivalent requests, although they served Interrogatories asking for the names of anyone "who you believe has any knowledge or information as to facts pertaining to the circumstances and/or manner of the alleged injuries, disappearance, or death of you or the Alleged Victim." Simons Decl. ¶ 7.

Chiquita initially refused to respond to either the Request for Production or the Interrogatory that sought the standard Rule 26(a)(1) information, arguing that the Request for Production "inappropriately and prematurely requires Chiquita to marshal all evidence it may

present at trial in support of its defenses, is unduly burdensome and overbroad as a matter of law, and constitutes an abuse of the discovery process," Ex. 3 at 6, and that the Interrogatory was "facially overly broad and unduly burdensome as a matter of law because it improperly purports to impose upon Chiquita an obligation to marshal all evidence of particular facts well in advance of trial," "constitutes an abuse of the discovery process," and imposed an "extreme and undue burden," Ex. 4 at 5. After meeting and conferring, on February 28, 2018, Chiquita did provide an answer to the Interrogatory, purporting to disclose all witnesses. Ex. 5. Chiquita supplemented this response with additional witnesses on March 8, 2018, identifying nearly 100 witnesses in total. Ex. 6.

Additionally, Plaintiffs made a number of document requests that were specific to individual witnesses. With respect to 81 specific named witnesses, Plaintiffs requested "All documents concerning a) Chiquita's payments to or any other form of interaction with any Colombian paramilitary organization or individual, including the AUC and convivir organizations; b) violence or abuses by any Colombian paramilitary organization or individual, including the AUC and convivir organizations; or c) any security threats or arrangements in Colombia, that was created by, received by, or copied to" the witness. Simons Decl. ¶ 5; Ex. 1 at 10-28.

## II.    Requests for witness depositions.

After reviewing Defendants' disclosures, Plaintiffs requested that Defendants produce a number of witnesses for deposition. Initially, in May 2018, New Jersey Plaintiffs asked Chiquita to produce a set of fourteen witnesses voluntarily, without the need for subpoenas. Chiquita's counsel responded, "We will contact them and ask that they agree to appear voluntarily.  I assume that they will do so. We will also ask for available dates and let you know." Simons Decl. ¶ 14; Ex. 7 at 3. Nearly two weeks later counsel informed Plaintiffs' counsel by telephone that only one of the fourteen witnesses, a current Chiquita employee, would appear for deposition voluntarily. Simons Decl. ¶ 15; *see* Ex. 7 at 2. Counsel then followed up with the same question for additional witnesses

4

– including Juan Manuel Alvarado, Luis Germán Cuartas, Rene Osorio, and José Luis Valverde. *Id.* Having received no response, counsel followed up again, noting that many of these witnesses were on Chiquita's ATA trial witness list, and noting that "Plaintiffs expect to take the position that if these witnesses will not appear voluntarily for deposition, we will oppose the introduction of any evidence from them upon summary judgment and move to exclude their testimony at trial. This is especially the case for witnesses beyond the court's subpoena power[.]" Simons Decl. ¶ 16; Ex. 7 at 2.

In June, Plaintiffs deposed Chiquita's Rule 30(b)(6) witness, Barbara Howland. Some of the deposition focused on other potential witnesses. With respect to Victor Buitrago, Howland stated that he was "still working for the company in some capacity" and "could be reached through Chiquita." Ex. 8 at 223:5-17. With respect to Hermes Hernandez, Howland responded, "I don't know [his] whereabouts." Ex. 8 at 224:6-7.

On July 12, undersigned counsel then followed up with Chiquita regarding the witnesses previously requested, as well as Buitrago, Jaime Trujillo, Jaime Tobar, and Jorge Lara Urbaneja, inquiring "whether you would produce the following witnesses voluntarily or upon notice." Ex. 9 at 11-12. Chiquita did not directly respond to this question, but on July 14 stated only that "no former employee or director of Chiquita has authorized us to accept service of a subpoena for deposition." *Id.* at 10. Undersigned counsel then followed up again, on July 27, noting that Chiquita had not answered the question, *id.* at 2; Chiquita's counsel referred back to the July 14 email and simply stated that "non-party witnesses have not authorized Blank Rome to accept service of subpoenas for their depositions.  To the extent that Plaintiffs want to depose the non-party witnesses you must do so in accordance with the Rules of Civil Procedure." *Id.* at 1. Chiquita's counsel never addressed whether they would be able to procure these witnesses' presence at depositions, or whether these witnesses were under Chiquita's control, and never produced any of them.

## III.    Last-minute depositions and supplements.

The Court set the discovery cutoff at October 18, 2018. DE 2122 at 5. On September 20 – less than 30 days before the cutoff – Chiquita affirmatively noticed four depositions of its own witnesses, to take place on short notice: Hermes Hernandez (whose whereabouts Chiquita had previously claimed were unknown), Elexy Rafael Martinez, Benigno Enrique Ramos Sajona, and Manuel Rodriguez (who Chiquita had not previously disclosed as a witness). Simons Decl. ¶¶ 23-25; Ex. 10. All of these witnesses resided outside the U.S. and were beyond the Court's subpoena power, but Chiquita brought them to Florida for depositions.

Then, on October 18 itself – the day of the discovery cutoff – Chiquita served yet another supplemental disclosure, adding additional witnesses that had not been previously disclosed, including Jorge Serna. Ex. 13.

## IV.    Defendants' witness, deposition, and exhibit lists.

Defendants served their intended trial witness, deposition, and exhibit lists on August 29. Ex. 14. To Plaintiffs' surprise, their witness list included not just eight of the witnesses that Plaintiffs had asked to depose, and Chiquita had refused – it also included thirteen witnesses that had not been disclosed at all, as well as Jorge Serna. Defendants' deposition list included six depositions from prior cases where Plaintiffs had no opportunity to participate – including two from deponents, Victor Buitrago and Jose Luis Valverde, that Plaintiffs had asked to depose in this proceeding. Three of the depositions were of witnesses Chiquita had previously brought to Florida, and could presumably bring to trial, while nine others were also on Chiquita's "may call" witness list, again indicating that Chiquita could procure their attendance at trial.

Even though Chiquita's initial disclosure requirement was to produce "[a]ll relevant, non-privileged documents," Defendants' exhibit list also included several documents that Chiquita had never previously produced, as well as a number of documents produced only in Spanish without

English translation. Simons Decl. ¶ 33.

<b><u>ARGUMENT</u></b>

**I.   Witnesses that Defendants refused to produce should be stricken, or made available for deposition.**

During the discovery period, Chiquita disclosed a number of potential witnesses who were located outside the United States, and who Plaintiffs could not directly subpoena. Plaintiffs believed that these witnesses – largely former Chiquita employees – were under Chiquita's control, and Chiquita could produce them. Plaintiffs repeatedly asked Defendants to produce these witnesses voluntarily. Defendants refused. Now, eight of them are on Defendants' trial witness list. Defendants' strategy of keeping these witnesses beyond Plaintiffs' subpoena power, and then producing them for trial with no prior opportunity to depose them or otherwise conduct discovery, should not be countenanced. These witnesses should not be permitted to testify unless Defendants make them available for deposition in advance of trial.

These witnesses – Juan Manuel Alvarado, Victor Buitrago, Luis Germán Cuartas, René Osorio, Jaime Tobar, Jamie C. Trujillo, Jorge Lara Urbaneja, and José Luis Valverde – include some of the most important figures in Chiquita's relationship with the paramilitaries. Alvarado was Chiquita's security chief in Colombia in the 1990s, and Buitrago – who Chiquita's outside security consultants flagged for "his empathy for the AUC," Ex. 15 at 3 – was his successor. Valverde was the General Manager of Banadex, the head of Chiquita's Colombian operations, in 2000-01; Cuartas was Banadex's in-house counsel during the entire relevant period. All reside in Colombia except Alvarado, who now lives in Mexico.

The evidence suggests that each of these individuals was, and is, under Chiquita's control, such that Chiquita should have produced them for deposition without a subpoena. "A subpoena is required to procure testimony or documents from one who is not a party to the action or controlled by a party to the action. *Newell v. County of San Diego*, No. 12cv1696, 2013 U.S. Dist. LEXIS 127039,

*6 (S.D. Cal. Sep. 5, 2013). This "control" rule is supported by the text of the Federal Rules. While neither Rule 30 nor Rule 45 actually states when subpoenas are required, the text of other rules indicates that parties must produce evidence under their control. Thus, Rule 34 (concerning requests for production) indicates that parties must produce evidence in their "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). Courts have applied this to the production of witnesses for deposition as well, using the same logic that "testimony or documents" can be obtained without subpoena from a party or those "controlled by a party to the action." *Millenium Drilling Co. v. Beverly House-Meyers Revocable Trust*, No. 2:12-cv-00462, 2015 U.S. Dist. LEXIS 2117, *4 (D. Nev. Jan. 8, 2015); *see also Thomas v. Guffey*, No. 2: 14-cv-0066, 2015 U.S. Dist. LEXIS 31378, *3 (E.D. Cal. Mar. 13, 2015) (same). Similarly, courts have ruled that where it was reasonable to "assume[]" that a "witness was under Plaintiff-counsel's control," it was therefore "unnecessary for Defense counsel to issue a subpoena" rather than a simple request. *Glenshaw Glass Co. v. Ontario Grape Growers Mktg. Bd. (In re Keystone Foods)*, 134 B.R. 828, 830 (Bankr. W.D. Pa. 1991).

Indeed, if their presence on Chiquita's witness list were not sufficient to establish that they would have appeared for deposition if Chiquita had asked, the evidence is even stronger for many of the witnesses:

**Juan Manuel Alvarado:** Alvarado voluntarily submitted to an interview with the Special Litigation Committee (SLC), presumably at Chiquita's request. *See* Ex. 16 at 20. He then also appeared on Chiquita's "will call" list for the ATA trial, DE 1737 at 1.

**Victor Buitrago:** Buitrago also voluntarily appeared for an interview with the SLC. *See* Ex. 16 at 20. In June 2018, Chiquita's Rule 30(b)(6) witness testified that Buitrago was "still working for the company in some capacity" and "could be reached through Chiquita." Ex. 8 at 223:5-17. The Court granted a letter of request to depose Buitrago, *see* DE 1798, DE 1856; but the Colombian authorities returned the letter due to incorrect contact information. Simons Decl. ¶ 10. Chiquita's disclosures

only ever listed Buitrago's contact information as their Colombian law firm. *Id.* ¶ 12; Ex. 6 at 2; Ex. 13 at 3.

**Luis Germán Cuartas:** Cuartas also appeared for an SLC interview, Ex. 16 at 21, and was also on Chiquita's "will call" list for the ATA trial, DE 1737 at 2.

**René Osorio, Jaime Tobar, Jamie C. Trujillo, and José Luis Valverde:** Osorio, Tobar, Trujillo and Valverde were all on Chiquita's "may call" list for the ATA trial. DE 1737 at 5-6.

Nonetheless, Chiquita refused to produce any of them, evading the issue of control and stating only that "no former employee or director of Chiquita has authorized us to accept service of a subpoena for deposition." Ex. 9 at 10. If Chiquita lacked sufficient control to arrange deposition testimony, how is it that they can arrange to bring these witnesses for trial?

In *Chevron Corp. v. Donziger*, which was also a transnational case involving multiple witnesses abroad, the court ordered that "no foreign witness who fails to submit to a deposition abroad . . . shall be permitted to testify at trial." *Chevron Corp. v. Donziger*, No. 11 Civ. 0691, Rule 16 Order, DE 882 at 2 (S.D.N.Y. Mar. 7, 2013); *see also, e.g.*, *Guthrie v. Ball*, No. 1:11-cv-333-SKL, 2014 U.S. Dist. LEXIS 188333, at *16 (E.D. Tenn. Oct. 10, 2014) ("Where a witness refuses to submit to a deposition . . . the court can surely bar the testimony of that witness." (cleaned up)); *Pizzini v. Am. Int'l Specialty Lines Ins. Co.*, 210 F. Supp. 2d 658, 663 (E.D. Pa. 2002) (noting that court had ordered "that if you do not submit to deposition, you will be unable to testify at time of trial"). Allowing Defendants to proceed to trial with these witnesses, without giving Plaintiffs the opportunity to depose them, would be highly inequitable and an abuse of the discovery process. Defendants cannot simultaneously claim that they lack sufficient control to produce a witness for deposition, but are able to bring them to trial. That would amount to "an end-run against the language and policy of Federal Rules, which specifically guard against 'trial by ambush.'" *Waite v. AII Acquisition Corp.*, No. 15-cv-62359, 2016 U.S. Dist. LEXIS 119499, at *11 (S.D. Fla. Apr. 27, 2016).

Alternatively, where a witness could not be compulsorily deposed, but then plans to testify at trial, courts have typically ordered pre-trial depositions to avoid prejudice. *See, e.g.*, *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16-cv-3401, 2019 U.S. Dist. LEXIS 239055, at *3-4 (N.D. Ill. Mar. 28, 2019) (noting that, where witness outside U.S. planned to testify at trial, "plaintiffs could take his deposition," and precluding testimony where witness declined to be deposed); *Mendoza v. A&A Landscape & Irrigation*, No. 4:12-CV-562, 2014 U.S. Dist. LEXIS 205327, at *5-6 (E.D. Tex. Nov. 18, 2014) (where defendants' witness refused to be deposed during discovery due to Fifth Amendment privilege, he was "required to submit to a deposition by Plaintiffs prior to the scheduled trial date"); *Chevron Corp. v. Donziger*, No. 11 Civ. 0691, Rule 16 Order, DE 910 at 2 (S.D.N.Y. Mar. 15, 2013) (allowing consideration of exceptions to trial testimony bar if "the witness submits to deposition in the United States prior to trial"); *Arrocha v. McAuliffe*, 109 F.R.D. 397, 399 (1986) (ordering that, with respect to witnesses who had not been deposed, "they must report to Washington, D.C. at least two (2) days before trial and shall be made available for deposition by counsel for the plaintiff, shall he so desire, prior to trial so that he may effectively cross-examine them at trial"); *see also Chao v. Tyson Foods, Inc.*, No. 2:02-CV-1174-VEH, 2008 U.S. Dist. LEXIS 134950, at *5 (N.D. Ala. Dec. 24, 2008) (where witnesses had been disclosed shortly before trial, even though not in violation of Rule 26, ordering that the opposing party "will be permitted to depose each of such employee-witnesses prior to or during trial," in order to protect the party's "right to depose employee-witnesses prior to trial"). Thus, to the extent the Court allows these witnesses to testify, despite Chiquita's failure to make them available for depositions during discovery, they should be required to submit to depositions before trial.

## II.     Undisclosed witnesses should be stricken.

Defendants' own motion, DE 3483, argues forcefully that previously undisclosed (or allegedly "late" disclosed) witnesses should be excluded. Plaintiffs will respond to that motion in due

course, but it is a particularly ironic motion because Defendants did exactly what they accuse Plaintiffs of. Defendants' witness list includes several witnesses that were never previously disclosed, and others that were disclosed late.

Defendants argue that Plaintiffs were required, under Rule 26(a), to disclose all potential witnesses in a timely manner. This is not actually true with respect to Plaintiffs – as noted above, the Court modified the Rule 26(a) disclosure requirements. But it *is* true with respect to Chiquita, because Plaintiffs specifically served discovery asking for this information. Ex. 2 at 4. Chiquita clearly understood that it was obliged to disclose its witnesses, because it made multiple supplemental responses to this interrogatory – including on the day of the discovery cutoff, October 18, 2018. Ex. 5; Ex. 6; Ex. 13.

Nonetheless, Chiquita still did not disclose all of the witnesses on its current list – not even in its last-day-of-discovery "supplemental" disclosures. Thirteen of the witnesses on Defendants' "may call" list were never disclosed: Lloyd Berg, Virginia Bonnett, Peter Cheny, Argemiro Corena, Eliécer Correa, Sergio de la Cuesta, Claudina Penagos, Humberto Rendón, Mauricio D. Rojas, Iván Sierra, Mark Sorby, Michael Utley, and Francisco Javier Vergara Elías. Plaintiffs do not even know who some of these witnesses are or what they may know.

One additional witness – Jorge Serna – was not disclosed until Chiquita's October 18, 2018, supplemental responses, served on the day of the discovery cutoff. While Serna may have been disclosed in some technical sense during the discovery period, Plaintiffs obviously had no meaningful ability to depose him or otherwise pursue discovery relating to him. He should be considered in the same category as the entirely undisclosed witnesses.

Plaintiffs do not need to belabor the law on this point, because Defendants have already argued it, and apparently agree that undisclosed witnesses, or witnesses disclosed too late for meaningful discovery, cannot be called at trial. While Rule 37(c)(1) contains an exception if the

failure to disclose was "harmless," the lack of disclosure here was prejudicial. Unlike Defendants, who made no effort whatsoever to depose any witness disclosed by Plaintiffs (except for the Plaintiffs themselves and their identified experts), Plaintiffs deposed numerous third-party witnesses, and also served witness-specific discovery. For example, Plaintiffs served document requests specific to over 80 different potential witnesses, seeking documents that each of them may have authored or received relating to paramilitary payments, threats, or violence. Simons Decl. ¶ 5; Ex. 1 at 10-28. Plaintiffs did so to help determine which witnesses to depose, and to prepare for their depositions. But not only were Plaintiffs unable to depose these never-disclosed witnesses, Plaintiffs were also deprived of the opportunity to use written discovery to explore their knowledge and relevant documents.

Allowing these witnesses to testify would be highly prejudicial to Plaintiffs. They should be stricken from the witness list pursuant to Rule 37(c)(1).

### III.    Manuel Rodriguez should be stricken for inadequate notice and late disclosure.

Defendants have complained that Plaintiffs have listed "24 witnesses who were disclosed mere weeks before the discovery deadline," and that these witnesses should be excluded because this was "far too late for any meaningful opportunity to seek discovery." DE 3483 at 2. Plaintiffs will respond to Defendants' argument more fully at the appropriate time, but these witnesses were actually disclosed on September 17, 2018 – just over one month before the discovery cut-off, and with sufficient time for Defendants to seek depositions if they wished to do so. (Defendants did not ask to depose any of them.)

Three days later, on September 20, 2018, Chiquita sprung four new depositions on Plaintiffs – including Manuel Rodriguez, who had not been previously disclosed as a witness, and Hermes Segundo Hernandez Aguirre, discussed below. Chiquita initially noticed Rodriguez's deposition for October 3, a mere 13 days later, on a day when the parties had already agreed to schedule two other

depositions. Chiquita agreed to move the deposition to October 4, but Plaintiffs only participated in the deposition under protest:

> Plaintiffs are willing to go forward with this deposition next week, despite the lack of adequate notice and the fact that two other depositions are scheduled for the same day, so long as Chiquita agrees that by doing so Plaintiffs are preserving all rights to object to Mr. Rodriguez's testimony on the basis that he was not disclosed as a witness in a timely manner. We also renew our unanswered request for an explanation as to why Mr. Rodriguez was never previously identified as among those persons likely to have discoverable information relating to Chiquita's defenses.

Ex. 11. Chiquita never provided the requested explanation.

While Plaintiffs did participate in Rodriguez's deposition, they did so under protest and with prejudice. The late disclosure meant that, like the undisclosed witnesses discussed above, Plaintiffs did not have an opportunity to seek written discovery specific to Rodriguez. Defendants' failure to disclose was not harmless, and Rodriguez should be excluded pursuant to Rule 37(c)(1).

## IV. Defendants' "experts" who were paid for their personal knowledge cannot testify.

As Plaintiffs set out in their *Daubert* motion, DE 2527, the purported experts Osvaldo Cuadrado Simanca, Gen. Gustavo Rincon Rivera, and Gen. Yesid Sanchez Ruiz are not qualified experts and should be excluded. To the extent Defendants call them to testify from their personal knowledge, however, they also must be excluded as paid witnesses.

The ex-generals were paid $160,000 for the preparation of written declarations which are mostly unqualified non-expert opinion. DE 2527 at 4-9. They also proffered some information based on their personal knowledge. For example, Gen. Sanchez refers to five military orders that he issued himself. *See* DE 2527-1 at 89-121. While the ex-generals' own knowledge and experience is not actually relevant here, they nonetheless relied on it to attempt to qualify as experts. DE 2527 at 4. Cuadrado is similarly unqualified, and his statement relies almost entirely on his personal knowledge and experience – for which he was paid $10,000, an exorbitant fee. DE 2527 at 9-13. In addition, these non-expert witnesses were promised hundreds of dollars more in hourly fees for

their fact witness testimony, a substantial financial inducement to curry favor with the Defendants – which is precisely the basis for prohibiting payments to fact witnesses.

All three should be stricken because paid fact testimony is impermissible. *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, 1526 (S.D. Fla. 1994), *aff'd in part*, 117 F.3d 1328 (11th Cir. 1997). Indeed, it is a federal crime. 18 U.S.C. § 201(c)(2)-(3).

**V.    Defendants cannot present deposition testimony from other cases.**

Defendants have designated testimony from six depositions that were not taken in this litigation, and in which the Plaintiffs had no opportunity to participate. There is no basis for admission of this hearsay testimony.

The use of depositions at trial is governed both by Federal Rule of Civil Procedure 32 and by Federal Rule of Evidence 804(b)(1). Rule 32 only allows the admission of depositions against a party where "the party was present or represented at the taking of the deposition or had reasonable notice of it." Fed. R. Civ. P. 32(a)(1)(A). Additionally, depositions from a prior action may only be used if the prior action "involve[ed] the same subject matter between the same parties, or their representatives or successors in interest." Fed. R. Civ. P. 32(a)(8). Under Rule 804(b)(1), prior testimony may only be introduced against a party who had "an opportunity and similar motive to develop" the testimony (i.e., by participating in the prior deposition), and only where the deponent is unavailable to testify at trial. Fed. R. Evid. 804(b)(1)(B).

None of these depositions is admissible against Plaintiffs. Five of the depositions – of Victor Buitrago, Dennis Doyle, Roderick Hills, Charles Morgan, and Jose Luis Valverde Ramirez – were taken in the prior litigation between Chiquita and its insurers. The sixth – Humberto Rendon – was taken in the ATA litigation before this Court.[1] These proceedings were not between the same parties; Plaintiffs and their counsel had no notice of them, and therefore had no opportunity to

---

[1] Defendants' deposition list incorrectly identified this deposition as occurring in the ATS litigation.

participate. Nor can it be said that either the ATA plaintiffs (who were solely concerned with Chiquita's relationship with the FARC) or Chiquita's insurance companies (which were only concerned with coverage under their policies) had a similar motive to cross-examine the witnesses and develop the testimony.

"A deposition[] taken in a different proceeding is admissible if the party against whom it is offered was provided with an opportunity to examine the deponent." *Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 751 (11th Cir. 2002). That is not the case for these depositions, and they are therefore inadmissible.

Additionally, deposition testimony from other cases can only be admitted if the deponent is "unavailable" pursuant to Federal Rule of Evidence 804(a) – and while the deceased Roderick Hills is obviously unavailable, Defendants have not shown that any of the other witnesses is unavailable. They should only be considered unavailable if Defendants have "'not been able, by process or other reasonable means, to procure . . . the [deponent's] attendance or testimony.'" *Carrizosa v. Chiquita Brands Int'l, Inc.*, 47 F.4th 1278, 1309 (11th Cir. 2022) (quoting Fed. R. Evid. 804(a)(5)(B)). Defendants have not shown that they have employed reasonable means to procure these witnesses' attendance at trial. For most of them, there is ample reason to believe that Defendants can secure their presence. As noted above, Buitrago and Valverde are under Chiquita's control. Both of them, as well as Doyle and Rendon, are also on Defendants' "may call" witness list. *See* Ex. 14 at 4-6. Clearly, Chiquita can procure their presence if necessary. "Unavailability" is not a decision that Defendants can make at their discretion – calling a witness, who they can clearly bring to testify, if it suits them, and declaring them "unavailable" and using their deposition instead if it doesn't.

None of the depositions from prior cases can be admitted.

## VI.   Depositions from this case cannot be used where the deponents are not unavailable.

Even with respect to depositions taken in the ATS cases, Defendants cannot use them at

trial if the witnesses are not unavailable, although under slightly different rules.

For depositions in this case, Federal Rule of Civil Procedure 32(a)(4) applies, and under its terms, six of the witnesses at issue are not unavailable. John Stabler lives in Venus, Florida, *see* Ex. 17 at 6:1-2, and therefore is not "more than 100 miles from the place of . . . trial."[2] Fed. R. Civ. P. 32(a)(4)(B). Stabler and four other deponents – Irving Jorge Bernal Giraldo, Elexy Rafael Martinez, Benigno Enrique Ramos Sajona, and Robert Thomas – are also on Defendants' "may call" witness list. *See* Ex. 14 at 3-6. For all of these deponents, they are clearly sufficiently under Defendants' control that Defendants can arrange to have them testify at trial. The remaining deponent, Hermes Segundo Hernandez Aguirre, is not on Defendants' "may call list," but he is also clearly under Defendants' control. Defendants brought Hernandez to Florida for deposition in October 2018, and did so on very short notice, ambushing Plaintiffs with a last-minute deposition that was taken two days before the discovery cutoff. Simons Decl. ¶¶ 25-30.

The standard under Rule 32(a)(4) is similar to Rule 804(a). For witnesses beyond the Court's 100-mile subpoena limit, their depositions can only be used if it does not appear that their "absence was procured by the party offering the deposition." Fed. R. Civ. P. 32(a)(4)(B). While phrased slightly differently than Rule 804, the practical interpretation of this standard is quite similar: if it appears that the party offering the deposition is able to procure the witness's appearance, but instead procures their absence, they may not introduce their deposition testimony. "[W]hether [a witness] is unavailable under either Rule 32 of the Federal Rules of Civil Procedure or under Rule 804 of the Federal Rules of Evidence is dependent upon whether [the offering party], through its agents, has taken any action to facilitate [the witness's] unavailability and has sufficient control to procure [the

---

[2] Mr. Stabler's residence in Venus, Florida, is approximately 90 miles from the courthouse. This Court can take judicial notice of such distances. *Lebarr v. Lay*, No. 3:20-cv-88-HLA-JBT, 2022 U.S. Dist. LEXIS 111581, at *4 (M.D. Fla. June 23, 2022) (citing *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997)). Plaintiffs also designated parts of Mr. Stabler's deposition, but intend to amend their witness list to indicate that he may be called as a live witness.

witness's] appearance." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, No. 3:19-md-2885, 2022 U.S. Dist. LEXIS 43981, at *14 (N.D. Fla. Jan. 26, 2022).

In this case, Defendants clearly have sufficient control to procure these witnesses' appearance. As noted above, Stabler is within 100 miles and subject to compulsory process. With respect to Martinez, Ramos, and Hernandez, Defendants already produced them for depositions, despite their being outside the range of compulsory process. These were not witnesses subpoenaed by Plaintiffs – they were voluntarily produced by Defendants, who brought them to Florida. Again, they cannot do so when it suits them and then claim they are "unavailable" for trial. With respect to Bernal and Thomas, Defendants' listing of them on their "may call" list indicates that they have sufficient ability to procure them for trial that they should not be permitted to introduce their deposition testimony.

The *In re 3M* case involved similar facts as presented here. There, the witness at issue had voluntarily appeared in prior proceedings – such as the appearances at depositions by Defendants' witnesses here – and had consulted for the party offering the deposition. *Id.* And here, for all of the deponents at issue, there is an additional element not found in *In re 3M* – the listing of these same witnesses on Defendants' "may call" list.

Defendants cannot have it both ways. Either a witness is sufficiently under their control that they can procure their live testimony at trial (in which case they may be listed on their witness list and their deposition may not be used), or they are sufficiently out of Defendants' control to be characterized as unavailable (in which case they should not be listed on Defendants' witness list). Having put forward these witnesses as trial witnesses, Defendants cannot use their depositions. At a minimum, Defendants must submit evidence to show that these witnesses are actually unavailable, despite the fact that they previously appeared for deposition and that Defendants have indicated their ability to produce them at trial.

### VII. Hermes Hernandez's testimony should be excluded due to Chiquita's false statements and abuse of the discovery process.

Hermes Hernandez's deposition should be excluded for another reason: because Chiquita unfairly prevented Plaintiffs from preparing for his deposition, and seeking documents related to him, by claiming they did not know where he was until they ambushed Plaintiffs with his deposition shortly before the discovery cutoff.

Chiquita first disclosed Hernandez as a witness in its March 8, 2018, interrogatory responses. *See* Ex. 6 at 5. Although the interrogatory asked for contact information, and Chiquita provided such information for other witnesses, no contact information was provided for Hernandez. *Id.* Three months later, when Chiquita's Rule 30(b)(6) witness, Barbara Howland, was asked about Hernandez, she gave a similar answer – "I don't know [his] whereabouts." Ex. 8 at 224:6-7. Until the end of the discovery period, Chiquita never supplemented these responses. Although Hernandez was a non-party witness that Plaintiffs were free to interview, Chiquita concealed his contact information.

Additionally, Plaintiffs were given no notice that Chiquita might depose a witness that they claimed they could not locate. If Plaintiffs had some idea that Hernandez might be deposed, they could have served document requests specifically directed toward materials relevant to him. Indeed, for other deponents, Plaintiffs did serve requests for production that asked for documents that were "created by, received by, or copied to" the witness, relating to paramilitary payments, paramilitary violence, and threats. *See* Ex. 1 at 10. Plaintiff did not serve such a request for Hernandez, because they had no awareness that he could be a witness.

Defendants strategically waited until September 20, 2018 – less than 30 days before the October 18 discovery cutoff, leaving Plaintiffs no ability to serve relevant written discovery – to notice Hernandez's deposition, which they unilaterally scheduled for October 16, two days before the cutoff. Simons Decl. ¶¶ 25-30; Ex. 10. At that deposition, Hernandez disclosed that he was represented by Chiquita's attorneys at the Colombian firm of Prias Cadavid, as well as by Mr. Cioffi,

who paid all his expenses. Ex. 12 at 31:25-32:12. Did this really occur without Chiquita even knowing Hernandez's whereabouts? Chiquita did not even update its written disclosures until the last day of discovery – October 18 – and, at that time, stated only that Hernandez could be contacted through Prias Cadavid. Ex. 13 at 7.

In Hernandez's deposition, he testified about alleged incidents of threats and violence by the AUC. Defendants did not introduce a single document to substantiate any of these alleged incidents, but – due to Defendants' tactics – Plaintiffs did not have an opportunity to actually request documents relevant to such incidents that Hernandez might have authored or seen. This was highly prejudicial.

Although Defendants did disclose Hernandez as a witness, their withholding of his contact information should be treated as a failure to disclose, and therefore subject to sanction under Rule 37. Fed. R. Civ. P. 37(c)(1). If Chiquita truly did not know Hernandez's contact information when Plaintiffs originally asked, it should have disclosed this information as soon as it learned it – and well before any deposition. And Plaintiffs should have been given an opportunity to conduct written discovery on documents relating to Hernandez. Chiquita's failure to disclose was not harmless, but was highly prejudicial.

**VIII.   If the Court strikes Plaintiffs' exhibits, it should also strike Defendants'.**

Defendants have moved to strike Plaintiffs' exhibits that they claim should have been previously disclosed, or were produced only in Spanish. Again, Plaintiffs will respond in due course, but again, Defendants did exactly what they accuse Plaintiffs of. Defendants' exhibit list also contains several exhibits that were never produced to Plaintiffs, and multiple exhibits presented only in Spanish. *See* Simons Decl. ¶ 33.

Defendants' own motion contains all the argument necessary to exclude previously-undisclosed exhibits. Indeed, these arguments have greater force against Defendants. As noted

above, the parties did not operate under the ordinary Rule 26(a) disclosure requirements in this case. Instead, the Court modified the initial disclosure requirement. And Defendants never served requests for production of all documents that Plaintiffs planned to use to support their claims. But Plaintiffs *did* make such a request. *See* Ex. 1 at 7 (seeking "[a]ll documents . . . that you believe you may use to support your defenses"). So Defendants were under an obligation to provide all such documents, even though the Rule 26 disclosure requirement had been modified.

Plaintiffs do not think it is necessary to exclude exhibits produced only in Spanish at this stage; all parties in this case have ample ability to work with Spanish-language documents, and we expect that exhibits presented at trial will be presented in English.[3] Nonetheless, if the Court excludes any of Plaintiffs' exhibits on this basis, Defendants' untranslated exhibits should be excluded as well.

## **CONCLUSION**

For the foregoing reasons, the witnesses and depositions identified should be stricken from the trial lists.

Dated: October 16, 2023              Respectfully submitted,

                                */s/ John Scarola*

                                JOHN SCAROLA
_scarolateam@searcylaw.com;
jsx@searcylaw.com; mmccann@searcylaw.com
Florida Bar No. 169440
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
561-686-6300 Telephone
561-383-9451 Fax

                                *For all non-Wolf Plaintiffs*

---

[3] Plaintiffs expect that some lengthy Spanish-language documents will not need to be translated in full. Instead, Plaintiffs may introduce English-language summaries of such documents pursuant to Federal Rule of Evidence 1006.