UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-md-01916-Marra

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/
This Document Relates to:
ATS ACTIONS:
07-60821-CIV-MARRA (Carrizosa)
08-80421-CIV-MARRA (N.J. Action) (Does 1-11)
08-80465-CIV-MARRA (Does 1-144/Perez 1-795)
08-80480-CIV-MARRA (Manjarres)
08-80508-CIV-MARRA (Valencia)
10-60573-CIV-MARRA (Montes)
_____/

**JOINT PRETRIAL STIPULATION PURSUANT TO LOCAL RULE 16.1(d) AND (e)**

Pursuant to Local Rule 16.1(d) and (e), the Parties[1] hereby submit this Joint Pretrial Stipulation, with the schedules required by Local Rule 16.1(e)(9) appended as exhibits hereto. For those items set forth in Local Rule 16.1(e) on which the Parties could not reach agreement, and for ease of use by the Court, each Party's statement is set forth separately under the appropriate heading.

---

[1] Only Non-Wolf Plaintiffs and Chiquita are parties to this stipulation. Wolf Plaintiffs currently have claims slated for the April 2024 Bellwether 1B trial but the claims are subject to potentially dispositive motions. Counsel for Wolf Plaintiffs has stated that he has no cases that will go to trial in January or April as part of the 1A and 1B trials and has largely not participated in pre-trial submissions, including preparing this stipulation.

1

## I. CONCISE STATEMENT OF THE CASE.

### A. Plaintiffs' Statement

Plaintiffs are the estates and members of the families of individuals who were kidnapped and/or murdered in the South American country of Columbia by the terrorist organization, known as the AUC. Defendant, Chiquita Brands International, is a multinational corporation that at all times relevant to this action was headquartered in the United States and operated in the United States and various other countries around the world, including Colombia. Plaintiffs assert that Chiquita is liable to them for money damages because it repeatedly provided and concealed its material support to the AUC, knowing that it was an illegal organization that routinely carried out acts of terrorism and violence. In 2007, Chiquita pled guilty to the federal felony of funding a terrorist organization. Plaintiffs contend that Chiquita's illegal money payments and other material support of the AUC, including facilitating the smuggling of weapons and ammunition, contributed to the murders and disappearances of the Plaintiffs' relatives.

### B. Defendant's Statement

Plaintiffs bring claims for the death of their family members who were killed during an extremely violent, bloody and prolonged civil war in Colombia. This war was fueled by the drug trade and waged by many factions, including narco-terrorist militias like the AUC (*Autodefensas Unidas de Colombia*), FARC (*Fuerzas Armadas Revolucionarias de Colombia*), and ELN (*Ejército de Liberación Nacional*); by the Cali and other drug cartels; and by common criminals, all of which were combatted by the Colombian Army. There are no witnesses, police reports or any other documents of any kind that identify the specific perpetrator responsible for the death of any Plaintiff's decedent.

In the Bellwether 1A and 1B trials, Non-Wolf Plaintiffs seek to hold Defendant Chiquita Brands International, Inc. ("Chiquita"), liable for each Plaintiff's decedent's death under

Colombian law, even though Chiquita had no involvement in the killing of any Plaintiff's decedent. No Chiquita employee knew any Plaintiff or their decedent and Chiquita never instructed, requested, or otherwise desired for the AUC to kill any person, let alone any Plaintiff's decedent. Rather, Plaintiffs seek to hold Chiquita liable for each decedent's death solely because Chiquita's Colombian subsidiary (Banadex) was forced to make extortion payments to the AUC after the AUC took over certain remote banana growing regions in which Chiquita operated. The U.S. Government has acknowledged and agreed that the leader of the AUC, Carlos Castaño "sent an unspoken but clear message that failure to make the payments could result in physical harm to Banadex personnel and property." Like many other persons and entities in the region, Chiquita employees were themselves terrorized by the AUC, forcing Chiquita to make the extortion payments to protect the lives and safety of its employees. However, Chiquita's extortion payments to the AUC were not substantial and only constituted a miniscule fraction of the yearly income of the AUC, which was predominantly derived from drug trafficking. Plaintiffs have not sued the AUC or any specific individual directly responsible for the death of their decedents but only Chiquita.

Contrary to Plaintiffs' assertions, Chiquita did not plead guilty to "funding a terrorist organization" but rather paid a fine for engaging in transactions with a specially-designated global terrorist organization without first obtaining a license to do so. Defendant also strongly denies that Chiquita ever "facilitate[ed] the smuggling of weapons and ammunition" for the AUC. The record evidence demonstrates that Chiquita did not provide knowing, substantial assistance to the AUC, nor consciously and culpably participate in the killing of any Plaintiff's decedent.

**II. THE BASIS OF FEDERAL JURISDICTION.**

The district court has subject matter jurisdiction over Non-Wolf Plaintiffs' Bellwether 1A and 1B claims due to diversity of citizenship, pursuant to 28 U.S.C. § 1332.

### III. THE PLEADINGS RAISING THE ISSUES.

DE 186 — *Carrizosa* Third Amended Complaint (07-60821-CIV-MARRA)
DE 1221 — Chiquita's Answer to *Carrizosa* Third Amended Complaint
DE 589 — NJ Action Second Amended Complaint (08-80421-CIV-MARRA)
DE 1218 — Chiquita's Answer to NJ Action Second Amended Complaint
DE 575 — *Does 1-144/Perez 1-795* Third Amended Complaint (08-80465-CIV-MARRA)
DE 1222 — Chiquita's Answer to *Does 1- 144/Perez 1-795* Third Amended Complaint
DE 557 — *Manjarres* Seventh Amended Complaint (08-80480-CIV-MARRA)
DE 1219 — Chiquita's Answer to *Manjarres* Seventh Amended Complaint
DE 576 — *Valencia* Third Amended Complaint (08-80508-CIV-MARRA)
DE 1220 — Chiquita's Answer to *Valencia* Third Amended Complaint
DE 190 — *Montes* (Florida *Montes* Action) Fourth Amended Complaint (10-60573-CIV-MARRA)
DE 1217 — Chiquita's Answer to *Montes* Fourth Amended Complaint

### IV. ALL UNDISPOSED OF MOTIONS OR OTHER MATTERS REQUIRING ACTION BY THE COURT.

- Carrizosa Plaintiffs' Motion to Join in non-Wolf Plaintiffs' Motion to Present Third-Party Witnesses via Video-Conference at Trial (DE 3482) – 3528
- Non-Wolf Plaintiff's Motion to Strike Defendants' Witnesses, Depositions and Exhibits – DE 3491
- Defendants' Omnibus Motion in Limine – DE 3490
- Non-Wolf Plaintiff's Motion in Limine to Admit Certain Evidence and to Prohibit Other Evidence – DE 3489
- Non-Perez Non-Wolf Bellwether A1 Plaintiffs Conditional Motion to Sever Trial – DE 3488
- [Wolf's] Motion in Limine to Exclude Hearsay Statements Concerning Threats to the Defendants – DE 3487
- [Wolf's] Motion in Limine to Exclude the Testimony of Oswaldo Cuadrado Simanco – DE 3486
- [Wolf's] Motion in Limine to Exclude Opposing Counsel Testimony – DE 3485Defendant's Motion to Strike Plaintiffs' Untimely and Untranslated Trial Exhibits and Untimely Disclosed Fact Witnesses – DE 3483
- Motion to Present Third-Party Witnesses Via Video-Conference at Trial – DE 3482
- Corrected Motion for Judgment on the Pleadings (correcting DE 3467) – DE 3474
- Defendants' Consolidated Daubert Motion as to All Expert Testimony and Evidence Proffered on the "State Action" Element of TVPA Claims – DE 3413
- Motion in Limine to Preclude the Testimony of Defendants' Purported Expert Witnesses, Sanchez, Rincon, Cuadrado, Flemmons, Gaddis, and Otero, Request for Daubert Hearings, and Incorporated Memorandum of Law – DE 2527

4

- Defendants' Consolidated Daubert Motion to Preclude Testimony of Plaintiffs' Purported Experts –DE 2521
  Individual Defendants' Motion for Summary Judgment on TVPA Claims – DE 2289

## V. STATEMENT OF UNCONTESTED FACTS WHICH WILL REQUIRE NO PROOF AT TRIAL

### 1.A. Bellwethers

***Evaristo Antonio Durango de Andres***

1. Plaintiff Elvia Rosa Gomez Urrego is the surviving spouse of Decedent Evaristo Antonio Durango de Andres.
2. Decedent Evaristo Antonio Durango de Andres was killed on June 13, 1999 near Chigorodó, Antioquía, Colombia.

***Carlos Arturo Palencia Sibaja***

3. Plaintiff Victor Palencia Gomez is the father of Decedent Carlos Arturo Palencia Sibaja.
4. Decedent Carlos Arturo Palencia Sibaja was killed on September 24, 2000, near Turbo, Antioquia, Colombia.

***Albeiro Antonio Molina Roman***

5. Plaintiff Janeth Rivera Vargas is the surviving spouse of Decedent Albeiro Antonio Molina Roman.
6. Plaintiff Nini Johana Molina Rivera is the surviving daughter of Decedent Albeiro Antonio Molina Roman.
7. Albeiro Antonio Molina Roman was killed on August 13, 2003, in Aracataca, Magdalena, Colombia.

***Miguel Antonio Cardona Muñoz***

8. Plaintiff Gloria Eugenia Muñoz is the surviving Mother of Decedent Miguel Antonio Cardona Muñoz.
9. Seventeen-year-old Decedent Miguel Antonio Cardona Muñoz was killed on January 15, 2001 in Apartado, Antioquia.

***Waynestey Machado Durango***

10. Plaintiff Pastora Durango is the surviving Mother of Decedent Waynestey Machado Durango.
11. Decedent Waynestey Machado Durango was killed in Apartado, Antioquia, Colombia on April 26, 1997.

*Ceferino Antonio Restrepo Tangarife*

12. Plaintiff Ana Ofelia Torres Torres is the surviving spouse of Decedent Ceferino Antonio Restrepo Tangarife.
13. On June 14, 1997, Ceferino Antonio Restrepo Tangarife was killed in Apartado, Antioquia, Colombia.

*Libardo de Jesus Villa Mora*

14. Decedent Libardo de Jesus Villa Mora was killed on November 4, 1998, in Necocli, Antioquia, Colombia.

*Francisco de Jesus Jinete Sierra*

15. Plaintiff Mariela Isabel Sierra Soto is the surviving mother of Decedent Francisco de Jesus Jinete Sierra.
16. Plaintiff Lina Maria Berdugo Lechuga is the surviving wife of Decedent Francisco de Jesus Jinete Sierra.
17. On September 14, 2004, Decedent Francisco de Jesus Jinete Sierra was killed in the village of Orihueca, Magdalena, Colombia.

*Franklyn Fabio Fontalvo Salas*

18. Plaintiffs Juvenal Enrique Fontalvo Camargo is the surviving Father of Decedent Franklyn Fabio Fontalvo Salas.
19. Decedent Franklyn Fabio Fontalvo Salas was killed on July 3, 2003.

*Miguel Antonio Rodriguez Duarte*

20. Plaintiff Nancy Mora Lemus is the surviving spouse Decedent Miguel Antonio Rodriguez Duarte.
21. Decedent Miguel Antonio Rodriguez Duarte was killed on December 7, 2003 in Magdalena, Colombia.

### 1.B. Bellwethers

*Milton Percy Santero Brand*

22. Decedent Milton Percy Santero Brand was killed near Apartado, Antioquia, Colombia on or around March 3, 1997.

*Silvio de Jesus Henao Aguilar*

23. Plaintiff Luz Mila Velasquez Manco is the surviving spouse of Decedent Silvio de Jesus Henao Aguilar.
24. Decedent Silvio de Jesus Henao Aguilar was killed on August 11, 1997 in Mutata, Antioquia, Colombia.

*Daladier Areiza Duarte*

25. Plaintiff Miriam Duarte Puerta is the surviving Mother of Decedent Daladier Areiza Duarte.
26. Decedent Daladier Areiza Duarte was killed on March 30, 1998 in Carepa, Antioquia, Colombia.

*Misael Antonio Serna Florez*

27. Decedent Misael Antonio Serna Florez was a farmer. He was killed on July 13, 1999 in the town of Carepa Tierra Alta, in the Cordoba region of Colombia.

*Jose Antonio Olivares Salazar*

28. Plaintiff Marta Rosa Olivares Silgado is the sister of Decedent Jose Antonio Olivares Salazar.
29. Decedent Jose Antonio Olivares Salazar was killed on June 9, 2001 near Varela in Zona Bananera, Magadalena, Colombia.

*Ovidio Alfonso Palma Blaquiceth*

30. Plaintiff Nurys Isabel Ferreira Sanchez is the surviving spouse of Decedent Ovidio Alfonso Palma Blaquiceth.
31. Decedent Ovidio Alfonso Palma Blaquiceth was killed on March 31, 2003 in Cienaga, Magdalena.

*Simón Efraín González Ramírez*

32. Plaintiff Myriam Ramirez Garcia is the mother of Decedent Simón Efraín González Ramírez.
33. Decedent Simón Efraín González Ramírez was killed on or about May 21, 2002 near Ciénaga, Magdalena, Colombia.

**VI. A statement in reasonable detail of issues of fact which remain to be litigated at trial. By way of example, reasonable details of issues of fact would include: (A) As to negligence or contributory negligence, the specific acts or omissions relied upon; (B) As to damages, the precise nature and extent of damages claimed;**

A. Plaintiffs' Statement [SUBJECT TO REVISION BASED ON CERTAIN COURT RULINGS]
   *Imprudent or Illegal conduct*
   i. Whether Chiquita engaged in one or more imprudent or unlawful acts or omissions.
   ii. Whether Chiquita knew of the violent mission of the AUC and thus knowingly contributed to the organization's terrorist activities by providing financial and/or in-kind support to the AUC.

    iii. Whether Chiquita violated the standard of care expected of "good businesspersons" by acting imprudently in providing financial or in-kind support directly or indirectly, to the AUC and thus helping or assisting the AUC in its violent activities.

    **iv.** Whether Chiquita's help or assistance to the AUC was sufficient to create a foreseeable risk of harm to others, based on the timing of the payments – beginning at a critical stage in the nascency of the group and serving as well-timed "seed" money for explosive growth; the length of the payment stream offering a reliable consistent income; and from the evidence of other material support.  Substantial assistance may occur when a defendant affirmatively assists, helps conceal the wrongdoing or fails to ... **[TO BE FILLED IN]**

    v. Whether there was a link between Chiquita's conduct and Plaintiffs' injuries.

    vi. Whether Chiquita's financial and other support "substantially assisted" the AUC, including the violent campaign that resulted in the deaths of Plaintiffs' decedents.

    vii. Whether Defendant(s) engaged in an activity that was hazardous, and Plaintiffs were harmed by that activity. Civil liability for hazardous activities applies to corporations when their agents or employees have created a situation of risk.

    viii. Whether Chiquita entered into an agreement with the AUC to do an unlawful act, or to do a lawful act, by unlawful means and whether Plaintiffs were injured by acts committed by a member of the conspiracy pursuant to that agreement.

    ix. Whether Chiquita has made payments to an illegal armed group.

    x. Whether each Plaintiff's decedent was abducted or killed by AUC operatives.

### *Hazardous Activity*

    xi. Whether Chiquita carried out or benefitted from a hazardous activity

    xii. Whether Chiquita's activities increased the risk to members of the community.

### *Conspiracy*

    xiii. Whether there was an agreement between Chiquita and the AUC to do an unlawful act, or to do a lawful act, by unlawful means;

    xiv. Whether some overt act was committed in pursuance of the agreement; and

    xv. Whether, as a result of the acts performed pursuant to the agreement, the Plaintiffs suffered harm.

### *Aiding and Abetting*

    xvi. Whether Chiquita provided substantial assistance to the AUC by affirmatively assisting, helping conceal or failing to act when required to do so, thereby enabling the AUC to harm Plaintiffs' decedents.

    xvii.    Whether as a result of the substantial assistance provided by Chiquita to the AUC as an aider-abettor, Chiquita proximately caused the harm resulting from the conduct of the AUC.

*Damages*

    xviii.    The nature and extent of each plaintiff's damages.

### B. Defendant's Statement

Plaintiffs incorrectly assert that there are multiple theories of liability when only negligence-style claims survived summary judgment. Negligence per se, hazardous activity and conspiracy are not viable claims for trial. As recognized at summary judgment, Colombian law recognizes only the concept of fault-based liability, under which only the "negligence" and related "wrongful death" style claims asserted are actionable. See DE 3238 at 95-96. Accordingly, the Court held, "the case will go forward on the negligence style (and subsumed wrongful death style) Colombian law claims only." *Id*. at 96. Neither "Hazardous Activity" nor conspiracy are "negligence-style" claims. Because no such claims survived summary judgment, they must be stricken from the jury instructions. *See also* DE 3239 at 18 (granting motion for summary judgment "on the multiple, individual specific torts asserted, for failure to assert a cognizable claim under controlling Colombian Civil Code" and stating that "[c]onsequently, the bellwether cases withstanding summary judgment shall proceed on only the remaining negligence-style Colombian law claims (including wrongful death claims)").

The following is Defendant's statement of issues of fact which remain to be litigated at trial.

    i.    Whether Plaintiffs' decedents were killed by the AUC;
    ii.    Whether Chiquita's actions—making payments to the AUC—deviated from the "reasonable businessperson" standard of care;
    iii.    Whether a causal nexus exists between Chiquita's payments to the AUC and the AUC's killing of each Plaintiff's decedent;
    iv.    Damages, if any

**VII.   A concise statement of issues of law on which there is agreement**.

Plaintiffs' Colombian law claims against Chiquita arise under Article 2341 of the Colombian Civil Code as negligence, wrongful death style claims. As a predicate to their claims, Plaintiffs must prove that the AUC killed each Plaintiff's decedent. To prevail on their claims under Article 2341, Plaintiffs must prove (1) fault or affirmative intent to cause damage on the part of the defendant; (2) damages suffered by the plaintiff; and (3) a causal nexus between the fault and the damages. To prove fault, Plaintiffs must prove that Chiquita deviated from an objective, "reasonable businessperson" standard of care. Plaintiffs are not permitted under Colombian law to recover punitive damages.

**VIII.   Concise statement of issues of law which remain for determination by the Court**

- The issues raised in the parties' pending respective motions in limine.
- The admissibility of the parties' designations, counter designations and objections thereto.
- The parties' respective motions to strike witnesses and exhibits and objections to exhibits.[2]
- The issues raised in the parties' proposed jury instructions and verdict sheet.
- The applicable damages cap for Plaintiffs' Colombian law claims.

**IX.   Each party's numbered list of trial exhibits, other than impeachment exhibits, with objections, if any, to each exhibit, including the basis of all objections to each document, electronically stored information and thing. The list of exhibits shall be on separate schedules attached to the stipulation, should identify those which the party expects to offer and those which the party may offer if the need arises, and should identify concisely the basis for objection. In noting the basis for objections, the following codes should be used:**
    **A–Authenticity**
    **I–Contains inadmissible matter (mentions insurance, prior conviction, etc.)**
    **R–Relevancy**
    **H–Hearsay**

---

[2] Plaintiffs have listed their Rule 44.1 Colombian law experts on their witness list, but Plaintiffs should be precluded from calling those experts because issues of law are to be decided by the Court, not the jury.

> **UP–Unduly prejudicial-probative value outweighed by undue prejudice**
> **P–Privileged**

**Counsel may agree on any other abbreviations for objections, and shall identify such codes in the exhibit listing them.**

**[SEPARATE SCHEDULES ATTACHED]**

X. **Each party's numbered list of trial witnesses, with their addresses, separately identifying those whom the party expects to present and those whom the party may call if the need arises.**
**Witnesses whose testimony is expected to be presented by means of a deposition shall be so designated. Impeachment witnesses need not be listed. Expert witnesses shall be so designated.**

**[SEPARATE LISTS ATTACHED]**

XI. **Estimated trial time.**

Six weeks.

XII. **Where attorneys' fees may be awarded to the prevailing party, an estimate of each party as to the maximum amount properly allowable.**

**Plaintiffs' Statement**:

The non-Wolf Plaintiffs' combined attorneys' fees lodestar total to date for legal services rendered over the course of the past 16 years is approximately $50,334,535. That figure includes both trial-level services and services rendered in connection with multiple appeals. The lodestar total is expected to increase by approximately $6,000,000 by the time of the conclusion of the first bellwether trial scheduled to last six weeks.

Plaintiffs anticipate requesting the application of a contingency risk multiplier of at least 2x the lodestar totals.

Prevailing party attorneys' fees are recoverable pursuant to applicable provisions of Colombian law as acknowledged by both Plaintiffs' and Defense Colombian law experts.

**Defendant's Statement:**

Recovery of attorneys' fees is a procedural, not substantive issue, and is therefore governed by forum law under an *Erie* analysis. Plaintiffs refer to "applicable provisions of Colombian law" but fail to disclose that those provisions appear in the Colombian *procedural* code and are not part of the substantive law of Colombia. Each of the states in which the relevant Complaints were filed follows the American Rule, prohibiting the recovery of attorneys' fees unless expressly permitted by statute or contract, neither of which exceptions apply here. Moreover, even if Colombian law were to apply to this issue (it does not), the recovery of attorneys' fees is limited to a small percentage of the claim—it is not governed by a Lodestar analysis and there is no "contingency risk multiplier" applicable under Colombian law.

Dated: February 29, 2024                                   Respectfully submitted,

*/s/ Jack Scarola*                                                */s/ Michael L. Cioffi*
Jack Scarola FL Bar No. 169440            Michael L. Cioffi (*pro hac vice*)
Searcy Denney Scarola Barnhart            Thomas H. Stewart (*pro hac vice*)
Shipley PA                                               BLANK ROME LLP
2139 Palm Beach Lakes Blvd.              1700 PNC Center
West Palm Beach, FL 33409-6601       201 East Fifth Street
scarolateam@searcylaw.com;             Cincinnati, Ohio 45202
mmccann@searcylaw.com                  Tel:   (513) 362-8701/04
                                                              Fax:   (513) 362-8702/93
                                                              Email:
*On behalf of all non-Wolf Plaintiffs*            michael.cioffi@blankrome.com
*with claims in Bellwether One A cases*      tom.stewart@blankrome.com

                                                              Frank A. Dante (*pro hac vice*)
                                                              Melissa F. Murphy (*pro hac vice*)
                                                              BLANK ROME LLP
                                                              One Logan Square
                                                              130 N. 18th Street
                                                              Philadelphia, PA 19103
                                                              Tel:   (215) 569-5645
                                                              Fax:   (215) 832-5645
                                                              Email:
                                                                  frank.dante@blankrome.com
                                                                  melissa.murphy@blankrome.com

                                                              *Counsel for Defendant,*
                                                              *Chiquita Brands International, Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on February 29, 2024 which will automatically generate and serve Notices of Electronic Filing on all counsel of record.

*/s/ Michael L. Cioffi*
Michael L. Cioffi