UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-MD-01916-MARRA

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION
_____/

**This Document Relates to:**

ATS ACTIONS

07-60821-CIV-MARRA (*Carrizosa*)
08-80421-CIV-MARRA (N. J. Action) (*Does 1-11*)
08-80465-CIV-MARRA (D.C. Action) (*Does 1-144*)
08-80508-CIV-MARRA (*Valencia*)
08-80480-CIV-MARRA (*Manjarres*)
10-60573-CIV-MARRA (*Montes*)
17-81285-CIV-MARRA (D.C. Action) (*Does v. Hills*)
18-80248-CIV-MARRA (*John Doe 1*)
_____/

**PLAINTIFFS' RESPONSE TO "EMERGENCY MOTION OF DEFENDANT
TO ENFORCE LOCAL RULE 77"**

Chiquita badly misrepresents a planned webinar directed not at the public but at the supporters and funders of counsel EarthRights International, a nonprofit public-interest organization; the webinar was never advertised on EarthRights' website, is not open to members of the public generally, and is specifically closed to media and screens out participants from Florida. Nonetheless, to avoid any need for emergency action on the Court's part, EarthRights has canceled the April 3 webinar – but we submit that there is no violation of Rule 77.2 and a similar webinar, with similarly appropriate precautions, should be permitted to proceed. Counsel take their obligations under the rules seriously and have avoided any reasonable

1

likelihood of interfering with a fair trial; there is no basis for any of the relief Chiquita seeks.

## I. There is no violation of Rule 77.2.

With respect to the planned webinar and other extrajudicial statements regarding the Chiquita litigation, EarthRights attorneys have scrupulously adhered to Rule 77.2. The webinar was not directed to the news media nor the general public, but to supporters and funders of EarthRights and allied organizations.[1]

In general, mindful of our ethical obligations and Rule 77.2, the EarthRights legal team has instructed our communications and fundraising teams not to make public statements or statements intended to be used by U.S. media concerning the Chiquita litigation in the run-up to the trial. Declaration of Marco Simons ("Decl.") ¶¶ 4-5. Chiquita asks the Court to order counsel to provide "a list of all . . . public communications or statements that any Plaintiffs' counsel have issued, or participated in, during 2024 that concern Chiquita or the upcoming trials." Chiquita's Proposed Order (unfiled) at 2. For EarthRights, that list is very short. We have made no statements on our website, or on any social media platform, concerning Chiquita or the trial during 2024; we are not aware of any such

---

[1] EarthRights is a 501(c)(3) litigating nonprofit, and as such it is required to litigate in the public interest, with its primary funding coming from sources other than legal fees. *See, e.g.*, 1984 EO CPE Text, Litigation by IRC 501(c)(3) Organizations. As part of our mission, we regularly communicate with our supporters and funders on our major activities, and bringing this litigation to trial after nearly 17 years of litigation certainly qualifies as a major activity. Those communications are, however, distinct from public and media communications; the purpose is only to keep our supporters informed and allow them to engage with the organization. *See* Declaration of Marco Simons ¶¶ 1-2.

2

statements by other non-Wolf Plaintiffs' counsel. Decl. ¶ 5. The only exceptions we are aware of are routine updates about the status of the case, based expressly on public records as permitted by Rule 77.2(g), which are found on EarthRights' Chiquita case page (https://earthrights.org/case/doe-v-chiquita-brands-international/) – on which the only update for 2024 reads, "We are currently preparing for trial set for April 2024." *Id.* Other counsel have made similar updates.[2]

The outreach for the webinar in question was designed with these restrictions in mind. Chiquita's representation of the webinar as being "open to the public," DE 3604 at 2, is inaccurate. Instead, it would merely have informed a limited number of *EarthRights' existing supporters* and like-minded-individuals – outside of Florida – about the upcoming trial. Rule 77.2 does not preclude such communications.

Rule 77.2(g) only applies to statements "which a reasonable person would expect to be disseminated by means of *public communication* if there is a reasonable likelihood that such dissemination will *interfere with a fair trial*." (Emphasis added.) But the webinar Chiquita challenges was to be private, not a "public communication." *See United States v. Fiorentino*, No. 14-20025-CR, 2014 U.S. Dist. LEXIS 64320, at *10 (S.D. Fla. May 9, 2014) (finding Rule 77.2 has no bearing

---

[2] For example, International Rights Advocates' case page for Chiquita (https://www.internationalrightsadvocates.org/cases/chiquita) has one 2024 update reading, "We're going to trial on April 24, 2024 to get justice." Cohen Milstein's case page (https://www.cohenmilstein.com/case-study/re-chiquita-brands-international-inc-litigation/) includes the update "A four week trial by jury is scheduled to begin on April 22, 2024."

3

where public dissemination is not at issue). And there was no "reasonable likelihood" that it would "interfere with a fair trial"; Chiquita is mistaken about the webinar's reach and its purpose. The webinar was deliberately *not* open to the public. And EarthRights adopted multiple measures to exclude both potential Florida jurors and the media.

*First*, the webinar was *not*, as Chiquita suggests, "advertised" on EarthRights' website; instead, the only outreach for the webinar was through direct emails to curated audiences. The webinar was co-sponsored with the True Costs Initiative (TCI), a longtime EarthRights funder, and the direction to both EarthRights and TCI staff was the same: the audience should be existing supporters and partners, not the general public; media should not be targeted for outreach; out of an abundance of caution, supporters from Florida should be screened out if possible. Decl. ¶ 6.

Thus, the only people who were intended to receive the invitation were *not* potential jurors. Instead, they were EarthRights supporters (people who have opted in to receiving EarthRights emails, as well as individual donors, *with any known Florida residents specifically excluded*), institutional funders that support accountability for human rights abuses, and other EarthRights partners who follow issues of corporate accountability and human rights in Colombia. Decl. ¶¶ 6-7.

EarthRights deliberately did not advertise this webinar on its website or in any social media. Decl. ¶ 7. The webpage Chiquita attached (which has now been taken down) was not an "advertisement," was never actually used or promoted in

4

any way, and was never linked from anywhere. *Id.* ¶ 8. The webpage could not be found from EarthRights' front page, or from EarthRights' longstanding webpage on the Chiquita litigation, or from any other links on the EarthRights website. *Id.* Instead, it was a prototype registration webpage created early in the webinar process that was never used because EarthRights' web team decided to use direct registration through Zoom; the only way to find the page was through a web search.[3] *Id.* Not only does this present no reasonable likelihood of interfering with a fair trial, the actual facts demonstrate that it could not. It was viewed a total of only 29 times by 15 unique users – several of whom are EarthRights staff, and since Chiquita or its counsel also accessed the page, others of whom were necessarily affiliated with Chiquita. *Id.* ¶ 9.

*Second*, in addition to the limits on who was targeted for invitations, EarthRights instituted further reasonable safeguards to try to screen out members of the general public and news media. Chiquita claims:

> EarthRights' scheduled webinar will be transmitted across the internet via Zoom and can be viewed anywhere in the world, including by media and potential jurors in this case. In fact, the potential harm to Chiquita and to a fair trial is virtually unlimited because the webinar can be recorded and transmitted to anyone, anywhere, in perpetuity.

DE 3604 at 1 n.1. Almost none of this is true. Although the webinar was organized on Zoom, it was not open to the public, but only to registered participants who could be individually screened – a process specifically designed to be a reasonable ffort to

---

[3] Likely a search using the term "webinar" or "RSVP," terms that only would have been searched by someone who was already aware of the event. *See* Decl. ¶ 8.

exclude media and potential jurors. Decl. ¶¶ 10-11. The webinar would not have been recorded (including using Zoom's technology that disallows recording by participants). Decl. ¶12. Even if media or potential jurors did receive the invitation, which is unlikely, they likely would have been screened out at the second step. Each registered attendee received a unique, password-protected link to the webinar, so that EarthRights staff had the ability to screen out, and exclude, anyone who should not have been attending. *Id.* ¶ 11. Registration required submission of names, email addresses, and ZIP codes, which would then be individually reviewed before the webinar began, with access revoked for anyone who should not have been attending. *Id.* ¶ 11. The purpose of requiring ZIP codes was to give us the ability to screen out participants from Florida. *Id.* ¶ 14. And the names and addresses would also be reviewed to exclude known journalists or other participants that should not be attending. *Id.*

Further, this webinar was designated as closed to media. Decl. ¶ 13. While EarthRights was screening out any known media participants, it would also be communicated to participants that the webinar was completely closed to any media – thus disallowing any media use of the materials. *Id.* Chiquita's claim that "this open-to-the-public webinar could result in media broadcasts or other publications that may taint the jury pool," DE 3604 at 4, is simply incorrect. At the first step, EarthRights did not target its invitations to the news media. And at the second step, EarthRights would take reasonable measures to exclude any media when it screened those who RSVP'd.

6

While EarthRights' outreach and screening process was not complete when we put a halt to the April 3 event, these safeguards were working. When we canceled the event, a total of 123 people had registered; of those, 23 are either current EarthRights staff or interns, or affiliated with a law school human rights clinic that is assisting with the Chiquita litigation. Decl. ¶ 15. Of the remaining 100 participants, none are known to us as journalists (and none of their email addresses are affiliated with media organizations), and exactly one is from Florida (and would have been screened out). *Id.* ¶¶ 15-16. Most of these are existing EarthRights donors and supporters, staff of institutional funders, employees of allied nonprofit organizations, former staff or interns, and the like. *Id.* There is no reasonable likelihood that the webinar could have tainted the jury pool.

This firmly shows that the webinar does not qualify as a statement that, under Rule 77.2(g), "a reasonable person would expect to be disseminated by means of public communication." While we cannot make absolute guarantees that no members of the news media or the public in general could have attended, Rule 77.2 does not require absolute assurances – it imposes a "reasonable person" standard. And the measures that EarthRights took to ensure that this was not public were more than sufficient to be considered reasonable.

Nonetheless, even if the webinar were considered a public communication, it still would not meet the second prong of Rule 77.2(g), because there is no "reasonable likelihood that such dissemination will interfere with a fair trial." Even if the media or public were the actual or intended audience – which they were not –

7

Rule 77.2 expressly permits attorneys to make "reference[s] to public records" in their public statements, and this "does not limit a lawyer to only making direct quotes from public records." *Terry v. Carnival Corp.*, No. 13-20571-CIV-GRAHAM/GOODMAN, 2014 U.S. Dist. LEXIS 190464 at *6, 2014 WL 11798519 (S.D. Fla. Jan. 27, 2014). Chiquita suggests that the content of the webinar could have been prejudicial, claiming that EarthRights intended "to improperly present to the public their misguided allegations that Chiquita 'secretly and routinely funded' the AUC to 'maximize Chiquita's profits' – assertions that are clearly disputed issues falling squarely to the jury to decide at trial." DE 3604 at 2.[4] But the fact that Chiquita routinely funded the AUC for years, and did so without disclosing this to the public or the government, is public record as a matter of Chiquita's guilty plea. And the gravamen of Plaintiffs' complaint – in the opening sentences – is that Chiquita did so "in order to maintain its profitable control of Colombia's banana growing regions." DE 589 ¶ 2. (Chiquita's Proffer similarly states that "Banadex was defendant CHIQUITA'S most profitable banana-producing operation." DE 3523-1 ¶ 2.) While Plaintiffs' counsel have not been making public statements that refer to and repeat the basic allegations of our complaint, we are expressly permitted to do so.

In this instance, EarthRights was proceeding in a responsible manner with an event to educate and engage our own supporters, while avoiding any reasonable

---

[4] This is incorrectly cited to "Screenshot of Webinar Advertisement on EarthRights International's website." As noted above, the webinar was not advertised on the EarthRights website, and the webpage cited to was never used.

8

likelihood that the webinar would prejudice the administration of justice.

## II. There is no basis for any of Chiquita's requests for relief.

Because the planned event did not violate Rule 77.2, there is no basis for Chiquita's requests for relief. While the April 3 event has been canceled, there is no reason to preclude a similar event with the safeguards described. EarthRights has a right and, indeed, an obligation to communicate with our supporters and funders in a manner that does not violate the rules or prejudice the trial.

Chiquita cites to only two cases, neither of which supports their position. In *Terry v. Carnival Corp.*, Chiquita cites an early order granting an emergency motion but neglects to mention that the court ultimately found no violation of Rule 77.2 and denied sanctions. *See Terry v. Carnival Corp.*, No. 13-20571-CIV-GRAHAM/GOODMAN, 2014 U.S. Dist. LEXIS 190464, 2014 WL 11798519 (S.D. Fla. Jan. 27, 2014).[5] There, the defendant argued that – in a case that had already generated significant media attention – the plaintiffs' counsel had made prejudicial statements to the press. But the court found that most of the statements were referring to materials in the public record such as the plaintiffs' complaint, and that even where they were not, there was no reasonable likelihood that such statements would prejudice the trial. *See* 2014 U.S. Dist. LEXIS 190464 at *8. And in *Rossbach v. Rundle*, 128 F. Supp. 2d 1348 (S.D. Fla. 2000), Judge Highsmith *denied* a party's request for a gag order, finding:

> Such an order would implicate not only the access rights of the media but the First Amendment rights of the individuals to whom it would

---

[5] *Terry* is largely inapposite either way because it involved a bench trial.

9

>apply. This type of extreme remedy is reserved for only the most notorious of cases, where the potential for pretrial publicity impacting upon the right to a fair trial is great. *See, e.g., United States v. Hill*, 893 F. Supp. 1039 (N.D. Fla. 1994). This is not such a case. The SAO's motion to restrict communications with the media is therefore DENIED.

*Id.* at 1355. The event Chiquita complains of here was not even directed at the media at all, providing even less of a basis for the Court to issue a prior restraint, and no basis for any kind of admonishment regarding Rule 77.2. There is no basis for an order that would simply repeat the strictures of Rule 77.2, of which counsel are well aware, when counsel have not violated the rule.[6]

Chiquita's remaining requests for relief are essentially asking the Court to order discovery; these requests must be denied for multiple reasons.

First, the purported justification for it – that they have shown a violation of Rule 77.2 – is wrong, as amply demonstrated above.

Second, this discovery is unnecessary. With respect to Chiquita's demand for a list of public statements, EarthRights has not made any recent public statements about this case other than the routine case updates noted above. In any event, such statements are *public* by their very nature; if they are available to the public in any way that could conceivably affect the trial, they are obviously available to Chiquita. With respect to their demand for information about webinar participants, counsel have shown that Florida residents were or would be excluded at both steps of the

---

[6] "[I]ssuance of an order compelling compliance with a rule where no violation has been established (and where there is no basis for inferring any deliberate or knowing intent to breach the rule), is more akin to 'officiousness.'" *United States v. Gonzalez*, 85 F. Supp. 2d 1306, 1310 (S.D. Fla. 1999).

10

screening process.

Providing such intrusive information would also likely violate the First Amendment, implicating EarthRights and its supporters' associational rights,[7] as well as potentially violating privacy regulations. EarthRights complies with data privacy laws in multiple jurisdictions, including the European Union's General Data Protection Regulation (GDPR) and California's Consumer Privacy Act (CCPA). In order to comply with these laws, we strictly observe the principle that we will not disclose our supporters' personal information without their consent.[8] We have shared sufficient data about the intended recipients and the registered participants to ensure that there has been no violation of Rule 77.2; sharing detailed information, including names and locations, would violate our own privacy practices and potentially put us in violation of the law.

\* \* \*

The now-canceled webinar to which Chiquita objects was to be limited to funders, supporters, and other people in the human rights field; the Court should not prohibit such an event. As a nonprofit law firm, EarthRights is obliged to litigate in the public interest, and part of that mission includes explaining its major

---

[7] "The Supreme Court of the United States has 'long understood as implicit in the right to engage in activities protected by the First Amendment a corresponding right to associate with others.' In turn, '[t]he First Amendment's right to freedom of association provides a privilege that protects certain associational activities from discovery.'" *In re Ga. Senate Bill 202*, No. 1:21-MI-55555-JPB ALL, 2023 U.S. Dist. LEXIS 80565, at *42 (N.D. Ga. May 9, 2023) (citations omitted). While this privilege is not absolute, *see id.*, Chiquita has not met the burden of showing a need for this information, when media and Florida residents have been screened out.
[8] *See* https://earthrights.org/privacy-policy/.

11

activities to its supporters. But the strict safeguards EarthRights placed on distribution and attendance were such that there is no conceivable violation of Local Rule 77.2. Plaintiffs' counsel welcome any guidance the Court may see fit to provide about the ground rules under which Plaintiffs' counsel may communicate about this case with their own supporters.

Dated: April 2, 2024

Respectfully submitted,

*/s/ Marco Simons*
Marco Simons
EarthRights International
1612 K Street NW, Suite 800
Washington, DC 20006
Tel: 202-466-5188
marco@earthrights.org