UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-MD-01916-MARRA

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION

**This Document Relates to:**

ATS ACTIONS

07-60821-CIV-MARRA (Carrizosa)
08-80421-CIV-MARRA (N.J. Action) (Does 1-11)
08-80465-CIV-MARRA (Does 1-144/Perez 1-795)
08-80480-CIV-MARRA (*Manjarres*)
08-80508-CIV-MARRA (Valencia)
10-60573-CIV-MARRA (Montes)
11-80404-CIV-MARRA (D.C. Action) (Does 1-677)
17-80475-CIV-MARRA (Does 1-2146)
17-80535-CIV-MARRA (Ohio Action) (Montes)
17-81285-CIV-MARRA (D.C. Action) (*Does v. Hills*)
18-80248-CIV-MARRA (Ohio Action) (John Doe 1)
18-80800-CIV-MARRA (Does 1-144/Perez 1-795)

/

## ORDER ON MOTIONS IN LIMINE AND OTHER PRETRIAL MATTERS
### (DEs 3488, 3489, 3586, 3587, 3617)

THIS CAUSE is before the Court on multiple motions *in limine* ("motions") and other pretrial matters, specifically,

(a) Non-Perez Non-Wolf Bellwether A1 Plaintiffs' Conditional Motion to Sever Trial (**DE 3488**);

(b) Non-Wolf Plaintiffs' Motion in Limine to Admit Certain Evidence and to Prohibit Other Evidence (**DE 3489**);

(c) Defendant's Response to Kaplan's Rule 1006 Summaries (**DE 3586**);

(d) Defendant's Response to Non-Wolf Plaintiffs' Rule 1006 Summary Charts (**DE 3587**);

(e) Defendant's Notice of Supplemental Evidence and Authority Concerning Witness Payments (**DE 3617**); and

(f) Other matters as delineated below.

The motions have been fully briefed and are ripe for review.[1] The Court held a hearing on the motions and other pretrial matters on April 9, 2024 ("April 9 hearing") (DE 3640). Collectively, these final pre-Bellwether 1A pretrial motions and related matters seek rulings as to whether certain evidence and summaries should be allowed at the upcoming trial. The Court having reviewed the pertinent portions of the record and being duly advised in the premises, it is hereby

**ORDERED AND ADJUDGED**, as follows:

(1)   *Other payments by other businesses to AUC* (DE 3489 at 9[2]): If there is admissible evidence that Defendant knew of other payments to the AUC by other businesses in Colombia during the relevant time period and which informed their course of action in making their own payments to the AUC, this evidence will be permitted for jurors to decide if Defendant's actions were reasonable under the circumstances in accordance with the good businessperson standard of care.

(2)   *Requirement that Plaintiffs testify and Plaintiffs' reliance on the "presumption of moral damages*" (DE 3489; DE 3640 at 4, 10-21): If Plaintiffs are going to claim damages, they must come in to testify and be subject to cross examination. Defendant must be able to hear what

---

[1] The Court presumes familiarity with the record.
[2] Citations to a particular motion or the April 9 hearing transcript (DE 3640) is generally illustrative and not necessarily exhaustive; if the topic is argued elsewhere, the Court's ruling applies to other related evidentiary issues in this Bellwether trial.

2

the evidence is as to damages so they can rebut even a presumptive claim under Colombian law, as argued by Plaintiffs.[3]

(3)     *Collateral sources of income* (DE 3489 at 11; DE 3640 at 144-46): As a general matter, collateral sources of income are not admissible and to the extent allowable as a set-off against damages, are considered post-trial. In this case, Defendant argues that a Plaintiff lied during her trial deposition about how much compensation she received from the Colombian government for the loss of her husband. Defendant wishes to impeach this Plaintiff's testimony by presenting the testimony of the witness' daughter who testified her mother received significantly more in compensation. Such information is impeachment on a collateral issue. The Court finds that testimony as to the amount of compensation the mother received should be excluded as its unfair prejudice outweighs its probative value under Fed. R. Evid. 403.

(4)     *Limiting threats of violence linked only to the AUC* (DE 3489 at 7): Like payments to the AUC by other businesses, Defendant may have taken into consideration violent undertakings by other terrorist groups besides the AUC in making its decisions to make payments to the AUC. This type of evidence is allowable to the extent the Defendant may present admissible evidence as part of its decision-making calculus.

(5)     *Evidence of AUC threats and violence after Bellwether deaths (or far before)* (DE 3489 at 7-8; DE 3640 at 66-68): The Court finds that this evidence is allowable to the extent Defendant may present admissible evidence on this issue as part of its decision-making calculus. This is consistent with Plaintiffs' desire (and the Court's allowance) that Plaintiffs may present all payments made by Defendant to the AUC, including payments made after the Bellwether deaths.

---

[3] New York Plantiffs' counsel agrees that -- notwithstanding that (as represented to the Court) New York lacks a pleading requirement that Plaintiffs' dependents be named in the complaint -- the representative person who is listed as the plaintiff needs to appear to testify (DE 3640 at 22).

(6) *Alleged threats and violence by the AUC in Santa Marta* (DE 3489 at 8; DE 3640 at 68-69): Like enumerated issues (1), (4), and (5), above, this evidence is allowable to the extent Defendant may present admissible evidence on this issue as part of its decision-making calculus.

(7) *Collingsworth alleged payments to witnesses* (DE 3617). Pertinent to this MDL, Plaintiffs' counsel Terrence Collingsworth, in a February 2015 filing, provided a declaration under penalty of perjury stating that "I have never paid any money or given anything of value, directly or indirectly, to any actual or potential fact witness in this case in exchange for their testimony" (DE 3626-10 at 3).[4] In 2008, Collingsworth told "Jose Gregorio Mangones Lugo, alias Carlos Tijeras [("CT")]," while interviewing him in a Colombian prison, that "just like Chiquita and Dole, we [Plaintiffs' legal team] cannot give money to a person within a designated terrorist organization. Further, *we cannot pay a witness for his testimony regardless of any other restrictions*. He [CT] is clear about this" (DE 3618-9 at 2, 7) (emphasis added). Based on the record, it appears to the Court that the only payments Collingsworth made went to Colombian attorneys to pay for costs incurred on behalf of Colombian Plaintiffs.

As to Defendant's related (and recently revived) argument that numerous Plaintiffs' counsel paid witnesses for testimony, numerous Plaintiffs' counsel provided declarations under penalty of perjury which contraindicate these assertions. Plaintiffs' counsel William Wichmann declared under penalty of perjury that other Plaintiffs' counsel possible payments to witness was "unsubstantiated" and "untrue" (DE 3626-1 at 3); Carrizosa Plaintiffs stated in 2015, in response to Defendant's Interrogatories, that they "have not made, or contemplated making payments of any kind to, or for the benefit of, any individual who may be a fact witness concerning the

---

[4] "In the interests of full disclosure," Collingsworth notes that he did provide fruit and water for several meetings with Jose Gregorio Mangones Lugo and provided him with a new clean tee shirt prior to his scheduled testimony to the Colombian Justice and Peace Commission (*id*).

allegations contained in the Carrizosa Complaint" (DE 3626-4 at 2, 3[5]); and Plaintiffs' counsel Marco Simons also declared under penalty of perjury that, among other things, "I have stated this many times previously, but I will state again: Except for any knowledge gleaned from the *Drummond v. Collingsworth* litigation, or documents produced to Chiquita by Mr. Collingsworth or Conrad & Scherer, or the depositions of witnesses in this case, I have no information regarding any offer or payment of any thing of value to any witness, or any plan to make such an offer or payment. At all points, Mr. Collingsworth assured me that no such payments had been made and there were no plans to make such payments. To the best of my knowledge, the same is true for all other 'New Jersey' Plaintiffs' counsel" (DE 3626-6 at 5).

In sum, Plaintiffs' counsels' declarations, provided under oath, refute any assertedly ambiguous communications on the topic of witness payments. Examination of Plaintiffs' counsel on this topic, which will undoubtedly result in across the board denials of any impropriety, is minimally probative and outweighed by unfair prejudice to Plaintiffs. *See Cave Consulting Grp., Inc. v. OptumInsight, Inc.*, No. 15-CV-03424-JCS, 2020 WL 127612, at *17 (N.D. Cal. Jan. 10, 2020) (explaining that "a lawyer serving in dual roles as both an advocate and a witness risks some degree of distortion of the trial process and confusion for the jury, even in a civil case;" calling an opponent's counsel as a witness forces the opponent to choose between, on one hand, the prejudice of replacing its attorney, and on the other hand, whatever prejudice might result from the attorney wearing both of those hats at trial; and "[t]he standard for allowing a party to call its opponent's trial attorney as a witness must therefore be at least somewhat higher than the standard for other witnesses"); *see also Hickman v. Taylor*, 329 U.S. 495, 510 (1947) (in context of applying work

---

[5] The sentence following the quotation above responds further that "[t]he Carrizosa Plaintiffs have documents showing Conrad & Scherer LLP including partner Terrence P. Collingsworth made payments to witnesses" in other cases not involved in this MDL. *Id.*

product analysis to prevent inquiries into an attorney's work files and mental impressions, stating that "[h]istorically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel").

Based on the foregoing, Plaintiffs' motion to prohibit the calling of counsel for Plaintiffs (DE 3489 at 12-16), relative to alleged witness payments, is granted; neither Collingsworth nor any other counsel for Plaintiffs will be permitted to testify in this matter. Consequently, Plaintiffs conditional motion to sever trial (DE 3488) is denied as moot. This ruling does not preclude Defendant's potential examination of non-lawyer witnesses as to payments either allegedly received or offered.

(8)     *Mortality tables* (DE 3640 at 78-79; DE 3575 (Jury Instructions)): The Court will rule upon this issue before Plaintiffs rest, but they may not make mention of it during opening argument or otherwise without prior Court authorization. The Court understands that this information may be used to show how many years Plaintiffs are likely to live, and therefore how long they may suffer, due to the loss of their loved ones. The tables are not being offered relative to economic loss.

(9)     *Special litigation report* (DE 3489 at 18-20). This litigation report is based upon a derivative lawsuit which stockholders brought against Defendant's board members for engaging in conduct leading to judgment of conviction. The committee investigation and resulting report is not a record of a regularly conducted business activity within the meaning of Fed. R. Evid. 803(6). Defendant had no cases to support its argument that a special litigation report was admitted by any other court as a business record (DE 3640 at 85). At this juncture, the Court will exclude the report. If Defendant can demonstrate another basis for admitting the report, the Court will revisit its ruling.

As with other excluded evidence, the parties may not refer to this document without prior authorization by the Court.

(10)  *Summary charts* (DE 3586, DE 3587): Plaintiffs have withdrawn the United States Government cable summary and two media summaries (DE 3640 at 94). As to those that Plaintiffs intend to offer, the Court will reserve ruling on their admissibility. The Court will permit an examination of the summary witness out of the presence of the jury before the summary chart and any testimony relative thereto is presented to the jury.

(11)  *Validity of oath as to certain 2024 trial deponents*: Refer to DE 3648.

(12)  *Not calling payments extortion payments* (DE 3489 at 6-7): During the presentation of live witness testimony, the witnesses who have relevant admissible testimony regarding the circumstances surrounding payments made by Chiquita to any guerilla, paramilitary or terrorist group, may testify that they felt or believed they were being extorted, not that what was taking place was, in fact, extortion. Similarly, if there are any witnesses that Plaintiffs call who were involved in the interactions between Chiquita and any guerilla, paramilitary or terrorist group, those witnesses may testify that they did not believe or feel that the payments from Chiquita were being extorted, but they may not testify that the payments were not, in fact, extorted. The Court notes, however, that during the depositions of multiple witnesses the parties intend to present, the payments were described as "extortion payments." In fact, on multiple occasions, Plaintiffs designated portions of depositions where that description was used. It is not feasible to modify the deposition transcripts to conform to the Court's ruling relative to live witnesses. Therefore, those portions of the deposition transcripts that the Court finds to be admissible may be presented with the "extortion" description.

(13)  *Advance witness notice*: Parties shall advise each other of their expected trial witness schedule two (2) days in advance of the witness' trial testimony.

(14) *Translated documents*: Ruling on the admissibility of translated documents is reserved until any such document is presented at trial. The Court will take into consideration, among other things, the document's origin and compliance with the Court's prior rulings on admissible exhibits (*e.g.*, DE 3609 and DE 3610). Generally, the entire document should be translated except for those which are so voluminous translation of entire document would be impracticable.

(15) *Trimmed witness lists*: Unless an earlier date was otherwise agreed to by counsel, opposing counsel shall exchange trimmed witness lists, as applicable and consistent with Court's recent rulings, on or by April 19, 2024.

(16) *Final exhibit list deadline*: Unless an earlier date was otherwise agreed to by counsel, April 19, 2024.

(17) *Jury selection*: The Court intends to seat ten (10) jurors and allow each side five (5) peremptory challenges. No back-striking will be permitted.

Based on the foregoing,

a. Plaintiffs' Conditional Motion to Sever Trial (**DE 3488**) is **DENIED as MOOT**.

b. Plaintiffs' Motion in Limine to Admit Certain Evidence and to Prohibit Other Evidence (**DE 3489**) is **GRANTED IN PART AND DENIED IN PART**, as set forth above.

c. The Court reserves ruling on Plaintiffs' Rule 1006 Summaries, and Defendant's Notice of Responses thereto.

d. As to other delineated matters not linked to a specific motion, the Courts rulings are as

set forth above.

**DONE AND ORDERED** in Chambers, in West Palm Beach, Florida this 17th day of April, 2024.

KENNETH A. MARRA
United States District Judge

cc: All counsel of record