UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-MD-01916-MARRA

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION
_____/

**This Document Relates to:**

ATS ACTIONS

07-60821-CIV-MARRA (*Carrizosa*)
08-80421-CIV-MARRA (N. J. Action) (*Does 1-11*)
08-80465-CIV-MARRA (D.C. Action) (*Does 1-144*)
08-80508-CIV-MARRA (*Valencia*)
08-80480-CIV-MARRA (*Manjarres*)
10-60573-CIV-MARRA (*Montes*)
17-81285-CIV-MARRA (D.C. Action) (*Does v. Hills*)
18-80248-CIV-MARRA (*John Doe 1*)
_____/

**PLAINTIFFS' NOTICE OF ISSUES TO BE ADDRESSED AT
APRIL 22, 2024, CONFERENCE**

Plaintiffs submit this notice of issues that remain to be decided and which may be addressed at the April 22, 2024, conference.

1. **Clarification of reference to damages in opening statements.**

The Court's order on Chiquita's motion in limine states that "The Court will reserve ruling until closing argument on how Plaintiffs may argue to the jury for awards of non-economic damages." Plaintiffs seek clarification on the potential impact of this ruling on how they may address non-economic damages in their opening statements.

2. **Clarification of which witnesses may testify.**

The Court denied Chiquita's latest "emergency" motion (DE 3644) regarding Plaintiffs' witness list, ruling that its orders apply regardless of whether witnesses remain on Plaintiffs' list or not. To allow Plaintiffs to formulate their trial

1

presentation, and to minimize burdens on witnesses, however, Plaintiffs believe it is appropriate for the Court to rule on whether certain witnesses challenged by Chiquita will be permitted to testify.

### a. Recently-deposed witnesses.

The Court specifically approved – twice – the depositions of several witnesses who recently testified in trial depositions in Colombia. In DE 3541, the Court granted Plaintiffs' Motion to Present Third-Party Witnesses via Video-Conference at Trial or, in the Alternative, for Leave to Take Trial Depositions (DE 3482). That motion concerned a number of specifically-identified witnesses. Subsequently, the Court granted a similar motion filed by the *Carrizosa* Plaintiffs (DE 3565, granted in DE 3569). Subsequently, the plan to depose these witnesses was stipulated to by the parties and approved by the Court in the Fifth Amended Global Scheduling Order (DE 3570). Although Chiquita challenges these witnesses, the Court should make clear that their trial depositions may be used:

- o Carlos Manuel Bello Arrieta
- o Onelsi Mejia
- o Ovidio Pascual Nuñez Cabrales[1]
- o Roberto Cardona Munoz
- o Sergio Manuel Contreras Castro

### b. Álvaro Villarraga

Chiquita argues that Mr. Villarraga was not disclosed, and that he should have been disclosed in response to their interrogatories. Both arguments are incorrect. First, Plaintiffs indicated during discovery that Mr. Villarraga was a potential witness; nine months before the discovery cutoff, counsel emailed Chiquita indicating that Plaintiffs intended to depose him. *See* DE 3522-6.

Second, the relevant interrogatory did not ask for witnesses who, like Mr. Villarraga, have no knowledge of the specific Plaintiffs' cases. At the March 25 hearing, Chiquita's counsel conceded that they only served interrogatories seeking

---

[1] Chiquita has, at various points, suggested that Nuñez Cabrales was not disclosed during discovery. This is incorrect; the New Jersey Plaintiffs timely disclosed this witness in response to Chiquita's interrogatories. *See* DE 3522-7 at 10.

2

witnesses with knowledge "concerning the alleged injuries, disappearance, or death of you or the alleged victim." Ex. 1 (March 25 Hr'g Tr.) at 35: 7-8. Chiquita chose to focus their discovery on the individual Plaintiffs' injuries, and their narrow approach cannot now exclude witnesses whose identities they did not seek, at least where Plaintiffs otherwise timely and specifically identified the witness.

### c. Robin Kirk.

Ms. Kirk was properly disclosed as a fact witness in an interrogatory response served before the discovery cutoff, *see* DE 3522-7 at 14, and therefore may testify as a fact witness. (Chiquita elected not to depose her during fact discovery.) Although Plaintiffs also later disclosed her as a hybrid fact/expert witness, and the Court precluded her testimony "as an expert," *see* DE 3616 at 14, she may still testify as a fact witness, just as if Plaintiffs had never designated her an expert.

The Court ruled only that Ms. Kirk could not testify as an expert because she had not submitted an expert report, which does not preclude her testimony as a fact witness. Chiquita claims that Ms. Kirk may not testify, DE 3644 at 10-11, because the Court found that she has no "personal knowledge of any Plaintiff's alleged injuries," DE 3616 at 7. But while the Court ruled that Ms. Kirk's knowledge of the Plaintiffs' injuries was relevant to whether she could testify as a non-retained expert without submitting a report, this does not circumscribe the universe of relevant evidence in this case; many trial witnesses will have no knowledge of the Plaintiffs' injuries. The Court never stated that Ms. Kirk has no *relevant* knowledge, and Chiquita never moved to exclude her on that basis. Indeed, there is little doubt that Ms. Kirk has relevant knowledge – for example, she personally met with AUC founder Carlos Castaño.[2] She will also testify that she wrote reports documenting AUC activities and how those reports were widely disseminated to media in Colombia and the United States as well as Colombian and U.S. governmental agencies. She will further testify that she was sent an email to one of her private email addresses by Roderick Hills about Chiquita and about accusations against

---

[2] *See* DE 3413-4 (Kirk Dep.) at 90:25-91:6.

3

Chiquita after she left Human Rights Watch. Chiquita is free to object to any of her testimony that they believe is inadmissible, but they have not established that she has no relevant evidence.

### d. Rule 1006 summarizers.

The Court has ruled that Rule 1006 summarizers may be examined "out of the presence of the jury before the summary chart and any testimony relative thereto is presented to the jury." DE 3649 at 7. Nonetheless, Chiquita argues that two such summarizers – Mike Evans and Marina Daroca Bazán – cannot testify.

The parties agreed, and the Court ordered, that Rule 1006 summaries did not need to be exchanged until February 15, 2024. DE 3570 at 3. Such a provision would be meaningless if the individuals who can sponsor those summaries would then not be allowed to testify. Chiquita's position would exclude Rule 1006 summaries – summaries that they agreed could be exchanged – by striking their sponsoring witnesses, contrary to the process the Court has ordered.

### e. Authenticating witnesses.

The Court should clarify that records custodians called solely to authenticate documents or lay the foundation for their admissibility may testify. Chiquita argues that these custodians may not testify because they were not previously disclosed – an absurd position, especially since one of them is Chiquita's own records custodian. Again, these witnesses have no independent knowledge of Plaintiffs' injuries that would have made them responsive to Chiquita's interrogatories, and they are only necessary if Chiquita disputes the admissibility of documents produced to Plaintiffs in discovery.[3] Plaintiffs did not know that Chiquita would object even to the authenticity of many of these documents until January 2, 2019, when Chiquita responded to Plaintiffs' Requests for Admissions. *See* Ex. 3. Indeed, Chiquita's own witness list still includes "the records custodian for every health care provider who treated any Plaintiff," *see* Ex. 4, despite the fact that Chiquita never disclosed such

---

[3] One additional witness, William Acosta, is also presented solely to authenticate documents. Plaintiffs do not think it will be necessary to call Mr. Acosta, however, except perhaps on rebuttal.

4

records custodians as witnesses. *See* DE 3491-14.

Plaintiffs hope that it will be unnecessary to call such records custodians, because Chiquita should simply stipulate to the documents it produced. But its effort to prevent the admission of relevant evidence through preclusion of authenticating witnesses should not be countenanced.

### f. Named Plaintiffs who were unable to obtain visas for depositions.

Several Plaintiffs who were unable to obtain visas for depositions have been able to secure visas for trial.[4] This is unremarkable, but Chiquita argues it provides a basis for precluding their testimony, claiming that these Plaintiffs "failed to appear" for their depositions. But Chiquita already moved to dismiss these Plaintiffs' claims on this basis, DE 2215, which the Court denied, DE 2605. Arguing that these Plaintiffs now may not testify is essentially seeking to revive this failed motion. Instead, the appropriate remedy is to make these Plaintiffs available for deposition before trial.

These Plaintiffs did not previously have United States visas, so they could not legally travel to Florida for a deposition (which is where Chiquita insisted the deposition take place). Yet at all relevant times, these Plaintiffs were willing to be deposed in Colombia. Indeed, these Plaintiffs are still willing to be deposed (1) now in Bogotá or (2) in Florida promptly after arrival.

Chiquita has had ample time to prepare its defense to these Plaintiffs' claims. For example, one Plaintiff, Lina Maria Berdugo Lechuga, was named in the Perez Plaintiffs' First Amended Complaint in 2010 (DE 58 ¶ 282), and provided

---

[4] For example, on April 16, 2024, Bellwether 1A Plaintiff Lina Maria Berdugo Lechuga was granted a U.S. visa. During discovery, Ms. Berdugo applied for a visa and attended an interview in Bogotá, but her visa application was denied. Then, on October 6, 2023, well in advance of trial, Ms. Berdugo again applied for a United States visa. However, she was given an interview date of November 4, 2025. Recently, Ms. Berdugo learned that her visa interview had been expedited and scheduled for April 16, 2024. She attended that interview and is now scheduled to pick up her passport and visa at 8am on April 22.

5

information to Chiquita in initial disclosures, responded to Chiquita's interrogatories, and produced documents requested by Chiquita. Chiquita has not suggested that any of these Plaintiffs refused to cooperate in discovery in any way, except for being unable to obtain U.S. visas. They never refused to be deposed or otherwise participate in this action, but dutifully prosecuted their claims, and may testify if they are able to obtain visas for trial. [5]

### g. Family members with claims of their own.

Several family members with claims of their own and identified in Plaintiffs' witness lists were properly identified during discovery, via initial disclosures and/or responses to written discovery. These family members were never noticed by Chiquita for deposition. For purposes of the A1 Bellwether trials, the following family members are willing to be deposed (1) now in Bogotá or (2) in Florida promptly after arrival (if granted a visa), if Chiquita so wishes:[6] Angel Maria

---

[5] Chiquita also implies that Plaintiffs somehow waived their position, stating that they "lodged objections to these witnesses in August 2023 (*see* DE 3576-4) and raised them again at the April 9 conference, to which Plaintiffs provided no response." DE 3644 at 10. While Chiquita did lodge objections, they never raised these objections in a motion, as they did with other such objections to witnesses. And the assertion that they raised this objection at the April 9 hearing is false. Chiquita's counsel did not object to these Plaintiffs' appearance at trial, but simply stated her "understanding" that these Plaintiffs "cannot appear live because they don't have visas." Ex. 2 (Apr. 9 Hr'g Tr.) at 117. No objection was raised; counsel did not ask the Court to preclude their testimony if they managed to obtain visas. Plaintiffs' counsel did not respond because there was nothing to respond to.

[6] The following witnesses are expected to provide testimony during the B1 Trial set to begin July 2024. The Non-Wolf Plaintiffs asks the court to currently reserve ruling in these individuals, as they are all awaiting visa appointments on an emergency basis, and if successful, will be able to appear in person at the July 2024 trial. Plaintiffs will provide Chiquita with the opportunity to depose them in Bogota, or promptly after arrival in West Palm Beach, if Chiquita wishes: Celina Areiza Duarte, Juan Rafael Henao Velasquez, Lucely Henao Velasquez, Alberto Antonio Florez Ibarra, Aleida Yohana Florez Ibarra, Amado Julio Santero Padilla, Diana Patricia Florez Ibarra, Gilma Rosa Ibarra, Kenedy de Jesus Florez Ibarra, Leonel Areiza Tamayo, Luz Dary Florez Ibarra, Misael Antonio Florez Ibarra, Oliva Florez Ibarra, Orfa Nelly Florez Ibarra, and Jhon Antonio Florez Ibarra. Non-Wolf Plaintiffs also identified third party witnesses in their initial disclosures: Denis

6

Restrepo and Luis Arnoldo Restrepo.

### 3. Plaintiffs' use of insurance or ATA case testimony.

Chiquita never moved to preclude Plaintiffs' use of testimony from the insurance proceedings or the ATA case, but now argues – incorrectly – that the Court has precluded Plaintiffs from doing so. The fact that *Chiquita* is precluded from using such testimony does not prohibit *Plaintiffs* from doing so.

Chiquita never moved to strike these depositions, but Plaintiffs did, DE 3491 at 14-15; the Court granted the motion. DE 3610 at 3. And the Court was correct: prior testimony may not be used *against Plaintiffs* where they had no "opportunity and similar motive to develop" the testimony, Fed. R. Evid. 804(b)(1)(B). But that is a distinct question from whether *Plaintiffs* can use this testimony *against Chiquita*, which was present for the prior testimony, with similar motives.

It is unremarkable that evidence might be admissible against a party, but not usable by that party. This is the case, for example, with respect to admissions of a party; they can be used by the opposing party, but not in a self-serving manner by the party that made the admission. Indeed, Rule 105 of the Federal Rules of Evidence is specifically directed at evidence admissible against one party, but not others. The Federal Rules of Evidence contain multiple references to evidence whose admissibility depends on what party it is being used *against. E.g.*, Fed. R. Evid. 801(d)(2); Fed. R. Evid. 803(8)(A)(iii); Fed. R. Evid. 804(b)(6).

Chiquita specifically argues that Plaintiffs may not use the prior testimony of Victor Buitrago. But Chiquita previously obstructed the deposition of Mr. Buitrago. Despite the fact that, as of 2018, Mr. Buitrago was "still working for the company in some capacity," DE 3491-9, Chiquita refused to produce him for deposition. Indeed, although the Court granted a letter of request for Mr. Buitrago, it could not be served due to an incorrect address, and Chiquita never provided Mr.

---

Dario Argel Hernandez and Ramon Higuita as individuals to testify about decedent's injuries and will ask the court to permit them to testify if these individuals are successful in obtaining visas to attend the July 2024 B1 Trial.

7

Buitrago's correct home address. *See* DE 3491 at 8-9. Even if Chiquita's argument were sound with respect to other deponents (it is not), Mr. Buitrago's deposition testimony should be considered distinct due to Chiquita's obstruction that prevented a deposition in this case.

   4. **Chiquita's newly-submitted jury instructions.**
      a. **Chiquita's new instructions are late, prejudicing Plaintiffs.**

The Court should not consider Chiquita's late-filed proposed jury instruction on Plaintiffs' hazardous-activity claim, which they filed on April 18 without any advance notice or effort to meet and confer. Chiquita has had **almost six months** after receiving Plaintiffs' draft instruction[7] to propose an alternative, but failed to do so until less than week before trial – and only two business days before the charging conference. Worse, they attach an entirely new report from their Colombian law expert. Chiquita's untimely filing of its proposed instruction prejudices Plaintiffs by leaving them with insufficient time to fully respond with an expert report of their own. Defendants also added, for the first time, dozens of new responses to the objections Plaintiffs served on February 29. Defendants have inexcusably waited seven weeks, until the eve of trial, to respond to Plaintiffs' objections.

Chiquita has known since at least November 1, 2023, that Plaintiffs proposed an instruction on their hazardous-activities claim, but chose not to propose its own instruction, gambling on its position that such a claim should not be tried.[8]

---

[7] Plaintiffs served their initial draft proposed jury instructions, including an instruction on their hazardous-liability claims, on Chiquita on November 1, 2023. Chiquita was required to serve its "own proposed instructions" and "[i]ts own expert's declaration" no later than February 20, and, after meeting and conferring, the proposed instructions were due on February 29. DE 3570.

[8] Chiquita's position was not reasonable given the clarity of the Court's statement in its opinion denying summary judgment on the 1B bellwether claims that "it is unnecessary to reach Plaintiffs' alternative theory of no-fault civil liability under the Colombian Civil Code, premised upon Chiquita's alleged commission of "hazardous activity" (funding an illegal notorious terrorist group)," DE 3238 at 82 n.51, which the Court incorporated into its order denying summary judgment on the 1A bellwether claims. *See* DE 3239 at 15.

8

Chiquita could have maintained its position but still proposed an instruction in the alternative, but it did not. Chiquita, not Plaintiffs, should bear the consequences of that choice.

Indeed, Chiquita did previously interpose objections to Plaintiffs' proposed instruction, but now seeks a do-over. The objections Chiquita previously made have mostly been overruled (*see* DE 3628) or are now contradicted by Chiquita's new expert report. *Compare* DE 3575-1 at 111 (Chiquita's original objection claiming, without explanation, that hazardous activity "is not a viable theory of recovery"), *with* DE 3653-1 ¶ 3 ("Colombia's Supreme Court of Justice (the "Supreme Court") has interpreted that a strict liability regime (or a presumption of fault regime) applies in cases of hazardous activities.").

To avoid unfair prejudice to the Plaintiffs, the Court should decline to consider Chiquita's late-filed instructions. But if the Court does consider it, Plaintiffs offer the following objections; even without the benefit of the time to fully research Defendant's eleventh-hour arguments or to submit a new expert report of their own; it is clear that Chiquita's proposed instruction misstates the law.

### b. Plaintiffs' objections to Chiquita's untimely Instruction 25

Chiquita's proposed instruction should be rejected because it is designed to tell the jury to rule against Plaintiffs, on what are clearly issues of fact. It does so by, among other things, repeating misstatements of law that this Court has already rejected and by adding incorrect statements based on their expert's unsupported conclusions. Specifically:

(1) **"a causal link…"** The word "causal link" improperly suggests that "but for" causation is required and can only confuse the jury and invite error. The Court has already rejected Chiquita's proposed "but for" causation standard. DE 3238, Order Granting in Part and Denying in Part Defs' Joint Mot. For Summary Judgment in the Seventeen Remaining Bellwether Case Selections at 77 ("Defendants are accused of aiding and abetting or conspiring to commit extrajudicial killings which were perpetrated by a third party – a terrorist paramilitary organization - a form of secondary liability where 'but for' causation concepts logically have no play."). In the

9

hazardous-activity context, liability flows to those persons who the defendant's actions have increased the risk of harm to. *See* Ex. 5, Supreme Court of Justice, Civil Cassation Chamber, Verdict of September 20, 2019,[9] at 22 ("[T]he performance of dangerous work is based on the theory of risk and not on fault.").

Chiquita cites no authority suggesting that a hazardous activity claim somehow requires a more stringent showing of nexus than an Article 2341 claim. To the contrary, the Colombian Supreme Court has held that "[i]t is enough for the victim to demonstrate the facts that determine the exercise of a hazardous activity and the damages suffered, and it will be the defendant who must prove that the accident occurred because of" some extraneous factor. Supreme Court of Justice, Civil Cassation Chamber, Verdict of October 25, 1999 (excerpted translation in DE 2345-1 at 96); *see also* Ex. 5 at 18 ("Hence, damages of this kind are presumed, in this theory, to have been caused by the respective agent [...] And hence also that such agent or author is not exempted from compensation" unless "he proves an act of God, force majeure or the intervention of a foreign element" (omission in original) (quoting Supreme Court of Justice, Civil Cassation Chamber, Verdict of March 14, 1938)). *See also* DE 2345-1 (Arrubla Decl.) ¶ 98 ("It is worth noting that a change between the 1954 decision and that of 1999 is that in the latter the victim is not required to prove the causal link, which does not mean that this does not exist between the hazardous activity and the damage, but rather that it is sufficient for the victim to demonstrate the hazardous activity carried out by the defendant and the damages suffered by the victim."). Plaintiffs need only show that they suffered "damage that is characteristic of the risk such activity entails." Arrubla Decl., DE 2345-1, ¶ 99. If Plaintiffs can show their decedents were killed by the AUC, as Plaintiffs' Proposed Instruction 16 requires, then Plaintiffs have carried their burden to show the required nexus for their hazardous activity claims, and Defendant bears the burden of showing some outside factor was the sole cause of

---

[9] Plaintiffs submit a machine-translation of this decision and the decision in Exhibit 6, because there has been insufficient time for a professional translation.

10

Plaintiffs' injuries. DE 3574-4 (Santos Ballesteros Decl.) ¶ 70.

(2) **"Article 2356 of the Colombian Civil Code gives the following examples…"** Chiquita's proposed examples do not accurately state the modern doctrine of hazardous activity and will confuse and mislead the jury. Although Article 2356 gives several examples, the doctrine of hazardous activity has evolved well beyond the examples given in the text of Article 2356. *See* Arrubla Decl., DE 2345-1, ¶ 95 ("It should be kept in mind that the rule mentioned is from 1873, as revealed by the antiquated examples used."). For example, as Defendant's expert discusses in his report, a wide range of activities have been found to be hazardous activities, such as "driving a vehicle," "operating a train," and "constructing infrastructure." DE 3653-1 (Santos Ballesteros Report) ¶ 11. Other examples discussed in the caselaw include "the use of a tractor" and "operation of elevators." Ex. 6, Supreme Court of Justice, Civil Cassation Chamber, Verdict of December 19, 2018, at 89-90. The original examples given in Article 2356 are additionally misleading because they do not speak in terms of strict liability, although, as Defendant's expert agrees, Colombian law has come to interpret Article 2356 as creating a strict liability regime for hazardous activity. *See* Santos Ballesteros Report, DE 3653-1 ¶ 3 ("Colombia's Supreme Court of Justice . . . has interpreted that a strict liability regime (or a presumption of fault regime) applies in cases of hazardous activities. This means that the plaintiff does not need to prove fault."); *see also, e.g.*, Ex. 6 at 89-93 (tracing the evolution of hazardous-activity doctrine).

Under Colombian substantive law, "hazard is a question of facts," Supreme Court of Justice, Civil Cassation Chamber, Verdict of October 25, 1999 (excerpted translation in DE 2345-1 at 97), *see also* Ex. 6 at 93 (same), and thus under U.S. procedural law, it is for the jury to decide based on the specific facts and evidence before it, *e.g.*, *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1348 (11th Cir. 2007) (jury decides questions of fact). Rather than a list of examples, the Court should simply instruct the jury that "a hazardous activity is one that increases the risk to members of the community." *See* Supreme Court of Justice, Civil Cassation Chamber, Verdict of August 24, 2009 (excerpted in Arrubla Decl., DE 2345-1 ¶ 96)

("Liability reverts to the person who carries out an activity that may be seen as generating risks or hazards for the community, given that it increases such risks and hazards to which people are normally exposed and, therefore, the person who carries out such activities, or whoever is under his/her direction, management or control, will be held liable, in law or in fact"); *accord* Ex. 6 at 91.

Chiquita proposes a series of instructions that improperly purport to tell the jury that its conduct was not a hazardous activity. That is a fact question for the jury to decide.

(3)     Chiquita's proposed instruction misstates the law by stating that a hazardous activity requires proof of an "extraordinary" hazard, risk, or danger. As the name of the doctrine demonstrates, liability is based "hazardous" or "dangerous" activities, not "extraordinarily" hazardous activities. Chiquita attempts to raise Plaintiffs' burden by adding a gloss of "extraordinary" that is not supported by the authorities. Chiquita cites to a single paragraph from its expert who, in turn, cites to a single sentence from an 86-year-old Colombian case dating to the early days of the hazardous-activity doctrine. Moreover, the quoted language does not purport to say that a "hazardous activity" must actually be an "extraordinarily hazardous activity"; it merely lists some activities and remarks that they "inherently have extraordinary dangers." DE 3653-1 at ¶ 9. Subsequent Colombian caselaw does not add the "extraordinary" gloss that Chiquita seeks to add to its jury instructions. *See, e.g.*, Ex. 6 at 90 ("In an approach to the concept of dangerous activity, this court has referred to risk, to the potential danger inherent to the thing or activity, to the imbalance and multiplication of forces and energies, to the inability to control them in order to prevent their effects, among the most usual topics."); Supreme Court of Justice, Civil Cassation Chamber, Verdict of August 24, 2009 ("Liability reverts to the person who carries out an activity that may be seen as generating risks or hazards for the community . . . ." (excerpted in Arrubla Decl., DE 2345-1, ¶ 96)). As Chiquita's expert acknowledges, activities as mundane as "driving a vehicle" have been found to be hazardous activities. Santos Decl., DE 3653-1 ¶ 11. There is nothing "extraordinary" about driving a vehicle.

12

(4) **"… includes activities such as 'a warehouse for flammable substances, an explosive factory, a railway or an automobile.'"** Chiquita's list of examples risks confusing the jury. Whereas Plaintiffs would accurately and helpfully instruct the jury that "A hazardous activity is one that increases the risk to members of the community," *see* Arrubla Decl., DE 2345-1, ¶ 96 (citing Supreme Court of Justice, Civil Cassation Chamber, Verdict of August 24, 2009), Chiquita's proposed instruction unhelpfully requires the jury to reason by way of analogy to an incomplete list that mostly includes reference to use of combustible materials, though the doctrine is far broader. If the Court provides the jury with a list of examples, it should do so in addition to instructing the jury that a hazardous activity is one that increases the risk to the members of the community, and it should provide the full list provided by Defendants' expert: "driving a vehicle, piloting an aircraft or vessel, operating a train, storing flammable substances, producing explosives, generating and distributing energy, constructing infrastructure, [and] mining." Santos Decl., DE 3653-1 ¶ 11.

(5) **"The conduct must pose a 'grave hazard.'"** As explained in Plaintiffs' Objection (3), *supra*, an activity need only be "hazardous." It need not pose an "extraordinary" or "grave" hazard. Chiquita's citation to Justice Arrubla to support its inclusion of "grave" hazard quotes his report out of context.

(6) **"The use of highly flammable substances or the use of explosives are the most common and illustrative examples."** This assertion is unsupported, irrelevant, confusing, and highly prejudicial. First, Chiquita cites no authority for its argument that these are "the most common and illustrative examples." While it is true that Colombian have found the use of highly flammable substances and explosives to be hazardous activities, among many other activities Chiquita cites no reason to believe that these are the most "common examples"; by far the most common hazardous activity in Colombia is driving an automobile. *E.g.* Ex. 6 at 89-90; Santos Decl., DE 3653-1 ¶ 11. Second, even if these were the most common examples, referencing them would erroneously suggest to the jury that less hazardous activities, such as driving an automobile, are not also hazardous

13

activities (they are). Including this language will only serve to confuse the jury into thinking that the danger associated with a hazardous activity must be comparable in magnitude to the danger involved in using highly flammable substances or explosives, which, as even Chiquita's expert agrees, it need not be. *See* April 16, 2024, Santos Decl., DE 3653-1, ¶ 11.

(7) **"Agricultural activities, such as the production of bananas, are not considered dangerous per se."** This language is irrelevant and will only confuse the jury and prejudice Plaintiffs. Plaintiffs do not allege that Chiquita's banana production is hazardous; as the Court recognized, the alleged hazardous activity is "funding an illegal notorious terrorist group." DE 3238 at 82 n.51. Including Chiquita's language will risk confusing the jury as to the nature of Plaintiffs' allegations and legal theories.

(8) **"Banking is not a hazardous activity . . ."** This language and Chiquita's other references to banking are irrelevant, confusing, and prejudicial because this case does not involve banking and Chiquita's payments to known terrorists are not analogous to the provision of banking services. Moreover, even if banking were at issue in this case, hazard is a question of fact; it would not be proper for the Court to instruct that all banking activity, as a matter of law, cannot be hazardous.

(9) **"[T]he act of paying money or dealing with money is not a hazardous activity…"** This language is irrelevant, confusing, and highly prejudicial. The hazardous activity here is not "paying money" but paying a terrorist group, *see* DE 3238 at 82 n.51; just like the activity involved in driving a car is not generally "turning a wheel" but "steering a vehicle."

Chiquita attempts to define its conduct at a level of generality that would render the hazardous activity doctrine meaningless. For example, the Colombian Supreme Court has found that "the activity of transporting hydrocarbons is dangerous." Ex. 6 at 96. At Chiquita's level of generality, however, the activity could have been described as "transporting commodities," which obviously disguises the relevant fact that oil & gas are particularly dangerous.

No activity is inherently dangerous when defined at a great enough level of

14

generality. Accordingly, this instruction will just serve to confuse the jury as to the nature of Plaintiffs' allegations. Finally, even if Plaintiffs had alleged that Chiquita is liable merely because it paid money, it would not be proper for the Court to instruct the jury that any transaction of money, as a matter of law, cannot be a hazardous activity; hazard is a question of fact.

(10) **"[P]rotection of a party's associates that is argued to lead to a terrorist attack by a third party terrorist is not a hazardous activity."** This is unsupported, confusing, and prejudicial, and assumes facts that the jury must decide. Chiquita mischaracterizes the case it references. As Chiquita's expert's own discussion demonstrates, the case Chiquita refers to, the Verdict of July 29, 2015, found that a defendant social club was not be liable under the hazardous-activity doctrine for *failing* to protect its patrons from a terrorist attack. *See* Santos Decl., DE 3653-1 ¶ 17 ("They claimed that the club performed a hazardous activity, i.e. the protection of its associates, and *was omissive in such performance*, allowing the bomb to be planted by the terrorist organization."). This case does not somehow create a rule that any act, no matter how dangerous, is immune from liability if it is intended to protect others from a terrorist attack. Moreover, this instruction is prejudicial in that it improperly implies that Chiquita paid and otherwise provided support to the AUC in order to protect third parties from terrorist acts, which is a disputed fact. Finally, it would not be proper for the Court to instruct the jury that any act taken to protect a third party, as a matter of law, cannot be a hazardous activity; hazard is a question of fact.

(11) **A finding of "adequate cause" means that the plaintiff must prove by a preponderance of the evidence that the damage would not have occurred but for the defendant's conduct.** The Court has already rejected Chiquita's proposed "but for" causation standard. DE 3238 at 77 ("Defendants are accused of aiding and abetting or conspiring to commit extrajudicial killings which were perpetrated by a third party – a terrorist paramilitary organization – a form of secondary liability where 'but for' causation concepts logically have no play."). Chiquita's expert argues that the causation standard is the same for Article 2356

15

hazardous liability claims as it is for Article 2341 negligence-style claims, but he provides no citation for this assertion. To the contrary, the Colombian Supreme Court has held that "[i]t is enough for the victim to demonstrate the facts that determine the exercise of a hazardous activity and the damages suffered, and it will be the defendant who must prove that the accident occurred because of" some extraneous factor. Supreme Court of Justice, Civil Cassation Chamber, Verdict of October 25, 1999 (excerpted translation in DE 2345-1 at 96); *see also* Ex. 5 at 18 ("Hence, damages of this kind are presumed, in this theory, to have been caused by the respective agent [...] And hence also that such agent or author is not exempted from compensation" unless "he proves an act of God, force majeure or the intervention of a foreign element" (omission in original) (quoting Supreme Court of Justice, Civil Cassation Chamber, Verdict of March 14, 1983)); Arrubla Decl., DE 2345-1, at ¶ 98 ("It is worth noting that a change between the 1954 decision and that of 1999 is that in the latter the victim is not required to prove the causal link, which does not mean that this does not exist between the hazardous activity and the damage, but rather that it is sufficient for the victim to demonstrate the hazardous activity carried out by the defendant and the damages suffered by the victim."). Under the proper standard, Plaintiffs need only show that they suffered "damage that is characteristic of the risk such activity entails." Arrubla Decl., DE 2345-1, at ¶ 99. If Plaintiffs can show their decedents were killed by the AUC, as Plaintiffs' Proposed Instruction 16 requires, then Plaintiffs have carried their burden to show the required nexus for their hazardous activity claims. Even if Chiquita's expert were correct that Article 2356 hazardous-activity claims carry the same nexus requirement as Article 2341 negligence-style claims, this would not mean that but-for causation applies to Plaintiffs' hazardous-activity claims, since the Court has already ruled that but-for causation does not apply to Plaintiffs' negligence-style Article 2341 claims. DE 3238 at 77.

(12) **"Further, the participation of the victim or a third party, when his/her actions are the true cause negates any liability of the defendant."** This misstates the law and is confusing and prejudicial. Chiquita misleadingly

16

quotes Justice Arrubla out of context. In context, the quoted excerpt is discussing extraneous cause, which is an **affirmative** defense. *See* Rueda Decl., DE 3572-2 ¶ 30; Santos Ballesteros Decl., DE 3574-4 ¶ 70; Ex. 5 at 22. If the Court were to instruct the jury on any affirmative defense, it should instruct the jury that Chiquita bears the burden of proof. Moreover, an extraneous cause must be "unforeseeable, irresistible, and external." Rueda Decl., DE 3572-2, ¶ 35. A defendant that conducts a hazardous activity that foreseeably enables terrorist violence cannot claim extraneous cause and is liable to the victims of that violence. *See* Ex. 6 at 127-28 (finding oil pipeline operator liable under the hazardous-activity doctrine for damage caused by a terrorist attack on the pipeline and rejecting extraneous cause defense because the attack "should have been foreseen"). Accordingly, as it is undisputed that the AUC's violence and terrorism was well known, and it was thus foreseeable that it would use the resources Chiquita gave to it to further its terroristic goals, extraneous cause is not available to Chiquita as a defense. The Court should not give this instruction.

(13) **A plaintiff must independently prove damages by a preponderance of the evidence.** Harm is presumed for close family members of the victim of a murder. This is inclusive of parents, children, grandparents, grandchildren, and siblings. Tamayo Decl. DE 502-8 ¶ 30 ("the existence of moral damages is presumed as to the victims' spouse and close relatives"); Rueda Decl., DE 3523-11 ¶ 17; Ex. 6 at 141 ("moral damages may be presumed in relatives"). All Plaintiffs here fall under one of these categories; Defendant's instruction is therefore unnecessary and irrelevant to the jury's deliberations, as there is nothing for the jury to decide except the amount of the moral damages to which Plaintiffs are entitled. If the Court were to include Defendant's instruction, it should edit the language as follows:

> The burden of proof lies on Plaintiffs to prove moral damages by a preponderance of the evidence. Harm is presumed for a victim's spouse and close relatives such as parents, children, grandparents, grandchildren, and siblings.

(14) **Damages must be proven by a preponderance of the evidence and**

**must be certain, personal, and direct.** Any instruction on proving damages should be limited to Instruction 26. It will confuse the jury to include multiple instructions on damages. Regardless, Chiquita's instruction is incorrect and prejudicial. Chiquita's proposed instruction that damages must be "direct, that is the result of the defendant's conduct" would introduce the "but for" causation requirement this Court has already rejected. *See* Objection 11, *supra*. Chiquita's instruction that damages must be "personal" risks confusing the jury. As Chiquita otherwise acknowledges, a Plaintiff may recover damages for harm suffered by his or her decedent. This language is unnecessary. The Court should simply instruct the jury that each Plaintiff is entitled to damages that the Plaintiff suffered and that the Plaintiff's decedent suffered. Plaintiffs object to Chiquita's instruction that damages must be "certain" because it is confusing and misstates the applicable law. Like all other issues on which Plaintiffs bear the burden of proof, Plaintiffs need only prove damages by a preponderance of the evidence, as Chiquita separately (and confusingly) acknowledges in this exact sentence. Chiquita's instruction makes no sense – it is not apparent how a fact could be proved by a mere preponderance of the evidence to be "certain." Even to the extent Colombian law would hold a plaintiff to a higher burden in Colombian court, which it does not, the burden of proof is a procedural issue governed by the law of the forum. *See Shaps v. Provident Life & Accident Ins. Co.*, 317 F.3d 1326, 1330-31 (11th Cir. 2003).

5. **Remaining jury instructions issues.**

The parties previously identified six main points of contention on substantive issues affecting the jury instructions. See DE 3575 at 2-3. Two of these issues were previously argued at the March 25 pretrial conference – (1) the proper burden of proof on duress, and (2) whether the Court had dismissed Plaintiffs' Hazardous Activity claims – and the Court has resolved the dispute over the Plaintiffs' Hazardous Activity claims, see DE 3628. Accordingly, no further argument is necessary on these matters. The following four issues remain pending for argument:

  1. The parties dispute appropriate standard for the nexus element of Plaintiffs' Colombian Civil Code Article 2341 claims.

2. The parties dispute whether Plaintiffs must show Chiquita specifically assisted each killing to prove their Article 2341 claims, as opposed to showing Chiquita was aware the AUC was engaged in unlawful violence and that its payments contributed to the AUC's ability to engage in such violence.

3. The parties dispute whether it is appropriate for the Court to instruct the jury that that the party responsible "is the person or persons who actually killed that relative and not Chiquita."

4. The parties dispute whether Article 2341's fault element may be satisfied by showing Chiquita or its agents violated Colombian criminal law.

In addition, Chiquita has objected to six instructions that Plaintiffs proposed regarding the unusual background of this case and other procedural matters that the jury should not consider during its deliberations. The Court has resolved one of them (adding Preliminary Instruction 11 in the draft instructions sent to the parties on April 19). Disputes over the following five instructions remain:

- Instruction 3: Choice of Law
- Instruction 12: Joinder Not Required
- Instruction 13: Other Individuals
- Instruction 31: Other Defendants
- Instruction 32: Age of the Case

Otherwise, the parties' proposed instructions contain smaller disputes over the wording of the instructions the Court should deliver to the jury. Many of these disputes will likely be resolved through resolution of the four areas of dispute identified above, along with the duress burden-of-proof issue argued on March 15. As to the remaining disputes over the wording of the instructions, Plaintiffs will answer any questions the Court may have, but they will otherwise submit on their papers.

**6. Unresolved issues from Plaintiffs' Motion in Limine.**

Although Plaintiffs do not believe it is necessary to argue these issues at the April 22 hearing, Plaintiffs note that the following matters raised in Plaintiffs' Motion In Limine (DE 3489) have not been fully resolved:

19

1. Admissibility of Plea agreement.
2. Evidence of AUC's Annual Revenues as Defense to Causation
3. Evidence that Chiquita Acted on Legal Advice
4. Hearsay Statements Concerning Incidents Involving Law Enforcement and Military
5. Motion to Exclude Any Evidence or Argument as to How Plaintiffs Learned About or Joined the Lawsuit
6. Evidence of Other Potential Defendants

Plaintiffs will be prepared to answer any questions the Court may have on these topics, but otherwise will submit them on their papers.

Respectfully submitted,

*/s/ Victoria Mesa-Estrada*
Victoria Mesa-Estrada
FL Bar No. 76569
**Searcy Denney Scarola Barnhart & Shipley, P.A.**
2139 Palm Beach Lakes Blvd.
West Palm Beach, FL 33409
Tel: 561-686-6300
Fax: 561-478-0754
vmestrada@searcylaw.com
*On behalf of Non-Wolf Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF on April 20, 2024 which will automatically generate and serve Notices of Electronic Filing on all counsel of record.

*/s/Victoria Mesa-Estrada*