```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF FLORIDA
                       CASE NO. 08-md-01916
```

IN RE: CHIQUITA BRANDS,          West Palm Beach, Florida
INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND           April 25, 2024
SHAREHOLDERS DERIVATIVE
                                 8:57 a.m. - 3:28 p.m.

                                 Volume 2
                                 Pages 1 - 164
--------------------------------------------------------

```
                       JURY TRIAL DAY 2
            BEFORE THE HONORABLE KENNETH A. MARRA
                 UNITED STATES DISTRICT JUDGE
```

APPEARANCES:

FOR THE PLAINTIFF(S):   JOHN SCAROLA
                        VICTORIA MESA-ESTRADA
                        BORIS ZHADANOVSKIY
                        MARIANO GARCIA
                        Searcy Denney Scarola Barnhart & Shipley
                        2139 Palm Beach Lakes Boulevard
                        West Palm Beach, FL 33402-3626
                        _scarolateam@searcylaw.com
                        vmestrada@searcylaw.com

                        MARCO SIMONS
                        MARISSA VAHLSING
                        RICHARD L. HERZ
                        WYATT GJULLIN
                        EarthRights International
                        1612 K. Street, NW
                        Suite 800
                        Washington, DC 20006
                        marco@earthrights.org
                        marissa@earthrights.org
                        rick@earthrights.org
                        wyatt@earthrights.org

                        JONATHAN C. REITER
                        Jonathan C. Reiter Law Firm, PLLC
                        350 Fifth Avenue
                        Suite 6400
                        New York, NY 10118
                        jcreiter@jcreiterlaw.com

```
APPEARANCES: (Continued)

FOR THE PLAINTIFF(S):    WILLIAM ROBERT SCHERER, III
                         Conrad & Scherer, LLP
                         633 S. Federal Highway
                         4th Floor
                         Fort Lauderdale, FL 33301
                         wrs3@conradscherer.com

                         ERIC JAMES HAGER
                         Conrad & Scherer LLP
                         Edificio Officenter, Oficina 304
                         Avenida Pampite S/N y Chimborazo -
                         Cumbay
                         Quito 170901
                         ehager@conradscherer.com

                         TERRENCE P. COLLINGSWORTH
                         Conrad & Scherer, LLP
                         1156 15th Street, NW, Suite 502
                         Washington, DC 20009
                         tc@iradvocates.org

                         NICHOLAS J. JACQUES
                         Cohen Milstein
                         1100 Fifth Floor
                         Washington, DC 20005
                         njacques@cohenmilstein.com

                         LESLIE KROEGER
                         Cohen Milstein Sellers & Toll PLLC
                         11780 US Highway 1, Suite 500N
                         Palm Beach Gardens, FL 33408-3042
                         lkroeger@cohenmilstein.com

                         JAMES KELLOGG GREEN
                         James K. Green
                         222 Lakeview Avenue
                         Suite 1650 Esperante
                         West Palm Beach, FL 33401
                         jkg@jameskgreenlaw.com
```

```
FOR THE PLAINTIFF(S):   WILLIAM J. WICHMANN
                        12 SE 7th Street
                        Suite 609
                        Fort Lauderdale, FL 33301
                        Email: wwichmann@me.com


FOR THE DEFENDANT(S):   MICHAEL L. CIOFFI
                        FRANK A. DANTE
                        MELISSA FUNDORA-MURPHY
                        SERENA GOPAL
                        MICHAEL STOOLMAN
                        Blank Rome Comisky & McCauley LLP
                        1700 PNC Center
                        201 E. Fifth Street
                        Cincinnati, OH 45202
                        cioffi@blankrome.com
                        dante@blankrome.com
                        mfmurphy@blankrome.com
                        serena.gopal@blankrome.com
                        michael.stoolman@blankrome.com


REPORTED BY:            JILL M. WELLS, RMR, CRR, CSR
                        Official Court Reporter
                        400 N. Miami Avenue
                        Miami, FL 33128
                        jill_wells@flsd.uscourts.gov
```

```
 1    (Case called to order of the court at 8:57 a.m.)

 2         THE COURT:  Good morning.  Back on the record.  I

 3    wanted to ask counsel for both sides if you -- having gone down

 4    yesterday morning to the jury room and made my pitch to them,

 5    whether you thought it was even worth doing that again or

 6    whether it was just hand out the questionnaires and go from

 7    there.  If you want to talk among yourselves, that's fine, but

 8    I wasn't sure if it made any difference.

 9         MR. CIOFFI:  My view, Judge, is it makes absolutely no

10    difference if we are there.  I do think it makes a difference

11    if you are there.  I think that's a really nice touch, and I

12    think it -- you did a great job of sort of inspiring the

13    jurors -- because it's a long day, and they have to do a lot of

14    waiting around and difficult things -- and explaining it's a

15    civic duty.  I think if you'd like us to go down, fine.  I am

16    not sure we added much to it.

17         THE COURT:  Okay.  But you think I should try that

18    again?

19         MR. CIOFFI:  Yes, sir, I do.

20         THE COURT:  You thought it was helpful, to whatever

21    extent it might have been?

22         MR. CIOFFI:  I thought it was helpful.  I thought the

23    jurors seemed, to me, to be receptive to it and appreciated it,

24    that kind of attention.

25         THE COURT:  Is this 5 and 0 or 6 and 0?
```

1          MR. SCAROLA:  I agree, your Honor.  I think that the

2     Court's effort to inspire the jury to make the sacrifices

3     necessary certainly can't hurt, and probably helped.

4          I do have one procedural suggestion, and that is that

5     if jurors have not indicated that they have a hardship that

6     they want to talk about, it's probably not necessary to bring

7     them back into the courtroom at that point.  We could excuse

8     them until tomorrow, we deal only with the people who have

9     indicated that they have hardships, and not give everybody else

10    a second chance to rethink the hardship issue.

11         But one thing that would be helpful is to tell them

12    during the course of those initial comments that one of the

13    factors the court will consider is whether they will be

14    compensated during the course of their jury service, and if

15    they don't know that, they should take the time as quickly as

16    possible to find that out, if it's possible for them to find

17    out.

18         THE COURT:  Okay.  So you are suggesting that we

19    excuse those who say they don't have a problem and not even

20    bring them up here to further -- that was going to be my second

21    question to you was, it seemed as if both sides had no problem

22    excusing whoever said they couldn't do it.

23         MR. SCAROLA:  Yes, sir.

24         THE COURT:  And I was trying to spend a great deal of

25    time trying to rehabilitate, I guess, some of them so that

1  maybe they, despite their initial reaction, concluded, well,

2  maybe I can do it.

3        MR. SCAROLA:  I think you were successful in doing

4  that on a couple of occasions.

5        THE COURT:  A couple.  We spent a lot of time for

6  maybe one or two additional jurors, and I am not sure it was

7  worth taking the time, since both of you pretty much agreed if

8  they claim they have a hardship, let's let them go, and maybe

9  we can save a lot of time, as opposed to going through all

10  their hardships, actually talking about some of their

11  background.  But I know you want to see their surveys or

12  questionnaires overnight before we start excusing people.

13        So I was just wondering if you thought we might save

14  some time by not having me delve into their hardships so

15  critically and just say, well, we will just let anybody go who

16  claims they have a hardship.  But I hate to just do that.

17        MR. SCAROLA:  Your Honor will make that decision after

18  you see how many Hs appear in the upper, right-hand corner.

19        MR. CIOFFI:  Judge, the only problem I see with that

20  procedure is it delays the discussion about hardship until

21  tomorrow.  Sooner or later, the jurors are going to be asked,

22  whether we do it during voir dire or you do it at some point in

23  time, about hardship, even if they pass today.  And they are

24  going to articulate that tomorrow.

25        So I am not in favor of delaying that conversation

1   until tomorrow.

2          THE COURT:  I didn't think Mr. Scarola was suggesting

3   that.  I thought he was suggesting excuse those that say they

4   don't have a hardship and then just bring up the people that

5   say they do have a hardship and speak to them.

6          MR. SCAROLA:  Yes, that was my suggestion, your Honor.

7          MR. CIOFFI:  What I am saying is tomorrow, some of

8   those who haven't been questioned are going to be raising

9   hardships at the last minute.

10          THE COURT:  You think that they are going to --

11          MR. CIOFFI:  Yes.

12          THE COURT:  After having gone home and thought about

13   it, they are going to come back tomorrow and say, you know

14   what, I really do have a hardship.

15          MR. SCAROLA:  That's going to happen anyway.

16          MR. CIOFFI:  Well, exactly, but that's after learning

17   it's six weeks and maybe longer, and -- which a lot of them

18   didn't get down there, it seemed to me.

19          THE COURT:  Well, I only remember one who said she

20   didn't realize it was six weeks.

21          MR. CIOFFI:  I think we ought to deal with the problem

22   now head-on.

23          THE COURT:  All right.  Well, we can discuss that

24   later.  But so the consensus is I should go back down there.

25   Do you both want to come down or do you want to just let me go?

```
 1              MR. SCAROLA:  I am happy to let you go.

 2              MR. CIOFFI:  Or to go.

 3              MR. SCAROLA:  Or to go, whichever works, either way.

 4              THE COURT:  I will leave that to you whether you want

 5    to come or not.  So I am not going to prevent either or both of

 6    you from coming.  We are not going to have just one of you.

 7    But if you both want to come, fine.  If you both think it's

 8    unnecessary, I will just go by myself.

 9              MR. SCAROLA:  Mr. Cioffi and I will work on number 6.

10              THE COURT:  All right.  So I am going to head down

11    there, and -- we will see if they are ready.

12              MR. SCAROLA:  One issue that we should bring to the

13    court's attention before you go down.

14              THE COURT:  Okay.  Yeah.  Go ahead.

15              MS. KROEGER:  Leslie Kroeger, Cohen Milstein.  Your

16    Honor, when I went back --

17              THE COURT:  Get near a microphone, please.

18              MS. KROEGER:  Leslie Kroeger with Cohen Milstein.

19              When I went back to the office last night after court,

20    one of my associates advised me she had just been called for

21    jury duty.  She's downstairs.  I told her when she checked in,

22    she should privately, quietly, if she could, let them know that

23    her firm is involved in the case in front of you, and that

24    might just let her exit the building.  It did not.

25              So she texted me.  She's sitting by herself, not
```

```
 1    speaking to anyone.  I don't know if there are other jurors --

 2    juries that are being picked today.

 3              THE COURT:  I don't believe so.

 4              MS. KROEGER:  Her name is Rachel Flanagan.  She is in

 5    the assembly room.

 6              THE COURT:  Okay.  You both would agree that we should

 7    just excuse her?

 8              MS. KROEGER:  I mean, I'd love to have her on the

 9    jury, but...

10              MR. SCAROLA:  After she has an opportunity to talk

11    about how trustworthy I am, your Honor.

12              THE COURT:  Okay.  So you both agree we could just

13    excuse her, not have her --

14              MR. SCAROLA:  Yes.

15              THE COURT:  -- waste time filling out a questionnaire?

16    Mr. Cioffi, I assume you agree to that?  Yes?

17              MR. CIOFFI:  Yes.

18              THE COURT:  All right.  One thing that I should have

19    said to the jurors yesterday which I neglected to, I don't know

20    why I overlooked it, was to instruct them not to try and do any

21    research and look up anything about the case, and I neglected

22    to say that.  I hope that doesn't come back to haunt us

23    tomorrow when I am going to have to ask them tomorrow when they

24    come back whether anybody has read or heard anything about the

25    case.  I will do that with everybody.  But hopefully they will
```

```
 1    not have tried to do their own investigation.  But I will.

 2               MR. SCAROLA:  Your Honor, I believe there was a Daily

 3    Business Review article about the case in general that spoke

 4    very flatteringly of Mr. Cioffi.  But they do need to get a

 5    general instruction to avoid any media attention to this

 6    matter.

 7               THE COURT:  I agree, and I apologize for overlooking

 8    that yesterday.

 9               I don't think there are many people who are going to

10    be checking the Daily Business Review.

11               MR. SCAROLA:  Probably not many, but possibly some.

12               THE COURT:  I don't discount the possibility, but I

13    don't think it's very likely.  And I looked in the Palm Beach

14    Post today, and I didn't see anything in the Palm Beach Post,

15    so I was happy to see that.

16               Did you want to say something, Mr. Cioffi?

17               MR. CIOFFI:  I said I don't know what the Daily

18    Business View [sic] is.  And I certainly didn't give any

19    comment or interview, and our policy is never to comment on

20    pending litigation.

21               THE COURT:  All right.  Are they ready down there?

22               THE DEPUTY CLERK:  Yes.

23               THE COURT:  Okay.  So I am going to head down.  If you

24    want to join me, fine.  If not, then I will do it on my own.

25               MR. CIOFFI:  Judge, it seems like maybe that's --
```

1        MR. SCAROLA:  Thank you.

2        THE COURT:  Thank you.  We will see you downstairs.

3        (Recess taken 9:07 am. through 9:31 a.m.)

4        (The following takes place in the jury assembly room;

5    Jack Scarola and Michael Cioffi present.)

6        THE DEPUTY CLERK:  This morning before we get started

7    I am going to introduce you to Judge Marra.  He's going to come

8    in and say a few words to you.  Okay?

9        THE COURT:  Good morning, ladies and gentlemen.

10   Welcome.  My name is Kenneth Marra.  I am the judge that will

11   be presiding over the case for which you have been called here

12   this morning, and I wanted to just greet you before we brought

13   you up to the courtroom to give you a little background about

14   how important it is for you to be with us, how important it is

15   to have members of the community act as jurors in our judicial

16   system, and how important it is to have members of the

17   community make sacrifices of their time to serve as jurors in

18   our system of justice.

19        As you, I think, heard on a video a few minutes ago,

20   we need members of the community to help resolve disputes that

21   exist within our society.  We have a unique system in this

22   country of relying upon members of the community, citizens, to

23   listen to the facts that are presented in a case, to listen to

24   the law that applies in a particular case, and then to make

25   very difficult decisions as to whether a party should prevail

```
 1    in a case or not.
 2           Now, the case for which you have been called is a
 3    civil case.  It's not a criminal case.  It is a civil case
 4    between individuals and a company by the name of Chiquita
 5    Brands International, Inc., and a number of individuals.
 6           And the two gentlemen that have joined me, one
 7    represents the individuals who are suing Chiquita, and the
 8    other gentleman is representing Chiquita.  There are a lot of
 9    other lawyers up in the courtroom.  So I just have one from
10    each side.  I am going to have each of them introduce
11    themselves to you now.
12           Mr. Scarola.
13           MR. SCAROLA:  Thank you very much, your Honor.
14           Good morning, ladies and gentlemen.  I hope you are
15    able to hear me down at that end.  My name is Jack Scarola, and
16    I have the privilege and the responsibility of sharing the task
17    of representing the survivors of ten individuals who were
18    killed and have brought claims as a result of their deaths.
19           As his Honor has told you, I am one of a team of
20    lawyers.  Multiple attorneys have brought claims on behalf of a
21    variety of survivors of the decedents, and I am local counsel
22    here in Palm Beach County.  I practice with a law firm called
23    Searcy, Denney, Scarola, Barnhart & Shipley, and we will have
24    the opportunity to introduce to you other members of the team
25    later on.
```

```
 1            Thank you very much, your Honor.  I thank you in
 2   advance for the sacrifices that you are making to be here.
 3   Thank you very much.
 4            THE COURT:  Mr. Cioffi.
 5            MR. CIOFFI:  Thank you, Judge.
 6            Good morning, ladies and gentlemen.  My name is
 7   Michael Cioffi.  I represent Chiquita Brands International.
 8   First and foremost, thank you for your service.  I believe next
 9   to military service, this is really the most important service
10   citizens can give to the community, because without you we
11   don't really have a system of justice.  We don't have a way to
12   resolve our disputes.  And the founders of this country gave
13   you the power to do that, and that's so important.
14            With respect to the facts.  We disagree with the
15   plaintiffs.  I can tell you, it's a privilege and an honor to
16   represent Chiquita, because Chiquita was not responsible for
17   these killings.  And if you join our jury, you will hear a lot
18   more about that.
19            THE COURT:  Now, we are not here now to resolve who is
20   correct on the merits of the case.  So, again, both attorneys
21   have given their little spiel about their respective positions,
22   but if you are on the jury, you will have plenty of time to
23   listen to the evidence and listen to the arguments and then
24   come to a resolution.
25            One of the things that I wanted to in advance tell you
```

1    is again how important it is for us to have members of the

2    community make these important decisions.  And in this case,

3    it's going to require a significant sacrifice of your time.

4    This is not a simple one-day, five-day, ten-day trial.  This is

5    going to require multiple weeks to resolve this case.  And so

6    we are going to need some of you to make significant sacrifices

7    of your time in order to resolve the case.

8           Now, we understand that it may present a hardship for

9    many of you, if not most of you, to serve for multiple weeks.

10   We are talking in the number of, approximately, four to six

11   weeks for this case to be resolved.  We are going to provide

12   you with a survey, or a questionnaire, to ask you to fill out

13   in order to assist us in going through this jury selection

14   process and hopefully expedite the decision-making.

15          Yesterday we had a group of individuals that we went

16   through this process with.  There are some that are still

17   remaining to be considered, and we are hoping, with this group,

18   to get enough from yesterday and today to be able to select the

19   jury tomorrow.  Again, we understand it may present a hardship

20   for many of you to serve for that period of time.  So in the

21   questionnaire, you can tell us why it would be a hardship for

22   you to serve for the length of time we may need you.

23          I emphasize the word "hardship" rather than

24   "inconvenience."  We understand it will be inconvenient for you

25   to be here today, tomorrow, or even a week or two, never mind

```
 1   six weeks, but it has to be a hardship rather than an

 2   inconvenience.

 3         If, for example, you are not going to be compensated

 4   for six weeks and you cannot financially afford to miss six

 5   weeks of pay, that's a legitimate reason to give us as why you

 6   couldn't be with us.  That would be a hardship.  But if you are

 7   going to be compensated by your employer for the period of

 8   time, then that would probably not constitute a hardship.  It

 9   may be a hardship for your employer, but not necessarily for

10   you personally.

11         And also let me point out that you cannot be

12   terminated or punished in any way by an employer for serving on

13   a jury.  It's against the law to terminate or have any adverse

14   impact on your employment for serving on a jury.  So don't be

15   concerned that, oh, I am going to lose my job if I am gone for

16   six weeks.

17         Anyway, I want to thank you for being here.  We are

18   going to give you the survey, the questionnaire, to fill out.

19   It will take some time.  Once you fill them out, we are going

20   to make copies, distribute them to the lawyers, and then we

21   will call you up to the courtroom and discuss the hardship

22   issues that you presented and decide whether or not we are

23   going to excuse you for your hardship.

24         Those of you who can serve, we will probably call you

25   back tomorrow with the group that we have from yesterday and
```

1   make, hopefully, final decisions as to who should serve on this

2   case.

3        So thank you for your attention.  Thank you for your

4   service.

5        And one other thing.  Please do not attempt, on any

6   electronic device you may have, attempt to try and research

7   this case or do any investigation about this case.  You cannot

8   be influenced in any way by any type of media coverage

9   regarding this case.

10       In you have a hardship, if you believe you have a

11   hardship, on the questionnaire, put an H on the top so it will

12   be easier for us to flag.  And if you are not sure whether or

13   not you will be compensated by your employer for the entire

14   time you are serving on the jury, please attempt to investigate

15   that as soon as possible.  It's going to be a couple of hours

16   before we speak to you in the courtroom.  So you should have

17   enough time to call your employer and find out if you will be

18   compensated if you are on the jury.

19       So thank you again for your attention, thank you for

20   your service, and we will see you probably in a couple of hours

21   up in the courtroom.

22       (Transcript continues on next page.)

23

24

25

```
 1                (The following takes place in open court.)

 2           THE COURT:  I think there's some disagreements

 3   regarding demonstratives.  Both sides want to use, or just one

 4   side?

 5           MR. CIOFFI:  We have objections to theirs.  I believe

 6   they may have objections to ours.  So that's what's before you,

 7   your Honor.

 8           THE COURT:  Are there objections to all of them or

 9   just some of them?

10           MR. CIOFFI:  For the defendants, we have objections to

11   some, not all.

12           THE COURT:  Okay.

13           MR. SCAROLA:  We have objections to some, not all.

14           THE COURT:  All right.  Why don't we start with the

15   plaintiffs' demonstratives and what the objections are.

16           MR. SCAROLA:  May I approach to provide the court with

17   a copy?

18           THE COURT:  Yes, please.

19           MR. SCAROLA:  Okay.

20           MR. CIOFFI:  Judge, may I approach to do the same, as

21   well as a -- portions of the transcript of Ms. Howland's

22   deposition which are the subject of several objections we have

23   indicated in the demonstratives.

24           THE COURT:  All right.  So where are we starting?

25           MR. CIOFFI:  Judge, there aren't page numbers on
```

```
 1   these, but the first one is this one, which is -- sorry, may I
 2   approach?
 3         The first one is Chiquita didn't care how the AUC used
 4   Chiquita's, and then a dollar sign, and it's -- it represents
 5   to be from page 150, lines 15 to 23.
 6         THE COURT:  Okay.  So it's the one that says Barbara
 7   Howland, Volume 1, June 27, with the lines 150 -- page 150,
 8   lines 15 through 23, is that the one you are talking about?
 9         MR. CIOFFI:  Yes, sir.
10         THE COURT:  All right.  And the basis for your
11   objection is?
12         MR. CIOFFI:  It is that they delete key portions of
13   this testimony, which not only mischaracterizes the testimony
14   but flips it to mean the opposite of what it really says.
15         So specifically, Judge, if you look at page -- I
16   handed to you 150 of the transcript.  If you look at the
17   demonstrative, the plaintiffs delete lines 19 and 20.
18   Specifically, the testimony is, "I don't think Mr. Castano ever
19   told Chiquita what he would do with the money or how he would
20   spend it."
21         Then what's deleted is, "In fact, the fact, that he
22   extorted it from Chiquita, he did it under what we believe was
23   a credible and viable threat."
24         Then they include the next sentence, "If he went out
25   and bought his mother a diamond ring or if he went out and
```

1    bought arms for his paramilitary, it didn't really matter to

2    Chiquita."

3           And then they delete the penultimate explanation of

4    that, which is, "Chiquita was reacting to a threat that we had

5    to pay, or else."

6           Our objection is if they are going to use this quote,

7    they need to use the entire quote, and cannot manipulate the

8    evidence, withhold part of the evidence to paint a

9    misrepresented picture of the evidence to the jury.  So that's

10   our deletion.

11          We talked about this a little bit yesterday in terms

12   of withholding evidence, et cetera.  If they are going to cite

13   this evidence, they should cite the whole passage.

14          THE COURT:  All right.  Should we take them one at a

15   time, or how many more are there that you have?

16          MR. CIOFFI:  There are three or four more passages

17   like that.

18          THE COURT:  So this is -- all your objections relate

19   to deposition excerpts that you believe are not complete or --

20          MR. CIOFFI:  Properly cited and really, honestly,

21   manipulated to portray the opposite of what the witness really

22   testified to.

23          THE COURT:  All right.

24          MR. CIOFFI:  So maybe we deal -- we have three or four

25   categories, the Howland testimony which covers three or four or

1    five slides, I will cover all of those, and then maybe you want

2    to have a response.

3           So the next one is the next page which is at the

4    caption, it's Barbara Howland, Volume 1, June 27, 2018; 242, 10

5    through 19.

6           Here they do cite the whole passage.  Your Honor, our

7    objection to this particular passage is that the caption

8    mischaracterizes what the testimony is, and that is that

9    Chiquita knew the AUC used Chiquita's money to buy drugs and

10   weapons.

11          In the testimony I just cited from 150, it's clear

12   that the witness testifies she didn't know.  So if they are

13   going to use this particular passage, it's very important that

14   the first slide that we discussed include her testimony on this

15   point.

16          The next objection to the Howland slides, your Honor,

17   are the slides that are at -- the caption is Barbara Howland,

18   Volume 2, June 27, 2018, lines [sic] 387, line 23 through

19   page 388, line 7.

20          The objection here, your Honor, deals with an

21   objection that was made at the deposition, but also that what's

22   cited on these slides is a mischaracterization of what was

23   said.  So if you look at page 387 in the transcript I handed to

24   you --

25          THE COURT:  I'm sorry, where is it in the

1   demonstratives?

2        MR. CIOFFI:  It's the heading under Barbara Howland,

3   and the volume, page 387, line 23, page 388, line 7, "Chiquita

4   has no evidence of threats by the AUC."

5        THE COURT:  So what's your objection to this

6   particular demonstrative?

7        MR. CIOFFI:  Judge, if -- directing your attention to

8   387 of the transcript I handed to you.  So their demonstrative

9   begins with the quote at the bottom of page 387 which is by

10  Mr. Scarola, Topic Number 13.  Do you see that, Judge?  It's at

11  line 23, page 387.

12       THE COURT:  Yes.

13       MR. CIOFFI:  That's put onto the demonstrative.  But

14  what that is, is a repeat of a previous question which appears

15  on 387, line 5.  "Would you please list for me every direct

16  threat of violence that was made to Chiquita to coerce payments

17  to the AUC."

18       And, first of all, this repeats about an hour's worth

19  of testimony the day before.  But putting that aside, the

20  witness summarizes her prior answer in lines 11 through 21.

21       "Based on the research that I have done" -- she's

22  testifying as a 30(b)(6) -- "I believe that threats were made

23  on a regular basis to individuals, not all of whom I could

24  name, but who as -- who worked and/or were employed in some

25  fashion by Chiquita.  I think the record shows that the AUC was

1    an organization that used threats on a regular basis in order

2    to coerce payments.  And the persons that would be most

3    familiar with specifically the individual people who might have

4    been threatened would have been people that would have been in

5    Colombia."

6         Now, this is a 30(b)(6) and it's supplemented by

7    discovery and the requests for the names of these individuals,

8    et cetera, which we provided.  And she correctly identified who

9    has the information who are employees of the company.

10        But anyway, Mr. Scarola didn't like that answer, so he

11   asked it again, and then I object to it and say it's

12   repetitive, and it shouldn't be permitted.

13        So our first objection is, the next line of

14   question -- questioning and the selective inclusion of only

15   portions of her answers to a question she already thoroughly

16   answered is impermissible certainly in representing it to the

17   jury.

18        So our first objection is that with respect to

19   page 388, the objection I make that this is a repetitive

20   question should stand, and if they are going to use her answer

21   to that question, they need to use the answer at lines 11

22   through 21, on page 387 in which she answers it and identifies

23   the people.

24        Instead, if you look through the rest of their slide,

25   they selectively choose answers that she made without any

1      reference to her fuller answer on page 387 that I just cited to

2      you.

3             So, for example, on 389, they selectively include the

4      question and answer, "To whom was any direct" -- first of all,

5      when I had the question read back at line 9 on 389, she says,

6      "I have nothing further to add."  Because it's a deposition,

7      Mr. Scarola can keep going, and did keep going, and said, "To

8      whom was any direct threat made?"  I object again.

9             She answered the question.  And then she answers, in

10     light of her earlier answer on line 17, "I do not have the name

11     of the people."  But she explained who those people are and

12     where they are.  And also in our discovery responses, we told

13     them.

14            So this is an attempt to misrepresent the evidence,

15     something we heard about yesterday, to the jury, and it's just

16     not right.  It shouldn't be permitted.

17            THE COURT:  All right.  So let me ask you this.  Let's

18     assume they weren't using these demonstratives and Mr. Scarola

19     just got up in opening statement and said, ladies and gentlemen

20     of the jury, this is what we intend to prove during the course

21     of the trial.  We intend to prove that Chiquita's own

22     representative who gave a deposition as -- speaking on behalf

23     of the company said A, B, C, D, E, and just took out the

24     selected excerpts that are on the demonstratives.

25            And you felt he's not presenting the full picture to

1    the jury in opening statement.  And you get up and in the

2    middle of his opening and say, objection, Judge, he is

3    misrepresenting the evidence, and he's only giving portions of

4    the testimony and is misleading the jury.

5          So I am supposed to, in the middle of the opening,

6    say, well, let me -- let's have a sidebar, and show me the

7    depositions and show me the interrogatory answers, and, yes,

8    you are right, Mr. Cioffi; Mr. Scarola you can't say that.

9          I mean, how am I -- why shouldn't -- let's assume the

10   hypothetical, he doesn't use these demonstratives, he just says

11   that in opening; this is what we are going to show, and this is

12   what their representative said.  Would I be -- would it be

13   appropriate for me to interrupt and say, sustained, you can't

14   say that?

15         MR. CIOFFI:  It's really apples and oranges, Judge.

16   Two different things.  I think it is appropriate in opening

17   statement for counsel to take the risk if he or she wants to

18   represent we think the evidence is going to show and then not

19   prove it.  And, of course, that's what closing argument is for,

20   and I might even comment it in my opening.  But that's

21   different, and our objection is based on the fact you can't

22   misrepresent what's in a transcript to the jury.  Two different

23   things.

24         So we are objecting to the misrepresentation.  In

25   order for the demonstrative to be shown to the jury, it can be

1    what -- there could be statements -- and ours certainly have

2    them -- of what we believe the evidence will show, but when we

3    cite a transcript, we cite exactly what the witness says.  And

4    that's my objection.

5         So it's tied to something I think the court is getting

6    at.  And there's case law, and we can give you a couple of

7    cases, that Mr. Scarola just told us that Ms. Howland is going

8    to be their first or second witness next week.  She's here.

9    She can testify live.  And we think the appropriate ruling is

10   he can represent her testimony any way he wants and be held

11   accountable when she testifies and when I redirect her, but he

12   cannot show a demonstrative that miscites what she says in her

13   deposition.  That's the objection.

14        THE COURT:  Even if they call her in their case in as

15   their first witness, they can still use a 30(b)(6) deposition

16   for any purpose.  So I don't know what her answers are going to

17   be, if they are going to be consistent with what her deposition

18   is.

19        So they might have to resort to reading her deposition

20   or showing her deposition if they don't like the answers they

21   get or if they believe the answer she gives during the trial

22   are inconsistent with what she said in her deposition.  So I

23   don't know how it's going to play out.

24        MR. CIOFFI:  Our objection, though, is very specific,

25   and that is, if they are going to use deposition testimony and

1    cite a portion, they can't selectively omit four lines out of

2    ten which contradict exactly the inference they are trying to

3    present to the jury.  That's what's objectionable about the

4    first two objections I made about 150 and 387.

5         THE COURT:  Okay.  But that pretty much goes through

6    all of the slides that they are intending to use that take

7    excerpts from Ms. Howland's deposition.  That's pretty much the

8    same --

9         MR. CIOFFI:  Yes, they miscite it.  And she answered

10   something five or ten pages later and then they come back to

11   it, but they are not -- she's answering in light of that.  We

12   all know what happens in depositions, the witness refers back

13   and said, look, I have nothing to add to that, which is what

14   Ms. Howland did, but they want to take that latter portion

15   without including the first portion.  So that is exactly right,

16   your Honor, in terms of these objections.

17        THE COURT:  Okay.  So do we cover all of the ones that

18   relate to Ms. Howland's deposition?

19        MR. CIOFFI:  There is one more, Judge, that I want to

20   point out.  Again, it's done a couple of different ways to

21   misrepresent what she actually said.  So if you look at the --

22   420, lines 17 through 24, so the question there -- this

23   misrepresentation is a little bit different -- "Was it also

24   during the same period of time when payments were being made by

25   Chiquita to the AUC," then a parenthetical, "which Chiquita

1    understood were being used to buy drugs, buy weapons, and

2    provide for the needs of the AUC's paramilitary organization

3    that Chiquita was aware of the fact that the AUC was involved

4    in widespread acts of terrorism and violence against the

5    general population in the areas in which it was operating?"

6         The answer is, "Yes," but the answer was "yes" and to

7    a time frame, not to "which Chiquita understood were being used

8    to buy drugs, buy weapons, and provide for the needs of the

9    AUC's paramilitary operation," and that cannot be included

10   without including what we were discussing at page 150, 19

11   through 24.

12        So they set up this slide by, if you go back to 150,

13   deleting two key sentences which makes it clear that Chiquita

14   did not understand they were being used to buy drugs.  In fact,

15   that -- "the fact that he extorted from Chiquita, he did it

16   under what we believe were credible, viable threats, and

17   Chiquita was reacting to a threat that had to -- that it had to

18   pay, or else."

19        So it didn't understand what was being done, and the

20   "yes" appears to be "yes" to both parts of the question, and

21   again, that's a complete mischaracterization.

22        It certainly can be cured by not allowing these

23   selective references to the deposition and just having her

24   testify live, which we don't have any objection to, or if you

25   are going to permit her deposition to be used other than for

1    impeachment, to allow us to read the counter portions and give

2    the jury a complete picture.  But it really is improper in

3    these slides to give this misinterpretation,

4    mischaracterization of the evidence.  That's our objection.

5            THE COURT:  I think you suggested that, you know,

6    attorneys take risks when they make representations in opening

7    statement that they can't live up to.  And if he makes what you

8    are suggesting are misrepresentations to the jury in opening

9    about what Ms. Howland said and what the import -- the real

10   import of her testimony was, you know, and you show that this

11   was -- they just misrepresented everything to you, isn't he

12   taking a risk on that?

13           MR. CIOFFI:  Yeah, absolutely.  But, again, that's

14   part of the advocacy process.  That's different than saying,

15   hey, here is what she testified to.  That's our objection.

16   Yeah.  If it's the former, what you are describing, I will get

17   up, and maybe in my opening even or my closing say, look, here

18   is really what was said.  And certainly welcome that

19   opportunity.

20           THE COURT:  Okay.  So does that take care of the --

21           MR. CIOFFI:  Yes, on the Howland transcript.

22           THE COURT:  So why don't I hear from plaintiffs on

23   that, then we can move on to another subject after.

24           Mr. Scarola.

25           MR. SCAROLA:  Your Honor, I cannot allow to pass

1   without comment something that Mr. Cioffi said early on in his

2   presentation to the court.  He said, "This is an attempt to

3   misrepresent evidence, something we heard about yesterday in

4   front of the jury."

5        The accusation of intentional misrepresentation of

6   evidence is an extremely serious accusation.  Mr. Cioffi's now

7   tying that in to the comments that we spent some considerable

8   time talking about yesterday is very troubling to me.  And I

9   would ask the court to instruct Mr. Cioffi that that kind of

10  conduct is entirely inappropriate and that it would be

11  extremely prejudicial were he to make any such suggestion

12  again, either inside or outside the presence of the jury.

13       But let me address the substance of Mr. Cioffi's

14  comments.  What appears in the demonstratives that we have

15  looked at are exact quotes of the corporate representative

16  speaking on behalf of Chiquita.

17       Did she, at various times, from time to time, talk

18  about what we were doing was as a result of extortion?  The

19  answer to that question is, every chance she got, she tried to

20  throw in something about extortion, as to which she

21  acknowledges in her deposition she has no evidence whatsoever,

22  neither in her capacity as a 30(b)(6) witness and certainly not

23  in her capacity personally.

24       The fact that Ms. Howland was identified as a 30(b)(6)

25  witness does not provide an opportunity for her to introduce

 1    hearsay, secondhand knowledge, or self-serving statements on

 2    behalf of the corporation.

 3         We get to introduce any statements that are admissions

 4    against interest on the part of the corporate representative,

 5    but every time we introduce a -- an admission against interest,

 6    they don't have an opportunity -- respectfully, I suggest -- to

 7    introduce all of the self-serving hearsay statements that the

 8    30(b)(6) witness attempted to make.

 9         This is opening statement.  We are permitted to draw

10    reasonable inferences from the evidence that has been gathered

11    during the course of these proceedings, and which we reasonably

12    anticipate will be presented before the jury.

13         Barbara Howland's deposition has been reviewed by your

14    Honor.  You have ruled on objections to Barbara Howland's

15    deposition.  The sections that are quoted are exactly quoted

16    from sections that your Honor has agreed can be admitted before

17    the jury and which we intend to admit before the jury, whether

18    Barbara Howland does or does not testify live, because as your

19    Honor has observed, we can use a 30(b)(6) deposition for any

20    purpose.

21         If your Honor requires something beyond that response,

22    I am happy to address these excerpts individually, but I

23    suggest that those comments cover all of the objections that

24    have been made.

25         THE COURT:  All right.  Thank you.

```
 1              MR. SCAROLA:  Thank you, your Honor.

 2              THE COURT:  What's the next category or specific

 3    objection?

 4              MR. CIOFFI:  Your Honor, there are five or six

 5    miscellaneous slides that we are going to object to.

 6              Judge, if I could just have one response to what

 7    Mr. Scarola said.  And the record speaks for itself.  It's not

 8    what she said.  It's selective parts of what she said in which

 9    sentences in the middle of ten lines are taken out.  So that's

10    our objection.

11              THE COURT:  Well, I didn't comment on your statement

12    about misrepresentations about which we heard yesterday.  I

13    didn't say anything.  I was going to let it pass, but it did

14    seem that that was uncalled for, since you are suggesting that

15    Ms. Goldberger was talking about Mr. Scarola yesterday, and so

16    we heard about how they are misleading -- they mislead people.

17    And so it was a little too close for comfort, as far as I was

18    concerned, that comment.

19              MR. CIOFFI:  No, I understand, and -- I understand,

20    but just so the record is clear, yesterday I said on the

21    record, I thought she was talking about lawyers in general and

22    misrepresentation.  And that's how I was referring to it, in

23    that context.

24              I mean, it clearly is, when you take out two lines --

25    four lines in the middle of ten.  I submit to you that's a
```

```
 1    misrepresentation.  I understand your point, Judge.

 2              THE COURT:  Okay.

 3              MR. CIOFFI:  Yes, sir.

 4              THE COURT:  So I just would ask you to not make this

 5    personal here.

 6              MR. CIOFFI:  It wasn't personal.  I was really talking

 7    about -- what I heard is a criticism of lawyers in general.

 8              THE COURT:  Well, that's what I heard too, but I --

 9    your statement tying it to these specific slides kind of makes

10    it more personal than general.  So anyway...

11              MR. CIOFFI:  Understood.  But that's how I meant it.

12              THE COURT:  Okay.

13              MR. CIOFFI:  So the next one is -- this slide that's

14    at the top says "Chiquita funded foreign terrorists."  I am

15    going to hold it up.  Not that you could see it from there,

16    but...

17              THE COURT:  Okay.  I finally found it.

18              MR. CIOFFI:  Judge, we object because this violates

19    the court's ruling in 3620, paragraph B.  The court said,

20    "Thus, plaintiffs may not assert before the jury that Chiquita,

21    by its guilty plea, admitted to proving material support to the

22    AUC.  Plaintiffs may, however, express to the jury in opening

23    statement and argue to the jury in closing that based upon

24    admitted facts and other evidence that plaintiffs believe they

25    will be able to prove in opening, and that they have proven in
```

1    closing, that Chiquita's actions constituted providing material

2    support to or financing terrorism."

3          Our objection is that the evidence they cite is a

4    statement by Secretary Colin Powell on September 10, 2011,

5    which is pure hearsay.  It's not an admitted fact.  It's not

6    other evidence.  It's evidence that can't come in, in the case.

7    And, therefore, it cannot be used on the slide.

8          THE COURT:  I think you said 2011.  Was it 2001?

9          MR. CIOFFI:  2001, I'm sorry, Judge.  It cited the

10   date in the slide.  So we think that violates --

11         THE COURT:  Let me ask Mr. Scarola --

12         MR. CIOFFI:  There are a few more I think we can

13   handle.

14         THE COURT:  Okay.  Go ahead.

15         MR. CIOFFI:  The next one is this slide which is

16   called -- just simply has "People or profits?"  We think that

17   is overly argumentative, even with a liberal interpretation of

18   opening statement as argument, and that that's more appropriate

19   on closing argument.

20         The next objection, Judge, is this slide which says

21   "Chiquita's global banana business and its history in

22   Colombia."  Again, the court ruled on this in 3629 in excluding

23   Professor Karl.  This attempts to slip in, into opening

24   statement, her testimony about the history, which is entirely

25   hearsay, as the court noted in 3620, but more importantly, that

```
 1    prior history prior to the time frame we are talking about in

 2    this case is irrelevant and, arguably, prejudicial as well,

 3    Judge.

 4              THE COURT:  I'm sorry, I am trying to find that one.

 5    Is it in the earlier portion or towards the end?

 6              MR. CIOFFI:  Which are you looking for?

 7              THE COURT:  The one you just referenced.

 8              MR. CIOFFI:  I don't know.  There are no page numbers.

 9    I am holding it up.

10              MR. SCAROLA:  May I see which one you are holding up?

11              THE COURT:  "Chiquita's global banana business and its

12    history in Colombia."  Is that what --

13              MR. CIOFFI:  Yes.  I think it's arguably relevant to

14    talk about Chiquita's global banana business, but its history

15    in Colombia prior to the time frame we are talking about.  Now,

16    it is a long time ago, but from 1988 forward, I think doesn't

17    violate 3629, but prior to that does.

18              MR. SCAROLA:  Are we just talking about the

19    demonstratives or what counsel anticipates I might say?  I

20    thought we were just talking about the demonstratives.

21              THE COURT:  That's what I thought as well.

22              MR. CIOFFI:  It's all I know now.

23              THE COURT:  All right.  Go ahead.  What's next?

24              MR. CIOFFI:  The next one is the map of the

25    Philippines.  Again, that is a relevancy argument.  We are not
```

1    familiar that the Philippines is relevant in this particular

2    case.

3              THE COURT:  Okay.

4              MR. CIOFFI:  The next slide we object to is Chiquita's

5    business decision to stay in harm's way.  Again, our position

6    is that that's argumentative.

7              THE COURT:  Let me find that one, please.

8              Okay.  I got it.

9              MR. CIOFFI:  Overly argumentative.

10             The last one I will address, and then Ms. Murphy will

11   address the three --

12             THE COURT:  The what?

13             MR. CIOFFI:  But the first one --

14             THE COURT:  I'm sorry, what did -- you said Ms. Murphy

15   is going to address something.

16             MR. CIOFFI:  We could stop here, and then she is going

17   to address slides relating to the three Jinete Polo children.

18   That slide deck.  The photographs that you have.

19             THE COURT:  Okay.

20             MR. CIOFFI:  So this is "Colombia's other armys."

21   It's a quote -- or slide that is apparently based on the

22   economist.  The same objection is with respect to the Colin

23   Powell cite that is pure hearsay and is not a basis for a slide

24   in opening argument.

25             THE COURT:  Is that it?

```
 1              MR. CIOFFI:  That's it.

 2              THE COURT:  For you?

 3              MR. CIOFFI:  Yes.

 4              THE COURT:  Okay.  So --

 5              MR. CIOFFI:  You want Ms. Murphy to speak now, or

 6    address those?

 7              THE COURT:  Why don't we wait and deal with the ones

 8    you focused on, then we can talk about the photograph.  Okay?

 9              All right.  Mr. Scarola, what about the statement from

10    Colin Powell, how is that admissible?

11              MR. SCAROLA:  That was the official designation, the

12    official announcement of the AUC's designation as a foreign

13    terrorist organization, your Honor.

14              It is reasonably anticipated that we are going to be

15    able to prove that Chiquita knew of that announcement.  So we

16    expect that it is going to come in as notice to Chiquita of the

17    nature of the entity with which they were choosing for years to

18    do business.

19              THE COURT:  Okay.  And without highlighting any

20    strategy, how do you intend to show that they knew about this

21    designation?

22              MR. SCAROLA:  Through the testimony of their own

23    witnesses.

24              THE COURT:  Okay.  So is that something that you

25    are -- has already been established in deposition testimony, or
```

1   is this something that you are anticipating you are going to be

2   able to establish?

3          MR. SCAROLA:  It is something that I reasonably

4   anticipate we are going to be able to establish.

5          THE COURT:  Okay.  All right.  And then what about the

6   others that Mr. Cioffi just mentioned?  What about this map of

7   showing the Philippines?  How is that relevant?

8          MR. SCAROLA:  The factual proffer identifies all of

9   the areas in which Chiquita was doing business.  And it

10   includes each of the countries that are included on that map,

11   including the Philippines, and it is the plaintiffs' contention

12   that Chiquita had reasonable alternatives to doing business in

13   Colombia because they had established operations in each of

14   those other countries, each of which, according to the factual

15   proffer, accounted for 15 percent of Chiquita's overall

16   business.

17          So --

18          THE COURT:  Okay.

19          MR. SCAROLA:  -- just geographically orienting the

20   jury as to what we are talking about.

21          THE COURT:  Okay.  I understand your position.  What

22   about the other slides that Mr. Cioffi mentioned?

23          MR. SCAROLA:  I have difficulty understanding how a

24   slide that identifies the topic that I am going to be talking

25   about during that portion of my opening statement could

```
 1       possibly be objectionable.  That just slipped right past me.

 2              So if the court has some concern as a result of

 3       Mr. Cioffi's comments that you'd like me to address, I would be

 4       happy to do that, but right now, I don't know what the

 5       counter-argument is.

 6              THE COURT:  Okay.  Thank you.

 7              MR. SCAROLA:  Is there anything else that --

 8              THE COURT:  No.

 9              MR. SCAROLA:  All right.  Thank you, sir.

10              THE COURT:  Ms. Fundora-Murphy.

11              So I have got a new group of demonstratives?  This

12       isn't the whole thing?

13              MR. SCAROLA:  The package that's just been handed to

14       your Honor are demonstratives that relate to the individual

15       claims.  The first package were the general liability

16       demonstratives.  These are now individual plaintiff claims

17       demonstratives.

18              THE COURT:  Yes, ma'am.

19              MS. FUNDORA-MURPHY:  Your Honor, just to clarify, we

20       were given four sets of demonstratives.  We were given the set

21       that Mr. Cioffi just spoke about, we were given a set of

22       photographs -- just photographs, not slides -- then we were

23       given this set, and then we were given a timeline slide that I

24       think Mr. Cioffi is going to address separately.  So there were

25       four sets.  So this was its own standalone set.
```

1    This appears to be the only case of the ten that has

2    its own slide deck.  And this case relates to the one that we

3    spoke about at the final pretrial conference on Monday.  This

4    is the one where the second plaintiff, your Honor's order, be

5    deposed prior.

6    So there's two plaintiffs in that case.  One was

7    deposed.  The other was not, and will now be deposed.

8    And then counsel made an argument about three children

9    related to that case.  Those children were not disclosed in

10   initial disclosures as plaintiffs.  And we talked about this on

11   Monday.  It's on the -- in the transcript of the -- on the

12   record at the final pretrial conference.

13   But these are the three children that were not

14   identified as plaintiffs in initial disclosures.  They were not

15   included in the parties' joint dismissal of the individual

16   defendant's TVPA claims, which included a chart of all

17   plaintiffs for all claims and then a representation by all

18   non-Wolf counsel that there were no other claims related to

19   these cases.  These three children were not listed there.

20   They also were not disclosed in interrogatory

21   responses or in any documents, and they are not on the witness

22   list.

23   When we spoke about this on Monday, your Honor said,

24   okay, we will deal with that when we get to the verdict sheet,

25   later on.  But as you will see in this presentation, if you

1    just flip to the very last page, they intend to present to the

2    jury the verdict sheet, and they intend to present these three

3    children as plaintiffs who can recover damages in this case.

4         The other slides in this deck are photographs.  There

5    is a photograph of each of these children, or slide for each of

6    these children.  It's Alba Sandrith, A-L-B-A, S-A-N-D-R-I-T-H,

7    that's a separate name, third name, Jinete, J-I-N-E-T-E, last

8    name Polo, P-O-L-O.  So there's a side on her.

9         Then there's a slide on the next child, which is José,

10   J-O-S-E, second name Gregorio, G-R-E-G-O-R-I-O, third name

11   Jinete, J-I-N-E-T-E, last name Polo, P-O-L-O.

12        And then there is a separate slide on the third child,

13   who is Harold David Jinete Polo.

14        So each of these children has its own slide.  And then

15   they intend to present the verdict sheet to the jury.  This is

16   the only verdict sheet that we have seen in any of the

17   demonstratives that they intend to actually present to the

18   jury.

19        In addition to that, your Honor, we think given the

20   fact that discovery is essentially now closed in this case and

21   we need to depose the one plaintiff that it's not really

22   appropriate for them to delve into the facts of this case.

23        There are slides -- it's not entirely clear what they

24   intend to say, but there are slides about the neighborhood, the

25   location of where things occurred.  And while some of that is

1   in the record through the plaintiffs' testimony, there is

2   another plaintiff, and we don't know if she's going to say

3   something contrary to that, et cetera.

4           We think that given the unique circumstances of this

5   case, that the presentation in opening should be limited, these

6   three children should not be presented as potential plaintiffs,

7   and the -- certainly the verdict sheet should not be shown to

8   the jury.

9           THE COURT:  All right.  To the extent that they are

10  talking about location of the body and the neighborhood, things

11  like that, you admit that there is existing evidence to support

12  that -- those presentations --

13          MS. FUNDORA-MURPHY:  There is --

14          THE COURT:  -- based upon the deposition that was

15  taken already?

16          MS. FUNDORA-MURPHY:  I have to confirm that.  I mean,

17  there was obviously deposition testimony in the record.

18          My only point is just that because we don't know what

19  the other plaintiff will say and whether her account will be

20  consistent, we really don't know -- you know, how are we going

21  to respond to that in opening when we haven't taken the second

22  deposition yet.

23          It just seems like this would be a better -- you know,

24  once we can develop the full record, then they can say whatever

25  they want about it, and then we can have a chance to respond.

1    But until we see what the second plaintiff will say, it's not

2    really -- you know, we won't know if we can say that there is

3    inconsistent testimony or anything else.

4         But really the main objection that we have to this

5    deck is the inclusion of the three children, suggesting that

6    they are plaintiffs, suggesting that they can recover, even

7    though they didn't prosecute their claims and they are not even

8    on the trial witness list, which would violate your Honor's

9    order in DE 3649, where the court stated that "If plaintiffs

10   are going to claim damages, they must come in to testify and be

11   subject to cross-examination.  Defendant must be able to hear

12   what the evidence is as to damages so they can rebut even a

13   presumptive claim under Colombian law as argued by plaintiffs."

14   It's DE 3649 at 2 to 3.

15        THE COURT:  All right.  Thank you.

16        MR. HAGER:  We spoke about the status of these three

17   children as plaintiffs on Monday.  They were named in the

18   original complaint, dismissed at one point on a statute of

19   limitations issue, but then reinstated after a motion for

20   reconsideration.  So they have been part of the case all along.

21   I don't want to go back over those arguments again.

22        What I'd like to focus on is the slides that have been

23   objected to.  And if I could just take them perhaps

24   categorically.

25        THE COURT:  Well, before we move on from the issue, I

1    have one party telling me that they are not plaintiffs and you

2    are telling me they are plaintiffs.  So how do I resolve that

3    dispute?

4           MR. HAGER:  Your Honor, they were named in the

5    complaint, as I said, dismissed, reinstated following a motion

6    for reconsideration.

7           Chiquita then did not take discovery from them.

8    Chiquita did not move for summary judgment on their claims.

9    And so it's -- our position is that they should be plaintiffs

10   in this trial.  They are part of the same victim's case, and so

11   they should be part of this trial along with the victim's

12   mother and wife.

13          THE COURT:  What about my ruling that whoever wants to

14   claim damages has to testify?

15          MR. HAGER:  I do believe in that ruling -- I don't

16   have it in front of me -- I believe there was a footnote making

17   reference to Mr. Reiter's argument suggesting that

18   representative -- other family members could testify on behalf

19   of absent plaintiffs, and so we would ask that the court allow

20   that the victim's mother, these children's grandmother, be able

21   to testify about their claims.  She partly raised them, she

22   knows them well, she would be in a good position to testify

23   about their claims.

24          THE COURT:  Are these plaintiffs Mr. Reiter's clients

25   that were --

```
 1            MR. HAGER:  They are not Mr. Reiter's clients.  They
 2       are our clients, Conrad Scherer's clients.
 3            THE COURT:  As I recall, Mr. Reiter was saying that in
 4       New York, the procedure was you don't have to have the children
 5       or all the claimants as parties; you can have one
 6       representative testify for others or recover for other family
 7       members.  That's my recollection.  I don't know if I am
 8       articulating that accurately.
 9            Does that same situation apply to your clients?
10            MR. HAGER:  I think our situation is actually somewhat
11       stronger than Mr. Reiter's situation.  It's distinct, I
12       believe, under New York law where Mr. Reiter's claims arise, in
13       Washington, DC law where our claims arise or where our case was
14       filed.
15            It's my understanding that Mr. Reiter's plaintiffs --
16       and he can certainly correct me if I misunderstand this -- that
17       they weren't all named in the complaint, but that New York law
18       allows them to go forward with one named plaintiff and the rest
19       can go forward on a representative basis.
20            Here, we did name all five of our plaintiffs in the
21       complaint.  So these children are named in the complaint.  So I
22       feel like we are on strong footing there.
23            THE COURT:  Right.  But what about the damage aspect
24       of it?  Being able to prove up the damages?  They are all named
25       in the complaint.  And if I said plaintiffs who are going to
```

```
 1   seek damages have to testify, how do we -- how do they get to
 2   claim damages if they don't testify?
 3           MR. HAGER:  They won't be here to testify, your Honor.
 4   That's clear.  So our position is we would ask you to allow
 5   Mariela, one of the named plaintiffs and their grandmother, to
 6   testify about their claims.
 7           THE COURT:  Okay.
 8           MR. HAGER:  Moving on, if I may, to the pictures
 9   actually objected to.  In categories, there are three pictures
10   of the victim's children, Francisco's children, who are all
11   very young at the time, 2, 4, and 5 years old.
12           We feel it's obviously important for the jury to get
13   to know the victim's family.  We will have a live witness -- or
14   two live witnesses who will be able to identify these pictures
15   and talk about these children.  These are appropriate
16   demonstratives.
17           As for -- I don't think there was a serious objection
18   to the map demonstratives, but, again, we will have live
19   witnesses who can testify that these are a fair and accurate
20   representation of the neighborhood where the victim and the
21   plaintiffs lived.
22           Unless your Honor has any other questions --
23           THE COURT:  And the verdict form -- what about the
24   verdict form at this point and in opening statement?
25           MR. HAGER:  The verdict form, we think it's
```

1   appropriate because we feel that these are all plaintiffs who

2   will be part of this case.  And so for the same reasons we

3   discussed at the beginning of my intervention, we feel that

4   that slide is appropriate as well.

5            THE COURT:  All right.  Thank you.

6            MR. HAGER:  Thank you.

7            MS. FUNDORA-MURPHY:  Your Honor, I just want to state

8   that after that motion for reconsideration was ruled upon,

9   actually, months after that, they issued their initial

10  disclosures where they listed the plaintiffs for this decedent,

11  and they did not list these three children.

12           So it is not Chiquita who did not prosecute these

13  claims or pursue discovery.  Their own initial disclosures did

14  not list these three children as plaintiffs.  They were also

15  not disclosed in interrogatory responses.  They didn't respond

16  to any discovery requests because they weren't listed as

17  plaintiffs.  So that is what happened with that.

18           THE COURT:  So after the -- I allowed the amendment to

19  include these children, they failed to provide any information

20  relating to their claims?

21           MS. FUNDORA-MURPHY:  That is correct, your Honor.  It

22  was a couple months after, in fact.  And I think I have -- I

23  was trying to find for your Honor a copy, but we can get it

24  printed and show you exactly what they produced us.  I actually

25  think I do have it here.  Yes, I do.  If your Honor will let me

 1   approach.

 2              THE COURT:  Yes.  Why don't you show it to Mr. Hager

 3   first.

 4              MS. FUNDORA-MURPHY:  Yeah, sure.  So these are your

 5   initial disclosures.  This is the victim's case.  Here are the

 6   plaintiffs; 1, 2.  No children.

 7              So there is a number of cases here.  So it's a little

 8   confusing to read.  So I am just going to -- I will show

 9   Mr. Hager.  I am just going to circle for you the date, and

10   this particular case which has a tab, so I just circled the

11   date and just to indicate...

12              So your Honor's order on the motion for

13   reconsideration was issued in March.  These were -- they are

14   initial disclosures that you can see were dated -- now I don't

15   have it in front of me, your Honor, but it was June, I believe

16   it says there.  I circled it for you on the top.

17              And then if you turn to the red tabbed page, you will

18   see that that is where they disclose for that specific decedent

19   and they have a line item, plaintiffs in bold, colon, and then

20   they list only the two, the mother and the wife.  But they

21   don't list these three children.  So they did not represent

22   them as plaintiffs at that time.

23              THE COURT:  Okay.

24              MS. FUNDORA-MURPHY:  Lastly, we take great issue with

25   this contention that the pleading requirements don't require

1    plaintiffs to be pled.  That's not exactly at issue necessarily

2    with this case.  I think Mr. Hager was sort of trying to

3    conflate DC and New York law.  Either way, there are federal

4    pleading requirements, and a plaintiff must be pled in the

5    complaint, named in the complaint to be a proper party to a

6    complaint.

7            We can deal with that issue later on when we get to

8    the verdict sheet, if that's what your Honor wants to do, but I

9    just want to state for the record that we completely disagree

10   with any contention that there's -- that a plaintiff does not

11   need to be properly named in a federal action.

12           THE COURT:  All right.  Mr. Hager, what do you say

13   about this disclosure that was submitted after I allowed the

14   amendment to include the children as plaintiffs?

15           MR. HAGER:  Those initial disclosures do not disclose

16   the three children.  That was an unfortunate omission.  I think

17   we were focusing on the plaintiffs from whom Chiquita was

18   taking discovery, which were the wife and the mother.

19           But I just would remind the court once again that the

20   plaintiffs were named in the complaint.  There was no mystery

21   out there about them.  Chiquita could have taken discovery from

22   them.  It's not that they failed to respond to interrogatories

23   or something like that.  They were not served with

24   interrogatories.  Their depositions were not noticed.

25           I would say, at most, what these objections to our

1    slides might allow for is for us to remove the slide with the

2    verdict sheet.  The remaining slides are perfectly appropriate.

3          Even if the court wants to postpone consideration of

4    the verdict sheet issue at this time, the pictures are still

5    appropriate because we have live witnesses who will be able to

6    introduce the victim's family.

7          THE COURT:  Why would they -- why would they even

8    consider submitting interrogatories if in your initial

9    disclosures you don't list the children as parties or

10   plaintiffs?

11         MR. HAGER:  I would have to look back at the timing of

12   all of those, their requests and our disclosures.

13         THE COURT:  All right.  Thank you.

14         MR. HAGER:  Thank you.

15         MR. CIOFFI:  Judge, just two more slides we have

16   objections to.  The first slide, your Honor, is this one which

17   says, "Is there ever an acceptable excuse for helping violent

18   terrorists when you know they are murdering thousands of

19   innocent people?"

20         It's not based on any evidence, but besides that, it's

21   argumentative and beyond the pale for our opening statement.

22   If, in fact, on closing there is evidence that they want to

23   cite to of that, then I think that's more appropriate.

24         The last slide, your Honor, is the Chiquita timeline.

25         THE COURT:  Okay.

1            MR. CIOFFI:  This is problematic for a number of

2       reasons.  First of all, we received one timeline at about

3       9:30 yesterday morning, we then received another one at noon.

4       And then we didn't get the two of them back this morning.  We

5       got, I think, yet a third one.

6            So I raise that, your Honor, because whatever the

7       court's rulings are today with respect to how the final deck

8       should look, we would ask the court to emphasize no more

9       changes, no alterations other than the ones you order on the

10      record, and that you remind each side of its obligation to

11      follow your order.  Because it's -- we see an evolving problem

12      here.

13           But specifically with respect to this timeline, which

14      I believe you have in front of you which came to us today,

15      the -- if you look at 1988, there is "Chiquita did not own any

16      farms in Colombia, decided to buy and began to acquire farms in

17      Colombia as banana zone."  No problem with that.

18           But the highlighted portion "where conflict

19      contributed to the low purchase price," that comes directly out

20      of Dr. Karl's testimony which has been excluded.  There is no

21      other evidence to support that.  So we think that needs to come

22      out.

23           If you look at the timeline entry 1991 to 1995, it

24      says, "Banana workers engaged in strikes, including on Chiquita

25      farms."

1          The original slide we got said, "Chiquita workers

2     engaged on strikes on Chiquita farms."  Now it's been changed

3     to "banana workers."  We would submit to you what other banana

4     workers were doing is not relevant to this case and should not

5     be on the timeline.

6          The next objection, your Honor, is related to 1995,

7     and it says, "Chiquita started to make payments to convivirs,"

8     and the original slide said, "Chiquita made payments to

9     convivirs"; now it started to make payments.  Neither one is

10    supported by the evidence, and that's our objection.

11         THE COURT:  I'm sorry, Mr. Cioffi, but, again, if they

12    believe they are going to be able to present evidence to

13    support that statement, am I, at this point, supposed to say,

14    no, you are not going to be able to, and you can't make that

15    assertion?  How am I supposed to decide whether there's going

16    to be evidence to support that or not?

17         MR. CIOFFI:  I understand the point, your Honor, but

18    what I am suggesting to you, the fact that they sort of are

19    modifying the slide suggests to you there's not support for

20    either proposition.

21         THE COURT:  Well, again, you know, you may make that

22    suggestion to me, but how am I supposed to decide now whether

23    that's correct or not?  I'm sorry, go ahead.  I am just trying

24    to understand how I am supposed to decide whether they are

25    going to be able to prove what they say they are going to be

1  able to prove.  I think you are going to -- you are probably

2  going to tell me you don't think they are going to be able to

3  prove their case, so I might as well not let them put on a

4  case.

5          MR. CIOFFI:  Understood, Judge.

6          Judge, with respect to the 1995, 1996 entries, both

7  with respect to the convivir payments, and then if you look at

8  the 1996 entry with respect to the ACCU, the only evidence that

9  supports those are the 1006 summaries which the court hasn't

10 ruled on yet.

11          So the objection is that that's the proffered

12 evidence, the court hasn't ruled on it.  I understand the

13 court's point that, okay, there are certain risks that they

14 might want to take in litigation, but they can't present

15 something that really is questionably admissible or not

16 admissible.  If they have some other source besides the 1006

17 summary, and they want to say that, we have no objection to

18 that.

19          THE COURT:  All right.  Thank you, sir.

20          MR. SCHERER:  Your Honor, William Scherer here.  I

21 need to -- may I approach?

22          THE COURT:  Yes, sir.

23          MR. SCHERER:  Your Honor, the children of Francisco

24 were named in the third amended complaint, paragraph 281, and

25 it says that the children -- the grandmother is the legal

1    guardian of the children, and named the children.  And they are

2    named as plaintiffs in the order that your Honor entered that

3    said the plaintiffs' motion for reconsideration is granted with

4    respect to the claims of those 94 minor plaintiffs.  And our

5    three children were in those 94 -- in the -- how many

6    plaintiffs -- in the 194 plaintiffs as number 10, 11, and 12.

7    They are named in the complaint.

8         THE COURT:  I don't think there's any dispute that

9    they were named in the complaint.  I believe the argument is

10    that after they were named in the complaint, there was

11    initial -- no initial disclosures relative to their claims, and

12    therefore -- and they are not going to be able to testify.

13         MR. SCHERER:  We are not asking that they testify.  We

14    are asking only that they are named in the complaint, and the

15    mother and the grandmother are going to testify about those

16    children.

17         And I mentioned in my argument previously, in what

18    wrongful death case do they ever go take depositions or do

19    discovery of 3-, 4-, and 5-year-old children?  They are

20    beneficiaries of the estate.  In Florida, of course, you only

21    name the PR on behalf of all of the qualified beneficiaries.

22    And, of course, these three children were named in the

23    complaint as plaintiffs and added to your Honor's order.

24         We wouldn't -- no lawyer takes a 3-year-old -- tries

25    to take a 3-year-old child's deposition.

```
 1            THE COURT:  But they are not 3-year-olds now.

 2            MR. SCHERER:  Well, they are not 3-year-olds now; they

 3    are 23 years old because it was 20 years ago.

 4            THE COURT:  Okay.  That makes a big difference,

 5    doesn't it?

 6            MR. SCHERER:  But they are -- they could have done

 7    that, but I wouldn't know why it's our obligation to do any

 8    more than name them in the complaint as plaintiffs.  And,

 9    again, Grandma and Mom are going to testify about them, and

10    they were left, after he was killed, to raise those kids as

11    part of either their damages or the kids'.

12            But I don't know any wrongful death case where a child

13    of a decedent is not a claimant in the case.  And we named them

14    in the complaint.  So that's the argument.  And your Honor

15    entered that order that said they are claimants in the case.

16            THE COURT:  Yes, sir.

17            MR. SCHERER:  Thank you, sir.

18            THE COURT:  Thank you.

19            MS. FUNDORA-MURPHY:  Your Honor, if you would like to

20    see, for instance, I also have the joint stipulation of

21    dismissal that had the chart where these three children were

22    not referenced as plaintiffs.  I have that as well.  I mean,

23    it's on the docket.  I will just say for the record, it's

24    DE 3515.

25            THE COURT:  Okay.
```

```
 1            MS. FUNDORA-MURPHY:  If you want to reference that as
 2    well.  But from start to finish, from initial disclosures all
 3    the way through dismissal of claims, they were never referenced
 4    as plaintiffs.
 5            THE COURT:  Thank you.
 6            MR. SCHERER:  Again, William Scherer here.  When your
 7    Honor entered the order based on the ruling that the statute of
 8    limitations would toll for the minors, these three children are
 9    number 10, 11, and 12 in the motion to reconsider adding them
10    back in as claimants.  And, again, you -- in DE 1312,
11    plaintiffs' motion for reconsideration is granted with respect
12    to the claims of those 194 minor children.  And, of course,
13    here they all are on a big list, and our 15, 16, and 17 are the
14    three children who were added to the complaint.
15            THE COURT:  Thank you.  I understand.
16            MR. SCHERER:  Okay.
17            THE COURT:  Thank you.
18            MR. HERZ:  Richard Herz.  Just very briefly responding
19    on the timeline.
20            THE COURT:  I don't really think I need any argument
21    on the timeline.  I am a little -- want to know about this --
22    the slide or demonstrative where it says, "Is there ever an
23    acceptable excuse for helping violent terrorists?"  Isn't that
24    more argumentative than a statement of what you intend to show
25    or prove in the case?
```

```
 1            MR. HERZ:  That's Mr. Scarola.

 2            MR. SCAROLA:  Your Honor, it is my understanding that

 3     it is appropriate in opening statement to identify the issues

 4     that the jury will need to deal with, not simply to talk about

 5     what we anticipate the evidence will show, but what the jury

 6     will need to address with respect to that evidence.  And it is

 7     our position that this is an accurate statement of a

 8     fundamental issue that the jury will be obliged to deal with.

 9            Chiquita is going to say there was a reason why we

10     were making all of these payments, and the jury is going to

11     need to make a determination as to whether there is ever an

12     acceptable excuse for helping violent terrorists when they know

13     the magnitude of the violence in which they are engaged.

14            So I believe that it is appropriate function of

15     opening to identify issues, not only from the standpoint of the

16     precise legal issues that the instructions will define, but the

17     basic issues encompassed by those instructions that the jury is

18     going to need to deal with.  That's the purpose of this slide.

19            THE COURT:  Thank you.

20            MR. SCAROLA:  Thank you.

21            THE COURT:  Do you want to take a break before we go

22     to the plaintiffs' objections to the defendant's

23     demonstratives?

24            MR. SCAROLA:  I am happy to.

25            MR. CIOFFI:  Yes, your Honor.
```

```
 1              THE COURT:  All right.  Let's take a ten-minute

 2    recess.

 3              By the way, do you have a copy of the defendant's that

 4    you are going to be objecting to so I can kind of look --

 5              MR. CIOFFI:  I think I handed it to you, Judge.  It

 6    looks like this.

 7              THE COURT:  I don't think I got that.  Oh, I'm sorry.

 8    Here it is.  I do have it.  I'm sorry.  Thank you.

 9              (Recess taken 10:42 a.m. through 10:55 a.m.)

10              MR. SCAROLA:  I was hoping we'd reach the point where

11    my absence would not be noted, your Honor, but we are not there

12    yet.

13              THE COURT:  Are you ready?  Who is going to argue

14    about the --

15              MR. SCAROLA:  Mr. Simons.

16              MR. SIMONS:  First I want to note that there appears

17    to have been a -- an omission in the exchange of demonstratives

18    yesterday.  The -- it appears from the -- Chiquita's counsel's

19    comments that they did not receive the demonstratives that are

20    specific to our clients.  I don't know where in the process the

21    breakdown happened, your Honor.  We are trying to get those

22    printed out and exchanged.

23              We would submit that since our agreement was to

24    exchange 48 hours in advance of openings, and it appears that

25    openings aren't going to happen until Monday, that there is no
```

1    prejudice.  But we will -- we are going to provide them as soon

2    as we can get them printed, and happy to discuss that.

3           MR. CIOFFI:  Judge, could I be heard on that point?  I

4    raised that yesterday.  We had an explicit exchange.  I asked

5    Mr. Scarola about all the demonstratives.  I raised it with the

6    court that after they look at ours, we were concerned that

7    they'd go back and change their demonstratives, et cetera, and

8    it appears that that's what's been done.

9           We did not get those yesterday.  We exchanged on the

10   explicit understanding that we would give them ours, they would

11   give us their complete set.  Now we understand there's a whole

12   different set.  That is not right.

13          THE COURT:  I don't know that they changed anything.

14   It's my understanding that you may not have received what they

15   intended to submit to you.

16          MR. SIMONS:  Your Honor, I am happy to swear under

17   oath that nothing has been changed.  I think defense counsel

18   also will see, when they see the demonstratives, that nothing

19   is responsive to anything in defendant's presentation.  These

20   are demonstratives that are solely applicable to our individual

21   plaintiffs' cases.  As far as I can tell, nothing in

22   defendant's presentation addresses the specifics of the

23   individual deaths at issue.

24          So if they have any reason to believe that anything is

25   responsive, we can provide the forensic electronic trail of

1    when these were created and everything if any issue arises.

2         But I understand Mr. Scarola believed he had the

3    complete set.  And he had a good faith understanding that it

4    was the complete set.  There were multiple steps in sort of

5    concatenating the demonstratives for multiple teams, and I

6    don't know where the breakdown was, your Honor.  So I apologize

7    for that.

8         MR. CIOFFI:  Judge, he is saying that they are still

9    being printed.  We still don't have them.

10        THE COURT:  I understood that he was -- again, I

11   didn't understand that they were being -- he was trying to

12   print a set for you, not that they are being printed or created

13   for the first time.

14        MR. SIMONS:  It's a PowerPoint that was locked.

15        THE COURT:  Look, get whatever it is to them.  And

16   then after you receive it, you can argue to me how you are

17   prejudiced by getting it late.

18        MR. CIOFFI:  It is the digital age.  He could just

19   email it to us and we could print it, or email it to the court

20   so we could have it before lunch so we can resolve this issue.

21        MR. SCAROLA:  We have a printer.  It's being printed.

22        MR. SIMONS:  We have a printer in the attorney room.

23   So we will have it.

24        MR. CIOFFI:  In like --

25        MR. SIMONS:  Probably before -- hopefully by the time

1    I sit down.

2           MR. CIOFFI:  All right.  But note our objection.  This

3    is not right.

4           THE COURT:  Okay.

5           MR. SIMONS:  So turning to the defendant's

6    demonstratives, your Honor.  So again, I think both sides did

7    the same thing, which was to provide demonstratives that had no

8    page numbers and were almost certainly out of order, which, you

9    know, the court will understand why both sides did that, but it

10   does make it, I think, more difficult for the court to sort

11   through.

12          So the first one I'd like to talk about is one that

13   the heading is "The evidence will show that the AUC payments

14   were recorded, transparent, and legal."  I don't know where it

15   is in your Honor's stack.

16          THE COURT:  Say that again.  "The evidence will show"

17   what?

18          MR. SIMONS:  "The evidence will show that the AUC

19   payments were recorded, transparent, and legal."

20          THE COURT:  Okay.  I see it.

21          MR. SIMONS:  Your Honor, the primary concern here is

22   that there is a pending motion in limine on this issue as to

23   whether evidence regarding Chiquita's -- the legal advice that

24   Chiquita received may be introduced, and based on the fact that

25   defendants did not raise an advice of counsel defense, this is

```
 1    in our motion in limine DE 3489, at page 19.

 2              And so we would just request that the court rule on

 3    this motion in limine and, if not, that evidence that may be

 4    subject to a motion in limine should not be part of opening

 5    statements.

 6              I want to give the court an example of how prejudicial

 7    we believe this kind of -- these kinds of documents are.  If I

 8    may approach.

 9              THE COURT:  What do you mean by "these kinds of

10    documents"?

11              MR. SIMONS:  The memos from Chiquita's counsel that

12    they are referring to in terms of the legal advice that they

13    received.

14              THE COURT:  Okay.  I thought you didn't know whether

15    they were raising an advice of counsel defense.

16              MR. SIMONS:  My understanding, you Honor, is they are

17    not raising an advice of counsel defense.  However, their

18    exhibit list includes multiple memos from both internal and

19    outside counsel, and their exhibit list also includes -- or

20    their witness list also includes some of the authors of these

21    memos.

22              So if your Honor would turn to the first highlighted

23    section on page 2, there is a legal conclusion, "the failure to

24    report the crime of extortion" is once again a crime under

25    Colombian law, but then the remainder of the memo, including
```

1   the highlighted sections on page 4 of the memo -- my

2   apologies -- is essentially an argument about essentially

3   making Chiquita's case for them where the facts as Chiquita has

4   presented to their outside counsel are being regurgitated along

5   with their outside counsel's legal analysis as to why these

6   facts do not constitute a crime, and it's essentially a very

7   similar analysis that the jury will be performing in this case.

8           You know, essentially arguing that if the failure to

9   report extortion or the financing of illegal armed groups can

10  be attributed to the need to protect essentially someone's

11  rights against an unjust aggression or against a danger, it

12  should not be punishable as a crime.

13          Then they go on to say, "This appears to be precisely

14  the company's situation."  These are lawyers, again, taking the

15  facts as presented by Chiquita and engaging in the kind of

16  legal analysis that usurps both the function of the court and

17  the jury.

18          We think it's highly prejudicial to present that.  We

19  think it also risks the trial devolving into essentially a

20  Rule 44.1 hearing as to the content of foreign law.  If they

21  are permitted to present their outside counsels' conclusions as

22  to the contents of Colombian law, we believe we would need to

23  cross-examine on that and show them why they are wrong about

24  the content of Colombian law.

25          So we don't believe any of this evidence should be

1  admitted, and on that basis, if the court rules in favor of our

2  motion in limine, that they should not be referring to this in

3  their opening statements.

4          THE COURT:  Okay.  What's next?

5          MR. SIMONS:  Moving on, your Honor.  The slide

6  entitled -- it's got four, I don't know, mugshots on it,

7  entitled "What evidence will you hear that Chiquita and other

8  businesses were threatened and extorted by the AUC and other

9  narco-terrorists?"

10         The only concern about this slide is that it has three

11 individuals that are permitted to testify as expert witnesses,

12 and one individual who is a fact witness only, he is not put

13 forward as an expert, Jack Devine, who has no evidence that

14 Chiquita and other businesses were threatened and extorted by

15 the AUC and other narco-terrorists.

16         Mr. Devine is the -- was the chair of The Arkin Group.

17 It is an outside consultancy that was contracted by Chiquita in

18 early 2004 to provide advice primarily surrounding Chiquita's

19 exit from Colombia and potential security issues around that.

20 There are multiple documents from The Arkin Group on Chiquita's

21 exhibit list relating to this engagement.

22         But, you know, this is -- they have no personal

23 knowledge of any threats and extortions to Chiquita and other

24 businesses.  Again, with respect to Chiquita, they are taking

25 the information that Chiquita was giving them.

```
 1            And with respect to other businesses, The Arkin Group
 2    has no direct knowledge, and their reports show that.  These
 3    are, again, doing the kind of thing that an expert would do,
 4    but Mr. Devine is not qualified as an expert.  So we don't
 5    think it's appropriate.  It is -- this is not a good faith
 6    characterization of what the evidence will show in this case.
 7            THE COURT:  So as I was speaking to Mr. Cioffi earlier
 8    when I was dealing with his objections to your demonstrative,
 9    how am I supposed to decide that there is going to be no
10    evidence to support their assertion here?  How am I supposed to
11    make that decision now?
12            MR. SIMONS:  I understand the difficulty, your Honor.
13    And if your Honor doesn't want to entertain any of those kinds
14    of objections on either side, I fully understand.
15            THE COURT:  Okay.
16            MR. SIMONS:  I think the next one is of a different
17    nature, however, which is the slide with a photograph of Chuck
18    Didier.  D-I-D-I-E-R.
19            We would contend that this slide is highly
20    prejudicial.  The reason for that is the conflation of all
21    armed groups in Colombia as narco-terrorists.
22            This case is about payments to and violence by the
23    AUC.  Your Honor has ruled that, you know, violence by other
24    groups is admissible.  But we don't believe that Chiquita may
25    conflate the violence committed by one group with another.
```

```
 1              There is no dispute here that Mr. Didier was shot by
 2      the FARC in 1997.  The defendant's witnesses testify to this.
 3      They have -- I don't think anybody has ever claimed otherwise.
 4      And to group -- in some of their slides, they refer to the AUC
 5      and other narco-terrorists.  In this slide, they do not.
 6              And giving the jury the impression that someone was
 7      shot by narco-terrorists broadly, which is the label they have
 8      used for the AUC, when it was shot -- he was shot by a
 9      different group, we think is highly prejudicial and that this
10      should be clarified as to who the undisputed evidence shows
11      committed this act of violence.
12              There are a couple of other objections in the nature
13      of what we believe -- do not believe to be good faith
14      representations of the evidence.  Again, if your Honor doesn't
15      want to hear those kinds of objections, I am happy to --
16              THE COURT:  Well, I will listen to you, but I am just,
17      you know, pointing out that you are making the same
18      arguments --
19              MR. SIMONS:  I understand.
20              THE COURT:  -- that you objected to from them.
21              MR. SIMONS:  Yes, and I suppose from our perspective
22      for the record, if the court is inclined to entertain them from
23      the other side, we at least want the same treatment.
24              THE COURT:  I understand.  So that's why I am going to
25      listen to you because I haven't ruled yet.
```

```
 1              MR. SIMONS:  So, first of all -- so I would point the

 2      court to two slides which are out of order but we believe go

 3      together.  They are both timeline slides entitled "What will

 4      the evidence show about DOJ prosecution?"  And they clearly

 5      form a single timeline.  But they are two sheets in different

 6      parts of the stack.  But I think it's easiest if they are

 7      considered side by side.

 8              THE COURT:  I have them both.

 9              MR. SIMONS:  The first two things -- and I don't know

10      if this is an objection or simply perhaps a waiver of an

11      objection if defendants -- if Chiquita wants to change this

12      timeline, because there are a couple of errors on it.

13              There is a notation of an April 8, 2003 meeting at the

14      end of one slide, and then an April 24, 2003 meeting.  Those

15      are the same meeting.  It occurred on April 24.

16              The reference to meeting with the head of the DOJ

17      criminal division is the same person referenced in the April 8

18      meeting.  This is the same meeting.

19              So we would not object to defendants correcting their

20      timeline.  We said, you know, just -- the other correction, the

21      meeting that they say happened on September 8, 2003 was a

22      September 4 meeting.  The memo discussing it is dated

23      September 8, but the meeting was on September 4.

24              The first issue, suggesting there were two meetings

25      when there was only one, is a more -- more in the nature of an
```

1    objection because it does suggest events happened that did not.

2    Whether to correct the date on the September meeting is up to

3    defendants, but we wouldn't object to the correction.

4           The more -- the more concerning parts of this, on the

5    April -- under the April 8 meeting, it says, "Discusses

6    extortion payments made by Occidental Petroleum to terrorists,

7    no prosecution of Occidental, but given 180 million -- but

8    $180 million given by U.S. to protect pipelines."

9           This is problematic for two reasons.  Number one, it's

10   the same conflation that we objected to with respect to the

11   shooting of Mr. Didier.  There is no dispute here that the

12   terrorists referred to here are the FARC.  They are not -- this

13   is not the AUC.  We are not talking about payments to the AUC.

14          The other problem here, your Honor, is that although

15   your Honor has allowed Chiquita to put in evidence of payments

16   made by other entities, again, there is no good faith basis

17   that there is admissible evidence for any payments by

18   Occidental Petroleum.

19          Now, I happen to, you know, know this myself because

20   in another matter we have represented victims before the

21   Colombian Special Jurisdiction for Peace, and in connection

22   with that representation, we subpoenaed Occidental Petroleum

23   for records that they have about payments to the FARC, and

24   Occidental Petroleum was not able to provide any documents

25   showing that the company made payments to the FARC.  There is

1    no admissible evidence.

2           There is some hearsay that people believe Occidental

3    may have been making payments, but putting this in here,

4    suggesting that another major corporation made payments, and

5    essentially DOJ didn't care, again, we believe is highly

6    prejudicial and not a fair characterization of anything that

7    the evidence will show here.

8           Again, I understand the burden, you know, they may

9    take the risk of referring to something that the evidence will

10   not show.  But in this case, we believe it's quite prejudicial.

11          There is a similar issue with respect to the reference

12   to, on the second slide, the December 2003 meeting.  There is a

13   reference to the FARC kidnapping of a Chiquita employee in

14   December 2003.  There is no dispute that this occurred, and it

15   is -- we appreciate that in this case, it is appropriately

16   labeled as the FARC and not the AUC.

17          The reason it's in here, however, is to suggest that

18   DOJ had no problem with what Chiquita was doing.  The problem

19   is, as far as we know, there is no admissible evidence to

20   establish the basic point that the DOJ did not object to paying

21   the ransom here.

22          If there is evidence of that, I am not aware of it.  I

23   don't believe anything on defendant's exhibit list established

24   this -- establishes this.  And so, again, we would suggest that

25   this is not a fair characterization of the evidence.  Thank

```
 1    you, your Honor.

 2              THE COURT:  So is that it on --

 3              MR. SIMONS:  There are a couple of other things, but I

 4    don't know if we want to -- we have -- before I sit down, your

 5    Honor, we have the demonstratives for our clients.  So I will

 6    give two copies to defendants.

 7              THE COURT:  But those are the only objections that you

 8    are lodging to their demonstratives?

 9              MR. SIMONS:  There are a couple of others that will be

10    handled by my colleagues.  I don't know if you want Chiquita to

11    respond to these first before moving on.

12              THE COURT:  If they are a different nature -- are the

13    others of a different nature?

14              MR. SIMONS:  Yes.

15              THE COURT:  Okay.  Then yes.  Who is going to respond?

16    Mr. Dante?

17              MR. SIMONS:  Thank you, your Honor.

18              MR. DANTE:  Thank you, your Honor, Frank Dante for

19    Chiquita.  I will try to take them in the order that Mr. Simons

20    presented them.

21              I think the first objection he lodged was to reference

22    any legal advice, and that was on the slide, so that we are on

23    the same page, "The evidence will show that the AUC payments

24    were recorded, transparent, and legal."

25              And I believe Mr. Simons was objecting to the last box
```

1    on that slide which shows "External and independent

2    international law firm Baker McKenzie advised that the payments

3    were legal."  I think it's actually the one before that as

4    well, "Company's internal lawyers advised payments were legal."

5           Your Honor, we did brief this in response to a motion

6    in limine that is currently pending in front of your Honor, and

7    it's on page 12 of that opposition brief where our arguments

8    are set forth.

9           THE COURT:  What docket entry is that?

10           MR. DANTE:  We will pull the docket entry for you in a

11    moment, your Honor.

12           Chiquita contends that evidence that the payments were

13    legal in Colombia and in the United States up until the time of

14    the FTO designation on September 10, 2001 is certainly relevant

15    and specifically relevant to the good businessperson standard.

16           One of the points in this case that's going to --

17    there's going to be a ton of evidence on is whether Chiquita

18    acted as a reasonable businessperson in the circumstances.

19           So what the evidence will show in this case that time

20    and time again, between 19- -- going back into the late --

21    early '90s, late '80s, all the way through in time, Chiquita

22    constantly checked, when they were faced with these extortion

23    threats and demands, whether it was legal under Colombian law

24    and U.S. law to make these payments.

25           So they checked internally with their in-house

```
 1    lawyers, they checked with outside counsel at various different

 2    firms, both in the United States and in Colombia, to confirm

 3    that the actions that they were taking were legal under both

 4    Colombian law and U.S. law.

 5            And that goes directly to whether they were acting as

 6    a reasonable businessperson in the circumstances when they were

 7    faced with these extortion threats.

 8            So that is what this evidence really goes to.

 9            THE COURT:  How are you intending to present the

10    evidence of the representations that you got from internal or

11    external attorneys?  I mean, were these attorneys listed as

12    witnesses?

13            MR. DANTE:  Yes, your Honor, they are.

14            THE COURT:  You disclosed them in discovery as

15    witnesses?

16            MR. DANTE:  Yes, your Honor.  Well, they have deposed

17    some of them.

18            THE COURT:  The attorneys?

19            MR. DANTE:  The general counsel of Chiquita is

20    Mr. Olson, and he was deposed, and he will be here live

21    testifying about this, for sure.  And then there are other

22    witnesses as well who will testify about it.

23            THE COURT:  All right.  Was there a good faith

24    reliance upon advice of counsel raised as an affirmative

25    defense?
```

1    MR. DANTE:  Your Honor, it was raised as -- first of

2    all -- two separate issues.  First, we are talking about the

3    reasonable consumer -- sorry, the reasonable businessperson

4    standard, which is -- it's not an affirmative defense.

5         THE COURT:  Right.

6         MR. DANTE:  So it goes directly to that standard.

7         Secondly, with respect to advice of counsel, Chiquita

8    did plead the affirmative defense that its actions were

9    justified, excused, and privileged, and its acts were lawful,

10   is what's specifically stated in their affirmative defense.

11        We do not believe that we are -- that this is going to

12   be traditionally presented as an affirmative defense case.  If

13   we have to do it that way, we certainly will.  But we believe

14   that this evidence goes directly to the affirmative element

15   that plaintiffs have to prove, and rebutting that as to whether

16   Chiquita acted as a reasonable businessperson, given the

17   circumstances.  And that's directly under Colombian law.

18        THE COURT:  So whatever witnesses you are intending to

19   present this either defense or rebuttal to their argument that

20   you didn't act reasonably, all those witnesses were disclosed

21   and depositions were taken of these witnesses?

22        MR. DANTE:  Yes, your Honor.  The witnesses who are

23   going to testify live, they were disclosed and they were --

24   depositions were taken.

25        THE COURT:  So there's no surprise as to anything

```
 1    relating to this position you are taking?  They have known

 2    about it, they had an opportunity to depose and examine the

 3    attorneys who may have opined on this and see what the basis

 4    for their opinions was?

 5              MR. DANTE:  Your Honor, the -- just so we are clear,

 6    the plaintiffs had an opportunity to depose several witnesses

 7    within Chiquita who -- including the general counsel,

 8    Mr. Olson, as well as the executives who have received and

 9    relied on this advice.  And they did ask questions that pertain

10    to these topics.

11              THE COURT:  Okay.  Now, how was this -- for example,

12    this Baker McKenzie memorandum, how would you propose to get

13    that into evidence?

14              MR. DANTE:  Your Honor, we believe we will lay the

15    foundation for the Baker McKenzie memo through our own

16    witnesses.

17              THE COURT:  Who is Jamie Trujillo Caicedo?

18              MR. DANTE:  Your Honor, Mr. Trujillo is the -- was the

19    managing partner of Baker McKenzie.

20              THE COURT:  And this memo is to -- from him to

21    associate general counsel of Chiquita.

22              MR. DANTE:  It's to Joel Raymer.  It was requested by

23    Mr. Olson.

24              THE COURT:  So -- and why wouldn't it be a hearsay

25    document?
```

 1          MR. DANTE:  Your Honor, I think we can argue about

 2     this one when we get to the specific memo, but it would be --

 3     so this -- it's a business record, and it also goes to the

 4     state of mind.

 5          THE COURT:  It's a business record and what?

 6          MR. DANTE:  State of mind effect on the listener.  So

 7     basically our response to the hearsay objection here would be

 8     business record, and it goes to show how Chiquita -- Chiquita

 9     heard this legal advice and it went to their state of mind and

10     their decision-making process.

11          THE COURT:  Okay.  So let's assume that I agree that

12     you can present evidence that -- through either Chiquita

13     representatives or through the attorneys themselves who gave

14     the advice, that, yes, I advised Chiquita that what they were

15     doing was legal at the time, and a representative says, yes, I

16     relied upon my attorneys' advice that what we were doing was

17     legal at the time.  Do we need to get beyond that as opposed to

18     getting into all of the rationale and legal analysis?  Does

19     that need to be presented, and then we have to have a trial

20     about whether the legal analysis was valid or not?

21          MR. DANTE:  Your Honor, I think for the purposes of

22     opening statement, I want to note that we are not introducing

23     this memo.  This memo itself is not in the presentation.  The

24     jury is not going to see the memo.  So all we are going to be

25     presenting to the jury is that we did, in fact, get legal

1    advice from this law firm, and said it was legal.

2            So objections as to whether this actual memo is

3    admissible at this time could be reserved, I think, for a

4    different point in time when we actually get to who is going to

5    be presenting the evidence and laying the foundation for it.

6            But for the purposes of opening argument, we are

7    simply saying that the evidence is going to show that Baker

8    McKenzie did advise us of this.  So that's kind of what you are

9    saying.

10           THE COURT:  All right.  Thank you.  Are there any --

11   what about the others?  That was the first one.  What about the

12   others?

13           MR. DANTE:  This is the first.  Yes, your Honor, I

14   think the second one was Mr. Devine.  And if you want me to

15   respond to that -- I think, again, Mr. Simons seemed to suggest

16   that because Jack Devine, Mr. Devine was pictured here with

17   three experts that there was some inference that he was an

18   expert witness.  I don't think the slide says that.  It doesn't

19   suggest that he's an expert witness in this case.  Mr. Devine

20   is a fact witness.

21           While Mr. Simons does correctly note that he was the

22   founder of The Arkin Group, Mr. Devine, prior to that, spent

23   his entire career in the CIA, including head of the

24   narco-trafficking unit of the CIA.  He was number 2 in charge

25   of the CIA and has a very storied history of government service

1   here.

2           He is a fact witness in this case.  There is no

3   question about that.  And we will be presenting his testimony

4   that will confirm that other businesses in Colombia were paying

5   extortion payments to the AUC and other groups.

6           THE COURT:  Okay.  What about this $180 million paid

7   by Occidental?

8           MR. DANTE:  I can address that one next.  Did you want

9   me to address the Chuck Didier picture first?

10          THE COURT:  Go ahead.

11          MR. DANTE:  I think that was the next one in

12  Mr. Simons' presentation.  I think he said it was highly

13  prejudicial because it doesn't specifically say -- or it

14  suggests that the payment -- that this person was threatened

15  and extorted by the AUC.

16          That is not what the title of this says.  It says

17  "What evidence will you hear that Chiquita was threatened and

18  extorted by the narco-terrorists?"  It does not mention AUC.

19  Your Honor has already ruled on this, since they want to -- the

20  plaintiffs want to clearly present evidence of payments from

21  the FARC all the way through time through the AUC, and through

22  the entire time period that Chiquita is permitted to show

23  threats and acts of violence committed by both the leftwing

24  guerrilla groups, as well as the AUC paramilitaries.

25          So there's nothing that's misleading or prejudicial

1    about this, but -- about this title.  And to the extent that

2    Mr. Simons believes it's misleading or prejudicial, I am sure

3    he is going to point it out when Mr. Didier takes the stand and

4    testifies in this case, or he will do it in his closing

5    argument.

6              THE COURT:  Okay.

7              MR. DANTE:  Your Honor, with respect to the timeline,

8    I think you had a specific question, and that was about the

9    $180 million.

10             THE COURT:  Right.  I mean, they pointed out that they

11   thought some of your dates were incorrect, but I guess you can,

12   you know, take that for what it's worth.

13             MR. DANTE:  Sure, your Honor.  We are checking on the

14   dates, the April 8 date and the April 15 date.  And to the

15   extent that that is the same meeting, we will correct it and

16   provide -- make sure that we are providing a correct copy that

17   shows the accurate date.

18             With respect to the $180 million, we will agree to

19   remove that number from the slide as well.

20             THE COURT:  Okay.  Thank you.

21             MR. SIMONS:  Your Honor, just very briefly, with

22   respect to the legal advice issues, I think this will be

23   confusing to the jury, in part because there is a jury

24   instruction that plaintiffs have submitted, and my

25   understanding is Chiquita has not objected to, which instructs

1   the jury that the Colombian criminal code, at all relevant

2   times, prohibited anyone from directly or indirectly

3   contributing resources to terrorist groups, organized crime

4   groups, or illegal armed groups like the AUC.  It also made it

5   a crime not to report a demand for payment from an armed group

6   to the authorities.

7           So the court is going to instruct the jury that based

8   on the law, the Colombian law prohibited this.  And we believe

9   that it would be confusing to suggest to the jury that

10  Colombian lawyers -- and we are -- we are here talking about,

11  just to be very clear -- I think Mr. Dante made reference to

12  legal advice that they got regarding whether payments were

13  legal under U.S. law.

14          THE COURT:  I thought he said both.

15          MR. SIMONS:  Sure, but there are two categories, yes.

16  We are not really talking about U.S. law at the moment.  We are

17  talking about Colombian law.  Both the advice from Mr. Escobar

18  and from Baker & McKenzie, those are Colombian Baker & McKenzie

19  attorneys.  That was all about Colombian law.

20          While Mr. Olson may be testifying, the general counsel

21  at the time, he was the recipient of this advice.  He did not

22  give any of this advice.  And, again, if they had made an

23  advice of counsel defense, then it might be relevant for him to

24  testify:  We were advised by counsel and we relied on that

25  advice.  But they have not made such a defense.

1    Again, we believe it's prejudicial and should not be

2    adverted to in openings.

3    Also, we did not have the opportunity to depose their

4    Colombian lawyers.  Arguably, we could have done that through

5    the letters of request process.  There are a whole lot of

6    witnesses in this case, and we were limited in the number that

7    we were able to depose.

8    THE COURT:  But their names were disclosed as --

9    MR. SIMONS:  Their names were disclosed.  We are not

10   arguing lack of disclosure, your Honor.  We know who they were,

11   and we asked Chiquita to produce some of them voluntarily.

12   With respect to Mr. Devine, I did not hear Mr. Dante

13   say that Mr. Devine's experience in the CIA gave him personal

14   knowledge of payments, threats, and extortion here.  You know,

15   it's similar to, you know, they have another former government

16   expert, Mr. Gaddis, who testifies about his experience in the

17   DEA, and based on his experience, understands the AUC was

18   involved in drug trafficking.  He was a disclosed expert;

19   Mr. Devine is not.

20   I did not hear them say he was party to receiving any

21   threat, facilitated any payments, anything like this that would

22   give him admissible testimony about threats and extortion

23   regarding -- from armed groups to businesses in Colombia.

24   With respect to Mr. Didier, we are not -- the only

25   thing that we are arguing about is the blanket label

1    "narco-terrorist" without specifying FARC.

2          On the timeline, with respect to the December 2003

3    kidnapping, they did label it FARC, which we appreciate.  And

4    we think that is the appropriate label.  So if they change the

5    label to specify that this was the FARC, no objection, your

6    Honor.

7          With respect to Occidental Petroleum, the objection is

8    not just to the $180 million figure.  That was a figure

9    allegedly paid by the U.S. Government to -- I believe to the

10   Colombian government to enhance governmental security around

11   pipelines, not the amount paid by Occidental Petroleum.

12         Our -- the reason Chiquita is making this argument is

13   to suggest that DOJ didn't care or didn't prosecute companies

14   generally for making payments to designated FTOs, because their

15   argument is DOJ knew about payments from Occi to the FARC, but

16   they didn't prosecute them, so Chiquita reasonably believed we

17   could continue making payments and not get prosecuted.

18         We don't have an objection to them arguing that,

19   except for the fact that, again, there is no admissible

20   evidence from any admissible document or witness in this trial

21   that Occi actually made payments to the FARC.

22         So we are happy to go into excruciating detail on all

23   of the discovery we got from Occi, but there is simply no

24   evidence of that, your Honor.  I didn't hear Mr. Dante suggest

25   that there was any -- that they did have admissible evidence

1    that Occi paid the FARC.  So suggesting that they do, again, we

2    believe is not a good faith characterization of the evidence

3    and is highly prejudicial.

4              THE COURT:  Thank you.

5              MR. DANTE:  Your Honor, I will try to be brief.

6    First, Mr. Simons said we are not talking about U.S. law here,

7    we are talking about Colombian law.

8              Well, if we are not talking about the legality of

9    these payments under U.S. law, then I am not sure why the

10   factual proffer is being admitted and why there is so much

11   evidence in this opening argument and in this case about

12   Chiquita violating U.S. laws.

13             That's a major theme of the plaintiffs' case, and for

14   the first time now, I am hearing Mr. Marco -- Mr. Simons, when

15   it's convenient for him, saying it's not -- we are not talking

16   about U.S. law, we are only talking about Colombian law.

17             THE COURT:  I think he was talking about this

18   particular memo was only referring to Colombian law, not the

19   general theme of your defense to the claims.

20             MR. DANTE:  Okay.  He may have, your Honor.  And I

21   think the point is that it is relevant to the reasonable

22   businessperson standard whether Chiquita was checking to see if

23   it was -- if the actions that it was taking were legal under

24   both U.S. law and Colombian law, and that's what it was doing,

25   and that's what the witnesses will continuously testify about.

```
1              With respect to the jury instruction I believe that

2       Mr. Simons referenced -- and I am sure we will be talking about

3       this a lot more at the charging conference.  I don't think we

4       need to belabor that point right now.  I could just say to your

5       Honor, I can represent that Chiquita did object to that

6       instruction and did put a point in there at responding to it.

7              We are certainly not conceding in any way that

8       Chiquita's payments were illegal under Colombian law at any

9       point in time.  That is not a concession that Chiquita is

10      making.  We object to the jury instruction.  And we will deal

11      with that, I think, during the charging conference.

12             Finally, with respect to the Occidental payment issue

13      on the timeline, your Honor, Mr. Olson, who is the former

14      general counsel of Chiquita, will testify when he takes the

15      stand that that Occidental payment was -- payments were

16      discussed extensively during that meeting with the DOJ.

17             In addition, there is also congressional testimony

18      which suggests that -- that shows that Occidental paid -- made

19      payments in Colombia as well, and that is additional evidence

20      that will show this -- that this is accurate.

21             So I think with respect to those two things, the

22      presentation, the opening argument, will clearly indicate that

23      the evidence will show.  And to the extent that Mr. Simons

24      wants to challenge that at a later point in the closing

25      argument, he is certainly entitled to do that.
```

1          THE COURT:  Thank you.  Before we get to the next

2   subject, I want -- yes.  Go ahead.  Did you have something to

3   say about this one point?

4          MR. SIMONS:  Two quick points, your Honor.  Your

5   Honor's clarification of our position is correct.  To be clear,

6   our objection concerns the characterization of advice they got

7   under Colombian law.

8          I have the congressional testimony here that Mr. Dante

9   referred to.  I am happy to provide it to the court.  It

10  does -- Occidental Petroleum does not admit to making payments

11  to the FARC.  They say their contractors and their employees

12  are pressured to make payments.

13         But, again, this is why we conducted discovery of

14  Occidental, in which they essentially denied and did not

15  provide any evidence that Occidental itself had made any

16  contributions to the FARC.

17         They say, "Our contractors are forced to pay a 'war

18  tax' or face the very real threat of having their equipment

19  destroyed and their personnel attacked.  Local workers at our

20  facilities must pay 'protection money' or place their personal

21  safety and that of their families at risk."

22         Mr. -- this is the testimony of Larry Meriage,

23  M-E-R-I-A-G-E, before a congressional committee on February 15,

24  2000.  Mr. Meriage certainly did not admit that his corporation

25  was illegally paying a designated foreign terrorist

```
 1    organization in front of Congress and then have DOJ decide not

 2    to prosecute Occidental Petroleum, which is what the whole

 3    point of Chiquita putting this on their demonstrative is

 4    intended to suggest to the jury.

 5            THE COURT:  Thank you.  Mr. Green, are we moving on to

 6    another subject?

 7            MR. GREEN:  I'm sorry, Judge?

 8            THE COURT:  Are we moving on to another subject?

 9            MR. GREEN:  Yes, sir.

10            THE COURT:  Okay.  Before we do that, I want to confer

11    with my courtroom deputy to see if all of the questionnaires

12    have been downloaded and emailed.  I don't know if you have

13    received them yet.

14            MS. MESA-ESTRADA:  Yes, your Honor.

15            THE COURT:  What I'd like to do is send the jurors to

16    lunch so that they can come back, and we can -- and then we

17    will -- once they get back from lunch, then we can go

18    through -- during our lunch break, we will be able to go

19    through and discuss -- review the -- their answers regarding

20    their hardships.  And then we can bring them up as early as we

21    can.

22            I don't want them sitting down there for another hour

23    while we are arguing about other things.  So give me a chance

24    to get the jurors sent to lunch.  I am going to ask them to

25    come back at -- we are talking about sending the jurors to
```

```
 1    lunch now.  They finished with their questionnaires, right?

 2              (Discussion was held off the record.)

 3              THE COURT:  I am going to have the jurors come back at

 4    1:15 p.m., and hopefully we will be ready to proceed with them.

 5    Does that make sense?

 6              MR. CIOFFI:  Makes sense to us, your Honor.

 7              MR. GREEN:  So we will hold these additional

 8    objections?

 9              THE COURT:  No, I just wanted to take a break to get

10    the jurors sent out.  Then we will deal with those other

11    objections before we take our lunch break.  Okay?  Thank you.

12              Mr. Green, I'm sorry, what's the next set of

13    objections?

14              MR. GREEN:  James Green for the plaintiffs.

15              Judge, I have two slides that I want to object to, at

16    least -- in whole or in part.  The first slide is "What

17    evidence will you see that Chiquita was threatened and extorted

18    by the AUC?"

19              THE COURT:  That Chiquita and other businesses were --

20    is it "What evidence will you see that Chiquita and other

21    businesses were threatened?"

22              MR. GREEN:  No.  It's "What evidence will you see that

23    Chiquita was threatened and extorted by the AUC?"  This is

24    changed from the one that we got yesterday.  So...

25              THE COURT:  Okay.  I think I have it.
```

```
 1          MR. CIOFFI:  We didn't change anything, Judge.
 2   Absolutely not.
 3          THE COURT:  Is this the one that it has the factual
 4   proffer on the left side of it?
 5          MR. GREEN:  No, this is -- it says "Testimony of
 6   Irving Bernal" on the left side and also right above the
 7   deposition excerpts.
 8          THE COURT:  I found it.
 9          MR. GREEN:  Okay.  Judge, the second one is what's
10   called -- I call it the percentage slide.  It's "The evidence
11   will show Chiquita's extorted payments were a small fraction of
12   the AUC's income."
13          THE COURT:  Okay.
14          MR. GREEN:  We only object, Judge, to the middle right
15   wording that says, "Chiquita's extorted payments were an
16   insubstantial fraction, less than 1 percent of" -- excuse me,
17   "less than 100th of 1 percent."  I've highlighted it in my
18   copy.
19          THE COURT:  So what is it you are objecting to?
20          MR. GREEN:  Yes, Judge, on that one, your Honor, to
21   know what percentage of the AUC's income, you need to know what
22   the AUC's income was.  And your Honor has excluded evidence and
23   opinion from Gaddis relating to Chiquita's -- excuse me, the
24   AUC's annual income and income from drug trade as inadmissible
25   hearsay.  That's your order at Docket Entry 3616.
```

```
1            Your Honor has also excluded the testimony from the

2    Colombian retired generals at Docket Entry 3619.  Also, the

3    plaintiffs filed an omnibus motion in limine, at Docket Entry

4    3489 at page 10, also move to exclude evidence of Chiquita's --

5    excuse me, the AUC's income.

6            We believe that this statement -- there is no

7    admissible evidence to support this statement that's

8    highlighted on the right.

9            THE COURT:  Well, as I recall, my orders on the expert

10   witnesses were that they couldn't testify to it because it was

11   based on hearsay and -- but I didn't say they couldn't present

12   other evidence that showed it.  And I don't know what they are

13   going to present and whether they can show it.  And you are

14   asking me to do exactly what you didn't want me to do for your

15   exhibits, which is, in advance, say there is not going to be

16   any evidence to support the statements that you are presenting

17   to the jury in opening statement.

18           MR. GREEN:  Not exactly, Judge.  We filed a motion in

19   limine on this issue which your Honor has not ruled upon.

20           THE COURT:  Oh, okay.

21           MR. GREEN:  Courts commonly direct counsel not to

22   refer to certain evidence until either the evidence has

23   developed at trial --

24           THE COURT:  All right.  I apologize.

25           MR. GREEN:  That would be certainly appropriate at
```

 1   this stage.

 2          THE COURT:  Okay.  I apologize.  So to the extent that

 3   I am going to allow it -- allow evidence on the point and deny

 4   your motion in limine, if you say I haven't ruled on it yet --

 5          MR. GREEN:  Correct.

 6          THE COURT:  -- then you would have no basis to object

 7   to this.

 8          MR. GREEN:  Well, we believe that any such evidence is

 9   based on hearsay.  And there is nothing -- there are no add- --

10   there are no exhibits based upon admissible evidence that would

11   support any kind of percentage of the figure for the AUC's

12   annual income.

13          THE COURT:  All right.  And what's the other one?

14          MR. GREEN:  The second, Judge, is the slide regarding

15   the testimony of Irving Bernal.  There are a number of

16   different problems with this.

17          First, the defendants cite deposition testimony from

18   Irving Bernal, and the first two lines that they quote have

19   not -- were not designated by Chiquita.  I have kind of a

20   summary of -- and I will hand it to your Honor and to opposing

21   counsel -- of the items that were not in Chiquita's

22   designation.  Then following, the remainder of these quotes

23   were objected to in their entirety.

24          And then on the second page, I have a column of what

25   Chiquita designated.  And the section at issue is here, and the

1    section that's quoted -- or, excuse me, listed as the first two

2    lines of the testimony of Irving Bernal were not designated.

3           Further, as to the remaining parts, we have objected

4    to them all.  And may I approach with the excerpt?

5           THE COURT:  Yes.  Is this a deposition that I have

6    already ruled on?

7           MR. GREEN:  No, your Honor.

8           So this is somewhat similar to the previous

9    objection -- this is similar to the previous objection.  In

10   addition, Judge, I think this is -- your Honor has already

11   ruled on this in the expert context.  Your Honor has excluded

12   evidence of opinions by one witness as to another witness'

13   credibility.

14          The plaintiffs objected to the remainder of the quotes

15   on various grounds.  And, as I said, your Honor has not ruled

16   on those.  For example, the quote from -- this is a question

17   from Mr. Cioffi after reciting testimony from Mr. Hasbun.

18          From Mr. Cioffi:  "Mr. Bernal, do you believe

19   Mr. Hasbun would have any reason to lie about what was said at

20   the meeting?"

21          Then he gives an answer.  We believe that that's a

22   question that calls for a credibility opinion by another

23   witness, and that's plainly inadmissible.

24          Some of the other questions is:

25          "So is it fair to say that you believe Mr. Castano

```
 1    would take those same violent reprisals against you if you did

 2    not pay the AUC?

 3              "Answer:  That's affirmative.

 4              "Question:  And do you believe Mr. Castano could have

 5    followed through on those threats and actually inflicted those

 6    violent reprisals?"

 7         Again, we objected on a number of grounds, including

 8    relevancy and, you know, calls for -- I think it's an improper

 9    question and it calls for credibility and, more importantly, it

10    calls for speculation.

11              THE COURT:  Okay.

12              MR. GREEN:  Thank you.

13              THE COURT:  Is that it on -- no.  Still got more, huh?

14              MR. JACQUES:  We have one more.  I think if

15    Mr. Scarola wants to respond to these ones first, that's fine.

16              THE COURT:  Well, let's -- Mr. Green just made the

17    argument, so it should be Mr. Cioffi that gets to respond.

18              MR. JACQUES:  My apologies.

19              MR. CIOFFI:  I will take the compliment.  I appreciate

20    that compliment.

21         Judge, first of all, with respect to Bernal, we didn't

22    summarize anything.  If I may approach the bench, we have the

23    actual pages we cited.  And we think what we cited in the

24    slide, we went above and beyond the call of duty to cite it

25    exactly right, and that it is admissible.
```

```
1          THE COURT:  I don't think they are saying you didn't
2     cite it correctly.  I think they are saying the first two
3     lines, you never designated as part of your deposition
4     designations.  And the rest of it, they are saying is just
5     objectionable, shouldn't allow it.
6          MR. CIOFFI:  I have the designated depositions.
7          THE COURT:  Okay.  Well, show it to Mr. Green, because
8     he is the one that needs to be convinced, not me.
9          MR. CIOFFI:  That's the designated deposition that we
10    submitted to the court.
11         MR. GREEN:  We listed in that form what they
12    designated.  They did not designate page 67.
13         THE COURT:  Okay.  So I guess I will spend my time
14    just looking at your designations and deciding whether you did
15    or didn't -- two lines of a deposition, whether you properly
16    designated.  Okay.  I will -- I got plenty of time to do that.
17         MR. CIOFFI:  I apologize, Judge.  I mean, but we did.
18    And I am going to hand you --
19         THE COURT:  I get -- I understand.  If you say you
20    did, you know, I can understand why you want to show me you
21    did.  And Mr. Green says you didn't.  And I have the
22    designations, all of them strewn all over my office.  I have my
23    whole office with depositions on the sofas and on the tables
24    and on the floor and in boxes, and I will go find them myself
25    and I will decide whether you did or didn't.  That's fine.
```

```
 1              MR. CIOFFI:  Judge, I'm sorry to make -- to impose

 2    that, but I think Mr. Green is also confused because there were

 3    designations, then counterdesignations.  Each side designated,

 4    then counterdesignated.  So that's what's there.

 5              I think the court has already ruled on this.  We do

 6    have admissible evidence that we intend to put forward to the

 7    court about drug trafficking, the number of kilos, the value

 8    and all of that.  So the -- if it doesn't come in, in closing

 9    argument, they can hold this up and say, you know, whatever

10    they want about me.  It won't be as nice as calling me

11    Mr. Scarola, though.

12              THE COURT:  Okay.

13              MR. SCAROLA:  Stipulate to that.  I think that's 7.

14              THE COURT:  All right.  I think we have one more

15    category of objections.

16              MR. GREEN:  Mr. Hager just showed me all the

17    designations, so your Honor can obviously resolve that in terms

18    of the six missing lines in the deposition.  So --

19              THE COURT:  So he showed it to you, and he convinced

20    you that you were correct or you are incorrect?

21              MR. GREEN:  Correct.

22              THE COURT:  All right.  Let's go past this one now.

23              MR. GREEN:  Your Honor, we stand on our previous

24    objections based on the commenting on the credibility of a

25    witness and the speculation.  Again, your Honor has not ruled
```

```
 1    on it yet.

 2              THE COURT:  Thank you.

 3              MR. JACQUES:  Good morning, your Honor, Nicholas

 4    Jacques for the plaintiffs.

 5              THE COURT:  Good morning.

 6              MR. JACQUES:  One final objection.  This one should be

 7    quick and easy, and then we can all get to lunch.  This one is

 8    the slide -- it has three numbered bullet points on it

 9    discussing what, I suppose, Chiquita believes the elements of

10    one of plaintiffs' claims to be, beginning with "Did plaintiffs

11    prove by a preponderance of the evidence."  And this is the one

12    with three separate items on it.  There is another version with

13    just the first two.  I wanted to discuss the third one

14    specifically.

15              THE COURT:  Okay.  So you want to object to the

16    portion where it says, "Did plaintiffs prove" -- "Did

17    plaintiffs prove that Chiquita's extortion payments caused any

18    decedent's death?"  That's what you want to object to, correct?

19              MR. JACQUES:  That is exactly correct.

20              THE COURT:  You don't need to say anything else.  Let

21    me just give Chiquita an opportunity to tell me why that should

22    be in there, since I ruled that they don't have to show that

23    the payments caused any specific death.

24              MR. CIOFFI:  It's broader, Judge.  It says "any

25    decedent's death."  I am not quite sure what the objection is
```

1    to "caused any decedent's death."  They have to prove

2    causation, and causation has to be tied to the decedents in the

3    case.  I don't really understand.

4         THE COURT:  Because there is a difference between the

5    AUC causing the death and the payments causing the deaths.  And

6    while they have to prove that the AUC caused the deaths, I

7    think I had already ruled that they didn't have to show that

8    any -- the payments were responsible for any particular death.

9         MR. CIOFFI:  That's what we meant to say.  So should

10   we say "payments to the AUC"?  Is that it?

11        THE COURT:  You should say that --

12        MR. CIOFFI:  Alleged payments?  That's a disputed

13   issue, number one.  So we are happy to say "payments allegedly

14   made to the AUC caused any decedent's death."

15        THE COURT:  I think that's what I've said you can't

16   do.  I thought I said that you can challenge, and they have to

17   prove that the AUC caused a particular death.

18        I think you said elsewhere that they are not going to

19   be able to prove that the AUC caused any of the deaths.  I

20   think it's number one.  Did the plaintiffs prove that the AUC

21   killed their decedents?

22        MR. CIOFFI:  Right.  This goes to the causation

23   element, which is --

24        THE COURT:  And I agree the causation element is

25   whether they knowingly provided -- you knowingly provided

1    substantial assistance.  That's the causation element.  But I

2    thought I ruled that you can't say that -- or they don't have

3    to show that the payments were directly related to a specific

4    death.  I mean, I don't have the language in front of me and

5    the orders.  But am I not being clear?

6            MR. CIOFFI:  I am not trying to reargue it.  We have

7    made those arguments a number of times over the years, and

8    including in the jury instructions.  So we aren't trying to

9    do -- argue around that.  Our objections are there.

10           We are just trying to raise this third issue as we see

11   it and argue, really, knowing substantial assistance.  So

12   whatever correction the court wants us to make, we will make

13   it.

14           THE COURT:  All right.  I think that needs to be

15   changed more consistent with the language that I have used

16   before, whether you knowingly provided substantial assistance

17   to a degree sufficient to create a foreseeable risk of harm to

18   others.  I mean, I think that's the crux of what should be in

19   there.

20           I am not saying you have to use those words precisely,

21   but you do put in there "substantial assistance" at the very

22   end.  And I think that's really what you need to focus on, was

23   the -- were the payments substantial assistance to a degree

24   sufficient to create a reasonable risk of harm.  Anyway, that's

25   what I think the focus of that last bullet point should relate

1    to.

2         MR. CIOFFI:  Noting our objections as to the different

3    standard, we will put in whatever the court directs.  As I said

4    yesterday, I think it's really important that when you give us

5    your rulings, we mark these up, we both keep them here at the

6    court so that there is no issue about not exchanging them,

7    changing them, and so forth, so that --

8         THE COURT:  I think that if you said, "Did the

9    plaintiffs prove by a preponderance of the evidence that

10   Chiquita's extortion payments were substantial assistance to

11   the AUC?"  I think that would solve my concern.

12        That's probably not adequate for the plaintiffs, but I

13   think it would be within the spirit of what my prior ruling was

14   in giving you the leeway in opening statement to make arguments

15   regarding what you think the evidence is going to show.

16        MR. CIOFFI:  Payments caused -- we could say "knowing

17   substantial assistance."

18        THE COURT:  Yes.

19        MR. CIOFFI:  All right.  We will change it.  Thanks.

20        MR. GREEN:  Judge, may I clarify one thing?  The six

21   lines that we were talking about in terms of the Bernal

22   designations were not in Chiquita's designations.  However,

23   they were in Chiquita's counterdesignations.  And we are not

24   sure if that takes care of the issue, but we are always free to

25   withdraw what we had designated that resulted in that

```
 1   counterdesignation.

 2           THE COURT:  I'm sorry.  Say that again.  You are now

 3   going to withdraw from your designation the portion that will

 4   allow them to present that as a counterdesignation?  And I am

 5   supposed to know what that is?

 6           MR. CIOFFI:  Or that it's proper.

 7           MR. GREEN:  Judge, I am just telling you that they

 8   listed those sentences in their counterdesignations.

 9           THE COURT:  Okay.  So --

10           MR. GREEN:  And we don't have to read -- we don't have

11   to read -- we don't have to use -- well, we will deal with that

12   at trial.

13           THE COURT:  Okay.  All right.  I think we have had

14   enough for the morning.

15           MR. SCHERER:  Your Honor, I beg the court's

16   indulgence.

17           THE COURT:  Yes, Mr. Scherer.

18           MR. SCHERER:  May I approach?

19           THE COURT:  Of course, Mr. Scherer.

20           MR. SCHERER:  Thank you, sir.

21           I have to do a better job because the three minor

22   plaintiffs in this case, in our view, were claimants, and our

23   failure in those disclosures, I think, were corrected six

24   months later when the deposition of the mother was taken and

25   she specifically said -- identified the three kids, who they
```

1    were, what their names were, and that they were parties in the

2    case.

3          And so if the court please, the -- our amended

4    complaint was filed in 2012.

5          THE COURT:  I don't think there's any -- there's any

6    dispute that you named them as parties in response to -- after

7    I granted the motion to add the minors who the statute of

8    limitations didn't apply to.

9          MR. SCHERER:  That was in 2017, your Honor.  Then in

10   2017, we did our initial disclosures, and we did not add the

11   children as claimants -- as plaintiffs or claimants, as your

12   Honor said in the order, but in the deposition that was taken

13   on -- six months later, the grandmother, who is a party and

14   will be testifying here, identified -- was asked the question:

15         "Were the two boys and the little girl, they were the

16   children of your son?

17         "Yes, sir."

18         And then:  "Can you provide me with the names and ages

19   of the children?"

20         And she identified the children.  The grandmother told

21   them, Harold, José, and Alba, and their ages.

22         And then the question was asked:

23         "Are any of your son's children a party to this

24   lawsuit?"

25         And she said:

```
1              "Yes."

2          And the question is:

3              "All three of them?"

4          And she said:

5              "All three of them."

6          All right.  So, your Honor, if we made a mistake six

7     months earlier and didn't name the children because usually the

8     representative party represents the claimants and you don't

9     name them in Florida, and I think in Washington where this --

10         THE COURT:  But you did name them.  You named them.

11    You named them as parties.

12         MR. SCHERER:  We did name them.  We named them as

13    parties.  And then in the deposition -- so there is really

14    no -- so the fact that they weren't named in the form as

15    claimants, but six months later in the deposition, they were

16    advised that we considered them to be claimants, the mother

17    did, and it said that, gives Chiquita all the notice in the

18    world.

19         THE COURT:  There's no surprise or prejudice to them.

20    So the children --

21         MR. SCHERER:  It's great prejudice to us for these

22    three children of the -- Francisco, who was killed in this

23    case, not to have claims in this case.

24         THE COURT:  Yes, sir.

25         MR. SCHERER:  Thank you, sir.
```

```
 1              THE COURT:  Thank you, Mr. Scherer.

 2              Ms. Fundora-Murphy.

 3              MS. FUNDORA-MURPHY:  Hello, your Honor.  Sorry to

 4    belabor this point, but I have to read directly from the

 5    transcript, page 29, line 1.

 6              "Are any of your other family members party to this

 7    lawsuit?

 8              "Answer:  No.

 9              "How about any other members of your son's family?

10    Are they parties to this lawsuit?

11              "No."

12              If counsel wanted to take the position that, after

13    this deposition, they were parties to the lawsuit, they could

14    have amended their initial disclosures, they could have made

15    that clear.  They actually had an obligation to amend their

16    initial disclosures.  That was their affirmative obligation to

17    provide us proper initial disclosures for every plaintiff.

18    They failed to do that.

19              These three individuals, who are not 2, 5, and 7, they

20    are in their 20s, they did not provide initial disclosures as

21    they were required to do, they did not prosecute these claims

22    as plaintiffs.  Again, at the dismissal of the individual

23    defendant's claims, there was a chart.  This just happened a

24    few months ago.  There was a chart that listed all of the

25    plaintiffs for every decedent.  Mr. Scherer did not indicate
```

```
1    that these three individuals were plaintiffs on behalf of this

2    decedent.

3          This is a new thing that has now come up at trial.

4    And beyond all of that, they are not even going to come testify

5    at this trial.  So, again, your Honor, I think we just keep

6    repeating the same arguments over and over again, but in our

7    view, it's pretty clear these are not proper claimants for any

8    kind of damages in this case.

9          THE COURT:  Thank you.

10         All right.  Let's take a lunch recess.  And we will

11   see you at 1:15 p.m.

12         (Recess taken 12:07 p.m. through 1:17 p.m.)

13         THE COURT:  Before we bring the jurors up, I wanted to

14   ask you again whether you wanted me to do what I did yesterday

15   with all these hardship issues or just -- I assume we are going

16   to grant them all and just deal with the people who have said

17   they can be with us.

18         MR. SCAROLA:  I didn't get a count.  How many do we

19   have?

20         THE COURT:  I think we have 12 or 13 that did not

21   indicate hardship.  I believe that was the number.  I think it

22   was 13.  I think I figured we have 31 without -- who have not

23   indicated they have hardships; 18 yesterday and I think 13

24   today.  But I believe that's the number.

25         MR. SCAROLA:  Plaintiffs don't have a strong
```

```
 1    preference.

 2             MR. CIOFFI:  We totally rely on the court's discretion

 3    and experience, if you think a couple could be saved.  I don't

 4    know.

 5             THE COURT:  Well, there are a few that, you know, I

 6    have some question about their legitimacy of their hardships,

 7    but...

 8             MR. CIOFFI:  Maybe go slower on them and quicker on

 9    the others.  I don't know.  Whatever you think.  I hate to sort

10    of single out people, but...

11             THE COURT:  Especially if we are going to try and keep

12    them, you don't want to antagonize them or alienate them by

13    harsh cross-examination.

14             MR. CIOFFI:  I agree.

15             THE COURT:  You can go get them, and I guess between

16    now and then we will decide whether we are going to just excuse

17    everybody or not.  I will think about how I want to do it.

18             MR. SCAROLA:  I would observe that there is probably

19    more productive use of the court's time.  Given all that your

20    Honor has to do, there is probably more productive use of the

21    court's time than attempting to save two or three of the

22    claimed hardship jurors.  But...

23             MR. CIOFFI:  Agreed, Judge.  It will be good if we can

24    get your ruling from the bench today on the demonstratives so

25    we can finalize those decks and leave them with you.
```

```
 1              THE COURT:  Okay.  Well, let's assume that I just
 2    excuse everybody that's claimed a hardship and we keep the
 3    rest, do we want to do any examination of them, or do we want
 4    to just tell them to come back tomorrow?  Because I am not sure
 5    we have enough yet, because we haven't gotten through cause
 6    challenges, and you know, there are a lot of --
 7              MR. SCAROLA:  Looking through those questionnaires,
 8    there is a lot of reason to anticipate there will be some
 9    significant cause challenges.
10              THE COURT:  So we are only working with 33 or 31, I
11    think, potential; there are a lot of potential cause challenges
12    that I can see in those questionnaires.
13              MR. SCAROLA:  Do we have additional jurors available
14    tomorrow?
15              THE COURT:  We can.
16              MR. SCAROLA:  We can?
17              THE COURT:  Yes, I can get more in.  It's another day
18    of jury selection.  Well, because we're then going to have to
19    put off jury selection until Monday.  And so, you know, again,
20    we are just...
21              MR. SCAROLA:  If what we were to do would simply be to
22    automatically excuse from panel 3 all of the hardship
23    challenges without going through any examination, then we would
24    have tomorrow afternoon to combine all -- whatever we have left
25    of all three panels to attempt to get a jury tomorrow
```

```
 1    afternoon.  That would be a possibility.

 2              THE COURT:  I am not sure we are going to be able to

 3    do it in an afternoon.

 4              MR. SCAROLA:  I am not sure we could either, but -- in

 5    fact, we probably couldn't.  That's probably unrealistic.

 6              THE COURT:  Were you going to say something,

 7    Mr. Cioffi?

 8              MR. CIOFFI:  I would agree, unrealistic, Judge.

 9              THE COURT:  Well, do either of you think we can get a

10    jury from the group that we have, 18 yesterday and maybe 13

11    today?

12              MR. SCAROLA:  No, sir.  I think it very unlikely.

13              MR. CIOFFI:  I am a little more of an optimist, so I

14    would hope so, but...

15              THE COURT:  I think most of the challenges that I see

16    are going to be coming from your side.

17              MR. CIOFFI:  There are some pretty definitive opinions

18    in those questions.

19              THE COURT:  So that's why I am giving you some leeway

20    here.

21              MR. CIOFFI:  I agree.  I mean, if it's possible to

22    bring in more tomorrow, that would be ideal.

23              THE COURT:  Well, it is possible.  It is possible.

24    Because this jury venire is here for two weeks, and so

25    tomorrow, there are more out there.
```

1          MR. CIOFFI:  Then selection on Monday, opening on

2      Tuesday.  In the long run, it's all about what's the most

3      efficient way to move forward.

4          THE COURT:  Well, and also what's going to get us the

5      best jury to work with rather than just trying to put bodies in

6      the jury box.

7          MR. CIOFFI:  Agreed, Judge.  You know the *venires*

8      certainly better than I do, and Mr. Scarola I am sure knows a

9      lot more than I do about them, so...

10         THE COURT:  Well, I don't think we are going to get

11     enough.  If I go through all the hardships and I convince two

12     or three that maybe they can serve, despite their belief that

13     they can't, I am not sure that's going to change the fact that

14     we may need to get together tomorrow again with another group.

15     So why don't we just confirm -- why don't we do this.  Why

16     don't I confirm with the people that say they don't have a

17     hardship that they can do it, and then excuse everybody else,

18     excuse everybody, and then tell them we are going to have them

19     come back, I guess, probably on Monday.

20         MR. SCAROLA:  Yes, sir, that sounds like the

21     unfortunate practicality that we have to confront.

22         MR. CIOFFI:  Again, agreed, Judge.  I do think it's

23     important to test those who didn't state hardship, but are on

24     the fence.  To some extent.

25         THE COURT:  Well, there are people who definitively

```
 1   say no.

 2              MR. CIOFFI:  Right.

 3              THE COURT:  But I just want to confirm with them that

 4   we are not going to then lose them on Monday.

 5              MR. CIOFFI:  Right.

 6              THE COURT:  That's what you are suggesting.

 7              MR. CIOFFI:  But I am saying those who have not

 8   expressed any hardship, just to confirm.  I think you said

 9   earlier, confirming that they are in.

10              THE COURT:  Right.  Yes.

11              MR. CIOFFI:  Okay, I agree.  Thank you.

12              THE COURT:  All right.

13              MR. SCAROLA:  Your Honor, we have distributed paddles

14   in all of the seats for this next group.

15              THE COURT:  In the right way.  Not the wrong way I

16   told you yesterday.

17              MR. SCAROLA:  I think we have done it in the right

18   way.

19              THE COURT:  Okay.

20              MR. SCAROLA:  And we accept full responsibility for

21   yesterday's confusion.

22              THE COURT:  That was my fault, and I should have known

23   by now how she seats people.

24              MR. SCAROLA:  We will also make sure that we have the

25   right numbered paddles for the next group.
```

```
 1              THE COURT:  All right.  I will confirm with my
 2    courtroom deputy that we can get more people in here tomorrow.
 3    I am quite certain we can.
 4              Do we want another group of 50 for tomorrow?
 5              MR. SCAROLA:  Yes.
 6              THE COURT:  I think we will need that, probably.
 7    Seems like it.
 8              MR. CIOFFI:  Yes, whatever is practical and
 9    reasonable.  I think 40, 38, 40.
10              MR. SCAROLA:  I think we can seat 60, and if we can
11    get 60 here, it doesn't make any sense not to fill the seats.
12              THE COURT:  I will deal with that later.
13              (The prospective jury enters the courtroom at 1:27
14    p.m.)
15              THE COURT:  Please be seated, everyone.
16              Welcome back, ladies and gentlemen.  Thank you for
17    your patience and for your cooperation with us today.  I know
18    it's been a long ordeal so far for you.  We appreciate your
19    willingness to serve, your answers to the questionnaire that we
20    have reviewed.  And, again, those of you who are indicating
21    that you can serve on this jury for the time we need you, we
22    certainly appreciate that cooperation and that desire to
23    perform our civic duty.  So thank you.
24              What I'd like to do, and we are going to try and
25    shorten this segment of the proceeding, I'd like to focus on
```

1    the individuals who indicated they do not have a hardship and

2    can be with us for the time that we need you.  I just want to

3    verify with you that -- make sure that you can, in fact, serve

4    for the time we need you.  And the rest of the group I am

5    probably going to excuse.

6        Even those that are going to possibly be on the jury,

7    we will also excuse you after I give you some instructions on

8    how to conduct yourself going forward and when you should come

9    back for further examination by myself and the attorneys in the

10   case, because we are not going to be able to complete the jury

11   selection process.  With the group we had yesterday and the

12   group that we have today that are willing and able to serve, we

13   still don't have enough of a pool to be able to select a jury.

14       So we are going to have to bring in some additional

15   people tomorrow, and hopefully between yesterday's group,

16   today's group, and tomorrow's group, we will have enough to

17   work with on Monday to then go through the questioning of you

18   individually and learn a little bit about each of you so we can

19   decide whether you are going to be a fair and impartial juror

20   in this particular case.

21       Even though you have the time to serve, there may be

22   things about your background, your experiences, or your views

23   on issues that touch upon this case that may prevent you from

24   being a fair and impartial juror.  So we are going to have to

25   go through that process with those of you who are able to

```
 1    serve, and that will hopefully take place on Monday, and by
 2    Monday, we are going to hopefully have a jury and be able to
 3    start the actual trial on Tuesday of next week.
 4          So before we go any further, I need to have all of you
 5    sworn to tell the truth during this process.  So I am going to
 6    ask all of you to please rise and face Ms. Ferrante, and she
 7    will swear you in.
 8          (Panel of prospective jurors sworn in.)
 9          THE COURT:  Thank you.
10          Now, before we go any further, I know all of you met
11    Mr. Scarola and Mr. Cioffi this morning.  And you were told
12    there are other lawyers involved in the case.  So I am going to
13    give them the opportunity to introduce their co-counsel that
14    they will be working with for those of you who are going to be
15    possibly on this jury.
16          Mr. Scarola.
17          MR. SCAROLA:  Thank you very much, your Honor.
18          Good afternoon, ladies and gentlemen.  As I had an
19    opportunity to introduce myself earlier, my name is Jack
20    Scarola.  I practice with the a firm here in West Palm Beach
21    called Searcy Denney Scarola Barnhart & Shipley.  With me at
22    counsel table is Victoria Mesa-Estrada and Mariano Garcia, both
23    of whom are partners at Searcy Denney, and Marissa Vahlsing.
24    Marissa is an attorney with a Washington, D.C., public interest
25    law firm called EarthRights.  There are a number of other
```

1  lawyers who are right now seated at the jury box, and each of

2  them is going to stand and introduce themselves.  Thank you.

3        THE COURT:  Mr. Scherer.

4        MR. SCHERER:  Thank you, your Honor.

5        I am William Scherer with Conrad & Scherer in

6  Fort Lauderdale primarily.

7        MS. KROEGER:  Leslie Kroeger with Cohen Milstein.  I

8  practice locally in Palm Beach Gardens.

9        MR. GREEN:  Hello, I am James Green.  I am a lawyer

10  here in West Palm Beach with a small firm by my name, and I

11  co-counsel with Jack Scarola and Victoria.

12        MR. WICHMANN:  I am Bill Wichmann.  I have a small

13  firm, practice solo.

14        MS. JORDAN:  Good afternoon.  My name is Maryum

15  Jordan, and I am an attorney at EarthRights International,

16  based in DC.

17        MS. VALENTIN-DIAZ:  Good afternoon.  Gabriela

18  Valentin-Diaz, also with EarthRights International, a public

19  interest law firm in DC.

20        MR. REITER:  My name is Jonathan C. Reiter.  I

21  represent two of the plaintiffs in this lawsuit.  And my office

22  is in the Empire State Building in New York City.  I don't

23  expect you will know me or know anything about me.  I don't

24  recognize anybody in this audience.  I am sure we will get to

25  know each other as we go along.

```
1              MR. GJULLIN:  Good afternoon.  My name is Wyatt

2    Gjullin.  I am with EarthRights International, a public

3    interest legal organization.  I'd also like to introduce one of

4    my co -- my colleagues, Marco Simons, also with EarthRights

5    International.  He is not here with us today.  Thank you.

6              MR. JACQUES:  Nicholas Jacques.  I am also with

7    Ms. Kroeger at Cohen Milstein, although I am from our

8    Washington, DC, office.

9              MR. HERZ:  I'm Richard Herz, also with EarthRights

10   International.

11             THE COURT:  Thank you.

12             Mr. Cioffi.

13             MR. CIOFFI:  Thank you, your Honor.

14             Again, good to see you all from this morning.  My

15   name, again, is Michael Cioffi.  I am at a law firm called

16   Blank Rome, which is headquartered in Philadelphia, and we have

17   offices in Philadelphia, New York, Cincinnati, where my

18   partners and colleagues, who I will introduce to you now, all

19   move around in.  So my partner, Melissa Murphy; my colleague

20   Serena Gopal; my colleague, Mike Stoolman; my partner, Frank

21   Dante.

22             MR. DANTE:  Good afternoon, ladies and gentlemen.

23             MR. CIOFFI:  We are the lawyers for the defendant.

24             Thank you again for your service and your attention

25   this afternoon.
```

```
 1                THE COURT:  Thank you.

 2                All right, ladies and gentlemen, as I mentioned, I am

 3     going to try and just focus on those of you who told us you

 4     could be with us and it would not be a hardship for you to

 5     serve, and I am just going to call on those that, according to

 6     my review of the questionnaires, those of you who are in that

 7     category.  And the first name that I come across is

 8     Mr. Bayless.

 9                Good afternoon, sir.  How are you?

10                Could we get him a microphone.

11                Could you hold your number up for the court reporter

12     so she can make sure we have the right person with the right

13     number.

14                You can put it down now, Mr. Bayless.

15                So, Mr. Bayless, I reviewed your questionnaire, and

16     you indicated it would not be a hardship for you to be with us;

17     is that correct?

18                THE PROSPECTIVE JUROR:  I believe it won't.

19                THE COURT:  It won't?

20                THE PROSPECTIVE JUROR:  It will not.

21                THE COURT:  Okay.  And you are willing to serve if we

22     need you?

23                THE PROSPECTIVE JUROR:  Yes.

24                THE COURT:  Okay.  Thank you so much, sir.  We

25     appreciate your service, or desire to serve.
```

 1            The next individual that I believe indicated they did

 2    not have an issue with being able to serve was Karen Molloy.

 3            Good afternoon.

 4            THE PROSPECTIVE JUROR:  Good afternoon, your Honor.

 5            THE COURT:  Am I correct that you can serve if we need

 6    you?

 7            THE PROSPECTIVE JUROR:  Yes, sir.

 8            THE COURT:  Okay.  Thank you so much.

 9            All right.  The next person that I have is Ellen

10    Mattingly.

11            THE PROSPECTIVE JUROR:  Yes, sir.

12            THE COURT:  Good afternoon.  Am I correct that you are

13    able to serve the entire time if we need you?

14            THE PROSPECTIVE JUROR:  Yes.

15            THE COURT:  Okay.  Thank you very much.

16            The next person that I have, based upon my review of

17    the responses, was Ms. O'Brien, or is "Kelly" male or female?

18    Okay.  Sometimes Kelly is a male name.

19            So, Ms. O'Brien, am I correct that you are able to

20    serve if we need you?

21            THE PROSPECTIVE JUROR:  Yes, sir.

22            THE COURT:  Thank you so much.

23            Craig White, good afternoon, sir.

24            THE PROSPECTIVE JUROR:  Good afternoon.

25            THE COURT:  And am I correct that you can serve if we

```
 1    need you?
 2              THE PROSPECTIVE JUROR:  Correct.
 3              THE COURT:  All right.  Thank you.
 4              All right.  Juror number 79, I don't see a first name,
 5    or the name of the individual, but I see a last name.  Is it
 6    Crichton?
 7              THE PROSPECTIVE JUROR:  Crichton.
 8              THE COURT:  Crichton.  Okay.  Good afternoon.  So what
 9    is your first name?
10              THE PROSPECTIVE JUROR:  Christopher.
11              THE COURT:  Christopher Crichton.
12              THE PROSPECTIVE JUROR:  Yes, your Honor.
13              THE COURT:  Okay.  Thank you.
14              You didn't fill your name out on the second sheet, so
15    I apologize for not recognizing your name.  And I also -- it's
16    indicated that you are able to serve for us if we need you for
17    the entire time; is that correct?
18              THE PROSPECTIVE JUROR:  That's correct, your Honor.
19              THE COURT:  All right.  Thank you very much, sir.
20              Luann Alonso.  Good afternoon.
21              THE PROSPECTIVE JUROR:  Good afternoon.
22              THE COURT:  You are juror 88, correct?
23              THE PROSPECTIVE JUROR:  Yes.
24              THE COURT:  And you are able to serve if we need you,
25    correct.
```

1          THE PROSPECTIVE JUROR:  To be honest, I took it as the

2     hardship as far as issues money-wise, but my husband reminded

3     me we are caregivers, part-time caregivers, for his parents.

4     They both have dementia and live with my sister-in-law.  So we

5     do help out with them.

6          THE COURT:  Okay.  But you work, right?

7          THE PROSPECTIVE JUROR:  I work two days a week.

8          THE COURT:  Okay.  And your husband, does he work?

9          THE PROSPECTIVE JUROR:  My husband is retired.

10         THE COURT:  He's retired.  All right.  So if he's --

11         THE PROSPECTIVE JUROR:  I'm sorry, but I thought it

12    was more of a money thing that you were -- when you said

13    hardship.  I didn't realize about my in-laws, that we do help

14    take care of them.

15         THE COURT:  Okay.  And that's very admirable, and we

16    certainly understand that.  But if your husband is retired, and

17    is there any reason why --

18         THE PROSPECTIVE JUROR:  Well, my father-in-law just

19    got out of the hospital.  He broke his hip.  So he is on

20    physical therapy and someone coming to the house.

21         THE COURT:  Okay.  Do they live with you?

22         THE PROSPECTIVE JUROR:  No, they live with my

23    sister-in-law, but her and her husband work full-time.

24         THE COURT:  Okay.  So, again, I am trying to

25    understand how this --

```
 1              THE PROSPECTIVE JUROR:  So we have part-time help with
 2    the ladies that come to check, the home healthcare, but we also
 3    do -- you know, we also help out if they can't make it or if
 4    they are sick.
 5              THE COURT:  Perfectly understandable.  My question,
 6    though, is, if your husband is retired, couldn't he, for the
 7    time period that you are going to be on the jury, if you are
 8    selected, couldn't he take care of those responsibilities
 9    while --
10              THE PROSPECTIVE JUROR:  For my father-in-law, yes.
11    For my mother-in-law, he does not bathe her, give her the
12    showers.  I do that.
13              THE COURT:  Okay.  And is there any reason you
14    couldn't bathe her or give her showers either in the morning,
15    before you came to court, or in the evening, after you got back
16    from court?
17              THE PROSPECTIVE JUROR:  Well, I live in Boynton and
18    they live in Boca.  So it would be a little bit.  But if I need
19    to, then I will make it happen.
20              THE COURT:  That's what I am trying to understand.
21              THE PROSPECTIVE JUROR:  If I need to, I will make it
22    happen.
23              THE COURT:  It's something that can be worked out if
24    necessary, yes?
25              THE PROSPECTIVE JUROR:  Yes.
```

```
 1              THE COURT:  Okay.  So if those things can be worked
 2    out, you are otherwise able to be with us?
 3              THE PROSPECTIVE JUROR:  Yes, your Honor.
 4              THE COURT:  Okay.  Thank you so much.
 5         All right.  Is it Erika Ponsoalt?  Did I say that
 6    correctly?  Juror number 90, did I say your name correctly?
 7              THE PROSPECTIVE JUROR:  Erica Brush.
 8              THE COURT:  I could not read your name.  All right.
 9    Now I see it's Brush.
10              I apologize for mispronouncing your last name.
11              THE PROSPECTIVE JUROR:  It's okay.
12              THE COURT:  And you indicated it would not be a
13    hardship for you, correct?
14              THE PROSPECTIVE JUROR:  Yeah, the only thing, my
15    daughter is getting graduate.  I have to go to Gainesville.
16    But, yeah, after that, the other thing, my first language is
17    Spanish.  I can understand English, but I have some hard time
18    too.  Yeah.
19              THE COURT:  Okay.  So I am having a hard time hearing
20    you, so -- but let me see if I understood what you said.
21              You've got your daughter is graduating from University
22    of Florida?
23              THE PROSPECTIVE JUROR:  Yes.
24              THE COURT:  Soon?  Yes?
25              THE PROSPECTIVE JUROR:  Uh-huh, yes.
```

```
 1              THE COURT:  Okay.  Do you know what date her
 2     graduation ceremony is?
 3              THE PROSPECTIVE JUROR:  Yes, it's May 6.
 4              THE COURT:  May 6.  And that is what day of the week,
 5     do we know?
 6              THE PROSPECTIVE JUROR:  Monday.
 7              THE COURT:  Monday.  Okay.  Thank you.
 8              All right.  And then you mentioned that -- I'm sorry,
 9     what was the other thing you mentioned?  Spanish.  English is
10     not your first language.  Is that what you said?
11              THE PROSPECTIVE JUROR:  Uh-huh.
12              THE COURT:  Do you have trouble understanding English?
13              THE PROSPECTIVE JUROR:  Sometimes, yes, when it's some
14     like a technical, like...
15              THE COURT:  So you have some trouble, did you say
16     technical language?
17              THE PROSPECTIVE JUROR:  Yes, when it's technical
18     language.  Like, I understand the basic law, yeah.
19              THE COURT:  Okay.  Do you think you would be able to
20     sit on a jury and listen to most of the evidence that's going
21     to be presented to you in English?  There will be witnesses
22     that are going to be testifying in Spanish, but their testimony
23     is going to be translated with an interpreter.  And you are
24     going to have to listen to the translation that's presented by
25     the interpreter.  Do you think you are going to have trouble
```

```
 1   following the English translations?

 2          THE PROSPECTIVE JUROR:  I am not sure, but I can try.

 3   I am not sure, yeah.  But I can try.

 4          THE COURT:  All right.  Other than the graduation on

 5   May 6 and the language, those are the only issues you have got?

 6          THE PROSPECTIVE JUROR:  Yeah.  I am getting also high

 7   blood pressure and anxiety.  Like, yeah.

 8          THE COURT:  Okay.  But are you taking medication for

 9   that?

10          THE PROSPECTIVE JUROR:  Yeah, but I bring my

11   medication, yes.

12          THE COURT:  When you are on your medication, do you

13   have any problems?

14          THE PROSPECTIVE JUROR:  No.

15          THE COURT:  Okay.  So you could be able to be with us

16   if you are taking your medication.

17          THE PROSPECTIVE JUROR:  Uh-huh, yes.  Yes, sir.

18          THE COURT:  All right.  Thank you so much.

19          THE PROSPECTIVE JUROR:  You are welcome.  Thank you.

20          THE COURT:  Okay.  Marcia Howard.

21          Good afternoon, ma'am.  You can be with us if we need

22   you; is that correct?

23          THE PROSPECTIVE JUROR:  Yes, I can.

24          THE COURT:  Okay.  Thank you, ma'am.

25          Mario Negron.
```

```
 1                  Good afternoon.

 2                  THE PROSPECTIVE JUROR:  Good afternoon, your Honor.

 3                  THE COURT:  You also could be with us if we need you?

 4                  THE PROSPECTIVE JUROR:  Yes, sir.

 5                  THE COURT:  Okay.  Thank you so much.

 6                  Is it Halim, Most?  Did I say that correctly?

 7                  THE PROSPECTIVE JUROR:  Yes.

 8                  THE COURT:  Good afternoon.

 9                  THE PROSPECTIVE JUROR:  Good afternoon.

10                  THE COURT:  You are juror number 104; is that correct?

11    Can you hold the paddle?

12                  THE PROSPECTIVE JUROR:  Yes.

13                  THE COURT:  104?

14                  THE PROSPECTIVE JUROR:  104.

15                  THE COURT:  Now, actually, I wasn't sure on your

16    questionnaire whether you could do it or not, because you

17    didn't check off that particular answer.  So would you be able

18    to serve the six weeks if we need you in this case?

19                  THE PROSPECTIVE JUROR:  Yes, sir.

20                  THE COURT:  Okay.  There would be no problem?

21                  THE PROSPECTIVE JUROR:  No.

22                  THE COURT:  Okay.  Thank you so much, ma'am.

23                  Ms. Adams.  Shelia Adams.

24                  Good afternoon.

25                  THE PROSPECTIVE JUROR:  Good afternoon.
```

```
 1                    THE COURT:  How are you?

 2                    THE PROSPECTIVE JUROR:  Good.

 3                    THE COURT:  You have indicated you could serve if we

 4        need you; is that correct?

 5                    THE PROSPECTIVE JUROR:  Yes.

 6                    THE COURT:  Thank you so much, ma'am.

 7                    And Ruth Lindor-Jean, juror number 113.

 8                    Good afternoon.

 9                    THE PROSPECTIVE JUROR:  Good afternoon.

10                    THE COURT:  And you can be with us also; is that

11        correct?

12                    THE PROSPECTIVE JUROR:  Yes.  I don't have a hardship,

13        but do I realize that this is -- I am a school counselor, and

14        this is the end of the school year, so I just want to put that

15        out there.

16                    THE COURT:  All right.  Don't they have other

17        counselors who might be able to step in, if needed?

18                    THE PROSPECTIVE JUROR:  I am a district counselor.

19        It's four of us throughout the county, and I service several

20        schools.  So, I mean, I don't foresee a big issue with it;

21        however, I do want to put that out there that I will be -- that

22        I am a school counselor and this is towards the end of the

23        school year, graduating seniors.

24                    THE COURT:  Sure.  Just to let you know, there are

25        going to be a few days during this time period that we are
```

1   going to be not in session.  So mostly it is going to be on

2   Fridays.  We are going to have a few Fridays that we will be

3   off.  So maybe that will give you time to take care of other

4   matters.  Would that be helpful to you?

5           THE PROSPECTIVE JUROR:  Yes.  I just want you to know

6   that, you know.

7           THE COURT:  Okay.  I think we appreciate your

8   sensitivity of your position.  Thank you.

9           Those are the ones that I noted in my review of the

10  questionnaires that indicated you could serve.  Did I overlook

11  someone who can serve and I missed?  I did not speak to?  No?

12  I got everyone?  All right.

13          So the rest of you, we are going to honor your

14  hardship cases and excuse you from this case.  You are not

15  excused for the rest of the jury period that you were called to

16  be considered.  That's this week, the rest of this week, which

17  is just tomorrow, and next week.  It's possible that you might

18  be called back on other cases.  I don't know of any other jury

19  trials that are scheduled next week, so it's not likely that

20  you will be called, but I need you to keep calling that jury

21  number until the end of next week to make sure you are not

22  needed on another case.

23          Those of you that I spoke to and indicated you are

24  able to serve, as I think I mentioned earlier, we need to bring

25  another group of people in tomorrow to go through the same

1    process and try and gather enough prospective jurors so that we

2    can go through the next step, which is to speak to you

3    individually about your particular circumstances, your views on

4    issues that touch on this case, see if there are any issues or

5    opinions or views that you have that might prevent from you

6    being fair and impartial in this case, and then select the

7    actual jurors who are going to sit on the case.  It looks like

8    we are not going to be able to do that until Monday.

9         So those of you who are still among the jury pool, I

10   am going to ask you to be back here on Monday.  Unfortunately,

11   we can't start at 9:00 o'clock on Monday.  I haven't told the

12   lawyers this yet, but we can't start until 10:00 o'clock on

13   Monday.  So it's going to be a little later start.

14        I am going to ask all of you to please understand you

15   cannot discuss this case with anyone; you can't do any research

16   about the case, between now and Monday; you can't talk to

17   anyone about the subject matter of this case.  You have heard a

18   little bit about that this morning, but you are prohibited from

19   trying to read anything that might appear in the papers about

20   this case, conduct any independent research on the Internet

21   about the case, or about any of the lawyers that you have been

22   introduced to.  You cannot have any information about the case

23   come to you other than through the courtroom.  So please be

24   aware of that restriction and limitation.

25        And, otherwise, I need those of you who said you are

1    going to be able to serve, I need you to give your phone number

2    to Ms. Ferrante before you leave so she can contact you in the

3    event our plans change in any way.  Unless you hear from us

4    otherwise, if you could be back, say, by 9:45 a.m. on Monday,

5    in the jury room, where you were this morning.  All right?

6           Anybody have any questions?  Any of the people that

7    are coming back have any questions about the instructions I

8    just gave you?  No.  All right.

9           So those of you who are still in the group, stay

10   behind, give Ms. Ferrante your phone number.

11          Everyone else, thank you for being with us.  Thank you

12   for your willingness to serve, and good luck to all of you.

13   And keep calling that number.

14          (The prospective jurors exited the courtroom at 2:01

15   p.m.)

16          THE COURT:  Why don't we take a recess, and I will

17   reflect on your objections, and we can get back maybe in an

18   hour, and hopefully I will have some rulings for you on the

19   objections.  And then we will get back together in the morning,

20   unless there's anything else we need to discuss.

21          MR. SCAROLA:  No, sir.  Thank you.

22          MR. CIOFFI:  That would be great, Judge.  Thanks.

23          THE COURT:  Okay.  Why don't we get back together

24   around 3:00 o'clock.  All right?

25          MR. CIOFFI:  Yes, sir.

```
 1              THE COURT:  Okay.  Thank you.

 2              (Recess taken 2:04 pm. through 2:59 p.m.)

 3              THE COURT:  Please be seated.

 4              MR. SCAROLA:  So nice to be back, sir.

 5              THE COURT:  So let me give you some rulings on these

 6    demonstratives.

 7              Maybe it will be easier to say which ones I am going

 8    to maybe sustain the objection, and then everything else is

 9    overruled, rather than going through each one one by one,

10    because the order is off.

11              One thing I don't think we actually discussed

12    specifically was the issue about this photograph.  I know it

13    was mentioned, but it then kind of never was discussed

14    specifically, about some photographs that came from a

15    publication.

16              Ms. Fundora-Murphy, was that --

17              MR. CIOFFI:  Yes, that was my objection, Judge.  It

18    was mostly on hearsay.  *The Economist* article and photograph,

19    yes, sir.

20              THE COURT:  Okay.  And so I only have in my submission

21    here one photograph.  Were there more than -- was there more

22    than one?

23              MR. SCAROLA:  No, sir, that's it.

24              THE COURT:  Okay.  What's the source of this

25    photograph?
```

1          MR. SCAROLA:  The source is *The Economist*, the British

2     weekly news magazine, and it was published in 1997.  The exact

3     date is on the demonstrative itself, and it is being used

4     solely to corroborate notice to Chiquita with regard to the

5     extensive violence attributable to the AUC.

6          The AUC is expressly identified as responsible for the

7     deaths depicted in the photograph.

8          THE COURT:  And you are just submitting the photograph

9     and not the article?

10          MR. SCAROLA:  Correct, yes, your Honor.

11          THE COURT:  And I guess your thinking is, is that *The*

12     *Economist* is widely distributed and known?

13          MR. SCAROLA:  It's a highly respected, known news

14     source, and the thinking is that Chiquita, through all of its

15     various executives, was clearly exposed to this publicity, or

16     this international news source, with regard to what was going

17     on in the country in which it was operating.

18          THE COURT:  All right.  So I am going to sustain the

19     objection to showing this in opening statement.  Whether you

20     can present evidence during the trial that they knew about

21     this, I don't know that you can -- as far as opening is

22     concerned, I am a little concerned about you being able to

23     suggest a showing of, which is, you know, a fairly graphic

24     picture of dead bodies in the back of a SUV, looks like.  That

25     somehow, because it was published, it's like saying, well, it

1    was published in *The New York Times*; you must have known about

2    it.  Or it was published in, you know, some other widely

3    known -- *New Yorker* or...

4          MR. SCAROLA:  I understand the court's ruling.  That's

5    fine.  Do not include it in opening.

6          THE COURT:  Okay.  On the slide, or demonstrative,

7    where you, Mr. Scarola, characterized it as an issue, you are

8    able to state issues that you believe are going to be part of

9    the case, I think it's too argumentative for purposes of

10   opening.  I think you should be able to say something to the

11   effect either, "We, or plaintiffs, are going to prove or

12   demonstrate that Chiquita helped violent terrorists when they

13   knew they were murdering thousands of innocent people."  I

14   mean, I think you can say that in opening, if you want to flash

15   that up there, but I don't -- I think the way you have it

16   phrased is too argumentative.  So if you want me to repeat what

17   I said, I think you get the gist of it.

18         MR. SCAROLA:  I get the gist of it.  Thank you, sir.

19         MR. DANTE:  This one you're referring to?

20         THE COURT:  The one that says, "Is there ever an

21   acceptable excuse for helping violent terrorists?"  I would

22   require them to modify it to say, "We are going to prove or

23   demonstrate that Chiquita helped violent terrorists when they

24   knew they were murdering thousands of innocent people."  I

25   think that's fair, and it's phrased in what you are going to

1    prove as opposed to an argument that there is never an

2    acceptable reason to do it.

3           I am not sure that the statement from Colin Powell is

4    going to be admissible.  So I am not -- I am going to ask you

5    not to put that up in opening.  So if I am not sure it's going

6    to be admissible, I would rather stay away from it being put in

7    opening.

8           MR. SCAROLA:  Understood, sir.

9           Is it all right if I address the court while I am

10   seated?

11          THE COURT:  Yes.  Just get the microphone closer to

12   you.

13          MR. SCAROLA:  Yes, thank you.

14          Your Honor, I want to be sure that I am not running

15   afoul of the court's ruling, if I, without use of this

16   demonstrative, talk about the factors that led, in September of

17   2001, to the U.S.' designation of the AUC as an FTO.

18          THE COURT:  Well, if you are going to tell them that

19   that's what you are going to show during the course of the

20   testimony or the evidence, yes.

21          MR. SCAROLA:  Okay.

22          THE COURT:  I just don't want you to put it with Colin

23   Powell's name as a quote from him if it may not come into

24   evidence.  But if you are going to -- if you believe you are

25   going to be able to prove that these things were factors in the

1    government's decision to put them on the terrorist list, then I

2    think you can make that argument or suggestion to them.

3         MR. SCAROLA:  Can I use this demonstrative deleting

4    Colin Powell's name, Washington, DC, September 10, 2001, from

5    the demonstrative, and simply reference the fact that

6    plaintiffs will prove that the basis for the AUC's designation

7    as a foreign terrorist organization was a finding by the

8    federal government that the AUC has carried out numerous acts

9    of terrorism, et cetera?

10        MR. CIOFFI:  Judge, we took this statement on this

11   demonstrative to be a quote.

12        MR. SCAROLA:  It is a quote.

13        MR. CIOFFI:  Yes, but they can't just turn it into a

14   statement, unless they have some other -- I think what the

15   court's ruling is they have to have some other reasonable

16   belief that there will be admissible evidence, not Colin

17   Powell's statement.

18        MR. SCAROLA:  We reasonably believe that we are going

19   to prove that what is here is the basis for the federal

20   government's designation of the AUC as a terrorist organization

21   in September of 2001.  I will not attribute the statement to

22   Colin Powell, and I will not represent this to be the direct

23   quote from any document.

24        THE COURT:  I think you could -- the way this is

25   presented, it looks like it's a quote from someone.  So if you

1    could break it up in a demonstrative and say, "We are going to

2    show you that, number one, the AUC carried out numerous

3    terrorism things; number two; number three; number four."

4                MR. SCAROLA:  Got it.

5                THE COURT:  I would be more inclined to allow it than

6    showing it the way this is, which appears to be a quote from

7    someone.

8                MR. SCAROLA:  Thank you, sir.  We will make those

9    modifications.

10               MR. CIOFFI:  Judge, we had an objection related to the

11   "Chiquita funded foreign terrorists," and then a quote from

12   Colin Powell, which seemed --

13               THE COURT:  Well --

14               MR. CIOFFI:  -- he was saying that, and that's not the

15   case.  If they say, "We are going to prove this," or something

16   like that.

17               MR. SCAROLA:  I don't have any problem with adding to

18   the top of this document, "Plaintiffs intend to prove Chiquita

19   funded foreign terrorists."  Happy to do that.

20               THE COURT:  And you need to take out the

21   designation -- the date and the Colin Powell reference, et

22   cetera.

23               MR. SCAROLA:  Well, do I have to take out, "On

24   September 10, 2001, the United States designated the AUC as an

25   FTO"?

 1                 THE COURT:  No, you don't need to take that out.

 2                 MR. SCAROLA:  Okay.  And I think I understand the rest

 3      of the ruling.

 4                 THE COURT:  The other objections by the plaintiff, I

 5      am going to overrule.  I think it's...

 6                 MR. SCAROLA:  I assume you mean the other objections

 7      by the defendants.

 8                 THE COURT:  The defendants.  I mean the other

 9      objections to those demonstratives, I am going to overrule.

10      Those are the only ones I am sustaining.

11                 MR. SCAROLA:  Thank you, sir.

12                 MR. CIOFFI:  Judge, with respect to those Howland

13      quotes, I believe Evidence Rule 106 provides that if they are

14      going to quote something, they have to quote the whole

15      statement.  But put that aside, is it okay if I refer to, in

16      opening statement, what the full statement is?

17                 THE COURT:  Yes, of course.

18                 MR. CIOFFI:  All right.  I wanted clarification.

19                 THE COURT:  Put those in opening statement, and you

20      are going to show that what they said is misrepresentative and

21      is misleading, and "we are going to give you the full story."

22                 MR. CIOFFI:  Yes, sir.

23                 THE COURT:  That's perfectly fine.

24                 So let's move on to the defendant's demonstratives and

25      the plaintiffs' objections.

```
 1              I'm sorry?

 2              MS. FUNDORA-MURPHY:  Your Honor, I just wanted to

 3    clarify if you had any rulings with respect to the three

 4    children in the verdict form.

 5              THE COURT:  Oh, I'm sorry.

 6              It was one packet that I was going through.

 7              MS. FUNDORA-MURPHY:  We have very different --

 8              THE COURT:  Yes.  I'm sorry, I skipped over that.

 9    That was kind of important.

10              MR. SCHERER:  Yes, it is.

11              THE COURT:  I'm sorry.

12              So this is my ruling.  I ruled that there were going

13    to be no plaintiffs that could recover damages unless they

14    testify.  These individuals, even though they were named

15    plaintiffs, are not going to be witnesses, and they are not 3

16    and 5 years old anymore.  They are adults.  They could have

17    appeared and testified on their own and given testimony as to

18    how the loss of their father affected their life.  I am not

19    going to allow that to be done through the mother or the

20    grandmother.

21              So I am going to sustain the objection to the

22    photographs of the children as children and as adults, but I am

23    going to overrule the objection, and I will sustain the

24    objection to the verdict form, except if you want to put it on

25    for the mother and the wife, you can do that.  And I will
```

1    overrule the objection to the maps and the overhead view of the

2    neighborhood.  I will overrule those the photographs of, I

3    guess, the streets where they may have lived or maybe where the

4    alleged killing took place.

5          But I think in order to be consistent with my other

6    ruling, that I need to exclude the children's claims.  Not

7    because they weren't named plaintiffs, but because they are not

8    going to be witnesses, and they are not going to be able to

9    testify to their damages.  And I don't believe the mother or

10   the grandmother can testify for them as to the damages they

11   suffered as a result of the loss.

12         MR. SCHERER:  May I approach?

13         THE COURT:  Yes, sir.

14         MR. SCHERER:  I understand the court's ruling.  The

15   fact of the matter is, is that the grandmother and the mother

16   were left with the children, and I am going to tell the jury

17   that when the father was killed, the grandmother and the mother

18   had to take over for, and it enhance their damages as well.

19         THE COURT:  That's fine.  That's fine as to their

20   damages.

21         MR. SCHERER:  And I understand that, your Honor, and I

22   understand the court's ruling.  In Washington, DC, where this

23   case was filed, it is the parents that are representative for

24   the children.  And I want to put that in the record.  I

25   appreciate -- I understand the court's ruling.

1          With respect to the photographs, though, it seems that

2     I ought to be able to show the jury that these are the children

3     that were left for the mother and the wife to deal with.

4          THE COURT:  As long as you don't attempt to claim

5     damages on their behalf, I will allow you to do that.

6          MR. SCHERER:  Thank you.

7          THE COURT:  As far as the defendant's demonstratives,

8     I already advised the defendant that it needed to change the

9     third bullet point on, it seemed like, multiple of these

10    slides, where it talked about causing any decedents' --

11    extortion payments causing a decedent's death.  So it seemed

12    like this was in multiple slides, and, you know, all of them

13    need to be changed consistent with what I had indicated

14    earlier.

15         MR. CIOFFI:  We understand the ruling, Judge, and I

16    just want to confirm it, if I could, please.  And it's the

17    payments, the extortion payments, were knowing, substantial

18    assistance.

19         THE COURT:  Let me go back.

20         "Did plaintiffs prove by a preponderance of the

21    evidence that Chiquita's extortion payments were knowing,

22    substantial assistance?"

23         MR. CIOFFI:  Yes, sir.  We understand the ruling, and

24    we will change accordingly.

25         THE COURT:  Okay.  The other objections, I am going to

```
 1   overrule.  I am going to allow --

 2           MR. SCAROLA:  Your Honor, I apologize for

 3   interrupting, but I am a little bit concerned about the way

 4   that just got phrased.  Is it necessary for plaintiffs to prove

 5   that at the time knowing payments were made, Chiquita also knew

 6   that they were of substantial assistance, or is it plaintiffs'

 7   burden to prove they were knowing payments, and that they were

 8   of substantial assistance, regardless of whether Chiquita knew

 9   they were substantially assisting?

10           I hope I made that distinction clear.

11           THE COURT:  All right.  Let me find my -- let me

12   phrase it this way.

13           "Did plaintiffs prove by a preponderance of the

14   evidence that Chiquita's extortion payments" -- let me write

15   this out.

16           MR. SCAROLA:  If it is of any assistance to the court,

17   your Honor, the court's summary judgment order is 3238, where

18   this issue is dealt with.

19           THE COURT:  Yes, I don't have my copy of that order

20   with me this morning.  But, anyway, I think this will get us

21   there.

22           MR. CIOFFI:  Judge, we do have up on the screen 3238,

23   and the court says -- and I can bring the screen up.  That way,

24   you can scroll through it.

25           But under federal and state common-law doctrine, under
```

 1   United States jurisprudence, causation is defined differently

 2   in the secondary liability context; here, the causal connection

 3   requires a showing of knowing "knowing substantial assistance

 4   to the primary malefactor."

 5          We are happy to use that language if that's what the

 6   court wants.

 7          May I approach?

 8          THE COURT:  Let me ask you.  Let me say it this way,

 9   and tell me if -- because I think it will be consistent with

10   what you just read.

11          "Did plaintiffs prove by a preponderance of the

12   evidence that Chiquita knowingly provided substantial

13   assistance to the AUC by making its extortion payments?"

14          MR. CIOFFI:  I would suggest that "knowing,

15   substantial assistance" be kept together.  "Provided knowing,

16   substantial assistance."

17          THE COURT:  I'm sorry, provided knowing, substantial.

18          MR. CIOFFI:  Right.

19          THE COURT:  So did plaintiffs prove by a preponderance

20   of the evidence that Chiquita provided knowing, substantial

21   assistance to the AUC by making its extortion payments?

22          MR. CIOFFI:  We will change it to that.

23          MR. SCAROLA:  I'm sorry, did your Honor refer to this

24   as "by making extortion payments"?

25          THE COURT:  Well, that's what they are alleging.  They

1   are alleging that they are going to be -- extortion payments.

2        MR. SCAROLA:  Okay.  I just wanted to make sure that

3   that's not the way your Honor is intending to phrase anything.

4        THE COURT:  This is their argument in opening, or not

5   argument, but what they are setting forth as an issue for the

6   jury to have to consider.

7        MR. SCAROLA:  Yes, sir.

8        THE COURT:  I am not sanctioning that it was extortion

9   payments.

10       MR. CIOFFI:  Yes, sir.  And you are quite correct.

11       MR. SCAROLA:  And that as long as they characterize

12  this as their understanding of plaintiffs' burden, I don't have

13  a problem with that.  I just don't want them saying that that's

14  what the law is.

15       THE COURT:  This is what the issue that they are

16  phrasing for the jury that they have to -- that you have to

17  prove.

18       MR. CIOFFI:  Right.  That's correct, Judge.

19       MR. SCAROLA:  We believe that to be argumentative and

20  unjustified by the law, but it's more argumentative than my

21  handwritten question, but that's all right.  We will deal with

22  it.

23       THE COURT:  As far as AUC income and defense of

24  reliance on advice of counsel, I am going to let them make

25  those arguments.  To the extent to which they are going to be

1   able to submit or present admissible evidence on that remains

2   to be seen, but I am not going to preclude them from raising

3   those as things that they intend to prove during their case.

4          MR. SCAROLA:  Understood.

5          THE COURT:  And I don't believe that I had any other

6   objections.  I was not sustaining any other objections to their

7   demonstratives.  So I will overrule the other objections that

8   were raised by plaintiffs.

9          MR. CIOFFI:  Judge, just to make the record clear, we

10  agreed, when Mr. Simons was arguing, to take out the reference

11  to money and the Occidental.

12         THE COURT:  Right.  I assumed -- I mean, I was not

13  repeating that, because you had already agreed to do that.

14         MR. CIOFFI:  We agreed, and he is correct on the

15  dates, and so we are going to change it to his date, which

16  was --

17         THE COURT:  All right.  I didn't mention that, because

18  I assumed you had already agreed to do that.

19         MR. CIOFFI:  Yes, sir.

20         THE COURT:  Mr. Green.

21         MR. GREEN:  Yes, Judge.  We have a summary judgment

22  motion on the AUC income -- excuse me, not a summary judgment

23  motion, a motion in limine.

24         THE COURT:  Right.

25         MR. GREEN:  And your Honor has not ruled on that yet.

```
 1                 THE COURT:  Well, effectively, I am ruling on it.  I
 2     am denying it.
 3                 MR. GREEN:  Got it.
 4                 THE COURT:  Okay.  To the extent I failed to rule on
 5     it earlier, I am denying it at this point.
 6                 All right.  Anything else we need to talk about before
 7     we get back together in the morning?
 8                 MR. CIOFFI:  No, sir.
 9                 MR. SCAROLA:  I don't believe so, sir.  Thank you.
10                 THE COURT:  All right.  Thank you.
11                 We will see you tomorrow, I guess around the same
12     time, 8:45 or so, as soon as the jurors are ready for me to go
13     down and make my pitch, and we will go from there.
14                 MR. CIOFFI:  Judge, one last thing.  We both agreed we
15     will leave a set of the slides, and these, combined with your
16     record, will be sort of the record of what we have to do.
17                 THE COURT:  Okay.  You are going to have to make
18     modifications, so...
19                 MR. CIOFFI:  Yes.  But no new slides get added.
20                 MR. DANTE:  And, your Honor, one other thing with
21     respect to Mr. Simons' presentation that was submitted to us
22     this afternoon.  We would just request the opportunity to
23     review that overnight and then raise any issues with you in the
24     morning.
25                 THE COURT:  Sure.  The ones you just got today, you
```

```
 1   can obviously raise tomorrow.

 2            MR. DANTE:  Okay.

 3            THE COURT:  Or Monday, whenever.

 4            MR. DANTE:  Great.

 5            MR. CIOFFI:  We will raise them tomorrow.

 6            THE COURT:  Tomorrow, because we need to get things

 7   lined up for hopefully Tuesday.

 8            MR. DANTE:  Yes.  Thank you.

 9            THE COURT:  Anything else?  No.

10            All right.  Thank you.

11            MR. CIOFFI:  Thank you.

12            THE COURT:  Have a nice evening, everyone.

13            (Proceedings adjourned to April 26, 2024, at

14   9:00 a.m.)

15

16                  C E R T I F I C A T E

17

18        I hereby certify that the foregoing is an accurate

19   transcription of the proceedings in the above-entitled matter.

20

21   April 24, 2024          /s/ Jill M. Wells
                             Jill M. Wells, RMR, CRR, CSR
22                           Federal Official Court Reporter
                             400 N. Miami Avenue
23                           Miami, FL 33128
                             jill_wells@flsd.uscourts.gov
24

25
```

**MR. CIOFFI: [125]**  4/9 4/19 4/22 6/19
7/7 7/11 7/16 7/21 8/2 9/17 10/17 10/25
13/5 17/5 17/10 17/20 17/25 18/9 18/12
19/16 19/20 19/24 21/2 21/7 21/13 24/15
25/24 26/9 26/19 28/13 28/21 31/4 31/19
32/3 32/6 32/11 32/13 32/18 33/9 33/12
33/15 34/6 34/8 34/13 34/22 34/24 35/4
35/9 35/13 35/16 35/20 36/1 36/3 36/5
49/15 50/1 51/17 52/5 56/25 57/5 58/3
59/8 59/18 59/24 60/2 85/6 86/1 90/19
91/6 91/9 91/17 92/1 93/24 94/9 94/12
94/22 95/6 96/2 96/16 96/19 97/6 102/2
102/8 102/14 102/23 104/8 104/13
104/17 104/21 105/1 105/7 105/22 106/2
106/5 106/7 106/11 107/8 111/13 111/23
124/22 124/25 125/17 129/10 129/13
130/10 130/14 131/12 131/18 131/22
134/15 134/23 135/22 136/14 136/18
136/22 137/10 137/18 138/9 138/14
138/19 139/8 139/14 139/19 140/5
140/11
**MR. DANTE: [28]**  69/18 70/10 71/13
71/16 71/19 72/1 72/6 72/22 73/5 73/14
73/18 73/22 74/1 74/6 74/21 75/13 76/8
76/11 77/7 77/13 81/5 81/20 111/22
127/19 139/20 140/2 140/4 140/8
**MR. GJULLIN: [1]**  111/1
**MR. GREEN: [28]**  84/7 84/9 85/7 85/14
85/22 86/5 86/9 86/14 86/20 87/18 87/21
87/25 88/5 88/8 88/14 89/7 90/12 91/11
92/16 92/21 92/23 96/20 97/7 97/10
110/9 138/21 138/25 139/3
**MR. HAGER: [12]**  42/16 43/4 43/15
44/1 44/10 45/3 45/8 45/25 46/6 48/15
49/11 49/14
**MR. HERZ: [3]**  55/18 56/1 111/9
**MR. JACQUES: [6]**  90/14 90/18 93/3
93/6 93/19 111/6
**MR. REITER: [1]**  110/20
**MR. SCAROLA: [86]**  5/1 5/23 6/3 6/17
7/6 7/15 8/1 8/3 8/9 8/12 9/10 9/14 10/2
10/11 11/1 12/13 17/13 17/16 17/19
28/25 31/1 34/10 34/18 36/11 36/22 37/3
37/8 37/19 37/23 38/7 38/9 38/13 56/2
56/20 56/24 57/10 57/15 59/21 92/13
101/18 101/25 102/18 103/7 103/13
103/16 103/21 104/4 104/12 105/20
106/13 106/17 106/20 106/24 107/5
107/10 109/17 124/21 125/4 125/23
126/1 126/10 126/13 127/4 127/18 128/8
128/13 128/21 129/3 129/12 129/18
130/4 130/8 130/17 130/23 131/2 131/6
131/11 135/2 135/16 136/23 137/2 137/7
137/11 137/19 138/4 139/9
**MR. SCHERER: [21]**  52/20 52/23 53/13
54/2 54/6 54/17 55/6 55/16 97/15 97/18
97/20 98/9 99/12 99/21 99/25 110/4
132/10 133/12 133/14 133/21 134/6
**MR. SIMONS: [25]**  57/16 58/16 59/14
59/22 59/25 60/5 60/18 60/21 61/1 61/11
61/16 63/5 64/12 64/16 65/19 65/21 66/1
66/9 69/3 69/9 69/14 69/17 77/21 78/15
79/9 83/4
**MR. WICHMANN: [1]**  110/12
**MS. FUNDORA-MURPHY: [12]**  38/19

49/13 49/18 46/7 46/21 47/4 47/24 54/19
55/1 100/3 132/1 132/7
**MS. KROEGER: [5]**  8/15 8/18 9/4 9/8
110/7
**MS. MESA-ESTRADA: [1]**  84/14
**THE COURT: [368]**
**THE DEPUTY CLERK: [2]**  10/22 11/6
**THE PROSPECTIVE JUROR: [60]**
112/18 112/20 112/23 113/4 113/7
113/11 113/14 113/21 113/24 114/2
114/7 114/10 114/12 114/18 114/21
114/23 115/1 115/7 115/9 115/11 115/18
115/22 116/1 116/10 116/17 116/21
116/25 117/3 117/7 117/11 117/14
117/23 117/25 118/3 118/6 118/11
118/13 118/17 119/2 119/6 119/10
119/14 119/17 119/19 119/23 120/2
120/4 120/7 120/9 120/12 120/14 120/19
120/21 120/25 121/2 121/5 121/9 121/12
121/18 122/5

**$**

**$180 [5]**  67/8 76/6 77/9 77/18 80/8
**$180 million [4]**  67/8 76/6 77/9 80/8

**'**

**'80s [1]**  70/21
**'90s [1]**  70/21
**'protection [1]**  83/20
**'war [1]**  83/17

**/**

**/s [1]**  140/21

**0**

**01916 [1]**  1/2
**08-md-01916 [1]**  1/2

**1**

**1 percent [2]**  86/16 86/17
**10 [8]**  20/4 33/4 53/6 55/9 70/14 87/4
129/4 130/24
**1006 [2]**  52/9 52/16
**100th [1]**  86/17
**10118 [1]**  1/24
**104 [3]**  120/10 120/13 120/14
**106 [1]**  131/13
**10:00 [1]**  123/12
**10:42 [1]**  57/9
**10:55 [1]**  57/9
**11 [4]**  21/20 22/21 53/6 55/9
**1100 [1]**  2/13
**113 [1]**  121/7
**1156 [1]**  2/10
**11780 [1]**  2/16
**12 [5]**  3/1 53/6 55/9 70/7 101/20
**12:07 [1]**  101/12
**13 [5]**  21/10 101/20 101/22 101/23
104/10
**1312 [1]**  55/10
**15 [5]**  18/5 18/8 55/13 77/14 83/23
**15 percent [1]**  37/15
**150 [8]**  18/5 18/7 18/7 18/16 20/11 26/4
27/10 27/12
**15th [1]**  2/10
**16 [1]**  55/13

**1612 [1]**  1/18
**164 [1]**  1/6
**1650 [1]**  2/20
**17 [3]**  23/10 26/22 55/13
**1700 [1]**  3/7
**170901 [1]**  2/8
**18 [2]**  101/23 104/10
**180 million [1]**  67/7
**19 [5]**  18/17 20/5 27/10 61/1 70/20
**194 [2]**  53/6 55/12
**1988 [2]**  34/16 50/15
**1991 [1]**  50/23
**1995 [1]**  50/23 51/6 52/6
**1996 [2]**  52/6 52/8
**1997 [2]**  65/2 126/2
**1:15 p.m [2]**  85/4 101/11
**1:17 [1]**  101/12
**1:27 [1]**  107/13

**2**

**20 [2]**  18/17 54/3
**2000 [1]**  83/24
**20005 [1]**  2/14
**20006 [1]**  1/19
**20009 [1]**  2/11
**2001 [7]**  33/8 33/9 70/14 128/17 129/4
129/21 130/24
**2003 [6]**  66/13 66/14 66/21 68/12 68/14
80/2
**2004 [1]**  63/18
**201 [1]**  3/7
**2011 [2]**  33/4 33/8
**2012 [1]**  98/4
**2017 [2]**  98/9 98/10
**2018 [1]**  20/4 20/18
**2024 [3]**  1/4 140/13 140/21
**20s [1]**  100/20
**21 [2]**  21/20 22/22
**2139 [1]**  1/13
**222 [1]**  2/19
**23 [6]**  18/5 18/8 20/18 21/3 21/11 54/3
**24 [5]**  26/22 27/11 66/14 66/15 140/21
**242 [1]**  20/4
**25 [1]**  1/4
**26 [1]**  140/13
**27 [3]**  18/7 20/4 20/18
**281 [2]**  52/24
**29 [1]**  100/5
**2:01 [1]**  124/14
**2:04 [1]**  125/2
**2:59 [1]**  125/2

**3**

**3-year-old [2]**  53/24 53/25
**3-year-olds [2]**  54/1 54/2
**30 [7]**  21/22 22/6 25/15 29/22 29/24
30/8 30/19
**304 [1]**  2/6
**3042 [1]**  2/17
**31 [2]**  101/22 103/10
**33 [1]**  103/10
**33128 [2]**  3/13 140/23
**33301 [2]**  2/4 3/2
**33401 [1]**  2/20
**33402-3626 [1]**  1/14

**3**

**33408-3042 [1]** 2/17
**3489 [2]** 61/1 87/4
**350 [1]** 1/23
**3515 [1]** 54/24
**3616 [1]** 86/25
**3619 [1]** 87/2
**3620 [2]** 32/19 33/25
**3626 [1]** 1/14
**3629 [2]** 33/22 34/17
**3649 [2]** 42/9 42/14
**38 [1]** 107/9
**387 [10]** 20/18 20/23 21/3 21/8 21/9
   21/11 21/15 22/22 23/1 26/4
**388 [3]** 20/19 21/3 22/19
**389 [2]** 23/3 23/5
**3:00 [1]** 124/24
**3:28 [1]** 1/5

**4**

**40 [2]** 107/9 107/9
**400 [2]** 3/12 140/22
**420 [1]** 26/22
**44.1 [1]** 62/20
**45202 [1]** 3/8
**48 [1]** 57/24
**4th [1]** 2/3

**5**

**5-year-old [1]** 53/19
**50 [1]** 107/4
**500N [1]** 2/16
**502 [1]** 2/10

**6**

**60 [2]** 107/10 107/11
**609 [1]** 3/2
**633 [1]** 2/3
**6400 [1]** 1/24
**67 [1]** 91/12

**7**

**79 [1]** 114/4
**7th [1]** 3/1

**8**

**800 [1]** 1/19
**88 [1]** 114/22
**8:45 or [1]** 139/12
**8:57 [2]** 1/5 4/1

**9**

**90 [1]** 117/6
**94 [2]** 53/4 53/5
**9:00 [1]** 140/14
**9:00 o'clock [1]** 123/11
**9:07 [1]** 11/3
**9:30 yesterday [1]** 50/3
**9:31 [1]** 11/3
**9:45 [1]** 124/4

**A**

**a.m [7]** 1/5 4/1 11/3 57/9 57/9 124/4
   140/14
**able [47]** 12/15 14/18 32/25 36/15 37/2
   37/4 42/11 43/20 44/24 45/14 49/5 51/12

**8/14** 30/25 52/1 52/25 53/12 67/22 79/7
   84/18 94/19 104/6 108/10 108/22 108/13
   108/25 109/2 113/2 113/13 113/19
   114/16 114/24 117/2 118/19 119/15
   120/17 121/17 122/24 123/8 124/1
   126/22 127/8 127/10 128/25 133/8 134/2
   138/1
**about [142]**
**above [1]** 86/6 90/24 140/19
**above-entitled [1]** 140/19
**absence [1]** 57/11
**absent [1]** 43/19
**absolutely [3]** 4/9 28/13 86/2
**accept [1]** 106/20
**acceptable [5]** 49/17 55/23 56/12
   127/21 128/2
**according [2]** 37/14 112/5
**accordingly [1]** 134/24
**account [1]** 41/19
**accountable [1]** 25/11
**accounted [1]** 37/15
**ACCU [1]** 52/8
**accurate [5]** 45/19 56/7 77/17 82/20
   140/18
**accurately [1]** 44/8
**accusation [2]** 29/5 29/6
**acknowledges [1]** 29/21
**acquire [1]** 50/16
**across [1]** 112/7
**act [3]** 11/15 65/11 72/20
**acted [2]** 70/18 72/16
**acting [1]** 71/5
**action [1]** 48/11
**actions [7]** 33/1 71/3 72/8 81/23
**acts [4]** 27/4 72/9 76/23 129/8
**actual [4]** 75/2 90/23 109/3 123/7
**actually [4]** 6/10 26/21 40/17 44/10
   45/9 46/9 46/24 70/3 75/4 80/21 90/5
   100/15 120/15 125/11
**Adams [1]** 120/23 120/23
**add [5]** 23/6 26/13 88/9 98/7 98/10
**added [4]** 4/16 53/23 55/14 139/19
**adding [2]** 55/9 130/17
**addition [3]** 40/19 82/17 89/10
**additional [5]** 6/6 82/19 85/7 103/13
   108/14
**address [13]** 29/13 30/22 35/10 35/11
   35/15 35/17 36/6 38/3 38/24 56/6 76/8
   76/9 128/9
**addresses [1]** 58/22
**adequate [1]** 96/12
**adjourned [1]** 140/13
**admirable [1]** 115/15
**admissible [20]** 36/10 52/15 52/16
   64/24 67/17 68/1 68/19 75/3 79/22 80/19
   80/20 80/25 87/7 88/10 90/25 92/6 128/4
   128/6 129/16 138/1
**admission [1]** 30/5
**admissions [1]** 30/3
**admit [4]** 30/17 41/11 83/10 83/24
**admitted [6]** 30/16 32/21 32/24 33/5
   63/1 81/10
**adults [2]** 132/16 132/22
**advance [4]** 13/2 13/25 57/24 87/15
**adverse [1]** 15/13
**adverted [1]** 79/2

**advice [23]** 60/23 60/25 61/12 61/15
   61/17 63/18 69/22 71/24 72/7 73/9 74/9
   74/14 74/16 75/1 77/22 78/12 78/17
   78/21 78/22 78/23 78/25 83/6 137/24
**advise [1]** 75/8
**advised [7]** 8/20 70/2 70/4 74/14 78/24
   99/16 134/8
**advocacy [1]** 28/14
**affected [1]** 132/18
**affirmative [8]** 71/24 72/4 72/8 72/10
   72/12 72/14 90/3 100/16
**afford [1]** 15/4
**afoul [1]** 128/15
**after [22]** 6/17 7/12 7/16 8/19 9/10
   28/23 42/19 46/8 46/9 46/18 46/22 48/13
   53/10 54/10 58/6 59/16 89/17 98/6
   100/12 108/7 116/15 117/16
**afternoon [28]** 103/24 104/1 104/3
   109/18 110/14 110/17 111/1 111/22
   111/25 112/9 113/3 113/4 113/12 113/23
   113/24 114/8 114/20 114/21 119/21
   120/1 120/2 120/8 120/9 120/24 120/25
   121/8 121/9 139/22
**again [57]** 4/5 4/18 13/20 14/1 14/19
   16/19 22/11 23/8 26/20 27/21 28/13
   29/12 33/22 34/25 35/5 42/21 45/18
   48/19 51/11 51/21 54/9 55/6 55/10 59/10
   60/6 60/16 61/24 62/14 63/24 64/3 65/14
   67/16 68/5 68/8 68/24 70/20 75/15 78/22
   79/1 80/19 81/1 83/13 90/7 92/25 97/2
   100/22 101/5 101/6 101/14 103/19
   105/14 105/22 107/20 111/14 111/15
   111/24 115/24
**against [7]** 15/13 27/4 30/4 30/5 62/11
   62/11 90/1
**age [1]** 59/18
**ages [2]** 98/18 98/21
**ago [4]** 11/19 34/16 54/3 100/24
**agree [12]** 5/1 9/6 9/12 9/16 10/7 74/11
   77/18 94/24 102/14 104/8 104/21 106/11
**agreed [10]** 6/7 30/16 102/23 105/7
   105/22 138/10 138/13 138/14 138/18
   139/14
**agreement [1]** 57/23
**ahead [6]** 8/14 33/14 34/23 51/23 76/10
   83/2
**Alba [2]** 40/6 98/21
**ALIEN [1]** 1/4
**alienate [1]** 102/12
**all [136]** 6/9 7/23 8/10 9/18 10/21 17/8
   17/11 17/13 17/14 17/24 18/10 19/14
   19/18 19/23 20/1 21/18 21/23 23/4 23/17
   26/6 26/12 26/17 30/7 30/23 30/25 34/22
   34/23 36/9 37/5 37/8 38/9 39/16 39/17
   39/17 41/9 42/15 42/20 44/5 44/17 44/20
   45/10 46/1 46/5 46/5 48/12 49/12 49/13
   50/2 52/19 53/21 55/2 55/13 56/10 57/1
   58/5 60/2 64/20 66/1 70/21 71/23 72/2
   72/20 74/18 74/24 75/10 76/21 78/1
   78/19 80/22 84/11 87/24 88/13 89/4
   90/21 91/22 91/22 92/4 92/8 92/14 92/16
   92/22 93/7 95/14 96/19 97/13 99/3 99/5
   99/6 99/17 100/24 101/4 101/10 101/15
   101/16 102/19 103/22 103/24 103/25
   105/2 105/11 106/12 106/14 107/1 109/4

**A**

**all... [33]** 109/6 109/10 111/14 111/18
112/2 113/9 114/3 114/4 114/19 115/10
117/5 117/8 118/8 119/4 119/18 121/16
122/12 123/14 124/5 124/8 124/12
124/24 126/14 126/18 128/9 131/18
134/12 135/11 137/21 138/17 139/6
139/10 140/10
**alleged [2]** 94/12 133/4
**allegedly [2]** 80/9 94/13
**alleging [2]** 136/25 137/1
**allow [13]** 28/1 28/25 43/19 45/4 49/1
88/3 88/3 91/5 97/4 130/5 132/19 134/5
135/1
**allowed [3]** 46/18 48/13 67/15
**allowing [1]** 27/22
**allows [1]** 44/18
**almost [1]** 60/8
**along [4]** 42/20 43/11 62/4 110/25
**Alonso [1]** 114/20
**already [11]** 22/15 36/25 41/15 76/19
89/6 89/10 92/5 94/7 134/8 138/13
138/18
**also [35]** 15/11 20/21 23/12 26/23 39/20
46/14 54/20 58/18 61/19 61/20 62/19
74/3 78/4 79/3 82/17 86/6 87/1 87/2
87/4 92/2 105/4 106/24 108/7 110/18
111/3 111/4 111/6 111/9 114/15 116/2
116/3 119/6 120/3 121/10 135/5
**alterations [1]** 50/9
**alternatives [1]** 37/12
**although [2]** 67/14 111/7
**always [1]** 96/24
**am [122]** 4/15 6/6 6/25 7/7 8/1 8/5 8/10
9/11 9/23 10/23 11/3 11/7 11/10 12/10
12/19 12/21 15/15 15/15 24/5 24/9 30/22
32/14 34/4 34/9 37/24 44/7 47/8 47/9
51/13 51/15 51/18 51/22 51/23 51/24
55/21 56/24 58/16 64/9 64/10 65/15
65/16 65/24 68/22 77/2 81/9 81/14 82/2
83/9 84/24 85/3 88/3 91/18 93/25 95/5
95/6 95/20 97/4 97/7 103/4 104/2 104/4
104/13 104/19 105/8 105/13 106/7 107/3
108/4 109/5 109/12 110/5 110/9 110/9
110/12 110/15 110/24 111/2 111/6 111/7
111/15 112/2 112/5 113/5 113/12 113/19
113/25 115/24 116/20 117/19 119/2
119/3 119/6 121/13 121/18 121/22
123/10 123/14 125/7 126/18 126/22
128/3 128/4 128/4 128/5 128/9 128/14
131/5 131/9 131/10 132/18 132/21
132/22 133/16 134/25 135/1 135/3 137/8
137/24 138/2 139/1 139/2 139/5
**amend [1]** 100/15
**amended [3]** 52/24 98/3 100/14
**amendment [2]** 46/18 48/14
**among [2]** 4/7 123/9
**amount [1]** 80/11
**analysis [5]** 62/5 62/7 62/16 74/18
74/20
**announcement [2]** 36/12 36/15
**annual [2]** 86/24 88/12
**another [18]** 28/23 41/2 50/3 64/25
67/20 68/4 79/15 84/6 84/8 84/22 89/12
89/22 93/12 103/17 105/14 107/4 122/22
122/25

**answer [15]** 21/20 22/16 22/20 22/21
23/1 23/4 23/10 25/21 27/6 27/6 29/19
89/21 90/3 100/8 120/17
**answered [2]** 22/16 23/9 26/9
**answering [1]** 26/11
**answers [9]** 22/15 22/22 22/25 23/9
24/7 25/16 25/20 84/19 107/19
**antagonize [1]** 102/12
**anticipate [4]** 30/12 37/4 56/5 103/8
**anticipated [1]** 36/14
**anticipates [1]** 34/19
**anticipating [1]** 37/1
**anxiety [1]** 119/7
**any [95]** 4/8 9/20 10/5 10/18 15/12
15/13 16/5 16/7 16/8 16/8 22/25 23/4
23/8 25/10 25/16 27/24 29/11 30/3 30/19
36/19 39/21 40/16 45/22 46/16 46/19
48/10 49/20 50/15 53/8 54/7 54/12 55/20
58/24 59/1 62/25 63/23 64/13 67/17
67/24 69/22 75/10 78/22 79/20 79/21
80/20 80/25 82/7 82/8 83/15 83/15 87/16
88/8 88/11 89/19 93/17 93/23 93/24 94/1
94/8 94/8 94/14 94/19 98/5 98/5 98/23
100/6 100/9 101/7 103/3 103/23 106/8
107/11 109/4 109/10 115/17 116/13
119/13 122/18 123/15 123/20
123/21 123/22 124/3 124/6 124/6 124/7
129/23 130/17 132/3 134/10 135/16
138/5 138/6 139/23
**anybody [5]** 6/15 9/24 65/3 110/24
124/6
**anymore [1]** 132/16
**anyone [4]** 9/1 78/2 123/15 123/17
**anything [22]** 9/21 9/24 10/14 31/13
38/7 42/3 58/13 58/19 58/24 68/6 68/23
72/25 79/21 86/1 90/22 93/20 110/23
123/19 124/20 137/3 139/6 140/9
**anyway [6]** 7/15 15/17 22/10 32/10
95/24 135/20
**apologies [2]** 62/2 90/18
**apologize [8]** 10/7 59/6 87/24 88/2
91/17 114/15 117/10 135/2
**apparently [1]** 35/21
**appear [2]** 6/18 123/19
**APPEARANCES [2]** 1/10 2/1
**appeared [1]** 132/17
**appears [10]** 21/14 27/20 29/14 39/1
57/16 57/18 57/24 58/8 62/13 130/6
**apples [1]** 24/15
**applicable [1]** 58/20
**applies [1]** 11/24
**apply [2]** 44/9 98/8
**appreciate [8]** 68/15 80/3 90/19 107/18
107/22 112/25 122/7 133/25
**appreciated [1]** 4/23
**approach [11]** 17/16 17/20 18/2 47/1
52/21 61/8 89/4 90/22 97/18 133/12
136/7
**appropriate [16]** 24/13 24/16 25/9
33/18 40/22 45/15 46/1 46/4 49/2 49/5
49/23 56/3 56/14 64/5 80/4 87/25
**appropriately [1]** 68/15
**approximately [1]** 14/10
**April [11]** 1/4 66/13 66/14 66/15 66/17
67/5 67/5 77/14 77/14 140/13 140/21
**April 15 [1]** 77/14

**April 24 [2]** 66/14 66/15
**April 8 [4]** 66/13 66/17 67/5 77/14
**are [372]**
**areas [2]** 27/5 37/9
**aren't [3]** 17/25 57/25 95/8
**arguably [3]** 34/2 34/13 79/4
**argue [6]** 32/23 57/13 59/16 74/1 95/9
95/11
**argued [1]** 42/13
**arguing [6]** 62/8 79/10 79/25 80/18
84/23 138/10
**argument [27]** 24/19 33/18 33/19 34/25
35/24 38/5 39/8 43/17 53/9 53/17 54/14
55/20 62/2 72/19 75/6 77/5 80/12 80/15
81/11 82/22 82/25 90/17 92/9 128/1
129/2 137/4 137/5
**argumentative [9]** 33/17 35/6 35/9
49/21 55/24 127/9 127/16 137/19 137/20
**arguments [8]** 13/23 42/21 65/18 70/7
95/7 96/14 101/6 137/25
**arise [2]** 44/12 44/13
**arises [1]** 59/1
**Arkin [4]** 63/16 63/20 64/1 75/22
**armed [5]** 62/9 64/21 78/4 78/5 79/23
**arms [1]** 19/1
**armys [1]** 35/20
**around [7]** 4/14 63/19 80/10 95/9
111/19 124/24 139/11
**article [3]** 10/3 125/18 126/9
**articulate [1]** 6/24
**articulating [1]** 44/8
**as [169]**
**aside [2]** 21/19 131/15
**ask [18]** 4/3 9/23 14/12 23/17 29/9 32/4
33/11 43/19 45/4 50/8 73/9 84/24 101/14
109/6 123/10 123/14 128/4 136/8
**asked [6]** 6/21 22/11 58/4 79/11 98/14
98/22
**asking [3]** 53/13 53/14 87/14
**aspect [1]** 44/23
**assembly [2]** 9/5 11/4
**assert [1]** 32/20
**assertion [2]** 51/15 64/10
**assist [1]** 14/13
**assistance [17]** 95/1 95/11 95/16 95/21
95/23 96/10 96/17 134/18 134/22 135/6
135/8 135/16 136/3 136/13 136/15
136/16 136/21
**assisting [1]** 135/9
**associate [1]** 73/21
**associates [1]** 8/20
**assume [7]** 9/16 23/18 24/9 74/11
101/15 103/1 131/6
**assumed [2]** 138/12 138/18
**attacked [1]** 83/19
**attempt [7]** 16/5 16/6 16/14 23/14 29/2
103/25 134/4
**attempted [1]** 30/8
**attempting [1]** 102/21
**attempts [1]** 33/23
**attention [7]** 4/24 8/13 10/5 16/3 16/19
21/7 111/24
**attorney [3]** 59/22 109/24 110/15
**attorneys [10]** 12/20 13/20 28/6 71/11
71/11 71/18 73/3 74/13 78/19 108/9
**attorneys' [1]** 74/16

**A**

**attributable [1]** 126/5
**attribute [1]** 129/21
**attributed [1]** 62/10
**AUC [48]** 18/3 20/9 21/4 21/17 21/25
26/25 27/3 32/22 60/13 60/18 63/8 63/15
64/23 65/4 65/8 67/13 67/13 68/16 69/23
76/5 76/15 76/18 76/21 76/24 78/4 79/17
85/18 85/23 90/2 94/5 94/6 94/10 94/14
94/17 94/19 94/20 96/11 126/5 126/6
128/17 129/3 129/20 130/2 130/24
136/13 136/21 137/23 138/22
**AUC's [10]** 27/2 27/9 36/12 86/12 86/21
86/22 86/24 87/5 88/11 129/6
**audience [1]** 110/24
**authorities [1]** 78/6
**authors [1]** 61/20
**automatically [1]** 103/22
**available [1]** 103/13
**Avenida [1]** 2/7
**Avenue [4]** 1/23 2/19 3/12 140/22
**avoid [1]** 10/5
**aware [3]** 27/3 68/22 123/24
**away [1]** 128/6

**B**

**back [39]** 4/2 5/7 7/13 7/24 8/16 8/19
9/22 9/24 15/25 23/5 26/10 26/12 27/12
42/17 49/11 50/4 55/10 58/7 70/20 84/16
84/17 84/25 85/3 103/4 105/19 107/16
108/9 116/15 122/18 123/10 124/4 124/7
124/17 124/19 124/23 125/4 126/24
134/19 139/7
**background [3]** 6/11 11/13 108/22
**Baker [7]** 70/2 73/12 73/15 73/19 75/7
78/18 78/18
**banana [1]** 33/21 34/11 34/14 50/17
50/24 51/3 51/3
**Barbara [7]** 18/6 20/4 20/17 21/2 30/13
30/14 30/18
**Barnhart [1]** 1/13 12/23 109/21
**based [16]** 21/21 24/21 32/23 35/21
41/14 49/20 55/7 60/24 78/7 79/17 87/11
88/9 88/10 92/24 110/16 113/16
**basic [3]** 56/17 68/20 118/18
**basically [1]** 74/7
**basis [11]** 18/10 21/23 22/1 35/23 44/19
63/1 67/16 73/3 88/6 129/6 129/19
**bathe [2]** 116/11 116/14
**Bayless [3]** 112/8 112/14 112/15
**be [229]**
**Beach [11]** 1/3 1/13 1/14 2/17 2/20
10/13 10/14 12/22 109/20 110/8 110/10
**because [42]** 4/13 13/10 13/16 23/6
30/18 32/18 37/13 41/18 46/1 46/16 49/5
50/6 50/11 54/3 65/25 66/12 67/1 67/19
75/16 76/13 77/23 80/14 87/10 91/7 92/2
94/4 97/21 99/7 103/4 103/5 103/18
104/24 108/10 120/16 125/10 126/25
133/7 133/7 136/9 138/13 138/17 140/1
**been [24]** 4/21 7/8 8/20 11/11 12/2 22/4
22/4 22/4 30/10 30/13 30/24 36/25 38/13
42/20 42/22 50/20 51/2 57/17 58/8 58/17
68/3 84/12 107/18 123/21
**before [31]** 1/8 6/12 8/13 11/6 11/12
16/16 17/6 21/19 30/12 30/16 30/17
32/20 32/25 54/21 59/20 59/25 67/20
69/4 69/11 70/3 81/1 83/23 84/10 85/11
95/16 101/13 109/4 109/10 116/15 124/2
139/6
**beg [1]** 97/15
**began [1]** 50/16
**beginning [2]** 46/3 93/10
**begins [1]** 21/9
**behalf [8]** 12/20 23/22 29/16 30/2 43/18
53/21 101/1 134/5
**behind [1]** 124/10
**being [22]** 9/2 15/17 26/24 27/1 27/7
27/14 27/19 44/24 59/9 59/11 59/12
59/21 62/4 81/10 95/5 108/24 113/2
123/6 124/11 126/3 126/22 128/6
**belabor [2]** 82/4 100/4
**belief [2]** 105/12 129/16
**believe [59]** 9/3 10/2 13/8 16/10 17/5
18/22 19/19 21/22 25/2 25/21 27/16
32/24 43/15 43/16 44/12 47/15 50/14
51/12 53/9 56/14 58/24 61/7 62/22 62/25
64/24 65/13 65/13 66/2 68/2 68/5 68/10
68/23 69/25 72/11 72/13 73/14 78/8 79/1
80/9 81/2 82/1 87/6 88/8 89/18 89/21
89/25 90/4 101/21 101/24 112/18 113/1
127/8 128/24 129/18 131/13 133/9
137/19 138/5 139/9
**believed [2]** 59/2 80/16
**believes [2]** 77/2 93/9
**bench [2]** 90/22 102/24
**beneficiaries [2]** 53/20 53/21
**Bernal [7]** 86/6 88/15 88/18 89/2 89/18
90/21 96/21
**besides [2]** 49/20 52/16
**best [1]** 105/5
**better [3]** 41/23 97/21 105/8
**between [5]** 12/4 70/20 94/4 102/15
108/15 123/16
**beyond [5]** 30/21 49/21 74/17 90/24
101/4
**big [3]** 54/4 55/13 121/20
**Bill [1]** 112/10
**bit [6]** 19/11 26/23 108/18 116/18
123/18 135/3
**Blank [2]** 3/6 111/16
**blanket [1]** 79/25
**blankrome.com [5]** 3/8 3/9 3/9 3/10
3/10
**blood [1]** 119/7
**Boca [1]** 116/18
**bodies [2]** 105/5 126/24
**body [1]** 41/10
**bold [1]** 47/19
**BORIS [1]** 1/12
**both [29]** 4/3 5/21 6/7 7/25 8/5 8/7 8/7
9/6 9/12 13/20 17/3 27/20 52/6 60/6
60/9 61/18 62/16 66/3 66/8 71/2 71/3
76/23 78/14 78/17 81/24 96/5 109/22
115/4 139/14
**bottom [1]** 21/9
**bought [2]** 18/25 19/1
**Boulevard [1]** 1/13
**box [3]** 69/25 105/6 110/1
**boxes [1]** 91/24
**Boynton [1]** 116/17
**boys [1]** 98/15
**BRANDS [3]** 1/3 42/5 137/4
**break [5]** 56/21 84/18 85/9 85/11 130/1
**breakdown [2]** 57/21 59/6
**brief [3]** 70/5 70/7 81/5
**briefly [2]** 55/18 77/21
**bring [11]** 5/6 5/20 7/4 8/12 84/20
101/13 104/22 108/14 119/10 122/24
135/23
**British [1]** 126/1
**broader [2]** 93/24
**broadly [1]** 65/7
**broke [1]** 115/19
**brought [3]** 11/12 12/18 12/20
**Brush [2]** 117/7 117/9
**building [2]** 8/24 110/22
**bullet [3]** 93/8 95/25 134/9
**burden [3]** 68/8 135/7 137/12
**business [14]** 10/3 10/10 10/18 33/21
34/11 34/14 35/5 36/18 37/9 37/12 37/16
74/3 74/5 74/8
**businesses [8]** 63/8 63/14 63/24 64/1
76/4 79/23 85/19 85/21
**businessperson [6]** 70/15 70/18 71/6
72/3 72/16 81/22
**buy [7]** 20/9 27/1 27/1 27/8 27/8 27/14
50/16

**C**

**Caicedo [1]** 73/17
**call [7]** 15/21 15/24 16/17 25/14 86/10
90/24 112/5
**called [13]** 4/1 8/20 10/11 12/2 12/22
33/16 86/10 109/21 109/25 111/15
122/15 122/18 122/20
**calling [3]** 92/10 122/20 124/13
**calls [4]** 89/22 90/8 90/9 90/10
**came [3]** 50/14 116/15 125/14
**can [103]** 6/2 6/9 7/23 13/10 13/15
14/21 15/24 23/7 24/25 25/6 25/9 25/10
25/15 27/22 28/23 30/16 30/19 33/12
36/8 40/3 41/24 41/24 41/25 42/2 42/6
42/12 44/5 44/16 44/19 45/19 46/23
47/14 48/7 57/4 58/2 58/21 58/25 59/16
59/20 62/9 74/1 74/12 76/8 77/11 82/5
84/16 84/16 84/17 84/20 84/21 87/13
91/20 92/9 92/17 93/7 94/16 98/18
101/17 102/15 102/23 102/25 103/12
103/15 103/16 103/17 104/9 105/12
105/17 107/2 107/3 107/10 107/10
107/21 108/2 108/3 108/18 112/12
112/14 113/5 113/25 116/23 117/1
117/17 119/2 119/3 119/21 119/23
120/11 121/10 122/11 123/2 124/2
124/17 126/20 126/21 127/14 129/2
129/3 132/25 133/10 135/23 135/24
140/1
**can't [18]** 5/3 24/8 24/13 24/21 26/1
28/7 33/6 51/14 52/14 94/15 95/2 105/13
116/3 123/11 123/12 123/15 123/16
129/13
**cannot [10]** 15/4 15/11 16/7 19/7 25/12
27/9 28/25 33/7 123/15 123/22
**capacity [2]** 29/22 29/23
**caption [3]** 20/4 20/7 20/17
**care [8]** 18/3 28/20 68/5 80/13 96/24
115/14 116/8 122/3

**C**

**career [1]** 75/23
**caregivers [2]** 115/3 115/3
**carried [2]** 129/8 130/2
**case [92]** 1/2 4/1 8/23 9/21 9/25 10/3
11/11 11/23 11/24 12/1 12/2 12/3 12/3
12/3 13/20 14/2 14/5 14/7 14/11 16/2
16/7 16/7 16/9 25/6 25/14 33/6 34/2
35/2 39/1 39/2 39/6 39/9 40/3 40/20
40/22 41/5 42/20 43/10 44/13 46/2 47/5
47/10 48/2 51/4 52/3 52/4 53/18 54/12
54/13 54/15 55/25 62/3 62/7 64/6 64/22
68/10 68/15 70/16 70/19 72/12 75/19
76/2 77/4 79/6 81/11 81/13 94/3 97/22
98/2 99/23 99/23 101/8 108/10 108/20
108/23 109/12 120/18 122/14 122/22
123/4 123/6 123/7 123/16 123/16 123/17
123/20 123/21 123/22 127/9 130/15
133/23 138/3
**cases [6]** 25/7 39/19 47/7 58/21 122/14
122/18
**Castano [3]** 18/18 89/25 90/4
**categorically [1]** 42/24
**categories [2]** 19/25 45/9 78/15
**category [3]** 31/2 92/15 112/7
**causal [1]** 136/2
**causation [6]** 94/2 94/2 94/22 94/24
95/1 136/1
**cause [3]** 103/5 103/9 103/11
**caused [8]** 93/17 93/23 94/1 94/6 94/14
94/17 94/19 96/16
**causing [4]** 94/5 94/5 134/10 134/11
**Center [1]** 3/7
**ceremony [1]** 118/2
**certain [3]** 52/13 87/22 107/3
**certainly [19]** 5/3 10/18 22/16 25/1
27/22 28/18 29/22 41/7 44/16 60/8 70/14
72/13 82/7 82/25 83/24 87/25 105/8
107/22 115/16
**certify [1]** 140/18
**cetera [6]** 19/12 22/8 41/3 58/7 129/9
130/22
**chair [1]** 63/16
**challenge [2]** 82/24 94/16
**challenges [5]** 103/6 103/9 103/11
103/23 104/15
**chance [4]** 5/10 29/19 41/25 84/23
**change [11]** 58/7 66/11 80/4 86/1 96/19
105/13 124/3 134/8 134/24 136/22
138/15
**changed [6]** 51/2 58/13 58/17 85/24
95/15 134/13
**changes [1]** 50/9
**changing [1]** 96/7
**characterization [5]** 64/6 68/6 68/25
81/2 83/6
**characterize [1]** 137/11
**characterized [1]** 127/7
**charge [1]** 75/24
**charging [2]** 82/3 82/11
**chart [4]** 39/16 54/21 100/23 100/24
**check [2]** 116/2 120/17
**checked [4]** 8/21 70/22 70/25 71/1
**checking [3]** 10/10 77/13 81/22
**child [3]** 40/9 40/12 54/12
**child's [1]** 53/25

**children [51]** 35/12 38/8 39/9 39/13
39/19 40/3 40/5 40/6 40/14 41/6 42/5
42/17 44/4 44/21 45/10 45/10 45/15
46/11 46/14 46/19 47/6 47/21 48/14
48/16 49/9 52/23 52/25 53/1 53/1 53/5
53/16 53/19 53/22 54/21 55/8 55/12
55/14 58/11 58/16 58/19 58/20 58/23
59/7 59/20 59/22 132/4 132/22 132/22
133/16 133/24 134/2
**children's [1]** 43/20 133/6
**Chimborazo [1]** 2/7
**CHIQUITA [102]** 1/3 12/4 12/7 12/8 13/7
13/16 13/16 18/3 18/19 18/22 19/2 19/4
20/9 21/3 21/16 21/25 26/25 26/25 27/3
27/7 27/13 27/15 27/17 29/16 32/14
32/20 36/15 36/16 37/9 37/12 43/7 43/8
46/12 48/17 48/21 49/24 50/15 50/24
51/1 51/2 51/7 51/8 56/9 60/24 62/3
62/15 63/7 63/14 63/17 63/23 63/24
63/25 64/24 66/11 67/15 68/13 68/18
69/10 69/19 70/12 70/17 70/21 71/19
72/7 72/16 73/7 73/21 74/8 74/8 74/12
74/14 76/17 76/22 77/25 79/11 80/12
80/16 81/12 81/22 82/5 82/9 82/14 84/3
85/17 85/19 85/20 85/23 88/19 88/25
93/9 93/21 99/17 126/14 126/14 127/12
127/23 130/11 130/18 135/5 135/8
136/12 136/20
**Chiquita's [27]** 18/4 20/9 23/21 33/1
33/21 34/11 34/14 35/4 37/15 57/18
60/23 61/11 62/3 63/18 63/20 82/8 86/11
86/15 86/23 87/4 88/21 93/17 96/10
96/22 96/23 134/21 135/14
**choose [1]** 22/25
**choosing [1]** 36/17
**Christopher [2]** 114/10 114/11
**Chuck [2]** 64/17 76/9
**CIA [4]** 75/23 75/24 75/25 79/13
**Cincinnati [2]** 3/8 111/17
**cioffi [25]** 3/4 3/8 8/9 9/16 10/4 10/16
11/5 13/4 13/7 24/8 29/1 29/9 37/6
37/22 38/21 38/24 51/11 64/7 89/17
89/18 90/17 104/7 109/11 111/12 111/15
**Cioffi's [3]** 29/6 29/13 38/3
**circle [1]** 47/9
**circled [2]** 47/10 47/16
**circumstances [5]** 41/4 70/18 71/6
72/17 123/3
**cite [12]** 19/12 19/13 20/6 25/3 25/3
26/1 33/3 35/23 49/23 88/17 90/24 91/2
**cited [7]** 19/20 20/11 20/22 23/1 33/9
90/23 90/23
**citizens [1]** 11/22 13/10
**City [1]** 110/22
**civic [2]** 4/15 107/23
**civil [2]** 12/3 12/3
**claim [6]** 6/8 42/10 42/13 43/14 45/2
134/4
**claimant [1]** 54/13
**claimants [10]** 44/5 54/15 55/10 97/22
98/11 98/11 99/8 99/15 99/16 101/7
**claimed [3]** 65/3 102/22 103/2
**claims [27]** 6/16 12/18 12/20 38/15
38/16 39/16 39/17 39/18 42/7 43/8 43/21
43/23 44/12 44/13 45/6 46/13 46/20 53/4
53/11 55/3 55/12 81/19 93/10 99/23

**1/06/21 106/23 135/6**
**clarification [2]** 83/5 131/18
**clarified [1]** 65/10
**clarify [3]** 38/19 96/20 132/3
**clear [13]** 20/11 27/13 31/20 40/23 45/4
73/5 78/11 83/5 95/5 100/15 101/7
135/10 138/9
**clearly [5]** 31/24 66/4 76/20 82/22
126/15
**clients [7]** 43/24 44/1 44/2 44/2 44/9
57/20 69/5
**close [1]** 31/17
**closed [1]** 40/20
**closer [1]** 128/11
**closing [9]** 24/19 28/17 32/23 33/1
33/19 49/22 77/4 82/24 92/8
**co [3]** 109/13 110/11 111/4
**co-counsel [2]** 109/13 110/11
**code [1]** 78/1
**coerce [2]** 21/16 22/2
**Cohen [6]** 2/13 2/16 8/15 8/18 110/7
111/7
**cohenmilstein.com [2]** 2/14 2/17
**Colin [10]** 33/4 35/22 36/10 128/3
128/22 129/4 129/16 129/22 130/12
130/21
**colleague [2]** 111/19 111/20
**colleagues [3]** 69/10 111/4 111/18
**COLLINGSWORTH [1]** 2/9
**Colombia [14]** 22/5 33/22 34/12 34/15
37/13 50/16 50/17 63/19 64/21 70/13
71/2 76/4 79/23 82/19
**Colombia's [1]** 35/20
**Colombian [23]** 42/13 61/25 62/22
62/24 67/21 70/23 71/4 72/17 78/1 78/8
78/10 78/17 78/18 78/19 79/4 80/10 81/7
81/16 81/18 81/24 82/8 83/7 87/2
**colon [1]** 47/19
**column [1]** 88/24
**combine [1]** 103/24
**combined [1]** 139/15
**come [26]** 7/13 7/25 8/5 8/7 9/22 9/24
11/7 13/24 26/10 33/6 36/16 42/10 50/21
84/16 84/25 85/3 92/8 101/3 101/4 103/4
105/19 108/8 112/7 116/2 123/23 128/23
**comes [1]** 50/19
**comfort [1]** 31/17
**coming [4]** 8/6 104/16 115/20 124/7
**Comisky [1]** 3/6
**comment [6]** 10/19 10/19 24/20 29/1
31/11 31/18
**commenting [1]** 92/24
**comments [6]** 5/12 29/7 29/14 30/23
38/3 57/19
**committed [3]** 64/25 65/11 76/23
**committee [1]** 83/23
**common [1]** 135/25
**common-law [1]** 135/25
**commonly [1]** 87/21
**community [6]** 11/15 11/17 11/20 11/22
13/10 14/2
**companies [1]** 80/13
**company [4]** 12/4 22/9 23/23 67/25
**company's [2]** 62/14 70/4
**compensated [5]** 5/14 15/3 15/7 16/13
16/18

Case 0:08-md-01916-KAM   Document 3675   Entered on FLSD Docket 04/26/2024   Page 146 of

## C

**complaint [20]** 42/18 43/5 44/17 44/21 44/21 44/25 48/5 48/5 48/6 48/20 52/24 53/7 53/9 53/10 53/14 53/23 54/8 54/14 55/14 98/4
**complete [7]** 19/19 27/21 28/2 58/11 59/3 59/4 108/10
**completely [1]** 48/9
**compliment [2]** 90/19 90/20
**concatenating [1]** 59/5
**conceding [1]** 82/7
**concern [4]** 38/2 60/21 63/10 96/11
**concerned [6]** 15/15 31/18 58/6 126/22 126/22 135/3
**concerning [1]** 67/4
**concerns [1]** 83/6
**concession [1]** 82/9
**concluded [1]** 6/1
**conclusion [1]** 61/23
**conclusions [1]** 62/21
**conduct [3]** 29/10 108/8 123/20
**conducted [1]** 83/13
**confer [1]** 84/10
**conference [4]** 39/3 39/12 82/3 82/11
**confirm [9]** 41/16 71/2 76/4 105/15 105/16 106/3 106/8 107/1 134/16
**confirming [1]** 106/9
**conflate [2]** 48/3 64/25
**conflation [2]** 64/20 67/10
**conflict [1]** 50/18
**confront [1]** 105/21
**confused [1]** 92/2
**confusing [1]** 47/8 77/23 78/9
**confusion [1]** 106/21
**Congress [1]** 84/1
**congressional [3]** 82/17 83/8 83/23
**connection [2]** 67/21 136/2
**Conrad [5]** 2/2 2/6 2/10 44/2 110/5
**conradscherer.com [2]** 2/4 2/8
**consensus [1]** 7/24
**consider [3]** 5/13 49/8 137/6
**considerable [1]** 29/7
**consideration [1]** 49/3
**considered [4]** 14/17 66/7 99/16 122/16
**consistent [6]** 25/17 41/20 95/15 133/5 134/13 136/9
**constantly [1]** 70/22
**constitute [2]** 15/8 62/6
**constituted [1]** 33/1
**consultancy [1]** 63/17
**consumer [1]** 72/3
**contact [1]** 124/2
**contend [1]** 64/19
**contends [1]** 70/12
**content [2]** 62/20 62/24
**contention [3]** 37/11 47/25 48/10
**contents [1]** 62/22
**context [3]** 31/23 89/11 136/2
**continue [1]** 80/17
**Continued [1]** 2/1
**continues [1]** 16/22
**continuously [1]** 81/25
**contracted [1]** 63/17
**contractors [2]** 83/11 83/17
**contradict [1]** 26/2
**contrary [1]** 41/3

**contributed [1]** 64/3
**contributing [1]** 64/3
**contributions [1]** 83/16
**convenient [1]** 81/15
**conversation [1]** 6/25
**convince [1]** 105/11
**convinced [2]** 91/8 92/19
**convivir [1]** 52/7
**convivirs [2]** 51/7 51/9
**cooperation [2]** 107/17 107/22
**copies [2]** 15/20 69/6
**copy [6]** 17/17 46/23 57/3 77/16 86/18 135/19
**corner [1]** 6/18
**corporate [2]** 29/15 30/4
**corporation [3]** 30/2 68/4 83/24
**correct [32]** 13/20 44/16 46/21 51/23 67/2 77/15 77/16 83/5 88/5 92/20 92/21 93/18 93/19 112/17 113/5 113/12 113/19 113/25 114/2 114/17 114/18 114/22 114/25 117/13 119/22 120/10 121/4 121/11 126/10 137/10 137/18 138/14
**corrected [1]** 97/23
**correcting [1]** 66/19
**correction [3]** 66/20 67/3 95/12
**correctly [6]** 22/8 75/21 91/2 117/6 117/6 120/6
**corroborate [1]** 126/4
**could [42]** 5/7 8/22 9/12 21/23 25/1 31/6 32/15 35/16 37/25 42/23 43/18 48/21 54/6 58/3 59/18 59/19 59/20 75/3 79/4 80/17 82/4 90/4 96/16 100/13 100/14 102/3 104/4 112/4 112/10 112/11 117/18 119/15 120/3 120/16 121/3 122/10 124/4 129/24 130/1 132/13 132/16 134/16
**couldn't [8]** 5/22 15/6 87/10 87/1 104/5 116/6 116/8 116/14
**counsel [30]** 4/3 12/21 24/17 34/19 39/8 39/14 58/17 60/25 61/11 61/15 61/17 61/19 62/4 71/1 71/19 71/24 72/7 73/7 73/21 78/20 78/23 78/24 82/14 87/21 88/21 100/12 109/13 109/22 110/11 137/24
**counsel's [1]** 57/18 62/5
**counselor [3]** 121/13 121/18 121/22
**counselors [1]** 121/17
**counsels' [1]** 62/21
**count [1]** 101/18
**counter [2]** 28/1 38/5
**counter-argument [1]** 38/5
**counterdesignated [1]** 92/4
**counterdesignation [1]** 97/1 97/4
**counterdesignations [3]** 92/3 96/23 97/8
**countries [2]** 37/10 37/14
**country [3]** 11/22 13/12 126/17
**county [2]** 12/22 121/19
**couple [12]** 6/4 6/5 16/15 16/20 25/6 26/20 46/22 65/12 66/12 69/3 69/9 102/3
**course [11]** 5/12 5/14 23/20 24/19 30/11 53/20 53/22 55/12 97/19 128/19 131/17
**court [48]** 1/1 3/12 4/1 5/13 8/19 17/1 17/16 25/5 29/2 29/9 32/19 33/22 33/25 38/2 42/9 43/19 48/19 49/3 50/8 52/9

62/16 63/1 65/22 66/2 78/7 83/9 91/10 92/5 92/7 95/12 96/3 96/6 98/3 112/11 116/15 116/16 128/9 135/16 135/23 136/6 140/22
**court's [16]** 5/2 8/13 32/19 50/7 52/13 97/15 102/2 102/19 102/21 127/4 128/15 129/15 133/14 133/22 133/25 135/17
**courtroom [11]** 5/7 11/13 12/9 15/21 16/16 16/21 84/11 107/2 107/13 123/23 124/14
**Courts [1]** 87/21
**cover [3]** 20/1 26/17 30/23
**coverage [1]** 16/8
**covers [1]** 19/25
**Craig [1]** 113/23
**create [2]** 95/17 95/24
**created [2]** 59/1 59/12
**credibility [4]** 89/13 89/22 90/9 92/24
**credible [1]** 18/23 27/16
**Crichton [2]** 114/6 114/7 114/8 114/11
**crime [6]** 61/24 61/24 62/6 62/12 78/3 78/5
**criminal [3]** 12/3 66/17 78/1
**critically [1]** 6/15
**criticism [2]** 32/7
**cross [5]** 42/11 62/23 102/13
**cross-examination [2]** 42/11 102/13
**cross-examine [1]** 62/23
**CRR [2]** 3/11 140/21
**crux [1]** 95/18
**CSR [2]** 3/11 140/21
**Cumbay [1]** 2/7
**cured [1]** 27/22
**currently [1]** 70/6

## D

**D-I-D-I-E-R [1]** 64/18
**D.C [1]** 109/24
**Daily [3]** 10/2 10/10 10/17
**damage [1]** 44/23
**damages [15]** 40/3 42/10 42/12 43/14 44/24 45/1 45/2 54/11 101/8 132/13 133/9 133/10 133/18 133/20 134/5
**danger [1]** 62/11
**dante [9]** 3/4 3/9 69/16 69/18 78/11 79/12 80/24 83/8 111/21
**date [11]** 33/10 47/9 47/11 67/2 77/14 77/14 77/17 118/1 126/3 130/21 138/15
**dated [2]** 47/14 66/22
**dates [3]** 77/11 77/14 138/15
**daughter [2]** 117/15 117/21
**David [1]** 40/13
**day [8]** 1/8 4/13 14/4 14/4 14/4 21/19 103/17 118/4
**days [2]** 115/7 121/25
**DC [10]** 1/19 2/11 2/14 44/13 48/3 110/16 110/19 111/8 129/4 133/22
**DE [3]** 42/9 42/14 54/24 55/10 61/1
**DE 3515 [1]** 54/24
**DEA [1]** 79/17
**dead [1]** 126/24
**deal [17]** 5/8 5/24 7/21 19/24 36/7 39/24 48/7 56/4 56/8 56/18 82/10 85/10 97/11 101/16 107/12 134/3 137/21
**dealing [1]** 64/8

**D**

**deals [1]** 20/20

**dealt [1]** 135/18

**death [12]** 53/18 54/12 93/18 93/23 93/25 94/1 94/5 94/8 94/14 94/17 95/4 134/11

**deaths [6]** 12/18 58/23 94/5 94/6 94/19 126/7

**decedent [5]** 46/10 47/18 54/13 100/25 101/2

**decedent's [5]** 93/18 93/25 94/1 94/14 134/11

**decedents [3]** 12/21 94/2 94/21

**decedents' [1]** 134/10

**December [3]** 68/12 68/14 80/2

**December 2003 [3]** 68/12 68/14 80/2

**decide [9]** 15/22 51/15 51/22 51/24 64/9 84/1 91/25 102/16 108/19

**decided [1]** 50/16

**deciding [1]** 91/14

**decision [6]** 6/17 14/14 35/5 64/11 74/10 129/1

**decision-making [2]** 14/14 74/10

**decisions [3]** 11/25 14/2 16/1

**deck [5]** 35/18 39/2 40/4 42/5 50/7

**decks [1]** 102/25

**defendant [4]** 3/4 42/11 111/23 134/8

**defendant's [11]** 39/16 56/22 57/3 58/19 58/22 60/5 65/2 68/23 100/23 131/24 134/7

**defendants [9]** 17/10 60/25 66/11 66/19 67/3 69/6 88/17 131/7 131/8

**defense [14]** 58/17 60/25 61/15 61/17 71/25 72/4 72/8 72/10 72/12 72/19 78/23 78/25 81/19 137/23

**define [1]** 56/16

**defined [1]** 136/1

**definitive [1]** 104/17

**definitively [1]** 105/25

**degree [2]** 95/17 95/23

**delaying [1]** 6/25

**delays [1]** 6/20

**delete [3]** 18/12 18/17 19/3

**deleted [1]** 18/21

**deleting [2]** 27/13 129/3

**deletion [1]** 19/10

**delve [2]** 6/14 40/22

**demand [1]** 78/5

**demands [1]** 70/23

**dementia [1]** 115/4

**demonstrate [2]** 127/12 127/23

**demonstrative [16]** 18/17 21/6 21/8 21/13 24/25 25/12 55/22 64/8 84/3 126/3 127/6 128/16 129/3 129/5 129/11 130/1

**demonstratives [36]** 17/3 17/15 17/23 21/1 23/18 23/24 24/10 29/14 34/19 34/20 38/11 38/14 38/16 38/17 38/20 40/17 45/16 45/18 56/23 57/17 57/19 58/5 58/7 58/18 58/20 59/5 60/6 60/7 69/5 69/8 102/24 125/6 131/9 131/24 134/7 138/7

**denied [1]** 83/14

**Denney [4]** 1/13 12/23 109/21 109/23

**deny [1]** 88/3

**denying [2]** 139/2 139/5

**depicted [1]** 126/7

**depose [5]** 40/2 73/2 73/6 79/5 79/7

**deposed [5]** 39/19 79/7 39/7 71/16 71/20

**deposition [37]** 17/22 19/19 20/21 23/6 23/22 25/13 25/15 25/17 25/19 25/20 25/22 25/25 26/7 26/18 27/23 27/25 29/21 30/13 30/15 30/19 36/25 41/14 41/17 41/22 53/25 86/7 88/17 89/5 91/3 91/9 91/15 92/18 97/24 98/12 99/13 99/15 100/13

**depositions [8]** 24/7 26/12 48/24 53/18 72/21 72/24 91/6 91/23

**deputy [2]** 84/11 107/2

**DERIVATIVE [1]** 1/4

**describing [1]** 28/16

**designate [1]** 91/12

**designated [13]** 80/14 83/25 88/19 88/25 89/2 91/3 91/6 91/9 91/12 91/16 92/3 96/25 130/24

**designation [10]** 36/11 36/12 36/21 70/14 88/22 97/3 128/17 129/6 129/20 130/21

**designations [7]** 91/4 91/14 91/22 92/3 92/17 96/22 96/22

**desire [2]** 107/22 112/25

**despite [2]** 6/1 105/12

**destroyed [1]** 83/19

**detail [1]** 80/22

**determination [1]** 56/11

**develop [1]** 41/24

**developed [1]** 87/23

**device [1]** 16/6

**Devine [10]** 63/13 63/16 64/4 75/14 75/16 75/16 75/19 75/22 79/12 79/19

**Devine's [1]** 79/13

**devolving [1]** 62/19

**diamond [1]** 18/25

**DIAZ [2]** 110/17 110/18

**did [77]** 4/12 8/24 10/16 18/22 23/7 26/14 27/14 27/15 29/17 31/13 35/14 43/7 43/8 44/20 46/11 46/12 46/13 47/21 50/15 57/19 58/9 60/6 60/9 60/25 67/1 68/20 70/5 72/8 73/9 74/25 75/8 76/8 78/21 79/3 79/12 79/20 80/3 80/25 82/5 82/6 83/2 83/14 83/24 90/1 91/12 91/14 91/17 91/20 91/21 91/25 93/10 93/16 93/16 94/20 96/8 98/10 98/10 99/10 99/12 99/17 100/20 100/21 100/25 101/14 101/20 113/1 117/5 117/6 118/15 120/6 122/10 122/11 134/20 135/13 136/11 136/19 136/23

**Didier [6]** 64/18 65/1 67/11 76/9 77/3 79/24

**didn't [40]** 7/2 7/18 7/20 10/14 10/18 18/3 19/1 20/12 22/10 27/19 31/11 31/13 42/7 46/15 50/4 59/11 61/14 68/5 72/20 80/13 80/13 80/16 80/24 86/1 87/11 87/14 90/21 91/1 91/15 91/21 91/25 94/7 98/8 99/7 101/18 105/23 114/14 115/13 120/17 138/17

**difference [5]** 4/8 4/10 4/10 54/4 94/4

**different [17]** 24/16 24/21 24/22 26/20 26/23 28/14 58/12 64/16 65/9 66/5 69/12 69/13 71/1 75/4 88/16 96/2 132/7

**differently [1]** 136/1

**difficult [3]** 4/14 11/25 60/10

**difficulty [1]** 37/23 64/12

**digital [1]** 58/18

**dire [1]** 6/22

**direct [6]** 21/15 23/4 23/8 64/2 87/21 129/22

**directing [1]** 21/7

**directly [8]** 50/19 71/5 72/6 72/14 72/17 78/2 95/3 100/4

**directs [1]** 96/3

**disagree [2]** 13/14 48/9

**disagreements [1]** 17/2

**disclose [2]** 47/18 48/15

**disclosed [9]** 33/9 39/20 46/15 71/14 72/20 72/23 79/8 79/9 79/18

**disclosure [2]** 48/13 79/10

**disclosures [17]** 39/10 39/14 46/10 46/13 47/5 47/14 48/15 49/9 49/12 53/11 55/2 97/23 98/10 100/14 100/16 100/17 100/20

**discount [1]** 10/12

**discovery [12]** 22/7 23/12 40/20 43/7 46/13 46/16 48/18 48/21 53/19 71/14 80/23 83/13

**discretion [1]** 102/2

**discuss [7]** 7/23 15/21 58/2 84/19 93/13 123/15 124/20

**discussed [5]** 20/14 46/3 82/16 125/11 125/13

**Discusses [1]** 67/5

**discussing [3]** 27/10 66/22 93/9

**discussion [2]** 6/20 85/2

**dismissal [4]** 39/15 54/21 55/3 100/22

**dismissed [2]** 42/18 43/5

**dispute [6]** 43/3 53/8 65/1 67/11 68/14 98/6

**disputed [1]** 94/12

**disputes [2]** 11/20 13/12

**distinct [1]** 44/11

**distinction [1]** 135/10

**distribute [1]** 15/20

**distributed [2]** 106/13 126/12

**district [4]** 1/1 1/1 1/9 121/18

**division [1]** 66/17

**do [115]** 4/10 4/13 4/19 5/4 5/22 6/2 6/16 6/22 6/22 7/5 7/14 7/25 7/25 9/20 9/25 10/1 10/4 10/24 13/13 16/5 16/7 17/20 18/19 20/6 21/10 23/10 26/17 36/18 36/20 38/4 43/2 43/15 45/1 45/1 46/25 46/25 48/8 48/12 48/15 53/18 53/18 54/7 56/21 57/3 57/8 61/9 62/6 64/3 65/5 65/13 72/11 72/13 74/17 77/4 81/1 82/25 84/10 84/15 87/14 87/14 89/18 90/4 91/16 92/5 94/16 95/9 95/21 97/21 100/18 100/21 101/14 101/18 102/17 102/20 103/3 103/3 103/13 103/21 104/3 104/9 105/8 105/9 105/15 105/17 105/22 107/4 107/24 108/1 115/5 115/13 115/21 116/3 116/12 116/12 118/1 118/5 118/12 118/19 118/25 119/12 120/16 121/13 121/21 123/8 123/15 127/5 128/2 130/19 130/23 132/25 134/5 135/22 138/13 138/18 139/16

**docket [6]** 54/23 70/9 70/10 86/25 87/2 87/3

**doctrine [1]** 135/25

**document [4]** 73/25 80/20 129/23 130/18

**D**

**documents [5]** 39/21 61/7 61/10 63/20 67/24
**does [17]** 28/20 29/25 30/18 30/18 34/17 44/9 48/10 60/10 67/1 74/18 75/21 76/18 83/10 83/10 85/5 115/8 116/11
**doesn't [10]** 9/22 24/10 34/16 54/5 64/13 65/14 75/18 76/13 92/8 107/11
**doing [11]** 4/5 6/3 29/18 37/9 37/12 51/4 64/3 68/18 74/15 74/16 81/24
**DOJ [9]** 66/4 66/16 68/5 68/18 68/20 80/13 80/15 82/16 84/1
**dollar [1]** 18/4
**don't [106]** 5/15 5/19 7/4 9/1 9/3 9/19 10/9 10/12 10/13 10/17 13/11 13/11 15/14 17/14 18/18 25/16 25/20 25/23 27/24 28/22 30/6 34/8 36/7 38/4 41/2 41/18 41/20 42/21 43/15 44/4 44/7 45/2 45/17 47/2 47/14 47/21 47/25 49/9 52/2 53/8 54/12 55/20 57/7 57/20 58/13 59/6 59/9 60/14 62/25 63/6 64/4 64/24 65/3 66/9 68/23 69/4 69/10 75/18 80/18 82/3 84/12 84/22 87/12 91/1 93/20 93/22 94/3 95/2 95/4 97/10 97/10 97/11 98/5 99/8 101/25 102/3 102/9 102/12 105/10 105/15 105/15 105/16 105/16 108/13 110/22 110/23 114/4 121/12 121/16 121/20 121/18 124/16 124/23 125/11 126/21 127/15 128/22 130/17 131/1 133/9 134/4 135/19 137/12 137/13 138/5 139/9
**done [8]** 21/21 26/20 27/19 54/6 58/8 79/4 106/17 132/19
**down [15]** 4/3 4/15 7/18 7/24 7/25 8/10 8/13 10/21 10/23 12/15 60/1 69/4 84/22 112/14 139/13
**downloaded [1]** 84/12
**downstairs [2]** 8/21 11/2
**Dr. [1]** 50/20
**Dr. Karl's [1]** 50/20
**draw [1]** 30/9
**drug [3]** 79/18 86/24 92/7
**drugs [4]** 20/9 27/1 27/8 27/14
**during [16]** 5/12 5/14 6/22 23/20 25/21 26/24 30/11 37/25 82/11 82/16 84/18 109/5 121/25 126/20 128/19 138/3
**duty [4]** 4/15 8/21 90/24 107/23

**E**

**each [14]** 12/10 12/10 37/10 37/13 37/14 40/5 40/5 40/14 50/10 92/3 108/18 110/1 110/25 125/9
**earlier [9]** 23/10 34/5 64/7 99/7 106/9 109/19 122/24 134/14 139/5
**early [4]** 29/1 63/18 70/21 84/20
**EarthRights [7]** 1/18 109/25 110/15 110/18 111/2 111/4 111/9
**earthrights.org [4]** 1/20 1/20 1/21 1/21
**easier [2]** 16/12 125/7
**easiest [1]** 66/6
**easy [1]** 93/7
**economist [4]** 35/22 125/18 126/1 126/12
**Edificio [1]** 2/6
**effect [2]** 74/6 127/11
**effectively [1]** 139/1

**efficient [1]** 105/3
**effort [1]** 5/2
**ehager [1]** 2/8
**either [14]** 8/3 8/5 29/12 48/3 51/20 54/11 64/14 72/19 74/12 87/22 104/4 104/9 116/14 127/11
**electronic [2]** 16/6 58/25
**element [4]** 72/14 94/23 94/24 95/1
**elements [1]** 93/9
**Ellen [1]** 113/9
**else [12]** 5/9 19/5 27/18 38/7 42/3 93/20 105/17 124/11 124/20 125/8 139/6 140/9
**elsewhere [1]** 94/18
**email [3]** 3/3 59/19 59/19
**emailed [1]** 84/12
**emphasize [2]** 14/23 50/8
**Empire [1]** 110/22
**employed [1]** 21/24
**employee [1]** 68/13
**employees [2]** 22/9 83/11
**employer [5]** 15/7 15/9 15/12 16/13 16/17
**employment [1]** 15/14
**encompassed [1]** 56/17
**end [7]** 12/15 34/5 66/14 95/22 121/14 121/22 122/21
**engaged [3]** 50/24 51/2 56/13
**engagement [1]** 63/21
**engaging [1]** 62/15
**English [5]** 117/17 118/9 118/12 118/21 119/1
**enhance [2]** 80/10 133/18
**enough [8]** 14/18 16/17 97/14 103/5 105/11 108/13 108/16 123/1
**entered [2]** 53/2 54/15 55/7
**enters [1]** 107/13
**entertain [2]** 64/13 65/22
**entire [6]** 16/13 19/7 75/23 76/22 113/13 114/17
**entirely [2]** 29/10 33/24 40/23
**entirety [1]** 88/23
**entities [1]** 67/16
**entitled [3]** 63/6 63/7 66/3 82/25 140/19
**entity [1]** 36/17
**entries [1]** 52/6
**entry [7]** 50/23 52/8 70/9 70/10 86/25 87/7 87/3
**equipment [1]** 83/18
**ERIC [1]** 2/5
**Erica [1]** 117/7
**Erika [1]** 117/5
**errors [1]** 66/12
**Escobar [1]** 78/17
**Especially [1]** 102/11
**Esperante [2]** 2/20
**essentially [9]** 40/20 62/2 62/2 62/6 62/8 62/10 62/19 68/5 83/14
**establish [3]** 37/2 37/4 68/20
**established [3]** 36/25 37/13 68/23
**establishes [1]** 68/24
**estate [1]** 53/20
**ESTRADA [2]** 1/11 109/22
**et [6]** 19/12 22/8 41/3 58/7 129/3 130/21
**even [17]** 4/5 5/19 6/23 14/25 24/20 25/14 28/17 33/17 42/6 42/7 42/12 49/3 49/7 101/4 108/6 108/21 132/14

**evening [2]** 116/15 140/19
**event [1]** 124/3
**events [1]** 67/1
**ever [7]** 18/18 49/17 53/18 55/22 56/11 65/3 127/20
**every [5]** 21/15 29/19 30/5 100/17 100/25
**everybody [6]** 5/9 9/25 102/17 103/2 105/17 105/18
**everyone [4]** 107/15 122/12 124/11 140/12
**everything [3]** 28/11 59/1 125/8
**evidence [104]** 13/23 19/8 19/8 19/9 19/12 19/13 21/4 23/14 24/3 24/18 25/2 28/4 29/3 29/6 29/21 30/10 32/24 33/3 33/6 33/6 41/11 42/12 49/20 49/22 50/21 51/10 51/12 51/16 52/8 52/12 56/5 56/6 60/13 60/16 60/18 60/23 61/3 62/25 63/7 63/13 64/6 64/10 65/10 65/14 66/4 67/15 67/17 68/1 68/7 68/9 68/19 68/22 68/25 69/23 70/12 70/17 70/19 71/8 71/10 72/14 73/13 74/12 75/5 75/7 76/17 76/20 80/20 80/24 80/25 81/2 81/11 82/19 82/23 83/15 85/17 85/20 85/22 86/10 86/22 87/4 87/7 87/12 87/16 87/22 87/22 88/3 88/8 88/10 89/12 92/6 93/11 96/9 96/15 118/20 126/20 128/20 128/24 129/16 131/13 134/21 135/14 136/12 136/20 138/1
**evolving [1]** 50/11
**exact [2]** 29/15 126/2
**exactly [11]** 7/16 25/3 26/2 26/15 30/15 46/24 48/1 87/14 87/18 90/25 93/19
**examination [5]** 42/11 102/13 103/3 103/23 108/9
**examine [2]** 62/23 73/2
**example [5]** 15/3 23/3 61/6 73/11 89/16
**except [2]** 80/19 132/24
**excerpt [1]** 89/4
**excerpts [5]** 19/19 23/24 26/7 30/22 86/7
**exchange [3]** 57/17 57/24 58/4
**exchanged [2]** 57/22 58/9
**exchanging [1]** 96/6
**exclude [2]** 87/4 133/6
**excluded [4]** 50/20 86/22 87/1 89/11
**excluding [1]** 33/22
**excruciating [1]** 80/22
**excuse [5]** 5/7 5/19 7/3 9/7 9/13 15/23 49/17 55/23 56/12 86/16 86/23 87/5 89/1 102/16 103/2 103/22 105/17 105/18 108/5 108/7 122/14 127/21 138/22
**excused [2]** 72/9 122/15
**excusing [2]** 5/22 6/12
**executives [2]** 73/8 126/15
**exhibit [4]** 61/18 61/19 63/21 68/23
**exhibits [2]** 87/15 88/10
**exist [1]** 11/21
**existing [1]** 41/11
**exit [2]** 8/24 63/19
**exited [1]** 124/14
**expect [2]** 36/16 110/23
**expedite [1]** 14/14
**experience [4]** 79/13 79/16 79/17 102/3
**experiences [1]** 108/22
**expert [10]** 63/11 63/13 64/3 64/4 75/18

**E**

**expert... [5]** 75/19 79/16 79/19 87/9 89/11
**experts [1]** 75/17
**explained [1]** 23/11
**explaining [1]** 4/14
**explanation [1]** 19/3
**explicit [2]** 58/4 58/10
**exposed [1]** 126/15
**express [1]** 32/22
**expressed [1]** 106/8
**expressly [1]** 126/6
**extensive [1]** 126/5
**extensively [1]** 82/16
**extent [9]** 4/21 41/9 77/1 77/15 82/23 88/2 105/24 137/25 139/4
**external [2]** 70/1 71/11
**extorted [10]** 18/22 27/15 63/8 63/14 76/15 76/18 85/17 85/23 86/11 86/15
**extortion [21]** 29/18 29/20 61/24 62/9 67/6 70/22 71/7 76/5 79/14 79/22 93/17 96/10 134/11 134/17 134/21 135/14 136/13 136/21 136/24 137/1 137/8
**extortions [1]** 63/23
**extremely [2]** 29/6 29/11

**F**

**face [2]** 83/18 109/6
**faced [2]** 70/22 71/7
**facilitated [1]** 79/21
**facilities [1]** 83/20
**fact [24]** 18/21 18/21 24/21 27/3 27/14 27/15 29/24 33/5 40/20 46/22 49/22 51/18 60/24 63/12 74/25 75/20 76/2 80/19 99/14 104/5 105/13 108/3 129/5 133/15
**factors [3]** 5/13 128/16 128/25
**facts [7]** 11/23 13/14 32/24 40/22 62/3 62/6 62/15
**factual [4]** 37/8 37/14 81/10 86/3
**failed [4]** 46/19 48/22 100/18 139/4
**failure [3]** 61/23 62/8 97/23
**fair [8]** 45/19 68/6 68/25 89/25 108/19 108/24 123/6 127/25
**fairly [1]** 126/23
**faith [6]** 59/3 64/5 65/13 67/16 71/23 81/2
**familiar [2]** 22/3 35/1
**families [1]** 83/21
**family [6]** 43/18 44/6 45/13 49/6 100/6 100/9
**far [8]** 31/17 58/21 68/19 107/18 115/2 126/21 134/7 137/23
**FARC [15]** 65/2 67/12 67/23 67/25 68/13 68/16 76/21 80/1 80/3 80/5 80/15 80/21 81/1 83/11 83/16
**farms [4]** 50/16 50/16 50/25 51/2
**fashion [1]** 21/25
**father [4]** 115/18 116/10 132/18 133/17
**fault [1]** 106/22
**favor [2]** 6/25 63/1
**February [1]** 83/23
**February 15 [1]** 83/23
**federal [7]** 2/3 48/3 48/11 129/8 129/19 135/25 140/22
**feel [4]** 44/22 45/12 46/1 46/3

**felt [1]** 23/25
**female [1]** 113/4
**fence [1]** 105/24
**Ferrante [3]** 109/6 124/2 124/10
**few [7]** 11/8 11/19 33/12 100/24 102/5 121/25 122/2
**Fifth [3]** 1/23 2/13 3/7
**figure [3]** 80/8 80/8 88/11
**figured [1]** 101/22
**filed [5]** 44/14 87/3 87/18 98/4 133/23
**fill [5]** 14/12 15/18 15/19 107/11 114/14
**filling [1]** 9/15
**final [5]** 16/1 39/3 39/12 50/7 93/6
**finalize [1]** 102/25
**finally [2]** 32/17 82/12
**financially [1]** 15/4
**financing [1]** 33/2 62/9
**find [8]** 5/16 5/16 16/17 34/4 35/7 46/23 91/24 135/11
**finding [1]** 129/7
**fine [10]** 4/7 4/15 8/7 10/24 90/15 91/25 127/5 131/23 133/19 133/19
**finish [1]** 55/2
**finished [1]** 85/1
**firm [11]** 1/23 8/23 12/22 70/2 75/1 109/20 109/25 110/10 110/13 110/19 111/15
**firms [1]** 71/2
**first [46]** 13/8 18/1 18/3 20/14 21/18 22/13 22/18 23/4 25/8 25/15 26/4 26/15 35/13 38/15 47/3 49/16 50/2 57/16 59/13 60/12 61/22 66/1 66/9 66/24 69/11 69/21 72/1 72/2 75/11 75/13 76/9 81/6 81/14 85/16 88/17 88/18 89/1 90/15 90/21 91/2 93/13 112/7 114/4 114/9 117/16 118/10
**five [5]** 14/4 20/1 26/10 31/4 44/20
**five-day [1]** 14/4
**FL [7]** 1/14 2/4 2/17 2/20 3/2 3/13 140/23
**flag [1]** 16/12
**Flanagan [1]** 9/4
**flash [1]** 127/14
**flatteringly [1]** 10/4
**flip [1]** 40/1
**flips [1]** 18/14
**floor [3]** 2/3 2/13 91/24
**FLORIDA [5]** 1/1 1/3 53/20 99/9 117/22
**flsd.uscourts.gov [2]** 3/13 140/23
**focus [5]** 42/22 95/22 95/25 107/25 112/3
**focused [1]** 36/8
**focusing [1]** 48/17
**follow [1]** 50/11
**followed [1]** 90/5
**following [5]** 11/4 17/1 43/5 88/22 119/1
**footing [1]** 44/22
**footnote [1]** 43/16
**forced [1]** 83/17
**foregoing [1]** 140/18
**foreign [7]** 32/14 36/12 62/20 83/25 129/7 130/11 130/19
**foremost [1]** 13/8
**forensic [1]** 58/25
**foresee [1]** 121/20
**foreseeable [1]** 95/17

**form [8]** 45/23 45/24 45/25 86/5 91/11 99/14 132/4 132/24
**former [3]** 28/16 79/15 82/13
**Fort [3]** 2/4 3/2 110/6
**Fort Lauderdale [1]** 110/6
**forth [3]** 70/8 96/7 137/5
**forward [7]** 34/16 44/18 44/19 63/3 92/6 105/3 108/8
**found [2]** 32/17 86/8
**foundation [2]** 73/15 75/5
**founder [1]** 75/22
**founders [1]** 13/12
**four [11]** 14/10 19/16 19/24 19/25 26/1 31/25 38/20 38/25 63/6 121/19 130/3
**fraction [2]** 86/11 86/16
**frame [1]** 27/7 34/1 34/15
**Francisco [2]** 52/23 99/22
**Francisco's [1]** 45/10
**FRANK [3]** 3/4 69/18 111/20
**free [1]** 96/24
**Fridays [2]** 122/2 122/2
**front [8]** 8/23 29/4 43/16 47/15 50/14 70/6 84/1 95/4
**FTO [1]** 70/14 128/17 130/25
**FTOs [1]** 80/14
**full [6]** 23/25 41/24 106/20 115/23 131/16 131/21
**full-time [1]** 115/23
**fuller [1]** 23/1
**fully [1]** 64/14
**function [2]** 56/14 62/16
**fundamental [1]** 56/8
**funded [3]** 32/14 130/11 130/19
**FUNDORA [4]** 3/5 38/10 100/2 125/16
**FUNDORA-MURPHY [2]** 3/5 125/16
**further [6]** 5/20 23/6 89/3 108/9 109/4 109/10

**G**

**G-R-E-G-O-R-I-O [1]** 40/10
**Gabriela [1]** 110/17
**Gaddis [2]** 79/16 86/23
**Gainesville [1]** 117/15
**GARCIA [2]** 1/12 109/22
**Gardens [2]** 2/17 110/8
**gather [1]** 123/1
**gathered [1]** 30/10
**gave [5]** 13/12 23/22 74/13 79/13 124/8
**general [13]** 10/3 10/5 27/5 31/21 32/7 32/10 38/15 71/19 73/7 73/21 78/20 81/19 82/14
**generally [1]** 80/14
**generals [1]** 87/2
**gentleman [1]** 12/8
**gentlemen [9]** 11/9 12/6 12/14 13/6 23/19 107/16 109/18 111/22 112/2
**geographically [1]** 37/19
**get [54]** 7/18 8/17 10/4 11/6 14/18 24/1 25/21 28/16 30/3 39/24 45/1 45/12 46/23 48/7 50/4 57/21 58/2 58/9 59/15 73/12 74/2 74/17 74/25 75/4 80/17 83/1 84/17 84/24 85/9 91/19 93/7 101/18 102/15 102/24 103/17 103/25 104/9 105/4 105/10 105/14 107/2 107/11 110/24 112/10 124/17 124/19 124/23 127/17 127/18 128/11 135/20 139/7 139/19

**G**

get... [1] 140/6
gets [1] 90/17
getting [5] 25/5 59/17 74/18 117/15 119/6
girl [1] 98/15
gist [2] 127/17 127/18
give [27] 5/9 10/18 11/13 13/10 15/5 15/18 25/6 28/1 28/3 58/10 58/11 61/6 69/6 78/22 79/22 84/23 93/21 96/4 108/7 109/13 116/11 116/14 122/3 124/1 124/10 125/5 131/21
given [13] 13/21 38/20 38/20 38/21 38/23 38/23 40/19 41/4 67/7 67/8 72/16 102/19 132/17
gives [3] 25/21 89/21 99/17
giving [5] 24/3 63/25 65/6 96/14 104/19
GJULLIN [2] 1/17 111/2
global [3] 33/21 34/11 34/14
go [45] 4/6 4/15 6/8 6/15 7/24 7/25 8/1 8/2 8/3 8/8 8/13 8/14 27/12 33/14 34/23 42/21 44/18 44/19 51/23 53/18 56/21 58/7 62/13 66/2 76/10 80/22 83/2 84/17 84/18 91/24 92/22 102/8 102/15 105/11 108/17 108/25 109/4 109/10 110/25 117/15 122/25 123/2 134/19 139/12 139/13
goes [8] 26/5 71/5 71/8 72/6 72/14 74/3 74/8 94/22
going [187]
Goldberger [1] 31/15
gone [3] 4/3 7/12 15/15
good [41] 4/2 11/9 12/14 13/6 43/22 59/3 64/5 65/13 67/16 70/15 71/23 81/2 93/3 93/5 102/23 109/18 110/14 110/17 111/1 111/14 111/22 112/9 113/3 113/4 113/12 113/23 113/24 114/8 114/20 114/21 119/21 120/1 120/2 120/8 120/9 120/24 120/25 121/2 121/8 121/9 124/12
GOPAL [2] 3/5 111/20
got [24] 23/19 29/19 35/8 38/11 50/5 51/1 57/7 63/6 71/10 78/12 80/23 83/6 85/24 90/13 91/16 115/19 116/15 117/21 119/5 122/12 130/4 135/4 139/3 139/25
gotten [1] 103/5
government [5] 75/25 79/15 80/9 80/10 129/8
government's [2] 129/1 129/20
governmental [1] 80/10
graduate [1] 117/15
graduating [2] 117/21 121/23
graduation [2] 118/2 119/4
Grandma [1] 54/9
grandmother [10] 43/20 45/5 52/25 53/15 98/13 98/20 132/20 133/10 133/15 133/17
grant [1] 101/16
granted [3] 53/3 55/11 98/7
graphic [1] 126/23
great [6] 4/12 5/24 47/24 99/21 124/22 140/4
GREEN [11] 2/18 2/19 84/5 85/12 85/14 90/16 91/7 91/21 92/2 110/9 138/20
greet [1] 11/12
Gregorio [1] 40/10
grounds [2] 89/15 90/7

group [25] 14/15 18/17 19/25 36/11 63/16 63/20 64/4 64/25 65/4 65/9 75/22 78/5 104/10 105/14 106/14 106/25 107/4 108/4 108/11 108/12 108/15 108/16 108/16 122/25 124/9
groups [9] 62/9 64/21 64/24 76/5 76/24 78/3 78/4 78/4 79/23
guardian [1] 53/1
guerrilla [1] 76/24
guess [8] 5/25 77/11 91/13 102/15 105/19 126/11 133/3 139/11
guilty [1] 32/21

**H**

had [33] 5/21 8/20 14/15 19/4 23/5 27/17 27/17 37/12 37/13 54/21 58/4 59/2 59/3 60/7 68/18 73/2 73/6 77/8 78/22 83/15 94/7 96/25 97/13 100/15 108/11 109/18 130/10 132/3 133/18 134/13 138/5 138/13 138/18
HAGER [6] 2/5 47/2 47/9 48/2 48/12 92/16
Halim [1] 120/6
hand [4] 4/6 6/18 88/20 91/18
handed [5] 18/16 20/23 21/8 38/13 57/5
handle [1] 33/13
handled [1] 69/10
handwritten [1] 137/21
happen [5] 7/15 57/25 67/19 116/19 116/22
happened [5] 46/17 57/21 66/21 67/1 100/23
happens [1] 26/12
happy [13] 8/1 10/15 30/22 38/4 56/24 58/2 58/16 65/15 80/22 83/9 94/13 130/19 136/5
hard [2] 117/17 117/19
hardship [37] 5/5 5/10 6/8 6/16 6/20 6/23 7/4 7/5 7/14 14/8 14/19 14/21 14/23 15/1 15/6 15/8 15/9 15/21 15/23 16/10 16/11 101/15 101/21 102/22 103/2 103/22 105/17 105/23 106/8 108/1 112/4 112/16 115/2 115/13 117/13 121/12 122/14
hardships [8] 5/9 6/10 6/14 7/9 84/20 101/23 102/6 105/11
harm [2] 95/17 95/24
harm's [1] 35/5
Harold [2] 40/13 98/21
harsh [1] 102/13
has [47] 9/10 9/24 12/19 15/1 21/4 22/9 29/21 30/10 30/13 30/16 30/19 33/16 36/25 38/2 39/1 40/14 43/14 45/22 47/10 50/20 58/17 62/3 63/10 63/13 64/2 64/23 65/3 67/15 75/25 76/19 77/25 86/3 86/22 87/1 87/19 87/22 89/10 89/11 89/15 92/5 92/25 93/8 94/2 101/3 102/20 129/8 138/25
Hasbun [2] 89/17 89/19
hasn't [2] 52/9 52/12
hate [2] 6/16 102/9
haunt [1] 9/22
have [256]
haven't [6] 7/8 41/21 65/25 88/4 103/5 123/11
having [6] 4/3 6/14 7/12 27/23 83/18

he [63] 7/3 18/19 18/19 18/21 18/22 18/24 18/25 22/10 24/2 24/10 24/10 24/17 25/10 25/10 25/11 27/15 27/15 28/7 28/11 29/2 29/11 44/16 54/10 59/2 59/3 59/8 59/10 59/11 59/18 63/12 65/8 69/21 71/20 71/20 75/17 75/21 75/24 76/2 76/12 77/3 77/4 78/14 78/21 78/21 79/18 79/20 81/17 81/20 82/14 82/25 89/21 91/8 92/19 92/19 111/5 115/8 115/19 115/19 116/6 116/8 116/11 130/14 138/14
he's [6] 11/7 23/25 24/3 75/19 115/10 115/10
head [5] 7/22 8/10 10/23 66/16 75/23
head-on [1] 7/22
heading [2] 21/2 60/13
headquartered [1] 111/16
healthcare [1] 116/2
hear [11] 12/15 13/17 28/22 42/11 63/7 65/15 76/17 79/12 79/20 80/24 124/3
heard [11] 9/24 11/19 23/15 29/3 31/12 31/16 32/7 32/8 58/3 74/9 123/17
hearing [2] 62/20 81/14 117/19
hearsay [12] 30/1 30/7 33/5 33/25 35/23 68/2 73/24 74/7 86/25 87/11 88/9 125/18
held [2] 25/10 85/2
Hello [2] 100/3 110/9
help [5] 11/20 115/5 115/13 116/1 116/3
helped [3] 5/3 127/12 127/23
helpful [4] 4/20 4/22 5/11 122/4
helping [4] 49/17 55/23 56/12 127/21
her [40] 8/21 8/23 8/24 9/4 9/7 9/8 9/13 9/13 20/14 21/20 22/15 22/20 23/1 23/10 25/10 25/11 25/12 25/14 25/16 25/17 25/19 25/20 25/22 27/23 27/25 28/10 29/21 29/22 29/23 29/25 33/24 40/8 41/19 115/23 115/23 116/11 116/11 116/14 116/14 118/1
here [56] 5/20 11/11 12/22 13/2 13/19 14/25 15/17 20/6 20/20 25/8 28/15 28/17 32/5 35/16 44/20 45/3 46/25 47/5 47/7 50/12 52/20 55/6 55/13 57/8 60/21 64/10 65/1 67/11 67/12 67/14 68/3 68/7 68/17 68/21 71/20 74/7 75/16 76/1 78/10 79/14 81/6 83/8 88/25 96/5 98/14 104/20 104/24 107/2 107/11 109/20 110/10 111/5 123/10 125/21 129/19 136/2
hereby [1] 140/18
herself [1] 8/25
HERZ [3] 1/17 55/18 111/9
hey [1] 28/15
high [1] 119/6
highlighted [5] 50/18 61/22 62/1 86/17 87/8
highlighting [1] 36/19
highly [7] 62/18 64/19 65/9 68/5 76/12 81/3 126/13
Highway [2] 2/3 2/16
him [7] 73/20 78/23 79/13 79/22 81/15 112/10 128/23
hip [1] 115/19
his [15] 12/19 18/25 19/1 24/2 29/1 64/8 75/23 76/3 77/4 79/16 79/17 83/24 115/3 115/19 138/15
history [6] 33/21 33/24 34/1 34/12

**H**

history... [2]  34/14 75/25
hold [5]  32/15 85/7 92/9 112/11 120/11
holding [2]  34/9 34/10
home [2]  7/12 116/2
honest [1]  115/1
honestly [1]  19/20
honor [135]  5/1 6/17 7/6 8/16 9/11 10/2
12/13 12/19 13/1 13/11 13/17 20/6 20/16
20/20 26/16 28/25 30/14 30/16 30/19
30/21 31/1 31/4 36/13 38/14 38/19 39/23
40/19 43/4 45/3 45/22 46/7 46/21 46/23
46/25 47/15 48/8 49/16 49/24 50/6 51/6
51/17 52/20 52/23 53/2 54/14 54/19 55/7
56/2 56/25 57/11 57/21 58/16 59/6 60/6
60/21 61/16 61/22 63/5 64/12 64/13
64/23 65/14 67/14 67/15 69/1 69/5 69/17
69/18 70/5 70/6 70/11 71/13 71/16 72/1
72/22 73/5 73/14 73/18 74/1 74/21 75/13
76/19 77/7 77/13 77/21 79/10 80/6 80/24
81/5 81/20 82/5 82/13 83/4 84/14 85/6
86/20 86/22 87/1 87/19 88/20 89/7 89/10
89/11 89/15 92/17 92/23 92/25 93/3
97/15 98/9 98/12 99/6 100/3 101/5
102/20 106/13 109/17 110/4 111/13
113/4 114/12 114/18 117/3 120/2 122/13
126/10 128/14 132/2 133/21 135/2
135/17 136/23 137/3 138/25 139/20
Honor's [6]  39/4 42/8 47/12 53/23 60/15
83/5
HONORABLE [1]  1/8
hope [4]  9/22 12/14 104/14 135/10
hopefully [10]  9/25 14/14 16/1 59/25
85/4 108/15 109/1 109/2 124/18 140/7
hoping [2]  14/17 57/10
hospital [1]  115/19
hour [2]  84/22 124/18
hour's [1]  21/18
hours [3]  16/15 16/20 57/24
house [2]  70/25 115/20
how [44]  6/18 9/11 11/14 11/14 11/16
14/1 18/3 18/19 19/15 24/9 25/23 31/16
31/22 32/11 36/10 36/20 37/7 37/23
41/20 43/2 45/1 45/1 50/7 51/15 51/22
51/24 53/5 59/16 61/6 64/9 64/10 71/9
73/11 73/12 74/8 100/9 101/18 102/17
106/23 108/8 112/9 115/25 121/1 132/18
Howard [1]  119/20
however [6]  32/22 61/17 64/17 68/17
96/22 121/21
Howland [13]  18/7 19/25 20/4 20/16
20/17 21/2 25/7 26/14 28/9 28/21 29/24
30/18 131/12
Howland's [5]  17/21 26/7 26/18 30/13
30/14
Hs [1]  6/18
huh [4]  90/13 117/25 118/11 119/17
hurt [1]  5/3
husband [6]  115/2 115/8 115/9 115/16
115/23 116/6
hypothetical [1]  24/10

**I**

I'd [7]  9/8 42/22 60/12 84/15 107/24
107/25 111/3
I'm [21]  20/25 33/9 34/4 35/14 51/11
51/23 59/7 57/8 84/5 85/12 92/1 97/2
111/9 115/11 115/24 132/1 132/5 132/8
132/11 136/17 136/23
I've [2]  86/17 94/15
ideal [1]  104/22
identified [7]  22/8 29/24 39/14 97/25
98/14 98/20 126/6
identifies [3]  22/22 37/8 37/24
identify [3]  45/14 56/3 56/15
III [1]  2/2
illegal [3]  62/9 78/4 82/8
illegally [1]  83/25
impact [1]  15/14
impartial [3]  108/19 108/24 123/6
impeachment [1]  28/1
impermissible [1]  22/16
import [2]  28/9 28/10
important [12]  11/14 11/14 11/16 13/9
13/13 14/1 14/2 20/13 45/12 96/4 105/23
132/9
importantly [2]  33/25 90/9
impose [1]  92/1
impression [1]  65/6
improper [2]  28/2 90/8
inadmissible [2]  86/24 89/23
inappropriate [1]  29/10
INC [2]  1/3 12/5
inclined [2]  65/22 130/5
include [6]  18/24 20/14 23/3 46/19
48/14 127/5
included [4]  27/9 37/10 39/15 39/16
includes [4]  37/10 61/18 61/19 61/20
including [9]  26/15 27/10 37/11 50/24
61/25 73/7 75/23 90/7 95/8
inclusion [2]  22/14 42/5
income [9]  86/12 86/21 86/22 86/24
86/24 87/5 88/12 137/23 138/22
inconsistent [2]  25/22 42/3
inconvenience [2]  14/24 15/2
inconvenient [1]  14/24
incorrect [2]  77/11 92/20
independent [2]  70/1 123/20
indicate [4]  47/11 82/22 100/25 101/21
indicated [13]  5/5 5/9 17/23 101/23
108/1 112/16 113/1 114/16 117/12 121/3
122/10 122/23 134/13
indicating [1]  107/20
indirectly [1]  78/2
individual [10]  22/3 38/14 38/16 39/15
58/20 58/23 63/12 100/22 113/1 114/5
individually [3]  30/22 108/18 123/3
individuals [12]  12/4 12/5 12/7 12/17
14/15 21/23 22/7 63/11 100/19 101/1
108/1 132/14
indulgence [1]  97/16
inference [2]  26/2 75/17
inferences [1]  30/10
inflicted [1]  90/5
influenced [1]  16/8
information [4]  22/9 46/19 63/25
123/22
initial [18]  5/12 6/1 39/10 39/14 46/9
46/13 47/5 47/14 48/15 49/8 53/11 53/11
55/2 98/10 100/14 100/16 100/17 100/20
innocent [3]  49/19 127/13 127/24
inside [1]  29/12

inspire [1]  5/2
inspiring [1]  4/12
instance [1]  54/20
Instead [1]  22/24
instruct [3]  9/20 29/9 78/7
instruction [5]  10/5 77/24 82/1 82/6
82/10
instructions [5]  56/16 56/17 95/8 108/7
124/7
instructs [1]  77/25
insubstantial [1]  86/16
intend [13]  23/20 23/21 30/17 36/20
40/1 40/2 40/15 40/17 40/24 55/24 92/6
130/18 138/3
intended [2]  58/15 84/4
intending [4]  26/6 71/9 72/18 137/3
intentional [1]  29/5
interest [5]  30/4 30/5 109/24 110/19
111/3
internal [3]  61/18 70/4 71/10
internally [1]  70/25
international [11]  1/3 1/18 12/5 13/7
70/2 110/15 110/18 111/2 111/5 111/10
126/16
Internet [1]  123/20
interpretation [1]  33/17
interpreter [2]  118/23 118/25
interrogatories [3]  48/22 48/24 49/8
interrogatory [3]  24/7 39/20 46/15
interrupt [1]  24/13
interrupting [1]  135/3
intervention [1]  46/3
interview [1]  10/19
introduce [13]  11/7 12/10 12/24 29/25
30/3 30/5 30/7 49/6 109/13 109/19 110/2
111/3 111/18
introduced [2]  60/24 123/22
introducing [1]  74/22
investigate [1]  16/14
investigation [2]  10/1 16/7
involved [4]  8/23 27/3 79/18 109/12
iradvocates.org [1]  2/11
irrelevant [1]  34/2
Irving [4]  86/6 88/15 88/18 89/2
is [443]
isn't [3]  28/11 38/12 55/23
issue [29]  5/10 8/12 42/19 42/25 47/24
48/1 48/7 49/4 56/8 58/23 59/1 59/20
60/22 66/24 68/11 82/12 87/19 88/25
94/13 95/10 96/6 96/24 113/2 121/20
125/12 127/7 135/18 137/5 137/15
issued [2]  46/9 47/13
issues [16]  15/22 56/3 56/15 56/16
56/17 63/19 72/2 77/22 101/15 108/23
115/2 119/5 123/4 123/4 127/8 139/23
it [326]
it's [113]  4/13 4/14 5/6 5/16 7/17 8/7
10/13 12/3 13/15 14/3 15/13 16/15 18/4
18/6 20/4 20/11 20/13 21/2 21/10 22/6
22/11 23/6 23/15 24/15 25/5 25/23 26/20
28/16 31/7 31/8 33/5 33/5 33/6 34/13
34/22 35/21 39/11 40/6 40/21 40/23 42/1
42/14 43/9 44/11 44/15 45/12 45/25 47/7
48/22 49/20 49/20 50/11 51/2 54/7 54/23
54/23 58/14 59/14 59/21 62/6 62/18 63/6
64/5 66/6 67/9 68/10 68/17 70/3 70/7

**it's... [44]** 72/4 73/22 74/3 74/5 77/2 77/12 79/1 79/15 81/15 81/15 85/22 86/10 90/8 93/24 94/20 96/4 97/6 99/21 101/7 103/17 104/21 105/2 105/22 107/18 114/15 116/23 117/9 117/11 118/3 118/13 118/17 121/19 122/17 122/19 123/13 126/13 126/25 127/9 127/25 128/5 129/25 131/5 134/16 137/20
**item [1]** 47/19
**items [2]** 88/21 93/12
**its [13]** 32/21 33/21 34/11 34/14 38/25 39/2 40/14 50/10 72/8 72/9 126/14 136/13 136/21
**itself [4]** 31/7 74/23 83/15 126/3

## J

**J-I-N-E-T-E [2]** 40/7 40/11
**J-O-S-E [1]** 40/10
**Jack [6]** 11/5 12/15 63/13 75/16 109/19 110/11
**JACQUES [3]** 2/12 93/4 111/6
**JAMES [5]** 2/5 2/18 2/19 85/14 110/9
**jameskgreenlaw.com [1]** 2/21
**Jamie [1]** 73/17
**jcreiter [1]** 1/25
**jcreitlerlaw.com [1]** 1/25
**Jean [1]** 121/7
**jill [5]** 3/11 3/13 140/21 140/21 140/23
**Jinete [4]** 35/17 40/7 40/11 40/13
**jkg [1]** 2/21
**job [3]** 4/12 15/15 97/21
**Joel [1]** 73/22
**JOHN [1]** 1/11
**join [2]** 10/24 13/17
**joined [1]** 12/6
**joint [2]** 39/15 54/20
**JONATHAN [3]** 1/22 1/23 110/20
**JORDAN [2]** 110/14 110/15
**José [2]** 40/9 98/21
**judge [57]** 1/9 4/9 6/19 10/25 11/7 11/10 13/5 17/20 17/25 18/15 21/7 21/10 24/2 24/15 26/19 31/6 32/1 32/18 33/9 33/20 34/3 43/19 52/5 52/6 57/5 58/3 59/8 84/7 85/15 86/1 86/9 86/14 86/20 87/18 88/14 89/10 91/4 91/17 92/1 93/24 96/20 97/7 102/23 104/8 105/7 105/22 124/22 125/17 129/10 130/10 131/12 134/15 135/22 137/18 138/9 138/21 139/14
**judgment [4]** 43/8 135/17 138/21 138/22
**judicial [1]** 11/15
**June [4]** 18/7 20/4 20/18 47/15
**June 27 [3]** 18/7 20/4 20/18
**juries [1]** 9/2
**Jurisdiction [1]** 67/21
**jurisprudence [1]** 136/1
**juror [7]** 108/19 108/24 114/4 114/22 117/6 120/10 121/7
**jurors [22]** 4/13 4/23 5/5 6/6 6/21 9/1 9/19 11/15 11/17 84/15 84/24 84/25 85/3 85/10 101/13 102/22 103/13 109/8 123/1 123/7 124/14 139/12
**jury [86]** 1/8 4/4 5/2 5/14 8/21 9/9 11/4

13/17 15/22 14/13 14/19 15/15 15/14 16/14 16/18 19/24 21/17 23/15 23/20 24/1 24/4 24/22 24/25 26/3 28/2 28/8 29/4 29/12 30/12 30/17 30/17 32/20 32/22 32/23 37/20 40/2 40/15 40/18 41/8 45/12 56/4 56/5 56/8 56/10 56/17 62/7 62/17 65/6 74/24 74/25 77/23 77/23 78/1 78/7 78/9 82/1 82/10 84/4 87/17 95/8 103/18 103/19 103/25 104/10 104/24 105/5 105/6 107/13 107/21 108/6 108/10 108/13 109/2 109/15 110/1 116/7 118/20 122/15 122/18 122/20 123/9 124/5 133/16 134/2 137/6 137/16
**just [107]** 4/6 6/13 6/15 6/16 7/4 7/25 8/6 8/8 8/20 8/24 9/7 9/12 11/12 12/9 17/3 17/9 20/11 23/1 23/15 23/19 23/23 24/10 25/7 27/23 28/11 31/6 31/20 32/4 33/16 34/7 34/18 34/20 37/6 37/19 38/1 38/13 38/19 38/21 38/22 40/1 41/18 41/23 42/23 46/7 47/8 47/9 47/10 47/11 48/9 48/19 49/15 51/23 54/23 55/18 59/18 61/2 65/16 66/20 73/5 77/21 78/11 80/8 82/4 85/9 90/16 91/4 91/14 92/16 93/13 93/21 95/10 97/7 100/23 101/5 101/15 101/16 102/16 103/1 103/4 103/20 105/5 105/15 106/3 106/8 106/22 112/3 112/5 115/18 121/14 121/24 122/5 122/17 124/8 126/8 128/11 128/22 129/13 132/12 134/8 135/4 136/10 137/2 137/13 138/9 139/22 139/25
**justice [2]** 11/18 13/11
**justified [1]** 72/9

## K

**Karen [1]** 113/2
**Karl [1]** 33/23
**Karl's [1]** 50/20
**keep [8]** 23/7 23/7 96/5 101/5 102/11 103/2 122/20 124/13
**KELLOGG [1]** 2/18
**Kelly [2]** 113/17 113/18
**KENNETH [2]** 1/8 11/10
**kept [1]** 136/15
**key [2]** 18/12 27/13
**kidnapping [2]** 68/13 80/3
**kids [2]** 54/10 97/25
**kids' [1]** 54/11
**killed [5]** 12/18 54/10 94/21 99/22 133/17
**killing [1]** 133/4
**killings [1]** 13/17
**kilos [1]** 92/7
**kind [13]** 4/24 29/9 32/9 57/4 61/7 62/15 64/3 75/8 88/11 88/19 101/8 125/13 132/9
**kinds [4]** 61/7 61/9 64/13 65/15
**knew [9]** 20/9 36/15 36/20 80/15 126/20 127/13 127/24 135/5 135/8
**know [85]** 5/15 6/11 7/13 8/22 9/1 9/19 10/17 20/12 25/16 25/23 26/12 28/5 28/10 34/8 34/22 38/4 41/2 41/18 41/20 41/20 41/23 42/2 42/22 44/7 45/13 49/18 51/21 54/7 54/12 55/21 56/12 57/20 58/13 59/6 60/9 60/14 61/14 62/8 63/6 63/22 64/23 65/17 66/9 66/20 67/19 67/19 68/8 68/19 69/4 69/10 77/12 79/10

79/14 79/17 84/12 86/21 88/21 87/12 90/8 91/20 92/9 97/5 102/4 102/5 102/9 103/6 103/19 105/7 107/17 109/10 110/23 110/23 110/25 116/3 118/1 118/5 121/24 122/5 122/6 122/18 125/12 126/21 126/23 127/2 134/12
**knowing [12]** 95/11 96/16 134/17 134/21 135/5 137/7 136/3 136/3 136/14 136/15 136/17 136/20
**knowingly [4]** 94/25 94/25 95/16 136/12
**knowledge [4]** 30/1 63/23 64/2 79/14
**known [6]** 73/1 106/22 126/12 126/13 127/1 127/3
**knows [2]** 43/22 105/8
**KROEGER [5]** 2/15 8/15 8/18 110/7 111/7

## L

**label [5]** 65/7 79/25 80/3 80/4 80/5
**labeled [1]** 68/16
**lack [1]** 79/10
**ladies [9]** 11/9 12/14 13/6 23/19 107/16 109/18 111/22 112/2 116/2
**Lakes [1]** 1/13
**Lakeview [1]** 2/19
**language [8]** 95/4 95/15 117/16 118/10 118/16 118/18 119/5 136/5
**Larry [1]** 83/22
**last [12]** 7/9 8/19 35/10 40/1 40/7 40/11 49/24 69/25 95/25 114/5 117/10 139/14
**Lastly [1]** 47/24
**late [3]** 59/17 70/20 70/21
**later [12]** 6/21 7/24 12/25 26/10 39/25 48/7 82/24 97/24 98/13 99/15 107/12 123/13
**latter [1]** 26/14
**Lauderdale [3]** 2/4 3/2 110/6
**law [49]** 1/23 11/24 12/22 15/13 25/6 42/13 44/12 44/13 44/17 48/3 61/25 62/20 62/22 62/24 70/2 70/23 70/24 71/4 71/4 72/17 75/1 78/8 78/13 78/16 78/17 78/19 81/6 81/7 81/9 81/16 81/16 81/18 81/24 81/24 82/8 83/7 109/25 110/19 111/15 115/4 115/18 115/23 116/10 116/11 118/18 135/25 137/14 137/20
**lawful [1]** 72/9
**laws [2]** 81/12 115/13
**lawsuit [5]** 98/24 100/7 100/10 100/13 110/21
**lawyer [2]** 53/24 110/9
**lawyers [15]** 12/9 12/20 15/20 31/21 32/7 62/14 70/4 71/1 78/10 79/4 109/12 110/1 111/23 123/12 123/21
**lay [1]** 73/14
**laying [1]** 75/5
**learn [1]** 108/18
**learning [1]** 7/16
**least [2]** 65/23 85/16
**leave [4]** 8/4 102/25 124/2 139/15
**led [1]** 128/16
**leeway [2]** 96/14 104/19
**left [6]** 54/10 86/4 86/6 103/24 133/16 134/3
**leftwing [1]** 76/23

**L**

**legal [28]** 52/25 56/16 60/14 60/19 60/23 61/12 61/23 62/5 62/16 69/22 69/24 70/3 70/4 70/13 70/23 71/3 74/9 74/15 74/17 74/18 74/20 74/25 75/1 77/22 78/12 78/13 81/23 111/3
**legality [1]** 81/8
**legitimacy [1]** 102/6
**legitimate [1]** 15/5
**length [1]** 14/22
**LESLIE [4]** 2/15 8/15 8/18 110/7
**less [2]** 86/16 86/17
**let [26]** 6/8 6/15 7/25 8/1 8/22 8/24 15/11 23/17 24/6 29/13 31/13 33/11 35/7 46/25 52/3 93/20 117/20 121/24 125/5 134/19 135/11 135/11 135/14 136/8 136/8 137/24
**let's [11]** 6/8 23/17 24/6 24/9 57/1 74/11 90/16 92/22 101/10 103/1 131/24
**letters [1]** 79/5
**liability [2]** 38/15 136/2
**liberal [1]** 33/17
**lie [1]** 89/19
**life [1]** 132/18
**light [2]** 23/10 26/11
**like [34]** 4/15 10/25 19/17 22/10 25/20 38/3 41/11 41/23 42/22 44/22 48/23 54/19 57/6 59/24 60/12 78/4 79/21 84/15 105/20 107/7 107/24 107/25 111/3 118/14 118/14 118/18 119/7 123/7 126/24 126/25 129/25 130/16 134/9 134/12
**likely [2]** 10/13 122/19
**limine [10]** 60/22 61/1 61/3 61/4 63/2 70/6 87/3 87/19 88/4 138/23
**limitation [1]** 123/24
**limitations [3]** 42/19 55/8 98/8
**limited [2]** 41/5 79/6
**Lindor [1]** 121/7
**Lindor-Jean [1]** 121/7
**line [11]** 20/18 20/19 21/3 21/3 21/11 21/15 22/13 23/5 23/10 47/19 100/5
**lined [1]** 140/7
**lines [18]** 18/5 18/7 18/8 18/17 20/18 21/20 22/21 26/1 26/22 31/9 31/24 31/25 88/18 89/2 91/3 91/15 92/18 96/21
**list [15]** 21/15 39/22 42/8 46/11 46/14 47/20 47/21 49/9 55/13 61/18 61/19 61/20 63/21 68/23 129/1
**listed [8]** 39/19 46/10 46/16 71/11 89/1 91/11 97/8 100/24
**listen [8]** 11/23 11/23 13/23 13/23 65/16 65/25 118/20 118/24
**listener [1]** 74/6
**litigation [2]** 10/20 52/14
**little [15]** 11/13 13/21 19/11 26/23 31/17 47/7 55/21 98/15 104/13 108/18 116/18 123/13 123/18 126/22 135/3
**live [15]** 25/9 27/24 28/7 30/18 45/13 45/14 45/18 49/5 71/20 72/23 115/4 115/21 115/22 116/17 116/18
**lived [2]** 45/21 133/3
**lkroeger [1]** 2/17
**LLP [4]** 2/2 2/6 2/10 3/6
**local [2]** 12/21 83/19
**locally [1]** 110/8

**location [2]** 40/23 41/6
**locked [1]** 59/14
**lodged [1]** 69/21
**lodging [1]** 69/8
**long [6]** 4/13 34/16 105/2 107/18 134/4 137/11
**longer [1]** 7/17
**look [16]** 9/21 18/15 18/16 20/23 22/24 26/13 26/21 28/17 49/11 50/8 50/15 50/23 52/7 57/4 58/6 59/15
**looked [2]** 10/13 29/15
**looking [3]** 34/6 91/14 103/7
**looks [4]** 57/6 123/7 126/24 129/25
**lose [2]** 15/15 106/4
**loss [2]** 132/18 133/11
**lot [12]** 4/13 6/5 6/9 7/17 12/8 13/17 79/5 82/3 103/6 103/8 103/11 105/9
**love [1]** 9/8
**low [1]** 50/19
**Luann [1]** 114/20
**luck [1]** 124/12
**lunch [9]** 59/20 84/16 84/17 84/18 84/24 85/1 85/11 93/7 101/10

**M**

**M-E-R-I-A-G-E [1]** 83/23
**ma'am [5]** 38/18 119/21 119/24 120/22 121/6
**made [30]** 4/4 4/8 20/21 21/16 21/22 22/25 23/8 26/4 26/24 30/24 39/8 51/8 67/6 67/16 67/25 68/4 78/4 78/11 78/22 78/25 80/21 82/18 83/15 90/16 94/14 95/7 99/6 100/14 135/5 135/10
**magazine [1]** 126/2
**magnitude [1]** 56/13
**main [1]** 42/4
**major [2]** 68/4 81/13
**make [43]** 5/2 6/17 11/17 11/24 14/2 14/6 15/20 16/1 22/19 28/11 30/10 32/4 51/7 51/9 51/14 51/21 56/11 60/10 64/11 70/24 77/16 83/12 85/5 92/1 95/12 95/12 96/14 106/24 107/11 108/3 112/12 116/3 116/19 116/21 122/21 129/2 130/8 137/2 137/24 138/9 139/13 139/17
**makes [7]** 4/9 4/10 27/13 28/7 32/9 54/4 85/6
**making [16]** 13/2 14/14 43/16 56/10 62/3 65/17 68/3 74/10 80/12 80/14 80/17 82/10 83/10 136/13 136/21 136/24
**male [2]** 113/17 113/18
**malefactor [1]** 136/4
**managing [1]** 73/19
**manipulate [1]** 19/7
**manipulated [1]** 19/21
**many [8]** 6/18 10/9 10/11 14/9 14/20 19/15 53/5 101/18
**map [4]** 34/24 37/6 37/10 45/18
**maps [1]** 133/1
**March [1]** 47/13
**Marcia [1]** 119/20
**marco [4]** 1/16 1/20 81/14 111/4
**MARIANO [2]** 1/12 109/22
**Mariela [1]** 45/5
**Mario [1]** 119/25
**marissa [4]** 1/16 1/20 109/23 109/24
**mark [1]** 96/5

**MARRA [3]** 1/8 11/7 11/9
**Maryum [1]** 110/14
**material [2]** 32/21 33/1
**matter [6]** 10/6 19/1 67/20 123/17 133/15 140/19
**matters [1]** 122/4
**Mattingly [1]** 113/10
**may [39]** 14/8 14/19 14/22 15/9 16/6 17/6 17/16 17/20 18/1 32/20 32/22 34/10 45/8 51/21 52/21 58/14 60/24 61/3 61/8 64/24 68/3 68/8 73/3 78/20 81/20 89/4 90/22 96/20 97/18 105/14 108/21 108/23 118/3 118/4 119/5 128/23 133/3 133/12 136/7
**May 6 [3]** 118/3 118/4 119/5
**maybe [17]** 6/1 6/2 6/6 6/8 7/17 10/25 19/24 20/1 28/17 102/8 104/10 105/12 122/3 124/17 125/7 125/8 133/3
**McCauley [1]** 3/6
**McKenzie [7]** 70/2 73/12 73/15 73/19 75/8 78/18 78/18
**md [1]** 1/2
**me [67]** 4/23 6/14 7/18 7/25 8/20 8/25 10/24 12/6 12/15 15/11 21/15 23/17 24/6 24/6 24/7 24/13 29/8 29/13 33/11 35/7 38/1 38/3 43/1 43/2 43/16 44/16 46/25 47/15 51/22 52/2 59/16 75/14 76/9 84/23 86/16 86/23 87/5 87/14 87/14 89/1 91/8 91/20 92/10 92/10 92/16 93/21 93/21 95/4 98/18 101/14 109/21 110/23 110/23 115/3 117/20 125/5 127/16 134/19 135/11 135/11 135/14 135/20 136/8 136/8 136/9 138/22 139/12
**me.com [1]** 3/3
**mean [18]** 9/8 18/14 24/9 31/24 41/16 54/22 61/9 71/11 77/10 91/17 95/4 95/18 104/21 121/20 127/14 131/6 131/8 138/12
**meant [2]** 32/11 94/9
**media [2]** 10/5 16/8
**medication [4]** 119/8 119/11 119/12 119/16
**meeting [15]** 66/13 66/14 66/15 66/16 66/18 66/18 66/21 66/22 66/23 67/2 67/5 68/12 77/15 82/16 89/20
**meetings [1]** 66/24
**MELISSA [2]** 3/5 111/19
**members [10]** 11/15 11/16 11/20 11/22 12/24 14/1 43/18 44/7 100/6 100/9
**memo [11]** 61/25 62/1 66/22 73/15 73/20 74/2 74/23 74/23 74/24 75/2 81/18
**memorandum [1]** 73/12
**memos [3]** 61/11 61/18 61/21
**mention [2]** 76/18 138/17
**mentioned [8]** 37/6 37/22 53/17 112/2 118/8 118/9 122/24 125/13
**Meriage [2]** 83/22 83/24
**merits [1]** 13/20
**MESA [2]** 1/11 109/22
**MESA-ESTRADA [2]** 1/11 109/22
**met [1]** 109/10
**mfmurphy [1]** 3/9
**Miami [3]** 3/12 3/13 140/22 140/23
**MICHAEL [5]** 3/4 3/6 11/5 13/7 111/15
**michael.stoolman [1]** 3/10
**microphone [3]** 8/17 112/10 128/11

**M**

middle [5]  24/2 24/5 31/9 31/25 86/14
might [15]  4/21 6/13 8/24 22/3 24/20
25/19 34/19 49/1 52/3 52/14 78/23
121/17 122/17 123/5 123/19
Mike [1]  111/20
military [1]  13/9
million [6]  67/7 67/8 76/6 77/9 77/18
80/8
Milstein [6]  2/13 2/16 8/15 8/18 110/7
111/7
mind [4]  14/25 74/4 74/6 74/9
minor [3]  53/4 55/12 97/21
minors [2]  55/8 98/7
minute [2]  7/9 57/1
minutes [1]  11/19
miscellaneous [1]  31/5
mischaracterization [3]  20/22 27/21
28/4
mischaracterizes [2]  18/13 20/8
miscite [1]  26/9
miscites [1]  25/12
misinterpretation [1]  28/3
mislead [1]  31/16
misleading [5]  24/4 31/16 76/25 77/2
131/21
mispronouncing [1]  117/10
misrepresent [4]  23/14 24/22 26/21
29/3
misrepresentation [5]  24/24 26/23 29/5
31/22 32/1
misrepresentations [2]  28/8 31/12
misrepresentative [1]  131/20
misrepresented [2]  19/9 28/11
misrepresenting [1]  24/3
miss [1]  15/4
missed [1]  122/11
missing [1]  92/18
mistake [1]  99/6
misunderstand [1]  44/16
modifications [2]  130/9 139/18
modify [1]  127/22
modifying [1]  51/19
Molloy [1]  113/2
Mom [1]  54/9
moment [2]  70/11 78/16
Monday [21]  39/3 39/11 39/23 42/17
57/25 103/19 105/1 105/19 106/4 108/17
109/1 109/2 118/6 118/7 123/8 123/10
123/11 123/13 123/16 124/4 140/3
money [5]  18/19 20/9 115/2 115/12
138/11
money' [1]  83/20
money-wise [1]  115/2
months [7]  46/9 46/22 97/24 98/13 99/7
99/15 100/24
more [37]  13/18 19/15 19/16 26/19
32/10 33/12 33/18 33/25 49/15 49/23
50/8 54/8 55/24 60/10 66/25 66/25 67/4
67/4 82/3 90/9 90/13 90/14 92/14 95/15
102/19 102/20 103/17 104/13 104/22
104/25 105/9 107/2 115/12 125/21
125/21 130/5 137/20
morning [21]  4/2 4/4 11/6 11/9 11/12
12/14 13/6 50/3 50/4 93/3 93/5 97/14
109/11 111/14 116/14 123/18 124/5

most [8]  13/9 14/8 22/2 48/25 104/15
105/2 118/20 120/6
mostly [2]  122/1 125/18
mother [15]  18/25 43/12 43/20 47/20
48/18 53/15 97/24 99/16 116/11 132/19
132/25 133/9 133/15 133/17 134/3
motion [20]  42/19 43/5 46/8 47/12 53/3
55/9 55/11 60/22 61/1 61/3 61/4 63/2
70/5 87/3 87/18 88/4 98/7 138/22 138/23
138/23
move [7]  28/23 42/25 43/8 87/4 105/3
111/19 131/24
moving [5]  45/8 63/5 69/11 84/5 84/8
Mr [1]  83/22
Mr. [119]  7/2 8/9 9/16 10/4 10/16 12/12
13/4 18/18 21/10 22/10 23/7 23/18 24/8
24/8 25/7 28/24 29/1 29/6 29/9 29/13
31/7 31/15 33/11 36/9 37/6 37/22 38/3
38/21 38/24 43/17 43/24 44/1 44/3 44/11
44/12 44/15 47/2 47/9 48/2 48/12 51/11
56/1 57/15 58/5 59/2 63/16 64/4 64/7
65/1 67/11 69/16 69/19 69/25 71/20 73/8
73/18 73/23 75/14 75/15 75/16 75/19
75/21 75/22 76/12 77/2 77/3 78/11 78/17
78/20 79/12 79/12 79/13 79/16 79/19
79/24 80/24 81/6 81/14 81/14 82/2 82/13
82/23 83/8 83/24 84/5 85/12 89/17 89/17
89/18 89/18 89/19 89/25 90/4 90/15
90/16 90/17 91/7 91/21 92/2 92/11 92/16
97/17 97/19 100/1 100/25 104/7 105/8
109/11 109/11 109/16 110/3 111/12
112/8 112/14 112/15 127/7 138/10
138/20 139/21
Mr. Bayless [3]  112/8 112/14 112/15
Mr. Bernal [1]  89/18
Mr. Castano [3]  18/18 89/25 90/4
Mr. Cioffi [20]  8/9 9/16 10/4 10/16 13/4
24/8 29/1 29/9 37/6 37/22 38/21 38/24
51/11 64/7 89/17 89/18 90/17 104/7
109/11 111/12
Mr. Cioffi's [3]  29/6 29/13 38/3
Mr. Dante [5]  69/16 78/11 79/12 80/24
83/8
Mr. Devine [8]  63/16 64/4 75/14 75/16
75/19 75/22 79/12 79/19
Mr. Devine's [1]  79/13
Mr. Didier [4]  65/1 67/11 77/3 79/24
Mr. Escobar [1]  78/17
Mr. Gaddis [1]  79/16
Mr. Green [7]  84/5 85/12 90/16 91/7
91/21 92/2 138/20
Mr. Hager [5]  47/2 47/9 48/2 48/12
92/16
Mr. Hasbun [2]  89/17 89/19
Mr. Marco [1]  81/14
Mr. Meriage [1]  83/24
Mr. Olson [5]  71/20 73/8 73/23 78/20
82/13
Mr. Reiter [1]  44/3
Mr. Reiter's [6]  43/17 43/24 44/1 44/11
44/12 44/15
Mr. Scarola [22]  7/2 12/12 21/10 22/10
23/7 23/18 24/8 25/7 28/24 31/7 31/15
33/11 36/9 56/1 58/5 59/2 90/15 92/11
105/8 109/11 109/16 127/7

Mr. Scherer [5]  97/17 97/19 100/1
100/25 110/3
Mr. Simons [11]  57/15 69/19 69/25
75/15 75/21 77/2 81/6 81/14 82/2 82/23
138/10
Mr. Simons' [2]  76/12 139/21
Mr. Trujillo [1]  73/18
Ms [4]  35/14 110/14 110/17 125/16
Ms. [19]  17/21 25/7 26/7 26/14 26/18
28/9 29/24 31/15 35/10 36/5 38/10 100/2
109/6 111/7 113/17 113/19 120/23 124/2
124/10
Ms. Adams [1]  120/23
Ms. Ferrante [3]  109/6 124/2 124/10
Ms. Fundora-Murphy [2]  38/10 100/2
Ms. Goldberger [1]  31/15
Ms. Howland [4]  25/7 26/14 28/9 29/24
Ms. Howland's [3]  17/21 26/7 26/18
Ms. Kroeger [1]  111/7
Ms. Murphy [2]  35/10 36/5
Ms. O'Brien [2]  113/17 113/19
much [19]  4/16 6/7 12/13 13/1 13/3
26/5 26/7 81/10 109/17 112/24 113/8
113/15 113/22 114/19 117/4 119/18
120/5 120/22 121/6
mugshots [1]  63/6
multiple [9]  12/20 14/5 14/9 59/4 59/5
61/18 63/20 134/9 134/12
murdering [3]  49/18 127/13 127/24
MURPHY [8]  3/5 35/10 35/14 36/5 38/10
100/2 111/19 125/16
must [5]  42/10 42/11 48/4 83/20 127/1
my [77]  4/4 4/9 5/20 7/6 8/20 10/24
11/10 12/15 13/6 15/15 24/20 25/4 28/17
28/17 37/25 41/18 43/13 44/7 44/15 46/3
53/17 56/2 57/11 58/14 61/16 62/1 69/10
74/16 77/24 84/11 86/17 87/9 90/18
91/13 91/22 91/22 96/11 96/13 106/22
107/1 109/19 110/10 110/14 110/20
110/21 111/1 111/4 111/4 111/14 111/7
111/19 111/19 111/20 111/20 112/6
113/16 115/2 115/4 115/9 115/13 115/18
115/22 116/5 116/10 116/11 117/14
117/16 119/10 122/9 125/17 125/20
132/12 133/5 135/11 135/19 137/20
139/13
myself [5]  8/8 67/19 91/24 108/9 109/19
mystery [1]  48/20

**N**

name [39]  9/4 11/10 12/4 12/15 13/6
21/24 23/10 40/7 40/7 40/8 40/10 40/10
40/11 44/20 53/21 54/8 99/7 99/9 99/10
99/12 109/19 110/10 110/18 114/14 114/5
111/1 111/15 112/7 113/18 114/4 114/5
114/5 114/9 114/14 114/15 117/6 117/8
117/10 128/23 129/4
named [26]  42/17 43/4 44/17 44/18
44/21 44/24 44/25 45/5 48/5 48/11 48/20 52/24
53/1 53/2 53/7 53/9 53/10 53/14 53/22
54/13 98/6 99/10 99/11 99/12 99/14
132/14 133/7
names [5]  22/7 79/8 79/9 98/1 98/18
narco [8]  63/9 63/15 64/21 65/5 65/7
75/24 76/18 80/1
narco-terrorist [1]  80/1

## N

**narco-terrorists [6]** 63/9 63/15 64/21 65/5 65/7 76/18
**narco-trafficking [1]** 75/24
**nature [6]** 36/17 64/17 65/12 66/25 69/12 69/13
**near [1]** 8/17
**necessarily [2]** 15/9 48/1
**necessary [4]** 5/3 5/6 116/24 135/4
**need [52]** 10/4 11/20 14/6 14/22 19/7 22/21 40/21 48/11 52/21 55/20 56/4 56/6 56/11 56/18 62/10 62/22 74/17 74/19 82/4 86/21 93/20 95/22 105/14 107/6 107/21 108/2 108/4 109/4 112/22 113/5 113/13 113/20 114/1 114/16 114/24 116/18 116/21 119/21 120/3 120/18 121/4 122/20 123/25 124/1 124/20 130/20 131/1 133/6 134/13 139/6 140/6
**needed [3]** 121/17 122/22 134/8
**needs [5]** 27/2 27/8 50/21 91/8 95/14
**neglected [2]** 9/19 9/21
**Negron [1]** 119/25
**neighborhood [4]** 40/24 41/10 45/20 133/2
**neither [2]** 29/22 51/9
**never [6]** 10/19 14/25 55/3 91/3 125/13 128/1
**new [12]** 1/24 38/11 44/4 44/12 44/17 48/3 101/3 110/22 111/17 127/1 127/3 139/19
**New York [5]** 44/4 44/12 44/17 48/3 111/17
**news [3]** 126/2 126/13 126/16
**next [33]** 13/8 16/22 18/24 20/3 20/3 20/16 22/13 25/8 31/2 32/13 33/15 33/20 34/23 34/24 35/4 40/9 51/6 63/4 64/16 76/8 76/11 85/12 106/14 106/25 109/3 113/1 113/9 113/16 122/17 122/19 122/21 123/2
**nice [4]** 4/11 92/10 125/4 140/12
**NICHOLAS [3]** 2/12 93/3 111/6
**night [1]** 8/19
**njacques [1]** 2/14
**no [67]** 1/2 4/9 5/21 21/4 29/21 31/19 34/8 38/8 39/18 47/6 48/20 50/8 50/9 50/17 50/20 51/14 52/17 53/11 53/24 57/25 60/7 63/13 63/22 64/2 64/9 65/1 67/7 67/11 67/16 68/1 68/14 68/18 68/19 72/25 76/2 80/5 80/19 80/23 85/9 85/22 86/5 87/6 88/6 88/9 88/10 89/7 90/13 96/6 99/14 99/19 100/8 100/11 104/12 106/1 115/22 119/14 120/20 120/21 122/11 124/8 124/21 125/23 131/1 132/13 139/8 139/19 140/9
**non [1]** 39/18
**non-Wolf [1]** 39/18
**noon [1]** 50/3
**not [260]**
**notation [1]** 66/13
**note [4]** 57/16 60/2 74/22 75/21
**noted [3]** 33/25 57/11 122/9
**nothing [7]** 23/6 26/13 58/17 58/18 58/21 76/25 88/9
**notice [2]** 36/16 99/17 126/4
**noticed [1]** 48/24

**Nothing [1]** 96/2
**now [40]** 7/22 12/12 12/11 13/19 13/19 14/8 22/6 29/6 34/15 34/22 36/5 38/4 38/16 39/7 40/20 47/14 51/2 51/9 51/22 54/1 54/2 58/11 64/11 67/19 73/11 81/14 82/4 85/1 92/22 97/2 101/3 102/16 106/23 109/10 110/1 111/18 112/14 117/9 120/15 123/16
**number [35]** 8/9 12/5 14/10 21/10 47/7 50/1 53/6 55/9 67/9 75/24 77/19 79/6 88/15 90/7 92/7 94/13 94/20 95/7 101/21 101/24 109/25 112/11 112/13 114/4 117/6 120/10 121/7 122/21 124/1 124/10 124/13 130/2 130/3 130/3 130/3
**number 113 [1]** 121/7
**number 2 [1]** 75/24
**numbered [2]** 93/8 106/25
**numbers [3]** 17/25 34/8 60/8
**numerous [2]** 129/8 130/2
**NW [2]** 1/18 2/10
**NY [1]** 1/24

## O

**O'Brien [2]** 113/17 113/19
**o'clock [3]** 123/11 123/12 124/24
**oath [1]** 58/17
**object [15]** 22/11 23/8 31/5 32/18 35/4 66/19 67/3 68/20 82/5 82/10 85/15 86/14 88/6 93/15 93/18
**objected [9]** 42/23 45/9 65/20 67/10 77/25 88/23 89/3 89/14 90/7
**objecting [4]** 24/24 57/4 69/25 86/19
**objection [51]** 18/11 19/6 20/7 20/16 20/20 20/21 21/5 22/13 22/18 22/19 24/2 24/21 25/4 25/13 25/24 27/24 28/4 28/15 31/3 31/10 33/3 33/20 35/22 42/4 45/17 51/6 51/10 52/11 52/17 60/2 66/10 66/11 67/1 69/21 74/7 80/5 80/7 80/18 83/6 89/9 89/9 93/6 93/25 125/8 125/17 126/19 130/10 132/21 132/23 132/24 133/1
**objectionable [3]** 26/3 38/1 91/5
**objections [38]** 17/5 17/6 17/8 17/10 17/13 17/15 17/22 19/18 26/4 26/16 30/14 30/23 48/25 49/16 56/22 64/8 64/14 65/12 65/15 69/7 75/2 85/8 85/11 85/13 92/15 92/24 95/9 96/2 124/17 124/19 131/4 131/6 131/9 131/25 134/25 138/6 138/6 138/7
**obligation [4]** 50/10 54/7 100/15 100/16
**obliged [1]** 56/8
**observe [1]** 102/18
**observed [1]** 30/19
**obviously [4]** 41/17 45/12 92/17 140/1
**occasions [1]** 6/4
**Occi [4]** 80/15 80/21 80/23 81/1
**Occidental [17]** 67/6 67/7 67/18 67/22 67/24 68/2 76/7 80/7 80/11 82/12 82/15 82/18 83/10 83/14 83/15 84/2 138/1
**occurred [3]** 40/25 66/15 68/14
**off [5]** 85/2 103/19 120/17 122/3 125/10
**office [2]** 8/19 91/22 91/23 110/21 111/8
**Officenter [1]** 2/6
**offices [1]** 111/17
**official [4]** 3/12 36/11 36/12 140/22

**Oficina [1]** 2/6
**oh [5]** 3/8 15/15 57/7 87/20 132/5
**okay [107]** 4/17 5/18 8/14 9/6 9/12 10/23 11/8 17/12 17/19 18/6 26/5 26/17 28/20 32/2 32/12 32/17 33/14 35/3 35/8 35/19 36/4 36/8 36/19 36/24 37/5 37/18 37/21 38/6 39/24 45/7 47/23 49/25 52/13 54/4 54/25 55/16 60/4 60/20 61/14 63/4 64/15 69/15 73/11 74/11 76/6 77/6 77/20 81/20 84/10 85/11 85/25 86/9 86/13 87/20 88/2 90/11 91/7 91/13 91/16 92/12 93/15 97/9 97/13 103/1 106/11 106/19 112/21 112/24 113/8 113/15 113/18 114/8 114/13 115/6 115/8 115/15 115/21 115/24 116/13 117/1 117/4 117/11 117/19 118/1 118/7 118/19 119/8 119/15 119/20 119/24 120/5 120/20 120/22 122/7 124/23 125/1 125/20 125/24 127/6 128/21 131/2 131/15 134/25 137/2 139/4 139/17 140/2
**old [6]** 45/11 53/19 53/24 53/25 54/3 132/16
**olds [2]** 54/1 54/2
**Olson [5]** 71/20 73/8 73/23 78/20 82/13
**omission [2]** 48/16 57/17
**omit [1]** 26/1
**omnibus [1]** 87/3
**once [5]** 15/19 41/24 48/19 61/24 84/17
**one [96]** 5/4 5/11 5/12 6/6 7/19 8/6 8/12 8/20 9/18 12/6 12/9 12/19 13/25 14/4 16/5 17/3 18/1 18/1 18/3 18/6 18/8 19/14 20/3 26/19 31/6 32/13 33/15 34/4 34/7 34/10 34/24 35/7 35/10 35/13 39/2 39/4 39/6 40/21 42/18 43/1 44/5 44/18 45/5 49/16 50/2 50/3 50/5 51/9 60/12 60/12 63/12 64/16 64/25 66/14 66/25 67/9 70/3 70/16 74/2 75/11 75/14 76/8 76/11 83/3 85/24 86/3 86/9 86/20 88/13 89/12 90/14 91/8 92/14 92/22 93/6 93/6 93/7 93/10 93/11 93/13 94/13 94/20 96/20 111/3 125/9 125/9 125/11 125/21 125/22 127/19 127/20 130/2 132/6 139/14 139/20
**one-day [1]** 14/4
**ones [8]** 26/17 36/7 50/9 90/15 122/9 125/7 131/10 139/25
**only [27]** 5/8 6/19 7/19 18/13 22/14 24/3 39/1 40/16 41/18 47/20 52/8 53/14 53/20 56/15 63/10 63/12 66/25 69/7 79/24 81/16 81/18 86/14 103/10 117/14 119/5 125/20 131/10
**open [1]** 17/1
**opening [42]** 23/19 24/1 24/2 24/5 24/11 24/16 24/20 28/6 28/8 28/17 30/9 32/22 32/25 33/18 33/23 35/24 37/25 41/5 41/21 45/24 49/21 56/3 56/15 61/4 63/3 74/22 75/6 81/11 82/22 87/17 96/14 105/1 126/19 126/21 127/5 127/10 127/14 128/5 128/7 131/16 131/19 137/4
**openings [3]** 57/24 57/25 79/2
**operating [2]** 27/5 126/17
**operation [1]** 27/9
**operations [1]** 37/13
**opined [1]** 73/3
**opinion [2]** 86/23 89/22
**opinions [4]** 73/4 89/12 104/17 123/5

**O**

**opportunity [12]** 9/10 12/24 28/19
29/25 30/6 73/2 73/6 79/3 93/21 109/13
109/19 139/22
**opposed [1]** 6/9 74/17 128/1
**opposing [1]** 88/20
**opposite [2]** 18/14 19/21
**opposition [1]** 70/7
**optimist [1]** 104/13
**oranges [1]** 24/15
**ordeal [1]** 107/18
**order [23]** 4/1 14/7 14/13 22/1 24/25
39/4 42/9 47/12 50/9 50/11 53/2 53/23
54/15 55/7 60/8 66/2 69/19 86/25 98/12
125/10 133/5 135/17 135/19
**orders [2]** 87/9 95/5
**organization [7]** 22/1 27/2 36/13 84/1
111/3 129/7 129/20
**organized [1]** 78/3
**orienting [1]** 37/19
**original [3]** 42/18 51/1 51/8
**other [71]** 9/1 12/8 12/9 12/24 16/5
27/25 32/24 33/6 35/20 37/14 37/22 39/7
39/18 40/4 41/19 43/18 44/6 45/22 50/9
50/21 51/3 52/16 63/7 63/8 63/14 63/15
63/23 64/1 64/23 65/5 65/12 65/23 66/20
67/14 67/16 69/3 71/21 76/4 76/5 84/23
85/10 85/19 85/20 87/12 88/13 89/24
100/6 100/9 109/12 109/25 110/25
117/16 118/9 119/4 121/16 122/3 122/18
122/18 123/23 127/2 129/14 129/15
131/4 131/6 131/8 133/5 134/25 138/5
138/6 138/7 139/20
**others [8]** 37/6 44/6 69/9 69/13 75/11
75/12 95/18 102/9
**otherwise [4]** 65/3 117/2 123/25 124/4
**ought [2]** 7/21 134/2
**our [63]** 10/19 11/15 11/18 11/21 13/12
13/17 19/6 19/10 20/6 22/13 22/18 23/12
24/21 25/24 28/4 28/15 31/10 33/3 35/5
43/9 44/2 44/10 44/13 44/13 44/20 45/4
48/25 49/12 49/21 51/10 53/4 54/7 55/13
56/7 57/20 57/23 58/20 60/2 61/1 63/1
65/21 69/5 70/7 73/15 74/7 80/12 83/5
83/6 83/17 83/19 84/18 85/11 92/23 95/9
96/2 97/22 97/22 98/3 98/10 101/6
107/23 111/7 124/3
**ours [4]** 17/6 25/1 58/6 58/10
**out [44]** 4/6 5/16 5/17 9/15 14/12 15/11
15/18 15/19 16/17 18/24 18/25 23/23
25/23 26/1 26/20 31/9 31/24 48/21 50/19
50/22 57/22 60/8 65/17 66/2 77/3 77/10
85/10 102/10 104/25 114/14 115/5
115/19 116/3 116/23 117/2 121/15
121/21 129/8 130/2 130/20 130/23 131/1
135/15 138/10
**outside [7]** 29/12 61/19 62/4 62/5 62/21
63/17 71/1
**over [8]** 11/11 42/21 91/22 95/7 101/6
101/6 132/8 133/18
**overall [1]** 37/15
**overhead [1]** 133/1
**overlook [1]** 122/10
**overlooked [1]** 9/20
**overlooking [1]** 10/7
**overly [2]** 33/17 35/9
**overnight [2]** 6/12 159/23
**overrule [7]** 131/4 131/9 132/23 133/1
133/2 135/1 138/7
**overruled [1]** 125/9
**own [11]** 10/1 10/24 23/21 36/22 38/25
39/2 40/14 46/13 50/15 73/15 132/17

**P**

**P-O-L-O [2]** 40/8 40/11
**p.m [8]** 1/5 85/4 101/11 101/12 101/12
107/14 124/15 125/2
**package [2]** 38/13 38/15
**packet [1]** 132/6
**paddle [1]** 120/11
**paddles [2]** 106/13 106/25
**page [29]** 16/22 17/25 18/5 18/7 18/15
20/3 20/19 20/23 21/3 21/3 21/9 21/11
22/19 22/22 23/1 27/10 34/8 40/1 47/17
60/8 61/1 61/23 62/1 69/23 70/7 87/4
88/24 91/12 100/5
**page 10 [1]** 87/4
**page 12 [1]** 70/7
**page 150 [3]** 18/5 18/7 27/10
**page 19 [1]** 61/1
**page 2 [1]** 61/23
**page 29 [1]** 100/5
**page 387 [6]** 20/23 21/3 21/9 21/11
22/22 23/1
**page 388 [3]** 20/19 21/3 22/19
**page 4 [1]** 62/1
**page 67 [1]** 91/12
**page numbers [3]** 17/25 34/8 60/8
**pages [3]** 1/6 26/10 90/23
**paid [5]** 76/6 80/9 80/11 81/1 82/18
**paint [1]** 19/8
**pale [1]** 49/21
**Palm [11]** 1/3 1/13 1/14 2/17 2/20 10/13
10/14 12/22 109/20 110/8 110/10
**Pampite [1]** 2/7
**panel [2]** 103/22 109/8
**panels [1]** 103/25
**papers [1]** 123/19
**paragraph [2]** 32/19 52/24
**paramilitaries [1]** 76/24
**paramilitary [3]** 19/1 27/2 27/9
**parenthetical [1]** 26/25
**parents [2]** 115/3 133/23
**part [15]** 19/8 28/14 30/4 42/20 43/10
43/11 46/2 54/11 61/4 77/23 85/16 91/3
115/3 116/1 127/8
**part-time [2]** 115/3 116/1
**particular [12]** 11/24 20/7 20/13 21/6
35/1 47/10 81/18 94/8 94/17 108/20
120/17 123/3
**parties [4]** 44/5 49/9 98/1 98/6 99/1
99/13 100/10 100/13
**parties' [1]** 39/15
**partly [1]** 43/21
**partner [3]** 73/19 111/19 111/20
**partners [2]** 109/23 111/18
**parts [5]** 27/20 31/8 66/6 67/4 89/3
**party [8]** 11/25 43/1 48/5 79/20 98/13
98/23 99/8 100/6
**pass [3]** 6/23 28/25 31/13
**passage [4]** 19/13 20/6 20/7 20/13
**passages [1]** 19/16
**past [2]** 36/7 92/22
**patience [1]** 107/17
**pay [6]** 15/5 19/5 27/18 83/17 83/20
90/2
**paying [3]** 68/20 76/4 83/25
**payment [4]** 76/14 78/5 82/12 82/15
**payments [64]** 21/16 22/2 26/24 51/7
51/8 51/9 52/7 56/10 60/13 60/19 64/22
67/6 67/13 67/15 67/17 67/23 67/25 68/3
68/4 69/23 70/2 70/4 70/12 70/24 76/5
76/20 78/12 79/14 79/21 80/14 80/15
80/17 80/21 81/9 82/8 82/15 82/19 83/10
83/12 86/11 86/15 93/17 93/23 94/5 94/8
94/10 94/12 94/19 95/3 95/23 96/10
96/16 134/11 134/17 134/17 134/21
135/5 135/7 135/14 136/13 136/21
136/24 137/1 137/9
**Peace [1]** 67/21
**pending [3]** 10/20 60/22 70/6
**penultimate [1]** 19/3
**people [24]** 5/8 6/12 7/4 10/9 22/3 22/4
22/23 23/11 23/11 31/16 33/16 49/19
68/2 101/16 102/10 105/16 105/25
106/23 107/2 108/15 122/25 124/6
127/13 127/24
**percent [2]** 37/15 86/16 86/17
**percentage [3]** 86/10 86/21 88/11
**perfectly [3]** 49/2 116/5 131/23
**perform [1]** 107/23
**performing [1]** 62/7
**perhaps [2]** 42/23 66/10
**period [7]** 14/20 15/7 26/24 76/22 116/7
121/25 122/15
**permit [1]** 27/25
**permitted [6]** 22/12 23/16 30/9 62/21
63/11 76/22
**person [2]** 66/17 76/14 112/12 113/9
113/16
**personal [6]** 32/5 32/6 32/10 63/22
79/13 83/20
**personally [2]** 15/10 29/23
**personnel [1]** 83/19
**persons [1]** 22/2
**perspective [1]** 65/21
**pertain [1]** 73/9
**Petroleum [8]** 67/6 67/18 67/22 67/24
80/7 80/11 83/10 84/2
**Philadelphia [2]** 111/16 111/17
**Philippines [4]** 34/25 35/1 37/7 37/11
**phone [2]** 124/1 124/10
**photograph [9]** 36/8 40/5 64/17 125/12
125/18 125/21 125/25 126/7 126/8
**photographs [8]** 35/18 38/22 38/22
40/4 125/14 132/22 133/2 134/1
**phrase [2]** 135/12 137/3
**phrased [3]** 127/16 127/25 135/4
**phrasing [1]** 137/16
**physical [1]** 115/20
**picked [1]** 9/2
**picture [5]** 19/9 23/25 28/2 76/9 126/24
**pictured [1]** 75/16
**pictures [4]** 45/8 45/9 45/14 49/4
**pipelines [2]** 67/8 80/11
**pitch [2]** 4/4 139/13
**place [5]** 11/4 17/1 83/20 109/1 133/4
**plainly [1]** 89/23

**P**

**plaintiff [14]** 1/11 2/2 3/1 38/16 39/4 40/21 41/2 41/19 42/1 44/18 48/4 48/10 100/17 131/4

**plaintiffs [79]** 13/15 18/17 28/22 32/20 32/22 32/24 39/6 39/10 39/14 39/17 40/3 41/6 42/6 42/9 42/13 42/17 43/1 43/2 43/9 43/19 43/24 44/15 44/20 44/25 45/5 45/21 46/1 46/10 46/14 46/17 47/6 47/19 47/22 48/1 48/14 48/17 48/20 49/10 53/2 53/4 53/6 53/6 53/23 54/8 54/22 55/4 72/15 73/6 76/20 77/24 85/14 87/3 89/14 93/4 93/10 93/16 93/17 94/20 96/9 96/12 97/22 98/11 100/22 100/25 101/1 101/25 110/21 127/11 129/6 130/18 132/13 132/15 133/7 134/20 135/4 135/13 136/11 136/19 138/8

**plaintiffs' [12]** 17/15 37/11 41/1 53/3 55/11 56/22 58/21 81/13 93/10 131/25 135/6 137/12

**plans [1]** 124/3

**play [1]** 25/23

**plea [1]** 32/21

**plead [1]** 72/8

**pleading [2]** 47/25 48/4

**please [13]** 8/17 16/5 16/14 17/18 21/15 35/7 98/3 107/15 109/6 123/14 123/23 125/3 134/16

**pled [2]** 48/1 48/4

**plenty [2]** 13/22 91/16

**PLLC [2]** 1/23 2/16

**pm [1]** 125/2

**PNC [1]** 3/7

**point [30]** 5/7 6/22 15/11 20/15 26/20 32/1 41/18 42/18 45/24 51/13 51/17 52/13 57/10 58/3 66/1 68/20 75/4 77/3 81/21 82/4 82/6 82/9 82/24 83/3 84/3 88/3 95/25 100/4 134/9 139/5

**pointed [1]** 77/10

**pointing [1]** 65/17

**points [3]** 70/16 83/4 93/8

**policy [1]** 10/19

**Polo [4]** 35/17 40/8 40/11 40/13

**Ponsoalt [1]** 117/5

**pool [2]** 108/13 123/9

**population [1]** 27/5

**portion [8]** 26/1 26/14 26/15 34/5 37/25 50/18 93/16 97/3

**portions [5]** 17/21 18/12 22/15 24/3 28/1

**portray [1]** 19/21

**position [10]** 35/5 37/21 43/9 43/22 45/4 56/7 73/1 83/5 100/12 122/8

**positions [1]** 13/21

**possibility [2]** 10/12 104/1

**possible [7]** 5/16 5/16 16/15 104/21 104/23 104/23 122/17

**possibly [6]** 10/11 38/1 108/6 109/15

**Post [2]** 10/14 10/14

**postpone [1]** 49/3

**potential [4]** 41/6 63/19 103/11 103/11

**Powell [7]** 33/4 35/23 36/10 128/3 129/22 130/12 130/21

**Powell's [3]** 128/23 129/4 129/17

**power [1]** 13/13

**PowerPoint [1]** 59/14

**PR [1]** 53/21

**practical [1]** 10/6

**practicality [1]** 105/21

**practice [4]** 12/22 109/20 110/8 110/13

**precise [1]** 56/16

**precisely [2]** 62/13 95/20

**preclude [1]** 138/2

**preference [1]** 102/1

**prejudice [3]** 58/1 99/19 99/21

**prejudiced [1]** 59/17

**prejudicial [13]** 31/1 34/2 61/6 62/18 64/20 65/9 68/6 68/10 76/13 76/25 77/2 79/1 81/3

**preponderance [6]** 93/11 96/9 134/20 135/13 136/11 136/19

**presence [1]** 29/12

**present [21]** 11/5 14/8 14/19 26/3 40/1 40/2 40/15 40/17 51/12 52/14 62/18 62/21 71/9 72/19 74/12 76/20 87/11 87/13 97/4 126/20 138/1

**presentation [9]** 29/2 39/25 41/5 58/19 58/22 74/23 76/12 82/22 139/21

**presentations [1]** 41/12

**presented [12]** 11/23 15/22 30/12 41/6 62/4 62/15 69/20 72/12 74/19 118/21 118/24 129/25

**presenting [5]** 23/25 74/25 75/5 76/3 87/16

**presiding [1]** 11/11

**pressure [1]** 119/7

**pressured [1]** 83/12

**presumptive [1]** 42/13

**pretrial [2]** 39/3 39/12

**pretty [5]** 6/7 26/5 26/7 101/7 104/17

**prevail [1]** 11/25

**prevent [3]** 8/5 108/23 123/5

**previous [4]** 21/14 89/8 89/9 92/23

**previously [1]** 53/17

**price [1]** 50/19

**primarily [2]** 63/18 110/6

**primary [2]** 60/21 136/4

**print [2]** 59/12 59/19

**printed [6]** 46/24 57/22 58/2 59/9 59/12 59/21

**printer [1]** 59/21 59/22

**prior [8]** 21/20 34/1 34/1 34/15 34/17 39/5 75/22 96/13

**privately [1]** 8/22

**privilege [2]** 12/16 13/15

**privileged [1]** 72/9

**probably [16]** 5/3 5/6 10/11 15/8 15/24 16/20 52/1 59/25 96/12 102/18 102/20 104/5 104/5 105/19 107/6 108/5

**problem [12]** 5/19 5/21 6/19 7/21 50/11 50/17 67/14 68/18 68/18 120/20 130/17 137/13

**problematic [2]** 50/1 67/9

**problems [2]** 88/16 119/13

**procedural [1]** 5/4

**procedure [2]** 6/20 44/4

**proceed [1]** 85/4

**proceeding [1]** 107/25

**proceedings [3]** 30/11 140/13 140/19

**process [10]** 14/14 14/16 28/14 57/20 74/10 79/5 108/11 108/25 109/5 123/1

**produce [1]** 79/11

**produced [1]** 40/24

**productive [2]** 102/19 102/20

**Professor [1]** 33/23

**proffer [4]** 37/8 37/15 81/10 86/4

**proffered [1]** 52/11

**profits [1]** 33/16

**prohibited [3]** 78/2 78/8 123/18

**proper [4]** 48/5 97/6 100/17 101/7

**properly [3]** 19/20 48/11 91/15

**propose [1]** 73/12

**proposition [1]** 51/20

**prosecute [6]** 42/7 46/12 80/13 80/16 84/2 100/21

**prosecuted [1]** 80/17

**prosecution [2]** 66/4 67/7

**prospective [4]** 107/13 109/8 123/1 124/14

**protect [2]** 62/10 67/8

**prove [36]** 23/20 23/21 24/19 32/25 36/15 44/24 51/25 52/1 52/3 55/25 72/15 93/11 93/16 93/17 94/1 94/6 94/17 94/19 94/20 96/9 127/11 127/22 128/1 128/25 129/6 129/19 130/15 130/18 134/20 135/4 135/7 135/13 136/11 136/19 137/17 138/3

**proven [1]** 32/25

**provide [17]** 14/11 17/16 27/2 27/8 29/25 46/19 58/1 58/25 60/7 63/18 67/24 77/16 83/9 83/15 98/18 100/17 100/20

**provided [8]** 22/8 94/25 94/25 95/16 136/12 136/15 136/17 136/20

**provides [1]** 131/13

**providing [2]** 33/1 77/16

**proving [1]** 32/21

**public [3]** 109/24 110/18 111/2

**publication [1]** 125/15

**publicity [1]** 126/15

**published [4]** 126/2 126/25 127/1 127/2

**pull [1]** 70/10

**punishable [1]** 62/12

**punished [1]** 15/12

**purchase [1]** 50/19

**pure [2]** 33/5 35/23

**purpose [3]** 25/16 30/20 56/18

**purposes [3]** 74/21 75/6 127/9

**pursue [1]** 46/13

**put [22]** 16/11 21/13 52/3 63/12 67/15 82/6 92/6 95/21 96/3 103/19 105/5 112/14 121/14 121/21 128/5 128/6 128/22 129/1 131/15 131/19 132/24 133/24

**putting [3]** 21/19 68/3 84/3

**Q**

**qualified [2]** 53/21 64/4

**question [24]** 5/21 21/14 22/14 22/15 22/20 22/21 23/4 23/5 23/9 26/22 27/20 29/19 76/3 77/8 89/16 89/22 90/4 90/9 98/14 98/22 99/2 102/6 116/5 137/21

**questionably [1]** 52/15

**questioned [1]** 7/8

**questioning [2]** 22/14 108/17

**questionnaire [8]** 9/15 14/12 14/21 15/18 16/11 107/19 112/15 120/16

**questionnaires [8]** 4/6 6/12 84/11 85/1 103/7 103/12 112/6 122/10

**Q**

**questions [6]** 45/22 73/9 89/24 104/18
124/6 124/7
**quick [2]** 83/4 93/7
**quicker [1]** 102/8
**quickly [1]** 5/15
**quietly [1]** 8/22
**quite [4]** 68/10 93/25 107/3 137/10
**Quito [1]** 2/8
**quote [15]** 19/6 19/7 21/9 35/21 88/18
89/16 128/23 129/11 129/12 129/23
129/25 130/6 130/11 131/14 131/14
**quoted [3]** 30/15 30/15 89/1
**quotes [4]** 29/15 88/22 89/14 131/13

**R**

**Rachel [1]** 9/4
**raise [7]** 50/6 54/10 60/25 95/10 139/23
140/1 140/5
**raised [6]** 43/21 58/4 58/5 71/24 72/1
138/8
**raising [4]** 7/8 61/15 61/17 138/2
**ransom [1]** 68/21
**rather [5]** 14/23 151/1 105/5 125/9 128/6
**rationale [1]** 74/18
**Raymer [1]** 73/22
**RE [1]** 1/3
**reach [1]** 57/10
**reacting [2]** 19/4 27/17
**reaction [1]** 6/1
**read [10]** 9/24 23/5 28/1 47/8 97/10
97/11 100/4 117/8 123/19 136/10
**reading [1]** 25/19
**ready [5]** 8/11 10/21 57/13 85/4 139/12
**real [2]** 28/9 83/18
**realize [1]** 7/20 115/13 121/13
**really [25]** 4/11 7/14 13/9 13/11 18/14
19/1 19/20 19/21 24/15 28/2 28/18 32/6
40/21 41/20 42/2 42/4 52/15 55/20 71/8
78/16 94/3 95/11 95/22 96/4 99/13
**reargue [1]** 95/6
**reason [11]** 15/5 56/9 58/24 64/20
68/17 80/12 89/19 103/8 115/17 116/13
128/2
**reasonable [11]** 30/10 37/12 70/18 71/6
72/3 72/3 72/16 81/21 95/24 107/9
129/15
**reasonably [6]** 30/11 36/14 37/3 72/20
80/16 129/18
**reasons [3]** 46/2 50/2 67/9
**rebut [1]** 42/12
**rebuttal [1]** 72/19
**rebutting [1]** 72/15
**recall [2]** 44/3 87/9
**receive [2]** 57/19 59/16
**received [7]** 50/2 50/3 58/14 60/24
61/13 73/8 84/13
**receiving [1]** 79/20
**receptive [1]** 4/23
**recess [7]** 11/3 57/2 57/9 101/10 101/12
124/16 125/2
**recipient [1]** 78/21
**reciting [1]** 89/17
**recognize [1]** 110/24
**recognizing [1]** 114/15
**recollection [1]** 44/7

**reconsider [1]** 53/9
**reconsideration [6]** 42/20 43/6 46/8
47/13 53/3 55/11
**record [21]** 4/2 21/25 31/7 31/20 31/21
39/12 41/1 41/17 41/24 48/9 50/10 54/23
65/22 74/3 74/5 74/8 85/2 133/24 138/9
139/16 139/16
**recorded [3]** 60/14 60/19 69/24
**records [1]** 67/23
**recover [4]** 40/3 42/6 44/6 132/13
**red [1]** 47/17
**redirect [1]** 25/11
**refer [4]** 65/4 87/22 131/15 136/23
**reference [11]** 23/1 43/17 55/1 66/16
68/11 68/13 69/21 78/11 129/5 130/21
138/10
**referenced [5]** 34/7 54/22 55/3 66/17
82/2
**references [1]** 27/23
**referred [2]** 67/12 83/9
**referring [6]** 31/22 61/12 63/2 68/9
81/18 127/19
**refers [1]** 26/12
**reflect [1]** 124/17
**regard [2]** 126/4 126/16
**regarding [8]** 16/9 17/3 60/23 78/12
79/23 84/19 88/14 96/15
**regardless [1]** 135/8
**regular [2]** 21/23 22/1
**regurgitated [1]** 62/4
**rehabilitate [1]** 5/25
**reinstated [2]** 42/19 43/5
**REITER [4]** 1/22 1/23 44/3 110/20
**Reiter's [6]** 43/17 43/24 44/1 44/11
44/12 44/15
**relate [4]** 19/18 26/18 38/14 95/25
**related [5]** 39/9 39/18 51/6 95/3 130/10
**relates [1]** 39/2
**relating [3]** 35/17 46/20 63/21 73/1
86/23
**relative [1]** 53/11
**relevancy [2]** 34/25 90/8
**relevant [9]** 34/13 35/1 37/7 51/4 70/14
70/15 78/1 78/23 81/21
**reliance [1]** 71/24 137/24
**relied [3]** 73/9 74/16 78/24
**rely [1]** 102/2
**relying [1]** 11/22
**remainder [3]** 61/25 88/22 89/14
**remaining [3]** 14/17 49/2 89/3
**remains [1]** 138/1
**remember [1]** 7/19
**remind [2]** 48/19 50/10
**reminded [1]** 115/2
**remove [2]** 49/1 77/19
**repeat [2]** 21/14 127/16
**repeating [2]** 101/6 138/13
**repeats [1]** 21/18
**repetitive [2]** 22/12 22/19
**report [3]** 61/24 62/9 78/5
**REPORTED [1]** 3/11
**reporter [3]** 3/12 112/11 140/22
**reports [1]** 64/2
**represent [8]** 13/7 13/16 24/18 25/10
47/21 82/5 110/21 129/22
**representation [3]** 39/17 45/20 67/22

**representations [3]** 28/6 66/14 71/10
**representative [10]** 23/22 24/12 29/15
30/4 43/18 44/6 44/19 74/15 99/8 133/23
**representatives [1]** 74/13
**represented [1]** 67/20
**representing [3]** 12/8 12/17 22/16
**represents [3]** 12/7 18/4 99/8
**reprisals [2]** 90/1 90/6
**request [3]** 61/2 79/5 139/22
**requested [1]** 73/22
**requests [3]** 22/7 46/16 49/12
**require [4]** 14/3 14/5 47/25 127/22
**required [1]** 100/21
**requirements [2]** 47/25 48/4
**requires [2]** 30/21 136/3
**research [5]** 9/21 16/6 21/21 123/15
123/20
**reserved [1]** 75/3
**resolution [1]** 13/24
**resolve [8]** 11/20 13/12 13/19 14/5 14/7
43/2 59/20 92/17
**resolved [1]** 14/11
**resort [1]** 25/19
**resources [1]** 78/3
**respect [31]** 13/14 22/18 35/22 50/7
50/13 52/6 52/7 52/8 53/4 55/11 56/6
63/24 64/1 67/10 68/11 72/7 77/7 77/18
77/22 79/12 79/24 80/2 80/7 82/1 82/12
82/21 90/21 131/12 132/3 134/1 139/21
**respected [1]** 126/13
**respectfully [1]** 30/6
**respective [1]** 13/21
**respond [9]** 41/21 41/25 46/15 48/22
69/11 69/15 75/15 90/15 90/17
**responding [2]** 55/18 82/6
**response [6]** 20/2 30/21 31/6 70/5 74/7
98/6
**responses [4]** 23/12 39/21 46/15
113/17
**responsibilities [1]** 116/8
**responsibility [2]** 12/16 106/20
**responsible [3]** 13/16 94/8 126/6
**responsive [2]** 58/19 58/25
**rest [9]** 22/24 44/18 91/4 103/3 108/4
122/13 122/15 122/16 131/2
**restriction [1]** 123/24
**result [4]** 12/18 29/18 38/2 133/11
**resulted [1]** 96/25
**rethink [1]** 5/10
**retired [5]** 87/2 115/9 115/10 115/16
116/6
**review [6]** 10/3 10/10 84/19 112/6
113/16 122/9 139/23
**reviewed [3]** 30/13 107/20 112/15
**RICHARD [3]** 1/17 55/18 111/9
**rick [1]** 1/21
**right [93]** 6/18 7/23 8/10 9/18 10/21
17/14 17/24 18/10 19/14 19/23 23/16
23/17 24/8 26/15 30/25 34/23 36/9 37/5
38/1 38/4 38/9 41/9 42/15 44/23 46/5
48/12 49/13 52/19 57/1 58/12 60/2 60/3
71/23 72/5 75/10 77/10 82/4 85/1 86/6
86/14 87/8 87/24 88/13 90/25 92/14
92/22 94/22 95/14 96/19 97/13 99/6
101/10 106/2 106/5 106/10 106/12
106/15 106/17 106/25 107/1 110/1 112/2

## R

**right... [31]** 112/12 112/12 113/9 114/3 114/4 114/19 115/6 115/10 117/5 117/8 118/8 119/4 119/18 121/16 122/12 124/5 124/8 124/24 126/18 128/9 131/18 135/11 136/18 137/18 137/21 138/12 138/17 138/24 139/6 139/10 140/10
**right-hand [1]** 6/18
**rights [1]** 62/11
**ring [1]** 18/25
**rise [1]** 109/6
**risk [6]** 24/17 28/12 68/9 83/21 95/17 95/24
**risks [3]** 28/6 52/13 62/19
**RMR [2]** 3/11 140/21
**ROBERT [1]** 2/2
**Rome [2]** 3/6 111/16
**room [5]** 4/4 9/5 11/4 59/22 124/5
**rule [4]** 61/2 62/20 131/13 139/4
**Rule 44.1 [1]** 62/20
**ruled [20]** 30/14 33/22 46/8 52/10 52/12 64/23 65/25 76/19 87/19 88/4 89/6 89/11 89/15 92/5 92/25 93/22 94/7 95/2 132/12 138/25
**rules [1]** 63/1
**ruling [19]** 25/9 32/19 43/13 43/15 55/7 96/13 102/24 127/4 128/15 129/15 131/3 132/12 133/6 133/14 133/22 133/25 134/15 134/23 139/1
**rulings [5]** 50/7 96/5 124/18 125/5 132/3
**run [1]** 105/2
**running [1]** 128/14
**Ruth [1]** 121/7

## S

**S-A-N-D-R-I-T-H [1]** 40/6
**S/N [1]** 2/7
**sacrifice [1]** 14/3
**sacrifices [4]** 5/2 11/17 13/2 14/6
**safety [1]** 83/21
**said [55]** 5/22 7/19 9/19 10/17 20/23 23/7 23/19 23/23 24/12 25/22 26/13 26/21 28/9 28/18 29/1 29/2 31/7 31/8 31/8 31/20 32/19 33/8 35/14 39/23 43/5 44/25 51/1 51/8 53/3 54/15 66/20 75/1 76/12 78/14 81/6 89/15 89/19 94/15 94/16 94/18 96/3 96/8 97/25 98/12 98/25 99/4 99/17 101/16 106/8 115/12 117/20 118/10 123/25 127/17 131/20
**same [20]** 17/20 26/8 26/24 35/22 43/10 44/9 46/2 60/7 65/17 65/23 66/15 66/17 66/18 67/10 69/23 77/15 90/1 101/6 122/25 139/11
**sanctioning [1]** 137/8
**Sandrith [1]** 40/6
**save [3]** 6/9 6/13 102/21
**saved [1]** 102/3
**say [69]** 5/19 6/15 7/3 7/5 7/13 9/22 10/16 11/8 22/11 24/2 24/6 24/8 24/13 24/14 28/17 31/13 34/19 40/24 41/2 41/19 41/24 42/1 42/2 48/12 48/25 51/13 51/25 52/17 54/23 66/3 66/19 66/21 66/21 76/13 79/13 79/20 82/4 83/3 83/11 83/17 87/11 87/15 88/4 89/25 91/19 92/9 93/20 94/9 94/10 94/11 94/13 95/2 96/16

9/12 104/6 105/10 106/1 117/5 117/6 118/15 120/6 122/4 125/7 127/10 127/14 127/22 130/1 130/15 136/8
**saying [15]** 7/7 28/14 44/3 59/8 75/7 75/9 81/15 91/1 91/2 91/4 95/20 106/7 126/25 130/14 137/13
**says [26]** 18/6 18/14 23/5 24/10 25/3 25/12 32/14 33/20 47/16 49/17 50/24 51/7 52/25 55/22 67/5 74/15 75/18 76/16 76/16 86/5 86/15 91/21 93/16 93/24 127/20 135/23
**SCAROLA [30]** 1/11 1/13 7/2 11/5 12/12 12/15 12/23 21/10 22/10 23/7 23/18 24/8 25/7 28/24 31/7 31/15 33/11 36/9 56/1 58/5 59/2 90/15 92/11 105/8 109/11 109/16 109/20 109/21 110/11 110/17 127/7
**scarolateam [1]** 1/14
**scheduled [1]** 122/19
**SCHERER [13]** 2/2 2/2 2/6 2/10 52/20 55/6 97/17 97/19 100/1 100/25 110/3 110/5 110/5
**Scherer's [1]** 44/2
**school [4]** 121/13 121/14 121/22 121/23
**schools [1]** 121/20
**screen [2]** 135/22 135/23
**scroll [1]** 135/24
**SE [1]** 3/1
**Searcy [4]** 1/13 12/23 109/21 109/23
**searcylaw.com [2]** 1/14 1/15
**seat [1]** 107/10
**seated [4]** 107/15 110/1 125/3 128/10
**seats [3]** 106/14 106/23 107/11
**second [13]** 5/10 5/20 25/8 39/4 40/10 41/21 42/1 68/12 75/14 86/9 88/14 88/24 114/14
**secondary [1]** 136/2
**secondhand [1]** 30/1
**Secondly [1]** 72/7
**Secretary [1]** 33/4
**section [3]** 61/23 88/25 89/1
**sections [3]** 30/15 30/16 62/1
**security [2]** 63/19 80/10
**see [38]** 6/11 6/18 6/19 8/11 10/14 10/15 11/2 16/20 21/10 32/15 34/10 39/25 42/1 47/14 47/18 50/11 54/20 58/18 58/18 60/20 73/3 74/24 81/22 84/11 85/17 85/20 85/22 95/10 101/11 103/12 104/15 111/14 114/4 114/5 117/9 117/20 123/4 139/11
**seek [1]** 45/1
**seem [1]** 31/14
**seemed [7]** 4/23 5/21 7/18 75/15 130/12 134/9 134/11
**seems [4]** 10/25 41/23 107/7 134/1
**seen [2]** 40/16 138/2
**segment [1]** 107/25
**select [3]** 14/18 108/13 123/6
**selected [2]** 23/24 116/8
**selection [5]** 14/13 103/18 103/19 105/1 108/11
**selective [3]** 22/14 27/23 31/8
**selectively [2]** 22/25 23/3 26/1
**self [2]** 30/1 30/7
**self-serving [2]** 30/1 30/7
**Sellers [1]** 2/16

**send [1]** 84/15
**sending [1]** 84/25
**seniors [1]** 121/23
**sense [3]** 85/5 85/6 107/11
**sensitivity [1]** 122/8
**sent [2]** 84/24 85/10
**sentence [1]** 18/24
**sentences [3]** 27/13 31/9 97/8
**separate [4]** 40/7 40/12 72/2 93/12
**separately [1]** 38/24
**September [11]** 33/4 66/21 66/22 66/23 66/23 67/2 70/14 128/16 129/4 129/21 130/24
**September 10 [4]** 33/4 70/14 129/4 130/24
**September 4 [2]** 66/22 66/23
**September 8 [2]** 66/21 66/23
**SERENA [2]** 3/5 111/20
**serena.gopal [1]** 3/10
**serious [2]** 29/6 45/17
**serve [30]** 11/17 14/9 14/20 14/22 15/24 16/1 15/12 107/19 107/21 108/3 108/12 108/21 109/1 112/5 112/21 112/25 113/2 113/5 113/13 113/20 113/25 114/16 114/24 120/18 121/3 122/10 122/11 122/24 124/1 124/12
**served [1]** 48/23
**service [10]** 5/14 13/8 13/9 13/9 16/4 16/20 75/25 111/24 112/25 121/19
**serving [5]** 15/12 15/14 16/14 30/1 30/7
**session [1]** 122/1
**set [13]** 27/12 38/20 38/21 38/23 38/25 58/11 58/12 59/3 59/4 59/12 70/8 85/12 139/15
**sets [2]** 38/20 38/25
**setting [1]** 137/5
**several [3]** 17/22 73/6 121/19
**SHAREHOLDERS [1]** 1/4
**sharing [1]** 12/16
**she [46]** 7/19 8/20 8/21 8/22 8/22 8/25 9/4 9/10 20/12 22/8 22/15 22/22 22/25 23/5 23/9 23/9 23/11 24/17 25/9 25/11 25/12 25/21 25/22 26/9 26/21 28/15 29/17 29/19 29/19 29/20 29/21 31/8 31/8 31/21 35/16 43/21 43/21 43/22 97/25 98/20 98/25 99/4 106/23 109/6 112/12 124/2
**she's [6]** 8/21 8/25 21/21 25/8 26/11 41/2
**sheet [9]** 39/24 40/2 40/15 40/16 41/7 48/8 49/2 49/4 114/14
**sheets [1]** 66/5
**Shelia [1]** 120/23
**Shipley [3]** 1/13 12/23 109/21
**shooting [1]** 67/11
**shorten [1]** 105/7
**shot [4]** 65/1 65/7 65/8 65/8
**should [36]** 4/17 5/15 7/24 8/12 8/22 9/6 9/18 11/25 16/1 16/16 19/13 19/14 22/20 41/5 41/6 41/7 43/9 43/11 50/8 51/4 61/4 62/12 62/25 63/2 65/10 79/1 90/17 93/6 93/21 94/9 94/11 95/18 95/25 106/22 108/8 127/10
**shouldn't [4]** 22/12 23/16 24/9 91/5
**show [41]** 24/6 24/7 24/11 24/18 25/2 25/12 28/10 36/20 46/24 47/2 47/8 55/24

**S**

**show... [29]**  56/5 60/13 60/16 60/18 62/3 64/2 64/6 66/4 68/7 68/10 69/23 70/19 74/8 75/7 76/22 82/20 82/23 86/11 87/13 91/7 91/20 93/22 94/7 95/3 96/15 128/19 130/2 131/20 134/2
**showed [3]**  87/12 92/16 92/19
**showers [2]**  116/12 116/14
**showing [7]**  25/20 37/7 67/25 126/19 126/23 130/6 136/3
**shown [2]**  24/25 41/7
**shows [5]**  21/25 65/10 70/1 77/17 82/18
**sic [2]**  10/18 20/18
**sick [1]**  116/4
**side [12]**  12/10 17/4 40/8 50/10 64/14 65/23 66/7 66/7 86/4 86/6 92/3 104/16
**sidebar [1]**  24/6
**sides [5]**  4/3 5/21 17/3 60/6 60/9
**sign [1]**  18/4
**significant [3]**  14/3 14/6 103/9
**similar [5]**  62/7 68/11 79/15 89/8 89/9
**SIMONS [13]**  1/16 57/15 69/19 69/25 75/15 75/21 77/2 81/6 81/14 82/2 82/23 111/4 138/10
**Simons' [3]**  76/12 139/21
**simple [1]**  14/4
**simply [7]**  33/16 56/4 66/10 75/7 80/23 103/21 129/5
**since [5]**  6/7 31/14 57/23 76/19 93/22
**single [2]**  66/5 102/10
**sir [43]**  4/19 5/23 18/9 32/3 38/9 52/19 52/22 54/16 54/17 84/9 97/20 98/17 99/24 99/25 104/12 105/20 112/9 112/24 113/7 113/11 113/21 113/23 114/19 119/17 120/4 120/19 124/21 124/25 125/4 125/19 125/23 127/18 128/8 130/8 131/11 131/22 133/13 134/23 137/7 137/10 138/19 139/8 139/13
**sister [2]**  115/4 115/23
**sit [4]**  60/1 69/4 118/20 123/7
**sitting [2]**  8/25 84/22
**situation [4]**  44/9 44/10 44/11 62/14
**six [15]**  7/17 7/20 14/10 15/1 15/4 15/4 15/16 31/4 92/18 96/20 97/23 98/13 99/6 99/15 120/18
**skipped [1]**  132/8
**slide [45]**  20/14 22/24 27/12 32/13 33/7 33/10 33/15 33/20 35/4 35/18 35/21 35/23 37/24 38/23 39/2 40/5 40/9 40/12 40/14 46/4 49/1 49/16 49/24 51/1 51/8 51/19 55/22 56/18 63/5 63/10 64/17 64/19 65/5 66/14 68/12 69/22 70/1 75/18 77/19 85/16 86/10 88/14 90/24 93/8 127/6
**slides [26]**  20/1 20/16 20/17 20/22 26/6 28/3 31/5 32/9 35/17 37/22 38/22 40/4 40/23 40/24 42/22 49/1 49/2 49/15 65/4 66/2 66/3 85/15 134/10 134/12 139/15 139/19
**slip [1]**  33/23
**slipped [1]**  38/1
**slower [1]**  102/8
**small [3]**  86/11 110/10 110/12
**so [248]**
**society [1]**  11/21
**sofas [1]**  91/23

**solely [2]**  58/25 128/4
**solo [1]**  110/13
**solve [1]**  96/11
**some [42]**  5/25 6/10 6/14 6/22 7/7 10/11 14/6 14/16 15/19 17/2 17/9 17/11 17/13 21/24 29/7 38/2 40/25 52/16 61/20 65/4 68/2 71/17 75/17 77/11 79/11 89/24 102/6 103/8 104/17 104/19 105/24 108/7 108/14 117/17 118/13 118/15 124/18 125/5 125/14 127/2 129/14 129/15
**somehow [1]**  126/25
**someone [5]**  65/6 115/20 122/11 129/25 130/7
**someone's [1]**  62/10
**something [22]**  10/16 23/15 25/5 26/10 29/1 29/3 29/20 30/21 35/15 36/24 37/1 37/3 41/3 48/23 52/15 68/9 83/2 104/6 116/23 127/10 130/15 131/14
**Sometimes [2]**  113/18 118/13
**somewhat [2]**  44/10 89/8
**son [1]**  98/16
**son's [2]**  98/23 100/9
**soon [4]**  16/15 58/1 117/24 139/12
**Sooner [1]**  6/21
**sorry [23]**  18/1 20/25 33/9 34/4 35/14 51/11 51/23 57/7 67/8 72/3 84/7 85/12 92/1 97/2 100/3 115/11 118/8 132/1 132/5 132/8 132/11 136/17 136/23
**sort [7]**  4/12 48/2 51/18 59/4 60/10 102/9 139/16
**sounds [1]**  105/20
**source [5]**  52/16 125/24 126/1 126/14 126/16
**SOUTHERN [1]**  1/1
**Spanish [3]**  117/17 118/9 118/22
**speak [5]**  7/5 16/16 36/5 122/11 123/2
**speaking [4]**  9/1 23/22 29/16 64/7
**speaks [1]**  31/7
**Special [1]**  67/21
**specific [9]**  25/24 31/2 32/9 47/18 57/20 74/2 77/8 93/23 95/3
**specifically [11]**  18/15 18/18 22/3 50/13 70/15 72/10 76/13 93/14 97/25 125/12 125/14
**specifics [1]**  58/22
**specify [1]**  80/5
**specifying [1]**  80/1
**speculation [2]**  90/10 92/25
**spend [3]**  5/24 18/20 91/13
**spent [2]**  6/5 29/7 75/22
**spiel [1]**  13/21
**spirit [1]**  96/13
**spoke [6]**  10/3 38/21 39/3 39/23 42/16 122/23
**stack [2]**  60/15 66/6
**stage [1]**  88/1
**stand [5]**  22/20 77/3 82/15 92/23 110/2
**standalone [1]**  38/25
**standard [5]**  70/15 72/4 72/6 81/22 96/3
**standpoint [1]**  56/15
**start [7]**  6/12 17/14 55/2 109/3 123/11 123/12 123/13
**started [3]**  11/6 51/7 51/9
**starting [1]**  17/24
**state [9]**  46/7 48/9 74/4 74/6 74/9 105/23 110/22 127/8 135/25

**stated [2]**  42/9 92/10
**statement [34]**  23/19 24/1 24/17 28/7 30/9 31/11 32/9 32/23 33/4 33/18 33/24 36/9 37/25 45/24 49/21 51/13 55/24 56/3 56/7 74/22 87/6 87/7 87/17 96/14 126/19 128/3 129/10 129/14 129/17 129/21 131/15 131/16 131/16 131/19
**statements [7]**  25/1 30/1 30/3 30/7 61/5 83/3 87/16
**STATES [6]**  1/1 1/9 70/13 71/2 130/24 136/1
**status [1]**  42/16
**statute [4]**  1/4 42/18 55/7 98/7
**stay [3]**  35/5 124/9 128/6
**step [2]**  121/17 123/2
**steps [1]**  59/4
**still [9]**  14/16 25/15 49/4 59/8 59/9 90/13 108/13 123/9 124/9
**Stipulate [1]**  92/13
**stipulation [1]**  54/20
**STOOLMAN [2]**  3/6 111/20
**stop [1]**  35/16
**storied [1]**  75/25
**story [1]**  131/21
**strategy [1]**  36/20
**Street [4]**  1/18 2/10 3/1 3/7
**streets [1]**  133/3
**strewn [1]**  91/22
**strikes [2]**  50/24 51/2
**strong [2]**  44/22 101/25
**stronger [1]**  44/11
**subject [8]**  17/22 28/23 42/11 61/4 83/2 84/6 84/8 123/17
**submission [1]**  125/20
**submit [5]**  31/25 51/3 57/23 58/15 138/1
**submitted [4]**  48/13 77/24 91/10 139/21
**submitting [2]**  49/8 126/8
**subpoenaed [1]**  67/22
**substance [1]**  29/13
**substantial [17]**  95/1 95/11 95/16 95/21 95/23 96/10 96/17 134/17 134/22 135/6 135/8 136/3 136/12 136/15 136/16 136/17 136/20
**substantially [1]**  135/9
**successful [1]**  6/3
**such [3]**  29/11 78/25 88/8
**suffered [1]**  133/11
**sufficient [2]**  95/17 95/24
**suggest [13]**  30/6 30/23 67/1 68/17 68/24 75/15 75/19 78/9 80/13 80/24 84/4 126/23 136/14
**suggested [1]**  28/5
**suggesting [13]**  5/18 7/2 7/3 28/8 31/14 42/5 42/6 43/17 51/18 66/24 68/4 81/1 106/6
**suggestion [5]**  5/4 7/6 29/11 51/22 129/2
**suggests [3]**  51/19 76/14 82/18
**suing [1]**  12/7
**Suite [6]**  1/19 1/24 2/10 2/16 2/20 3/2
**summaries [1]**  52/9
**summarize [1]**  90/22
**summarizes [1]**  21/20
**summary [6]**  43/8 52/17 88/20 135/17 138/21 138/22

## S

**supplemented [1]** 22/6
**support [11]** 32/21 33/2 41/11 50/21 51/13 51/16 51/19 64/10 87/7 87/16 88/11
**supported [1]** 51/10
**supports [1]** 52/9
**suppose [2]** 65/21 93/9
**supposed [8]** 24/5 51/13 51/15 51/22 51/24 64/9 64/10 97/5
**sure [33]** 4/8 4/16 6/6 16/12 47/4 71/21 77/2 77/13 77/16 78/15 81/9 82/2 93/25 96/24 103/4 104/2 104/4 105/8 105/13 106/24 108/3 110/24 112/12 119/2 119/3 120/15 121/24 122/21 128/3 128/5 128/14 137/2 139/25
**surprise [2]** 72/25 99/19
**surrounding [1]** 63/18
**survey [2]** 14/12 15/18
**surveys [1]** 6/11
**survivors [2]** 12/17 12/21
**sustain [4]** 125/8 126/18 132/21 132/23
**sustained [1]** 24/13
**sustaining [2]** 131/10 138/6
**SUV [1]** 126/24
**swear [2]** 58/16 109/7
**sworn [2]** 109/5 109/8
**system [4]** 11/16 11/18 11/21 13/11

## T

**tab [1]** 47/10
**tabbed [1]** 47/17
**table [1]** 109/22
**tables [1]** 91/23
**take [36]** 5/15 15/19 19/14 24/17 26/6 26/14 28/6 28/20 31/24 42/23 43/7 47/24 52/14 53/18 53/25 56/21 57/1 68/9 69/19 77/12 85/9 85/11 90/1 90/19 100/12 101/10 109/1 115/14 116/8 122/3 124/16 130/20 130/23 131/1 133/18 138/24
**taken [12]** 11/3 31/9 41/15 41/21 48/21 57/9 72/21 72/24 97/24 98/12 101/12 125/2
**takes [6]** 11/4 17/1 53/24 77/3 82/14 96/24
**taking [10]** 6/7 28/12 48/18 62/14 63/24 71/3 73/1 81/23 119/8 119/16
**talk [12]** 4/7 5/6 9/10 29/17 34/14 36/8 45/15 56/4 60/12 123/16 128/16 139/6
**talked [3]** 19/11 39/10 134/10
**talking [28]** 6/10 14/10 18/8 29/8 31/15 31/21 32/6 34/1 34/15 34/18 34/20 37/20 37/24 41/10 67/13 72/2 78/10 78/16 78/17 81/6 81/7 81/8 81/15 81/16 81/17 82/2 84/25 96/21
**task [1]** 12/16
**tax' [1]** 83/18
**tc [1]** 2/11
**team [2]** 12/19 12/24
**teams [1]** 59/5
**technical [3]** 118/14 118/16 118/17
**tell [13]** 5/11 13/15 13/25 14/21 52/2 58/21 93/21 103/4 105/18 109/5 128/18 133/16 136/9
**telling [3]** 43/1 43/2 97/7
**ten [8]** 12/17 14/4 26/2 26/10 31/9 31/25

**ten-day [1]** 14/4
**ten-minute [1]** 57/1
**terminate [1]** 15/13
**terminated [1]** 15/12
**terms [5]** 19/11 26/16 61/12 92/17 96/21
**TERRENCE [1]** 2/9
**terrorism [4]** 27/4 33/2 129/9 130/3
**terrorist [7]** 36/13 78/3 80/1 83/25 129/1 129/7 129/20
**terrorists [17]** 32/14 49/18 55/23 56/12 63/9 63/15 64/21 65/5 65/7 67/6 67/12 76/18 127/12 127/21 127/23 130/11 130/19
**test [1]** 105/23
**testified [3]** 19/22 28/15 132/17
**testifies [4]** 20/12 25/11 77/4 79/16
**testify [30]** 25/9 27/24 30/18 42/10 43/14 43/18 43/21 43/22 44/6 45/1 45/2 45/3 45/6 45/19 53/12 53/13 53/15 54/9 63/11 65/2 71/22 72/23 78/24 81/25 82/14 87/10 101/4 132/14 133/9 133/10
**testifying [5]** 21/22 71/21 78/20 98/14 118/22
**testimony [33]** 18/13 18/13 18/18 19/25 20/8 20/11 20/14 21/19 24/4 25/10 25/25 28/10 33/24 36/22 36/25 41/1 41/17 42/3 50/20 76/3 79/22 82/17 83/8 83/22 86/5 87/1 88/15 88/17 89/2 89/17 118/22 128/20 132/17
**texted [1]** 8/25
**than [22]** 14/23 15/1 27/25 28/14 32/10 44/11 50/9 54/8 55/24 86/16 86/17 102/21 105/5 105/8 105/9 119/4 123/23 125/9 125/21 125/22 130/5 137/20
**thank [88]** 11/1 11/2 12/13 13/1 13/1 13/3 13/5 13/8 15/17 16/3 16/3 16/19 16/19 30/25 31/1 38/6 38/9 42/15 46/5 46/6 49/13 49/14 52/19 54/17 54/18 55/5 55/15 55/17 56/19 56/20 57/8 68/25 69/17 69/18 75/10 77/20 81/4 83/1 84/5 85/11 90/12 93/2 97/20 99/25 100/1 101/9 106/11 107/16 107/23 109/9 109/17 110/2 110/4 111/5 111/11 111/13 111/24 112/1 112/24 113/8 113/15 113/22 114/3 114/13 114/19 117/4 118/7 119/18 119/19 119/24 120/5 120/22 121/6 122/8 124/11 124/11 124/21 125/1 127/18 128/13 130/8 131/11 134/6 139/9 139/10 140/8 140/10 140/11
**Thanks [2]** 96/19 124/22
**that [820]**
**that's [99]** 4/7 4/11 7/15 7/16 10/25 13/13 15/5 17/6 19/9 21/13 24/19 24/20 25/4 25/13 26/3 26/7 27/21 28/4 28/13 28/14 28/15 31/9 31/22 31/25 32/8 32/11 32/13 33/18 34/21 35/6 36/1 38/13 40/7 44/7 45/4 48/1 48/8 49/23 51/10 51/23 52/11 54/14 56/1 56/18 58/8 65/24 70/16 72/17 75/8 76/25 81/13 81/24 81/25 86/25 87/7 89/1 89/21 89/23 90/3 90/15 91/9 91/25 92/4 92/13 93/18 94/9 94/12 94/15 95/1 95/18 95/22 95/24 96/12 101/24 103/2 104/5 104/19 105/13 106/6 114/18 115/15 116/20 118/20 118/24

**their [91]** 5/14 6/1 6/10 6/10 6/11 6/14 10/1 11/17 12/18 13/21 13/21 21/8 22/24 24/12 25/8 25/14 25/15 36/22 42/7 43/8 43/21 43/23 45/5 45/6 46/9 46/13 46/20 48/24 49/12 52/3 53/11 54/11 58/7 58/11 61/17 61/19 61/20 62/4 62/5 62/21 63/3 64/2 64/10 65/4 66/19 69/8 70/25 72/10 72/19 73/4 74/9 74/10 79/3 79/8 79/9 80/14 83/11 83/11 83/18 83/19 83/20 83/21 84/3 84/19 84/20 85/1 88/23 94/21 97/8 98/1 98/21 100/14 100/15 100/16 100/20 102/6 102/6 105/12 109/13 118/22 127/12 132/18 132/18 133/9 133/19 134/5 137/4 137/12 133/8
**theirs [1]** 17/5
**them [107]** 4/4 5/7 5/8 5/11 5/16 5/20 5/25 6/8 7/5 7/17 8/22 9/20 9/23 12/10 15/19 15/20 17/8 17/9 19/14 23/13 25/2 40/22 42/23 43/7 43/21 43/22 44/18 47/22 48/21 48/22 50/4 52/3 54/8 54/9 54/13 55/9 58/1 58/2 58/10 59/9 59/15 62/3 62/23 63/25 65/20 65/22 66/8 69/19 69/20 71/14 71/17 79/11 79/20 80/16 80/18 84/13 84/20 84/22 84/24 85/4 89/4 91/22 91/24 96/5 96/6 96/7 97/4 98/6 98/21 99/3 99/5 99/9 99/10 99/11 99/12 99/12 99/16 99/19 101/16 102/8 102/12 102/12 102/12 102/15 102/25 103/3 103/4 105/9 105/18 105/18 106/3 106/4 109/13 110/2 115/5 115/14 127/22 128/18 129/1 129/2 133/10 134/12 137/13 137/24 138/2 140/5
**theme [2]** 81/13 81/19
**themselves [3]** 12/11 74/13 110/2
**then [80]** 7/4 10/24 11/24 13/23 15/8 15/20 18/4 18/21 18/24 19/3 20/1 22/11 23/9 24/18 26/10 26/25 28/23 35/10 35/16 36/8 37/5 38/22 38/23 39/8 39/17 40/9 40/12 40/14 41/24 41/25 42/19 43/7 47/17 47/19 49/23 50/3 50/4 52/7 59/16 61/25 62/13 66/14 69/15 71/21 74/19 78/23 81/9 84/1 84/16 84/17 84/20 85/10 88/6 88/22 88/24 89/21 92/3 92/4 93/7 98/9 98/18 98/22 99/13 102/16 103/18 103/23 105/1 105/17 105/18 106/4 108/17 116/19 118/8 123/6 124/19 125/8 125/13 129/1 130/11 139/23
**therapy [1]** 115/20
**there [144]**
**there's [17]** 17/2 25/6 39/6 40/8 40/9 48/10 51/5 51/19 53/8 58/11 70/17 72/25 76/25 98/5 98/5 99/19 124/20
**therefore [2]** 33/7 53/12
**these [75]** 13/17 14/2 18/1 20/22 22/7 23/18 24/10 26/16 27/22 28/3 30/11 30/22 32/9 38/16 39/13 39/19 39/19 40/2 40/5 40/6 40/14 41/5 42/16 43/20 43/24 44/21 45/14 45/15 45/15 45/19 46/1 46/11 46/12 46/14 46/19 47/4 47/13 47/21 48/25 53/22 54/21 55/8 56/10 58/19 59/1 61/7 61/9 61/20 62/5 62/14 64/2 69/11 70/22 70/24 71/7 71/11 72/21

**I**

**these...** [18] 73/10 81/9 85/7 88/22 90/15 96/5 99/21 100/19 100/21 101/1 101/7 101/15 125/5 128/25 132/14 134/2 134/9 139/15

**they** [309]

**they'd** [1] 58/7

**thing** [16] 5/11 9/18 16/5 38/12 60/7 64/3 79/25 96/20 101/3 115/12 117/14 117/16 118/9 125/11 139/14 139/20

**think** [142]

**thinking** [2] 126/11 126/14

**third** [8] 40/7 40/10 40/12 50/5 52/24 93/13 95/10 134/9

**this** [281]

**thoroughly** [1] 22/15

**those** [69] 5/12 5/19 7/3 7/8 15/24 20/1 23/11 30/23 36/6 37/14 39/9 41/12 42/21 48/15 49/12 52/9 53/4 53/5 53/15 54/10 55/12 56/17 57/21 58/9 64/13 65/15 66/14 69/7 72/20 78/18 82/21 85/10 89/16 90/1 90/5 90/5 95/7 95/20 97/8 97/23 102/25 103/7 103/12 104/18 105/23 106/7 107/20 108/6 108/25 109/14 112/3 112/5 112/6 116/8 117/1 119/5 122/9 122/23 123/9 123/25 124/9 130/8 131/9 131/10 131/12 131/19 133/2 137/25 138/3

**though** [7] 25/24 42/7 92/11 108/21 116/6 132/14 134/1

**thought** [16] 4/5 4/20 4/22 4/22 6/13 7/3 7/12 31/21 34/20 34/21 61/14 77/11 78/14 94/16 95/2 115/11

**thousands** [3] 49/18 127/13 127/24

**threat** [7] 18/23 19/4 21/16 23/8 27/17 79/21 83/18

**threatened** [8] 22/4 63/8 63/14 76/14 76/17 85/17 85/23 85/23

**threats** [11] 21/2 22/1 27/16 63/23 70/23 71/7 76/23 79/14 79/22 90/5

**three** [38] 19/16 19/24 19/25 35/11 35/17 39/8 39/13 39/19 40/2 41/6 42/5 42/16 45/9 46/11 46/14 47/21 48/16 53/5 53/22 54/21 55/8 55/14 63/10 75/17 93/8 93/12 97/21 97/25 99/3 99/5 99/22 100/19 101/1 102/21 103/25 105/12 130/3 132/3

**through** [45] 6/9 11/3 14/13 14/16 18/8 20/5 20/18 21/20 22/22 22/24 26/5 26/22 27/11 36/22 41/1 55/3 57/9 60/11 70/21 73/15 74/12 74/13 76/21 76/21 76/21 79/4 84/18 84/19 90/5 101/12 103/5 103/7 103/23 105/11 108/17 108/25 122/25 123/2 123/23 125/2 125/9 126/14 132/6 132/19 135/24

**throughout** [1] 121/19

**throw** [1] 29/20

**Thus** [1] 32/20

**tied** [2] 25/5 94/2

**time** [66] 5/15 5/25 6/5 6/7 6/9 6/14 6/23 9/15 11/17 13/22 14/3 14/7 14/20 14/22 15/8 15/19 16/14 16/17 19/15 26/24 27/7 28/8 29/17 29/17 30/5 34/1 34/15 34/16

**I**

45/11 47/22 49/4 55/13 59/25 70/19 70/19 70/20 70/24 74/15 74/17 75/3 75/4 76/21 76/22 78/21 81/14 82/9 91/13 91/16 102/19 102/21 107/21 108/2 108/4 108/21 113/13 114/17 115/3 115/23 116/1 116/7 117/17 117/19 121/25 122/3 135/15 139/12

**timeline** [15] 38/23 49/24 50/2 50/13 50/23 51/5 55/19 55/21 66/3 66/5 66/12 66/20 77/7 80/2 82/13

**times** [4] 29/17 78/2 95/7 127/1

**timing** [1] 49/11

**title** [2] 76/16 77/1

**today** [16] 6/23 9/2 10/14 14/18 14/25 50/7 50/14 101/24 102/24 104/11 107/17 108/12 111/5 139/25

**today's** [1] 108/16

**together** [6] 66/3 105/14 124/19 124/23 136/15 139/7

**told** [10] 8/21 12/19 18/19 23/12 25/7 98/20 106/16 109/11 112/3 123/11

**toll** [2] 2/16 55/8

**tomorrow** [27] 5/8 6/21 6/24 7/1 7/7 7/13 9/23 9/23 14/19 14/25 15/25 103/4 103/14 103/24 103/25 104/22 104/25 105/14 107/2 107/4 108/15 122/17 122/25 139/11 140/1 140/5 140/6

**tomorrow's** [1] 108/16

**ton** [1] 70/17

**too** [5] 31/17 32/8 117/18 127/9 127/16

**took** [4] 23/23 115/1 129/10 133/4

**top** [4] 16/11 32/14 47/16 130/18

**topic** [2] 21/10 37/24

**topics** [1] 73/10

**TORT** [1] 1/4

**totally** [1] 102/2

**touch** [3] 4/11 108/23 123/4

**towards** [2] 34/5 121/22

**trade** [1] 86/24

**traditionally** [1] 72/12

**trafficking** [3] 75/24 79/18 92/7

**trail** [1] 58/25

**transcript** [10] 16/22 17/21 18/16 20/23 21/8 24/22 25/23 28/21 39/11 100/5

**transcription** [1] 140/19

**translated** [1] 118/23

**translation** [1] 118/24

**translations** [1] 119/1

**transparent** [3] 60/14 60/19 69/24

**treatment** [1] 65/23

**trial** [16] 1/8 14/4 23/21 25/21 42/8 43/10 43/11 62/19 74/19 80/20 87/23 97/12 101/3 101/5 109/3 126/20

**trials** [1] 122/19

**tried** [2] 10/1 29/19

**tries** [1] 53/24

**trouble** [3] 118/12 118/15 118/25

**troubling** [1] 29/8

**Trujillo** [2] 73/17 73/18

**trustworthy** [1] 9/11

**truth** [1] 109/5

**try** [11] 4/17 9/20 16/6 69/19 81/5 102/11 107/24 112/3 119/2 119/3 123/1

**trying** [16] 5/24 5/25 26/2 34/4 46/23 48/2 51/23 57/21 59/11 95/6 95/8 95/10 105/5 115/24 116/20 123/19

**Tuesday** [3] 103/2 109/3 140/7

**turn** [3] 47/17 61/22 129/13

**turning** [1] 60/5

**TVPA** [1] 39/16

**two** [36] 6/6 12/6 14/25 24/16 24/22 26/4 27/13 31/24 39/6 45/14 47/20 49/15 50/4 66/2 66/5 66/9 66/24 67/9 69/6 72/2 78/15 82/21 83/4 85/15 88/18 89/1 91/2 91/15 93/13 98/15 102/21 104/24 105/11 110/21 115/7 130/3

**tying** [2] 29/7 32/9

**type** [1] 16/8

**U**

**U.S** [11] 67/8 70/24 71/4 78/13 78/16 80/9 81/6 81/9 81/12 81/16 81/24

**U.S.'** [1] 128/17

**Uh** [3] 117/25 118/11 119/17

**Uh-huh** [3] 117/25 118/11 119/17

**uncalled** [1] 31/14

**under** [18] 18/22 21/2 27/16 42/13 44/12 58/16 61/24 67/5 70/23 71/3 72/17 78/13 81/9 81/23 82/8 83/7 135/25 135/25

**understand** [39] 14/8 14/19 14/24 27/14 27/19 31/19 31/19 32/1 37/21 51/17 51/24 52/12 55/15 58/11 59/2 59/11 60/9 64/12 64/14 65/19 65/24 68/8 91/19 91/20 94/3 115/16 115/25 116/20 117/17 118/18 123/14 127/4 131/2 133/14 133/21 133/22 133/25 134/15 134/23

**understandable** [1] 116/5

**understanding** [10] 37/23 44/15 56/2 58/10 58/14 59/3 61/16 77/25 118/12 137/12

**understands** [1] 79/17

**understood** [8] 27/1 27/7 32/11 52/5 59/10 117/20 128/8 138/4

**undisputed** [1] 65/10

**unfortunate** [2] 48/16 105/21

**Unfortunately** [1] 123/10

**unique** [2] 11/21 41/4

**unit** [1] 75/24

**UNITED** [6] 1/1 1/9 70/13 71/2 130/24 136/1

**United States** [4] 70/13 71/2 130/24 136/1

**University** [1] 117/21

**unjust** [1] 62/11

**unjustified** [1] 137/20

**unless** [5] 45/22 124/3 124/20 129/14 132/13

**unlikely** [1] 104/12

**unnecessary** [1] 8/8

**unrealistic** [2] 104/5 104/8

**until** [15] 5/8 6/20 7/1 42/1 57/25 70/13 87/22 103/19 122/21 123/8 123/12

**up** [30] 5/20 7/4 9/21 11/3 12/9 15/21 16/21 23/19 24/1 27/12 28/7 28/17 32/15 34/9 34/10 44/24 67/2 70/13 84/20 92/9 96/5 101/3 101/13 112/11 127/15 128/5 130/1 135/22 135/23 140/7

**upon** [10] 11/22 32/23 41/14 46/8 71/24 74/16 87/19 88/10 108/23 113/16

**upper** [1] 6/18

# U

**us [42]** 2/16 4/15 9/22 11/14 14/1 14/13 14/21 15/5 15/6 16/12 25/7 28/1 46/24 49/1 50/14 58/11 59/19 75/8 85/6 95/12 96/4 99/21 100/17 101/17 105/4 107/17 108/2 111/5 112/3 112/4 112/16 114/16 117/2 119/15 119/21 120/3 121/10 121/19 124/3 124/11 135/20 139/21
**use [18]** 17/3 19/6 19/7 20/13 22/20 22/21 24/10 25/15 25/25 26/6 30/19 95/20 97/1 102/19 102/20 128/15 129/3 136/5
**used [11]** 18/3 20/9 22/1 27/1 27/7 27/14 27/25 33/7 65/8 95/15 126/3
**using [1]** 23/18
**usually [1]** 99/7
**usurps [1]** 62/16

# V

**VAHLSING [2]** 1/16 109/23
**VALENTIN [2]** 110/17 110/18
**VALENTIN-DIAZ [2]** 110/17 110/18
**valid [1]** 74/20
**value [1]** 92/7
**variety [1]** 12/21
**various [4]** 29/17 71/1 89/15 126/15
**venire [1]** 104/24
**venires [1]** 105/7
**verdict [13]** 39/24 40/2 40/15 40/16 41/7 45/23 45/24 45/25 48/8 49/2 49/4 132/4 132/24
**verify [1]** 108/3
**version [1]** 93/12
**very [24]** 10/4 10/13 11/25 12/13 13/1 13/3 20/13 25/24 29/8 40/1 45/11 55/18 62/6 75/25 77/21 78/11 83/18 95/21 104/12 109/17 113/15 114/19 115/15 132/7
**viable [2]** 18/23 27/16
**victim [1]** 45/20
**victim's [7]** 43/10 43/11 43/20 45/10 45/13 47/5 49/6
**victims [1]** 67/20
**VICTORIA [3]** 1/11 109/22 110/11
**video [1]** 11/19
**view [5]** 4/9 10/18 97/22 101/7 133/1
**views [3]** 108/22 123/3 123/5
**violate [2]** 34/17 42/8
**violates [2]** 32/18 33/10
**violating [1]** 81/12
**violence [9]** 21/16 27/4 56/13 64/22 64/23 64/25 65/11 76/23 126/5
**violent [8]** 49/17 55/23 56/12 90/1 90/6 127/12 127/21 127/23
**vmestrada [1]** 1/15
**voir [1]** 6/22
**volume [5]** 1/6 18/7 20/4 20/18 21/3
**voluntarily [1]** 79/11

# W

**wait [1]** 36/7
**waiting [1]** 4/14
**waiver [1]** 66/10
**want [64]** 4/7 5/6 6/11 7/25 7/25 8/4 8/7 10/16 10/24 15/17 17/3 20/1 26/14 26/19 36/5 41/25 42/21 46/7 48/9 49/22 52/14

52/17 53/1 53/21 57/16 61/6 64/13 64/18 65/15 65/23 69/4 69/10 74/22 75/14 76/8 76/19 76/20 83/2 84/10 84/22 85/15 87/14 91/20 92/10 93/15 93/18 102/12 102/17 103/3 103/3 106/3 107/4 108/2 121/14 121/21 122/5 127/14 127/16 128/14 128/22 132/24 133/24 134/16 137/13
**wanted [11]** 4/3 11/12 13/25 85/9 93/13 100/12 101/13 101/14 131/18 132/2 137/2
**wants [10]** 24/17 25/10 43/13 48/8 49/3 66/11 82/24 90/15 95/12 136/6
**was [190]**
**Washington [9]** 1/19 2/11 2/14 44/13 99/9 109/24 111/8 129/4 133/22
**wasn't [3]** 4/8 32/6 120/15
**waste [1]** 9/15
**way [26]** 8/3 13/11 15/12 16/8 25/10 35/5 48/3 55/3 57/3 70/21 72/13 76/21 82/7 105/3 106/15 106/15 106/18 124/3 127/15 129/24 130/6 135/3 135/12 135/23 136/8 137/3
**ways [1]** 26/20
**we [494]**
**we'd [1]** 57/10
**we're [1]** 103/18
**weapons [3]** 20/10 27/1 27/8
**week [10]** 14/25 25/8 109/3 115/7 118/4 122/16 122/16 122/17 122/19 122/21
**weekly [1]** 126/2
**weeks [11]** 7/17 7/20 14/5 14/9 14/11 15/1 15/4 15/5 15/16 104/24 120/18
**welcome [4]** 11/10 28/18 107/16 119/19
**well [50]** 6/1 6/15 7/16 7/19 7/23 17/21 24/6 31/11 32/8 34/2 34/21 42/25 43/22 46/4 51/21 52/3 54/2 54/22 55/2 65/16 70/4 71/16 71/22 73/8 76/24 77/19 81/8 82/19 87/9 88/8 90/16 91/7 97/11 102/5 103/1 103/18 104/9 104/23 105/4 105/10 105/25 115/18 116/17 126/25 128/18 130/13 130/23 133/25 136/25 139/1
**wells [5]** 3/11 3/13 140/21 140/21 140/23
**went [7]** 8/16 8/19 14/15 18/24 18/25 74/9 90/24
**were [142]**
**weren't [5]** 23/18 44/17 46/16 99/14 133/7
**West [5]** 1/3 1/14 2/20 109/20 110/10
**what [150]**
**what's [18]** 17/6 18/21 20/21 21/5 24/22 26/3 31/2 34/23 58/8 63/4 72/10 85/12 86/9 88/13 92/4 105/2 105/4 125/2
**whatever [11]** 4/20 41/24 50/6 59/15 72/18 92/9 95/12 96/3 102/9 103/24 107/8
**whatsoever [1]** 29/21
**when [42]** 8/16 8/19 8/21 9/23 9/23 23/5 25/2 25/11 25/11 26/24 28/6 31/24 39/23 39/24 41/21 48/7 49/18 55/6 56/12 58/18 59/1 64/8 65/8 66/25 70/22 71/6 74/2 75/4 77/3 81/14 82/14 96/4 97/24 108/8 115/12 118/13 118/17 119/12 127/12 127/23 133/17 138/10
**whenever [1]** 140/3

**where [32]** 4/7 7/24 20/25 29/12 39/4 40/25 42/9 44/12 44/13 44/13 45/20 46/10 47/18 50/18 54/12 54/21 55/22 57/10 57/20 59/6 60/14 62/3 70/7 93/16 99/9 111/17 124/5 127/7 133/3 133/3 133/22 134/10 135/17
**whether [38]** 4/5 4/6 5/13 6/22 8/4 9/24 11/25 15/22 16/12 30/17 41/19 51/15 51/22 51/24 56/11 60/23 61/14 67/2 70/17 70/23 71/5 72/15 74/20 75/2 78/12 81/22 87/13 91/14 91/15 91/25 94/25 95/16 101/14 102/16 108/19 120/16 126/19 135/8
**which [71]** 7/17 9/19 11/11 12/2 17/22 18/1 18/13 19/4 19/25 20/3 21/9 21/14 22/8 22/22 26/2 26/13 26/25 27/5 27/7 27/13 27/24 29/20 30/11 30/17 31/8 31/12 33/5 33/15 33/20 33/24 34/6 34/10 36/17 37/9 37/14 39/16 40/9 42/8 47/10 48/18 49/16 50/13 50/14 50/20 52/9 56/13 60/7 60/8 64/17 65/7 66/2 70/1 72/4 77/25 80/3 82/18 83/14 84/2 87/15 87/19 94/23 111/16 122/16 123/2 125/7 126/17 126/23 130/6 130/12 137/25 138/15
**whichever [1]** 8/3
**while [7]** 40/25 75/21 78/20 84/23 94/6 116/9 128/9
**White [1]** 113/23
**who [68]** 5/8 5/19 6/15 7/8 7/19 10/9 12/7 12/17 13/19 15/24 16/1 21/24 21/24 22/3 22/8 22/9 23/11 23/22 40/3 40/13 44/25 45/10 45/14 45/19 46/1 46/12 49/5 55/14 57/13 63/12 63/13 65/10 69/15 71/22 72/22 73/3 73/7 73/8 73/17 74/13 75/4 79/10 79/16 82/13 97/25 98/7 98/13 99/22 100/19 101/16 101/22 105/23 105/25 106/7 107/20 108/1 108/25 109/14 110/1 111/18 112/3 112/6 121/17 122/11 123/7 123/9 123/25 124/9
**whoever [2]** 5/22 43/13
**whole [9]** 19/13 20/6 38/12 58/11 79/5 84/2 85/16 91/23 131/14
**whom [5]** 21/23 23/4 23/8 48/17 109/23
**why [29]** 9/20 14/21 15/5 17/14 24/9 28/22 36/7 47/2 49/7 49/7 54/7 56/9 60/9 62/5 62/23 65/24 73/24 81/9 81/10 83/13 91/20 93/21 104/19 105/15 105/5 105/15 115/17 124/16 124/23
**WICHMANN [2]** 3/1 110/12
**widely [2]** 126/12 127/2
**widespread [2]** 27/4
**wife [5]** 43/12 47/20 48/18 132/25 134/3
**will [161]**
**WILLIAM [5]** 2/2 3/1 52/20 55/6 110/5
**willing [2]** 108/12 112/21
**willingness [2]** 107/19 124/12
**wise [1]** 115/2
**withdraw [2]** 96/25 97/3
**withhold [1]** 19/8
**withholding [1]** 19/12
**within [3]** 11/21 73/7 96/13
**without [10]** 13/10 22/25 26/15 27/10 29/1 36/19 80/1 101/22 103/23 128/15
**witness [23]** 19/21 20/12 21/20 25/3 25/8 25/15 26/12 29/22 29/25 30/8 39/21

## W

**witness... [12]**  42/8 45/13 61/20 63/12 75/18 75/19 75/20 76/2 80/20 89/12 89/23 92/25
**witness' [1]**  89/12
**witnesses [21]**  36/23 45/14 45/19 49/5 63/11 65/2 71/12 71/15 71/22 72/18 72/20 72/21 72/22 73/6 73/16 79/6 81/25 87/10 118/21 132/15 133/8
**Wolf [1]**  39/18
**won't [5]**  42/2 45/3 92/10 112/18 112/19
**wondering [1]**  6/13
**word [1]**  14/23
**wording [1]**  86/15
**words [2]**  11/8 95/20
**work [7]**  8/9 105/5 108/17 115/6 115/7 115/8 115/23
**worked [3]**  21/24 116/23 117/1
**workers [5]**  50/24 51/1 51/3 51/4 83/19
**working [2]**  103/10 109/14
**works [1]**  8/3
**world [1]**  99/18
**worth [4]**  4/5 6/7 21/18 77/12
**would [76]**  5/11 9/6 14/21 15/6 15/8 18/19 18/19 21/15 22/2 22/4 22/4 24/12 24/12 29/9 29/10 32/4 38/3 41/23 42/8 43/19 43/22 45/4 48/19 48/25 49/7 49/7 49/11 50/8 51/3 54/19 55/8 57/11 57/23 58/10 58/10 61/2 61/22 62/22 64/3 64/19 66/1 66/19 68/24 73/12 74/2 74/7 78/9 79/21 87/25 88/6 88/10 89/19 90/1 96/11 96/13 102/18 103/21 103/23 104/1 104/8 104/14 104/22 112/4 112/16 116/18 117/12 118/19 120/17 120/20 122/4 124/22 127/21 128/6 130/5 136/14 139/22
**wouldn't [4]**  53/24 54/7 67/3 73/24
**write [1]**  135/14
**wrong [2]**  62/23 106/15
**wrongful [2]**  53/18 54/12
**wrs3 [1]**  2/4
**wwichmann [1]**  3/3
**wyatt [3]**  1/17 1/21 111/1

## Y

**yeah [12]**  8/14 28/13 28/16 47/4 117/14 117/16 117/18 118/18 119/3 119/6 119/7 119/10
**year [7]**  53/19 53/24 53/25 54/1 54/2 121/14 121/23
**years [6]**  36/17 45/11 54/3 54/3 95/7 132/16
**yes [101]**  4/19 5/23 7/6 7/11 9/14 9/16 9/17 10/22 17/18 18/9 21/12 24/7 26/9 27/6 27/6 27/20 27/20 28/21 32/3 34/13 36/3 38/18 46/25 47/2 52/22 54/16 56/25 65/21 69/14 69/15 71/13 71/16 72/22 74/14 74/15 75/13 78/15 83/2 84/9 84/14 86/20 89/5 96/18 97/17 98/17 99/1 99/24 103/17 105/20 106/10 107/5 107/8 112/23 113/7 113/11 113/14 113/21 114/12 114/23 116/10 116/24 116/25 117/3 117/23 117/24 117/25 118/3 118/13 118/17 119/11 119/17 119/17 119/23 120/4 120/7 120/12 120/19 121/5 121/12 122/5 124/25 125/17 125/19

126/10 128/11 128/15 128/20 129/13 131/17 131/22 132/8 132/10 133/13 134/23 135/19 137/7 137/10 138/19 138/21 139/19 140/8
**yesterday [24]**  4/4 9/19 10/8 14/15 14/18 15/25 19/11 23/15 29/3 29/8 31/12 31/15 31/20 50/3 57/18 58/4 58/9 85/24 96/4 101/14 101/23 104/10 106/16 108/11
**yesterday's [2]**  106/21 108/15
**yet [11]**  41/22 50/5 52/10 57/12 65/25 84/13 88/4 93/1 103/5 123/12 138/25
**York [8]**  1/24 44/4 44/12 44/17 48/3 110/22 111/17 127/1
**Yorker [1]**  127/3
**you [595]**
**you'd [2]**  4/15 38/3
**you're [1]**  127/19
**You've [1]**  117/21
**young [1]**  45/11
**your [215]**
**yourself [1]**  108/8
**yourselves [1]**  4/7

## Z

**ZHADANOVSKIY [1]**  1/12
**zone [1]**  50/17