UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-MD-01916-MARRA

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION
_____/

This Document Relates to:

**ATS ACTIONS:**

07-60821-CIV-MARRA (Carrizosa Action)
08-80421-CIV-MARRA (NJ Action)
08-80465-CIV-MARRA (Does 1-144/Perez 1-795 Action)
08-80480-CIV-MARRA (Manjarres Action)
08-80508-CIV-MARRA (Valencia Action)
10-60573-CIV-MARRA (Florida Montes Action)
17-80535-CIV-MARRA (Ohio Montes Action)
18-80800-CIV-MARRA (Does 1-144/Perez 1-795 Action)
18-80248-CIV-MARRA (NJ Action)
_____/

**NON-WOLF PLAINTIFFS' MOTION TO LIMIT DEFENDANT'S EXPERTS' TESTIMONY UNDER THIS COURT'S PRIOR RULINGS**

This Court has repeatedly affirmed that it will apply the law even-handedly and hold each sides' evidence to the same standards. Plaintiffs have no doubt that the Court has made every effort to do so. Plaintiffs ask the Court to do so again.

The Court has precluded *Plaintiffs*' experts from testifying as to certain topics because it found testimony on those topics would not help the jury. It should apply those rulings equally to *Chiquita's* experts. Chiquita wants to elicit testimony from it rebuttal experts David Gaddis, Osvaldo Cuadrado and Prof. Jorge Restrepo on topics that this Courts precluded Plaintiffs' experts from testifying about. It would be unfair to exclude Plaintiffs' experts' opinions because the topics are unhelpful

and then permit Chiquita's experts to opine on the very same topics.

For example, Prof. Restrepo opines that Chiquita did not cause the abuses at issue, Ex. 1 ¶¶ 12-13, Opinion V, ¶ 61, and that Chiquita's payments to the AUC were not voluntary. *Id*. Opinion X. But the Court already precluded testimony of exactly this kind; it excluded Prof. Kaplan's opinion that Chiquita helped the AUC harm Plaintiffs' decedents, and Profs. Karl and Kaplan's opinions that Chiquita and the AUC shared interests, because the jury is capable of making those assessments. DE 3627 at 3, 5; DE 3629 at 5. The Court should apply those rulings here.

Chiquita also seeks to elicit from Prof. Restrepo an undisclosed opinion challenging that the *AUC* committed these murders. Undisclosed opinions should not be permitted.

Plaintiffs previously raised most of these issues with their motion to strike Chiquita's rebuttal experts' opinions because they do not rebut Plaintiffs' expert's testimony. DE 3734, DE 3741. The Court denied that motion, but its Order only addressed Plaintiffs' argument that Chiquita's expert testimony exceeded the proper scope of rebuttal; it did not hold that its prior rulings limiting Plaintiffs' experts do not apply to Chiquita's experts. DE 3747. If, however, Plaintiffs are mistaken about that, they respectfully seek reconsideration so that the same evidentiary rules will apply to both sides.

## ARGUMENT

On Chiquita's motion, the Court excluded all of Plaintiffs' expert Prof. Karl's opinions, *see* DE 3629, and significantly limited Prof. Kaplan's, DE 3627, ruling that many would not help the jury. The Court found that *types* of opinions – that is,

1

certain topics – are inadmissible as unhelpful. Under the Court's analysis, many of Mr. Gaddis, Mr. Cuadrado and Prof. Restrepo's opinions should likewise be excluded as unhelpful.[1]

The Court also ruled that Prof. Kaplan "may not simply convey to the jury hearsay evidence," *id.* at 3, and that experts "may not merely be a conduit to bring hearsay before the jury." DE 3616 at 5. Likewise, Prof. Restrepo cannot simply repeat hearsay.

## I. The Court has not ruled on whether Chiquita's experts will be held to the same standards as Plaintiffs' experts.

Plaintiffs previously moved to strike Defendant's rebuttal experts' testimony on two grounds: first, that their testimony did not rebut Plaintiff's experts' trial testimony and second, that much of their testimony is cumulative or unhelpful to the jury under this Court's rulings limiting Plaintiff's experts. The Court denied the motion for a substantive and a procedural reason. DE 3747. Both apply only to the rebuttal issue; neither applies here.

On the merits, the Court declined to exclude Chiquita's experts because their testimony will still "counter evidence presented in Plaintiffs cases in chief." DE 3747. That has nothing to do with whether Chiquita's experts' testimony will be held to the same standards as Plaintiffs' experts.

The Court also stated without elaboration that Plaintiffs' motion was

---

[1] Chiquita has claimed that the Court found Prof. Kaplan's opinions to be unhelpful because his methodology was flawed, not because the topics themselves were unhelpful. Transcript Vol. 18 at 244:13-246:1 (5/21/24). As shown below, that misstates the Court's prior rulings.

2

"untimely." *Id*. But even if Plaintiffs' argument that rebuttal experts may only rebut expert testimony came too late, Plaintiffs' argument that the Court must apply uniform standards to both parties' experts did not. "[N]othing prohibits [a court] from hearing a *Daubert* motion during trial." *Club Car, Inc. v. Club Car (Quebec) Imp., Inc.*, 362 F.3d 775, 780 (11th Cir. 2004). Virtually every morning, during breaks, and at lunch, the Court has heard argument about what evidence is admissible *that day*, including arguments that the Court should treat one side's evidence the same way it previously treated the other's. Plaintiffs raised these issues over a week ago; there is no surprise to Chiquita. It would be ironic to say the least if the Court were to refuse to consider whether to apply the same evidentiary standards to both sides based on a new procedural bar that has not been applied to both sides.

Chiquita has argued that the Court has already resolved these issues. But the Court stated: "Well, how are they resolved, when this issue just came up after I made my *Daubert* rulings? I mean, how were [Plaintiffs] supposed to raise the issue until I struck their witnesses?" Transcript Vol. 18 at 231:23-232:1.[2]

---

[2] Chiquita's suggestion that Plaintiffs waived these arguments with respect to Prof. Restrepo, Transcript Vol. 18 at 243:11-20, fails for the same reason. Moreover, Plaintiffs did not originally challenge Prof. Restrepo's testimony because it rebutted opinions by Profs. Karl and Kaplan which Plaintiffs expected to be admitted, and because Plaintiffs took a broader view of what expert testimony might help the jury than the Court later endorsed. Chiquita oddly claims this was just a "poor strategic choice," Transcript Vol. 18 at 243:11-20, but the only "choice" was consistency, not strategy. Plaintiffs declined to ask the Court to hold Chiquita's experts to a different standard than Plaintiffs were advocating for their own experts. While a foolish consistency may sometimes be the hobgoblin of little minds, in court it is a virtue.

3

## II. The Court should exclude Mr. Gaddis because, under this Court's prior rulings, his testimony will not assist the jury.

Mr. Gaddis, a former DEA official, offered five opinions; the Court has already struck three: opinions regarding "the AUC's annual income, the significance of payments by Chiquita to the AUC's overall income," and "Chiquita's efforts to prevent drug smuggling." DE 3616 at 13. Under this Court's rulings excluding Plaintiffs' expert's testimony, the remaining two will not assist the jury.

First, Chiquita seeks to elicit Mr. Gaddis's opinion that "drug traffickers, such as the AUC, victimized companies with commercial transportation operations by smuggling drugs and illegal contraband in cargo." Ex. 2 (Gaddis Report) ¶ 4. But the Court struck Prof. Kaplan's opinion "that Chiquita provided in-kind support and facilitated the AUC's … drug trafficking operations." DE 3627 at 5. The Court held that "[i]f there is admissible evidence to indicate … that Chiquita allowed drugs to be smuggled out of the Turbo port," a jury "can reasonably assess" that evidence. *Id.*

That holding precludes Mr. Gaddis' opinion. Indeed, Prof. Kaplan's testimony would have been *more* on point, since Mr. Gaddis' opinion is not about the AUC or Chiquita's acts at the Turbo port; it is a general statement about how "drug traffickers, such as the AUC" sometimes operated. If a jury does not need expert testimony that directly opines on whether Chiquita allowed drugs to be smuggled through its port, it certainly does not need expert testimony that merely *implies* that Chiquita may not have done so. Chiquita has already put on testimony of its

---

Chiquita's notion that because Plaintiffs tried to make consistent arguments, the Court need not treat the parties consistently, is nonsense.

4

alleged efforts to interdict drugs at its port. The "competing facts both supporting and refuting Chiquita's knowing involvement in these matters" is well within the capability of the jury to assess. DE 3627 at 5.

Similarly, Mr. Gaddis's opinions regarding the AUC's involvement in the drug trade generally should be excluded. Mr. Gaddis offered these opinions primarily in support of two other of his opinions: the significance of Chiquita's contributions to the AUC, and the AUC's annual income from the drug trade, both of which the Court struck. DE 3627 at 5.

Moreover, the Court struck most of Prof. Kaplan's opinions relating to the AUC's drug trafficking because the jury is capable of drawing its own conclusions. *Id*. at 6.[3] And Prof. Kaplan did not voluntarily offer any such opinion. He did not discuss drug trafficking in his direct examination; that was limited to the likelihood that the AUC murdered the bellwether decedents, and the general nature of the AUC's brutal war strategy. To be sure, *Chiquita* chose to elicit some drug trafficking testimony on *their* cross-examination that the Court had excluded – on Chiquita's motion – and that far exceeded the scope of Prof. Kaplan's direct. But that does not

---

[3] This includes his opinion "that Chiquita provided in-kind support and facilitated the AUC's arms and drug trafficking operations" and that "was not a group of large drug kingpins throughout its existence, and instead held ambivalence toward coc[a]," *Id*. at 6. As relevant to drugs, the Court allowed in only Prof. Kaplan's opinion that the U.S. "designated the AUC as a Foreign Terrorist Organization ("FTO") only for its wanton harm of unarmed civilians, not because of the AUC's participation in drug trafficking," *id*. at 7 – which Mr. Gaddis does not address – and that the "AUC was not simply a criminal outfit but a hybrid of self-defense, criminal/drug-trafficking, terrorist, and ideological aspects," *id*. at 6. Mr. Gaddis does not disagree with Prof. Kaplan on this point; indeed, as the Court noted, Prof. Kaplan agrees that "The AUC 'was unquestionably involved in the drug trade.'" *Id*.

5

open the door for Chiquita to elicit testimony from its own experts that are inadmissible under the Court's prior rulings.[4] Indeed, while the Court allowed redirect on the specific issues Chiquita raised on cross, it held this did *not* open the door even for *Prof. Kaplan* to testify to *his* full opinion about drug trafficking. May 15, 2024, Trial Transcript at 79:24-80:3 ("I am not going to find that they have opened the door for the professor to go into … all of his opinions about drugs and the AUC."); *see also* 24:11-25:8. That remained struck.

The Court should apply that ruling here. Since Chiquita's cross did not open the door for Plaintiffs, it should not open the door for testimony for Chiquita on the same topics the Court excluded. Mr. Gaddis should not be permitted to offer opinion testimony when Prof. Kaplan was precluded from providing his own full opinion.

### III. The Court should exclude Mr. Cuadrado's testimony as unhelpful.

Osvaldo Cuadrado Simanca, a former union representative and Chiquita employee, opines on the relationship between the union, banana workers, Chiquita and the AUC. The Court excluded Prof. Karl's testimony on this topic. She asserted that Chiquita's relationship with the AUC resulted in the "containment of labor," but the Court held that the jury can assess for itself whether AUC violence against labor rights activists would be in Chiquita's interests. DE 3629 at 5. So too here.

### IV. The Court should limit Prof. Restrepo's testimony.

#### A. Prof. Restrepo cannot opine on whether the AUC committed

---

[4] Plaintiffs objected to Chiquita's cross-examination about drug trafficking as outside the scope of Prof. Kaplan's direct examination. May 15, 2024, Trial Transcript at 10:3-11:3, 26:23-27:5; *see also* May 14, 2024, Trial Transcript at 205:13-20.

6

> **these killings because he did not state any such opinion in his expert report.**

This Court has recently affirmed, regarding Mr. Flemmons, that an expert cannot present an "undisclosed opinion." DE 3757. Neither can Prof. Restrepo.

Chiquita has indicated that Prof. Restrepo "will opine about whether the *AUC* is responsible for the deaths at issue." Transcript Vol. 18 at 245:9-10 (emphasis added). But his report did *not* opine about that question. And, at his deposition, he disclaimed that he had done any such analysis:

> Q. Did counsel for Chiquita provide you with any documents, other than the reports of Terry Karl and Oliver Kaplan?
>
> A. Yes, I recall that Attorney Michael Chioffi sent me an e-mail, with other documents, that make reference to -- as far as I can recall, make reference to a list that referenced victims of violence, in Columbia, **but I didn't use that document for this report, nor did I read it in detail**.

Ex. 3 (Restrepo Dep.) at 16:17-25 (bold added). Just like Mr. Flemmons, Prof. Restrepo cannot offer a new opinion now.

### B.     Much of Prof. Restrepo's testimony will not help the jury.

The Court should strike the following opinions by Prof. Restrepo because, under prior rulings, they will not help the jury and for similar reasons.

#### 1.     The Court should exclude opinions about whether Chiquita caused Plaintiffs' decedents' murders.

**Opinion in Paragraph 12: "[I]t is not possible to assert without further material demonstration that there is a [causal] link between a particular source of funding of the AUC to the occurrence of a particular event or to a series of events."**

Much of Prof. Restrepo's Opinion I – on the lack of centralized control and resources within the AUC – is a proper topic. But under this Court's prior rulings,

7

the Opinion in paragraph 12 would not assist the jury.

The Court excluded Prof. Kaplan's opinion that Chiquita helped the AUC harm the Plaintiffs' decedents, on grounds that the jury is capable of making that assessment based on the evidence presented. DE 3627 at 5. The same analysis applies here. Moreover, this opinion could only confuse the jury because it essentially asserts that Plaintiffs cannot show but-for causation, but this Court has held Plaintiffs need *not* show but-for causation. DE 3238 at 76-77.

**Opinion in Paragraph 13: "[I]t is also not likely that a particular source of funding will be able to determine the way the AUC were planning, directing, coordinating, commanding and controlling its actions, since such determination would require an operational mechanism like the stated but non-existing hierarchical structure or by an also non existing strong leadership."**

This opinion should be stricken for the same reasons as paragraph 12. In addition, Plaintiffs have not argued that Chiquita's payments in Urabá and Magdalena affected the way the AUC acted nationwide, nor is that relevant.

**Opinion in Par. 32: "AUC violence was not determined by non-narcotics funding."**

This too could only confuse the jury by asserting that Plaintiffs cannot show but-for causation, when this Court held Plaintiffs need *not* show but-for causation. DE 3238 at 76-77. It also is inadmissible as noted regarding Opinion II, below.

**Opinion in Paragraph 61: "[I]t is wrong to assert that Chiquita payments to the AUC after 1997 explained the dynamics of the homicide rate, and is also wrong to assert that these can be tied to some of the cases of homicide."**

Prof. Restrepo may testify as to Opinion XI itself, "[t]he dynamics of homicidal violence in Magdalena and Urabá." Ex. 1 (Restrepo report) at 21. But he

8

*cannot* testify about whether "Chiquita payments to the AUC after 1997 explained the dynamics of the homicide rate" or "can be tied" to specific murders. Opinion about whether Chiquita *caused* the violence should be excluded.

### 2. The Court should exclude opinion about whether payments were voluntary.

**Opinion X (Paragraph 53-59): "W[]ere payments to the AUC voluntary contributions or extortion payments?"**

In response to Plaintiffs' experts' opinions that Chiquita's payments to the paramilitaries "were voluntary and part of an alliance of interest," Prof. Restrepo opines that, as a *general matter*, paramilitaries "extract[ed] income from every potential source" through extortion. Ex. 1 (Restrepo report) at 19, ¶¶ 53 and n. 35, 58. The Court held that the Generals could not testify that "citizens and businesses had no alternative but to give in to the demands of the AUC. That is not a matter which is beyond the capability of the average juror to determine based on all the evidence presented in the case." DE 3619 at 4.

Prof. Restrepo also should not be allowed to opine that *Chiquita*'s payments were involuntary, because his report did not address or review evidence about the nature of *Chiquita*'s payments. DE 3757 (excluding "undisclosed opinion"). And such testimony impermissibly "opin[es] about a party's motives." DE 3629 at 4.

Moreover, the Court excluded Prof. Karl and Prof. Kaplan's testimony on this topic. It held that "Professor Karl's opinion that Chiquita had shared interests with the paramilitaries will not be helpful" because the jury can assess this for itself. DE 3629 at 5. The Court held likewise with respect to Prof. Kaplan: "The jury is

9

perfectly capable of evaluating the evidence presented on Chiquita's interactions with the AUC and determine for itself whether it endorsed the AUC's war strategy." DE 3627 at 3.

The Court also excluded Prof. Kaplan's testimony about whether Chiquita supported the AUC voluntarily as beyond his expertise. DE 3627 at 7. Chiquita has not shown that Prof. Restrepo has any greater expertise on whether Chiquita's payments were voluntary than Prof. Kaplan. He should not be permitted to opine on this key issue when he has no expertise or evidentiary basis for doing so. The Court's prior rulings equally exclude Prof. Restrepo's Opinion X.

### 3. The Court should exclude opinion about the AUC's involvement in the drug trade.

**Opinion II (Paragraphs 17-21): "On the late involvement of the paramilitaries in narcotics production and trafficking activities: The groups that became part of the AUC were all closely involved in narcotics trafficking. Income from drug trafficking was the key determinant for its expansion, its violence and regional presence."**

As noted above, the Court excluded Prof. Kaplan's opinions on these matters. It did not permit him to opine that while the AUC was "involved in the drug trade," it was not a group of large drug kingpins throughout its existence, but instead held ambivalence toward coca, had a slow start in cultivating, processing, taxing, and exporting coca, which ramped up around 2000 and was made possible by Chiquita/Banadex seed funds and the use of Chiquita's ports and ships. DE 3627 at 6 (quoting Kaplan at 2). It also excluded Prof. Kaplan's opinion that Chiquita's payments substantially supported the AUC's growth and that Chiquita helped the AUC consolidate its drug trafficking operations through shipments via Chiquita's

10

ports and ships. *Id*. at 4-5. The Court excluded these opinions on grounds that they will not be helpful because the jury is equally capable of arriving at its own conclusions on these subjects based on its assessment of the evidence presented. *Id*. at 4-6. Prof. Restrepo's opinion should be excluded for the same reason.

As noted above, *Chiquita* elicited some testimony about drug trafficking from Prof. Kaplan on cross. But since the Court held that this did *not* even open the door to Prof. Kaplan offering his opinion on these matters, it certainly should not open the door for Prof. Restrepo.

In addition, the Court held that Chiquita's expert Mr. Gaddis may not testify about the AUC's annual income from drug trafficking, and that "it necessarily follows that he cannot opine on what significance, if any, the payments made by Chiquita had on the AUC's operations." DE 3616 at 13. Prof. Restrepo should not testify on this matter for the same reason.

**Opinion III: (Paragraphs 22-26): "The AUC was not ideologically opposed to drug trafficking."**

Opinion III should be excluded for the same reason as Opinion II. Since Prof. Kaplan was precluded from testifying that the AUC had ambivalence toward coca, Prof. Restrepo should not be allowed to offer this opinion on the same topic.

> 4. **The Court should exclude opinion about the rise of the AUC and paramilitary violence.**

**Opinion IV (Paragraphs 27-32): "The AUC were located throughout Colombia and did not spread out from the Urabá and Magdalena banana growing regions."**

Opinion IV itself is undisputed; the AUC's creation united existing

11

paramilitary groups from across the country. May 14, 2024, Trial Transcript at 113 (Prof. Kaplan); *see* DE 3627 at 3 (excluding opinion based on undisputed fact as unhelpful). It is also irrelevant. All of the killings in these cases took place in Urabá and Magdalena; killings elsewhere are not at issue.

**Opinion V (Paragraphs 33-37): "The dynamics of paramilitary violence follow a complex pattern not determined by income extracted from racketeering from a particular region."**

The Court excluded Prof. Karl's testimony on this subject, concluding that whether Chiquita's payments to the AUC fueled the conflict "is something that average jurors can determine from the evidence presented during the trial." DE 3629 at 5-6. So too here. Moreover, his opinion should also be excluded for the reasons noted regarding Opinion II, and his opinion in Par. 37 about "national trends" should be excluded for the reasons noted regarding Opinion IV.

Prof. Restrepo's opinion that "[t]he creation of the AUC is not the only factor correlated with, nor the one that causally can explain the dynamics of paramilitary violence in Colombia," *id*. at 13, ¶ 33, will confuse the jury. It does not respond to any evidence offered by Plaintiffs; the AUC's creation simply involved the consolidation of existing, violent paramilitary groups. And it again improperly suggests but-for causation is required.

**Opinion VI (Paragraphs 38-41): "The paramilitary groups in banana growing regions were not the 'seed' of paramilitary violence."**

Opinion IV is irrelevant; the killings at issue were in the banana regions.

**Opinion VII (Paragraphs 42-45): "Paramilitary groups emergence is not a recent phenomenon, nor it can be tied to a particular relatively recent source of funding, it goes back to at least the mid-sixties."**

12

Since the AUC was created from existing paramilitary groups, it is undisputed that such groups "organized years before the AUC." Ex. 1 (Restrepo report) at 16, ¶ 42; DE 3627 at 3 (excluding statement of undisputed fact). More importantly, his reference to his previous assertions that the push to fund the AUC's organization was narcotrafficking and that an individual company's payment was not the originator of the AUC, *id.* at 17, ¶45, should be excluded for the reasons noted regarding Opinions II and V respectively.

### 5. The Court should exclude opinion about the convivir.

**Opinion VIII (Paragraphs 46-47): "The 'Convivir' security cooperatives were legally sanctioned and sponsored by the State."**

The Court excluded expert testimony about the convivirs' relationship with the state as state action evidence. DE 3627 at 7.

### 6. The Court should exclude opinion about land grabbing.

**Opinion IX (Paragraphs 48-52). "The role of the paramilitaries in the land stealing in Colombia."**

According to Prof. Restrepo, there is no evidence that Chiquita farms were "involved in [land-grabbing] claims." Ex. 1 (Restrepo report) at 19, ¶ 50. He has no expertise or basis to opine on these farms' ownership history. Regardless, Plaintiffs do not claim the AUC took land and gave it to Chiquita; instead, Chiquita took advantage of the depressed prices the conflict caused. And Prof. Restrepo's speculation that companies would not have used AUC violence as a tool to grab land should be excluded for the same reason the Court excluded testimony from Prof. Karl: he "is not an expert in business or corporate affairs" and because it "crosses

13

into opining about a party's motives or intent and is prohibited." DE 3629 at 3-4.

### C. Prof. Restrepo cannot regurgitate hearsay.

This Court has made clear that although experts "may not simply convey to the jury hearsay evidence." DE 3627 at 3. Indeed, the Court has *excluded* expert testimony based on hearsay where "the opinions [the expert] derives from [] hearsay material can just as easily be determined by a jury if presented with the same evidence." DE 3629 at 3. And the Court found that "[t]o the extent admissible evidence will not be presented to enable the jury to make these determinations, the expert should not be used as a conduit to supply the underlying facts to the jury, almost all of which is hearsay." DE 3629 at 6.

Prof. Restrepo's report is replete with quotations and citations to hearsay. *See, e,g.*, Ex. 1 (Restrepo report) at ¶¶6-8, 18-19, 23-25, 29, 48, 57. He cannot be permitted to quote directly from, or simply convey, that hearsay.

### D. Prof. Restrepo should not be permitted to make statements of fact that the jury can decide for itself.

The Court excluded statements of fact by Plaintiffs' experts: "these are statements of fact which may or may not be disputed in whole or in part. If undisputed, then the jury is perfectly capable of drawing any opinions or conclusions from the facts without the assistance of an expert witness. To the extent any of these statements are disputed, then the jury is the arbiter of what, in fact, occurred." DE 3627 at 4; *accord* DE 3629 at 5-7.

Prof. Restrepo's testimony must be similarly limited. His report includes many purely factual statements. *E.g.* Ex. 1 ¶¶ 10, 46. To the extent he is relying on

14

underlying facts to inform his otherwise admissible opinions, they may form part of his presentation. But simply conveying underlying facts to the jury is not the function of experts in this trial, as the Court has ruled.

## CONCLUSION

This Court should hold the parties' experts to the same standards and, for the foregoing reasons, should exclude the above described testimony.

Dated: May 28, 2024            Respectfully submitted,

*/s/ Richard Herz*
Richard Herz
EarthRights International
1612 K. Street N.W. Suite 800
Washington, DC 20006
rick@earthrights.org
*For all non-Wolf Plaintiffs*