UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-Md-01916-Marra

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION
_____/

**This Document Relates to:**

ATS ACTIONS
_____/

**PLAINTIFFS' MOTION TO ADMIT STATEMENTS FROM THE JUSTICE
DEPARTMENT IN REBUTTAL TO TESTIMONY REGARDING THE
JUSTICE DEPARTMENT'S VIEWS**

Chiquita has elicited testimony through multiple witnesses that the U.S. Department of Justice (DOJ) believed Chiquita was being extorted, that DOJ was going to provide guidance to Chiquita and work with Chiquita to resolve the problem, and that Chiquita's only crime was failing to obtain a license. But DOJ's official position is directly contrary to Chiquita's claims. DOJ's actual position is set forth in the Sentencing Memorandum. Exhibit A (P1087). Plaintiffs herein provide the specific statements from DOJ's Sentencing Memorandum that Plaintiffs seek to admit in response. The Court should allow Plaintiffs to rebut Chiquita's false representations about DOJ's position by showing the jury the Government's official position.

There is no reason to exclude the statements of DOJ's position. Most if not all of the specific statements Plaintiffs wish to present are not hearsay; they are an official statement of DOJ's position in the criminal case. Plaintiffs do not offer them

1

to show that any underlying fact expressed therein is true. Instead, the point is to show DOJ's position, and the document *itself* is the official statement of that position.[1]

It would be highly prejudicial to allow Chiquita's witnesses to characterize DOJ's position but to prevent Plaintiffs from rebutting this testimony with evidence that those characterizations are false.

## BACKGROUND

Near the start of trial, Plaintiffs argued that they should be able to present the Sentencing Memo in their case in chief. Plaintiffs asserted this was necessary because Chiquita's opening statement repeatedly claimed that DOJ agreed with Chiquita that Chiquita had no alternative to paying the AUC and therefore intended to cooperate with Chiquita to find a satisfactory solution; that DOJ considered Chiquita's crime to be a mere technicality, and that Mr. Scarola's opening hid these "facts." Transcript Vol. 10 7:7-9:23 (May 7, 2024); DE 3709. Plaintiffs therefore argued that Chiquita's characterizations of both DOJ's views and Mr. Scarola's opening required Plaintiffs to present DOJ's official position on these matters.

The Court declined to permit Plaintiffs to do so in their affirmative case, but noted that it would at least consider doing so on *rebuttal*: "assuming I was going to

---

[1] When Plaintiffs originally sought to introduce statements from the Sentencing Memo, the Court expressed the view that the Memo does not meet the hearsay exception in FRE 803(8)(A)(iii). Transcript Vol. 10 at 6:13-7:6. (May 7, 2024). But no hearsay exception is needed for most or all of the statements because excerpts from the Memo that set forth the Government's position are not hearsay.

2

allow you to present it, I think that should come in rebuttal after they present whatever evidence they intend to present to support those assertions. So we will see whether they can present any evidence to support those assertions. The fact that he made it in opening I don't think opens the door for you to try and rebut what he claims he is going to be able to prove in his case." *Id.* at 8:12-19.[2]

Now that Chiquita has put on testimony regarding the Government's alleged position, the Court should allow Plaintiffs to present the statements of the Government's actual position on rebuttal.

## ARGUMENT

I. **Statements of DOJ's official position are not hearsay.**

Most if not all of the particular statements that Plaintiffs seek to admit are not hearsay, because they are not offered for the truth of some fact asserted therein. Instead, they are statements of DOJ's official *position*. And there is no question whether this is *really* DOJ's position. By filing the Memo, the government officially took these positions. They are simply not hearsay.

Even if this Court were to conclude that any particular statement includes a factual statement subject to the hearsay rule, Plaintiffs respectfully submit that it is admissible under FRE 803(8)(A)(iii). The Rule requires only that statements be "factual findings from a legally authorized investigation" and that Chiquita "does not show that the source of information or other circumstances indicate a lack of

---

[2] The Court later precluded Plaintiffs from showing Mr. Olson the Sentencing Memo on cross-examination. Transcript Vol. 24 at 82:8-16.

trustworthiness." FRE 803(8). There can be no question that the Memo is the product of a four year, "legally authorized investigation." And Chiquita has made no showing the statements are untrustworthy. Thus, any factual findings are admissible under Rule 803(8).[3]

Plaintiffs discuss these principles below with respect to each particular statement they seek to admit.

## II. Plaintiffs should be permitted to rebut testimony characterizing DOJ's position with evidence of DOJ's actual position.

Chiquita repeatedly elicited testimony asserting that DOJ believed Chiquita was being extorted, that DOJ was willing to cooperate with Chiquita to find a "solution," and that all Chiquita had done wrong was that it failed to get a license. All of these characterizations of DOJ's position are contradicted by DOJ's actual, official positions. Chiquita cannot on the one hand put on witnesses to testify that DOJ believed one thing, and at the same time exclude DOJ's official statements of its own views that shows it believed the exact opposite.

### A. Plaintiffs should be permitted to rebut testimony that DOJ agreed that the AUC had extorted Chiquita.

Perhaps most importantly, Chiquita explicitly elicited testimony from Mr. Olson that, after a four year investigation, DOJ *agreed* that the AUC had extorted Chiquita. Transcript Vol. 24 at 85:23-86:1 (May 31, 2024). Mr. Olson based this

---

[3] Chiquita has previously cited *In re Wiand*, No. 8:10-cv-75-T-17MAP, 2012 U.S. Dist. LEXIS 13406 (M.D. Fla. Feb. 3, 2012), for the proposition that a sentencing memorandum is hearsay, but that court did not consider Rule 803(8) and there the document was offered for the truth of factual matters addressed therein.

4

conclusion on a statement in the Proffer about Castaño sending Chiquita an "'unspoken but clear message.'" *Id*. at 85:9-20.[4] Chiquita's counsel also displayed and read the same passage as a "question" to Mr. Ordman, and again to Mr. Acevedo. Transcript Vol. 19 at 54:14-25; Vol. 20 at 166:18-167:12. But in fact, DOJ's official position after its four year investigation was *not* that Chiquita was being extorted; its official position was that Chiquita's extortion claim was irrelevant and that DOJ had "serious questions" about Chiquita's claim that it was acting to protect its employees:

- "the Company's motivation is legally irrelevant and of no comfort to the victims of the AUC's violence. But even this purported rationale for the payments begs serious questions." Exhibit A (Sentencing Memorandum) at 16.

DOJ then listed seven questions it had concerning Chiquita's claim that it was solely motivated to protect its Colombian employees from the AUC:

- "How did the payments protect the Company's employees during those times when the employees were not working on the Company's farms?"

- "How did the payments protect the communities in which those employees lived?"

- "How did the payments protect the families, friends, and associates of the Company's employees?"

- "What concrete steps did the Company take starting in 1997 to protect its employees from AUC violence, in lieu of making payments to the AUC?"

- "Why did the Company establish a procedure for paying the AUC in Santa Marta directly and in cash that put a senior officer of Banadex at greater personal risk of physical harm?"

---

[4] When asked on cross whether DOJ "expressed skepticism regarding [Chiquita's] claim of duress," Mr. Olson flatly denied that DOJ had done so. *Id.* at 66:18-22; *accord id.* at 72:15-19.

- "Why did the Company fail to report the AUC's demands to the pertinent United States authorities for years?"

- "Would the Company have remained in Colombia indefinitely without regard to the profitability of its Colombian operations, just to be able to pay the AUC?"

*Id.*

The DOJ further stated its official position that:

- "Chiquita was not without any alternative to paying the AUC. While there may have been alternatives short of withdrawing from Colombia, withdrawal was plainly an option …" *Id.* at 17.

None of this is inadmissible hearsay. Most or all of it is the Government's official position rather than a factual statement. To the extent any is a factual conclusion, it is one from a "legally authorized investigation." Chiquita can hardly argue otherwise. The entire premise of Mr. Olson's testimony was the claim that DOJ reached a particular conclusion after an official investigation.

### B. Plaintiffs should be permitted to rebut testimony suggesting that DOJ did not believe Chiquita committed a serious crime.

Chiquita tried to minimize the crime to which it pled guilty. It elicited testimony from Mr. Olson that the crime was merely "engaging in a transaction without first having obtained a license." Transcript Vol. 24 at 87:5-8.

But DOJ's official position was that:

- "This is a very serious matter." Ex. A at 12.

- "There were a number of points at which the Company could have conformed its conduct to the requirements of the law. Its failure to do so until late in the evolution of this matter is one of the reasons that the Company appears before the Court having pled guilty to a *very serious criminal charge.*" *Id.* at 16 (emphasis added).

6

Similarly, the Plea Agreement stated that:

- "The parties agree that $25 million is the appropriate criminal fine in resolution of this matter, taking into account the . . . need for the sentence imposed to reflect the seriousness of the offense; to promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes." Exhibit B (Plea Agreement, P0584) at 2-3.

These statements are not hearsay. Most or all are simply DOJ's position as to the seriousness of the offense. The statement from the Plea Agreement is a signed party admission. And to the extent any statement asserts facts, they are clearly facts determined by an official investigation.

### C. Plaintiffs should be permitted to rebut testimony suggesting DOJ allowed Chiquita to continue the payments.

Chiquita elicited substantial testimony suggesting DOJ allowed Chiquita to continue to pay the AUC and offered its advice or assistance. All of that is contradicted by DOJ's own positions.

For example, Mr. Olson testified that:

- "The DOJ understood that -- the pickle that Chiquita was in, the terribly difficult situation." Transcript Vol. 23 at 238:10-12.

Mr. Olson also testified about an April 24, 2003 meeting with DOJ that:

- "it was my understanding that the DOJ would follow up and get back with -- to Chiquita with guidance on this. And I was encouraged by this because it indicated to me that the DOJ understood the dilemma we had, the problem we had, and was going to work with us to figure out how to resolve it." *Id*. at 239:18-22.

7

Mr. Urgenson also testified as to what he believed DOJ's position was at that meeting: that although the payments were illegal, "it was a complex issue." Urgenson Testimony at 87:10-88:11.

More generally, Mr. Olson testified that:

- "My understanding of the DOJ's position was they were going to work with the company to try and find a solution here.... And we believed we were in due course going to get some instructions on what we ought to be doing." Transcript Vol. 23 at 246:14-15, 21-22.

Mr. Olson further claimed that DOJ did not tell Chiquita to stop the payments or leave Colombia, leaving the jury with the implication that DOJ did not oppose Chiquita continuing the payments. *Id.* at 240:4-9.

Similarly, Mr. Olson testified that, although DOJ said at a September 2003 meeting that it could not endorse the payments, "my understanding of that meeting was that the DOJ specifically declined an invitation to tell the company to stop making the payments." *Id.* at 249:13-15.

Chiquita's counsel also elicited testimony from Mr. Kistinger clearly implying that DOJ advised Chiquita not to stop making the payments:

> Q [BY CHIQUITA'S COUNSEL]. Were you being advised that you could not stop the payments?
> A. There were -- there was lots of advice that people, you know, had sought out, whether it was again from other outside lawyers or directly from the Department of Justice. …

Transcript Vol. 21 at 54:15-55:1 (5/24/24).

As to the assertion that DOJ declined to tell Chiquita to stop the payments, DOJ's official position was that its acknowledgement that the issue was complicated "did not constitute an approval or authorization for defendant Chiquita to continue

8

to break the law by paying a federally-designated Foreign Terrorist Organization." *Id*. at 11.

That is DOJ's official position, not a statement of fact, so it is not hearsay. The jury can give this position whatever weight it wants in determining whether to believe Chiquita's witnesses' testimony as to their understanding of DOJ's position.

As to the claim that DOJ was going to provide guidance to Chiquita, DOJ's official position was that DOJ "is not in the business of providing outside parties with advice about how best to comply with the law." *Id*. at 16. Here again, this is not a statement of fact and thus is not hearsay. The jury can give it whatever weight it thinks the statement deserves.

## CONCLUSION

The Court should not permit Chiquita to mischaracterize DOJ's position without allowing Plaintiffs' to rebut those mischaracterizations. The jury is entitled to consider the Justice Department's official positions.

Dated:	June 3, 2024	Respectfully submitted,

*/s/ Richard Herz*
Richard Herz
EarthRights International
1612 K Street NW, Suite 800
Washington, DC 20006
Tel: 202-466-5188
rick@earthrights.org