UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-MD-01916-MARRA

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION
_____/

This Document Relates to:

**ATS ACTIONS:**

07-60821-CIV-MARRA (Carrizosa Action)
08-80421-CIV-MARRA (NJ Action)
08-80465-CIV-MARRA (Does 1-144/Perez 1-795 Action)
08-80480-CIV-MARRA (Manjarres Action)
08-80508-CIV-MARRA (Valencia Action)
10-60573-CIV-MARRA (Florida Montes Action)
17-80535-CIV-MARRA (Ohio Montes Action)
18-80800-CIV-MARRA (Does 1-144/Perez 1-795 Action)
18-80248-CIV-MARRA (NJ Action)
_____/

**PLAINTIFFS' MOTION TO COMPEL TESTIMONY OF
CHIQUITA RECORDS CUSTODIAN**

Plaintiffs move to compel the attendance of a Chiquita records custodian in their rebuttal case, specifically with respect to Plaintiffs' exhibit P0090, P0317, P0656, and P2148/D2148. It is not correct that Plaintiffs gave Chiquita only half a day's notice of the need to produce such a custodian; Plaintiffs subpoenaed a custodian months ago, previously put a custodian on their order of proof at the close of their case in chief, referred to the need for one throughout the trial, and notified Chiquita on Friday that a custodian would be among their rebuttal witnesses. Chiquita never conferred about producing a custodian, and if it cannot do so, should be deemed to have waived any objections that could be cured by such a custodian's testimony.

1. **Plaintiffs gave ample notice of calling a records custodian.**

Chiquita has long been on notice that Plaintiffs intended to call a records

1

custodian; there is no surprise here.

A Chiquita records custodian has been on Plaintiffs' witness list since August 2023. *See* DE 3576-10 (Plaintiffs' October 13, 2023, amended witness list, noting changes from original list). Plaintiffs executed a subpoena on Chiquita to compel a records custodian on April 15, 2024. Chiquita has never filed a motion to quash that subpoena.

Shortly before trial, Chiquita's counsel approached Plaintiffs' counsel suggesting that they might obviate the need for a records custodian if they stipulated to the authenticity of documents as necessary. Plaintiffs sent Chiquita's counsel a list of documents on April 23, and a supplemental list on April 28. Chiquita's counsel never responded, not even with an acknowledgement of receiving the emails. *See* Ex. 1.

On April 30, after opening statements, the Court heard argument about admission of a handful of Chiquita documents. The Court itself raised the possibility of calling a records custodian:

> So you want the foundation for every exhibit that is admitted or offered in a deposition to be laid in the deposition itself. . . .
>
> So what is the -- assume that before they play the deposition, they call a records custodian from Chiquita and say is it a copy -- a true and correct copy of your board of director minutes from such and such a day, and they -- he says, yes, it is. All right. And then they offer it, are you going to object?

April 30, 2024, Trial Transcript (Vol. 5) at 183:3-14.

Again on May 9, in another argument over the admissibility of Chiquita documents, Plaintiffs' counsel noted:

> So on its face, this is clearly a Chiquita document, a statement of opposing party, a book and record of Chiquita, and is admissible on that basis. I would also say it's admissible as a business record. If Chiquita wants to call -- wants us to call a custodian from Chiquita to testify as to the foundation for this as a business record, we can, but it would, I think, delay the trial and be needlessly burdensome.

May 9, 2024, Trial Transcript (Vol. 12) at 82:14-20; *see id.* at 245:1-3 ("[T]o the extent we need someone to authenticate the document, we would ask for a records

custodian.").

On Friday, May 10, Plaintiffs initially put a Chiquita records custodian, labeled "to the extent necessary," on their order of proof for Tuesday, May 14. Chiquita did not file any objection to the inclusion of their records custodian. On May 14, Plaintiffs' counsel noted that they had subpoenaed Chiquita's records custodian and asked that the subpoena be enforced if necessary:

> I don't think it's worth anyone's time to be debating authenticity when all of these documents were produced by Chiquita. And, you know, they do fall under the ancient documents exception.
>
> The other thing I would say, your Honor, we have subpoenaed a Chiquita records custodian, and to the extent that we need foundational testimony for either authenticity or hearsay, we would ask that that subpoena be enforced.

May 14, 2024, Trial Transcript (Vol. 14) at 232:6-13.

The next day, as argument over the admissibility of documents continued, the Court again raised the possibility of testimony from a Chiquita records custodian:

> Let's assume I am going to say there hasn't been an authenticity laid for this document. They want to bring in a witness, custodian of yours to lay the foundation. So who is your custodial witness that's going to be presented?
>
> I understand they subpoenaed your custodian of records from Chiquita. Who is it, and when is that person going to be here to testify? If you want to stand on authenticity grounds and you want a records custodian, who is it and when is the person going to be here to testify?

May 15, 2024, Trial Transcript (Vol. 15) at 104:23-105:7. Chiquita's counsel did not answer that question; at that time, they deflected by pointing to the fact that some of the documents at issue did not originate with Chiquita, stating, "I'm just not sure how a Chiquita records custodian could authenticate a document that isn't a Chiquita record." *Id.* at 105:17-19. Ultimately, however, the Court did not deny admission of any documents on any grounds that could be cured with a Chiquita records custodian, obviating the need to call such a custodian at that time.

The Court did not, however, resolve the admissibility of all of the exhibits that Plaintiffs wanted to admit into evidence at the end of their case-in-chief.

3

Instead, to move the trial along, the Court noted that "I will allow you to reopen your case to introduce those documents if I later conclude that they should be admitted." *Id.* at 110:11-13. Since then, Plaintiffs have had no occasion to raise the issue again with Chiquita, as Chiquita has been putting on their case.

As soon as Chiquita indicated when it would be resting its case, however, Plaintiffs again put a records custodian on their order of proof. On Friday, May 31, Plaintiffs let Chiquita know that they intended to call their records custodian for their rebuttal case on Tuesday, June 4. *See* Ex. 2. Chiquita never followed up to see whether Plaintiffs really intended to compel their records custodian; indeed, Chiquita has never conferred over Plaintiffs' subpoena.

Chiquita has resisted producing a custodian throughout the trial, despite Plaintiffs' subpoena. Chiquita has never moved to quash or filed any objections to producing such a custodian. Any lack of preparedness on Chiquita's part, apparently counting on simply not being required to comply with its obligations, is not Plaintiffs' fault. It should be compelled to produce a records custodian or waive any objections that might be cured by the testimony of such a custodian.

**2. Only four documents are at issue, and they are all admissible.**

Plaintiffs have narrowed down the documents that a custodian may be needed for to a small set of four documents. Each should be admissible without such a custodian, but it would be error to deny admission on any grounds that could be cured through the testimony of such a custodian.

**P0090:** This exhibit was among the exhibits that Plaintiffs sought to introduce at the end of their case-in-chief. It consists of a memo, apparently prepared by a Chiquita employee (likely a lawyer, given that it is marked "privileged and confidential"), concerning negotiations with the Department of Justice and the role of audit committee chair Roderick Hills. Of particular note, the memo states that in a meeting with DOJ, Mr. Hills said "one could question whether Colombian personnel were afraid of AUC or of being discovered." This is critical evidence. Mr. Hills is deceased, and Chiquita did not produce any of the "Colombian personnel" at issue for deposition or trial. Mr. Hills's skepticism of the

4

claims of being afraid of the AUC runs counter to Chiquita's narrative, and is highly probative.

Plaintiffs should not need a records custodian to admit this document. According to Chiquita's production log, this document was produced from the files of Cyrus Freidheim, Chiquita's CEO at the time. *See* P0722 at 20. It is clearly the statement of a Chiquita employee or agent – otherwise it could not be "privileged" – and we need not know specifically which employee wrote it. *E.g., Palmer v. Wal-Mart Stores E., LP*, No. 20-CIV-61879-WPD, 2021 U.S. Dist. LEXIS 253533, at *11 n.4 (S.D. Fla. Nov. 30, 2021). It is an admissible statement of an opposing party.

Nonetheless, to the extent necessary, Plaintiffs move to compel a custodian with knowledge of the provenance of this document.

**P0317:** This exhibit was also among those that Plaintiffs sought to introduce at the end of their case-in-chief. No witness ever testified about P0317, but it is clearly handwritten audit committee notes from Steven Kreps from March of 2000. On Chiquita's production log, it is listed in the category "Kreps' Audit Committee Notes" produced from the files of Steven Kreps. *See* P0722 at 16. The handwriting is also obviously the same as in P0589, an admittedly authentic exhibit of Steven Kreps notes from another audit committee meeting, to which Chiquita has withdrawn its objections.

This document is also highly probative. The last page of notes refers to "Increased Convivir" in "Q2," and notes "Rate driven by guerilla activity." P0317 at 14. The other pages can be redacted or omitted (except for the last line on page 13 which refers to Colombia), but these notes are highly relevant because they do not show any evidence of extortion, and because they indicate that Chiquita was paying the convivirs to respond to guerrilla activity.

If Chiquita persists in objecting to this document, Plaintiffs can authenticate the handwriting through jury comparison pursuant to Rule 901(b)(3). *See, e.g., United States v. Cavallo*, 790 F.3d 1202, 1230 (11th Cir. 2015) ("[T]he Government was not required to produce a handwriting expert.); *United States v. Bell*, 833 F.2d 272, 276 (11th Cir. 1987) (finding that a jury is competent to compare signatures

and draw its own conclusions). And again, the identity of an employee is not necessary for admission under Fed. R. Evid. 801(d)(2). *Palmer,* 2021 U.S. Dist. LEXIS 253533, at *11 n.4.

Such handwriting comparison is cumbersome and should not be necessary, however. Chiquita should simply stipulate to what is obvious: these are audit committee notes written by Steven Kreps. If it refuses, it should either produce a records custodian with knowledge of this document, or be held to have waived its objections.

**P0656:** Again, this document was among those Plaintiffs sought to move into evidence at the close of their case-in-chief. It is another set of handwritten notes, this time apparently written by Chiquita lawyer Joel Raymer. Chiquita's production log indicates that it was produced from Mr. Raymer's files. *See* P0722 at 21. Along with its status as an ancient document, that is sufficient to authenticate it as notes of a Chiquita employee. And because Chiquita claimed privilege over this document, Chiquita cannot now argue that it is not written by its agent or employee – indeed, Chiquita admitted that it was written by a Chiquita lawyer.

This again is a highly probative document. This includes Mr. Raymer's notes from teleconferences with Alvaro Acevedo and Victor Buitrago, and includes notes such as "Its absolutely clear that Convivir is just a front for AUC," that "VB" (Victor Buitrago) "meets with head of Bloque Norte sub-bloque ~ 1/mo." and that he "Meets with Commander of Bloque Uraba – Pedro – about once/mo." P0317 at 2. (This is likely a reference to Raúl Hasbún, alias "Pedro Bonito.") Chiquita has never produced Buitrago for deposition or at trial.

Again, Plaintiffs could authenticate this document via jury comparison. Another exhibit written in Mr. Raymer's hand, P0664, is already in evidence. But this should not be necessary. Chiquita should either admit its authenticity or produce a records custodian capable of testifying about its origins, or be deemed to have waived its objections.

**P2148/D2148:** Plaintiffs only used this document for cross-examination, and now seek to use it in rebuttal. It was produced by Chiquita, and indicates drug

6

seizures in Colombia in which Chiquita was involved. For its exhibit – D2148 – Chiquita added the prior bates-stamped page to this exhibit, and Plaintiffs do not object to including that page.

The author of this document is unknown, but again it is obviously a Chiquita document, produced by Chiquita. Although it has a CBI-SU bates stamp indicating that it was previously produced, it does not appear on any production log that Plaintiffs have been able to locate.

This document is also highly probative, and relevant to rebut Chiquita's claim that it did not facilitate shipments of drugs on its ships. The document catalogs 47 incidents of seizures between late 1998 and late 2003 – a span of less than five years. Although Chiquita may claim that other companies had similar records, the jury should be able to assess for itself whether this number of drug seizures would be expected of a company that is actually being diligent about preventing drug smuggling.

Chiquita should have no serious objection to this document; it has a Chiquita and Banadex header, and was produced by Chiquita in discovery. There is no argument that it is not a Chiquita document. If Chiquita wants to explain it, Chiquita should produce a records custodian capable of testifying about the document; otherwise it should be admitted.

Dated: June 4, 2024                     Respectfully submitted,

                                        */s/ Marco Simons*
                                        Marco Simons
                                        marco@earthrights.org
                                        EarthRights International
                                        1612 K Street NW #800
                                        Washington, DC 20006
                                        (202) 466-5188

                                        *For all non-Wolf Plaintiffs*