**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 08-MD-01916-MARRA**

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION
_____

**This Document Relates to:**

ATS ACTIONS
_____
        17-80535-CIV-MARRA (Ohio *Montes*)
18-80800-CIV-MARRA (remanded/severed *Does 1-144*)
07-60821-CIV-MARRA (*Carrizosa*)
08-80421-CIV-MARRA (N. J. Action) (*Does 1-11*)
08-80465-CIV-MARRA (D.C. Action) (*Does 1-144*)
08-80508-CIV-MARRA (*Valencia*)
08-80480-CIV-MARRA (*Manjarres*)
10-60573-CIV-MARRA (*Montes*)
17-81285-CIV-MARRA (D.C. Action) (*Does v Hills*)
18-80248-CIV-MARRA (*John Doe 1*)
_____/

## JURY INSTRUCTIONS

Members of the jury:

It's now my duty to instruct you on the rules of law that you must use in

deciding the nine cases in this trial.

When I have finished you will go to the jury room and begin your

discussions, sometimes called deliberations.

As we told you at the outset of this trial, the nine cases you are considering have been combined because they share certain facts in common, including some common witnesses, and they share the same Defendant. While these cases have been combined for the purpose of presenting the evidence in one trial, they remain separate cases and you must render a separate verdict as to each Plaintiff and each individual claim and defense, which means your deliberations must be specific to each individual Plaintiff, and during your deliberations as to each individual Plaintiff, you must not consider in any way any other Plaintiff's claims or Defendant's defenses to those claims.  In other words, you must not be influenced in any one of these cases by evidence unique to a different case.

Your decision must be based only on the evidence presented here. You must not be influenced in any way by either sympathy for or prejudice against anyone.

You must follow the law as I explain it – even if you do not agree with the law – and you must follow all of my instructions as a whole. You must not single out or disregard any of the instructions on the law.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for the acts and statements of its employees and the employees of its subsidiary that are made within the scope of their duties as employees of the company.

As I said before, you must consider only the evidence that I have admitted in the case. Evidence includes the testimony of the witnesses and the exhibits admitted. But anything the lawyers say is not evidence and isn't binding on you.

You shouldn't assume from anything I've said that I have any opinion about any factual issue in this case. Except for my instructions to you on the law, you should disregard anything I may have said during the trial in arriving at your own decision about the facts.

Your own recollection and interpretation of the evidence is what matters.

In considering the evidence you may use reasoning and common sense to make deductions and reach conclusions. You shouldn't be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of a person who asserts that he or she has actual knowledge of a fact, such as an eyewitness.

"Circumstantial evidence" is proof of a chain of facts and circumstances that tend to prove or disprove a fact. There's no legal difference in the weight you may give to either direct or circumstantial evidence.

When I say you must consider all the evidence, I don't mean that you must accept all the evidence as true or accurate. You should decide whether you believe what each witness had to say, and how important that testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part. The number of witnesses testifying concerning a particular point doesn't necessarily matter.

To decide whether you believe any witness I suggest that you ask yourself a few questions:

1. Did the witness impress you as one who was telling the truth?

2. Did the witness have any particular reason not to tell the truth?

3. Did the witness have a personal interest in the outcome of the case?

4. Did the witness seem to have a good memory?

5. Did the witness have the opportunity and ability to observe accurately the things he or she testified about?

6. Did the witness appear to understand the questions clearly and answer them directly?

7. Did the witness's testimony differ from other testimony or other evidence?

You should also ask yourself whether there was evidence that a witness testified falsely about an important fact. And ask whether there was evidence that at some other time a witness said or did something, or didn't say or do something, that was different from the testimony the witness gave during this trial.

But keep in mind that a simple mistake doesn't mean a witness wasn't telling the truth as he or she remembers it. People naturally tend to forget some things or remember them inaccurately. So, if a witness misstated something, you must decide whether it was because of an innocent lapse in memory or an intentional deception. The significance of your decision may depend on whether the misstatement is about an important fact or about an unimportant detail.

When scientific, technical or other specialized knowledge might be helpful, a person who has special training or experience in that field is allowed to state an opinion about the matter.

But that doesn't mean you must accept the witness's opinion. As with any other witness's testimony, you must decide for yourself whether to rely upon the opinion.

As I instructed you at the beginning of this trial, a deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions. A court reporter is present and records the questions and answers. A number of depositions have been presented to you during the trial by video or were read to you. Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness was testifying in court.

You've heard written answers that either one of the Plaintiffs or Chiquita gave in response to written questions the other side submitted. The questions are called "interrogatories." Before the trial, Chiquita gave the answers in writing while under oath.

You must consider Chiquita's answers to the interrogatories as though Chiquita gave the answers on the witness stand.

In this case you have been permitted to take notes during the course of the trial, and most of you -- perhaps all of you -- have taken advantage of that opportunity and have made notes from time to time.

You will have your notes available to you during your deliberations, but you should make use of them only as an aid to your memory.  In other words, you should not give your notes any precedence over your independent recollection of the evidence or the lack of evidence; and neither should you be unduly influenced by the notes of other jurors.

I emphasize that notes are not entitled to any greater weight than the memory or impression of each juror as to what the testimony may have been.

In this case it is the responsibility of each of Plaintiffs to prove every essential part of their individual claims by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that each Plaintiff's claim is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against the Plaintiff making the claim.

Because more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

In this case, Chiquita asserts the affirmative defense of duress or coercion. Even if a Plaintiff proves his or her claim[s] by a preponderance of the evidence, Chiquita can prevail in this case if it proves an affirmative defense by a preponderance of the evidence.

I caution you that Chiquita does not have to disprove the Plaintiffs' claims, but if Chiquita raises an affirmative defense, the only way it can prevail on that specific defense is if it proves that defense by a preponderance of the evidence.

If one or more Plaintiffs prove that their relatives were killed by the AUC, and those Plaintiffs also prove all of the other facts necessary for Chiquita to be held liable in this case which will be detailed in these instructions, Chiquita may be legally liable for those deaths, even if Chiquita or a Chiquita employee did not personally commit the murder.

Plaintiffs have brought their claims under two different legal theories under Colombian law.

1)  General Tort Liability under Article 2341 - when a person has committed a crime or fault which causes damage to another, he may be held liable for the damage and;

2) Hazardous Activity under Article 2356 – when a person carries out or benefits from a hazardous activity he may be held liable for the damages caused by that activity. I will explain to you how to apply these laws to this case.

THRESHOLD ISSUE.

Under either theory of liability asserted by Plaintiffs, as an initial matter, each Plaintiff must prove by a preponderance of the evidence that the AUC killed the Plaintiffs' relative, otherwise called the decedent.  If you do not find that the AUC killed the relative of any particular Plaintiff or Plaintiffs, then your verdict will be for Chiquita as to that Plaintiff or Plaintiffs' claims.

GENERAL TORT LIABILITY.

For any Plaintiff that you do find had his or her relative killed by the AUC, you must then determine, under the legal principles I will outline for you: (1) whether Chiquita was at fault <u>and</u> (2) if you find Chiquita was at fault, whether Chiquita's fault caused the Plaintiff damages.

Whether a person or corporation is at fault is determined by a "reasonable businessperson" standard of care; in other words, whether Chiquita's actions or inactions were in accordance with how a "reasonable businessperson" would have behaved under the circumstances. Thus, you are to determine whether Plaintiffs proved, by a preponderance of the evidence, whether Chiquita acted as a reasonable businessperson would have acted under the same circumstances or failed to act as a reasonable businessperson would have acted under the same circumstances.  In determining whether Chiquita acted or failed to act in

accordance with the "reasonable businessperson" standard of care, you may take into consideration, as one of the factors, among all the other factors and circumstances presented by the evidence, whether Chiquita's actions or failure to take actions were in violation of a law or regulation.

In this regard, you are instructed that during the relevant time it was a violation of Colombian law to directly or indirectly provide, deliver, contribute assets or resources, or carry out any act that promotes, supports, maintains, finances or economically sustains organized crime groups or armed groups outside the law or their members, unless excused by a legally available defense, for example, duress or coercion.

It was also a violation of Colombian law to fail to report a demand from an armed group to the authorities unless excused by a legally available defense such as duress or coercion.

As will be described for you later in these instructions, the burden of proving the defense of duress or coercion is on Chiquita, not Plaintiffs.

On September 10, 2001, the AUC was designated as a Foreign Terrorist Organization. On October 31, 2001, the AUC was specially designated as a global terrorist organization. As of October 31, 2001, it was a violation of United States

federal law to engage in transactions with a specially designated global terrorist organization without a license.

If you determine that Chiquita acted in accordance with the "reasonable businessperson" standard of care relative to any of Plaintiffs' decedents killed by the AUC, then you have determined that Chiquita was not at fault and your verdict shall be for Chiquita as to those Plaintiffs' claims.   If, however, you find, by a preponderance of the evidence, that Chiquita did not act in accordance with the "reasonable businessperson" standard of care and therefore was at fault relative to the death of any Plaintiffs' decedent, you must then determine whether Chiquita's fault caused injury or damage to those Plaintiffs.

In order to prove whether Chiquita's fault caused any Plaintiff injury or damage, each Plaintiff must prove, by a preponderance of the evidence, that Chiquita knowingly provided substantial assistance to the AUC in the form of cash payments or other means of support to a degree sufficient to create a foreseeable risk of harm to others, including that Plaintiff's relative.  In other words, did Chiquita's assistance substantially increase the risk of terrorists acts by the AUC and the probability that the Plaintiff's relative would be a victim.

For purposes of proving whether Chiquita's fault caused a Plaintiff's injury, contributions are knowingly made when the contributor understands the mission of the organization to which it contributes.

17

To find that Chiquita's assistance to the AUC was a substantial factor in the killing of any Plaintiff's relative, a Plaintiff does not have to prove that Chiquita's assistance was necessary for the injury to have occurred.  In other words, a Plaintiff does not have to show the injuries would not have occurred "but for" Chiquita's assistance.

Nor is any Plaintiff required to prove that Chiquita's assistance directly aided any specific murder.  Plaintiffs do not have to prove that Chiquita intended to cause any Plaintiff's specific injury or that Chiquita even knew of a specific injury.

If you find that Chiquita knowingly substantially assisted the AUC to a sufficient degree to create a foreseeable risk of harm to any Plaintiff's decedent, then you will have found Chiquita caused that Plaintiff's injury.  You then will have to consider Chiquita's affirmative defense of duress.

AFFIRMATIVE DEFENSE OF DURESS OR COERCION.

Chiquita claims that if it committed the acts alleged, it did so only because it was forced to do so. If you conclude that any Plaintiff proved, by a preponderance of the evidence, that Chiquita was liable under general tort liability theory, you must then consider whether Chiquita should nevertheless not face liability because its actions were justified by duress or coercion.

To succeed on its affirmative defense, Chiquita must prove by a preponderance of the evidence:

First: That there was an unlawful and present, immediate, and impending threat of death or serious harm to Chiquita, its employees or its property; and that

Second: That Chiquita's own negligent or reckless conduct did not create a situation where Chiquita would be forced to provide assistance to the AUC; and that

Third: That Chiquita had no reasonable legal alternative to providing assistance to the AUC.

If you find that Chiquita has proved, by a preponderance of the evidence, its affirmative defense of duress or coercion as to any Plaintiff's claim, then your verdict is for Chiquita as to that Plaintiff's claim.  If, however, you do not find that

Chiquita has proved its affirmative defense of duress or coercion as to a Plaintiff's claim, and you did find for any Plaintiff on the general tort theory of liability, then you must consider the question of damages for those Plaintiffs.

HAZARDOUS ACTIVITY.

Plaintiffs' second theory of liability against Chiquita is that providing money and other support to the AUC constituted a hazardous activity.  Under Colombian law, any person who carries out or benefits from a hazardous activity is liable for damages caused by such activity.  A hazardous activity is one that increases risk to members of the community which are beyond those to which members of the community are normally exposed.  Proof that the person alleged to have engaged in the hazardous activity was negligent or with fault is not required.

If you find, by a preponderance of the evidence, that providing money and other support to the AUC was not an activity that increased the risk to members of the community beyond those to which members of the community are normally exposed, then your verdict will be for Chiquita on this theory of liability.

If, however, you do find that providing money and other support to the AUC was an activity that increased the risk to members of the community beyond those to which members of the community are normally exposed, then you will have to determine whether Chiquita's engaging in such activity caused any Plaintiff damages.

In order to prove whether Chiquita's engaging in a hazardous activity caused any Plaintiff injury or damage, each Plaintiff must prove, by a preponderance of

the evidence, that Chiquita knowingly provided substantial assistance to the AUC in the form of cash payments or other means of support to a degree sufficient to create a foreseeable risk of harm to others, including that Plaintiff's relative.  In other words, did Chiquita's assistance substantially increase the risk of terrorists acts by the AUC and the probability that the Plaintiff's relative would be a victim.

For purposes of proving whether Chiquita's engaging in a hazardous activity caused a Plaintiff's injury, contributions are knowingly made when the contributor understands the mission of the organization to which it contributes.

To find that Chiquita's assistance to the AUC was a substantial factor in the killing of any Plaintiff's relative, a Plaintiff does not have to prove that Chiquita's assistance was necessary for the injury to have occurred.  In other words, a Plaintiff does not have to show the injuries would not have occurred "but for" Chiquita's assistance.

Nor is any Plaintiff required to prove that Chiquita's assistance directly aided any specific murder.  Plaintiffs do not have to prove that Chiquita intended to cause any Plaintiff's specific injury or that Chiquita even know of a specific injury.

If you find that Chiquita knowingly substantially assisted the AUC to a sufficient degree to create a foreseeable risk of harm to any Plaintiff's decedent, then

you will have found Chiquita's engaging in a hazardous activity caused that Plaintiff's injury.

If you do find that Chiquita engaged in hazardous activity that caused a Plaintiff damage, you will then have to consider Chiquita's affirmative defense of duress or coercion.

AFFIRMATIVE DEFENSE OF DURESS OR COERCION.

Chiquita claims that if it committed the acts alleged, it did so only because it was forced to do so. If you conclude that any Plaintiff proved, by a preponderance of the evidence, that Chiquita was liable under the hazardous activity theory, you must then consider whether Chiquita should nevertheless not face liability because its actions were justified by duress or coercion.

To succeed on its affirmative defense, Chiquita must prove by a preponderance of the evidence:

First: That there was an unlawful and present, immediate, and impending threat of death or serious harm to Chiquita, its employees or its property; and that

Second: That Chiquita's own negligent or reckless conduct did not create a situation where Chiquita would be forced to provide assistance to the AUC; and that

Third: That Chiquita had no reasonable legal alternative to providing assistance to the AUC.

If you find that Chiquita has proved, by a preponderance of the evidence, its affirmative defense of duress or coercion as to any Plaintiff's claim, then your verdict is for Chiquita as to that Plaintiff's claim.  If, however, you do not find that

Chiquita has proved its affirmative defense of duress or coercion as to a Plaintiff's claim, and you did find for any Plaintiff on the hazardous activity theory of liability, then you must consider the question of damages for those Plaintiffs.

To the extent you may find for any Plaintiff under both the General Tort Liability Theory of recovery and the Hazardous Activity Theory of recovery, such a Plaintiff is entitled to only one recovery of damages.

DAMAGES.

For any Plaintiff that has proven his or her claim, you must consider that Plaintiff's claim for damages resulting from the death of their relative.  For any Plaintiff you found entitled to damages who was either legally married to the decedent, was a common-law wife, parent or child of the decedent, you may award damages for the physical and emotional pain and suffering,  emotional distress and mental anguish the Plaintiff has or will continue to suffer as a result of the death, as well as for the loss of companionship the Plaintiff has or will continue to suffer as a result of the decedent's death.  Damages must be specific to each plaintiff.

Additionally, you may award damages to the Plaintiff for the physical and emotional pain, suffering and mental anguish suffered by the Plaintiff's decedent prior to his death if you find that the death was not instantaneous. If there are multiple Plaintiffs suing for damages incurred by a decedent prior to his death, there can be only one recovery for the pre-death damages.

In determining the amount of damages, you should determine what amount has been proven by the Plaintiff by a preponderance of the evidence as full, just and reasonable compensation for the injuries described above, no more and no less. Such damages are not allowed as punishment and must not be imposed or increased to penalize Chiquita.

In determining an award for emotional and mental pain, suffering, mental anguish or loss of companionship, there is no fixed standard for determining such damages, nor does the Plaintiff have to introduce evidence of a monetary value of such elements of damage.  You will determine what amount fairly compensates the Plaintiff for his or her claim.  The award should be fair and just in light of all the evidence.

Of course, the fact that I have given you instructions concerning the issue of damages should not be interpreted in any way as an indication that I believe any Plaintiff should, or should not, prevail in this case.

Your verdict must be unanimous – in other words, you must all agree. Your deliberations are secret, and you'll never have to explain your verdict to anyone.

Each of you must decide the case for yourself, but only after fully considering the evidence with the other jurors. So you must discuss the case with one another and try to reach an agreement. While you're discussing the case, don't hesitate to reexamine your own opinion and change your mind if you become convinced that you were wrong. But don't give up your honest beliefs just because others think differently or because you simply want to get the case over with.

Remember that, in a very real way, you're judges – judges of the facts. Your only interest is to seek the truth from the evidence in the case.

When you get to the jury room, choose one of your members to act as foreperson. The foreperson will direct your deliberations and speak for you in court.

A verdict form has been prepared for your convenience.

[Explain verdict]

Take the verdict form with you to the jury room. When you've all agreed on the verdict, your foreperson must fill in the form, sign it and date it. Then you'll return it to the courtroom.

If you wish to communicate with me at any time, please write down your message or question and give it to the court security officer. The court security officer will bring it to me and I'll respond as promptly as possible – either in writing or by talking to you in the courtroom. Please understand that I may have to talk to the lawyers and the parties before I respond to your question or message, so you should be patient as you await my response. But I caution you not to tell me how many jurors have voted one way or the other at that time. That type of information should remain in the jury room and not be shared with anyone, including me, in your note or question.