UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-MD-01916-Marra

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION
_____/

**This Document Relates to:**

ATS ACTIONS

07-60821-CIV-MARRA (*Carrizosa*)
08-80421-CIV-MARRA (N.J. Action) (*Does 1-11*)
08-80465-CIV-MARRA (D.C. Action) (*Does 1-144*)
08-80508-CIV-MARRA (*Valencia*)
08-80480-CIV-MARRA (*Manjarres*)
10-60573-CIV-MARRA (*Montes*)
17-81285-CIV-MARRA (D.C. Action) (*Does v. Hills*)
18-80248-CIV-MARRA (*John Doe 1*)
_____/

**NON-WOLF PLAINTIFFS' EXPEDITED MOTION TO SEVER
WOLF PLAINTIFFS' CLAIMS FROM THE BELLWETHER 1B TRIAL**

Non-Wolf Plaintiffs, pursuant to Federal Rules of Civil Procedure 1, 21, and 42(b) and the Court's discretion to manage these MDL proceedings, hereby move to sever their claims from the Wolf-Plaintiffs' claims for the Bellwether 1B trial(s).[1] As will be demonstrated, forcing non-Wolf Plaintiffs and their clients to try a case with Mr. Wolf is a mistrial waiting to happen.

**I.     TODAY'S ATTACK AND PREVIOUS ATTACKS**

Most recently, Mr. Wolf egregiously violated this Court's order, DE 3019 by

---

[1] Non-Wolf Plaintiffs request expedited treatment under Local 7.1(d)(2) because the Bellwether 1B trial is scheduled to begin on July 15, 2024 and further request a ruling on the Motion by July 1, 2024. A ruling by that date, which is two weeks prior to the start of trial, is necessary to allow the parties to adequately prepare for the scope of the upcoming trial.

1

publishing the verdict on the Internet.[2]

    DE 3019 at 7, ¶4 provides:

> Plaintiffs' request for alternative relief [DE 3000] is GRANTED to the following extent: (a) Defendants are prohibited from publishing or using Plaintiffs' true names or other identifying information outside of any court proceedings (filings in the judicial record or in context of court hearings) and (b) **All parties are prohibited from disclosing any Plaintiffs or Individual Defendants' private email addresses, financial information**, medical information or psychological information **other than as necessary for litigation purposes (filings in the judicial record or in context of court hearings) and only after seeking and obtaining advance leave of Court**.

(Emphasis added.) While the first half of this provision expressly applies only to Defendants, the clear intention was to prohibit everyone from publishing the Plaintiffs' true names and financial information except as necessary in docket filings. Mr. Wolf's publication of the amounts of money in the verdict, in connection with the Plaintiffs' true names, constitutes "financial information" that should not be publicized outside the court docket without advance leave of the Court.

    When the non-Wolf Plaintiffs demanded that Mr. Wolf take down his postings, he responded with yet another baseless attack on the non-Wolf Plaintiffs:

> On Jun 14, 2024, at 2:04 PM, **paulwolf@yahoo.com wrote**:
>
> Jack [Scarola] - you are referring to my posting of DE 3811, which is a public filing from the docket of the case. The Court ordered that the plaintiffs can't proceed under pseudonyms, because there was no showing of danger in proceeding under their real names. So I don't understand the legal basis of your demand. **One reason to publish the names is the widespread fraud committed by your group.**
> Sincerely,
> Paul Wolf

---

[2] *See* https://www.scribd.com/document/741445145/Chiquita-Verdict-R-3811?fbclid=IwZXh 0bg NhZW0CMTAAAR17YUpbqTecucZ5uFxE5ej86ZKOSUJ1TqLy2SYxIDPDnWlm9ivUW 36SS QaemZmFrZWR1bW15MTZieXRlcw; https://www.facebook.com/asesoriaspaul/posts/pfbid02dMg4rDZ8yi1MCuKD17Pz8X58AM1k hKA1sdZmVUsMYr5L9ERG569ZQS6YZckXiBQRl. *See also*, Exhibit 1 (screenshot of the first page of scribd posting), Exhibit 2 (screenshot of the part of the verdict form with names and dollar amounts redacted by the undersigned), and Exhibit 3 (printout of the first page of FaceBook position)

2

(emphasis added).

The Court has been witness to the multiple other accusations of serious misconduct and the repeated expression of animosity directed by Mr. Wolf against Conrad & Scherer, Mr. Collingsworth, Mr. Scarola, Mr. Green, Boies Schiller & Flexner, and other non-Wolf Plaintiffs' counsel. Mr. Wolf has repeatedly refused to coordinate with other Plaintiffs' counsel, has refused to maintain confidentiality in the past and has persistently declined to commit to respecting both the work product and attorney-client privileges going forward. This conduct has prevented even voluntary coordination with other Plaintiffs' counsel. He has accused other Plaintiffs' counsel of all manner of improprieties. He has sued Boies Schiller, who remain counsel for the *Montes* Plaintiffs in this action, and has filed a bar complaint against attorney Terry Collingsworth.

The Court observed the harmonious and efficient way in which five Plaintiffs' groups worked in the recently completed Bellwether 1A trial. That will not be possible with Mr. Wolf. As Mr. Wolf has written in this case:

> **[I]t will not be possible to develop a working relationship** with Conrad & Scherer after the negative history we have had so far. **It will not be in the plaintiffs' interest to force us to work together.**

Response of Paul Wolf to Court's Order of August 28, 2008. DE 135 at 7. (emphasis added).

Indeed, given Mr. Wolf's past conduct, it is more likely than not that a trial that includes Mr. Wolf will result in a mistrial, squandering the parties' and the Court's resources.

## II.   ADDITIONAL BACKGROUND

The Court has witnessed the accusations and acrimony displayed by Mr. Wolf against other Plaintiffs' counsel, and his refusal to coordinate with them in a productive manner, for over 15 years. Plaintiffs therefore include only a few examples of this history.

Mr. Wolf initially did coordinate with other Plaintiffs' counsel, but his rift with Mr.

Collingsworth and Conrad & Scherer – as well as his questionable litigation choices – was evident early on. The Court's initial case management order, DE 67, was issued on June 2, 2008; it was generally a procedural order, including a requirement to submit a "designation of lead counsel for each party." *Id.* at 3. This simple request led to a motion to compel compliance by Chiquita, as Mr. Wolf could not agree with his then-co-counsel, Mr. Collingsworth, on who was to be designated – and this dispute apparently arose out of Mr. Collingsworth's decision to join Conrad & Scherer. *See* DE 76 at 2. Mr. Wolf, who was at that point three years out of law school, insisted on being named lead counsel for over a hundred plaintiffs. *Id.*

The Court ordered the D.C. case to name a single lead counsel, DE 102, and when Mr. Wolf and Mr. Collingsworth still couldn't agree, ordered them to submit their "qualifications to act as lead counsel," among other things. DE 130 at 2. In response, Mr. Wolf filed a document stating, among other things:

- That the interests of his and Mr. Collingsworth's clients would not be "served by having both of us trying to work on their cases"

- The he "believe[d] it will not be possible to develop a working relationship with Conrad & Scherer after the negative history we have had so far"

- That "[i]t will not be in the plaintiffs' interest to force us to work together"

- That in his "weakest cases, the victim had no known relation to the banana industry and simply disappeared one day without a trace"

- That he also represented clients who were either "killed by the FARC, before 1997, or after 2004"

DE 135. Mr. Wolf and Mr. Collingsworth subsequently filed a stipulation designating Mr. Collingsworth as lead counsel. DE 144.

That détente did not last, however. In August 2012, liaison counsel Jack Scarola "announced his intent to exclude Mr. Wolf from participation in any future communications between plaintiffs' MDL counsel," and in October Mr. Wolf was subsequently removed from the Plaintiffs' counsel's

4

email list. DE 1188 at 5. The exclusion decision was made because Mr. Wolf refused to participate in group decision making on litigation strategy. *See* DE 968-1 ¶¶ 19-23. In November of the same year, Mr. Wolf filed suit against Boies Schiller & Flexner, which is still counsel of record for the *Montes* Plaintiffs, in the District of Columbia. *See Wolf v. Boies, Schiller & Flexner LLP*, No. 12-cv-01855-RJL (D.D.C. filed Nov. 15, 2012). In that litigation, Mr. Wolf alleged that Boies Schiller's retainers were "obtained by fraud," DE 600 at 1, and also alleged that all Plaintiffs' counsel were engaged in creating "an illegal monopoly for legal services under the Sherman Act," DE 1 in No. 13-80146 ¶ 37. Despite this split, however, Plaintiffs' counsel tried to continue litigating with Mr. Wolf, approaching him about a joint strategy for the interlocutory appeal that was proceeding in 2013. Mr. Wolf's reaction to this overture was to copy Chiquita's counsel, thereby revealing Plaintiffs' confidential attorney communications, which ended any hope of continuing to coordinate on litigation strategy. *See* DE 968-1 ¶¶ 24-27.

In 2015, when the parties were discussing potential Hague Convention depositions of paramilitary witnesses, Mr. Wolf emailed Plaintiffs' counsel and Chiquita's counsel stating that he wished to "participate in Fredy Rendon's deposition," but that he would "oppose" the deposition "if we do not participate. We have the right to cross examine the witnesses **and are adverse to Mr. Simons' group**." *Id.* ¶ 33 (emphasis added). Although Mr. Rendon did not appear at his deposition, Jesus Ignacio Roldán did, and Mr. Wolf refused to pay his share of the expenses for that deposition – requiring a motion and a court order to compel him to do so. DE 968; DE 1188.

Mr. Wolf also voluntarily produced a number of confidential work product communications, dating from the time when he was privy to Plaintiffs' counsel's joint discussions, in response to Chiquita's discovery over alleged witness payments. After Plaintiffs' counsel raised objections to this production, Chiquita agreed to segregate it and, with respect to documents for which other

5

counsel claimed privilege, filed these materials *in camera* for the Court's review. *See* DE 803. Plaintiffs' counsel produced a privilege log for the Court, DE 809; the Court subsequently sustained Plaintiffs' assertions of privilege over all but portions of one document, Mr. Wolf's own declaration. *See* DE 872 at 6. This effectively amounted to a ruling that Mr. Wolf had inappropriately chosen to disclose confidential Plaintiffs' counsel work product with Chiquita.

The Court subsequently issued an order in which it emphasized that Mr. Wolf was not at liberty to disclose these confidential communications:

> To the extent Mr. Wolf was made privy to protected communications before his withdrawal from the circle of plaintiffs' counsel . . .those communications remain privileged and he is not at liberty to disclose the contents of such matters without prior ruling upon any contested issue by the Court. In this vein, the Court emphatically now cautions Mr. Wolf against future unauthorized disclosure of any materials arguably protected by work-product or attorney-client privilege in this proceeding. To be clear, Mr. Wolf is without authority to make unilateral determinations regarding the discoverability of potentially privileged communications or documents simply by virtue of his possession or control of that information. . . .
> The Court will not countenance any future unilateral determinations by Mr. Wolf on the discoverability of information or documents in his possession or control, and Mr. Wolf is advised to conduct himself accordingly.

DE 1188 at 9. The Court also, however, noted its belief that "it does not have the authority to compel Mr. Wolf to participate jointly in strategic, confidential decision-making processes with other plaintiffs' counsel in this MDL proceeding, under shield of the common interest doctrine." *Id.* at 8.

Since then, Plaintiffs' counsel have kept Mr. Wolf at arms' length, not involving him in any confidential discussions, but regularly being subject to unfounded, libelous attacks by Mr. Wolf, in this Court and others. A few examples:

- In 2017, Mr. Wolf accused Mr. Simons of lying to the Court by claiming that Mr. Wolf had signed the Plaintiffs' confidentiality agreement. DE 1458 at 4. Mr. Simons subsequently filed the agreement with the Court. DE 1463-4.

6

- In 2020, Mr. Wolf told the Secretary of the Justice and Peace Tribunal that EarthRights attorneys had "tried to bribe" Raúl Hasbún "with $200,000 dollars." DE 2717 at 1. When Mr. Simons specifically told him that none of the Plaintiffs' counsel copied "has had any involvement in attempting to pay Mr. Hasbun anything" – copying Mr. Scarola, Mr. Green, and Mr. Wichmann – Mr. Wolf responded, "Of course you were. One of the last things I did before you excluded me from your communications was make a record of the attempts to bribe this witness. . . . I'm confident that Terry will testify against all of you eventually." DE 2717-2.

- Also in 2020, Mr. Wolf filed an opposition to an *amicus* brief at the Eleventh Circuit, which had been submitted by the Center for Justice and Accountability and the Harvard Law School International Human Rights Clinic in support of the non-Wolf cases – to which Mr. Wolf **was not a party** – arguing that the "intervenors' [sic] arguments are worse than cumulative, though, because they're based on tainted evidence obtained through bribes, or the promise of bribes"; accusing Plaintiffs' counsel of perpetrating "a fraud on the Court"; arguing without limitation that "[t]he 'non-Wolf' Appellants' legal strategy has been to pay imprisoned paramilitary commanders hundreds of thousands of dollars to testify that they gave the orders to kill particular (bellwether) plaintiffs"; accusing the Harvard law students of "participation in a conspiracy to defraud this Court." DE 115 in Appeal No. 19-13926 (11th Cir.).

- Also before the Eleventh Circuit – again, not merely declining to coordinate with other counsel, but actively working against them – Mr. Wolf opposed a motion to seal documents in the non-Wolf cases before the Eleventh Circuit. DE 132 in Appeal No. 19-13926 (11th Cir.). In that filing he accused "Attorney Scarola" of "refusing to produce witness bribery documents to Drummond." After Plaintiffs' counsel replied to Mr. Wolf's opposition, he filed his own "reply." DE 134 in Appeal No. 19-13926 (11th Cir.). In that document, Mr. Wolf claimed that "Earthrights used Colombian intermediaries to sign duplicate agreements with many of undersigned counsel's clients," that EarthRights had previously withheld filing claims "in furtherance of the RICO conspiracy," and that EarthRights "isn't even a law firm" but was acting "as Cohen & Milstein's alter ego." In a subsequent filing in this Court, Mr. Wolf claimed that "the representation of individuals in court by [EarthRights] constitutes the unauthorized practice of law." DE 2713 at 8.

- At the *Daubert* motion hearing in this case, Mr. Wolf stated that he wanted to exclude unspecified paramilitary witnesses that he believed had been paid, and went on to accuse Plaintiffs' counsel of criminal witness bribery:

    I have to say that they have paid or are paying the AUC. I cannot be

7

> in court and be part of a conspiracy like that. I'm sorry. And I realize that I have caused a lot of problems in this case, and I believe that Raul Hasbun will be paid $5 million. You don't steal $5 million from the top commander of the AUC.
>
> And that's not all the money that they owe him. They owe the AUC another million and a half dollars, and that's because Mr. Collingsworth borrowed a million and a half dollars from people who have already been convicted of laundering money for the AUC.
>
> I am talking about the Bilderbeeks. And Mr. Scherer is here. His firm did this, Terry Collingsworth. He was supposed to appear for a deposition. He said he has to be in court here, he has to be in court in Florida for the Chiquita case, so he can't appear in the deposition in the Drummond case.
>
> And that's a lot of money. So we have 6 1/2 million dollars that will be paid to the AUC. I am sure of that. If there's a settlement in this case, part of it is going to the AUC. And I don't know what I can do about that.

March 15, 2024, Transcript at 117:24-118:19.

As demonstrated by this last dispute in particular, Mr. Wolf does not agree with the trial strategy of other Plaintiffs' counsel. For example, Mr. Wolf retained separate experts (who were struck by the Court) and his clients are not included in Professor Kaplan's analysis. Also, Mr. Wolf has not contributed to any of the trial preparations costs that the other, cooperating counsel have shared.

### III.     RULES 1, 21, and 42(b)

Rule 1 mandates that "the court and the parties" should endeavor to "secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. See also advisory committee's note to 2015 amendment ("Rule 1 is amended to emphasize that just as the court should construe and administer these rules to secure the just, speedy, and inexpensive determination of every action, so the parties share the responsibility to employ the rules in the same way.") (emphasis added).

Rule 21 provides that "[o]n motion or on its own, the court may at any time, on just terms,

8

add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. *Aetna Life Ins. Co. v. Foundation Surgery Affiliates, LLC*, 358 F. Supp. 3d 426, 436 (E.D. Pa. 2018) ("A district court has broad discretion in deciding whether to sever a party pursuant to Federal Rule of Civil Procedure 21."); *Turner Const. Co., Inc. v. Brian Trematore Plumbing & Heating, Inc.*, No. 07-666, 2009 WL 3233533, at *3 (D.N.J. Oct. 5, 2009) ("District courts have 'broad discretion' in deciding whether to sever a party pursuant to Rule 21.").

District courts have invoked Rule 21 to sever the claims of individual plaintiffs to promote judicial economy. *See, e.g., Nelson-Devlin v. Eli Lily & Co.*, No. 14-2811, 2015 WL 5436700, at *4 (E.D. Cal. Sept. 15, 2015) (products liability action); *Arroyo v. PHH Mortg. Corp.*, No. 13-2335, 2014 WL 2048384, at *3–4 (E.D.N.Y. May 19, 2014) (finding severance of plaintiffs' claim appropriate under Rule 21 to promote judicial economy). Rule 42(b)?

Rule 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims." Fed. R. Civ. P. 42(b).

In addition, because it is managing a multi-district litigation, the "court retains wide discretion to ensure that the litigation progresses efficiently and without undue delay." *In re Zantac (Ranitidine) Prods. Liab. Litig.*, 546 F. Supp. 3d 1152, 1184 (S.D. Fla. 2021). *See also In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2020 U.S. Dist. LEXIS 172694, *4 (N.D. Fla. Aug. 20, 2020) ("In multi-district litigation (MDL) such as this, the Court has 'broad discretion to structure a procedural framework for moving the cases as a whole' and the authority to 'uncomplicate matters' to promote fair and efficient resolution of the litigation.").

IV.     ARGUMENT

Early on in this case, the non-Wolf Plaintiffs attempted for over four years to work with Mr.

9

Wolf, and met with him in West Palm Beach, Washington, D.C., and New York to map out strategy and discovery, all without success. Notably, Mr. Wolf has repeatedly refused to have confidential communications with other plaintiffs' counsel, and the Court has declined to compel him to do so. Mr. Wolf refused to maintain confidentiality of joint counsel discussion. He shared confidential information obtained from non-Wolf Plaintiffs' counsel with Chiquita, which the Court subsequently found were privileged and should not have been produced.

While this Court may have discretion in determining whether to consolidate cases for trial, forcing other Plaintiffs' counsel to try a case together with Mr. Wolf would be an abuse of that discretion, for several reasons.

First, Mr. Wolf has repeatedly attacked other Plaintiffs' counsel—as recently as today. Unless he is specifically enjoined from doing so, he will undoubtedly do so before the jury, which could force the non-Wolf Plaintiffs to move for a mistrial. Moreover, Mr. Wolf's attacks are baseless, as he has repeatedly admitted that he has no personal knowledge of any of the alleged "witness payment" schemes he accuses Plaintiffs' counsel of – and other claims of Mr. Wolf's have been proven false.

Second, Mr. Wolf disagrees with Plaintiffs' counsel's trial strategy – and he is not included within it. Mr. Wolf apparently does not want to call any paramilitary witnesses or rely at all on the Hasbún indictment or the Mangones *sentencia*, and will likely call into question the reliability of these documents. Plaintiffs' counsel have relied on the testimony of Prof. Oliver Kaplan; Dr. Kaplan does not work for Mr. Wolf, and has not analyzed his clients' cases, and it would be confusing to the jury to omit them. Indeed, Mr. Wolf does not seem to think he needs much of the evidence that Plaintiffs put on in the 1A trial; on Facebook, Mr. Wolf previously posted, "We should have a very simple case, based on a guilty plea made by Chiquita in 2007, and not need

10

much more."[3]

Third, even if Plaintiffs' counsel could develop a common trial strategy with Mr. Wolf, they cannot do so in the absence of confidentiality – which Mr. Wolf has repeatedly refused and the Court has stated it lacks the power to order.

Fourth, Mr. Wolf would be unfairly free-riding on the efforts of other Plaintiffs' counsel. While other counsel have a common benefit agreement, Mr. Wolf is not part of this arrangement. Plaintiffs' counsel have already done Mr. Wolf a great favor by presenting the 1A case, and prevailing. Actually trying a case for him, when he has been attacking all other counsel for the past decade, would be manifestly unfair.

By contrast, allowing Mr. Wolf to try his cases on his own sometime soon after the Bellwether 1B trial would not prejudice him; indeed, he would not be constrained by other Plaintiffs' counsel. Further, the fact that he has yet to coordinate with other Plaintiffs' counsel at all indicates that he is fully prepared to litigate his trials on his own.

If the Court were to compel other counsel to try a case together with Mr. Wolf, which Plaintiffs' counsel are certain will result in a mistrial, it could only happen under the following conditions:

- The Court accepts the request of all non-Wolf Plaintiffs' counsel to appoint Mr. Scarola as lead trial counsel and orders Mr. Wolf to follow lead counsel's direction.

- The Court orders Mr. Wolf to hold all trial strategy communications – which must include *all* communications with other Plaintiffs' counsel from this point forward until the resolution of the trial – absolutely confidential and forbids Mr. Wolf from disclosing those communications to Chiquita or from making those communications public..

---

[3] Machine translation from Mr. Wolf's original Spanish post (*"Deberíamos tener un caso muy simple, basado en una declaración de culpabilidad hecha por Chiquita en 2007, y no necesitar mucho más."*). See https://www.facebook.com/asesoriaspaul/posts/pfbid02m75AnVNRh ZXPLNDAi7tpxBGNkEPFVHfKCmLZ9DqdeiRHax6UWFw9WWaUYXYrzjePl.

11

- Mr. Wolf must agree not to make any in-court or out-of-court statements critical of or adverse to other Plaintiffs' counsel.

- Mr. Wolf would be permitted to give a plaintiff-specific opening and closing.

- Mr. Wolf is required, at least 15 days in advance of trial, to contribute to pre-trial and trial costs and to agree to a common benefit arrangement for the time and costs expended by other Plaintiffs' counsel.

## CONCLUSION

As Mr. Wolf has written in this case and as previously noted in this Motion:

> **[I]t will not be possible to develop a working relationship** with Conrad & Scherer after the negative history we have had so far. **It will not be in the plaintiffs' interest to force us to work together.**

Response of Paul Wolf to Court's Order of August 28, 2008. DE 135 at 7. (emphasis added). For all of the reasons above, and to avoid a mistrial likely to be precipitated by Mr. Wolf's disturbed and obsessive behavior, the motion should be granted.

## Local Rule 7.1(a)(3) Certification

Pursuant to Local Rule 7.1(a)(3), counsel for the non-Wolf Plaintiffs conferred via email with all parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion. Mr. Wolf opposes the relief sought in this motion and Chiquita would not provide its position without first seeing what Plaintiffs would be arguing.

DATED: June 14, 2024.                                    Respectfully submitted,

                                                                                        */s/ James K. Green*
                                                                                        James K. Green
                                                                                        FL Bar No. 229466
                                                                                        **James K. Green, P.A.**
                                                                                        501 South Flagler Drive, Suite 306
                                                                                        West Palm Beach, FL 33401
                                                                                        jkg@jameskgreenlaw.com
                                                                                        Tel: 561-659-2029

                                                                                        Jack Scarola
                                                                                        FL Bar No. 169440

**Searcy Denney Scarola Barnhart & Shipley, P.A.**
2139 Palm Beach Lakes Blvd.
P.O. Drawer 3626
West Palm Beach, FL 33402
Tel: 561-686-6300
**Counsel for Plaintiffs**

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing document was filed with the Clerk of the Court using CM/ECF on June 14, 2024. I also certify that the foregoing document is being served this day on all counsel of record registered to receive electronic Notices of Electronic Filing generated by CM/ECF.

*/s/ James K. Green*