UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 08-MD-01916-MARRA

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION

_____/

**This Document Relates to:**

ATS ACTIONS

07-60821-CIV-MARRA (*Carrizosa*)
08-80421-CIV-MARRA (N. J. Action) (*Does 1-11*)
08-80465-CIV-MARRA (D.C. Action) (*Does 1-144*)
08-80508-CIV-MARRA (*Valencia*)
08-80480-CIV-MARRA (*Manjarres*)
10-60573-CIV-MARRA (*Montes*)
17-81285-CIV-MARRA (D.C. Action) (*Does v. Hills*)
18-80248-CIV-MARRA (*John Doe 1*)

_____/

**PLAINTIFFS' OPPOSITION TO DEFENDANT CHIQUITA'S RULE 50
MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW**

**INTRODUCTION**

Chiquita moved for judgment as a matter of law under Rule 50(a) on

Plaintiffs' Article 2356 "hazardous activities" claims. The Court immediately heard

argument and deferred ruling until after the verdict. Transcript Vol. 27 at 4:2-12:11

(June 5, 2024). Plaintiffs hereby respond in writing to Chiquita's Rule 50(a) motion.

Chiquita's motion is meritless. There is more than enough evidence for a

reasonable jury to conclude that Plaintiffs are entitled to relief on their hazardous

activity claims.[1]

First, there is abundant evidence that Chiquita engaged in "hazardous" activities. Chiquita argues that its farming was not a hazardous activity, but that is a red herring. Chiquita's years-long funding of a terrorist organization involved in the widespread murder of innocents is at issue, not its agricultural practices. And Chiquita's motion does not contest that its facilitation of the AUC guns and drug shipments were hazardous activities, nor could it.

It should go without saying that providing years of funding to, and importing thousands of automatic weapons and millions of rounds of ammunition, facilitating kidnappings and smuggling drugs for an incredibly brutal terrorist organization is hazardous activity. A reasonable jury could conclude as much.

Second, Chiquita does not deny that Plaintiffs presented evidence that Chiquita's hazardous conduct was the cause of Plaintiffs' harm under the "causation" standard this Court properly adopted. Instead, it yet again presses the same argument for a "but-for" causation standard that the Court has rejected over and over again.

The motion should be denied.[2]

---

[1] Chiquita's motion cannot change its liability; Article 2356 was only one of two independent bases upon which the jury held Chiquita liable. DE 3811 at 3-6 (verdict).

[2] Chiquita complains in a footnote that it was prejudiced by the "revival of the Article 2356 claim merely two weeks before trial." DE 3792 at 1, n.1. There was no "revival," since the claims were never dismissed. The Court clearly stated in its opinion denying summary judgment on the 1B bellwether claims that "it is unnecessary to reach Plaintiffs' alternative theory of no-fault civil liability under the Colombian Civil Code, premised upon Chiquita's alleged commission of

## STANDARD

A motion for judgment as a matter of law may be granted only if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the [non-moving] party on that issue." Fed. R. Civ. P. 50(a)(1). "[T]he court must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party." *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1560 (11th Cir. 1995). The standard mirrors that for summary judgment; if reasonable minds could differ as to the import of the evidence, a verdict cannot be directed. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986).

## ARGUMENT

### I.   Whether Chiquita's activities were "hazardous" is a fact question for the jury.

The Court was correct to submit the question of whether Chiquita engaged in hazardous acts to the jury. It is a fact question. Chiquita's claim that whether its conduct was hazardous is a legal question is wrong. Under Colombian substantive law, "hazard is a question of facts," Supreme Court of Justice, Civil Cassation Chamber, Verdict of October 25, 1999 (excerpted translation in DE 2345-1 at 97); *accord* DE 3654-6 at 93 (Supreme Court of Justice, Civil Cassation Chamber, Verdict of December 19, 2018), and thus under U.S. procedural law, it is for the jury

---

'hazardous activity' (funding an illegal notorious terrorist group)," DE 3238 at 82 n.51, which the Court incorporated into its order denying summary judgment on the 1A bellwether claims. *See* DE 3239 at 15.

to decide based on the specific facts and evidence. *E.g.*, *Proctor v. Fluor Enters., Inc.*, 494 F.3d 1337, 1348 (11th Cir. 2007) (jury decides questions of fact).

Chiquita's claim that Florida law controls "because Colombia is a civil law country" in which "every issue is decided by the Court" is a *non sequitur*. DE 3792 at 3. Although Colombia courts decide facts because there are no jury trials, Colombia still distinguishes legal issues from fact issues. As the Court suggested, under Chiquita's approach, the Court, not the jury, would decide *all* fact issues. Transcript Vol. 27 at 9:7-8. Since Colombia views these questions as questions of fact, they are jury questions here.

Even if the Court were to now change its earlier decision and determine that whether Chiquita's conduct is a hazardous activity is a legal question, the result should be the same: Chiquita's acts were hazardous. This is an easy call. Providing funding to the AUC while admittedly knowing the funds were being used by violent terrorists to, among other things, buy guns, is obviously "hazardous." Indeed, that is why it was a federal crime. Likewise, facilitating the AUC's gun and drug smuggling are also obviously hazardous acts.

## II.   Plaintiffs have presented sufficient evidence to prevail on their hazardous activity claims.

Chiquita asserts that the "undisputed" evidence at trial shows that: (1) Chiquita did not engage in any "hazardous" conduct giving rise to liability; and (2) there is an insufficient link between Chiquita's acts and Plaintiffs' injuries. DE 3792 at 3-4. They are wrong on both counts.

### A.   Plaintiffs presented evidence at trial from which a jury could

> **conclude, as the jury did, that Chiquita engaged in hazardous activities.**

> **1.    Funding, and facilitating the smuggling of drugs and guns for a brutal terrorist organization are hazardous activities.**

This Court has already held, in charging the jury, that "[a] hazardous activity is one that increases risk to members of the community which are beyond those to which members of the community are normally exposed." DE 3810 at 21.[3] Abundant evidence presented at trial supports the jury's finding that Chiquita engaged in hazardous activities. A few examples should suffice.

Plaintiffs presented evidence that the AUC was incredibly brutal. Charles Keiser acknowledged that they were "engaged in an extremely violent campaign," that "they would kill anybody that they believed to be leftwing sympathizers," and that "the AUC's tactics were even more brutal than the guerrilla's tactics." May 28, 2024, Trial Transcript at 207:5-20. Mr. Ordman agreed that "the AUC was a very well-known organization, known to be violent, known to be involved in drug trafficking, known to be involved in kidnap, torture, et cetera." May 21, 2024, Trial Transcript at 208:8-10.

Nonetheless, Chiquita paid the AUC for at least seven years, as it admitted

---

[3] *Accord* Supreme Court of Justice, Civil Cassation Chamber, Verdict of August 24, 2009 (excerpted in Arrubla Decl., DE 2345-1 ¶ 96) ("Liability reverts to the person who carries out an activity that may be seen as generating risks or hazards for the community, given that it increases such risks and hazards to which people are normally exposed and, therefore, the person who carries out such activities . . .will be held liable"); DE 3654-6 at 91 (Supreme Court of Justice, Civil Cassation Chamber, Verdict of December 19, 2018).

in the Factual Proffer. *See* Plaintiffs' Trial Exhibit 583. Moreover, evidence at trial demonstrated how these payments increased the AUC's capacity to carry out its brutal campaign of violence. For example, Prof. Oliver Kaplan testified that "one of the ways that [the AUC] recruited individuals" was through paying salaries, and that Chiquita's payments in 1997 alone would have covered 40 to 50 percent of these salaries for that year. Tr. Vol. 15 at 95:14-96:14. AUC Commander Salvatore Mancuso likewise confirmed the AUC paid its foot soldiers $250 to $300 per month during the relevant time period. Mancuso Gomez Tr. at 47:16-48:02. The $1.7 million Chiquita paid to the AUC would have covered 5,666 to 6,800 monthly salaries for the AUC's fighters.

Given the evidence of the AUC's brutality and notoriety, and the value the payments provided to the AUC, a rational jury could conclude, as the jury did, that Chiquita's payments to the AUC "increase[d] risk to members of the community which are beyond those to which members of the community are normally exposed." DE 3810 at 21.

There was also evidence at trial that Chiquita facilitated the importation of guns and ammunition for the AUC, Tr. Vol. 6 at 163:11-164:2, 164:18-165:5, 166:10-19, 169:23-170:6; Bello Arrieta Dep. Tr. at 45:18-20, 46:1-6, 46:10-13, 46:16-21, 46:24, 47:11-48:03, 48:7-9; 48:13-15, 48:18-22, 48:25-49:05, 52:20-21, 52:24-54:4, 53:7-8, and the export of drugs, Tr. Vol. 6 at 174:16-175:11, 175:22-176:2. A rational jury could, as this jury did, credit this evidence and conclude that providing funding and guns to a notoriously brutal terrorist organization that murdered thousands of

people increased the risk to community members, and therefore is a hazardous activity.

> ### 2. Chiquita's arguments that it did not engage in hazardous activities are meritless.

Chiquita's surprising claim that its acts were not "hazardous" is predicated on a number of errors. *First*, Chiquita misstates the law by asserting that a "hazardous" activity must involve an "extraordinary" hazard or risk. DE 3792 at 4. Chiquita has already made this argument in its proposed jury instructions, DE 3653 at 111, and the Court rejected it in charging the jury that a hazardous activity is one that increases risk to community members beyond those to which they are normally exposed. DE 3810 at 21.

And with good reason. As the doctrine's name demonstrates, liability is based "hazardous" or "dangerous" activities, not "extraordinarily" hazardous activities. Chiquita's gloss of "extraordinary" is not supported by the authorities. Chiquita cites its expert who, in turn, cites a sentence from an 86-year-old Colombian case dating to the early days of the hazardous-activity doctrine. DE 3792 at 4 (citing DE 3653-1 at ¶ 9). Moreover, that language does not purport to say that a "hazardous activity" must actually be an "extraordinarily hazardous activity"; it merely lists some activities and remarks that they "inherently have extraordinary dangers." DE 3653-1 at ¶ 9. Subsequent Colombian caselaw does not add the "extraordinary" requirement that Chiquita seeks.[4] As even Chiquita acknowledges, activities as

---

[4] *See, e.g.*, DE 3654-6 at 90 (Supreme Court of Justice, Civil Cassation Chamber, Verdict of December 19, 2018) ("[T]his court has referred to risk, to the potential

mundane as "operating . . . an automobile" have been found to be hazardous

activities. DE 3792 at 4 (quotation marks omitted). Chiquita's expert agrees. *See*

Santos Decl., DE 3653-1 ¶ 11 ("driving a vehicle" is a hazardous activity"). There is

nothing "extraordinary" about driving a car.

*Second*, Chiquita lists examples of hazardous activities, for no apparent

reason. DE 3792 at 4-5.[5] Chiquita does not claim that the doctrine is *limited* to

these examples. It is not. And the examples show by comparison that the conduct

here is hazardous; a rational jury could conclude that providing money to known

terrorists and helping them smuggle weapons and narcotics is at least comparable –

if not far more dangerous – than the examples Chiquita gives.

As Defendant's expert noted in his report, a wide range of activities have

been found to be hazardous activities, including not only "driving a vehicle," but

also activities like "operating a train," and "constructing infrastructure." DE 3653-1

(Santos Ballesteros Report) ¶ 11. Other examples discussed in the caselaw include

"the use of a tractor" and "operation of elevators." DE 3654-6 at 89-90 (Supreme

---

danger inherent to the thing or activity, to the imbalance and multiplication of
forces and energies, to the inability to control them in order to prevent their effects,
among the most usual topics."); Supreme Court of Justice, Civil Cassation Chamber,
Verdict of August 24, 2009 ("Liability reverts to the person who carries out an
activity that may be seen as generating risks or hazards for the community . . . ."
(excerpted in Arrubla Decl., DE 2345-1, ¶ 96)).
[5] It notes that hazardous activities "include[] activities such as maintaining 'a
warehouse for flammable substances, an explosive factory,' or operating 'a railway
or an automobile.'" *Id.* (quoting DE 3653-1 ¶¶ 7-9; 19). Chiquita also states that
Article 2356 gives three examples: (1) recklessly firing a gun; (2) removing the slabs
of a ditch without the necessary precautions to prevent persons from falling in; and
(3) leaving a fountain, which crosses a road, in such a state as to cause harm to
travellers. *Id.*

Court of Justice, Civil Cassation Chamber, Verdict of December 19, 2018). These examples show that the jury's finding that Chiquita engaged in hazardous activity was well founded. Providing support to paramilitary terrorists is clearly more hazardous than driving.

Chiquita proposed including these examples in the jury instructions. DE 3653 at 111; *see also* DE 3654 at 11. The Court declined to do so. DE 3810 at 21-23. Nothing about the examples suggests the Court should now overturn the jury's verdict.

*Third*, Chiquita defines its own conduct at a level of generality that would render the hazardous activity doctrine meaningless. Chiquita argues that its "agricultural activities" are not hazardous, as if the jury found Chiquita liable for merely growing bananas. DE 3792 at 5. Chiquita also claims that transferring money can *never* be a hazardous activity, as a matter of law. *Id.* But one hazardous activity here is not "transferring money," it is funding an extremely violent terrorist group. And what about the guns and drugs? Facilitating those shipments are obviously hazardous acts.[6]

No activity is inherently dangerous when defined at the level of generality Chiquita uses here. For example, the Colombian Supreme Court has found that "transporting hydrocarbons is dangerous." DE 3654-6 at 96 (Supreme Court of Justice, Civil Cassation Chamber, Verdict of December 19, 2018). At Chiquita's

---

[6] Chiquita "does not concede" this, but apparently does not contest it here either. DE 3792 at 6, n.4.

level of generality, however, that could be described as "transporting commodities," which disguises the central fact that oil and gas are particularly dangerous. Likewise, one could say that "turning a wheel" or "moving one's finger" are not inherently dangerous, but steering a vehicle or pulling a trigger obviously are.

Here again, Chiquita tries to revive the same arguments the Court has already rejected in crafting the jury instructions. DE 3653 at 111-12; DE 3654 at 14-15; DE 3810 at 21-23. The Court was right then, and there is no basis to overturn the jury's decision now.

*Fourth*, Chiquita's claim that even if it assisted the AUC's terrorist acts, that does not show that *Chiquita's* activities were hazardous is wrong. DE 3792 at 5. Chiquita cites back to its expert's discussion of caselaw regarding club owners that failed by their omissions to prevent terrorist acts; the same discussion Chiquita presented in support of its jury instruction that the Court rejected. *Id*. (citing DE 3653-1 ¶¶ 17-18. But Chiquita was no passive bystander that failed to intervene to stop the AUC's terrorism. The evidence demonstrated, and the jury found, that Chiquita knowingly and actively *facilitated* the AUC's reign of terror. That is a hazardous act. A defendant that foreseeably enables terrorist violence is liable to the victims of that violence. *See* DE 3654-6 at 127-28 (Supreme Court of Justice, Civil Cassation Chamber, Verdict of December 19, 2018)(finding oil pipeline operator liable under the hazardous-activity doctrine for damage caused by a terrorist attack on the pipeline because the attack "should have been foreseen").

10

*Last*, Chiquita argues that Plaintiffs offered no expert testimony about whether Chiquita's activities were hazardous. But this is a question a jury can determine for itself. A jury does not need an expert to tell it that providing guns and money to terrorist organization is dangerous. Regardless, Plaintiffs *did* present expert testimony on the extreme danger the AUC posed to the local civilian population and the extent to which Chiquita's payments increased its capacity to commit violence. *See generally* Tr. Vol. 14 at 110:15-124:3; *see also* Tr. Vol. 15 at 95:14-96:14.

**B.     Plaintiffs presented sufficient evidence to support the jury's finding of an adequate causal link between Chiquita's acts and the murders of Plaintiffs' loved ones.**

Chiquita's claim that Plaintiffs did not show a sufficient causal link between Chiquita's acts and the murders again recycles arguments this Court has already rejected.

Chiquita argues that "Plaintiffs must prove that the harm to Plaintiffs and their decedents would not have occurred but for Chiquita's conduct." DE 3792 at 7. But this Court has repeatedly rejected Chiquita's proposed "but for" causation standard. E.g., 4/24/2024 Tr. at 5 ("Plaintiffs do not have to prove that without the assistance or support of Chiquita's, either monetary or other types of contribution that they may have made to the AUC, that the deaths would not have occurred."); DE 3238 at 77. Indeed, this Court specifically stated "I am not changing my ruling on that." 4/24/2024 Tr. at 5.

Chiquita raised the same but-for causation argument it raises here in its proposed hazardous activity jury instruction, DE 3653 at 112-13, DE 3654 at 9-11,

15-16, but the Court rejected it. DE 3810 at 21-23. Chiquita nonetheless claims that this Court's ruling that "but for" causation is not required under Article 2341 does not apply to Article 2356. But Chiquita cites no authority suggesting that a hazardous activity claim somehow requires a more stringent nexus showing than an Article 2341 claim. To the contrary, in its own proposed jury instruction, Chiquita asserted that "[w]ith respect to causation, the same law that applies to liability for negligence applies to liability for strict liability." DE 3653 at 112. The Court applied the same standard to both claims. DE 3810 at 17-18, 21-23.

Chiquita also repeats its claim from its proposed jury instruction that if a third-party's actions are the cause of the harm, a defendant's liability is negated or absolved. DE 3792 at 7; DE 3653 at 113; DE 3654 at 16-17. But that argument is plainly inconsistent with Colombian law and, furthermore, the Court did not accept that argument either. DE 3810 at 21-23.

Here, as in its jury instruction argument, Chiquita misleadingly excerpts a quotation cited by Plaintiffs' expert Jaime Alberto Arrubla-Paucar, DE 2363-1, ¶ 96, and takes it out of context.[7] Justice Arrubla clearly concludes his analysis in paragraphs following the excerpted quotation:

> In my judgment, the fact that certain persons finance, arm or actively support illegal groups supposes the creation of hazards for the community, insofar as these activities increase the level of risk to which people are normally exposed. Accordingly, such persons may be liable for the damages that such groups caused to the victims, …

---

[7] The decision Arrubla is quoting makes the undisputed point that there is no need to prove "fault" in a Hazardous Activities claim and that a defendant needs to follow the normal rules of making out the elements of a proper defense.

> An example of an illicit hazardous activity is the financing or sponsorship of illegal armed groups …
>
> It will suffice for the victim to prove the hazardous activity carried out by the agent and the damages suffered by the victim.

Arrubla Decl., DE 2363-1, ¶¶ 100, 102. Justice Arrubla's declaration, taken as a whole, fully supports the proposition that financing terror is a hazardous activity and that victims may recover against the financier for the damages caused by the terror group.

Chiquita's argument that a third party's involvement "negates" or "absolves" liability is refuted by its own authority, as Plaintiffs explained during the debate over the jury instructions. June 5, 2024 Tr. at 6:7-8:1. The Colombian Supreme Court, interpreted Article 2356 (Hazardous Activity) to impose liability on an oil pipeline operator for damages caused by a third party – in that case, the FARC. DE 3654-6 at 127-28 (Supreme Court of Justice, Civil Cassation Chamber, Verdict of December 19, 2018). The Supreme Court found the pipeline operator liable under the hazardous activity doctrine for damage caused by the FARC's terrorist attack on the pipeline, specifically concluding that the pipeline could not prove its asserted defense because the guerrilla attacks were foreseeable.[8]

Chiquita provides no reason for the Court to reconsider its jury instruction rulings here. It just cites the same materials the Court has already found

---

[8] The Colombian court analyzed the extraneous cause defense, which Chiquita does not deny is an *affirmative* defense. *See* Santos Ballesteros Decl., DE 3574-4 ¶ 70; Rueda Decl., DE 3572-2 ¶ 30; Arrubla Decl. DE 2363-1, ¶ 97-98; DE 3792 at 7, n.6. The affirmative defense of duress or coercion is conceptualized within and has the same elements as extraneous cause. Rueda Decl., DE 3572-2, ¶ 35; *accord* Arias Decl, DE 2769-4 ¶¶ 18, 20, 22-40.

unpersuasive when it crafted the jury instructions. DE 3792 at 6-7.

Here, it is undisputed that the AUC's terrorism was well known, and it was thus foreseeable that the AUC would use the resources Chiquita gave to it to further its terroristic goals, as the jury found. DE 3811 at 5 ("Did the Plaintiffs prove by a preponderance of the evidence that in conducting a hazardous activity, Chiquita knowingly provided substantial assistance to the AUC sufficient to create a foreseeable risk of harm to others, including that Plaintiff's relative?  YES").

Chiquita's other arguments are equally meritless. It half-heartedly claims there is no evidence as to who murdered Plaintiffs' loved ones. DE 3792 at 8. But as the jury found, there is abundant evidence that it was the AUC. *See e.g.* Tr. Vol. 11 at 73:16-74-7, 77:15-24; Tr. Vol. 12 at 37:4-15; Vol. 14 at 139:24-140:10. There is also ample evidence, as discussed above, from which a rational jury could, as this jury did, conclude that providing funding and guns to a notoriously brutal terrorist organization that murdered thousands of people increased the risk to community members, and therefore is a hazardous activity.

## CONCLUSION

Chiquita has provided no basis for the Court to reverse its prior decisions or upend the jury's considered judgment. Chiquita's Rule 50(a) motion should be denied.

Dated: June 14, 2024                              Respectfully submitted,

                                                  */s/ Richard Herz__*
                                                  Richard Herz
                                                  EarthRights International
                                                  1612 K Street NW, Suite 800

15

Washington, DC 20006
Tel: 202-466-5188
rick@earthrights.org

*For all non-Wolf Plaintiffs*