UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-MD-01916-MARRA

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION
_____/

This Document Relates to:

**ATS ACTIONS:**

07-60821-CIV-MARRA (Carrizosa Action)
08-80421-CIV-MARRA (NJ Action)
08-80465-CIV-MARRA (Does 1-144/Perez 1-795 Action)
08-80480-CIV-MARRA (Manjarres Action)
08-80508-CIV-MARRA (Valencia Action)
10-80652-CIV-MARRA (D.C. Action) (Does 1-976)
10-60573-CIV-MARRA (Florida Montes Action)
17-80535-CIV-MARRA (Ohio Montes Action)
18-80800-CIV-MARRA (Does 1-144/Perez 1-795 Action)
18-80248-CIV-MARRA (NJ Action)
_____/

**NON-WOLF PLAINTIFFS' EMERGENCY MOTION TO ENFORCE
AND TO AMEND COURT ORDER (DE 3019)**

The non-Wolf Plaintiffs move to restrain attorney Paul Wolf from publicly posting the bellwether 1A verdict, which discloses both the true names of the Plaintiffs and the amount of money they may recover. Disclosure of this identifying and financial information is limited by the Court's Order Granting in Part and Denying in Part Plaintiffs' Motion for Renewed Protection Against Disclosure of Identities or in the Alternative for Protection Against Publication of Private Medical and Financial Information (DE 3019). Plaintiffs further move to amend provisions of that Order that expressly apply only to Defendants, to clarify that Mr. Wolf is similarly bound.

When the Court denied continued use of pseudonyms for most Plaintiffs in this case, the Court largely granted Plaintiffs' request for alternative relief – a

1

compromise in which the Plaintiffs' true names could be freely used **for litigation purposes**, but the parties would **not** use the names publicly outside the litigation. Nor would the parties publicize any financial or other private information except as necessary for litigation purposes. *See* DE 3019 at 7. The non-Wolf Plaintiffs – as well as the Defendants, so far as we know – have complied with this approach. Mr. Wolf has not.

Plaintiffs are filing this as an emergency motion because Mr. Wolf has posted, on a website linked to his Facebook page, the bellwether 1A verdict in unredacted format. Plaintiffs' counsel have not shared any details of the individual bellwether 1A cases with the media. Nonetheless, several Colombian media outlets have published the Plaintiffs' names, and we believe that Mr. Wolf's Spanish-language posting is likely to contribute to further dissemination of this information. Plaintiffs' counsel have contacted these media outlets, and many have agreed to remove the Plaintiffs' names, but until the source document is removed, this will be a constant game of whack-a-mole. Plaintiffs asked Mr. Wolf to remove the posting, pointing specifically to DE 3019, and Mr. Wolf has not done so. We therefore ask for immediate relief.

## BACKGROUND

In November 2021, the Court denied Plaintiffs' motion for continued protection of individual Plaintiffs' identities in this litigation, but granted significant alternative relief. In relevant part, the Court's Order states:

> 4. Plaintiffs' request for alternative relief [DE 3000] is GRANTED to the following extent: (a) Defendants are prohibited from publishing or using Plaintiffs' true names or other identifying information outside of any court proceedings (filings in the judicial record or in context of court hearings) and (b) All parties are prohibited from disclosing any Plaintiffs or Individual Defendants' private email addresses, financial information, medical information or psychological information other than as necessary for litigation purposes (filings in the judicial record or in context of court hearings) and *only after seeking and obtaining advance leave of Court.*

DE 3019 at 7 (emphasis in original). Part 4(a) was likely limited to Defendants because Plaintiffs' Motion, DE 3000, only sought to restrain Defendants – and this

2

was because Plaintiffs had no expectation that Paul Wolf, who has called himself a human rights lawyer, would willingly disseminate the names of the individual Plaintiffs. Part 4(b), however, expressly applies to all parties in this litigation.

The bellwether 1A verdict, including the Plaintiffs' names and the amounts of the jury awards, was entered on the docket on Monday, June 10. Nonetheless, although there has been substantial media interest in this case, Plaintiffs' counsel have not mentioned any of the Plaintiffs' names publicly, nor any identifying details of their individual cases. To our knowledge, their names have not appeared in any English-language media.

The names have, however, appeared sporadically in some Spanish-language media, and we believe Mr. Wolf's actions may be contributing to this. On Tuesday, June 11, Mr. Wolf made a Spanish-language Facebook post from his "Asesorias Paul" account that linked to a page on Scribd, an online documents repository, in which Mr. Wolf had uploaded the unredacted verdict.[1] *See* Ex. 1. A machine-translation of this post reads:

> As you may have read in the news, the jury in the first trial awarded a total of $38 million, or 140 billion pesos, to the families of eight people killed by the AUC in Colombia. One more person lost their case, but that is a nearly 90% success rate and huge damages. They took more than $2 million each, which is 8 billion pesos.
>
> The verdict was reached after about a day of deliberation. I thought this was very fast, as they only heard six weeks of testimony and were given hundreds of pages of evidence to read. It is a very long and complicated story when told, but the gist of it is very simple for anyone to understand.
>
> I think the precise wording of the jury instructions left the jurors with almost no choice. They had to decide whether "Chiquita knowingly provided substantial assistance to the AUC in the form of cash payments or other means of support, to a degree sufficient to create a foreseeable risk of harm." This is the negligence standard, which is one of the easiest theories to prove. The jury also found that the payments to illegals were "dangerous activities" under Colombian law, which

---

[1] *See* https://www.scribd.com/document/741445145/Chiquita-Verdict-R-3811?fbclid=IwZXh0bgNhZW0CMTAAAR17YUpbqTecucZ5uFxE5ej86ZKOSUJ1TqLy2SYxIDPDnWlm_9ivUW36SSQ_aem_ZmFrZWR1bW15MTZieXRlcw.

> imposed strict liability.
>
> The second trial will begin in mid-July. Judge Marra is organizing a status conference next week to plan for it. Although we (Asesorias Paul) had no clients in the first trial, in the next trial we have four. It should be much easier because much of the arguments in the first trial revolved around the admissibility of evidence, particularly with respect to videotaped testimony. You would need to hire a television studio to keep up with all this work. Witnesses who testified live would have to do it again, but it will be almost the same show, without much more effort.
>
> I almost didn't do anything in the first trial and I think it was better that way. The other plaintiffs' lawyers had about 20 lawyers in the courtroom all the time and didn't need my help. My contribution could be seen as negative, as I asked the judge to exclude the testimony of several paramilitary witnesses who were apparently bribed. He allowed the testimony, but did not allow extrinsic evidence of bribery, so it was not a problem after all. I really don't think they helped much, though. Most of them admitted, at one point or another, that the AUC used violence to enforce their vaccines.
>
> After the next trial, there is already another set of test cases selected, and this process of trying ten cases at a time could take a long time. But it is a lot of work and very expensive. And it has taken 17 years to get to this point. But now I believe that trials can be conducted quickly and easily, and that plaintiffs have an excellent chance of winning.

See Asesorias Paul,

https://www.facebook.com/asesoriaspaul/posts/pfbid02dMg4rDZ8yi1MCuKD17Pz8X58AM1khKA1sdZmVUsMYr5L9ERG569ZQS6YZckXiBQRl.

Where Plaintiffs' counsel have seen the individual Plaintiffs' names appear in Spanish-language media, we have systematically attempted to contact these media outlets to ask them to remove the names. Most have agreed to do so; it seems likely that they did not understand that the Plaintiffs had requested that their names not be used publicly. Mr. Wolf's post, however – by an attorney who represents clients in this consolidated proceeding – risks further dissemination of this information.

Shortly after discovering Mr. Wolf's posting, Plaintiffs' counsel emailed Mr. Wolf asking that the posting be withdrawn. In response, Mr. Wolf copied Chiquita's counsel, and wrote:

> Jack - you are referring to my posting of DE 3811, which is a public filing from the docket of the case. The Court ordered that the plaintiffs can't proceed under pseudonyms, because there was no showing of danger in proceeding under their real names. So I don't understand the legal basis of your demand. **One reason to publish the names is the widespread fraud committed by your group.**

*See* Ex. 2 (emphasis added). Plaintiffs' counsel then pointed Mr. Wolf specifically to DE 3019, noting that even if Mr. Wolf was not expressly restrained by part 4(a) of the Court's Order – even though this was surely not intended to allow Mr. Wolf to publicize the Plaintiffs' names – he **is** bound by part 4(b). Thus, Mr. Wolf should not have posted the verdict amounts in connection with the Plaintiffs' true names, which constitutes financial information. Plaintiffs' counsel indicated they would take this matter up with the Court if Mr. Wolf did not remove the materials; Mr. Wolf did not respond and both the verdict form and Mr. Wolf's Facebook posting remain online at this date.

## ARGUMENT

1. **Mr. Wolf has violated DE 3019 and must immediately remove his postings.**

Mr. Wolf remains bound by the Court's Order not to disclose any financial information of the individual Plaintiffs – unless doing so is "necessary for litigation purposes" and approved in advance by the Court. DE 3019 at 7. Mr. Wolf received no such permission. The Court's Order makes clear what "litigation purposes" is – "filings in the judicial record or in context of court hearings," *id.* – so even if Mr. Wolf had sought permission, he would not have received it.

Additionally, Mr. Wolf should have known that it was not appropriate to post the true names of the individual Plaintiffs in any public outlet. The Court's Order expressly prohibited Defendants from doing so. *See id*. The only likely reason that Mr. Wolf was not included in this part of the Order was that no one expected Mr. Wolf, a self-styled human rights lawyer, to do so.

Mr. Wolf's position that this is "a public filing from the docket of the case," Ex. 2, does not exempt him from the obligations common to participants in this

case. As a participant in the MDL, Mr. Wolf is subject to the Court's orders, and he also has easier – and free – access to docket filings, as compared with the news media or the general public. Indeed, although the true names of individual Plaintiffs have been used in multiple docket entries, we are not aware of any media sources publicizing these names based on these sources. Media publicity has generally only resulted when docket filings are then posted online.

Mr. Wolf's suggestion that publishing the Plaintiffs' names is necessary due to his unfounded allegations of fraud is no more availing. While Mr. Wolf's email is defamatory, and Mr. Wolf has repeatedly acknowledged that he has no direct evidence of any alleged fraud, there is also no mention of any alleged fraud in his Facebook post. Indeed, nothing in his Facebook post is tied to the individual identities at all.

There is no need for Mr. Wolf's post, and it violates DE 3019, and must be taken down immediately.

## 2. The Court should expressly subject Mr. Wolf to the same obligations as Defendants.

As noted above, the Court's order restraining participants in this case from publicizing the individual Plaintiffs' names, except as necessary for the litigation, only expressly applied to the Defendants. While Mr. Wolf should have known that the same underlying concerns would apply to him, the Court should make clear that the same obligations do apply.

Thus, Plaintiffs also seek that the Court amend part 4(a) of DE 3019 to expressly subject *all* Parties to the MDL to the same obligations.

### CERTIFICATION OF EMERGENCY

Pursuant to Local Rule 7.1(d)(1): After reviewing the facts and researching applicable legal principles, I certify that this motion in fact presents a true emergency (as opposed to a matter that may need only expedited treatment) and requires an immediate ruling because the Court would not be able to provide meaningful relief to a critical, non-routine issue after the expiration of seven days. I understand that an unwarranted certification may lead to sanctions.

In particular, this matter is an emergency because the continued publicization of the Plaintiffs' true names and financial information, outside the Court's docket and for no litigation purpose, is likely to cause dissemination of that information into Colombian media. Plaintiffs therefore request a ruling no later than Wednesday, June 19.

Dated: June 17, 2024            Respectfully submitted,

*/s/ Marco Simons*
Marco Simons
marco@earthrights.org
EarthRights International
1612 K Street NW #800
Washington, DC 20006
(202) 466-5188

*For all non-Wolf Plaintiffs*