## SETTLEMENT AGREEMENT

Chiquita Brands International, Inc. including its predecessors, its past and present subsidiaries and its past and present directors, officers employees, agents, and contractors (collectively, "Chiquita"), on the one hand, and the Wolf Plaintiffs (defined below), on the other hand (together, the "Parties") have agreed to resolve all claims that Wolf Plaintiffs did assert or could have asserted in the Actions (defined below) and agree that this settlement agreement ("Agreement") is binding on all of the Parties and contains all the material terms of their settlement.

### RECITALS

(A) "Wolf Plaintiff" and "Wolf Plaintiffs" are each and all, respectively, of the plaintiffs for the total 2,572 decedents set forth in the following five actions ("the Actions") filed by attorney Paul David Wolf which have been consolidated for pretrial purposes into the multidistrict litigation captioned *In re: Chiquita Brands International, Inc. Alien Tort Statute and Shareholder Derivative Litigation*, United States District Court for the Southern District of Florida, No. 08-01916-md-MARRA ("MDL 1916"):

   (1) *Does 1-144 v. Chiquita Brands International, Inc. and David Does*, United States District Court for the District of Colombia No. 1:07-cv-01048, upon transfer, United States District Court for the Southern District of Florida Nos. 0:08-cv-80465-KAM and 0:18-cv-61385 (Does 1-144 only per S.D. Fla. No. 08-1916, DE 2658);

   (2) *Does 1-976 v. Chiquita Brands International, Inc., Doe Corporations 1-10, and Does 11-25*, United States District Court for the District of Colombia No. 1:10-cv-00404, upon transfer, United States District Court for the Southern District of Florida No. 9:10-cv-80652-KAM;

   (3) *Does 1-677 v. Chiquita Brands International, Inc., Doe Corporations 1-10, and Does 11-25,* United States District Court for the District of Colombia No. 1:11-cv-00582, upon transfer, United States District Court for the Southern District of Florida No. 9:11-cv-80404-KAM;

   (4) *Does 1-254 v. Chiquita Brands International, Inc., Does Corporations 1-10, and Does 11-*25, United States District Court for the District of Colombia No. 1:11-cv-00583, upon transfer, United States District Court for the Southern District of Florida No. 1:11-cv-80405-KAM; and

   (5) *Does 1-2146 v. Cyrus Freidheim, Robert Olson, Robert Kistinger, Steven Kreps, Joel Raymer, and John Ordman*, United States District Court for the Southern District of Ohio No. 1:17-cv-00145-TSB, upon transfer, United States District Court for the Southern District of Florida No. 9:17-cv-80475-KAM.

EXHIBIT 1

1

Each of the five operative filed complaints in the Action with the true name of each Wolf Plaintiff was filed as DE 3110-1, DE 3110-2, DE 3110-3, DE 3110-4, and DE 3827-1. These filed documents are incorporated herein by reference and constitute the universe of Wolf Plaintiffs.

(B) Chiquita has defended itself in the Actions where it is a defendant and is indemnifying (or had indemnified) former Chiquita employees Fernando Aguirre, Cyrus Freidheim, the Estate of Roderick M. Hills, Sr., Charles Keiser, Robert Kistinger, Steven Kreps, Robert Olson, Joel Raymer, William A. Tsacalis, and Steven Warshaw in the Actions where they are defendants and have good defenses to liability.

(C) The Wolf Plaintiffs desire to settle with finality their claims asserted in the Actions for the consideration described herein now to avoid years of continued litigation at great expense and uncertain result.

(D) The Parties engaged in a mediation in July 2023 with periodic settlement negotiations thereafter, and then extensive settlement negotiations since April 22, 2024. The parties are aware of the jury verdict entered on June 10, 2024 in the MDL trial that did not involve any Wolf Plaintiff. The Wolf Plaintiffs believe, however, that the jury verdict will likely be reversed and vacated for a number of reasons, or at a minimum substantially reduced, including for, but not limited to, the following reasons: (i) the Court improperly consolidated and subsequently tried nine disparate claims including ones before and after the designation of the AUC as an FTO, and ones with and without Justice & Peace attribution to the AUC, all of which confused and mislead the jury and prejudiced Chiquita; (ii) the Court improperly charged the jury on Colombian statutory hazardous activity liability after the Court had previously dismissed all claims except for negligence-based liability and despite the fact that the Court—not the jury—should have been who determined whether Chiquita's activity were hazardous; (iii) the Court gave incorrect instructions as a matter of law on the fault element of Plaintiffs' Article 2341 claim, including directing the jury to find Chiquita at fault for violations of law for which Chiquita cannot be criminally liable as a matter of Colombian law or which were irrelevant to the reasonable businessperson standard under Colombian law; (iv) the Court refused to instruct the jury on causation under Colombian law and instead applied federal common law to the causation element, which was outcome determinative in light of the evidence admitted at trial; (v) alternatively, even if federal common law were to apply, the Court failed to give a legally correct instruction on knowing substantial assistance, ignoring both United States Supreme Court precedent and Eleventh Circuit precedent on knowing substantial assistance and secondary liability; (vi) alternatively, the Court improperly failed to follow Florida forum law on causation and secondary liability; (vii) the Court improperly charged the jury on damages; and (viii) the Court will, at a minimum, need to reduce damages pursuant to Colombian law caps on damages that are required by the Colombian Supreme Court.

(E) The Parties' intent and agreement is to compromise and settle every claim by each of the Wolf Plaintiffs that was—or could have been—brought in the Actions against Chiquita including its former directors, officers, and employees. The Parties' intent and agreement is also to settle every Wolf Plaintiff's claims in each of the Actions on a per-decedent, not per-claim, basis. The settlement is intended to pay out a fixed sum

per decedent to be divided by family members of the decedent who are Wolf Plaintiffs, provided that the Claimant files the paperwork mentioned herein no later than 18 months from the date of a final Settlement Agreement.

(F) The Parties shall promote this Agreement as an example of how adverse parties by settling and compromising their positions in good faith can help Colombia further heal after decades of horrendous violence.

(G) The Parties agree that murders by the AUC occurring during the time period of the payments listed in the Factual Proffer, from 1997 to February, 2004 are easier for the Wolf Plaintiffs to prove than the other claims and, therefore, have a higher settlement value. Therefore, only the Claimant for an individual murdered by the AUC during this time period with supporting documentation will be compensated at the Tier 1 level as further defined in Section 3 below.

NOW, THEREFORE, in consideration of the foregoing recitals, the promises, covenants and agreements herein, and the other good and valuable consideration set forth herein, the fairness, sufficiency and adequacy of which is hereby acknowledged, and intending to be legally bound, the Parties mutually agree as follows:

## 1. COOPERATION OF THE PARTIES

The Parties and their counsel agree to cooperate fully with each other to promptly execute all documents and take all steps necessary to effectuate the terms, conditions and administration including work conducted by the TPA of this Agreement. The Parties and their counsel further agree to cooperate in filing of a Joint Motion For a Show Cause Order why every Wolf Plaintiff should not have his/her claims dismissed for failure to prosecute unless he/she contacts counsel, Paul Wolf, within 18 months of the issuance of the order announcing his/her intention to participate or not participate in this settlement. *See* Exhibit A (Joint Motion). Mr. Wolf and other Plaintiffs' counsel have previously informed the Court of their problems contacting many of their clients who have cases pending before the Court in MDL 1916. *See* DE 3235 (listing relevant docket entries by Plaintiffs' counsel). The effectiveness of this Agreement is contingent upon the entry of such an order (the "Show Cause Order") as the only effective means to ensure a complete release of all Wolf Plaintiffs' claims.

## 2. THIRD-PARTY ADMINISTRATOR

The Parties hereby appoint Garretson, LLC as Third-Party Administrator ("TPA"). The qualifications of Garretson, LLC and its founder Matthew L. Garretson are set forth in Exhibit B (Declaration of Matthew L. Garretson, Esq. filed as DE 2773-2 on May 9, 2024 in *In re: Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Ventilator Products Liability Litigation*, MDL No. 3014, Western District of Pennsylvania, Misc. No. 21-01230 where Mr. Garretson was later appointed a Special Master, *see id.* at DE 2779). The TPA has the largest presence in Latin America of any third-party claims administrator. The TPA shall have authority to receive, review and evaluate the Claimant documentation discussed in Section 3 below. The TPA shall have authority to determine any deficiency based upon its review of the documentation

including the sufficiency of the release(s) by each Claimant and any other Wolf Plaintiff who has sought to recover from the death of the Claimant's decedent. The TPA shall finally determine and decide whether the Claimant has submitted the proper documentation to receive a Tier 1 or Tier 2 payment per Section 3 below. The TPA shall administer the settlement funds in escrow. The TPA shall disburse a Tier 1 or Tier 2 payment to a Claimant who the TPA has determined in its sole discretion has submitted the necessary documentation pursuant to Section 3 below. The TPA's determination shall be final unless the Claimant makes a request for reconsideration within five working days. The determination shall be reconsidered by the TPA within 15 working days. The TPA may affirm or modify its prior decision as to the submitted documentation. The determination of such request for reconsideration will be final and not subject to any further appeal.

The TPA in consultation with the Parties shall establish the necessary escrow account in accordance with this Agreement to facilitate the prompt payment of claims with the necessary documentation under Section 3 below and disposition of the Unclaimed Funds. The TPA shall use bilingual (Spanish and English) staff in performing its duties hereunder. The TPA shall have such additional authority as it decides is reasonably necessary to implement the terms of this Agreement.

The TPA retains authority to implement measures it deems necessary to prevent and protect against fraud including to identify and reject fraudulent claims for Tier 1 or Tier 2 awards pursuant to Section 3. The TPA shall make quarterly reports to the Parties including but not limited to an accounting of each disbursement from the settlement fund, the total number of claims paid, the total number of claims remaining, and the remaining balance of the settlement fund.

## 3. CONSIDERATION TO PLAINTIFFS

Settlement Fund

Chiquita shall pay $12,800,000 to the escrow account to be administered by the TPA in full settlement of the Actions (the "Settlement Fund") within five (5) business days of the Court's issuance of the Show Cause Order. Within that same period, Chiquita shall also pay $50,000 to Paul Wolf to set up an office and support staff to implement the terms of this Agreement. Chiquita shall separately pay the costs of the TPA which is not part of the Settlement Fund.

Pursuant to contracts with each Wolf Plaintiff, Plaintiffs' counsel Paul David Wolf shall receive at attorney fees thirty-three percent (33%) of the total recovery of $12,800,000 for a total of $4,224,000. The TPA shall pay such attorney fees on the following schedule: One-half (50%) within one business day of the deposit into the escrow fund of the $12,800,000 by Chiquita, one quarter (25%) upon the payment of the 750th claim hereunder, and one quarter (25%) at the end of eighteen (18) months, upon the dismissal with prejudice for failure to prosecute of any Wolf Plaintiffs who do not appear to file their documentation.

Payments to Paul Wolf on behalf of the Wolf Plaintiffs of the remainder of the Settlement Fund ($8,576,000) shall be made via two tiers as follows:

Tier 1 consists of each Wolf Plaintiff who is acting as the representative of the estate of his/her decedent (the "Claimant")—who shall distribute their portion of the settlement to the other

4

Wolf Plaintiff heirs as required by Colombian law—who provides the following documentation with an apostille of authenticity pursuant to Colombian law:

(a) a death certificate for that plaintiffs' decedent named in the Actions during the period of 1997-2004;

(b) the cedula of the Wolf Plaintiff seeking participation in the settlement;

(c) proof of relationship to the decedent (e.g., birth certificate, baptismal certificate, marriage license, death certificate or other next of kin official determination);

(d) evidence of AUC responsibility for the decedent's death in the form of Colombian government documents from agencies, including the *Fiscalia*, *Justicia y Paz*, *Unidad para la Atención y Reparación Integral a las Víctimas* (Victims' Unit, formerly Accion Social) showing a confession by the actual AUC perpetrator, sworn testimony/affidavit from an eyewitness who can identify the perpetrator as a member of the AUC, confession or conviction of an AUC Commander who can identify the actual AUC perpetrator, an AUC Commander accepted responsibility for the murder, or that the Victims' Unit recognized the decedent as a victim of the AUC including paying them compensation for the murder. These criteria are for settlement purposes only and in an effort to compromise and settle all Wolf Plaintiff claims. Chiquita expressly does not agree that all of the criteria mentioned above are sufficient to establish AUC involvement in a death in a legal proceeding. Each of the above documents must include an Apostille upon submittal to Paul Wolf and then review by the TPA.

The Claimant must submit this documentation to Paul Wolf, who shall review it and assist with correcting any deficiencies and obtain a signed Release of Claims in the form of Exhibit C from all Wolf Plaintiffs claiming for the death of the relevant decedent, before forwarding on the documentation to the TPA for final review and approval as set forth in Section 2 above. When accepted by the TPA, the TPA shall issue or cause to be issued payment in the amount of a full share (**$3,404.35**) to Paul Wolf for payment to the Claimant. The specific mechanics of this payment procedure shall be as the Parties and TPA mutually agree by separate writing.

Tier 2 consists of each Claimant who is unable to provide proof of governmental attestation (item (4) above) of the death to the AUC or for a death occurring outside the 1997-2004 window or for a claim based upon a death attributable to the FARC (including but not limited to all the Wolf Plaintiffs in *Does 1-254, S.D. Fla.* No. 1:11-cv-80405-KAM), which shall be in the amount of 40% of a full share or **$1,327.74**.

The Parties recognize that there may be funds remaining in the escrow account due to Tier 2 shares or Plaintiffs who do not appear within the 18 months disbursement window ("Unclaimed Funds"). The Parties that the Unclaimed Funds shall be spent on good works within the Plaintiffs' community, Apartadó, Colombia. When the amount of Unclaimed Funds is set after the passage of 18 months and the dismissal with prejudice of all Plaintiffs who do not appear, the Parties agree to negotiate in good faith and cooperate with the TPA to use the Unclaimed Funds to build a school or a hospital or similar project to benefit the entire Apartadó, Colombia community.

**4. GOVERNING LAW**

All questions with respect to the construction of this Settlement Agreement and the rights and liabilities of the Parties shall be governed by the laws of the State of Florida, without giving effect to its law of conflict of laws.

The Court shall have continuing and sole jurisdiction to resolve any dispute that may arise regarding the terms, conditions and implementation of this Agreement including without limitation the performance of the TPA.  The Parties and TPA hereby consent to such exclusive jurisdiction.

## 5.  NO ADMISSION OF WRONGDOING AND NONDISPARAGMENT

This Agreement is made to terminate any and all controversies, real or potential, asserted or unasserted, and claims for injuries or damages or any nature whatsoever, real or potential, asserted or unasserted, between Chiquita and the Wolf Plaintiffs.  Neither the execution and delivery of this Agreement nor compliance with its terms shall constitute an admission of any fault or liability on the part of Chiquita.  Chiquita in no way admits fault or liability of any sort and, in fact, Chiquita expressly denies fault and liability.  The Parties agree not to disparage one other and not make any public statement inconsistent with this Agreement.

## 6.  CONFIDENTIALITY

The TPA shall keep all documentation submitted by a Claimant confidential and shall not disclose such documents or information contained therein with Chiquita or any other person or entity, except upon prior written approval of Wolf Plaintiffs' counsel, Paul Wolf, unless required to be disclosed by subpoena, governmental authority, court order, or applicable law.

## 7.  ENTIRE AGREEMENT

This Agreement represents the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior contemporaneous oral and written agreements and discussions.  Each of the Parties covenants that he, she or it has not entered into this Agreement as a result of any representation, agreement, inducement, or coercion, except to the extent specifically provided herein.  Each Party further covenants that the consideration recited herein is the only consideration for entering into this Settlement Agreement and that no promises or representations of another or further consideration have been made.

## 8.  EXECUTION AND AMENDMENT OF AGREEMENT

The Parties agree to sign two copies of this Agreement and that each copy so executed with ink signatures shall constitute and be considered an original of this Agreement.  The TPA shall be given an exact copy of either original and may rely upon that exact copy in performing its duties and exercising its discretion as provided herein.

This Agreement may not be amended or altered except upon a writing signed by Paul Wolf and Thomas H. Stewart or other Blank Rome attorney representing Chiquita.

6

Dated June 18, 2024

_____
Paul David Wolf
Attorney for Plaintiffs
P.O. Box 60584
Colorado Springs, CO 80960
(202) 431-6986
paulwolf@yahoo.com

Attorney for Wolf Plaintiffs

_____
Michael L. Cioffi
Thomas H. Stewart
Blank Rome LLP
1700 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
(513) 362-8701/04
michael.cioffi@blankrome.com
tom.stewart@blankrome.com

Attorneys for Chiquita

Garretson, LLC
P.O. Box 2806
Park City, Utah 84060

By: _____

Printed name: Matthew L. Garretson

Third-Party Administrator

7

# Exhibit A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 08-MD-01916-MARRA/MATTHEWMAN**

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION

_____/

This Document Relates to:

**ATS ACTIONS:**

08-80465-CIV-MARRA (Does 1-144/Perez 1-795 Action) (Does 1-144 only)
10-80652-CIV-MARRA (Does 1-976 Action)
11-80404-CIV-MARRA (Does 1-677 Action)
11-80405-CIV-MARRA (Does 1-254 Action)
17-80475-CIV-MARRA (Does 1-2146 Action)
18-61385-CIV-MARRA (Does 1-144/Perez 1-795 Action) (Does 1-144 only)
18-80800-CIV-MARRA (Does 1-144/Perez 1-795 Action) (Does 1-144 only)

_____/

**JOINT MOTION OF WOLF PLAINTIFFS AND DEFENDANT CHIQUITA**
**FOR THE COURT TO ISSUE A SHOW CAUSE ORDER**

Wolf Plaintiffs and Defendant, Chiquita Brands International, Inc. including its former directors, officers, and employees ("Chiquita") have settled all the claims asserted in the above-captioned actions. One term of their Settlement Agreement requires the parties to move the Court for an order that each Wolf Plaintiff must contact Attorney Paul Wolf within 18 months of entry of the order either to participate in the settlement or state that they will continue litigating in the relevant action captioned above. The order should further provide that each Wolf Plaintiff must contact Mr. Wolf or show cause within 18 months after the order is entered why his or her claim should not be dismissed with prejudice for failure to prosecute. The Settlement Agreement expressly provides: "The effectiveness of this Agreement is contingent upon the entry of such an order (the 'Show Cause Order') as the only effective means to ensure a complete release of all Wolf Plaintiffs' claims." The parties, therefore, file this joint motion seeking such an order.

The Wolf Plaintiffs have been litigants in the above-captioned actions since 2007, 2010, 2011, and 2017 respectively.  While their counsel, Paul Wolf, has attempted in good faith to maintain contact with all Wolf Plaintiffs, due to the passage of time, Wolf Plaintiffs moving or dying, and other factors, Mr. Wolf has not been able to maintain contact with each of the Wolf Plaintiffs.  Likewise, not every Wolf Plaintiff has maintained contact with Mr. Wolf.  Not only do attorneys have a duty to communicate with their clients in litigation, but also litigants have a duty to communicate with their attorneys during litigation. *Pretzel & Stouffer v. Imperial Adjusters*, 28 F.3d 42, 45 (7th Cir. 1994) ("Maintaining communication during the course of litigation is the responsibility of both attorneys and their clients."). Numerous courts have so held. *See, e.g., Virtual Vision v. Praegitzer Indus. (In re Virtual Vision)*, 124 F.3d 1140, 1145 (9th Cir. 1997) ("We have made it abundantly clear in previous cases that litigants must make some reasonable effort to remain in contact with their attorneys and apprised of the status of their cases."); *Wiggins v. Daymar Coll. Grp., LLC*, 2015 U.S. Dist. LEXIS 173575, *111-14 (W.D. Ky. Dec. 29, 2015) (court found "an implicit obligation on the part of a client to keep his or her attorney informed of current contact information" and permitted plaintiffs' counsel to withdraw even as to "un-locatable" plaintiffs); *Doornbos v. Pilot Travel Ctrs. LLC*, 2008 U.S. Dist. LEXIS 125230, *7 (E.D. Tenn. Sept. 17, 2008) ("Because these [plaintiffs] have not contacted their counsel and have not returned their counsel's attempted contact, or kept their counsel aware of their current contact information, they have neglected their duties as participants in this litigation."). *See also* ABA, MODEL RULES OF PROFESSIONAL CONDUCT, Rule 1.4(a)(3), Comment 1 ("Reasonable communication between the lawyer and the client is necessary for the client effectively to participate in the representation").

The Wolf Plaintiffs' claims could not be resolved even at trial if they had not settled because a litigant must appear at trial for his or her case to be resolved by the jury. *See, e.g.*, DE 3949 at 2-3.  Any Wolf Plaintiff who does not respond to the show cause order would likewise fail to appear for trial.

The proposed show cause order is appropriate under the circumstances and well within the Court's discretion to manage this MDL. *Bahn v. Korean Airlines Co.*, 642 F.3d 685, 700 (9th Cir. 2011) ("In discretionary matters going to the phasing, timing, and coordination of the cases, the power of the MDL court is at its peak."); *Gaydos v. Guidant Corp. (In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.)*, 496 F.3d 863, 867 (8th Cir. 2007). ("MDL courts must be given greater discretion to organize, coordinate and adjudicate its proceedings, including the dismissal of cases for failure to comply with its orders."); *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1012 (5th Cir. 1977) (a court's "managerial power that has been described as 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'") (quoting *Landis v. North American Co.*, 299 U.S. 248, 254 (1936)).[1]

Indeed, "to ensure the orderly administration of justice, [a district court] has the authority and responsibility to set and enforce reasonable deadlines." *Lowe's Home Ctrs., Inc. v. Olin Corp.*, 313 F.3d 1307, 1315 (11th Cir. 2002). Eighteen months is a reasonable deadline for Wolf Plaintiffs to communicate with their undersigned counsel, Mr. Wolf, and either participate or not participate in the settlement.  And dismissal with prejudice is an appropriate sanction if they fail to do so. *See, e.g., Mutch v. PGA Tour, Inc.*, 2006 U.S. Dist. LEXIS 99849, at *5 (M.D. Fla. Jan. 25, 2006)

---

[1] Decisions of the former Fifth Circuit decided before October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

3

("Plaintiffs' counsel has made numerous appearances and filed numerous documents with the Court. However, Plaintiffs' counsel is unable to affirm to the Court that his clients . . . have even remained in contact with him throughout this litigation. In fact, Plaintiffs' counsel advised the Court that [Plaintiffs] have failed to respond to his numerous efforts to 'reach out' to them by telephone and in writing. In short, there is no indication that these individuals desire to pursue the suit they filed . . . .") (*report & recc. adopted by Mutch*, 2006 U.S. Dist. LEXIS 114527 (M.D. Fla., Jan. 18, 2006); *Diaz v. Jasmine Chen, Inc.*, 2014 U.S. Dist. LEXIS 55954, *5 (N.D. Tex. Mar. 19, 2014) (dismissing case because, inter alia, "Nor has Plaintiff maintained effective communication with his lawyer. The litigation cannot proceed under these circumstances . . . .") (*report & recc. adopted*, 2014 U.S. Dist. LEXIS 54643 (Apr. 18, 2014)).  Litigation must have finality and plaintiffs should not be permitted to unnecessarily delay the resolution of their claims by failing to maintain contact with their counsel and the Court.  Wolf Plaintiffs' own counsel agrees.

For all these reasons, the Court should enter the requested show cause order, a proposed copy of which is filed herewith and will be emailed to chambers in Word format.

4

DATED: June 21, 2024         Respectfully submitted,

_Paul David Wolf_
Paul David Wolf
P.O. Box 60584
Colorado Springs, CO 80960
(202) 431-6986
paulwolf@yahoo.com

Attorney for Wolf Plaintiffs

/s/ _Michael L. Cioffi_
Michael L. Cioffi (_pro hac vice_)
Thomas H. Stewart (_pro hac vice_)
BLANK ROME LLP
1700 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
Tel:   (513) 362-8701/04
Fax:   (513) 362-8702/93
Email: michael.cioffi@blankrome.com
       tom.stewart@blankrome.com

Frank A. Dante (_pro hac vice_)
Melissa F. Murphy (_pro hac vice_)
BLANK ROME LLP
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Tel:   (215) 569-5645
Fax:   (215) 832-5645
Email: frank.dante@blankrome.com
       melissa.murphy@blankrome.com

_Counsel for Defendant,_
_Chiquita Brands International, Inc._

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed this document with the Clerk of the Court using CM/ECF on June 21, 2024 which will automatically generate and serve Notices of Electronic Filing on all counsel of record.

*/s/ Michael L. Cioffi*
*Counsel for Defendant Chiquita*
*Brands International, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 08-MD-01916-MARRA/MATTHEWMAN**

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION

_____/

This Document Relates to:

**ATS ACTIONS:**

08-80465-CIV-MARRA (Does 1-144/Perez 1-795 Action) (Does 1-144 only)
10-80652-CIV-MARRA (Does 1-976 Action)
11-80404-CIV-MARRA (Does 1-677 Action)
11-80405-CIV-MARRA (Does 1-254 Action)
17-80475-CIV-MARRA (Does 1-2146 Action)
18-61385-CIV-MARRA (Does 1-144/Perez 1-795 Action) (Does 1-144 only)
18-80800-CIV-MARRA (Does 1-144/Perez 1-795 Action) (Does 1-144 only)
_____/

**ORDER GRANTING**
**JOINT MOTION OF WOLF PLAINTIFFS AND DEFENDANT CHIQUITA**
**FOR THE COURT TO ISSUE A SHOW CAUSE ORDER**

This matter is before the Court upon the Joint Motion of Wolf Plaintiffs and Defendant

Chiquita For the Court to Issue a Show Cause Order. The Court having reviewed the Joint Motion

and being sufficiently advised, hereby FINDS the Joint Motion establishes good cause and is well-

taken and therefore GRANTS the Joint Motion.

IT IS THEREFORE **ORDERED AND ADJUDGED** each Wolf Plaintiff in the above-

captioned actions shall contact Attorney Paul Wolf, P.O. Box 60584, Colorado Springs, CO 80960,

telephone: (202) 431-6986, email: paulwolf@yahoo.com or at his office to be re-established in

Apartadó within 18 months of entry of this Order. In such contact, each Wolf Plaintiff shall either

participate in the settlement pursuant to the Settlement Agreement attached hereto or state that that

Wolf Plaintiff will continue litigating in the relevant action captioned above. Each Wolf Plaintiff

must contact Mr. Wolf or show cause within 18 months after the order is entered why his or her claim should not be dismissed with prejudice for failure to prosecute.

**WARNING**: The Wolf Plaintiffs are expressly notified that the failure to respond timely to this Order will result in the entry of sanctions against them, including a final dismissal with prejudice of all claims without further notice from the Court.

Mr. Wolf shall make reasonable efforts to contact his clients over the next 18 months, including publishing a notice of this Order and its contents on his Facebook client group page, and with announcements on Colombian radio and Colombian television in Urabá. Mr. Wolf shall further attempt to contact all of his clients using the last known address, email address and phone number according to his records. Mr. Wolf shall take further steps, as he is able, to enlist the support of Colombian government agencies to search their databases for lost Plaintiffs, or physically search for them in their neighborhoods. Mr. Wolf shall send a copy of this entered Order to the last known address of each Wolf Plaintiff who cannot otherwise be located. Mr. Wolf shall file with the Court a final itemization within thirty days after the expiration of 18 months from the entry of this Order of each Wolf Plaintiff who has failed to contact him as required by this Order, and the steps taken to try to contact each such Wolf Plaintiff, at which time the Court will dismiss with prejudice all such Wolf Plaintiffs for failure to prosecute.

SO ORDERED in chambers on June _____, 2024.

_____

Kenneth A. Marra,
Senior United States District Judge

2

# Exhibit B

# EXHIBIT "1"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: PHILIPS RECALLED CPAP, BI-LEVEL PAP, AND MECHANICAL VENTILATOR PRODUCTS LIABILITY LITIGATION | ) ) ) | Master Docket No.: Misc. No. 21-01230 |

| | | |
|---|---|---|
| | ) | |
| This Document Relates To: | ) | MDL NO. 3014 |
| | ) | |
| *Personal Injury Claimants and Potential Claimants* | ) | |

## <u>DECLARATION OF MATTHEW L. GARRETSON, ESQ</u>

I, Matthew L. Garretson, Esq., declare and state as follows:

1.       I am the founder of Garretson, LLC and am an attorney licensed to practice law in

the State of Ohio. My curriculum vitae and summary of professional experience are attached hereto

as Exhibit A. Since 1998, I have been designing and overseeing claims processing operations for

settlement programs in litigations involving product liability and environmental hazard claims.

2.       I have been appointed (either personally or as part of organizations I have led) by

numerous parties and federal and state courts to serve as a Special Master, Allocation Neutral,

and/or Claims Administrator to provide settlement services in a broad variety of national mass tort

and class action matters, including several multidistrict litigations ("MDLs").

3.       A comprehensive list of my engagements is contained in Exhibit A and includes

the following representative matters:

•       *In re World Trade Center Disaster Site Litigation*, MDL Docket Nos.

MC100, 102-03 (S.D.N.Y.), where I served as the Allocation Neutral for claims asserted against

the World Trade Center Captive Insurance Company, Inc. relating to the September 11th Consolidated Cases.

- *Deepwater Horizon Litigation,* MDL 2179 (E.D. La.), where I served as the Trustee of the Medical Benefits Settlement and, as Claims Administrator, designed and implemented a 21-year periodic medical evaluation program that involved over 22,000 eligible class members entitled to claim compensation and/or medical consultation services.

- *National Football League Players' Concussion Injury Litigation,* MDL 2323 (E.D. Pa.), where I designed and implemented a medical evaluation program comprised of a national network of medical service providers who provided baseline assessments of neurocognitive function and follow-up care for an estimated 17,000 players over 10+ years.

- *Vioxx Product Liability Litigation*, MDL Docket No. 1657 (E.D. La.), where I served as the Lien Resolution Administrator tasked with resolving health care reimbursement claims (or "liens") asserted against over 10,000 claimants by Centers for Medicare & Medicaid Services ("CMS"), all 53 state and territory Medicaid agencies; and several other governmental healthcare payers, such as the Veterans Affairs, TRICARE, and Indian Health Services.

- *In re Flint Water Cases*, 5:16-cv-10444 (E.D. Mich.), where I was appointed in February 2023 to bring our unique claim adjudication and allocation technology, claims adjudication skills, and processing knowledge to bolster the existing administration framework in *In re Flint Water Case.*

- *In re 3M Combat Arms Earplug Products Liability Litigation, MDL Docket No. 2885 (N.D. FL),* where I was appointed as Allocation Special Master to design and oversee the allocation methodology to calculate settlement awards to over 250,000 eligible claimants.

- *City of Camden, et al. v. E.I. du Pont de Nemours and Company (n/k/a EIDP, Inc.), et al.,* Case No. 2:23-cv-03230 and in the case of *City of Camden vs. 3M Company*, Case No. 2:23-cv-03147, where I was appointed to serve as Special Master in two related cases filed in the Aqueous Film-Forming Foams Multi-District Litigation (the "AFFF MDL," Case No. 2:18-mn-2873) –Both cases involve settlement agreements with the 3M and DuPont defendants to resolve the claims of public water systems who allege harm to their drinking water from PFAS.

4.     Pursuant to these appointments and engagements, I have been responsible (either personally or through organizations I have led) for designing and overseeing  efforts to notify class members/claimants of a proposed settlement; to process claims for compensation (including award allocation); to monitor or assess later manifesting conditions (i.e., "medical monitoring"); to resolve the claimants' or class members' healthcare liens (such as those asserted by Medicare, Medicaid, and other governmental agencies and/or private health insurance providers); to hear requests for reconsideration, recalculation, or appeal of settlement awards; to disburse settlement funds; to manage the assets of settlement trusts (including serving personally as trustee); to maintain and manage claimant/class member education and outreach centers; to provide reports to courts overseeing settlements; to assist the parties in resolving disputes (consistent with the settlement agreements in those matters); to oversee supplemental funds related to base settlement awards (i.e. extraordinary injury funds, extraordinary compensation funds, special needs funds), and to interact with counsel, the relevant court, and/or a settlement program's oversight body.

5.     I am experienced with innovative technology that has made the review and adjudication of proof of claims at scale more efficient than ever before. Specifically, in recent settlements, I have successfully implemented platforms which utilize the power of clinical linguistics, artificial intelligence, and machine learning to improve the accuracy and speed of the

3

claim adjudication process. In the simplest terms, this means that Special Masters and Claim Administrators can now operate a guided review process with a system that can automate analysis of records and data to identify proof of exposure and damages quickly and objectively in the records and route that information automatically to the methodology or system that calculates compensation.

6.     I have reviewed the Personal Injury Master Settlement Agreement in the above capationed matter, dated May 9, 2024.

7.     I declare that I am experienced, qualified, and ready to serve as Allocation Special Master to create an Allocation Methodology to calculate Settlement Awards for each Eligible Claimant who becomes a Registered Claimant in the Personal Injury Settlement Program, to review and approve the Settlement Administrator's application of this Allocation Methodology and resulting Settlement Awards, and to provide quasi-judicial intervention if and/or when necessary as contemplated in the administration of the proposed Settlement.

8.     I declare under penalty of perjury that the foregoing is true and correct.


Executed on May 9, 2024, in Park City, UT.


_____

Matthew L. Garretson

**Exhibit A**

Garretson, LLC provides design, administration and oversight of complex operations in settlement programs related to individuals or businesses that experience a catastrophic event. Our services help stakeholders in such programs achieve controlled, predictable outcomes. Relevant experience in select high profile matters:



**PG&E Fire Victim Trust** (Docket No. 8053, Confirmed by United States Bankruptcy Court, Northern District of California)



**Equifax Inc. Customer Data Security Breach Litigation** (MDL Docket 2800, United States District Court, Northern District of Georgia)



**World Trade Center Disaster Site Litigation** (MDL Docket MC100, MC102 and MC103, United States District Court, Southern District of New York)



**Deepwater Horizon Litigation** (MDL 2179, United States District Court, Eastern District Louisiana)



**National Football League Players' Concussion Injury Litigation** (MDL 2323, United States District Court, Eastern District of Pennsylvania).



**Archdiocese of Louisville** (In re: Roman Catholic Bishop of Louisville, Inc., Jefferson Circuit Court, Louisville, Kentucky).



**Archdiocese of Cincinnati Claims Restitution Fund**



**Cincinnati Policing** (Case No. C-1-99-3170, United States District Court, Southern District of Ohio)



**Zyprexa Products Liability Litigation** (MDL 1596, United States District Court, Eastern District of New York)

 **Vioxx Products Liability Litigation** (MDL 1657, United States District Court, Eastern District of Louisiana)

 **Pelvic Repair System Products Liability Litigation** [a/k/a Transvaginal Mesh] (MDL 2326, United States District Court, Southern District of District of West Virginia)

 **Avandia Marketing, Sales Practices, and Products Liability Litigation** (MDL 1871, United States District Court, Eastern District of Pennsylvania)

 **Actos Products Liability Litigation** (MDL 2299, United States District Court, Western District of Louisiana)

 **Remington Arms Company** (Case No. 4:13-CV-00086-OD (Western District of Missouri)

 **TK Holdings Inc.** (a/k/a Takata Airbags (Case No. 17-11375, United States Bankruptcy Court, District of Delaware)

 **Anderson Settlement Program** (related to plaintffs who filed claims against the University of Michigan in E.D. of Michigan 2:20-cv-10568).

 **Strauss Individual Settlement Program** (related to plaintiffs who filed claims against The Ohio State University in S.D. Ohio Case No.'s 2:18-cv-00692, 2:18-cv-00736, 2:19-cv-02462).

 *In re Flint Water Cases*, 5:16-cv-10444 (E.D. Mich.)

IN RE: AQUEOUS FILM-FORMING FOAMS PRODUCTS LIABILITY LITIGATION

*In re Aqueous Film-Forming Foams Products Liability Litigation*

A-2



*In re 3M Combat Arms Earplug Products Liability Litigation,*
*MDL Docket No. 2885 (N.D. FL)*



Matthew Garretson
Matt@GarretsonTeam.com

Matthew Garretson received a BA from Yale University, a law degree at Kentucky's Salmon P. Chase College of Law and a Masters in Theology from Chicago Theological Seminary.

Garretson has served as the special master or administrator of settlement funds and crisis response programs through the country in environmental disaster, product liability, civil rights, sexual abuse and other cases. In this capacity, Garretson has substantial firsthand experience with the design, administration and/or oversight of hundreds of class action and mass tort resolution programs. Further, he has extensive experience adjudicating and allocating claims as a court-appointed neutral and has modernized the approach to such claims adjudication using the power of clinical linguistics, artificial intelligence and machine learning with Pattern Data (https://patterndata.ai).

Garretson is also the author of a legal textbook published by West Publishing entitled "Negotiating and Settling Tort Cases," in addition to several articles regarding professional responsibility in settlements. He is a frequent speaker at Continuing Legal Education seminars regarding lawyers' professional responsibilities in class action and other mass tort matters, including The American Association For Justice, The American Bar Association, The Rand Corporation, DRI and dozens of state attorney associations. Garretson also serves as a member of the Advisory Board for Rand Center for Catastrophic Risk Management and Compensation.

In addition to being the founder Garretson, LLC, Garretson is the co-founder of Signal Interactive Media (www.signalinteractive.com), a firm dedicated to improving the efficacy of class notice through contemporary data analytics and mass media. He is also a founder of BurnBright, LLC (www.BurnBright.com), a firm that provides research, data analytics and technology to create engaging, interactive micro-learning content. Garretson's work with Signal and BurnBright provides him unique insights into creating relevant learning experiences to increase claimant/class member engagement with and participation in settlement or crisis response programs.

He is also the co-Founder and former CEO of The Garretson Resolution Group, Inc ("GRG"), which provides lien resolution and complex settlement administration services in mass torts. In 2018, Garretson led the sale of GRG to Epiq, a worldwide provider of legal services.

A-4

When he is not designing or overseeing settlement programs, Garretson spends his time pouring into BurnBright Institute ("BBI"). BBI provides learning management systems for innovators and leaders of non-profit organizations operating in the Dominican Republic, Haiti and Mexico with an emphasis on improving the well being of vulnerable youth, their families and their communities.

***Speaking Engagements (re: Aggregate Settlements, Legal Ethics & Professional Responsibility)***

- AAJ Annual Meeting '03, '06, '08
- AAJ Hormone Therapy '04
- AAJ Mid-Winter '05, '06
- AAJ Weekend with the Stars '06
- AAJ Nursing Home Litigation Seminar '08
- AAJ Ski Medical Seminar '08
- AAJ Winter Convention '08, '13
- AAJ MSP Teleseminar '12
- American Bar Association Annual Convention '15
- Catholic Health Initiatives '08
- Colorado Trial Lawyers Association Winter Convention '09, '12
- Connecticut Trial Lawyers Association '09
- Consumer Attorneys of California '01, '03, '04, '06, '09
- Consumer Attorneys of Sonoma County '01
- DRI Annual Meeting '07
- DRI Mass Torts MSP Webcast '13
- Duke Law Center for Judicial Studies '16
- Federal Trade Commission, Class Action Notice Workshop '19
- Florida Justice Association '09
- Georgia Trial Lawyers Association '08, '09
- George Washington University Law School '16
- Hamilton Country Trial Lawyers Association '05
- Harris Martin '13, '15, '15, '16
- Hormone Replacement Therapy Seminar '07
- Indiana Trial Lawyers Association '09
- Kansas Trial Lawyers Association '03, '04, '07
- Kentucky Academy of Trial Lawyers '06
- Kentucky Justice Association '08
- Louisiana State Bar Association Admiralty Symposium '07, '13, '14, '15
- Louisiana Bar Mass Tort Symposium '02, '04
- Louisiana State Bar Assoc. Complex Litigation Symposium '13, '16
- Louisiana Trial Lawyers Association Annual '07
- Mass Torts Made Perfect '03, '04, '06, '08, '13
- Mass Torts Made Perfect Judicial Forum '13
- Mealey's Lexis/Nexis Art of Negotiation '07

- Mealey's Lexis/Nexis Contingency Fees '07
- Mealey's Lexis/Nexis Ethics '07
- Mealey's Lexis/Nexis Client Expenses '06
- Mealey's Lexis/Nexis Emerging Drug and Devices '04
- Mealey's Lexis/Nexis MMSEA '08
- Mealey's Medicare & ERISA Liens: New Developments '09
- Mississippi Trial Lawyers Association '02
- Michigan Negligence Law Section '09
- Michigan Association for Justice '08
- Minnesota Trial Lawyers Association '09
- Montana Trial Lawyers Association '08
- New York Academy of Trial Lawyers '07
- Norfolk and Portsmouth Bar Association '03
- NABIS – Medical Issues in Brain Injury '05, '06, '07
- Ohio Academy of Trial Lawyers Annual '03, '04, '05, '06, '07
- Ohio Academy of Trial Lawyers Subrogation Seminar '06
- Ohio Academy of Trial Lawyers Worker's Compensation '07
- Ohio Association for Justice '08, '09
- Insurance/Negligence Seminar '09
- Ohio State Bar Association Annual Convention '06
- Ohio Trial Advocacy Seminar '04, '06
- Oklahoma Trial Lawyers Association '07
- Perrin Conferences '12, '13
- Philadelphia Assn. for Justice '08
- Plaintiff Asbestos Litigation Seminar '07
- Professionally Speaking Seminar '07
- RAND Corporation '16, '17
- San Antonio Trial Lawyers Association '07
- Society of Settlement Planners '07
- TBI Symposium - Brain Injury Association of Ohio '04, '06
- TPL-COB National Conference '07
- Utah Bar Association Annual Seminar '05
- Utah Trial Lawyers Brain Injury '02, '03, '04, '05, '06, '07
- Utah Trial Lawyers Association Annual Convention '07
- Utah Association for Justice '09
- Virginia Trial Lawyers Association '05

*Publications*

- Negotiating and Settling Tort Cases, ATLA / West Publishing (2007). Updated 2013, 2015.
- A Fine Line We Walk: Counseling Clients About the "Form" of Settlement, 13 A.B.A. Prof'l Law. 4, 2002.
- Don't Get Trapped By A Settlement Release, Trial Magazine, September 2003.

- A Practical Approach to Proactive Client-Counseling and Avoiding Conflicts of Interest in Aggregate Settlements, The Loyola University Journal of Public Interest Law, Volume 6, 2004.
- Deferring Attorney Fees: Is There Now a Critical Mass of Enabling Legislation? Ohio Trial, Volume 14, Issue 2, 2005.
- Making Sense of Medicare Set-Asides, Trial Magazine, May 2006.
- What Does the Ahlborn Decision Really Mean? Ohio Trial, Fall 2006.
- Medicare's Reimbursement Claim - The Only Constant is Change, Ohio Trial, Spring 2007.
- One More Thing to Worry About in Your Settlements: The Medicare, Medicaid and SCHIP Extension Act of 2007, Philadelphia Trial Lawyers Association Verdict, Volume 2007, Issue 6.
- Act II – Reporting Obligations for Settling Insurers where Medicare is a Secondary Payer: The Medicare, Medicaid and SCHIP Extension Act of 2007, May 18, 2009.
- Easing Health Care Lien Resolution, AAJ Trial Magazine, October 2010.
- The Medicare, Medicaid and SCHIP Extension Act of 2007, Section 111 Reporting: One More Thing to Worry About in Your Settlements, March 2012.
- The SMART Act: How a New Federal Law Could Fast Track Your Settlements, 2013.

# Exhibit C

## **RELEASE**

For the sole consideration of US$_____ (amount of Tier 1 or Tier 2 payment depending upon documentation submitted pursuant to the Settlement Agreement between Wolf Plaintiffs and Chiquita), receipt and sufficiency and fairness of which are hereby acknowledged, and intending to be legally bound, I, _____ (printed name of Wolf Plaintiff), do hereby RELEASE AND FOREVER DISCHARGE Chiquita Brands International, Inc. including its predecessors, its past and present subsidiaries and its past and present directors, officers employees, agents, and contractors including but not limited to Fernando Aguirre, Cyrus Freidheim, the Estate of Roderick M. Hills, Sr., Charles Keiser, Robert Kistinger, Steven Kreps, Robert Olson, John Ordman, Joel Raymer, William A. Tsacalis, and Steven Warshaw (individually and collectively, "Chiquita"), of and from all liability for all claims asserted—or that could have been asserted—by me individually and as representative of my decedent mentioned in one or more of the below actions and anyone with claims through or for or as heir of that decedent in one or more of the following actions:

(1) *Does 1-144 v. Chiquita Brands International, Inc. and David Does*, United States District Court for the District of Columbia No. 1:07-cv-01048, upon transfer, United States District Court for the Southern District of Florida Nos. 0:08-cv-80465-KAM and 0:18-cv-61385 (Does 1-144 only per S.D. Fla. No. 08-1916, DE 2658);

(2) *Does 1-976 v. Chiquita Brands International, Inc., Doe Corporations 1-10, and Does 11-25*, United States District Court for the District of Columbia No. 1:10-cv-00404, upon transfer, United States District Court for the Southern District of Florida No. 9:10-cv-80652-KAM;

(3) *Does 1-677 v. Chiquita Brands International, Inc., Doe Corporations 1-10, and Does 11-25,* United States District Court for the District of Columbia No. 1:11-cv-00582, upon transfer, United States District Court for the Southern District of Florida No. 9:11-cv-80404-KAM;

1

(4) *Does 1-254 v. Chiquita Brands International, Inc., Does Corporations 1-10, and Does 11-*25, United States District Court for the District of Colombia No. 1:11-cv-00583, upon transfer, United States District Court for the Southern District of Florida No. 1:11-cv-80405-KAM; and/or

(5) *Does 1-2146 v. Cyrus Freidheim, Robert Olson, Robert Kistinger, Steven Kreps, Joel Raymer, and John Ordman*, United States District Court for the Southern District of Ohio No. 1:17-cv-00145-TSB, upon transfer, United States District Court for the Southern District of Florida No. 9:17-cv-80475-KAM

including, but not limited to: (a) medical, hospital and funeral expenses; (b) pain and suffering; (c) loss of income; (d) loss of support or consortium, and (e) all costs, expenses and damages whatsoever.  This Release is signed pursuant to the certain Settlement Agreement between Wolf Plaintiffs and Chiquita dated June 18, 2024.

I understand that Chiquita denies any and all fault or liability and I agree not to disparage Chiquita.

This document has been translated into Spanish by a certified translator and I have read and understand its contents.

_____

(signature of Wolf Plaintiff)

_____

Printed name of Wolf Plaintiff

Notarization by Colombian notary:

2

8,DEF 3667@6G?
FA E7FF>7? 7@F
39D77? 7@F

## FIRST ADDENDUM TO SETTLEMENT AGREEMENT

Pursuant to Section 8 of the Settlement Agreement (the "Agreement") dated June 18, 2024 between Chiquita and the Wolf Plaintiffs, the Parties (as those terms are defined in the Agreement) agree and hereby amend Recital (B) of the Agreement to read in full:

(B)      Chiquita has defended itself in the Actions where it is a defendant and is indemnifying (or had indemnified) former Chiquita employees Fernando Aguirre, Cyrus Freidheim, the Estate of Roderick M. Hills, Sr., Charles Keiser, Robert Kistinger, Steven Kreps, Robert Olson, John Ordman, Joel Raymer, William A. Tsacalis, and Steven Warshaw in the Actions where they are defendants and have good defenses to liability

Dated June 21, 2024

Paul David Wolf
Attorney for Plaintiffs
P.O. Box 60584
Colorado Springs, CO 80960
(202) 431-6986
paulwolf@yahoo.com

Attorney for Wolf Plaintiffs

Michael L. Cioffi
Thomas H. Stewart
Blank Rome LLP
1700 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
(513) 362-8701/04
michael.cioffi@blankrome.com
tom.stewart@blankrome.com

Attorneys for Chiquita

Garretson, LLC
P.O. Box 2806
Park City, Utah 84060

By: _____

Printed name: Matthew L. Garretson

Third-Party Administrator

1