UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-MD-01916-MARRA/MATTHEWMAN

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION

_____/

This Document Relates to:

**ATS ACTIONS:**

08-80465-CIV-MARRA (Does 1-144/Perez 1-795 Action) (Does 1-144 only)
10-80652-CIV-MARRA (Does 1-976 Action)
11-80404-CIV-MARRA (Does 1-677 Action)
11-80405-CIV-MARRA (Does 1-254 Action)
17-80475-CIV-MARRA (Does 1-2146 Action)
18-61385-CIV-MARRA (Does 1-144/Perez 1-795 Action) (Does 1-144 only)
18-80800-CIV-MARRA (Does 1-144/Perez 1-795 Action) (Does 1-144 only)
_____/

ORDER GRANTING
JOINT MOTION OF WOLF PLAINTIFFS AND DEFENDANT CHIQUITA
FOR THE COURT TO ISSUE A SHOW CAUSE ORDER

This matter is before the Court upon the Joint Motion of Wolf Plaintiffs and Defendant Chiquita For the Court to Issue a Show Cause Order.  The Court having reviewed the Joint Motion and being sufficiently advised, hereby FINDS that good cause exists for the Court to approve the proposed settlement between the Wolf Plaintiffs and Defendant Chiquita submitted at [DE 3833-1], and therefore GRANTS the Joint Motion.

IT IS THEREFORE **ORDERED AND ADJUDGED** each Wolf Plaintiff (that is, a Plaintiff represented by Attorney Paul Wolf) in the above-captioned actions shall contact Attorney Paul Wolf, P.O. Box 60584, Colorado Springs, CO 80960, telephone: (202) 431-6986, email: paulwolf@yahoo.com or at his office to be re-established in Apartadó within 18 months of entry of this Order.  In such contact, each Wolf Plaintiff shall either participate in the settlement pursuant

to the Settlement Agreement attached hereto or state that that Wolf Plaintiff will continue litigating in the relevant action captioned above. Each Wolf Plaintiff must contact Mr. Wolf or show cause within 18 months after the order is entered why his or her claim should not be dismissed with prejudice for failure to prosecute.

**WARNING**: The Wolf Plaintiffs are expressly notified that the failure to respond timely to this Order will result in the entry of sanctions against them, including a final dismissal with prejudice of all claims without further notice from the Court. The general public and Wolf Plaintiffs are also expressly notified that: (a) the settlement relates only to persons represented by Attorney Paul Wolf; (b) the attached Settlement Agreement is binding only on claimants represented by Paul Wolf who elect to participate in the settlement; (c) Wolf Plaintiffs may elect not to participate in the settlement and continue to litigate; (d) Mr. Wolf will remain counsel for any Wolf Plaintiff who elects not to participate in the settlement; and (e) persons not represented by Attorney Paul Wolf who have claims pending against Chiquita should contact their own attorneys with any questions they may have about the status of their claims. If any Plaintiff or Claimant in this Multi-District Litigation who is not represented by Attorney Paul Wolf makes contact with Attorney Wolf relative to the settlement or otherwise, Attorney Wolf shall advise those individuals that he cannot discuss the settlement or any other matters relating to the pending litigation with them, and that they should contact and consult with their own counsel. Mr. Wolf shall not be required to provide such individuals with the contact information for their counsel, information which they should already have.

The Wolf Plaintiffs and Chiquita acknowledge and agree to the Court's instructions at the status conference that the Third-Party Administrator hold in escrow the last payment of 25% of attorneys' fees to satisfy the amount of any charging lien the Court finds to be valid.

Mr. Wolf shall make reasonable efforts to contact his clients, the Wolf Plaintiffs, over the next 18 months, including publishing a notice of this Order and its contents on his Facebook client group page, and with announcements on Colombian radio and Colombian television in Urabá. Mr. Wolf shall further attempt to contact all of his clients using the last known address, email address and phone number according to his records. Mr. Wolf shall take further steps, as he is able, to enlist the support of Colombian government agencies to search their databases for lost Plaintiffs, or physically search for them in their neighborhoods. Mr. Wolf shall send a copy of this entered Order to the last known address of each Wolf Plaintiff who cannot otherwise be located. Mr. Wolf shall file with the Court a final itemization within thirty days after the expiration of 18 months from the entry of this Order of each Wolf Plaintiff who has failed to contact him as required by this Order, and the steps taken to try to contact each such Wolf Plaintiff, at which time the Court will dismiss with prejudice all such Wolf Plaintiffs for failure to prosecute.

This Order shall not impact or affect the jury verdict found at DE 3811.

The Court's approval of the Settlement Agreement shall not be construed as an endorsement or approval by the Court of the assertions stated in ¶ (D) of the Agreement. [DE 3833-1 at 2].

SO ORDERED in chambers on June 27, 2024.

KENNETH A. MARRA
United States District Judge

## SETTLEMENT AGREEMENT

Chiquita Brands International, Inc. including its predecessors, its past and present subsidiaries and its past and present directors, officers employees, agents, and contractors (collectively, "Chiquita"), on the one hand, and the Wolf Plaintiffs (defined below), on the other hand (together, the "Parties") have agreed to resolve all claims that Wolf Plaintiffs did assert or could have asserted in the Actions (defined below) and agree that this settlement agreement ("Agreement") is binding on all of the Parties and contains all the material terms of their settlement.

## RECITALS

(A) "Wolf Plaintiff" and "Wolf Plaintiffs" are each and all, respectively, of the plaintiffs for the total 2,572 decedents set forth in the following five actions ("the Actions") filed by attorney Paul David Wolf which have been consolidated for pretrial purposes into the multidistrict litigation captioned *In re: Chiquita Brands International, Inc. Alien Tort Statute and Shareholder Derivative Litigation*, United States District Court for the Southern District of Florida, No. 08-01916-md-MARRA ("MDL 1916"):

(1) *Does 1-144 v. Chiquita Brands International, Inc. and David Does*, United States District Court for the District of Colombia No. 1:07-cv-01048, upon transfer, United States District Court for the Southern District of Florida Nos. 0:08-cv-80465-KAM and 0:18-cv-61385 (Does 1-144 only per S.D. Fla. No. 08-1916, DE 2658);

(2) *Does 1-976 v. Chiquita Brands International, Inc., Doe Corporations 1-10, and Does 11-25*, United States District Court for the District of Colombia No. 1:10-cv-00404, upon transfer, United States District Court for the Southern District of Florida No. 9:10-cv-80652-KAM;

(3) *Does 1-677 v. Chiquita Brands International, Inc., Doe Corporations 1-10, and Does 11-25*, United States District Court for the District of Colombia No. 1:11-cv-00582, upon transfer, United States District Court for the Southern District of Florida No. 9:11-cv-80404-KAM;

(4) *Does 1-254 v. Chiquita Brands International, Inc., Does Corporations 1-10, and Does 11-25*, United States District Court for the District of Colombia No. 1:11-cv-00583, upon transfer, United States District Court for the Southern District of Florida No. 1:11-cv-80405-KAM; and

(5) *Does 1-2146 v. Cyrus Freidheim, Robert Olson, Robert Kistinger, Steven Kreps, Joel Raymer, and John Ordman*, United States District Court for the Southern District of Ohio No. 1:17-cv-00145-TSB, upon transfer, United States District Court for the Southern District of Florida No. 9:17-cv-80475-KAM.

EXHIBIT 1

Each of the five operative filed complaints in the Action with the true name of each Wolf Plaintiff was filed as DE 3110-1, DE 3110-2, DE 3110-3, DE 3110-4, and DE 3827-1. These filed documents are incorporated herein by reference and constitute the universe of Wolf Plaintiffs.

- (B) Chiquita has defended itself in the Actions where it is a defendant and is indemnifying (or had indemnified) former Chiquita employees Fernando Aguirre, Cyrus Freidheim, the Estate of Roderick M. Hills, Sr., Charles Keiser, Robert Kistinger, Steven Kreps, Robert Olson, Joel Raymer, William A. Tsacalis, and Steven Warshaw in the Actions where they are defendants and have good defenses to liability.

- (C) The Wolf Plaintiffs desire to settle with finality their claims asserted in the Actions for the consideration described herein now to avoid years of continued litigation at great expense and uncertain result.

- (D) The Parties engaged in a mediation in July 2023 with periodic settlement negotiations thereafter, and then extensive settlement negotiations since April 22, 2024. The parties are aware of the jury verdict entered on June 10, 2024 in the MDL trial that did not involve any Wolf Plaintiff. The Wolf Plaintiffs believe, however, that the jury verdict will likely be reversed and vacated for a number of reasons, or at a minimum substantially reduced, including for, but not limited to, the following reasons: (i) the Court improperly consolidated and subsequently tried nine disparate claims including ones before and after the designation of the AUC as an FTO, and ones with and without Justice & Peace attribution to the AUC, all of which confused and mislead the jury and prejudiced Chiquita; (ii) the Court improperly charged the jury on Colombian statutory hazardous activity liability after the Court had previously dismissed all claims except for negligence-based liability and despite the fact that the Court—not the jury—should have been who determined whether Chiquita's activity were hazardous; (iii) the Court gave incorrect instructions as a matter of law on the fault element of Plaintiffs' Article 2341 claim, including directing the jury to find Chiquita at fault for violations of law for which Chiquita cannot be criminally liable as a matter of Colombian law or which were irrelevant to the reasonable businessperson standard under Colombian law; (iv) the Court refused to instruct the jury on causation under Colombian law and instead applied federal common law to the causation element, which was outcome determinative in light of the evidence admitted at trial; (v) alternatively, even if federal common law were to apply, the Court failed to give a legally correct instruction on knowing substantial assistance, ignoring both United States Supreme Court precedent and Eleventh Circuit precedent on knowing substantial assistance and secondary liability; (vi) alternatively, the Court improperly failed to follow Florida forum law on causation and secondary liability; (vii) the Court improperly charged the jury on damages; and (viii) the Court will, at a minimum, need to reduce damages pursuant to Colombian law caps on damages that are required by the Colombian Supreme Court.

- (E) The Parties' intent and agreement is to compromise and settle every claim by each of the Wolf Plaintiffs that was—or could have been—brought in the Actions against Chiquita including its former directors, officers, and employees. The Parties' intent and agreement is also to settle every Wolf Plaintiff's claims in each of the Actions on a per-decedent, not per-claim, basis. The settlement is intended to pay out a fixed sum

per decedent to be divided by family members of the decedent who are Wolf Plaintiffs, provided that the Claimant files the paperwork mentioned herein no later than 18 months from the date of a final Settlement Agreement.

(F) The Parties shall promote this Agreement as an example of how adverse parties by settling and compromising their positions in good faith can help Colombia further heal after decades of horrendous violence.

(G) The Parties agree that murders by the AUC occurring during the time period of the payments listed in the Factual Proffer, from 1997 to February, 2004 are easier for the Wolf Plaintiffs to prove than the other claims and, therefore, have a higher settlement value. Therefore, only the Claimant for an individual murdered by the AUC during this time period with supporting documentation will be compensated at the Tier 1 level as further defined in Section 3 below.

NOW, THEREFORE, in consideration of the foregoing recitals, the promises, covenants and agreements herein, and the other good and valuable consideration set forth herein, the fairness, sufficiency and adequacy of which is hereby acknowledged, and intending to be legally bound, the Parties mutually agree as follows:

**1. COOPERATION OF THE PARTIES**

The Parties and their counsel agree to cooperate fully with each other to promptly execute all documents and take all steps necessary to effectuate the terms, conditions and administration including work conducted by the TPA of this Agreement. The Parties and their counsel further agree to cooperate in filing of a Joint Motion For a Show Cause Order why every Wolf Plaintiff should not have his/her claims dismissed for failure to prosecute unless he/she contacts counsel, Paul Wolf, within 18 months of the issuance of the order announcing his/her intention to participate or not participate in this settlement. *See* Exhibit A (Joint Motion). Mr. Wolf and other Plaintiffs' counsel have previously informed the Court of their problems contacting many of their clients who have cases pending before the Court in MDL 1916. *See* DE 3235 (listing relevant docket entries by Plaintiffs' counsel). The effectiveness of this Agreement is contingent upon the entry of such an order (the "Show Cause Order") as the only effective means to ensure a complete release of all Wolf Plaintiffs' claims.

**2. THIRD-PARTY ADMINISTRATOR**

The Parties hereby appoint Garretson, LLC as Third-Party Administrator ("TPA"). The qualifications of Garretson, LLC and its founder Matthew L. Garretson are set forth in Exhibit B (Declaration of Matthew L. Garretson, Esq. filed as DE 2773-2 on May 9, 2024 in *In re: Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Ventilator Products Liability Litigation*, MDL No. 3014, Western District of Pennsylvania, Misc. No. 21-01230 where Mr. Garretson was later appointed a Special Master, *see id.* at DE 2779). The TPA has the largest presence in Latin America of any third-party claims administrator. The TPA shall have authority to receive, review and evaluate the Claimant documentation discussed in Section 3 below. The TPA shall have authority to determine any deficiency based upon its review of the documentation

3

including the sufficiency of the release(s) by each Claimant and any other Wolf Plaintiff who has sought to recover from the death of the Claimant's decedent. The TPA shall finally determine and decide whether the Claimant has submitted the proper documentation to receive a Tier 1 or Tier 2 payment per Section 3 below. The TPA shall administer the settlement funds in escrow. The TPA shall disburse a Tier 1 or Tier 2 payment to a Claimant who the TPA has determined in its sole discretion has submitted the necessary documentation pursuant to Section 3 below. The TPA's determination shall be final unless the Claimant makes a request for reconsideration within five working days. The determination shall be reconsidered by the TPA within 15 working days. The TPA may affirm or modify its prior decision as to the submitted documentation. The determination of such request for reconsideration will be final and not subject to any further appeal.

The TPA in consultation with the Parties shall establish the necessary escrow account in accordance with this Agreement to facilitate the prompt payment of claims with the necessary documentation under Section 3 below and disposition of the Unclaimed Funds. The TPA shall use bilingual (Spanish and English) staff in performing its duties hereunder. The TPA shall have such additional authority as it decides is reasonably necessary to implement the terms of this Agreement.

The TPA retains authority to implement measures it deems necessary to prevent and protect against fraud including to identify and reject fraudulent claims for Tier 1 or Tier 2 awards pursuant to Section 3. The TPA shall make quarterly reports to the Parties including but not limited to an accounting of each disbursement from the settlement fund, the total number of claims paid, the total number of claims remaining, and the remaining balance of the settlement fund.

### 3. CONSIDERATION TO PLAINTIFFS

Settlement Fund

Chiquita shall pay $12,800,000 to the escrow account to be administered by the TPA in full settlement of the Actions (the "Settlement Fund") within five (5) business days of the Court's issuance of the Show Cause Order. Within that same period, Chiquita shall also pay $50,000 to Paul Wolf to set up an office and support staff to implement the terms of this Agreement. Chiquita shall separately pay the costs of the TPA which is not part of the Settlement Fund.

Pursuant to contracts with each Wolf Plaintiff, Plaintiffs' counsel Paul David Wolf shall receive at attorney fees thirty-three percent (33%) of the total recovery of $12,800,000 for a total of $4,224,000. The TPA shall pay such attorney fees on the following schedule: One-half (50%) within one business day of the deposit into the escrow fund of the $12,800,000 by Chiquita, one quarter (25%) upon the payment of the 750th claim hereunder, and one quarter (25%) at the end of eighteen (18) months, upon the dismissal with prejudice for failure to prosecute of any Wolf Plaintiffs who do not appear to file their documentation.

Payments to Paul Wolf on behalf of the Wolf Plaintiffs of the remainder of the Settlement Fund ($8,576,000) shall be made via two tiers as follows:

Tier 1 consists of each Wolf Plaintiff who is acting as the representative of the estate of his/her decedent (the "Claimant")—who shall distribute their portion of the settlement to the other

Wolf Plaintiff heirs as required by Colombian law—who provides the following documentation with an apostille of authenticity pursuant to Colombian law:

(a) a death certificate for that plaintiffs' decedent named in the Actions during the period of 1997-2004;

(b) the cedula of the Wolf Plaintiff seeking participation in the settlement;

(c) proof of relationship to the decedent (e.g., birth certificate, baptismal certificate, marriage license, death certificate or other next of kin official determination);

(d) evidence of AUC responsibility for the decedent's death in the form of Colombian government documents from agencies, including the *Fiscalia*, *Justicia y Paz*, *Unidad para la Atención y Reparación Integral a las Víctimas* (Victims' Unit, formerly Accion Social) showing a confession by the actual AUC perpetrator, sworn testimony/affidavit from an eyewitness who can identify the perpetrator as a member of the AUC, confession or conviction of an AUC Commander who can identify the actual AUC perpetrator, an AUC Commander accepted responsibility for the murder, or that the Victims' Unit recognized the decedent as a victim of the AUC including paying them compensation for the murder. These criteria are for settlement purposes only and in an effort to compromise and settle all Wolf Plaintiff claims. Chiquita expressly does not agree that all of the criteria mentioned above are sufficient to establish AUC involvement in a death in a legal proceeding. Each of the above documents must include an Apostille upon submittal to Paul Wolf and then review by the TPA.

The Claimant must submit this documentation to Paul Wolf, who shall review it and assist with correcting any deficiencies and obtain a signed Release of Claims in the form of Exhibit C from all Wolf Plaintiffs claiming for the death of the relevant decedent, before forwarding on the documentation to the TPA for final review and approval as set forth in Section 2 above. When accepted by the TPA, the TPA shall issue or cause to be issued payment in the amount of a full share (**$3,404.35**) to Paul Wolf for payment to the Claimant. The specific mechanics of this payment procedure shall be as the Parties and TPA mutually agree by separate writing.

Tier 2 consists of each Claimant who is unable to provide proof of governmental attestation (item (4) above) of the death to the AUC or for a death occurring outside the 1997-2004 window or for a claim based upon a death attributable to the FARC (including but not limited to all the Wolf Plaintiffs in *Does 1-254, S.D. Fla.* No. 1:11-cv-80405-KAM), which shall be in the amount of 40% of a full share or **$1,327.74**.

The Parties recognize that there may be funds remaining in the escrow account due to Tier 2 shares or Plaintiffs who do not appear within the 18 months disbursement window ("Unclaimed Funds"). The Parties that the Unclaimed Funds shall be spent on good works within the Plaintiffs' community, Apartadó, Colombia. When the amount of Unclaimed Funds is set after the passage of 18 months and the dismissal with prejudice of all Plaintiffs who do not appear, the Parties agree to negotiate in good faith and cooperate with the TPA to use the Unclaimed Funds to build a school or a hospital or similar project to benefit the entire Apartadó, Colombia community.

**4. GOVERNING LAW**

All questions with respect to the construction of this Settlement Agreement and the rights and liabilities of the Parties shall be governed by the laws of the State of Florida, without giving effect to its law of conflict of laws.

The Court shall have continuing and sole jurisdiction to resolve any dispute that may arise regarding the terms, conditions and implementation of this Agreement including without limitation the performance of the TPA. The Parties and TPA hereby consent to such exclusive jurisdiction.

## 5. NO ADMISSION OF WRONGDOING AND NONDISPARAGMENT

This Agreement is made to terminate any and all controversies, real or potential, asserted or unasserted, and claims for injuries or damages or any nature whatsoever, real or potential, asserted or unasserted, between Chiquita and the Wolf Plaintiffs. Neither the execution and delivery of this Agreement nor compliance with its terms shall constitute an admission of any fault or liability on the part of Chiquita. Chiquita in no way admits fault or liability of any sort and, in fact, Chiquita expressly denies fault and liability. The Parties agree not to disparage one other and not make any public statement inconsistent with this Agreement.

## 6. CONFIDENTIALITY

The TPA shall keep all documentation submitted by a Claimant confidential and shall not disclose such documents or information contained therein with Chiquita or any other person or entity, except upon prior written approval of Wolf Plaintiffs' counsel, Paul Wolf, unless required to be disclosed by subpoena, governmental authority, court order, or applicable law.

## 7. ENTIRE AGREEMENT

This Agreement represents the entire agreement between the Parties with respect to the subject matter hereof and supersedes all prior contemporaneous oral and written agreements and discussions. Each of the Parties covenants that he, she or it has not entered into this Agreement as a result of any representation, agreement, inducement, or coercion, except to the extent specifically provided herein. Each Party further covenants that the consideration recited herein is the only consideration for entering into this Settlement Agreement and that no promises or representations of another or further consideration have been made.

## 8. EXECUTION AND AMENDMENT OF AGREEMENT

The Parties agree to sign two copies of this Agreement and that each copy so executed with ink signatures shall constitute and be considered an original of this Agreement. The TPA shall be given an exact copy of either original and may rely upon that exact copy in performing its duties and exercising its discretion as provided herein.

This Agreement may not be amended or altered except upon a writing signed by Paul Wolf and Thomas H. Stewart or other Blank Rome attorney representing Chiquita.

Dated June 18, 2024

_____
Paul David Wolf
Attorney for Plaintiffs
P.O. Box 60584
Colorado Springs, CO 80960
(202) 431-6986
paulwolf@yahoo.com

Attorney for Wolf Plaintiffs

_____
Michael L. Cioffi
Thomas H. Stewart
Blank Rome LLP
1700 PNC Center
201 East Fifth Street
Cincinnati, OH 45202
(513) 362-8701/04
michael.cioffi@blankrome.com
tom.stewart@blankrome.com

Attorneys for Chiquita

Garretson, LLC
P.O. Box 2806
Park City, Utah 84060

By: _____

Printed name: Matthew L. Garretson

Third-Party Administrator