## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## CASE NO. 08-MD-01916-MARRA/MATTHEWMAN

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND SHAREHOLDER
DERIVATIVE LITIGATION

_____/

This Document Relates to:

**ATS ACTIONS:**

07-60821-CIV-MARRA (Carrizosa Action)
08-80421-CIV-MARRA (NJ Action)
08-80465-CIV-MARRA (Does 1-144/Perez 1-795 Action)
08-80480-CIV-MARRA (Manjarres Action)
08-80508-CIV-MARRA (Valencia Action)
10-60573-CIV-MARRA (Florida Montes Action)
11-80404-CIV-MARRA (Does 1-677 Action)
17-80535-CIV-MARRA (Ohio Montes Action)
17-80475-CIV-MARRA (Does 1-2146 Action)
18-80800-CIV-MARRA (Does 1-144/Perez 1-795 Action)
18-80248-CIV-MARRA (NJ Action)

_____/

### DEFENDANT CHIQUITA'S MOTION TO REDUCE DAMAGES

Pursuant to Federal Rule of Civil Procedure 50(b) and the Court's Order at DE 3620 ¶ 12, Defendant Chiquita Brands International, Inc. ("Chiquita"), files the present motion (the "Motion") to reduce the amount of damages that the jury awarded against Chiquita in the verdict of the Bellwether 1A trial delivered on June 10, 2024 (the "Verdict", DE 3811).

Chiquita previously moved the Court for an order precluding Plaintiffs from "recovering non-economic damages beyond the maximum limit allowed for such damages under Colombian law." DE 3490 at 17-18. The Court reserved ruling on that motion, stating in its order: "If a verdict for any Plaintiff exceeds the limit Defendant believes applies, it may move for a reduction to the asserted legal limit." DE 3620 at 6, ¶ 12. In the Verdict, the jury awarded noneconomic damages to multiple Plaintiffs that exceeded the maximum legal limit set by the Colombian Supreme Court. Chiquita now moves the Court to reduce each such award.

### I.    INTRODUCTION

Colombian law imposes a clear limitation on noneconomic damages. Because this Court is

sitting in diversity, and because choice of law principles require the Court to apply Colombian law, the Court must now apply the corresponding damages limitations required under Colombian law to reduce the Verdict rendered on June 10, 2024.

Limitations on noneconomic damages for claims under Article 2341 and Article 2356 of the Colombian code are well established by the Colombian judiciary and are imposed to ensure that plaintiffs are treated equally under the law and so that noneconomic damages do not result in a windfall to any plaintiff. As discussed below, courts in the United States, sitting in diversity, have properly applied the Colombian noneconomic damages limitation as a matter of substantive law. The Court is required to do the same here.

There is no question that Colombian law applies to the issue of damages as the Court has previously held in a number of circumstances. The Court instructed the jury on Colombian damages law after applying Colombian substantive law to every other damages issue in this case, including (i) punitive damages, (ii) deciding which of the decedent's relatives are entitled to damages (i.e., free union relatives), and (iii) the application of pre-death damages for the pain and suffering of the decedent to only one Plaintiff. In opposing application of a cap to noneconomic damages, Plaintiffs seek to pick and choose when Colombian law suits them, under the guise of choice of law principles, which is precisely what the Eleventh Circuit prohibits.

Yet, even if the Court were to conduct a new choice of law analysis, the proper result is to apply Colombian law anyway. Under both the "most significant relationship" test and the "interest analysis" test—the choice of law tests applied by the five transferor jurisdictions here—Colombian substantive law applies to the issue of noneconomic damages limitations.

## II.    LEGAL STANDARD

"[W]here a portion of a verdict is for an identifiable amount that is not permitted by law, the court may simply modify the jury's verdict to that extent and enter judgment for the correct amount." *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320, 1330 (11th Cir. 1999) (citing *New York, L.E. & W.R. Co. v. Estill*, 147 U.S. 591 (1893)); *see also Holmes v. West Palm Beach Hous. Auth.*, 309 F.3d 752, 758 (11th Cir. 2002) ("it is apparent as a matter of law that certain identifiable sums included in the verdict should not have been there . . . It was therefore not an abuse of discretion . . . to reduce unconditionally the damage award returned by the jury." (internal quotation and citations omitted)). "The Seventh Amendment is not offended by this reduction because the issue is one of law and not fact." *Johansen*, 170 F.3d at 1330.

The power to reduce damages in accordance with the law is "located in the court's authority to enter judgment as a matter of law." *Id.* at 1331. Specifically, Rule 50(b) allows a renewed motion for judgment as a matter of law to be filed no later than 28 days after entry of the judgment or 28 days after the jury was discharged if the motion addresses a jury issue not decided by a verdict. Fed. R. Civ. P. 50(b).

Before the case was submitted to the jury, Chiquita moved for an order precluding Plaintiffs from recovering noneconomic damages beyond the maximum limit allowed for such damages under Colombian law. *See* DE 3490 at 17-18 ¶ M. The Court "reserve[d] ruling until after verdicts are rendered" providing:

> If a verdict for any Plaintiff exceeds the limit Defendant believes applies, it may move for a reduction to the asserted legal limit. If the Court ultimately agrees with Defendant and reduces any verdict, the jury's determination on the full amount of damages will be known. Thus, if the Court's reduction of any verdict is ultimately reversed on appeal, the verdicts can be reinstated upon remand and a new trial would be avoided.

DE 3620 at 6 ¶ 12. Accordingly, now, and pursuant to both DE 3620 and the Federal Rules of Civil Procedure, Chiquita moves for such a reduction.

## III.   ARGUMENT

### A.   Colombian Law Limits the Amount of Each Plaintiff's Recovery of Noneconomic Damages.

Plaintiffs did not seek economic damages at trial. *See* DE 3523 at 26 ("Plaintiffs seek only non-economic damages, do not know their specific dollar value, and have no intention of testifying to a specific value."); Trial Tr. Vol. 7 (May 2, 2024) at 162:17-20 ("THE COURT: I thought you weren't seeking economic damages, though? MR. GARCIA: We are not. Just trying to provide some context."); Trial Tr. Vol. 10 (May 7, 2024) at 135:23-24 ("MR. SCAROLA: Your Honor is correct. There is no economic damage claim."). Accordingly, the Court only instructed the jury on noneconomic damages. Specifically, the jury was instructed to consider: "damages for the physical and emotional pain and suffering, emotional distress and mental anguish the Plaintiff has or will continue to suffer as a result of the death, as well as for the loss of companionship the Plaintiff has or will continue to suffer as a result of the decedent's death" as well as the "physical and emotional pain, suffering and mental anguish suffered by the Plaintiff's decedent prior to his death if you find that the death was not instantaneous."  *See* DE 3810, Jury Instructions, at 27. Therefore, the

3

damages reflected in the Verdict were all noneconomic damages. Colombian law requires that the noneconomic damages that were awarded in the Verdict now be reduced as a matter of law.

Under Colombian law, the nonmaterial or noneconomic damages that are recoverable for claims brought under Article 2341 and Article 2356 are limited to "moral" damages and damages to "life in relations," that is, loss of relations damages. *See* Declaration of Jorge Santos Ballesteros dated July 7, 2024 ("Santos July 2024 Decl."), attached hereto as **Exhibit A** ¶¶ 5-8, 15.  These types of damages were created by the Supreme Court of Colombia via decisional law. *Id.* ¶¶ 10-12. Accordingly, because these damages are of the Supreme Court's own creation, the Supreme Court *also* controls the limits and bounds of these damages. *Id.* ¶¶ 22-24. The central policy and philosophical purpose of the Supreme Court's limitations is grounded in equality, ensuring that all plaintiffs are treated equally under the law. *Id.* ¶¶ 19-25. Further, as a matter of Colombian law, damages cannot serve as an undue enrichment to any plaintiff, so these limitations are also intended to prevent windfalls.  *Id.* ¶¶ 19-20, 24-25.

In that regard, the Supreme Court has imposed a maximum limit for moral damages for claims under Article 2341 and Article 2356 at 72,000,000 Colombian pesos, which is approximately $17,560.  *Id.* ¶¶ 44-45 (citing Cas. Civ. Judgment SC5686-2018 of December 19, 2018); *see also id.* ¶ 15. The Supreme Court has also imposed a maximum limit for life in relations damages for claims under Article 2341 and Article 2356 at 140,000,000 Colombian pesos, which is approximately $34,146. *Id.* ¶ 59 (citing Cas. Civ. Decision AC2333-2024 of May 7, 2024); *see also id.* ¶ 15. As it is its prerogative to do, the Supreme Court has increased these limits over time. *Id.* ¶ 43. However, the current limits are mandatory and binding, and if lower courts exceed those limits, they are subject to reversal by the Supreme Court. *Id.* ¶¶ 24, 26-28, 34, 36, 52, 54.

Notably, both of these caps have been reaffirmed by the Colombian Supreme Court as recently as May 7, 2024, while this trial was underway. *Id.* ¶ 39 (quoting Cas. Civ. AC2333-2024 of May 7, 2024) ("Thus, we find that in the **best of cases** for the claimant, the case law has awarded $72,000,000 for moral damages and $140,000,000 for damage to life in relation, which added together result in $212,000,000…an eventual favorable judgment recognizing these novel items, considering the *arbitrium judicis* to which their quantification was referred, **without any doubt could not recognize higher amounts than the highest amount awarded in those cases**.") (emphasis added).

Plaintiffs' arguments that these limitations do not exist are meritless. First, the "outlier" case they reference (where the limit was exceeded) involved a situation where the defendant ***never challenged damages as exceeding these limits***. *Id.* ¶ 62 (citing SC3728-2021 of August 26, 2021). Even so, that "outlier" case, which is not controlling Colombian Supreme Court precedent, involved an award of only 150,000,000 Colombian pesos for moral damages, which is approximately $36,585.00, and 250,000,000 Colombian pesos for life in relations damages, which is approximately $60,975.00. *Id.* ¶¶ 50, 62. Accordingly, even the "outlier" case is sufficiently close to the limitations, and nowhere close to what the jury awarded in the Verdict.

Indeed, *no* Colombian court has ever awarded more than the outlier case, let alone anything close to what was awarded in the Verdict. *Id.* ¶¶ 66, 68.

Second, Plaintiffs' expert's claim that the case setting forth the limitations on life in relations damages suggest that these figures are not "caps" but only a "reference" or "guideline" is incorrect. DE 3523-11, Rueda Decl. ¶ 21 (citing Supreme Court, Civil Cassation Chamber. Ruling of December 9, 2013, file 88001-31-03-001-2002-00099-01). The fact that the limits gradually increase over time does not mean that there is no cap. Indeed, there is a cap, and no case other than the above outlier (which barely exceeded the cap) has ever awarded more than that cap. Exhibit A, Santos July 2024 Decl. ¶¶ 49, 61. Lower courts in Colombia are bound by the limit set by the Colombian Supreme Court. *Id.* ¶ 24, 26-28, 34, 36, 52, 54. Accordingly, this Court cannot permit an American jury to grossly exceed the maximum limits awardable under Colombian law. Indeed, if the Verdict were permitted to stand as rendered, the individual awards would be approximately **40x to 50x** larger than the total cap of $51,706 (i.e., the $17,560 moral damages cap and $34,146 life in relations damages cap, collectively). *See id.* ¶ 68. No Colombian court has come anywhere close to doing that, and if they attempted to do so, the Colombian Supreme Court would reverse it. *Id.* ¶¶ 28, 65, 68.

Plaintiffs also argue that there can be no such limit because Colombian law provides that the "injured party has the right to be fully compensated for all their damage." DE 3523-11, Rueda Decl. ¶ 28. However, the limitations are in place precisely because of this principle. Because nonmaterial "moral" and "life in relations" damages are not quantifiable, the Supreme Court has instituted these numerical limitations to *avoid overcompensating plaintiffs* in contravention of that principle. The whole purpose of the limitations is to avoid *enriching* rather than *compensating* plaintiffs, which is exactly what the Verdict would do if not reduced in furtherance of Colombian

law. Exhibit A, Santos July 2024 Decl. ¶¶ 17-21. Indeed, when converted to Colombian pesos at a multiple of 4100x (*see id.* ¶¶ 49, 61), many of the Plaintiffs would receive over **one trillion pesos,** a staggering windfall that is clearly inconsistent with Colombian law.

Plaintiffs also claim these limits are unpracticable because they would incentivize all cases to be brought as criminal actions where the caps are higher. DE 3523-11, Rueda Decl. ¶ 31. That argument is a non sequitur because the *state* brings criminal actions, not private plaintiffs. Exhibit A, Santos July 2024 Decl. ¶ 33. Further, if anything, a private plaintiff would be incentivized to first file a civil action then attempt to join in a state-brought criminal proceeding. Nothing about a cap in civil matters would lead a private plaintiff to forego a civil proceeding entirely. Indeed, Plaintiffs admit that there is a cap in criminal proceedings and nothing seems to disincentivize those cases from being prosecuted. *Id.*

Finally, Plaintiffs also contend that there can be no limitations because they would otherwise prevent claims from being reviewed by the Supreme Court due to minimum requirements in the amounts at issue necessary for the Supreme Court's review. DE 3523-11, Rueda Decl. ¶ 32. This is a red herring because, as cited above and throughout the Santos Declaration, there are multiple Colombian Supreme Court cases reviewing, discussing, and enforcing the noneconomic damages caps. These cases arise in a number of circumstances, such as cases involving multiple plaintiffs and/or single-plaintiff cases in which the total damages exceed the jurisdictional threshold for Supreme Court review. Even before Supreme Court review – at the initial levels of review at the circuit and appellate tribunal courts – the jurisdictional thresholds are lower than the total cap on noneconomic damages.[1] Furthermore, when the Supreme Court is calculating the threshold amount, it applies the cap in making that determination. Exhibit A, Santos July 2024 Decl. ¶ 30. In other words, the argument against the caps that Plaintiffs' expert sets forth **does not and has not** prevented review and reversal at the initial appellate court levels nor by the Colombian Supreme Court of noneconomic damages beyond the cap.

---

[1] Contrary to Rueda's statement in Paragraph 32 of his declaration, review at the circuit court is not 250 times the monthly minimum wage, but instead 150 times the monthly minimum wage. The monthly minimum wage is currently 1,300,000 pesos (USD $317). Exhibit A, Santos July 2024 Decl. Ex. 17 (quoting Article 25 of the Colombian General Code of Procedure). Therefore, this threshold jurisdictional amount for review by the circuit court (which is also the same threshold for review by the appellate tribunal court) is below the caps for noneconomic damages. (USD $317 x 150 = USD $47,550, which is lower than $51,706, i.e., both caps combined).

Indeed, this point is proven by the very case that Plaintiffs have relied on in arguing that "hazardous activity" liability was appropriate in cases involving terrorist activity, which not only was reviewed by the Supreme Court on cassation, but also **set the cap of 72,000,000 Colombian pesos for moral damages.** *Id.* ¶¶ 44-45 (citing Cas. Civ. Judgment SC5686-2018 of December 19, 2018). Even the limited excerpt from this case that Plaintiffs filed on the docket makes clear the cap applied. DE 3654-6 at 2 ("Appraisal of the own moral damage due to the death of first degree relatives of consanguinity in $72,000,000 pesos" [sic]). This case, Cas. Civ. Judgment SC5686-2018, is the same case that Chiquita relies on in setting forth the cap on moral damages. *See* Exhibit A, Santos July 2024 Decl. ¶¶ 44-45.  Therefore, Plaintiffs are foreclosed from arguing that the damages caps do not apply. Plaintiffs cannot pick and choose which portions of Colombian law they want to apply. Whatever benefit that Plaintiffs assert they gain from relying on Colombian law in terms of establishing liability, also carries with it the Colombian limitations to damages that, out of fairness and equality, apply to all Colombians—regardless of whether they have their case heard in Colombia or in the United States.

**B.      United States Courts Sitting in Diversity Have Properly Found and Applied Colombian Law Limitations on Noneconomic Damages Because It Is an Issue of Substantive Law.**

Colombia's cap on noneconomic damages is a matter of substantive law, meaning that under *Erie R. Co. v. Tompkins*, 304 U.S. 54 (1938) and its progeny, the Court **must apply it in this diversity case**. *See e.g.*, *Kangiser v. AMR Corp.*, Case No. 95-2388-CIV-GRAHAM, DE 64, at *6 n.5 (S.D. Fla. Aug. 25, 1998) (order attached hereto as **Exhibit B**, hereinafter "*Kangiser*") ("Colombia's caps on damages constitute matters of substantive, rather than procedural, law. Therefore, a court applying the substantive law of Colombia must apply any damages caps that exist under Colombian law.") (citing *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996), which held that because New York state's cap on damages, which was in place to prevent "excessive" awards, both discouraged forum-shopping and avoided inequitable administration of the laws, it was "substantive law for *Erie* purposes" that must be applied by a federal court sitting in diversity); *McDaniel v. Petroleum Helicopters, Inc.*, 455 F.2d 137, 138 (5th Cir. 1972) (reversing and remanding trial court's refusal to apply Colombian noneconomic damages cap in wrongful death diversity case where decedent was killed in a helicopter crash in Colombia, stating: "since the law of the state or country where the tort occurred created the right to sue thereon, it alone should define the scope of that right"); *see also* Exhibit A, Santos July 2024 Decl. ¶¶ 16, 20-

21 (Colombian damages limitations are substantive law).  Accordingly, the Court must apply the Colombian law limitations on noneconomic damages.

In *Kangiser*, multiple Colombian decedents died in an airplane crash in Indiana leading to multi-district litigation across the United States. *Kangiser*, at *2. There, the court found that "the Supreme Court of Justice of Colombia's cap on non-economic damages should be followed by other courts applying Colombian law. Non-economic damages, as well as caps on such damages, are products of decisions of the Supreme Court, Colombia's highest court. Rulings by the Supreme Court of Justice constitute *jurisprudencia*, a recognized source of law in Colombia." *Id.* at *6. Further, the court found that:

> Besides interpreting the Civil Code to permit the recovery of non-economic damages, the Supreme Court of Justice has created caps on the extent that "purely subjective moral" damages are recoverable, which the lower courts in Colombia typically follow. The Supreme Court of Justice continually updates its cap according to the devaluation of the Colombian currency. As a court of cassation, the Supreme Court of Justice has the power to quash the rulings of lower courts if they disregard the caps that the Supreme Court of Justice has set.

*Id.* at *9.

Accordingly, the court ruled that "based on the above, moral damages, **as well as applicable caps**, apply in this case." *Id.* (emphasis added). In coming to this conclusion, the court relied on Colombian law set forth in a Rule 44.1 declaration from Judge Francisco Javier Tamayo Jaramillo (*see id.*), who similarly has provided a Rule 44.1 declaration in this case and has recently been relied on by both Plaintiffs and Plaintiffs' Rule 44.1 expert. *See* DE 3523 at 25; *see also* DE 3523, Rueda Decl. ¶ 28. In addition to Colombian law sources, Judge Graham also looked to binding precedent and relied on *McDaniel v. Petroleum Helicopters, Inc.*, 455 F.2d 137, 138 (5th Cir. 1972). *See Kangiser*, at *6 n.5.

In *McDaniel*, the Eastern District of Louisiana had diversity jurisdiction over a wrongful death action where the decedent died in a helicopter crash in Colombia. *McDaniel*, 455 F.2d at 137-138. The district court, however, refused to apply Colombia's caps on noneconomic damages to the surviving spouse's "loss of love and affection" claims and instead applied Louisiana law which had no such caps. *Id.* at 138. At trial, the jury awarded the plaintiff $220,000. *Id.* The Fifth Circuit reversed and remanded the case ruling that "the jury must be instructed that it is limited, as Colombian law requires, to awarding the U.S. dollar equivalent of 2000 pesos [the limit at the

time] for loss of love and affection." *Id.* at 140. The Fifth Circuit did not find the decedent's "effort to be free to collect unlimited damages for loss of love and affection" to be a "persuasive state interest" that would override application of controlling foreign law, and held that "since the law of the state or country where the tort occurred created the right to sue thereon, it alone should define the scope of that right." *Id.* at 139-40. Because it was decided before October 1, 1981, *McDaniel* is binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Accordingly, the Court is bound by controlling precedent to apply the well-settled limitations and reduce the damages in the Verdict as a matter of law.

**C.     Plaintiffs Cannot Avoid the Limitations by Arguing for a Different Choice of Law.**

To avoid the clear limitations on damages, Plaintiffs make a last-ditch argument that the above Colombian law does not apply because, under a conflict of laws analysis, either Florida or Ohio law applies instead. DE 3523 at 24-25. That position is legally baseless because it is: (1) foreclosed by the Court's numerous prior decisions, including choice of law analyses that it already performed; and (2) wrong under any additional choice of law analysis the Court might apply even if it were to ignore its prior decisions.

*1.     The Court Has Already Determined That Colombian Law Applies to the Substantive Elements of Plaintiffs' Claims and Punitive Damages.*

Before even beginning a conflict of laws analysis, the Court must first determine which jurisdictions' laws *could* apply. *See Am. Triticale, Inc. v. Nytco Servs., Inc.*, 664 F.2d 1136, 1141 (9th Cir. 1981) ("Well-established principles of jurisprudence require that a federal court exercising diversity jurisdiction must apply the conflict-of-laws-rules of the state in which the federal court is located **when the laws of more than one jurisdiction arguably apply** to the issue to be decided") (emphasis added) (citing *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496 (1941)); *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1061 (N.D. Cal. 2014) ("[B]y jumping straight to a conflict of laws analysis, the plaintiffs skip an important analytical step. A court conducts a conflict of laws analysis only where the laws of multiple states could conceivably apply to the same claim. Where only one state's law applies, no such analysis is necessary."). As this Court has previously stated, "cursorily suggesting" that some other jurisdiction's "law may arguably apply, without citing any authority on the issue, is insufficient to raise a conflict-of-laws

argument." *Dunn v. Citigroup Global Markets, Inc.*, 2011 WL 13227889, at *4 n.2 (S.D. Fla. July 15, 2011) (Marra, J.).

Here, the Court has ruled several times that state tort law (whether from Ohio, Florida or any other state) cannot apply to Plaintiffs' extraterritorial injuries. *See, e.g.*, DE 1110 at 16-17 (quoting DE 412); DE 457 at 2. These rulings foreclose a conflict of laws analysis because no other law can arguably apply. *See Cotter*, 60 F. Supp. 3d at 1061-62 (finding California statutory wage and hour law to have no extraterritorial effect in other states, meaning that no other states' laws could arguably apply to the claim, and therefore, "where only one state's law applies, no such [conflict of laws] analysis is necessary."). Because the Court already expressly determined that no other states' laws can apply to the Colombian law claim, there should be no conflict of laws analysis because Plaintiffs cannot show some law other than Colombia law "arguably" or "conceivably" applies to an essential element of their Colombian-law claim—damages.

Additionally, as Plaintiffs acknowledge, the Court already conducted a fulsome choice of law analysis with respect to punitive damages and concluded that Colombian law—not Ohio or Florida law—applied to the issue of damages. *See* DE 3238 at 83-86. The Court concluded the "law of the place of the injury controls." *Id.* at 85. The same conclusion applies with respect to the issue of limitation on damages. Furthermore, the Court instructed the jury to apply Colombian damages law on various issues, such as which family members or relatives could bring a claim for damages (which included individuals in a Colombian "free union" with the decedent), and also that decedent's pre-death damages for pain and suffering could only be awarded to one Plaintiff pursuant to Colombian damages law. *See* DE 3810 at 27. Notably, Plaintiffs *agreed* that Colombian law applied to all of these compensatory damages issues. *See* Trial Tr. Vol. 27 (Charging Conference) at 81:12–87:4 (arguing for damages instructions that are "consistent with Colombian law"). Plaintiffs' argument that there should be yet another choice of law analysis is meritless. *See In re Air Crash Near Rio Grande, Puerto Rico, on Dec. 3, 2008,* No. 10-CV-81551, 2016 WL 11783407, at *1 (S.D. Fla. Oct. 27, 2016) (Marra, J.) (rejecting argument that Ohio law applied over Puerto Rico law on specific damages issues, even though Puerto Rico law would result in "a smaller potential recovery" for plaintiffs, because the court had already decided that Puerto Rico damages law applied to the case).

Additionally, Plaintiffs rely heavily on *Piamba Cortes* for the proposition that a separate choice of law analysis is required for the issue of the damages cap, but notably in *Piamba Cortes*

the plaintiffs' claims were governed by the Warsaw Convention, a "pass-through" treaty that effectively mandated a choice of law analysis with respect to the substantive issues in the case. *See Piamba Cortes v. Am. Airlines, Inc*., 177 F.3d 1272, 1296 (11th Cir. 1999) ("with respect to the types of compensatory damages awarded to passengers, the Convention 'provide[s] nothing more than a pass-through, authorizing [courts] to apply the law that would govern in absence of the Warsaw Convention.' . . . the district court concluded that the question of compensatory damages created a conflict-of-laws problem and thus applied the "most significant relationship" test articulated in the Restatement. . . The parties do not challenge this decision." (quoting and citing *Zicherman v. Korean Air Lines Co*., 516 U.S. 217 (1996))). Here, the parties certainly dispute the need for a separate conflict of law analysis and Plaintiffs' Colombian law claims are not "pass-through" claims—they are substantive claims with damages as an essential element.

While the Court has previously noted that conflicts of laws analyses must treat each specific issue distinctly under the doctrine of "depecage" (DE 3238 at 83), that doctrine is "inappropriate when used to fragment issues related to a common purpose or to legitimatize a smorgasbord approach which inures only to the benefit of the party picking and choosing." *Schippers v. U.S.*, 715 F.3d 879, 888 (11th Cir. 2013) (quoting *Johnson v. Continental Airlines Corp*., 964 F.2d 1059, 1064 (10th Cir. 1992)); *see also Chesapeake & O. Ry. Co. v. Kelly*, 241 U.S. 485, 491 (1916) ("the question of the proper measure of damages is inseparably connected with the right of action"). Fragmenting the choice of law for every other damages issue in the case (i.e., punitive damages, who can recover noneconomic damages, how to award decedent's pre-death damages) and damages limitations is therefore improper even under depecage because they are issues that relate to a common purpose: establishing the amount of damages or more broadly, the substantive element of damages. And, more fundamentally, picking and choosing when Colombian law suits them is precisely what Plaintiffs are doing here and exactly what is not allowed under the Eleventh Circuit's view of depecage. *Id.* The Eleventh Circuit has clearly rejected Plaintiffs' depecage arguments they use to fragment issues related to damages law. *Id*; *see also Johnson*, 964 F.2d at 1064 ("a party who seeks the benefit of one aspect of a state's compensatory damages law must accept the entire package. We stress, however, that we do not reject the principle of depecage. We simply find its application inappropriate in this case.").

Additionally, the specific portions of the Restatement (Second) of Conflict of Laws (1971) that instruct choice of law specifically on wrongful death claim *damages* supports the conclusion

that any limitation on the measure of damages is part and parcel with the substantive law that applies to the wrongful death claim. Section 178 provides that the substantive law that governs the wrongful death claim also "determines, for example, whether any limitations shall be imposed upon the amount of recovery" and "determines whether exemplary or punitive damages should be allowed and whether there can be recovery for particular elements of damage, such as the pain and suffering of the decedent and the mental anguish suffered by the beneficiaries as a result of the decedent's death." *See* Restatement (Second) of Conflict of Laws § 178 (1971). Indeed, the Court already applied Colombian law to these very issues. As another example, Section 177 provides that the substantive law governing the wrongful death claim "determines the beneficiaries who will share in the recovery." *Id.*, § 177. Again, the Court applied Colombian law when deciding how the decedent's pre-death damages should be distributed and which individuals were entitled to recover.

For all of these reasons, the Court's previous analyses regarding issues of damages also require that Colombian law be applied to limitations on damages because both are issues of Colombian substantive law on damages. In fact, the below (and unnecessary) choice of law analysis is even *clearer* with respect to damages limitations. For example, and as more fully set forth below, the Court properly found that Colombia has the stronger interest in its treatment of punitive damages. Here, Colombia has an even *greater* interest in instituting limits that affect *its residents*. This is especially true when the policy reasons behind the damages cap is to ensure equality among Colombian citizens and to prevent windfalls.

### 2. Even If a Conflict of Laws Analysis Were Required, It Would Result in Application of the Colombian Law Damages Limitations.

Even if the Court decides to conduct another conflict of laws analysis with respect to damages limitations, it should conclude that Colombian law applies.

As the Court has previously stated, "when a case originating in one district is transferred to another solely for purpose of consolidation into an MDL proceeding, the choice of law rules of the originating jurisdiction travel with the case and must be followed by the MDL Court." DE 3238, at 83. Among the five transferor jurisdictions, there are two choice of law rules: the "most significant relationship" test and the "interests analysis" test.

Four of the transferor jurisdictions—Florida, Ohio, New Jersey and D.C.— apply the "significant relationship" approach set forth in the Restatement (Second) of Conflict of Laws

(1971) to determine choice-of-law questions for tort issues. *See Kirchman v. Novartis Pharms. Corp.*, No. 8:06-CV-1787-T-24, 2014 WL 2722483, at *1 (M.D. Fla. June 16, 2014) (Florida) ("Generally, this approach requires determining which state—with respect to each particular issue—has 'the most significant relationship to the occurrence and the parties,' by assessing the enumerated contacts in section 145 in light of the general principles stated in section 6."); *In P.V. ex rel. T.V. v. Camp Jaycee*, 197 N.J. 132, 143, 962 A.2d 453, 460 (2008) (New Jersey) ("we now apply the Second Restatement's most significant relationship standard in tort cases. Under that standard, the law of the state of the injury is applicable unless another state has a more significant relationship to the parties and issues."); *Am. Interstate Ins. Co. v. G & H Serv. Ctr., Inc.*, 861 N.E.2d 524, 527 (Ohio 2007) (Ohio) (holding that the court adopted the Restatement test in *Morgan v. Biro Mfg. Co., Inc.*, 474 N.E.2d 286 (Ohio 1984)); *Borochov v. Islamic Republic of Iran,* 589 F. Supp. 3d 15 (D.D.C. 2022) (D.C.) (under the District of Columbia's most significant relation test used to determine choice of law, the law of Israel – rather than United States tort law – governed tort based claims brought by Israeli family members of victims of terrorist attacks where the attacks occurred in Israel). Colombian law applies here under the most significant relationship test.

The remaining jurisdiction, New York, applies an "interest analysis" which seeks to "effect the law of the jurisdiction having the greatest interest in resolving the particular issue." *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72, 612 N.E.2d 277, 280 (1993); *see also Cotiviti, Inc. v. Deagle*, 501 F. Supp. 3d 243, 256 (S.D.N.Y. 2020) ("For tort claims, courts in New York apply the 'interests test,' which looks at the 'law of the jurisdiction having the greatest interest in the litigation' . . . 'The states' interests are defined primarily by the parties' domiciles and the locus of the tort'" (citations omitted)). Domicile and the locus of the tort dictate the application of Colombian law under the "interests" analysis.

a.   *There Is a True Conflict of Laws.*

As a threshold issue, there is a true conflict between Colombian law, which applies a noneconomic damages limitation in civil wrongful death actions, and the law of the transferor courts, which do not apply a noneconomic damages limitation for wrongful death actions. Plaintiffs' contention that "Florida or Ohio law" should apply because "there is no conflict on the availability of non-economic damages for death or injury" under Colombian law (*see* DE 3523 at 18) begs the question. Colombian law limits damages for non-economic damages for death or injury, as courts have recognized and explained *supra.*[2] Therefore, a true conflict exists because neither Florida nor Ohio have such limitations.

Because there is a true conflict, the Court must determine if Florida or Ohio has a more "significant relationship" than Colombia under the Restatement test, or whether Florida or Ohio has a "greater interest in resolving the particular issue" under New York's "interests" test. As noted above and more fully explained below, the choice of Colombian law over both Florida and Ohio law is required under both analyses.

b.   *Applying the "Most Significant Relationship" Test Results in Application of the Colombian Damages Cap.*

For the four jurisdictions that follow the "most significant relationship" Restatement analysis, there is a presumption that Colombian law (the injury forum) applies. The Court recognized as much, stating that "under a Restatement Conflict of Laws §175 approach, the law of the place of injury is presumed to govern in an injury case, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in Sec. 6." DE 3238 at 84 (citing *In re Disaster at Detroit Metropolitan Airport on Aug 16, 1987*, 750 F. Supp. 793, 798 (E. D. Mich. 1989)) (internal quotations omitted). Thus, the Court begins with the presumption that Colombian law applies to the issue of compensatory damages.

The Court has previously found that Colombia, as the injury forum, has the most significant relationship with respect to issues of damages. *See* DE 3238 at 85. And, with respect to this case specifically, the 11th Circuit has previously found that Colombian law has the most significant

---

[2] In DE 3523, Plaintiffs argue only that "Florida or Ohio" law should apply—not the law of the transferor courts. The Plaintiffs that originally brought claims in New Jersey, New York and D.C. have therefore conceded that Colombian law must apply here, given that there is no basis for the Plaintiffs in those three transferor jurisdictions to argue that Florida or Ohio substantive law should apply to their out-of-state claims.

relationship to the issues in this case:

> The only connection the Plaintiffs' claims have to New Jersey is that it's where Chiquita is incorporated. **The Plaintiffs' claims are all based on Colombian law; they arose out of Chiquita's criminal conduct in Colombia; and the claims only involve Colombian citizens.** New Jersey cannot fairly be said to have a "substantial interest" in this matter . . . . **Plainly, Colombia has a far more "significant relationship" with the parties and the misconduct.** Notwithstanding Chiquita's incorporation in New Jersey, New Jersey has no direct ties to the acts or the victims.

*See Garcia v. Chiquita Brands Int'l, Inc*., 48 F.4th 1202, 1215 (11th Cir. 2022), *cert. denied sub nom*. *Doe 8 v. Chiquita Brands Int'l, Inc*., 143 S. Ct. 2659 (2023) (emphasis added). While the *Garcia* court was discussing issues of tolling and statute of limitations, this same rationale applies here, given that Florida and Ohio (or any other transferor jurisdiction) "cannot fairly be said to have" any relationship with the issue of compensating foreign plaintiffs.

To the extent the Court finds it necessary to conduct the Restatement analysis again, the factors for consideration are set forth in section 6 of the Restatement, as follows: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." *See* Restatement (Second) of Conflict of Laws §§ 6, 175 (1971).

In assessing these factors, the Eleventh Circuit observed that "the section 6(2) analysis for wrongful death claims 'turns in large part on the balance of competing interests contemplated by sections 6(2)(b) and 6(2)(c).'" *Piamba Cortes*, 177 F.3d at 1299. This balancing analysis contains three steps: "First, we identify the particular rule of law to be applied by each interested state. Second, we identify the purposes or policies underlying each state's rule. Third, we 'assess the degree to which the purposes underlying each rule would be furthered by the rule's application.'" *Id.* (internal citations omitted). *Id.* The court in *Piamba Cortes*, a case heavily relied on by Plaintiffs, found that "[i]n sum, the policies of both Colombia and Florida would be furthered by applying their compensatory damages schemes" but "[b]alanced together, this analysis weighs slightly *in favor of applying Colombian law* because, as noted above, the policy to be served under Colombian law is more compelling than the policies served by applying Florida law." *Id.* at 1301

(emphasis added).

The balancing analysis weighs in favor of applying Colombian law here too because Colombia's goals of regulating conduct within its borders and providing an adequate remedy for its own citizens would be furthered by application of Colombian law, whereas Florida's or Ohio's similar goals would not be furthered by application of its own law given that Plaintiffs are not U.S. domiciliaries and no relevant conduct occurred within Florida's or Ohio's borders. *See Onita-Olojo v. Sellers*, No. 13-60443, 2016 WL 7839184, at *4 (S.D. Fla. Aug. 1, 2016) (Restatement sections 6(2)(b) and 6(2)(c) balancing analysis favored application of Nigerian damages law over Florida law because (i) "Nigeria's goal of compensating decedent dependents" would be furthered by applying its own damages law, (ii) "Florida's goal of providing an adequate remedy for its own domiciliary survivors would not be promoted [because] neither plaintiff is a domiciliary of Florida", (iii) "Nigeria's goal of regulating, as it alone sees fit, conduct that is wholly confined within its borders would be promoted if its own, rather than Florida's, damages law were applied", and (iv) Florida's goal of regulating conduct within its borders "would be unaffected by the application of Nigerian law since neither the injury, the conduct causing the injury, nor the formation of the relationship between the parties occurred in Florida.").

As to the Restatement factor in section 6(2)(a), "the needs of the interstate and international systems," the *Piamba Cortes* court found that the factor "favors neither Florida nor Colombia." *Piamba Cortes*, 177 F.3d at 1302. However, the court in *Onita-Olojo* distinguished *Piamba Cortes* and found that the factor weighed in favor of Nigerian law, not Florida law, because the locus of the tort and the parties' interactions took place entirely in Nigeria. *See Onita-Olojo*, 2016 WL 7839184, at *5 ("Nigeria is much more than just the place in which the injury occurred. That the sum total of the relationship and interactions between the parties took place entirely within Nigeria renders *Piamba Cortes*'s ultimate decision to apply Florida law to a crash in Colombia inapplicable to this case."). Here too, this factor favors Colombian law over Florida law here because the conduct at issue in this case occurred almost entirely in Colombia and primarily involving Chiquita's Colombian subsidiary.

With respect to Restatement section 6(2)(d) and 6(2)(f)— "the protection of justified expectations" and "certainty, predictability and uniformity of result"— have typically little significance in tort cases and thus does not sway the analysis in either direction. *Piamba Cortes*, 177 F.3d at 1302.

As to section 6(2)(e), the *Piamba Cortes* court found that the basic policies underlying the law of torts "weighs slightly in favor of applying Florida law." *Id.* Plaintiffs stretch this to mean that *Piamba Cortes* stands for the broad proposition that a U.S. defendant can never benefit from the application of a foreign damages cap. That is incorrect.[3] The *Piamba Cortes* court stated:

> No Colombian domiciliaries are named as defendants, and the general rule in this circuit is that "a limit on recovery should not be applied when there is no domiciliary defendant because it advances no policy behind the limitation." *Foster v. United States*, 768 F.2d 1278, 1283 (11th Cir. 1985). Notwithstanding this general rule, we have recognized in dicta that a restrictive damages scheme may be designed to encourage non-domiciliary corporations to transact business within a jurisdiction and that this policy may be furthered by applying the scheme to a non-domiciliary defendant.

*Piamba Cortes*, 177 F.3d at 1300–01. That policy consideration is *precisely* what this Court has previously found. *See* DE 3238 at 85 ("Colombia has a strong economic interest in governing and regulating the conduct of foreign corporations doing business on its soil."). Thus, the Court has already found the law's underlying policy would be furthered by applying Colombia's damages law to Chiquita, a non-domiciliary defendant. Additionally, Chiquita is far from the ordinary non-domiciliary defendant, given that the entire conduct at issue here involves Chiquita's Colombian subsidiary, Banadex, which was a Colombian domiciliary. This weighs in favor of applying Colombia's damage law even under Plaintiffs' reading of *Piamba Cortes*.

Critically, the court in *Piamba Cortes* did not have the benefit of the policy reasons underlying the Colombian Supreme Court's judicially-created noneconomic damages. Justice Santos explains that the purposes of the caps are to ensure equal treatment of *Colombian plaintiffs* under the law and to avoid windfalls to *Colombian plaintiffs.* Exhibit A, Santos July 2024 Decl. ¶¶ 19 – 25. Contrary to *Piamba Cortes'* dicta that the caps only serve to protect *defendants*, the actual Colombian law and history makes clear that the caps are not about protecting defendants at all, but rather about ensuring equality. *Id.* ¶ 25. Letting the Verdict stand without reduction would

---

[3] Indeed, even post-*Piamba Cortes*, other district courts in the Eleventh Circuit have applied foreign damages caps in cases against U.S. defendants. *See, e.g.*, *McCarthy v. Yamaha Motor Mfg. Corp.*, 994 F. Supp. 2d 1329, 1336 (N.D. Ga. 2014) (forum choice of law rules required court to apply Australian law regarding noneconomic damages cap and punitive damages in lawsuit brought by Australian citizens against U.S. defendant featuring claims governed by Australian substantive law).

eviscerate equality among Colombian plaintiffs and unjustly enrich those who are able to bring their claims in the United States while their fellow citizens who bring claims in Colombia are bound by the caps. Furthermore, *Piamba Cortes*' dicta traces back to *Foster* which did not deal with Colombian law at all, let alone Colombian policy objectives. 768 F.2d at 1283. Further, *Foster* made clear that choice of law principles should not award forum shopping. *Id.* Not reducing the Verdict in accordance with Colombian law would lead to massive forum shopping outside of Colombia in future cases to avoid the caps.

Further, *Piamba Cortes* and *Foster* set forth *frameworks* for the analysis; they do not require any particular result. Indeed, in *In re Air Crash Near Rio Grande, Puerto Rico, on Dec. 3, 2008,* No. 10-CV-81551, 2016 WL 11783407, at *1 (S.D. Fla. Oct. 27, 2016) (Marra, J.), this Court rejected the type of blind reliance on *Piamba Cortes* and *Foster* that Plaintiffs seek. *Id.* at *1. The Court ruled that while these two Eleventh Circuit cases set forth the analysis, "that does not result in the same outcome…given the different facts in each case" because both cases stand for the proposition that "the particular weight…given to any factor will vary from issue to issue as well as among different fact situations involving the same issue" *Id.* (quoting *Foster*, 768 F.2d at 1280). Therefore, the analysis requires "an examination of the interests created by the facts and circumstances of each case." *Id.* (quoting *Piamba Cortes*, 177 F.3d at 1287); *see also Onita-Olojo*, 2016 WL 7839184, at *5 ("The repeated emphasis then that the Plaintiffs put on the Eleventh Circuit's direction [in *Piamba Cortes*] . . . is misplaced in this case."). An examination of the *actual* policy interests of the damages caps, as explained by Justice Santos, shows section 6(2)(e) of the Restatement weighs heavily toward applying Colombian law. Exhibit A, Santos July 2024 Decl. ¶¶ 19-25.

Finally, with respect to the last factor, section 6(2)(g) of the Restatement involves the "ease in the determination and application of the law to be applied." *Piamba Cortes*, 177 F.3d at 1302–03. In *Piamba Cortes*, the Eleventh Circuit found that the district court "failed to reconcile" the disagreement of whether there were indeed caps on non-pecuniary damages. *Id.* at 1303. Accordingly, the court applied Florida law because "Florida law is straightforward and easy to apply." *Id.* In other words, *Piamba Cortes* did not have sufficient information on Colombian law at the time to understand its application. And notably, just because foreign law might be more difficult to apply, this factor is less significant where the parties have already stipulated to the application of foreign law to the issues of liability, as in this case. *See Onita-Olojo*, 2016 WL

7839184, at *6 ("Lastly, regarding factor 6(2)(g) . . . the Court nonetheless finds that the Plaintiffs are likely correct that 'the ease of application of Florida law' weighs against applying Nigerian law. **However, since the parties have already stipulated to the application of Nigerian law to the issue of liability, this factor does not weigh as heavily as it might have**." (emphasis added)); *see also* Pretrial Stipulation, DE 3576 at 10 § VII (stipulating that "Plaintiffs' Colombian law claims against Chiquita arise under Article 2341 of the Colombian Civil Code as negligence, wrongful death style claims.").

Judge Graham in the Southern District of Florida addressed a similar situation in *Kangiser*. There, Judge Graham recognized that, in a prior case, Judge Castillo in the Northern District of Illinois did not have sufficient information to determine whether Colombian law-imposed caps on noneconomic damages. However, after reviewing a Rule 44.1 declaration on the topic, Judge Graham definitively found that the caps do exist and did apply. *Kangiser*, at *9.   Here, the Rule 44.1 declaration attached as Exhibit A gives the Court sufficient information to rule that the caps both exist and apply as a matter of law, just as the Rule 44.1 declaration in *Kangiser* gave Judge Graham sufficient information in making his ruling.

Finally, as noted above, binding Fifth Circuit precedent has similarly determined through a choice of law analysis that Colombian law institutes caps on noneconomic damages and should apply where the death occurs in Colombia. *McDaniel*, 455 F.2d at 140 (finding that "the rejection of the Colombian rule would do little or nothing to help Louisiana regulate conduct either within or without its borders" and holding "the jury must be instructed that it is limited, as Colombian law requires, to awarding the U.S. dollar equivalent of 2000 pesos [cap at the time] for the loss of love and affection"). The Fifth Circuit accepted the lower court's determination that this was "indeed the law" and cited Fed. R. Civ. P. 44.1. *See id.* at 138 n.1. Therefore, not only does section 6(2)(g) weigh heavily towards applying the Colombian caps, but binding precedent requires it.

For all of these reasons, the Restatement's "most significant relationship" analysis requires application of the Colombian law caps.

> *c.* <u>*Applying the "Interests" Analysis Results in Application of the Colombian Damages Cap.*</u>

Where the conflict of law issue involves one of "loss allocation," such as a cap on noneconomic damages, New York choice of law rules instruct that the court applies the substantive law of the plaintiffs' domicile. *See In re New York City Asbestos Litig.*, 32 Misc. 3d 161, 167, 921

N.Y.S.2d 466, 470 (Sup. Ct. 2011) (applying Oregon's damages cap to claims brought by Oregon-domiciled decedent because "New York courts have rejected any public policy concerns and uniformly concluded that a *decedent's home state has the greatest interest in resolving loss allocation issues arising out of personal injury and wrongful death actions*" (internal citations and quotations omitted) (emphasis added)); *Juodis v. Schule*, 79 Misc. 2d 955, 957, 361 N.Y.S.2d 605, 607 (Sup. Ct. 1974) ("In cases involving limitation in the amount of recovery, the rule now appears to be that the law of the place of [plaintiffs'] residence rather than occurrence will apply, since the *predominant interests to be served on the issue of damages are those of the state containing the people or estates which will <u>receive</u> the recoverable damages*, if any, for their injuries for the decedent's death." (emphasis added)). Thus, under New York choice of law rules, the limit on damages under Colombian law must apply.

To the extent the Court finds that "the parties' individual domiciles have roughly equal interests in asserting their loss allocation rules to their own domiciliaries" then the "locus is therefore used as a 'tie breaker' because that is the only State with which both parties have purposefully associated themselves in a significant way." *In re Air Crash Near Clarence Ctr., N.Y.*, 983 F. Supp. 2d 249, 256 (W.D.N.Y. 2013) (internal quotations and citations omitted) (cleaned up). Colombian law must apply, as the locus jurisdiction. Indeed, New York courts caution against "allowing a party to select a forum which could give him a larger recovery than the court of his own domicile" (*see id.* at 257), which would result here if the Court were to apply Florida or Ohio law.

Thus, the Court should apply the Colombian damages cap to this case under the New York "interests" analysis as well.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, the Court should grant the Motion.

Dated: July 8, 2024

Respectfully submitted,

*/s/ Michael L. Cioffi*

Michael L. Cioffi (*pro hac vice*)
Thomas H. Stewart (*pro hac vice*)
BLANK ROME LLP
1700 PNC Center
201 East Fifth Street
Cincinnati, Ohio 45202
Tel:    (513) 362-8701/04
Fax:    (513) 362-8702/93
Email:  michael.cioffi@blankrome.com
        tom.stewart@blankrome.com

Frank A. Dante (*pro hac vice*)
Melissa F. Murphy (*pro hac vice*)
Michael A. Stoolman (*pro hac vice*)
Serena S. Gopal (*pro hac vice*)
BLANK ROME LLP
One Logan Square
130 N. 18th Street
Philadelphia, PA 19103
Tel:    (215) 569-5645
Fax:    (215) 832-5645
Email:  frank.dante@blankrome.com
        melissa.murphy@blankrome.com
        michael.stoolman@blankrome.com
        serena.gopal@blankrome.com

*Counsel for Defendant,*
*Chiquita Brands International, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I electronically filed this document with the Clerk of the Court using CM/ECF on July 8, 2024 which will automatically generate and serve Notices of Electronic Filing on all counsel of record.

*/s/ Michael L. Cioffi*
*Counsel for Defendant Chiquita*
*Brands International, Inc.*
