UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-MD-01916-MARRA

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:
ATS ACTION

08-80465-CIV-MARRA (D.C. Action) (*Does 1-144*)
_____/

### MOTION TO ADJUDICATE AND ENFORCE CHARGING LIEN

Pursuant to Southern District of Florida Local Rule 7.3, Conrad & Scherer, LLP ("C&S") moves to adjudicate and enforce its charging lien.

### BACKGROUND

1. In 2007, a group of Plaintiffs known as *Does 1-144* retained Terrence Collingsworth and Paul Wolf to represent them in an action related to Chiquita Brands International, Inc.'s knowing and substantial assistance to the AUC. *See*, *e.g.*, **Ex. 1** (Retainer - Gladys Nohemy Correa Munoz).[1]

2. Shortly after filing an action against Chiquita on behalf of *Does 1-144*, Mr. Collingsworth joined C&S. *See* DE 15 (Aug. 21, 2008 Notice of Change of Firm Affiliation and Address).

3. Subsequently, several C&S lawyers have appeared in this litigation as counsel for *Does 1-144*. *See* DE 462 (William R. Scherer, III); DE 545, 546 (Eric J. Hager); DE 761 (William R. Scherer, Jr; Albert L. Frevola).

---

[1] All of the *Does 1-144* signed substantially the same retainer agreement as Exhibit 1.

4. After several years of C&S's active representation of *Does 1-144*, and after Mr. Collingsworth left C&S, Mr. Wolf moved to disqualify Mr. Collingsworth and C&S from further representation of those plaintiffs. *See* DE 2373 (*Does 1-144*'s Cross-Motion to Disqualify Collingsworth from Representing *Does 1-144*); DE 2599 (*Does 1-144*'s Renewed Motion to Disqualify Collingsworth from Representing *Does 1-144*).

5. The Court granted *Does 1-144*'s request for relief, "reliev[ing] [Attorney Terrence Collingsworth and C&S] of any further responsibility for the representation of Does 1-144." DE 2658 (Apr. 28, 2020 Order).

6. In discharging C&S, the Court invited the law firm "to file a notice of charging lien…to preserve any claim entitlement to" fees and costs incurred in prosecuting *Does 1-144*'s claims. *Id.* C&S promptly filed a Notice of Charging Lien as to *Does 1-144*. *See* DE 2687.

7. On June 18, 2024, Mr. Wolf and Chiquita agreed on a framework for settling Mr. Wolf's clients' claims, including those of *Does 1-144*. DE 3833-1.

8. On June 28, 2024, the Court approved the proposed settlement agreement and granted the Joint Motion of the Wolf Plaintiffs and Chiquita for the Court to Issue a Show Cause Order. *See* DE 3847. The Order requires "the Third-Party Administrator hold in escrow the last payment of 25% of attorneys' fees to satisfy the amount of any charging lien the Court finds to be valid." *Id.* at 2.

9. It is this Order that gives rise to the motion. *See* S.D. Fla. L.R. 7.3(a)(2).

10. C&S's charging lien is ripe for judicial determination.

11. C&S seeks enforcement of its charging lien in the amount of $246,610.92, including $241,855.50 in attorneys' fees and $4,755.42 in nontaxable costs. C&S's expert, Carey

M. Fischer, has opined that these amounts are reasonable.[2] *See generally* **Ex. 2** (Declaration of Carey Fischer).

## ARGUMENT

**I.     *DOES 1-144* WAIVED ALL OBJECTIONS TO ENTITLEMENT AND AMOUNT.**

Local Rule 7.3 has mandatory procedures for motions for attorneys' fees and costs. While C&S followed those procedures, *Does 1-144*, through their attorney Mr. Wolf, ignored them. Mr. Wolf's choice means that he has waived all objections to C&S's entitlement to fees and costs, as well as all objections to the amount sought. *Taverna Imps. v. A&M Wine & Spirits*, 2019 U.S. Dist. LEXIS 238644, at *12 (S.D. Fla. Oct. 2, 2019) ("Failure to comply with Local Rule 7.3(b) results in a waiver of objections to the fee request.").

Local Rule 7.3 "provides a mechanism to assist parties in resolving attorneys fee and costs disputes by agreement." S.D. Fla. L.R. 7.3(a). It contains a number of requirements for any such motion. Before filing a motion for fees and costs, Local Rule 7.3(b) requires that a draft of the motion be served on the respondent. C&S complied with that requirement by serving Mr. Wolf with a draft of this motion on July 29, 2024. **Comp. Ex. 3**. The draft motion expressly stated that C&S was moving under Local Rule 7.3. **Comp. Ex. 3** at 2 ("Pursuant to Southern District of Florida Local Rule 7.3, [C&S] moves to adjudicate and enforce its Charging Lien[.]").[3]

---

[2] In its Notice of Charging Lien (DE 2687), C&S identified the amount of its lien as $245,772.78. The current amount is based on a more thorough internal review of the C&S time entries related to *Does 1-144* and an evaluation by C&S's expert, Carey Fischer, of potentially compensable time entries.

[3] While much of it is identical, the instant motion provides certain updates to the draft motion. For instance, the facts underlying C&S's waiver argument were not available to it when it served the draft motion, so this waiver section could not have been included in the draft motion.

Following service of the draft motion, Local Rule 7.3(b) shifts the burden to the respondent (Mr. Wolf, on behalf of *Does 1-144*). Two of the rule's requirements are relevant here.

First, "[w]ithin twenty-one (21) days of service of the draft motion, the parties shall confer and attempt in good faith to agree on entitlement to and the amount of fees and expenses." S.D. Fla. L.R. 7.3(b). When C&S served Mr. Wolf with the motion on July 29, it proposed dates and times for a meet and confer. **Comp. Ex. 3** at 1. While he originally accepted C&S's invitation to meet and confer, on August 3, Mr. Wolf cancelled the planned Zoom conference, stating:

> I've reviewed your motion and bill of costs and oppose the motion. You've fulfilled your duty to confer. I don't want to sit through a zoom meeting.

**Ex. 4** at 1.

Second, within the same time period (21 days from service of the draft motion), Local Rule 7.3(b) required Mr. Wolf to "describe in writing and with reasonable particularity each time entry or nontaxable expense to which [he] objects, both as to issues of entitlement and as to amount, and . . . provide supporting legal authority." Mr. Wolf also defaulted on that requirement. Although more than 21 days have passed, Mr. Wolf never objected to any "time entry or nontaxable expense to which [he] objects," either as to entitlement or amount. S.D. Fla. L.R. 7.3(b). Instead, Mr. Wolf stated that he "oppose[s] the motion." **Ex. 4** at 1. That generic statement does not satisfy Mr. Wolf's obligation to "describe in writing and with reasonable particularity each time entry or nontaxable expense to which [he] objects." S.D. Fla. L.R. 7.3(b).

The consequence of Mr. Wolf's violation of Local Rule 7.3 is simple: waiver. "Failure to comply with Local Rule 7.3(b) results in a waiver of any objections to the fee request. Because Mr. [Wolf] failed to object to these time entries in a response to the draft motion for attorneys' fees, he has waived any objection to them." *Taverna Imps.*, 2019 U.S. Dist. LEXIS 238644, at \*28 n.9. Like *Taverna*, courts in this District regularly find that respondents waive their objections to

fees and costs where they fail to comply with Local Rule 7.3(b). *See, e.g.*, *Club Madonna, Inc. v. City of Miami Beach*, 2015 U.S. Dist. LEXIS 126629, at *30-31 (S.D. Fla. Sep. 22, 2015) ("The Court is not so lenient when a party flippantly disregards the Local Rules—especially rules that are designed to conserve the Court's resources—and finds that Plaintiffs waived their objections to the City's fee request as to Count II by failing to comply with Local Rule 7.3(b)."); *Liberty Mut. Fire Ins. Co. v. State Farm Fla. Ins. Co.*, 2020 U.S. Dist. LEXIS 184770, at *10 n.5 (S.D. Fla. Sep. 18, 2020) ("State[] Farm failed to describe in writing which entries or expenses to which it objected, or provide legal authority for any objections, as required by Local Rule 7.3(b). Failure to comply with Local Rule 7.3(b) results in a waiver of objections to the fee request.").

C&S was ready and willing to confer with Mr. Wolf. But Mr. Wolf refused, perhaps because he felt that a meet and confer would not have been fruitful. However, that is not his decision to make. As one court stated:

> It is undisputed that Mr. Harris failed to describe in writing which entries or expenses to which he objected, or provide legal authority for his objections, in violation of Local Rule 7.3(b). He simply argues that "a written submission of the objection would likely not have resulted in an agreement between the parties." However, "'[a]s one court in this district has noted, Local Rule 7.3's requirements are not optional, but mandatory.'"

*Taverna Imps.*, 2019 U.S. Dist. LEXIS 238644, at *11 (citations omitted). Local Rule 7.3 made Mr. Wolf's participation in the meet and confer process, including his obligation to offer particularized objections, mandatory. His decision to ignore the rule means he and his clients have waived all objections to C&S's charging lien.

In summary, *Does 1-144* have waived their objections as to C&S's entitlement to its charging lien and to the amount of the lien. Accordingly, the Court should rule that C&S is entitled to the full amount of its lien, $246,610.92, without the need for further proceedings. *See Norman*

*v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988) (evidentiary hearings are not always required when adjudicating requests for attorneys' fees).

## II. C&S TIMELY PERFECTED ITS CHARGING LIEN UNDER FLORIDA LAW.

Mr. Wolf's procedural waiver is dispositive. But the substantive facts of this case and the applicable law likewise demonstrate that C&S is entitled to recover the full amount of its charging lien.

"[A]lthough [federal courts] recognize no common law lien in favor of attorneys, [they will] give effect to the laws of the states in which they are held." *Gottlieb v. GC Fin. Corp.*, 97 F. Supp. 2d 1310, 1311 (S.D. Fla. 1999). Thus, C&S may enforce its timely and perfected charging lien under Florida law.

The Eleventh Circuit has laid out the required findings to establish an attorney's charging lien:

> [F]irst, a valid contract, express or implied, between the attorney and client; second, an understanding between the parties that payment is dependent upon recovery; third, the client's attempt to avoid payment of the fees or a dispute over the amount involved; and fourth, timely notice of the lien.

*Willis v. Nova Cas. Co.*, 2023 U.S. App. LEXIS 1401, at *5 (11th Cir. Jan. 20, 2023) (quoting *Franklin & Marbin, P.A. v. Mascola*, 711 So. 2d 46, 52 (Fla. 4th DCA 1998)). C&S has met the four above requirements, and the Court should enforce its rights to recover.

### A. The valid contracts between *Does 1-144* and C&S.

#### 1. There are express contracts with *Does 1-144* that inured to the benefit of C&S.

*Does 1-144* entered into express contracts for legal representation with Mr. Collingsworth. *See*, *e.g.*, **Ex. 1** (Retainer - Gladys Nohemy Correa Munoz). When Mr. Collingsworth joined C&S, these contracts inured to the benefit of C&S. Indeed, the record is clear that the Court, Mr. Wolf, and *Does 1-144* all recognized that C&S represented *Does 1-144*. *See infra* §§ II(A)(2)-(3).

6

### 2. There are implied contracts between *Does 1-144* and C&S.

Alternatively, there are implied contracts between *Does 1-144* and C&S, which are sufficient under Florida law to establish the first element of a charging lien. *E.g.*, *Willis*, 2023 U.S. App. LEXIS 1401, at *5. "A contract implied in fact is one form of an enforceable contract; it is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct, not solely from their words." *SBP Homes, Ltd. Liab. Co. v. 84 Lumber Co.*, 384 So. 3d 241, 244 (Fla. 4th DCA 2024) (quoting *Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997)). Rendering legal services "without… [a client's] expressed request, but with his knowledge, and under circumstances fairly raising the presumption that the parties understood and intended that compensation was to be paid," *Equity Contracting*, 695 So. 2d at 386, satisfies the first element of a charging lien.

*Does 1-144* were aware that C&S was prosecuting their claims against Chiquita. A number of *Does 1-144* travelled to Florida to be deposed. C&S staff was instrumental in preparing these plaintiffs for depositions, including assisting them in obtaining their passports and visas. *See, e.g.*, **Ex. 2** at Ex. B (time entry nos. 286, 302, 310, 319, 322, 340, 341, 347, 357). Spanish-speaking staff also attended deposition preparation sessions, and the depositions themselves, to assist the testifying *Does 1-144*. *See, e.g.*, **Ex. 2** at Ex. B (time entry nos. 426, 430, 435, 439, 445). Prior to the depositions, C&S was instrumental in preparing and submitting initial disclosures for a subset of the *Does 1-144* (*see, e.g.*, **Ex. 2** at Ex. B (time entry nos. 247, 251-252, 268-270, 272)), and in responding to discovery requests. *See, e.g.*, **Ex. 2** at Ex. B (time entry nos. 457-458, 463-464, 468, 469). These tasks required extensive communications with *Does 1-144* by Spanish-speaking C&S staff.[4] Aside from discovery, C&S attorneys were instrumental in briefing issues impacting *Does*

---

[4] Most of that work was performed by David Garces, an Ecuadorian attorney who, for purposes of this case, recorded his time as a paralegal.

*1-144*, such as opposing Chiquita's motions to dismiss directed at them. *See*, *e.g.*, **Ex. 2** at Ex. B (time entry nos. 15-16, 23-25, 28, 41-42, 44-45, 47).

Based on the above facts, an implied contract was formed between *Does 1-144* and C&S; *Does 1-144* were aware of C&S's involvement and work on their claims; and *Does 1-144* were aware and intended that their attorneys—including C&S—would be paid for their labor in prosecuting their claims.

### 3. *Does 1-144* are estopped from denying that C&S represented them.

There are numerous court filings in which Mr. Wolf conceded that C&S was representing *Does 1-144*. *See* DE 3835 (Wolf Plaintiffs' Response to Non-Wolf Plaintiffs' Expedited Motion to Sever *Does 1-144's* Claims from Bellwether 1B Trial (DE 3820) at 5 n.2 ("Early in the ligitation (*sic*), we thought we had resolved the representation of **these 144 individuals [the Wolf Plaintiffs]**, **which would be jointly represented by Wolf, Collingsworth and Conrad & Scherer**.")) (emphasis added). Mr. Wolf even approved of Mr. Collingsworth's designation "as lead counsel for Does 1-144" after Mr. Collingsworth joined C&S. DE 1201 at 3 n.1. Any argument contrary to these representations to the Court should be rejected out of hand.

Furthermore, the Court has already considered and rejected Mr. Wolf's argument that "[C&S] does not represent [*Does 1-144*]." *Id.* The Court reiterated that Mr. Collingsworth, while part of C&S, was "designated…lead counsel for Does 1-144, based in part on a written stipulation approving the designation signed by Mr. Wolf himself." *Id.* ("the Court designated Mr. Collingsworth, **of Conrad Scherer**, as lead counsel for Does 1-144") (emphasis added). In addition, the Court ruled that C&S had an obligation "to continue representation of the entire plaintiff pool, including Does 1-144." *Id.*

8

Given Mr. Wolf's prior statements and this Court's Order (DE 1201), the *Does 1-144* plaintiffs should be barred from advancing any contradictory argument now.

**B. There was an express or implied understanding that payment would be contingent on or would be paid from any recovery obtained by *Does 1-144*.**

*Does 1-144* understood that their attorneys—including C&S—were rendering legal services on their behalf, and that payment for these legal services was contingent on and would be paid from the recovery obtained. This conclusion is inescapable.

First, the written retainer signed by *Does 1-144* expressly provides for a contingent fee. *See* **Ex. 1** ¶ 5.c. ("[T]he Attorneys are entitled to 33% of the monetary compensation if the case is resolved before going to trial, and 40% of the monetary compensation if it is granted after the beginning of the trial."). *Does 1-144* understood that C&S was working on their behalf under the same terms, especially in light of C&S's active involvement in responding to discovery, facilitating passports and visas, and assisting in depositions. *See supra* §§ II(A)(2)-(3). Accordingly, *Does 1-144* understood that their attorneys—including C&S—were providing legal services on a contingency basis that would be paid out of any recovery obtained.

**C. *Does 1-144* have indicated there is a dispute over C&S's entitlement to its fee.**

C&S timely notified *Does 1-144* of its intent to claim its reasonable fee from any recovery obtained through this litigation. *See infra* § II(D). In response, *Does 1-144* have indicated that they object to C&S recovering on its lien. *See* DE 1201 at 4. This establishes an attempt to avoid or otherwise dispute the amount fee sought by C&S in its charging lien. *See Stratos v. AIG Prop. Cas. Co.*, 2023 U.S. Dist. LEXIS 134332, at *19 (S.D. Fla. Aug. 2, 2023) (applying Florida law to find the avoidance or dispute element for charging lien was established because the client "argue[d] that she should not be required to pay [former counsel because] … the agreement [was] unenforceable and the fees requested…[were] excessive.").

9

### D. C&S timely filed its notice of charging lien.

Nearly four years ago, on September 9, 2020, C&S put *Does 1-144* on notice that it intended to claim a reasonable fee based on any recovery obtained by *Does 1-144* in this litigation. *See* DE 2687. C&S's filing was timely. *See Stratos*, 2023 U.S. Dist. LEXIS 134332 at *19 ("Typically, in order to be 'timely,' notice of an attorney's charging lien must be filed before the lawsuit has been reduced to judgment or dismissed pursuant to settlement.…Put differently, an attorney is obligated to notify his clients in some way before the close of the original proceeding that he intend[s] to pursue the charging lien.") (internal quotation marks and citations omitted).

### III. THE COURT SHOULD ENFORCE C&S'S TIMELY AND PERFECTED CHARGING LIEN

C&S's charging lien is "chargeable against any person who, at the time of the notice of intent to claim a lien is given, holds monies or property which becomes proceeds of a judgment to be entered in the future." *Hutchins v. Hutchins*, 522 So. 2d 547, 549 (Fla. 4th DCA 1988). Based on Mr. Wolf's agreement, the Third-Party Administrator is holding funds in escrow sufficient to satisfy C&S's lien. DE 3847 at 2 ("The Wolf Plaintiffs and Chiquita acknowledge and agree to the Court's instructions at the status conference that the Third-Party Administrator hold in escrow the last payment of 25% of attorneys' fees to satisfy the amount of any charging lien the Court finds to be valid."). Thus, the lien is chargeable against Mr. Wolf and the Third-Party Administrator.

### A. The reasonable fees and costs sought by C&S.

C&S is seeking to recover for time and costs specifically related to its representation of *Does 1-144*, which is only a small fraction of C&S's overall time and expense in this litigation. In relation to *Does 1-144*, C&S lawyers, paralegals, and staff recorded 893.3 hours of compensable

time[5] at varying hourly rates representing $241,855.50 in fees. **Ex. 2** (Declaration of Carey Fischer) ¶ 10 & Ex. B. C&S also incurred costs specific to *Does 1-144* totaling $4,755.42. *Id.* ¶ 16. Under Florida law, the fees and costs sought by C&S are reasonable, as are the hourly rates being applied. *Id.* ¶¶ 5-10 & Ex. B (fees); ¶¶ 13-16, Ex. C, & Comp. Ex. D (costs); ¶¶ 5, 12 (hourly rates).

## CONCLUSION

C&S respectfully requests that the Court grant C&S's charging lien and order the Third-Party Administrator to pay C&S $246,610.92. Because *Does 1-144* waived all objections to C&S's entitlement to fees and costs, and to the amount requested, the Court need not set an evidentiary hearing to determine the amount of C&S's charging lien.

---

[5] C&S provided Mr. Fischer with all of the time entries for which the firm originally sought fees for its representation of *Does 1-144*. Mr. Fischer reviewed those entries and identified which ones, in his expert opinion, he felt were fully compensable. He also identified the time entries he felt were not compensable, in whole or part. Those entries are reflected in the "Reduction" column of Exhibit B to Mr. Fischer's declaration. C&S is only seeking the amount of fees that Mr. Fischer opines are compensable: $241,855.50.

## Verification

Pursuant to Local Rule 7.3 of the Southern District of Florida, I do solemnly declare and affirm under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: August 27, 2024.

/s/ Eric Hager
Eric Hager

## Local Rule 7.3(b) Certificate of Good Faith

Pursuant to Local Rule 7.3 of the Southern District of Florida, I do solemnly certify that a good faith effort to resolve the issues raised in this motion has taken place. On July 29, 2024, I served Mr. Wolf with a draft of this motion and proposed dates and times for a meet and confer. **Comp. Ex. 3** at 1. While he originally accepted C&S's invitation to meet and confer, on August 3, Mr. Wolf cancelled the planned Zoom conference, stating:

> I've reviewed your motion and bill of costs and oppose the motion. You've fulfilled your duty to confer. I don't want to sit through a zoom meeting.

**Ex. 4** at 1.

Dated: August 27, 2024.

/s/ Eric Hager
Eric Hager

Dated: August 27, 2024                                  Respectfully submitted,

/s/ Eric Hager
Eric Hager (Fla. Bar No. 1051523)
Conrad & Scherer, LLP
Edificio Officenter, Suite 304
Avenida Pampite S/N y Chimborazo -
Cumbayá
Quito, Ecuador
Tel: (954) 622-0461
Fax: (954) 463-9244
ehager@conradscherer.com

William R. Scherer (Fla. Bar No. 169454)
Conrad & Scherer, LLP
633 South Federal Highway, Eighth Floor
Fort Lauderdale, FL 33301
Tel: (954) 462-5500
Fax: (954) 463-9244
wscherer@conradscherer.com