**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 08-MD-01916-MARRA**

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:

ATS ACTION
08-80465-CIV-MARRA (D.C. Action) (Does 1-144)
_____/

**Wolf Plaintiffs' Opposition to Conrad & Scherer LLP's Motion to Enforce
Charging Lien, and to Set Evidentiary Hearing on Charging Lien [Doc. 3884]**

A.     **Conrad & Scherer LLP cannot recover in <u>quantum meruit</u>, which is an equitable
       right to recovery for fees and services in a particular suit, because there were no
       express or implied contracts or understandings.**

"The charging lien is an equitable right to have costs and fees due an attorney for services

in suit secured to him in the judgment or recovery in that particular suit." <u>Naftzger v. Elam</u>, 41 So.

3d 944, 946 (Fla. 2d DCA 2010) (<u>quoting</u> <u>Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik,

P.A. v. Baucom</u>, 428 So. 2d 1383, 1384 (Fla. 1983).  An attorney who seeks to enforce an attorney's

fee charging lien is required to "show: (1) an express or implied contract between attorney and

client; (2) an express or implied understanding for payment of attorney's fees out of the recovery;

(3) either an avoidance of payment or a dispute as to the amount of fees; and (4) timely notice."

<u>Id</u>. (quoting <u>Daniel Mones, P.A. v. Smith</u>, 486 So. 2d 559, 561 (Fla. 1986)).

       1.     **There are no express or implied contracts between Conrad & Scherer and any
              of Does 1-144, because Collingsworth didn't work for C&S at the time the
              contracts were signed.**

       The law is clear that without a retainer agreement signed by the client, Conrad & Scherer

LLP ("Conrad & Scherer" or "C&S") cannot recover costs or fees for any work done in <u>quantum

1

meruit.  No such agreement has ever existed.  The agreement provided by Conrad & Scherer as an Exhibit to its Motion doesn't refer to Conrad & Scherer.  See Exhibit 1 to Motion.  It provides power of representation to three attorneys: Paul Wolf, Terrence Collingsworth, and Bob Childs.  It was signed by Wolf and by the client on May 8, 2007.  Wolf met each and every one of Does 1-144 on his first trip to Apartadó in May-June of 2007.  Collinsgworth neither met with them, nor did he sign contracts with any of them.

This was a year before Collingsworth joined Conrad & Scherer.  See June 14, 2024 Declaration of William R. Scherer, Jr. in Drummond v. Collingsworth, 11-cv-3695 (NDAL), attached hereto as Exhibit 1.  "C&S hired Terrence Collingsworth in early 2008."  Id. at ¶10.  "When Collingsworth joined Conrad & Scherer in 2008, C&S opened an office in Washington, D.C., for Collingsworth and the team he was bringing over from his non-profit law firm, International Rights Advocates."  Id. at ¶11.  By Mr. Scherer's sworn admissions, Collingsworth didn't work for Conrad & Scherer LLP at the time the agreements with Does 1-144 were signed.

In 2007, Conrad & Scherer filed its own case against Chiquita Brands, representing different plaintiffs.  When Collingsworth joined Conrad & Scherer in early 2008, Wolf wrote him a Breach Letter, ending their relationship.  See Exhibit 2, attached hereto, Breach Letter of April 15, 2008.  The Breach Letter says:

Dear Terry:

Your acceptance of a position as a senior partner at Conrad & Scherrer, LLP [sic] breaches our agreement, which we reduced to writing on September 14, 2007, to work as equal partners on all Colombian fruit cases for the next ten years.  This agreement doesn't transfer to Conrad & Scherrer.

Conrad & Scherrer has been competing with us since we filed the Chiquita case last June, and I understand that Conrad & Scherrer intends to continue its own case and add new plaintiffs to it.  As a partner in this firm, you are directly competing with me in that case.  This is particularly true in Uraba where there are several lawyers running around claiming

2

to be working with me who are not.  The independent Conrad & Scherrer case will confuse the situation even more. ...

I would also not agree to a consortium of Girardi & Keese and Walter Lack[1] as financial backers of our case.  Their relationships to Conrad & Scherrer are still not clear to me.  It was only a week or so ago I learned that Walter Lack's firm is representing clients in Conrad & Scherrer's Chiquita case.  Their entangled relationships would complicate the case, and I must admit I do not like the way they do business. ...

Id. at 1.

Attorney-client retainer agreements are not assignable.  Wolf's agreements with Does 1-144 don't contain an assignment clause.  See Exhibit 1 to C&S Motion.  Such a clause would be invalid because it would violate the Florida Rules of Professional Conduct.  To obtain power of representation over these Plaintiffs' cases, Conrad & Scherer would have had to obtain the clients' informed consent, in writing, which they never did.  The client must be provided with a copy of this agreement as well.  Florida Rule of Professional Conduct 4-1.15(f)(2) states that

> Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding in which the lawyer's compensation is to be dependent or contingent in whole or in part on the successful prosecution or settlement must do so only where the fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer [sic] or for the law firm representing the client. **No lawyer or firm may participate in the fee without the consent of the client in writing. Each participating lawyer or law firm must sign the contract with the client** and must agree to assume joint legal responsibility to the client for the performance of the services in question as if each were partners of the other lawyer or law firm involved. The client must be furnished with a copy of the signed contract and any subsequent notices or consents. All provisions of this rule will apply to such fee contracts.

---

[1] Tom Girardi was disbarred for embezzling an estimated 15 million of dollars from his clients. His partner Walter Lack is still involved in the Chiquita MDL. Neither have ever entered an appearance in District Court.  Nor are they listed in the Non Wolf Counsel's Certificates of Interested Persons in any of the appeals.  This makes a mockery of the CIP, which is said to be a significant part of an appellate brief.  Mr. Lack was present at the mediation session with David Geronemus in July of 2023.  See Wolf Declaration, Exhibit 3 attached hereto.  Mr. Girardi was found guilty on four counts of wire fraud in hisw criminal trial, the day before this brief was filed. The fact that Conrad & Scherer is still secretly working with Walter Lack is further evidence of Conrad & Scherer's unclean hands. See § D supra.

Id. (emphasis added)  This defeats Conrad & Scherer LLP's arguments about implied contingency agreements as a matter of law.  Even if the clients had agreed to this, which they did not, the agreements would have had to have been reduced to writing for Conrad & Scherer to recover in quantum meruit.

The contracts do refer to Terry Collingsworth, but he is not the one who filed the charging lien, and no longer works for Conrad & Scherer.  See Scherer Declaration, Exhibit 1 attached hereto, at ¶15.  ("C&S hired Collingsworth as a contract partner, not an equity partner, and he remained a contract partner until his separation from the firm in late 2015")  Nor was Collingsworth working for C&S in 2019, when both were disqualified from representing Does 1-144, and C&S filed its charging lien.  Id.

### 2. There was no express or implied understanding for payment of attorney's fees out of the recovery in the Wolf Plaintiffs' Settlement.

On March 13, 2019, Collingsworth filed a Motion to Sever the Claims of Doe 46, one of the Plaintiffs in the Does 1-144 complaint. [Doc. 2322]  According to him, "Jane Doe 46 testified at her deposition that her husband was killed by a guerrilla group, and it is undisputed that Chiquita had made payments to guerrilla groups. Accordingly, Jane Doe 46 has a guerrilla-based claim, while all of the other bellwether plaintiffs are suing Chiquita because their family members were killed by the AUC. The guerrilla-based claims and AUC-based claims arise from distinct sets of facts, as they stem from Chiquita's payments to different terrorist groups over different periods of time." [Doc. 2322 at 1-2]

Undersigned counsel responded with a Cross Motion to Discharge Collingsworth and Conrad & Scherer from the representation of Does 1-144.  [Doc. 2373, 2373-1]  In the Cross Motion, we argued that (1) the stipulation entered into by Wolf and Collingsworth to work together to resolve the dispute in representation wasn't binding on the Court; (2) Does 1-144 had chosen

Paul Wolf as their attorney, and are entitled to counsel of their choice; (3) if Collingsworth ever had power of representation, he abandoned Does 1-144 by never contacting them over the previous 12 years; (4) Collingsworth was terminated from Conrad & Scherer, LLP, and stopped working with Wolf over twelve years before; and (5) that Collingsworth and Conrad & Scherer have bribed key witnesses in this case and others.  Id.  The Court granted the Cross Motion and disqualified Collingsworth and Conrad & Scherer from representing Does 1-144.  [Doc. 2658] (Apr. 28, 2020 Order)

There was no judgment or recovery in either of the two bellwether cases that Conrad & Scherer worked on, so there is nothing to recover against.  Both of them were dismissed in the second round of summary judgment.  See Order [Doc. 3238] at 40-43 (Rosamari Mechuca Pino) and  51-53 (Gladys Nomery Munoz Correa).  See Wolf Declaration, Exhibit 3 attached hereto. The Wolf Declaration includes a screenshot of an Excel file provided to the Defendants for the purpose of settlement.  These two cases, and the case of Maria Emilse Villegas Echavarria, were excluded from the list of Plaintiffs entitled to participate in the Settlement.[2]

Had either of these bellwether cases resulted in a judgment for the Plaintiff, this part of Conrad & Scherer's argument might have merit.  However, both were dismissed in summary judgment and were excluded from the Settlement.  No benefits were ever provided to any of Does 1-144, including work done during the first bellwether trial, which didn't include any of the Wolf

---

[2] Maria Emilse Villegas Echavarria's case was dismissed in the first Summary Judgment Order. There is another tab in the spreadsheet titled Earthrights Wolf Conflicts, which excludes eight duplicate claims for Plaintiffs who chose to represented by Earthrights, and are also not eligible for the Settlement.  All of the duplicate claims filed by Boies Schiller Flexner LLP - who were never allowed to withdraw from the case, but were conspicuously absent from the trial nevertheless - were resolved in Wolf's favor, and are eligible for the Settlement. This was resolved the day before an evidentiary hearing was scheduled with Judge Middlebrooks, when Jack Scarola, falsely claiming to represent them, finally conceded that he did not.

Plaintiffs.  The first bellwether trial  played no role in amount of the Settlement, which was agreed with a handshake long before the trial ended.  See Exhibit 2, Wolf Declaration at ¶5.  The Wolf Plaintiffs and the Defendants had agreed not to make any public statements about the Settlement until after the verdict, so as not to influence the jury.  The settlement discussions began on April 23, 2024, at the very beginning of the first bellwether trial, and continued throughout the trial. The complexity of the Settlement Agreement reflects the fact that a lot of work went into it.  Conrad & Scherer and the other Non Wolf counsel were all invited to participate in the Settlement.  Conrad & Scherer declined to participate in it, but now want a part of it.

The work done by Conrad & Scherer on two bellwether cases was done behind the back of undersigned counsel, who didn't know that Conrad & Scherer deposed two of his clients until Collingsworth moved to sever the claims of Doe 46 on March 13, 1019.  Therefore, there was no express or implied understanding of any payment.  Does 1-144 would have never agreed to the outrageous hourly rates that Conrad & Scherer demand.  Or most of the work they claim to have done, which was never authorized and never benefited any of them. Wolf's relationship with Conrad & Scherer was hostile the entire time. The Wolf Plaintiffs previously submitted receipts and a declaration seeking costs to depose four Wolf bellwether plaintiffs in Florida, for a total a cost of $8,189. USD.  See Order of November 29, 2017 [Doc 1705], denying the Motion.  Conrad & Scherer's out of pocket costs to defend two depositions in Florida shouldn't have been more than $4,095.  However, the work wasn't authorized, didn't produce any benefit to anyone, and shouldn't be recoverable.

Finally, the Wolf Plaintiffs' Settlement encompasses a total of 2,555 cases. If Conrad & Scherer were entitled to any attorneys' fees from it, they would only be for 2 out of 2,555 cases, or about 0.078% of $4,224,000. That would be $3,306.  Conrad & Scherer were invited to participate

in the Settlement, and declined.  They seek over $200,000 in fees, which isn't porportional to the recovery these plaintiffs' might have recieved, had their cases settled instead of being dismissed in summary judgment.

**B.      Wolf didn't waive his objections to the fees by not agreeing to review 79 pages of billing records for work done on the MDL over the past 16 years.**

Conrad & Scherer argue that Wolf waived his objections by not complying with Local Rule 7.3, and reviewing 79 pages of billing records for work done on the MDL generally over the past 16 years.  The only authority they cite is Taverna Imps. v. A&M Wine & Spirits, 2019 U.S. Dist. LEXIS 238644 (S.D. Fla. Oct. 2, 2019).  In Taverna, a litigant's reponse to a motion for fees didn't describe with particularity each line item claimed, provide legal authority, or challenge the movant's rates.  Id. at *3.   "Judge Goodman issued an Order noting that an order granting the motions would likely be based on a finding of bad faith, and required the Parties to mediate. The mediation did not yield an agreement." Id. (citations to docket entries omitted)  After the mediation failed, the court granted the motion, and invited the movants to file an amended motion for fees and costs.  The Court then found that the non-movants had waived their right challenge the fees, but nevertheless reduced them by 50%. Id. at *4.

Even if undersigned counsel failed to comply with Local Rule 7.3,[3] the Court must review the entries for reasonableness, even if the non-movant doesn't object.  See Organizacion Miss Am.

---

[3] I did not deliberately disregard the requirement to respond with particularity to Conrad & Scherer's 610 entries and would have done so if I had read the rule.  I didn't want to have a meeting with multiple attorneys about this was obvious that Conrad & Scherer had listed of all the work Attoney Collingsworth has done on the MDL over the past 16 years, while I was excluded from the communications of the non Wolf Plaintiffs' counsel, and had to file all of my own legal briefs, including several appeals and a petition for certiorari to the U.S. Supreme Court.  Nearly all of these briefs included language stating that they did not apply to the Wolf Plaintiffs, resulting in an enormous amount of duplicated work.  This isn't something I should have to pay for.  I had already set forth the arguments made herein in my response to the non Wolf Plaintiffs' Motion to sever the

Latina v. Urquidi, Case No. 16-cv-22225, 2018 WL 1876736, at *3 (S.D. Fla. Mar. 7, 2018); Club Madonna, Inc. v. City of Miami Beach, No. 13-cv-23762, 2015 WL 5559894 (S.D. Fla. Sept. 9, 2015).   In Club Madonna, even though the Court found that the non-movant "flippantly disregard[ed] LR 7.3, the court nonetheless "carefully reviewed" the attorney invoices submitted, id. at *5, and "note[d] that the flaws that Ramirez raises (i.e., that certain fees are for excessive, duplicative or unrelated work) are apparent from the time entries and, thus, the Court would have addressed them even if Ramirez had not objected."  Club Madonna at *5.  "The Court can award only reasonable attorney's fees and it is therefore obligated to determine the reasonableness of a fee request.  I have thus reviewed Plaintiff's fee request in detail." Id. at 6.  The Court did so even though the non-movant didnt comply with LR 7.3 and make particular challenges to the movant's fee request.

In this case, Conrad & Scherer have listed 610 time entries. Almost all of them relate to work done generally on the MDL, when Wolf and Conrad & Scherer were on adversarial terms. On April 15, 2008, Wolf wrote Collingsworth a breach letter.  See Exhibit 2, attached hereto.  It appears that C&S started creating these billing records at the same time Wolf and Collingsworth stopped working together.  The reason we stopped working together was that Collingsworth started working for Conrad & Scherer.  See Exhibit 2, Breach Letter.  Only the first 6 out of 610 entries pre-date the breach letter, and they are billing records about a dispute over Collingsworth joining Conrad & Scherer and who should represent the first 144 plaintiffs.

Most of the rest of the work relates to general work litigating the MDL.  See e.g. Entry #15 "Prepare for argument on dismissal motion."  Wolf wasn't working with C&S or Collingworth

---

Wolf Plaintiffs from the second bellwether trial on June 21, 2024.  DE 3835.  Conrad & Scherer's Motion still hasn't addressed them.

during the time this work was done.  Wolf was excluded from communications among the non

Wolf Plaintiffs' counsel at this time, after having exposed the RICO conspiracy in Drummond, and

has consistently filed his own motions and responses to Chiquita's filings, independently of any

work done by C&S on the non Wolf Counsel's filings.

Some of the time entries do relate to defending two depositions, but none of this work led

to any benefit to anyone, including the two deponents, or any other plaintiff, for reasons already

explained.[4]  Specifically, the following billing entries mention Rosa Mary Machuca Pino and/or

Gladys Nohemy Munoz Correa:

| Rosa Mary Machuca Pino | | | Gladys Nohemy Munoz Correa | | |
|---|---|---|---|---|---|
| Entry # | Hours | Claim | Entry # | Hours | Claim |
| 168 | 0.1 | $16.75 | 175 | 1 | $175.00 |
| 170 | 0.1 | $16.75 | 176 | 1.5 | $262.50 |
| 216 | 1.2 | $210.00 | 211 | 0.3 | $52.50 |
| 241 | 0.6 | $105.00 | 218 | 1.5 | $262.50 |
| 265 | 0.5 | $87.50 | 222 | 0.7 | $122.50 |
| 286 | 0.9 | $157.50 | 228 | 0.6 | $105.00 |
| 324 | 0.9 | $157.50 | 231 | 0.5 | $87.50 |
| 344 | 3.8 | $665.00 | 235 | 0.7 | $122.50 |
| 365 | 1.9 | $361.00 | 252 | 0.5 | $87.50 |
| 357 | 2.5 | $475.00 | 263 | 0.6 | $105.00 |

---

[4] Some of Conrad & Scherer's billing records relate to work supposedly done on the case of Liliana Bravo. However, when Ms. Bravo was contacted by Conrad & Scherer, she immediately contacted undersigned counsel, Paul Wolf, to ask who they were.  She stated that she didn't want Conrad & Scherer to represent her, and this was communicated to Eric Hager of Conrad & Scherer.  My records indicate that she was served with Chiquita's discovery requests, sent to me, on about January 2, 2018, and her deposition was scheduled for February 28, 2018, in a Notice of Deposition sent to me.  Ms. Bravo died at about that time, and her deposition was never taken. Conrad & Scherer claim to have spoken with her on the phone long after she died - see entry 524 of 9/27/2018 - and to have done other work on her case after that time.  See Entry 540 of 10/29/2018, Entry 549 of 1/8/2019, Entry 550 of 1/15/2019.  Conrad & Scherer also claim to have paid $153 to her in petty cash on 8/23/2017, which I do not believe since she contacted me immediately after Conrad & Scherer contacted her.  I communicated with Ms. Bravo through Facebook. Her account was subsequently deleted, including my communications with her.  The other two bellwether plaintiffs, Rosa Mary Machuca Pino and Gladys Nohemy Munoz Correa, were defended in their depositions by Conrad & Scherer. C&S was then disqualified from representing them, and Wolf argued the Opposition to the Defendants' Motion for Summary Judgment.

| | | | | | |
|---|---|---|---|---|---|
| 377 | 0.5 | $76.00 | 310 | 4.5 | $787.50 |
| 400 | 6.3 | $1,197.00 | 341 | 6.8 | $1,190.00 |
| 412 | 5.6 | $1,064.00 | 347 | 1.1 | $192.50 |
| 418 | 0.3 | $57.00 | 348 | 0.7 | $122.50 |
| 426 | 1.2 | $228.00 | 357 | 2.7 | $513.00 |
| 428 | 0.5 | $95.00 | 378 | 0.5 | $95.00 |
| 429 | 0.2 | $38.00 | 386 | 4.2 | $608.00 |
| 430 | 6 | $1,140.00 | 396 | 5.7 | $1,083.00 |
| 457 | 4.6 | $874.00 | 435 | 1.3 | $247.00 |
| 468 | 0.8 | $152.00 | 439 | 2 | $380.00 |
| 477 | 0.3 | $57.00 | 444 | 0.6 | $114.00 |
| 483 | 0.2 | $38.00 | 445 | 8 | $1,520.00 |
| 517 | 0.3 | $57.00 | 447 | 2.5 | $475.00 |
| 520 | 0.2 | $38.00 | 458 | 3 | $570.00 |
| 530 | 0.2 | $40.00 | 462 | 2.8 | $532.00 |
| 557 | 0.3 | $60.00 | 469 | 0.4 | $76.00 |
| 563 | 0.3 | $60.00 | 516 | 0.6 | $114.00 |
| 564 | 0.3 | $60.00 | 518 | 0.3 | $57.00 |
| 567 | 0.2 | $40.00 | 522 | 0.3 | $57.00 |
| | | | 542 | 0.2 | $40.00 |
| | | | 552 | 0.5 | $100.00 |
| | | | 553 | 1.5 | $300.00 |
| | | | 554 | 0.4 | $80.00 |
| | | | 556 | 0.4 | $80.00 |
| | | | 562 | 0.2 | $40.00 |
| | | | 565 | 0.2 | $40.00 |
| | | | 566 | 0.4 | $80.00 |
| | | | 575 | 0.2 | $40.00 |
| **Totals** | **40.8** | **$7,623.00** | | **59.9** | **$10,916.00** |

This is for a total of 100.7 hours and $18,539. dollars.  However, many of these entries relate to depositions of multiple plaintiffs, and merely mention the names of one or both of these plaintiffs, among others.   Some entries are described as phone calls between Attorney Collingsworth, who says he doesn't speak Spanish, and the plaintiffs, who don't speak English, and don't refer to any interpreter being used.  The Conrad & Scherer attorneys are billing at rates up to $550 per hour.  Neither of these plaintiffs would ever have paid them at that rate.

Conrad & Scherer also claim $4755.22 dollars in out of pocket costs for the two depositions. Some of it was paid in cash to plaintiffs Gladys Nohemy Munoz Correa and Rosa Mary Machuca Pino, while other expenses for airplane tickets and visa applications appear to have been paid directly by C&S.  However, none of this was authorized, and none of it led to any benefit, including the settlement, since both cases were dismissed in summary judgment.  From the deposition transcripts, it doesn't appear that Conrad & Scherer even knew that those murders were perpetrated by the guerrillas, rather than the AUC.  Once this was discovered in the depositions, C&S moved to sever their claims from the bellwether pool, and this was what led to the motion to disqualify them.

This breakdown is provided for the benefit of the Court. However, we do not agree that Conrad & Scherer are entitled to be compensated for work done on the two depositions, no matter how many hours Attorney Collingsworth claims to have spent on it.[5]

**C.    The Wolf Plaintiffs never agreed to pay anything to Conrad & Scherer, and aren't <u>estopped</u> from opposing Conrad & Scherer's outrageous Bill of Costs.**

The Wolf Plaintiffs never agreed that Conrad & Scherer could take any depositions on their own, and were surprised to learn that two of the Does 1-144 plaintiffs were selected as bellwether plaintiffs, long after their depositions were taken. The Wolf Plaintiffs never agreed to Conrad & Scherer's hourly rates, which if multiplied by the number of Wolf Plaintiffs that settled, would

---

[5] Although Conrad & Scherer's attorney fees expert has submitted a sworn declaration, it doesn't appear that he has personal knowledge of anything other than a chart provided by Conrad & Scherer.  If Collingsworth himself had submitted the declaration, at least the declarant would be someone with personal knowledge of the work that was done.  Although Collingsworth no longer works for Conrad & Scherer, he sat next to Bill Scherer every day for six weeks in the first bellwether trial.  In Drummond, Collingsworth manipulated his attorney Brad Smith by providing him with privilege logs that had key documents removed, such that Smith was unwittingly helping to perpetrate a fraud on the court.  Here, another attorney was used to introduce a vast amount of work that appears generally related to the MDL, but has nothing to do with the Wolf Plaintiffs.

amount to over $200,000,000. in attorneys' fees.  We had agreed to be co-counsel in the first 144 cases in order to resolve the dispute over representation. That agreement contemplated that we would work together to represent the Plaintiffs.  Conrad & Scherer worked secretly, behind the back of Wolf, and then tried to exclude those plaintiffs from the bellwether pool because they were killed by the FARC rather than by the AUC.  Ultimately, all of the other Wolf Plaintiffs were included in the Settlement Agreement, including over 250 cases of people murdered by the FARC. Undersigned counsel would never have agreed to exclude them from the bellwether trials.  Conrad & Scherer probably didn't even know about this before they took those Plaintiffs' depositions. Then they tried to exclude those plaintiffs from trial, harming their interests. Undersigned never waived any of these arguments.

**D.     Conrad & Scherer LLP isn't entitled to the equitable remedy of <u>quantum meruit</u> recovery because they have unclean hands.**

A litigant seeking equitable relief "must come into court with clean hands." <u>Keystone Driller Co. v. Gen. Excavator Co.</u>, 290 U.S. 240, 241, 244-46 (1933); <u>United States v. Howell</u>, 425 F.3d 971, 974 (11th Cir. 2005) ("The doctrine of 'unclean hands' is an equitable test that is used by courts in deciding equitable fate.").  Conrad & Scherer's work in defending two depositions, which was done behind the back of Wolf, was minimal.  However, Conrad & Scherer's bribery two paramilitary witnesses in the case - Raul Emilio Hasbun Mendoza and Jose Gregorio Mangones Lugo - completely undermined the validity of the first bellwether trial.  All of the cases in the first bellwether trial were supported by purported confessions of one or the other of these two bribed witnesses.  The Non Wolf Plaintiffs' expert, Professor Kaplan, relied on this tainted evidence in his report and referred to it in his testimony at trial.  This "fruit of the poisoned tree" invalidated the first trial, the result of which should be reversed on appeal.  The Court excluded extrinsic evidence of the bribery, which was abundant, with the exception of a few sentences from

Raul Hasbun's deposition, which the Non Wolf Plaintiffs themselves introduced into evidence. Hasbun testified that he was offered between $3-5 million dollars to testify, depending on the outcome of the case.  He had at first refused to testify, but after the offer, he changed his mind. Id.

At the Pre Trial Hearing on March 25, 2024, undersigned counsel urged the Court to exclude the testimony of these and other bribed paramilitary witnesses.  This is not what happened. The jury was left with the impression that all the the bellwether cases had been confessed by the perpetrators in criminal proceedings in Colombia, when in fact, they couldn't possibly have known their identities, and had merely accepted responsibilty for murders performed by other people under their command.  The evidence is probative, without a doubt, but was presented in a false and misleading way.

The bribery of these two witnesses was part of a larger RICO conspiracy involving fraudulent claims against the Drummond Company and the Dole Food Company.  As we showed the Court with exhibits at the Pre Trial Conference, shortly after Collingsworth was hired as a partner at Conrad & Scherer, he borrowed $1.5 million dollars from Albert and Hendrick van Bilderbeek, who are money launderers for the AUC.  See Scherer Declaration, Exhibit 1 attached hereto.  "I was generally aware that, after Collingsworth joined the firm, C&S provided security or relocation funding to some witnesses or their families in Colombia." Id. at ¶ 33. "Collingsworth did not advise any firm partners, including myself, about his engagement with Albert van Bilderbeek **before** entering into that engagement." Id. at 41. (emphasis added) "I did not know about Collingsworth's financial relationship with Bilderbeek." Id. at 44. (When?  He must know about it by now.)  Hendrick Van Bilderbeek was sentenced to 20 years in Colombia for laundering AUC drug trafficking proceeds before Collingsworth, in his role as a senior partner at Conrad & Scherer, borrowed the money from him.  Undersigned counsel believes, as he stated at the Pre

Trial Conference, that Raul Hasbun's testimony that he was offered up to $5 million dollars to testify, depending on the outcome of the case, refers to the agreement for the repayment of the $1.5 million dollar loan. Collingsworth was a senior partner at C&S when the loan was made, and when the bribes were offered or made. This is the only significant work that Conrad & Scherer has ever done on this case.

**Conclusion**

For the foregoing reasons, the Court should DENY Conrad & Scherer's Motion for the equitable remedy of <u>quantum meruit</u> attorneys' fees. No attorney client-relationships were ever formed, no retainer agreements were ever signed, and no one ever agreed to pay for Conrad & Scherer's work or their hourly rates. No one benefited from the minimal work Conrad & Scherer did in defendning the depositions of two bellwether plaintiffs, which were done behind undersigned counsel's back and resulted in the dismissal of those cases. Work that was done on the MDL generally was never shared with Wolf, who had to write all of his own court filings for the past 15 years. The only work Conrad & Scherer has really done in the MDL was to bribe key wintnesses, which may result in a reversal on appeal. Finally, the Court shouldn't schedule an evidentiary hearing, since the Motion can be decided in Wolf's favor as a matter of law.

Respectfully submitted,

Paul Wolf

_____

Paul Wolf, CO Bar 42107
*Attorney for Does 1-144*
P.O. Box 60584
Colorado Springs, CO 80960
(202) 431-6986
Fax: n/a
paulwolf@yahoo.com

August 28, 2024

14

**Certificate of Service**

      I hereby certify that on this 28th day of August, 2024, I filed the foregoing document, with the Clerk of the Court using the Court's Electronic Case Filing (ECF) system, which will send electronic notices to all persons entitled to receive them.

/s/ Paul Wolf
_____

Paul Wolf