UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 08-MD-01916-KAM

IN RE:
CHIQUITA BRANDS INTERNATIONAL, INC.
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION

_____/

**REPORT AND RECOMMENDATION REGARDING MOTION TO ADJUDICATE AND ENFORCE CHARGING LIEN (ECF No. 3884)**

Conrad & Scherer, LLP, (C&S) represented Jane/John Does 1-144 (the "Doe Plaintiffs") at earlier stages of this case. It now asks the Court to adjudicate and enforce a charging lien against the Doe Plaintiffs. ECF No. 3884. Judge Marra referred the motion to me for a Report and Recommendation on (1) whether the charging lien is enforceable and (2) if so, what amount of fees and costs are due? ECF No. 3890. I have reviewed the Motion, the Response from the Doe Plaintiffs, and C&S's Reply. ECF Nos. 3885, 3887. For the following reasons, it is recommended that the charging lien be enforced in the amount of $229,755.42.

I.       PROCEDURAL HISTORY

In 2007, attorneys Paul Wolf, Terry Collingsworth, and Bob Childs were retained to represent the Doe Plaintiffs against Chiquita Brands International. *See, e.g.* ECF No. 3884-1 (retainer agreement). The clients agreed to pay a contingent fee of either 33% or 40% of any damages award (depending on whether the case went to trial). *Id.*

On June 7, 2007, a lawsuit was filed in the District of Colombia on behalf of the Doe Plaintiffs against Chiquita Brands International, Inc., under case number 07-1048 (the "DC Case"). ECF No. 2-1 in Case No. 08-80465 at 3. The Complaint was signed by Mr. Collingsworth and Mr. Wolf. *Id*. at 57. The Judicial Panel on Multidistrict Litigation consolidated that case with others before Judge Marra. ECF No. 2. As part of the transfer, the DC Case was assigned SDFL case number 08-80465. ECF No. 2 in 08-80465.

The JPML consolidation order included a separate lawsuit that had been filed in this District on June 13, 2007 as *Carrizosa, et. al. v. Chiquita Brands Int'l,* case no. 07-60821. ECF Nos. 1, 2. William Wichmann from C&S had signed the complaint in that case.

In early 2008, Mr. Collingsworth joined C&S.

In April 2008, Mr. Wolf sent Mr. Collingsworth a letter saying that, by joining C&S, Mr. Collingsworth had breached a September 2007 written agreement with Mr. Wolf to "work as equal partners on all Colombian fruit cases for the next ten years. This agreement doesn't transfer to Conrad & Scherer." ECF No. 3885-2 at 2.

In August 2008, Mr. Collingsworth filed a Notice of Change of Firm Affiliation and Address saying that he was now affiliated with C&S. ECF No. 118. Mr. Collingsworth and Mr. Wolf both asked Judge Marra to appoint them as Lead Counsel in Case No. 08-80465 ("the DC case"). ECF No. 130. Mr. Wolf and Mr. Collingsworth ultimately stipulated that Mr. Collingsworth would be Lead

2

Counsel. ECF No. 144. On September 19, 2008, Judge Marra designated Mr. Collingsworth as Lead Counsel in the DC case. ECF No. 147.

On August 2, 2011, William Scherer, III, from C&S, entered an appearance on behalf of The Doe Plaintiffs and 95 other Perez plaintiffs in case number 08-80465. ECF No. 462. In June 2012, Eric Hager from C&S entered an appearance in case number 08-80465 on behalf of The Doe Plaintiffs and the Perez plaintiffs. ECF Nos. 545, 546. On April 22, 2015, William Scherer, Jr., and Albert Frevola from C&S entered appearances in case number 08-80465 on behalf of The Doe Plaintiffs, 795 Perez plaintiffs, and "Carmen Tulia, Cordoba Cuesta, et. al." ECF Nos. 761, 762.

In late 2015, Mr. Collingsworth left C&S to work for International Rights Advocates. On December 18, 2015, C&S moved to withdraw and to substitute International Rights Advocates as counsel for the Doe Plaintiffs. ECF No. 965. Judge Marra denied the motion without prejudice because the clients had not been adequately notified. ECF No. 989. Several months later, C&S renewed the motion to withdraw. ECF No. 1011. The motion noted that Mr. Collingsworth would continue to represent the Doe Plaintiffs, but that Mr. Scherer and Mr. Hager would not. *Id*. Judge Marra once again denied the motion without prejudice, noting that C&S "remains in place as counsel of record for the Doe Plaintiffs, notwithstanding Mr. Collingsworth's intervening departure from the firm . . . Unless and until the Court grants Conrad Scherer permission to withdraw as counsel of record for all Plaintiffs, Conrad Scherer is charged with the obligation to continue representation of the entire plaintiff pool, including the Doe Plaintiffs." ECF No. 1201 n.1.

In March 2019, Mr. Wolf moved to disqualify Mr. Collingsworth from representing the Doe Plaintiffs. ECF No. 2373. On April 28, 2020, Judge Marra discharged Mr. Collingworth and C&S from further representing the Doe Plaintiffs subject to several conditions, including:

> Attorney Collingsworth's request for a $8,000.00 reimbursement of costs extended to Attorney Wolf in connection with the representation of the Doe Plaintiffs as a condition to the realignment of counsel is DENIED WITHOUT PREJUDICE for Attorney Collingsworth to file a notice of charging lien in this matter in order to preserve any entitlement to such costs claimed by him. Attorney Collingsworth and the law firm of Conrad & Scherer's *quantum meruit* claim for services rendered in connection with the representation of the Doe Plaintiffs is likewise DENIED WITHOUT PREJUDICE for either to file a notice of charging lien in effort to preserve any claimed entitlement to such fees. The Court shall reserve ruling on any charging liens filed in the case until the conclusion of the litigation.

ECF No. 2658 at 2-3. Mr. Wolf remained exclusive attorney of record for the Doe Plaintiffs. *Id*.

Less than five months later, on September 9, 2019, C&S filed a Notice of Charging Lien as to the Doe Plaintiffs. ECF No. 2687. C&S asserted a lien for $238,566 in fees and $7,206.78 in costs, expenses, and disbursements. *Id*.

On June 21, 2024, the Doe Plaintiffs informed the Court that they had settled their claims against Chiquita. ECF No. 3834. The settlement resolved claims by all plaintiffs represented by Mr. Wolf, including non-Doe Plaintiffs. Judge Marra approved the settlement on June 28, 2024. ECF No. 3847. One condition of approving the settlement was that the third-party claims administrator "hold in escrow the last

4

payment of 25% of attorneys' fees to satisfy the amount of any charging lien the Court finds to be valid." *Id*. at 2.

On August 27, 2024, C&S filed its Motion to Adjudicate and Enforce Charging Lien. ECF No. 3884. It now seeks a total of $246,610.92 comprising $241,855.50 in fees and $4,755.42 in nontaxable costs. *Id.* ¶11.

## II. LEGAL PRINCIPLES

*A. Charging Lien*

A charging lien is "a mechanism by which an attorney may enforce her equitable right to have costs and fees owed for legal services secured by the judgment or recovery in a lawsuit." *Bruton v. Carnival Corp.,* 916 F. Supp. 2d 1262, 1268 (S.D. Fla. 2012) *citing Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom,* 428 So. 2d 1383, 1384 (Fla. 1983); *Flynn v. Sarasota County Pub. Hosp. Bd.,* 169 F. Supp. 2d 1363, 1368 (M.D. Fla. 2001).

> To impose a charging lien, a court in equity must find: (1) an express or implied contract between the attorney and client; (2) an express or implied understanding that payment is either contingent upon recovery or will be paid from the recovery; (3) an attempt by the client to avoid paying or a dispute as to the amount of the fee; and, most relevant here, (4) a timely notice of a request for a lien.

*Bruton,* 916 F. Supp. at 1268 (citations omitted).

"An attorney discharged without cause after performing substantial legal services under a valid [contingency fee] contract of employment . . . is entitled to the reasonable value of the services rendered on the basis of quantum meruit." *Rosenberg*

*v. Levin,* 409 So. 2d 1016, 1017 (Fla. 1982) *cited in Searcy, Denney, Scarola, Barnhart & Shipley, P.A. v. Poletz,* 652 So. 2d 366, 368 (Fla. 1995). The discharged attorney's right to fees accrues "upon the successful occurrence of the contingency." *Id*. at 1022.

  B. *Quantum Meruit*

  To state a quantum meruit claim, the lawyer must prove that it "provided, and [the client] assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it." *Babineau v. Fed. Express Corp*., 576 F.3d 1183, 1194 (11th Cir. 2009) (quoting *W.R. Townsend Contracting, Inc. v. Jensen Civil Const., Inc.*, 728 So. 2d 297, 305 (Fla. Dist. Ct. App. 1999)). Under Florida law, a valid contract arises when the parties' assent is manifested through written or spoken words, or "inferred in whole or in part from the parties' conduct." *Commerce P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 385 (Fla. Dist. Ct. App. 1997). "A contract based on the parties' words is characterized as express, whereas, a contract based on the parties' conduct is said to be implied in fact." *Baron v. Osman*, 39 So. 3d 449, 451 (Fla. Dist. Ct. App. 2010).

  "Unlike an award of attorney's fees to a prevailing party, a quantum meruit award must take into account the actual value of the services to the client. Thus, while the time reasonably devoted to the representation and a reasonable hourly rate are factors to be considered in determining a proper quantum meruit award, the court must consider all relevant factors surrounding the professional relationship to ensure that the award is fair to both the attorney and client." *Searcy,* 652 So.2d at 369.

6

Among the non-exclusive factors the Court can consider are: "the fee agreement itself, the reason the attorney was discharged, actions taken by the attorney or client before or after discharge, and the benefit actually conferred on the client." *Id*.

C.  *Local Rule 7.3*

The Local Rules of this Court require a conferral process before the filing of a formal motion for fees and costs. "A motion for an award of attorneys' fees and/or non-taxable expenses and costs arising from the entry of a final judgment or order shall not be filed until a good faith effort to resolve the motion, as described in paragraph [7.3](b) below, has been completed." S.D. Fla. Local Rule 7.3(a). The movant must serve a copy of the proposed motion along with supporting documentation. *Id*. The parties are then required to "confer and attempt in good faith to agree on entitlement to and the amount of fees and expenses not taxable under 28 U.S.C. §1920." As part of that conferral process, "[t]he respondent shall describe in writing and with reasonable particularity each time entry or nontaxable expense to which it objects, both as to issues of entitlement and as to amount, and shall provide supporting legal authority." S.D. Fla. Local Rule 7.3(b).

If a responding party fails to comply with Local Rule 7.3, the Court has the discretion to find that the party has waived any objection to the movant's entitlement. *Club Madonna, Inc. v. City of Miami Beach,* No. 13-23762-CIV, 2015 WL 5559894, at *9 (S.D. Fla. Sept. 22, 2015); *Maale v. Kirchgessner*, No. 08-80131-CIV, 2011 WL 1549058, at *5 (S.D. Fla. Apr. 22, 2011) (Court has discretion to determine remedy for non-compliance with Local Rule 7.3). Even where a party has failed to comply with

7

Local Rule 7.3, the Court must independently assess the reasonableness of any claim for fees. *See Godoy v. New River Pizza, Inc.*, 565 F. Supp. 2d 1345, 1347 (S.D. Fla. 2008).

### III. SUBJECT MATTER JURISDICTION

I first *sua sponte* clarify a jurisdictional issue. The opposition to the charging lien was filed in the name of the Doe Plaintiffs by attorney Paul Wolf. ECF No. 3885. Mr. Wolf has not intervened as a party for purposes of the charging lien litigation. It is clear, however, that Mr. Wolf, not the Doe Plaintiffs, is the real party-in-interest in the charging lien dispute. *See, e.g.,* ECF No. 3885 n.3 ("This isn't something I should have to pay for."). Under the settlement agreement already approved by the Court, $4,224,000 of the plaintiffs' recovery has been set aside for the payment of contingency attorneys' fees to Mr. Wolf.[1] A third party claims administrator is holding 25% of that money (approximately $1,056,000) in escrow to satisfy any amounts awarded under attorney charging liens, including C&S's lien.

The Doe Plaintiffs have no legal right to the money claimed in C&S's charging lien. That money either goes to Mr. Wolf or to C&S. So, the Doe Plaintiffs will not suffer any injury-in-fact if that money is awarded to C&S. Therefore, it appears the Doe Plaintiffs lack Article III standing to challenge the charging lien. *See Spokeo v. Robins,* 578 U.S. 330, 339-40 (2016). Even though the Doe Plaintiffs lack

---

[1] It is not clear whether the escrowed funds are only funds from settlement amounts owed to the Doe Plaintiffs or include funds that were awarded to non-Doe Plaintiffs.

8

constitutional standing, the Court can exercise supplemental subject matter jurisdiction over this charging lien dispute between two attorneys who have both been counsel of record. *See Hogben v. Wyndham Int'l, Inc.*, No. 05-20944-CIV-TORRES, 2007 WL 2225970, at *5 (S.D. Fla. Aug. 1, 2007).

## IV.   PARTIES' ARGUMENTS

C&S says (1) its lien was timely, (2) it had express contracts with the Doe Plaintiffs, (3) alternatively, it had implied contracts with the Doe Plaintiffs, (4) the contracts contemplated that C&S would be paid a contingent fee out of any recovery. ECF No. 3884.

C&S also makes two procedural arguments. First, it says the Doe Plaintiffs waived any objection by refusing to comply with Local Rule 7.3. ECF No. 3884 at 3-6. Second, C&S says the Doe Plaintiffs are estopped from arguing that C&S did not represent them.

Mr. Wolf disputes C&S's entitlement to fees. He says (1) there was no express or implied contract with C&S, (2) there was no recovery in the cases in which C&S provided legal services, (3) any recovery by C&S should be limited only to the cases in which it participated, not to the total settlement for all clients, (4) C&S cannot recover because it has unclean hands. ECF No. 3885.[2]

---

[2] Mr. Wolf does not dispute the timeliness of the charging lien.

## V. DISCUSSION

*A. Entitlement*

C&S argues that Mr. Wolf's failure to comply with Local Rule 7.3 waives any objection to entitlement or amount of fees. ECF No. 3887 at 2-4. I agree that it waives any objection to entitlement. Nevertheless, the Court still must determine if the requested amount is reasonable.

It is undisputed that C&S complied with Local Rule 7.3(a) by emailing Mr. Wolf a copy of its Motion to Enforce along with its billing records on June 29, 2024. ECF No. 3884-3. Mr. Wolf declined to confer. ECF No. 3884-4. Mr. Wolf told C&S, "I've reviewed your motion and bill of costs and oppose the motion. You've fulfilled your duty to confer. I don't want to sit through a zoom meeting." *Id*. He did not, as required by the Local Rules, "describe in writing and with reasonable particularity each time entry or nontaxable [to which he objected, nor did he] provide supporting legal authority." S.D. Fla. Local Rule 7.3(a).

Mr. Wolf does not dispute his non-compliance with Local Rule 7.3. His apparent explanation (buried in a footnote to his Response brief) is that (1) he did not read the Local Rules and (2) the bulk of C&S's hours were incurred after Mr. Collingsworth left the firm. ECF No. 3885 at 7 n.3. "[S]ubstantive arguments cannot be raised in passing in a footnote." *Pinson v. JPMorgan Chase Bank, Nat'l Ass'n*, 942 F.3d 1200, 1209 n.5 (11th Cir. 2019).

Under these circumstances, I recommend that the Court exercise its discretion to find that Mr. Wolf has waived any objection to C&S's entitlement to fees. As then-Magistrate Judge Becerra has explained in a similar context:

> Courts in this District have made clear that "Local Rule 7.3's requirements are not optional, but mandatory" and recognize that "[a] failure to comply with Local Rule 7.3—in a variety of ways—has consistently led to the denial of a movant's motion for attorneys' fees." *Irish v. Reynolds*, No. 13-cv-10063, 2018 WL 1863765, at *3 (S.D. Fla. Jan. 9, 2018) (collecting cases), *report and recommendation adopted*, No. 13-cv-10063, 2018 WL 1863747 at *1 (S.D. Fla. Feb. 9, 2018). Defendant offers no reason why it could not engage in the conferral process mandated by Local Rule 7.3. Its only response is that defense counsel's secretary failed to calendar the deadline to file a motion for attorneys' fees, and Plaintiff will not be prejudiced if attorneys' fees are awarded. ECF No. [152] at 2-3. These arguments miss the mark.
>
> . . .
>
> "[T]here is no exception in the Local Rules for futility; the parties *shall* make a good faith effort to resolve the motion; the movant *must* serve a draft motion; and the parties *shall* confer twenty-one days after service of the motion." *Norych v. Admiral Ins. Co.*, No. 08-cv-60330, 2010 WL 2557502, at * 2 (S.D. Fla. June 23, 2010).

*Tejeda v. Costco Wholesale Corp.,* No. 20-CV-24790, 2023 WL 6278799, at *3 (S.D. Fla. July 24, 2023), *report and recommendation adopted*, No. 20-24790-CIV, 2023 WL 6245688 (S.D. Fla. Sept. 26, 2023) (brackets in original).

In the alternative, C&S has shown on the merits that it is entitled to enforce its charging lien.

There was a sufficient legal relationship between C&S and the Doe Plaintiffs to entitle C&S to a quantum meruit recovery. Attorney retainer agreements are interpreted like any other contract. *See, e.g., Muentes v. Bruce S. Rosenwater &*

11

*Assocs., P.A.*, 354 So. 3d 554, 556 (Fla. Dist. Ct. App. 2023). So, the Court must enforce the unambiguous terms of the agreement.

Here, the retainer agreement said:

- Paul Wolf, Terry Collingsworth, and Bob Childs were "The Attorneys"
- "The Client hereby retains The Attorneys as her attorneys to commence a lawsuit [against Chiquita]"
- "The Client agrees that the Attorneys have exclusive authority to retain additional attorneys to work with the Client to process the [Client's claims] and the Client has exclusive authority to terminate any prior retained attorney. Any other agreement with any other attorney or attorneys retained is between the Attorneys and those attorneys."

Notably, the fee agreement does not mention a law firm; it is between a client and three lawyers. So, each plaintiff retained three individual lawyers to represent him/her and formed three independent concurrent attorney-client relationships. The client was obligated to pay only the contingent fee and expenses. The lawyers were free to hire other lawyers to help them and (presumably) to split among themselves any attorneys' fees that were ultimately recovered.

Pursuant to this agreement, then, Mr. Collingsworth had the authority to retain C&S as co-counsel. Therefore, after Mr. Collingsworth joined C&S in early 2008, there was a binding legal agreement between the client and C&S for C&S to provide legal services as authorized by Mr. Collingsworth. There was also an express expectation that C&S would be compensated for those services out of any recovery.

12

Separately, and regardless of the agreements between the individual plaintiffs and Mr. Collingsworth, C&S began representing all of the plaintiffs in September 2008 pursuant to Judge Marra's Order designating Mr. Collingsworth as Lead Counsel. ECF No. 147. That Order bound C&S to provide legal services and implicitly created a corresponding expectation of compensation. The appointment Order adopted a September 15, 2008, stipulation signed by Mr. Wolf agreeing that Mr. Collingsworth would be designated as lead counsel. At that point, the Court was aware that Mr. Collingsworth was affiliated with C&S. And, although the September 16 Order only references Mr. Collingsworth, Judge Marra's clear intent was to appoint C&S as a firm, not just Mr. Collingsworth as an individual. That intent is clear given that the Court continued to treat C&S as lead counsel for the Doe Plaintiffs even after Mr. Collingsworth left the firm.

I reject the assertion in Mr. Wolf's April 2008 letter that his work-sharing agreement with Mr. Collingsworth prevented C&S from representing the Doe Plaintiffs. That agreement does not control the attorney-client relationship between Mr. Collingsworth and the Doe Plaintiffs. Only the client or the attorney could terminate that relationship. So, Mr. Wolf had no power to terminate the clients' relationships with Mr. Collingsworth, regardless of whatever other arrangement he had with Mr. Collingsworth. There is no evidence in the record that any client declined to continue the attorney-client relationship with Mr. Collingsworth when he affiliated himself with C&S in 2008.

13

I also reject Mr. Wolf's argument that C&S should only receive quantum meruit fees for the bellwether cases it litigated. C&S's fee claim is for services rendered to all the Doe Plaintiffs, including but not limited to litigating bellwether cases. By Court Order, C&S acted as lead counsel for the Doe Plaintiffs from September 2008 until April 2020. The docket in Case No. 08-80465 reflects approximately 350 filings between those dates. C&S's time sheets reflect substantial work that benefited all Doe Plaintiffs. As Mr. Wolf concedes, "In this case, Conrad & Scherer have listed 610 time entries. *Almost all of them relate to work done generally on the MDL,* when Wolf and Conrad & Sherer were on adversarial terms." ECF No. 3885 at 8; *see also id.* ("Most of the rest of the [C&S] work relates to general work litigating the MDL.").

Mr. Wolf next incorrectly argues that C&S cannot enforce its lien because it has unclean hands arising from allegedly bribing two witnesses. Mr. Wolf says this bribery "completely undermined the validity of the first bellwether trial." ECF No. 3885 at 12. C&S responds that this Court has already rejected these bribery allegations. ECF No. 3887 at 7 (citing ECF No. 3649 at 5).

I need not resolve those allegations because Mr. Wolf has not shown that the unclean hands doctrine applies even if the allegations are true. And, even if that doctrine applied, Mr. Wolf has not shown that C&S's fee claim should be rejected in full.

"All proceedings in Florida to resolve an attorney's charging lien for legal services are equitable in nature. Thus equitable defenses to an action in equity, such

14

as unclean hands or the adequacy of a remedy at law, may be asserted in a charging lien case." *State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, No. 97-7014-CV, 2004 WL 5500705, at *15 (S.D. Fla. Oct. 26, 2004) (citing *Nichols v. Kroelinger,* 46 So. 2d 722 (Fla. 1950)). The doctrine of unclean hands prevents a wrongdoer from benefiting from its own bad behavior. *Cong. Park Off. Condos II, LLC v. First-Citizens Bank & Tr. Co.*, 105 So. 3d 602, 609–10 (Fla. Dist. Ct. App. 2013):

> The conduct constituting unclean hands . . . must generally be connected with the matter in litigation and must affect the adverse party. A court of equity is not 'an avenger of wrongs committed at large by those who resort to it for relief.' The fact that a party's conduct is disreputable is entirely irrelevant where the party asserting unclean hands is not the target of, and has taken no action in reliance on that conduct, however disdainful of that conduct a court may be. A party must prove that he was injured in order for the unclean hands doctrine to apply.

*McCollem v. Chidnese*, 832 So. 2d 194, 196 (Fla. Dist. Ct. App. 2002) (citations omitted).

Mr. Wolf, the real party-in-interest in this charging lien dispute, has not shown how the alleged bribery injured him. Therefore, the unclean hands doctrine does not bar C&S from enforcing its charging lien.

### B. Amount

I have reviewed the fee affidavit of Carey Fisher, Esq. ECF No. 3884-2. I find it to be persuasive and well supported. In addition, I rely on my personal knowledge of the market rate for lawyers in Palm Beach County between 2008 and 2020. *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) ("[t]he court ... is itself an expert on the question [of fees] and may consider its own

knowledge and experience concerning reasonable and proper fees."). I find that all of the requested hourly rates are reasonable except for $950 per hour for William Scherer, Jr. and any paralegal rates of more than $150 per hour. *See, e.g, Otto v. City of Boca Raton, Fla.,* No. 18-CV-80771-RLR, 2023 WL 9289098, at *16 (S.D. Fla. Nov. 1, 2023) (discussing market rates), *report and recommendation adopted*, No. 18-CV-80771, 2024 WL 181554 (S.D. Fla. Jan. 17, 2024). The lodestar should be reduced accordingly.

Almost all of the work expended, as reflected in C&S's billing records, appears to have been reasonable and necessary to representing the Doe Plaintiffs. There are some duplicative billing entries, however.

As noted above, the lodestar is only one factor the Court must consider in granting *quantum meruit* fees based on a contingency retainer. "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal [in awarding attorney's fees] is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice,* 563 U.S. 826, 838 (2011).

Taking all of the relevant factors into account, I recommend that the District Court award C&S $225,000 in fees.

All of C&S's non-taxable expenses are properly documented. I recommend that the District Court award the full request of $4,755.42.

## RECOMMENDATION

Accordingly, this Court **RECOMMENDS** that the District Court grant in part the Motion to Adjudicate and Enforce Charging Lien (ECF No. 3884) and award Conrad & Scherer $225,000 in attorneys' fees and $4,755.42 in non-taxable expenses.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable Kenneth A. Marra, United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1 (2016).

**If counsel do not intend to file objections, they shall file a notice advising the District Court within FIVE DAYS of this Report and Recommendation.**

**DONE and SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 11th day of October 2024.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE