UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 08-MD-01916-KAM

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/
This Document Relates To:
ATS ACTION
08-80465-CIV-MARRA (D.C. Action) (Does 1-144)
_____/

**Does 1-144 and Wolf's Objections to Report and Recommendation of Magistrate Judge Regarding Motion to Adjudicate and Enforce Charging Lien (ECF No. 3900)**

The Court cannot adopt the Report and Recommendation ("R&R") because Conrad & Scherer LLP ("C&S") do not have any agreements with Does 1-144.  Naftzger v. Elam, 41 So. 3d 944, 946 (Fla. 2d DCA 2010); Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So. 2d 1383, 1384 (Fla. 1983).  To recover in quantum meruit, C&S would have had to obtain the agreement of Does 1-144 in writing.[1]  They did not, and this is a legal bar to their recovery.  428 So. 2d at 1385.

The Magistrate Judge erred in his interpretation of the retainer agreements signed by Does 1-144.  They do not provide a method for transferring power of representation to C&S.  They do not - and could not, as a matter of law - allow Collingsworth to assign the representation of Does 1-144 to his new employer, C&S.  They allow Wolf and Collingsworth to hire other lawyers to assist them, but no lawyer in the State of Florida can recover in quantum meruit for their services without the client's informed consent.  Only two of Does 1-144 have even met with C&S, and none signed any agreement.  The Court never appointed C&S as lead counsel for their case.

---

[1] The Report and Recommendation doesn't address the issue of informed consent at all.

1

The Magistrate Judge appears to have had a misconception that C&S acted as "lead counsel" for Does 1-144 for a twelve-year period, and should be compensated for their work. However, during that period of time, the "Non Wolf" counsel's briefs were written by either Earthrights International (usually by Marco Simons) or by Searcy Denney Scarola Barnhardt & Shipley.  Those firms have at times acted as if they were lead counsel in the MDL.  C&S has never pretended to be lead counsel in the MDL.  The "Non Wolf" counsels' filings nearly always contained language that they didn't apply to the "Wolf Plaintiffs."  Wolf had to make his own arguments in this Court, and in two appeals, in hundreds of filings.  Wolf shouldn't have to pay for the time spent by the Non Wolf counsel doing work that expressly didn't apply to their cases.  C&S, who represent hundreds of other Plaintiffs, let Simons and Scarola make their arguments for them. Awarding C&S $225,000 would be a windfall to C&S, considering the relatively small amount of work they did that could arguably be said to have had a common benefit.  It would be unjust enrichment of a law firm that only had a minor role in the litigation of the MDL.

I.      **Conrad & Scherer LLP never obtained the informed consent of Does 1-144 to represent them, let alone as lead counsel.**

When two attorneys agree to jointly represent a client, their relationship in that case is the same as the relationship between partners in a law firm.  If one of the lawyers should then join a different law firm, it is as though he had left his previous law firm (the joint representation).  The representation of the client isn't transfered to the new firm, absent the client's informed consent. The lawyer may contact the client to ask whether the client wants to be represented by his new firm, but this is not what occurred here.  Neither Collingsworth nor C&S ever obtained the clients' informed consent.  Collingsworth didn't work for C&S when the retainer agreements were signed. The retainer agreements make no mention of C&S.

2

    **a.    The contracts between Wolf, Collingsworth and Childs and Does 1-144 only allowed the lawyers to hire other lawyers to assist them.**

The Magistrate Judge erroneously relied on the terms of the attorney-client retainer agreement. It doesn't allow one of the attorneys to join a new law firm and take the client with them, or provide the new firm with power of representation. The retainer agreements state that the "Client agrees that Attorneys have the sole authority to **hire** additional attorneys to work with them to prosecute the claims detailed in paragraph number two, and have the sole authority to terminate any previously retained attorneys. **Any other arrangements with any other retained attorney or attorneys are between the Attorneys and those attorneys.**" [Doc 3884-1] (emphasis added) This clause can't create attorney-client relationships with other, unnamed attorneys. Does 1-144 aren't parties to those other arrangements, whatever they may be. Neither is Wolf, who isn't aware of the details of those arrangements either. Neither Wolf nor Collingsworth hired C&S. Collingsworth was hired *by* C&S. When Wolf learned of this, he didn't agree to hire C&S, but wrote a breach letter instead. [Doc. 3885-2] Conrad & Scherer never established attorney-client relationships with Does 1-144 over the next 12 years, other than defending the depositions of two bellwether plaintiffs. There were no agreements or arrangements, or informed consent. Therefore, there can be no recovery in quantum meruit. Daniel Mones, P.A. v. Smith, 486 So. 2d 559, 561 (Fla. 1986).

    **b.    C&S do not have any agreements with Does 1-144.**

The R&R doesn't address the case law on this issue. An agreement between the lawyer and client is a prerequisite to an action to recover in quantum meruit. "The charging lien is an equitable right to have costs and fees due an attorney for services in suit secured to him in the judgment or recovery in that particular suit." Naftzger v. Elam, 41 So. 3d 944, 946 (Fla. 2d DCA 2010) (quoting Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So. 2d 1383, 1384

3

(Fla. 1983). An attorney who seeks to enforce an attorney's fee charging lien is required to "show: (1) an express or implied contract between attorney and client; (2) an express or implied understanding for payment of attorney's fees out of the recovery; (3) either an avoidance of payment or a dispute as to the amount of fees; and (4) timely notice." Id. There were no implied or express agreements or understandings between Does 1-144 and C&S. Naftzger was relied on by both parties as the controlling authority for this issue, yet the R&R makes no mention of it, or any other applicable case.

"In order for a charging lien to be imposed, there must first be a contract between the attorney and the client." Sinclair. at 1385, citing Billingham v. Thiele, 107 So. 2d 238 (Fla. 2d DCA 1958), cert. dismissed, 109 So. 2d 763 (Fla. 1959). "The contract may be express, Alyea v. Hampton, 112 Fla. 61, 150 So. 242 (1933), or implied, Greenfield Villages; Scott v. Kirtley, 113 Fla. 637, 152 So. 721 (1933)." Id. at 1385. There must also be an understanding, express or implied, between the parties that the payment is either dependent upon recovery or that payment will come from the recovery. Id. There could be no understandings of any kind between C&S and Does 1-144 if they have never even communicated.

    c.    **C&S do not have any implied agreements with Does 1-144.**

Although there were no express agreements, C&S argues that implied agreements existed between themselves and Does 1-144. Motion [Doc 3884] at 7, citing Willis v. Nova Cas. Co., No. 21-13778 2023 U.S. App. LEXIS 1401, at *5 (11th Cir. Jan. 20, 2023). In Willis, an attorney and client had a written fee agreement in which the client would pay discounted hourly rates, which could be retroactively increased in the event of a successful outcome of the litigation. The case did not involve any arguments about an implied agreement, but only whether the contract was enforceable, or subject to a reasonableness determination by the court.

4

Neither of the cases cited in Sinclair for implied agreements help C&S' position. In Greenfield Villages, Inc. v. Thompson, 44 So. 2d 679 (Fla. 1950), parties to a real estate transaction verbally agreed that the defendant would pay the plaintiffs a reasonable attorney's fee from the money arising from the transacion. Although the attorney had been retained by the defendant, the amount of the fee owed was in dispute. The court found the contract term to be enforceable, and awarded a reasonable attorney fee pursuant to their agreement. "We have held on many occasions, where a person employs an attorney to perform legal services and no expressed agreement was reached between the parties as to the amount of the attorney fee to be paid for the services rendered, the law under such circumstances implies a contract upon the part of the party employing the attorney to pay him reasonable compensation for such services." Id., citing Stitt & Co. v. Powell, 94 Fla. 550, 114 So. 375. Greenfield is distinguishable from the instant case because the client had hired the attorney, but their agreement didn't specify the amount of compensation. In the instant case, Does 1-144 never hired C&S to represent them. There is no basis to find that an implied agreement existed.

In Scott v. Kirtley, 113 Fla. 637 (1933), an attorney was hired by a client to perform legal services whereby the attorney's fee would be paid from any recovery from the lawsuit. When the client refused to pay, the attorney placed a lien on the recovery for the reasonable value of his services, the amount of which were not specified in their agreement. The court found the lien to be enforceable and determined the amount of the fee. Again, there was a written agreement.

The Greenfield and Scott cases are similar, in that agreements existed between the attorney and the client, but the amount of the fee wasn't specified in the agreement. The two cases cited in Sinclair for implied agreements involved attorney client agreements that did exist, but were vague as to the amount. They do not support C&S' position that they have agreements with Does 1-144

5

because they hired Collingsworth, and his agreements were transferred to them. Since C&S have neither express nor implied agreements with any of Does 1-144, C&S cannot meet the first requirement for a valid charging lien as set forth by the Florida Supreme Court. Sinclair, 428 So. 2d at 1385.

      **d.**     **Attorney-client retainer agreements are never assignable.**

Attorney-client retainer agreements are not assignable. Wolf's agreements with Does 1-144 do not contain an assignment clause. See Exhibit 1 to C&S Motion. [Doc. 3884-1] Such a clause would be invalid because it would violate the Florida Rules of Professional Conduct. To obtain power of representation over these Plaintiffs' cases, Conrad & Scherer would have had to obtain the clients' consent, in writing, which they never did. The client must be provided with a copy of this agreement as well. Florida Rule of Professional Conduct 4-1.15(f)(2) states that

> Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding in which the lawyer's compensation is to be dependent or contingent in whole or in part on the successful prosecution or settlement must do so only where the fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer [sic] or for the law firm representing the client. **No lawyer or firm may participate in the fee without the consent of the client in writing. Each participating lawyer or law firm must sign the contract with the client** and must agree to assume joint legal responsibility to the client for the performance of the services in question as if each were partners of the other lawyer or law firm involved. The client must be furnished with a copy of the signed contract and any subsequent notices or consents. All provisions of this rule will apply to such fee contracts.

Id. (emphasis added) This also defeats Conrad & Scherer LLP's arguments about implied contingency agreements as a matter of law. Even if the clients had agreed to this, which they did not, the agreements would have had to have been reduced to writing for Conrad & Scherer to recover in quantum meruit. The Florida Rules of Professional Conduct are more than just guidelines. While ethics opinions are not controlling, "they are persuasive authority and, if well

6

reasoned, are entitled to great weight." Chastain v. Cunningham Law Group, P.A., 16 So. 3d 203, 206–07 (Fla. 2d DCA 2009)  The Florida Rules of Professional Conduct require informed consent.

### e. The Court never appointed Conrad & Scherer as lead counsel for the Does 1-144 case.

The Magistrate believed that Conrad & Scherer acted as lead counsel for Does 1-144 from 2008 to 2020.  They did not.  C&S did not do any substantive work on the cases of Does 1-144, other than defending two depositions.  His reasoning was that

> ... the Court was aware that Mr. Collingsworth was affiliated with C&S. And, although the September 16 Order only references Mr. Collingsworth, Judge Marra's clear intent was to appoint C&S as a firm, not just Mr. Collingsworth as an individual. That intent is clear given that the Court continued to treat C&S as lead counsel for the Doe Plaintiffs even after Mr. Collingsworth left the firm.

[Doc 3900 at 13]  The Court never treated C&S as lead counsel, either for this complaint or generally in the MDL.[2]  For about 15 years, the Court had to rule on two sets of filings for every significant issue that arose, and always considered undersigned counsel's filings, which were always captioned with the case Does 1-144 v CBI.  During the entire time of the "common interest" work claimed by Conrad & Scherer, Wolf had to file his own motions, responses to the Defendants' Motions, and briefs in two appeals.  Counsel fought over control of depositions of common witnesses.  This dispute was reflected in the transcript of the deposition of Chiquita's Rule 30(b)(6) witness Barbara Howland, and in the deposition of AUC witness Jesús Ignacio Roldán Pérez.  In the second appeal, Does 1-976 v. Chiquita Brands, International, Inc., Case No. 19-13926, the 11th Circuit allowed the competing Plaintiffs' counsel to split the time for their arguments, over the Non Wolf counsels' objections.  Wolf independently argued for his clients in both rounds of summary

---

[2] It may be confusing that in Multi District Litigation, a single law firm is often appointed by the Court as "lead counsel" for all cases in the MDL. This never occurred in this case.  Wolf and Collingsworth at one time stipulated that Collingsworth would be "lead counsel" for the Does 1-144 complaint, which is one of about a dozen filed by different attorneys in the MDL.

7

judgment, hired his own experts, and was excluded from all substantive communications among the Non Wolf counsel beginning some time in 2011. The Court disqualified C&S from representing Does 1-144 after undersigned counsel argued that they were harming the clients' interests.

**II.     AUC commander Raul Hasbun provided sworn testimony that Collingsworth, as a senior partner of C&S, offered him up to 5 million dollars for his testimony, "depending on the outcome of the case."**

As a senior partner of C&S, Collingsworth offered up to 5 million dollars for the testimony of AUC commander Raul Hasbun, "depending on the outcome of the case." See Exhibit 1, attached hereto. Citing two Orders, [Doc. 3887 at 7] and [Doc. 3649 at 5], the Magistrate Judge followed the Court's finding that "Plaintiffs' counsel Terrence Collingsworth, in a February 2015 filing, provided a declaration under penalty of perjury stating that 'I have never paid any money or given anything of value, directly or indirectly, to any actual or potential fact witness in this case in exchange for their testimony.' (DE 3626-10 at 3) … Based on the record, it appears to the Court that the only payments Collingsworth made went to Colombian attorneys to pay for costs incurred on behalf of Colombian Plaintiffs." Order [Doc 3649 at 4] "In sum, Plaintiffs' counsels' declarations, provided under oath, refute any assertedly ambiguous communications on the topic of witness payments." Order [Doc. 3649 at 5]

Hasbun's testimony was not ambiguous. The fact that Hasbun hasn't been paid yet doesn't mean that he wasn't tainted as a witness. His testimony was tainted by the offer, as was the entire first trial. We believe that the agreement was to repay the $1.5 million Nicox loan from the Bilderbeeks from a future settlement in the case. See Exhibit 2 attached hereto, the Nicox loan agreements. At this point, a settlement appears unlikely, and Mr. Hasbun will never be repaid. Nevertheless, Hasbun testified that he at first refused to testify until he was offered this money.

8

Undersigned counsel can't appeal this ruling because he has settled his cases. And, of course, the Magistrate Judge can't be faulted for making this finding. The argument is repeated here for purposes of preserving it for a possible appeal, with the confidence that a jury in the Northern District of Alabama will find in Drummond's favor.[3] The Court of Appeals could make the same finding here, and set aside the verdict in the first trial. There was an abundance of evidence of witness bribery in this case, which is particulary egregious because the money came from the AUC itself, and ironically, because the Defendant Chiquita Brands was sued for engaging in financial transactions with the same group. While Chiquita Brands can claim to have been extorted, the same can't be said for Conrad & Scherer.

## Conclusion

The Court cannot adopt the R&R because the award of attorneys fees in <u>quantum meruit</u> requires an agreement between Does 1-144 and C&S, and the clients' understanding that C&S will be paid. No such agreements or understandings have ever existed.

Respectfullly submitted,

/s/ Paul Wolf

_____
Paul Wolf, CO Bar #42107
*Attorney for "Wolf Plaintiffs"*
P.O. Box 60584
Colorado Springs, CO 80960
(202) 431-6986
paulwolf@yahoo.com

October 16, 2024

---

[3] It is also possible that the Court in Alabama will grant Drummond's pending Motion for Summary Judgment based on the spoliation of evidence. Although granting summary judgment to a plaintiff is rare, Collingsworth's emails from the relevant time period were missing from every computer system in which they were stored, including from a third party vendor that was hired to make back up copies. The <u>Drummond</u> court found that Collingsworth's and C&S's fraud on the court was ongoing, since they were providing their attorney Brad Smith with false information that he used in his court filings.

9

**Certificate of Service**

      I hereby certify that on October 16, 2024, I filed the foregoing document with the Clerk of the Court using the Court's Electronic Case Filing (ECF) system, which will serve notices on all persons entitled to receive them.

/s/ Paul Wolf
_____
Paul Wolf